# EXHIBIT A

**DOYLE APC**
William J. Doyle, SBN: 188069
bill@doyleapc.com
Chris W. Cantrell, SBN: 290874
chris@doyleapc.com
550 West B St., 4th Floor
San Diego, CA 92101
Phone: (619) 736-0000
Fax: (619) 736-1111

**LEVINE & MAYBAUM LLP**
Marc J. Levine, SBN: 210949
marc@specialedpartners.com
Jerid R. Maybaum, SBN: 190846
jerid@specialedpartners.com
10940 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024

Attorneys for Plaintiffs

*[Additional Counsel on Signature Page]*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
7/1/2025 9:28:54 AM
Clerk of the Superior Court
By G. Lopez ,Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

JANE DOE ONE and JOHN DOE TWO, on behalf of themselves and all others similarly situated and for the benefit of the general public,

Plaintiffs,

v.

POWERSCHOOL HOLDINGS INC., POWERSCHOOL GROUP, LLC, and DOES 1 through 25, inclusive,

Defendants.

Case No. 25CU002797C

*POWERSCHOOL DATA BREACH LITIGATION*

CONSOLIDATED FOR ALL PURPOSES WITH CASE NO. 25 CU 014423C

**CLASS ACTION**

**SECOND AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF:**
1) Confidentiality of Medical Information Act
2) California Customer Records Act
3) Invasion of Privacy
4) Negligence/Negligence Per Se
5) Breach of Confidence
6) California Consumer Privacy Act
7) California Security Notification Laws
8) Unfair Competition Law
9) Declaratory Relief

**Jury Trial Demanded on All Causes of Action So Triable**

Plaintiffs JANE DOE ONE, JOHN DOE TWO and JOHN DOE, individually and on behalf of their minor children (collectively referred to as "Plaintiffs"),[1] pursuant to the Order of the Court consolidating the two actions referenced above, file this Second Amended Consolidated Complaint ("Complaint") on behalf of both themselves and all others similarly situated (as defined below) and for the benefit of the general public against Defendants POWERSCHOOL HOLDINGS, INC. and POWERSCHOOL GROUP, LLC (collectively referred to as "POWERSCHOOL"), and DOES 1–25, inclusive (collectively referred to herein as "Defendants"). Plaintiffs, through the undersigned counsel, allege the following based on personal knowledge as to allegations regarding Plaintiffs, and on information and belief as to all other allegations.

## SUMMARY OF THE ACTION

1. POWERSCHOOL is a leading provider of cloud-based software to assist K-12 schools manage their operations. In connection with such operations, in acting as an agent for the school districts it assists in California, among other operations POWERSCHOOL stores student data to assist schools in monitoring attendance, enrollment and grades. In the course of doing so this includes obtaining, transmitting, accessing and storing students' and teachers' sensitive personal information. Regarding its storage of this personal information, POWERSCHOOL identifies itself as "the Industry Leader for Protected, Private Data." POWERSCHOOL also represents that its "security and compliance experts help keep data safe and accessible" and promises to "secure your student data by protecting it with a dedicated security team and hosting it on a world-class platform."

2. As detailed more fully below, POWERSCHOOL did not live up to these representations, having been subject to a cyber-attack and accompanying data breach it claims it discovered on or about December 28, 2024, that had occurred month earlier without detection. Yet despite discovering this breach in late December 2024, it has still not provided the direct notice to all affected consumers as required by California law. What's worse, it appears POWERSCHOOL has no intention of doing so, leaving it up to each school district to decide when or even if to send notice, what will be in that notice, and to whom that notice will be sent.

---

[1] Due to the sensitive nature of this action and the information at issue, Plaintiffs are filing under a pseudonym as permitted under California law. *See, e.g., Jane Doe 8015 v. Sup. Ct.* (2007) 148 Cal.App.4th 489.

3. This action arises from the negligent, reckless, or intentional failure by POWERSCHOOL to adequately secure the private, personal, financial, and medical information of Plaintiffs and all others similarly situated who are members of the Class as defined below, to protect such data from various types of cyber-attacks, and then failing to give proper notice thereof or require the school districts it works with to do so on its behalf. POWERSCHOOL abdicated their obligation and duty to protect sensitive personal information in their possession, as described in detail below, failed to take steps necessary to prevent such an attack, and then failed to give timely and complete notice thereof to all affected persons.

4. Based on information available to POWERSCHOOL, and in view of the known threat of attacks over the last several years against school districts for whom they operate as an agent, contractor and vendor and advise districts on cyber-security issues, this was an entirely foreseeable event that could and should have been prevented but, due to the negligent design and oversight of POWERSCHOOL's network, was not. POWERSCHOOL has failed and refused to fully and adequately notify victims of this attack that their personal information was improperly accessed and stolen, the status of their information, and what was taken from them, leaving victims in the dark as to what they can and should do to protect themselves from further attacks.

5. Defendants and their responsible contractors, subcontractors, representatives and/or employees negligently, recklessly, wantonly, or purposefully created, maintained, preserved, and stored personally individually identifiable information, including potentially "medical information" within the meaning of Cal. Civ. Code § 56.05(i), on an inadequately protected network for many members of the Class, as defined below. Defendants disregarded the rights of Plaintiffs and Class members by negligently, recklessly, or knowingly failing to take and implement adequate and reasonable measures to ensure that Plaintiffs' and Class members' Personal and Medical Information was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies, and procedures regarding data access and encryption, even for internal use, as well as appropriate procedures, such as two-step or multi-factor authentication, which would prevent such intrusions from taking place without receiving notice thereof, or failed to act upon such notice. As a result, the Personal and Medical Information of hundreds of thousands of Class members was compromised through disclosure to unknown and unauthorized third parties. These actions

and inactions proximately resulted in damage and loss as confidential personal information was improperly accessed and copied by unauthorized third parties.

6. In California, the protection of personal privacy is of paramount importance. Article I, Section 1 of the California Constitution guarantees consumers their right to privacy. In addition, as recognized by the California State Legislature, the use of computer information technology has greatly magnified the potential risk to individual privacy that occurs from the maintenance of personal information by entities such as POWERSCHOOL, necessitating that the maintenance of personal information is subject to strict limits governed by numerous California statutes.[2]

7. Under California law, medical information is among the most sensitive private personal information available.[3] "Medical Information" is defined by California's Confidential Medical Information Act, Cal. Civ. Code sections 56, *et seq*. ("CMIA") as:

> any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment.
>
> "Individually identifiable" means that the Medical Information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or Social Security Number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual.[4]

8. "Personal and Medical Information," for purposes of this Complaint, refers to the above definition and encompasses both Personal Health Information ("PHI"), and Personally Identifiable Information ("PII"), including Social Security numbers associated with individual student and/or employee records that may have been contained within POWERSCHOOL's computer systems.

9. Since Personal and Medical Information encompasses such personal and revealing information, it is highly valued as a gateway to medical identity theft[5] and general identity theft.[6] Personal and Medical Information has been found to command up to $1,000 per individual record on the

---

[2] See, e.g., Cal. Civ. Code § 1798.1(b) & (c).
[3] See*, e.g.,* Cal. Civ. Code § 1798.140(ae)(2)(B) (as amended by Proposition 24) (defining health information as sensitive data).
[4] Cal. Civ. Code § 56.05(i).
[5] R. Kam, *et al, Medical Identity Theft: A Deadly Side Effect of Healthcare Data Breaches*, ID Experts (2017).
[6] Identity Theft Resource Center, *Data Breaches in the Healthcare Industry Continue Due to Availability of Valuable Information* (8/11/2020).

dark web.[7] Organizations such as POWERSCHOOL are entrusted with this most sensitive and valuable data by school districts nationwide, including the San Diego Unified School District ("SDUSD") – the second largest school district in the State of California and where Plaintiffs' Jane Doe one and John Doe Two's children attend school – and Cathedral Catholic High School, where Plaintiff John Doe attended school. As a result, Defendants have a non-delegable and special duty and obligation to take particularly special care to maintain up-to-date information security practices and keep apprised of industry-related threats as they arise.

10. If Personal and Medical Information is breached and exfiltrated, it is critical that the owners of the Personal and Medical Information (here, Plaintiffs and Class members) be notified of this breach and its extent immediately so affected individuals can take appropriate mitigation measures against identity theft, financial fraud and medical fraud.

11. The threat of such an attack was reasonably foreseeable. School districts in California and their vendors and agents have been repeatedly warned of the potential for such an attack on their computer systems, and several in California had already been the subject of such attacks that occurred over the last year and decade. Indeed, on its own website POWERSCHOOL in 2024 posted presentations and videos advising school districts of actions they could take to protect such sensitive Personal and Medical Information. Yet it turns out that POWERSCHOOL itself failed to implement reasonable and adequate security procedures for the protection of this highly personal data.

12. Service provider agents, contractors or subcontractors for schools such as Cathedral Catholic and school districts such as SDUSD are legally required and have a non-delegable duty to keep students' Personal and Medical Information private and secured. Defendants breached duties owed to Plaintiffs and Class members by, *inter alia*, (i) not exercising reasonable care in retaining, maintaining, securing, and safeguarding students' and employees' nonpublic Personal Information from being accessed and stolen by unauthorized persons; (ii) failing to establish appropriate procedures to ensure the confidentiality of and the protection from unauthorized use and disclosure of such information, including but not limited to instructions to employees and agents regarding the confidentiality of handling files containing PII and PHI, and having in place appropriate security systems restricting access to files

[7] M. Yao, *Your Electronic Medical Records Could be Worth $1,000 to Hackers*, Forbes (4/18/17).

containing medical information; (iii) failing to implement processes to detect a breach or unauthorized access of data in a timely manner and to act upon any warnings or alerts that Defendants' security systems had been breached or improperly accessed or large amounts of data offloaded onto unauthorized computers; (iv) failing to timely disclose the facts surrounding this breach directly to Plaintiffs and Class members; and (v) failing to disclose that Defendants did not adequately secure Plaintiffs' or Class members' Personal and Medical Information.

13. Under the CMIA and other laws as set forth herein, Plaintiffs and Class members have a recognized right to confidentiality in their Personal and Medical Information and can reasonably expect that their Personal and Medical Information would be protected by Defendants from unauthorized access. When Plaintiffs and Class members provided their Personal and Medical Information to schools and school districts such as Cathedral Catholic and SDUSD, and thus without having any choice to do so to vendors and agents such as POWERSCHOOL, for the purpose of enrollment and otherwise availing themselves of educational services, they did so with the reasonable understanding and assurance that their Personal and Medical Information would be kept confidential and secure.

14. The Historical and Statutory Notes for the short title of the CMIA, Civ. Code § 56, support these reasonable expectations:

> The Legislature hereby finds and declares that persons receiving health care services have a right to expect that the confidentiality of individual identifiable Medical Information derived by health service providers be reasonably preserved. It is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable Medical Information, while permitting certain reasonable and limited uses of that information.

Stats. 1981, ch. 782, § 1, p. 3040.

15. Defendants' actions establish that they did not maintain the Personal and Medical Information at issue in a manner that preserved its confidentiality, as it was improperly accessed, copied, downloaded and exfiltrated to a foreign country by unauthorized third parties. POWERSCHOOL's failure to create, maintain, preserve, and store Personal and Medical Information in a manner that preserved the confidentiality of the information contained therein resulted in the illegal access, authorization, exfiltration, disclosure, negligent release, and theft of data associated with Plaintiffs and Class members, which necessarily included Personal and Medical Information.

16. Unfortunately for Plaintiffs and Class members, their Personal and Medical Information

maintained by POWERSCHOOL was not secured in the manner required under California law that would prevent such unauthorized access. What is worse, despite Defendants' obligations under the law to promptly notify affected individuals so they can take appropriate action, Defendants have failed to do so without unreasonable delay or directly to affected individuals, failed to include in the data breach notice a sufficient description of the data breach incident to comply with Cal. Civ. Code § 1798.29(d)(2)(E), 45 C.F.R. §§ 164.400-414 and other relevant laws, and failed to provide in any general data breach notice the information needed by Plaintiffs and Class members and the public to enable them to react appropriately to the breach, including a description of the data taken and instructions how to take whatever mitigation measures are necessary.

17. If a covered entity (which includes contractors and agents of school districts such as POWERSCHOOL) creates, maintains, preserves, or stores Personal and Medical Information in a negligent manner, it is subject to the remedies provided for under Cal. Civ. Code § 56.36(b). For the reasons set forth herein, Defendants violated this provision.

18. The remedies provided for under Cal. Civ. Code § 56.36(b) allow private litigants to bring an action seeking injunctive relief and damages against certain entities that have permitted the negligent release of confidential information or records or that failed to create, maintain, preserve, or store Personal and Medical Information in a manner that preserves its confidentiality. In order to recover under this paragraph, it is not necessary that Plaintiffs and Class members suffered or were threatened with actual damages. Cal. Civ. Code § 56.36(b)(1). These remedies are in addition to any other remedies available at law. Cal. Civ. Code § 56.36(b).

19. POWERSCHOOL failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information at issue in order to protect Plaintiffs' and Class members' Personal and Medical Information. POWERSCHOOL also disclosed or permitted the disclosure of Plaintiffs' and Class members' Personal and Medical Information to unauthorized persons.

20. Plaintiffs and Class members now face a long-term battle against identity theft as a result of this breach. Plaintiffs and Class members have a continuing interest in ensuring that this information is and remains safe. This presents an imminent and impending continuing risk for Plaintiffs and Class members, particularly where POWERSCHOOL refuses to disclose any details of the attack beyond

general information, has sent no direct notice to Plaintiffs and Class members despite being statutorily required to do so, has not disclosed what data were actually accessed and are available for third parties to exploit and has recently admitted this data has not be secured and is still available for exploitation. POWERSCHOOL's failure to adequately protect the nonpublic Personal and Medical Information in their possession and provide prompt notification has likely caused, and will continue to cause, substantial harm and injuries to Plaintiffs and Class members. Plaintiffs and Class members are thus entitled to injunctive and other equitable relief.

21. Plaintiffs bring this action seeking damages, injunctive relief, and equitable relief that is appropriate for the benefit of Plaintiffs and Class members and the general public, including costs and expenses of litigation and attorneys' fees, as applicable for the Causes of Action set forth below.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over this matter pursuant to Cal. Code Civ. Proc. § 410.10 because the actions and conduct alleged in this Complaint took place in California, Plaintiffs and Class members are exclusively residents and citizens of California, and Defendants conduct their operations in California. Defendants are also considered citizens of California for purposes of this Complaint and there is no diversity between Defendants and members of the Class as defined.

23. Venue is proper in San Diego County pursuant to Cal. Code Civ. Proc. §§ 395 and 395.5 because a substantial part of the events and omissions giving rise to the claims occurred in this County as set forth herein, Plaintiffs reside here, and Defendants either are based here or have significant operations in this County and perform contractual obligations on behalf of schools and school districts, including Cathedral Catholic and SDUSD, in this County.

## PARTIES

24. On personal knowledge, Plaintiff Jane Doe One is a California resident and citizen, and is the parent and guardian of children who are, and at all times relevant hereto were, students at a school within the SDUSD. The protection of Personal and Medical Information for both her and her family from unauthorized disclosure is important and material. Plaintiff has experienced fear, anxiety, and worry caused by the unauthorized disclosure of Personal and Medical Information by POWERSCHOOL since she became aware of it. She remains concerned about the status of this information as she has not received

full and complete notice from POWERSCHOOL confirming this cybersecurity attack or the steps she should take to protect both her and her family, particularly in terms of sensitive information like Social Security numbers and Medical Information that may have been accessed during the course of this cyber-attack. She thereafter spent time researching the data breach and credit monitoring services, reviewing her accounts for fraudulent activity and signs of identity theft without any compensation for the time expended by her. Plaintiff estimates that she has expended several hours thus far addressing this issue, independent of any actions taken as part of this action, trying to address the harms that were the result of Defendants' actions and inactions. This compromised data also constitutes property over which she and her children have a vested interest in its protection. In January 2025 she received notification from SDUSD, not POWERSCHOOL, informing her in very general terms of the cyberattack that had taken place and that her children's Personal and/or Medical Information had or may have been exfiltrated and had been improperly accessed, which she is unable to remedy on her own and has no adequate remedy at law.

25. On personal knowledge, Plaintiff John Doe Two is a California resident and citizen, and is the parent and guardian of children who are, and at all times relevant hereto were, students at a school within the SDUSD. The protection of Personal and Medical Information for both him and his family from unauthorized disclosure is important and material. Plaintiff has experienced fear, anxiety, and worry caused by the unauthorized disclosure of Personal and Medical Information by POWERSCHOOL since he became aware of it. He remains concerned about the status of this information as he has not received any notification from POWERSCHOOL confirming this cybersecurity attack or the steps he should take to protect both him and his family, particularly in terms of sensitive information like Social Security numbers and Medical Information that may have been accessed during the course of this cyber-attack. He has spent time researching the data breach and credit monitoring services, reviewing his accounts for fraudulent activity and signs of identity theft without any compensation for the time expended by him. Plaintiff estimates that he has expended several hours thus far addressing this issue, independent of any actions taken as part of this action, trying to address the harms that were the result of Defendants' actions and inactions. This compromised data also constitutes property over which he and his children have a vested interest in its protection. In January 2025 he received notification from SDUSD, not

POWERSCHOOL, informing him of the cyberattack that had taken place and that his children's Personal and/or Medical Information had or may have been exfiltrated and had been improperly accessed, which he is unable to remedy on his own and has no adequate remedy at law.

26. On personal knowledge, Plaintiff John Doe is a California resident and citizen, and is an adult who, and at all times relevant hereto was a student at Cathedral Catholic High School within San Diego County. The protection of Personal and Medical Information for both him and his family from unauthorized disclosure is important and material. Plaintiff has experienced fear, anxiety, and worry caused by the unauthorized disclosure of Personal and Medical Information by POWERSCHOOL since he became aware of it. He remains concerned about the status of this information as he has not received any notification from POWERSCHOOL confirming this cybersecurity attack or the steps he should take to protect both him and his family, particularly in terms of sensitive information like Social Security numbers and Medical Information that may have been accessed during the course of this cyber-attack. He or others at his direction has spent time researching the data breach and credit monitoring services, reviewing his accounts for fraudulent activity and signs of identity theft without any compensation for the time expended by him. Plaintiff estimates that he or others at his direction have expended several hours thus far addressing this issue, independent of any actions taken as part of this action, trying to address the harms that were the result of Defendants' actions and inactions. This compromised data also constitutes property over which he has a vested interest in its protection. On January 10, 2025, his parents received an email notification from Kevin J. Calkins, Ph.D., President of Cathedral Catholic High School, not POWERSCHOOL, addressed to "Parents/Guardians," informing them that "We are writing to make you aware of a recent cybersecurity incident involving POWERSCHOOL, a software vendor that provides our Student Information System (SIS). POWERSCHOOL informed our leadership team that they experienced a cybersecurity incident involving unauthorized access to certain POWERSCHOOL SIS customer data. Unfortunately, they have confirmed that the information belongs to some of our families and educators. POWERSCHOOL informed us that the taken data primarily includes parent and student contact information with data elements such as name and address information. Across their customer base, they have determined that for a portion of individuals, some personally identifiable information (PII), such as social security numbers (SSN) and medical information, was impacted. They

are working with urgency to complete their investigation and determine whether PII belonging to our students was included. Protecting our students is something we take seriously. With POWERSCHOOL's help, more information and resources (including credit monitoring or identity protection services if applicable) will be provided to you as it becomes available." Thus, email notification from Cathedral Catholic confirms that the POWERSCHOOL cyberattack had taken place and that Plaintiff's Personal and/or Medical Information may have been improperly accessed, which he is unable to remedy on his own and has no adequate remedy at law.

27. As a result of Defendants' misconduct Plaintiffs have been injured in fact and lost money or property and/or have suffered and will continue to suffer injury and harm as a result of the exfiltration of the personal data described above and having Personal and/or Medical Information disclosed to and stolen by third parties without their authorization, and the confidentiality and integrity of Personal and Medical Information breached, lost, not preserved, and not protected. Plaintiffs have suffered the loss of control of both their and their children's Personal and Medical Information over which, as they are minors, they have control over and responsibility for.

28. Defendant POWERSCHOOL HOLDINGS, INC. is a corporation with its principal executive offices located at 150 Parkshore Drive, Folsom, CA. POWERSCHOOL GROUP, LLC is a limited liability corporation with its principal executive offices also located at 150 Parkshore Drive, Folsom, CA. POWERSCHOOL was acquired by private investment firm Bain Capital in October 2024 for over $5.6 billion. POWERSCHOOL publicly states on its website that it is a global cloud-based software solutions provider for K-12 schools and districts, and that its software solutions support over 60 million students and over 18,000 customers in more than 90 countries. Its software is used by SDUSD, Cathedral Catholic and other school districts across the country to provide educational support services to school districts, and through that software has access to a treasure trove of sensitive personal data from Plaintiffs and Class members. POWERSCHOOL publicly represents it "is committed to being a good custodian of student data, taking all reasonable and appropriate countermeasures to ensure data confidentiality, integrity, and availability", and posts videos promoting its supposedly state of the art cyber-security practices, including "Top 6 Best Practices for Improving Student Information System (SIS) Cybersecurity -- Learn simple steps to ensure a secure digital environment within your K-12 student

information system for students, staff, and data" and "5 Questions to Ask When Choosing a Top K-12 Student Information System -- Practical tips for top features and functionality of a quality K-12 student information system to meet your school or district needs." POWERSCHOOL also makes the following representations regarding the collection and storage of personal and medical information:

a. "PowerSchool is a trusted, verified custodian of their children's data";

b. "We believe that the safe collection and management of student data is essential to student success in the classroom";

c. "PowerSchool certifies the application, database and infrastructure security of our software solutions";

d. "Schools and districts can communicate with confidence to shareholders that their student data is safe and secure";

e. "We're dedicated to keeping customers' student, staff and student data safe …";

f. POWERSCHOOL "secure[s] your student data by protecting it with a dedicated security team and hosting it on a world-class platform";

g. "We are dedicated to protecting your students' data …";

h. "[Y]our data is always protected with PowerSchool"; and

i. POWERSCHOOL will "[e]nsure the integrity of your student data".

29. The true names, roles, and capacities in terms of their involvement in the wrongdoing at issue, whether individual, corporate, associate, or otherwise, of Defendants named as DOES 1 through 25, inclusive, are currently unknown to Plaintiffs and, therefore, are named as Defendants under fictitious names pursuant to California Code of Civil Procedure Section 474. Plaintiffs will identify these Defendants' true identities and/or their involvement in the wrongdoing at issue if and when they become known.

## FACTUAL ALLEGATIONS

30. Education software giant POWERSCHOOL offers a full range of services to help school districts operate, including platforms for enrollment, communication, attendance, staff management, learning systems, analytics, and finance. POWERSCHOOL also operates Naviance, a platform used by many K-12 school districts to offer personalized college, career, and life readiness planning tools to students. Through such applications it obtains and retains access to a significant amount of personal student and teacher data on behalf of the schools and school districts who contract with

POWERSCHOOL to act as their agent and contractor.

31. On or shortly after December 28, 2024, the date POWERSCHOOL has stated it first became aware of the breach, it confirmed to affected schools and school districts, including Cathedral Catholic and SDUSD, that a cybersecurity incident had occurred that allowed a threat actor to steal the personal information of hundreds of thousands of students and teachers in schools and school districts that were using its POWERSCHOOL SIS platform. POWERSCHOOL claims it first became aware of the breach after POWERSCHOOL SIS customer information was stolen through its PowerSource customer support platform. POWERSCHOOL SIS is a student information system ("SIS") used to manage student records, grades, attendance, enrollment, and more. However, subsequent information has revealed this data was taken from POWERSCHOOL months earlier without detection.

32. According to an email from POWERSCHOOL to its clients in early January 2025, "As a main point of contact for your school district, we are reaching out to make you aware that on December 28, 2024, POWERSCHOOL became aware of a potential cybersecurity incident involving unauthorized access to certain information through one of our community-focused customer support portals, PowerSource." After investigating the incident, it was determined that the threat actor gained access to the portal using compromised credentials and stole data using an "export data manager" customer support tool: "PowerSource contains a maintenance access tool that allows POWERSCHOOL engineers to access Customer SIS instances for ongoing support and to troubleshoot performance issues." Using this tool, the attacker exported the POWERSCHOOL SIS 'Students' and 'Teachers' database tables to a CSV file, which was then stolen, according to POWERSCHOOL.

33. POWERSCHOOL initially stated that the stolen data primarily contained student and employee contact details such as names and addresses. However, for some schools and school districts, which may include Cathedral Catholic and SDUSD, the data stolen also included Social Security numbers, personally identifiable information, medical and health information, and grades, as later evidence has shown from DOJ filings and continued extortion campaigns against schools and school districts.

34. In response to the incident, POWERSCHOOL claims it has engaged with third-party cybersecurity experts, including CrowdStrike, to investigate and mitigate the incident. This includes

rotating the passwords for all PowerSource customer support portal accounts and implementing tighter password policies. However, it has not stated how or why the exfiltration of data went undetected for months and what it has done to address that issue.

35. POWERSCHOOL also asserted this was not technically a ransomware attack but that they did pay a ransom to prevent the data from being released. According to an FAQ sent to it, "PowerSchool engaged the services of CyberSteward, a professional advisor with deep experience in negotiating with threat actors …. With their guidance, PowerSchool has received reasonable assurances from the threat actor that the data has been deleted and that no additional copies exist." However, "given the sensitive nature of our investigation, we are unable to provide information on certain specifics." And subsequent disclosures have revealed, and POWERSCHOOL has admitted, this assertion was not accurate.

36. While POWERSCHOOL said they received a video showing that the data was deleted, as with all data extortion attacks, there is never a hundred percent guarantee that it was. The company claims it is now continuously monitoring the dark web to determine if the data has been leaked or will be leaked in the future, but last week conceded the data is still available for exploitation.

37. Defendants have stated they are in the process of notifying impacted schools and school districts and providing a communications package that includes outreach emails, talking points, and FAQs to help inform teachers and families about the incident. However, in an email letter sent out on or about January 7, 2025, which Plaintiffs Jane Doe One and John Doe Two received, SDUSD merely stated that one of its vendors was involved in a cybersecurity incident that had been discovered in late December 2024 but was not disclosed to SDUSD until just days before the email letter was disseminated. The email letter, signed by W. Drew Rowlands, deputy superintendent of operations for SDUSD, only stated that some student data was downloaded by "an unauthorized user," and that Defendants were still working to determine what types of information have been accessed. According to SDUSD, families of nearly 99,000 students were notified of this attack, mostly parents of minor students. There is no indication whether notice was also provided to SDUSD employees, even though according to POWERSCHOOL their data may have been compromised as well.

38. According to information publicly reported on January 22, 2025, SDUSD was one of the largest school districts whose student and employee data was compromised, and the largest in the State

of California. While at the time of this report it was unclear if teacher data was accessed or stolen, according to information provided by POWERSCHOOL the records of 472,278 SDUSD students and/or family members were impacted by this breach. This is both significant and troubling, in that as of the 2023-24 school year SDUSD reported it had an enrollment of approximately 95,233 students. As so far it appears the only notification of this breach that was sent out by SDUSD went to families of current students, this would mean that POWERSCHOOL's systems permitted the exfiltration of close to 400,000 students or their families who are no longer currently within the SDUSD and thus may have no idea their data has been impacted.

39. Cathedral Catholic sent out a similar email notice addressed to "Parents/Guardians," on or about January 10, 2025, as described in paragraph 26 above, which did not contain material mandated disclosures as set forth herein.

40. SDUSD said it will continue to notify families about any important updates regarding the attack as it receives more information. However, as of the filing of this Complaint it has not done so. None of the Plaintiffs have received any subsequent communications from Defendants or their respective schools since that notice, nor does it appear POWERSCHOOL has sent any direct notifications to Class members.

41. The attack, which POWERSCHOOL claims it discovered on or about December 28, 2024, specifically targeted Defendants, which SDUSD identified in the email letter as "a global student information system provider used by SDUSD and other school districts across the country." The email letter from SDUSD went on to state "PowerSchool has told us the situation has been contained, and they have taken actions to prevent the information from being used. *We have reinforced to this vendor our expectations about upholding the highest data security standards*" (emphasis added).

42. Thus, at this point Plaintiffs and Class members are still in the dark as to what information was compromised, by whom, and what they should do to protect themselves. However, the longer cyber thieves can go undetected, the more they stand to profit from their illegal activities. Personal data about minor students, which may include special education information and other highly sensitive materials, should be robustly protected by schools and school districts, both directly and through their agents, contractors and vendors.

43. While POWERSCHOOL provided notice to schools and school districts such as Cathedral Catholic and SDUSD shortly after learning of the breach, POWERSCHOOL has failed and refused to provided notice to Plaintiffs and the Class; disclose critical information about the breach including the number of individuals whose Personal and Medical Information was compromised; the actual nature of the data compromised; and who was behind the data breach. In addition, POWERSCHOOL has failed to provide a general description of the breach incident directly to affected individuals as required for purposes of statutory compliance and failed to adequately describe the information that was compromised. Instead, the lack of notice of the breach by POWERSCHOOL, in violation of California law, has unfairly prevented affected individuals from having sufficient information to take specific mitigation measures they might have otherwise chosen if they had been provided even the basic facts.

44. Timely and complete disclosures about data breaches are critically important. For example, disclosing who was behind the cyber-attack likely would make a material difference to a consumer if his or her Personal and Medical Information was compromised by researchers trying to alert POWERSCHOOL that its security systems are deficient, as opposed to that sensitive data was stolen by hackers or cyber-thieves. Knowledge that the latter has occurred highlights the need to take as many mitigation measures as possible and scrutinize future financial and medical statements for evidence of identity theft.

45. According to federal charging documents recently filed by the United States Department of Justice as part of a guilty plea related to this data breach was perpetrated by a hacker who using employee credentials accessed and exfiltrated a large volume of sensitive student and teacher data from within POWERSCHOOL's computer systems, constituting a release in violation of Cal. Civil Code §§ 56.06(d), 56.13, 56.101(a), 56.101(b)(1)(A), and 56.36(b). This large download of data went undetected by POWERSCHOOL for over three months according to these charging documents.

46. According to these charging documents, the hacker ultimately transferred the stolen data to a cloud-based server in Ukraine undetected by POWERSCHOOL for over three months. The hacker transferred the following data from POWERSCHOOL's computer systems to the Ukrainian cloud-based server: (a) Names; (b) Email addresses; (c) Phone numbers; (d) Social Security numbers; (e) Dates of birth; (f) Medical information; (g) Residential addresses; (h) Parent and guardian information;

and (i) Passwords.

47. That data was stored remotely and used by the hacker to make a multimillion-dollar ransom demand on POWERSCHOOL or about December 28, 2024, in which the hacker threatened to release the private data of over 60 million students and 10 million teachers unless it paid the hacker 30 Bitcoin, valued at approximately $2.85 million at the time.

48. On January 7, 2025, POWERSCHOOL publicly admitted that it suffered a cyberattack after a threat actor used credentials to access the company's PowerSource customer support portal. Although the charging documents confirm that the hacker used credentials associated with a POWERSCHOOL employee or contractor, they do not specify how he initially obtained these credentials from that employee. It is presently unknown whether these credentials were obtained via phishing, purchased on the dark web, guessed using credential stuffing techniques, or acquired through other means. The absence of this detail underscores the need for further discovery and investigation into POWERSCHOOL's contractor credential management and broader access controls as well as why a massive download of date from POWERSCHOOL's servers would go undetected for three months.

49. POWERSCHOOL ultimately paid an undisclosed amount in ransom to the hacker, who recently pleaded guilty to federal charges including cyber extortion, unauthorized access to protected computers, and aggravated identity theft. However, as set forth below, there is no indication the data was destroyed or returned. In fact, POWERSCHOOL has recently admitted subsequent ransom demands have been made referencing the same data.

### A. Defendants Were on Notice of The Potential for Unauthorized Access to Their Systems

50. Defendants had been placed on notice of the potential for such an attack for years but did not take sufficient steps to prevent it.

51. POWERSCHOOL's negligence or reckless or knowing disregard of the obligations to safeguard the Personal and Medical Information of Plaintiffs and Class members was exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive student data, especially considering the substantial increase in cyber-attacks and data breaches of school districts throughout California and the United States in years preceding the date of this attack.

52. Defendants also were on notice that they should have and could have prevented this attack by properly securing and encrypting the Personal and Medical Information of Plaintiffs and Class members and taking the steps outlined throughout this Complaint to prevent infiltration by methods such as phishing by, for example using multi-factor authentication methods or noticing if massive amounts of data had been uploaded by a particular individual. Defendants failed, however, to take adequate measures to prevent this attack. Defendants also needed to segment data of present and former students by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems, as well as delete data it no longer needed to have ready access to, such as data of students no longer in a school or school district. Defendants knew, or reasonably should have known, the importance of safeguarding the Personal and Medical Information entrusted to them and of the foreseeable consequences if their computer network was breached yet did not take appropriate actions to protect such data.

53. The fact that Defendants now understand the need to close the barn door is of cold comfort to the hundreds of thousands of impacted individuals whose data has now been compromised. Spencer Starkey, Executive VP EMEA at SonicWall, said in response to this attack that schools and universities hold highly sensitive data, which can be used by malicious actors to replicate students' or staff members' identities for financial crime: "This makes such data particularly ripe for extortion."

54. Cyber-attacks like the one successfully perpetrated on POWERSCHOOL have become so notorious that the FBI and U.S. Secret Service back in 2019 issued a warning to potential targets such as POWERSCHOOL and/or schools and school districts such as Cathedral Catholic and SDUSD so they are aware of, and prepared for, a potential attack.

55. The increase in such attacks, and the attendant risk of future attacks, was widely known within POWERSCHOOL's clientele, and even was the subject of presentations by Defendants to its clientele in terms of how to protect such data. Due to the high-profile nature of these breaches and attacks, Defendants either were or should have been on heightened notice and aware of such attacks and, therefore, should have been on notice of their duty to be proactive in guarding against being subject to such attacks and adequately performed their duty of overseeing, preparing for, and immediately identifying such an attack and/or ensuring that their vendors, contractors and agents were prepared for

and could identify such an attack.

56. Yet, despite the prevalence of public announcements about these data breach and data security compromises and Defendants' knowledge of them and even presentations on how to protect such data from cyber-attacks, Defendants failed to take appropriate steps to protect Plaintiffs' and Class members' Personal and Medical Information from being compromised and failed to timely, properly, and appropriately and promptly notify such persons that such an attack had taken place and the nature of the exfiltrated data that was stolen. They have still failed and refused to provide such direct and/or updated notice.

**B. Defendants' Obligation to Protect Personal and Medical Information Under State and Federal Law and The Applicable Standard of Care**

57. Defendants are required by the CMIA and various other enactments to protect Plaintiffs' and Class members' Personal and Medical Information and to handle notification of any breach in accordance with applicable breach notification statutes. These duties are established in numerous California statutes, including Cal. Civ. Code §§ 56.13, 56.20, 1798.29, 1798.81.5, Article I, Section 1 of the California Constitution, the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C, 20 U.S.C. § 1232g(b)(1) & (b)(2), 34 C.F.R. § 99.30, 34 C.F.R. § 300.623(a), 15 U.S.C. § 45 *et seq*., and California Education Code §§ 49060(a), 49062, & 49076(a), 5 C.C.R. §§ 431, 433, & 434.

58. Student records within schools and school districts such as Cathedral Catholic and SDUSD contain a trove of health-related information, including health records, visits to health staff, immunization and vaccine records, and IEP records that include not only reports and diagnoses of particular conditions but also those of family members of a particular student. POWERSCHOOL has admitted on its website that it maintains health and immunization records of the students in schools and school districts for which it provides services regarding students' medical history, mental or physical condition, or treatment. Such files and records thus constitute Medical Information and PHI under both state and federal law. And either directly or as a business associate, vendor, contractor and/or agent of

schools and school districts in California such as Cathedral Catholic and SDUSD, POWERSCHOOL is subject to these laws and regulations. To the extent it has accessed PHI, POWERSCHOOL is or should be considered a "covered entity" for purposes of HIPAA.

59. As Defendants are entities either directly or indirectly covered by HIPAA, they are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C, which establish national security standards and duties for Defendants' protection of Personal and Medical Information maintained by them in electronic form. In addition, as Defendants admittedly maintain such information, they are required by law to enter into Business Associate Agreements with entities where they commit to protect PHI in its possession. According to the U.S. Department of Health and Human Services: "A 'business associate' is a person or entity, other than a member of the workforce of a covered entity, who performs functions or activities on behalf of, or provides certain services to, a covered entity that involve access by the business associate to protected health information. A 'business associate' also is a subcontractor that creates, receives, maintains, or transmits protected health information on behalf of another business associate. The HIPAA Rules generally require that covered entities and business associates enter into contracts with their business associates to ensure that the business associates will appropriately safeguard protected health information."[8] POWERSCHOOL is thus subject to the mandates of HIPAA in terms of their obligation to protect the PHI of Plaintiffs and Class members, either directly or as a Business Associate of schools and school districts such as Cathedral Catholic and SDUSD.

60. HIPAA requires companies such as Defendants to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

> "Electronic protected health information" is defined as "individually identifiable health information ... that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

61. HIPAA's Security Rule requires Defendants to: (a) ensure the confidentiality, integrity,

[8] https://www.hhs.gov/hipaa/for-professionals/covered-entities/sample-business-associate-agreement-provisions/index.html

and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits; (b) protect against any reasonably anticipated threats or hazards to the security or integrity of such information; (c) protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and (d) ensure compliance by their workforce.

62. HIPAA also requires Defendants to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information", 45 C.F.R. § 164.306(c), and also to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

63. The cyber-attack on Defendants, particularly in light of the information that either was or should have been received by them years before the attack, establishes they did not comply with these Rules. This attack resulted from a combination of insufficiencies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations, including, but not limited to, the following:

(a) Failing to ensure the confidentiality and integrity of electronic PHI that Defendants create, receive, maintain, and transmit, in violation of 45 C.F.R. section 164.306(a)(1);

(b) Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. section 164.312(a)(1);

(c) Failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. section 164.308(a)(1);

(d) Failing to identify and respond to suspected or known security incidents and mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 C.F.R. section 164.308(a)(6)(ii);

(e) Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 C.F.R. section 164.306(a)(2);

(f) Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health

information, in violation of 45 C.F.R. section 164.306(a)(3);

(g) Failing to ensure compliance with HIPAA security standard rules by its workforce, in violation of 45 C.F.R. section 164.306(a)(4);

(h) Impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 C.F.R. section 164.502, *et seq.*;

(i) Failing to effectively train all members of its workforce (including independent contractors or employees) on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. sections 164.530(b) and 164.308(a)(5); and

(j) Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI in compliance with 45 C.F.R. section 164.530(c).

64. Additionally, the Family Educational Rights and Privacy Act ("FERPA") requires that an education institution (and by definition its contractors and agents when they access such information) must have a policy or practice of prohibiting the release of education records or providing access to any personally identifiable information in education records, unless there is prior written consent of a parent or eligible student except as authorized by law. *See* 20 U.S.C. § 1232g(b)(1) and (b)(2). Similarly, 34 C.F.R. § 99.30 provides that a "parent or eligible student shall provide a signed and dated written consent before an educational agency or institution discloses personally identifiable information from the student's education records, except as provided in § 99.31." "Disclosure" is defined to mean "to permit access to or the release, transfer, or other communication of personally identifiable information contained in education records to any party, by any means, including oral, written, or electronic means." 34 C.F.R. § 99.3.

65. Defendants violated the mandatory safeguards imposed on them by 34 C.F.R. § 300.623(a) (stating that, with respect to students receiving special education services, "[e]ach participating agency must protect the confidentiality of personally identifiable information at collection, storage, disclosure, and destruction stages.")

66. Defendants also violated the duties applicable to them under the Federal Trade

Commission Act, 15 U.S.C. § 45 *et seq*. ("FTC Act"), from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC pursuant to that Act has concluded that failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

67. Moreover, Defendants violated additional mandatory duties imposed by California state statutes, regulations, such as by way of example SDUSD's mandated policies that POWERSCHOOL was legally and contractually required to comply with and that were enacted to protect the confidentiality, security and integrity of employee and student records, and to protect against violations of employee and student privacy, breach and exposure of employee and student confidential information, and the risk of identity theft. These enactments include, but are not limited to:

- California Education Code § 49060(a) (describing the intent of the California Legislature to resolve potential conflicts between California law and the provisions of Public Law 93-380 (FERPA) regarding, inter alia, the confidentiality of pupil records);
- Cal. Ed. Code § 49062 (mandating that "school districts shall establish, maintain, and destroy pupil records according to regulations adopted by the State Board of Education".);
- Cal. Ed. Code § 49076(a) (a school district shall not permit access to pupil records without written parental consent or under judicial order with the exception of certain situations not relevant here);
- Title 5 of the California Code of Regulations § 434 (limiting access to pupil records as set forth in Cal. Ed. Code §§ 49069 and 49073-49077);
- 5 C.C.R. § 431(c)(2) (mandating that each California school district establish written policies and procedures that shall assure the security of pupil records);
- 5 C.C.R. § 433(a) (mandating that access to pupil records maintained by a California school district shall be limited to authorized persons pursuant to procedures devised by the district's custodian of records);
- SDUSD Policy Number BP 3580(a):

  (1) mandating that "[t]he Superintendent or designee shall ensure that district records are developed, maintained, and disposed of in accordance with law, Board policy, and administrative regulation."

  (2) mandating that the Superintendent or designee "develop a secure document management system that provides for the storage, retrieval, archiving, and destruction of district documents, including electronically stored information such as email."

  (3) mandating that "[t]his document management system shall be designed to comply with state and federal laws regarding security of records, record retention and destruction."

(4) mandating that "[t]he Superintendent or designee shall ensure the confidentiality of records as required by law and shall establish regulations to safeguard data against damage, loss, or theft."

(5) mandating that "[i]n the event of any known or reasonably suspected breach of the security of district records containing confidential personal information including, but not limited to, a social security number, driver's license or identification card number, medical information, health insurance information, or an account number in combination with an access code or password that would permit access to a financial account, the Superintendent or designee shall ***immediately*** notify local law enforcement agencies and any affected person. Notification of affected individuals may be delayed if a law enforcement agency determines that the notification would impede a criminal investigation." (emphasis added);

- SDUSD Policy Number 7100 and 7101:

  (1) mandating that "[p]ersonnel, payroll, medical and similar records, disclosure of which would constitute unwarranted invasion of personal privacy, must be handled in a manner that will assure such privacy."

  (2) Mandating that "[a]ccess to or release of employee information to anyone other than the employee shall not be permitted except on a "need-to-know" basis; approval of principal, department head, or division head, as appropriate, is required."

- SDUSD Policy I-1700 (stating: "Personnel information concerning district employees generally is considered confidential and may be reviewed by authorized managers and/or supervisors only on a "need-to-know" basis under specific conditions. Personnel, medical, and similar records, disclosure of which would constitute unwarranted invasion of personal privacy, must be handled in a manner that will assure such privacy. Medical records shall be maintained in separate secured files pursuant to the Americans with Disabilities Act of 1990.")

68. Each of the mandatory duties set forth herein is imposed by an enactment that is designed to protect students, parents, employees, and other individuals against the risk of the particular kind of injuries suffered by Plaintiffs and Class members in this data breach where, as described in greater detail in this Complaint, their Personal and Medical Information was accessed, viewed, disclosed, exfiltrated and not kept confidential. Thus, as an agent, vendor and contractor of schools and school districts in California such as Cathedral Catholic and SDUSD who was contractually and legally obligated to protect such information it was entrusted with in accordance with state and federal laws and applicable policies and procedures, Defendants are liable for the injuries sustained by Plaintiffs and Class members proximately caused by their failure to discharge those duties.

69. As established by these laws and policies, Defendants owed a duty to Plaintiffs and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and

protecting the Personal and Medical Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants also owed a duty to Plaintiffs and Class members to provide reasonable security systems that are in compliance with IT industry and cybersecurity standards and best practices as well as applicable state and federal requirements, are able to detect breaches and extensive downloads of information when they occur rather than after the fact, and to ensure that their computer systems, networks, and protocols adequately protected this Personal and Medical Information and did not expose such information to infiltration and exfiltration. This also included a duty to Plaintiffs and Class members to design, maintain, and test Defendants' computer systems to ensure that the Personal and Medical Information in their possession was adequately secured and protected; to create and implement reasonable data security practices and procedures to protect the Personal and Medical Information in their possession; to avoid access to their systems through processes such as phishing, including adequately training employees and others who accessed information within their systems on how to adequately protect Personal and Medical Information; to avoid permitting such infiltration such as by use of multi-factor authentication; to implement processes that would detect a breach of their data security systems or downloads of a mass amount of information in a timely manner and to act upon data security warnings and alerts in a timely fashion; to timely disclose directly to all affected persons if their computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft or exfiltration; and to disclose in a timely and accurate manner when data breaches or cybersecurity attacks occurred and provide appropriate notice.

70. Defendants owed these duties to Plaintiffs and Class members because they were foreseeable and probable victims of any inadequate data security practices. Defendants affirmatively chose to design their systems with inadequate user authentication, security protocols and privileges, and/or set up faulty patching and updating protocols and backup systems. These affirmative decisions resulted in unauthorized third parties being able to execute the attack and exfiltrate the data in question, to the injury and detriment of Plaintiffs and Class members. By taking affirmative acts inconsistent with these obligations that left POWERSCHOOL's computer system vulnerable to attack, Defendants disclosed and permitted the disclosure of Personal and Medical Information to unauthorized third parties. Through such actions or inactions, POWERSCHOOL failed to preserve the confidentiality of Personal

and Medical Information they were duty-bound to protect, and schools and school districts failed to ensure that POWERSCHOOL had adequately done so.

### C. The Value of Personal and Medical Information Shows Plaintiff and Class Members Lost Valuable Money or Property as a Result of This Unauthorized Access

71. It is well known that Personal and Medical Information is a valuable commodity that is bought, sold and traded among companies like other commodities.[9] Because of this, Personal and Medical Information is the frequent target of hackers, such that Plaintiffs and Class members would lose money or property if their data was permitted to be improperly accessed or stolen.

72. Defendants either were or should have been aware that the Personal and Medical Information they collect is highly sensitive and of significant value to those who would use it for wrongful purposes. As the FTC has reported, identity thieves can use this information to commit an array of crimes including identify theft, medical and financial fraud.[10]

73. After the Personal and Medical Information has been breached and exfiltrated, the cyber-thieves will do one of three (or some combination of) things with the data: (i) use the confidential information themselves to create duplicate credit cards, commit identity theft, medical fraud or financial fraud; (ii) sell this information on the dark web to parties who will use the information for illicit purposes, or (iii) extort the entity that allowed the breach to occur in the first place by demanding a ransom be paid for the return of the stolen confidential information or to keep the information from being publicly released. Each of the above acts requires the cyber-thieves to access and view the exfiltrated confidential information to determine exactly what information was taken (Social Security numbers, names, dates or birth, medical information, etc.) as well as to determine the scope of the data taken (the number of individuals whose confidential information was taken).

74. An additional reason that all exfiltrated Personal and Medical Information must be viewed

---

[9] See*, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[10] Federal Trade Commission, What To Know About Identity Theft, https://consumer.ftc.gov/articles/what-know-about-identity-theft.

by cyber-thieves is that certain information carries a premium value.[11] For example, if credit card information was exfiltrated, cards with a chip and PIN and high-limit or no-limit cards (such as the American Express Black Card) command a higher price than other stolen cards.[12] Only by viewing and cataloging the exfiltrated data can the cyber-thieves ascertain the value of the information on the black market.

75. A robust cyber black market exists in which criminals post stolen Personal and Medical Information on multiple underground Internet websites, commonly referred to as the dark web, to create fake insurance claims, purchase and resell medical equipment, or access prescriptions for illegal use or resale. Criminals often trade stolen Personal and Medical Information on the "cyber black market" for years following a breach. For example, it is believed that certain Personal and Medical Information compromised in the 2017 Experian data breach was being used three years later by identity thieves to apply for COVID-19-related benefits.[13] According to a 2017 Javelin strategy and research presentation, fraudulent activities based on data stolen in data breaches that is between two and six years old had increased by nearly 400% over the previous 4 years.[14]

76. According to Experian, one of the three major credit bureaus, medical records can be worth up to $1,000 per person on the dark web, depending upon completeness.[15] PII and PHI can be sold at a price ranging from approximately $20 to $300.[16]

77. The Ponemon Institute found that medical identity theft can cost victims an average of $13,500 to resolve per incident and that victims often must pay off the imposter's medical bills to resolve the breach.[17]

---

[11] See Rand Corporation, Data Thieves: The Motivations of Cyber Threat Actors and Their Use and Motivation of Stolen Data, Mar. 15, 2018.

[12] *Id.*

[13] Janelle Stecklein, *Director: 64,000-plus fraudulent unemployment claims 'mitigated'*, The Duncan Banner (June 24, 2020), https://www.duncanbanner.com/news/director-64-000-plus-fraudulent-unemployment-claims-mitigated/article_dc446671-73a6-5e8a-b732-bcedba72b458.html.

[14] See, Brian Stack, *Here's How Much Your Personal Information is Selling for on the Dark Web* (2017) https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ .

[15] *Id.*

[16] https://www.privacyaffairs.com/dark-web-price-index-2021/

[17] Brian O'Connor, Healthcare Data Breach: What to Know About Them and What to Do After One, Experian (June 14, 2018), https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.

78. In another study by the Ponemon Institute in 2015, 31% of medical identity theft victims lost their healthcare coverage as a result of the incident, while 29% had to pay to restore their health coverage, and over half were unable to resolve the identity theft at all.[18]

79. Instead of selling exfiltrated confidential information on the dark web, cyber-thieves may extort ransom payments via the use of ransomware, which is malware that infects a computer system preventing any computer files/data, systems, or network from being accessed until a ransom is paid for the return of the files/data, systems or network.[19] Or as happened here, hackers and cyber-thieves will extort a ransom from the entity by threatening to destroy stolen files or data or release it to the public.[20]

80. Once Personal and Medical Information is stolen, particularly such as student identification numbers or Social Security numbers, fraudulent use of that information and damage to victims may continue for years, as the fraudulent use of such data resulting from the attack may not come to light for years or may simply be inventoried for later use. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches: "[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[21]

81. The ramifications of Defendants' failure to keep the Personal and Medical Information in question secure from a cyber-attack and then not directly or fully advise affected persons of all the relevant facts for months if ever is thus not temporary but long lasting, as the fraudulent use of that information and damage to victims may continue for years. That is one of the reasons providing prompt, accurate and fulsome notice to consumers as expeditiously as possible is necessary, so they can take actions to protect themselves. Yet Defendants are still refusing to even acknowledge the extent of the attack that took place to the direct victims of this practice, let alone provided timely, proper, and

[18] Ponemon Institute, *Fifth Annual Study on Medical Identity Theft*, (February 2015), http://www.medidfraud.org/wp-content/uploads/2015/02/2014_Medical_ID_Theft_Study1.pdf.
[19] https://www.ic3.gov/Content/PDF/Ransomware_Fact_Sheet.pdf
[20] *Id.*
[21] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-07-737/html/GAOREPORTS-GAO-07-737.htm .

appropriately comprehensive notice in the most expedient time possible and without unreasonable delay to direct victims of this incident, as required under California law.

82. As a proximate result of the Defendants' acts and omissions described above, Plaintiffs and the Class members have suffered and will suffer injury, including, but not limited to: (i) actual identity, medical and financial compromise and the present, imminent and continuing increased risk of future identity theft, medical fraud and financial fraud; (ii) the loss of the ability to control how their Personal and Medical Information is used; (iii) the loss of their constitutionally protected privacy interest by the compromise and publication of their Personal and Medical Information to unauthorized third parties; (iv) deprivation of, and/or diminution in value of their Personal and Medical Information for which there is a well-established national and international market and has been found to have a tangible value as set forth above and is the property of the persons whose data was exfiltrated; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the unlawful sharing of their Personal and Medical Information, including but not limited to time and effort spent researching how to prevent, detect, contest, and recover from fraud and identity theft and implementing measures to do so; and (vi) present and future costs and harm in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal and Medical Information compromised by Defendants' actions.

83. POWERSCHOOL joined the "K-12 Education Technology by Design Pledge", which is an initiative by the U.S. Cybersecurity and Infrastructure Security Agency that seeks to ensure better protection of the personal information of K-12 students in the United States. As part of this process, POWERSCHOOL was required to make several pledges including promising transparency and accountability regarding its cybersecurity practices in order to provide the education community with the ability to navigate the evolving threat landscape. POWERSCHOOL also promised to "Take Ownership of Customer Security Outcomes." POWERSCHOOL has failed miserably to live up to either of these pledges. Instead of the promised "transparency and accountability," POWERSCHOOL has still failed to notify teachers, staff and the families of hundreds of thousands of students whose Personal and Medical Information had been accessed and downloaded of the nature of data breach and its scope and extent. Instead of taking ownership of customer security outcomes, POWERSCHOOL has refused to admit it

failed to adequately safeguard the Personal and Medical Information of these teachers, staff students and parents and provide direct notice to them, and has not taken steps to remediate the harm this failure has caused Plaintiffs and Class members.

### D. Ongoing Extortion Demands Against School Districts Shows Such Data is Still Unprotected

84. Despite POWERSCHOOL's admitted payment of a ransom in late December 2024 and claims that it personally witnessed the destruction of such data, threat actors have continued to exploit the stolen data, re-targeting individual school districts with renewed extortion demands. In or around February 2025, at least twenty school districts in North Carolina, along with the North Carolina Department of Public Instruction, received direct threats from cybercriminals demanding payment in exchange for not releasing student and staff data believed to have been exfiltrated during the POWERSCHOOL breach. According to Superintendent Maurice Green, the matter was referred to the state attorney general for further investigation[22].

85. Similar threats were later received by the Toronto District School Board in early May 2025, where the attackers provided sample data that matched the same information stolen from POWERSCHOOL systems in December 2024[23].

86. POWERSCHOOL recently publicly acknowledged that individual school districts were still being extorted using data from the original breach. In a May 14, 2025, report by CPO Magazine, POWERSCHOOL representatives stated: "POWERSCHOOL is aware that a threat actor has reached out to multiple school district customers in an attempt to extort them using data from the previously reported December 2024 incident." The company clarified that these extortion attempts were not the result of a new breach, as the data samples matched those previously stolen. The company simply stated that it had referred the matter to law enforcement agencies in both the United States and Canada and was working

[22] See Greg Toppo, "PowerSchool Paid Off Hackers After Huge Breach—Now They're Extorting Districts," The 74 (Feb. 27, 2025), https://www.the74million.org/article/powerschool-paid-off-hackers-after-huge-breach-now-theyre-extorting-districts/.)

[23] See Scott Ikeda, "PowerSchool Confirms Ongoing Cyber Extortion of Individual Schools Despite Ransom Payment," CPO Magazine (May 14, 2025), https://www.cpomagazine.com/cyber-security/powerschool-confirms-ongoing-cyber-extortion-of-individual-schools-despite-ransom-payment/.)

with affected customers. But such an admission revealed that in fact such data had not been destroyed and deleted. And there is no information on the status of the data on the cloud-based Ukrainian server where this data was exfiltrated and sent to a foreign country.

87. These facts and recent admissions underscore the enduring and escalating risk faced by affected students, parents, teachers, and members of the Class, demonstrating that the unauthorized disclosure of personal information as a result of this data breach has not been contained and continues to expose Plaintiffs and Class Members to harm. These continued extortion efforts confirm that POWERSCHOOL's statements to Plaintiffs and Class members, both directly and through school communications, were materially false or misleading at the time made.

## CLASS ALLEGATIONS

88. Plaintiffs bring this action pursuant to California Code of Civil Procedure § 382 on behalf of themselves, their minor children, and all members of the following proposed Class and Subclass, collectively referred to in the Complaint as the "Class."

89. **Proposed Class:** All individuals currently residing in and citizens of the State of California whose Personal Identifying Information and/or Personal Health Information —including that of minor children—was collected, maintained, or stored by POWERSCHOOL and was accessed, exfiltrated, or disclosed as a result of the cybersecurity incident described herein. This includes parents or legal guardians whose minor children were enrolled in any California K–12 public, private, or charter school that used POWERSCHOOL services; current and former students enrolled in such schools; and current and former teachers, staff, and school employees whose data was maintained in POWERSCHOOL systems.

90. **Proposed Subclass:** All individuals currently residing in the State of California who, at the time of the data breach at issue, were either: (a) enrolled students or the parents or guardians of such students, or (b) employed as teachers or school staff, in any K–12 educational institution—public, charter, or private—located within San Diego County, California, including but not limited to schools within the San Diego Unified School District and private institutions such as Cathedral Catholic, and whose Personal Identifying Information and/or Personal Health Information was accessed, exfiltrated, or disclosed as a result of the cybersecurity incident described herein.

91. Excluded from the Class are: (1) any judicial officer presiding over this action and any members of their immediate families; (2) Defendants, Defendants' subsidiaries, affiliates, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and current or former employees, officers, and directors; (3) counsel for the parties; and (4) any persons who have filed an individual lawsuit against Defendants for damages, injuries or other losses arising out of the data breach described herein.

92. Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether class certification is appropriate.

93. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements for class certification under Section 382.

94. The members of the Class are sufficiently numerous such that the joinder of all Class members is impracticable. The proposed Class contains teachers, students and their families who POWERSCHOOL had access to their records. As alleged above, just by way of example SDUSD has stated the families of up to 99,000 students may have had their data accessed, and POWERSCHOOL's own data indicates this number may be closer to 475,000 students, potentially including their families or SDUSD employees who may have also had their Personal and/or Medical Information improperly accessed.

95. Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. The factual bases underlying Defendants' misconduct are common to all Class members and represent a common thread of unlawful and negligent conduct, resulting in injury to all members of the Class. These common legal and factual questions include the following:

(a) Whether Defendants implemented and maintained reasonable security practices and procedures appropriate to protect Plaintiffs' and Class members' Personal and Medical Information from unauthorized access, destruction, use, theft, modification, or disclosure;

(b) Whether Defendants and/or their contractors, subcontractors, employees, and/or agents negligently or unlawfully disclosed or permitted the unauthorized access to and disclosure of Plaintiffs' and Class members' Personal and Medical Information to unauthorized persons;

(c) Whether Defendants had taken reasonable steps to ensure they had not negligently created, maintained, preserved, stored, abandoned, destroyed, or disposed of Plaintiffs' and Class members' Personal and Medical Information, and whether they failed to protect and preserve the integrity of the Personal and Medical Information found on POWERSCHOOL's computer systems;

(d) Whether Defendants' actions or inactions were a proximate result of the negligent or reckless release of confidential information or records concerning Plaintiffs and Class members;

(e) Whether Defendants were acting in their capacities as vendors, agents or contractors of schools or school districts in California in storing the data in question of Plaintiffs and Class members, thereby making the laws applicable to such schools and school districts and its protection of data entrusted to it apply with equal force to them;

(f) Whether Defendants adequately supervised and oversaw or provided negligent oversight over their agents, contractors, employees or vendors;

(g) Whether Defendants adequately, promptly, timely, and accurately informed Plaintiffs and Class members that their Personal and Medical Information had been compromised and whether Defendants violated the law by failing to promptly and fully directly notify Plaintiffs and Class members of this material fact;

(h) Whether and when Defendants adequately addressed and fixed the vulnerabilities that permitted the cybersecurity attack and resulting data breach to occur;

(i) Whether Defendants failed to comply with the data breach notice requirements of Cal. Civ. Code § 1798.82(a);

(j) Whether Defendants violated the laws cited herein;

(k) Whether Defendants are liable for damages under the Causes of Action asserted herein, as applicable to each of those Causes of Action and the scope of such damage; and

(l) Whether Plaintiffs and the Class are entitled to injunctive and equitable relief to redress the imminent and currently ongoing harm faced as a result of the cybersecurity attack at issue and Defendants' failure to provide full and adequate notice thereof, and the scope of such relief.

96. Plaintiffs' claims are typical of the claims of other Class members. There is no unique defense available to Defendants as Plaintiffs, like all Class members, were apparently subjected to the

unauthorized disclosure of their Personal and Medical Information as a result of Defendants' conduct and have yet to receive full and adequate notice thereof directly from Defendants.

97. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, including data breaches concerning the sensitive Personal and Medical Information of individuals. Plaintiffs and their counsel are committed to vigorously prosecuting the action on behalf of the Class. Neither Plaintiffs nor their counsel have any materially interest adverse to or that irreconcilably conflicts with those of other Class members.

98. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and may have no effective and complete remedy and may not even learn of the scope of the wrongful conduct at issue. Class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation and results in substantial benefits in that it conserves the resources of the courts and litigants and promotes consistency and efficiency of adjudication. The conduct of this action as a class action presents few management difficulties and protects the rights of each Class member. Plaintiffs thus anticipate no difficulty in the management of this case as a class action and providing notice to members of the Class.

99. Class treatment is also appropriate because Defendants have acted on grounds generally applicable to members of the Class, making class-wide equitable, injunctive, declaratory, and monetary relief appropriate.

100. Notice of the pendency or resolution of this action can be provided as Defendants have or can obtain contact information for all or a significant majority of Class members.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## VIOLATION OF THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT

**Cal. Civ. Code § 56 *et seq*.**

101. Plaintiffs incorporate the foregoing allegations by reference as if fully set forth herein. This Cause of Action is brought on behalf of themselves and all Class members who had their Medical Information, as defined by Cal. Civ. Code § 56.05(j), compromised as a result of the unauthorized access

of data as set forth herein.

102. Defendant POWERSCHOOL is subject to the requirements of the CMIA under, *inter alia,* Cal. Civ. Code §§ 56.13 as a recipient of Medical Information from schools or school districts within the State of California pursuant to an authorization as provided by the CMIA or pursuant to the provisions of Cal. Civ. Code § 56.10(c). POWERSCHOOL functions as a student information system provider for public and private schools, including SDUSD and Cathedral Catholic, and its agreements and role in managing immunization and IEP records confirm that it acts as an agent of covered entities for purposes of CMIA liability. Any entity subject to the CMIA is under a duty to ensure the confidentiality of Medical Information is maintained and to protect Medical Information from any unauthorized use or disclosure.

103. SDUSD, Cathedral Catholic and other schools and school districts in California are an extensive provider of healthcare to current and former students. For example, SDUSD employs many healthcare providers including Psychologists, Counselors, Registered Nurses, Audiologists, Licensed Vocational Nurses and Health Technicians. Every school in the district employs an RN, LVN, and Health Technician. *See also* SDUSD Policy No. AR 5141.6(a) (School Health Services). SDUSD also operates several school-based health clinics on the campus of at least eight schools in the district which are devoted to providing medical care, mental health services, and family planning services to all of its current students as well as hundreds of thousands of former students.[24] Each clinic is staffed with healthcare workers and provides a wide array of medical and mental health services to SDUSD students including primary care services, treatment of acute illnesses and injuries, treatment of chronic health conditions such as asthma and diabetes, immunizations, vision and hearing screening, laboratory services, treatment of sexually transmitted diseases and pregnancy testing.[25] The clinics also provide mental health services including psychological evaluation, diagnoses of mental illnesses, counseling, treatment and crisis intervention.[26] SDUSD also receives medical information about students from healthcare providers employed outside the school district. Thus schools and school districts fall within the definition of a provider of health care. As a result, its agents, contractors and vendors, including POWERSCHOOL,

---

[24] https://www.sandiegounified.org/departments/nursing_and_wellness_program/school-_based_health_centers

[25] *Id.*

[26] *Id.*

are likewise subject to the CMIA. In addition, under the requirements of HIPAA Defendants are obligated to protect medical information in their possession from exfiltration and disclosure.

104. The extensive medical information schools and school districts such as Cathedral Catholic and SDUSD has regarding its students is sent to POWERSCHOOL, which maintains and stores this medical information and is obligated to protect such information from exfiltration and disclosure through Business Associate Agreements and by contract and law. POWERSCHOOL's website confirms that it receives, maintains and stores students' medical information, noting that student "Health and Immunization" information is among the data that it stores.[27]

105. The CMIA defines "medical information" to mean any individually identifiable information, in electronic or physical form, … regarding a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j). At all times relevant to this action, POWERSCHOOL is and was a recipient of Medical Information, within the meaning of Cal. Civil Code § 56.05(j), of Plaintiffs and the Class members pursuant to an authorization as provided by the CMIA or pursuant to the provisions of Cal. Civ. Code § 56.10(c) and was prohibited from further disclosing that medical information except in accordance with a new authorization that meets the requirements of Section 56.11, or as specifically required or permitted by other provisions of CMIA or by law. Therefore, POWERSCHOOL, as a recipient of Medical Information, within the meaning of Cal. Civil Code § 56.05(j), of Plaintiffs and the Class members pursuant to an authorization as provided by the CMIA or pursuant to the provisions of Cal. Civ. Code § 56.10(c) by agreement with and for the benefit of Plaintiffs, the Class members, the schools and school districts it serves is under a duty to preserve the confidentiality of the Medical Information of Plaintiffs and the Class members.

106. Alternatively, at all times relevant to this action, pursuant to Cal. Civil Code § 56.06(a), POWERSCHOOL is considered a "provider of health care" within the meaning of Cal. Civil Code §§ 56.05(p), because POWERSCHOOL is a software vendor that provides Student Information System (SIS) to SDUSD, Cathedral Catholic and other schools and school districts and prior to the breach it created, maintained, preserved, and stored, and continues to maintained, preserved, and stored, Medical Information, within the meaning of Cal. Civil Code § 56.05(j), of Plaintiffs and the Class members in

---

[27] https://www.powerschool.com/student-information-cloud/powerschool-sis/features/

order to make the information available to Plaintiffs and the Class members or to a provider of health care at the request of Plaintiffs and the Class members or a provider of health care, for purposes of allowing Plaintiffs and the Class members to manage their information, or for the diagnosis and treatment of Plaintiffs and the Class members. Alternatively, at all times relevant to this action, pursuant to Civil Code § 56.06(b), POWERSCHOOL is considered a "provider of health care" within the meaning of Civil Code §§ 56.05(p), because POWERSCHOOL is a software vendor that provides Student Information System (SIS) to SDUSD, Cathedral Catholic and other schools and school districts and prior to the breach it created, maintained, preserved, and stored, and continues to maintained, preserved, and stored, Medical Information, within the meaning of Cal. Civil Code § 56.05(j), of Plaintiffs and the Class members because it offers software and hardware to consumers, including to Plaintiffs, SDUSD, Cathedral Catholic and other schools and school districts, (1) in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, or (2) for purposes of allowing the individual to manage his or his information, or (3) for the diagnosis, treatment, or management of a medical condition of the individual. Therefore, POWERSCHOOL, as a "provider of health care" within the meaning of Civil Code § 56.05(p) and 56.06(a) & (b), was and is under a duty to preserve the confidentiality of the Medical Information of Plaintiffs and the Class members..

107. POWERSCHOOL must not disclose or permit the disclosure of Personal and Medical Information without first obtaining authorization to do so, subject to certain exceptions found in Cal. Civ. Code §§ 56.10(b) & (c) that do not apply here. To ensure the confidentiality of Personal and Medical Information is protected, the CMIA requires POWERSCHOOL:

(a) To create, maintain, preserve, store, abandon, destroy, or dispose of Personal and Medical Information in a non-negligent manner;

(b) To establish appropriate procedures to ensure the confidentiality and protection from the unauthorized use and disclosure of Personal and Medical Information, including implementing appropriate security systems, restricting access to files containing medical information, and not permitting the disclosure of medical information it possesses without having first signed an authorization permitting such use or disclosure; and

(c) To protect and preserve the integrity of electronic Personal and Medical Information kept in electronic health records systems or electronic medical records systems.

108. The term "electronic health record" or "electronic medical record" means an electronic record of health-related information on an individual that is created, gathered, managed, and consulted by authorized health care clinicians and staff. Cal. Civ. Code § 56.101(c) as defined by 42 U.S.C. § 17921(5).

109. Plaintiffs and members of the Class whose Medical Information was maintained in storage by Defendants are "Patients" as defined by Cal. Civ. Code section 56.05(l).

110. As described above, the actions or inactions of POWERSCHOOL failed to preserve the confidentiality of Personal and Medical Information, including but not limited to Class members' full names, dates of birth, addresses, Social Security numbers, as well as potentially health information that, either alone or in combination with other publicly available information, reveals their identities. And the recent charging documents referenced above confirm that Medical Information was among the types of information obtained as a result of this breach.

111. Due to POWERSCHOOL's negligent creation, maintenance, preservation and/or storage of Plaintiffs' and the Class members' Medical Information on POWERSCHOOL's networks, databases, and computers systems, POWERSCHOOL allowed a hacker, using employee credentials, to access POWERSCHOOL's computer systems and to exfiltrate Plaintiffs' and the Class's Medical Information, including Plaintiffs' and the Class's names, addresses, dates of birth, diagnosis/treatment information and treatment information, in electronic form, undetected by POWERSCHOOL for over three months, causing Plaintiffs' and the Class's Medical Information to be accessed and actually viewed by at least one unauthorized third party, without first obtaining an authorization, constituting a release in violation of Cal. Civil Code §§ 56.06(d), 56.13, 56.101(a), 56.101(b)(1)(A), and 56.36(b).

112. The Personal and Medical Information that was the subject of the attack and resulting data breach detailed above was compromised, accessed, removed, and viewed by unauthorized parties during and following the cybersecurity attack.

113. In violation of the CMIA, Defendants negligently released and failed to prevent the unauthorized acquisition of Personal and Medical Information by third parties, which California courts have recognized can constitute a breach of confidentiality under the CMIA. This disclosure of Personal and Medical Information to unauthorized individuals resulted from the negligent actions and inactions of

Defendants and their employees.

114. In violation of the CMIA, Defendants failed to ensure that POWERSCHOOL created, maintained, preserved, stored, abandoned, destroyed, or disposed of Personal and Medical Information of Plaintiffs and Class members in a manner that preserved the confidentiality of the information contained therein.

115. In violation of the CMIA, Defendants failed to ensure that POWERSCHOOL created, maintained, preserved, stored, abandoned, destroyed, or disposed of Personal and Medical Information of Plaintiffs and Class members in a non-negligent manner.

116. In violation of the CMIA, Defendants failed to establish appropriate procedures to ensure the confidentiality and protection from unauthorized use and disclosure of Personal and Medical Information, including having appropriate security systems in place restricting access to files containing medical information, and failed to permit the disclosure of medical information it possesses without having first signed an authorization permitting such use or disclosure.

117. In violation of the CMIA, Defendants failed to implement basic security measures, including multi-factor authentication, encryption, and monitoring controls, that would have prevented or mitigated the unauthorized exfiltration of sensitive Medical Information.

118. In violation of the CMIA, Defendants failed to ensure that POWERSCHOOL's electronic health record systems or electronic medical record systems would protect and preserve the integrity of Plaintiffs' and Class members' Personal and Medical Information.

119. In violation of the CMIA, Defendants negligently released confidential information or records concerning Plaintiffs and Class members and failed to identify such information had been improperly accessed and downloaded for months.

120. In violation of the CMIA, POWERSCHOOL failed to provide prompt, timely, and complete notice of the cybersecurity attack and resulting data breach.

121. As a direct and proximate result of Defendants' wrongful actions, inactions, omissions, and want of ordinary care that directly and proximately caused the release of Personal and Medical Information of likely hundreds of thousands of individuals, such Personal and Medical Information was viewed by, released to, and/or disclosed to unauthorized third parties without appropriate written

authorization.

122. As a result of POWERSCHOOL's above-described conduct in violation of the CMIA, Plaintiff and the Class members seek nominal damages of one thousand dollars ($1,000) for each violation under Civil Code §56.36(b)(1), and actual damages suffered, according to proof, for each violation under Civil Code § 56.36(b)(2) under this Cause of Action, and reasonable costs.

**SECOND CAUSE OF ACTION**

**Violation of California Customer Records Act**

**Cal. Civ. Code § 1798.81.5**

123. Plaintiffs incorporate the foregoing allegations by reference as if fully set forth herein to the extent relevant to this Cause of Action and the relief available thereunder.

124. The California Customer Records Act ("CRA"), Cal. Civ. Code § 1798.81.5, provides that "[i]t is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information."

125. Subdivision (b) of § 1798.81.5 further states that: "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

126. A "business" is defined extremely broadly under the CRA, including a "sole proprietorship, partnership, corporation, association, or other group, however organized and whether or not organized to operate at a profit, including a financial institution organized, chartered, or holding a license or authorization certificate under the law of this state, any other state, the United States, or of any other country, or the parent or the subsidiary of a financial institution." Cal. Civ. Code § 1798.80(a).

127. POWERSCHOOL is a business based in California that maintains personal information about California residents and is therefore subject to the obligations imposed by the CRA. This includes the duties to: (i) "implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure;" Cal. Civ. Code § 1798.81.5(d); (ii) "disclose the breach of security of

its system in the most expedient time possible and without unreasonable delay;" Cal. Civ. Code § 1798.82(a) and (iii) "notify the owner or licensee of the information of the breach of security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

128. Defendant POWERSCHOOL failed to notify the owners of the personal information acquired by the unauthorized person (i.e., Plaintiffs and Class members) directly of the data breach, asserting they were only required to provide notice to their "clients" (i.e., schools or school districts such as Cathedral Catholic or SDUSD). POWERSCHOOL never provided any direct notification of the breach to the Plaintiffs and the Class members and apparently has no intention of doing so.

129. Subdivision (b) of § 1798.84 provides that [a]ny customer injured by a violation of this title may institute a civil action to recover damages." Subdivision (e) of § 1798.84 further provides that "[a]ny business that violates, proposes to violate, or has violated this title may be enjoined."

130. Plaintiffs and Class members are "customers" within the meaning of subdivision (c) of § 1798.80 and subdivision (b) of § 1798.84 because they are individuals who provided personal information to Defendant POWERSCHOOL either directly and/or indirectly through their schools and school districts.

131. The personal information of Plaintiffs and Class members at issue constitutes "personal information" under subdivision (d)(1) of § 1798.81.5. The Personal Information POWERSCHOOL collects and that was impacted by Defendants' failure to implement and maintain reasonable security procedures and practices was not protected in a manner appropriate to the nature of the information it collected.

132. Defendants were obligated to protect the Personal Information of Plaintiffs and Class members from unauthorized disclosure, including an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social Security number; (ii) driver license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card

number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; and/or (v) health insurance information.

133. POWERSCHOOL knew or should have known that their computer systems and data security practices were inadequate to safeguard Plaintiffs' and Class members' Personal Information and that the potential risk of disclosure was likely.

134. POWERSCHOOL failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information at issue in order to protect the Personal Information of Plaintiffs and Class members from unauthorized access, destruction, use, modification, or disclosure. POWERSCHOOL further subjected Plaintiffs and Class members' nonencrypted and nonredacted Personal Information to unauthorized access and exfiltration, theft, or disclosure as a result of their actions and inactions set forth above.

135. All Defendants were also responsible for violations of the CRA  for the failure to adequately supervise and oversee or provided negligent oversight over their agents, contractors, employees or vendors.

136. POWERSCHOOL also violated the CRA by failing to disclose the breach of security described herein directly to Plaintiffs and Class members in the most expedient time possible and without unreasonable delay after they knew or reasonably believed that the Personal Information of Plaintiffs and Class members had been compromised. The CRA requires a business "that maintains computerized data that includes personal information that the business does not own shall notify the owner or licensee of the information of the breach of security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b). POWERSCHOOL has so far failed to directly notify the owners of the personal information acquired of the data breach. POWERSCHOOL never provided any notification of the breach to the Plaintiffs and the Class members, asserting it would only provide a general breach notification to schools and school districts such as Cathedral Catholic and SDUSD.

137. As a direct and proximate result of Defendants' violations of these duties, the unauthorized access, use, modification, or disclosure of the Personal Information of Plaintiffs and Class members took

place, including unauthorized access to, removal, use, modification, disabling, disclosure and/or conversion of the Personal Information of Plaintiffs and Class members by unauthorized third parties.

138. POWERSCHOOL's failure to notify Plaintiffs and the Class members of the data breach resulted in the unauthorized access, use or disclosure of the Personal Information of Plaintiffs and Class members.

139. As a direct and proximate result of Defendants' acts or omissions, Plaintiffs and Class members were injured and/or lost money or property including, but not limited to, the loss of Plaintiffs and Class members' legally protected interest in the confidentiality and privacy of their Personal Information, nominal damages, and additional losses described above. Plaintiffs seek all forms of damages provided under the CRA as well as injunctive relief pursuant to subdivision (b) of § 1798.84 as well as reasonable attorneys' fees and costs of suit as permitted by this statute or other applicable law.

## THIRD CAUSE OF ACTION

## INVASION OF PRIVACY

## (Constitutional and Common Law Invasion of Privacy)

140. Plaintiffs incorporate the foregoing allegations by reference as if fully set forth herein to the extent relevant to this Cause of Action and the relief available thereunder.

141. Under California law, a plaintiff may bring an invasion of privacy claim based on violations of the privacy rights set forth in the California Constitution and/or under common law.

142. Article I, Section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possession, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const., Art. I., § 1.

143. By virtue of California common law, Plaintiffs and Class members had a legitimate expectation of privacy in their Personal and Medical Information and were entitled to the protection of this information against disclosure to unauthorized third parties.

144. Plaintiffs and Class members turned this sensitive information over to schools and school districts in California such as Cathedral Catholic and SDUSD and thus to POWERSCHOOL with the expectation that it would be protected from disclosure, access or viewing by any unauthorized

individuals.

145. Defendants owed a duty to Plaintiffs and Class members to keep their Personal and Medical Information confidential.

146. Defendants failed to protect from release to unauthorized third parties the non-redacted and non-encrypted Personal and Medical Information of Plaintiffs and Class members and failed to adequately supervise and oversee or provided negligent oversight over their agents, contractors, employees or vendors.

147. Personal and Medical Information is among the most sensitive types of confidential information that can be collected about a person. As such, Plaintiffs and Class members reasonably expected POWERSCHOOL as an agent, contractor or vendor of schools and school districts in California to safeguard this information from any unauthorized release.

148. Defendants allowed unauthorized and unknown third parties access to and examination of the Personal and Medical Information of Plaintiffs and Class members by way of Defendants' affirmative actions and negligent failures to protect this information through its actions and the negligent oversight of POWERSCHOOL and/or its employees or agents.

149. The unauthorized release to, custody of, and examination by unauthorized third parties of the Personal and Medical Information of Plaintiffs and Class members is highly offensive to a reasonable person.

150. The intrusion at issue was into a place or thing, which was private and is entitled to be private. Plaintiffs and Class members disclosed or permitted the disclosure of their Personal and Medical Information to Defendants as part of Plaintiffs' and Class members' involuntary relationships with POWERSCHOOL as an agent, contractor and/or vendor of schools and school districts in California such as Cathedral Catholic and SDUSD, but privately and with the intention that the Personal and Medical Information would be kept confidential and would be protected from unauthorized disclosure. Plaintiffs and Class members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

151. The breach and compromise of the Personal and Medical Information of Plaintiffs and Class members was highly offensive and constituted an egregious breach of social norms. The

information compromised was among the most private and sensitive personal information that can be collected about a person.

152. Plaintiffs and Class members are aware that their most sensitive, private information may end up on the dark web where any number of malicious actors could use it for illicit purposes such as identity theft, financial and medical fraud. Knowing their most sensitive, private information will be publicly exposed is the source of great distress and anxiety. This is exacerbated by the knowledge that their private information was compromised with the intent that it be used to perpetrate identity theft, financial fraud and medical fraud against Plaintiffs and Class members. This stress and anxiety will continue for the next several years as the risk they will be the victims of identity theft, financial fraud and medical fraud persists, forcing Plaintiffs and Class members to continue closely monitoring their credit cards, bank accounts, credit reports and health insurance statements for any evidence of fraud.

153. The ongoing risk to Plaintiffs and Class members is substantial. Their Personal and Medical Information, once exfiltrated, remains vulnerable to misuse, resale, or public disclosure. Despite Defendants' initial claims, there is no assurance the information has been securely destroyed or removed from unauthorized possession. As a result, Plaintiffs and Class members must remain vigilant against identity theft, financial fraud, and medical misuse, all of which may occur months or even years after the initial breach.

154. The attack that resulted from the actions and inactions of Defendants either directly or through the actions and inactions of POWERSCHOOL constitutes a negligent, reckless, willful and/or intentional interference with Plaintiffs' and Class members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns and those of their families, of a kind that would be highly offensive to a reasonable person.

155. Defendants acted with a knowing or negligent state of mind when they permitted the attack described herein to occur, because they either knew or reasonably should have known that their information security practices were inadequate and insufficient to protect again such attacks and were not in compliance with IT industry and cybersecurity standards and best practices or because they failed to adequately supervise and oversee or provided negligent oversight over their agents, contractors, employees or vendors.

156. Defendants either knew or reasonably should have known that POWERSCHOOL's inadequate and insufficient information security practices would cause injury and harm to Plaintiffs and Class members.

157. The probability that Plaintiffs' and Class members' Personal and Medical Information was breached, exfiltrated and viewed with the intent to exploit this information for financial gain, along with the fact the privacy interests of hundreds of thousands of California students were violated, amplifies the level of offensiveness of this intrusion on the privacy interests of Plaintiffs and Class members.

158. As a proximate result of the above acts and omissions of Defendants, the Personal and Medical Information of Plaintiffs and Class members was disclosed to third parties without authorization, causing Plaintiffs and Class members to suffer injuries and damages. Plaintiffs seek all recoverable damages as may be permitted by law both for themselves and all Class members.

159. Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause irreparable injury to Plaintiffs and Class members, entitling them to seek injunctive relief.

160. This action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or non-pecuniary, for a large class of persons and the general public. Private enforcement is necessary and places a disproportionate financial burden on Plaintiffs in relation to Plaintiffs' stake in the matter. Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiffs also seek the recovery of attorneys' fees and costs in prosecuting this action against Defendants under Cal. Code Civ. Proc. § 1021.5 and other applicable law.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE AND NEGLIGENCE PER SE

161. Plaintiffs incorporate the foregoing allegations by reference as if fully set forth herein to the extent relevant to this Cause of Action and the relief available thereunder.

162. Defendants collected and maintained Plaintiffs' and Class members' Personal and Medical Information, which imposed a duty to exercise reasonable care in securing, storing, and protecting that information from unauthorized access, misuse, or disclosure.

163. By virtue of acting as agents, vendors, or contractors for schools and school districts in California, such as Cathedral Catholic and SDUSD, Defendants were specifically entrusted with securing and protecting the personal information of hundreds of thousands of individuals, including minors, Defendants had a special relationship with Plaintiffs and Class members who, as students, parents and/or employees or their family members, had their Personal and Medical Information entrusted to Defendants, involuntarily forcing them to rely on Defendants to adequately protect their Personal and Medical Information.

164. Defendants knew or were obligated by law to know that the Personal and Medical Information of Plaintiffs and Class members was private and confidential and should be protected as private and confidential, and thus, Defendants owed a duty of care not to subject Plaintiffs and Class members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices implemented by Defendants.

165. Defendants knew, or should have known, of the risks inherent in collecting and storing Personal and Medical Information, the vulnerabilities of their data security systems, and the importance of adequate security. Defendants also had a duty to adequately supervise and oversee their agents, contractors, employees or vendors in terms of the protection of such information.

166. Defendants knew, or should have known, of POWERSCHOOL's heightened vulnerability to cyber-attacks and breaches by cybercriminals and about the threat posed from such attacks. POWERSCHOOL's failure to take proper security measures to protect Plaintiffs' and Class members' Personal and Medical Information created conditions conducive to a foreseeable act, namely the unauthorized access and exfiltration of Plaintiffs' and Class members' Personal and Medical Information by unauthorized third parties.

167. As described above, given that California schools and school districts and their agents, contractors and vendors were known at the time of the attack to be prime targets for hackers, Plaintiffs and Class members are part of a foreseeable, discernable group that was at risk of having their Personal and Medical Information compromised, exfiltrated, and otherwise wrongly disclosed if not adequately protected by Defendants.

168. It was also foreseeable that Plaintiffs and Class members would sustain injuries if

POWERSCHOOL failed to provide timely, direct, understandable, and complete notice of this data breach to Plaintiffs and Class members.

169. Defendants had a duty to ensure that POWERSCHOOL and their employees and agents would employ reasonable security measures, systems, processes, and otherwise protect the Personal and Medical Information of Plaintiffs and Class members pursuant to the state and federal laws set forth above, and that their systems were in compliance with IT industry and cybersecurity standards and best practices.

170. Defendants also had a duty to ensure that POWERSCHOOL employees would employ reasonable security procedures, systems, and processes to detect cyber-attacks, and to timely act on warnings about massive data downloads, data breaches and other forms of cyber-attacks.

171. Defendants also owed Plaintiffs and Class members a duty to ensure that POWERSCHOOL would timely and adequately inform Plaintiffs and Class members, in the event of a data breach, that their Personal and Medical Information had been compromised or improperly disclosed as part of a cybersecurity attack to unauthorized third parties.

172. Pursuant to the laws set forth herein, including Cal. Civ. Code §§ 56.13, 56.20, 1798.29, 1798.81.5, Article I, Section 1 of the California Constitution, the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C, 20 U.S.C. § 1232g(b)(1) & (b)(2), 34 C.F.R. § 99.30, 34 C.F.R. § 300.623(a), 15 U.S.C. § 45 et seq., California Education Code §§ 49060(a), 49062, & 49076(a), 5 C.C.R. §§ 431, 433, & 434, and/or SDUSD Policy Nos. BP 3580(a) and BP 7101 as applicable to its agents, contractors and/or vendors, Defendants were required by law and policy to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiffs' and Class members' Personal and Medical Information.

173. Plaintiffs and Class members are within the class of persons that these statutes, policies and rules were designed to protect.

174. Defendants breached their duties set forth above and established by those laws by failing to ensure that POWERSCHOOL would employ industry standard data and cybersecurity measures to

ensure compliance with those laws, including, but not limited to, proper segregation, access controls, multi-factor authentication, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing as well as it failure to adequately supervise and oversee or provide negligent oversight over their agents, contractors, employees or vendors.

175. It was reasonably foreseeable, particularly given the growing number of data breaches and attacks of private information directed at schools and school districts, that the failure to reasonably protect and secure Plaintiffs' and Class members' Personal and Medical Information in compliance with applicable laws would result in an unauthorized third party gaining access to POWERSCHOOL's networks, databases, and computers that stored or contained Plaintiffs' and Class members' Personal and Medical Information, resulting in Defendants' liability under principles of negligence *per se*.

176. Defendants, through their actions and omissions, unlawfully breached duties to Plaintiffs and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class members' Personal and Medical Information within Defendants' possession, supervision, and control. Defendants, through their actions and omissions, unlawfully breached duties owed to Plaintiffs and Class members by failing to ensure that POWERSCHOOL had appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class members' Personal and Medical Information.

177. Defendants breached their duties by failing to implement adequate safeguards, detect unauthorized access, and supervise those with access to sensitive data. They also failed to act on known risks, failed to properly configure system access controls, and did not prevent or respond to the unauthorized exfiltration of data.

178. Defendants, through their actions and omissions, unlawfully breached duties to ensure that POWERSCHOOL would and were legally obligated to timely and fully disclose to Plaintiffs and Class members that the Personal and Medical Information within Defendants' possession, supervision, and control was compromised, the nature of the compromise, and precisely the type of information compromised.

179. Defendants' breaches of duties and conduct in violation of applicable laws directly and proximately caused the unauthorized access, disclosure and compromise of Plaintiffs' and Class members' Personal and Medical Information such that Plaintiffs and Class members have suffered and

will continue to suffer losses and damages because of Defendants' conduct, including direct economic and non-economic losses.

180. Defendants' conduct in violation of these applicable laws also directly and proximately caused the unauthorized access and disclosure of Plaintiffs' and Class members' Personal and Medical Information. Plaintiffs and Class members have suffered and will continue to suffer damages as a result of Defendants' conduct.

181. As a proximate result of Defendants' ongoing failure to adequately notify Plaintiffs and Class members regarding what type of Personal and Medical Information has been compromised, Plaintiffs and Class members are unable to fully take the necessary precautions to mitigate damages by preventing future fraud, resulting in further economic and non-economic losses.

182. As a result of Defendants' actions, Plaintiffs and Class members continue to face ongoing risk. Their information remains at risk of misuse, identity theft, and fraud. This creates continued anxiety, the burden of ongoing monitoring, and the need to safeguard against threats that may persist indefinitely.

183. Defendants' breaches of duty also proximately caused Plaintiffs and Class members to suffer from identity theft, loss of time and money to monitor their finances for fraud, and/or loss of control over their Personal and Medical Information. In addition, Plaintiffs' and Class members' Personal and Medical Information constitutes personal property that was stolen as a proximate result of Defendants' negligence, resulting in harm, injury and damages to Plaintiffs and Class members in the diminution or loss of value of such data. Plaintiffs seek all recoverable damages as may be permitted by law both for themselves and all Class members.

184. In addition, as a proximate result of Defendants' negligence and breach of duties, Plaintiffs and Class members are in danger of imminent harm in that their Personal and Medical Information, which may still be in the possession of third parties, will be used for fraudulent purposes.

185. Plaintiffs also seek injunctive relief on behalf of the Class members and the general public in the form of an order compelling Defendants to institute appropriate data collection and safeguarding methods and policies with regard to Personal and Medical Information and provide full and complete notice to all affected persons, as set forth below.

**FIFTH CAUSE OF ACTION**

**BREACH OF CONFIDENCE**

186. Plaintiffs incorporate the foregoing allegations by reference as if fully set forth herein to the extent relevant to this Cause of Action and the relief available thereunder.

187. Defendants were required by both contract and law to ensure that POWERSCHOOL would be aware of the confidential and sensitive nature of Plaintiffs' and Class members' Personal and Medical Information that were provided by schools and school districts, including Cathedral Catholic and SDUSD, to Defendants. Plaintiffs and Class members provided or were required to provide schools and school districts such as Cathedral Catholic and SDUSD their Personal and Medical Information with the reasonable understanding it would be held in in confidence by both it and its agents, contractors and/or vendors, and that Defendants in that capacity would adequately protect that information.

188. As alleged herein, Defendants' relationship with Plaintiffs and Class members was governed by the reasonable expectations that Plaintiffs' and Class members' Personal and Medical Information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

189. Defendants breached their duty of confidence by failing to properly protect the integrity of the systems containing Plaintiffs' and Class members' Personal and Medical Information, failing to comply with the data security guidelines set forth by HIPAA, failing to adequately supervise and oversee or provided negligent oversight over their agents, contractors, employees or vendors, and otherwise failing to safeguard Plaintiffs' and Class members' Personal and Medical Information that they collected and were obligated by law and contract to maintain in confidence.

190. Plaintiffs and Class members provided their Personal and Medical Information with the explicit and implicit understanding that it would be protected and that such Personal and Medical Information would not be disseminated to any unauthorized third parties, and that the persons who had access to such data would take precautions to protect that Personal and Medical Information from unauthorized disclosure.

191. Defendants voluntarily received in confidence Plaintiffs' and Class members' Personal and Medical Information with the understanding that such information would not be disclosed or

disseminated to the public or any unauthorized third parties.

192. The breach has left Plaintiffs and Class members exposed to ongoing risk. Their information remains vulnerable to misuse, fraud, and further unauthorized disclosure, forcing them to take continuous steps to safeguard their identities and private data

193. As a proximate result of Defendants' failure to prevent and avoid the cyber-attack and resulting data breach at issue here, Plaintiffs' and Class members' Personal and Medical Information was disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and Class members' confidence, and without their express permission.

194. As a direct, legal and proximate cause of Defendants' actions and omissions as detailed above, Plaintiffs and Class members have suffered damages.

195. The injury and harm Plaintiffs and Class members suffered was the reasonably foreseeable result of Defendants' conduct, which permitted the unauthorized disclosure of Plaintiffs' and Class members' Personal and Medical Information. Defendants either knew or should have known that POWERSCHOOL's methods of accepting and securing Plaintiffs' and Class members' Personal and Medical Information was inadequate as it relates to, at the very least, securing servers and other computer equipment that was solely the responsibility of POWERSCHOOL and contained Plaintiffs' and Class members' Personal and Medical Information and detecting massive downloads of such information.

196. As a direct and proximate result of Defendants' breaches of confidence of Plaintiffs and Class members, Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) actual identity theft or compromise; (ii) the loss of the opportunity how their Personal and Medical Information is used; (iii) the compromise, publication, and theft of their Personal and Medical Information; (iv) time and expenses associated with the prevention, detection, and recovery from identity theft, financial fraud, and unauthorized use of their Personal and Medical Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the cybersecurity attack at issue here, including, but not limited to, time and effort spent researching how to prevent, detect, contest, and recover from fraud and identity theft and implementing measures to do so; (vi) costs associated with placing freezes or monitoring on credit reports; (vii) the continued risk to their Personal and Medical Information, which

is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Personal and Medical Information at issue; and (viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal and Medical Information compromised as a result of the attack. Plaintiffs seek all recoverable damages as may be permitted by law both for themselves and all Class members.

197. In addition, Plaintiffs seek injunctive relief on behalf of the Class members and the general public in the form of an order compelling Defendants to institute appropriate data collection and safeguarding methods and policies with regard to patient information and provide direct notice as required by law, as set forth below.

**<u>SIXTH CAUSE OF ACTION</u>**

**BREACH OF CALIFORNIA CONSUMER PRIVACY ACT**

**Cal. Civ. Code § 1798.150**

198. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as if fully stated herein.

199. Pursuant to Civil Code § 1798.150(a)(1), "[a]ny consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, or whose email address in combination with a password or security question and answer that would permit access to the account is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action ....."

200. Plaintiffs are each a "consumer" as defined by Civil Code § 1798.140(g) because they are natural persons residing in the state of California.

201. POWERSCHOOL is a "business" as defined by Civ. Code § 1798.140(c) because it is a corporation that does business in the state of California and had annual gross revenues in excess of twenty-five million dollars ($25,000,000) in the preceding calendar year. POWERSCHOOL is organized for the profit or financial benefit of their owners and collects Plaintiffs' and the Class's "personal information" as defined by Civil Code §1798.81.5 as defined by Civil Code §1798.140.

POWERSCHOOL collected the personal information of more than 100,000 California residents, households, or devices in the preceding calendar year. POWERSCHOOL also derives commercial benefit from its handling of personal information through contracts with educational institutions across the state.

202. Defendants violated section 1798.150(a) of the California Consumer Privacy Act ("CCPA") by failing to prevent Plaintiff's and the Class's "personal information" as defined by Civil Code §1798.81.5 from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiffs' and the Class's "personal information" as defined by Civil Code §1798.81.5.

203. Plaintiffs' and the Class's "personal information" as defined by Civil Code §1798.81.5 was subjected to unauthorized access and exfiltration, theft, or disclosure as a direct and proximate result of Defendants' violation of its duty under the CCPA.

204. Defendants knew, or should have known, that their networks, databases, and computer systems and data security practices were inadequate to safeguard Plaintiffs' and the Class's "personal information" as defined by Civil Code §1798.81.5 and that the risk of a data breach or theft was highly likely. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiff's and the Class's "personal information" as defined by Civil Code §1798.81.5, such as encrypting Plaintiffs' and the Class's "personal information" as defined by Civil Code §1798.81.5 so in the event of a data breach Plaintiffs' and the Class's "personal information" as defined by Civil Code §1798.81.5 cannot be read by an unauthorized third party. As a result of the failure to implement reasonable security procedures and practices, Plaintiffs' and the Class's "personal information" as defined by Civil Code § 1798.81.5 was subject to an unauthorized access and exfiltration, theft, or disclosure.

205. Due to the nature and scope of the breach, Defendants cannot fully cure the violation. The information remains in the hands of unauthorized actors, and no reasonable assurance has been provided that it has been deleted or rendered unusable. Plaintiffs and Class members therefore continue to face an ongoing risk that cannot be mitigated solely through internal procedural changes.

206. As a direct and proximate result of Defendants' violation of its duty under the CCPA, Plaintiffs and the Class seek injunctive or declaratory relief from all Defendants pursuant to Civil Code § 1798.150(a)(1)(B) to ensure that Defendants hereinafter adequately safeguard Plaintiff's and the Class's "personal information" as defined by Civil Code §1798.81.5 by implementing reasonable security procedures and practices. This relief is important because Defendants still possess Plaintiffs' and the Class's "personal information" as defined by Civil Code §1798.81.5. Plaintiff and the Class have an interest in ensuring that their "personal information" as defined by Civil Code §1798.81.5 is reasonably protected in the future.

207. As a direct and proximate result of Defendants' violation of its duty under the CCPA, Plaintiffs and the Class seek actual damages pursuant to Civil Code §1798.150(a)(1)(A) and Civil Code §1798.150(b) from all Defendants. On March 18, 2025, Plaintiff JOHN DOE's counsel sent a CCPA notice letter to Defendant POWERSCHOOL's registered service agent. Within 30 days of delivery of that CCPA notice letters, Defendant did not actually cure the noticed violation and provide Plaintiffs with an express written statement that the violations have been cured and that no further violations shall occur (which Plaintiffs believes any such cure is not possible under these facts and circumstances). Plaintiffs and the Class therefore also seek statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident pursuant to Civil Code §1798.150(b) from the Defendants identified in this Cause of Action.

## SEVENTH CAUSE OF ACTION

## BREACH OF CALIFORNIA SECURITY NOTIFICATION LAWS

## Cal. Civ. Code § 1798.82

208. Plaintiffs incorporate by reference all of the above paragraphs of this complaint as if fully stated herein.

209. Pursuant to Civil Code §1798.82(a), "A person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose a breach of the security of the system following discovery or notification of the breach in the security of the data to a resident of California (1) whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person, or, (2) whose encrypted personal information

was, or is reasonably believed to have been, acquired by an unauthorized person and the encryption key or security credential was, or is reasonably believed to have been, acquired by an unauthorized person and the person or business that owns or licenses the encrypted information has a reasonable belief that the encryption key or security credential could render that personal information readable or usable. The disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system." Prior to passages of such statute, the California State Assembly cited an incident where authorities knew of the breach in security for 21 days "before state workers were told" as an example of "late notice."

210. Civil Code §1798.82 further provides, "(h) For purposes of this section, 'personal information' means an individual's first name or first initial and last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted: (1) Social security number; (2) Driver's license number or California Identification Card number; (3) Account number, credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (4) Medical information; (5) Health insurance information."

211. POWERSCHOOL conducts business in California and owns or licenses computerized data that includes the personal information, within the meaning of Civil Code §1798.82(h), of Plaintiffs and the Class.

212. To date, POWERSCHOOL has failed to directly, fully and adequately disclose a breach of the security of the systems breach following discovery of the breach in the security of the data to Plaintiffs and the Class by a mailed notification letter or otherwise. Specifically they have failed to disclose, at a minimum, (i) the date of the breach, (ii) the estimated date of the breach, or (iii) the date range within which the breach occurred, in violation of Civil Code §1798.82(d)(2)(C).

213. Plaintiffs and the Class have been injured by fact that POWERSCHOOL did not provide any of the information minimally required by Civil Code §1798.82(d), and by fact that POWERSCHOOL did not disclose to them that their unencrypted personal information was, or was reasonably believed to have been, acquired by an unauthorized person in the most expedient time possible and without

reasonable delay in violation of Civil Code §1798.82(a). Its delays providing all of the information required by Civil Code §1798.82(d) and in informing in the most expedient time possible and without reasonable delay as required by Civil Code §1798.82(a), have prevented Plaintiffs and the Class from taking steps in the most expedient time possible to mitigate the fallout from their personal information being stolen.

214. Plaintiffs and the Class seek recovery of their damages pursuant to Civil Code§ 1798.84(b) and injunctive relief pursuant to Civil Code §1798.84(e) from POWERSCHOOL under this Cause of Action.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF THE UNFAIR COMPETITION LAW

### Cal. Bus. & Prof. Code §§ 17200 et seq.

215. Plaintiffs incorporate the foregoing allegations by reference as if fully set forth herein to the extent relevant and applicable to this Cause of Action.

216. The acts, misrepresentations, omissions, practices, and non-disclosures of Defendants as alleged herein constituted unlawful and unfair business acts and practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, et seq.

217. Defendants engaged in "unlawful" business acts and practices in violation of the California statutes set forth above, including Cal. Civ. Code §§ 56.06(d), 56.13, 56.101(a), 56.101(b)(1)(A), 56.36(b), 1798.81.5, Breach of California's Consumer Privacy Act, Cal. Civ. Code § 1798.150, Breach of the California Security Notification Laws, Cal. Civ. Code § 1798.82, Cal. Bus. & Prof. Code § 22584, and Article I, § 1 of the California Constitution and the common law right of privacy. Defendants' acts also violated federal statutes and regulations, including the HIPAA, the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C, the FTC Act, and the other sections and federal statutes and regulations identified above. Plaintiffs reserve the right to allege other violations of law committed by Defendants that constitute unlawful business acts or practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, et seq.

218. Defendants have also engaged in "unfair" business acts or practices. There are several tests that determine whether a practice that impacts consumers as compared to competitors is "unfair," examining the practice's impact on the public balanced against the reasons, justifications, and motives of Defendants. Defendants' conduct would qualify as "unfair" under any of these standards:

(a) whether the practice offends an established public policy, which here is whether the practices at issue offend the policies of protecting consumers' Personal and Medical Information as reflected in California law and policy set forth above;

(b) balancing the utility of Defendants' conduct against the gravity of the harm created by that conduct, including whether Defendants' practices caused substantial injury to consumers with little to no countervailing legitimate benefit that could not reasonably have been avoided by the consumers themselves, and causes substantial injury to them; or

(c) whether the practice is immoral, unethical, oppressive, unscrupulous, unconscionable or substantially injurious to consumers.

219. The harm caused by Defendants' failure to maintain adequate information security procedures and practices, including, but not limited to, failing to take adequate and reasonable measures to ensure their data systems were protected against unauthorized intrusions, failing to properly and adequately educate and train employees, failing to properly supervise its employes, vendors, agents and contractors, failing to put into place reasonable or adequately protected computer systems and security practices to safeguard Plaintiffs' and Class members' Personal and Medical Information, including access restrictions, multi-factor authentication and encryption, failing to have adequate privacy policies and procedures in place that did not preserve the confidentiality of the Personal and Medical Information of Plaintiffs and Class members in their possession, failing to timely and accurately disclose the cybersecurity attack here at issue and resulting data breach directly to Plaintiffs and Class members, and failing to protect and preserve confidentiality of Personal and/or Medical Information of Plaintiffs and Class members against disclosure and release, outweighs the utility of such conduct. Such conduct offends public policy, is immoral, unscrupulous, unethical, and offensive, and causes substantial injury to Plaintiffs and Class members.

220. Defendants either knew or should have known that their data security and protection

practices and/or those of their agents, contractors and vendors were inadequate to safeguard the Personal and Medical Information of Plaintiffs and Class members, deter hackers, and detect an attack and resulting data breach within a reasonable time, even though the risk of a data breach or theft was highly likely. The business acts and practices by Defendants of failing to keep Personal and Medical Information confidential, protected, encrypted and with sufficient security to prevent a breach by an unauthorized third party did not meet all applicable standards of care and vigilance, constituting an unfair business practice.

221. These unlawful and unfair business acts or practices conducted by Defendants have been committed in the past and continue to this day. Defendants have failed to fully acknowledge the wrongful nature of their actions. Defendants have not corrected or publicly issued comprehensive corrective notices to Plaintiffs and Class members and may not have corrected or enacted adequate policies and procedures to protect and preserve confidentiality of medical and personal identifying information of Plaintiffs and Class members in their possession.

222. Defendants' refusal to provide direct notice, implement industry-standard safeguards, and publicly disclose the full scope of the breach demonstrates that the unlawful and unfair practices are ongoing. Without court intervention, Plaintiffs and Class members remain vulnerable to further misuse of their data, and similar practices are likely to recur.

223. Plaintiffs have been injured in fact and lost money or property as a result of Defendants' unlawful and unfair business practices as a result of, *inter alia*, having lost control over information about them that has a specific inherent monetary value that can be sold, bartered, or exchanged and expending time and resources to redress or mitigate this data breach.

224. The value of Plaintiffs' and Class members' Personal and Medical Information, including its black-market value and its role as a credential for identity verification, gives rise to a restitutionary interest in the form of lost data value and the cost of mitigation.

225. Plaintiffs and Class members may have no other adequate remedy of law in that, absent injunctive relief from the Court, Defendants are likely to not fully redress the issues raised by their illegal and unfair business practices and will not provide direct notice to Plaintiffs and Class members. Defendants have not announced any specific changes to their data security infrastructure, processes, or

procedures to fix the vulnerabilities in the electronic information security systems and security practices that permitted the resulting data breach to occur and go undetected and thereby prevent further attacks. Nor have they provided direct, prompt and/or fulsome notice of the circumstances surrounding this breach as required by law.

226. As a proximate result of the Defendants' violations of the Unfair Competition Law, Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) actual identity, medical and financial compromise and the increased risk of future identity theft, medical fraud and financial fraud; (ii) the loss of the ability to control how their Personal and Medical Information is used; (iii) the loss of their constitutionally protected privacy interest by the compromise and publication of their Personal and Medical Information to unauthorized third parties; (iv) diminution in value of their Personal and Medial Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the unlawful sharing of their Personal and Medical Information, including but not limited to time and effort spent researching how to prevent, detect, contest, and recover from fraud and identity theft and implementing measures to do so; and (vi) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal and Medical Information compromised by Defendants' actions.

227. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order of this Court for themselves, Class members, and for the benefit of the public granting injunctive relief in the form of requiring Defendants to correct their illegal conduct, and ensuring that POWERSCHOOL puts in systems that would prevent the repeat of the illegal and wrongful practices as alleged above and protect and preserve confidentiality of Personal and Medical Information in Defendants' possession that has been accessed, downloaded, exfiltrated, stolen, and viewed by at unauthorized third parties because of Defendants' illegal and wrongful practices set forth above.

228. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs also seek an order of this Court for equitable and injunctive relief in the form of prohibiting Defendants from continuing to refuse publicly issuing comprehensive direct and corrective notices as well as restitution and restitutionary disgorgement of the monies Defendants saved in not having appropriate protective security measures in place.

229. This action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or non-pecuniary, for a large class of persons and the general public. Private enforcement is necessary and places a disproportionate financial burden on Plaintiffs in relation to Plaintiffs' stake in the matter. This litigation seeks to compel adherence to statutory privacy standards that affect not only the named Plaintiffs but also hundreds of thousands of California residents whose data remains at risk. The relief sought here will promote future compliance and protect vulnerable populations from systemic security failures. Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiffs also seek the recovery of attorneys' fees and costs in prosecuting this action against Defendants under Cal. Code Civ. Proc. § 1021.5 and other applicable law.

## NINTH CAUSE OF ACTION

## DECLARATORY RELIEF

230. Plaintiffs incorporate the foregoing allegations by reference as if fully set forth herein.

231. A present and actual controversy exists between the parties. Defendants have failed to acknowledge the wrongful nature of their actions, have not directly sent Plaintiffs and Class members data breach notices regarding the cyber-attack and data theft at issue herein, nor publicly issued comprehensive corrective notices. Based on their inadequate disclosures to date, there is also no reason to believe that Defendants have taken adequate measures to correct or enact adequate policies and procedures to protect and preserve Plaintiffs' and Class members' Personal and Medical Information in Defendants' possession.

232. Now that Defendants' insufficient information security is known to hackers, the Personal and Medical Information in Defendants' possession is even more vulnerable to cyber-attack and is not less but more likely to take place.

233. Plaintiffs and Class members have no other adequate remedy of law in that, absent declaratory relief from the Court, Defendants are likely to not fully remedy the underlying wrong.

234. As described above, Defendants' actions have caused harm to Plaintiffs and Class members. Further, Plaintiffs and Class members are at risk of additional or further harm due to the exposure of their Personal and Medical Information and Defendants' failure to fully address the security

failings that lead to such exposure and their failure to provide adequate notice thereof.

235. Plaintiffs and Class members seek an order of this Court for declaratory, equitable, and injunctive relief in the form of an order finding Defendants have failed and continue to fail to adequately protect Plaintiffs' and Class members' Personal and Medical Information from release to unknown and unauthorized third parties, requiring Defendants to correct or enact adequate policies and security measures to protect and preserve Plaintiffs' and Class members' Personal and Medical Information in their possession, and requiring Defendants to publicly issue direct comprehensive corrective notices to Plaintiffs, Class members and the public.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, both individually and on behalf of Class members and for the benefit of the public as applicable, pray for orders and judgment in favor of Plaintiffs and Class members and against Defendants as follows, as may be applicable to the Causes of Action set forth above:

A. Finding that this action satisfies the prerequisites for maintenance as a class action under Cal. Code Civ. Proc. § 382 and certifying the Class defined herein;

B. Designating Plaintiffs as representatives of the Class and their counsel as Class counsel;

C. Declaring Defendants' conduct in violation of the laws set forth above, including Cal. Civ. Code §§ 56.13, 56.20, 1798.81.5, Breach of California's Consumer Privacy Act, Cal. Civ. Code § 1798.150, Breach of the California Security Notification Laws, Cal. Civ. Code § 1798.82, Cal. Bus. & Prof. Code § 22584, Cal. Bus. and Prof. Code §§ 17200 *et seq.*, and Article I, § 1 of the California Constitution and the common law of privacy and the provisions of HIPAA and the FTC Act set forth above.

D. An order:

1. prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

2. prohibiting Defendants from refusing to promptly identify and send all affected persons adequately comprehensive data breach notices regarding the cyber-attack and data theft at issue herein in the form required by law, and publicly issue comprehensive corrective notices to Plaintiffs, Class members, and the public;

3. prohibiting Defendants from failing to protect, including through encryption, all data collected through the course of their business operations in accordance with all applicable regulations, industry standards, and federal and state laws;

4. prohibiting Defendants from refusing to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Personal and Medical Information of Plaintiffs and Class members;

5. prohibiting Defendants from refusing to engage independent third-party security auditors/penetration testers as well as internal security personnel to run automated security monitoring, database scanning and security checks and conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

6. prohibiting Defendants from refusing to audit, test, and train security personnel regarding any new or modified procedures;

7. requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

8. prohibiting Defendants from refusing to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class members and infiltration of Defendants' computer system by phishing processes by using such steps such as multi-factor authentication;

9. prohibiting Defendants from refusing to routinely and continually conduct internal training and education, and inform internal security personnel how to immediately identify and contain an attack or data breach when it occurs and what to do in response to a breach; and

10. prohibiting Defendants from refusing to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor

Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

E. Restitution and/or restitutionary disgorgement to the extent permitted in the above Causes of Action in an amount according to proof;

F. All forms of damages to the extent permitted in the above Causes of Action in an amount according to proof;

G. All appropriate equitable relief;

H. Awarding Plaintiffs' counsel reasonable attorneys' fees;

I. Awarding Plaintiffs' costs and other non-taxable expenses;

J. Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law; and,

K. Granting such further relief as the Court deems just.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues and causes of action so triable.

Dated: May 23, 2025

*/s/ William J. Doyle*

**DOYLE APC**
William J. Doyle, SBN: 188069
bill@doyleapc.com
Chris W. Cantrell, SBN: 290874
chris@doyleapc.com
550 West B St., 4th Floor
San Diego, CA 92101
Phone: (619) 736-0000
Fax: (619) 736-1111

**LEVINE & MAYBAUM LLP**
Marc J. Levine, SBN: 210949
marc@specialedpartners.com
Jerid R. Maybaum, SBN: 190846
jerid@specialedpartners.com
10940 Wilshire Blvd., 6th Floor
Los Angeles, CA 90024

**WHATLEY KALLAS, LLP**
Alan M. Mansfield, SBN: 125998
amansfield@whatleykallas.com

16870 W. Bernardo Drive, Suite 400
San Diego, CA 92127
Phone: (619) 308-5034
Fax: (888) 341-5048

**Attorneys for Plaintiffs Jane Doe One and John Doe Two**

/s/ Robert A. Waller, Jr.
**LAW OFFICES OF ROBERT A. WALLER, JR.**
Robert A. Waller, Jr. (SBN 169604)
P.O. Box 999
Cardiff-by-the-Sea, CA 92007
Tel: (760) 753-3118
Fax: (760) 753-3206
Email: robert@robertwallerlaw.com

**KEEGAN & BAKER, LLP**
Patrick N. Keegan (SBN 167698)
2292 Faraday Avenue, Suite 100
Carlsbad, CA 92008
Tel: (760) 929-9303
Fax: (760) 929-9260
Email: pkeegan@keeganbaker.com

**Attorneys for Plaintiff John Doe**