# EXHIBIT D

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
7/7/2025 3:49:23 PM
Clerk of the Superior Court
By C. Miranda ,Deputy Clerk

Anne Johnson Palmer (SBN 302235)
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

Monica Mleczko (*pro hac vice* application pending)
**ROPES & GRAY LLP**
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
monica.mleczko@ropesgray.com

Christopher M. Young (SBN 163319)
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com

*Attorneys for Defendants PowerSchool Group, LLC and PowerSchool Holdings, Inc.*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SAN DIEGO**

JANE DOE ONE and JOHN DOE TWO, on behalf of themselves and all others similarly situated and for the benefit of the general public,

Plaintiffs,

v.

POWERSCHOOL HOLDINGS INC., POWERSCHOOL GROUP, LLC, and DOES 1 through 25, inclusive,

Defendants.

Case No. 25CU002797C

*POWERSCHOOL DATA BREACH LITIGATION*

CONSOLIDATED FOR ALL PURPOSES WITH CASE NO. 25CU01443C

**DEFENDANTS POWERSCHOOL HOLDINGS, INC., AND POWERSCHOOL GROUP, LLC'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFFS JANE DOE ONE, JOHN DOE TWO, AND JOHN DOE'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date: March 6, 2026
Time: 10:30 a.m.
Dept: C-64
Judge: Hon. Loren G. Freestone

Consol. Compl. Filed: May 23, 2025
Trial Date: Not Yet Set.

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 10:30 a.m. on March 6, 2026, or as soon thereafter as counsel may be heard, in Department SD-64 of the Superior Court of San Diego County, located at 330 West Broadway, San Diego, California, Defendants PowerSchool Holdings, Inc. and PowerSchool Group LLC will, and hereby do, demur to the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action in the Second Amended Consolidated Complaint, which constitute each and every cause of action asserted by Plaintiffs Jane Doe One, John Doe Two, and John Doe.

This Demurrer is made pursuant to California Code of Civil Procedure Section 430.10(e) on the grounds that Plaintiffs' First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action fail to allege sufficient facts to state a claim.

This Demurrer is based on this Notice, the General Demurrer, accompanying Demurrer and Memorandum of Points and Authorities, the Declaration of Anne Johnson Palmer, filed concurrently, all pleadings and files in this matter, and any further submissions or argument of counsel that may be filed with or presented to the Court at or before the hearing on this Demurrer.

DATED: July 7, 2025

**ROPES & GRAY LLP**

By: *<u>/s/ Anne Johnson Palmer</u>*
Anne Johnson Palmer

*Attorney for Defendants PowerSchool Group LLC and PowerSchool Holdings, Inc.*

**GENERAL DEMURRER**

Defendants PowerSchool Holdings, Inc., and PowerSchool Group LLC ("PowerSchool") hereby demur, generally and specifically, to the Second Amended Consolidated Complaint (the "Consolidated Complaint" OR "CC") filed by Plaintiffs Jane Doe One, John Doe Two, and John Doe ("Plaintiffs") on the following grounds:

**First Cause of Action**

(Violation of the Confidentiality of Medical Information Act, Civ. Code, § 56 et seq.)

1. Plaintiffs' first cause of action for Violation of the Confidentiality of Medical Information Act, Civ. Code, § 56 et seq. fails to state facts sufficient to constitute a cause of action against PowerSchool. (See Code Civ. Proc., § 430.10(e)).

**Second Cause of Action**

(Violation of the California Customer Records Act, Civ. Code, § 1798.81.5)

2. Plaintiffs' second cause of action for Violation of the California Customer Records Act, Civ. Code §, 1798.81.5 fails to state facts sufficient to constitute a cause of action against PowerSchool. (See Code Civ. Proc., § 430.10(e)).

**Third Cause of Action**

(Constitutional and Common Law Invasion of Privacy)

3. Plaintiffs' third cause of action for Constitutional and Common Law Invasion of Privacy fails to state facts sufficient to constitute a cause of action against PowerSchool. (See Code Civ. Proc., § 430.10(e)).

**Fourth Cause of Action**

(Negligence and Negligence Per Se)

4. Plaintiffs' fourth cause of action for Negligence and Negligence Per Se fails to state facts sufficient to constitute a cause of action against PowerSchool. (See Code Civ. Proc., § 430.10(e)).

**Fifth Cause of Action**

(Breach of Confidence)

5. Plaintiffs' fifth cause of action for Breach of Confidence fails to state facts sufficient to constitute a cause of action against PowerSchool. (See Code Civ. Proc., § 430.10(e).

**Sixth Cause of Action**

(Violation of the California Consumer Privacy Act, Civ. Code, § 1798.150)

6. Plaintiffs' sixth cause of action for Violation of the California Consumer Privacy Act, Civ. Code, § 1798.150 fails to state facts sufficient to constitute a cause of action against PowerSchool. (See Code Civ. Proc., § 430.10(e)).

**Seventh Cause of Action**

(Violation of the California Security Notification Laws, Civ. Code, § 1798.82)

7. Plaintiffs' seventh cause of action for Violation of the California Security Notification Laws, Civ. Code, § 1798.82 fails to state facts sufficient to constitute a cause of action against PowerSchool. (See Code Civ. Proc., § 430.10(e)).

**Eighth Cause of Action**

(Violation of the Unfair Competition Law, Bus. & Prof. Code, § 17200 et seq.)

8. Plaintiffs' eighth cause of action for Violation of the Unfair Competition Law, Bus. & Prof. Code, § 17200 et seq. fails to state facts sufficient to constitute a cause of action against PowerSchool. (See Code Civ. Proc., § 430.10(e)).

**Ninth Cause of Action**

(Declaratory Relief)

9. Plaintiffs' ninth cause of action for Declaratory Relief fails to state facts sufficient to constitute a cause of action against PowerSchool. (See Code Civ. Proc., § 430.10(e)).

**PRAYER**

WHEREFORE, PowerSchool prays that the Court sustain its demurrer with prejudice.

DATED: July 7, 2025

ROPES & GRAY LLP

By: *Anne Johnson Palmer* (/s/)
Anne Johnson Palmer

*Attorney for Defendants PowerSchool Group LLC and PowerSchool Holdings, Inc.*

# TABLE OF CONTENTS


| | | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| SUMMARY OF ALLEGATIONS | | 2 |
| LEGAL STANDARD | | 3 |
| ARGUMENT | | 4 |
| I. | PLAINTIFFS FAIL TO STATE A CONFIDENTIALITY OF MEDICAL INFORMATION ACT CLAIM (COUNT I) | 4 |
| II. | PLAINTIFFS FAIL TO PLEAD A CALIFORNIA CUSTOMER RECORDS ACT CLAIM (COUNTS II AND VII) | 7 |
| | A. The CCRA Does Not Apply | 7 |
| | B. Even If the CCRA Did Apply, Plaintiffs Do Not State a Claim | 8 |
| III. | PLAINTIFFS FAIL TO PLEAD AN INVASION OF PRIVACY CLAIM (COUNT III) | 10 |
| IV. | PLAINTIFFS’ NEGLIGENCE/NEGLIGENCE PER SE CLAIMS (COUNT IV) FAIL | 12 |
| | A. Negligence | 12 |
| | B. Negligence Per Se | 14 |
| V. | PLAINTIFFS’ BREACH OF CONFIDENCE CLAIM (COUNT V) FAILS | 15 |
| VI. | PLAINTIFFS’ CALIFORNIA CONSUMER PRIVACY ACT CLAIM (COUNT VI) FAILS | 17 |
| VII. | PLAINTIFFS’ UNFAIR COMPETITION LAW CLAIM (COUNT VIII) FAILS | 18 |
| VIII. | PLAINTIFFS’ DECLARATORY RELIEF CLAIM (COUNT IX) FAILS | 20 |
| CONCLUSION | | 21 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accellion, Inc. Data Breach Litigation*
(N.D.Cal. 2024) 713 F.Supp.3d 623 .......... *passim*

*Aliotti v. R. Dakin & Co.*
(9th Cir. 1987) 831 F.2d 898 .......... 16

*In re Ambry Genetics Data Breach Litigation*
(C.D.Cal. 2021) 567 F.Supp.3d 1130 .......... 16

*B.K. v. Eisenhower Medical Center*
(C.D.Cal. 2024) 721 F.Supp.3d 1056 .......... 16

*In re BetterHelp, Inc. Data Disclosure Cases*
(N.D.Cal. July 15, 2024, No. 23-cv-01033) 2024 WL 3416511 .......... 5

*Cantu v. Resolution Trust Corp.*
(1992) 4 Cal.App.4th 857 .......... 4, 8

*Castillo v. Seagate Technology, LLC*
(N.D.Cal. Sept. 14, 2016, No. 16-cv-01958) 2016 WL 9280242 .......... 13

*City of Dinuba v. County of Tulare*
(2007) 41 Cal.4th 859 .......... 3

*Corona v. Sony Pictures Entertainment, Inc.*
(C.D.Cal. June 15, 2015, No. 14-CV-09600) 2015 WL 3916744 .......... 12

*Daar v. Yellow Cab Co.*
(1967) 67 Cal.2d 695 .......... 4

*Doe v. Beard*
(C.D.Cal. 2014) 63 F.Supp.3d 1159 .......... 12

*Doe v. Meta Platforms, Inc.*
(N.D.Cal. 2023) 690 F.Supp.3d 1064 .......... 15

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*
(S.D.Cal. Nov. 3, 2016, No. 3:16-cv-00014) 2016 WL 6523428 .......... 11

*Eisenhower Medical Center v. Superior Court*
(2014) 226 Cal.App.4th 430 .......... 5

*Gardiner v. Walmart Inc.*
(N.D.Cal. Mar. 5, 2021, No. 20-cv-04618) 2021 WL 2520103 .......... 19

*Hall v. Time Inc.*
(2008) 158 Cal.App.4th 847 ....................20

*Henry v. Universal Technical Institute*
(9th Cir. 2014) 559 Fed.Appx. 648....................15

*In re iPhone Application Litigation*
(N.D.Cal. 2012) 844 F.Supp.2d 1040 ....................11

*Karter v. Epiq Systems, Inc.*
(C.D.Cal. July 16, 2021, No. SACV 20-01385) 2021 WL 4353274....................17

*Landon v. TSC Acquisition Corp.*
(C.D.Cal. Nov. 1, 2024, No. 2:23-cv-01377) 2024 WL 5317240 ....................13

*Low v. LinkedIn Corp.*
(N.D.Cal. 2012) 900 F.Supp.2d 1010 ....................11, 12

*Ludgate Ins. Co. v. Lockheed Martin Corp.*
(2000) 82 Cal.App.4th 592 ....................4, 5, 13

*Medoff v. Minka Lighting, LLC*
(C.D.Cal. May 8, 2023, No. 2:22-cv-08885) 2023 WL 4291973....................13

*Mendoza v. JPMorgan Chase Bank*
(2016) 6 Cal.App.5th 802 ....................20

*Moncur v. City of Los Angeles*
(1977) 68 Cal.App.3d 118 ....................3

*Moore v. Centrelake Medical Group, Inc.*
(2022) 83 Cal.App.5th 515 ....................12, 18, 19

*Prakashpalan v. Engstrom, Lipscomb & Lack*
(2014) 223 Cal.App.4th 1105 ....................8

*Quiroz v. Seventh Ave. Center*
(2006) 140 Cal.App.4th 1256 ....................15

*Razuki v. Caliber Home Loans, Inc.*
(S.D.Cal. Nov. 15, 2018, No. 17cv1718) 2018 WL 6018361 ....................10, 11

*Regents of University of California v. Superior Court*
(2013) 220 Cal.App.4th 549 ....................7

*Rokos v. Peck*
(1986) 182 Cal.App.3d 604 ....................16

*Romero v. Los Angeles Rams*
(2023) 91 Cal.App.5th 562 ....................12

*Ruiz v. Gap, Inc.*
(N.D.Cal. 2008) 540 F.Supp.2d 1121, *affd.*
(9th Cir. 2010) 380 Fed.Appx. 689 ........................................ 11

*Schmid v. City and County of San Francisco*
(2021) 60 Cal.App.5th 470 ........................................ 9

*Shopoff & Cavallo LLP v. Hyon*
(2008) 167 Cal.App.4th 1489 ........................................ 20

*In re Sony Gaming Networks & Customer Data Securities Breach Litigation*
(S.D.Cal. 2015) 903 F.Supp.2d 942 ........................................ 12, 13, 19, 20

*Stasi v. Inmediata Health Group Corp.*
(S.D.Cal. 2020) 501 F.Supp.3d 898 ........................................ 7, 12

*Sutter Health v. Superior Court*
(2014) 227 Cal.App.4th 1546 ........................................ 6, 7

*Vaillette v. Fireman's Fund Ins. Co.*
(1993) 18 Cal.App.4th 680 ........................................ 4

*Vigil v. Muir Medical Group IPA, Inc.*
(2022) 84 Cal.App.5th 197 ........................................ 6

*In re Yahoo! Inc. Customer Data Security Breach Litigation*
(N.D.Cal. 2018) 313 F.Supp.3d 1113 ........................................ 9

**Statutes**

20 U.S.C. § 1232g ........................................ 15

Civ. Code, § 56.05 ........................................ 4

Civ. Code, § 56.10 ........................................ 5

Civ. Code, § 425.10 ........................................ 11

Civ. Code, § 1798.80 ........................................ 7, 8

Civ. Code, § 1798.81.5 ........................................ 8, 9, 18

Civ. Code, § 1798.84 ........................................ 7, 10

Civ. Code, § 1798.140 ........................................ 17, 18

Civ. Code, § 1798.145 ........................................ 17

Civ. Code, § 1798.150 ........................................ 17, 18

**Other Authorities**

34 C.F.R. § 99.30 ....................15
34 C.F.R. § 300.611 ....................15
34 C.F.R. § 300.623 ....................15
Cal. Code Regs., § 431....................14
Cal. Code Regs., § 433....................14
Cal. Code Regs., § 434....................14
Code Civ. Proc., § 430.10(e)....................3

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

On December 28, 2024, PowerSchool—an education technology provider to schools and school districts—discovered that it had experienced a cybersecurity incident involving its Student Information System ("SIS") (the "Cybersecurity Incident" or the "Incident"). PowerSchool immediately engaged its cybersecurity incident response protocols and mobilized a cross-functional response team, including third-party cybersecurity experts, to contain the Incident and harden system security. PowerSchool notified its customers on a rapid timeline—on January 7, 2025, within ten days of learning of the Incident. Since then, PowerSchool has supported its customers, as well as individuals with data involved in the Incident. PowerSchool has made available two years of complimentary identity and credit monitoring to all involved individuals, regardless of the nature of their information involved.

The information potentially implicated in the Incident varies significantly on a customer-by-customer, and ultimately an individual-by-individual, basis. The data may have included student and employee contact information, such as names and addresses, and, in some instances, may have also included Social Security numbers ("SSNs"), limited medical information, and grades (collectively, the "Data"). Based on the Incident, Plaintiffs—students, their guardians, and teachers—filed this putative class action, taking a scattershot approach to pleading nine causes of action premised on speculative and amorphous damages. They bring a variety of tort and statutory claims.

PowerSchool has moved to stay this action, given the pendency of a federal multidistrict litigation proceeding involving earlier-filed federal actions that overlap almost entirely with this case. A stay should be ordered to avoid duplicative litigation and an inherent risk of inconsistent rulings—including on dispositive motions like this demurrer. In the event that the Court does not grant the stay motion and reaches this demurrer, Plaintiffs' claims fail for several reasons. *First*, Plaintiffs invoke statutes that do not apply to PowerSchool or the type of information at issue, such as the Confidentiality of Medical Information Act, the California Consumer Privacy Act, and the California Customer Records Act. *Second*, their alleged damages—allegations of lost value of personal data, lost time, or speculative fears of future fraud or identity theft—do not suffice to state a claim for

negligence or under the Unfair Competition Law. Despite many generic allegations about the potential for identity theft and other future, speculative harms, Plaintiffs do not allege any actual injury resulting from the Incident. *Third*, Plaintiffs do not identify what, if any, of their data was *actually* involved in the Incident, which undermines Plaintiffs' claims generally as well as their allegations of damages. *Fourth*, Plaintiffs fail to allege any facts indicating a highly offensive or egregious breach of social norms, as required for their invasion of privacy claim. *Finally*, Plaintiffs' claim for declaratory relief is duplicative of their other deficient causes of action. In short, Plaintiffs' claims fail at every turn.

For the reasons addressed below, in the event that the Court does not grant PowerSchool's simultaneously-filed motion to stay, PowerSchool respectfully requests that the Court sustain its demurrer as to the entirety of the Consolidated Complaint, with prejudice.

## SUMMARY OF ALLEGATIONS[1]

PowerSchool is a Sacramento-based leading provider of cloud-based software for K-12 education in the United States, providing cutting-edge educational technology products to its customers, schools and school districts. (See, e.g., CC ¶ 30). These customers use these products to collect and maintain student and teacher data, and Plaintiffs therefore allege that PowerSchool "obtain[s], transmit[s], access[es] and stor[es] students' and teachers' sensitive personal information." (*Id.* ¶ 1).

On or about December 28, 2024, PowerSchool learned that it had experienced a cybersecurity incident. (CC ¶ 31). A criminal actor used stolen credentials to access certain PowerSchool SIS environment through one of its community-focused customer support portals, PowerSource. (See *id.* ¶¶ 31–33). In early January 2025, on a rapid timeline—only 10 days after learning of the Incident—PowerSchool notified its school district customers. (See *id.* ¶¶ 37, 39). Plaintiffs contend that the Data involved in the Incident primarily contains student and employee contact information, such as names and addresses, though, in some instances, may also include personally identifiable information ("PII"), SSNs, limited medical information, and grades. (*Id.* ¶ 33). PowerSchool has stated publicly

[1] For the purposes of this demurrer only, PowerSchool assumes the truth of the properly pleaded material facts. PowerSchool otherwise reserves all rights to contest the validity of all allegations in the Consolidated Complaint.

that it has taken steps, and continues to take steps, to ensure that any potentially exfiltrated data will not be released including engaging dark web monitoring services, which, to date, have reported no findings of information related to this Incident identified on the dark web. (See *id.* ¶ 36).

Plaintiffs are parents and guardians of children who are students at San Diego Unified School District ("SDUSD") schools, as well as the parent of a student at Cathedral Catholic High School ("Cathedral Catholic") within San Diego County. (CC ¶¶ 24–26). Plaintiffs bring this case as a putative class action, in which they seek to represent all "individuals currently residing in and citizens of the State of California" whose data was "accessed, exfiltrated, or disclosed" in the Incident, including all current and former students, parents, and employees associated with any California K-12 school. (*Id.* ¶ 89). Plaintiffs also assert a subclass consisting of "individuals currently residing in the State of California" who at the time of the Incident were either (a) students or parents of students, or (b) employed as teachers or school staff, in any K-12 school within San Diego County. (*Id.* ¶ 90). Plaintiffs contend that PowerSchool failed to implement adequate security procedures and practices or provide adequate notice of the Incident. (*Id.* ¶¶ 2–3). Plaintiffs allege that they remain unaware of "what information was compromised, by whom." (*Id.* ¶ 42). Nowhere do Plaintiffs aver any facts reflecting that they or their children have had their identities stolen, or experienced fraud because of the Incident. Plaintiffs nonetheless allege a laundry list of purported present and future harms including: (1) "identity, medical and financial compromise"; (2) "loss of the ability to control how their Personal and Medical Information is used"; (3) "loss of their constitutionally protected privacy interest"; (4) "deprivation of, and/or diminution in value of their Personal and Medical Information"; (5) "lost opportunity costs" and "loss of productivity"; and (6) "costs and harm in terms of time, effort, and money that will be expended." (*Id.* ¶ 82).

## **LEGAL STANDARD**[2]

A party may object by demurrer on the ground that the complaint does not "state[] facts sufficient to constitute a cause of action." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 [62 Cal.Rptr.3d 614, 161 P.3d 1168]; Code Civ. Proc., § 430.10(e). The Court is not bound to accept (1) "conclusionary, ineffectual or improperly pleaded allegations," (*Moncur v. City of Los*

[2] All quotation marks, alterations, and internal citations are omitted unless otherwise noted.

*Angeles* (1977) 68 Cal.App.3d 118, 121 [137 Cal.Rptr. 239], or (2) "contentions, deductions or conclusions of fact or law," (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].). To survive a demurrer, a complaint must plead "facts sufficient to establish *every element*" of a cause of action. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 [6 Cal.Rptr.2d 151].). A plaintiff must allege such facts with "reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action." (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 608 [98 Cal.Rptr.2d 277].). The Court may sustain demurrer without leave to amend unless a reasonable possibility exists that the defects can be cured by amendment. (See *Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685 [22 Cal.Rptr.2d 807].).

## ARGUMENT

### I. PLAINTIFFS FAIL TO STATE A CONFIDENTIALITY OF MEDICAL INFORMATION ACT CLAIM (COUNT I)

Plaintiffs first claim that PowerSchool is subject to the Confidentiality of Medical Information Act ("CMIA") by virtue of its contractual relationship with its school and school district customers, which Plaintiffs allege provide limited health care services to their students. On this basis, Plaintiffs contend that PowerSchool violated the CMIA by supposedly failing to preserve the confidentiality of Plaintiffs' information. (See CC ¶¶ 101–122.). The CMIA claim fails for several independent reasons.

*First*, PowerSchool is not a "provider of health care," and therefore is not subject to the CMIA. By its plain language, the CMIA imposes requirements only on "provider[s] of healthcare," which are defined as licensed clinical providers of medical care. (Civ. Code, § 56.05). The CMIA additionally applies to businesses that either (a) were "organized *for the purpose* of maintaining medical information," or (b) directly offer "to consumers" software "*designed to maintain medical information*." (*Id.* § 56.06). Courts have interpreted this provision narrowly. Allegations that a business maintains medical information fail to plead that the business was "organized *for the purpose* of maintaining medical information." (*In re Accellion, Inc. Data Breach Litigation* (N.D.Cal. 2024) 713 F.Supp.3d 623, 643 (hereafter *Accellion*)). Similarly, allegations that customers have used a business's software to maintain medical information do not indicate that the software was "*designed*"

to do so. (*Id.* (["Much like the analysis under § 56.06(a), the fact that the [software] may have been used to transfer or maintain medical information does not mean it was *designed* to do so"].).

Plaintiffs do not, and cannot, allege that PowerSchool was "organized *for the purpose* of maintaining medical information," or that PowerSchool provides directly "to consumers" any software that was "*designed*" to maintain medical information. To the contrary, Plaintiffs allege that PowerSchool's software was designed "to assist K-12 schools manage their operations," which includes assisting schools "in monitoring attendance, enrollment and grades." (CC ¶ 1). The plaintiff in *Accellion* provided far more specific allegations—including that the defendant provided software that was used to "transfer or maintain medical information" directly to *hospitals*—but even still, the court rejected the claim that the defendant was a "provider of health care" for purposes of the CMIA. (*Accellion, supra*, 713 F.Supp.3d at pp. 643–644; see also *In re BetterHelp, Inc. Data Disclosure Cases* (N.D.Cal. July 15, 2024, No. 23-cv-01033) 2024 WL 3416511, at p. *3 [holding that the CMIA did not apply to provider of an online counseling service because plaintiff failed to allege that it was "organized for the purpose of maintaining medical information," or that its software was "designed to maintain medical information"].). Plaintiffs' allegations are even more tenuous and should be dismissed.

*Second*, Plaintiffs' claim fails because the CMIA protects only against disclosure or release of "medical information," (Civ. Code, § 56.10(a)), and the Consolidated Complaint does not allege that any of Plaintiffs' medical information was involved in the Incident. Plaintiffs allege that "for *some* schools and school districts, which *may* include Cathedral Catholic and SDUSD," the Data involved in the Incident included unspecified "medical and health information." (CC ¶ 33). Plaintiffs do not offer any further factual allegations on this front, and do not allege that any of their own medical information was involved. California courts strictly enforce the requirement that the disclosed information contain *medical* data. (See, e.g., *Eisenhower Medical Center v. Superior Court* (2014) 226 Cal.App.4th 430, 435 [172 Cal.Rptr.3d 165] [dismissing CMIA claim, rejecting plaintiff's speculative argument that medical history involved in data breach "must include" that they underwent medical treatment].). Plaintiffs' speculative, conditional allegation that their medical information "may" be involved cannot withstand a demurrer. (See *id.*; see also *Ludgate Ins. Co. v. Lockheed*

*Martin Corp.*, *supra*, 82 Cal.App.4th at p. 608 [holding that a plaintiff must allege essential facts with "reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action"].).

*Third*, the CMIA claim also fails because Plaintiffs do not allege that anyone actually viewed their medical information as a result of the Incident, as is required under the CMIA. (*Sutter Health v. Superior Court* (2014) 227 Cal.App.4th 1546, 1558 [174 Cal.Rptr.3d 653].). To proceed under the CMIA, "the *individual* bringing a private cause of action . . . must establish that the confidential nature of *his or her* information was breached because of the health care provider's negligence." (*Vigil v. Muir Medical Group IPA, Inc.* (2022) 84 Cal.App.5th 197, 219 [300 Cal.Rptr.3d 32] [emphasis added].). Plaintiffs do not allege that anyone's information—let alone their information in particular—was viewed and have therefore failed on both fronts. Plaintiffs offer nothing more than conjecture that the criminal actor who perpetrated the Cybersecurity Incident *must* have viewed their records to determine what information the Data contained. (CC ¶¶ 73–74). Even assuming that the criminal actor sought to understand what the Data contained, it does not follow that the criminal actor would have to review any *individual's* Data in order to merely determine which types of information were present among the Data. (*Sutter*, *supra*, 227 Cal.App.4th at p. 1558 [refusing to assume that criminal actor had viewed medical information in hypothetical situation where "a thief grabbed a computer containing medical information on four million patients"].). Plaintiffs' presumption that the criminal actor viewed *Plaintiffs'* own information specifically is even more far-fetched, especially in light of the fact that Plaintiffs have alleged that the criminal actor supposedly accessed information relating to "hundreds of thousands" of individuals. (CC ¶ 31). Because Plaintiffs fail to adequately allege that anyone "actually viewed" their information, their CMIA claim must be dismissed. (*Sutter*, *supra*, 227 Cal.App.4th at p. 1550).

For each of the above reasons, Plaintiffs do not plead a claim under any portion of the CMIA. But Plaintiffs' claims under Section 56.06(d) and Section 56.13 fail for several additional, independent reasons. *First*, Section 56.06 merely lists various types of businesses that are subject to the CMIA; the section includes no provision that could even theoretically be violated here. Moreover, subsection (d), the particular portion of Section 56.06 that Plaintiffs assert PowerSchool "violated,"

is, on its face, wholly inapplicable to PowerSchool. Plaintiffs do not allege PowerSchool offers "mental health digital services" for "diagnosis, treatment, or management" purposes.

Plaintiffs' claim that PowerSchool violated Section 56.13 is similarly defective. Section 56.13 provides that a recipient of medical information may not "disclose" that medical information without proper authorization. California's appellate courts have repeatedly held that "disclosure" under the CMIA requires an "affirmative communicative act." (E.g., *Sutter Health v. Superior Court*, *supra*, 227 Cal.App.4th at pp. 1555–1556; *Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 564 [163 Cal.Rptr.3d 205] [distinguishing between "disclosure" of information and "release" of information, as those terms are used in the CMIA], as modified on denial of rehg. (Nov. 13, 2013). Plaintiffs have alleged no such affirmative communicative act by PowerSchool. To the contrary, Plaintiffs repeatedly insist that their Data was "stolen [by an] unauthorized third party criminal actor." (CC ¶¶ 2, 21). Courts have expressly held that an affirmative communicative act "does not occur if the information is stolen." (*Stasi v. Inmediata Health Group Corp.* (S.D.Cal. 2020) 501 F.Supp.3d 898, 922). Plaintiffs' own allegations foreclose their claim under Section 56.13.

## II. PLAINTIFFS FAIL TO PLEAD A CALIFORNIA CUSTOMER RECORDS ACT CLAIM (COUNTS II AND VII)

Plaintiffs allege violations of the California Customer Records Act, Civ. Code, § 1798 et seq. (hereafter CCRA), across two counts. Although Count VII focuses on an alleged failure to notify under Section 1798.82, Count II includes overlapping allegations that PowerSchool violated the same section. Because Plaintiffs' various claims under the CCRA fail for the same reasons, PowerSchool address all of Plaintiffs' CCRA claims together.

### A. The CCRA Does Not Apply

*First*, Plaintiffs' CCRA claims fail because they are not "customers" as defined by the statute. The CCRA limits its private right of action to "customer," which is defined as "an individual who provides personal information to a business for the purpose of purchasing or leasing a product or obtaining a service from the business." (Civ. Code, §§ 1798.84(b), 1798.80(c)). Plaintiffs fail to meet this definition in two independent respects. To begin with, Plaintiffs do not claim that they provided any information directly to PowerSchool, instead suggesting that they provided their Data "either directly and/or indirectly through their schools or school districts." (CC ¶ 130). This uncertain

approach to pleading, especially of information that is fully within Plaintiffs' possession, does not allege the "ultimate fact[]" that Plaintiffs provided information directly to PowerSchool. (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1120 [167 Cal.Rptr.3d 832] ["A complaint must allege the ultimate facts necessary to the statement of an actionable claim."]; *Accellion, supra*, 713 F.Supp.3d at p. 645, fn. 5 [characterizing allegations that plaintiffs "indirectly" provided their information as being "on uncertain footing"].). In addition, Plaintiffs are not "customers" under the CCRA for another reason: they do not allege that they provided any information to PowerSchool "for the purpose of purchasing . . . a product or obtaining a service" from PowerSchool. (Civ. Code, § 1798.80(c)). The Consolidated Complaint contains no allegations of any product or service PowerSchool provided to *Plaintiffs* or of *Plaintiffs* providing payment to PowerSchool. Courts have dismissed CCRA claims on this basis under nearly identical circumstances. (See, e.g., *Accellion, supra*, 713 F.Supp.3d at p. 645 [dismissing CCRA claim where there were "no allegations that [p]laintiffs had paid money to or obtained any service from" the defendant, whose actual customers were other businesses].).

*Second*, Plaintiffs have not adequately pleaded that any of their Data involved in the Incident is covered by the CCRA. The CCRA limits its protections to the following types of "personal information": SSNs, government identity card numbers, financial account numbers, medical information, health insurance information, biometric data, and genetic data. (Civ. Code, § 1798.81.5(d)(1)). Here, Plaintiffs allege that they "are still in the dark as to what information was compromised," (CC ¶ 42), suggesting only that "for *some districts*, which *may* include Cathedral Catholic and SDUSD," the Data included SSNs and medical information, (*id.* ¶ 33). Plaintiffs have not pleaded that any of *their* "personal information" covered by the CCRA was, in fact, involved in the Incident. Plaintiffs' CCRA claim should be dismissed for this reason as well. (See, e.g., *Cantu v. Resolution Trust Corp., supra*, 4 Cal.App.4th at p. 879 ["[A plaintiff] must . . . plead[] facts sufficient to establish *every element* of [every] cause of action"].).

**B. <u>Even If the CCRA Did Apply, Plaintiffs Do Not State a Claim</u>**

Plaintiffs' CCRA claim still fails even if the Court were to determine that the CCRA applies. *First*, the provision of the CCRA that Plaintiffs claim PowerSchool violated, Section 1798.81.5,

makes clear that the "provisions of this section do not apply to [entities] governed by the medical privacy and security rules issued by the federal Department of Health and Human Services, Parts 160 and 164 of Title 45 of the Code of Federal Regulations." (Civ. Code, § 1798.81.5(e)). In their Consolidated Complaint, Plaintiffs dedicate nearly five pages to their assertion that PowerSchool is subject to the HIPAA Privacy Rule and Security Rule, (45 C.F.R. parts 160 and 164), relying on those regulations in an attempt to establish a duty they purport that PowerSchool owed them, (CC ¶¶ 57–63, 172, 189). Taking Plaintiffs' own allegations as true, as the Court must for purposes of this demurrer, Section 1798.81.5 does not apply to PowerSchool.

*Second*, Plaintiffs allege that PowerSchool violated Section 1798.82(a). This provision requires that, upon discovering a data breach, a business that "owns or licenses" personal information notify the individuals whose information was acquired without authorization. But Plaintiffs merely parrot the text of the statute and assume, without providing any factual allegations, that PowerSchool "owns or licenses" personal information. (*Compare* CC ¶ 211 ["POWERSCHOOL . . . owns or licenses computerized data that includes . . . personal information"] *with* Civ. Code, § 1798.82(a) [imposing requirements on a business "that owns or licenses computerized data that includes personal information"].). It is well established that such formulaic repetition of the elements of a cause of action does not survive a demurrer. (See *Schmid v. City and County of San Francisco* (2021) 60 Cal.App.5th 470, 481 [274 Cal.Rptr.3d 727].). PowerSchool's mere access to Plaintiffs' personal information does not demonstrate PowerSchool's ownership or licensing of that data. (See *In re Yahoo! Inc. Customer Data Security Breach Litigation* (N.D.Cal. 2018) 313 F.Supp.3d 1113, 1145 [holding that email provider did not own or license personal information contained in plaintiffs' emails].). Moreover, Plaintiffs' bald assertion that PowerSchool owns their data is contradicted by their own allegations that, in fact, they themselves own their personal information. (See, e.g., CC ¶ 10 ["If Personal and Medical Information is breached and exfiltrated, it is critical that the owners of the Personal and Medical Information (*here, Plaintiffs and Class members*) be notified of this breach"] [emphasis added]; see also CC ¶¶ 128, 136). Plaintiffs also make no allegations of any licensing agreement they entered with PowerSchool for their Data. In short, because Plaintiffs do not allege

that PowerSchool licenses nor owns their personal information, the Company is not subject to Section 1798.82(a) of the CCRA.

Plaintiffs also make a feeble attempt to bring a claim under Section 1798.82(b), (see CC ¶ 136), which imposes notification requirements on businesses that "maintain[] computerized data that includes personal information that the business does not own." This claim fares no better. Plaintiffs' own allegations suggest that PowerSchool rapidly notified all affected school and school district customers of the breach. (CC ¶ 31 ["On or shortly after December 28, 2024, the date POWERSCHOOL has stated it first became aware of the breach, it confirmed to affected schools and school districts, including Cathedral Catholic and SDUSD, that a cybersecurity incident had occurred"].). Plaintiffs go on to acknowledge that they *were* provided with notice of the Incident by their schools and school districts on January 7 (SDUSD) and January 10 (Cathedral Catholic), just ten and thirteen days after PowerSchool discovered the Incident. (CC ¶¶ 37, 39). Notification within ten (or thirteen) days comfortably satisfies the CCRA's notification requirement. (See *Razuki v. Caliber Home Loans, Inc.* (S.D.Cal. Nov. 15, 2018, No. 17cv1718) 2018 WL 6018361, at p. *2 [holding that although five months "may seem to be a long time between breach and notification, all that section 1798.82 requires is that the notification be without 'reasonable delay'"].). Although Plaintiffs complain that *PowerSchool* has not notified them of the breach (an assertion that PowerSchool disputes), Plaintiffs fail to allege any harm they could have suffered as a result of the fact that their schools and school districts notified them rather than PowerSchool. Likewise, Plaintiffs do not allege damages resulting from the incremental "delay" between whenever Plaintiffs believe they should have received notice and January 7 or 10, 2025. Notably, the CCRA provides only a right to recover actual damages for Section 1798.82; statutory damages are available under the CCRA only for violations of Section 1798.83 (disclosure to direct marketers), which Plaintiffs do not invoke. (See Civ. Code, § 1798.84(b-c)). Because Plaintiffs have not alleged any actual damages as a result of any supposed delay in notification, their Section 1798.82 claim fails.

## III. <u>PLAINTIFFS FAIL TO PLEAD AN INVASION OF PRIVACY CLAIM (COUNT III)</u>

Plaintiffs' invasion of privacy claim is also defective. "The California Constitution and the common law set a high bar for an invasion of privacy claim," requiring that the violation be "highly

offensive" and constitute an "egregious breach of the social norms" in order to be actionable. (*Low v. LinkedIn Corp.* (N.D.Cal. 2012) 900 F.Supp.2d 1010, 1025). Plaintiffs' allegations fail to meet this high bar.

*First*, "courts have declined to find 'highly offensive' conduct or an 'egregious breach of social norms' where only negligence is alleged with respect to a data breach, as opposed to intentional violations of privacy rights." (*Accellion, supra*, 713 F.Supp.3d at p. 646 [collecting cases]; *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.* (S.D.Cal. Nov. 3, 2016, No. 3:16-cv-00014) 2016 WL 6523428, at p. *12 [dismissing invasion of privacy claim where plaintiff failed to allege facts suggesting data breach was an intentional violation of privacy rather than a negligent one].). Plaintiffs' invasion of privacy claim rests wholly on allegations of PowerSchool's supposedly "negligent failures" and "negligent oversight," (CC ¶ 148), and falls short of what courts have required to meet the "highly offensive" standard. Despite the conclusory recitations that "Defendants acted with a knowing . . . state of mind when they permitted the attack," (see, e.g., CC ¶ 155), there are no facts alleged that would indicate PowerSchool acted intentionally to invade Plaintiffs' privacy, as required to state an invasion of privacy claim, (see *Accellion, supra*, 713 F.Supp.3d at p. 646 [conclusory allegations that defendant "acted knowingly and in reckless disregard" of plaintiffs' privacy rights insufficient to show "highly offensive" conduct]; Civ. Code, § 425.10(a)(1)).

*Second*, in applying the "highly offensive" standard, courts have recognized that an invasion of privacy claim requires more than allegations of a breach of "personally identifiable information," even where information like SSNs is involved. "[C]onduct that leads to theft of highly personal information, *including [SSNs]*, does not 'approach [the] standard' of actionable conduct under the California Constitution and thus does not constitute a violation of Plaintiffs' right to privacy." (*In re iPhone Application Litigation* (N.D.Cal. 2012) 844 F.Supp.2d 1040, 1063 [second alteration in original] [emphasis added] [quoting (*Ruiz v. Gap, Inc.* (N.D.Cal. 2008) 540 F.Supp.2d 1121, 1127–1128, *affd.* (9th Cir. 2010) 380 Fed.Appx. 689 [unpublished].). For example, in *Razuki v. Caliber Home Loans, Inc.*, the court dismissed the plaintiff's invasion of privacy claim, finding that allegations of negligent failure to protect SSNs, coupled with allegations that someone had later tried to use the plaintiff's SSN to fraudulently open a credit card in his name, did not allege an "egregious

breach of the social norms underlying the privacy right." (S.D.Cal. June 8, 2018, No. 17cv1718) 2018 WL 2761818, at p. *2). Likewise, when courts have allowed an invasion of privacy claim to proceed for disclosures of medical information, plaintiffs have offered specific, detailed and far more severe allegations demonstrating how the medical disclosures met the "highly offensive" standard. (See, e.g., *Doe v. Beard* (C.D.Cal. 2014) 63 F.Supp.3d 1159, 1169–1170 [negligent disclosure of prisoner's HIV-positive status violated criminal statutes and led to threats of bodily harm from other prisoners]; see also *Stasi v. Inmediata Health Group Corp., supra*, 501 F.Supp.3d at p. 926 [defendant posted medical information publicly on the Internet].). No such allegations are present here. At most, Plaintiffs merely claim that unspecified medical information was involved in the Cybersecurity Incident, (see, e.g., CC ¶ 19), without alleging anything more. In short, Plaintiffs' allegations do not meet the "high bar" for an invasion of privacy claim and should therefore be dismissed. (*Low v. LinkedIn Corp., supra*, 900 F.Supp.2d at p. 1025).

## IV. PLAINTIFFS' NEGLIGENCE/NEGLIGENCE PER SE CLAIMS (COUNT IV) FAIL

### A. Negligence

To plead a negligence claim, Plaintiffs must sufficiently allege: "(1) the existence of a duty, (2) a breach of that duty, (3) injury to the plaintiff caused by the defendant's breach, and (4) actual damages." (*Romero v. Los Angeles Rams* (2023) 91 Cal.App.5th 562, 567 [308 Cal.Rptr.3d 431].).

The negligence claim fails because Plaintiffs fail to plead any "actual damages." (*Romero v. Los Angeles Rams, supra*, 91 Cal.App.5th at p. 567. "Under California law, appreciable, nonspeculative, present harm is an essential element of a negligence cause of action." (*In re Sony Gaming Networks & Customer Data Securities Breach Litigation* (S.D.Cal. 2015) 903 F.Supp.2d 942, 962 (hereafter *Sony*).). None of Plaintiffs' purported harms can support their negligence claim. *First*, Plaintiffs' generalized allegations of the potential risk of future identity theft and data breaches are too speculative. (*Id.*). It is well established that the mere risk of future harm does not plead a cognizable injury. (See *Corona v. Sony Pictures Entertainment, Inc.* (C.D.Cal. June 15, 2015, No. 14-CV-09600) 2015 WL 3916744, at p. *4 ["To the extent Plaintiffs allege future harm or an increased risk in harm that has not yet occurred, those allegations do not support a claim for negligence, as they fail to allege a cognizable injury"]; *Moore v. Centrelake Medical Group, Inc.* (2022) 83 Cal.App.5th

515, 525 [299 Cal.Rptr.3d 544] [upholding dismissal of negligence claim, in part, because the risk of future harm and speculative harms resulting from data breach did not constitute cognizable injury].).

*Second*, Plaintiffs' boilerplate allegations of fear and anxiety are likewise too vague to constitute a cognizable injury. (See *Medoff v. Minka Lighting, LLC* (C.D.Cal. May 8, 2023, No. 2:22-cv-08885) 2023 WL 4291973, at p. *9 [categorizing "anxiety and increased concerns for the loss of . . . privacy" and "emotional distress" as "conclusory and vague" allegations "insufficient to sustain a negligence claim at the motion to dismiss stage"].). Plaintiffs offer only speculative allegations of their supposed inability "to fully take the necessary precautions to mitigate damages by preventing future fraud, resulting in further economic and non-economic losses." (CC ¶ 181).

*Third*, Plaintiffs' allegations of "loss of time and money to monitor their finances for fraud," as well as "diminution or loss of value" of their children's Data, (CC ¶ 183), lack the "reasonable precision" and "particularity" that is "sufficient to acquaint a defendant with the nature, source and extent of [their] cause of action." (*Ludgate Ins. Co. v. Lockheed Martin Corp.*, *supra*, 82 Cal.App.4th at p. 608. For example, Plaintiffs do not allege how much money they spent and on what, or whether and how they actually spent any time monitoring their finances. Moreover, the loss of value theory does not suffice to plead damages where, as here, Plaintiffs fail to allege any economic interest in their children's Data or actual loss in its value. (See *Landon v. TSC Acquisition Corp.* (C.D.Cal. Nov. 1, 2024, No. 2:23-cv-01377) 2024 WL 5317240, at p. *6). For example, Plaintiffs do not allege that they participated in any marketplace for their Data or that the value of their Data in that marketplace has been impaired. (*See id.* [dismissing negligence claim where plaintiffs failed to make similar allegations].).[3] Additionally, Plaintiffs fail to explain what non-speculative injuries would have been avoided by a faster or more detailed notice. (See *Castillo v. Seagate Technology, LLC* (N.D.Cal. Sept. 14, 2016, No. 16-cv-01958) 2016 WL 9280242, at p. *5 ["No plaintiffs, meanwhile, have stated a

---

[3] Moreover, a negligence claim based on Plaintiffs' loss of money responding to the Incident is barred by the economic loss doctrine, pursuant to which "a plaintiff's tort recovery of economic damages is barred unless such damages are accompanied by some form of physical harm (i.e., personal injury or property damage)." (*In re Sony Gaming Networks and Customer Data Security Breach Litigation* (S.D.Cal. 2012) 903 F.Supp.2d 942, 961). Here, because Plaintiffs fail to adequately plead any non-economic injuries, the doctrine provides yet another independent reason to dismiss a negligence claim based on loss of money.

cognizable injury that resulted from [Defendant's] alleged failure to provide adequate and timely notice of the breach"].). Plaintiffs offer only conclusory allegations of precautionary measures taken to protect against hypothetical injuries that have neither materialized nor are imminent.

For all of these reasons, Plaintiffs do not sufficiently allege the actual damages essential to plead a negligence claim.

### B. Negligence Per Se

Plaintiffs style Count IV as a "Negligence/Negligence Per Se" claim. Negligence per se is not an independent cause of action under California law and is instead an evidentiary doctrine, codified in the Evidence Code § 669, that permits a presumption that a person failed to "exercise due care" when certain elements are satisfied. (See *Accellion, supra*, 713 F.Supp.3d at p. 639; see also Evid. Code, § 669). These elements of the doctrine are "(1) a defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused injury; (3) the injury resulted from an occurrence that the enactment of the law was designed to prevent; and (4) the plaintiff was a member of the class of persons the statute was intended to protect." (*Accellion, supra*, 713 F.Supp.3d at pp. 639–640).

Here, Plaintiffs fail to allege even the threshold requirement that a "defendant violated a statute, ordinance, or regulation," and thus cannot benefit from the doctrine. (*Accellion, supra*, 713 F.Supp.3d at p. 639). Plaintiffs provide a laundry list of purported statutory bases for their claim, but fail to allege how any of these laws were violated or even whether they apply at all to PowerSchool. (CC ¶ 172). To the extent Plaintiffs look to the causes of action alleged elsewhere in the Consolidated Complaint, their negligence per se theory fails for the reasons already laid out in this brief. With respect to the remaining statutes, none applies here for the following reasons:

- The California Education Code sections, (CC ¶ 172), apply to "public agencies," which PowerSchool is not. § 49060(b). And the California Code of Regulations sections, (CC ¶ 172), do not concern PowerSchool because they deal with the responsibilities of local governing boards and the obligations of custodians of record designated by such boards. (See 5 Cal. Code Regs., §§ 431, 433–434).
- The Family Educational Rights and Privacy Act ("FERPA"), Part B of the Individuals with Disabilities Education Act ("IDEA"), and its implementing regulations, (CC ⁋ 172), do not

apply to service providers like PowerSchool. FERPA applies to a "educational agency or institution," (20 U.S.C. § 1232g(b)(1)–(2); 34 C.F.R. § 99.30), which is defined as "any public or private agency or institution which is the recipient of funds under any applicable program." (20 U.S.C. § 1232g(a)(3)). 34 C.F.R. § 300.623(a) speaks of a "participating agency," which is defined as "any agency or institution that collects, maintains, or uses [PII], or from which information is obtained, under Part B of the [IDEA]." (34 C.F.R. § 300.611(c)). Plaintiffs do not allege PowerSchool is a participating agency or that it collects information pursuant to any applicable program under Part B of the IDEA.

- There is no private cause of action under HIPAA or the Federal Trade Commission Act ("FTC"), and thus these statutes cannot support Plaintiffs' negligence per se claim. (See *Doe v. Meta Platforms, Inc.* (N.D.Cal. 2023) 690 F.Supp.3d 1064, 1087 [collecting cases dismissing negligence per se claims because neither HIPAA nor the FTC contain a private right of action].). In the same vein, Plaintiffs cannot rely on FERPA to support their negligence per se claim because it does not contain a private right of action. (See *Henry v. Universal Technical Institute* (9th Cir. 2014) 559 Fed.Appx. 648, 650 [unpublished] [noting district court properly dismissed FERPA claim because the statute does "not provide for a private right of action"].).
- With respect to SDUSD's policies, (CC ¶ 172), they are not a basis to invoke negligence per se because they are not a "statute, ordinance, or regulation." (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1285 [45 Cal.Rptr.3d 222].).

Plaintiffs' reliance on the negligence per se doctrine does not rescue their negligence claim. Count IV should be dismissed in its entirety.

## V. <u>PLAINTIFFS' BREACH OF CONFIDENCE CLAIM (COUNT V) FAILS</u>

A breach of confidence claim under California law requires well-pled factual allegations that "(1) [Plaintiffs] conveyed confidential and novel information; (2) [PowerSchool] had knowledge that the information was being disclosed in confidence; (3) there was an understanding between [PowerSchool] and [Plaintiffs] that the confidence be maintained; and (4) there was disclosure or use

in violation of the understanding." (*Aliotti v. R. Dakin & Co.* (9th Cir. 1987) 831 F.2d 898, 903). None of these elements is adequately pled here.

Plaintiffs fail to allege any personal relationship with PowerSchool, let alone one where there was a mutual understanding of confidence (the first three elements). "[B]reach of confidence focuses on the nature of the personal relationship existing between the original parties to the agreement, one of whom obligates him or herself not to disclose the ideas revealed in confidence." (*Rokos v. Peck* (1986) 182 Cal.App.3d 604, 619 [227 Cal.Rptr. 480].). Plaintiffs allege that they conveyed confidential information to their schools "with the reasonable understanding it would be held in in [sic] confidence by both it and its agents, contractors, and/or vendors." (CC ¶ 187). But where Plaintiffs do not allege that they had any contact with PowerSchool, the law is clear that they cannot allege a breach of confidence claim. (See *Rokos, supra*, 182 Cal.App.3d at p. 619 [dismissing breach of confidence claim by producer, who had been assigned production rights by a writer, because she "had no contact" with defendants].). At bottom, there is no direct contact whatsoever, much less a personal relationship, between Plaintiffs and PowerSchool, and therefore there can be no "understanding" between them of any kind.

Plaintiff also do not plead the fourth element because there was no affirmative disclosure of the information. California law is clear that an affirmative disclosure is required. (See *In re Ambry Genetics Data Breach Litigation* (C.D.Cal. 2021) 567 F.Supp.3d 1130, 1146–1147 [interpreting "disclosure" to mean affirmative disclosure of information and dismissing claim based on allegations arising from unauthorized access of defendants' employee's email account].). The Consolidated Complaint acknowledges that the Incident was caused by a third-party criminal actor and did not involve any *affirmative* voluntary disclosure of information by PowerSchool. (CC ¶¶ 31–33). Plaintiffs' claim should be dismissed for this reason as well. (See, e.g., *In re Ambry, supra*, 567 F.Supp.3d at 1146–1147; *B.K. v. Eisenhower Medical Center* (C.D.Cal. 2024) 721 F.Supp.3d 1056, 1064, 1069 [dismissing breach of confidence claim because defendant did not affirmatively disclose personal health information when third parties accessed data without consent] reconsidered on other grounds (C.D.Cal. Apr. 11, 2024, No. EDCV 23-2092) 2024 WL 2037404)).

## VI. PLAINTIFFS' CALIFORNIA CONSUMER PRIVACY ACT CLAIM (COUNT VI) FAILS

Plaintiffs next allege that PowerSchool violated the California Consumer Privacy Act ("CCPA"), but again fail to recognize that their own allegations compel the dismissal of this claim. The CCPA expressly provides that the statute "does not apply" to "covered entit[ies] governed by the privacy, security, and breach notification rules issued by the United States Department of Health and Human Services, Parts 160 and 164 of Title 45 of the Code of Federal Regulations." (Civ. Code, § 1798.145(c)(1)(B)). As addressed above, Plaintiffs themselves allege that PowerSchool is subject to these HIPAA regulations and so their own pleading forecloses their claim under the CCPA.[4]

Plaintiffs' CCPA claim also fails because PowerSchool is a "service provider," not a "business," under the CCPA. The CCPA allows a private citizen to pursue a civil suit only against a "business." (Civ. Code, § 1798.150; *Karter v. Epiq Systems, Inc.* (C.D.Cal. July 16, 2021, No. SACV 20-01385) 2021 WL 4353274, at p. *2 ["Plaintiff can only state a claim against [d]efendants if they are businesses, not service providers"].). The statute defines a "business" as an entity "that collects consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information." (Civ. Code, § 1798.140(d)(1)). By contrast, a "service provider" is an entity "that processes personal information on behalf of a business and that receives from or on behalf of the business consumer's personal information for a business purpose pursuant to a written contract." (Civ. Code, § 1798.140(ag)(1)). Plaintiffs' allegations make clear that PowerSchool retains data "on behalf of" its customers and therefore is a service provider rather than a business under these definitions. (See CC ¶ 23 [stating that PowerSchool "perform[s] contractual obligations ***on behalf of schools and school districts***"], ¶ 30 ["[PowerSchool] obtains and retains access to a significant amount of personal student and teacher data ***on behalf of the schools and school districts who contract with PowerSchool to act as their agent and contractor***"], ¶ 58 [stating that PowerSchool

[4] The CCPA also exempts "provider[s] of health care governed by the Confidentiality of Medical Information Act." (Civ. Code, § 1798.145(c)(1)(B)). Although PowerSchool disagrees for a variety of reasons explained above, Plaintiffs assert that PowerSchool "is considered a 'provider of health care' within the meaning of [the CMIA]." (CC ¶ 106). Plaintiffs' claim under the CCPA is foreclosed by their own allegations.

"***provides services***" to schools and school districts].). To claim that PowerSchool is, instead, a "business," Plaintiffs would have to allege that PowerSchool "determines the purposes and means of the processing of consumers' personal information." (Civ. Code, § 1798.140(d)(1)). But Plaintiffs have alleged no such thing, and, in fact, their allegations make clear that PowerSchool merely stores the data to allow its client schools and school districts to carry out their operations. (See e.g., CC ¶ 1 ["POWERSCHOOL stores student data to assist schools in monitoring attendance, enrollment and grades"].). Because PowerSchool is a quintessential example of a CCPA "service provider," Plaintiffs' claim under Section 1798.150 should be dismissed. (*Accellion*, *supra*, 713 F.Supp.3d at p. 642 [holding that company was rendered "service provider" under the CCPA "by simply developing and marketing a file sharing software"].).

Additionally, as with their CCRA claim, Plaintiffs have not adequately pleaded that any of their Data involved in the Incident is covered by the CCPA. The CCPA limits its protections to the same types of "personal information" applicable to the CCRA. (Civ. Code, § 1798.81.5(d)(1)). This is fatal to the CCPA claim for the same reasons addressed above. See *supra* at II.A.

Finally, the CCPA claim should also be dismissed because Plaintiffs failed to provide PowerSchool with the requisite 30 days' written notice of the alleged violation. Plaintiffs allege that Plaintiff John Doe's counsel sent a CCPA notice letter to PowerSchool's registered service agent on March 18, 2025, the same day that his complaint containing a CCPA claim was filed. (CC ¶ 207). Because the CCPA requires that Plaintiffs provide 30 days' written notice of the alleged CCPA violation before filing their lawsuit, this claim is barred. (Civ. Code, § 1798.150(b) ["Actions pursuant to this section may be brought by a consumer if, *prior to initiating any action against a business* . . . a consumer provides a business 30 days' written notice"] [emphasis added].).[5]

## VII. PLAINTIFFS' UNFAIR COMPETITION LAW CLAIM (COUNT VIII) FAILS

To have standing to bring a UCL claim, Plaintiffs must allege that they (1) "ha[ve] suffered injury in fact" and (2) "ha[ve] lost money or property as a result of the unfair competition." (*Moore v. Centrelake Medical Group, Inc.*, *supra*, 83 Cal.App.5th at p. 527. Plaintiffs do neither here.

[5] Although Plaintiffs allege that they belatedly served a notice letter pursuant to the CCPA on PowerSchool's registered agent, (see CC ¶ 207), neither PowerSchool nor its registered agent have any record of receipt of a CCPA notice letter from Plaintiff John Doe on March 18, 2025.

Plaintiffs fail to allege a single injury that satisfies UCL standing. *First*, Plaintiffs do not allege that they purchased services from PowerSchool or paid any monetary value for PowerSchool's services such that they lost money or property in any transactional sense (i.e., that they paid for a product or service). (See *Sony, supra*, 903 F.Supp.2d at p. 966 [finding no UCL standing where services provided free of cost].). *Second*, Plaintiffs offer only conclusory allegations that "having lost control" over their Data somehow resulted in a decrease in its value. But "courts have widely held that 'personal information' does not constitute money or property under the UCL." (*Gardiner v. Walmart Inc.* (N.D.Cal. Mar. 5, 2021, No. 20-cv-04618) 2021 WL 2520103, at p. *8). And similar to the plaintiffs in *Moore*, Plaintiffs offer nothing more than conclusory allegations of a market for their Data, (CC ¶¶ 82, 223–234), which falls short of alleging that they "ever attempted or intended to participate in this market, or otherwise to derive economic value from their" Data. (*Moore v. Centrelake Medical Group, Inc., supra*, 83 Cal.App.5th at p. 538). Plaintiffs do not "allege that any prospective purchaser of their PII might learn that their PII had been stolen in this data breach and, as a result, refuse to enter into a transaction with them, or insist on less favorable terms." (*Id.*). Plaintiffs' allegations concerning a loss in value of their PII thus do not satisfy UCL standing. (See *id.* at pp. 538–539 [rejecting plaintiffs' "lost-value-of-PII" theory where similarly conclusory assertions were not supported by any factual allegations].).

*Third*, Plaintiffs' general allegations throughout the Consolidated Complaint of lost time, effort, and opportunity cost related to researching the "[Incident] and credit monitoring services," and reviewing accounts for sign of identity theft, (CC ¶¶ 24–25), do not provide standing for purposes of the UCL. (*Sony, supra*, 903 F.Supp.2d at p. 966 ["Plaintiffs' allegations that the heightened risk of identity theft, time and money spent on mitigation of that risk, and property value in one's information, do not suffice as injury under the UCL"].). These allegations are vague and conclusory. For example, Plaintiffs do not allege any out-of-pocket costs they incurred to actually *purchase* credit monitoring services (and for good reason, as PowerSchool offered these services free of charge). (Cf. *Moore v. Centrelake Medical Group, Inc., supra*, 83 Cal.App.5th 515 at p. 530 [UCL standing sufficient where plaintiff actually "purchase[d] credit and identity monitoring services"].).

Finally, the remainder of Plaintiffs' claimed injuries are too remote for UCL standing. Plaintiffs repeatedly use the terms "actual," "present," and "future" to recite various alleged injuries, but do not allege any "actual" or "present" injuries in a non-conclusory manner. (CC ¶ 226). This is fatal to their claim because "[a]llegations of damages without allegations of fact to support them are but conclusions of law, which are not admitted by demurrer." (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1509 [85 Cal.Rptr.3d 268].). Courts have rejected hypothetical risks of future harm like the "heightened risk of identity theft." (*Sony*, *supra*, 903 F.Supp.2d at pp. 936, 966 [dismissing "heightened risk of identity theft" allegation]; see also *Hall v. Time Inc.* (2008) 158 Cal.App.4th 847, 853–855 [70 Cal.Rptr.3d 466] [injury in fact may not be "conjectural or hypothetical"; injury occurs when the plaintiff expends money, loses money or property, or is denied money to which it has cognizable claim].).

None of Plaintiffs' purported injuries constitute the loss of money or property, and injury in fact required to allege UCL standing. Count VIII should be dismissed on this basis.[6]

## VIII. PLAINTIFFS' DECLARATORY RELIEF CLAIM (COUNT IX) FAILS

Plaintiffs' declaratory relief claim should be dismissed as it is duplicative of the Consolidated Complaint's other failed claims. (See *Mendoza v. JPMorgan Chase Bank.* (2016) 6 Cal.App.5th 802, 821 [212 Cal.Rptr.3d 1] [affirming demurrer where "the substance of [plaintiffs'] allegations to secure declaratory relief [were] merely duplicative" of another cause of action].). The declaratory relief Plaintiffs seek concerns the propriety of PowerSchool's security procedures and practices. In particular, Plaintiffs seek affirmative injunctive relief requiring PowerSchool to address those practices and to issue notices, which is subsumed by their other causes of action. (See, e.g., CC ¶ 139 [CRA], ¶ 163 [Invasion of Privacy], ¶ 185 [Negligence and Negligence Per Se], ¶ 197 [Breach of Confidence], ¶ 227 [UCL]. Count IX should be dismissed.

[6] To the extent that Plaintiffs' UCL claim is based on PowerSchool's purported "misrepresentations" related to its security procedures and practices (CC ¶¶ 1–2, 28, 216), it fails because Plaintiffs do not allege that they ever saw, let alone relied on, any statement related to PowerSchool's security procedures and practices, as required to plead UCL standing. (See *Hall v. Time Inc.* (2008) 158 Cal.App.4th 847, 856 [70 Cal.Rptr.3d 466] [describing UCL causation requirement and citing cases finding no causation including where plaintiff failed to allege "they relied on Defendants' advertisements in entering into the transactions"].).

## CONCLUSION

For all of the reasons set forth above, PowerSchool's demurrer should be sustained in its entirety, with prejudice.

DATED: July 7, 2025

ROPES & GRAY LLP

By: */s/ Anne Johnson Palmer*

Anne Johnson Palmer (SBN # 302235)
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

Monica Mleczko (*pro hac vice* application pending)
**ROPES & GRAY LLP**
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
monica.mleczko@ropesgray.com

Christopher M. Young (SBN 163319)
**DLA Piper LLP (U.S.)**
4365 Executive Drive
Suite 1100
San Diego, CA 92121-2133
Tel: 619-699-4748
Fax: 619-764-6748
christopher.young@dlapiper.com

*Attorneys for Defendants PowerSchool Group LLC and PowerSchool Holdings, Inc.*