Anne Johnson Palmer
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

Monica Mleczko
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 235-0337
monica.mleczko@ropesgray.com

Christopher M. Young
Oliver M. Kiefer
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com
oliver.kiefer@us.dlapiper.com

*Attorneys for Defendants PowerSchool Holdings, Inc., PowerSchool Group, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br>All Track One Actions | Case No. 25-MD-03149 (BEN) (MSB)<br><br>**MEMORANDUM IN SUPPORT OF POWERSCHOOL'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A<br>Date: TBD<br>Time: TBD<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....... 1

SUMMARY OF PERTINENT FACTUAL ALLEGATIONS ....... 4

LEGAL STANDARD ....... 6

ARGUMENT ....... 6

I. MOST PLAINTIFFS LACK ARTICLE III STANDING ....... 6

A. The No-Injury Plaintiffs Do Not Plausibly Allege Any Identity Theft or Other Misuse of Their Data ....... 10

B. The No-Injury Plaintiffs Do Not Plausibly Allege Any Imminent Risk of Future Harm ....... 12

C. "Derivative" Harm Allegations Do Not Create Standing ....... 14

D. Allegations of Lost Data Value or Privacy Fare No Better ....... 15

E. The Teachers Union Plaintiff Lacks Standing ....... 17

II. CHOICE OF LAW ....... 18

III. MOST PLAINTIFFS FAIL TO PLEAD NEGLIGENCE (COUNT I) ....... 19

IV. PLAINTIFFS' RELIANCE ON NEGLIGENCE PER SE SUFFERS FROM ADDITIONAL DEFECTS (COUNTS I-II) ....... 23

V. THE NEGLIGENT TRAINING & SUPERVISION CLAIM FAILS FOR FAILURE TO PLEAD DAMAGES AND KNOWLEDGE (COUNT IX) ....... 24

VI. THE INVASION OF PRIVACY CLAIMS FAIL FOR LACK OF "HIGHLY OFFENSIVE" CONDUCT (COUNTS IV & XV) ....... 25

VII. THERE IS NO FIDUCIARY RELATIONSHIP BETWEEN PLAINTIFFS AND POWERSCHOOL (COUNT VII) ....... 28

VIII. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT III) ....................29

IX. THE CONSUMER PROTECTION CLAIMS FAIL ....................31

A. Plaintiffs Fail to Allege Cognizable Injury in States Requiring Actual Damages ....................32

B. Many Claims Fail Because Plaintiffs Do Not Allege a Consumer Relationship or Consumer Transaction with PowerSchool ....................34

C. Several Plaintiffs Cannot Seek Relief Beyond What Is Authorized by Statute and Have Failed to Meet Other Prerequisites ....................36

D. Plaintiffs Fail to Plausibly Allege That PowerSchool Engaged in Any Practices Violative of the Consumer Protection Statutes ....................37

1. The Deception-Based Claims Fail Because Plaintiffs Fail to Allege Any Actionable Representation with Particularity, or Causation and Reliance Where Applicable ....................38

2. Plaintiffs Do Not Plausibly Allege That PowerSchool Acted Unlawfully, Unfairly, or Unconscionably ....................41

X. PLAINTIFFS' DATA BREACH NOTIFICATION CLAIMS FAIL ....................43

A. PowerSchool Owed Notice to School Districts, Not Plaintiffs ....................43

B. The Notification Law Claims Suffer from Other Threshold Deficiencies ....................45

C. Plaintiffs Fail to Allege Any "Delay" at All, or Any Injury from Delayed Notification ....................46

XI. THE CALIFORNIA COMPREHENSIVE DATA ACCESS AND FRAUD ACT CLAIM FAILS BECAUSE

POWERSCHOOL DID NOT TAKE PART IN THE UNAUTHORIZED HACKING (COUNT XIX) ....47

XII. THE CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT CLAIM HAS NO APPLICATION TO POWERSCHOOL (COUNT XIV) ....48

XIII. POWERSCHOOL IS NOT SUBJECT TO THE CALIFORNIA CONSUMER PRIVACY ACT (COUNT XIII)....51

XIV. THE DECEIT BY CONCEALMENT CLAIM UNDER SECTION 1709 FAILS FOR LACK OF DUTY TO DISCLOSE (COUNT XX)....53

XV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE GEORGIA RECOVERY OF EXPENSES STATUTE (COUNT XXV) ....54

XVI. THE DECLARATORY JUDGMENT & INJUNCTIVE RELIEF CLAIM SHOULD BE DISMISSED (COUNT VI) ....55

CONCLUSION ....55

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*,
19 N.Y.S.3d 850 (Super. Ct. 2015)....................40

*Abdulaziz v. Twitter, Inc.*,
No. 19-cv-06694, 2021 WL 633812 (N.D. Cal. Feb. 18, 2021)....................25

*Abellard v. Stretto, Inc.*,
No. 24-cv-01030, 2025 WL 1674265 (C.D. Cal. Apr. 25, 2025)....................8, 13

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024)....................*passim*

*Adkins v. Facebook, Inc.*,
424 F. Supp. 3d 686 (N.D. Cal. 2019)....................20

*Ahmad v. Wells Fargo Bank, NA*,
861 F. Supp. 2d 818 (E.D. Mich. 2012)....................25

*Aleksick v. 7-Eleven, Inc.*,
205 Cal. App. 4th 1176 (2012)....................43

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)....................18

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
No. 19-md-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021)....................41

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)....................29

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016)....................34

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................45

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ............................................................29

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................6

*Benson v. Perris Elementary Sch. Dist.*,
No. 22-cv-00535, 2022 WL 3574290 (C.D. Cal. July 1, 2022) ..........................25

*In re BetterHelp, Inc. Data Disclosure Cases*,
No. 23-cv-01033, 2024 WL 3416511 (N.D. Cal. July 15, 2024).........................51

*Black v. IEC Grp., Inc.*,
No. 23-cv-00384, 2024 WL 3623361 (D. Idaho July 30, 2024) .........................14

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
567 F. Supp. 3d 667 (D.S.C. 2021) ...................................................................31

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
No. 20-mn-02972, 2021 WL 3568394 (D.S.C. Aug. 12, 2021)...................36, 45

*Bovay v. Sears, Roebuck & Co.*,
No. 1-14-2672, 2017 WL 660595 (Ill. App. Ct. Jan. 6, 2017) .....................28, 29

*Broder v. Cablevision Sys. Corp.*,
418 F.3d. 187 (2d Cir. 2005) .............................................................................43

*Broderick v. Dairyland Ins.*,
270 P.3d 684 (Wyo. 2012).................................................................................41

*Callahan v. Ancestry.com Inc.*,
No. 20-cv-08437, 2021 WL 2433893 (N.D. Cal. June 15, 2021) .......................15

*Castillo v. Seagate Tech., LLC*,
No. 16-cv-01958, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ......................23

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...........................................................................................15

*Claridge v. RockYou, Inc.*,
785 F. Supp. 2d 855 (N.D. Cal. 2011)...............................................................49

*Clark v. TD Bank, NA*,
No. 25-cv-0881, 2025 WL 1508019, at *2 (E.D. Pa. May 27, 2025) ................46

*Cohen v. Ne. Radiology, P.C.*,
No. 20-cv-1202, 2021 WL 293123 (S.D.N.Y. Jan. 28, 2021)............................25

*Corona v. Sony Pictures Ent., Inc.*,
No. 14-cv-09600, 2015 WL 3916744 (C.D. Cal. June 15, 2015) ......................21

*CTI III, LLC v. Devine*,
No. 21-cv-02184, 2022 WL 1693508 (E.D. Cal. May 26, 2022).......................49

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ..........................................................................39

*Decker v. Hewlett Packard Co.*,
No. 09-cv-00295, 2009 WL 10695728 (N.D. Cal. June 19, 2009) ....................55

*Doe v. Beard*,
63 F. Supp. 3d 1159 (C.D. Cal. 2014) ...............................................................28

*Doe v. Henry Ford Health Sys.*,
308 Mich. App. 592 (2014) ..............................................................19, 20, 21

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)..............................................................24

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
No. 16-cv-00014, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ...........27, 34, 48

*Ehrens v. Lutheran Church*,
385 F.3d 232 (2d Cir. 2004) ........................................................................25, 26

*Eisenhower Med. Ctr. v. Superior Ct.*,
226 Cal. App. 4th 430 (2014) ............................................................................51

*Farrow v. Allstate Ins.*,
53 A.D.3d 563 (N.Y. App. Div. 2008) ..............................................................26

*Fitzpatrick v. Gen. Mills, Inc.*,
263 F.R.D. 687 (S.D. Fla. 2010), *vacated on other grounds*, 635
F.3d 1279 (11th Cir. 2011) ................................................................................41

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*,
No. 19-md-02901, 2022 WL 551221 (E.D. Mich. Feb. 23, 2022), *aff'd*, 65 F.4th 851 (6th Cir. 2023)....................37

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
749 F. Supp. 3d 1240 (S.D. Fla. 2024)....................35

*Frayo v. Martin*,
102 Cal. App. 5th 1025 (2024)....................51

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)....................7

*Garcia v. Sony Computer Ent. Am., LLC*,
859 F. Supp. 2d 1056 (N.D. Cal. 2012)....................42

*In re Google Assistant Priv. Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. 2021)....................56, 57

*Grant v. John Hancock Mut., Life Ins.*,
183 F. Supp. 2d 344 (D. Mass. 2002)....................25

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022)....................7, 8, 11, 12

*Griffey v. Magellan Health Inc.*,
562 F. Supp. 3d 34 (D. Ariz. 2021)....................40

*Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC*,
485 F. Supp. 3d 885 (E.D. Mich. 2020)....................30

*Grigsby v. Valve Corp.*,
No. C12-0553, 2012 WL 5993755 (W.D. Wash. Nov. 14, 2012)....................33

*Hall v. Time Inc.*
158 Cal. App. 4th 847 (2008)....................42

*Hammond v. Bank of N.Y. Mellon Corp.*,
No. 08-cv-6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010)....................22, 34

*Harvey v. Nat'l Amusements, Inc.*,
No. 24-cv-10027, 2025 WL 928776 (D. Mass. Mar. 27, 2025)..........................31

*Hendricks v. DSW Shoe Warehouse Inc.*,
444 F. Supp. 2d 775 (W.D. Mich. 2006)..........................................................34

*Henry v. Universal Tech. Inst.*,
559 F. App'x 648 (9th Cir. 2014) (unpublished)...............................................25

*Hershenow v. Enter. Rent-A-Car Co. Of Bos., Inc.*,
445 Mass. 790, 840 N.E.2d 526 (2006)...........................................................41

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022).....................................................*passim*

*In re Illuminate Educ. Data Sec. Incident Litig.*,
No. 22-cv-01164, 2023 WL 3158954 (C.D. Cal. Apr. 19, 2023),
*aff'd,* No. 23-4114 (9th Cir. Sept. 8, 2025) (unpublished) ..........................*passim*

*Ingram v. PowerSchool*,
No. 25-cv-1284 (S.D. Cal. filed May 20, 2025)...........................................5, 26

*Int'l Longshore & Warehouse Union v. Nelson*,
599 F. App'x 701 (9th Cir. 2015) (unpublished)...............................................18

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)...........................................................28

*Karter v. Epiq Sys., Inc.*,
No. 20-cv-01385, 2021 WL 4353274 (C.D. Cal. July 16, 2021).......................53

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ..........................................................................39

*Khamooshi v. Politico LLC*,
No. 24-cv-07836, 2025 WL 1408896 (N.D. Cal. May 13, 2025) ......................13

*Kho v. Wells Fargo & Co.*,
No. 12-cv-0847, 2012 WL 3240041 (C.D. Cal. Aug. 6, 2012)..........................57

*Kingen v. Warner Norcross + Judd LLP*,
No. 1:22-cv-01126, 2023 WL 11965363 (W.D. Mich. Oct. 5,
2023) ...........................................................................................................31, 32

*Kokkonen v. Guardian Life Ins. of Am.*,
511 U.S. 375 (1994)........................................6

*In re Korean Air Lines Co. Antitrust Litig.*,
642 F.3d 685 (9th Cir. 2011)........................................19

*Laccinole v. Appriss, Inc.*,
453 F. Supp. 3d 499 (D.R.I. 2020)........................................36

*Landon v. TSC Acquisition Corp.*,
No. 23-cv-01377, 2024 WL 5317240 (C.D. Cal. Nov. 1, 2024)..................22, 56

*Lane v. Fein, Such & Crane, LLP*,
767 F. Supp. 2d 382 (E.D.N.Y. 2011)........................................35

*In re LastPass Data Sec. Incident Litig.*,
742 F. Supp. 3d 109 (D. Mass. 2024)....................................19, 29, 30

*Lazar v. Int'l Shoppes, LLC*,
No. 24-cv-4170, 2025 WL 1475627 (E.D.N.Y. May 22, 2025)..................29, 30

*Lerner v. McManamon*,
No. 24-cv-00680, 2025 WL 819679 (C.D. Cal. Feb. 3, 2025)..........................55

*Liss v. Lewiston-Richards, Inc.*,
478 Mich. 203 (2007)........................................43

*Lochridge v. Quality Temp. Servs., Inc.*,
No. 22-cv-12086, 2023 WL 4303577 (E.D. Mich. June 30, 2023)....................32

*London v. New Albertson's, Inc.*,
No. 08-cv-1173, 2008 WL 4492642 (S.D. Cal. Sept. 30, 2008)........................55

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)........................................27

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)........................................7

*Madrid v. Perot Sys. Corp.*,
130 Cal. App. 4th 440 (2005)........................................38

*In re MAPFRE Data Disclosure Litig.*,
No. 23-cv-12059, 2025 WL 975669 (D. Mass. Mar. 31, 2025)........................22

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
552 F.3d 47 (1st Cir. 2009)..........................................................................42

*Matanky v. Gen. Motors LLC*,
370 F. Supp. 3d 772 (E.D. Mich. 2019) ........................................................38

*In re MCG Health Data Sec. Issue Litig.*,
2023 WL 3057428 (W.D. Wash. Mar. 27, 2023), *report and recommendation adopted* 2023 WL 4131746 (June 22, 2023)..........................56

*Medoff v. Minka Lighting, LLC*,
No. 22-cv-08885, 2023 WL 4291973 (C.D. Cal. May 8, 2023) .............8, 15, 21

*Mehr v. Fed'n Internationale de Football Ass'n*,
115 F. Supp. 3d 1035 (N.D. Cal. 2015)............................................................9

*Miller v. NextGen Healthcare, Inc.*,
742 F. Supp. 3d 1304 (N.D. Ga. 2024)......................................................33, 35

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) ..........................................................................34

*Morales v. Conifer Revenue Cycle Sols., LLC*,
No. 23-cv-01987, 2025 WL 1096396 (C.D. Cal. Mar. 31, 2025) ......................31

*In re MOVEit Customer Data Sec. Breach Litig.*,
No. 23-md-3083, 2025 WL 2179475 (D. Mass. July 31, 2025).................*passim*

*Navarro v. Ski Data*,
No. 20-cv-07370, 2022 WL 18280359 (C.D. Cal. Dec. 7, 2022) ......................35

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.*,
748 F. Supp. 3d 262 (E.D. Pa. 2024)...............................................................36

*Nyman v. Thomson Reuters Holdings, Inc.*,
329 Mich. App. 539 (2019) ............................................................................26

*In re OnStar Contract Litig.*,
278 F.R.D. 352 (E.D. Mich. 2011)......................................................39, 41, 43

*Patterson v. Med. Rev. Inst. of Am., LLC*,
No. 22-cv-00413, 2022 WL 2267673 (N.D. Cal. June 23, 2022) ....14, 15, 16, 17

*Ctr. for Food Safety v. Perdue*,
517 F. Supp. 3d 1034, 1041 (N.D. Cal. 2021)....................................................18

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012)..........................................................39, 42

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
842 So. 2d 773 (Fla. 2003) .........................................................................42

*Powell Co. v. McGarey Grp., LLC*,
508 F. Supp. 2d 1202 (N.D. Ga. 2007).............................................................56

*Powers v. Ohio*,
499 U.S. 400 (1990).....................................................................................7

*Prime Rate Premium Fin. Corp. v. Larson*,
226 F. Supp. 3d 858 (E.D. Mich. 2016) .......................................................25, 26

*Rakyta v. Munson Healthcare*,
No. 354831, 2021 WL 4808339 (Mich. Ct. App. Oct. 14, 2021) ..........21, 22, 29

*Rand v. Travelers Indem. Co.*,
637 F. Supp. 3d 55 (S.D.N.Y. 2022) ...............................................................24

*Razuki v. Caliber Home Loans, Inc.*,
2018 WL 2761818 (S.D. Cal. June 8, 2018) ......................................................28

*Reidy v. UMass Memorial Medical Center, Inc.*,
2021 WL 6777622 (Mass. Super. June 17, 2021) .................................20, 21, 51

*Rojas v. Cap. One Fin. Corp.*,
No. 23-cv-10844, 2024 WL 4045376 (D. Mass. Sept. 4, 2024) .........................29

*Romero v. L.A. Rams*,
91 Cal. App. 5th 562 (2023) ..........................................................................19

*Roper v. Rise Interactive Media & Analytics, LLC*,
No. 23-cv- 1836, 2023 WL 7410641 (N.D. Ill. Nov. 9, 2023)............................45

*Rossi v. Sequoia Union Elementary Sch.*,
94 Cal. App. 5th 974 (2023) .......................................................................52

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008)
*aff'd*, 380 Fed. App'x. 689 (9th Cir. 2010)....................................................28

*In re Samsung Data Sec. Breach Litig.*,
761 F. Supp. 3d 781 (D.N.J. 2025)...................................................................14

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
409 Mass. 514 (Mass. 1991)...........................................................................27

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017)..............................................................................34

*In re Shields Health Grp., Inc. Data Breach Litig.*,
721 F. Supp. 3d 152 (D. Mass. 2024)..............................................................27

*Smith v. Sabre Corp.*,
No. 17-cv-05149, 2017 WL 11678765 (C.D. Cal. Oct. 23, 2017).................9, 45

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
753 F. Supp. 3d 849 (N.D. Cal. 2024)..............................................................41

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012)..........................................20, 30, 34

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014)...................................................*passim*

*Spokeo, Inc. v. Robbins*,
578 U.S. 330 (2016)....................................................................................7, 9

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020)...........................................................8, 28

*Sutter Health v. Superior Ct.*,
227 Cal. App. 4th 1546 (2014) .......................................................................52

*In re Target Corp. Customer Data Sec. Breach Litig.*,
66 F. Supp. 3d 1154 (D. Minn. 2014)..............................................................37

*Terpin v. AT & T Mobility, LLC*,
118 F.4th 1102 (9th Cir. 2024) ....................................................................55

*Tietsworth v. Sears, Roebuck & Co.*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010)..............................................................6

*Toretto v. Donnelley Fin. Sols., Inc.*,
583 F. Supp. 3d 570 (S.D.N.Y. 2022) ...............................................................30

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).....................................................................6, 10, 12, 13

*Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*,
241 N.E.3d 454 (Ill. 2024)...........................................................................38

*Rhode Island Laborers' Health & Welfare Fund ex rel. Trs. v. Philip Morris, Inc.*, 99 F. Supp. 2d 174 (D.R.I. 2000)..................................................36

*U1IT4less, Inc. v. FedEx Corp.*,
896 F. Supp. 2d 275 (S.D.N.Y. 2012),
*aff'd*, 871 F.3d 199 (2d Cir. 2017)..................................................................36

*Vicarelli*, 973 F. Supp. at 246-47 (D. Mass. 1997)................................................26

*Vigil v. Muir Med. Grp. IPA, Inc.*,
84 Cal. App. 5th 197 (2022) ..........................................................................52

*Waldron v. Ball Corp.*,
210 A.D.2d 611 (N.Y. App. Div. 1994) ..........................................................26

*Wall v. Wescom Cent. Credit Union*,
No. 23-cv-02293, 2024 WL 1158361 (C.D. Cal. Mar. 18, 2024) .......................30

*Wallace v. Health Quest Sys., Inc.*,
No. 20-cv-0545, 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ......19, 20, 21, 22

*Warth v. Seldin*,
422 U.S. 490 (1975)...........................................................................................18

*In re Waste Mgmt. Data Breach Litig.*,
No. 21-cv-6147, 2022 WL 561734 (S.D.N.Y. 2022) .........................................32

*Yaghoobi v. Tufts Med. Ctr., Inc.*,
762 F. Supp. 3d 85 (D. Mass. 2025)....29

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018)....48

**Statutes**

Cal. Civ. Code §§ 56.05, 56.06, 56.10(a) .... 48-50

Cal. Civ. Code § 1709.... 3, 52-53

Cal. Civ. Code §§ 1750, *et seq*....34

Cal. Civ. Code § 1798.80(c) ....44, 45

Cal. Civ. Code § 1798.82(b) ....42

Cal. Civ. Code § 1798.84(b) ....44

Cal. Civ. Code §§ 1798.100, *et seq.* .... 3, 51-52

Cal. Penal Code § 502(c)(6)-(7)....3, 47

28 U.S.C. § 2201....54

Mass. Gen. Laws Ann. Ch. 93A §§ 1, *et seq.* ....32

Ga. Code. Ann. §§ 10-1-370, *et seq.*....36

Ill. Comp. Stat. §§ 510/2, *et seq.*....35

La. Rev. Stat. § 51:3074(E) ....45

Mass. Gen. Laws Ch. 93H, § 3(a)....42

Me. Rev. Stat. Ann. tit. 10, § 1213 ....35

Mich. Comp. Laws Ann. § 445.72(2)....42

Miss. Code §§ 75-24-1, *et seq.* ....36

N.D. Cent. Code § 51-30-07 ....44

N.M. Stat. Ann. § 57-12C-11(A) ....43

N.Y. GBL § 349 .......... 31-32

N.J. Stat. Ann. §§ 56:8-1, *et seq.* .......... 33

O.C.G.A. § 13-6-11 .......... 3, 53-54

Or. Rev. Stat. § 646A.604(3)(a) .......... 45

Tenn. Code § 47-18-2107 .......... 45

Wash. Rev. Code § 19.255.010(8) .......... 45

Wis. Stat. Ann. § 134.98(4) .......... 43

Wis. Stat. § 134.98(3)(a) .......... 45

**Other Authorities**

Fed. R. Civ. P. 9(b) .......... 36, 53

Fed. R. Civ. P. Rule 12(b)(1) .......... 5

Fed. R. Civ. P. Rule 12(b)(6) .......... 5

RESTATEMENT (SECOND) OF TORTS § 652B .......... 25

Art. I, § 1, Cal. Const. .......... 24

# INTRODUCTION

On December 28, 2024, PowerSchool Holdings, Inc., and PowerSchool Group, LLC (together, "PowerSchool")—a provider of education technology to schools and school districts—learned that it had experienced a cyberattack involving its Student Information System, also known as the "SIS" (the "Cybersecurity Incident" or the "Incident"). PowerSchool immediately engaged its incident response protocols and mobilized a cross-functional response team, including third-party cybersecurity experts, to contain the Incident and to harden system security. PowerSchool notified its customers on a rapid timeline—on January 7, 2025, within ten days of learning of the Incident and only a few business days into the new year. Since then, PowerSchool has supported its customers, as well as individuals with information involved in the Incident. PowerSchool has made available two years of complimentary identity and/or credit monitoring to all involved individuals, regardless of the nature of their information involved.

The information implicated in the Incident varies significantly on a customer-by-customer, and ultimately an individual-by-individual, basis. The data varied by person and included one or more of the following: name, contact information, date of birth, limited medical alert information, Social Security number ("SSN"), and other related information (collectively, the "Data"). Based on the Incident, Plaintiffs—current or former students, their parents or guardians, teachers and other employees, and a teachers' union—bring a variety of tort and statutory claims through their Consolidated Individual Users Class Action Complaint (the "Master Complaint" or "MC"). Dkt. No. 259.

Plaintiffs' claims should be dismissed through the application of core principles that courts have developed in the context of other cybersecurity incidents. The information that the individual Plaintiffs allege to be at issue varies

significantly, as do their allegations of harm. Most Plaintiffs do not plead injury-in-fact sufficient to establish Article III standing, nor do they plead the sort of damages required to sustain their negligence and consumer protection claims. A number of Plaintiffs do not even identify what, if any, of their Data was involved in the Incident. Other Plaintiffs fail to allege that the Incident implicated the types of information—like SSNs or certain medical data—that courts recognize as supporting standing and damages at the pleadings stage. No Plaintiffs plead any facts indicating that the Incident involved any financial information (nor could they). Lacking any such factual allegations, these Plaintiffs cannot recover for a wholly speculative fear of future harm, and their claims should be dismissed.

Separate and apart from standing and damages as a dispositive issue for most Plaintiffs, the Court should dismiss other counts because Plaintiffs fail to allege essential elements. The negligence-based claims should be dismissed for lack of cognizable damages (among other deficiencies) across an even broader group of Plaintiffs. Many states disallow negligence per se claims that are premised (as here) on statutes without a private cause of action. The negligent supervision claims should be dismissed because Plaintiffs do not allege that PowerSchool knew or should have known that the employees of a service provider it had retained were unfit. Plaintiffs' invasion of privacy claims fail because Plaintiffs do not allege any intentional disclosure by PowerSchool or any facts indicating a highly offensive or egregious breach of social norms. The breach of fiduciary duty and unjust enrichment claims are non-starters because there is no direct relationship between Plaintiffs and PowerSchool, which is a requirement for those counts.

The consumer protection claims should also be dismissed on several, independent grounds. Many Plaintiffs do not plead the cognizable damages required under their state's statute because they do not allege actual damages or

out-of-pocket loss. Plaintiffs also do not allege a consumer relationship or transaction, which they must under many of the statutes. Still other statutes preclude class-wide relief or the recovery of damages. And at root, Plaintiffs are unable to plead unfair, unlawful, or deceptive conduct, particularly when their own allegations make clear that they did not rely on any of PowerSchool's purported misrepresentations. Such failure dooms all Plaintiffs' consumer protection claims.

Plaintiffs' claims under the data breach notification statutes fail for several reasons as well. Most fundamentally, PowerSchool had no obligation to notify Plaintiffs, none of whom were customers of PowerSchool. Rather, PowerSchool's notification obligations were to its school and school district customers. The Master Complaint also invokes multiple California statutes that simply do not apply to PowerSchool or the type of information at issue, such as the Confidentiality of Medical Information Act, the Customer Records Act, the California Consumer Privacy Act, and the Comprehensive Data Access and Fraud Act. Plaintiffs' claims under California Civil Code Section 1709 (which prohibits deceit by concealment), and Georgia's O.C.G.A. § 13-6-11 (which relates to bad-faith litigation) should be dismissed because Plaintiffs simply recite—in conclusory fashion—the elements of those claims. Finally, Plaintiffs fail to allege an imminent and substantial risk of a future data incident to support their claims for injunctive relief, and their claim for declaratory relief is duplicative of their other causes of action.

PowerSchool respectfully requests that the Court grant its Motion to Dismiss on the grounds set forth below.

## SUMMARY OF PERTINENT FACTUAL ALLEGATIONS[1]

PowerSchool is a Sacramento-based leading provider of cloud-based software for K-12 education in the United States, supplying cutting-edge educational technology products to its customers—schools and school districts. *See, e.g.*, MC ¶ 50. These customers use the Company's products to collect and maintain student and teacher data. *See id.* ¶¶ 54-55.

On or about December 28, 2024, PowerSchool learned that it had experienced a cyberattack. *Id.* ¶ 123. Plaintiffs allege that a criminal actor used stolen credentials from an employee of Movate, Inc. ("Movate"), a service provider to PowerSchool, to access certain SIS environments through one of PowerSchool's community-focused customer support portals, PowerSource. *See id.* ¶¶ 21, 25, 127. In early January 2025, only 10 days after learning of the Incident, PowerSchool notified its customers. *See id.* ¶ 122.

Plaintiffs contend that the Data involved in the Incident could contain a variety of information including student and employee contact information, such as names and addresses, as well as SSNs, medical information, grades, and other information. *Id.* ¶¶ 2, 201. PowerSchool has stated publicly that it has taken steps, and continues to take steps, to ensure that any potentially exfiltrated data will not be released. These steps include engaging dark web monitoring services, which, to date, have reported no findings of information related to this Incident identified on the dark web. *See id.* ¶ 275. PowerSchool has also offered two years of complimentary identity protection and/or credit monitoring services to Plaintiffs. *Id*. ¶ 275.

Plaintiffs are current or former students, their parents or guardians, teachers

---

[1] For the purposes of this motion only, PowerSchool assumes the truth of the properly pled facts. PowerSchool reserves all rights to contest the validity of all allegations in the Master Complaint.

and other employees, and a teachers' union. *Id.* ¶¶ 33-34. PowerSchool's school district customers determine what information to collect from Plaintiffs and direct PowerSchool concerning the storage and maintenance of Plaintiffs' information. *Id.* ¶¶ 54, 56, 897. PowerSchool does not receive payment or compensation from Plaintiffs. *Id.* ¶¶ 3, 33, 51-52.

Most Plaintiffs do not specifically allege that their SSNs, medical information, or financial information were compromised in the Incident. *See, e.g.*, *id.* ¶¶ 321, 360, 378, 414. Several Plaintiffs state only that their unspecified "PII" and/or "PHI" were input into the SIS. *See, e.g.*, *id.* ¶¶ 310, 315, 514, 565. While some Plaintiffs allege that they or their children have had their identities stolen, or experienced fraud because of the Incident, the vast majority do not. *Compare id.* ¶¶ 348-53, 396-407, 408-13, *with id.* ¶¶ 331-35, 366-71, 384-89, 402-07, 426-31, 463-68, 523-40, 553-58, 565-70. All Plaintiffs nonetheless allege a laundry list of purported harms ranging from misuse to future risk of identity theft, time and money spent dealing with the Incident and spam, and loss of privacy. *Id.* ¶¶ 509, 515, 526, 562. Plaintiffs bring an assortment of claims on behalf of a national class and alternatively, 40 statewide subclasses, contending that PowerSchool failed to implement adequate security procedures or provide adequate notice of the Incident.[2] *Id.* ¶¶ 8, 29.

---

[2] Other Plaintiffs originally filed individual cases in this multi-district litigation ("MDL") but are not plaintiffs in the Master Complaint. *See, e.g.*, *Ingram v. PowerSchool*, No. 25-cv-1284 (S.D. Cal. filed May 20, 2025). To the extent those Plaintiffs' claims are not voluntarily dismissed or subsumed by the Master Complaint, PowerSchool seeks dismissal of those complaints on the same grounds set forth in this Motion. There are also 51 new purported Plaintiffs identified in the Master Complaint who have not filed separate actions pursuant to a direct filing order or separate actions that were transferred into this MDL, as required for this Court to have subject matter jurisdiction over their claims. PowerSchool joins and

## LEGAL STANDARD[3]

Under Rule 12(b)(6), a complaint is properly dismissed if Plaintiffs fail to allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court "need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences." *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1132 (N.D. Cal. 2010). As another court has recognized in this district, the *Twombly* pleading standard is "particularly demanding in a complex, large-scale data breach class action litigation." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 972 (S.D. Cal. 2014) ("*Sony I*").

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction applies a similar standard. *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1046 (N.D. Cal. 2022). As the parties seeking to enter federal court, Plaintiffs bear the burden of establishing Article III standing. *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).

## ARGUMENT

### I. MOST PLAINTIFFS LACK ARTICLE III STANDING

Article III standing requires three elements: (i) injury in fact, (ii) causation, and (iii) redressability. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Plaintiffs must "clearly … allege facts demonstrating each element." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (omission in original).

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual

---

incorporates by reference in full Bain Capital, L.P.'s argument on this point and seeks dismissal on the same grounds.

[3] All internal quotation marks, alterations, and internal citations are omitted unless otherwise noted.

or imminent, not conjectural or hypothetical." *Id*. at 339. An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual way." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992). Here Plaintiffs seek both damages and injunctive relief, and so they must allege facts supporting "standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "At least one named plaintiff must have standing with respect to each claim that the class representatives seek to bring." *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1226 (N.D. Cal. 2022).[4]

In assessing Article III standing in the context of a cybersecurity incident, courts in the Ninth Circuit have closely examined the nature of the information involved. *See, e.g.*, *Zynga*, 600 F. Supp. 3d at 1050 ("[I]n data breach cases, courts must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all."); *In re Illuminate Educ. Data Sec. Incident Litig.*, No. 22-cv-01164, 2023 WL 3158954, at *2-3 (C.D. Cal. Apr. 19, 2023) ("*Illuminate*") (analyzing the nature of the information involved to determine standing), *aff'd,* No. 23-4114, at 5 (9th Cir. Sept. 8, 2025) (unpublished).[5] This examination avoids "every data breach (or any situation in which one loses control of information) [conferring] standing, regardless of whether private information is exposed." *Zynga*, 600 F. Supp. 3d at 1050.

Courts have recognized that alleged injuries based on the compromise of

---

[4] It is unclear if the Plaintiffs who are parents seek to bring claims on behalf of their minor children, as opposed to each bringing claims individually or as *guardians ad litem*. If the former, the parents must still plead that they individually suffered an "injury in fact." *Powers v. Ohio*, 499 U.S. 400, 410-11 (1990).

[5] A copy of the *Illuminate*, No. 23-4114 (9th Cir. Sept. 8, 2025) decision is attached as Appendix D.

specific types of personal data—such as SSNs, financial account information, or medical records—can allege facts that may support Article III standing. *See Greenstein*, 585 F. Supp. 3d at 1227 ("[T]he injury-in-fact requirement will be satisfied when highly sensitive personal data, such as [SSNs] and credit card numbers, are inappropriately revealed to the public and increase the risk of immediate future harm to the plaintiff."); *Medoff v. Minka Lighting, LLC*, No. 22-cv-08885, 2023 WL 4291973, at *6 (C.D. Cal. May 8, 2023) (finding standing where SSNs were posted on dark web); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 906 (S.D. Cal. 2020) (same where medical claim information, including diagnosis codes and treatment details, was posted online).

By contrast, courts have repeatedly dismissed claims where the data at issue consisted only of names, addresses, phone numbers or equivalent information that is publicly available or not inherently private. *See Zynga*, 600 F. Supp. 3d at 1049-50 (no standing where only email addresses, phone numbers, passwords, and usernames were disclosed); *Abellard v. Stretto, Inc.*, No. 24-cv-01030, 2025 WL 1674265, at *6 (C.D. Cal. Apr. 25, 2025) (same where plaintiffs failed to plausibly allege that names, mailing addresses, emails, and phone numbers could be used to commit identity theft). For example, in *Illuminate*, another case involving an educational software provider akin to PowerSchool, the court dismissed all claims for lack of standing where the incident only involved academic and behavioral information. *See* 2023 WL 3158954, at *3-4, *aff'd,* No. 23-4114, at 5 (9th Cir. Sept. 8, 2025) (unpublished) (recognizing that the "kind of information at issue [is not] the kind that this court normally considers sufficient to find a credible threat of identity theft").

PowerSchool's customers collected varying information from students and teachers, and so the Data that each Plaintiff alleges to be at issue varies significantly. For many Plaintiffs, the Data only includes information that does not

confer standing under well-settled law. Although Plaintiffs emphasize that the Incident included SSNs and what the Master Complaint loosely terms "medical information," MC ¶ 262, a plaintiff-by-plaintiff analysis is necessary because that simply is not the case for the majority of Plaintiffs by their own allegations. *See Spokeo*, 578 U.S. at 338 n.6 (named plaintiffs must allege standing); *Mehr v. Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1055 (N.D. Cal. 2015) (each plaintiff must allege standing as to each form of relief).

Only 49 out of 170 Plaintiffs have pled anything approximating the type of information that could plead a concrete injury for Article III standing—namely, that the Incident involved their SSN or some specified medical information.[6] The claims of the remaining Plaintiffs (the "No-Injury Plaintiffs") must be dismissed for lack of Article III standing. Attached as Appendix A is a chart that categorizes the Plaintiffs by (i) the subset who claim the Incident involved Data that is of the type that may confer standing, and (ii) the No-Injury Plaintiffs, who allege that non-sensitive Data was involved or who fail to describe what Data was involved, as they must to plausibly allege that they face any actual or imminent risk of harm.[7]

---

[6] To be clear, PowerSchool does not concede that these 49 Plaintiffs actually satisfy Article III's requirements. In fact, the comparatively few Plaintiffs who suggest that they suffered identity theft or fraudulent activity fail to allege *when* the purported misuse of their information occurred, making it implausible to infer any temporal or logical connection between what they allege and the Incident. *See, e.g.*, MC ¶¶ 346, 375, and 411; *see Smith v. Sabre Corp.*, No. 17-cv-05149, 2017 WL 11678765, at *4 (C.D. Cal. Oct. 23, 2017) (concluding plaintiff failed to plead any injury traceable to defendant's conduct when the complaint was silent on when the fraudulent charges occurred). PowerSchool nonetheless focuses on the No-Injury Plaintiffs above, to address those Plaintiffs who clearly lack standing even on the face of the Master Complaint's allegations.

[7] For the Court's convenience, Appendix A also identifies (i) each Plaintiff's state of residence, (ii) each Plaintiff's allegations regarding their Data, (iii) each Plaintiff's alleged harm(s), and (iv) the claims asserted by the Plaintiffs who are not No-Injury Plaintiffs who lack standing.

Below, PowerSchool addresses why none of the harms alleged by the No-Injury Plaintiffs confers standing.

### A. <u>The No-Injury Plaintiffs Do Not Plausibly Allege Any Identity Theft or Other Misuse of Their Data</u>

Especially following the Supreme Court's decision in *TransUnion*, courts have held "that mere compromise of personal information, without more, fails to satisfy the injury-in-fact element in the absence of an identity theft." *Zynga*, 600 F. Supp. 3d at 1051. The No-Injury Plaintiffs do not plausibly allege any actual identity theft or fraudulent activity as a result of the Incident. *See, e.g.*, Appendix A at 1-121. Plaintiff Charlotte Renn is an illustrative No-Injury Plaintiff. *See* MC ¶¶ 281-86. She is a teacher who claims that she "entered highly sensitive PII into PowerSchool's SIS" and certain personal information of hers was involved in the Incident. *Id.* But she fails to allege *what* "PII" she supposedly provided the school, or *whether* that information was even involved in the Incident. *See Zynga*, 600 F. Supp. 3d at 1034, 1039-40 (no standing where plaintiffs failed to "specifically allege that this data was taken in the breach").

Plaintiff Renn and other No-Injury Plaintiffs couple assertions that their "PII" is at issue with cursory allegations of fraud. *See, e.g.*, MC ¶¶ 283 (Plaintiff Renn alleging fraudulent credit card charges), 452, 509 (allegations, for example, of a fraudulent purchase on an Apple account and an unauthorized attempt to open a credit card). These allegations, including Plaintiff Renn's claim that she cancelled and requested the reissuance of credit cards "that had fraudulent charges entered," MC ¶ 283, do not allege any injury-in-fact. The No-Injury Plaintiffs do not allege that the Incident compromised the type of Data necessary for an unauthorized person to engage in any fraudulent activity. None of these Plaintiffs claims that the Incident impacted their SSN. The Master Complaint also does not

plead any facts indicating that financial information—such as payment card or bank account numbers—was even involved in the Incident. Nor could Plaintiffs. The PowerSchool notifications that Plaintiffs rely on throughout the Master Complaint do not identify any financial information as being among the Data involved in the Incident. MC ¶ 143. Two No-Injury Plaintiffs claim their "financial information" somehow was exposed, but supply no factual allegations to support that assertion. *See* MC ¶¶ 360 (Plaintiff Rhoden), ¶ 500 (Plaintiff Nadeau).

Because the No-Injury Plaintiffs fail to allege the Incident compromised any information that courts recognize as placing an individual at risk of theft, there can be no plausible inference of fraudulent activity resulting from the Incident. In *Greenstein*, for example, the court reasoned that "names, addresses, and driver's license numbers" were "insufficient to open a new account . . . or to gain access to personal accounts," and refused to infer standing "without the addition of more, highly sensitive personal information such as [SSNs]." 585 F. Supp. 3d at 1228; *see also Illuminate*, 2023 WL 3158954, at *2 (similar). The allegations here suffer from the same implausibility. Importantly, the No-Injury Plaintiffs who claim unauthorized activity also fail to allege any injury traceable to PowerSchool's alleged conduct. These Plaintiffs simply attribute unauthorized activity to PowerSchool's Incident, without alleging any facts regarding timing or other circumstances to support their belief that it resulted from the Incident. This omission is particularly fatal given Plaintiffs' own allegations that millions of individuals are impacted by data breaches each year and hackers steal *terabytes* worth of data. MC ¶¶ 164, 171, 177. The Master Complaint specifically highlights the fact that attacks against K-12 institutions have become increasingly common, and asserts this Incident is not the first associated with the group believed to be responsible for the attack on PowerSchool. *See* MC ¶¶ 163-67. The No-Injury Plaintiffs do not connect their alleged injuries to the Cybersecurity

Incident, rather than to the general risk of data exposure or to other, unrelated breaches. *See Greenstein*, 585 F. Supp. 3d at 1231 (finding plaintiffs failed to plead traceability where information was widely available from other sources).

Several No-Injury Plaintiffs also allege an increase in spam and phishing calls, text messages, and emails. *See, e.g.*, Appendix A at 6-7. But courts regularly hold that "receiving spam or mass mail does not constitute an injury in fact." *Zynga*, 600 F. Supp. 3d at 1051. These allegations do not provide standing either. *Illuminate*, 2023 WL 3158954, at *3 ("Receipt of spam, absent any other injury, is insufficient to establish an injury for the purposes of standing.").

### B. The No-Injury Plaintiffs Do Not Plausibly Allege Any Imminent Risk of Future Harm

Lacking any allegation of actual misuse of their Data, the No-Injury Plaintiffs mainly rely on assertions that they face an increased risk of future harm. The Supreme Court has made clear that "the mere risk of future harm, standing alone, cannot qualify as a concrete harm" in a suit for damages. *TransUnion*, 594 U.S. at 436. Likewise, "a material risk of future harm" confers Article III standing to seek injunctive relief only where "the risk of harm is sufficiently imminent and substantial." *Id.* at 435.

Here too, the failure to allege "facts indicating that the disclosed information could plausibly be used to commit fraud or otherwise cause harm" precludes Plaintiffs from having standing. *Khamooshi v. Politico LLC*, No. 24-cv-07836, 2025 WL 1408896, at *6 (N.D. Cal. May 13, 2025). The No-Injury Plaintiffs' allegations generally fall into two categories: (i) Plaintiffs whose own allegations confirm that the Incident did not involve any purportedly sensitive Data, and (ii) Plaintiffs who vaguely claim that they provided "medical" or "financial" information, or simply "PII and PHI," in PowerSchool's SIS. Both categories fail

to plausibly allege a concrete injury based on an alleged risk of future harm that is both imminent and substantial.

*First*, several No-Injury Plaintiffs allege only that their name, phone number, email and home addresses, or birth date was involved in the Incident. *See, e.g.*, Appendix A at 107-15. This information does not confer standing. *See Zynga*, 600 F. Supp. 3d at 1050 (no standing as to names, email addresses, phone numbers, and usernames and passwords); *Abellard*, 2025 WL 1674265, at *6 (same where plaintiffs failed to allege that names, email addresses, mailing addresses or claim amount "could be used to commit identity theft.").

Other No-Injury Plaintiffs allege the Incident involved their enrollment records, the names of household residents, a student's method of transportation to school, or other student-specific information (e.g., wearing earplugs for water-related school activities). This type of information is a far cry from what courts recognize as conferring standing in a data breach case. Like name and contact information, this information is typically shared by individuals, publicly available, or readily observable and is not the sort of information that can be used to commit identity theft or fraud. *See, e.g.*, *Black v. IEC Grp., Inc.*, No. 23-cv-00384, 2024 WL 3623361, at *4-5 (D. Idaho July 30, 2024) (holding plaintiffs lacked standing because amount billed, date of treatment, names, addresses, and contact information did "not give rise to a credible threat of fraud or identity theft"). For example, in *Illuminate*, the court emphasized that although "students' academic, behavior, and demographic information was leaked," the plaintiffs did not allege that the breach involved any "social security, credit card, or bank information." 2023 WL 3158954, at *2. The No-Injury Plaintiffs' claims fail here for the same reason. *See id.*

*Second*, some No-Injury Plaintiffs allege that their Data includes unspecified "medical information," or simply "PII and PHI." *See, e.g.*, Appendix A at 4, 119.

These vague assertions fall well short of pleading facts that would allow the Court to conclude these Plaintiffs face an imminent and substantial risk of future harm. *See In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781 (D.N.J. 2025) (rejecting claims of plaintiffs who failed to allege "the *specific information* that was obtained in this data breach"). "Medical information" casts a wide net. It could include readily observable facts, such as wearing glasses, that are not sufficiently sensitive to confer standing. *See Patterson v. Med. Rev. Inst. of Am., LLC*, No. 22-cv-00413, 2022 WL 2267673, at *2 (N.D. Cal. June 23, 2022) (holding that patient name, insurance information, length of medical visits and medical bill amount was not "sufficiently sensitive to create a credible risk of future fraud or identity theft"). Courts have rejected such generalized allegations, especially where Plaintiffs do "not specifically allege that this data was taken in the breach." *Zynga*, 600 F. Supp. 3d at 1039-40. Plaintiffs cannot skirt their pleading burden on this basis. *See Illuminate*, 2023 WL 3158954, at *3 (rejecting alleged "risk of future harm" with "no connection between the personal information leaked and the harms alleged").

### C. "Derivative" Harm Allegations Do Not Create Standing

The No-Injury Plaintiffs also allege various harms that are derivative of their claims of future harm, including emotional distress, or lost time, effort, money, or opportunity costs. But Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Courts in this Circuit have repeatedly rejected these same allegations as a basis for standing in the absence of a plausible risk of imminent future harm. *See Medoff*, 2023 WL 4291973, at *6 ("Plaintiff[s] ha[ve] only incurred self-inflicted injuries in response to a conjectural harm."); *Illuminate*, 2023 WL 3158954, at *4; *Patterson*, 2022 WL 2267673, at *2 (no standing for fear and anxiety where there

is no imminent or substantial threat of future harm); *Callahan v. Ancestry.com Inc.*, No. 20-cv-08437, 2021 WL 2433893, at *4-5 (N.D. Cal. June 15, 2021) (holding that "anxiety and stress" without "credible threat of future identity theft" is not cognizable injury-in-fact).[8] Because the No-Injury Plaintiffs fail to allege any certainly impending risk of future harm, their derivative allegations do not confer standing.

### D. Allegations of Lost Data Value or Privacy Fare No Better

Finally, the No-Injury Plaintiffs resort to alleging more theoretical harms, namely that they suffered a loss of value in their Data or a loss of privacy. *First*, the No-Injury Plaintiffs cannot plead injury-in-fact based on allegations that they lost value in their information. This theory requires Plaintiffs to allege "both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market." *Zynga*, 600 F. Supp. 3d at 1054. The No-Injury Plaintiffs merely parrot case law in alleging that there was a "market" for their Data (MC ¶¶ 267-71) and fail to allege how the Incident devalued the specific information at issue. *Id.* Nor do Plaintiffs allege that they actively planned to sell their information before the Incident, or that they ever participated in a market in connection with their Data or had any plans of doing so. *See Patterson*, 2022 WL 2267673, at *3.

*Second*, many No-Injury Plaintiffs offer a generalized allegation that they have "increased concerns regarding the loss of [their] privacy." MC ¶ 31; *see, e.g.*, *id*. ¶ 302 (Plaintiff Justine Shamey). Even crediting this as an alleged loss of privacy, for such allegations to constitute an injury-in-fact, the loss of privacy must have "a close relationship to a harm traditionally recognized as providing a basis

[8] Additionally, to the extent the No-Injury Plaintiffs rely on costs for credit monitoring or identity protection, PowerSchool has already offered them these services free of charge. MC ¶ 275.

for lawsuits in American courts," such as the "disclosure of private information, and intrusion upon seclusion." *Zynga*, 600 F. Supp. 3d at 1048. Other No-Injury Plaintiffs vaguely allege that their "medical information" was "input into PowerSchool's SIS," without specifying what supposed medical information or that it was even involved in the Incident. *See, e.g.*, MC ¶ 408 (Plaintiff R.H.S.). PowerSchool does not provide medical services or process medical claims. Labeling information "medical" does not provide Plaintiffs with the ability to conjure standing.

Where Plaintiffs fail to specify what Data was involved, or fail to allege that the Data was of the nature recognized by courts to potentially confer standing (*e.g.*, SSNs or specific types of medical information), they cannot plausibly plead that the Incident involves "matters of a kind that would be highly offensive to a reasonable person." *Zynga*, 600 F. Supp. 3d at 1049. The loss of privacy allegations also fail because Plaintiffs do not allege that their information was "actually viewed" by an "unauthorized individual." And only a small handful of No-Injury Plaintiffs allege that some of their information—without alleging that it was the information involved in the Incident—appeared on the dark web.[9] *Patterson*, 2022 WL 2267673, at *3. In *Patterson*, the court concluded that allegations of hackers demanding a ransom payment and the defendant paying that ransom were insufficient to plead loss of privacy, even where the plaintiffs alleged that their financial information existed on the dark web. *Id.* Plaintiffs plead nothing different here. *See, e.g.*, MC ¶ 997.

In sum, the No-Injury Plaintiffs do not allege that they provided to PowerSchool their SSNs or actual medical information and that information was

[9] Plaintiffs Alysha Noble, C.J., M.J., David Suave, Jennifer Cecilia Harrell, and Melissa Gifford.

involved in the Incident. The Court must dismiss their claims for lack of subject matter jurisdiction. These 121 Plaintiffs are identified on Appendix A at 1-121. With the dismissal of these Plaintiffs, there are no Plaintiffs that reside in 18 of the 40 states reflected in the Master Complaint.[10] To the extent Plaintiffs seek to assert their common law claims under the laws of these states, those claims must be dismissed, along with the associated state statutory claims.

**E. The Teachers Union Plaintiff Lacks Standing**

One Plaintiff, Providence Teachers Union ("PTU"), brings claims "on behalf of itself and its impacted members," which include teachers. MC ¶ 34.

The PTU may sue on behalf of its members through associational standing only where "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Int'l Longshore & Warehouse Union v. Nelson*, 599 F. App'x 701, 702 (9th Cir. 2015) (unpublished). The PTU does not have associational standing to sue on behalf of its members because the only Plaintiff allegedly employed in Rhode Island and a conceivable member of the PTU, Denise Champney, is a No-Injury Plaintiff. *See* MC ¶¶ 34, 749; *see also id.* ¶¶ 315-20. The PTU also cannot assert any claim for damages because doing so would require the participation of its individual members. *See Warth v. Seldin*, 422 U.S. 490, 492 (1975).

The PTU may assert organizational standing to sue on its own behalf based on the "frustration of its organizational mission," *Ctr. for Food Safety v. Perdue*, 517 F. Supp. 3d 1034, 1041 (N.D. Cal. 2021), but only if it satisfies Article III's

[10] The relevant states are Arizona, Colorado, Idaho, Iowa, Maine, Maryland, Minnesota, Mississippi, Montana, New Jersey, New York, Oklahoma, Oregon, Rhode Island, Texas, Utah, Vermont, and Wisconsin.

injury requirements, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 369 (2024). The PTU does not allege how its organizational mission was frustrated, and its claimed injuries do not confer organizational standing. The PTU alleges it used resources and incurred lost time by addressing members' concerns and questions in connection with the Incident, including by answering calls. MC ¶¶ 34, 749. Standing does not exist simply where "an organization diverts its resources in response to a defendant's actions." *All. for Hippocratic Med.*, 602 U.S. at 370. Because the PTU fails to allege harm to its members (associational standing) or harm to itself (organizational standing), its claims should be dismissed.

## II. CHOICE OF LAW

Plaintiffs represent approximately 40 states and seek to represent a nationwide class. To determine which law applies to their claims, the Court must apply the choice-of-law rules of each of the nine transferor courts—California, Connecticut, Illinois, Michigan, Minnesota, Missouri, New Jersey, New York, and North Carolina—on a claim-by-claim basis. *In re Korean Air Lines Co. Antitrust Litig.*, 642 F.3d 685, 699 (9th Cir. 2011). The outcome of the choice-of-law analysis is the same under each: the law of the state of residence of each plaintiff—where they sustained the purported injuries and experienced the effects of the complained-of conduct—applies to their claims. But the Court need not resolve this issue at the motion to dismiss stage because each applicable state's law supports the bases for dismissal that PowerSchool puts forward in this brief. Given the large number of applicable state laws, and for efficiency, PowerSchool has focused its analysis on four illustrative states: California, New York, Massachusetts, and Michigan.[11]

[11] Plaintiffs purport to assert their claims "under California law in accordance with Defendants' terms of service," but the Master Complaint is devoid of any relevant

## III. MOST PLAINTIFFS FAIL TO PLEAD NEGLIGENCE (COUNT I)

***Negligence Allegations Generally.*** The No-Injury Plaintiffs' failure to plead concrete injury, *see supra* Section I, is equally fatal to their negligence claim, because cognizable damages are an element of negligence. *See, e.g.*, *Romero v. L.A. Rams*, 91 Cal. App. 5th 562, 567 (2023) (requiring "injury to the plaintiff caused by the defendant's breach" and "actual damages"); *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 600 (2014) (Michigan); *Wallace v. Health Quest Sys., Inc.*, No. 20-cv-0545, 2021 WL 1109727, at *8 (S.D.N.Y. Mar. 23, 2021) (New York); *In re LastPass Data Sec. Incident Litig.*, 742 F. Supp. 3d 109, 124 (D. Mass. 2024) (Massachusetts).

Other Plaintiffs, in addition to the No-Injury Plaintiffs, still do not adequately plead the sort of damages required to maintain a claim for negligence, even if the Court were to find they have Article III standing. Here, PowerSchool focuses on those Plaintiffs beyond the No-Injury Plaintiffs who, regardless of the Data they claim was involved in the Incident, do not plead any actual *misuse* of their Data, whether identity theft or some other fraudulent activity. *See, e.g.*, MC ¶ 705 (Plaintiff Emma Pangracs). These 40 additional Plaintiffs are identified at Appendix A at 123, 126, 128-29, 131-32, 134-37, 139, 141, and 143-70. To attempt to plead injury, these Plaintiffs rely on allegations of: (i) a heightened risk of future identity theft, (ii) lost time mitigating the Incident and dealing with spam, (iii) emotional distress and an "increased concern" over a potential loss of privacy, and (iv) the loss of value in their Data. None of these purported injuries supports a negligence claim.

---

factual allegations related to Plaintiffs and their interaction, if any, with the terms of service. MC at 1. No Plaintiff even alleges that they actually read the terms of service pre-Incident. Plaintiffs' attempt to invoke California law for all claims should be disregarded.

*First*, "appreciable, nonspeculative, present harm is an essential element of a negligence cause of action." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962 (S.D. Cal. 2012) ("*Sony II*"). Courts have found that even where the risk of future identity theft may be sufficient for standing, "this risk alone does not rise to the level of appreciable harm to assert a negligence claim." *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 695 (N.D. Cal. 2019); *see also Henry Ford Health Sys.*, 308 Mich. App. at 601 (Michigan); *Wallace*, 2021 WL 1109727, at *8 (New York); *Reidy v. UMass Mem'l Med. Ctr., Inc.*, No. 2085-CV001101, 2021 WL 6777622, at *2 (Mass. Super. Ct. June 17, 2021) (Massachusetts). Simply put, Plaintiffs cannot rely on a risk of future harm as a basis for pleading negligence.[12]

*Second*, several Plaintiffs allege an unspecified loss of time in responding to the Incident without any out-of-pocket costs. These Plaintiffs do not allege how much time they supposedly spent in connection with the Incident. *See, e.g.*, MC ¶¶ 302 (alleging "significant time" responding to the Incident), 477 (alleging "significant time" and "several hours of phone calls"), 491 (alleging "significant time" and "multiple hours monitoring her accounts for fraudulent changes [sic] and addressing an influx of fraudulent phone calls"). Their allegations are too conclusory to survive a motion to dismiss. *See Corona v. Sony Pictures Ent., Inc.*, No. 14-cv-09600, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) ("[G]eneral allegations of lost time are too speculative to constitute cognizable injury."); *Wallace*, 2021 WL 1109727, at *8 (lost time insufficient under New York law);

---

[12] A few Plaintiffs allege that they purchased credit monitoring or identity theft protection, but do not allege when or why these services were purchased when PowerSchool has provided free monitoring services. MC ¶¶ 275, 392, 476. Courts have held that monitoring costs do not suffice if "incurred in anticipation of possible future injury." *See, e.g.*, *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 600 (2014).

*Rakyta v. Munson Healthcare*, No. 354831, 2021 WL 4808339, at *4 (Mich. Ct. App. Oct. 14, 2021) ("lost time and expenditures to prevent or mitigate the harms that would occur should third parties misuse the confidential information" inadequate under Michigan law); *Reidy*, 2021 WL 6777622, at *3 ("inconvenience caused by such unsolicited communications does not qualify as actual damages" under Massachusetts law).

*Third*, boilerplate allegations of "emotional distress" and "increased concern" over an alleged loss of privacy are similarly too vague to constitute actual damages. *Medoff*, 2023 WL 4291973, at *9 (categorizing such allegations as "insufficient to sustain a negligence claim at the motion to dismiss stage"); *Rakyta*, 2021 WL 4808339, at *5 ("emotional distress or anxiety about a potential future injury" insufficient under Michigan law); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-cv-6060, 2010 WL 2643307, at *10 (S.D.N.Y. June 25, 2010) (heightened fear insufficient under New York law); *In re MAPFRE Data Disclosure Litig.*, No. 23-cv-12059, 2025 WL 975669, at *13 (D. Mass. Mar. 31, 2025) (allegations of emotional distress require "some physical manifestation" in Massachusetts). Generalized allegations that a plaintiff's "information" appeared on the dark web do not save these claims.[13] Most of these Plaintiffs fail to specify that the information supposedly appearing on the dark web resulted from the Incident or when the information appeared and whether it was the same information involved in the Incident.

*Finally*, a loss of value theory is not sufficient to plead actual damages where, as here, Plaintiffs do not allege any pre-existing economic interest in their or their children's information or actual loss in its value. *See Landon v. TSC Acquisition Corp.*, No. 23-cv-01377, 2024 WL 5317240, at *6 (C.D. Cal. Nov. 1,

[13] Plaintiffs J.F., L.D., and Kimberly Greer.

2024); *Wallace*, 2021 WL 1109727, at *8 (speculative allegations of lost value insufficient under New York law); *Rakyta*, 2021 WL 4808339, at *5 (conclusory allegations that "information lost value as a result of the exposure" insufficient under Michigan law); *In re MAPFRE Data Disclosure Litig.*, 2025 WL 975669, at *13 (Massachusetts). As addressed above, Plaintiffs do not allege that they participated in any marketplace for their information, or that the value of their information in that marketplace has been impaired. *See Landon*, 2024 WL 5317240, at *6 (dismissing negligence claim where plaintiffs failed to make similar allegations).

Given these pleading deficiencies, the Plaintiffs identified in Appendix A at 123, 126, 128-29, 131-32, 134-37, 139, 141, and 143-70 do not plausibly allege cognizable damages to support their negligence claim, leaving only Plaintiffs Kelsey Gauron, W.C.G., Nicole Volpert, Trisha Nadeau, Amanda Rachelle Voltz, Eleanor Louise Tillman, L.M.A., E.T., and P.M.

***Negligence Based on Notice.*** Plaintiffs' negligence claim premised on delayed or deficient notice (MC ¶ 790) fails because they do not allege any non-speculative injuries that would have been avoided by a faster or more detailed notice (as opposed to the Incident itself). *See, e.g.*, *Castillo v. Seagate Tech., LLC*, No. 16-cv-01958, 2016 WL 9280242, at *5 (N.D. Cal. Sept. 14, 2016) ("No plaintiffs, meanwhile, have stated a cognizable injury that resulted from [defendant's] alleged failure to provide adequate and timely notice of the breach."); *Sony I*, 996 F. Supp. 2d at 965 (dismissing California and Massachusetts negligence claims based on untimely notice because plaintiffs failed to allege how the delay, rather than the incident, resulted in the alleged injuries). Moreover, PowerSchool's notice was not untimely. *See infra* Section X. PowerSchool provided notice to Plaintiffs' schools *less than two weeks* after first being alerted to a potential cybersecurity incident. MC ¶ 122.

## IV. PLAINTIFFS' RELIANCE ON NEGLIGENCE PER SE SUFFERS FROM ADDITIONAL DEFECTS (COUNTS I-II)

Plaintiffs plead negligence per se seemingly both as a doctrine that provides a presumption of negligence and as a standalone cause of action under certain state laws.[14] Both fail. As a threshold matter, negligence per se, whether alleged as a separate count or as a theory of negligence, should be dismissed for the same reasons as Plaintiffs' negligence claim. *See, e.g.*, *Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 72 (S.D.N.Y. 2022) (dismissing negligence per se for lack of damages for same reasons as negligence claim).

Plaintiffs cannot invoke negligence per se as a presumption of negligence for several additional reasons. *First*, Plaintiffs fail to allege the threshold requirement for the negligence per se doctrine's application, that PowerSchool "violated a statute, ordinance, or regulation." *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 639 (N.D. Cal. 2024). Plaintiffs' reliance on their consumer protection claims fails for the reasons separately addressed in Section IX. As to the remaining statutes Plaintiffs cite, several states do not recognize negligence per se based on statutes that lack a private right of action. *See In re MOVEit Customer Data Sec. Breach Litig.*, No. 23-md-3083, 2025 WL 2179475, at *11 (D. Mass. July 31, 2025). Because there is no private right of action, claimed violations of these statutes—including the Family Educational Rights and Privacy Act ("FERPA"), the Health Insurance Portability and Accountability Act ("HIPAA"), the Federal Trade Commission Act ("FTCA"), and the Children's Online Privacy

---

[14] Following the parties' meet-and-confer process, Plaintiffs agreed to voluntarily dismiss their standalone negligence per se claim (Count II) under California, Massachusetts, and Michigan law. Plaintiffs, however, still incorporate those allegations into the rest of their complaint. Plaintiffs also agreed to dismiss other claims. *See infra* Sections IX n.17, X n.22. The parties agreed that they would notify the Court by stipulation that Plaintiffs no longer pursue these claims.

Protection Act ("COPPA")—cannot support Counts I-II. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1087 (N.D. Cal. 2023) (collecting cases dismissing negligence per se claims because neither HIPAA nor the FTCA contains a private right of action); *Cohen v. Ne. Radiology, P.C.*, No. 20-cv-1202, 2021 WL 293123, at *7 (S.D.N.Y. Jan. 28, 2021) (similar); *see also Henry v. Universal Tech. Inst.*, 559 F. App'x 648, 650 (9th Cir. 2014) (unpublished) (no private right of action, FERPA); *Benson v. Perris Elementary Sch. Dist.*, No. 22-cv-00535, 2022 WL 3574290, at *5 (C.D. Cal. July 1, 2022) (same, COPPA); *Ahmad v. Wells Fargo Bank, NA*, 861 F. Supp. 2d 818, 828 (E.D. Mich. 2012) (same as to negligence claim, under Michigan law).

## V. THE NEGLIGENT TRAINING & SUPERVISION CLAIM FAILS FOR FAILURE TO PLEAD DAMAGES AND KNOWLEDGE (COUNT IX)

Plaintiffs allege a claim for negligent training and supervision that is an amalgamation of multiple claims, including negligent hiring, training, and supervision. Plaintiffs mainly allege that a service provider to PowerSchool, Movate, had "inadequate data security, training, procedures, and network infrastructures – along with its own failures in hiring and training employees and agents." MC ¶¶ 917-18. This claim requires all the same elements as negligence, including damages, and fails for the same reasons argued above as to the Plaintiffs identified on Appendix A at 123, 126, 128-29, 131-32, 134-37, 139, 141, and 143-70. *See Abdulaziz v. Twitter, Inc.*, No. 19-cv-06694, 2021 WL 633812, at *7 (N.D. Cal. Feb. 18, 2021); *Prime Rate Premium Fin. Corp. v. Larson*, 226 F. Supp. 3d 858, 870 (E.D. Mich. 2016); *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004); *Grant v. John Hancock Mut., Life Ins.*, 183 F. Supp. 2d 344, 368 (D. Mass. 2002).

Further, Plaintiffs fail to plead, as they must, that PowerSchool knew or should have known that Movate's employees supposedly were unfit. *See*

*Abdulaziz*, 2021 WL 633812, at *7 (noting that negligent supervision claim requires that "an employer . . . knew or should have known that the employee created a particular risk or hazard, and that particular harm materializes"); *Larson*, 226 F. Supp. 3d at 870 (similar); *Ehrens*, 385 F.3d at 235 (similar); *Vicarelli v. Bus. Int'l, Inc.*, 973 F. Supp. 241, 246-47 (D. Mass. 1997) (similar). There are no allegations, for example, suggesting that PowerSchool even knew that the employee whose credentials were stolen was employed by Movate and working on the SIS product. The negligent supervision claim should be dismissed in its entirety.

## VI. THE INVASION OF PRIVACY CLAIMS FAIL FOR LACK OF "HIGHLY OFFENSIVE" CONDUCT (COUNTS IV & XV)

All Plaintiffs bring a common law invasion of privacy claim, while the California Plaintiffs bring an invasion of privacy claim under the California Constitution. "Invasion of privacy" is a general term used to describe four separate torts. *Farrow v. Allstate Ins.*, 53 A.D.3d 563, 564 (N.Y. App. Div. 2008). Three of these torts require the public disclosure of private facts or appropriation of one's name or likeness. *See, e.g.*, *Nyman v. Thomson Reuters Holdings, Inc.*, 329 Mich. App. 539, 551 (2019). Plaintiffs do not allege that *anyone* (including the criminal actor) appropriated their name or likeness, publicized facts about their private life, or placed them in a false light before the public—let alone that *PowerSchool* did so. *See MOVEit*, 2025 WL 2179475, at *13-14 ("[A] hacker's access to PII does not constitute the defendant's disclosure to the public.").

Plaintiffs instead attempt to allege an intrusion upon seclusion, that "PowerSchool unlawfully invaded the privacy rights of Plaintiffs and Class Members" and allowed "the intrusion upon Plaintiffs' and Class Members' seclusion." MC ¶¶ 863, 865, 1011, 1015. New York does not recognize a common law right of action for intrusion upon seclusion. *Waldron v. Ball Corp.*,

210 A.D.2d 611, 613 (N.Y. App. Div. 1994). Elsewhere, the California Constitution and the other states' common law "set a high bar" for an invasion of privacy claim, requiring that the violation be "highly offensive" and constitute an "egregious breach of the social norms." *E.g.*, Restatement (Second) of Torts § 652B; *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (California); *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514 (1991) (Massachusetts); *In re Flagstar Dec. 2021 Data Sec. Incident Litig.*, No. 22-cv-11385, 2024 WL 5659583, at *12 (E.D. Mich. Sept. 30, 2024) (Michigan). Plaintiffs' allegations fail to meet this standard in two separate respects.

*First*, Plaintiffs do not allege the requisite intentional conduct. "[C]ourts have declined to find highly offensive conduct or an egregious breach of social norms where only negligence is alleged with respect to a data breach, as opposed to intentional violations of privacy rights." *Accellion*, 713 F. Supp. 3d at 646 (collecting cases). Because data breaches involving unauthorized third-party access are, by their nature, unintentional, courts routinely dismiss intrusion upon seclusion claims for failure to allege intentionality. *See Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 16-cv-00014, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016); *Flagstar*, 2024 WL 5659583, at *12; *In re Shields Health Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 164 (D. Mass. 2024). "[E]ven an allegation that [defendant] knew better than to configure its security the way it did, or intentionally failed to keep [p]laintiffs' PII safe, still falls short of a plausible allegation that [defendant] intentionally intruded upon [p]laintiffs' privacy." *MOVEit*, 2025 WL 2179475, at *14 (applying law of Minnesota, California, Illinois, Texas, Pennsylvania, Florida, Ohio, Indiana, and North Carolina). The Master Complaint rests wholly on negligence-based allegations of PowerSchool's "fail[ure] to adequately secure [Plaintiffs'] PII from disclosure to unauthorized

parties," MC ¶¶ 863, 1014, and fails for this reason.

*Second*, courts have recognized that an invasion of privacy claim requires more than alleging a breach of "personal information"—even where information like SSNs is allegedly involved. "[C]onduct that leads to theft of highly personal information, including [SSNs], does not approach the standard of actionable conduct under the California Constitution and thus does not constitute a violation of [p]laintiffs' right to privacy." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (quoting *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127-28 (N.D. Cal. 2008), *aff'd*, 380 Fed. App'x. 689 (9th Cir. 2010)); *Nyman*, 329 Mich. App. at 551-52 (dismissing claim involving SSNs, even where "reasonable persons might find Social Security number disclosure offensive"); *Bovay v. Sears, Roebuck & Co.*, No. 1-14-2672, 2017 WL 660595, at *12 (Ill. App. Ct. Jan. 6, 2017) (distinguishing "personal information" like addresses, credit card numbers, and income from "compromising or embarrassing" private information). For example, in *Razuki v. Caliber Home Loans, Inc.*, the court found that allegations of negligent failure to protect SSNs and the alleged opening of a fraudulent credit card in the plaintiff's name did not constitute an "egregious breach of the social norms underlying the privacy right." No. 17-cv-1718, 2018 WL 2761818, at *2 (S.D. Cal. June 8, 2018). And where courts have allowed an invasion of privacy claim to proceed based on disclosures of medical information, the plaintiffs have offered specific and far more severe allegations demonstrating that the medical disclosures met the "highly offensive" standard. *E.g.*, *Doe v. Beard*, 63 F. Supp. 3d 1159, 1169-70 (C.D. Cal. 2014) (negligent disclosure of prisoner's HIV-positive status violated criminal statutes and led to threats of bodily harm from other prisoners); *see Stasi*, 501 F. Supp. 3d 898 at 926 (defendant posted medical information publicly on the Internet). At most, Plaintiffs merely claim that unspecified medical information was involved in the Incident, *see, e.g.*,

MC ¶¶ 851-71, 1008-18. Because Plaintiffs fail to allege that the disclosed medical information was embarrassing or compromising, they cannot meet the high bar for an invasion of privacy claim. *Bovay*, 2017 WL 660595, at *12; *see also Yaghoobi v. Tufts Med. Ctr., Inc.*, 762 F. Supp. 3d 85, 95 (D. Mass. 2025) (dismissing invasion of privacy claim where plaintiff failed to identify the type of medical information a medical center had allegedly disclosed to police).

## VII. <u>THERE IS NO FIDUCIARY RELATIONSHIP BETWEEN PLAINTIFFS AND POWERSCHOOL (COUNT VII)</u>

Count VII should be dismissed because Plaintiffs do not plausibly allege a direct relationship with PowerSchool, let alone a fiduciary one.[15] Plaintiffs' own allegations make this plain. *See, e.g.*, MC ¶ 897 (alleging that PowerSchool "specifically *contracted with its educational entity clients* to protect the highly sensitive personal information of the class of potential claimants" (emphasis added)).

It is well-recognized that simply maintaining an individual's confidential information does not create a fiduciary relationship. *See, e.g.*, *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1145-46 (C.D. Cal. 2021) (citing California law and finding no fiduciary relationship even where plaintiffs alleged they "entrusted [d]efendants with their confidential information"); *LastPass*, 742 F. Supp. 3d at 128 (finding no fiduciary relationship under

---

[15] The breach of fiduciary duty claim fails for the additional reason that, as addressed in Section III, most Plaintiffs do not allege that they suffered damages as a result of the Cybersecurity Incident, as required for their breach of fiduciary duty claim. *See, e.g.*, *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1069 (C.D. Cal. 2024); *Rojas v. Cap. One Fin. Corp.*, No. 23-cv-10844, 2024 WL 4045376, at *4 (D. Mass. Sept. 4, 2024); *Rakyta v. Munson Healthcare*, No. 354831, 2021 WL 4808339, at *6 (Mich. Ct. App. Oct. 14, 2021); *Lazar v. Int'l Shoppes, LLC*, No. 24-cv-4170, 2025 WL 1475627, at *4 (E.D.N.Y. May 22, 2025).

Massachusetts law where plaintiffs claimed they "relied on LastPass's purported cybersecurity expertise and its promises to keep their data safe"); *Lazar v. Int'l Shoppes, LLC*, No. 24-cv-4170, 2025 WL 1475627, at *5 (E.D.N.Y. May 22, 2025) ("[T]he fact that defendants stored their PII and PHI does not mean that defendants were under a duty to act for or to give advice for their benefit."); *cf. Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC*, 485 F. Supp. 3d 885, 897, 899-900 (E.D. Mich. 2020) (finding no fiduciary relationship between a "data-hoster" and "data-owner" under Michigan law).

## VIII. <u>PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT III)</u>

Plaintiffs allege that PowerSchool was unjustly enriched by its collection of and failure to secure their information. *See* MC ¶¶ 828-50. The unjust enrichment claim suffers from four fatal defects.

*First*, several states do not recognize unjust enrichment as an independent cause of action, and/or do not allow the claim to proceed when adequate remedies exist at law. *See, e.g.*, *Sony II*, 903 F. Supp. 2d at 973-74 ("[T]here is no cause of action in California for unjust enrichment."); *LastPass*, 742 F. Supp. 3d at 129 (dismissing plaintiffs' unjust enrichment claim under Massachusetts law because plaintiffs "have adequate remedies available at law" and noting that "[t]he inquiry turns on the *availability* of a remedy at law, not the *viability* of that remedy"); *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 602 (S.D.N.Y. 2022) (dismissing unjust enrichment claim as duplicative because plaintiffs "expressly rely on the same underlying wrongful conduct for their negligence and unjust enrichment claims").

*Second*, Plaintiffs do not plausibly allege that they conferred any direct benefit upon PowerSchool. *See, e.g.*, *Wall v. Wescom Cent. Credit Union*, No. 23-cv-02293, 2024 WL 1158361, at *6 (C.D. Cal. Mar. 18, 2024) (noting that "a

defendant against whom the claim is brought must have unjustly retained a benefit ***from the plaintiff***" (emphasis added)). Plaintiffs do not allege that they paid PowerSchool any amount of money. They instead merely assert that they "provid[ed PowerSchool] with their valuable PII." MC ¶ 829. But their allegations elsewhere acknowledge that Plaintiffs provided their information ***to the schools and/or school districts***, which in turn entered the information into the SIS. *See, e.g.*, MC ¶ 56. Plaintiffs' failure to allege that they conferred any benefit directly upon PowerSchool compels the dismissal of their unjust enrichment claim.[16] *See, e.g.*, *Morales v. Conifer Revenue Cycle Sols., LLC*, No. 23-cv-01987, 2025 WL 1096396, at *7 (C.D. Cal. Mar. 31, 2025) (applying California law and dismissing unjust enrichment claim for failure to allege conferral of any benefit); *Flagstar*, 2024 WL 5659583, at *11 (same under Michigan law); *see also In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, (D.S.C. 2021) (rejecting claim in a similar case involving a software provider without any direct relationship with plaintiffs).

*Third*, Plaintiffs fail to allege *how* PowerSchool was enriched by storing their information. Plaintiffs merely suggest that they conferred a benefit upon PowerSchool because the Company "would be unable to provide the business services, software licensing, data processing, and consulting" it does without their data. MC ¶¶ 829, 834. Such vague and conclusory allegations do not state a claim for unjust enrichment. *See, e.g.*, *Harvey v. Nat'l Amusements, Inc.*, No. 24-cv-10027, 2025 WL 928776, at *4 (D. Mass. Mar. 27, 2025) (dismissing unjust

---

[16] This is especially true because courts have recognized that the conferral of personal information does not constitute a benefit. *See Kingen v. Warner Norcross + Judd LLP*, No. 22-cv-01126, 2023 WL 11965363, at *5 n.3 (W.D. Mich. Oct. 5, 2023) ("Courts routinely reject the proposition that an individual's PII has independent monetary value.").

enrichment claim under Massachusetts law where plaintiffs alleged generally that defendant "unjustly benefited from the receipt of [p]laintiffs' and the Class's PII"); *Kingen v. Warner Norcross + Judd LLP*, No. 22-cv-01126, 2023 WL 11965363, at *5 (W.D. Mich. Oct. 5, 2023) (similar dismissal under Michigan law).

*Fourth*, Plaintiffs' claim fails because PowerSchool did not retain any benefit unjustly. *See In re Waste Mgmt. Data Breach Litig.*, No. 21-cv-6147, 2022 WL 561734, at *6 (S.D.N.Y. 2022) (noting that one element of an unjust enrichment claim is that "equity and good conscience require restitution"). Plaintiffs' formulaic recitation of the elements is insufficient. *See Lochridge v. Quality Temp. Servs., Inc.*, No. 22-cv-12086, 2023 WL 4303577, at *7 (E.D. Mich. June 30, 2023) (rejecting conclusory allegation that defendant "enriched itself by saving the costs it reasonably should have expended on data security measures to secure" plaintiff's information). Instead, as in *Waste Management*, it is the "third-party hackers [that] benefitted at the expense of both the plaintiffs and [PowerSchool], and it is that person or persons which in equity and good conscience owes restitution to the plaintiffs." 2022 WL 561734, at *6; *see also* MC ¶¶ 152-57 (describing PowerSchool as the victim of a hacker who has pled guilty for his role in the Incident). Count III should be dismissed for all of these reasons.

## IX. THE CONSUMER PROTECTION CLAIMS FAIL

The Master Complaint asserts claims (the "Consumer Protection Claims") under the state consumer protection statutes of 37 states (the "Consumer Protection Statutes"). Plaintiffs allege that PowerSchool engaged in deceptive, unlawful, unfair, or unconscionable conduct because the Company supposedly failed to implement and maintain reasonable data security measures consistent with its

purported public statements.[17] The Consumer Protection Claims should be dismissed for failure to allege at least one, but often more, elements, including: (i) failure to allege a cognizable injury; (ii) the absence of the requisite relationship or transaction between Plaintiffs and PowerSchool; (iii) Plaintiffs' failure to meet threshold requirements or the fact that their claims exceed the relief available under the relevant Consumer Protection Statute; and (iv) the absence of any actionable deceptive, unlawful, or unfair conduct. Appendix B identifies the Consumer Protection Claims that are subject to dismissal on each of these grounds.

### A. Plaintiffs Fail to Allege Cognizable Injury in States Requiring Actual Damages

Most of the Consumer Protection Statutes require "actual damages," ascertainable loss, or similar monetary, out-of-pocket harms for a plaintiff to maintain a claim. *See* Appendix B (listing statutes). In the data breach context, to satisfy this injury requirement for purposes of a consumer protection statute, courts require "actual fraud or identity theft." *Grigsby v. Valve Corp.*, No. C12-0553, 2012 WL 5993755, at *2 (W.D. Wash. Nov. 14, 2012) (holding "no cognizable harm absent actual fraud or identity theft"); *see Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1335 (N.D. Ga. 2024) (dismissing claim under N.Y. GBL § 349 for failure to allege a cognizable injury where plaintiff had not alleged, among other things, that "his information ha[d] been actually misused"); *Sony I*, 996 F.

[17] Following the parties' meet-and-confer process, Plaintiffs agreed to voluntarily dismiss the claims they originally brought under the Idaho Consumer Protection Act (Count XXVI, MC ¶¶ 1112-22), Maine Uniform Deceptive Trade Practices Act (Count XXXVIII, MC ¶¶ 1250-60), Minnesota Uniform Deceptive Trade Practices Act (Count XLV, MC ¶¶ 1329-36), Ohio Consumer Sales Practices Act (Count LX, MC ¶¶ 1470-82), Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count LXV, MC ¶¶ 1530-40), and Virginia Consumer Protection Act (Count LXXV, MC ¶¶ 1666-80).

Supp. 2d at 997-98 (dismissing claim under Michigan's statute for failure to allege "actual damages"). Plaintiffs' various categories of alleged harms do not constitute cognizable injury.

***Increased Risk of Identity Theft***. Multiple courts have recognized in the data breach context that a claimed risk of future harm does not constitute cognizable injury. *See Hammond*, 2010 WL 2643307, at *13 ("[I]t is not surprising that the United States District Courts in New York, California, Illinois and Michigan (applying state law) have each found that the increased risk of identity theft (in the future) is not a cognizable claim."); *see also, e.g.*, *Sony II*, 903 F. Supp. 2d at 966 ("heightened risk of identity theft" insufficient under California's Unfair Competition Law ("UCL")); *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017) ("risk of real economic damages" insufficient under Mass. G.L. Chapter 93A); *Sony I*, 996 F. Supp. 2d at 996 ("potential risk of future identity theft resulting from the loss of personal information" not a cognizable injury in Michigan).

***Mitigation Efforts***. Likewise, expenses that a plaintiff chooses to incur due to the supposed risk of future harm, like purchasing credit monitoring and expending time on mitigation, do not constitute cognizable injury. *See, e.g.*, *Sony II,* 903 F. Supp. 2d at 966 ("time and money spent on mitigation of [heightened risk of identity theft]" do not constitute a loss of money or property under UCL); *Dugas*, 2016 WL 6523428, at *11 (similar); *Hendricks v. DSW Shoe Warehouse Inc.*, 444 F. Supp. 2d 775, 780 (W.D. Mich. 2006); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 992-93 (N.D. Cal. 2016) ("Imminent Risk of Further Costs are not cognizable injuries under [N.Y.] GBL § 349.").

***Lost Value***. Allegations that Plaintiffs have experienced a loss in value of their data are similarly unavailing. *See, e.g.*, *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538-39 (2022) (finding "appellants' lost-value-of-PII theory,

as pleaded . . . insufficient to support UCL standing"); *Miller*, 742 F. Supp. 3d at 1335 (similar under N.Y. GBL § 349).

***Emotional Damages***. Finally, conclusory allegations of emotional distress and anxiety do not ground a claim under the Consumer Protection Statutes. *See, e.g.*, *Navarro v. Ski Data*, No. 20-cv-07370, 2022 WL 18280359, at *10 (C.D. Cal. Dec. 7, 2022) (conclusory assertion that plaintiffs are "emotionally distressed" is not a "cognizable harm[] under the UCL absent a showing of monetary loss"); *Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 391 (E.D.N.Y. 2011) (plaintiffs alleged no facts showing that "the alleged acts of the defendant caused quantifiable damage" under N.Y. GBL § 349 beyond "their conclusion that they suffered emotional distress").

### B. Many Claims Fail Because Plaintiffs Do Not Allege a Consumer Relationship or Consumer Transaction with PowerSchool

***Consumer Relationship.*** Nine of the Consumer Protection Statutes require either a purchase from, or some other direct consumer relationship with, PowerSchool. *See* Appendix B. For example, the New Jersey Consumer Fraud Act ("NJCFA") requires the plaintiff to be "a consumer *vis-à-vis*" the defendant. *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240, 1277 (S.D. Fla. 2024) (dismissing NJCFA claim where plaintiff described his relationship with defendant "as one that exists through *another* entity"). Here, Plaintiffs do not allege that they ever purchased anything from PowerSchool, paid any money to PowerSchool, chose to use PowerSchool's products, or were even familiar with PowerSchool prior to the Incident.

To the contrary, Plaintiffs allege that their schools purchased the product at issue, the SIS, at their discretion to facilitate school operations. Plaintiffs specifically allege that they input their information into the SIS "because a student

and/or teacher's ***school utilizes*** PowerSchool's SIS." MC ¶ 5. Plaintiffs further allege that "*as a condition of*" their employment (for employees) or enrollment (for students and parents of students), the *school district* required the information and typically entered it into SIS. *See, e.g.*, MC ¶¶ 5, 281 (emphasis added).

There simply are no allegations of any consumer relationship between PowerSchool and Plaintiffs. Courts regularly dismiss similar consumer protection claims, including in data breach cases, for this very reason. *See In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 20-mn-02972, 2021 WL 3568394, at *12 (D.S.C. Aug. 12, 2021) (dismissing NJCFA claims against service provider where the service provider "maintained [plaintiff's] data as a result of his relationship with" his school); *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 285 (E.D. Pa. 2024) (dismissing claim under the California Consumer Legal Remedies Act ("CLRA") where "there was no transaction entered into between" defendant and plaintiffs); *see also, e.g.*, *Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499, 506 (D.R.I. 2020) (dismissing claim under Rhode Island's statute for plaintiff's failure to allege that he "himself ha[d] the necessary vendor-consumer relationship" with defendant).[18]

***Consumer Transactions.*** Likewise, 18 Consumer Protection Claims fail because Plaintiffs cannot allege, as the relevant Consumer Protection Statutes require, that the product at issue was primarily for personal, family, or household use. *See, e.g.*, *MOVEit*, 2025 WL 2176590, at *29 (dismissing claims under Michigan's consumer protection statute on this basis); *see also, e.g.*, *U1IT4less, Inc. v. FedEx Corp.*, 896 F. Supp. 2d 275, 295 (S.D.N.Y. 2012) ("Courts have

---

[18] To the extent the PTU asserts a claim on behalf of itself, that also fails because the PTU is not a "purchaser" or "lessee" of PowerSchool's services. *See, e.g.*, *R.I. Laborers' Health & Welfare Fund ex rel. Trs. v. Philip Morris, Inc.*, 99 F. Supp. 2d 174, 189 (D.R.I. 2000).

repeatedly held that a [N.Y. GBL § 349] consumer is one who purchases goods and services for *personal, family or household use*."), *aff'd*, 871 F.3d 199 (2d Cir. 2017). Despite parroting the statutory requirement of "personal, family, or household use," *see, e.g.*, MC ¶ 1038, the SIS is alleged to be a commercial product that "enable[s] schools and school districts to collect and manage large swaths of information related to students and teachers," MC ¶ 54; *see MOVEit*, 2025 WL 2176590, at *29 (software not provided for "personal, family, or household purposes" where plaintiffs' allegations reflect that the software was purchased to help universities and other institutions "engage in [their] own business or commercial enterprise").

### C. Several Plaintiffs Cannot Seek Relief Beyond What Is Authorized by Statute and Have Failed to Meet Other Prerequisites

For every Consumer Protection Claim, Plaintiffs seek class-wide relief and damages. However, at least eight statutes—Alabama, Iowa, Louisiana, Mississippi, Montana, South Carolina, Tennessee, and Utah—preclude or otherwise limit class actions. *See, e.g.*, *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, No. 19-md-02901, 2022 WL 551221, at *19 (E.D. Mich. Feb. 23, 2022) (dismissing claims under several states' consumer protection statutes because they were brought in a representative capacity), *aff'd*, 65 F.4th 851 (6th Cir. 2023); *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014) (finding that plaintiffs "cannot maintain a class action as to the alleged consumer-protection statutory violations" in various states); *see also* Appendix B. Thus, Plaintiffs' claims at Counts X, XXXII, XXXVI, XLVI, XLIX, LXVIII, LXX, and LXXII should be dismissed to the extent they seek class-wide relief.

Further, the Consumer Protection Statutes of at least three states do not

permit recovery of monetary damages. *See, e.g.*, *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 445 (2005) ("[D]amages are not recoverable under the UCL[] . . . ."); *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 800 (E.D. Mich. 2019) ("Injunctive relief is the only remedy available under Georgia's Uniform Deceptive Trade Practices Act . . . ."); *Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 241 N.E.3d 454, 460 (Ill. 2024) (noting that the Illinois Uniform Deceptive Trade Practices Act "does not provide a private cause of action for damages" but rather "authorizes private lawsuits for injunctive relief"); *see* Appendix B. Additionally, the Colorado Consumer Protection Act does not permit recovery of monetary damages in a class action, *see Matanky*, 370 F. Supp. 3d at 799, and the California Consumer Legal Remedies Act does not permit recovery of damages if the defendant can show that the violation was unintentional and corrects the violation, *see* Cal. Civ. Code § 1784. Counts XVI, XXIV, XXIX, XXII, and XVIII should be dismissed to the extent they seek monetary relief.

Other Plaintiffs' Consumer Protection Claims should be dismissed on grounds specific to the relevant state statutes, such as failure to satisfy a pre-suit notice requirement (i.e., Mississippi Consumer Protection Act), or the lack of a statutory duty to safeguard information (i.e., Georgia Uniform Deceptive Trade Practices Act). For efficiency, Appendix B summarizes these additional bases for dismissal.

### D. <u>Plaintiffs Fail to Plausibly Allege That PowerSchool Engaged in Any Practices Violative of the Consumer Protection Statutes</u>

To the extent that Plaintiffs' claims are not dismissed on the grounds above, their Consumer Protection Claims must still be dismissed because they fail to plead sufficient facts to state a claim.

### 1. <u>The Deception-Based Claims Fail Because Plaintiffs Fail to Allege Any Actionable Representation with Particularity, or Causation and Reliance Where Applicable</u>

Plaintiffs place significant emphasis in the Master Complaint on allegations that PowerSchool deceived users by misrepresenting and omitting information about the adequacy of its security and privacy practices and its compliance with applicable laws. *See, e.g.*, MC ¶¶ 1024, 1092, 1294, 1316. This claim sounds in fraud and must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b). *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012). Plaintiffs thus must state with particularity the "who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124-26 (9th Cir. 2009) (applying 9(b) to UCL and CLRA claims); *Sony I*, 996 F. Supp. 2d 942 at 997, 1005 (same to Michigan Consumer Protection Act ("MCPA") and N.Y. GBL § 349).

The Master Complaint fails to plead any of the alleged misrepresentations with particularity. Plaintiffs instead offer generalized, passing allegations that PowerSchool made misrepresentations about its data security practices without identifying a specific statement, or indicating when and where a statement was made. *See, e.g.*, MC ¶¶ 61 ("PowerSchool represented that it would 'protect[] students' data with a comprehensive security program"), 62 ("PowerSchool took a pledge to maintain student privacy by signing the National Student Privacy Pledge"), 65 ("PowerSchool represented that it complied with applicable regulations").

The purported representations Plaintiffs do attempt to identify are non-actionable because no reasonable consumer would be misled by them. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). Courts have concluded that a reasonable consumer would understand that descriptive or

aspirational statements about a company's cybersecurity program generally "do not constitute an unlimited guaranty that . . . information could not be stolen or that computerized data could not be hacked." *Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850, 859 (Super. Ct. 2015); *MOVEit*, 2025 WL 2179475, at *38 (dismissing claim based on promise in Patient Privacy & Rights document to "work very hard to make sure the health information of our patients is properly protected"); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 54-56 (D. Ariz. 2021) (similar). Plaintiffs cite a variety of general statements from PowerSchool's website, such as language regarding PowerSchool's commitment "to being a good custodian of student data" and to "tak[e] all reasonable and appropriate countermeasures to ensure data confidentiality," but they fail to identify any statement that a reasonable consumer would understand as a specific representation concerning the state of PowerSchool's cybersecurity. *See* MC ¶¶ 6, 59-65. Nor do Plaintiffs identify any statements about PowerSchool's cybersecurity program that a reasonable consumer would understand as a representation that PowerSchool guaranteed that it would not experience a cyberattack. *Id.* ¶¶ 59-65 (PowerSchool "strive[s] to maintain reasonable physical, administrative, and technical security measures"), 777 (PowerSchool "seek[s] to protect our customers' personal data from unauthorized access . . .by leveraging various reasonable security methods"), 778 (PowerSchool "uses commercially reasonable physical, administrative, and technical safeguards to preserve the confidentiality."). Plaintiffs' failure to particularize an actionable misrepresentation requires the dismissal of the Consumer Protection Claims to the extent they are based on a deception theory.

In addition, most of the Consumer Protection Statutes require a causal link

between the alleged misrepresentation and the plaintiff's claimed injury,[19] and/or reliance on the allegedly deceptive conduct.[20] Plaintiffs fail to connect any of these dots. The Master Complaint makes clear that Plaintiffs did not rely on the purported misrepresentations in using the SIS. Plaintiffs instead allege that their *schools* chose to purchase the SIS and the schools *required* Plaintiffs, "as a result of a minor's enrollment as a student or by a condition of employment as a teacher," MC ¶ 5, to provide information. These allegations effectively concede that Plaintiffs could not have relied on any misrepresentations in using the SIS—the choice was the school's, not theirs. Furthermore, many Plaintiffs fail to allege that they even saw the purported misrepresentations, *see, e.g.*, MC ¶¶ 1311-13, others fail to allege *when* they saw them, *see, e.g.*, MC ¶¶ 1105, 1317, and some even admit that they reviewed PowerSchool's privacy policy only *after* the Incident occurred, *see, e.g.*, MC ¶ 476 (Mass. Plaintiffs). None of these allegations plausibly pleads causation or reliance, particularly where Plaintiffs also concede that their school, not them, chose SIS and their use of it was mandatory. *See In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2904, 2021 WL 5937742, at *32 (D.N.J. Dec. 16, 2021) (dismissing MCPA claim where plaintiffs failed to allege "that they viewed any data privacy policies before

---

[19] *See* Appendix B. *See, e.g.*, *Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687, 695 (S.D. Fla. 2010) (Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") plaintiff must allege that "an objective reasonable person would have behaved" differently but for the alleged deceptive or unfair conduct), *vacated on other grounds*, 635 F.3d 1279 (11th Cir. 2011); *Hershenow v. Enter. Rent-A-Car Co. of Bos., Inc.*, 840 N.E.2d 526, 532 (Mass. 2006) (Mass. ch. 93A requires "causal connection between the seller's deception and the buyer's loss.").

[20] *See* Appendix B. *See also In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 918 (N.D. Cal. 2024) (UCL and Texas Deceptive Trade Practices Consumer Protection Act); *In re OnStar Contract Litig.*, 278 F.R.D. 352, 378 (E.D. Mich. 2011) (MCPA); *Broderick v. Dairyland Ins.*, 270 P.3d 684, 692 (Wyo. 2012) (Wyoming Consumer Protection Act).

obtaining services"); *Sony I*, 996 F. Supp. 2d at 1005 (dismissing N.Y. GBL § 349 claim where plaintiff did not allege having read defendants' privacy policies); *Hall v. Time Inc.* 158 Cal. App. 4th 847, 856 (2008) (describing UCL causation requirement and citing cases finding no causation including where plaintiffs failed to allege "they relied on [d]efendants' advertisements in entering into the transactions"); *Pirozzi*, 913 F. Supp. 2d at 850 (dismissing UCL and CLRA claims for plaintiff's "fail[ure] to provide the particulars of her own experience reviewing or relying upon any of those statements").

Plaintiffs' Consumer Protection Claims premised on misrepresentations under the Consumer Protection Statutes of Alabama, Arizona, Colorado, California, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, New Hampshire, New Jersey, New York, North Carolina, Oregon, South Carolina, Tennessee, Texas, Utah, Vermont, Washington, Wisconsin, and Wyoming should therefore be dismissed for the additional reason that those Plaintiffs do not plausibly allege reliance or causation. *See* Appendix B.

#### 2. Plaintiffs Do Not Plausibly Allege That PowerSchool Acted Unlawfully, Unfairly, or Unconscionably

To plead a claim based on unlawful, unfair, or unconscionable conduct, courts require conduct that "offends established public policy," "is immoral, unethical, oppressive, unscrupulous," and "substantially injurious" to consumers. *See, e.g.*, *Garcia v. Sony Comput. Ent. Am., LLC*, 859 F. Supp. 2d 1056, 1066 (N.D. Cal. 2012) (UCL); *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (FDUTPA); *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics,*

*Inc.*, 552 F.3d 47, 69 (1st Cir. 2009) (Mass. G.L. Chapter 93A).[21] Plaintiffs do not explain how their allegations of negligent or inadequate cybersecurity countermeasures rise to the level of "offensive," "immoral," or "oppressive" conduct. Nowhere do Plaintiffs allege an intentional or even reckless release of the information by PowerSchool; to the contrary, they allege that a sophisticated criminal actor stole the information from PowerSchool. MC ¶ 128. Further, any complained-of conduct was not substantially injurious to Plaintiffs for the reasons already discussed. *See supra* Section IX.A.

Under both the unlawful and unfair prong of certain statutes, a plaintiff may rely on an underlying violation of a statute or common law. *See, e.g.*, *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) (UCL). Plaintiffs' claims, to the extent premised on the causes of action otherwise alleged in the Master Complaint, fail for the same reasons discussed above. *See, e.g.*, *id.* ("When a statutory claim fails, a derivative UCL claim also fails."). Further, as discussed above, Plaintiffs' claims based on alleged violations of HIPAA, COPPA, FERPA, and the FTCA fail in certain states because the underlying statutes do not provide a private right of action. *See supra* Section VI. To allow Plaintiffs to proceed based on these statutes "would essentially be attributing to the [state] legislature an intent to thwart Congress's intentions on a significant scale." *Broder v. Cablevision Sys. Corp.*, 418 F.3d. 187, 199 (2d Cir. 2005) (no N.Y. GBL § 349 claim based on federal statute without a private right of action); *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 210 (2007) (same, MCPA). Finally, to the extent Plaintiffs allege claims based on other, unidentified federal or state laws or regulations, the failure

---

[21] To the extent that Plaintiffs' claims for "unfair" practices are premised solely on allegedly deceptive conduct, those claims fail for the reasons described above. *See, e.g.*, MC ¶¶ 1312 (MCPA §§ 445.903(1)(c), (e), (bb) & (cc)), 1425 (N.Y. GBL § 349).

to identify such laws or their applicability to the Incident compels dismissal of these claims.

## X. PLAINTIFFS' DATA BREACH NOTIFICATION CLAIMS FAIL

### A. PowerSchool Owed Notice to School Districts, Not Plaintiffs

Various Plaintiffs advance claims under the data breach notification statutes of their respective states (the "Notification Laws").[22] These Notification Laws distinguish between owners or licensees of data that includes personal information—like the school districts here—and maintainers or processors of such data—like PowerSchool. In the event of a data security incident, owners/licensees are required to notify affected individuals, whereas processors/maintainers like PowerSchool are required to notify the owners/licensees (here, the Company's school district customers).[23]

All claims under the Notification Laws that are premised on PowerSchool's alleged failure, as an owner or licensee, to notify Plaintiffs should be dismissed for

---

[22] Following the parties' meet-and-confer process, Plaintiffs agreed to voluntarily dismiss the claims they originally brought under the Notification Laws of Colorado, Illinois, Maryland, Michigan, Montana, New Jersey, North Dakota, Oregon, and Wisconsin. *See* MC ¶¶ 1069-76 (Count XXI – Colorado), 1123-31 (Count XXVII – Illinois), 1261-74 (Count XXXIX – Maryland), 1301-08 (Count XLII – Michigan), 1360-66 (Count XLVIII – Montana), 1395-1402 (Count LII – New Jersey), 1452-60 (Count LVIII – North Dakota), 1505-16 (Count LXIII – Oregon), and 1697-1704 (Count LXXVIII – Wisconsin).

[23] *See, e.g.*, Cal. Civ. Code § 1798.82(b) (requiring "business that maintains computerized data that includes personal information that the . . . business does not own" to "notify the owner or licensee of the information"); Mass. Gen. Laws Ch. 93H, § 3(a) ("A person or agency that maintains or stores, but does not own or license data that includes personal information about a resident of the commonwealth, shall provide notice[] . . . to the owner or licensor . . . ."); N.Y. Gen. Bus. Law § 899-AA(3) ("Any person or business which maintains computerized data which includes private information which such person or business does not own shall notify the owner or licensee of the information of any breach . . . .").

this fundamental reason, that Plaintiffs do not plausibly allege that PowerSchool owed any notification obligation to them, as opposed to its customers. Plaintiffs' own factual allegations reflect that PowerSchool stores data on behalf of school districts and therefore only maintains such data. *See, e.g.*, MC ¶¶ 5 ("PowerSchool's business revolves around, and depends upon, ***receiving and maintaining*** sensitive PII from schoolchildren, their families, and schoolteachers.") (emphasis added), 56 ("PowerSchool's SIS product . . . serves as a repository for the highly sensitive data schools and school districts must collect . . . .").

To be sure, Plaintiffs offer rote allegations that PowerSchool is the owner/licensee of their personal information, s*ee, e.g.*, MC ¶ 958, but these are pure legal conclusions that the Court is not bound to accept as true on a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts have repeatedly dismissed precisely such allegations in other data breach cases. *See Blackbaud*, 2021 WL 3568394, at *16-17 (dismissing claim under South Carolina's Notification Law in case involving software provider for failure to adequately allege defendant owned or licensed plaintiffs' data); *see also Smith v. Sabre Corp.*, No. 17-cv-05149, 2017 WL 11678765, at *5 n.1 (C.D. Cal. Oct. 23, 2017) (plaintiffs failed to "plead facts demonstrating that [defendant technology company] had an obligation to notify them of the incident" under California's Notification Law); *Roper v. Rise Interactive Media & Analytics, LLC*, No. 23-cv-1836, 2023 WL 7410641, at *8 (N.D. Ill. Nov. 9, 2023) (allegation that third party provided defendant with plaintiffs' personal information did not "support a conclusion that [d]efendant owns or licenses" the information under South Carolina's Notification Law). Because Plaintiffs plead nothing more than conclusory assertions that PowerSchool "own[s] or license[s]" their information, Plaintiffs have failed to allege that PowerSchool owed any notification obligation

to them under the Notification Laws.

**B. The Notification Law Claims Suffer from Other Threshold Deficiencies**

Plaintiffs' Notification Law claims fail for other reasons. Some states—including Massachusetts, New Mexico, and New York—do not provide for a private right action under their Notification Laws. *See* N.M. Stat. Ann. § 57-12C-11(A) (providing that "the attorney general may bring an action on the behalf of individuals and in the name of the state alleging a violation of that act"); *Clark v. TD Bank*, *NA*, No. 25-cv-0881, 2025 WL 1508019, at *2 (E.D. Pa. May 27, 2025).

The California Notification Law claim (Count XII) fails because Plaintiffs are not "customers" as defined by the statute.[24] *See* Cal. Civ. Code §§ 1798.84(b), 1798.80(c) (limiting civil actions to "customer[s]" and defining "customer" as "an individual who provides personal information to a business for the purpose of purchasing or leasing a product or obtaining a service from the business"). Plaintiffs fail to meet this requirement because they do not claim that they provided information directly to PowerSchool, suggesting instead that they provided their data to their schools or school districts, which happened to use PowerSchool's products. *See* MC ¶ 5 (noting that it is the school that "utilizes PowerSchool's SIS"). This is fatal to Plaintiffs' claims under California's Notification Law. *See Accellion*, 713 F. Supp. 3d at 645 (suggesting that individuals need to provide their information *directly* to a business to be considered "customers" under the statute). Additionally, Plaintiffs do not allege that they provided any information to PowerSchool "for the purpose of purchasing . . . a product or obtaining a service" from PowerSchool. Cal. Civ. Code § 1798.80(c); *see Accellion*, 713 F. Supp. 3d at

[24] The California Customer Records Act claim (Count XII) fails in its entirety, including with respect to Section 1798.81.5, for the same reason.

645 (dismissing California Notification Law claim on this basis).

### C. Plaintiffs Fail to Allege Any "Delay" at All, or Any Injury from Delayed Notification

Plaintiffs cannot invoke the Notification Laws for all of the reasons already addressed, but they also do not plausibly allege any delay on PowerSchool's part, or any injury resulting from that supposed delay.

*First*, Plaintiffs do not plausibly allege that PowerSchool's notification was untimely. Focusing first on the Notification Laws that require notification to be made "without unreasonable delay," PowerSchool publicly disclosed the Incident on its website ten days after the Cybersecurity Incident on January 7, 2025 (and with that ten-day period including four weekend days, plus New Year's Eve and Day). MC ¶ 122. The Court need not take at face value Plaintiffs' assertion that a ten-day delay is unreasonable. *See MOVEit*, 2025 WL 2179475, at *27 ("The problem here is the dearth of factual allegations to support [p]laintiffs' claim that any particular period of time—days, weeks, or months—amounts to an unreasonable delay and on its face, the amount of time here does not appear to be unreasonable."). Other states' Notification Laws do specify a relevant period, in all relevant cases much greater than 10 days.[25] Plaintiffs' claims under these Notifications Laws fail because—based on Plaintiffs' own allegations—they were timely notified of the Cybersecurity Incident well within the relevant period. *See* Appendix C.

Relatedly, putting aside the notification provided on PowerSchool's website, the Master Complaint does not allege ***when*** several Plaintiffs were notified of the

[25] *See* La. Rev. Stat. Ann. § 51:3074(E) (requiring notification no later than 60 days from discovery of the breach); Tenn. Code Ann. § 47-18-2107 (45 days from discovery of breach); Wash. Rev. Code § 19.255.010(8) (30 calendar days from discovery of breach).

Incident (nor does it allege that these Plaintiffs were ***never*** notified). *See* MC ¶¶ 450-56 (Kansas Plaintiffs Shanda Farquhar and G.A.F.), 698-702 (Kansas Plaintiff Lauren Overly), 703-07 (Kansas Plaintiff Emma Pangracs). Without this information, it is impossible for the Court to determine whether PowerSchool unreasonably delayed notifying them. *Cf. In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1146 (N.D. Cal. 2018) (explaining that "the [c]ourt cannot evaluate whether [d]efendants unreasonably delayed in notifying customers" where "Plaintiffs' allegations are too uncertain to divine any date of discovery").

*Second*, injury is required to state any claim premised on a supposed violation of the Notification Laws. Plaintiffs' claims should be dismissed because they do not allege any form of injury resulting from the supposed delay in notification. *See, e.g.*, *Dugas*, 2016 WL 6523428, at *7 (dismissing claim under California Notification Law where plaintiff did not "allege any incremental harm suffered as a result of the alleged delay in notification"); *Flagstar*, 2024 WL 5659583, at *14 ("When plaintiffs cannot allege injury *resulting from* the delayed notification—as opposed to injury arising from the breach itself—courts dismiss these claims.").

## XI. THE CALIFORNIA COMPREHENSIVE DATA ACCESS AND FRAUD ACT CLAIM FAILS BECAUSE POWERSCHOOL DID NOT TAKE PART IN THE UNAUTHORIZED HACKING (COUNT XIX)

The California Plaintiffs allege violations of California Penal Code §§ 502(c)(6) and 502(c)(7), which prohibit the knowing unauthorized access or the provision of unauthorized access to computers in violation of the California Comprehensive Data Access and Fraud Claim Act ("CDAFA"). The relevant allegations merely recite the statutory language and definitions. Count XIX should be dismissed on that basis alone. CDAFA is also facially inapplicable for two

reasons. *First*, the CDAFA does not apply here because PowerSchool did not "actually participate[] in unauthorized hacking." *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011). Courts have recognized that the CDAFA is not meant to "impose liability on defendant for *third party* hackers' unauthorized access of and tampering with defendant's system." *Id.*; *see CTI III, LLC v. Devine*, No. 21-cv-02184, 2022 WL 1693508, at *4 (E.D. Cal. May 26, 2022) (dismissing claim where plaintiff "allege[d] no facts that [defendant] actively participated in [hacking]"). That is precisely the case here, as Plaintiffs' own allegations acknowledge. *See* MC ¶ 25 ("Matthew D. Lane . . .led the massive cyberattack against PowerSchool.").

*Second*, PowerSchool did not access Plaintiffs' Data without permission. *Claridge* forecloses Plaintiffs' theory that a defendant with permission to access data somehow provides unauthorized access to hackers through a security vulnerability. 785 F. Supp. 2d at 863. In *Claridge*, the court rejected a claim premised on allegations that the defendant, a software company whose application the plaintiff used, had violated the CDAFA by "provid[ing] a means for hackers to access defendant's computer system," and "by failing to establish commercially reasonable security methods to protect the PII on its system." *Id.* Plaintiffs' CDAFA claim rests on the same faulty premise and should be dismissed. *See id.*

## XII. <u>THE CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT CLAIM HAS NO APPLICATION TO POWERSCHOOL (COUNT XIV)</u>

The California Plaintiffs contend that PowerSchool is subject to the Confidentiality of Medical Information Act ("CMIA") by virtue of its contractual relationship with its school and school district customers, which Plaintiffs allege provide limited health care services to their students. MC ¶¶ 981-82, 987-88. On this basis, Plaintiffs contend that PowerSchool violated the CMIA by failing to

preserve the confidentiality of Plaintiffs' information. *See* MC ¶¶ 991, 1007 (citing Cal. Civ. Code §§ 56.36 & 56.101). The CMIA claim fails for several independent reasons.

*First*, PowerSchool is not a "provider of health care" that is subject to the CMIA. As Plaintiffs concede, neither PowerSchool nor its school district customers are "providers of health care," which are defined as licensed clinical providers of medical care. Cal. Civ. Code §§ 56.05, 56.101; MC ¶¶ 981-84. The CMIA additionally applies to businesses that either (a) were "organized *for the purpose* of maintaining medical information," or (b) directly offer "to consumers" software "*designed to maintain medical information*." Cal. Civ. Code § 56.06. Courts have interpreted this provision narrowly. Allegations that a business maintains medical information fail to plead that the business was "organized *for the purpose* of maintaining medical information." *Accellion*, 713 F. Supp. 3d at 643. Similarly, allegations that customers have used a business's software to maintain medical information do not indicate that the software was "*designed*" to do so. *Id.* at 643-44 ("Much like the analysis under § 56.06(a), the fact that the [software] may have been used to transfer or maintain medical information does not mean it was *designed* to do so.").

Plaintiffs do not, and cannot, allege that PowerSchool was "organized *for the purpose* of maintaining medical information," or that PowerSchool provides directly "to consumers" any software that was "*designed*" to maintain medical information. To the contrary, Plaintiffs allege that PowerSchool operates "as a support provider for educational entity clients," which includes providing software services that "cover a variety of administrative tasks ranging from enrollment to curriculum and teacher recruitment." MC ¶¶ 3, 981-82. The plaintiff in *Accellion* provided far more specific allegations—including that the defendant provided software that was used to "transfer or maintain medical information" directly to

*hospitals*—but even still, the court rejected the claim that the defendant was a "provider of health care" for purposes of the CMIA. *Accellion*, 713 F. Supp. 3d at 643-44; *see also In re BetterHelp, Inc. Data Disclosure Cases*, No. 23-cv-01033, 2024 WL 3416511, at *3 (N.D. Cal. July 15, 2024) (holding that the CMIA did not apply to provider of an online counseling service because plaintiff failed to allege that it was "organized for the purpose of maintaining medical information," or that its software was "designed to maintain medical information"). Plaintiffs' allegations are even more tenuous and should be dismissed.

*Second*, the CMIA claim fails because the statute protects only against disclosure or release of "medical information," Cal. Civ. Code § 56.10(a). The Master Complaint makes only conclusory allegations that the California Plaintiffs' medical information was involved in the Incident. California Plaintiffs Dobie James August, K.J.A., K.D.A., Ashley Wright, A.N.B., David Brownlee, Nicole Flick, and David Zarate do not allege that their medical information was ever inputted into the SIS or provided to PowerSchool. MC ¶¶ 366-72, 384-89. And Plaintiffs A.B., M.C., and A.Z. allege only that some unspecified "PHI," "medical information" or "dental information" was stored in the SIS. MC ¶¶ 372, 378, 390. California courts strictly enforce the requirement that the disclosed information contain *medical* data from a *medical provider*. *See, e.g.*, *Eisenhower Med. Ctr. v. Superior Ct.*, 226 Cal. App. 4th 430, 435 (2014) (dismissing CMIA claim, rejecting plaintiff's speculative argument that medical history involved in data breach "must include" that they underwent medical treatment); *Frayo v. Martin*, 102 Cal. App. 5th 1025, 1037 (2024) (plaintiff's "statement that he was ill and a description of his symptoms . . . does not constitute medical information"); *Rossi v. Sequoia Union Elementary Sch.*, 94 Cal. App. 5th 974, 997 (2023) (medical information "simply does not encompass [defendant's] *presumption* regarding [plaintiff's] medical [vaccination] status"). Plaintiffs' conclusory allegations that

their unidentified medical information may be involved do not plausibly allege a CMIA claim. *See id.*

*Third*, the CMIA claim fails because Plaintiffs do not allege that anyone actually viewed their medical information as a result of the Incident. *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1558 (2014). To proceed under the CMIA, "the *individual* bringing a private cause of action . . . must establish that the confidential nature of *his or her* information was breached because of the health care provider's negligence." *Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 219 (2022) (emphasis added). Plaintiffs do not allege that anyone's information was viewed and offer nothing more than conjecture that the criminal actor who perpetrated the Cybersecurity Incident *must* have viewed their records to determine what information the Data contained. *Id.* ¶¶ 997-99. Even assuming that the criminal actor sought to understand what the Data contained, it does not follow that the criminal actor would have to review any *individual's* Data to determine which types of information were involved. Plaintiffs' presumption that the criminal actor viewed Plaintiff A.B.'s, M.C.'s, or A.Z.'s information specifically is even more far-fetched in light of Plaintiffs' allegation that the criminal actor supposedly accessed information relating to "over 70 million" individuals. *Id.* ¶ 1. Because Plaintiffs fail to adequately allege that anyone "actually viewed" their information, their CMIA claim must be dismissed. *Sutter*, 227 Cal. App. 4th at 1550.

## XIII. POWERSCHOOL IS NOT SUBJECT TO THE CALIFORNIA CONSUMER PRIVACY ACT (COUNT XIII)

The California Plaintiffs next allege that PowerSchool violated the California Consumer Privacy Act ("CCPA"), but their own allegations compel the dismissal of this claim. The CCPA expressly provides that the statute "shall not apply" to "covered entit[ies] governed by the privacy, security, and breach

notification rules issued by the United States Department of Health and Human Services, Parts 160 and 164 of Title 45 of the Code of Federal Regulations." Cal. Civ. Code § 1798.145(c)(1)(B). The Master Complaint alleges that PowerSchool is subject to these HIPAA regulations and so Plaintiffs' own pleading forecloses their claim under the CCPA. MC ¶¶ 807-08.

Plaintiffs' CCPA claim also fails because PowerSchool is a "service provider," not a "business," under the CCPA. The CCPA allows a private citizen to pursue a civil suit only against a "business." Cal. Civ. Code § 1798.150; *Karter v. Epiq Sys., Inc.*, No. 20-cv-01385, 2021 WL 4353274, at *2 (C.D. Cal. July 16, 2021) ("Plaintiff can only state a claim against [d]efendants if they are businesses, not service providers."). The statute defines a "business" as an entity "that collects consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information." Cal. Civ. Code § 1798.140(d)(1). By contrast, a "service provider" is an entity "that processes personal information on behalf of a business and that receives from or on behalf of the business consumer's personal information for a business purpose pursuant to a written contract." Cal. Civ. Code § 1798.140(ag)(1).

Plaintiffs' own allegations make clear that the Company is a service provider rather than a business for purposes of the CCPA. *See* MC ¶ 4 (stating that PowerSchool "facilitates gathering vital information from families and staff"), ¶ 56 (SIS "serves as a repository for [] highly sensitive data"). To claim that PowerSchool instead is a "business," Plaintiffs would have to allege that PowerSchool "determines the purposes and means of the processing of consumers' personal information." Cal. Civ. Code § 1798.140(d)(1). But Plaintiffs have alleged no such thing, and, in fact, their allegations indicate that PowerSchool merely stores the data to allow its client schools and school districts to carry out

their operations. *See, e.g.*, MC ¶¶ 54, 972 (PowerSchool's SIS is "designed to enable schools and school districts to collect and manage large swaths of information" and "to help educational entity clients and individual consumer users to maintain their personal, academic, and medical information available upon request for their benefit"). Because PowerSchool is a quintessential example of a "service provider," Plaintiffs' CCPA claim should be dismissed. *Accellion*, 713 F. Supp. 3d at 642 (holding that company was rendered "service provider" under the CCPA "by simply developing and marketing a file sharing software").

## XIV. THE DECEIT BY CONCEALMENT CLAIM UNDER SECTION 1709 FAILS FOR LACK OF DUTY TO DISCLOSE (COUNT XX)

The California Plaintiffs further allege that PowerSchool violated California Civil Code Section 1709[26] by, among other things, "fail[ing] to disclose and actively conceal[ing] information about the material fact that [it] did not reasonably or adequately secure Plaintiffs and the California Subclass members' PII." MC ¶ 1064.

The Section 1709 claim fails because Plaintiffs have not adequately alleged a duty to disclose. Rule 9(b) applies and "requires that in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *London v. New Albertson's, Inc.*, No. 08-cv-1173, 2008 WL 4492642, at *7 (S.D. Cal. Sept. 30, 2008). "To allege a duty to disclose, a plaintiff must show that the defendant: (1) is in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of material facts not known to the plaintiff; (3) actively conceals a material fact from the plaintiff; or (4) makes partial representations but also suppresses some material fact." *Lerner v. McManamon*,

[26] Section 1709 provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Cal. Civ. Code § 1709.

No. 24-cv-00680, 2025 WL 819679, at *4 (C.D. Cal. Feb. 3, 2025). In an attempt to satisfy this standard, Plaintiffs simply recite the conclusion that, because PowerSchool purportedly "actively concealed information" regarding the adequacy of its security systems and supposedly had exclusive knowledge of the same, PowerSchool "had a duty to disclose . . . material facts to Plaintiffs." MC ¶ 1064. This rote allegation does not state a claim for fraudulent concealment under Section 1709. *See Decker v. Hewlett Packard Co.*, No. 09-cv-00295, 2009 WL 10695728, at *5 (N.D. Cal. June 19, 2009) (rejecting claim where plaintiff "summarily allege[d] that a duty to disclose exist[ed]," noting that such an allegation is "simply a legal conclusion upon which the [c]ourt is unable to rely"); *Terpin v. AT & T Mobility, LLC*, 118 F.4th 1102, 1111 (9th Cir. 2024) (affirming lower court's finding of no duty to disclose where plaintiff "failed to allege facts supporting an active concealment theory," explaining that "allegations of mere nondisclosure are not enough to show active concealment").

## XV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE GEORGIA RECOVERY OF EXPENSES STATUTE (COUNT XXV)

The Georgia Plaintiffs' claim under O.G.C.A § 13-6-11 should be dismissed because they fail to allege *how* PowerSchool's actions fall within the ambit of the statute. The statute allows for "expenses of litigation" where "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11. Plaintiffs fail to allege—in any manner whatsoever—how PowerSchool "acted in bad faith," was "stubbornly litigious," or otherwise caused them "unnecessary trouble and expense." MC ¶ 1110.[27] To the extent that Plaintiffs' claim hinges on their

[27] In the Master Complaint, Plaintiffs "repeat and reallege TK PARAS," but never define that term. It is wholly unclear which paragraphs Plaintiffs intend to "repeat and reallege" to support their claim under O.C.G.A. § 13-6-11.

assertion that "PowerSchool knew, or should have known, that it had not come close to implementing minimum cybersecurity protections for SIS," MC ¶ 8, that allegation falls far short of anything resembling "bad faith." *Powell Co. v. McGarey Grp., LLC*, 508 F. Supp. 2d 1202, 1219 (N.D. Ga. 2007).

## XVI. THE DECLARATORY JUDGMENT & INJUNCTIVE RELIEF CLAIM SHOULD BE DISMISSED (COUNT VI)

Plaintiffs' standalone claim for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), should be dismissed for two reasons. *First*, "declaratory and injunctive relief are remedies, not causes of action." *Landon*, 2024 WL 5317240, at *9; *see In re MCG Health Data Sec. Issue Litig.*, No. 22-cv-0849, 2023 WL 3057428, at *16 (W.D. Wash. Mar. 27, 2023) (recommending dismissal of the plaintiffs' cause of action for declaratory and injunctive relief because they are "not separate legal causes of action"), *report and recommendation adopted*, 2023 WL 4131746 (June 22, 2023). *Second*, the DJA claim is encompassed by Plaintiffs' other claims and thus serves no "useful purpose." *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 975-76 (N.D. Cal. 2021). Plaintiffs have already brought several causes of action that concern the adequacy of PowerSchool's security measures. Count VI should be dismissed as "entirely duplicative" of those other claims. *See id.*; *see also Kho v. Wells Fargo & Co.*, No. 12-cv-0847, 2012 WL 3240041, at *9 (C.D. Cal. Aug. 6, 2012) (dismissing claim for declaratory relief where there was "no reasons to believe declaratory judgment will resolve any issues aside from those already addressed by the substantive claims").

## CONCLUSION

For the reasons set forth above, PowerSchool respectfully requests that this Court dismiss all claims asserted by the No-Injury Plaintiffs and otherwise dismiss the claims set forth in the Master Complaint in the manner sought by this Motion.

PowerSchool is concurrently submitting a proposed order that addresses the relief sought on a count-by-count basis, specifying precisely which claims should be dismissed.

Dated: September 10, 2025

*/s/ Christopher M. Young*
Anne Johnson Palmer
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

Monica Mleczko
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 235-0337
monica.mleczko@ropesgray.com

Christopher M. Young
Oliver M. Kiefer
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com
oliver.kiefer@us.dlapiper.com

*Attorneys for Defendants PowerSchool Holdings, Inc. and PowerSchool Group, LLC.*

**CERTIFICATE OF SERVICE**

I certify that on September 10, 2025, I filed the foregoing Memorandum In Support Of PowerSchool's Motion To Dismiss Consolidated Individual Users Class Action Complaint with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ Christopher M. Young*
Christopher M. Young