John P. Carlin (NY 3031887)*
**PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

R. Rosie Vail (SBN 317977)
**PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Dylan O. Smith (NY 5846076)*
**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
jschutte@paulweiss.com
dosmith@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant
Bain Capital, L.P.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION | Case No. 3:25-md-3149-BEN-MSB<br><br>MDL No. 3149<br><br>**DEFENDANT BAIN CAPITAL, L.P.'S NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED INDIVIDUAL USERS PUTATIVE CLASS ACTION COMPLAINT (TRACK 1)**<br><br>Date: TBD<br>Time: TBD<br>Ctrm.: 5A<br>Judge:  Hon. Roger T. Benitez |

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at a date and time to be determined by the Court, Defendant Bain Capital, L.P. ("Bain") hereby moves the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), for an order dismissing Bain as a defendant in the Consolidated Individual Users Putative Class Action Complaint (Dkt. 259) (the "Complaint") in the above-captioned action, with prejudice (the "Motion").

The grounds for this Motion are as follows:

*First*, the claims brought by the 51 new purported plaintiff groups should be dismissed for lack of subject matter jurisdiction;

*Second*, the Complaint should be dismissed for lack of personal jurisdiction;

*Third*, all counts brought in the Complaint should be dismissed for failure to state a claim under alter ego or agency theories of vicarious liability; and

*Fourth*, the seven counts that Plaintiffs purport to bring on a theory of direct liability should also be dismissed for failure to state a claim.

This Motion is based upon Bain's Notice of Motion and the accompanying Memorandum of Points and Authorities, the complete files and records in these consolidated actions, the concurrently filed Appendix of Exhibits, the concurrently filed declaration of Jacobus J. Schutte, and such other arguments and matters as the Court may consider.  This Motion is also based on PowerSchool Holdings, Inc. and PowerSchool Group, LLC's ("PowerSchool") Notice of Motion and the accompanying Memorandum of Points and Authorities, which Bain joins in full.

25-md-3149-BEN-MSB
BAIN'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS COMPLAINT

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

PROCEDURAL HISTORY ...................................................................... 3

FACTUAL BACKGROUND..................................................................... 4

LEGAL STANDARD ............................................................................. 9

ARGUMENT....................................................................................... 11

    I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CLAIMS BROUGHT BY 51 PURPORTEDLY NEW PLAINTIFF GROUPS............................... 12

    II.   PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE THAT BAIN IS SUBJECT TO JURISDICTION IN ANY TRANSFEROR COURT ......................................................... 14

    III.  PLAINTIFFS FAIL TO STATE ANY CLAIM AGAINST BAIN ON ALTER EGO OR AGENCY THEORIES OF VICARIOUS LIABILITY ................................................... 20

        A.    Plaintiffs Fail to Adequately Allege Alter Ego Liability........................................................................... 21

            1.    Plaintiffs Fail to Allege a Unity of Interest and Ownership *Before* Bain Acquired an Equity Interest in PowerSchool ...................................... 24

            2.    Plaintiffs Fail to Allege a Unity of Interest and Ownership *After* Bain Acquired an Equity Interest in PowerSchool ...................................... 29

            3.    Plaintiffs Fail to Allege Any Injustice from Respecting Bain's Separate Corporate Identity ............. 30

        B.    Plaintiffs Fail to Adequately Allege Agency Liability............. 31

    IV.  PLAINTIFFS FAIL TO STATE ANY CLAIM ON A DIRECT LIABILITY THEORY ........................................................ 33

        A.    Plaintiffs Engage in Improper Group Pleading ........................ 33

        B.    Plaintiffs Fail to State a Claim as to the Direct Liability Counts .............................................................. 38

            1.    Negligence (Count I)....................................... 38

- ii -

2.    Unjust Enrichment (Count III) .......................................41

3.    Declaratory Judgment Act (Count VI) ...........................41

4.    Negligent Training and Supervision (Count IX)............42

5.    Violation of California's Consumer Privacy Act (Count XIII)................................................................42

6.    Violation of California's Unfair Competition Law (Count XVI) ..............................................................43

7.    Aiding and Abetting (Count XVII) ...............................44

CONCLUSION..........................................................................................44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Eng'g Sols. Co., LLC* v. *Pers. Corner, LLC*,
 2021 WL 1502705 (C.D. Cal. Feb. 25, 2021) ......................................................41

*Am. Airlines, Inc.* v. *Mawhinney*,
 904 F.3d 1114 (9th Cir. 2018) ...........................................................................32

*Ashcroft* v. *Iqbal*,
 556 U.S. 662 (2009) ..........................................................................................32

*Bacon* v. *Pape Truck Leasing, Inc.*,
 2020 WL 799747 (E.D. Cal. Feb. 18, 2020) .......................................................38

*United States* v. *Bestfoods*,
 524 U.S. 51 (1998) ............................................................................................23

*Better Homes Realty, Inc.* v. *Watmore*,
 2017 WL 1400065 (S.D. Cal. Apr. 18, 2017) (Benitez, J.)...............................36

*Borrego Cmty. Health Foundation* v. *Hebets*,
 2024 WL 1269476 (S.D. Cal. Mar. 25, 2024) (Benitez, J.) ..............................11

*Brockmeyer* v. *May*,
 383 F.3d 798 (9th Cir. 2004) .......................................................................10, 14

*Bustamante* v. *Bank of America, N.A.*,
 2012 WL 13175878 (S.D. Cal. May 21, 2012) ...................................................34

*Cal-Star Prod., Inc* v. *Fencepost Prods., Inc.*,
 2019 WL 13038581 (C.D. Cal. Apr. 18, 2019)...................................................32

*City of Reno* v. *Netflix, Inc.*,
 52 F.4th 874 (9th Cir. 2022)..............................................................................41

*Coleman* v. *Las Vegas Metro. Police Dep't*,
 2022 WL 3594272 (9th Cir. Aug. 23, 2022).......................................................39

*Corcoran* v. *CVS Health Corp.*,
 169 F. Supp. 3d 970 (N.D. Cal. 2016).................................................................29

25-md-3149-BEN-MSB
BAIN'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS COMPLAINT

*Core-Vent Corp.* v. *Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993) .......................................................................... 19

*United States* v. *Corinthian Colls.*,
655 F.3d 984 (9th Cir. 2011) ........................................................................... 43

*Cummings* v. *Worktap, Inc.*,
2019 WL 4221652 (N.D. Cal. Sept. 4, 2019) .................................................... 22

*Daimler AG* v. *Bauman*,
571 U.S. 117 (2014) ...................................................................................... 16

*De Leon* v. *Cnty. of San Diego*,
2017 WL 2670891 (S.D. Cal. June 20, 2017) .................................................... 10

*In re Delta Dental Antitrust Litig.*,
509 F. Supp. 3d 1377 (J.P.M.L. 2020) ............................................................. 14

*Dent* v. *Nat'l Football League*,
902 F.3d 1109 (9th Cir. 2018) ......................................................................... 42

*DG BF, LLC* v. *Ray*,
2021 WL 776742 (Del. Ch. Mar. 1, 2021) ........................................................ 26

*Doe* v. *Camp Pendleton & Quantico Hous. LLC*,
2020 WL 1890576 (S.D. Cal. Apr. 16, 2020) .................................................... 36

*Dugas* v. *Starwood Hotels & Resorts Worldwide*,
2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ..................................................... 40

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
545 F. Supp. 3d. 922 (D. Kan. 2021) ............................................................... 13

*Est. of Ricardez* v. *Cnty. of Ventura*,
2020 WL 3891460 (C.D. Cal. June 24, 2020) ............................................. 26, 30

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ........................................................................... 44

*Flaugher* v. *Doe*,
2017 WL 3314231 (S.D. Cal. Aug. 1, 2017) (Benitez, J.) ................................... 9

- v -

*Flint* v. *Krause*,
2011 WL 4626149 (S.D. Cal. Oct. 5, 2011)......................................................... 14

*Ford Motor Co.* v. *Montana Eighth Judicial District Court*,
592 U.S. 351 (2021) ............................................................................................ 16

*Gerritsen* v. *Warner Bros. Ent. Inc.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015)........................................................*passim*

*Gonzalez* v. *Planned Parenthood of Los Angeles*,
759 F.3d 1112 (9th Cir. 2014).......................................................................27, 28

*Greater San Diego Cnty. Ass'n of Realtors, Inc.* v. *Sandicor Inc.*,
2016 WL 4597536 (S.D. Cal. May 25, 2016)....................................................... 1

*Hernandez* v. *Mimi's Rock Corp.*,
632 F. Supp. 3d 1052 (N.D. Cal. 2022) ............................................................. 28

*SEC* v. *Hickey*,
322 F.3d 1123 (9th Cir. 2003)................................................................2, 20, 24

*Horton* v. *NeoStrata Co. Inc.*,
2016 WL 11622008 (S.D. Cal. Nov. 22, 2016) .............................................34, 37

*Ibay* v. *Mfrs. & Traders Tr. Co.*,
2013 WL 12130562 (C.D. Cal. Apr. 5, 2013)..................................................... 41

*In re Jan. 2021 Short Squeeze Trading Litig.*,
580 F. Supp. 3d 1243 (S.D. Fla. 2022) (Altonaga, J.)...........................12, 13, 14

*Kearns* v. *Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009).......................................................... 10, 43, 44

*Kilcullen* v. *Select Portfolio Servicing, Inc.*,
2012 WL 1667150 (S.D. Cal. May 10, 2012) (Benitez, J.) ............................... 10

*Lisa McConnell, Inc.* v. *Idearc, Inc.*,
2010 WL 364172 (S.D. Cal. Jan. 22, 2010) ...................................................... 31

*Mann* v. *City of Chula Vista*,
2020 WL 5759749 (S.D. Cal. Sept. 28, 2020) .................................................. 38

*Martifer-Silverado Fund I, LLC* v. *Zhongli Sci. & Tech. Grp. Co.*,
2020 WL 1322926 (N.D. Cal. Mar. 20, 2020)................................................... 30

- vi -

*Medimpact Healthcare Sys., Inc.* v. *IQVIA Holdings Inc.*,
    2020 WL 1433327 (S.D. Cal. Mar. 24, 2020)......................................................17

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
    603 F. Supp. 3d 1183 (S.D. Fla. 2022)................................................................11

*In re Mortg. Elec. Registration Sys. (Mers) Litig.*,
    2016 WL 3931820 (D. Ariz. July 21, 2016) ......................................................12

*Moser* v. *Lifewatch Inc.*,
    2020 WL 1849664 (S.D. Cal. Apr. 13, 2020) ....................................................18

*Navarro* v. *Ski Data*,
    2022 WL 18280359 (C.D. Cal. Dec. 7, 2022) ....................................................39

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014)...............................................................................5

*Ocampo* v. *United States*,
    2023 WL 6305801 (S.D. Cal. Sept. 27, 2023) ..............................................17, 20

*In re Packaged Ice Antitrust Litig.*,
    2011 WL 6178891 (E.D. Mich. Dec. 12, 2011)..................................................13

*Palomar Health* v. *Am. Guarantee & Liab. Ins. Co.*,
    2021 WL 4035005 (S.D. Cal. Sept. 3, 2021) (Benitez, J.)............................10, 19

*Peterson* v. *Cellco P'ship*,
    164 Cal. App. 4th 1583 (2008)............................................................................41

*PR Acquisitions, LLC* v. *Midland Funding LLC*,
    2018 WL 2041521 (Del. Ch. Apr. 30, 2018) ......................................................22

*Price* v. *Synapse Grp., Inc.*,
    2017 WL 3131700 (S.D. Cal. July 24, 2017).......................................................21

*PXP Producing Co. LLC* v. *MitEnergy Upstream LLC*,
    2025 WL 1779457 (Del. Ch. June 26, 2025) ...............................................*passim*

*Ranza* v. *Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015).................................................................16, 28, 29

*Regents of the Univ. of California* v. *Aisen*,
    2016 WL 4096078 (S.D. Cal. Apr. 22, 2016) (Benitez, J.)..................................39

25-md-3149-BEN-MSB
BAIN'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS COMPLAINT

*Reynolds* v. *Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020)..................................................... 19

*Rochfort* v. *EF Inst. for Cultural Exch., Inc.*,
    2020 WL 12833951 (S.D. Cal. Sept. 8, 2020) ...................................... 17

*Ross Holding & Mgmt. Co.* v. *Advance Realty Grp., LLC*,
    2010 WL 1838608 (Del. Ch. Apr. 28, 2010) ............................... 2, 20, 24

*Santa Clarita Org. for Planning & Env't* v. *Castaic Lake Water Agency*,
    1 Cal. App. 5th 1084 (2016)............................................................. 22, 25

*SARN Energy LLC* v. *Tatra Defence Vehicle a.s.*,
    2018 WL 5794599 (Del. Super. Ct. Nov. 5, 2018) ............................... 28

*Schwarzenegger* v. *Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ......................................................... 14, 16

*Sears, Roebuck & Co.* v. *Sears plc*,
    744 F. Supp. 1297, 1305 (D. Del. 1990) .............................................. 22

*Shaeffer* v. *Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020)................................................................ 43

*Smith* v. *San Diego State Univ.*,
    2005 WL 8173129 (S.D. Cal. July 26, 2005) (Benitez, J.) ................... 26

*Sonora Diamond Corp.* v. *Superior Ct.*,
    83 Cal. App. 4th 523 (2000)........................................................*passim*

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014) .................................................. 39

*Matter of Star & Crescent Boat Co., Inc.*,
    549 F. Supp. 3d 1145 (S.D. Cal. 2021) (Benitez, J.).................... 17, 18

*Mazed* v. *JP Morgan Chase Bank, N.A.*,
    2013 WL 12131725 (C.D. Cal. May 6, 2013).................................... 40

*Mehr* v. *Fed'n Internationale de Football Ass'n*,
    115 F. Supp. 3d 1035 (N.D. Cal. 2015) .............................................. 40

*Stark* v. *Stall*,
    2020 WL 13158003 (S.D. Cal. Aug. 20, 2020) ................................... 26

25-md-3149-BEN-MSB
BAIN'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS COMPLAINT

*Steckman* v. *Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998)........................................................................27

*StrikeForce Techs., Inc.* v. *PhoneFactor, Inc.*,
2013 WL 6002850 (D. Del. Nov. 13, 2013) ...................................................25

*In re TelexFree Sec. Litig.*,
357 F. Supp. 3d 78 (D. Mass. 2019).........................................................14, 15

*Van Maanen* v. *Youth With a Mission-Bishop*,
852 F. Supp. 2d 1232 (E.D. Cal. 2012).........................................................32

*In re U.S. Vision Data Breach Litig.*,
2025 WL 615366 (D.N.J. Feb. 26, 2025)........................................................21

*Vavak* v. *Abbott Lab'ys, Inc.*,
2011 WL 13130493 (C.D. Cal. Mar. 7, 2011) ................................................40

*Verdantus Advisors, LLC* v. *Parker Infrastructure Partners, LLC*,
2022 WL 611274 (Del. Ch. Mar. 2, 2022)..............................................2, 25, 30

*ViaSat, Inc.* v. *Space Sys./Loral, Inc.*,
2012 WL 12844738 (S.D. Cal. July 30, 2012)............................................29, 30

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P.* v. *Wood*,
752 A.2d 1175 (Del. Ch. 1999).....................................................................22

*Walsh* v. *LG Chem Ltd.*,
834 F. App'x 310 (9th Cir. 2020).................................................................18

*Wechsler* v. *Macke Int'l Trade Inc.*,
327 F. Supp. 2d 1139 (C.D. Cal. 2004)..........................................................26

*Wenske* v. *Blue Bell Creameries, Inc.*,
2018 WL 5994971 (Del. Ch. Nov. 13, 2018)....................................................27

*Whitaker* v. *Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021).....................................................................24

*Williams* v. *Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017).....................................................................17

*Young* v. *Greystar Real Est. Partners, LLC*,
2019 WL 4169889 (S.D. Cal. Sept. 3, 2019) (Benitez, J.)................................10

25-md-3149-BEN-MSB
BAIN'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS COMPLAINT

**Statutes**

28 U.S.C. § 1407...................................................................................... 11

Cal. Bus. & Prof. Code § 17200, *et seq.*............................................... 43

Cal. Civ. Code § 1798.100, *et seq.* ................................................. 42, 43

Cal. Civ. Proc. Code § 410.10 ............................................................... 15

28 U.S.C. § 2201 .................................................................................... 40

**Other Authorities**

Fed. R. Civ. P. 4............................................................................... 10, 13

Fed. R. Civ. P. 8..............................................................................*passim*

Fed. R. Civ. P. 9(b) .........................................................................*passim*

Fed. R. Civ. P. 12(b)(1) ........................................................................ 1, 9

Fed. R. Civ. P. 12(b)(2) ........................................................................ 1, 9

Fed. R. Civ. P. 12(b)(5) ...................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ...................................................................*passim*

114 Am. Jur. Proof of Facts 3d 403 (originally published 2010) (July
  2025).................................................................................................. 21

Gregory Scott Crespi, *Choice of Law in Veil-Piercing Litigation: Why
  Courts Should Discard the Internal Affairs Rule and Embrace
  General Choice-of-Law Principles*, 64 N.Y.U. Ann. Surv. Am. L.
  85, 90–91 (2008) ............................................................................... 21

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), Defendant Bain Capital, L.P. ("Bain") hereby moves to dismiss with prejudice the claims brought against Bain in the Track 1 Consolidated Individual Users Putative Class Action Complaint (Dkt. 259, the "Complaint") filed by Individual User Plaintiffs ("Plaintiffs") because: (1) the Court lacks subject matter jurisdiction over the claims brought by the 51 purportedly new plaintiff groups named in the Complaint who did not properly join this multidistrict litigation ("MDL"), *see* Ex. A; (2) Plaintiffs have not pled facts sufficient to support personal jurisdiction over Bain in any transferor court; (3) the Complaint fails to state a claim against Bain under an alter ego or agency theory of vicarious liability upon which relief can be granted; and (4) the Complaint fails to state a claim against Bain on any direct liability theory, which Plaintiffs bring only under Counts I, III, VI, IX, XIII, XVI, and XVII, *see* Ex. C.  Since the vast majority of Plaintiffs' claims against Bain rely on alter ego and agency theories of vicarious liability, Bain also joins PowerSchool's Motion to Dismiss, (Dkt. 285), in its entirety and adopts all arguments made therein.  *See Greater San Diego Cnty. Ass'n of Realtors, Inc.* v. *Sandicor Inc.*, 2016 WL 4597536, at *6 n.5 (S.D. Cal. May 25, 2016) (treating motions to dismiss as identical insofar as defendants joined in each other's arguments).

## PRELIMINARY STATEMENT

Of the 62 putative class action complaints transferred to this Court by the Judicial Panel on Multidistrict Litigation ("JPML"), only three transferred actions named Bain as a defendant.  Plaintiffs now seek to name Bain in all actions brought by all Plaintiffs named in the Complaint, alleging that Bain should be held vicariously liable under alter ego and agency theories for a cyberattack suffered by PowerSchool.  Plaintiffs' theory of vicarious liability is unprecedented—Bain could

- 1 -

not identify *any* prior instance where a private investment firm was held liable for a data breach suffered by one of its portfolio companies. Indeed, Plaintiffs' theory suggests that all normal course private investment activity can form the basis of vicarious liability, which, if permitted to proceed beyond a motion to dismiss, would represent an unprecedented expansion of vicarious liability law. *See Sonora Diamond Corp.* v. *Superior Ct.*, 83 Cal. App. 4th 523, 539 (2000) ("Alter ego is an extreme remedy, sparingly used."); *Verdantus Advisors, LLC* v. *Parker Infrastructure Partners, LLC*, 2022 WL 611274, at *2 (Del. Ch. Mar. 2, 2022) ("Veil piercing is a tough thing to plead and a tougher thing to get[.]").

Plaintiffs' vicarious liability theory is particularly far-fetched here, as Plaintiffs allege that Bain only acquired a 51% stake in PowerSchool on October 1, 2024, nearly two months *after* Plaintiffs claim the cybersecurity incident began. The Court should reject Plaintiffs' attempt to support its alter ego theory through allegations that predate October 1, 2024. That is because an alter ego relationship can only exist where one corporation formally or equitably owns another corporation. *See SEC* v. *Hickey*, 322 F.3d 1123, 1130 (9th Cir. 2003) (holding that the "clear rule of law established by the California courts [is] that [one] *must* own at least part of a corporation for an alter ego relationship to exist" (emphasis added)); *see also Ross Holding & Mgmt. Co.* v. *Advance Realty Grp., LLC*, 2010 WL 1838608, at *13 (Del. Ch. Apr. 28, 2010) (explaining that piercing the veil allows parties "to ignore the corporate boundaries between an *owner* and its controlled corporate entity" (emphasis added)). Even if the Court were to consider the Complaint's scant and far-fetched allegations of control before October 1, 2024, those allegations still fall woefully short of the complete control required to sufficiently plead alter ego or agency liability.

And after October 1, 2024, Plaintiffs rely on a handful of conclusory and speculative allegations that Bain controlled PowerSchool, and offer a few

- 2 -

descriptions of normal course private investment activities, such as allegations that Bain appointed new PowerSchool board members—nowhere near the required pleading of "manipulative" control of "every facet of the subsidiary's business," including "day-to-day" operational control, necessary for alter ego and agency theories of vicarious liability. *See Gerritsen* v. *Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1142–43 (C.D. Cal. 2015) (alterations and citation omitted) (granting motion to dismiss where complaint lacked sufficient allegations of manipulative control necessary to establish an alter ego relationship).

Plaintiffs also purportedly bring claims against Bain on a direct liability theory only with respect to Counts I, III, VI, IX, XIII, XVI, and XVII (the "Direct Liability Counts"). *See* Ex. C. Not only do Counts XIII, XVI, and XVII fail to even name Bain as a defendant, but all of the Direct Liability Counts are completely unsupported by specific allegations directed at Bain and entirely fail to allege even the basic elements of those claims.

Finally, Plaintiffs have also failed to make basic jurisdictional allegations, which, together with their improper attempt to add 51 new purported plaintiff groups, will unduly delay resolution of this MDL.

For the reasons set forth below, the Court should dismiss with prejudice all claims brought against Bain in Track 1 of this MDL.

## PROCEDURAL HISTORY

The Complaint consolidates claims brought by individual user plaintiffs in 62 putative user class actions filed in nine states (California, Connecticut, Illinois, Michigan, Minnesota, Missouri, New Jersey, New York, and North Carolina) and transferred to this Court by the JPML. Of the 62 putative class action complaints transferred to this Court by the JPML, only three actions originally named Bain as a defendant: *Cabrera* v. *PowerSchool Holdings, Inc.*, 2:25-cv-02026 (D.N.J.); *J.R.* v. *PowerSchool Holdings, Inc.*, 3:25-cv-00932 (S.D. Cal.) ("*Moreno*"); and *Flick* v.

- 3 -

*PowerSchool Holdings, Inc.*, 2:25-cv-00232 (E.D. Cal.).  The *Cabrera* plaintiffs dismissed their action on August 19, 2025, (Dkt. 270), and the *Moreno* plaintiffs are not named as plaintiffs in the Complaint.[1]  Yet the consolidated Complaint filed on August 11, 2025 now names Bain as a defendant in all actions brought by all named Plaintiffs, where only *Flick* named Bain originally.

The Complaint brings 79 total counts on a theory of vicarious liability under the alter ego and agency doctrines.  Plaintiffs have made clear that their Complaint as written brings only seven of those 79 counts on a direct liability theory:  Counts I (Negligence), III (Unjust Enrichment), VI (Declaratory Judgment and Injunctive Relief), IX (Negligent Training and Supervision), XIII (Violation of the California Consumer Privacy Act), XVI (Violation of the California Unfair Competition Law), and XVII (Aiding and Abetting).[2]  *See* Ex. C.  Accordingly, Bain moves to dismiss with prejudice all 79 counts brought on theories of vicarious liability and, additionally, the seven counts also brought on a direct liability theory.  For the reasons set forth below, the Court should dismiss all claims brought against Bain in Track 1 of this MDL with prejudice.

## FACTUAL BACKGROUND

In their Complaint, Plaintiffs come nowhere close to alleging the degree of control required to plead alter ego or agency liability, either before or after Bain is

---

[1]  The *Moreno* plaintiffs named Bain in their original complaint but do not join the instant Complaint.  3:25-cv-00932 (S.D. Cal.).  Bain also seeks dismissal of the *Moreno* complaint on the same grounds set forth in this Motion.  With respect to Bain's Motion, the Court does not need to consider the claims brought by plaintiffs who filed individual actions transferred to this MDL but who did not join the Complaint.  None of those plaintiffs bring claims against Bain.  *See* Ex. B (identifying plaintiffs who did not join the Complaint or name Bain as a defendant as of the filing of this Motion).

[2]  While Plaintiffs have unambiguously confirmed that they intend their Complaint to bring only seven counts on a direct theory of liability, Bain reserves all rights to respond to arguments raised by Plaintiffs in their opposition brief that attempt to expand their claims against Bain.  *See* Ex. C.

- 4 -

alleged to have acquired its ownership interest in PowerSchool in October 2024.[3]

Bain is a leading private investment firm that manages over $185 billion in assets. Since it was established in 1984, Bain has invested in hundreds of companies across a broad range of industries. (Compl. ¶¶ 66–70). Bain is headquartered in Massachusetts and incorporated in Delaware. (Compl. ¶ 37). According to Plaintiffs, Bain acquired a 51% stake in PowerSchool on October 1, 2024.[4] (Compl. ¶ 85). Plaintiffs' claims arise from a third-party hacker's criminal breach of PowerSchool's systems that Plaintiffs allege began in August 2024. (Compl. ¶¶ 125, 134–35). Bain joins PowerSchool's motion to dismiss in its entirety and, in order to avoid repetition, refers the Court to PowerSchool's recitation of the specific allegations concerning the cybersecurity incident. (*See* "Summary of Pertinent Factual Allegations" Section of PowerSchool's Motion to Dismiss, Dkt. 286).

The Complaint alleges that Bain should be held vicariously liable for a third-party data breach of PowerSchool's systems primarily on an alter ego or agency theory of vicarious liability. (Compl. ¶¶ 37–41). Plaintiffs allege that Bain's control

---

[3] This Motion to Dismiss takes the facts alleged in the Complaint as true as is required at this stage. Nothing in this Motion to Dismiss should be taken as an admission of the truth of the allegations brought or a waiver of any objection to the accuracy of those allegations.

[4] Bain does not have an ownership interest in PowerSchool. Rather, "PowerSchool surviv[ed the] merger as a wholly owned subsidiary of" BCPE Polymath Buyer, Inc., whose shares were "transferred to BCPE Polymath Topco, LP, a Delaware limited partnership and affiliate of investment funds advised by Bain." *See* PowerSchool Holdings, Inc., Schedule 14C Information Statement Relating to Merger or Acquisition, at i (Sept. 4, 2024), https://www.sec.gov/Archives/edgar/data/1835681/000119312524212624/d836904ddefm14c.htm; *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) (holding that full documents are incorporated by reference where plaintiffs "rely[] on portions of [them] in their complaint"). Plaintiffs nowhere allege an alter ego relationship between Bain and BCPE Polymath Buyer, Inc. or BCPE Polymath Topco, LP—nor could they. And even if Plaintiffs had named BCPE Polymath Buyer, Inc., BCPE Polymath Topco, LP, or any other entity alleged to have invested in PowerSchool as defendants, for the same reasons articulated herein, those entities could not be held liable for a cybersecurity attack suffered by PowerSchool.

- 5 -

of PowerSchool began in 2022, when Bain is alleged to have first initiated negotiations regarding a potential investment in PowerSchool. (Compl. ¶¶ 14, 37–38). Beginning in 2022 through early 2024, the Complaint alleges that, in the context of negotiations between two independent, commercial parties, PowerSchool shared information with Bain regarding business strategy, including concerning PowerSchool's offshoring of cybersecurity and IT functions. (Compl. ¶¶ 72–74, 80, 90). The Complaint does not and cannot allege how Bain, a potential counterparty at the time, controlled or dictated PowerSchool's business strategy during this period.

In January 2024, still *more than nine months* before Bain is alleged to have acquired an interest in PowerSchool, Plaintiffs allege that PowerSchool announced plans to expand its operations in India. (Compl. ¶ 73). Also in January, Plaintiffs allege PowerSchool announced plans to offshore "cybersecurity staff," purportedly "under Bain's direction" and consistent with Bain's alleged plans to integrate artificial intelligence into PowerSchool's systems. (Compl. ¶¶ 74, 81–84). Then, according to the Complaint, in March 2024, PowerSchool's CFO presented forecasts to PowerSchool's Board reflecting financial plans that included offshoring, which Plaintiffs allege were provided to Bain in the course of later deal negotiations. (Compl. ¶¶ 75–80). Also in March 2024, the Complaint alleges that PowerSchool began reducing its workforce. (Compl. ¶¶ 101–02). Plaintiffs allege that Bain's role in these decisions was one of "consult[ation]" or "ratif[ication]," which the Complaint alleges is consistent with Bain's typical strategy with its portfolio companies. (Compl. ¶¶ 14–16, 66–70, 79–80). Plaintiffs do not allege that Bain had any actual power to control PowerSchool prior to June 6, 2024, nor was there any contract suggesting that Bain might control PowerSchool then or in the future.

On June 6, 2024, following arm's-length negotiations with PowerSchool, the Complaint alleges that Bain, through its affiliates, agreed to acquire a 51%

- 6 -

ownership interest in PowerSchool.  (Compl. ¶ 85).[5]  Two other investment firms each retained a 24.5% stake.[6]  Citing to and relying only on the terms of that agreement, the Complaint alleges that between signing and closing on October 1, 2024, Bain exercised significant control over PowerSchool.  (*Id.*).  As alleged, the agreement, which the Complaint incorporates by reference, required Bain's consent for company-altering business changes, including capital expenditures over $5 million, changes to material vendor contracts, and major changes in compensation or headcount.  (Compl. ¶ 86).[7]  Plaintiffs conclude that this provision effectively gave Bain "veto rights."[8]  (Compl. ¶ 85).  The Complaint does not allege that Bain either gave or withheld consent for any such change consistent with the cited provision.

The Complaint alleges that on August 2024, two months prior to Bain's October 2024 investment in PowerSchool, PowerSchool initiated additional workforce reductions.  (Compl. ¶ 103).  The Complaint declares that Bain's role at that time was to "overs[ee] all major decisions [at PowerSchool] and direct[]" those workforce reductions.[9]  (*Id.*).  Although Plaintiffs assert that Bain "ratified and

---

[5]  *See* Schedule 14C Information Statement, *supra* note 4, at 1.

[6]  *Id.*

[7]  This provision is in Section 5.2, not in Section 6.1, as alleged.  The Complaint incorporates this agreement by reference.  *See* Agreement and Plan of Merger between BCPE Polymath Buyer, Inc., BCPE Polymath Merger Sub, Inc. and PowerSchool Holdings, Inc., at 57–59 (June 6, 2024), https://www.sec.gov/Archives/edgar/data/1835681/000119312524157845/d846178dex21.htm.

[8]  Plaintiffs do not identify which provision provides the purported "veto" rights.  While Section 5 of the agreement placed limitations on the parties' conduct during the interim period, the agreement contains no general consultation requirement and does not use the term "veto."  *See generally id.*

[9]  To support their allegations of Bain's involvement in PowerSchool's reductions in force or offshoring decisions after the agreement was signed on June 6, 2024, and prior to the closing date of October 1, 2024, when Bain acquired an ownership interest in PowerSchool, Plaintiffs incorporate by reference anonymous posts by purported former PowerSchool employees on social media and other websites.  (Compl. ¶¶ 104–05, 107).  Only one such post (an anonymous tweet) names Bain:

- 7 -

conditioned its offer" to purchase PowerSchool on the implementation of cost-cutting strategies like the August reductions in force, (Compl. ¶ 80), there is no such provision in the agreement. To the contrary, the agreement expressly provided that Bain or its affiliates ***did not*** have any right to control PowerSchool before the deal closed on October 1, 2024:

> The Parties acknowledge and agree that the restrictions set forth in this Agreement are **not intended to give [the Bain entities]**, on the one hand, or [PowerSchool], on the other hand, directly or indirectly, **the right to control or direct the business or operations** of the other at any time **prior to [October 1, 2024]. Prior to [October 1, 2024]**, and subject to the terms and conditions of this Agreement, each of [the Bain entities] and **[PowerSchool] shall exercise**, consistent with the terms, conditions and restrictions of this Agreement, **complete control and supervision over their own business and operations**.[10]

Plaintiffs make no allegations that the parties did not abide by the above-referenced provision of the agreement (nor can they).

The Complaint alleges that the first "signs of unauthorized access" appeared in August 2024. (Compl. ¶¶ 125, 134). The Complaint then alleges that on September 4, 2024, an unauthorized user first obtained data belonging to one of PowerSchool's customers. (*See* Compl. ¶ 136).

Plaintiffs' allege that Bain's acquisition of a 51% stake in PowerSchool was effective beginning on October 1, 2024. (Compl. ¶ 85). The Complaint makes minimal allegations that Bain controlled or directed PowerSchool's actions following October 1, 2024. First, Plaintiffs allege that PowerSchool's CEO announced that he planned on working closely with Bain going forward. (Compl. ¶¶ 91–95). The Complaint alleges that the timing and content of that announcement demonstrates "that the merger was an active and coordinated strategy with Bain," which involved "Bain actively managing and beginning its operations prior to the deal closure." (Compl. ¶ 94). Second, the Complaint alleges that, when Bain

---

"If anyone thought Bain Capital would moderate [PowerSchool CEO] Hardeep's cut and burn management style I have a bridge to sell you." (Compl. ¶ 107 n.62).

[10] *See* Agreement and Plan of Merger, *supra* note 7, at 64 (emphasis added).

- 8 -

"officially took control" of PowerSchool following closing on October 1, 2024, Bain replaced PowerSchool's board of directors. (Compl. ¶¶ 91–92). Third, Plaintiffs make conclusory allegations that, after that date, Bain and PowerSchool were "merely alter egos," that Bain "closely overs[aw] and controll[ed] all operations of PowerSchool, including controlling its newly appointed board," and that Bain prioritized reducing expenses to enable PowerSchool to service its debt from the investment, which was collateralized against PowerSchool's assets. (Compl. ¶¶ 39, 88–89, 113). Plaintiffs do not allege that this debt structure was unusual or improper (nor can they). They also do not allege that any offshoring or workforce reductions occurred after Bain finalized its investment on October 1, 2024. Plaintiffs allege that the cybersecurity incident culminated less than 3 months later on December 20, 2025. (Compl. ¶ 10). Critically, Plaintiffs do not allege that Bain had any investment interest in PowerSchool prior to October 1, 2024. (*See* Compl. ¶ 91 (alleging that Bain "officially took control" of PowerSchool on October 1, 2024)).

With respect to the Direct Liability Counts, the Complaint only alleges that Bain owed a duty of care to Plaintiffs, (Compl. ¶¶ 771–72), that Bain owns PowerSchool, (Compl. ¶ 968), and that Bain "provided substantial assistance and encouragement" to alleged misconduct by PowerSchool, including through its agreements, supposedly causing loss, (Compl. ¶¶ 1034–36). The Complaint lacks any additional, non-conclusory allegations brought against Bain that would support the Direct Liability Counts.

## LEGAL STANDARD

This Motion to Dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Flaugher* v. *Doe*, 2017 WL 3314231, at *2

- 9 -

(S.D. Cal. Aug. 1, 2017) (Benitez, J.) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). Under Rule 9(b), fraud or mistake claims must be pleaded "with particularity," including statutory consumer protection claims based on alleged deception. *Kearns* v. *Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009).

To withstand a motion to dismiss under Rule 12(b)(1), plaintiffs bear the burden of "plead[ing] facts, rather than mere legal conclusions, establishing a plausible basis for federal subject matter jurisdiction." *Palomar Health* v. *Am. Guarantee & Liab. Ins. Co.*, 2021 WL 4035005, at *3 (S.D. Cal. Sept. 3, 2021) (Benitez, J.), *aff'd*, 2022 WL 3006356 (9th Cir. July 28, 2022). Likewise, under Rule 12(b)(2), plaintiffs bear the burden of making a "prima facie showing of jurisdictional facts" establishing personal jurisdiction. *Id.* at *2. Plaintiffs also "bear the burden of establishing that service was valid under Rule 4" when facing a motion under Rule 12(b)(5). *Brockmeyer* v. *May*, 383 F.3d 798, 801 (9th Cir. 2004).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint "must not merely allege conceivably unlawful conduct but must allege 'enough facts to state a claim to relief that is plausible on its face.'" *De Leon* v. *Cnty. of San Diego*, 2017 WL 2670891, at *2 (S.D. Cal. June 20, 2017) (Benitez, J.) (citing *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). Plausibility is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Kilcullen* v. *Select Portfolio Servicing, Inc.*, 2012 WL 1667150, at *2 (S.D. Cal. May 10, 2012) (Benitez, J.) (quoting *Iqbal*, 556 U.S. at 678). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Young* v. *Greystar Real Est. Partners, LLC*, 2019 WL 4169889, at *3 (S.D. Cal. Sept. 3, 2019) (Benitez, J.) (quoting *Adams* v. *Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)).

## ARGUMENT

The Court should dismiss the claims brought against Bain in the Complaint with prejudice.

*First*, the Court lacks subject matter jurisdiction over the claims brought by the 51 new purported plaintiff groups named in the Complaint who were not named in any action that was transferred into this MDL.

*Second*, the Court lacks personal jurisdiction over Bain because Plaintiffs make only conclusory allegations that Bain is subject to personal jurisdiction in California and make no allegations that Bain is subject to jurisdiction in any of the other states from which actions were transferred.

*Third*, even if Plaintiffs had adequately pled jurisdiction, Plaintiffs fail to state a claim against Bain because the Complaint's vague and speculative allegations concerning Bain's purported control and domination of PowerSchool are insufficient to support alter ego or agency theories of vicarious liability—particularly since nearly every allegation of control predates October 1, 2024, when Bain allegedly invested in PowerSchool.

*Fourth*, Plaintiffs only allege that Bain is directly liable with respect to seven counts (the Direct Liability Counts), and the allegations supporting direct liability are similarly threadbare and conclusory, with no allegations at all supporting many necessary elements of those claims.[11]

---

[11] The only counts naming Bain as a defendant are Counts I–IV, VI, VII, and IX. (Compl. ¶¶ 767–924). Should the Court conclude that Plaintiffs have adequately alleged that Bain is liable under any theory of liability, the Court should dismiss the 72 remaining counts that do not name Bain as a defendant. Plaintiffs engage in textbook shotgun pleading by naming no defendants as to these 72 counts, and all should be dismissed for failure to provide adequate notice under Rules 8 and 9(b). *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1209 (S.D. Fla. 2022) (dismissing claim for shotgun pleading in an MDL where "[d]efendants correctly assert that they are denied fair notice because [the count] is not directed at any specific party"); *Borrego Cmty. Health Foundation* v. *Hebets*, 2024 WL 1269476, at *6 (S.D. Cal. Mar. 25, 2024) (Benitez, J.) (explaining that courts should dismiss "shotgun pleadings," or complaints that "overwhelm

- 11 -

25-md-3149-BEN-MSB
BAIN'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS COMPLAINT

*Finally*, all claims against Bain must be dismissed for ***each and every*** reason set forth in PowerSchool's Motion to Dismiss. (Dkt. 285). To avoid repetition, Bain does not recite PowerSchool's argument that most Plaintiffs lack Article III standing. (*See* Section I of PowerSchool's Motion to Dismiss, Dkt. 285). To be clear, Bain joins PowerSchool's standing argument and all other arguments made in its Motion to Dismiss, all of which equally apply to Bain. (Dkt. 285).

## I.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CLAIMS BROUGHT BY 51 PURPORTEDLY NEW PLAINTIFF GROUPS

The Court lacks subject matter jurisdiction over the claims brought by the 51 purportedly new plaintiff groups named in the Complaint. *See* Ex. A. (identifying plaintiffs and claims over which the Court lacks subject matter jurisdiction).[12] "The Court—sitting in its capacity not as an ordinary district court, but as an MDL transferee court—plainly only has jurisdiction over MDL member cases properly transferred or consolidated under Section 1407 and the accompanying JPML Rules." *In re Jan. 2021 Short Squeeze Trading Litig.*, 580 F. Supp. 3d 1243, 1251, 1254 (S.D. Fla. 2022) (Altonaga, J.) (dismissing purported new plaintiffs and claims from MDL for lack of subject matter jurisdiction). Under 28 U.S.C. § 1407 and the JPML Rules, "a plaintiff's claims are properly before an MDL court ***only*** where the plaintiff has first asserted his or her claims in a separate action" and that action was transferred by the JPML. *Id.* at 1249 (emphasis added); *see also In re Mortg. Elec. Registration Sys. (Mers) Litig.*, 2016 WL 3931820, at *5 (D. Ariz. July 21, 2016) ("A plaintiff may not unilaterally add actions in the MDL that have not been pending in federal court elsewhere or which were not transferred to the transferee court through the MDL process."). The sole exception to the rule that all cases must be

---

defendants" by asserting "multiple claims against multiple defendants without specifying which one of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." (citations omitted)).

[12]   Exhibit A identifies plaintiffs as they appear and are grouped in the Complaint.

- 12 -

transferred to the MDL court by the JPML are tag-along actions filed directly in the MDL court pursuant to a stipulated direct filing order. *Short Squeeze Trading Litig.*, 580 F. Supp. 3d at 1248, 1253.

None of the 51 purported new plaintiff groups have filed an action that was transferred to this Court by the JPML. (Dkts. 1, 2, 65, 142). And none of those 51 purported plaintiff groups have filed a short form complaint pursuant to the Direct Filing Order. (Dkt. 269). The requirement that new plaintiffs file a separate action (whether in another court and via JPML transfer or pursuant to a direct filing order) is not "not a mere procedural nicety." *See Short Squeeze Trading Litig.*, 580 F. Supp. 3d at 1254. Failure to follow proper procedure "deprives a transferee court of subject matter jurisdiction over those claims" brought by improperly named plaintiffs, and "[a]bsent subject matter jurisdiction, the Court is powerless to proceed." *Id.*; *see also In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 545 F. Supp. 3d. 922, 1021 (D. Kan. 2021) (holding that "an MDL proceeding isn't 'an environment that can spawn fresh actions by new plaintiffs'"). Accordingly, the Court should dismiss each and every claim brought by the 51 purportedly new plaintiff groups for lack of subject matter jurisdiction. *See In re Packaged Ice Antitrust Litig.*, 2011 WL 6178891, at *9 (E.D. Mich. Dec. 12, 2011) (dismissing plaintiffs and claims not properly brought before MDL court for lack of subject matter jurisdiction); *see also* Ex. A.

At bottom, the 51 purported plaintiff groups "are simply trying to make an end run around the proper procedural framework that governs MDL proceedings." *See Short Squeeze Trading Litig.*, 580 F. Supp. 3d at 1254. Those purported new plaintiffs attempt to improperly insert themselves into this MDL, "although presumably efficient for plaintiffs on the front end, creates accumulating inefficiencies for the Court and the parties to address on the back end." *See id.* at 1250–51, 1254 (collecting cases describing why the "improper addition of plaintiffs

- 13 -

directly in an MDL tangibly frustrates" MDL principles). For one, because the purported new plaintiffs have not filed an action in another court or identified the forum in which they would have filed their action pursuant to the Direct Filing Order (Dkt. 269), Bain cannot determine whether it can or should raise personal jurisdiction defenses as to those new actions. *See In re TelexFree Sec. Litig.*, 357 F. Supp. 3d 78, 79–80 (D. Mass. 2019) (MDL court explaining that it must determine whether the *transferor* courts could exercise jurisdiction over defendants to determine whether it had jurisdiction).[13]  And, second, "at the conclusion of pretrial proceedings," the Court would "be tasked with conducting a series of mini-trials in order to determine the proper venue for remand." *See Short Squeeze Trading Litig.*, 580 F. Supp. 3d at 1254.  The Direct Filing Order created an efficient and manageable way for new plaintiffs to join this MDL and designate a forum for remand—their failure to do so is not only improper but impedes the Court's ability to swiftly adjudicate the pre-trial issues before it.

## II.  PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE THAT BAIN IS SUBJECT TO JURISDICTION IN ANY TRANSFEROR COURT

Plaintiffs "bear[] the burden of demonstrating that jurisdiction is appropriate." *Flint* v. *Krause*, 2011 WL 4626149, at *2 (S.D. Cal. Oct. 5, 2011) (citing *Schwarzenegger* v. *Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).  In an MDL, personal jurisdiction over a defendant "*must* exist in the district where [the action] is filed" because the transferee court's jurisdiction is rooted in and equivalent to that of the transferor court. *In re Delta Dental Antitrust Litig.*, 509

---

[13]  Moreover, the 51 purportedly new plaintiff groups have not served Defendants pursuant to Rule 4 or the Direct Filing Order. *See Brockmeyer*, 383 F.3d at 801 (plaintiffs "bear the burden of establishing that service was valid under Rule 4"). And the same is true for plaintiffs who might be properly before the Court but who **did not** originally name Bain as a defendant in their original complaint, and who now name Bain as a defendant in this Complaint (i.e., all plaintiffs but those named in *Flick*, 2:25-cv-00232 (E.D. Cal.)).  The claims brought by all plaintiffs except for the *Flick* plaintiffs should be dismissed under Rule 12(b)(5).

F. Supp. 3d 1377, 1379–80 (J.P.M.L. 2020). Accordingly, Plaintiffs must demonstrate that personal jurisdiction exists in **all transferor courts**. *In re TelexFree*, 357 F. Supp. 3d at 79–80.

Track 1 of this MDL includes individual user putative class actions transferred from California, Connecticut, Illinois, Michigan, Minnesota, Missouri, New York, and North Carolina. (Dkts. 1, 2, 65, 142). The Complaint makes only conclusory allegations that Bain is subject to personal jurisdiction in California. (Compl. ¶ 46). Plaintiffs make no allegations whatsoever that Bain is subject to personal jurisdiction in the remaining transferor states (Connecticut, Illinois, Michigan, Minnesota, Missouri, New York, and North Carolina), nor any allegations that would support personal jurisdiction in the states from which the 51 purportedly new plaintiff subgroups hail. The three transferred actions that name Bain as a defendant likewise make only conclusory allegations (or no allegations at all) that Bain is subject to personal jurisdiction in those states.[14] The complete lack of allegations that Bain is subject to jurisdiction in Connecticut, Illinois, Michigan, Minnesota, Missouri, New York, and North Carolina warrants dismissal of all transferred actions filed in those states for lack of personal jurisdiction.

Plaintiffs' threadbare allegations of Bain's contacts with California likewise fail to meet their burden to establish personal jurisdiction. California's long-arm statute extends to the limits of Due Process under the United States Constitution. Cal. Civ. Proc. Code § 410.10. To satisfy due process, then, Plaintiffs must

---

[14] *Flick* v. *PowerSchool Holdings, Inc.*, No. 2:25-cv-00232, Dkt. 1 ¶¶ 28–29 (E.D. Cal. Jan. 17, 2025) (alleging only that PowerSchool's principal place of business is located in the Eastern District of California, with no reference to Bain); *Cabrera* v. *PowerSchool Holdings, Inc.*, No. 2:25-cv-02026, Dkt. 1 ¶ 12 (D.N.J. Mar. 24, 2025) (alleging that Bain is subject to Personal Jurisdiction in New Jersey because, "upon the acquisition of PowerSchool in 2024, [Bain] inherited PowerSchool's assets and liabilities"); *J.R.* v. *PowerSchool Holdings, Inc.*, No. 3:25-cv-00932, Dkt. 1 ¶¶ 30–32 (S.D. Cal. Apr. 18, 2025) (alleging only that PowerSchool is subject to personal jurisdiction in California, with no reference to Bain).

- 15 -

demonstrate that Bain has sufficient minimum contacts with California such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, 592 U.S. 351, 358 (2021) (quoting *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316–17 (1945)).

***General Jurisdiction***.  General jurisdiction typically exists in a corporate defendant's principal place of business or state of incorporation.  *Daimler AG* v. *Bauman*, 571 U.S. 117, 137 (2014).  Contacts via an owned entity are not enough under *Daimler*; rather, the defendant itself must be fundamentally "at home" in the forum.  *Id.* at 137–38.  Plaintiffs have failed to allege that Bain is subject to general jurisdiction in California or any of the other eight transferor states.  As alleged, Bain is incorporated in Delaware with its principal place of business in Massachusetts, (Compl. ¶ 37), and is therefore not fundamentally "at home" in California (or any of the other states from which Track 1 actions were transferred).

Plaintiffs allege that general jurisdiction "arises from Bain's continuous and systematic contacts with California" due to its alleged control over PowerSchool. (Compl. ¶ 46).  But PowerSchool's jurisdictional connection to California cannot be imputed to Bain, because, for the reasons set forth below, PowerSchool is not an alter ego or agent of Bain.  *See infra* Section III; *see also Ranza* v. *Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) ("The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction.").  This Court therefore lacks general jurisdiction over Bain.

***Specific Jurisdiction***.  Specific jurisdiction exists where (1) a defendant has purposefully availed itself of the forum or purposefully directed activities toward the forum, (2) the claim arises from a defendant's in-forum acts, and (3) the exercise of jurisdiction would be reasonable.  *See Schwarzenegger,* 374 F.3d at 802.  Plaintiffs

- 16 -

bear, and have failed to meet, the burden of establishing the first two elements. *See Matter of Star & Crescent Boat Co., Inc.*, 549 F. Supp. 3d 1145, 1170 (S.D. Cal. 2021) (Benitez, J.) (finding no personal jurisdiction where plaintiff "failed to carry its burden" to establish purposeful availment and that the claims alleged arose from in-forum acts). Even if Plaintiffs could meet their burden, the exercise of jurisdiction over Bain would not be reasonable.

*First*, the Complaint fails to allege that Bain purposefully availed itself of California's benefits and protections or directed any actions toward California. The Complaint makes only a single conclusory allegation that Bain acquired and "maintains control over" PowerSchool and is thus "responsible for many of the critical decisions that gave rise to this action." (Compl. ¶ 46). But the existence of an investment firm/portfolio company relationship, standing alone, is insufficient to establish the requisite contacts to justify the exercise of specific personal jurisdiction. *See Williams* v. *Yamaha Motor Co.,* 851 F.3d 1015, 1022–23 (9th Cir. 2017) (finding no specific jurisdiction based on activities of local subsidiary). Plaintiffs must establish specific "suit-related conduct" by Bain that "create[s] a substantial connection to the forum." *Medimpact Healthcare Sys., Inc.* v. *IQVIA Holdings Inc.*, 2020 WL 1433327, at *5 (S.D. Cal. Mar. 24, 2020). The Complaint is devoid of any specific allegations that Bain "expressly aimed its activities at California." *Rochfort* v. *EF Inst. for Cultural Exch., Inc.*, 2020 WL 12833951, at *5 (S.D. Cal. Sept. 8, 2020). And PowerSchool's California contacts cannot be imputed to Bain, because, for the reasons set forth below, Plaintiffs failed to sufficiently allege that PowerSchool is an alter ego or agent of Bain. *See infra* Section III; *see also Ocampo* v. *United States*, 2023 WL 6305801, at *6 (S.D. Cal. Sept. 27, 2023). Accordingly, Plaintiffs have failed to satisfy their burden as to the first prong.

*Second*, the Complaint also fails to allege that Plaintiffs' claims arise out of Bain's alleged contacts with California. Because Plaintiffs have failed to make any

- 17 -

non-conclusory allegations that Bain had direct contacts with California, Plaintiffs cannot (and do not) make any allegations that the claims within the Complaint arise out of Bain's non-existent contacts with California. *See Moser* v. *Lifewatch Inc.*, 2020 WL 1849664, at *8 (S.D. Cal. Apr. 13, 2020) (finding no specific personal jurisdiction where the only supporting allegations were conclusory). Further, Plaintiffs' claims do not arise out of or relate to Bain's decision to invest in PowerSchool. Instead, Plaintiffs claims arise out of ***PowerSchool's*** alleged "failure[s] to safeguard" Plaintiffs data, many of which occurred prior to Bain's investment in PowerSchool. (Compl. ¶ 1). For example, Plaintiffs rely on allegations that PowerSchool "did not notice" that an unknown individual accessed Plaintiffs' data in August and September 2024, at least a month before Bain finalized its investment in PowerSchool in October 2024. (Compl. ¶¶ 134–36, 138). Plaintiffs also rely on allegations that PowerSchool failed to implement a variety of security protocols like multi-factor authentication, despite being aware that multi-factor authentication "has been an industry standard" since at least 2014, which is more than 10 years before Plaintiffs allege that Bain invested in PowerSchool. (Compl. ¶¶ 186–93). Plaintiffs have thus failed to satisfy their burden as to the second prong. *See Walsh* v. *LG Chem Ltd.*, 834 F. App'x 310, 312 (9th Cir. 2020) (finding no personal jurisdiction where complaint failed to allege a "direct nexus" between alleged injuries and alleged contacts).

*Third*, the Court need not even reach the final prong because Plaintiffs plainly fail to allege, and indeed cannot allege, that their claims arise out of or relate to Bain's purported contacts with California. *See Matter of Star & Crescent Boat Co., Inc.*, 549 F. Supp. 3d at 1170 (declining to analyze third prong after finding that plaintiffs failed to carry their burden on first two prongs). Even so, exercising jurisdiction over Bain in California would be unreasonable. Courts in the Ninth Circuit consider seven factors in evaluating whether the exercise of jurisdiction over

25-md-3149-BEN-MSB
BAIN'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS COMPLAINT

a nonresident defendant comports with "fair play and substantial justice":

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp.* v. *Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993).

Each of these seven factors weighs against exercising personal jurisdiction over Bain. As discussed above, the Complaint does not allege that Bain purposefully injected itself into or directed its actions toward California. The burden on Bain in adjudicating this dispute in California is high, while California's interest in exercising jurisdiction over an investment firm not domiciled or incorporated in California for the acts of its portfolio company is comparatively low, especially absent any specific allegation that the investment firm's actions were directed to California. The exercise of personal jurisdiction over Bain in California also would not promote the efficient judicial resolution of this dispute, especially in light of the lack of allegations that jurisdiction is proper in the other transferor courts. Finally, Plaintiffs' interest in obtaining convenient and effective relief is satisfied by their claims against PowerSchool.

In sum, Plaintiffs' "'bare bones' assertions of minimum contacts" in California are not sufficient to satisfy "plaintiff's pleading burden." *See Palomar Health.*, 2021 WL 4035005, at *2 (quoting *Swartz* v. *KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)). The Court should therefore dismiss Bain as a defendant in this MDL for lack of personal jurisdiction.

Finally, because the Complaint's allegations of personal jurisdiction are entirely conclusory, and Bain's arguments do not raise any factual disputes with respect to those allegations, jurisdictional discovery is not warranted. *Reynolds* v. *Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1010 (N.D. Cal. 2020) ("[B]are

- 19 -

allegations are insufficient to justify jurisdictional discovery," based on "little more than a hunch that it might yield jurisdictionally relevant facts." (citations omitted)).

## III.   PLAINTIFFS FAIL TO STATE ANY CLAIM AGAINST BAIN ON ALTER EGO OR AGENCY THEORIES OF VICARIOUS LIABILITY

Even if subject matter or personal jurisdiction were properly alleged, which they are not, each and every one of the 79 counts brought by Plaintiffs must be dismissed for failure to adequately allege that Bain is vicariously liable for PowerSchool's alleged conduct under either the alter ego or agency doctrines.

As to their alter ego theory, Plaintiffs fail to plead sufficient facts to plausibly allege that (1) Bain controlled PowerSchool's day-to-day operations such that the separate corporate personalities of both companies ceased to exist, and (2) it would be inequitable for this Court to decline the "extreme remedy" of alter ego liability. *See Sonora Diamond Corp.*, 83 Cal. App. at 538–39.  To the extent Plaintiffs seek to hold Bain liable under an agency theory of liability, Plaintiffs similarly fail to allege the type of "pervasive and continual" control necessary to demonstrate that PowerSchool acted as Bain's agent.  *See Ocampo*, 2023 WL 6305801, at *12 (quoting *Sonora Diamond Corp.*, 83 Cal. App. at 541).

A persistent defect pervades Plaintiffs' allegations on vicarious liability: nearly all alleged acts purportedly showing Bain's control of PowerSchool predate October 1, 2024, when Bain is alleged to have acquired a stake in PowerSchool. Bain could not have plausibly controlled PowerSchool prior to that date. *See Hickey*, 322 F.3d at 1130 (holding that an ownership relationship must exist for alter ego liability); *see also Ross Holding & Mgmt. Co.*, 2010 WL 1838608, at *13 (explaining that veil piercing allows plaintiffs to reach the assets of an ***owner***).  Beyond that fatal defect, Plaintiffs' allegations do not demonstrate the level of pervasive control required to support claims of alter ego or agency liability either before or after Bain acquired an interest in PowerSchool.  Tellingly, Bain could not locate ***any*** case in

- 20 -

which a private investment firm was held liable on an alter ego theory for a cybersecurity incident at one of its portfolio companies. To the contrary, courts faced with similar or even more robust allegations of control have declined to allow these types of claims to proceed. *See*, *e.g.*, *In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *3–5 (D.N.J. Feb. 26, 2025) (concluding that plaintiffs failed to state a claim that a wholly owned subsidiary was an alter ego or agent of a parent company where the subsidiary was the victim of a cyberattack), *appeal pending*, No. 25-1626 (3d Cir. April 2, 2025).[15]

### A.     Plaintiffs Fail to Adequately Allege Alter Ego Liability

The alter ego doctrine permits a court to disregard the bedrock principle of corporate separateness only "where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation." *Sonora Diamond Corp.*, 83 Cal. App. 4th at 538. "Alter ego is an extreme remedy, sparingly used." *Id.* at 529; *accord Price* v. *Synapse Grp., Inc.*, 2017 WL 3131700, at *11 (S.D. Cal. July 24, 2017).[16] Consistent with that bedrock principle, courts have emphasized that the corporate form will only be disregarded

---

[15]   If the Court were to conclude that Plaintiffs have adequately pled PowerSchool was an alter ego or agent of Bain, the Complaint fails to state a claim against Bain for the same reasons set forth in PowerSchool's Motion to Dismiss. (*See* Dkt. 285). Bain adopts those arguments in full.

[16]   Courts typically apply the alter ego law of the jurisdiction where an action is filed or the law of the jurisdiction where the defendant is incorporated. *See generally* Gregory Scott Crespi, *Choice of Law in Veil-Piercing Litigation: Why Courts Should Discard the Internal Affairs Rule and Embrace General Choice-of-Law Principles*, 64 N.Y.U. Ann. Surv. Am. L. 85, 90–91 (2008) (explaining that most jurisdictions apply "the law of the state of incorporation" or "local piercing law"). Accordingly, Bain cites to California law because the Complaint brings all claims "under California law," (Compl. at 1), and to Delaware law, where Bain is incorporated (*see* Compl. ¶ 37). In addition, the alter ego doctrine is materially similar across all jurisdictions. *See* 114 Am. Jur. Proof of Facts 3d 403 § 6 (originally published in 2010) (July 2025) ("In spite of the various ways different jurisdictions define their piercing test, they essentially require proof of (1) unity of interest between the individual and entity and (2) an inequitable result would follow as a consequence.").

25-md-3149-BEN-MSB
BAIN'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS COMPLAINT

in "exceptional" cases. *Sears, Roebuck & Co.* v. *Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990); *Cummings* v. *Worktap, Inc.*, 2019 WL 4221652, at *5 (N.D. Cal. Sept. 4, 2019) (explaining that alter ego liability is "the rare exception, applied in the case of fraud or certain other exceptional circumstances"). Thus, a "heavy burden rests on the shoulders of the party seeking to pierce the corporate veil." *Santa Clarita Org. for Planning & Env't* v. *Castaic Lake Water Agency*, 1 Cal. App. 5th 1084, 1105 (2016); *PR Acquisitions, LLC* v. *Midland Funding LLC*, 2018 WL 2041521, at *15 (Del. Ch. Apr. 30, 2018).

To establish alter ego liability, a plaintiff must allege: (1) "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist," and (2) "an inequitable result if the acts in question are treated as those of the corporation alone." *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539; *see also PXP Producing Co. LLC* v. *MitEnergy Upstream LLC*, 2025 WL 1779457, at *9 (Del. Ch. June 26, 2025) (noting that the "central inquiry is whether a defendant abused or manipulated the corporate form," and requiring a plaintiff to plead "an overall element of injustice or unfairness" (internal quotation marks and citations omitted)). The level of control required to pierce the corporate veil is an exceptionally high bar to meet; a plaintiff must plead "manipulative control" such that "a parent dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Gerritsen*, 116 F. Supp. 3d at 1138 (citation, internal quotation marks, and alterations omitted); *see also Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P.* v. *Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) ("The degree of control required to pierce the veil is 'exclusive domination and control . . . to the point that [the owned entity] no longer ha[s] legal or independent significance of [its] own.'" (citation omitted)).

- 22 -

The allegations in the Complaint plainly fail to clear that high bar. The vast majority of the allegations regarding Bain's supposed control of PowerSchool occurred **before** Bain allegedly acquired an ownership interest in PowerSchool on October 1, 2024. Even ignoring that fundamental issue, the level of control that Plaintiffs assert falls far short, as a matter of law, of the standard required to establish that the alter ego doctrine applies; Plaintiffs fail to plead sufficient facts suggesting that Bain had "manipulative" direction over "every facet" of PowerSchool. *Gerritsen*, 116 F. Supp. 3d at 1138. The absence of specific factual allegations showing pervasive control is even more stark for the period after October 1, 2024—namely, a public statement by PowerSchool about working cooperatively with Bain, and Bain's selection of PowerSchool's board of directors, which is a "normal attribute of ownership." (Compl. ¶¶ 91–93); s*ee Sonora Diamond Corp.*, 83 Cal. App. 4th at 548.

As a matter of law, Plaintiffs fail to sufficiently allege vicarious liability. Bain could not locate **any** case in which a private investment firm was held liable for a cybersecurity incident at one its portfolio companies. That is for good reason. Corporate separateness—the "recognition that the corporate personalities remain distinct"—has long been a core principle underlying corporate law. *United States* v. *Bestfoods*, 524 U.S. 51, 69 (1998). The Complaint's conclusory allegations, speculations, and pleading deficiencies do not provide a sufficient basis to plausibly allege that Bain had the type of manipulative, day-to-day control over PowerSchool that would permit the bedrock principle of corporate separateness to be set aside. Indeed, if the Court were to adopt Plaintiffs novel and expansive alter ego theory—that a private investment fund can be held liable under the alter ego doctrine based on ordinary, normal course investment activities—it would have a severe chilling effect on private investment across the country.

### 1.  Plaintiffs Fail to Allege a Unity of Interest and Ownership *Before* Bain Acquired an Equity Interest in PowerSchool

An alter ego relationship can only exist where one corporation has a formal or equitable ownership relationship with another corporation.  *See Hickey*, 322 F.3d at 1130 (noting that the "clear rule of law established by the California courts [is] that [one] *must* own at least part of a corporation for an alter ego relationship to exist" (emphasis added)); *see also Ross Holding & Mgmt. Co.*, 2010 WL 1838608, at *13 (explaining that piercing the corporate veil allows a plaintiff "to ignore the corporate boundaries between an *owner* and its controlled corporate entity" (emphasis added)).  That widely accepted, common-sense principle defeats Plaintiffs' efforts to cobble together allegations of events predating Bain's alleged acquisition of equity in PowerSchool.

As a matter of law, Bain could not have plausibly controlled PowerSchool before it had any actual ownership relationship with PowerSchool and while it was an opposing party negotiating an arm's-length deal to purchase PowerSchool.[17]  *See Gerritsen*, 116 F. Supp. 3d at 1137 (listing as one of the factors considered for alter ego liability the "*failure* to maintain arm's length relationships among related entities" (emphasis added)).  It cannot be plausibly alleged that Bain and PowerSchool, who were counterparties to a negotiation, (Compl. ¶ 80), failed to "maintain an arm's length relationship."  *See Gerritsen*, 116 F. Supp. 3d at 1137.  Indeed, Bain was unable to identify a single case in which a court found an alter ego

---

[17]  Plaintiffs baldly assert that Bain "ratified and conditioned its offer" to purchase PowerSchool on the implementation of layoffs and offshoring. (Compl. ¶ 80).  But the merger agreement, incorporated by reference in the Complaint, includes no such provision. *See* Agreement and Plan of Merger, *supra* note 7. (*See also* Compl. ¶ 85 n. 46).  Rule 8 requires "factual allegations that plausibly [give] rise to an entitlement to relief," not "legal conclusions," and Plaintiffs' conclusory assertion does not identify any "factual detail" that would make their allegations plausible. *See Whitaker* v. *Tesla Motors, Inc.*, 985 F.3d 1173, 1176–77 (9th Cir. 2021) (citations omitted).

25-md-3149-BEN-MSB
BAIN'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS COMPLAINT

relationship based on allegations of control that predated any formal ownership relationship and where the two companies were on opposite sides of an arm's-length negotiation.

According to Plaintiffs, Bain's investment in PowerSchool was effective as of October 1, 2024. (Compl. ¶¶ 37, 91). In the period leading up to that date, Bain and PowerSchool's relationship was one of opposing parties negotiating an arm's-length deal. (Compl. ¶¶ 74, 80). But almost every allegation that Bain controlled PowerSchool's day-to-day operations predates October 1, 2024. The Court should therefore disregard those allegations for purposes of the alter ego analysis, because veil-piercing is only appropriate to reach assets of an owner. That is because before October 1, 2024, Bain did not own or have any formal control over PowerSchool, and so Bain could not have used the corporate form to shield itself from liability prior to that date. (Compl. ¶ 91 (alleging Bain "officially took control" of PowerSchool on October 1, 2024)).

Even if the Court were to consider Plaintiffs' allegations that PowerSchool was an alter ego of Bain before it owned any equity in PowerSchool, those allegations are plainly insufficient to establish alter ego liability as a matter of law. "In evaluating the two requirements of the alter ego doctrine, courts look to the totality of the circumstances bearing on the relationship between the parent and its subsidiary." *Santa Clarita*, 1 Cal. App. 5th at 1105; *StrikeForce Techs., Inc.* v. *PhoneFactor, Inc.*, 2013 WL 6002850, at *5 (D. Del. Nov. 13, 2013), *as amended* (Nov. 14, 2013). None of the circumstances that courts typically look to are alleged in the Complaint. *See*, *e.g.*, *Santa Clarita*, 1 Cal. App. 5th at 1105–07 (setting forth non-exhaustive factors and finding no alter ego liability where parent company owed 100% of subsidiary and appointed three of five board members); *Verdantus Advisors, LLC* v. *Parker Infrastructure Partners, LLC*, 2022 WL 611274, at *2 (Del. Ch. Mar. 2, 2022).

The Complaint makes no allegations that, prior to October 1, 2024, Bain and PowerSchool comingled funds or assets, shared offices or employees, shared directors or officers, or that Bain diverted any funds away from PowerSchool, all of which are typical indicia of the day-to-day control required for alter ego liability (nor can they). *See Wechsler* v. *Macke Int'l Trade Inc.*, 327 F. Supp. 2d 1139, 1144 (C.D. Cal. 2004) (setting forth factors and determining plaintiff failed to allege alter ego liability); *PXP Producing Co.*, 2025 WL 1779457, at *9–10 (same). Plaintiffs only allege in conclusory fashion that "[t]hroughout the events at issue, . . . [r]esources [were] cross-applied and management decisions for PowerSchool are made by and through the management of Bain." (Compl. ¶ 38). Such conclusory allegations of domination and resource sharing are plainly insufficient. *See Est. of Ricardez* v. *Cnty. of Ventura*, 2020 WL 3891460, at *4 (C.D. Cal. June 24, 2020); *DG BF, LLC* v. *Ray*, 2021 WL 776742, at *27 (Del. Ch. Mar. 1, 2021) (holding that Delaware public policy does not "lightly disregard" corporate separateness, so "a plaintiff must do more than plead that one corporation is the alter ego of another in conclusory fashion in order for the Court to disregard their separate legal existence").

Instead of making specific allegations, Plaintiffs offer vague assertions that Bain approved some of PowerSchool's business decisions prior to October 1, 2024, that, in turn, allegedly contributed to the cybersecurity incident. *See Smith* v. *San Diego State Univ.*, 2005 WL 8173129, at *4 (S.D. Cal. July 26, 2005) (Benitez, J.) ("[V]ague and conclusory allegations will not withstand a motion to dismiss."). The Complaint alleges that Bain's purported control of PowerSchool somehow began as early as 2022 when Bain first approached PowerSchool about a potential transaction, and continued through the signing of the agreement for the transaction in June 2024. (Compl. ¶¶ 14, 71–85). The Complaint also alleges that ***PowerSchool*** announced it planned to expand its non-U.S. personnel headcount (in January 2024), that ***PowerSchool's*** management forecasts accounted for that non-U.S. growth (in March

- 26 -

25-md-3149-BEN-MSB
BAIN'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS COMPLAINT

2024), and that **_PowerSchool_** announced a five percent reduction in force (in August 2024).  (Compl. ¶¶ 71–80, 90, 101–08).  The Complaint does not allege specifically how Bain directed (or could have directed) PowerSchool to make these announcements, projections, or personnel decisions.

Vague allegations that Bain "consulted" on or "ratified" those decisions are insufficient to plead the type of "manipulative control" necessary for alter ego liability.  *See Gerritsen*, 116 F. Supp. 3d at 1142 (finding no alter ego liability when allegations did not support an inference that the parent company controlled the subsidiary company); *Wenske* v. *Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *6–7 (Del. Ch. Nov. 13, 2018) (determining that vague and conclusory allegations "cannot overcome the presumption of [corporate] separateness").  Plaintiffs' allegations are speculative at best, and PowerSchool's own decisions during its negotiations with Bain do not and cannot support a finding of alter ego liability.  *See Stark* v. *Stall*, 2020 WL 13158003, at *4 (S.D. Cal. Aug. 20, 2020) (dismissing claims that "amount to mere speculation.").

The Complaint's further allegations during the period after the signing of Bain's agreement to purchase a stake in PowerSchool on June 6, 2024, and before closing on October 1, 2024, are similarly lacking.  (Compl. ¶¶ 85–86).  Plaintiffs allege that the agreement "gave Bain *de facto* operational control four months before legal ownership transferred." (Compl. ¶ 86).  But those allegations "are contradicted by documents referred to in the [C]omplaint."  *See Steckman* v. *Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998); *Gonzalez* v. *Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014).  Plaintiffs are correct that the agreement included a standard provision prohibiting any major business changes without approval during the period between signing and closing to prevent the business purchased from being materially different than the business acquired.[18]  But

---

[18]  *See* Agreement and Plan of Merger, *supra* note 7, at 56–57.

- 27 -

that provision does not support an inference of "*de facto* operational control." (Compl. ¶ 86). Nor do Plaintiffs allege that Bain or its affiliates ever exercised their rights under that provision. (*See, e.g.*, Compl. ¶¶ 85–108 (purporting to allege Bain's control between signing and closing)).

To the contrary, the agreement expressly provides "that the restrictions set forth in [the] Agreement are not intended to give [the Bain entities], on the one hand, or [PowerSchool], on the other hand, directly or indirectly, the right to control or direct the business or operations of the other at any time prior to the Effective Time," i.e., the closing date of the transaction on October 1, 2024.[19] Indeed, the agreement makes perfectly clear that PowerSchool retained "complete control and supervision over [its] own business and operations" during the period between signing and closing.[20] Accordingly, Plaintiffs' allegations that Bain "oversaw all major decisions" and directed "further layoffs in August 2024," (Compl. ¶ 103), do not support an inference of control because they are contradicted by the plain provisions of the agreement. *See Gonzalez*, 759 F.3d at 1115 (affirming the district court's determination that plaintiff failed to state a claim because allegations were "compellingly contradicted by a series of letters he attached to his complaint").

Allegations that a corporate entity had the ability to participate in significant business decisions of an affiliate (whether through a veto right or more active involvement) are insufficient to pierce the corporate veil when there are no allegations of day-to-day control. *See Ranza*, 793 F.3d at 1075 (concluding that the affiliate, though "active in macromanagement issues," was not an alter ego); *Hernandez* v. *Mimi's Rock Corp.*, 632 F. Supp. 3d 1052, 1059 (N.D. Cal. 2022) (collecting decisions declining to find "pervasive control" even when an affiliate was involved in certain business decisions); *SARN Energy LLC* v. *Tatra Defence*

---

[19] *See* Agreement and Plan of Merger, *supra* note 7, at 64.
[20] *See id.*

- 28 -

*Vehicle a.s.*, 2018 WL 5794599, at *6 (Del. Super. Ct. Nov. 5, 2018) ("Mere dominion and control of the parent over the subsidiary will not support alter ego liability."). Thus, as a matter of law, even Bain's exercise of any of the rights Plaintiffs allege it had pursuant to the agreement would not be sufficient to allege that Bain controlled PowerSchool's day-to-day operations as required under the alter ego doctrine.

**2.    Plaintiffs Fail to Allege a Unity of Interest and Ownership *After* Bain Acquired an Equity Interest in PowerSchool**

The minimal factual allegations concerning the period after Bain allegedly acquired an ownership interest in PowerSchool on October 1, 2024—months ***after*** the alleged data breach purportedly began—also do not support Plaintiffs' contention that PowerSchool was an alter ego of Bain. Plaintiffs make only minimal non-conclusory allegations that after Bain's investment in PowerSchool on October 1, 2024, Bain replaced PowerSchool's Board of Directors and that PowerSchool's CEO said he planned on working closely with Bain going forward.[21] (Compl. ¶¶ 91–93). These allegations are plainly insufficient to establish that Bain had the pervasive, day-to-day control of PowerSchool necessary to allege alter ego liability. Even "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Ranza*, 793 F.3d at 1073; *see Corcoran* v. *CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016). And a business "may be directly involved in the financing and macro-management" of affiliates without becoming an alter ego. *ViaSat, Inc.* v. *Space Sys./Loral, Inc.*, 2012 WL 12844738, at *5 (S.D. Cal. July 30, 2012); *PXP Producing Co.*, 2025 WL 1779457, at *11.

---

[21] The Complaint vaguely alleges that debt from the acquisition, which was collateralized by PowerSchool's assets, and the interest owed, forced PowerSchool to cut key cybersecurity and IT positions. (Compl. ¶¶ 109–12). But there are no allegations that PowerSchool initiated any layoffs after October 1, 2024.

- 29 -

The pervasive control required to establish alter ego liability is not demonstrated "simply because an active parent corporation is involved directly in decision-making about its subsidiaries' holdings, where the corporations observe all of the corporate formalities necessary to maintain corporate separateness," as is the case here. *See Martifer-Silverado Fund I, LLC* v. *Zhongli Sci. & Tech. Grp. Co.*, 2020 WL 1322926, at \*5 (N.D. Cal. Mar. 20, 2020) (alterations and internal quotation marks omitted); *see also Verdantus Advisors, LLC*, 2022 WL 611274, at \*2 (full ownership and lack of corporate formalities "is not the exceptionally rare stuff of veil-piercing"). Even when the allegations predating October 1, 2024 are taken together with the allegations after that date, the Complaint's allegations of control are far too vague, speculative, and conclusory to warrant piercing the corporate veil as a matter of law.

### 3. Plaintiffs Fail to Allege Any Injustice from Respecting Bain's Separate Corporate Identity

Finally, "Plaintiffs have failed to allege specific bad faith conduct that would make it inequitable to recognize the corporate form." *Est. of Ricardez*, 2020 WL 3891460, at \*5; *ViaSat*, 2012 WL 12844738, at \*5; *PXP Producing Co.*, 2025 WL 1779457, at \*11–12. Plaintiffs make only a single conclusory allegation that "recognition of the technical corporate formalities in this case would cause irremediable injustice and permit Bain . . . to defeat justice and evade responsibility." (Compl. ¶ 39). That allegation is legally insufficient.

Plaintiffs have not alleged that PowerSchool is judgment-proof, nor are there any other equitable reasons alleged to hold Bain liable here. Plaintiffs allege that $3 billion of the $5.6 billion acquisition price was "secured [by] private credit debt," which was "collateralized by PowerSchool's assets," and because Bain needed "margin expansion," it "resorted to cost cutting." (Compl. ¶ 88). But allegations that PowerSchool's assets are a collateral for some of the debt that incurred from the

- 30 -

acquisition do not demonstrate that respecting the corporate form would result in fraud or injustice, especially in the absence of other allegations that such debt left PowerSchool undercapitalized or judgment-proof. Indeed, Plaintiffs also allege that PowerSchool's revenue was projected to reach "$2.76 billion in 2034." (Compl. ¶ 77).

Even if Plaintiffs had alleged that PowerSchool was undercapitalized, "undercapitalization alone is not per se sufficient grounds for alter ego liability." *See Lisa McConnell, Inc.* v. *Idearc, Inc.*, 2010 WL 364172, at *8 (S.D. Cal. Jan. 22, 2010); *PXP Producing Co.*, 2025 WL 1779457, at *10 ("Undercapitalization or insolvency alone is not enough to warrant 'piercing of the corporate veil.' Each must be coupled with facts suggesting a deliberate intent to improperly avoid the Company's liabilities or obligations." (citation omitted)). Ultimately, Plaintiffs make no allegations whatsoever that Bain deliberately intended to avoid any liabilities by collateralizing some of the deal debt with PowerSchool's assets.

In sum, the Court should dismiss Bain as a defendant on all counts for failure to state a claim under an alter ego theory of vicarious liability because: (1) the vast majority of Plaintiffs' allegations in support of its alter ego theory predate Bain's ownership of PowerSchool and are legally insufficient; (2) Plaintiffs' allegations of control post-October 1, 2024—months after the alleged breach began—are plainly insufficient to demonstrate the control necessary to pierce the corporate veil; and (3) Plaintiffs' allegations of unfairness are speculative and conclusory at best, and insufficient to state a claim.

### B.      Plaintiffs Fail to Adequately Allege Agency Liability

Plaintiffs likewise fail to state a claim that Bain is vicariously liable under an agency theory. The Complaint asserts only the legal conclusion that "PowerSchool acted as Bain's agent, and was authorized and acted within the scope of authority as dictated by Bain." (Compl. ¶ 40). Such "legal conclusions"—which are wholly

- 31 -

unsupported by other allegations in the Complaint—"do not suffice." *Iqbal*, 556 U.S. at 678.

An agency relationship exists "when [a principal] manifests assent to [an agent] that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Am. Airlines, Inc.* v. *Mawhinney*, 904 F.3d 1114, 1124 (9th Cir. 2018) (citing Restatement (Third) of Agency § 1.01). As with the alter ego doctrine, "[t]he control exercised in a typical parent-subsidiary relationship is insufficient to create an agency relationship." *Van Maanen* v. *Youth With a Mission-Bishop*, 852 F. Supp. 2d 1232, 1249 (E.D. Cal. 2012), *aff'd sub nom. Van Maanen* v. *Univ. of the Nations, Inc.*, 542 F. App'x 581 (9th Cir. 2013). A company's influence must be "so pervasive and continual that the [affiliate] may be considered nothing more than an agent or instrumentality of the [company]." *Sonora Diamond Corp.*, 83 Cal. App. 4th at 541.

As explained in Section III.A, *supra*, the Complaint completely fails to allege the extreme degree of day-to-day control necessary to establish that PowerSchool was an agent of Bain. Nearly all of the allegations that Bain controlled PowerSchool predate Bain's ownership interest in PowerSchool, and even after Bain acquired a 51% stake in PowerSchool, the Complaint does not allege that Bain exercised anything beyond the high-level oversight inherent to ownership. Nor does the Complaint allege any "manifestation of consent by [Bain] that [PowerSchool] shall act on [its] behalf." *See Cal-Star Prod., Inc* v. *Fencepost Prods., Inc.*, 2019 WL 13038581, at *3 (C.D. Cal. Apr. 18, 2019) (quoting *Nelson* v. *Serworld*, 687 F.2d 278, 282 (9th Cir. 1982)). And nothing in the agreement granted PowerSchool the power to act on Bain's behalf.[22] Accordingly, the Complaint has failed to allege that Bain is vicariously liable for PowerSchool's actions through an agency relationship.

[22] *See* Agreement and Plan of Merger, *supra* note 7, at 64.

- 32 -

## IV. PLAINTIFFS FAIL TO STATE ANY CLAIM ON A DIRECT LIABILITY THEORY

In response to Bain's request for clarification of their claims, Plaintiffs' counsel stated that the Complaint brings only seven counts against Bain on a theory of direct liability. *See* Ex. C.  The Direct Liability Counts (Counts I, III, VI, IX, XIII, XVI, and XVII) are utterly lacking in specific supporting allegations directed at Bain and should be dismissed for failure to state a claim.

*First*, Plaintiffs engage in improper group pleading by attempting to incorporate an unwritten allegation against Bain in every instance where Plaintiffs direct an allegation against only PowerSchool, making it entirely unclear which defendant engaged in the conduct alleged.  (Compl. ¶ 41).  And unlike the School District Putative Class Action Complaint, which includes a tortious interference claim that could only apply to Bain, (Dkt. 263, ¶¶ 159–67), the allegations specific to the Direct Liability Counts are directed at PowerSchool's conduct—not Bain's. And Plaintiffs may not group PowerSchool and Bain together having failed to sufficiently allege that PowerSchool was Bain's agent or alter ego.  *See supra* Section III.

*Second*, focusing only on those allegations that name Bain, Plaintiffs fail to sufficiently allege conduct supporting elements of each Direct Liability Count.  And what few allegations Plaintiffs do make are conclusory and speculative at best.

The Court should dismiss the Direct Liability Counts for improper group pleading under Rule 8 and failure to state a claim under Rule 12(b)(6).[23]

### A. Plaintiffs Engage in Improper Group Pleading

With no basis for vicarious liability, all Direct Liability Counts must be dismissed because the allegations supporting the claims do not describe actionable

---

[23] For the reasons set forth *supra* Section III, Plaintiffs have also failed to allege that Bain is vicariously liable under the alter ego or agency doctrines for the Direct Liability Counts.

- 33 -

misconduct by Bain.  Under Rule 8, allegations must be pled with sufficient specificity to adequately notify a defendant of the claims brought against it.  Failure to comply with the requirements of Rule 8 warrants dismissal of the corresponding claims.  *Horton* v. *NeoStrata Co. Inc.*, 2016 WL 11622008, at *3–4 (S.D. Cal. Nov. 22, 2016).   All claims brought against Bain must be dismissed because the Complaint utterly fails to satisfy the "minimal notice pleading requirements" of Rule 8.  *See Bustamante* v. *Bank of America, N.A.*, 2012 WL 13175878, at *1 (S.D. Cal. May 21, 2012).

Plaintiffs improperly incorporate Bain into *every* allegation brought against PowerSchool, alleging that "for all purposes hereafter and except where otherwise specified, when Plaintiffs allege 'PowerSchool' as the actor or responsible party, they are alleging the participation of all three Defendants, [including] Bain Capital, L.P."   (Compl. ¶ 41).   To be clear, Plaintiffs "may not group [Bain] with [PowerSchool] given that, as established above, Plaintiff[s] ha[ve] failed to establish alter ego [or agency] liability."  *See Horton*, 2016 WL 11622008, at *3–4.

The Complaint is also replete with allegations brought against "Defendants" that could only be directed at PowerSchool, including in the allegations specific to each of the Direct Liability Counts.  For example:

- "***PowerSchool*** repeatedly represented through its privacy policies, practices, and postings on its website that it actively took steps to protect the [personally identifiable information ("PII")] in its care. . . . Through these representations, ***Defendants*** promised that they would take meaningful steps to safeguard their users' PII, consistent with Defendants' duty to maintain the security of Plaintiffs' and Class members' PII." (Compl. ¶¶ 7–8 (emphases added));

- Count I – Negligence: Despite making ***no*** allegations that Bain had any special relationship with Plaintiffs, alleging that "***Defendants***' duty of care

- 34 -

. . . arose because of the special relationship that existed . . . [after] *PowerSchool* formed a special relationship" with Plaintiffs. (Compl. ¶¶ 770, 781 (emphasis added));

- Count III – Unjust Enrichment: Despite making *no* allegations that Bain received any benefit directly from Plaintiffs or that Bain sold any products or services to any school district or individual user, alleging that Plaintiffs "conferred benefits on *Defendants* by utilizing their products and services sold to the school districts for valuable consideration and by providing Defendants with their valuable PII." (Compl. ¶¶ 829–30 (emphasis added));

- Count VI – Declaratory Judgment Act: Despite making *no* allegations that Bain possessed Plaintiffs' data, alleging that "*Defendants* continue to retain [Plaintiffs' data], even when it is no longer needed for any transactions with Plaintiffs." (Compl. ¶¶ 892 (emphasis added));

- Count IX – Negligent Supervision and Training: Alleging that because "*PowerSchool* owed non-delegable duties to Plaintiffs" and "*Movate*, acting as PowerSchool's agent, owed non-delegable duties to Plaintiffs," "*Defendants* had a duty to prevent foreseeable harm." (Compl. ¶¶ 911, 913–14 (emphasis added));

- Count XIII – California Consumer Privacy Act: Despite making *no* allegations that Bain possessed Plaintiffs' data, alleging that "*Defendants'* failure to monitor and maintain *its systems* to identify and account for any suspicious activity thus permitted unauthorized actors to access California Subclass members' PII." (Compl. ¶ 976 (emphasis added));

- Count XVI – California Unfair Competition Law: Despite making *no* allegations that Bain made any misrepresentations about PowerSchool's cybersecurity practices or that Plaintiffs purchased any goods or services

- 35 -

directly from Bain, alleging that "***Defendants' representations and omissions*** were material because they were likely to deceive Plaintiffs and Class Members about the adequacy of ***Defendants' data security*** and ability to protect" Plaintiffs' PII," that purported Plaintiffs "***would not have paid Defendants for goods and services*** or would have paid less for such goods and services but for Defendants' violations," and that "[b]y deceptively ***storing, collecting, and disclosing*** their PII, ***Defendants*** have taken money or property from Plaintiffs." (Compl. ¶¶ 1026–27, 1029 (emphasis added));

- Count XVII – Aiding and Abetting: Alleging that "PowerSchool's violations . . . were prepared, directed, and emanated from ***Defendants' California headquarters*** and from where ***PowerSchool*** maintains its principal corporate offices in California," (Compl. ¶ 1022 (emphasis added)), despite alleging that Bain is headquartered in Massachusetts, (Compl. ¶ 37).

Nowhere do Plaintiffs make any allegations that Bain collected, stored, or shared Plaintiffs' data, or otherwise did any business directly with Plaintiffs. To the contrary, the Complaint makes numerous allegations that PowerSchool (not Bain) collected, stored, and shared Plaintiffs' data. (*E.g.*, Compl. ¶¶ 6, 54–58, 388, 454). Count I (Negligence) and Count XIII (Violation of California's Consumer Privacy Act) fail for that reason alone. Nor do Plaintiffs make any allegation that Bain issued statements concerning PowerSchool's privacy and information security at all, much less engaged in any misrepresentation, as required under Count XVI (Violation of California's Unfair Competition Law) and Count XVII (Aiding and Abetting). Again, to the contrary, Plaintiffs allege in a general fashion that only PowerSchool made misrepresentations to Plaintiffs. (Compl. ¶¶ 6, 59–65). Accordingly, the Court should reject Plaintiffs' improper use of "Defendants" or "PowerSchool" where

- 36 -

Plaintiffs clearly allege conduct by only PowerSchool. Further, having failed to adequately allege that PowerSchool was an alter ego or agent of Bain, Plaintiffs should not be permitted to include an unwritten allegation against Bain wherever an allegation is brought against "PowerSchool." *See Horton*, 2016 WL 11622008, at *3–4; (Compl. ¶ 41).

As a result of Plaintiffs' impermissible incorporation of Bain into all allegations brought against "PowerSchool" and "Defendants," Bain is left guessing which conduct is alleged against it. Such "cursory references to the individual defendants and [ ] allegations against all defendants generally fail to give [ ] individual defendants notice of their . . . acts that caused harm to Plaintiff[s]." *Better Homes Realty, Inc.* v. *Watmore*, 2017 WL 1400065, at *4 (S.D. Cal. Apr. 18, 2017) (Benitez, J.). In other words, "[l]umping multiple defendants with broad allegations does not provide" the notice required by Rule 8 and "is prohibited." *Doe* v. *Camp Pendleton & Quantico Hous. LLC*, 2020 WL 1890576, at *7 (S.D. Cal. Apr. 16, 2020) (collecting cases). Accordingly, each and every Direct Liability Count must be dismissed on the basis of improper group pleading under Rule 8.[24] *See Horton*, 2016 WL 11622008, at *3–4.

At the very least, the Court should decline to interpret allegations brought against "PowerSchool" or "Defendants" as also including an unwritten allegation of the same brought against Bain. Given Plaintiffs' improper group pleading, Bain proceeds to address only the allegations brought expressly against Bain, which are few and conclusory.[25]

---

[24] Plaintiffs engage in improper group pleading with respect to every count, whether brought under a vicarious or direct theory of liability. The Court should also dismiss the remaining 72 counts for failure to provide adequate notice under Rule 8.

[25] Nearly all allegations brought against Bain concern Bain's alleged control of PowerSchool, *see supra* Section III, and not Bain's alleged direct involvement with the cybersecurity incident.

- 37 -

**B.    Plaintiffs Fail to State a Claim as to the Direct Liability Counts**

Plaintiffs have made clear that the Complaint as written alleges only seven of the 72 counts (the Direct Liability Counts) against Bain under a direct liability theory.  *See* Ex. C.  For the reasons set forth *supra* note 11, Counts XIII, XVI, and XVII should be dismissed as to Bain because Plaintiffs engage in improper shotgun pleading (in addition to improper group pleading) by failing to name Bain as a defendant in those counts.  Nonetheless, Bain addresses the merits of each of the Direct Liability Counts.[26]

**1.    Negligence (Count I)**

To assert a claim for negligence, Plaintiffs must allege that (1) Bain owed Plaintiffs a duty; (2) Bain breached that duty; (3) Bain's breach was a "substantial factor in causing [P]laintiff[s]' harm;" and (4) that Plaintiffs suffered damages.  *See Mann* v. *City of Chula Vista*, 2020 WL 5759749, at *9 (S.D. Cal. Sept. 28, 2020) ("Negligence in training, hiring, and supervision is also analyzed under the general negligence standard."); *Bacon* v. *Pape Truck Leasing, Inc.*, 2020 WL 799747, at *5 (E.D. Cal. Feb. 18, 2020) ("Negligence per se is not an independent cause of action recognized in California.").  The Complaint fails to plead in non-conclusory terms that Bain owed a duty to Plaintiffs, that Bain breached any such duty, and that Bain caused any of Plaintiffs' purported damages.  Indeed, of the 61 paragraphs alleged in support of the negligence and negligence per se counts, (Compl. ¶¶ 767–827), only two paragraphs expressly name Bain, (Compl. ¶¶ 771–72).  That is wholly insufficient to state a claim for negligence against Bain under a direct liability theory.  Accordingly, the Court should dismiss Count I for failure to state a claim.  *See*

[26]  Bain also joins Sections III (Negligence), IV (Negligence Per Se), V (Negligent Training and Supervision), VIII (Unjust Enrichment), IX (Violation of California's Unfair Competition Law and Aiding and Abetting), and XIII (Violation of California Consumer Privacy Act) of PowerSchool's Motion to Dismiss, and adopts all arguments made therein with respect to the Direct Liability Counts, all of which equally apply to Bain.  (Dkt. 285).

- 38 -

*Regents of the Univ. of California* v. *Aisen*, 2016 WL 4096078, at \*4 (S.D. Cal. Apr. 22, 2016) (Benitez, J.) (dismissing claims as to particular defendants who were only mentioned once in the substantive allegations).

***Duty***.   The Complaint does not adequately allege that Bain owed a duty to Plaintiffs.  In a single paragraph, Plaintiffs simply allege that "Bain Capital owed a duty of care to take reasonable measures to ensure that the agents and associates they entrusted with Plaintiffs' and Class Members PII, including Movate, implemented adequate data security practices."   (Compl. ¶ 771).   That single, conclusory allegation is wholly insufficient because courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *See Coleman* v. *Las Vegas Metro. Police Dep't*, 2022 WL 3594272, at \*1 (9th Cir. Aug. 23, 2022).

The Complaint also makes no allegations that Bain had any contractual (or any other direct) relationship with Plaintiffs that could possibly give rise to a duty. Nor does it allege that Bain had access to Plaintiffs' PII or other sensitive information, or played any role in collecting, storing, or processing such information.  To the contrary, the Complaint alleges that PowerSchool (not Bain) possessed and controlled Plaintiffs' information.   (Compl. ¶ 7 ("PowerSchool understood the highly sensitive nature of the PII it was gathering and maintaining.")); Compl. ¶¶ 388, 454 ("PowerSchool was contractually and legally obligated to protect Plaintiffs['] . . . PII once it was provided to PowerSchool.")). Because Plaintiffs make no allegations that Bain possessed, maintained, or stored Plaintiffs' data or that Bain had any direct relationship with Plaintiffs, Plaintiffs cannot allege that Bain owed a duty to Plaintiffs to protect information not in its control. *Compare Navarro* v. *Ski Data*, 2022 WL 18280359, at \*10 (C.D. Cal. Dec. 7, 2022) (finding no duty where defendants did not store or possess the PII that was the subject of the action), *with In re Sony Gaming Networks & Customer Data Sec.*

- 39 -

*Breach Litig.*, 996 F. Supp. 2d 942, 966 (S.D. Cal. 2014) (finding a legal duty where defendants possessed plaintiffs' PII).

**Breach.**  Absent duty, there can be no breach and thus no negligence.  *See Mehr* v. *Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1063 (N.D. Cal. 2015) ("The existence of a legal duty is the threshold element of a cause of action for negligence.")*.*  "Because Plaintiff[s] ha[ve] not demonstrated the threshold element of duty, the Court need not consider the remaining elements of the negligence tort." *Mazed* v. *JP Morgan Chase Bank, N.A.*, 2013 WL 12131725, at *7 (C.D. Cal. May 6, 2013).  Therefore, the Complaint fails to allege negligence.

**Causation.**  By the same token, the Complaint fails to allege that Bain proximately caused the cybersecurity incident in question.  Plaintiffs' allegations that Bain directed offshoring or force reductions at PowerSchool are too attenuated from any harm alleged to adequately plead causation.  As explained in Section III, *supra,* allegations that Bain directed or controlled PowerSchool's actions prior to October 1, 2024 are implausible and not "fairly traceable" to Bain.  *See Vavak* v. *Abbott Lab'ys, Inc.*, 2011 WL 13130493, at *2 (C.D. Cal. Mar. 7, 2011).

**Damages.**  For the reasons set forth in Section III of PowerSchool's Motion to Dismiss, Plaintiffs have also failed to adequately plead concrete damages.  (*See* Dkt. 285).

**Negligence Per Se.**  Under California law, negligence per se is "a presumption of negligence that arises from the violation of a statute." *Dugas* v. *Starwood Hotels & Resorts Worldwide*, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016) (alteration omitted).  Plaintiffs do not allege that Bain owed a duty to Plaintiffs under any statute, much less violated any statute (nor can they), especially since PowerSchool's alleged violations of statutory law cannot be imputed to Bain under the alter ego or agency doctrines as set forth in Section III, *supra*.  Accordingly, and for the same reasons as Count I (Negligence), the Complaint fails to state a claim that would

- 40 -

support a negligence per se presumption. *See Ibay* v. *Mfrs. & Traders Tr. Co.*, 2013 WL 12130562, at *4 (C.D. Cal. Apr. 5, 2013) (denying negligence per se presumption where plaintiff failed to "successfully allege[] a statutory violation").

### 2.    Unjust Enrichment (Count III)

"'[U]njust enrichment' is not an independent cause of action under California law." *Advanced Eng'g Sols. Co., LLC* v. *Pers. Corner, LLC*, 2021 WL 1502705, at *7 (C.D. Cal. Feb. 25, 2021).  Because the Complaint fails to state a claim against Bain under *any* count on *any* theory of liability, Count VI must be dismissed. *See id.*  Even had Plaintiffs adequately alleged an independent cause of action against Bain, Plaintiffs fail to state a claim.   Not a single paragraph specific to this count directs allegations expressly at Bain. (Compl. ¶¶ 828–50).  Moreover, when paired with an accompanying breach of law, "[t]he elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'"  *Peterson* v. *Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (alteration in original).  And the conferral of a benefit requires an implied promise to pay or the expectation of payment. *Advanced Eng'g Sols.*, 2021 WL 1502705, at *7.  The Complaint makes no allegations whatsoever that Plaintiffs used Bain's services, that Bain sold any services to Plaintiffs, or that Bain derived any benefit directly from Plaintiffs.  Accordingly, Count III must be dismissed for failure to state a claim on a theory of direct liability. *See Peterson*, 164 Cal. App. 4th at 1593–94.

### 3.    Declaratory Judgment Act (Count VI)

The Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent cause of action; rather, it creates a remedy where a cause of action already exists. *City of Reno* v. *Netflix, Inc.*, 52 F.4th 874, 878–79 (9th Cir. 2022) (collecting cases and determining that plaintiff had no cause for relief because it lacked an independent cause of action).  Because the Complaint fails to state a claim against Bain under *any* count on *any* theory of liability, Count VI must be dismissed.

- 41 -

#### 4.   Negligent Training and Supervision (Count IX)

The Complaint broadly alleges that the cybersecurity incident was a result of PowerSchool's alleged negligent training and supervision of Movate.  (*See* Compl. ¶¶ 908–24).  But Bain is not expressly named in any of the allegations specific to Count IX.  (*Id.*).  The Complaint also alleges that PowerSchool (not Bain) hired Movate (Compl. ¶ 20), that PowerSchool (not Bain) granted Movate access to Plaintiffs' data (Compl. ¶ 911), and that PowerSchool (not Bain) was in a position to monitor and supervise Movate.  (Compl. ¶ 917).  Having failed to allege that Bain had any contractual, supervisory, employee-employer, or any other relationship with Movate, Plaintiffs' claim for negligent training and supervision against Bain must be dismissed for failure to state claim on a theory of direct liability.  *See Dent* v. *Nat'l Football League*, 902 F.3d 1109, 1122 (9th Cir. 2018) (explaining that under California law, "[t]here are 'two elements necessary for a duty to arise in negligent hiring and negligent retention cases—the existence of an employment relationship *and* foreseeability of injury'" (emphasis in original)).

#### 5.   Violation of California's Consumer Privacy Act (Count XIII)

Plaintiffs purport to bring a claim against Bain for a violation of California's Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100, *et seq*.  *See* Ex. C.  But Plaintiffs do not name Bain as a defendant in Count XIII and direct only a single allegation against Bain in the paragraphs specific to that count, alleging only that PowerSchool is "owned by Bain."  (Compl. ¶ 968).  For the reasons set forth *supra* note 11, the Court should dismiss Count XIII for improper shotgun pleading under Rule 8.  The Complaint also fails to adequately state a claim under the plain language of the CCPA, which permits a private citizen to pursue a civil suit **only** against a "business." Cal. Civ. Code § 1798.150.  The CCPA defines a "business," as an entity "that collects consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determines the

- 42 -

purposes and means of the processing of consumers' personal information." Cal. Civ. Code § 1798.140(d)(1). Nowhere in the Complaint, much less in the allegations specific to this count, do Plaintiffs allege that Bain "collects consumers' personal information" or determines how any such information is processed (nor can they). *See id.* The Court should dismiss Count XIII for failure to state a claim on a theory of direct liability as a matter of law.

### 6.   Violation of California's Unfair Competition Law (Count XVI)

Plaintiffs purport to bring a claim against Bain under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. But, again, Plaintiffs do not name Bain as a defendant in Count XVI and do not direct any allegations against Bain in the count's supporting paragraphs. (Compl. ¶¶ 1019–30). For the reasons set forth *supra* note 11, the Court should dismiss Count XVI for improper shotgun pleading under Rule 8. The Complaint also fails to state a claim against Bain on a direct theory of liability. The UCL "bars 'unfair competition' and defines the term as a 'business act or practice' that is (1) 'fraudulent,' (2) 'unlawful,' or (3) 'unfair.'" *Shaeffer* v. *Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1135 (2020). Claims brought under the UCL are subject to Rule 9(b)'s heightened pleading standard and must be pled "with particularity." *See Kearns* v. *Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to UCL claims). Instead of stating with particularity how Bain's practices were unlawful, unfair, deceptive, or otherwise violated the consumer protection acts, Plaintiffs resort to making conclusory allegations that "Defendants" or "PowerSchool" engaged in fraudulent, unlawful, or unfair practices. (Compl. ¶¶ 1021–26). Such allegations are not sufficient, as "Rule 9(b) undoubtedly requires more" than "attribut[ing] wholesale all of the allegations against" one defendant to all defendants. *United States* v. *Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011). Further, nowhere in the

- 43 -

Complaint do Plaintiffs allege that Bain's practices were fraudulent, unlawful, or unfair.

### 7.    Aiding and Abetting (Count XVII)

Plaintiffs also allege that Bain and Movate "aided and abetted PowerSchool's violation of" the UCL.  (Compl. ¶ 1036).  California follows the common law rule that liability may be imposed "on one who aids and abets the commission of an intentional tort" if the person "***knows*** the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act." *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (emphasis in original).  The Complaint makes no allegations that Bain ***knew*** that PowerSchool breached any alleged duty purportedly owed to Plaintiffs.  The Complaint only alleges that Bain knew "data security was a material, important aspect of PowerSchool's business," and that Bain required PowerSchool to warrant that it had "materially complied with all applicable Data Protection Obligations" in the three preceding years.  (Compl. ¶¶ 96, 98).  Simply put, such barebones allegations do not suffice to state a claim against Bain, especially under Rule 9(b)'s heightened pleading standard.  *See Kearns*, 567 F.3d at 1125.  Additionally, the Complaint's sole allegation that Bain "provided substantial assistance" by "requiring PowerSchool to cut its critical workforce and move essential operations offshore" before Bain acquired an ownership interest in PowerSchool is both conclusory and implausible for the reasons set forth in Section III, *supra*.  (Compl. ¶ 1034).

For those reasons, Plaintiffs have failed to state a claim that Bain is directly liable under any of the Direct Liability Counts.

### CONCLUSION

Accordingly, Bain respectfully requests that the Court grant its Motion to Dismiss the claims brought against Bain in the Consolidated Individual Users Putative Class Action Complaint with prejudice.

Dated:  September 10, 2025         Respectfully submitted,

                                   PAUL, WEISS, RIFKIND, WHARTON
                                      & GARRISON LLP

                                   By:   */s/ John P. Carlin*
                                         John P. Carlin

                                         John P. Carlin (NY 3031887)*
                                         PAUL, WEISS, RIFKIND, WHARTON
                                            & GARRISON LLP
                                         2001 K Street, NW
                                         Washington, D.C. 20006-1047
                                         Telephone: (202) 223-7300
                                         jcarlin@paulweiss.com

                                         Jacobus J. Schutte (NY 5023353)*
                                         Dylan O. Smith (NY 5846076)*
                                         PAUL, WEISS, RIFKIND, WHARTON
                                            & GARRISON LLP
                                         1285 Avenue of the Americas
                                         New York, NY 10019
                                         Telephone: (212) 373-3000
                                         jschutte@paulweiss.com
                                         dosmith@paulweiss.com

                                         R. Rosie Vail (SBN 317977)
                                         PAUL, WEISS, RIFKIND, WHARTON
                                            & GARRISON LLP
                                         535 Mission Street, 25th Floor
                                         San Francisco, CA 94105
                                         Telephone: (628) 432-5100
                                         Facsimile: (628) 232-3101
                                         rvail@paulweiss.com

                                         *Counsel for Defendant*
                                         *Bain Capital, L.P.*

                                         *admitted pro hac vice

- 45 -

25-md-3149-BEN-MSB
BAIN'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS COMPLAINT

# CERTIFICATE OF SERVICE

I certify that on the 10th day of September, 2025, I filed the foregoing notice with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

PAUL, WEISS, RIFKIND, WHARTON &
   GARRISON LLP

By:  */s/ John P. Carlin*

     John P. Carlin
     Email: jcarlin@paulweiss.com
     *Counsel for Defendant Bain Capital, L.P.*

- 46 -

25-md-3149-BEN-MSB
BAIN'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS COMPLAINT