Anne Johnson Palmer
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

Monica Mleczko
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 235-0337
monica.mleczko@ropesgray.com

Christopher M. Young
Oliver M. Kiefer
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com
oliver.kiefer@us.dlapiper.com

*Attorneys for Defendants PowerSchool Holdings, Inc., and PowerSchool Group, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION

*This Document Relates To:*
*All Track Two Actions*

Case No. 3:25-md-3149-BEN-MSB

**POWERSCHOOL DEFENDANTS' OMNIBUS MOTION TO DISMISS THE TRACK TWO COMPLAINTS**

*Filed concurrently with Declaration of Anne Johnson Palmer*

Judge: Hon. Roger T. Benitez
Courtroom: 5A
Date: TBD

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1
BACKGROUND .......... 3
LEGAL STANDARD .......... 5
ARGUMENT .......... 6
I. NUMEROUS STATES' LAWS APPLY, BUT THE COURT NEED NOT FINALLY RESOLVE THE CHOICE-OF-LAW ISSUE TO GRANT THIS MOTION .......... 6
II. THE BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED FOR FAILURE TO PLEAD THAT POWERSCHOOL BREACHED THE CONTRACTS OR THAT PLAINTIFFS HAVE INCURRED RESULTING DAMAGES (CLASS ACTION COUNT 1, DIRECT ACTION COUNTS 11, 13, 15, 18, 20, 24, 26, 28, 30, 33, 35, 37, 40, 42 & 44) .......... 8
A. By Failing to Identify the Specific Relevant Contractual Provisions, the Class Plaintiffs Fail to Plead a Breach of Contract .......... 8
B. The Direct Plaintiffs Fail to Plausibly Allege a Breach of Contract .......... 9
C. Plaintiffs Seek Damages Barred by the Limitation of Liability Clause .......... 15
III. PLAINTIFFS' NEGLIGENCE CLAIMS SHOULD BE DISMISSED AS BARRED BY THE ECONOMIC LOSS DOCTRINE AND FOR FAILURE TO PLEAD A DUTY (CLASS ACTION COUNT 3, DIRECT ACTION COUNT 1) .......... 16
A. Plaintiffs' Negligence Claims Are Barred by the Economic Loss Doctrine in Most States or Are Otherwise Duplicative of the Breach of Contract Claims and Should Be Dismissed .......... 16
B. Plaintiffs Do Not Allege a Breach of any Tort Duty Owed to Them .......... 19
IV. PLAINTIFFS' NEGLIGENCE PER SE CLAIMS FAIL (DIRECT ACTION COUNT 2) .......... 21
V. PLAINTIFFS' UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED (CLASS ACTION COUNT 7, DIRECT ACTION COUNT 3) .......... 22

VI. PLAINTIFFS' FRAUDULENT CONCEALMENT CLAIM FAILS FOR LACK OF DUTY (DIRECT ACTION COUNT 5) .......... 24

VII. PLAINTIFFS FAIL TO ALLEGE MULTIPLE ELEMENTS NECESSARY TO THEIR CFAA CLAIMS (CLASS ACTION COUNT 4, DIRECT ACTION COUNT 4) .......... 27

A. Plaintiffs Do Not Plausibly Allege that PowerSchool Accessed Any Data Without Authorization or Exceeded its Authorized Access .......... 28

B. Plaintiffs Fail to Allege that PowerSchool Acted with the Required Knowledge or Intent .......... 30

C. Plaintiffs Do Not Plead the Requisite Damages .......... 31

VIII. THE CDAFA CLAIM FAILS BECAUSE POWERSCHOOL DID NOT PARTICIPATE IN THE HACKING AND DID NOT ACT KNOWINGLY (CLASS ACTION COUNT 5) .......... 33

IX. THE ILLINOIS BIOMETRIC PRIVACY ACT CLAIM FAILS BECAUSE POWERSCHOOL IS NOT "IN POSSESSION OF" PLAINTIFFS' BIOMETRIC DATA (DIRECT ACTION COUNT 17) .......... 34

X. THE CONSUMER PROTECTION STATUTE CLAIMS FAIL (CLASS ACTION COUNT 6, DIRECT ACTION COUNTS 12, 14, 16, 19, 21, 22, 25, 27, 29, 31, 34, 38, 41, 43 & 45) .......... 35

A. Threshold Deficiencies Compel the Dismissal of Plaintiffs' Claims under the UCL (Class Action Count 6) and the Consumer Protection Statutes of New York, Oklahoma, Rhode Island, Utah, Vermont, and Virginia (Direct Action Counts 12, 21, 22, 25, 34, 38 & 43) .......... 36

1. The Class Plaintiffs Do Not State a Claim Under the UCL Because They Cannot Sue under the California Statute and Fail to Allege that They Lack an Adequate Remedy at Law (Class Action Count 6). .......... 36

2. The Claims under the New York, Rhode Island, Utah, Vermont, and Virginia Consumer Protection Statutes Fail Because the District Plaintiffs Are Not Consumers (Direct Action Counts 12, 21, 22, 25, 34 & 38). .......... 37

3. The Claims under the Consumer Protection Statutes of Oklahoma and Rhode Island Should Be Dismissed Because They Are Preempted by the Statutes' Safe Harbor Provisions (Direct Action Counts 34 & 43). .......... 38

B. Plaintiffs Do Not State a Claim Under the Consumer Protection Statutes ........ 39

1. The Deception-Based Claims Fail Because Plaintiffs Do Not Allege Any Actionable Representation with Particularity and, Where Applicable, Causation and/or Reliance. ........ 39

2. Plaintiffs Do Not Plausibly Allege That PowerSchool Acted Unlawfully, Unfairly, or Unconscionably. ........ 42

XI. THE NEW HAMPSHIRE, VIRGINIA, AND WASHINGTON DATA BREACH NOTIFICATION LAW CLAIMS FAIL (DIRECT ACTION COUNTS 32, 39 & 46) ........ 44

XII. NEW YORK EDUCATION LAW § 2-D DOES NOT PROVIDE A PRIVATE RIGHT OF ACTION (DIRECT ACTION COUNT 23) ........ 46

XIII. EXPRESS INDEMNITY IS NOT A RIPE CLAIM (DIRECT ACTION COUNT 6) ........ 47

XIV. THE CLASS PLAINTIFFS' CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF IS NOT A STANDALONE CAUSE OF ACTION OR SUFFICIENTLY PLED (CLASS ACTION COUNT 8) ........ 48

CONCLUSION ........ 49

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdale v. N. Shore-Long Island Jewish Health Sys., Inc.*,
19 N.Y.S.3d 850 (Sup. Ct. 2015) .......... 21, 26, 40

*In re Accutane Litig.*,
194 A.3d 503 (N.J. 2018) .......... 7

*Aclys Intern. v. Equifax*,
438 F. App'x 689 (10th Cir. 2011) .......... 18

*Adkins v. Everest Glob. Servs., Inc.*,
2024 WL 3887127 (D.N.J. Aug. 21, 2024) .......... 20, 22

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) .......... 42

*Alloway v. Gen. Marine Indus., L.P*,
695 A.2d 264 (N.J. 1997) .......... 17

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
2021 WL 5937742 (D.N.J. Dec. 16, 2021) .......... 42

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
2023 WL 6216542 (D.N.J. Sept. 21, 2023) .......... 46

*Ames v. Oceanside Welding & Towing Co.*,
767 A.2d 677 (R.I. 2001) .......... 42

*Anderson v. Trs. of Dartmouth Coll.*,
2020 WL 7129968 (D.N.H. Dec. 4, 2020) .......... 19

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) .......... 13, 14

*Anwar v. Fairfield Greenwich Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010) .......... 6

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) .......... 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Ashwood Cap., Inc. v. OTG Mgmt., Inc.*,
948 N.Y.S.2d 292 (App. Div. 2012) .......... 23

*AtPac, Inc. v. Aptitude Sols., Inc.*,
730 F. Supp. 2d 1174 (E.D. Cal. 2010) .......... 30

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*,
286 F. Supp. 3d 667 (E.D. Pa. 2017) .......... 41

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
674 F. Supp. 3d 884 (S.D. Cal. 2023) .......... 6

*Bennion v. Stolrow*,
550 P.3d 474 (Utah 2024) .......... 13

*Best Med. Int'l, Inc. v. Buchanan Ingersoll & Roomey PC*,
2021 WL 2954103 (W.D. Pa. Mar. 15, 2021) .......... 14

*Bitsight Technologies, Inc. v. SecurityScoreCard, Inc.*,
40 N.Y.S.3d 375 (App. Div. 2016) .......... 37

*Blaisdell v. Dentrix Dental Sys., Inc.*,
284 P.3d 616 (Utah 2012) .......... 16

*Borrego Cmty. Health Found. v. Hebets*,
2024 WL 1269476 (S.D. Cal. Mar. 25, 2024) .......... 9

*Braden v. Tornier, Inc.*,
2009 WL 3188075 (W.D. Wash. Sept. 30, 2009) .......... 41

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005) .......... 43

*Brown v. State Farm Mut. Auto. Ins.*,
2025 WL 81340 (N.D. Ill. Jan. 13, 2025) .......... 21

*Brush v. Mia. Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) .......... 13

*Bryant v. Compass Grp. USA, Inc.*,
958 F.3d 617 (7th Cir. 2020) .......... 34

*Cairel v. Jessamine Cnty. Fiscal Ct.*,
2015 WL 8967884 (E.D. Ky. Dec. 15, 2015) .......... 13

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
94 Cal. App. 4th 151 (2001) .......... 23

*Calendar Rsch. LLC v. StubHub, Inc.*,
2020 WL 4390391 (C.D. Cal. May 13, 2020) .......... 28

*Challenge Printing Co. v. Elecs. for Imaging Inc.*,
500 F. Supp. 3d 952 (N.D. Cal. 2020) .......... 11

*In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*,
2025 WL 1135726 (D. Utah. Apr. 17, 2025) .......... 24

*Claridge v. RockYou, Inc.*,
785 F. Supp. 2d 855 (N.D. Cal. 2011) .......... 33, 34

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
887 F.3d 803 (7th Cir. 2018) .......... 18

*Coda v. Constellation Energy Power Choice, LLC*,
409 F. Supp. 3d 296 (D.N.J. 2019) .......... 8

*Conservation Force v. Salazar*,
646 F.3d 1240 (9th Cir. 2011) .......... 5

*Cooper v. Samsung Elecs. Am., Inc.*,
2008 WL 4513924 (D.N.J. Sept. 30, 2008), *aff'd*, 374 F. App'x 250 (3d Cir. 2010) .......... 24

*Corona v. Sony Pictures Ent., Inc.*,
2015 WL 3916744 (C.D. Cal. June 15, 2015) .......... 45

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (2012) .......... 23

*Cotte v. CVI SGP Acquisition Tr.*,
2022 WL 464307 (D. Utah Feb. 15, 2022) .......... 42

*Creighton Prop. Holdings, LLC v. Lewis Bros., Inc.*,
2021 WL 4523797 (W.D. Pa. Oct. 4, 2021) .......... 19

*CTI III, LLC v. Devine*,
2022 WL 1693508 (E.D. Cal. May 26, 2022) .......... 33

*Ctr. for Discovery, Inc., v. D.P.*,
2018 WL 1583971 (E.D.N.Y. Mar. 31, 2018) .......... 46

*D'Ambrosio v. Rajala*,
783 F. Supp. 3d 1077 (N.D. Ill. 2025) .......... 16

*Delacruz v. State Bar of Cal.*,
2017 WL 7310715 (N.D. Cal. June 21, 2017) .......... 32

*Diva Limousine, Ltd. v. Uber Techs., Inc.*,
392 F. Supp. 3d 1074 (N.D. Cal. 2019) .......... 36

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020) .......... 43

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) .......... 22

*Duke v. Browning-Ferris Indus. of Tenn., Inc.*,
2006 WL 1491547 (Tenn. Ct. App. May 31, 2006) .......... 23

*Elbeco Inc. v. Nat'l Ret. Fund*,
128 F. Supp. 3d 849 (E.D. Pa. 2015) .......... 27

*England v. Brianas*,
166 N.H. 369 (2014) .......... 16

*Eprotec Pres., Inc. v. Engineered Materials, Inc.*,
2011 WL 867542 (D.N.J. Mar. 9, 2011) .......... 8

*Faistl v. Energy Plus Holdings, LLC*,
2012 WL 3835815 (D.N.J. Sept. 4, 2012) .......... 9

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*,
400 F. App'x 611 (2d Cir. 2010) .......... 23

*Ferdous v. Hasan*,
231 N.Y.S.3d 518 (App. Div. 2025) .......... 9

*Fero Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) .......... 20

*First Mercury Ins. v. Great Divide Ins.*,
203 F. Supp. 3d 1043 (N.D. Cal. 2016) .......... 48

*Fish Net, Inc. v. ProfitCenter Software, Inc.*,
2011 WL 1235204 (E.D. Pa. Mar. 31, 2011) ....................23

*Fleury v. Gen. Motors LLC*,
654 F. Supp. 3d 724 (N.D. Ill. 2023) ....................27

*Fox v. Amazon.com, Inc.*,
930 F.3d 415 (6th Cir. 2019) ....................41

*Fraser v. Mint Mobile, LLC*,
2022 WL 1240864 (N.D. Cal. Apr. 27, 2022) ....................32

*Fusion Diagnostic Lab'ys, LLC v. Atila Biosys., Inc.*,
2024 WL 3024915 (D.N.J. June 17, 2024) ....................17, 19

*G.T. v. Samsung Elecs. Am. Inc.*,
742 F. Supp. 3d 788 (N.D. Ill. 2024) ....................35

*Gabriel v. Giant Eagle, Inc.*,
124 F. Supp. 3d 550 (W.D. Pa. 2015) ....................24

*Gaddy v. Corp. of Pres. of Church of Jesus Christ of Latter-Day Saints*,
665 F. Supp. 3d 1263 (D. Utah 2023) ....................27

*In re Google Assistant Priv. Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. 2021) ....................48

*Griffey v. Magellan Health Inc.*,
562 F. Supp. 3d 34 (D. Ariz. 2021) ....................40, 44

*Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC*,
485 F. Supp. 3d 885 (E.D. Mich. 2020) ....................20

*Grigsby v. Valve Corp.*,
2013 WL 12310666 (W.D. Wash. Mar. 18, 2013) ....................45

*Gujja v. Inpatient Servs. of N.J., P.C.*,
2022 WL 2834998 (D.N.J. July 20, 2022) ....................23

*Hall v. Time Inc.*
158 Cal. App. 4th 847 (2008) ....................42

*Ham v. Lenovo (U.S.) Inc.*,
664 F. Supp. 3d 562 (S.D.N.Y. 2023) ....................41

*Harmony Rockaway, LLC v. Gelwan*,
160 N.Y.S.3d 294 (App. Div. 2021) .......... 12

*Harris v. Nationwide Mut. Fire Ins.*,
367 F. Supp. 3d 768 (M.D. Tenn. 2019) .......... 21

*Hart v. Salois*,
605 F. App'x 694 (10th Cir. 2015) .......... 10

*Harvey v. Wells Fargo Bank, N.A.*,
2019 WL 13195302 (E.D. Tenn. Sept. 18, 2019) .......... 19

*HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*,
435 P.3d 193 (Utah 2018) .......... 17, 19

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) .......... 34

*Heath v. Palmer*,
915 A.2d 1290 (Vt. 2006) .......... 41

*Hexagon Holdings, Inc. v. Carlisle Syntec Inc.*,
199 A.3d 1034 (R.I. 2019) .......... 17

*Hoedt v. Vanderbilt Univ.*,
2025 WL 479396 (M.D. Tenn. Feb. 12, 2025) .......... 15

*Instructional Sys., Inc. v. Comput. Curriculum Corp.*,
614 A.2d 124 (N.J. 1992) .......... 6

*Intrastate Piping & Controls, Inc., v. Robert-James Sales, Inc.*,
733 N.E.2d 718 (Ill. App. Ct. 2000) .......... 16

*Inv. Almaz v. Temple-Inland Forest Prods. Corp.*,
243 F.3d 57 (1st Cir. 2001) .......... 26

*Jackson v. Airbnb, Inc.*,
639 F. Supp. 3d 994 (C.D. Cal. 2022) .......... 16

*Jim Dan, Inc. v. O.M. Scott & Sons Co.*,
785 F. Supp. 1196 (W.D. Pa. 1992) .......... 16

*Johnson v. Yuma Reg'l Med. Ctr.*,
769 F. Supp. 3d 936 (D. Ariz. 2024) .......... 41

*Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*,
315 F. App'x 603 (9th Cir. 2008) .......... 18

*Kalos, LLC v. White House Vill., LLC*,
2024 WL 4579299 (Tenn. Ct. App. Oct. 25, 2024) .......... 23

*Kearney & Trecker Corp. v. Master Engraving Co.*,
107 N.J. 584 (1987) .......... 16

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 25

*Kho v. Wells Fargo & Co.*,
2012 WL 3240041 (C.D. Cal. Aug. 6, 2012) .......... 48

*Khodeir v. Sayyed*,
323 F.R.D. 193 (S.D.N.Y. 2017) .......... 15

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*,
2015 WL 1289984 (N.D. Cal. Mar. 20, 2015) .......... 27

*In re Korean Air Lines Co., Ltd.*,
642 F.3d 685 (9th Cir. 2011) .......... 6

*Krichman v. J.P. Morgan Chase & Co.*,
2008 WL 5148769 (S.D.N.Y. Dec. 8, 2008) .......... 13

*L. Off. of Drew J. Bauman v. Hanover Ins.*,
2023 WL 2238552 (D.N.J. Feb. 27, 2023) .......... 9

*Lakeland Tours, LLC v. Bauman*,
2014 WL 12570970 (S.D. Cal. Feb. 11, 2014) .......... 30

*Lamprey v. Britton Constr., Inc.*,
163 N.H. 252 (2012) .......... 27

*Landon v. TSC Acquisition Corp.*,
2024 WL 5317240 (C.D. Cal. Nov. 1, 2024) .......... 48

*Lazar v. Int'l Shoppes, LLC*,
2025 WL 1475627 (E.D.N.Y. May 22, 2025) .......... 27

*Lettieri v. TD Bank*,
2024 WL 3084393 (D.N.J. June 21, 2024) .......... 16

*Long Trail House Condo. Ass'n v. Engelberth Constr., Inc.*,
59 A.3d 752 (Vt. 2012)....................17

*Lugo v. St. Nicholas Assoc.*,
2 Misc. 3d 212 (N.Y. Sup. Ct. 2003)....................22

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009)....................29

*Magnoni v. Plainedge Union Free Sch. Dist.*,
2018 WL 4017585 (E.D.N.Y. Aug. 22, 2018)....................46

*Mahmood v. Ross*,
990 P.2d 933 (Utah 1999)....................15

*Margolis v. Apple Inc.*,
743 F. Supp. 3d 1124 (N.D. Cal. 2024)....................31

*Materials Handlings Enters., Inc. v. Atlantis Techs., LLC*,
563 F. Supp. 3d 387 (W.D. Pa. 2021)....................12

*McCartney v. United States*,
31 F. Supp. 3d 1340 (D. Utah 2014)....................16

*In re MCG Health Data Sec. Issue Litig.*,
2023 WL 3057428 (W.D. Wash. Mar. 27, 2023), *report and recommendation adopted*, 2023 WL 4131746 (W.D. Wash. June 22, 2023)....................48

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022)....................10, 11, 38

*Mentis Scis., Inc. v. Pittsburgh Networks, LLC*,
173 N.H. 584 (2020)....................16, 17

*Mia. Prods. & Chem. Co. v. Olin Corp.*,
546 F. Supp. 3d 223 (W.D.N.Y. 2021)....................37

*Miller v. Klingsporn*,
262 N.E.3d 147 (Ill. App. Ct. 2025)....................18

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022)....................19

*Moore v. Pendavinji*,
260 N.E.3d 111 (Ill. App. Ct. 2024)....................26

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
91 Ill. 2d 69 (1982) .......... 17

*In re MOVEit Customer Data Sec. Breach Litig.*,
2025 WL 2179475 (D. Mass. July 31, 2025) .......... *passim*

*In re MOVEit Customer Data Sec. Breach Litig.*,
2025 WL 2176590 (D. Mass. July 31, 2025) .......... 38, 39

*Nash. Underground, LLC v. AMCO Ins.*,
523 F. Supp. 3d 1006 (M.D. Tenn. 2021) .......... 12

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.*,
748 F. Supp. 3d 262 (E.D. Pa. 2024) .......... 16

*Nedlloyd Lines B.V. v. Superior Ct.*,
3 Cal. 4th 459 (1992) .......... 6

*Nichols v. Peterson NW, Inc.*,
197 Wash. App. 491 (2016) .......... 17

*Nowak v. Xapo, Inc.*,
2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) .......... 31, 33

*In re Numotion Data Incident Litig.*,
2025 WL 57712 (M.D. Tenn. Jan. 9, 2025) .......... 24

*O'Donnell v. Bank of Am., N.A.*,
504 F. App'x 566 (9th Cir. 2013) .......... 43

*Orthman v. Premiere Pediatrics, PLLC*,
545 P.3d 124 (Okla. Civ. App. 2024) .......... 21

*Otis- Wisher v. Medtronic, Inc.*,
616 F. App'x 433 (2d Cir. 2015) .......... 37

*Otis-Wisher v. Fletcher Allen Health Care, Inc.*,
951 F. Supp. 2d 592 (D. Vt. 2013), *aff'd sub nom. Otis-Wisher v. Medtronic, Inc.*, 616 F. App'x 433 (2d Cir. 2015) .......... 38

*Owens v. Gaffken & Barriger Fund, LLC*,
2009 WL 3073338 (S.D.N.Y. Sept. 21, 2009) .......... 9

*Palmolive Tower Condos., LLC v. Simon*,
409 Ill. App. 3d 539 (2011) .......... 15

*In re Pareteum Sec. Litig.*,
2020 WL 3448526 (S.D.N.Y. June 23, 2020) .......... 10

*Pasternack v. Lab'y Corp. of Am. Holdings*,
27 N.Y.3d 817 (2016) .......... 16

*Peralta v. Certified Emp. Screening Inc.*,
2025 WL 1723142 (C.D. Cal. May 7, 2025) .......... 37

*PetEdge, Inc. v. Garg*,
234 F. Supp. 3d 477 (S.D.N.Y. 2017) .......... 25

*Philippine Airlines, Inc., v. McDonnell Douglas Corp.*,
189 Cal. App. 3d 234 (1987) .......... 16

*Pickering v. Sanchez*,
173 Idaho 478 (2024) .......... 41

*Picket Fence Preview, Inc. v. Zillow, Inc.*,
623 F. Supp. 3d 371 (2022) .......... 42

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) .......... 41

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
198 F. Supp. 3d 1183 (D. Or. 2016) .......... 25

*Preventive Energy Sols., L.L.C. v. nCap Ventures 5, LLC*,
2023 WL 7148434 (10th Cir. 2023) .......... 19

*Process Am., Inc. v. Cynergy Holdings, LLC*,
839 F.3d 125 (2d Cir. 2016) .......... 15

*Protex Indus. (H.K.) Ltd. v. Vince Holding Corp.*,
748 F. Supp. 3d 234 (S.D.N.Y. 2024) .......... 26

*R.I. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*,
99 F. Supp. 2d 174 (D.R.I. 2000) .......... 37

*Rain Int'l, LLC v. Cook*,
2023 WL 1954526 (D. Utah Feb. 10, 2023) .......... 23

*Rand v. Travelers Indem. Co.*,
637 F. Supp. 3d 55 (S.D.N.Y. 2022) .......... 21

*Rentzell v. Dollar Tree Stores, Inc.*,
2011 WL 4528367 (E.D. Pa. Sept. 29, 2011) .......... 17

*Rosenbach v. Six Flags Ent. Corp.*,
129 N.E.3d 1197 (Ill. 2019) .......... 34

*Rosenberg v. C.R. Bard, Inc.*,
387 F. Supp. 3d 572 (E.D. Pa. 2019) .......... 10

*Saltire Indus., Inc. v. Waller, Landsden, Dortch & Davis, PLLC*,
491 F.3d 522 (6th Cir. 2007) .......... 27

*Sateriale v. R.J. Reynolds Tobacco Co.*,
697 F.3d 777 (9th Cir. 2012) .......... 41

*Saxon Techs., LLC v. Wesley Clover Sols. - N. Am., Inc.*,
2014 WL 36104 (N.Y. Sup. Ct. Jan. 2, 2014) .......... 15

*Schaefer v. IndyMac Mortg. Servs.*,
2012 WL 4929094 (D.N.H. Oct. 16, 2016) .......... 18

*Schertz v. Ford Motor Co.*,
2020 WL 5919731 (C.D. Cal. July 27, 2020) .......... 37

*Schmitt v. SN Servicing Corp.*,
2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) .......... 42, 43

*Schuman v. Visa U.S.A., Inc.*,
2025 WL 1731795 (S.D.N.Y. June 23, 2025) .......... 40

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 33

*Shah v. Racetrack Petroleum Co.*,
338 F.3d 557 (6th Cir. 2003) .......... 26

*In re Shields Health Care Grp., Inc. Data Breach Litig.*,
721 F. Supp. 3d 152 (D. Mass. 2024) .......... 39

*Sifuentes v. Corewell Health*,
2025 WL 1802395 (W.D. Mich. July 1, 2025) .......... 28

*Solis v. Specialized Loan Servicing, LLC*,
2025 WL 868749 (C.D. Cal. Feb. 20, 2025) .......... 6

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 37

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .......... 22, 24

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014) .......... 6, 17, 39

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
533 F.3d 162 (3d Cir. 2008) .......... 18

*Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC*,
887 F.3d 1003 (10th Cir. 2018), *as revised* (Apr. 13, 2018) .......... 26

*Staggers v. Pub. Def. of Ind.*,
2024 WL 1471113 (S.D. Ind. Mar. 1, 2024) .......... 28

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .......... 6

*Stone & Michaud Ins. v. Bank Five for Sav.*,
785 F. Supp. 1065 (D.N.H. 1992) .......... 12

*Student A v. Liberty Univ., Inc.*,
602 F. Supp. 3d 901 (W.D. Va. 2022) .......... 41

*Sullivan v. Oracle Corp.*,
254 P.3d 237 (Cal. 2011) .......... 36

*Sullivan v. Pulte Home Corp.*,
232 Ariz. 344 (2013) .......... 17

*In re SuperValu, Inc.*,
925 F.3d 955 (8th Cir. 2019) .......... 21

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
313 F. Supp. 3d 1056 (N.D. Cal. 2018) .......... 32

*Taylor v. Amazon.com, Inc.*,
2025 WL 104381 (W.D. Wash. Jan. 15, 2025) .......... 42

*Taylor v. Bosco Credit LLC*,
840 F. App'x 125 (9th Cir. 2020) .......... 4

*Taylor v. Taylor*,
163 Idaho 910 (2018) .......... 17

*Texas v. United States*,
523 U.S. 296 (1998) .......... 47

*Thomas v. TransCore, LP*,
2024 WL 4820782 (M.D. Pa. Nov. 18, 2024) .......... 23

*Tietsworth v. Sears, Roebuck & Co.*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) .......... 5

*Tingler v. Graystone Homes, Inc.*,
298 Va. 63 (2019) .......... 17

*In re TJX Cos. Retail Sec. Breach Litig.*,
564 F.3d 489 (1st Cir. 2009) .......... 18

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 48

*Triaxx Prime CDO 2006-1 Ltd. v. U.S. Bank Nat'l Ass'n*,
2024 WL 1381354 (S.D.N.Y. Mar. 31, 2024) .......... 18, 19

*Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*,
241 N.E.3d 454 (Ill. 2024) .......... 39

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*,
931 F.3d 966 (9th Cir. 2019) .......... 5

*In re U.S. Vision Data Breach Litig.*,
2025 WL 615366 (D.N.J. Feb. 26, 2025) .......... 19, 20

*In re U.S. Vision Data Breach Litig.*,
732 F. Supp. 3d 369 (D.N.J. 2024) .......... 40

*U1IT4less, Inc. v. FedEx Corp.*,
896 F. Supp. 2d 275 (S.D.N.Y. 2012), *aff'd*, 871 F.3d 199 (2d Cir. 2017) .......... 37, 38

*Underwood v. Lindamood*,
2016 WL 11804537 (E.D. Tenn. Jan. 14, 2016) .......... 10

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) .......... 27, 30

*Universal Prot. Serv., LP v. Coastal Fire & Integration Sys., Inc.*, 2023 WL 4042582 (S.D. Cal. June 15, 2023) .......... 29

*Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 431 F. Supp. 3d 995 (N.D. Ill. 2020) .......... 12

*Van Buren v. United States*, 593 U.S. 374 (2021) .......... 32

*Venture Express, Inc. v. Vanguard Nat'l Trailer Corp.*, 585 F. Supp. 3d 1060 (M.D. Tenn. 2022) .......... 16

*In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734 (S.D.N.Y. Feb. 24, 2022) .......... 24

*Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927 (7th Cir. 2021) .......... 39

*State ex rel. Wilson v. Ortho- McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176 (S.C. 2015) .......... 41

*World Cam, LLC v. Omnibond Sys., LLC*, 2021 WL 4132100 (D.S.C. Sept. 9, 2021) .......... 42

*X Corp. v. Ctr. for Countering Digit. Hate, Inc.*, 724 F. Supp. 3d 948 (N.D. Cal. 2024) .......... 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018) .......... 44

*Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110 (N.D. Cal. 2011) .......... 9

*Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323 (S.D.N.Y. 2023) .......... 41

*Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646 (M.D. Tenn. 2018) .......... 16

*Zaback v. Kellogg Sales Co.*, 2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) .......... 37

**Statutes**

18 U.S.C. §§ 1030(a), (b), (e)(8), (g) .......... *passim*

28 U.S.C. § 2201(a) ........................................................................................47

740 Ill. Comp. Stat. 14/15(e), 14/20(a).............................................................34

N.H. Rev. Stat. Ann. §§ 358-A:10, 359-C:20(I), 359-C:20(I)(c)................41, 44, 45

N.Y. Educ. Law §§ 2-d(6)(c), 2-d(6)(e)(5), 2-d(7)(a), 2-d(7)(c) ......................46, 47

Okla. Stat. Ann. tit. 15, §§ 752(14), 754(2).....................................................38, 42

R.I. Gen. Laws § 6-13.1-4(a)..........................................................................38

Va. Code Ann. §§ 18.2-186.6(D), 18.2-186.6(I) ............................................44, 45

Wash. Rev. Code 19.255.010(8), 19.255.040(3)(a) .........................................44, 45

**Other Authorities**

Fed. R. Civ. P. 8.........................................................................................9, 40

Fed. R. Civ. P. 9.........................................................................................*passim*

Fed. R. Civ. P. 12..........................................................................................5

## INTRODUCTION

On December 28, 2024, PowerSchool Holdings, Inc., and PowerSchool Group, LLC (together, "PowerSchool" or the "Company") discovered that it had experienced a cyberattack involving its Student Information System ("SIS") (the "Cybersecurity Incident" or the "Incident"). PowerSchool immediately engaged its incident response protocols and mobilized a cross-functional response team, including third-party cybersecurity experts, to contain the Incident and to harden system security. PowerSchool notified its school district customers on a rapid timeline—on January 7, 2025, within ten days of learning of the Incident and only a few business days into the new year. Since then, PowerSchool has supported its customers in responding to the Incident, devoting substantial resources to assist them. For example, PowerSchool offered to handle notifications to individual students, parents, and teachers on its customers' behalf. PowerSchool also extended two years of complimentary identity and/or credit monitoring to all involved individuals, regardless of the nature of their specific information involved.

Before this Court in Track Two are two types of actions that schools or school districts have filed against PowerSchool: a putative class action brought by four named plaintiffs (the "Class Plaintiffs"), and direct actions filed by 18 individual plaintiffs (the "Direct Plaintiffs"). This Motion is directed to the Class Action Complaint, ECF No. 263 ("CAC"), and the Direct Action Complaint ("DAC"), ECF No. 288. The Class Plaintiffs and the Direct Plaintiffs (together, the "School District Plaintiffs" or "Plaintiffs") are all PowerSchool customers seeking to recover for alleged breaches of contract, while also advancing a kitchen sink's worth of other claims based on the Incident. But despite their various and assorted allegations, none of the School District Plaintiffs pleads individual facts about their claimed injuries. And importantly for purposes of several of their claims, which presume that PowerSchool owed a duty or other obligation to them, the School District Plaintiffs do not allege that *their* data—rather than the data of their students, parents, and

teachers—was involved in the Incident. For these reasons and those set forth below, the claims advanced in Plaintiffs' operative complaints fail across the board.

Starting first with the claims for breach of contract, the Class Plaintiffs do not plead which contractual provisions PowerSchool supposedly breached, and the Direct Plaintiffs engage in shotgun pleading that likewise fails to put PowerSchool on adequate notice of any alleged breach of contract. Plaintiffs also seek to recover incidental and consequential damages that are barred by the very contracts they invoke, including for claims arising in tort.

Plaintiffs' other common law claims attempt to perform an end-run around the terms of their contracts with PowerSchool and fail to allege blackletter elements. The economic loss rule bars Plaintiffs' negligence claims because their alleged damages—economic losses allegedly incurred to address the Incident—are not recoverable in tort absent physical injury or property damage, which Plaintiffs do not allege. Plaintiffs' claims for unjust enrichment, an equitable remedy, fail for several reasons, including that there is no claim for unjust enrichment where a valid contract exists between the parties addressing the same subject matter. Moreover, in some states, unjust enrichment is unavailable where the plaintiff alleges the availability of an adequate remedy at law, as Plaintiffs do here. The claim for fraudulent concealment should be dismissed because Plaintiffs do not plausibly allege any duty to disclose the information they vaguely allege that PowerSchool concealed.

Plaintiffs' statutory claims fare no better. Plaintiffs attempt to invoke anti-hacking statutes that plainly do not apply to PowerSchool or the Incident, including the federal Computer Fraud and Abuse Act ("CFAA") and California's Comprehensive Data Access and Fraud Act ("CDAFA"). The Direct Plaintiffs bring claims under the Illinois Biometric Privacy Act ("BIPA"), yet do not (and cannot) allege that they provided any biometric data to PowerSchool. Plaintiffs also bring claims under various state consumer protection statutes that are subject to dismissal on multiple grounds. With respect to the Class Plaintiffs' claims under California's

Unfair Competition Law ("UCL"), the Class Plaintiffs are located outside of California and cannot apply the statute extraterritorially, and they do not allege that they lack an adequate remedy at law, as required to seek equitable relief under the UCL. As to several other state consumer protection statutes, Plaintiffs do not allege that they purchased PowerSchool's software for personal, family, or household use, as they must. The remaining consumer protection claims fail because Plaintiffs do not plausibly allege any actionable conduct, particularly with respect to their deception-based claims, which Plaintiffs fail to plead with the particularity that Rule 9(b) requires. The Direct Plaintiffs also advance claims of delay under various state data breach notification laws, yet their own allegations concede that PowerSchool provided notifications to school districts within four business days of the Incident, and they do not plausibly allege any damages attributable to any claimed delay in notification. The New York Education Law does not provide a private right of action, barring the Direct Plaintiffs' claims.

Finally, Plaintiffs attempt to assert claims that are premature or duplicative of their other causes of action. The Direct Plaintiffs' claims for express indemnity are not yet ripe, because no Plaintiff has been sued by any third party, as required under the plain terms of their contracts with PowerSchool. The Class Plaintiffs' claim for injunctive and declaratory relief should be dismissed because they fail to allege any imminent and substantial risk of future harm, and the relief they seek is not a standalone claim. In short, Plaintiffs' claims fail at every turn, and should be dismissed in their entirety.

## BACKGROUND

PowerSchool is a Sacramento-based leading provider of cloud-based software solutions for K-12 education in the United States, supplying cutting-edge educational technology products to its customers—schools and school districts like Plaintiffs.

CAC ¶¶ 16, 23-24; DAC ¶¶ 1, 3.[1] These customers use PowerSchool's products to collect and maintain student and teacher data. *See* CAC ¶¶ 1, 28; DAC ¶ 108. Plaintiffs allege that they and PowerSchool are parties to written agreements that govern the services that PowerSchool provides to them, consisting of a Main Services Agreement ("MSA"), which incorporates a state-specific Data Privacy Agreement ("DPA") that sets forth PowerSchool's obligations related to customer data. CAC ¶ 66; DAC ¶¶ 4, 321.

On or about December 28, 2024, PowerSchool learned that it had experienced a cyberattack. CAC ¶ 41; DAC ¶ 5. Plaintiffs allege that a criminal actor used stolen credentials from an employee of Movate, Inc. ("Movate"), a service provider to PowerSchool, to access certain PowerSchool SIS environments through one of its community-focused customer support portals, PowerSource. CAC ¶¶ 41, 89 n.33; DAC ¶¶ 31, 72. Although Plaintiffs imply that PowerSchool did not notify its customers until January 28, 2025, they allege that PowerSchool publicly announced the Incident, on January 7, 2025—only 10 days after learning of the Incident. CAC ¶¶ 40, 43; DAC ¶ 8.

The information implicated in the Incident for parents, students, and teachers varies significantly by individual and included one or more of the following: name, contact information, date of birth, limited medical alert information, Social Security number ("SSN"), and other related information (collectively, the "Data"). CAC ¶ 42; DAC ¶ 33. PowerSchool has stated publicly that it has taken steps, and continues to take steps, to ensure that any potentially exfiltrated Data will not be released. These steps include engaging dark web monitoring services, which, to date, have reported no findings of information related to the Incident on the dark web. *See* CAC ¶ 113; DAC ¶ 43. PowerSchool has also offered two years of complimentary identity

[1] For the purposes of this Motion only, PowerSchool "accept[s] all factual allegations in the complaint as true," *Taylor v. Bosco Credit LLC*, 840 F. App'x 125, 126 (9th Cir. 2020) (unpublished), while reserving all rights to contest the validity of all allegations in the Class Action Complaint and the Direct Action Complaint.

protection and/or credit monitoring services to all involved individuals, regardless of the nature of their specific information involved. CAC ¶ 119.

The Class Plaintiffs seek to represent "all School Districts in the United States that contracted with PowerSchool to provide a Student Information System" in either a nationwide class, or in the alternative, statewide subclasses in New Jersey and New York. CAC ¶¶ 136, 138. The putative class is not limited to school districts with users of PowerSchool's SIS whose Data was actually involved in the Incident, or school districts that actually suffered damages as a result of the Incident. The Direct Plaintiffs bring claims in their individual capacities, but do not allege what damages each Direct Plaintiff purportedly suffered.[2]

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011).[3] The Court—after accepting all well-pled factual allegations as true but giving no such deference to legal assertions, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)—should dismiss a complaint that "fail[s] to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6). The claim for relief must be "plausible," rising "above the speculative level." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) (citing *Ashcroft*, 556 U.S. at 678 and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). The Court "need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences." *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1132 (N.D.

[2] The Direct Plaintiffs failed to identify themselves in the Direct Action Complaint. Upon request from PowerSchool's counsel, the Direct Plaintiffs filed a Notice to Clarify, ECF No. 282, which identifies the 18 Direct Plaintiffs that advance claims through the Direct Action Complaint. PowerSchool joins the arguments Bain sets forth in footnote 9 of its Motion to Dismiss contemporaneously filed on September 25, 2025, with regard to manner in which certain later-added Plaintiffs have asserted their claims.

[3] All quotation marks, alterations, and internal citations are omitted unless otherwise noted.

Cal. 2010). The *Twombly* pleading standard is "particularly demanding in a complex, large-scale data breach class action litigation." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 972 (S.D. Cal. 2014) ("*Sony I*").

## ARGUMENT

### I. NUMEROUS STATES' LAWS APPLY, BUT THE COURT NEED NOT FINALLY RESOLVE THE CHOICE-OF-LAW ISSUE TO GRANT THIS MOTION

The choice-of-law rules of the transferor court—here, the district courts in New Jersey, New York, and California—apply to each Plaintiff's claims. *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 699 (9th Cir. 2011). "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, . . . courts will uphold the contractual choice if it does not violate [the state]'s public policy." *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992). Indeed, most states typically will apply a contractual choice-of-law clause, unless there is no reasonable basis for application of the foreign law, or the foreign law violates state public policy. *See, e.g.*, *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 464-66 (1992) (California); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 399 (S.D.N.Y. 2010) (New York).

Each School District Plaintiff entered into its own agreement with PowerSchool, which consists of or incorporates the MSA.[4] *See* CAC ¶ 66; DAC

---

[4] The Court may properly consider the MSA in the context of this Motion because it is incorporated by reference in Plaintiffs' allegations and is subject to judicial notice. *See In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 928 (S.D. Cal. 2023) (addressing incorporation-by-reference); *see also Solis v. Specialized Loan Servicing, LLC*, 2025 WL 868749, at *3 (C.D. Cal. Feb. 20, 2025) (taking judicial notice of contract on breach of contract claim); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint"). Neither the Class Plaintiffs nor the Direct Plaintiffs allege which version of the MSA or DPA was the operative agreement for each Plaintiff at the time of the Incident. For efficiency with respect to this Motion, PowerSchool addresses the 2024 version with respect to all Plaintiffs, along with the corresponding state-specific DPA.

¶¶ 321, 383, 472, 646, 742, 995, 1042, 1105; Declaration of Anne Johnson Palmer, Ex. A (2024 MSA). The MSA contains a governing law provision, where the parties agreed that "[t]his Agreement will be governed by the laws of the . . . state in which Customer resides or has its principal place of business." MSA § 14.1; DAC ¶¶ 148, 310. The Class Plaintiffs reside in New Jersey and New York, so New Jersey and New York law govern their contract claims. CAC ¶¶ 20-26. The Direct Plaintiffs, reside in fifteen different states, which govern their contract claims. DAC ¶¶ 148, 310.

While the Class Plaintiffs assert that California law should apply to the breach of contract claim brought on behalf of the purported nationwide class, CAC ¶ 150, they plead no reason to ignore the contractual choice-of-law provisions for all Plaintiffs. Regardless, the result—dismissal—is the same whether the Court applies New York, New Jersey, or California law to the Class Plaintiffs' claims. The same is true for the purported class members and the Direct Plaintiffs. CAC ¶ 150; DAC ¶¶ 148, 310. In short, at least seventeen states' laws are likely applicable to Plaintiffs' contract claims.

The tort claims of both sets of Plaintiffs likewise will be governed by a wide swath of states' laws. For the tort claims, the choice-of-law analysis generally will turn on where the injury occurred—here, the state of each Plaintiff's residence. *See In re Accutane Litig.*, 194 A.3d 503, 520 (N.J. 2018). Plaintiffs' respective residences, and the MSA's governing law and forum clauses, therefore favor application of Plaintiffs' home states' laws for the tort claims as well.

For purposes of this Motion, PowerSchool will apply New Jersey, New York, and California law to the Class Plaintiffs' common law claims, consistent with the Class Plaintiffs' own allegations. CAC ¶ 150. As a result of meet-and-confer discussions with counsel for the Direct Plaintiffs regarding streamlining the parties'

---

PowerSchool reserves all rights to argue that the 2022 version of the MSA or some other version is the operative agreement, as applicable.

briefing, PowerSchool will apply the law of Illinois, New Hampshire, New York, Pennsylvania, Tennessee, and Utah to the Direct Plaintiffs' common law claims.[5] Under any states' laws, however, Plaintiffs' common law claims fail.

## II. THE BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED FOR FAILURE TO PLEAD THAT POWERSCHOOL BREACHED THE CONTRACTS OR THAT PLAINTIFFS HAVE INCURRED RESULTING DAMAGES (CLASS ACTION COUNT 1, DIRECT ACTION COUNTS 11, 13, 15, 18, 20, 24, 26, 28, 30, 33, 35, 37, 40, 42 & 44)

Plaintiffs allege that they had contracts with PowerSchool that required PowerSchool to perform certain actions related to the Data received from Plaintiffs' users, including encrypting and safeguarding that Data, and that PowerSchool breached those contracts. CAC ¶¶ 1, 66-68, 153; DAC ¶¶ 52-55. The Class Plaintiffs' breach of contract claim fails because their complaint does not even identify the contractual provisions they claim PowerSchool breached. Although the Direct Plaintiffs cite provisions, they engage in shotgun pleading that does not sufficiently identify a material breach or resulting damages. The Court should therefore dismiss the breach of contract claims. At a minimum, the Court should reject Plaintiffs' attempt to seek damages that the terms of the MSA plainly bar.

### A. By Failing to Identify the Specific Relevant Contractual Provisions, the Class Plaintiffs Fail to Plead a Breach of Contract

The Class Plaintiffs' claims should be dismissed because they fail to identify the terms of the contracts they claim were breached. Under New Jersey law, for example, in actions involving breach of a written contract, a plaintiff must "*at a minimum*, identify the contracts and provisions breached." *Eprotec Pres., Inc. v. Engineered Materials, Inc.*, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011) (emphasis added) (applying New Jersey law). A "[f]ailure to allege the specific provisions of contracts breached is grounds for dismissal." *Id.*; *see also Coda v. Constellation*

[5] PowerSchool reserves its right to respond to arguments raised in opposition to this Motion asserting that the law of other jurisdictions governs the common-law counts brought by any Plaintiff.

*Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 303 (D.N.J. 2019) ("The plaintiff must also specifically identify portions of the contract that were allegedly breached."); *L. Off. of Drew J. Bauman v. Hanover Ins.*, 2023 WL 2238552, at *3 (D.N.J. Feb. 27, 2023). The same is true in California and New York: a plaintiff is required to "allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011); *Ferdous v. Hasan*, 231 N.Y.S.3d 518, 522 (App. Div. 2025).

The Class Plaintiffs allege in a general fashion that PowerSchool was obligated to maintain the confidentiality, privacy, and security of customer data consistent with industry standards, CAC ¶¶ 65, 153, and had a limited ability to use, transfer, or disclose that data, CAC ¶ 153. They also allege that PowerSchool was required to have a data security and privacy plan. CAC ¶ 153(f). At no point, however, do the Class Plaintiffs identify which provisions of their contracts with PowerSchool were purportedly breached. *See Young*, 790 F. Supp. 2d at 1117. The absence of such basic factual allegations is fatal to the Class Plaintiffs' claims. *See id.* (dismissing breach of contract claim for failure to identify what specific contractual provisions the defendant allegedly violated); *Faistl v. Energy Plus Holdings, LLC*, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012); *Owens v. Gaffken & Barriger Fund, LLC*, 2009 WL 3073338, at *14 (S.D.N.Y. Sept. 21, 2009).

**B. The Direct Plaintiffs Fail to Plausibly Allege a Breach of Contract**

The Direct Plaintiffs likewise fail to state a claim for any breach of contract. DAC ¶¶ 316, 319, 323, 328, 331. *First*, the Direct Plaintiffs engage in shotgun pleading that fails to put PowerSchool on notice of which contractual provisions were breached on which grounds or as to which Direct Plaintiffs, and which damages any Direct Plaintiff claims to have suffered. *See* Fed. R. Civ. P. 8(a)(2) (requiring short and plain statement of claim). "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Borrego Cmty.*

*Health Found. v. Hebets*, 2024 WL 1269476, at *6 (S.D. Cal. Mar. 25, 2024) (Benitez, J.); *In re Pareteum Sec. Litig.*, 2020 WL 3448526, at *2 (S.D.N.Y. June 23, 2020) (dismissing 220-page and 107-page complaints with "lengthy quotations and canned allegations, not to mention lack of succinctness, that made the analysis . . . a Sisyphean task").[6] These pleadings "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1208 (S.D. Fla. 2022).

Here, the Direct Plaintiffs rattle off a litany of contractual provisions, with only conclusory allegations of how PowerSchool allegedly breached each of them. For example, the Utah Plaintiffs cite breaches of well over a dozen contractual provisions. DAC ¶¶ 311-53. The New Hampshire Plaintiffs allege breaches of more than a dozen provisions. *Id.* ¶¶ 732-74. The Pennsylvania Plaintiffs identify nineteen provisions (¶¶ 843-91), while the Virginia Plaintiffs allege breaches of eighteen provisions (¶¶ 903-49). The Oklahoma Plaintiffs allege breaches of over a dozen provisions (¶¶ 1032-74). In total, the Direct Plaintiffs allege breaches of at least 100 provisions, but provide no factual allegations as to how each contractual provision was breached.

The Direct Plaintiffs' damages allegations are similarly scattershot. Their complaint alleges twenty-two separate categories of damages, but it is unclear which, if any, Direct Plaintiffs actually suffered any of these purported damages. *See* DAC ¶ 136 (describing damages associated, among others, with "fees for cybersecurity experts," "expenses to transition data from PowerSchool to a different, more secure platform," "expenses for drafting and sending notification letters/emails to affected individuals," "costs for setting up support hotlines or response teams for inquiries," and "loss of public funding correlating with declining student enrollment"). However,

[6] *See also Hart v. Salois*, 605 F. App'x 694, 701 (10th Cir. 2015) (unpublished) (approving Utah district court's "refusal to search through the [shotgun pleadings] to determine if the complaint states a claim for relief"); *Underwood v. Lindamood*, 2016 WL 11804537, at *1 (E.D. Tenn. Jan. 14, 2016); *Rosenberg v. C.R. Bard, Inc.*, 387 F. Supp. 3d 572, 582 (E.D. Pa. 2019).

boilerplate allegations of damages untethered to any particular Direct Plaintiff are not enough to satisfy the Direct Plaintiffs' pleading burden, particularly with respect to their claims for special damages. CAC ¶ 158; DAC ¶¶ 353, 393, 434, 482, 524, 608, 674, 710, 774, 827, 891, 949, 1011, 1074, 1137; *see* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated."); *X Corp. v. Ctr. for Countering Digit. Hate, Inc.*, 724 F. Supp. 3d 948, 972 (N.D. Cal. 2024) ("A specific statement of special damages requires not just the total lump sum, but a statement of the specific items which make up the lump sum."); *Challenge Printing Co. v. Elecs. for Imaging Inc.*, 500 F. Supp. 3d 952, 966-67 (N.D. Cal. 2020). Plaintiffs do not allege that all Direct Plaintiffs—or even any particular Direct Plaintiff—transitioned data from PowerSchool to another platform, or that all—or any—Direct Plaintiffs set up a support hotline. Likewise, it is unclear which, if any, Direct Plaintiffs drafted and sent their own notification letters to affected individuals, rather than accepting PowerSchool's voluntary offer to send notifications on their behalf. Instead, the Direct Plaintiffs re-allege the same twenty-plus boilerplate categories of damages for each state plaintiff group. Their breach of contract claims should be dismissed for failure to allege damages resulting from any alleged breach. *See In re Mednax Servs., Inc.*, 603 F. Supp. 3d at 1208.

*Second*, the Direct Plaintiffs fail to identify a material breach of any provision of the MSA or DPA.[7] The Direct Plaintiffs cite alleged breaches of numerous contractual provisions across the eighteen different Direct Plaintiffs' contracts with PowerSchool. These contractual provisions generally fall into four categories: data confidentiality provisions, duty to supervise provisions, compliance with laws provisions, and incident response and notification provisions. As set forth below, the Direct Plaintiffs fail to allege a breach of any of these provisions.

[7] The Direct Plaintiffs' shotgun pleading approach fails to identify which of the Direct Plaintiffs' contracts contained which particular relevant contractual provision. PowerSchool reserves all rights to challenge Plaintiffs' citations of the underlying contracts as differing from the text of the actual contracts, or as failing to contain the cited provisions.

***Data Confidentiality***: The Direct Plaintiffs cite several contractual provisions that require PowerSchool to "safeguard and maintain the confidentiality of Customer Data," DAC ¶¶ 316, 641, 737, 849, 907, 1037, 1100, and not to "use, sell, rent, transfer, distribute, alter or disclose Customer Data to any third party without the prior written consent of the Customer," DAC ¶¶ 319, 381, 470, 644, 740, 853, 910, 1040, 1103. The Direct Plaintiffs allege that PowerSchool breached these provisions when it supposedly "allowed" criminal actors to export the Data, which constituted a "disclosure" of Data to the criminal actors. *See, e.g.*, DAC ¶¶ 321, 383, 472, 646, 742, 911, 995, 1042, 1105. The Direct Plaintiffs offer no plausible factual allegations that PowerSchool engaged in the "disclosure" of any Data; rather, their complaint alleges at length that PowerSchool was the victim of a cyberattack. DAC ¶¶ 5, 7, 13-14, 31. Faced with the paradox of their pleadings, the Direct Plaintiffs fall back on a contorted reading to suggest that the Incident itself constituted an "unauthorized transfer" of data "to which the [School] Districts did not consent." DAC ¶¶ 1041-42. This claim cannot be reconciled with the terms of the DPA. The DPA contains a section addressing "Data Incident[s]" or "Reportable Data Events," which outlines "various obligations on the part of PowerSchool in the event of a breach of the security of personal data." DAC ¶¶ 331, 656, 752, 999, 1052, 1115. Plainly, the parties did not intend for a cybersecurity incident to constitute some violative "disclosure" of customer data. *See Harmony Rockaway, LLC v. Gelwan*, 160 N.Y.S.3d 294, 296 (App. Div. 2021) ("A court's fundamental objective in interpreting a contract is to determine the parties' intent from the language employed and to fulfill their reasonable expectations.").[8] The Direct Plaintiffs' claims with respect to these provisions should be dismissed because the contract as a whole indicates that neither

---

[8] *See also Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 431 F. Supp. 3d 995, 999 (N.D. Ill. 2020); *Stone & Michaud Ins. v. Bank Five for Sav.*, 785 F. Supp. 1065, 1070 (D.N.H. 1992); *Materials Handlings Enters., Inc. v. Atlantis Techs., LLC*, 563 F. Supp. 3d 387, 394 (W.D. Pa. 2021); *Nash. Underground, LLC v. AMCO Ins.*, 523 F. Supp. 3d 1006, 1011 (M.D. Tenn. 2021); *Bennion v. Stolrow*, 550 P.3d 474, 477 (Utah 2024).

PowerSchool nor Plaintiffs intended for the mere fact of a cybersecurity incident to constitute a breach of these confidentiality-related provisions.

***Duty to Supervise***: The Direct Plaintiffs next invoke provisions requiring PowerSchool to "take reasonable measures to ensure the reliability of . . . Vendor-Data Subprocessors," claiming that PowerSchool "provided inadequate vetting and monitoring of individuals with access to Customer Data." *E.g.*, DAC ¶¶ 916-17. The Direct Plaintiffs allege that the Incident occurred because criminal actors exploited credentials belonging to an individual employed by a subcontractor, Movate, but they do not offer any allegations about PowerSchool's vetting or monitoring of Movate, and they certainly do not allege any facts explaining why such vetting and monitoring was "inadequate." *See* DAC ¶ 72. Instead, the Direct Plaintiffs claim that the mere fact of the Incident "impl[ies] poor access control, training, or oversight," DAC ¶ 917, and they contend that "[t]he Data Breach is itself evidence of PowerSchool's failure to perform its obligations," DAC ¶¶ 325, 990, 1046, 1109. The Direct Plaintiffs' reliance on the mere occurrence of the Incident—unadorned by any well-pled facts regarding PowerSchool's vetting and monitoring practices—does not allege a breach of the duty to supervise provisions.

***Compliance with Laws***: The Direct Plaintiffs also allege breaches of contractual provisions requiring PowerSchool to comply with applicable laws or industry standards. DAC ¶ 878. "Because the Defendants are required by law to adhere to [applicable laws] without receiving any consideration from the Plaintiff[s,] . . . these provisions cannot create contractual obligations." *Brush v. Mia. Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017); *Krichman v. J.P. Morgan Chase & Co.*, 2008 WL 5148769, at *4 (S.D.N.Y. Dec. 8, 2008) (dismissing "attempt to cloak statutory claims in contract theory"); *Cairel v. Jessamine Cnty. Fiscal Ct.*, 2015 WL 8967884, at *4 (E.D. Ky. Dec. 15, 2015). In any event, the Direct Plaintiffs must "do something more to allege a breach of contract claim than merely point to allegations of a statutory violation." *In re Anthem, Inc. Data Breach*

*Litig.*, 162 F. Supp. 3d 953, 982 (N.D. Cal. 2016). While the Direct Plaintiffs identify a litany of different statutes that PowerSchool supposedly violated, they fail to allege facts that would explain how those statutes were violated and thus fail to allege breach of contract on those grounds.[9] The Direct Plaintiffs also identify several statutes that have no application here, as described *supra* Section IX. These statutes, too, cannot support a claim for breach of contract. Likewise, the Direct Plaintiffs identify various industry standards and cybersecurity frameworks, such as ISO 27000, that PowerSchool allegedly violated. *See, e.g.*, DAC ¶¶ 419, 588. These supposed violations relate to requirements to "us[e] data encryption to protect the confidentiality and integrity of private data," "ensur[e] that all employees received appropriate security training," and "conduct[] regular risk assessments and reviews of data security measures." DAC ¶ 419. But the Direct Plaintiffs do not allege any facts about PowerSchool's detection and incident response protocols, risk assessment program, or security training practices, which renders their allegations entirely conclusory. They also make no allegations whatsoever that PowerSchool failed to conduct regular risk assessments—let alone that PowerSchool's risk assessments showed any instances of non-compliance with ISO 27000 or other industry standards. *Anthem*, 162 F. Supp. 3d at 982. The breach of contract claims should be dismissed to the extent they are premised on alleged violations of these statutes or standards. The claim also fails for the separate reason that the Direct Plaintiffs have identified no damages arising from these alleged violations. *See, e.g.*, *Best Med. Int'l, Inc. v. Buchanan Ingersoll & Roomey PC*, 2021 WL 2954103, at *6 (W.D. Pa. Mar. 15,

---

[9] *See* DAC ¶¶ 415, 584, 693(c), 807, 943 (Illinois Personal Information Protections Act; Illinois Student Online Personal Information Act; FTC Act; HIPAA; Vermont Document Safe Destruction Act; unspecified "Vermont statutes that impose specific requirements on operators of online services"; Tennessee Data Accessibility, Transparency, and Accountability Act; FERPA; unspecified Rhode Island "state data breach laws"; unspecified "FTC guidelines on data protection"; and unspecified Virginia "state student privacy laws").

2021) ("[D]amages for breach of contract are not recoverable unless there is a causal relationship between the breach and the loss.").[10]

***Incident Response and Notification***: The Direct Plaintiffs also allege breaches of contractual notice and incident response provisions, where PowerSchool agreed to notify the School Districts of any security incident "without unreasonable delay," or within a specified time period, and to assist in mitigation of any data incident. *See* DAC ¶¶ 598, 871, 972. As further discussed herein, *see supra* Section XI, the Direct Plaintiffs do not plausibly identify any damages arising from the supposed delay in notification (rather than from the Incident itself), and so their claims should be dismissed for lack of damages. *In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2179475, at *27 (D. Mass. July 31, 2025); *Saxon Techs., LLC v. Wesley Clover Sols. - N. Am., Inc.*, 2014 WL 36104, at *3 (N.Y. Sup. Ct. Jan. 2, 2014).

### C. Plaintiffs Seek Damages Barred by the Limitation of Liability Clause

Finally, both the Class and Direct Plaintiffs seek damages that are barred in substantial part by the MSA's limitation of liability clause. In addition to their request for general damages, Plaintiffs seek special damages, expectation damages, consequential damages, and incidental damages. CAC ¶ 158; DAC ¶¶ 353, 393, 434, 482, 524, 608, 674, 710, 774, 827, 891, 949, 1011, 1074, 1137. However, under the limitation of liability provision in the MSA, Plaintiffs cannot recover for "any lost profits or funding, revenues, goodwill, or indirect, incidental, consequential, cover, business interruption, or punitive damages, whether an action is in contract or tort." MSA § 11.1 ("Exclusion of Damages"). This limitation expressly extends to Plaintiffs' tort claims. *Id.* Both the Class and Direct Plaintiffs' breach of contract claims should be dismissed to the extent they seek such damages. *See Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 138 (2d Cir. 2016) (New York courts

[10] *See also Khodeir v. Sayyed*, 323 F.R.D. 193, 202 (S.D.N.Y. 2017); *Hoedt v. Vanderbilt Univ.*, 2025 WL 479396, at *15 (M.D. Tenn. Feb. 12, 2025); *Palmolive Tower Condos., LLC v. Simon*, 409 Ill. App. 3d 539, 547 (2011); *Mahmood v. Ross*, 990 P.2d 933, 939 (Utah 1999).

"routinely enforce[] liability-limitation provisions."); *Intrastate Piping & Controls, Inc., v. Robert-James Sales, Inc.*, 733 N.E.2d 718, 725 (Ill. App. Ct. 2000) (enforcing liability-limitation provision disallowing consequential, incidental, indirect, or contingent damages).[11]

## III. PLAINTIFFS' NEGLIGENCE CLAIMS SHOULD BE DISMISSED AS BARRED BY THE ECONOMIC LOSS DOCTRINE AND FOR FAILURE TO PLEAD A DUTY (CLASS ACTION COUNT 3, DIRECT ACTION COUNT 1)

To plead a negligence claim, Plaintiffs must sufficiently allege duty, breach, causation, and damages. *See, e.g.*, *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1006 (C.D. Cal. 2022) (applying California law).[12] The negligence claims should be dismissed because Plaintiffs seek to recover economic damages that are squarely barred by the economic loss doctrine in multiple states, and they do not allege facts that would plausibly show that PowerSchool owed any duty to them.

### A. Plaintiffs' Negligence Claims Are Barred by the Economic Loss Doctrine in Most States or Are Otherwise Duplicative of the Breach of Contract Claims and Should Be Dismissed

In at least twelve of the states in which Plaintiffs bring claims, they cannot recover in negligence for purely economic losses, especially where, as here, the claim arises under a contract and is not appropriately addressed in tort. Under California

[11] *See also Philippine Airlines, Inc., v. McDonnell Douglas Corp.*, 189 Cal. App. 3d 234, 237 (1987) (California); *Mentis Scis., Inc. v. Pittsburgh Networks, LLC*, 173 N.H. 584, 593 (2020) (New Hampshire); *Kearney & Trecker Corp. v. Master Engraving Co.*, 107 N.J. 584, 599-600 (1987) (New Jersey); *Jim Dan, Inc. v. O.M. Scott & Sons Co.*, 785 F. Supp. 1196, 1198 (W.D. Pa. 1992) (Pennsylvania); *Venture Express, Inc. v. Vanguard Nat'l Trailer Corp.*, 585 F. Supp. 3d 1060, 1078 (M.D. Tenn. 2022) (Tennessee); *Blaisdell v. Dentrix Dental Sys., Inc.*, 284 P.3d 616, 620 (Utah 2012).

[12] *See also D'Ambrosio v. Rajala*, 783 F. Supp. 3d 1077, 1099 (N.D. Ill. 2025) (Illinois); *England v. Brianas*, 166 N.H. 369, 371 (2014) (New Hampshire); *Lettieri v. TD Bank*, 2024 WL 3084393, at *2 (D.N.J. June 21, 2024) (New Jersey); *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (2016) (New York); *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 280 (E.D. Pa. 2024) (Pennsylvania); *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 704 (M.D. Tenn. 2018) (Tennessee); *McCartney v. United States*, 31 F. Supp. 3d 1340, 1343 (D. Utah 2014) (Utah).

law, for example, the economic loss doctrine applies so that "in the absence of (1) personal injury, (2) physical damage to property, (3) a special relationship existing between the parties, or (4) some other common law exception to the rule, recovery of purely economic loss is foreclosed." *Sony I*, 996 F. Supp. 2d at 967. Arizona, Idaho, Illinois, New Hampshire, New Jersey, Pennsylvania, Rhode Island, Utah, Vermont, Virginia, and Washington all also recognize the economic loss doctrine, designed to prevent the law of contract from being displaced by tort. *See Alloway v. Gen. Marine Indus., L.P*, 695 A.2d 264, 275 (N.J. 1997) (New Jersey law).[13] The economic loss doctrine bars a party from skirting contractual provisions, including the parties' negotiated allocation of risk. *Id.*

The School District Plaintiffs clearly allege economic losses. They claim in a general fashion that they incurred damages consisting of "inflated contract prices"; "additional wages"; "increased workload"; cybersecurity expenses and legal fees; costs for transferring data, security implementation, and training; "lost opportunity costs"; credit monitoring costs; identity theft protection expenses; ongoing monitoring costs; notification expenses; hotline costs; and administrative expenses. CAC ¶ 80; DAC ¶¶ 136, 348, 388, 429, 477, 519. These claimed damages "are indisputably economic harms unaccompanied by any claims of physical injury." *Fusion Diagnostic Lab'ys, LLC v. Atila Biosys., Inc.*, 2024 WL 3024915, at *4 (D.N.J. June 17, 2024). None of these claimed damages constitutes a personal injury or

[13] *See also Sullivan v. Pulte Home Corp.*, 232 Ariz. 344, 345 (2013) (Arizona); *Taylor v. Taylor*, 163 Idaho 910, 919 (2018), *as corrected* (July 31, 2018) (Idaho); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 88-89 (1982) (Illinois); *Mentis Scis., Inc. v. Pittsburgh Networks, LLC*, 173 N.H. 584, 593 (2020) (New Hampshire); *Fusion Diagnostic Lab'ys, LLC v. Atila Biosys., Inc.*, 2024 WL 3024915, at *4 (D.N.J. June 17, 2024) (New Jersey); *Rentzell v. Dollar Tree Stores, Inc.*, 2011 WL 4528367, at *2 (E.D. Pa. Sept. 29, 2011) (Pennsylvania); *Hexagon Holdings, Inc. v. Carlisle Syntec Inc.*, 199 A.3d 1034 (R.I. 2019) (Rhode Island); *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 435 P.3d 193, 196 (Utah 2018) (Utah); *Long Trail House Condo. Ass'n v. Engelberth Constr., Inc.*, 59 A.3d 752, 755-56 (Vt. 2012) (Vermont); *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 98-99 (2019) (Virginia); *Nichols v. Peterson NW, Inc.*, 197 Wash. App. 491, 502 (2016) (Washington).

physical damage of the kind remediable in tort. *See Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 817 (7th Cir. 2018) (Plaintiffs "are disappointed in the amounts the card networks' contractual reimbursement process provided. That type of tort claim is not permitted . . . ."); *Aclys Intern. v. Equifax*, 438 F. App'x 689, 692 (10th Cir. 2011) (applying Utah law); *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 499 (1st Cir. 2009); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir. 2008). The economic loss doctrine clearly bars recovery of these damages. Plaintiffs, moreover, do not allege a basis for any recognized exception to the economic loss doctrine to apply. At most, Plaintiffs pay lip service to the special relationship exception, *see* CAC ¶ 176; DAC ¶¶ 144, 158, but that applies only when the parties are not in contractual privity, which Plaintiffs' own allegations make clear is not the case here, *see Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008) (unpublished).[14]

Relatedly, Plaintiffs' negligence claims should be dismissed as entirely duplicative of their breach of contract claims. Courts recognize that a plaintiff cannot maintain a tort claim where it is "based on the same misconduct, and seek[s] the same damages, for the same injury, allegedly caused by the breach of contract." *Triaxx Prime CDO 2006-1 Ltd. v. U.S. Bank Nat'l Ass'n*, 2024 WL 1381354, at *15 (S.D.N.Y. Mar. 31, 2024). This principle is recognized in states that do not apply the economic loss doctrine, and is also addressed by courts in states that do. *See id.*; *Miller v. Klingsporn*, 262 N.E.3d 147, 158 (Ill. App. Ct. 2025) (affirming dismissal of breach of contract claim as duplicative of the professional negligence claim because both claims "alleged the same operative facts" and "sought the exact same

[14] To the extent that Plaintiffs claim their demand for punitive damages seeks *non-economic* damages, their claims are barred by the plain language of the limitation of liability clause in their contracts with PowerSchool. *See* MSA § 11.1 (expressly barring the recovery of "punitive damages, whether in contract ***or in tort***" (emphasis added)). Nor does a request for injunctive relief save Plaintiffs' claims. *See, e.g.*, *Schaefer v. IndyMac Mortg. Servs.*, 2012 WL 4929094, at *3 (D.N.H. Oct. 16, 2016).

damages").[15] Plaintiffs' negligence and breach of contract claims are plainly "based on the same misconduct" and "for the same injury." *Triaxx*, 2024 WL 1381354, at *15. Both claims boil down to allegations that PowerSchool's data security practices were inadequate and that PowerSchool's notification of the Incident was untimely. *Compare* DAC ¶¶ 171-72, 178; CAC ¶¶ 162, 164, 165, 166, *with* DAC ¶¶ 451-52, 460-61; CAC ¶¶ 153(a), 153(e). Moreover, there is no difference in Plaintiffs' claimed injuries. *Compare* CAC ¶¶ 156-57; DAC ¶¶ 169-70, *with* CAC ¶¶ 127, 174; DAC ¶ 463. Because Plaintiffs' negligence claims are wholly duplicative of their breach of contract claims, the negligence claims should be dismissed.

**B. Plaintiffs Do Not Allege a Breach of any Tort Duty Owed to Them**

Regardless of the Court's application of the economic loss doctrine, Plaintiffs' claims still fail. "[A] negligence claim requires a plaintiff to establish that a duty was owed to them." *In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *8 (D.N.J. Feb. 26, 2025). Plaintiffs have not plausibly alleged that PowerSchool owed them a duty beyond its contractual obligations, regardless of the source of duty they allege.

***No General Duty to Safeguard Personal Information***: Even assuming Plaintiffs can allege a general common law duty to safeguard personal information, that duty is not one that PowerSchool would owe ***to Plaintiffs***, schools and school districts that merely collected the personal information belonging to individual students and teachers. It is well settled that a plaintiff cannot recover for breach of a duty owed to others. *See Triaxx*, 2024 WL 1381354, at *15 ("A negligence plaintiff must show that the defendant owed a duty to *it*, not to non-parties capable of enforcing their own rights."). Because the School District Plaintiffs do not—and cannot—

[15] *See also Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 535 (2022); *Anderson v. Trs. of Dartmouth Coll.*, 2020 WL 7129968, at *18 (D.N.H. Dec. 4, 2020); *Fusion Diagnostic Lab'ys*, 2024 WL 3024915, at *4; *Creighton Prop. Holdings, LLC v. Lewis Bros., Inc.*, 2021 WL 4523797, at *2 (W.D. Pa. Oct. 4, 2021); *Harvey v. Wells Fargo Bank, N.A.*, 2019 WL 13195302, at *2 (E.D. Tenn. Sept. 18, 2019); *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 435 P.3d 193, 196 (Utah 2018); *Preventive Energy Sols., L.L.C. v. nCap Ventures 5, LLC*, 2023 WL 7148434, at *9 (10th Cir. 2023).

allege that PowerSchool's purportedly inadequate security systems led to ***their*** information being compromised, Plaintiffs cannot maintain their negligence claim based on some general duty to safeguard personal information. *Cf. In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *9 (D.N.J. Feb. 26, 2025) (finding no duty owed by the defendant to the plaintiffs because the defendant, the "storing entity," was not the defendant who actually collected plaintiffs' PII/PHI).

***No Special Relationship***: In alleging that PowerSchool owed them a duty, Plaintiffs claim that there was a "special relationship" between themselves and PowerSchool because Plaintiffs "entrusted PowerSchool with the confidential PII of its students and faculty members." DAC ¶ 158; *see* CAC ¶ 176. But merely entrusting another with personal information does not create a special relationship. *Cf., e.g.*, *Fero Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 773-74 (W.D.N.Y. 2017) (no "special relationship of trust and confidence" where plaintiffs alleged that they "provided their personal information and received assurances about the [defendants'] data security"); *Adkins v. Everest Glob. Servs., Inc.*, 2024 WL 3887127, at *9 (D.N.J. Aug. 21, 2024) (similar).

Courts are both "hesitant to extend liability to cases of third-party criminal behavior" and "hesitant to create special relationships beyond a few narrow and historical categories." *E.g.*, *Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC*, 485 F. Supp. 3d 885, 896-97 (E.D. Mich. 2020). "If Plaintiff[s'] arguments were to hold, any sophisticated entity who provided cloud data hosting services to another sophisticated entity could be held liable for a myriad of precautions beyond their contractual obligations that they *could* have taken—but did not—to prevent a criminal third-party cyberattack." *Id.* at 898. The Court should decline to take such a drastic step.

***No Duty under Federal or State Law***: Plaintiffs claim that PowerSchool breached certain duties under HIPAA, the FTC Act, and/or other state laws. *See* DAC ¶¶ 159-61; CAC ¶ 172. As addressed more fully in Section IV below, Plaintiffs have

no private right of action under HIPAA or the FTC Act, and they cannot create one through a negligence claim. *See Harris v. Nationwide Mut. Fire Ins.*, 367 F. Supp. 3d 768, 776 (M.D. Tenn. 2019) ("Courts are leery of imposing a state common law duty based on a federal statute lacking a private right of action."); *see also, e.g.*, *In re SuperValu, Inc.*, 925 F.3d 955, 964 (8th Cir. 2019) (concluding that "Illinois is unlikely to recognize a legal duty enforceable through a negligence action arising from the FTCA"); *Brown v. State Farm Mut. Auto. Ins.*, 2025 WL 81340, at *6 (N.D. Ill. Jan. 13, 2025) (same as to HIPAA).

## IV. PLAINTIFFS' NEGLIGENCE PER SE CLAIMS FAIL (DIRECT ACTION COUNT 2)

The Direct Plaintiffs attempt to plead negligence per se as a separate cause of action,[16] while the Class Plaintiffs attempt to plead negligence per se as a basis for their negligence claim. Both pleading attempts fail. To begin with, negligence per se, whether alleged as a separate count or as a theory of negligence, should be dismissed for the same reasons as Plaintiffs' negligence claims. *See, e.g.*, *Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 72 (S.D.N.Y. 2022) (dismissing negligence per se for same reasons as negligence claim).

The negligence per se claims should be dismissed for still other reasons. The two principal statutes Plaintiffs invoke, HIPAA and the FTC Act, do not afford a private right of action. CAC ¶¶ 172-73; DAC ¶¶ 179, 182; *see In re MOVEit*, 2025 WL 2179475, at *11 (dismissing under South Carolina and Tennessee law). Plaintiffs cannot assert claims for negligence per se based on statutes that lack a private cause of action. *See, e.g.*, *Abdale v. N. Shore-Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850, 859 (Sup. Ct. 2015) (dismissing negligence per se claim based on HIPAA); *Orthman v. Premiere Pediatrics, PLLC*, 545 P.3d 124, 134-35 (Okla. Civ.

[16] After the parties' meet-and-confer discussions, the Direct Plaintiffs agreed to dismiss their negligence per se claims in states where no independent cause of action exists. The parties submitted a joint motion to dismiss those claims, which the Court granted. *See* ECF No. 301.

App. 2024) (dismissing negligence per se claims based on HIPAA and the FTC Act); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1087 (N.D. Cal. 2023) (same under HIPAA), *motion to certify appeal denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024). This is because "[i]f mere proof of a violation of the [statute] were to establish negligence per se, plaintiff would effectively be afforded a private right of action that the [statute] does not recognize." *Lugo v. St. Nicholas Assoc.*, 2 Misc. 3d 212, 218 (N.Y. Sup. Ct. 2003). And to the extent that Plaintiffs argue state statutory or other violations, they fail to identify which statutes may apply, much less how PowerSchool supposedly violated those statutes. At bottom, Plaintiffs' reliance on the negligence per se doctrine does not rescue their negligence claim.

## V. PLAINTIFFS' UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED (CLASS ACTION COUNT 7, DIRECT ACTION COUNT 3)

Plaintiffs claim that PowerSchool was unjustly enriched because they paid PowerSchool for services that it allegedly failed to provide. *See* CAC ¶¶ 249-53; DAC ¶¶ 195-99. Plaintiffs' unjust enrichment claims should be dismissed for several reasons.

*First*, the Class Plaintiffs' unjust enrichment claims under California and New Jersey law should be dismissed outright because these states do not recognize unjust enrichment as a separate cause of action.[17] *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 973-74 (S.D. Cal. 2012) ("Courts consistently have held that unjust enrichment is not a proper cause of action under California law."); *Adkins*, 2024 WL 3887127, at *13 ("New Jersey does not recognize unjust enrichment as an independent tort cause of action.").

*Second*, Plaintiffs' claims under New York, Pennsylvania, Tennessee, and Utah law fail because they do not allege that they are without an adequate remedy at law.

[17] Following the meet-and-confer process, the Direct Plaintiffs agreed to drop the unjust enrichment claims under states' laws that do not recognize unjust enrichment as a separate cause of action. *See* ECF Nos. 300, 301 (dismissing under Illinois and New Hampshire law).

Plaintiffs assert a number of other claims in both contract and tort based on the same conduct and therefore cannot allege the unavailability of another remedy. *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) (non-precedential) (summary order) ("Unjust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists."); *Fish Net, Inc. v. ProfitCenter Software, Inc.*, 2011 WL 1235204, at *9 (E.D. Pa. Mar. 31, 2011) (Pennsylvania); *Kalos, LLC v. White House Vill., LLC*, 2024 WL 4579299, at *4 (Tenn. Ct. App. Oct. 25, 2024) (Tennessee); *Rain Int'l, LLC v. Cook*, 2023 WL 1954526, at *4 (D. Utah Feb. 10, 2023) (Utah).

*Third*, Plaintiffs' claims should be dismissed across all relevant states because a claim for unjust enrichment does not lie where the parties have a contract governing the same subject matter. *See, e.g.*, *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001) ("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights."); *Gujja v. Inpatient Servs. of N.J., P.C.*, 2022 WL 2834998, at *3 (D.N.J. July 20, 2022) ("[C]ourts in this District regularly dismiss unjust enrichment claims that are duplicative of a complaint's breach of contract claims when the governing agreement is undisputed."); *Ashwood Cap., Inc. v. OTG Mgmt., Inc.*, 948 N.Y.S.2d 292, 299 (App. Div. 2012) (similar, New York); *Thomas v. TransCore, LP*, 2024 WL 4820782, at *3 (M.D. Pa. Nov. 18, 2024) (similar, Pennsylvania); *Duke v. Browning-Ferris Indus. of Tenn., Inc.*, 2006 WL 1491547, at *9-10 (Tenn. Ct. App. May 31, 2006) (similar, Tennessee); *Rain Int'l*, 2023 WL 1954526, at *4 (similar, Utah). Plaintiffs' failure to plead other claims does not permit them to pursue an unjust enrichment claim as a fallback: "unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).

*Finally*, the unjust enrichment claims should be dismissed because Plaintiffs do not adequately allege that they conferred a benefit upon PowerSchool that it would be

unjust for PowerSchool to retain.[18] *See In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *6 (S.D.N.Y. Feb. 24, 2022). Instead, as in *Waste Management*, it is the "third-party hackers [that] benefitted at the expense of both the plaintiffs and [the defendant], and it is *that person or persons* which in equity and good conscience owes restitution to the plaintiffs." *Id.* (emphasis added); *see also In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) ("If anything, the consolidated amended complaint suggests that third-party hackers, not [d]efendants, are the ones who benefitted from the Data Breach."); *In re Numotion Data Incident Litig.*, 2025 WL 57712, at *10 (M.D. Tenn. Jan. 9, 2025) (dismissal where plaintiffs did not allege "facts suggesting it would be inequitable for [the defendant] to retain the benefit without paying the value thereof, given that it was the hackers—not [the defendant]—who benefited from the Data Incident"). The same is true here: an unauthorized third party engaged in criminal conduct to access the Data, at the expense of both PowerSchool and its customers.

## VI. <u>PLAINTIFFS' FRAUDULENT CONCEALMENT CLAIM FAILS FOR LACK OF DUTY (DIRECT ACTION COUNT 5)</u>

The Direct Plaintiffs claim that PowerSchool fraudulently concealed its supposedly inadequate cybersecurity system, as well as its supposed use of data to compile student "dossiers" that PowerSchool allegedly shared with third parties

---

[18] To succeed on an unjust enrichment claim, a plaintiff must demonstrate that the defendant's retention of the benefit would be unjust. *See, e.g.*, *In re Sony*, 903 F. Supp. 2d at 974 (describing unjust enrichment as "the result of a failure to make restitution under circumstances where it is equitable to do so"); *Cooper v. Samsung Elecs. Am., Inc.*, 2008 WL 4513924, at *9 (D.N.J. Sept. 30, 2008) (similar under New Jersey law), *aff'd*, 374 F. App'x 250 (3d Cir. 2010); *In re Waste Mgmt.*, 2022 WL 561734, at *6 (similar under New York law); *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 569 (W.D. Pa. 2015) ("[T]he unjust element of an unjust enrichment claim is the most significant one under Pennsylvania law."); *In re Numotion Data Incident Litig.*, 2025 WL 57712, at *10 (M.D. Tenn. Jan. 9, 2025) (similar under Tennessee law); *In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*, 2025 WL 1135726, at *22 (D. Utah. Apr. 17, 2025) (retention of the benefit without payment must be inequitable).

without the Direct Plaintiffs' consent. This claim should be dismissed for two reasons. *First*, Direct Plaintiffs fail to meet the heightened pleading standard required by Rule 9(b). *See In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1192 (D. Or. 2016). Their claim rests on allegations that PowerSchool made false statements on its website that it "invest[ed] in updated security technology," "adhere[d] to strict security regulations," and marketed itself as an "industry leader for protected private data." DAC ¶ 218. Plaintiffs also suggest that PowerSchool made "specific, material representations to the School Districts in advertisements, contracts, communications, and policy documents that student data would be handled in accordance with privacy laws and not exploited." DAC ¶ 119. The Direct Plaintiffs further claim that PowerSchool failed to disclose that it used embedded tracking technologies and "aggregated internal and external data to create detailed digital profiles ('dossiers') of students." DAC ¶¶ 223, 229. As to each of these purported representations, the Direct Plaintiffs entirely fail to allege the "who, what, when, where, and how" required to sustain a claim sounding in fraud. *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124-26 (9th Cir. 2009). The Direct Plaintiffs do not state what these representations actually were, when PowerSchool made them, or whether they even saw or heard these representations. Nor do the Direct Plaintiffs allege a factual basis for challenging the purported representations as false.

With respect to PowerSchool's representations regarding its cybersecurity program, the Direct Plaintiffs simply parrot the elements of the claim, DAC ¶¶ 218-19, and then offer conclusory assertions that PowerSchool "knew its security was inadequate and failed to say so." *In re MOVEit*, 2025 WL 2179475, at *45; *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 495 (S.D.N.Y. 2017) (allegations that defendants stand to gain economically from fraud do not satisfy the heightened pleading requirements). As addressed *infra* Section X.B.1, courts have concluded that aspirational statements about a company's cybersecurity program "do not constitute an unlimited guaranty that patient information could not be stolen or that

computerized data could not be hacked" and therefore do not support a claim of fraud. *Abdale*, 19 N.Y.S.3d at 859. Further, any statements that PowerSchool supposedly made on its website, advertising, or anywhere outside the parties' contract are irrelevant, because the MSA expressly provides that "[e]ach Party acknowledges that it has not made any promise or representation that is not expressed in this Agreement." MSA § 14.9.

As to their "dossier" allegations, the Direct Plaintiffs do not allege sufficient facts to plausibly allege that their SIS data was ever used to create the alleged "dossiers," or that the SIS product was even involved in the tracking and monitoring activities alleged. *See* DAC ¶¶ 91-129. To the contrary, the Direct Plaintiffs allege that PowerSchool collected data from a suite of "other" education platforms, "such as the Naviance college/career planning tool," which is a separate product from the SIS not involved in the Incident. DAC ¶ 95. For all these reasons, the Direct Plaintiffs did not allege any actionable representation or omission.

*Second*, the Direct Plaintiffs do not allege that PowerSchool had a duty to disclose the allegedly concealed information to them separate and apart from its duty to perform under their contracts. "[T]he duty to disclose must exist *separately* from the duty to perform under [a] contract." *Protex Indus. (H.K.) Ltd. v. Vince Holding Corp.*, 748 F. Supp. 3d 234, 253 (S.D.N.Y. 2024); *Inv. Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 77 (1st Cir. 2001); *Moore v. Pendavinji*, 260 N.E.3d 111, 121 (Ill. App. Ct. 2024); *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1022 (10th Cir. 2018), *as revised* (Apr. 13, 2018); *Shah v. Racetrack Petroleum Co.*, 338 F.3d 557, 571 (6th Cir. 2003). A general duty to disclose does not exist absent special circumstances where "the plaintiff and defendant are in a fiduciary or confidential relationship and where plaintiff places trust and confidence in defendant thereby placing defendant in a position of influence and superiority over

plaintiff." *Fleury v. Gen. Motors LLC*, 654 F. Supp. 3d 724, 735 (N.D. Ill. 2023).[19] None of these circumstances is alleged here. The Direct Plaintiffs effectively concede that no fiduciary relationship existed, *see* DAC ¶ 237 (conclusory allegation of "fiduciary-like" relationship), and their contracts with PowerSchool in fact disclaim any fiduciary relationship, MSA § 14.12 ("This Agreement does not create . . . a fiduciary . . . relationship between the Parties."). Plaintiffs cannot rely on mere allegations of providing their users' data to PowerSchool to create a fiduciary duty. *Lazar v. Int'l Shoppes, LLC*, 2025 WL 1475627, at *4 (E.D.N.Y. May 22, 2025) ("[T]he fact that defendants stored their PII and PHI does not mean that defendants were under a duty to act for or to give advice for the[ir] benefit.").

The Direct Plaintiffs allege in passing that PowerSchool had a duty to disclose the creation of student dossiers to the school districts because it had "superior knowledge of how shared data could be used by third parties." DAC ¶ 234. But the Direct Plaintiffs do not explain what "superior knowledge" PowerSchool had regarding these third parties' use of shared data, or why the Direct Plaintiffs could not discover this information independently. Without more, Plaintiffs cannot allege that PowerSchool had any duty to Plaintiffs outside their contractual relationship.

## VII. PLAINTIFFS FAIL TO ALLEGE MULTIPLE ELEMENTS NECESSARY TO THEIR CFAA CLAIMS (CLASS ACTION COUNT 4, DIRECT ACTION COUNT 4)

The CFAA is an anti-hacking statute. *See United States v. Nosal*, 676 F.3d 854, 857-58 (9th Cir. 2012). "CFAA violations require a person to engage in the hacking . . . ." *Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, 2015 WL 1289984, at *4 (N.D. Cal. Mar. 20, 2015). Nowhere do Plaintiffs allege any such facts. Rather, Plaintiffs' allegations demonstrate that PowerSchool was the *victim* of a cyberattack.

[19] *See also Lamprey v. Britton Constr., Inc.*, 163 N.H. 252, 263 (2012); *Gaddy v. Corp. of Pres. of Church of Jesus Christ of Latter-Day Saints*, 665 F. Supp. 3d 1263, 1290 (D. Utah 2023); *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 861 (E.D. Pa. 2015); *Saltire Indus., Inc. v. Waller, Landsden, Dortch & Davis, PLLC*, 491 F.3d 522, 528 (6th Cir. 2007).

*See, e.g.*, CAC ¶ 1 ("hackers gained access to the SIS"). As such, the CFAA is plainly inapplicable. *See Sifuentes v. Corewell Health*, 2025 WL 1802395, at *1 (W.D. Mich. July 1, 2025) (dismissing CFAA claim where plaintiff did "not allege[] any intentional act" by defendant and instead alleged that "the unauthorized access was done by third party hackers"); *Staggers v. Pub. Def. of Ind.*, 2024 WL 1471113, at *2 (S.D. Ind. Mar. 1, 2024) (dismissing CFAA claim where "the complaint allege[d] that the defendant was the victim of a hacker").

In an effort to shoehorn their case to fit the CFAA, Plaintiffs claim that PowerSchool accessed the "de-anonymized and/or unencrypted" Data without authorization, or exceeded its authorized access by enabling certain personnel and subcontractors to access such Data. *See* CAC ¶¶ 198, 200; DAC ¶¶ 205, 209, 210. Plaintiffs point to several provisions of the CFAA as the basis for this alleged liability. *See* CAC ¶ 185 (citing 18 U.S.C. §§ 1030(a)(2)(C) & (a)(5)(C)); DAC ¶¶ 201-02 (citing 18 U.S.C. §§ 1030(a)(4) & 1030(a)(5)(B)).[20] Each of these CFAA provisions requires the defendant to have accessed a computer either "without authorization" or in a manner that "exceeds authorized access," and to have done so either knowingly or intentionally. Additionally, a plaintiff must allege they have suffered "damage or loss by reason of [the CFAA] violation." 18 U.S.C. § 1030(g). Because Plaintiffs have failed to plausibly allege any of these elements, their CFAA claim must be dismissed.

### A. Plaintiffs Do Not Plausibly Allege that PowerSchool Accessed Any Data Without Authorization or Exceeded its Authorized Access

[20] Plaintiffs further allege a conspiracy between PowerSchool and Bain under 18 U.S.C. § 1030(b). *See* CAC ¶¶ 185(c), 206. A claim under § 1030(b) requires an actionable underlying CFAA violation. *See Calendar Rsch. LLC v. StubHub, Inc.*, 2020 WL 4390391, at *14, *26 (C.D. Cal. May 13, 2020). Because Plaintiffs have failed to state a claim under the CFAA, their conspiracy claim under § 1030(b) should be dismissed. PowerSchool also joins and incorporates here the arguments Bain sets forth in its Motion to Dismiss (filed contemporaneously on September 25, 2025) with respect to the CFAA claim, which fail as to PowerSchool for the same reasons.

None of the conduct alleged by Plaintiffs plausibly suggests that PowerSchool accessed Data without authorization, or that PowerSchool exceeded its authorized access. The Ninth Circuit has held that access "without authorization" occurs "where a person 'accesses a computer without any permission at all,' whereas a person 'exceeds authorized access' where the person 'has permission to access the computer, but accesses information on the computer that the person is not entitled to access.'" *Universal Prot. Serv., LP v. Coastal Fire & Integration Sys., Inc.*, 2023 WL 4042582, at *7 (S.D. Cal. June 15, 2023) (quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009)). Plaintiffs' claims fail on both fronts.

*First*, Plaintiffs fail to plausibly allege that PowerSchool's conduct constitutes unauthorized access. The Direct Plaintiffs allege that they transmitted Data to PowerSchool. *See* DAC ¶ 205. Notwithstanding this allegation, they confusingly suggest that PowerSchool somehow accessed "de-anonymized and/or unencrypted" Data without authorization. DAC ¶ 210. Plaintiffs' own allegations elsewhere in the complaint contradict that assertion. They allege, for example, that PowerSchool "fail[ed] to de-aggregate, de-identify, or otherwise encrypt data." DAC ¶ 209; *see* DAC ¶ 208. The Direct Plaintiffs can hardly claim that PowerSchool was "without any permission at all" accessing the de-anonymized and/or unencrypted Data while also claiming that PowerSchool was responsible for anonymizing and encrypting that same Data. *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009).

The Class Plaintiffs' allegations are similarly vague and self-contradictory. They repeatedly offer the bald assertion that PowerSchool engaged in unauthorized access, including through the use of a purported access tool, *see, e.g.*, CAC ¶¶ 191, 195, but also suggest that PowerSchool used the Data in a manner that was inconsistent with its obligations, not that it accessed the Data without authorization, *see* CAC ¶ 192 (listing limitations on the use of the Data to which PowerSchool was supposedly subject). Because the Ninth Circuit has made clear that the CFAA "targets the unauthorized procurement or alteration of information, ***not its misuse or***

***misappropriation***," the Class Plaintiffs do not plausibly allege a claim under the "without authorization" prong of the CFAA. *Nosal*, 676 F.3d at 863 (emphasis added); *see AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1181 (E.D. Cal. 2010) (concluding defendants did not violate the CFAA even where their conduct "may have constituted an inappropriate use of the information"); *Lakeland Tours, LLC v. Bauman*, 2014 WL 12570970, at *4 (S.D. Cal. Feb. 11, 2014) ("[T]he CFAA is to be applied narrowly to punish hacking . . . , not . . . the circumvention of use policies.").

*Second*, PowerSchool did not exceed its authorized access under §§ 1030(a)(2)(C) or (a)(4) by allowing its personnel or subcontractors to access the Data. To determine whether a defendant's access exceeds authorization, courts consider the relevant agreements between the parties that govern use of the data at issue. *See AtPac*, 730 F. Supp. 2d at 1181 (reviewing license agreement in considering whether defendants exceeded their authorized access). The MSA, which Plaintiffs invoke in their complaints, includes provisions that specifically authorize the disclosure of the Data to PowerSchool's subcontractors. MSA § 3.2.[21] These permissions allowed PowerSchool to share the Data exactly as it is alleged to have done, by providing access to subcontractors who needed such access to perform their duties and to provide technical support for PowerSchool's services. Again, at most, Plaintiffs take issue with PowerSchool's alleged misuse of the Data, which is not actionable under the CFAA. *See Nosal*, 676 F.3d at 863.

### B. Plaintiffs Fail to Allege that PowerSchool Acted with the Required Knowledge or Intent

Each of the CFAA provisions that Plaintiffs invoke requires the defendant to have acted either knowingly or intentionally. *See* 18 U.S.C. §§ 1030(a)(2)(C) ("intentionally"), (a)(4) ("knowingly and with intent to defraud"), (a)(5)(B)

[21] "Customer hereby grants all such rights and permissions in or relating to Customer Data to PowerSchool, its subprocessors and the PowerSchool personnel as are necessary to provide, perform and deliver the Services." MSA § 3.2.

("intentionally"), (a)(5)(C) ("intentionally"). Plaintiffs, however, allege negligence on the part of PowerSchool. *See, e.g.*, CAC ¶ 198; DAC ¶ 204(f). Even Plaintiffs' allegations that suggest knowing or intentional conduct are couched in terms of negligence. *See, e.g.*, CAC ¶¶ 198(d) ("PowerSchool acted negligently when it[] . . . [k]nowingly allowed its personnel to access data stored in the Protected Computers . . . ."), (e) ("PowerSchool acted negligently when it[] . . . [i]ntentionally enabled its personnel to access the Protected Computers via backdoor access to the SIS . . . ."); DAC ¶ 208 (claiming that "PowerSchool intentionally caused damage without authorization" by "failing to de-aggregate data and providing administrative level access without multi-factor authentication security").

"[B]are bones recitation of the elements of a legal claim" cannot withstand a motion to dismiss, including when it comes to the CFAA.[22] *Margolis v. Apple Inc.*, 743 F. Supp. 3d 1124, 1133 (N.D. Cal. 2024). This is particularly true where the defendant has been the victim of a cyberattack. *See Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *3 (N.D. Cal. Nov. 20, 2020). As the court in *Nowak* put it, where the plaintiff does not allege that the defendant "actually engaged in any hacking or that [the d]efendant had the requisite knowledge of the hacking itself"—and instead simply claims that the defendant "had actual or constructive knowledge of its inadequate security systems, which enabled the hacking to occur"—there is no allegation of knowing or intentional conduct. *Id.* Plaintiffs' allegations fail for precisely the same reason.

### C. Plaintiffs Do Not Plead the Requisite Damages

Plaintiffs also fail to adequately allege the sort of "damage" or "loss" that would allow them to proceed under the CFAA. *See* 18 U.S.C. § 1030(g).[23] "The

---

[22] This is particularly true of Plaintiffs' claims under 18 U.S.C. § 1030(a)(4), as "Rule 9(b) plainly applies to [the provision's] requirement that the defendant's acts further the intended fraud." *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *3 (N.D. Cal. Nov. 20, 2020).

[23] For purposes of the CFAA, "the term 'damage' means any impairment to the integrity or availability of data, a program, a system or information." 18 U.S.C.

statutory definitions of 'damage' and 'loss' . . . focus on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data." *Van Buren v. United States*, 593 U.S. 374, 391-92 (2021). "[T]he CFAA creates the right to recover damages and losses related to a computer or system, not damages that flow from the use of unlawfully obtained information." *Delacruz v. State Bar of Cal.*, 2017 WL 7310715, at *6 (N.D. Cal. June 21, 2017); *see Fraser v. Mint Mobile, LLC*, 2022 WL 1240864, at *5 (N.D. Cal. Apr. 27, 2022) (statutory definitions of "damage" and "loss" do not address "remediating misuse of sensitive information").

Here, the Class Plaintiffs allege damages consisting of "the cost of responding to the Data Breach, conducting damages assessments, restoring SIS data, programs, systems, or information [and] costs incurred from overpayment of PowerSchool's security services." CAC ¶ 207. The Direct Plaintiffs merely allege that "PowerSchool's acts . . . caused actual monetary loss in terms of overpayment for services," and "[t]he cost of the Data Breach exceeds $5,000." DAC ¶¶ 212-13. Plaintiffs do not allege any form of damage to a computer system and cannot state a claim under the CFAA simply by reciting the statutory definition of "loss" or by offering the bare assertion that the "cost" of the Incident exceeds the CFAA's $5,000 threshold. *See* CAC ¶ 207; DAC ¶¶ 212-13. Courts in the Ninth Circuit have dismissed precisely such allegations, and the Court should do the same here. *See Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1070 (N.D. Cal. 2018) ("A mere conclusion of damage or loss is insufficient."); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1055 (N.D. Cal. 2025) (similar).

---

§ 1030(e)(8). "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11).

## VIII. THE CDAFA CLAIM FAILS BECAUSE POWERSCHOOL DID NOT PARTICIPATE IN THE HACKING AND DID NOT ACT KNOWINGLY (CLASS ACTION COUNT 5)

The Class Plaintiffs' claim under California's Comprehensive Data Access and Fraud Act ("CDAFA") piggybacks on their CFAA allegations and merely recites the language of the statute. CAC ¶ 222. Plaintiffs' claims under any of CDAFA's provisions fail for two independent reasons.[24]

*First,* the CDAFA does not apply because PowerSchool did not "actually participate[] in unauthorized hacking." *Claridge v. RockYou, Inc*., 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011); *Nowak*, 2020 WL 6822888, at *5 (dismissing CDAFA claim because "Plaintiff fail[ed] to allege that Defendant was involved in the hacking itself"). Courts have recognized that the CDAFA is not meant "to impose liability on defendant for *third party* hackers' unauthorized access of and tampering with defendant's system." *Claridge*, 785 F. Supp. 2d at 863; *see CTI III, LLC v. Devine*, 2022 WL 1693508, at *4 (E.D. Cal. May 26, 2022) (dismissing claim because plaintiff "alleges no facts that [defendant] actively participated in [hacking]"). That is precisely the case here, as Plaintiffs acknowledge. *See* CAC ¶ 1.

*Second*, just as addressed with respect to the CFAA claim, *see supra* Section VII, PowerSchool did not access any data without permission. PowerSchool had contractual permission to access the Data received from Plaintiffs, *see* CAC ¶ 68(a); DAC ¶ 4, and so it cannot be said to have knowingly accessed the Data without authorization. *Claridge* rejected the Class Plaintiffs' theory that a defendant with permission to access data somehow provides unauthorized access to hackers through an exploited security vulnerability. *See* 785 F. Supp. 2d at 863. In *Claridge*, the court dismissed a claim premised on allegations that the defendant, a software company whose application the plaintiff used, violated the CDAFA by "provid[ing] a means for hackers to access defendant's computer system," and "by failing to establish

[24] PowerSchool also joins and incorporates here the arguments Bain sets forth in its Motion to Dismiss (filed contemporaneously on September 25, 2025) with respect to the CDAFA claim, which fails as to PowerSchool for the same reasons.

commercially reasonable security methods to protect the PII on its system." *Id.* The Class Plaintiffs' CDAFA claim rests on the same flawed premise and should be dismissed.

## IX. <u>THE ILLINOIS BIOMETRIC PRIVACY ACT CLAIM FAILS BECAUSE POWERSCHOOL IS NOT "IN POSSESSION OF" PLAINTIFFS' BIOMETRIC DATA (DIRECT ACTION COUNT 17)</u>

The Illinois' Biometric Privacy Act ("BIPA") regulates the collection, use, and handling of biometric data. It applies only to entities "in possession of" biometric data. 740 Ill. Comp. Stat. 14/15(e).

The Direct Plaintiffs' claim fails at the threshold because they do not allege that they themselves provided any biometric information to PowerSchool. Plaintiffs therefore are not "person[s] aggrieved" with the right to bring a private action under the BIPA. *See* 740 Ill. Comp. Stat. 14/20(a); DAC ¶ 460. A person "aggrieved" must have a "substantial grievance" and a "denial of some personal or property right." *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1205 (Ill. 2019). While individual users may possess "a right to privacy in and control over their [own] biometric identifiers and biometric information," the School District Plaintiffs have no similar right over individual's biometric data. *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020) (BIPA protects personal privacy rights "closely analogous to" rights protected under common-law invasion of privacy claims.). Because the School Districts do not possess a privacy right in the biometric data purportedly at issue, they are not "person[s] aggrieved" under the statute.

The Court's analysis should end there, but to state a claim with respect to biometric information, Plaintiffs must allege that PowerSchool "exercised a[] form of control over the data" and how PowerSchool "disseminated the data." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020). The Incident involved a single PowerSchool product—the SIS. Plaintiffs do not allege that any notifications indicated that biometric information or PowerSchool Mobile—the

smartphone application the Direct Plaintiffs allege students logged into with biometric identifiers—were within the scope of the Incident. DAC ¶¶ 456, 461.

Nor do Plaintiffs plausibly allege that PowerSchool collected their users' biometric information in the first place. DAC ¶ 461. Plaintiffs simply offer the bald assertion that PowerSchool collects biometric information of students because it "enables students and others to log in to its smartphone application, PowerSchool Mobile, by using biometric identifiers including Face ID, Touch ID, or Secure ID." DAC ¶¶ 34, 456. As other courts have recognized, allegations that PowerSchool enabled users to log in to a mobile app with Face ID or Touch ID do not suffice to allege that PowerSchool "receives (or can receive) such data." *G.T. v. Samsung Elecs. Am. Inc.*, 742 F. Supp. 3d 788, 796 (N.D. Ill. 2024) (dismissing BIPA claim where plaintiff merely alleged that defendant controlled an app and its technology, but not that defendant had control over biometric information generated from the app). For all of these reasons, the BIPA claim should be dismissed.

## X. <u>THE CONSUMER PROTECTION STATUTE CLAIMS FAIL (CLASS ACTION COUNT 6, DIRECT ACTION COUNTS 12, 14, 16, 19, 21, 22, 25, 27, 29, 31, 34, 38, 41, 43 & 45)</u>

The Class Plaintiffs bring a claim under the California Unfair Competition Law ("UCL"), and the Direct Plaintiffs bring claims under the state consumer protection statutes of 14 additional states (collectively, the "Consumer Protection Claims").[25] Plaintiffs allege that PowerSchool engaged in deceptive, unlawful, unfair, or unconscionable conduct because it supposedly failed to implement and maintain reasonable data security measures consistent with its purported public statements. The Consumer Protection Claims suffer from several threshold defects. *First*, the Class Plaintiffs' UCL claim should be dismissed because those Plaintiffs are not located in California and do not allege that they lack an adequate remedy at law. *Second*, the Direct Plaintiffs' Consumer Protection Claims under the statutes of New

[25] Following the meet-and-confer process, the Direct Plaintiffs agreed to dismiss their claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count 36). *See* ECF Nos. 300, 301.

York, Rhode Island, Utah, Vermont, and Virginia should be dismissed because Plaintiffs cannot allege, as required, that the product at issue was primarily for personal, family, or household use. *Third*, the Direct Plaintiffs' Consumer Protection Claims under the statutes of Oklahoma and Rhode Island fail because they are preempted by the statutes' safe harbor provisions. The remaining Consumer Protection Claims should be dismissed for failure to allege at least one element, including: (i) any actionable representations with the requisite particularity, and/or causation and/or reliance, or (ii) unlawful, unfair, or unconscionable conduct.

### A. Threshold Deficiencies Compel the Dismissal of Plaintiffs' Claims under the UCL (Class Action Count 6) and the Consumer Protection Statutes of New York, Oklahoma, Rhode Island, Utah, Vermont, and Virginia (Direct Action Counts 12, 21, 22, 25, 34, 38 & 43)

#### *1. The Class Plaintiffs Do Not State a Claim Under the UCL Because They Cannot Sue under the California Statute and Fail to Allege that They Lack an Adequate Remedy at Law (Class Action Count 6).*

*First*, the Class Plaintiffs, none of whom are located in California, cannot bring claims under the UCL. The application of California law to the Class Plaintiffs is limited by the presumption against extraterritorial application. *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 & n.9 (Cal. 2011) (the presumption gives effect to the "limitations on the extraterritorial application of state law" imposed by the "due process clause of the United States Constitution"). In keeping with the presumption, California generally does not extend its laws, including the UCL, beyond state lines. *See, e.g.*, *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1094 (N.D. Cal. 2019) ("It is well-established that the UCL does not apply extraterritorially."). The Class Plaintiffs cannot bring a UCL claim because they cannot show a "clearly expressed" legislative intent to apply the UCL extraterritorially. *Sullivan*, 254 P.3d at 248.

*Second*, the Class Plaintiffs cannot proceed under the UCL because they do not allege that they lack an adequate remedy at law. "Remedies under the UCL are limited to restitution and injunctive relief," which "are not available unless the plaintiff lacks

an adequate remedy at law." *Peralta v. Certified Emp. Screening Inc.*, 2025 WL 1723142, at *7 (C.D. Cal. May 7, 2025). The Class Plaintiffs do not allege that they lack an adequate remedy at law. *See* CAC ¶¶ 228-45. Nor could they; Plaintiffs seek several remedies at law. *See, e.g.*, CAC ¶ 158 (seeking monetary damages through breach of contract claim). Their UCL claim accordingly must be dismissed. *See Zaback v. Kellogg Sales Co.*, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) (Benitez, J.) (dismissing UCL claim due to plaintiff's failure to plead he lacked an adequate remedy at law); *Schertz v. Ford Motor Co.*, 2020 WL 5919731, at *2 (C.D. Cal. July 27, 2020) (same); *see also Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (holding that the plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA").

*2. The Claims under the New York, Rhode Island, Utah, Vermont, and Virginia Consumer Protection Statutes Fail Because the District Plaintiffs Are Not Consumers (Direct Action Counts 12, 21, 22, 25, 34 & 38).*

Plaintiffs' claims under the New York, Rhode Island, Utah, Vermont, and Virginia statutes should be dismissed because Plaintiffs cannot allege, as required, that the product at issue was primarily for personal, family, or household use. A consumer is "one who purchases goods and services for personal, family or household use." *U1IT4less, Inc. v. FedEx Corp.*, 896 F. Supp. 2d 275, 295 (S.D.N.Y. 2012) (N.Y. GBL § 349), *aff'd*, 871 F.3d 199 (2d Cir. 2017).[26] Plaintiffs' allegations confirm that they are school districts that purchased PowerSchool's "cloud-based

---

[26] *See also Bitsight Technologies, Inc. v. SecurityScoreCard, Inc.*, 40 N.Y.S.3d 375, 378 (App. Div. 2016) (N.Y. GBL § 350); *R.I. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 99 F. Supp. 2d 174, 188-89 (D.R.I. 2000) (citing R.I. Gen. Laws § 6-13.1-5.2) (Rhode Island); *Mia. Prods. & Chem. Co. v. Olin Corp.*, 546 F. Supp. 3d 223, 234-35 (W.D.N.Y. 2021) (citing Utah Code Ann. § 13-11-3(2)(a)) (Utah); *Otis-Wisher v. Medtronic, Inc.*, 616 F. App'x 433, 435 (2d Cir. 2015) (citing Vt. Stat. Ann. tit. 9, § 2451a(a)) (Vermont); *In re MOVEit*, 2025 WL 2179475, at *51 (citing Va. Code Ann. §§ 59.1-198) (Virginia).

education software for K-12 education." DAC ¶¶ 16, 25. Because they are not natural persons who purchased PowerSchool's software for their own use, Plaintiffs have no "personal," "family," or "household" use for PowerSchool's software and their claims under these statutes must be dismissed. *See In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2176590, at *29 (D. Mass. July 31, 2025) (software purchased to help universities and other institutions "engage in [their] own business or commercial enterprise" was not for personal, family or household purposes); *see also, e.g.*, *U1IT4less*, 896 F. Supp. 2d at 294-95 (dismissing N.Y. GBL § 349 claim because defendant's services were not used for "personal, family, or household purposes"); *Otis-Wisher v. Fletcher Allen Health Care, Inc.*, 951 F. Supp. 2d 592, 601 (D. Vt. 2013) (similar dismissal of Vermont claim), *aff'd sub nom. Otis-Wisher v. Medtronic, Inc.*, 616 F. App'x 433 (2d Cir. 2015).

*3. The Claims under the Consumer Protection Statutes of Oklahoma and Rhode Island Should Be Dismissed Because They Are Preempted by the Statutes' Safe Harbor Provisions (Direct Action Counts 34 & 43).*

The Direct Plaintiffs' claims under the consumer protection statutes of Oklahoma and Rhode Island are preempted because the statutes expressly exempt such claims. The Oklahoma statute does not apply to "[a]ctions or transactions regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of this state or the United States." Okla. Stat. Ann. tit. 15, § 754(2). The Rhode Island statute has a similar provision. *See* R.I. Gen. Laws § 6-13.1-4(a) ("Nothing in this chapter shall apply to actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States."). Elsewhere in their complaint, the Direct Plaintiffs allege that PowerSchool violated—and therefore that its actions are governed by—HIPAA and the FTC Act. *See, e.g.*, DAC ¶¶ 26, 159, 176-80. The claims under the Oklahoma and Rhode Island statutes should therefore be dismissed. *See In re Mednax*, 603 F. Supp. 3d at 1217 (holding

claim under Oklahoma Consumer Protection Act preempted by safe harbor provision); *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 165-66 (D. Mass. 2024) (similar for Rhode Island Deceptive Trade Practices Act).[27]

### B. Plaintiffs Do Not State a Claim Under the Consumer Protection Statutes

#### *1. The Deception-Based Claims Fail Because Plaintiffs Do Not Allege Any Actionable Representation with Particularity and, Where Applicable, Causation and/or Reliance.*

Plaintiffs' Consumer Protection Claims, whether under the states addressed above or the remaining states, fail for additional reasons. Plaintiffs' allegations rely heavily on assertions that PowerSchool made misrepresentations and omissions about its data security practices and procedures. *See* CAC ¶¶ 233(d)-(g) (California); *see, e.g.*, DAC ¶¶ 359-65 (Utah), 397-402 (Wisconsin). Because these claims sound in fraud, Plaintiffs must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Plaintiffs must state with particularity the "who, what, where, and when of the allegedly false or fraudulent representation." *In re MOVEit*, 2025 WL 2176590, at *3; *see Sony I*, 996 F. Supp. 2d at 959 (requiring pleading of "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

The Direct Plaintiffs vaguely allege in a generalized fashion that PowerSchool advertised its data security practices on its website, promotional and marketing materials, and other unspecified locations. *See, e.g.*, DAC ¶¶ 490, 492, 549, 615, 680-81, 715, 832, 954, 1017, 1081, 1144. The Class Plaintiffs' allegations are even more cursory. *See* CAC ¶¶ 233(d), (e) (alleging that PowerSchool "misrepresent[ed] that

[27] Certain Consumer Protection Claims fail or are otherwise limited for still other reasons. The Illinois Deceptive Trade Practices Act (Count 16) only allows for injunctive relief. *See Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 241 N.E.3d 454, 460 (Ill. 2024). Additionally, omissions are not actionable under the Wisconsin Deceptive Trade Practices Act (Count 14). *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021).

it would protect the privacy and confidentiality of information entrusted to it" and that "it would comply with industry standards and common law and statutory duties"). Plaintiffs' allegations do not satisfy Rule 8(a), let alone Rule 9(b), and their claims should be dismissed on this ground alone. *See In re U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d 369, 379-80 (D.N.J. 2024) (rejecting plaintiffs' "general allegations of a promise to keep customers' PHI private" as not stating a claim under the Arizona Consumer Fraud Act).

Moreover, the few public statements that Plaintiffs do identify—such as that PowerSchool "invests in updated security technology," "adheres to strict security regulations," and is "committed to being a good custodian of student data, taking all reasonable and appropriate countermeasures to ensure data confidentiality, integrity, and availability"—are inactionable aspirational statements. *E.g.*, CAC ¶ 37; DAC ¶ 1144. In the data breach context, courts have dismissed claims premised on similar statements about a company's cybersecurity program that a reasonable consumer would understand "do not constitute an unlimited guaranty that . . . information could not be stolen or that computerized data could not be hacked." *Abdale*, 19 N.Y.S.3d at 859; *see In re MOVEit*, 2025 WL 2179475, at *37 (dismissing claim under Illinois Unfair and Deceptive Trade Practices Act based on promise in Patient Privacy & Rights document to "work[] very hard to make sure the health information of our patients is properly protected"). Plaintiffs' Consumer Protection Claims suffer from this same fatal defect. *See, e.g.*, *Schuman v. Visa U.S.A., Inc.*, 2025 WL 1731795, at *8 n.8 (S.D.N.Y. June 23, 2025) (defendant's purported statements that it "protects consumers" and "security is embedded in everything we do" are the types of statements that "no reasonable consumer would rely on to understand either that [the d]efendant had built specific security systems into its platform or that the cards would be immune to attacks by third-party hackers"); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 54-56 (D. Ariz. 2021) (dismissing claim under N.Y. GBL § 349, noting that defendant's "privacy policy does not amount to an unlimited guaranty

protecting PII and PHI from data breaches"); *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 344-45 (S.D.N.Y. 2023) (concluding that statements on defendant's websites—e.g., that "security is in our DNA" and "security is built into our systems and culture"—could not have communicated to a reasonable consumer that defendant "had built specific security systems into its platform or that the [a]ccount would be immune to attacks by third-party hackers"); *see also Heath v. Palmer*, 915 A.2d 1290, 1296 (Vt. 2006).

In addition, most of the statutes at issue require a causal link between the alleged misrepresentation and the plaintiffs' claimed injury, and/or reliance on the allegedly deceptive conduct.[28] Plaintiffs do not allege when, how, or even *if* they saw PowerSchool's advertisements or marketing materials, much less that they relied on them to their detriment. Nor could they. Plaintiffs' contracts with the Company expressly provide that "[e]ach Party acknowledges that it has not made any promise or representation that is not expressed in this Agreement." MSA § 14.9. Lacking any plausible allegations of causation or reliance, the Consumer Protection Claims should be dismissed in the states where those elements are required, namely Arizona, California, Idaho, New Hampshire, New York, South Carolina, Tennessee, Utah, Vermont, Virginia, Washington, and Wisconsin. *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (dismissing UCL claim for plaintiff's "fail[ure]

---

[28] *See Johnson v. Yuma Reg'l Med. Ctr.*, 769 F. Supp. 3d 936, 957-58 (D. Ariz. 2024) (Arizona); *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012) (California); *Pickering v. Sanchez*, 173 Idaho 478, 485 (2024) (Idaho); *In re MOVEit*, 2025 WL 2179475, at *43, *50, *56 (New York GBL § 349, Vermont, Wisconsin); N.H. Rev. Stat. Ann. § 358-A:10 (New Hampshire); *Ham v. Lenovo (U.S.) Inc.*, 664 F. Supp. 3d 562, 579 (S.D.N.Y. 2023) (New York GBL § 350); *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 189 (S.C. 2015) (South Carolina); *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 428 (6th Cir. 2019) (Tennessee); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 286 F. Supp. 3d 667, 674 (E.D. Pa. 2017) (Utah); *Student A v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 918 (W.D. Va. 2022) (Virginia); *Braden v. Tornier, Inc.*, 2009 WL 3188075, at *4 (W.D. Wash. Sept. 30, 2009) (Washington).

to provide the particulars of her own experience reviewing or relying upon any . . . statements" on the website and in Apple's privacy policy); *Hall v. Time Inc.* 158 Cal. App. 4th 847, 856 (2008) (describing UCL causation requirement and citing cases finding no causation, including where plaintiffs failed to allege "they relied on [d]efendants' advertisements in entering into the transactions"); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *32 (D.N.J. Dec. 16, 2021) (dismissing N.Y. GBL § 349 claim because plaintiffs did not "allege that they read any data privacy policies before purchasing medical services").

*2. Plaintiffs Do Not Plausibly Allege That PowerSchool Acted Unlawfully, Unfairly, or Unconscionably.*

To plead a claim based on unlawful, unfair, or unconscionable conduct under several of the statutes Plaintiffs invoke, they must allege that PowerSchool's conduct offends established public policy, is "immoral, unethical, oppressive, unscrupulous," or substantially injurious to consumers. *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 579 (N.D. Cal. 2019) (New Hampshire); Okla. Stat. Ann. tit. 15, § 752(14) (Oklahoma); *Ames v. Oceanside Welding & Towing Co.*, 767 A.2d 677, 681 (R.I. 2001) (Rhode Island); *World Cam, LLC v. Omnibond Sys., LLC*, 2021 WL 4132100, at *6 (D.S.C. Sept. 9, 2021) (South Carolina); *Picket Fence Preview, Inc. v. Zillow, Inc.*, 623 F. Supp. 3d 371, 382 (2022) (Vermont); *Taylor v. Amazon.com, Inc.*, 2025 WL 104381, at *5 (W.D. Wash. Jan. 15, 2025) (Washington); *see also Cotte v. CVI SGP Acquisition Tr.*, 2022 WL 464307, at *10 (D. Utah Feb. 15, 2022) (Utah) ("extreme unfairness" required for unconscionability).[29] Plaintiffs do not explain how their allegations of negligent or inadequate cybersecurity countermeasures rise to the level of "immoral," "unethical," "oppressive," or the equivalent. Nowhere do

---

[29] The definition of "unfair" conduct is in flux among California courts. *Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *11 (N.D. Cal. Aug. 9, 2021). Under the "balancing test," a plaintiff may state a claim by "either alleging immoral, unethical, oppressive, unscrupulous or substantially injurious conduct by [the defendant] or by demonstrating that [the defendant's] conduct violated an established public policy." *Id.*

Plaintiffs allege an intentional or even reckless release of the information by PowerSchool. To the contrary, they allege that a sophisticated criminal actor attacked PowerSchool. DAC ¶¶ 5-6, 31.

Under both the unlawful and unfair prong of certain statutes, a plaintiff may rely on an underlying violation of a statute or common law. *See, e.g.*, *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020). But these allegations fail for the same reasons addressed elsewhere in this brief, including that Plaintiffs cannot look to statutes that do not provide a private right of action, such as HIPAA, FERPA, and the FTC Act. *See supra* Section IV. To allow Plaintiffs to proceed based on these statutes "would essentially be attributing to the [state] legislature an intent to thwart Congress's intentions on a significant scale." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005) (no N.Y. GBL § 349 claim based on federal statute without a private right of action); *see O'Donnell v. Bank of Am., N.A.*, 504 F. App'x 566, 568 (9th Cir. 2013) (unpublished) (affirming dismissal of "unfair competition claim premised on Bank of America's alleged violation of the [FTC Act]" because "[t]he federal statute doesn't create a private right of action" and "plaintiffs can't use California law to engineer one").

And to the extent Plaintiffs' claims under the consumer protection statutes are premised on other, unidentified federal or state laws or regulations, the failure to identify such laws or their applicability to the Incident is fatal to those claims. *See, e.g.*, *Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *9 (N.D. Cal. Aug. 9, 2021) (dismissing claim under the "unlawful" prong of the UCL where plaintiffs only alleged generally that defendant violated certain statutes by "failing to establish adequate practices and procedures for maintaining and storing . . . personal and financial information").

## XI. THE NEW HAMPSHIRE, VIRGINIA, AND WASHINGTON DATA BREACH NOTIFICATION LAW CLAIMS FAIL (DIRECT ACTION COUNTS 32, 39 & 46)

Each of the Direct Plaintiffs' claims based on state data breach notification laws (the "Notification Laws") fail because those Plaintiffs do not allege facts indicating that PowerSchool's notification was unreasonably delayed, or that they were injured by any supposed delay in receiving notice.

*First*, the Direct Plaintiffs do not plausibly allege that PowerSchool's notification was untimely. The Notification Laws at issue generally require that PowerSchool notify the Direct Plaintiffs promptly after discovery of a security breach. *See, e.g.*, N.H. Rev. Stat. Ann. § 359-C:20(I)(c) ("immediately following discovery"); Va. Code Ann. § 18.2-186.6(D) ("without unreasonable delay"); Wash. Rev. Code 19.255.010(8) ("in the most expedient time possible, without unreasonable delay, and no more than thirty calendar days after the breach was discovered"). The Court need not take at face value the Direct Plaintiffs' assertion that a ten-day delay—which included four weekend days, plus New Year's Eve and New Year's Day—is unreasonable.[30] *See* DAC ¶ 32. "The problem here is the dearth of factual allegations to support Plaintiffs' claim that any particular period of time—days, weeks, or months—amounts to an unreasonable delay and on its face, the amount of time here does not appear to be unreasonable." *In re MOVEit*, 2025 WL 2179475, at *27 (two to six weeks delay was not unreasonable); *see also Griffey*, 562 F. Supp. 3d at 56

[30] The Direct Plaintiffs claim that "[*s*]*ome* School Districts never received a notification of the Breach," DAC ¶ 8, but they do not allege facts indicating that any particular Plaintiff did not receive notice. As for the New Hampshire and Washington School Districts in particular, the complaint elsewhere concedes that they were notified of the Incident on January 7, 2025. *See* DAC ¶¶ 759, 1122. The Virginia School Districts, for their part, do not allege when they were notified, nor that they were never notified. These vague allegations make it impossible for the Court to determine whether PowerSchool unreasonably delayed notifying them, and, for that reason, their claim should be dismissed. *Cf. In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1146 (N.D. Cal. 2018) (explaining that "the Court cannot evaluate whether Defendants unreasonably delayed in notifying customers" where "Plaintiffs' allegations are too uncertain to divine any date of discovery").

("[W]ritten notice delayed less than a month in data breach cases the size and scope of [the defendant's] data breach here is reasonable."). Indeed, of the state data breach notification statutes nationwide that set a specific timeframe for notifications, *none* requires notification within less than ten days. *See, e.g.*, Wash. Rev. Code 19.255.010(8) (requiring notification no later than 30 calendar days after discovery of the breach). On its face, PowerSchool's ten days of "delay" is reasonable, and the dearth of factual allegations to show otherwise compels dismissal of the Notification Law claims.[31]

*Second*, the Direct Plaintiffs' claims fail because they do not allege any harm resulting from the incremental "delay" between whenever the Direct Plaintiffs believe they should have received notice and January 7, 2025. *See* N.H. Rev. Stat. Ann. § 359-C:21(I); Va. Code Ann. § 18.2-186.6(I); Wash. Rev. Code 19.255.040(3)(a). The Direct Plaintiffs fail to plausibly allege damages arising from any delay in notification, and instead claim damages arising from the Incident itself. *See* DAC ¶¶ 794-95, 977, 1166. Without allegations plausibly alleging damages arising from a delay in notification, the Direct Plaintiffs' claims fail, as other courts have recognized in rejecting similar claims. *See Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at *5, *8 (C.D. Cal. June 15, 2015) (dismissing claim under Virginia Notification Law because "the Court finds implausible any argument that Sony's alleged delay in notification proximately caused any of the [alleged] economic injur[ies]"); *Grigsby v. Valve Corp.*, 2013 WL 12310666, at *5 (W.D. Wash. Mar. 18, 2013) (dismissing claim under Washington Notification Law because plaintiff "must allege facts supporting the claim that he was injured due to the interval between the hacking

[31] Additionally, the Washington Notification Law provides that notification may be delayed to take "any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system." Wash. Rev. Code 19.255.010(8). The Direct Plaintiffs allege that the Incident involved a "massive collection of highly sensitive data," yet fail to explain how a delay of just four business days constitutes an "unreasonable delay" to determine the full scope of the Incident. DAC ¶ 28, *see* DAC ¶¶ 64, 82.

incident and Valve's notice of the incident and not just that he was injured by the hacking incident alone"); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2023 WL 6216542, at *7 (D.N.J. Sept. 21, 2023) (similar dismissal under New Hampshire Notification Law).

## XII. NEW YORK EDUCATION LAW § 2-D DOES NOT PROVIDE A PRIVATE RIGHT OF ACTION (DIRECT ACTION COUNT 23)

The New York Education Law, N.Y. Educ. Law § 2-d, is an education-specific data privacy and data notification law that applies to New York student data and contains certain requirements for third-party vendors like PowerSchool. The Direct Plaintiffs' claim under the New York Education Law should be dismissed because there is no private right of action under the statute. *See* N.Y. Educ. Law § 2-d(7)(c); *Magnoni v. Plainedge Union Free Sch. Dist.*, 2018 WL 4017585, at *7 (E.D.N.Y. Aug. 22, 2018) ("New York Education Law § 2-d does not provide an individual right of action."). While no court has addressed whether N.Y. Educ. Law § 2-d allows for a private right of action against third-party vendors, several courts have found that there is no private right of action against public and private schools under the statute. *See, e.g.*, *Ctr. for Discovery, Inc., v. D.P.*, 2018 WL 1583971, at *9 (E.D.N.Y. Mar. 31, 2018). As in *Center for Discovery*, the Direct Plaintiffs have "failed to identify the authority pursuant to which they have a private cause of action under the New York Education Law and the Regulations of the Commissioner of Education." *Id.* To the contrary, the statute expressly provides for an enforcement mechanism reserved for the commissioner and its chief privacy officer, who alone are empowered to "determine that no penalty be issued upon the third party contractor" if "it is determined that the unauthorized release of student data or teacher or principal data on the part of the third party contractor . . . was inadvertent." N.Y. Educ. § 2-d(6)(e)(5) & (7)(a). To allow the Direct Plaintiffs to seek civil penalties under the New York Education Law would undermine the legislature's clear intent that the

commissioner and its chief privacy officer alone determine the availability of penalties under the statute. *See id.*

Finally, for the reasons discussed above, *see supra* Sections II & XI, PowerSchool has not breached its duties to notify the Direct Plaintiffs or to safeguard student, parent, or teacher data under the New York Education Law or otherwise, which is yet another basis for dismissal. *See generally* N.Y. Educ. Law § 2-d.[32]

## XIII. <u>EXPRESS INDEMNITY IS NOT A RIPE CLAIM (DIRECT ACTION COUNT 6)</u>

The Direct Plaintiffs assert a claim for indemnification, which is premised upon a provision in the MSA specifying that PowerSchool "will defend Customer . . . from and against any claim, demand, suit or proceeding brought by a third party against a Customer" under certain circumstances. DAC ¶ 247; MSA § 10.1. This count should be dismissed because the Direct Plaintiffs do not identify any actual third-party claim that would make their indemnity claim ripe for adjudication. The Direct Plaintiffs instead seek declaratory relief "whereby this Court will use its authority under 28 U.S.C. §§ 2201, *et seq.*, to issue a declaration that, ***in the event that Plaintiffs are sued*** as a result of PowerSchool's failure to adequately secure the PII at issue, Plaintiffs will be indemnified." DAC ¶ 247 (emphasis added). The Declaratory Judgment Act ("DJA") requires an "***actual controversy***." 28 U.S.C. § 2201(a) (emphasis added). A "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Here, "[a]ny declaration from this Court

---

[32] To the extent that the Direct Plaintiffs seek reimbursement of their notification costs under N.Y. Educ. Law § 2-d(6)(c), this claim fails because the Direct Plaintiffs do not allege that they incurred any costs associated with notification. *See* DAC ¶ 574. Indeed, as Plaintiffs well know, PowerSchool offered to handle notifications (and related costs) to involved individuals on behalf of the School Districts, including Plaintiffs. *See* CAC ¶ 119 ("PowerSchool was offering identity protection and two years of credit monitoring to victims of the Data Breach."). If Plaintiffs chose to incur notification-related costs, Plaintiffs' failure to mitigate will defeat any New York Education Law claim, even assuming a private right of action.

about Defendant's indemnity obligations would be purely speculative," and so the Direct Plaintiffs' express indemnity claim must be dismissed. *First Mercury Ins. v. Great Divide Ins.*, 203 F. Supp. 3d 1043, 1053-54 (N.D. Cal. 2016).

## XIV. THE CLASS PLAINTIFFS' CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF IS NOT A STANDALONE CAUSE OF ACTION OR SUFFICIENTLY PLED (CLASS ACTION COUNT 8)

The Class Plaintiffs' claim for declaratory and injunctive relief under the DJA should be dismissed for several reasons.

*First*, "declaratory and injunctive relief are remedies, not causes of action." *Landon v. TSC Acquisition Corp.*, 2024 WL 5317240, at *9 (C.D. Cal. Nov. 1, 2024); *see In re MCG Health Data Sec. Issue Litig.*, 2023 WL 3057428, at *16 (W.D. Wash. Mar. 27, 2023) (recommending dismissal of plaintiffs' cause of action for declaratory and injunctive relief because they are "not separate legal causes of action"), *report and recommendation adopted*, 2023 WL 4131746 (W.D. Wash. June 22, 2023).

*Second*, the Class Plaintiffs lack standing to bring a DJA claim because they fail to plausibly allege that any supposed risk of future harm is "imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). Their complaint offers only conclusory allegations on this point. *See* CAC ¶ 260 ("Plaintiffs and the Class will suffer irreparable injury, and lack an adequate legal remedy, ***in the event of another data breach at PowerSchool***.").

*Third*, the DJA claim is encompassed by the Class Plaintiffs' other claims and thus serves no "useful purpose." *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 975-76 (N.D. Cal. 2021) (holding that plaintiffs "have not met the requirements for declaratory relief" because "if [p]laintiffs are successful in their alternate claims for relief, [p]laintiffs' claim for declaratory relief would be unnecessary"). The Class Plaintiffs have already brought several causes of action that concern the adequacy of PowerSchool's security measures and its contractual obligations. Declaratory relief on this issue would therefore be superfluous. *See id.*; *see also Kho v. Wells Fargo & Co.*, 2012 WL 3240041, at *9 (C.D. Cal. Aug. 6, 2012) (dismissing claim for

declaratory relief where there were "no reasons to believe declaratory judgment will resolve any issues aside from those already addressed by the substantive claims").

## CONCLUSION

For the reasons set forth above, PowerSchool respectfully requests that the Court dismiss the School District Plaintiffs' complaints in their entirety with prejudice.

Dated: September 25, 2025

By: */s/ Christopher M. Young*

Christopher M. Young
Oliver M. Kiefer
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com
oliver.kiefer@us.dlapiper.com

Anne Johnson Palmer
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6337
anne.johnsonpalmer@ropesgray.com

Monica Mleczko (*pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
Monica.Mleczko@ropesgray.com

*Attorneys for Defendants*
*PowerSchool Holdings, Inc., and*
*PowerSchool Group LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 25, 2025, I caused the foregoing document to be served via the Court's ECF system upon all counsel of record.

*<u>/s/ Christopher M. Young</u>*
Christopher M. Young