# Exhibit A

PowerSchool

# MAIN SERVICES AGREEMENT
**2024 version**

This Main Services Agreement (with all attached exhibits and referenced documents and links, the "**Main Services Agreement**"), combined with active Quotes and Statements of Work for Professional Services or any other duly executed documents referencing this Main Services Agreement, will constitute the "**Agreement**", as may be amended from time to time. The Quotes and SOWs, including any addenda and supplements thereto, may be individually referred to as an "**Ordering Document**" or collectively referred to as the "**Ordering Documents**".

This Agreement is entered into by and between the applicable PowerSchool Contracting Entity (as defined below) ("**PowerSchool**") and Customer identified below and governs Customer's access and use of Services. This Agreement is effective and accepted on the earliest of the following: (i) the date that the last Party directly signs this Main Services Agreement, (ii) the date that the last Party signs the Quote that references this Main Services Agreement (or if the Quote is not signed, then the date of the purchase order received by PowerSchool), or (iii) the date on which Customer is granted access to the Services (the "**Effective Date**")**.** Each PowerSchool and Customer is individually referred to as a "**Party**" and collectively as the "**Parties**".

## 1. DEFINITIONS.

**1.1.** "**Account Country**" is the country associated with the Customer account. If Customer has provided a valid tax registration number for Customer's account, then Customer's Account Country is the country associated with such tax registration. If Customer has not provided a valid tax registration, then Customer's Account Country is the country where the Customer billing address is located.

**1.2.** "**Customer**" means the school, school district, college, university, institution, agency, or other entity that purchases one or more of the Services, as identified on the applicable Ordering Document.

**1.3.** "**Customer Data**" means all data (including Personal Data), files, documents and records uploaded to a Subscription Service or transmitted to PowerSchool under this Agreement by or on behalf of Customer.

**1.4.** "**De-identified Data**" means information generated by the data processor that does not contain Personal Data and any direct or indirect personal identifiers, and that is not used or linked to identify any individual.

**1.5.** "**Documentation**" means user manuals describing the functionality, features and operating characteristics of the applicable PowerSchool Software as made available to Customer by PowerSchool, including any updates thereto.

**1.6.** "**Excluded Claims**" means claims or liability arising out of: (a) a Party's violation of the other Party's proprietary or intellectual property rights; (b) PowerSchool's violation of its obligations under this Agreement (including the applicable data privacy agreement) pertaining to Customer Data; or (c) either Party's indemnity obligations under this Agreement.

**1.7.** "**Intellectual Property Rights**" means any and all, now or hereafter in existence, unpatented inventions, patent applications, patents, design rights, copyrights, Trademarks, mask work rights, know-how, trade secret rights, moral rights, database protection, and all other intellectual property and proprietary rights, modifications, adaptations, derivatives thereof, and improvements thereto, and forms of protection of a similar nature anywhere in the world.

**1.8.** "**Licensed Applications**" means software applications developed by third parties that are licensed by PowerSchool and are embedded in or bundled with the Subscription Services provided by PowerSchool hereunder.

**1.9.** "**Licensed Site(s)**" means the internet address of the web-based location for accessing a Subscription or, if for an on-premise implementation, the initial location where the PowerSchool Software listed on the applicable Quote is installed.

**1.10.** "**Personal Data**" means information that alone, or in combination with other information about an individual, identifies, relates to, or could reasonably be linked to a natural person.

**1.11.** "**PowerSchool Contracting Entity**" means the entity identified in the table below, based on Customer's Account Country.

PowerSchool

| Account Country | PowerSchool Contracting Entity | Mailing Address |
|---|---|---|
| Canada | PowerSchool Canada ULC | PowerSchool Canada ULC<br>150 Parkshore Drive<br>Folsom, CA 95630 |
| United States | PowerSchool Group LLC | PowerSchool Group LLC<br>150 Parkshore Drive<br>Folsom, CA 95630 |
| Any other country that is not Canada, the United States, India, or UAE[1] | PowerSchool Group LLC | PowerSchool Group LLC<br>150 Parkshore Drive<br>Folsom, CA 95630 |

**1.12. "PowerSchool Software**" means PowerSchool's proprietary software applications and the associated Licensed Applications, including any and all updates and subsequent versions thereto. PowerSchool Software does not include Third-Party Software.

**1.13.** "**Professional Services**" means work performed by PowerSchool or its permitted subcontractors or channel partners under an Ordering Document, including implementation, training, consulting, customization and other professional services, and any deliverables specified in an Ordering Document.

**1.14.** "**Quote**" means PowerSchool's standard order form that (i) specifies the Services provided to Customer; (ii) references this Agreement or the applicable agreement; and (iii) is signed or incorporated into or referenced in a signed agreement by authorized representatives of both Parties. Unless otherwise agreed in writing by the Parties, Customer's issuance of a purchase order is deemed as acceptance of the terms and conditions set forth in the applicable Quote.

**1.15.** "**Services**" means any Subscription Service(s), including all content made available by PowerSchool through the Subscription Services, and any Professional Services provided to Customer hereunder.

**1.16.** "**Statement of Work**" or "**SOW**" means a statement of work document that describes the Professional Services to be performed hereunder and that is entered into between Customer and PowerSchool or is otherwise incorporated into a Quote entered into between Customer and PowerSchool.

**1.17. "Subscription Services**" means the provision of the PowerSchool Software to Customer on a subscription basis as a cloud-based service, a term license, or as an on-premise installation, including any hosting services or Support Services provided as part of the Subscription Services or otherwise purchased by Customer.

**1.18. "Subscription Term**" has the meaning set forth in Section 13.2 (Subscription Term).

**1.19.** "**Support Services**" means the maintenance and support for the Subscription Services or as purchased by Customer, as described in PowerSchool's standard support policy at https://www.powerschool.com/Support-Policy-SLA_2024/.

**1.20. "Term"** has the meaning set forth in Section 13.1 (Agreement Term).

**1.21. "Third-Party Software"** means software products supplied or developed for a particular purpose by someone other than PowerSchool and not licensed by PowerSchool hereunder.

**1.22.** "**Trademarks**" means all trademarks, service marks, logos, slogans, trade names, business names, and other source identifiers, including domain names, whether registered or unregistered, and including all of the goodwill of the business related to the foregoing.

**1.23. "Transaction Data"** means system performance information monitoring the PowerSchool Software alone and at times of usage as the User may access and progress through the features and functions of a Subscription Service.

**1.24. "User(s)"** means individuals authorized by Customer to access PowerSchool Software, including teachers, students, parents, guardians, employees, authorized personnel, and job applicants as applicable to the respective PowerSchool Software.

## 2. PROVISION OF SERVICES AND RESTRICTIONS.

[1] PowerSchool Offerings in India and United Arab Emirates are under a different Main Services Agreement.

PowerSchool

**2.1 Subscription Services.** If Customer makes all payments on time, PowerSchool will: (a) for cloud-based Subscription Services, make such Subscription Services available to the Customer and for the contracted quantity at each Licensed Site in conformance with the applicable Documentation and the terms of this Agreement, and host such Subscription Services consistent with the service level agreement set forth at https://www.powerschool.com/Support-Policy-SLA_2024/; (b) for on-premise Subscription Services, grant Customer a restricted, personal, non-exclusive, non-transferable, terminable access to use such Subscription Service specified in the applicable Quote, only at the Licensed Sites, not to exceed the maximum quantity identified on the applicable Quote; and (c) provide the applicable standard Support Services (or upgraded Support Services if purchased). Customer must purchase separate Support Services for on-premise implementation of the Subscription Services.

**2.2 Professional Services.** If purchased, PowerSchool will provide the Professional Services specified in the applicable SOW, subject to Customer's payment of all applicable fees and to the terms of PowerSchool's Professional Services Policy set forth at https://www.powerschool.com/Professional-Services-Policy_2024/, which is incorporated herein by reference.

**2.3 Restrictions.** Subscription Service(s) will only be used as expressly authorized by this Agreement and in compliance with all applicable laws and regulations. All rights not expressly granted to Customer herein are expressly reserved by PowerSchool.

**2.3.1** Customer will use the Services only for the internal purposes of Customer and only for Licensed Sites through the stated Subscription Term in the Quote. Customer shall not exceed the maximum quantity for the Subscription Services as stated in the Quote without additional payment.

**2.3.2** Customer will not, and will not permit Users or third parties to: (a) make any of the Services, its results, outputs or deliverables available to anyone other than Customer or Users, or use them for the benefit of anyone other than Customer; (b) sell, resell, rent, lease, license, distribute, sublicense, or otherwise include any of the Services to a third party or in a service bureau or outsourcing offering; (c) make any use of the Services for which Customer has not paid; (d) store or transmit infringing, libelous, or otherwise unlawful or tortious material, or to store or transmit material in violation of third-party privacy rights; (e) interfere with or disrupt the integrity or performance of any of the Services; or (f) remove or obscure any proprietary or other notices contained in any PowerSchool Services. Customer shall not use plugins that are not approved by PowerSchool.

**2.3.3** Customer and its Users shall keep user identification and password information strictly confidential and not share such information with any unauthorized person and shall be responsible for any and all activities that occur under all Customer accounts. If unauthorized access to, or use of, the Services occurs, Customer shall promptly notify PowerSchool.

**2.3.4** Customer shall be prohibited from performing penetration testing against PowerSchool-hosted Services, applications, data stores, or systems. Penetration tests, if not performed properly and under the supervision and coordination of the PowerSchool information security team, can have unintended consequences such as corrupting data, unauthorized access to data, and degradation of systems. PowerSchool allows vulnerability scanning from PowerSchool-approved vendors, such as the Cybersecurity & Infrastructure Security Agency (CISA).

**2.3.5** PowerSchool may (or may ask Customer to) suspend or terminate any User's access to the Services upon notice to Customer if PowerSchool reasonably determines that such User has violated any of the terms of the Agreement.

**2.4 Updates to Subscription Services**. During the Term, PowerSchool may, at no cost to Customer, update or upgrade features, functionality, software, or user types that Customer and Users access pursuant to a Quote; provided that such updates will not materially degrade existing features and functionality. After giving Customer reasonable advance notice, PowerSchool may update and/or upgrade the Subscription Services provided to Customer so that it remains current with the then-current version of the PowerSchool Software available to PowerSchool's customers generally.

**2.5 Sustaining Application Planning Program (SAP)**. PowerSchool reserves the right to discontinue a PowerSchool Software as part of its sustaining application planning program (SAP). PowerSchool shall provide Customer with twelve (12) months' advanced notice for PowerSchool's proprietary Software affected, and for affected Licensed Applications, as much notice as practical after PowerSchool receives notice from the applicable licensors. PowerSchool will use commercially reasonable efforts to transition Customer to a PowerSchool Software with substantial similar functions and features. If PowerSchool does not have a substantially similar PowerSchool Software, then PowerSchool will credit to Customer any unused portion of the prepaid fee for such PowerSchool Software that is discontinued. Such credit can be applied towards the future purchase of a Service

PowerSchool

within twelve (12) months of issuance. Unused credits will expire after twelve (12) months of their issuance.

**2.6 Background Checks**. PowerSchool conducts thorough nation-wide and province-wide background checks, including criminal records, terrorist watch list, sex offender database and a multi-panel drug test on all employees. PowerSchool also requires its contractors, under its separate agreement, to conduct a background check of its employees before any assignment of services from PowerSchool to the Customer.

**3. CUSTOMER DATA.**

**3.1 Rights in Customer Data**. As between Customer and PowerSchool, Customer is and will remain the sole and exclusive owner of all right, title and interest in and to all Customer Data, including all Intellectual Property Rights relating thereto, subject to the rights and permissions granted in this Section 3 (Customer Data). Customer is responsible for the accuracy and legality of any content provided to PowerSchool as Customer Data. PowerSchool will ensure that its use of the Customer Data always complies with this Agreement, PowerSchool's privacy statement, and all applicable laws, regulations, and conventions.

**3.2 Consent to Use Customer Data.** Customer hereby grants all such rights and permissions in or relating to Customer Data to PowerSchool, its subprocessors and the PowerSchool personnel as are necessary to provide, perform and deliver the Services. The Customer further agrees to establish a basis for the processing of Personal Data, including, where required by applicable laws and regulations, by obtaining the relevant informed and voluntary consent from any applicable data subject (in the case of when the data subject is a child or minor, then informed, voluntary, and verified consent from the relevant parent or guardian of the child or minor is required) for: (a) PowerSchool to process the data subject's information, in the form of Customer Data; and (b) the Customer to be allowed to transfer Personal Data to PowerSchool for processing, by sharing such Personal Data with its other approved data subprocessors. Except as provided in Section 5.4 (Compelled Disclosure), PowerSchool will not share the Customer Data with third parties without Customer's express consent. PowerSchool will not rent or sell Customer Data and will treat such data as Confidential Information. "

**3.3 Data Privacy and Security.** By executing the MSA or an Ordering Document or issuing a purchase order referencing an Ordering Document, each Party agrees to the terms of the specified PowerSchool statewide data privacy agreement set forth at https://www.powerschool.com/Customer-State-DPA_2024/ for the Customer's applicable state ("**PowerSchool State DPA**"). However, if the Parties, at the time of execution of this MSA or an Ordering Document, expressly agree in writing to supersede such PowerSchool State DPA with a separately negotiated data privacy agreement executed by and between the Parties ("**Negotiated DPA**"), such Negotiated DPA shall govern the Customer Data processed under this Agreement. Such Negotiated DPA, if existing, shall be executed and either submitted with the applicable Ordering Document or separately returned to PowerSchool as a stand-alone document. The Parties agree to comply with the PowerSchool State DPA or the Negotiated DPA, as applicable, and such applicable DPA shall supplement the terms of this Agreement.

**3.4 Security Training**. Customer agrees to require annual cyber security training for User(s) when reasonably applicable. Customer will also require User(s) to utilize multi-factor authentication to access computer systems with the Services when available within the applicable Service. Customer agrees to keep a record of such training and PowerSchool may request to see them as part of compliance verification.

**4. PROPRIETARY RIGHTS**

**4.1 PowerSchool Services and Software.** PowerSchool and its licensors solely and exclusively own all right, title, and interest, including all related Intellectual Property Rights, in and to the Services and PowerSchool Software. This Agreement is not a sale and does not convey to Customer any rights of ownership in or related to the Services or PowerSchool Software, or the Intellectual Property Rights owned or licensed by PowerSchool.

**4.2 Transaction Data.** Notwithstanding anything to the contrary, PowerSchool has the right to collect and use Transaction Data solely for internal research and to develop, improve, support, and operate its products and services during and after the Term.

**4.3 De-Identified Data**. Notwithstanding anything to the contrary, Customer hereby agrees and acknowledges that PowerSchool shall have the right to process, aggregate and analyze De-Identified Data relating to the provision, use and performance of various aspects of the Services and related systems and technologies, and PowerSchool will be free (during and after the Term) to: (i) use such De-identified Data to improve and enhance the Services and for other development, diagnostic and corrective purposes in connection with the Services and other PowerSchool products and services, and (ii) use De-identified Data for internal use only and for training and conducting demonstrations.

**4.4 Feedback**. If Customer or any User provides PowerSchool with any suggestions, comments,

PowerSchool

enhancement requests, or other feedback relating to the PowerSchool Services or any other PowerSchool's products or services (collectively, "**Feedback**"), Customer grants to PowerSchool a worldwide, perpetual, irrevocable, royalty-free, and transferable license to use and incorporate into PowerSchool Services and PowerSchool Software such Feedback (excluding any Customer Confidential Information contained in the Feedback).

**4.5 PowerSchool Trademarks.** PowerSchool exclusively owns all of its Trademarks associated with the Services. No right or license is granted by this Agreement to their use.

**4.6 No Use of Trademarks.** Except as set forth below, neither Party nor its affiliates shall use the other Party's Trademarks in any form or substance in any medium or for any purpose without the other Party's prior written consent (which consent can be via e-mail if such e-mail is from an authorized representative of the consenting Party).

**4.7 Marketing.** Subject to Customer's trademark usage guidelines, Customer grants PowerSchool a non-exclusive, worldwide, royalty-free right to include Customer's Trademark and other related transactional information (including enrollment count, names of the Services ordered by Customer, etc., but excluding pricing) in any customer listing appearing on or in any PowerSchool websites, brochures, fliers, presentations, press releases, annual reports and any other marketing materials. Customer may withdraw or terminate the foregoing license at any time by providing PowerSchool with thirty (30) days' prior written notice of its intent to terminate. Such notice of withdrawal or termination must be sent via e-mail to champions@powerschool.com with a copy to legalnotices@powerschool.com, and the email subject line must state "Trademark Consent Withdrawal". After such thirty (30) day period, the foregoing license will terminate, and PowerSchool will remove Customer's Trademarks from its website and cease from creating any new marketing material containing the same. However, PowerSchool's right to continue to use any marketing materials produced, published, or disseminated prior to such termination will continue until the supply, publication, dissemination and/or use of such materials is exhausted or terminates.

**5. CONFIDENTIALITY.**

**5.1 Confidential Information**. Each Party (as may disclose or make available Confidential Information to the other Party. "**Confidential Information**" means non-public information disclosed by a Party (the "**Disclosing Party**") to the other Party (the "**Receiving Party**"), whether orally or in writing, that is designated as confidential or that reasonably should be understood to be confidential given the nature of the information and the circumstances of disclosure, including business and marketing plans, technology and technical information, product plans, roadmaps, and designs, and business processes. Confidential Information of Customer includes Customer Data; and Confidential Information of PowerSchool includes the Services, PowerSchool Software, and, subject to Section 5.4 (Public Records Act), the terms of this Agreement and each Ordering Document (including pricing). However, Confidential Information does not include any information that the Receiving Party can reasonably demonstrate by written or other documentary records: (i) is or becomes publicly known or available without breach of any obligation owed to the Disclosing Party; (ii) was known by the Receiving Party prior to its disclosure by the Disclosing Party without breach of any obligation owed to the Disclosing Party; (iii) is received from a third party without knowledge of any breach of any obligation owed to the Disclosing Party; or (iv) is independently developed by the Receiving Party without the aid, application or use of the Confidential Information. For the avoidance of doubt, the non-disclosure obligations set forth in this "Confidentiality" section apply to Confidential Information exchanged between the Parties in connection with the evaluation of additional PowerSchool services.

**5.2 Protection of Confidential Information**. The Receiving Party will use the same degree of care that it uses to protect the confidentiality of its own confidential information of like kind (but not less than reasonable care) to (i) not use any Confidential Information of the Disclosing Party for any purpose outside the scope of this Agreement, and (ii) except as otherwise authorized by the Disclosing Party in writing, limit access to Confidential Information of the Disclosing Party to those of its and its affiliates' employees, contractors, sub-processors and agents who need that access for purposes consistent with this Agreement and who have signed confidentiality agreements with the Receiving Party containing protections not materially less protective of the Confidential Information than those herein. The Receiving Party's obligations under Section 5 (Confidentiality) shall survive the termination or expiration of this Agreement and continue in effect thereafter for a period of five (5) years with respect to Confidential Information that does not qualify as a trade secret under applicable law, and, with respect to Confidential Information that qualifies as a trade secret under applicable law, in perpetuity after the termination or expiration of the Agreement.

PowerSchool

**5.3 Compelled Disclosure**. The Receiving Party may disclose Confidential Information of the Disclosing Party to the extent compelled by law to do so, provided the Receiving Party gives the Disclosing Party prior notice of the compelled disclosure (to the extent legally permitted) and reasonable assistance, at the Disclosing Party's cost, if the Disclosing Party wishes to contest the disclosure.

**5.4 Public Record Act.** Notwithstanding anything herein to the contrary, PowerSchool acknowledges that, to the extent Customer is subject to public record acts or freedom of information acts, (a) PowerSchool will reasonably work with Customer to provide appropriate information in response to such requests, to the extent such requested information is not PowerSchool's proprietary information or otherwise exempted from disclosure; and (b) Customer shall provide PowerSchool a reasonable opportunity to object to any such request as permitted under applicable law.

**6. FEES AND PAYMENT.**

**6.1 Fees**. Customer agrees to pay PowerSchool for all fees charged for the Services consistent with the terms on the Quote and invoice. Unless Customer provides PowerSchool with evidence of its tax-exemption status, Customer will be responsible for paying all applicable sales, use, value-added, or other taxes or duties, however designated, except for taxes based on PowerSchool's net income. Customer agrees to pay for PowerSchool's pre-approved reasonable travel and lodging expenses for Professional Services performed at Customer's premises. All fees set forth in any Quote or invoice will be in the currency set forth in the applicable Quote.

**6.2 Enrollment Increases**. If fees for any of the Services are based on quantity or student count and Customer accesses such Services with more than the quantity identified in the applicable Quote, then Customer will pay the fees for the excess usage based on its then-current per individual and support fees. Any such increase in quantity will be maintained through the end of the then-current subscription period.

**6.3 Payment**. Unless otherwise set forth in the applicable Quote or invoice, Customer shall make all payments on or before the due date specified on the applicable invoice by the method specified on the invoice. PowerSchool may accept credit card payment; however, credit card payments shall subject Customer to a transaction fee and a $250,000 transaction limit. Subject to the "Payment Disputes" section below, if an invoiced amount is overdue by thirty (30) or more days, PowerSchool reserves the right to charge a late fee of 1.5% monthly (18% annually) or the maximum rate allowed by law, whichever is lower, on the amounts overdue.

**6.4 Payment Disputes**. If Customer reasonably and in good faith disputes all or any portion of any invoice, Customer shall notify PowerSchool in writing of its objection within twenty (20) days from the date of the applicable invoice, provide a detailed description of the reasons for the objection, and pay the portion of the invoice which is not in dispute. If Customer does not object in a timely manner within this time period, the amount invoiced shall be conclusively deemed correct by the Parties. If the Parties are unable to resolve such payment dispute within thirty (30) days from PowerSchool's receipt of Customer's written objection, each Party shall have the right to seek any remedies it may have under this Agreement, at law or in equity, irrespective of any terms that would limit remedies on account of a dispute. For clarity, any undisputed amounts must be paid in full.

**6.5 No Deductions or Setoffs**. Subject to Customer's right to dispute an invoice under Section 6.4 (Payment Dispute), all amounts payable to PowerSchool under this Agreement shall be paid by Customer to PowerSchool in full without any setoff, deduction, or withholding for any reason.

**7. PRODUCT-SPECIFIC AND PASS-THROUGH TERMS.**

**7.1 Licensed Applications**. If the Services include Licensed Applications, provision of such Licensed Applications may be subject to additional license terms identified at https://www.powerschool.com/Product-Specific-Terms_2024/, which terms are incorporated herein by reference and are required by PowerSchool's licensors to pass through to Customer without any modification. Such licensors audit PowerSchool to ensure compliance with this requirement.,

**7.2 Third-Party Software**. Third-Party Software is licensed directly to the Customer pursuant to separate license terms between Customer and a third-party supplier. All support, warranties, and services related to Third-Party Software are provided by the supplier of the Third-Party Software under such third party's terms and conditions, and not by PowerSchool. PowerSchool will have no obligations or liability regarding any Third-Party Software.

**7.3 Product-Specific Terms**. Certain Services may be subject to additional product-specific terms identified at https://www.powerschool.com/Product-Specific-Terms_2024/, which are incorporated herein by reference.

**8. LIMITED WARRANTY.**

PowerSchool warrants that the PowerSchool Software included in the Services will operate in substantial conformity with the applicable Documentation under normal use and circumstances. If Customer notifies PowerSchool in writing of a breach of this warranty, PowerSchool will, at its option, either: (a) use commercially reasonable efforts to correct the reported non-conformity, at no charge to Customer, or (b) if PowerSchool determines such remedy to be impracticable, issue Customer a credit of a portion of the fees pre-paid by Customer for the nonconforming Subscription Service that fairly reflects (at PowerSchool's reasonable determination) the diminished value of the non-conforming Subscription Service. The foregoing constitutes Customer's sole and exclusive remedy for any breach of this limited warranty. This warranty will not apply: (i) unless Customer makes a claim within thirty (30) days of the date on which Customer first noticed the non-conformity, or (ii) if the non-conformity was caused by misuse, unauthorized modifications, or third-party hardware, software, or services.

**9. DISCLAIMER OF WARRANTIES.** EXCEPT AS EXPRESSLY SET FORTH IN SECTION 8 (WARRANTIES), THE SERVICES, POWERSCHOOL SOFTWARE AND THIRD-PARTY SOFTWARE ARE PROVIDED "AS IS", AND POWERSCHOOL AND ITS LICENSORS EXPRESSLY DISCLAIM ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, TITLE, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT, AND ALSO ANY WARRANTIES THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE. CUSTOMER MAY HAVE OTHER STATUTORY RIGHTS, BUT THE DURATION OF STATUTORILY REQUIRED WARRANTIES, IF ANY, SHALL BE LIMITED TO THE SHORTEST PERIOD PERMITTED BY LAW. THE ABOVE DISCLAIMER APPLY TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW.

**10. INDEMNIFICATION.**

**10.1 PowerSchool Indemnity.** PowerSchool will defend Customer and its board members, officers, staff, employees and representatives ("**Customer Indemnitees**") from and against any claim, demand, suit or proceeding brought by a third party against Customer Indemnitee (a "**Claim Against Customer**"): (i) alleging any Service, when used as authorized under this Agreement, infringes or misappropriates a third party's Intellectual Property Rights; (ii) to the extent arising from the Services being provided in an unlawful manner or in violation of the Agreement or regulations; (iii) alleging a confirmed data breach (as defined by the applicable state law) to the extent attributable to PowerSchool resulting from PowerSchool's violation of the data security provisions expressly set forth in this Agreement or the DPA executed between the Parties; or (iv) to the extent arising out of death, personal injury or damage to tangible property to the extent caused by PowerSchool personnel or subcontractors in their performance of the Services. PowerSchool will indemnify and hold Customer harmless from any damages, attorney fees, and costs finally awarded against Customer as a result of, or for amounts paid by Customer under a settlement approved by PowerSchool in writing of, a Claim Against Customer.

**10.1.1 Mitigation.** If Customer's use of the Services is enjoined or, in PowerSchool's reasonable opinion, is likely to be enjoined, PowerSchool may (i) substitute for the Services, a substantially and functionally similar product(s) and documentation; (ii) procure for Customer the right to continue using the Services; or if (i) or (ii) is not possible after reasonable commercial efforts from PowerSchool, then PowerSchool may terminate this Agreement and credit a pro-rated return of unused portion of the fees prepaid by Customer for the applicable Services.

**10.1.2 Exclusions.** The above defense and indemnification obligations do not apply to the extent the Claim Against Customer arises from: (i) modifications to the Services by any party other than PowerSchool or its subcontractor; (ii) the combination of the Services with software, hardware, data, products or processes not provided by PowerSchool, if the Services or use thereof would not infringe without such combination; (iii) Customer's breach of this Agreement or violation of applicable law; or (iv) Customer Data, or any deliverables or components not provided by PowerSchool or its subcontractor.

**10.2 Indemnification by Customer.** To the extent permitted under applicable law, Customer will defend PowerSchool and its affiliates and each of their respective directors, officers, employees, representatives and agents (collectively, "**PowerSchool Indemnitees**") from and against any claim, demand, suit or proceeding brought by a third party against a PowerSchool Indemnitee (a "**Claim Against PowerSchool**") to the extent arising out of: (a) any Customer Data or use of Customer Data with the Services; (b) any information or content (other than PowerSchool-provided content) transmitted or submitted by Customer or its Users through the Services or shared with any third party; or (c) Customer's use of the Services or content therein in an unlawful manner or in violation of the Agreement. Customer will indemnify and hold PowerSchool harmless from any damages, attorney fees, and costs finally awarded against PowerSchool as a result of, or for amounts paid by PowerSchool under a

PowerSchool

settlement approved by Customer in writing of, a Claim Against PowerSchool. The above defense and indemnification obligations do not apply if a Claim Against PowerSchool arises from PowerSchool's breach of the Agreement or violation of applicable law.

**10.3 Procedure**. The indemnifying Party's obligations are expressly conditioned upon the following: (a) the indemnified Party will promptly notify the indemnifying Party in writing of any Claim Against Customer or Claim against PowerSchool, as applicable (the "**Claim**"); (b) the indemnifying Party will have sole control of the defense and settlement of the Claim; (c) the indemnified Party gives all reasonable assistance, at the indemnifying Party's expense, to facilitate the settlement or defense of the Claim; and (d) the indemnifying Party will not settle any claim or suit in a manner that results in an admission of liability by the indemnified Party, without the indemnified Party's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed.

**10.4 Sole and Exclusive Remedy**. THIS "INDEMNIFICATION" SECTION STATES THE INDEMNIFYING PARTY'S SOLE LIABILITY TO, AND THE INDEMNIFIED PARTY'S EXCLUSIVE REMEDY AGAINST, THE OTHER PARTY FOR ANY THIRD-PARTY CLAIM DESCRIBED IN THIS SECTION.

**11. LIMITATION OF LIABILITY.**

**11.1 EXCLUSION OF DAMAGES**. TO THE MAXIMUM EXTENT PERMITTED BY LAW, IN NO EVENT WILL EITHER PARTY OR ITS AFFILIATES BE LIABLE TO THE OTHER PARTY FOR ANY LOST PROFITS OR FUNDING, REVENUES, GOODWILL, OR INDIRECT, INCIDENTAL, CONSEQUENTIAL, COVER, BUSINESS INTERRUPTION OR PUNITIVE DAMAGES, WHETHER AN ACTION IS IN CONTRACT OR TORT AND REGARDLESS OF THE THEORY OF LIABILITY, AND EVEN IF A PARTY OR ITS AFFILIATES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR IF A PARTY'S OR ITS AFFILIATES' REMEDY OTHERWISE FAILS OF ITS ESSENTIAL PURPOSE. THE FOREGOING DISCLAIMER WILL NOT APPLY TO THE EXTENT PROHIBITED BY LAW.

**11.2 CAP ON MONETARY LIABILITY.** TO THE MAXIMUM EXTENT PERMITTED BY LAW AND EXCEPT AS STATED HEREIN, IN NO EVENT SHALL THE AGGREGATE LIABILITY OF EACH PARTY TOGETHER WITH ALL OF ITS AFFILIATES ARISING OUT OF OR RELATED TO THIS AGREEMENT EXCEED THE TOTAL AMOUNT PAID BY CUSTOMER AND ITS AFFILIATES HEREUNDER FOR THE SERVICES GIVING RISE TO THE LIABILITY IN THE TWELVE (12) MONTHS PRECEDING THE FIRST INCIDENT OUT OF WHICH THE LIABILITY AROSE. NOTWITHSTANDING THE FOREGOING, IN NO EVENT SHALL THE AGGREGATE LIABILITY OF EACH PARTY TOGETHER WITH ALL OF ITS AFFILIATES ARISING OUT OF OR RELATED TO THE EXCLUDED CLAIMS EXCEED TWO TIMES (2X) THE TOTAL AMOUNT PAID BY CUSTOMER AND ITS AFFILIATES HEREUNDER FOR THE SERVICES GIVING RISE TO THE LIABILITY IN THE TWELVE (12) MONTHS PRECEDING THE FIRST INCIDENT OUT OF WHICH THE LIABILITY AROSE. THE FOREGOING LIMITATION WILL APPLY WHETHER AN ACTION IS IN CONTRACT OR TORT AND REGARDLESS OF THE THEORY OF LIABILITY BUT WILL NOT LIMIT CUSTOMER'S AND ITS AFFILIATES' PAYMENT OBLIGATIONS UNDER THE "FEES AND PAYMENT" SECTION ABOVE.

**11.3 EXCEPTIONS**. THE FOREGOING LIMITATIONS SHALL NOT APPLY TO LIABILITY ARISING OUT OF A PARTY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR FRAUD.

**12. INSURANCE.** Each Party will maintain, at its own expense during the Term, insurance appropriate to its obligations under this Agreement, including as applicable general commercial liability, errors and omissions, employer liability, cyber liability, automobile liability, and worker's compensation insurance as required by applicable law**.** PowerSchool's current certificate of insurance ("**COI**") is found at https://www.powerschool.com/Certificate_of_Insurance_2024/, which will be updated annually and not subject to any modifications by Customer. Upon Customer's request, PowerSchool agrees to include Customer as a certificate holder (but not as additional insured) on such COI. PowerSchool will provide notice and an updated COI to Customer in the event of a cancellation or other material change to the insurance coverage described in such COI. The obligation for PowerSchool to maintain insurance coverage as set forth herein shall in no way impact the terms of the "Limitation of Liability" Section.

**13. TERM AND TERMINATION**

**13.1 Agreement Term.** This Agreement commences on the Effective Date and continues until all the Services hereunder have expired or terminated pursuant to the terms of this Agreement (the "**Term**").

**13.2 Subscription Term.** The subscription term of each Subscription Service (the "**Subscription Term**") will be as specified in the applicable Quote. The start date of the Subscription Term shall be the later of (i) the start date specified on the Quote, or (ii) the date last signed on the Quote (or if the Quote is not signed, then the date

of the Customer purchase order received by PowerSchool referencing the applicable Quote number). Except as otherwise specified in the applicable Quote, Subscription Services will automatically renew for successive twelve (12) month periods, unless either Party gives the other Party written notice (email acceptable) at least sixty (60) days before the end date specified on the applicable Quote. Customer shall send any notice of non-renewal to nonrenewal@powerschool.com. Except as otherwise specified in the applicable Quote, renewal of Subscription Services will be subject to an uplift, and renewal of promotional or one-time priced subscriptions or licenses will be at PowerSchool's applicable list price in effect at the time of the applicable renewal.

**13.3 Suspension.** If Customer's account is thirty (30) days or more overdue for any PowerSchool product or service (except with respect to charges then under reasonable and good faith dispute), PowerSchool reserves the right, in addition to any of its other rights or remedies, to suspend any of Customer's Services until such amounts are paid in full, provided that, other than for customers paying by credit card or direct debit and whose payment has been declined, PowerSchool has given Customer at least ten (10) business days' prior notice that its account is overdue in accordance with the "Notices" section below. In addition, PowerSchool will have the right to suspend provision of the Services under this Agreement if: (a) Customer or User accessed or used the Services beyond the scope of the rights granted or for purpose not authorized under this Agreement; (b) Customer or any User is or has been involved in any fraudulent, misleading or unlawful activities relating to or in connection with any of the Services; or (c) Customer is notified that an objective security threat arises so great as to warrant immediate action by PowerSchool to protect the security of Customer Data and the PowerSchool systems, including if the Subscription Services are experiencing denial of service attacks, mail flooding, or other attacks or disruptions outside of PowerSchool's control.

**13.4 Termination for Breach.** A Party may terminate this Agreement for cause (i) upon 30 days written notice to the other Party of a material breach if such breach remains uncured at the expiration of such 30-day period, or (ii) if the other Party becomes the subject of a petition in bankruptcy or any other proceeding relating to insolvency, receivership, liquidation or assignment for the benefit of creditors.

**13.5 Termination for Non-Appropriation for Governmental Entities Only.** The Parties acknowledge and agree that if Customer is a governmental entity that is bound to statutory provisions that prevent it from committing to the payment of funds beyond its fiscal year, and if funds are not allocated for the Services specified on a Quote following the commencement of any succeeding fiscal year during which the Quote may continue, then Customer may terminate the Quote without liability for any termination charges or penalties at the end of its last fiscal period or the Subscription Term for which funds were appropriated, subject to Customer's providing the required notice herein. Customer will pay all charges incurred through the end of the last fiscal period or Subscription Term for which funds were appropriated. Customer will give PowerSchool written notice that funds have not been appropriated and that Customer wants to terminate the Agreement: (a) immediately after Customer receives notice of such non-appropriation; and (b) at least thirty (30) days prior to the end of the applicable fiscal period or Subscription Term. Customer will not utilize this clause as a right to terminate any Quote or this Agreement for convenience. PowerSchool reserves the right to request, and Customer shall provide, documentation deemed reasonably sufficient by PowerSchool evidencing such non-appropriation of funds.

**13.6 Mutual Termination**. The Parties may terminate this Agreement by mutual written agreement.

**13.7 No Other Termination Right**. Except as expressly set forth in this Agreement, neither Party has a right to terminate this Agreement or any Quote prior to its expiration.

**13.8 Effect of Termination**. In the event of any termination of all or any portion of this Agreement, Customer will not be relieved of any obligation to pay any sums of money that have accrued prior to the date of termination. In addition, the provisions of Sections 1 (Definitions), 4 (Proprietary Rights), 6 (Fees and Payment), 7 (Product-Specific and Pass-Through Terms), 9 (Disclaimer of Warranties), 10 (Indemnification), 11 (Limitation of Liability), 13.8 (Effect of Termination), and 14 (General Provisions) will survive termination or expiration of this Agreement. The protection of Customer Data as stated in the applicable DPA will survive any termination or expiration of this Agreement for so long as PowerSchool retains possession of Customer Data. Once the Customer Data has been made available to return to Customer and is permanently deleted, the executed DPA associated with this Agreement will automatically expire.

**13.9 Return or Disposal of Customer Data**. Upon termination or expiration of the Agreement, PowerSchool shall return to Customer or delete the Customer Data in its possession, custody or control in accordance with the terms of the DPA, unless otherwise required by applicable law.

## 14. GENERAL PROVISIONS

**14.1 Governing Law**. This Agreement will be governed by the laws of the country, territory, province, or

state in which Customer resides or has its principal place of business, without regard to its conflicts of laws rules or the United Nations Convention on the International Sale of Goods or the Uniform Computer Information Transactions Act.

**14.2 Venue**. The state, provincial, and federal courts located the country, territory, province, state, or county in which Customer resides or has its principal place of business will have exclusive jurisdiction and venue over any dispute relating to this Agreement, and each Party consents to the exclusive jurisdiction of those courts.

**14.3 Amendment**. This Agreement may only be amended or modified by a writing specifically referencing the particular section(s) of this Agreement to be modified and signed by authorized representatives of the Parties.

**14.4 Force Majeure**. Neither Party will be liable to the other for any delay or failure to perform any obligation under this Agreement (except for a failure to pay fees owed) if the delay or failure results from any cause beyond such Party's reasonable control, including acts of God or of a public enemy, acts of terrorism, war, United States or foreign governmental acts or restrictions in either a sovereign or contractual capacity, labor strikes, fire, power outages, road icing or inclement conditions, flood, epidemic or pandemic as designated by the World Health Organization, earthquakes, or tsunamis.

**14.5 Severability**. If any provision of this Agreement is held by a court of competent jurisdiction to be contrary to law, the provision will be deemed null and void, and the remaining provisions of this Agreement will remain in effect.

**14.6 No Waiver**. No failure or delay by either party in exercising any right under this Agreement will constitute a waiver of that right.

**14.7 Notices**. All notices under this Agreement must be in writing and delivered and will be deemed to have been received by the addressee: (i) if given by hand, immediately upon receipt; (ii) if given by overnight courier service, the first business day following dispatch; (iii) if given by registered or certified mail, postage prepaid and return receipt requested (or the equivalent delivery method in an international jurisdiction), the second business day after such notice is deposited in the mail; or (iv) if given by email, immediately upon confirmed receipt. Notices delivered personally are deemed given upon documented receipt or refusal by recipient to accept receipt. In the case of notices to PowerSchool, such notices must be sent to:

**PowerSchool Group LLC,**
**Attn: Chief Legal Officer**
**150 Parkshore Drive,**
**Folsom, CA 95630**
**legalnotices@powerschool.com**

In the case of notices to Customer, such notices will be sent to PowerSchool's address of record for Customer. Either Party may change its notice address by notifying the other Party in like manner.

**14.8 Assignment.** Neither PowerSchool nor Customer shall assign or transfer this Agreement or any interest herein, by operation of law or otherwise, without the prior written consent of the other Party; provided, however, that PowerSchool may assign its rights and obligations under this Agreement without the consent of the Customer in the event PowerSchool hereafter effects a corporate reorganization, consolidates with, or merges into, any entity or transfers all or substantially all of its properties or assets to any entity. This Agreement will inure to the benefit of and be binding upon the Parties, their respective successors and permitted assigns.

**14.9 No Reliance**. Each Party acknowledges that it has not made any promise or representation that is not expressed in this Agreement; and that it has not been induced into entering this Agreement by any representation about the nature and extent of its existing or potential claims or damages made by the other Party or by the other Party's attorney, representative, or agent.

**14.10 Export Compliance.** Customer shall not use the Services for any reason if Customer or any User is subject to sanctions or otherwise designated on any list of prohibited or restricted parties, including but not limited to the lists maintained by the U.S. Government (e.g., the Specially Designated Nationals List and Foreign Sanctions Evaders List of the U.S. Department of Treasury, and the Entity List of the U.S. Department of Commerce), the European Union or its Member States, or other applicable government authority. Customer shall not use the Services to export or re-export any information or technology to any country, individual, or entity to which such export or re-export is restricted or prohibited.

**14.11 Anti-Corruption**. Neither Party has received or been offered any illegal or improper bribe, kickback, payment, gift, or thing of value from an employee or agent of the other party in connection with this Agreement. Reasonable gifts and entertainment provided in the ordinary course of business do not violate the above restriction.

**14.12 Relationship of the Parties**. This Agreement does not create a partnership, franchise, joint venture,

agency, fiduciary or employment relationship between the Parties.

**14.13 Entire Agreement; Order of Precedence**. This Agreement and/or exhibits referenced herein, and any addendums and amendments, constitute the complete and entire agreement between the Parties with respect to its subject matter, and supersedes all prior, written or oral, discussions, understandings, arrangements, proposals, responses to proposals, and negotiations with respect to the same. The Parties acknowledge and understand that the disclaimers and limitations of liability set forth in this Agreement form an essential basis of the agreement between the Parties. The Parties agree that any term or condition stated in a Customer purchase order or in any other Customer order documentation (excluding Quotes and SOWs) is void. In the event of any conflict or inconsistency among the following documents, the order of precedence shall be: (1) the applicable executed Quote, (2) the body of this Agreement; and (3) any referenced and applicable exhibit, schedule, addendum, or amendment to this Agreement. Titles and headings of sections of this Agreement are for convenience only and shall not affect the construction of any provision of this Agreement.

**14.14 Third-Party Beneficiaries**. There are no third-party beneficiaries under this Agreement.

**14.15 Counterparts**. This Agreement may be executed electronically and in counterparts.