# Exhibit E

# STUDENT DATA PRIVACY AGREEMENT

## STATE: UTAH

**PROCESSOR:** **PowerSchool Group, LLC**

PowerSchool

## DATA PRIVACY AGREEMENT

This Data Privacy Agreement ("**DPA**") supplements the agreed to license and service agreement for the PowerSchool Services between the PowerSchool Contracting Entity ("**PowerSchool**") and the entity identified on applicable quote, MSA or issued purchase order ("**Customer**") and is made and entered into as of the effective date of signed quote, MSA or issued purchase order (the "**Effective Date**"). The terms herein supplement and amend the terms of the PowerSchool's standard Main Services Agreement or, if there is none, the then-existing applicable agreement between PowerSchool and Customer for the provision of PowerSchool's services and products, as amended by the Parties from time to time (the "**MSA**"). The term "MSA" includes all exhibits, schedules, addenda, statements of work, and quotes that are attached to, referenced in or otherwise associated with the MSA. In the event of a conflict between the MSA and this DPA, the DPA controls.

Below are the terms and conditions pursuant to which any Customer Data will be handled by PowerSchool and permitted third parties during the term of the MSA and after its termination. Any capitalized terms not defined herein shall have the meaning given to them in the MSA. PowerSchool and Customer are individually known as a "**Party**" and collectively referred to as "**Parties**."

**1. Glossary of Terms.**

The terms, "**Controller**", "**Data Subject**", "**Personal Data**", "**Personal Data Breach**", "**Processor**", and "**Processing**" (includes "**Processed**") shall have the same meaning as in the EU General Data Protection Regulation ("**GDPR**").

**1.1** "**Aggregate Data**" is raw data gathered and expressed in a summary form for statistical analysis.

**1.2** "**Applicable Law**" means any law that regulates the processing, privacy, or security of Customer Data and that is directly applicable to each Party to this DPA in the context of PowerSchool Processing Customer Data.

**1.3** "**Customer Data**" means all data, files, documents, and records uploaded to a PowerSchool Subscription Service or transmitted to PowerSchool under this Agreement by or on behalf of the Customer.

**1.4** "**Designated Representative**" means Customer or Processor employees as specified in the MSA to whom all notices required in this DPA will be sent.

**1.5** "**Education Records**" are records that are directly related to a student and that are maintained by an educational agency or institution or a party acting for or on behalf of the agency or institution. These records include but are not limited to grades, transcripts, class lists, student course schedules, health records (at the K- 12 level), student financial information (at the postsecondary level), and student discipline files. The information may be recorded in any way, including, but not limited to, handwriting, print, computer media, videotape, audiotape, film, microfilm, and microfiche. 34 CFR § 99.3. For the purpose of this DPA, "Education Records" provided to PowerSchool are presumed to be owned and under the control of the Customer.

**1.6** "**Student Data**" is a subset of Customer Data and contains Personal Data that would typically include pupil records of students and parents of students enrolled in a school, such as education records.

**1.7** "**Vendor-Data Subprocessor**" means PowerSchool's subcontractors or agents, appointed by or on behalf of PowerSchool in PowerSchool's role as Processor to Process Personal

Data on behalf of Customer in accordance with the MSA, or other service to operate and/or improve its software, and who has access to Customer Data.

**1.8** "**Student Profile**" means a collection of PII data elements relating to a student of the Customer.

**2. Purpose.**

To describe PowerSchool's responsibilities and solutions as a Processor for handling and protecting Customer Data.

**3. PowerSchool Products and Solutions.**

The MSA along with the accompanying applicable Quote(s) or Statement(s) of Work, provides the contracted- for PowerSchool products, solutions, and services.

**4. Data Classification.**

PowerSchool classifies data as public, private, or restricted, with restricted requiring the highest level of care and security.

**4.1.** All Customer Data that has not been de-identified or aggregated are classified as restricted in PowerSchool products, solutions, and services.

**4.2.** PowerSchool employs physical, administrative, and technological safeguards for restricted data. See Schedule 1-C (Physical, Administration, And Technological Safeguards) for more detail.

**5. Customer Data.**

**5.1.** PowerSchool will maintain all Customer Data in strict confidence and will not disclose any such Customer Data, or copies thereof, to any person or entity other than Customer's legal counsel or Customer's designated contact, or pursuant to the MSA. The Customer Data shared pursuant to the MSA, including persistent unique identifiers, will be used for no purpose other than the performance of the Services, improvement of PowerSchool Product(s), or internal research or as further agreed to in the MSA. If PowerSchool desires to use any Customer Data for purposes not contemplated in the MSA, PowerSchool must first obtain written approval from Customer.

**5.2.** Customer Data does not include metadata, De-identified Data, Aggregate Data or Transaction Data. See MSA for permitted uses of De-identified Data, Aggregate Data, and Transaction Data.

**5.3.** PowerSchool acknowledges that Customer retains full right and ownership to and control of all of their data, which includes User-provided or User-generated content (such content not encompassing any modifications to PowerSchool's Pre-existing Intellectual Property), unless such rights are specifically granted to PowerSchool in a writing signed by Customer and the User(s) or, if the User(s) is a minor child, by the child's parent/guardian.

**6. Processing of Customer Data.**

**6.1.** PowerSchool will safeguard and maintain the confidentiality of Customer Data obtained from Customer.

**6.2.** PowerSchool may access and use Customer Data on a need-to-know basis and only as expressly authorized by Customer for the sole and express purpose of fulfilling its obligations under the MSA and this DPA and any applicable Quote or Statement of Work. Such access or use of Customer Data by PowerSchool shall be to the minimum extent necessary and only for PowerSchool to fulfill its obligations under the MSA and this DPA and any applicable Quote or Statement of Work.

**6.3.** PowerSchool and its Vendor–Data Subprocessors shall Process Customer Data according to the Customer's instructions documented in the MSA unless otherwise required by

Applicable Law. In the event of Processing required by Applicable Law, and to the extent permitted by the Applicable Law, PowerSchool will inform the Customer before Processing Customer Data.

**6.4.** With the exception of De-identified Data, Aggregated Data, Transaction Data, and Vendor-Data Subprocessor uses permitted under the MSA, PowerSchool shall not:

**6.4.1.** Use, sell, rent, transfer, distribute, alter, or disclose Customer Data to any third party without the prior written consent of the Customer, except as required by Applicable Law or contracted for in the MSA;

**6.4.2.** Use Customer Data for its own commercial benefit, including but not limited to, advertising or marketing of any kind directed toward children, parents, guardians, or Customer employees, unless such use is specifically authorized by this DPA or otherwise authorized in writing by the Customer;

**6.4.3.** Use Customer Data to create a Student Profile other than as authorized or required by the MSA to perform the Services; and

**6.4.4.** Store Customer Data outside the continental United States unless Processor has given the Customer Designated Representative advance written notice of where and how the servers are housed, managed, and secured, and that the security standards required herein can be achieved; and the storage would be permitted under Applicable Law.

**6.5.** Qualified FERPA Exception. If PowerSchool will have access to Education Records, Processor acknowledges that, for the purposes of this DPA and the MSA, pursuant to the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g and its implementing regulations, 34 C.F.R. Part 99 ("FERPA"), it will be designated as a "school official" with "legitimate educational interests" in the Customer Education Records, Student Data, and Personal Data disclosed pursuant to the MSA, and PowerSchool agrees to abide by the FERPA limitations and requirements imposed on school officials. Processor will use the Education Records only for the purpose of fulfilling its duties under the MSA for Customer's and its Users' benefit, and shall not share Customer Data with or disclose it to any third party except as provided for in the MSA or this DPA, as required by Applicable Law, or if authorized in writing by the Customer.

**6.6.** Customer represents and warrants that it has obtained all necessary consents and government authorizations required under Applicable Law to permit the Processing of Customer Data.

**6.7.** Customer agrees to indemnify and hold PowerSchool and its Affiliates harmless from and against any action, claim, expense, damage, and cost brought against PowerSchool or any of its Affiliates, whether by a Data Subject or a government authority, related to necessary Data Subject consents and government authorizations for Processing.

**6.8.** PowerSchool agrees not to edit or use Customer Data, unless:

**6.8.1.** integral to and clearly contemplated by the particular nature of the Services or otherwise permitted pursuant to the MSA or this DPA;

**6.8.2.** written consent is first procured from and through the Customer;

**6.8.3.** the data is De-identified Data; Aggregate Data or Transactional Data; OR

**6.8.4.** the editing is performed to maintain the integrity of the Customer Data.

**7. Reliability of PowerSchool's and Vendor-Data Subprocessors' Employees, Agents and Contractors.** PowerSchool shall take reasonable measures to ensure the reliability of employees, agents, and contractors of PowerSchool, and Vendor-Data Subprocessors who may have access to Customer Data with the goal of ensuring that access to Customer Data is limited to individuals who need to know or access Customer Data under the terms of the MSA or this DPA, and to comply with Applicable Law in the context of individual's duties to the Processor and Vendor-Data Subprocessor, ensuring that individuals are subject to confidentiality obligations.

PowerSchool

**8. Security of Processing.**

Taking into account the state of the art, the costs of implementation and the nature, scope, context and purposes of Processing as well as the risk of varying likelihood and severity for the rights and freedoms of Data Subjects, PowerSchool shall implement appropriate technical and organizational measures to ensure a level of security appropriate to the risk. For further information on PowerSchool's technical and organizational measures, see Schedule 1-C (Physical, Administration, and Technological Safeguards).

**9. Vendor-Data Subprocessing.**

**9.1.** Customer authorizes PowerSchool to appoint Vendor-Data Subprocessors in accordance with this subsection and the MSA.

**9.2.** PowerSchool will enter into written agreements ("**Vendor-Data Subprocessor Agreement**") whereby Vendor-Data Subprocessors agree to secure and protect Customer Data in a manner consistent with the terms of this DPA and the MSA.

**9.3.** PowerSchool will periodically conduct or review compliance monitoring and assessments of Vendor-Data Subprocessors to determine their compliance with this DPA and MSA.

**9.4.** Pursuant to its respective Vendor-Data Subprocessor Agreement, the applicable Vendor-Data Subprocessors shall:

**9.4.1.** not disclose Customer Data, in whole or in part, to any third party with the exception of a Vendor-Data Subprocessor properly vetted by the primary Vendor-Data Subprocessor;

**9.4.2.** not use any Customer Data to advertise or market to students or their parents/guardians;

**9.4.3.** access, view, collect, generate and use Customer Data only to the extent necessary to assist Processor in performing its obligations specified in this DPA and the MSA;

**9.4.4.** at the conclusion or termination of the work, as directed by the Customer through PowerSchool, delete or return to the Customer all Customer Data in possession, custody or control, at the election of the Customer;

**9.4.5.** utilize reasonable physical, administrative, and technical safeguards in accordance with industry standards to secure Customer Data from unauthorized disclosure, access and use. Vendor-Data Subprocessor shall ensure that its employees and subcontractors who have access to Customer Data have been adequately vetted, trained, and possess the necessary qualifications to comply with the terms of this DPA; and

**9.4.6.** not re-identify or attempt to re-identify any De-identified Data or use De-identified Data in combination with other data elements or De-identified Data in the possession of a third-party affiliate, thereby posing risks of re-identification.

**10. Data Subject Rights.**

**10.1.** With respect to requests from Data Subjects regarding Customer Data, PowerSchool shall:

**10.1.1.** promptly notify the Customer if PowerSchool receives a request from a Data Subject under any Applicable Law with respect to Customer Data;

**10.1.2.** reasonably cooperate and assist Customer in connection with access requests, inquiries, and complaints from Data Subjects to whom the data relates or from data protection authorities; and

**10.1.3.** not directly respond to the request except on documented instructions of the Customer.

**10.2.** PowerSchool acknowledges that Applicable Law regarding Data Subject Rights may be further promulgated, modified, or interpreted by state attorney generals. PowerSchool will reasonably cooperate and assist Customer in adapting PowerSchool's support of Customer regarding responding

to Data Subject requests.

**11. Personal Data Breach.**

**11.1.** Customer agrees to notify PowerSchool immediately of any unauthorized use of Customer's accounts or any other breach of security.

**11.2.** Upon PowerSchool's becoming aware of a Personal Data Breach of Customer Data, PowerSchool shall immediately investigate the Personal Data Breach.

**11.2.1.** In the course of the investigation, PowerSchool shall take steps to mitigate and remediate the Personal Data Breach.

**11.2.2.** PowerSchool shall notify Customer without undue delay, and within the time period required by Applicable Law.

**11.2.3.** PowerSchool shall provide Customer with sufficient information to permit Customer to make a determination as to any notification obligations under Applicable Law.

**11.3.** PowerSchool shall cooperate with Customer and take commercially reasonable steps to assist Customer in an investigation of the Data Breach.

**11.4.** For additional information regarding Personal Data Breach notification and response, see Schedule 1-C.

**12. Data Protection Impact Assessment.**

PowerSchool shall provide reasonable assistance related to the nature of Processing to Customer in the event that a data protection impact assessment be required by Applicable Law.

**13. Return and Disposition of Customer Data.**

**13.1.** Upon written request from Customer and in accordance with the applicable terms in the following provisions of the Section 13 (Return and Disposition of Customer Data), PowerSchool will dispose or delete all Customer Data within a commercially reasonable time period when it is no longer needed for the purpose for which it was obtained.

**13.1.1.** Customer must inform PowerSchool when Customer Data is no longer needed. In no event will PowerSchool dispose of Customer Data pursuant to this provision unless and until PowerSchool has received affirmative written confirmation from Customer that Customer Data does not need to be transferred to a separate account.

**13.1.2.** Disposition will include (1) the shredding of any hard copies of any Customer Data; (2) erasing; or (3) otherwise modifying the personal information in those records to make the information unreadable or indecipherable by human or digital means.

**13.1.3.** Nothing in this DPA or the MSA authorizes PowerSchool to maintain Customer Data beyond the time period reasonably needed to complete the disposition.

**13.1.4.** Upon request by Customer, PowerSchool will provide written notification to Customer when all Customer Data have been disposed.

**13.1.5.** Upon receipt of a request from Customer, PowerSchool will provide Customer return of Customer Data, as commercially reasonable.

**13.1.6.** Customer acknowledges there may be a reasonable service fee attached to such data return service where more than two (2) such service requests are submitted by the Customer during the term of the MSA.

**13.2.** Throughout the Term of the MSA, Customer may request partial disposal of Customer Data that is no longer needed.

**13.2.1.** Partial disposal of Customer Data will be subject to Customer's request to transfer such data to a separate account.

**13.2.2.** To the extent Customer is unable to transfer such data by their own accord,

PowerSchool agrees to assist Customer, at Customer's expense, to transfer any Customer Data in question, so long as it is commercially reasonable to do so.

**13.2.3.** To the extent transfer or partial disposal of Customer Data is not commercially reasonable, PowerSchool will inform the Customer of the actual costs to undertake such a transfer, and Customer may agree to pay the cost of such transfer. If Customer does not agree to pay the cost of such transfer, PowerSchool has no obligation to conduct any data transfer on Customer's behalf.

**13.2.4.** All transfers must comply with Applicable Law. PowerSchool is not liable or in breach of this Agreement if PowerSchool denies a transfer that, in its reasonable judgment, does not comply with the Applicable Law. Any transfer made on Customer's written request requires Customer to fully indemnify and hold harmless PowerSchool from complying with Customer's instructions.

**13.3.** PowerSchool may retain Customer Data if required by Applicable Law.

**14. Transfer of Customer Data to Succeeding Vendor Upon Termination.**

Upon termination of this DPA, PowerSchool will, if so requested by Customer, securely transfer all Customer Data directly from PowerSchool's Site to the hosting site or platform of another vendor designated by Customer, such transfer to occur on a date on or after the effective date of termination as directed by Customer in a format mutually agreed by PowerSchool and at Customer's cost. PowerSchool will have no obligation to transfer Customer Data in a form or format specified by succeeding vendor, but PowerSchool will provide Customer Data in a manner that is the industry standard.

**15. Response to Legal Orders, Demands or Requests for Data.**

**15.1.** The terms herein will not be construed as prohibiting either Party hereto from disclosing information to the extent required by law, regulation, or court order, provided such Party notifies, where not prohibited, the other party promptly after becoming aware of such obligations and provides the other Party an opportunity to seek a protective order or otherwise to challenge or limit such required disclosure.

**15.2.** PowerSchool will not disclose (and will not instruct any of its employees or Vendor-Data Subprocessors to disclose) in any manner whatsoever any Customer Data to any third party unless:

**15.2.1.** such disclosure is required in order for PowerSchool to perform its obligations pursuant to the MSA or this DPA and any applicable Quote or Statement of Work;

**15.2.2.** such disclosure is permitted under Applicable Law; or

**15.2.3.** the third party agrees, in writing, to protect the confidentiality and security of Customer Data. If PowerSchool becomes legally compelled to disclose Customer Data, PowerSchool will, to the extent permitted by law and if time permits, provide Customer with prompt written notice thereof prior to disclosure.

**16. Compliance with Applicable Law.**

**16.1.** The Parties acknowledge that Customer Data may include Personal Data from Education Records that are subject to Applicable Law of the applicable jurisdiction.

**16.2.** Where required by Applicable Law, Customer acknowledges it has obtained all valid consents from the parents or pupils related to the Customer Data sufficient to grant PowerSchool the permission to conduct Processing on such Customer Data on behalf of the Customer.

**17. Termination.**

**17.1.** Subject to agreed data return, data transfer, data disposal, legal, or other end of term obligations, this DPA will automatically terminate without any further action of the Parties upon the termination or expiration of the applicable MSA between the Parties or successful completion of the Services under such MSA. Alternatively, upon re-execution of the MSA by the Customer, this DPA shall

also be revived and be of full force and effect.

**17.2.** The obligations of PowerSchool and Customer under this DPA shall survive termination or expiration of this DPA or MSA, until all Customer Data have been returned or disposed.

## 18. General Terms.

**18.1.** The parties to this DPA hereby submit to the choice of jurisdiction stipulated in the MSA with respect to any disputes or claims arising under this DPA.

**18.2.** The terms of this DPA do not reduce PowerSchool's obligations under the MSA regarding the protection of Customer Data and does not permit PowerSchool to Process Customer Data in ways prohibited by the MSA.

**18.3.** In the event that there is a conflict or inconsistencies between this DPA, Applicable Law, and the Standard Contract Clauses regarding cross-board transfer issues, the conflict or inconsistencies shall be resolved in the following order: (i) first, Applicable Law, (ii) second, the Standard Contract Clauses, and (iii) then the DPA.

**18.4.** In the event that there is a conflict or inconsistencies between the MSA and this DPA, this DPA controls.

## SCHEDULE 1-C

# PHYSICAL, ADMINISTRATIVE, AND TECHNOLOGICAL SAFEGUARDS

**A.1 Data Security**. PowerSchool agrees to abide by and maintain adequate data security measures, consistent with industry standards for digital storage of Customer Data, to protect Customer Data from unauthorized disclosure or acquisition by an unauthorized person. The general security obligations of PowerSchool are set forth below. These security measures will include, but are not limited to:

**A.1.1 Passwords and Employee Access**. PowerSchool will secure usernames, passwords, and any other means of gaining access to the Services or to Customer Data, at a level meeting or exceeding the applicable standards. PowerSchool will only provide access to Customer Data to employees or contractors who require access pursuant to the MSA and this DPA, and only on terms consistent with or exceeding the data security measures required by this DPA between the Parties.

**A.1.2 Security Protocols**. The Parties agree to maintain security protocols that meet industry standards in the transfer or transmission of any data, including ensuring that data may only be viewed or accessed by parties legally allowed to do so. PowerSchool will maintain all data obtained or generated pursuant to the MSA in a secure digital environment.

**A.1.3 Employee Training**. PowerSchool will provide periodic security training to those employees who operate or have access to the system. Further, PowerSchool will provide Customer with contact information of an employee whom Customer may contact if there are any security concerns or questions.

**A.1.4 Security Technology**. PowerSchool will employ industry standard measures to protect data from unauthorized access. The service security measures will include server authentication and data encryption. PowerSchool will host data pursuant to the MSA in an environment using firewall(s) that are updated according to industry standards.

**A.1.5 Monitoring**. PowerSchool will log and analyze events across critical systems to identify potential threats to confidentiality, integrity, and availability of Customer Data.

**A.1.6 Security Coordinator**. PowerSchool will provide the name and contact information of PowerSchool's security coordinator for the Customer Data received pursuant to the MSA and this DPA upon written request.

**A.1.7 Vendor-Data Subprocessors Bound.** PowerSchool will enter into written agreements whereby Vendor-Data Subprocessors agree to secure and protect Customer Data in a manner consistent with the terms of this exhibit and the DPA. PowerSchool will periodically conduct or review compliance monitoring and assessments of Vendor-Data Subprocessors to determine their compliance with this exhibit and DPA.

**A.1.8 Periodic Risk Assessment**. PowerSchool acknowledges and agrees to conduct digital and physical periodic risk assessments at least annually and take commercially reasonable industry standard steps to remediate identified security and privacy vulnerabilities in a timely manner.

**A.1.9 Established Security Policies.** PowerSchool will follow its established access security policies to support the confidentiality, integrity, and availability of the Customer Data against risks including but not limited to unauthorized access, collection, use, disclosure or disposal, loss, or modification. Such security arrangements will include, without limitation, reasonable physical, administrative, and technical safeguards.

**A.1.10 Audits and Compliance Reports.** PowerSchool's security compliance is assessed by independent third-party auditors. Upon Customer agreeing to an NDA, PowerSchool shall provide access to information regarding PowerSchool's ISO 27001:2103 certification and SOC II Reports. To the extent that PowerSchool discontinues a third- party audit, PowerSchool will adopt or maintain an equivalent industry-recognized security standard.

**B.1 Data Incident.** In the event Customer Data is accessed or obtained by an unauthorized individual or third party, PowerSchool will:

B.1.1 provide notification to Customer within a reasonable amount of time of confirmation of the Incident, not exceeding seventy-two (72) hours.

B.1.2 PowerSchool agrees to comply with all reasonable requests from Customer in relation to such Incident and, in consultation with Customer and subject to any directions from Customer, take all reasonable steps to mitigate any harmful effect resulting from any such unauthorized access to, use or disclosure of Customer Data.

**B.2 Post Incident Process**. In the event of an Incident, PowerSchool will follow the following process:

B.2.1 Provide a security incident notification written in plain language after confirmation of the incident.

B.2.2 The security incident notification will include, at a minimum, the following information:

B.2.2.1 The name and contact information of Customer's Designee or his/her designee for this purpose.

B.2.2.2 A list of the types of Customer Data that were or are reasonably believed to have been the subject of an incident.

B.2.2.3 If the information is possible to determine at the time the notice is provided, then either (1) the date of the incident, (2) the estimated date of the incident, or (3) the date range within which the incident occurred. The notification will also include the date of the notice.

B.2.2.4 Whether the notification was delayed as a result of a law enforcement investigation, if that information is possible to determine and permitted at the time the notice is provided.

B.2.2.5 A general description of the incident, if that information is possible to determine at the time the notice is provided.

B.2.3 PowerSchool agrees to adhere to all requirements in applicable state, provincial and federal law with respect to an Incident related to Customer Data, including, when appropriate or required, the required responsibilities and procedures for notification and mitigation, where commercially reasonable, of any such data breach.

B.2.4 PowerSchool maintains a written incident response plan that is consistent with industry standards and the applicable federal (country), state, or provincial law for responding to a data incident, security incident, privacy incident, or unauthorized acquisition or use of the Customer Data or any portion thereof, including personally identifiable information.

B.2.5 If Customer requests PowerSchool's assistance providing notice of unauthorized access, and such assistance does not take on a form unduly burdensome to PowerSchool, PowerSchool will reasonably co- operate and assist in, any investigation of a complaint that any Customer Data has been collected, used or disclosed contrary to Privacy Laws, or the policies of Customer, whether such investigation is conducted by Customer itself or a body having the legal authority to conduct the investigation, including but not limited to co-operation and assistance in notifying the affected Data Subject(s) of the unauthorized access.

**C.1 Canada**: For engagements with Customers and Users located in Canada and any of its provinces, the Parties acknowledge such Customer Data will be subject to public sector or private sector data protection laws, as applicable, including the Personal Information Protection and Electronic Documents Act, and any substantially similar provincial law.

C.1.1 As an example, if the province of Ontario, the Education Act, RSO 1990, c.E.2, Personal Health Information Protection Act, 2004, S.O. 2004, c. 3, Sched. A., Municipal Freedom of Information and Protection of Privacy Act RSO 1990, c.M.56 and the Protection of Personal Information and Electronic Documents Act S.C. 2000, c. 5.

**C.2 United States**: For engagements with Customers and Users located in the United States any specific states territory, the Parties acknowledge that:

C.2.1 Customer Data may include Personal Data from Education Records that are subject to the Family Educational Rights and Privacy Act, as amended ("FERPA Records");

C.2.2 to the extent that Customer Data includes FERPA Records, PowerSchool will be considered a "School Official" (as that term is used in FERPA and its implementing regulations) and will comply with the requirements and obligations of School Officials under FERPA. Each Party represents and warrants to the other Party that it will comply with all provisions of FERPA applicable to such Party's performance hereunder.

C.2.3 the Parties also acknowledge that applicable Customer Data may include Personal Data from children under the age of 13, subject to the Children's Online Privacy Protection Act and related regulations ("COPPA").

C.2.4 Where applicable, Customer acknowledges that it will act as agent for the parents of students under the age of 13 for purposes of COPPA. Customer represents to PowerSchool that through the duration of this Agreement, the Customer is duly authorized to provide the data to PowerSchool for processing based on having obtained parental consent where necessary.

C.2.5 Customer acknowledges that it has read, fully understands, and agrees to abide by PowerSchool's Privacy Policy, available at www.powerschool.com/privacy and as may be revised from time-to- time, incorporated by reference herein.

**C.3 European Union**: For engagements with Customers and User(s) located in the member countries of the European Union and the European Economic Area, the Parties acknowledge applicable Customer Data will be subject to the General Data Protection Regulation (GDPR), as amended with enforcement from the European Data Protection Board through EU and EEA national data protection authorities, and the European Data Protection Supervisor (EDPS).

**C.4 United Kingdom**: For engagements with Customers and User(s) located in the United Kingdom after December 31, 2020, the Parties acknowledge applicable Customer Data will be subject to the United Kingdom General Data Protection Regulation, and Data Protection Act of 2018, as amended, along with will regulations such as the Pupils' Educational Records Regulation 2003 (Scotland); the Public Information Regulations 2011 (Wales); and the Education Regulations (Northern Ireland) of 2009, as amended, and as enforced by the Information Commissioner.

**C.5 Switzerland:** For engagements with Customers and its User(s) located in Switzerland, the Parties acknowledge applicable Customer Data will be subject to the Swiss Federal Data Protection Act, to be replaced with the Swiss Data Protection Act 2020 (DPA).

SCHEDULE 2-C

# POWERSCHOOL DATA SECURITY AND PRIVACY PLAN

PowerSchool agrees that it will protect the confidentiality, privacy and security of the Protected Data it receives from Customers in accordance with this DPA.

Additional elements of PowerSchool's Data Security and Privacy Plan are as follows:

(a) In order to implement all state, federal, and local data security and privacy requirements, including those contained within this Data Security and Privacy Plan ("DSPP"), PowerSchool will: Review its data security and privacy policy and practices to ensure that they are in conformance with all applicable federal, state, and local laws and the terms of this DSPP. In the event PowerSchool's policy and practices are not in conformance, PowerSchool will implement commercially reasonable efforts to ensure such compliance.

(b) As required by the NIST Cybersecurity Framework, in order to protect the security, confidentiality and integrity of the Protected Data that it receives under the Agreement, PowerSchool will have the following reasonable administrative, technical, operational and physical safeguards and practices in place throughout the term of the Agreement:

Data Security:

· Data-at-rest & data-in-transit (motion) is encrypted
· Data leak protections are implemented
Information Protection Processes and
Procedures:
· Data destruction is performed according to contract and agreements
· A plan for vulnerability management is developed and
implemented Protective Technology:
· Log/audit records are ascertained, implemented, documented, and reviewed according to policy
· Network communications are protected
Identity Management, Authentication and Access Control:
· Credentials and identities are issued, verified, managed, audited, and revoked, as applicable, for authorized devices, processes, and users
· Remote access is managed PowerSchool also conforms to the ISO 27001:2013 standard.

(c) For any of its employees (or employees of any of its subcontractors or assignees) who have access to Protected Data, PowerSchool has provided or will provide training on the federal and state laws governing confidentiality of such data prior to their receiving access, as follows: Annually, PowerSchool will require that all of its employees (or employees of any of its subcontractors or assignees) undergo data security and privacy training to ensure that these individuals are aware of and familiar with all applicable data security and privacy laws.

(d) In the event that PowerSchool engages any subcontractors, assignees, or other authorized agents to perform its obligations under the Agreement, it will require such subcontractors, assignees, or other authorized agents to execute written agreements requiring those parties to protect the confidentiality and security of Protected Data under applicable privacy laws.

(e) PowerSchool will manage data security and privacy incidents that implicate Protected Data, including identifying breaches and unauthorized disclosures, and PowerSchool will provide prompt notification of any breaches or unauthorized disclosures of Protected Data. More information on how incidents are handled can be found in the Main Service Agreement ("MSA").

(f) PowerSchool will implement procedures for the return, transition, deletion and/or destruction of Protected Data at such time that the Agreement is terminated or expires, as more fully described in MSA.