John P. Carlin (NY 3031887)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

R. Rosie Vail (SBN 317977)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Dylan O. Smith (NY 5846076)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
jschutte@paulweiss.com
dosmith@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant Bain Capital, L.P.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION | Case No. 3:25-md-3149-BEN-MSB<br><br>MDL No. 3149<br><br>**DEFENDANT BAIN CAPITAL, L.P.'S NOTICE OF MOTION AND MOTION TO DISMISS THE SCHOOL DISTRICT AMENDED PUTATIVE CLASS ACTION COMPLAINT AND THE SCHOOL DISTRICT DIRECT ACTIONS FIRST AMENDED MASTER CONSOLIDATED COMPLAINT (TRACK 2)**<br><br>Date: TBD<br>Time: TBD<br>Ctrm.: 5A<br>Judge: Hon. Roger T. Benitez |

# NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on a date and time to be determined by the Court, Defendant Bain Capital, L.P. ("Bain") hereby moves the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), for an order dismissing Bain as a defendant in: (1) the First Amended Consolidated Master Complaint (Dkt. 288) ("Direct Action Complaint") filed by the School District Direct Action Plaintiffs ("Direct Action Plaintiffs"); (2) the Amended Putative Class Action Complaint (Dkt. 263) ("Class Complaint," and together with the Direct Action Complaint, the "Complaints") filed by the School District Putative Class Action Plaintiffs ("Class Action Plaintiffs," and together with the Direct Action Plaintiffs, "Plaintiffs"); and (3) all direct-filed complaints in the above-captioned action, with prejudice (the "Motion").

The grounds for this Motion are as follows:

*First*, the Complaints should be dismissed for lack of personal jurisdiction;

*Second*, the Direct Action Complaint should be dismissed for failure to state a claim under the alter ego doctrine; and

*Third*, all counts in the Complaints brought against Bain on a theory of direct liability should also be dismissed for failure to state a claim.

This Motion is based upon Bain's Notice of Motion and the accompanying Memorandum of Points and Authorities, the complete files and records in these consolidated actions, the concurrently filed Appendix of Exhibits, the concurrently filed declaration of Jacobus J. Schutte, and such other arguments and matters as the Court may consider. This Motion is also based on PowerSchool Holdings, Inc. and PowerSchool Group, LLC's ("PowerSchool") Notice of Motion and the accompanying Omnibus Motion to Dismiss the Track Two Complaints, which Bain joins in full. (Dkt. 302). Bain also adopts the arguments made in its Motion to

Dismiss the Consolidated Individual Users Putative Class Action Complaint (Dkt. 286) to the extent applicable here.

# TABLE OF CONTENTS


Page

PRELIMINARY STATEMENT ........ 1

PROCEDURAL HISTORY ........ 2

FACTUAL BACKGROUND ........ 4

LEGAL STANDARD ........ 8

ARGUMENT ........ 9

I. PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE THAT BAIN IS SUBJECT TO PERSONAL JURISDICTION IN ANY TRANSFEROR COURT ........ 10

II. THE DIRECT ACTION COMPLAINT FAILS TO STATE A CLAIM AGAINST BAIN ON AN ALTER EGO THEORY OF LIABILITY ........ 17

A. Direct Action Plaintiffs Fail to Allege Control *Before* Bain Acquired an Equity Interest in PowerSchool ........ 20

B. Direct Action Plaintiffs Fail to Allege Control *After* Bain Acquired an Equity Interest in PowerSchool ........ 24

C. Direct Action Plaintiffs Fail to Allege Any Injustice from Respecting Bain's Separate Corporate Identity ........ 25

III. THE COMPLAINTS FAIL TO STATE A CLAIM ON A DIRECT LIABILITY THEORY ........ 26

A. Intentional Interference with Contractual Relations (Class Action Count 2; Direct Action Count 7) ........ 28

B. Computer Fraud and Abuse Act (Class Action Count 4) ........ 36

C. California Comprehensive Data Access and Fraud Act (Class Action Count 5) ........ 40

D. Class Action Plaintiffs Engage in Group Pleading ........ 43

E. Class Action Plaintiffs Fail to State a Claim as to Their Remaining Counts ........ 44

1. Negligence (Class Action Count 3) ..... 45

2. Unjust Enrichment (Class Action Count 7) ..... 48

3. Declaratory Judgment Act (Class Action Count 8) ..... 50

CONCLUSION ..... 50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams* v. *Johnson*,
355 F.3d 1179, 1183 (9th Cir. 2004)). .......... 9

*Adkins* v. *Everest Glob. Servs., Inc.*,
2024 WL 3887127 (D.N.J. Aug. 21, 2024) .......... 47, 48

*Advanced Eng'g Sols. Co., LLC* v. *Pers. Corner, LLC*,
2021 WL 1502705 (C.D. Cal. Feb. 25, 2021) .......... 48, 49

*Al Rushaid* v. *Pictet & Cie*,
28 N.Y.3d 316 (2016) .......... 13

*Al Sayegh Bros. Trading (LLC)* v. *Doral Trading & Export, Inc.*,
219 F. Supp. 2d 285 (E.D.N.Y. 2002) .......... 25

*Alert Enter., Inc.* v. *Rana*,
2023 WL 2541353 (N.D. Cal. Mar. 16, 2023) .......... 41

*Alfus* v. *Pyramid Tech. Corp.*,
745 F. Supp. 1511 (N.D. Cal. 1990) .......... 37

*Allen* v. *Oberdorfer Foundries, Inc.*,
192 A.D.2d 1077 (N.Y. App. Div. 1993) .......... 19

*Alt. Electrodes, LLC* v. *Empi, Inc.*,
597 F. Supp. 2d 322 (E.D.N.Y. 2009) .......... 33

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009) .......... *passim*

*Attisha Enters., Inc.* v. *Cap. One, N.A.*,
505 F. Supp. 3d 1051 (S.D. Cal. 2020) (Benitez, J.) .......... 45, 46

*Axiom Foods, Inc.* v. *Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) .......... 16

*Bank of N.Y.* v. *Fremont Gen. Corp.*,
523 F.3d 902 (9th Cir. 2008) .......... 33

*In re Bayou Hedge Funds Inv. Litig.*,
472 F. Supp. 2d 528 (S.D.N.Y. 2007) .......... 49

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007) .......... 9

*Ben's Auto Body, Inc.* v. *Teitelbaum*,
2008 WL 5244420 (D.N.H. Dec. 15, 2008) .......... 33, 34

*Bethea* v. *Roizman*,
2012 WL 4490759 (D.N.J. Sept. 27, 2012) .......... 34

*Better Homes Realty, Inc.* v. *Watmore*,
2017 WL 1400065 (S.D. Cal. Apr. 18, 2017) (Benitez, J.) .......... 44

*Bui-Ford* v. *Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) .......... 42, 43

*Bustamante* v. *Bank of Am., N.A.*,
2012 WL 13175878 (S.D. Cal. May 21, 2012) .......... 44

*Cal. Dep't of Toxic Substances Control* v. *NL Indus.*,
2021 WL 5933140 (C.D. Cal. Oct. 13, 2021) .......... 25

*Cartwright* v. *Cooney*,
788 F. Supp. 2d 744 (N.D. Ill. 2011) .......... 33, 34

*City of Reno* v. *Netflix, Inc.*,
52 F.4th 874 (9th Cir. 2022) .......... 50

*Claridge* v. *RockYou, Inc.*,
785 F. Supp. 2d 855 (N.D. Cal. 2011) .......... 40, 41, 42

*Cohen* v. *Avanade, Inc.*,
874 F. Supp. 2d 315 (S.D.N.Y. 2012) .......... 46

*Columbus LTACH Mgmt., LLC* v. *Quantum LTACH Holdings, LLC*,
2019 WL 2281632 (D.N.J. May 29, 2019) .......... 28

*Conte* v. *Emmons*,
895 F.3d 168 (2d Cir. 2018) .......... 31

*Corcoran* v. *CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016) .......... 12

*Core-Vent Corp.* v. *Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993) .......... 16, 17

*Corning Inc.* v. *Shenzhen Xinhao Photoelectric Tech. Co., Ltd.*,
546 F. Supp. 3d 204 (W.D.N.Y. 2021) .......... 35

*C.R. England* v. *Swift Transp. Co.*,
437 P.3d 343 (Utah 2019) .......... 30

*Cruz* v. *Sears*,
2012 WL 13175896 (S.D. Cal. Apr. 16, 2012) .......... 46

*Cummings* v. *Worktap, Inc.*,
2019 WL 4221652 (N.D. Cal. Sept. 4, 2019) .......... 18, 19

*In re Currency Conversion Fee Antitrust Litig.*,
265 F. Supp. 2d 385 (S.D.N.Y. 2003) .......... 25

*Custom Packaging Supply, Inc.* v. *Phillips*,
2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) .......... 43

*Daimler AG* v. *Bauman*,
571 U.S. 117 (2014) .......... 14

*Davis* v. *Brickman Landscaping, Ltd.*,
98 A.3d 1173 (N.J. 2014) .......... 45

*De Leon* v. *Cnty. of San Diego*,
2017 WL 2670891 (S.D. Cal. June 20, 2017) (Benitez, J.) .......... 9

*Delacruz* v. *State Bar of Cal.*,
2017 WL 7310715 (N.D. Cal. June 21, 2017) .......... 40

*In re Delta Dental Antitrust Litig.*,
509 F. Supp. 3d 1377 (J.P.M.L. 2020) .......... 10, 11

*DePetris* v. *Traina*,
211 A.D.3d 939 (N.Y. App. Div. 2022) .......... 26

*DiGiorgio Corp.* v. *Mendez & Co., Inc.*,
230 F. Supp. 2d 552 (D.N.J. 2002) .......... 32

*Doe* v. *Camp Pendleton & Quantico Hous. LLC*,
2020 WL 1890576 (S.D. Cal. Apr. 16, 2020) .......... 44

*Dollar Tree Stores Inc.* v. *Toyama Partners, LLC*,
2010 WL 1688583 (N.D. Cal. Apr. 26, 2010) .......... 33

*Eclectic Props. E., LLC* v. *Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......... 2, 24

*Est. of Ricardez* v. *Cnty. of Ventura*,
2020 WL 3891460 (C.D. Cal. June 24, 2020) .......... 25

*Flaugher* v. *Doe*,
2017 WL 3314231 (S.D. Cal. Aug. 1, 2017) (Benitez, J.) .................................. 8

*Fletcher* v. *Atex*,
68 F.3d 1451 (2d Cir. 1995) .................................................................. 23

*Ford Motor Co.* v. *Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .................................................................. 13

*Freeman* v. *Complex Computing Co., Inc.*,
119 F.3d 1044 (2d Cir. 1997) .................................................................. 20

*Futterman* v. *Kaiser Found. Health Plan, Inc.*,
91 Cal. App. 5th 656 (2023) .................................................................. 26

*Garelli Wong & Assocs., Inc.* v. *Nichols*,
551 F. Supp. 2d 704 (N.D. Ill. 2008) .................................................................. 39

*Gerritsen* v. *Warner Bros. Ent. Inc.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015) .................................................. *passim*

*Giovanelli* v. *D. Simmons Gen. Contracting*,
2011 WL 2470591 (D.N.J. June 17, 2011) .................................................. 48

*Gray* v. *Wackenhut Servs., Inc.*,
721 F. Supp. 2d 282 (S.D.N.Y. 2010) .................................................. 47

*Hernandez* v. *Mimi's Rock Corp.*,
632 F. Supp. 3d 1052 (N.D. Cal. 2022) .................................................. 23

*Hidria, USA, Inc.* v. *Delo*,
783 S.E.2d 839 (S.C. Ct. App. 2016) .................................................. 13

*hiQ Labs, Inc.* v. *LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) .................................................. 38

*Horton* v. *NeoStrata Co. Inc.*,
2016 WL 11622008 (S.D. Cal. Nov. 22, 2016) .................................................. 44

*HPI Health Care Servs., Inc.* v. *Mt. Vernon Hosp., Inc.*,
545 N.E.2d 672 (Ill. 1989) .................................................. 28

*Ixchel Pharma, LLC* v. *Biogen, Inc.*,
9 Cal. 5th 1130 (2020) .................................................. 28

*JIT Concepts, Inc.* v. *Shelby Cnty. Healthcare Corp.*,
358 F. Supp. 2d 678 (W.D. Tenn. 2005) .................................................. 30

*Judge* v. *Moving Into Maths*,
1994 WL 262883 (D.N.H. Jan. 11, 1994) .......... 28, 29

*Kaye* v. *Grossman*,
202 F.3d 611 (2d Cir. 2000) .......... 49

*Kilcullen* v. *Select Portfolio Servicing, Inc.*,
2012 WL 1667150 (S.D. Cal. May 10, 2012) (Benitez, J.) .......... 9

*Kirby ex rel. Kirby 2014 Trust* v. *AT&T Corp.*,
2022 WL 17184565 (S.D. Cal. Nov. 23, 2022) (Benitez, J.) .......... 43

*Klassen* v. *Lazik*,
91 P.3d 90 (Okla. Civ. App. 2004) .......... 13

*Kowal* v. *Westchester Wheels, Inc.*,
89 N.E.3d 807 (Ill. App. Ct. 2017) .......... 13

*Lakeland Tours, LLC* v. *Bauman*,
2014 WL 12570970 (S.D. Cal. Feb. 11, 2014) .......... 36

*Lee* v. *State Volunteer Mut. Ins. Co.*,
2005 WL 123492 (Tenn. Ct. App. Jan. 21, 2005) .......... 33, 34

*In re Liberty Bridge Cap. Mgmt., GP, LLC*,
670 B.R. 676 (S.D.N.Y. 2025) .......... 21

*Lisa McConnell, Inc.* v. *Idearc, Inc.*,
2010 WL 364172 (S.D. Cal. Jan. 22, 2010) .......... 25

*Long Beach Rd. Holdings, LLC* v. *Foremost Ins. Co.*,
75 F. Supp. 3d 575 (E.D.N.Y. 2015) .......... 45

*LVRC Holdings LLC* v. *Brekka*,
581 F.3d 1127 (9th Cir. 2009) .......... 36, 38

*Macpherson* v. *United States*,
2017 WL 766722 (S.D. Cal. Feb. 28, 2017) (Benitez, J.) .......... 10

*Major-Blakeney Corp.* v. *Jenkins*,
121 Cal. App. 2d 325 (1953) .......... 49

*Mangindin* v. *Wash. Mut. Bank*,
637 F. Supp. 2d 700 (N.D. Cal. 2009) .......... 50

*Martifer-Silverado Fund I, LLC* v. *Zhongli Sci. & Tech. Grp. Co.*,
2020 WL 1322926 (N.D. Cal. Mar. 20, 2020) .......... 23

*Mauzy* v. *Mauzy*,
2025 WL 1677778 (S.D. Cal. June 12, 2025) ........ 37

*Mazed* v. *JP Morgan Chase Bank, N.A.*,
2013 WL 12131725 (C.D. Cal. May 6, 2013) ........ 47

*Medimpact Healthcare Sys., Inc.* v. *IQVIA Holdings Inc.*,
2020 WL 1433327 (S.D. Cal. Mar. 24, 2020) ........ 15

*Medtronic Sofamor Danek, Inc.* v. *Michelson*,
2002 WL 35649396 (W.D. Tenn. Sept. 10, 2002) ........ 29

*Mehr* v. *Fed'n Internationale de Football Ass'n*,
115 F. Supp. 3d 1035 (N.D. Cal. 2015) ........ 47

*Mfrs. Consolidation Serv., Inc.* v. *Rodell*,
42 S.W.3d 846 (Tenn. Ct. App. 2000) ........ 13

*Modisette* v. *Apple Inc.*,
30 Cal. App. 5th 136 (2018) ........ 48

*Morris* v. *N.Y. State Dep't of Tax'n & Fin.*,
82 N.Y.2d 135 (1993) ........ 19

*Moser* v. *Lifewatch Inc.*,
2020 WL 1849664 (S.D. Cal. Apr. 13, 2020) ........ 16

*Moxtek, Inc.* v. *U.S. Welding, Inc.*,
2023 WL 2346316 (D. Utah Mar. 3, 2023) ........ 29

*Navarro* v. *Ski Data*,
2022 WL 18280359 (C.D. Cal. Dec. 7, 2022) ........ 46

*Navigation Holdings, LLC* v. *Molavi*,
445 F. Supp. 3d 69 (N.D. Cal. 2020) ........ 1

*NetApp, Inc.* v. *Nimble Storage, Inc.*,
41 F. Supp. 3d 816 (N.D. Cal. 2014) ........ 37, 38, 40

*Newtek Small Bus. Fin., LLC* v. *Tex. First Cap., Inc.*,
2025 WL 439434 (E.D. Pa. Feb. 7, 2025) ........ 30, 32

*United States* v. *Nosal*,
676 F.3d 854 (9th Cir. 2012) (en banc) ........ 36, 38

*Nowak* v. *Xapo, Inc.*,
2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ........ 36

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) .......... 4

*Ocampo* v. *United States*,
2023 WL 6305801 (S.D. Cal. Sept. 27, 2023) .......... 15

*Oddo Asset Mgmt.* v. *Barclays Bank PLC*,
19 N.Y.3d 584 (2012) .......... 34

*Oxbow Calcining USA Inc.* v. *Am. Indus. Partners*,
96 A.D.3d 646 (N.Y. App. Div. 2012) .......... 23

*In re Packaged Ice Antitrust Litig.*,
2011 WL 6178891 (E.D. Mich. Dec. 12, 2011) .......... 12

*Palomar Health* v. *Am. Guarantee & Liab. Ins. Co.*,
2021 WL 4035005 (S.D. Cal. Sept. 3, 2021) (Benitez, J.) .......... 9, 17

*Patel* v. *Karnavati Am., LLC*,
99 A.3d 836 (N.J. Super. Ct. App. Div. 2014) .......... 13

*Pelman* v. *McDonald's Corp.*,
237 F. Supp. 2d 512 (S.D.N.Y. 2003) .......... 48

*Peninsula Cruise, Inc.* v. *New River Yacht Sales, Inc.*,
512 S.E.2d 560 (Va. 1999) .......... 13

*Peterson* v. *Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) .......... 49

*Phillips* v. *Selig*,
959 A.2d 420 (Pa. Super. 2008) .......... 31

*Plasticware, LLC* v. *Flint Hills Res., LP*,
852 F. Supp. 2d 398 (S.D.N.Y. 2012) .......... 28

*Port Auth. of N.Y. & N.J.* v. *Arcadian Corp.*,
991 F. Supp. 390 (D.N.J. 1997) .......... 46

*PR Acquisitions, LLC* v. *Midland Funding LLC*,
2018 WL 2041521 (Del. Ch. Apr. 30, 2018) .......... 18

*Price* v. *Synapse Grp., Inc.*,
2017 WL 3131700 (S.D. Cal. July 24, 2017) .......... 17

*PXP Producing Co. LLC* v. *MitEnergy Upstream LLC*,
--- A.3d ---, 2025 WL 1779457 (Del. Ch. June 26, 2025) .......... *passim*

*Quelimane Co.* v. *Stewart Title Guar. Co.*,
19 Cal. 4th 26 (1998) .......... 30, 31

*Ranza* v. *Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .......... 14, 23

*Read* v. *Profeta*,
397 F. Supp. 3d 597 (D.N.J. 2019) .......... 33

*Red Oak Apartment Homes, LLC* v. *Strategis Floor & Decor, Inc.*,
243 A.3d 891 (N.H. 2020) .......... 13

*Reynolds* v. *Binance Holdings Ltd.*,
481 F. Supp. 3d 997 (N.D. Cal. 2020) .......... 17

*Reynolds* v. *Lifewatch, Inc.*,
136 F. Supp. 3d 503 (S.D.N.Y. 2015) .......... *passim*

*Rickman* v. *BMW of N. Am. LLC*,
538 F. Supp. 3d 429 (D.N.J. 2021) .......... 15

*Roberts* v. *Gen. Motors Corp.*,
643 A.2d 956 (N.H. 1994) .......... 32

*Roche Diagnostics GmbH* v. *Enzo Biochem, Inc.*,
992 F. Supp. 2d 213 (S.D.N.Y. 2013) .......... 32

*Rochfort* v. *EF Inst. for Cultural Exch., Inc.*,
2020 WL 12833951 (S.D. Cal. Sept. 8, 2020) .......... 15

*Ross Holding & Mgmt. Co.* v. *Advance Realty Grp., LLC*,
2010 WL 1838608 (Del. Ch. Apr. 28, 2010) .......... 20

*Rowe Plastic Surgery of N.J., LLC* v. *Aetna Life Ins. Co.*,
705 F. Supp. 3d 194 (S.D.N.Y. 2023) .......... 49

*Rutherford* v. *Owens-Illinois, Inc.*,
16 Cal. 4th 953 (1997) .......... 33

*In re R.W.*,
39 A.3d 682 (Vt. 2011) .......... 13

*Ryans* v. *Lowell*,
484 A.2d 1253 (N.J. Super. Ct. App. Div. 1984). .......... 47

*Sandhu Farm Inc.* v. *A&P Fruit Growers Ltd.*,
524 P.3d 209 (Wash. Ct. App. 2023) .......... 13

*Santa Clarita Org. for Planning & Env't* v. *Castaic Lake Water Agency*,
1 Cal. App. 5th 1084 (2016) .......... 18, 21

*Schwarzenegger* v. *Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 10, 14

*Schwilling* v. *Horne*,
669 P.2d 183 (Idaho 1983) .......... 13

*Sears, Roebuck & Co.* v. *Sears plc*,
744 F. Supp. 1297 (D. Del. 1990) .......... 18

*SEC* v. *Hickey*,
322 F.3d 1123 (9th Cir. 2003) .......... 2, 20

*Seoul Laser Dieboard Sys. Co.* v. *Serviform, S.r.l.*,
957 F. Supp. 2d 1189 (S.D. Cal. 2013) (Benitez, J.) .......... 34

*Skiff re Bus., Inc.* v. *Buckingham Ridgeview, LP*,
991 A.2d 956 (Pa. Super. Ct. 2010) .......... 29

*Smahaj* v. *Retrieval-Masters Creditors Bureau, Inc.*,
131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020) .......... 47

*Sonora Diamond Corp.* v. *Superior Ct.*,
83 Cal. App. 4th 523 (2000) .......... *passim*

*St. Benedict's Dev. Co.* v. *St. Benedict's Hosp.*,
811 P.2d 194 (Utah 1991) .......... 33, 34

*Standex Int'l Corp.* v. *QCP, Inc.*,
2017 WL 481447 (S.D.N.Y. Feb. 6, 2017) .......... 22

*Matter of Star & Crescent Boat Co., Inc.*,
549 F. Supp. 3d 1145 (S.D. Cal. 2021) (Benitez, J.) .......... 15, 16

*StrikeForce Techs., Inc.* v. *PhoneFactor, Inc.*,
2013 WL 6002850 (D. Del. Nov. 13, 2013) .......... 21

*Swartz* v. *KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .......... 17

*In re TelexFree Sec. Litig.*,
357 F. Supp. 3d 78 (D. Mass. 2019) .......... 10

*Teran* v. *Superior Ct. of Los Angeles Cnty.*,
112 Cal. App. 5th 371 (2025) .......... 41

*TileBar* v. *Glazzio Tiles*,
723 F. Supp. 3d 164 (E.D.N.Y. 2024)....29

*TNS Holdings, Inc.* v. *MKI Sec. Corp.*,
92 N.Y.2d 335 (1998)....18, 25

*Trump Taj Mahal Assocs.* v. *Costruzioni Aeronautiche Giovanni Agusta, S.p.A.*,
761 F. Supp. 1143 (D.N.J. 1991)....30

*Tsiatsios* v. *Anheuser-Busch, Inc.*,
2009 WL 114557 (D.N.H. Jan. 16, 2009)....30

*U.S. Borax Inc.* v. *Zamek*,
2019 WL 13393064 (E.D. Pa. July 26, 2019)....33, 34

*In re U.S. Vision Data Breach Litig.*,
2025 WL 615366 (D.N.J. Feb. 26, 2025)....19, 47

*In re U.S. Vision Data Breach Litig.*,
732 F. Supp. 3d 369 (D.N.J. 2024)....49, 50

*Van Buren* v. *United States*,
593 U.S. 374 (2021)....40

*Vavak* v. *Abbott Lab'ys, Inc.*,
2011 WL 13130493 (C.D. Cal. Mar. 7, 2011)....48

*Verdantus Advisors, LLC* v. *Parker Infrastructure Partners, LLC*,
2022 WL 611274 (Del. Ch. Mar. 2, 2022)....21, 23

*Vt. Yogurt Co.* v. *Blanke Baer Fruit & Flavor Co.*,
321 N.W.2d 315 (Wis. Ct. App. 1982)....13

*ViaSat, Inc.* v. *Space Sys./Loral, Inc.*,
2012 WL 12844738 (S.D. Cal. July 30, 2012)....22

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P.* v. *Wood*,
752 A.2d 1175 (Del. Ch. 1999)....19

*Walsh* v. *LG Chem Ltd.*,
834 F. App'x 310 (9th Cir. 2020)....16

*In re Waste Mgmt. Data Breach Litig.*,
2022 WL 561734 (S.D.N.Y. Feb. 24, 2022)....49

*Webb* v. *Frawley*,
906 F.3d 569 (7th Cir. 2018)....30

*Wechsler* v. *Macke Int'l Trade Inc.*,
327 F. Supp. 2d 1139 (C.D. Cal. 2004) .......... 22

*Welenco, Inc.* v. *Corbell*,
126 F. Supp. 3d 1154 (E.D. Cal. 2015) .......... 38

*Whitaker* v. *Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021) .......... 42

*White Plains Coat & Apron Co., Inc.* v. *Cintas Corp.*,
8 N.Y.3d 422 (2007) .......... 32

*Williams* v. *Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) .......... 15

*Young* v. *Greystar Real Est. Partners, LLC*,
2019 WL 4169889 (S.D. Cal. Sept. 3, 2019) (Benitez, J.) .......... 9

*Zarif* v. *Hwareh.com, Inc.*,
--- F. Supp. 3d ---, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .......... 43

**Statutes**

42 Pa. Cons. Stat. § 5322(b) .......... 13

Cal. Civ. Proc. Code § 410.10 .......... 13

Cal. Penal Code § 502 .......... *passim*

18 U.S.C. § 1030 .......... *passim*

28 U.S.C. § 2201 .......... 3, 27, 44, 50

N.Y. C.P.L.R. § 302(a) .......... 13

Utah Code Ann. § 78B-3-201(3) .......... 13

**Other Authorities**

114 Am. Jur. Proof of Facts 3d 403 (originally published in 2010) .......... 18

9 American Law of Torts § 31:45 (Feb. 2025) .......... 28

Ariz. R. Civ. P. 4.2(a) .......... 13

Fed. R. Civ. P. 4 .......... 10

Fed. R. Civ. P. 8 .......... 8, 43, 44

Fed. R. Civ. P. 12(b)(1) .......... 1, 8, 9, 11

Fed. R. Civ. P. 12(b)(2) .......... 1, 8, 9

Fed. R. Civ. P. 12(b)(5) .......... 1, 8, 10, 11

Fed. R. Civ. P. 12(b)(6) .......... 1, 8, 27

Gregory Scott Crespi, *Choice of Law in Veil-Piercing Litigation: Why Courts Should Discard the Internal Affairs Rule and Embrace General Choice-of-Law Principles*, 64 N.Y.U. Ann. Surv. Am. L. 85 (2008) .......... 18

N.J. Ct. R. 4:4-4(b)(1) .......... 13

Restatement (Second) of Torts § 766 .......... 30

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), Bain hereby moves to dismiss with prejudice the claims brought against Bain in the Complaints, because (1) Plaintiffs have not pled facts sufficient to support personal jurisdiction over Bain in any transferor court; (2) the Direct Action Complaint fails to state a claim that Bain is liable under the alter ego doctrine; and (3) the Complaints fail to state any claim against Bain on a direct liability theory. Bain also joins PowerSchool's Motion to Dismiss (Dkt. 302) in its entirety and adopts all arguments therein. *See Navigation Holdings, LLC* v. *Molavi*, 445 F. Supp. 3d 69, 74 (N.D. Cal. 2020).

## PRELIMINARY STATEMENT

Direct Action Plaintiffs—like the Individual User Plaintiffs—seek to pierce the corporate veil and hold Bain liable for a cyberattack suffered by PowerSchool. As Bain explained in its motion to dismiss the Consolidated Individual Users Putative Class Action Complaint (Dkt. 286), holding Bain liable for the acts of PowerSchool would be unprecedented. Indeed, Bain could not identify ***any*** prior instance where a private investment firm was held liable on an alter ego theory for a data breach suffered by one of its portfolio companies. If accepted, Direct Action Plaintiffs' theory would dramatically expand the alter ego doctrine by suggesting that routine private investment activity—including ordinary pre-investment conduct—can form the basis of alter ego liability sufficient to proceed beyond a motion to dismiss. *See Sonora Diamond Corp.* v. *Superior Ct.*, 83 Cal. App. 4th 523, 539 (2000) ("Alter ego is an extreme remedy, sparingly used.").

Moreover, as with the Individual Users Complaint, this theory is entirely unsupported by the allegations in the Direct Action Complaint. Direct Action Plaintiffs allege that Bain-advised funds acquired a 51% stake in PowerSchool on October 1, 2024, but they seek to hold Bain liable for acts taken ***before*** it allegedly had any ownership interest in PowerSchool. As a matter of law, an alter ego

relationship can only exist where one corporation formally or equitably owns another corporation. *SEC* v. *Hickey*, 322 F.3d 1123, 1130 (9th Cir. 2003). Even setting that deficiency aside, the allegations of pre-October 1 conduct fall far short of the "manipulative control" required to plead alter ego liability. *See Gerritsen* v. *Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1138 (C.D. Cal. 2015). The slim number of allegations concerning acts after that date are wholly conclusory, *see Eclectic Props. E., LLC* v. *Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014), or similarly fail to allege the requisite manipulative control. The 42 counts brought by Direct Action Plaintiffs under an alter ego theory should be dismissed.

Direct Action Plaintiffs also bring a single count against Bain on a theory of direct liability: intentional interference with contractual relations (Direct Action Count 7). Class Action Plaintiffs have confirmed that they are not pursuing an alter ego theory of liability and bring six counts on a direct liability theory (Class Action Counts 2, 3, 4, 5, 7, and 8). *See* Declaration of Jacobus J. Schutte ("Schutte Decl."), Exhibit A ("Ex."). Not only do many of these direct liability counts fail to even name Bain in the factual allegations specific to those counts, but Plaintiffs also fail to plead facts sufficient to establish the most basic elements required to survive a motion to dismiss.

Moreover, throughout their Complaints, Plaintiffs fail to allege that personal jurisdiction is proper in any of the transferor courts. That infirmity will unduly delay resolution of this MDL and provides an additional reason warranting dismissal.

For the reasons set forth below, the Court should dismiss with prejudice all claims brought against Bain in Track 2 of this MDL.

## PROCEDURAL HISTORY

The Direct Action Complaint brings claims against Bain under an alter ego theory for negligence (Direct Action Count 1); negligence per se (Direct Action Count 2); unjust enrichment (Direct Action Count 3); violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA") (Direct Action Count 4);

fraudulent concealment (Direct Action Count 5); express indemnity (Direct Action Count 6); alleged breaches of contract under the laws of 15 states (Direct Action Counts 11, 13, 15, 18, 20, 24, 26, 28, 30, 33, 35, 37, 40, 42, and 44); and violations of 21 state statutes (Direct Action Counts 12, 14, 16, 17, 19, 21, 22, 23, 25, 27, 29, 31, 32, 34, 36, 38, 39, 41, 43, 45, and 46). The Direct Action Complaint only brings one count against Bain on a theory of direct liability: intentional interference with contractual relations (Direct Action Count 7). *See* Ex. B.[1]

The Class Complaint seeks to assert claims brought by seven school districts in New Jersey and New York. Only one of those plaintiffs—Irvington Public Schools—filed a claim transferred to this Court by the Judicial Panel on Multidistrict Litigation ("JPML"). *See Irvington Public Schools* v. *PowerSchool Holdings, Inc. et al.*, No. 2:25-cv-03317 (D.N.J.). The remaining Class Action Plaintiffs (except for BRICK Buffalo Academy Charter School) have filed notices of direct filing in this Court. Class Action Plaintiffs seek to bring claims against Bain on a theory of direct liability for tortious interference with contract (Class Action Count 2); negligence (Class Action Count 3); violation of the CFAA (Class Action Count 4); violation of the California Comprehensive Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA") (Class Action Count 5); unjust enrichment (Class Action Count 7); and relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 (Class Action Count 8).[2] Class Action Plaintiffs do not allege that Bain is liable under the alter ego doctrine for any claim. *See* Ex. A.

---

1 Though the Direct Action Complaint initially named no plaintiffs, (*see* Dkt. 258 ¶¶ 16–19), Direct Action Plaintiffs subsequently filed a First Amended Consolidated Master Complaint on September 12, 2025, to add Movate, Inc. as a defendant, and filed a notice identifying school districts from 15 states as plaintiffs subject to the First Amended Consolidated Master Complaint. (*See* Dkt. 282, 288).

2 Class Action Plaintiffs also assert a theory of conspiracy liability against Bain for their CFAA claims (Class Action Count 4; Class Compl. ¶ 206), and at one point in their Complaint suggest that they are pursuing a theory of conspiracy liability against Bain for their CDAFA claim (Class Action Count 5; *see* Class Compl. ¶ 141(m)).

## FACTUAL BACKGROUND

Plaintiffs assert claims against Bain related to a third-party criminal cyberattack involving PowerSchool's Student Information System. Bain joins PowerSchool's Motion to Dismiss the Complaints in its entirety and, in order to avoid repetition, refers the Court to PowerSchool's recitation of the specific allegations concerning the cybersecurity incident. (*See* Dkt. 302, "Background"). In addition, due to the degree of overlap in the Class Action Plaintiffs' and Direct Action Plaintiffs' factual allegations, Bain addresses the allegations in the Complaints together, except where otherwise indicated.[3]

Bain is a leading private investment firm that, since 1984, has invested in hundreds of companies across a broad range of industries. (Class Compl. ¶ 18). Bain is headquartered in Massachusetts and incorporated in Delaware. (Class Compl. ¶ 18; Direct Action Compl. ¶ 19).

Like the Individual User Plaintiffs in Track 1, Direct Action Plaintiffs allege that PowerSchool is an alter ego of Bain and that Bain should be held liable for a third-party cyberattack on PowerSchool's systems—based primarily on actions they allege PowerSchool took prior to Bain's acquisition of an investment interest in PowerSchool on October 1, 2024.[4] (Direct Action Compl. ¶¶ 56–90). Class Action Plaintiffs do not allege that PowerSchool is an alter ego of Bain. Ex. A.

Class Action Plaintiffs allege that, beginning in 2022 through early 2024 and

[3] This Motion to Dismiss takes the facts alleged in the Complaints as true, as is required at this stage. Nothing in this Motion should be taken as an admission of the truth of the allegations brought or a waiver of any objection to the accuracy of those allegations.

[4] *See* PowerSchool Holdings, Inc., Schedule 14C Information Statement Relating to Merger or Acquisition at 21 (Sept. 4, 2024), https://www.sec.gov/Archives/edgar/data/1835681/000119312524212624/d836904ddefm14c.htm ("Schedule 14C Information Statement"); (Direct Action Compl. ¶ 69 (referring to this document); Class Compl. ¶ 108 & n.38 (same)); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) (holding that a document is incorporated by reference in full where plaintiffs "rely[] on portions of it in their complaint").

in the context of negotiations between two independent, commercial parties, PowerSchool shared information with Bain regarding business strategy. (Class Compl. ¶ 98). The Direct Action Complaint alleges that, at some unspecified point in time during negotiations, Bain and PowerSchool "discussed" increasing non-U.S. headcount. (Direct Action Compl. ¶ 65). The Complaints do not and cannot allege how Bain, a potential counterparty to PowerSchool, controlled or dictated PowerSchool's business strategy during this period.

Both Complaints also allege that on January 8, 2024—still ***more than nine months*** before Bain is even alleged to have invested in PowerSchool—PowerSchool announced plans to expand operations in India. (Class Compl. ¶ 106; Direct Action Compl. ¶ 66).[5] Plaintiffs do not allege that Bain had any actual power to control PowerSchool at this time or any other time prior to June 6, 2024.

On June 6, 2024, following arm's-length negotiations with PowerSchool, the Class Complaint alleges that Bain, through its affiliates, agreed to acquire a 51% ownership interest in PowerSchool.[6] (Class Compl. ¶ 98). The Complaints allege

---

[5] *EdTech Leader PowerSchool Makes Substantial Infrastructure Investment in India & Aims to Expand the India Employee Base to 2000 in 3-5 Years*, ANI (Jan. 8, 2024), https://www.aninews.in/news/business/business/edtech-leader-powerschool-makes-substantial-infrastructure-investment-in-india-amp-aims-to-expand-the-india-employee-base-to-2000-in-3-5-years20240108124645/. Both Complaints mistakenly reference the date of the announcement as January 8, ***2025***, which was after the cybersecurity incident. (Class Compl. ¶ 106; Direct Action Compl. ¶ 66).

[6] Bain does not have an ownership interest in PowerSchool. Rather, "PowerSchool surviv[ed the] merger as a wholly owned subsidiary of" BCPE Polymath Buyer, Inc., whose shares were "transferred to BCPE Polymath Topco, LP, a Delaware limited partnership and affiliate of investment funds advised by Bain." *See* Schedule 14C Information Statement, *supra* note 4, at i. Direct Action Plaintiffs nowhere allege an alter ego relationship between Bain and BCPE Polymath Buyer, Inc. or BCPE Polymath Topco, LP. While Class Action Plaintiffs allege an alter ego relationship between Bain, BCPE Polymath Buyer, Inc., BCPE Polymath Topco, LP, and other Bain-advised entities, that conclusory allegation is not supported by specific factual allegations showing the requisite control. (*See* Class Compl. ¶ 19). And whether affiliated entities are alter egos of Bain is irrelevant for the purposes of determining whether ***PowerSchool*** is an alter ego of Bain, as is relevant to this Motion. Class Action Plaintiffs do not allege that PowerSchool is an alter ego of Bain. *See* Ex. A.

that when this agreement (the "Merger Agreement") was signed, Bain and PowerSchool considered analyses of the financial impacts of expanding PowerSchool's non-U.S. workforce. (Class Compl. ¶ 108; Direct Action Compl. ¶ 65). The Complaints further allege generally that, at that time, Bain had knowledge of PowerSchool's cybersecurity obligations pursuant to its contracts with school districts. (Class Compl. ¶ 162; Direct Action Compl. ¶ 250).

Plaintiffs allege in general terms that, after signing the Merger Agreement, Bain was involved in unspecified business decisions by PowerSchool. For example, Plaintiffs allege that Bain's acquisition of a stake in PowerSchool coincided with an increase in PowerSchool's non-U.S. workforce and contractors. (*See* Class Compl. ¶ 109; Direct Action Compl. ¶¶ 65–73). The Direct Action Complaint alleges that Bain imposed an "offshoring mandate" and directed PowerSchool to utilize offshore vendors "engaged by Bain," (Direct Action Compl. ¶¶ 70–71), and the Class Complaint alleges that Bain "has moved to swiftly execute on this offshoring plan," (Class Compl. ¶ 109). The Complaints also allege that Bain's role was consistent with its typical strategy with other portfolio companies. (Class Compl. ¶ 110; Direct Action Compl. ¶¶ 67, 75–79). But neither Complaint alleges any instance in which Bain imposed such a directive or acted on any such offshoring plan apart from ***PowerSchool's*** January 2024 announcement of expanded operations in India and alleged workforce reductions in August 2024—both of which are alleged to have occurred months before Bain's alleged October 2024 investment in PowerSchool, and when Bain was an opposing party negotiating an arm's-length deal with PowerSchool. (*See* Class Compl. ¶¶ 102, 106; Direct Action Compl. ¶¶ 60–61, 66).

In fact, the Merger Agreement, which the Complaints incorporate by reference (*see* Class Compl. ¶ 98; Direct Action Compl. ¶ 69), provided that Bain or its affiliates ***did not*** have any right to control PowerSchool before the deal closed on October 1, 2024:

> The Parties acknowledge and agree that the restrictions set forth in this Agreement are **not intended to give [the Bain entities]**, on the one hand, or [PowerSchool], on the other hand, directly or indirectly, **the right to control or direct the business or operations** of the other at any time **prior to [October 1, 2024]. Prior to [October 1, 2024]**, and subject to the terms and conditions of this Agreement, each of [the Bain entities] and **[PowerSchool] shall exercise**, consistent with the terms, conditions and restrictions of this Agreement, **complete control and supervision over their own business and operations**.[7]

Plaintiffs allege that Bain's acquisition of a 51% stake in PowerSchool was finalized on October 1, 2024. (Class Compl. ¶ 27; Direct Action Compl. ¶ 56). Two other investment firms each retained a 24.5% stake.[8] Neither Complaint alleges specific actions taken by Bain, directions to PowerSchool issued by Bain, or any other exercise of control by Bain over PowerSchool's day-to-day operations after October 1, 2024. Instead, the Complaints make only conclusory allegations of Bain's purported control over PowerSchool prior to and following October 1, 2024, when Plaintiffs allege Bain's investment in PowerSchool became effective. (*Cf.* Class Compl. ¶ 27; Direct Action Compl. ¶ 56). Class Action Plaintiffs allege broadly that Bain exercises control over PowerSchool and directs strategic, personnel, and spending decisions, dating back to when PowerSchool "was still an independent, public entity." (Class Compl. ¶¶ 7, 12, 18, 101, 163). Class Action Plaintiffs also assert that Bain "knowingly authorized or ratified PowerSchool's use of a Backdoor Access Tool," but do not allege when any such authorization or ratification purportedly occurred. (Class Compl. ¶ 203). They further allege that Bain controlled strategic decisions over personnel and compliance policies. (Class Compl. ¶ 205). Class Action Plaintiffs do not make any allegations supporting these conclusory claims. Direct Action Plaintiffs make similarly unsupported allegations

---

[7] *See* Agreement and Plan of Merger by and among BCPE Polymath Buyer, Inc., BCPE Polymath Merger Sub, Inc. and PowerSchool Holdings, Inc., at 64 (June 6, 2024) ("Merger Agreement"), https://www.sec.gov/Archives/edgar/data/1835681/000119312524157845/d846178dex21.htm (emphasis added); Schedule 14C Information Statement, *supra* note 4, at A-52 (including the Merger Agreement).

[8] *See* Schedule 14C Information Statement, *supra* note 4, at 82.

that Bain was responsible for unspecified "policies and business decisions" that purportedly contributed to the alleged cybersecurity incident. (Direct Action Compl. ¶¶ 58–59). Plaintiffs also allege that PowerSchool incurred debt from the transaction, which was allegedly structured as a leveraged buyout where approximately $3 billion in debt was secured against PowerSchool's assets, which Plaintiffs allege left PowerSchool "undercapitalized and underinsured." (Direct Action Compl. ¶¶ 56–57, 89; *see* Class Compl. ¶ 99).

Finally, Plaintiffs allege that in August 2024, two months ***before*** Bain is alleged to have first acquired its ownership interest in PowerSchool, the "first known incident of unauthorized access" occurred. (Class Compl. ¶¶ 17, 47, 105; *see* Direct Action Compl. ¶ 62). Class Action Plaintiffs also allege that the following month—still before the October 1, 2024 transaction—the "earliest known date of unauthorized access attributable to the Threat Actors" occurred. (Class Compl. ¶¶ 17, 47). The Complaints allege that the cybersecurity incident culminated on December 19–20, 2024, just two months after Bain acquired its interest in PowerSchool, and that PowerSchool became aware of the incident on December 28, 2024. (Class Compl. ¶¶ 1, 41, 46–47 (alleging December 19); *see* Direct Action Compl. ¶¶ 5, 31 (alleging "on or about December 20")).

## **<u>LEGAL STANDARD</u>**

This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Flaugher* v. *Doe*, 2017 WL 3314231, at *2 (S.D. Cal. Aug. 1, 2017) (Benitez, J.) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint "must not merely allege conceivably unlawful conduct but must allege 'enough facts to state a claim to relief that is plausible on its face.'" *De Leon* v.

*Cnty. of San Diego*, 2017 WL 2670891, at *2 (S.D. Cal. June 20, 2017) (Benitez, J.) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). Plausibility is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Kilcullen* v. *Select Portfolio Servicing, Inc.*, 2012 WL 1667150, at *2 (S.D. Cal. May 10, 2012) (Benitez, J.) (quoting *Iqbal*, 556 U.S. at 678). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Young* v. *Greystar Real Est. Partners, LLC*, 2019 WL 4169889, at *3 (S.D. Cal. Sept. 3, 2019) (Benitez, J.) (quoting *Adams* v. *Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)). Under Rules 12(b)(1) and (2), plaintiffs bear the burden of making a "prima facie showing of jurisdictional facts" establishing personal and subject matter jurisdiction. *Palomar Health* v. *Am. Guarantee & Liab. Ins. Co.*, 2021 WL 4035005, at *2–3 (S.D. Cal. Sept. 3, 2021) (Benitez, J.), *aff'd*, 2022 WL 3006356 (9th Cir. July 28, 2022).

## ARGUMENT

The Court should dismiss the claims brought by Plaintiffs against Bain with prejudice.

*First*, the Court lacks personal jurisdiction over Bain, because Plaintiffs make only conclusory allegations that Bain is subject to personal jurisdiction in California and no allegations that Bain is subject to jurisdiction in any other transferor jurisdiction.

*Second*, Direct Action Plaintiffs fail to allege facts sufficient to state a claim under the alter ego doctrine. Direct Action Plaintiffs' vague allegations of Bain's supposed control over PowerSchool are insufficient as a matter of law, particularly since many of those control allegations predate when Bain is alleged to have acquired an interest in PowerSchool. Class Action Plaintiffs confirmed they are not bringing any claims against Bain on an alter ego theory of liability. *See* Ex. A.

*Third*, Plaintiffs fail to state a claim against Bain where they pursue direct liability theories. Class Action and Direct Action Plaintiffs' claims for intentional

interference with contractual relations fail to allege well-pleaded facts that give rise to a plausible claim for relief. Likewise, Class Action Plaintiffs' remaining claims under the CFAA and the CDAFA, as well as their claims for negligence, unjust enrichment, and declaratory and injunctive relief, fail to allege facts that would support the required elements of those counts. Indeed, Class Action Plaintiffs' novel CFAA and CDAFA theories, if applied here, would—like Direct Action Plaintiffs' alter ego theory—be an unprecedented expansion of liability to the alleged victim of a cyberattack and its investors. Moreover, Class Action Plaintiffs' CDAFA, negligence, and unjust enrichment counts, as well as their claim for declaratory and injunctive relief, should be dismissed for improper group pleading.

*Finally*, all claims against Bain must be dismissed for ***each and every*** reason set forth in PowerSchool's Motion to Dismiss, all of which equally apply to Bain. (Dkt. 302).

## I. PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE THAT BAIN IS SUBJECT TO PERSONAL JURISDICTION IN ANY TRANSFEROR COURT

Plaintiffs "bear[] the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger* v. *Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). In an MDL, personal jurisdiction over a defendant "*must* exist in the district where [the action] is filed" because the transferee court's jurisdiction is rooted in and equivalent to that of the transferor court. *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379–80 (J.P.M.L. 2020). Accordingly, Plaintiffs must demonstrate that personal jurisdiction exists in ***all transferor courts***.[9] *In re TelexFree Sec. Litig.*, 357 F. Supp. 3d 78, 79–80 (D. Mass. 2019).

[9] Moreover, BRICK Buffalo Academy Charter School has not yet filed a short form complaint or served Defendants pursuant to Rule 4 or the Direct Filing Order. *See* (Dkt. 269); *Macpherson* v. *United States*, 2017 WL 766722, at *1 (S.D. Cal. Feb. 28, 2017) (Benitez, J.) (explaining that plaintiffs "bear[] the burden of establishing the validity of service as governed by Rule 4" when facing a motion under Rule 12(b)(5)). The Court therefore should also dismiss the claims brought by BRICK Buffalo Academy Charter School for lack of subject matter jurisdiction

Of the Class Action Plaintiffs, the action filed by Irvington Public Schools was transferred to this Court from the District of New Jersey by the JPML. (Dkt. 87). The remaining Class Action Plaintiffs designated the Eastern District of New York or the District of New Jersey as transferor jurisdictions in their respective direct filing notices. But the Class Complaint contains no allegations whatsoever that Bain is subject to personal jurisdiction in New Jersey or New York.[10] Instead, Class Action Plaintiffs contend that personal jurisdiction is proper in California, (Class Compl. ¶ 11), ignoring the requirement that "[j]urisdiction in any federal civil action must exist in the district where it is filed." *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d at 1380. Here, Class Action Plaintiffs filed their actions in New Jersey and New York (which are the relevant transferor jurisdictions), not California (where this MDL Court sits), and any allegation that Bain is subject to personal jurisdiction in California is simply irrelevant to this Court's jurisdictional analysis. In sum, Class Action Plaintiffs' failure to make ***any*** allegations that Bain is subject to personal jurisdiction in the District of New Jersey or the Eastern District of New York (the relevant transferor courts) warrants dismissal of all counts against Bain for lack of personal jurisdiction.

Similarly, Direct Action Plaintiffs—11 of whom originally filed in the Eastern and Southern Districts of California,[11] and seven of whom who have yet to file a

---

under Rule 12(b)(1) and insufficient service of process under Rule 12(b)(5). The same is true for Direct Action Plaintiffs who might be properly before the Court but who ***did not*** originally name Bain as a defendant in their original complaint, and who now name Bain as a defendant in these Complaints (i.e., all Direct Action Plaintiffs except plaintiffs in *Weber School District*, No. 3:25-cv-01368 (S.D. Cal.) and *Cache County School District*, No. 3:25-cv-01487 (S.D. Cal.)).

[10] The initial complaint in the transferred *Irvington* action likewise makes only conclusory allegations that Bain is subject to personal jurisdiction in New Jersey. *See Irvington Public Schools* v. *PowerSchool Holdings, Inc., et al.*, No. 2:25-cv-03317, Dkt. 1 ¶ 11 (D.N.J. Apr. 25, 2025). But that complaint was amended as set forth in the Class Complaint, which contains no allegations that Bain is subject to personal jurisdiction in New Jersey.

[11] *See Montpelier Roxbury Public Schools* v. *PowerSchool Holdings, Inc.*, No. 2:25-cv-01124 (E.D. Cal.); *Reed-Custer Community Unit School District 255U* v.

short form complaint designating a transferor jurisdiction[12]—fail to adequately allege personal jurisdiction in California (the only transferor jurisdiction as of the filing of this Motion). Direct Action Plaintiffs allege only that "[t]his Court has personal jurisdiction" because Bain "conduct[s] substantial business," "purposefully availed" itself of the benefits of conducting business, and "caused harm to Plaintiffs" as a result of its actions in "this judicial district," or the Southern District of California. (Direct Action Compl. ¶ 22). Those formulaic and conclusory allegations do not satisfy Direct Action Plaintiffs' burden to establish personal jurisdiction over Bain, whether in California or in any of the 15 states that Direct Action Plaintiffs have referenced in their notice clarifying the plaintiffs that are subject to this Motion.[13] *See Corcoran* v. *CVS Health Corp.*, 169 F. Supp. 3d 970, 981 (N.D. Cal. 2016).

---

*PowerSchool Holdings, Inc.*, No. 2:25-cv-01061 (E.D. Cal.); *West Hempstead Union Free School District* v. *PowerSchool Holdings, Inc.*, No. 2:25-cv-00973 (E.D. Cal.); *Richland County School District One* v. *PowerSchool Holdings, Inc.*, No. 2:25-cv-00893 (E.D. Cal.); *Uniondale Union Free School District* v. *PowerSchool Holdings, Inc.*, No. 2:25-cv-00812 (E.D. Cal.); *St. Croix Falls School District* v. *PowerSchool Holdings, Inc.*, No. 2:25-cv-00802 (E.D. Cal.); *Memphis-Shelby County Schools* v. *PowerSchool Holdings, Inc.*, No. 3:25-cv-01153 (S.D. Cal.); *Highland Joint School District #305* v. *PowerSchool Holdings, Inc.*, No. 2:25-cv-00928 (E.D. Cal.); *North Country Supervisory Union* v. *PowerSchool Holdings, Inc.*, No. 2:25-cv-01165 (E.D. Cal.); *Weber School District* v. *PowerSchool Holdings, Inc., et al.*, No. 3:25-cv-01368 (S.D. Cal.); *Cache County School District* v. *PowerSchool Holdings, Inc., et al.*, No. 3:25-cv-01487 (S.D. Cal.).

[12] The seven Direct Action Plaintiffs named in the notice filed on September 5, 2025, who were not part of an action transferred to this Court and who have not filed a short form complaint as of the date of this Motion, are: Flowing Wells Unified School District (Arizona); School Administrative Unit # 6 (New Hampshire); Seminole Public Schools (Oklahoma); Pittsburgh Public Schools (Pennsylvania); Westerly Public Schools (Rhode Island); Manassas Park City Schools (Virginia); and Sultan School District (Washington). (*See* Dkt. 282). The Court should dismiss the claims brought by those schools for lack of subject matter jurisdiction. *See In re Packaged Ice Antitrust Litig.*, 2011 WL 6178891, at *9 (E.D. Mich. Dec. 12, 2011) (dismissing plaintiffs and claims not properly brought before the MDL court for lack of subject matter jurisdiction).

[13] Those states are Arizona, Idaho, Illinois, New Hampshire, New York, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Utah, Vermont, Virginia, Washington, and Wisconsin. (*See* Dkt. 282). As explained *infra* note 22, however,

Ultimately, Plaintiffs fail to meet their burden to establish personal jurisdiction in California, New Jersey, New York, or any other purported transferor forum. California and New Jersey's long-arm statutes extend to the limits of the Due Process Clause under the U.S. Constitution, and the statutes in the transferor jurisdictions purportedly identified by Direct Action Plaintiffs, (*see* Dkt. 282), are materially similar for the purposes of this Motion. *See* Cal. Civ. Proc. Code § 410.10; N.J. Ct. R. 4:4-4(b)(1); *see also Patel* v. *Karnavati Am., LLC*, 99 A.3d 836, 841 (N.J. Super. Ct. App. Div. 2014).[14] To satisfy due process, Plaintiffs must demonstrate that Bain has sufficient minimum contacts with California, New Jersey, New York, and any other transferor forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Ford Motor Co.* v. *Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). They have not made allegations to support that conclusion.

***General Jurisdiction***. General jurisdiction typically exists in a corporate defendant's principal place of business or state of incorporation. *Daimler AG* v.

---

Direct Action Plaintiffs have agreed to narrow the states' law to be briefed in this Motion.

[14] Most states named in Direct Action Plaintiffs' notice, (Dkt. 282), have long-arm statutes that extend to the limits of federal due process. *See* Ariz. R. Civ. P. 4.2(a); *Schwilling* v. *Horne*, 669 P.2d 183, 188 (Idaho 1983); *Red Oak Apartment Homes, LLC* v. *Strategis Floor & Decor, Inc.*, 243 A.3d 891, 895 (N.H. 2020); *Klassen* v. *Lazik*, 91 P.3d 90, 92 (Okla. Civ. App. 2004); 42 Pa. Cons. Stat. § 5322(b); *Hidria, USA, Inc.* v. *Delo*, 783 S.E.2d 839, 843 (S.C. Ct. App. 2016); *Mfrs. Consolidation Serv., Inc.* v. *Rodell*, 42 S.W.3d 846, 855 (Tenn. Ct. App. 2000); Utah Code Ann. § 78B-3-201(3); *In re R.W.*, 39 A.3d 682, 690 (Vt. 2011); *Peninsula Cruise, Inc.* v. *New River Yacht Sales, Inc.*, 512 S.E.2d 560, 562 (Va. 1999); *Sandhu Farm Inc.* v. *A&P Fruit Growers Ltd.*, 524 P.3d 209, 214 (Wash. Ct. App. 2023); *Vt. Yogurt Co.* v. *Blanke Baer Fruit & Flavor Co.*, 321 N.W.2d 315, 317–18 (Wis. Ct. App. 1982). In New York, the exercise of personal jurisdiction must likewise comport with federal constitutional due process as well as additional requirements. N.Y. C.P.L.R. § 302(a); *see Al Rushaid* v. *Pictet & Cie*, 28 N.Y.3d 316, 330–31 (2016). And like New York, Illinois' long-arm statute imposes additional requirements beyond that required by federal due process, and Plaintiffs have plainly failed to allege facts that would meet the long-arm statutes of those states. *See Kowal* v. *Westchester Wheels, Inc.*, 89 N.E.3d 807, 813 (Ill. App. Ct. 2017); *Al Rushaid*, 28 N.Y.3d at 330–31.

*Bauman*, 571 U.S. 117, 137 (2014). Contacts via an owned entity are not enough under *Daimler*; rather, the defendant itself must be fundamentally "at home" in the forum. *Id.* Both Class Action and Direct Action Plaintiffs have failed to allege that Bain is subject to general jurisdiction in California, New Jersey, New York, or any of Direct Action Plaintiffs' purported transferor jurisdictions.[15] As alleged, Bain is incorporated in Delaware with its principal place of business in Massachusetts, (Class Compl. ¶ 18; Direct Action Compl. ¶ 19), and is therefore not fundamentally "at home" in other states.

Class Action Plaintiffs allege that Bain "has both continuous and systematic contacts with California" due to its alleged "dominion and control" over PowerSchool. (Class Compl. ¶ 12). But PowerSchool's jurisdictional connection to California cannot be imputed to Bain, because, for the reasons set forth below and in Bain's Motion to Dismiss the Consolidated Individual Users Putative Class Action Complaint, PowerSchool is not an alter ego of Bain (nor do Class Action Plaintiffs allege such a relationship). *See infra* Section II; *Ranza* v. *Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) ("The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction."); (*see also* Dkt. 286 at 14–32). General jurisdiction over Bain is therefore absent in California, New Jersey, New York, and any other purported transferor jurisdiction.

***Specific Jurisdiction***. Specific jurisdiction exists where (1) a defendant has purposefully availed itself of the forum or purposefully directed activities toward the forum, (2) the claim arises from that defendant's in-forum acts, and (3) the exercise of jurisdiction would be reasonable. *See Fred Martin Motor Co.*, 374 F.3d at 802;

---

[15] As explained *supra* note 12, plaintiffs from Arizona, New Hampshire, Oklahoma, Pennsylvania, Rhode Island, Virginia, and Washington purport to join this case. Having not filed a short form complaint or filed an action elsewhere that was transferred by the JPML to this Court, it is unclear where these purported plaintiffs would have filed, and thus whether there are any additional transferor forums.

*Rickman* v. *BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 436 (D.N.J. 2021). Plaintiffs bear, and have failed to meet, the burden of establishing the first two elements. *See Matter of Star & Crescent Boat Co., Inc.*, 549 F. Supp. 3d 1145, 1170 (S.D. Cal. 2021) (Benitez, J.). Even if Plaintiffs could meet their burden, the exercise of jurisdiction over Bain would not be reasonable.

*First*, the Complaints fail to allege that Bain purposefully availed itself of the benefits and protections of California, New Jersey, New York, or Direct Action Plaintiffs' purported transferor forums. The Class Complaint, for example, makes only a single conclusory allegation that Bain acquired and "exercises dominion and control over" PowerSchool and is thus "responsible for many of the decisions that ultimately gave rise to this action." (Class Compl. ¶ 12). The conclusory allegations in the Direct Action Complaint are materially similar. (*See* Direct Action Compl. ¶¶ 22, 87). But the existence of an investment firm/portfolio company relationship, standing alone, is insufficient to establish the requisite contacts to justify the exercise of specific personal jurisdiction. *See Williams* v. *Yamaha Motor Co.*, 851 F.3d 1015, 1022–25 (9th Cir. 2017) (finding no specific jurisdiction based on activities of local subsidiary). Plaintiffs must establish specific "suit-related conduct" by Bain that "create[s] a substantial connection with the forum." *Medimpact Healthcare Sys., Inc.* v. *IQVIA Holdings Inc.*, 2020 WL 1433327, at *5 (S.D. Cal. Mar. 24, 2020). The Complaints are devoid of any specific allegations that Bain "expressly aimed its activities at California." *Rochfort* v. *EF Inst. for Cultural Exch., Inc.*, 2020 WL 12833951, at *5 (S.D. Cal. Sept. 8, 2020). And PowerSchool's alleged California contacts cannot be imputed to Bain, because Direct Action Plaintiffs fail to sufficiently allege that PowerSchool is an alter ego of Bain. *See infra* Section II; *see also Ocampo* v. *United States*, 2023 WL 6305801, at *6 (S.D. Cal. Sept. 27, 2023). Accordingly, Plaintiffs have failed to satisfy their burden as to the first prong.

*Second*, the Complaints do not allege that Plaintiffs' claims arise out of Bain's alleged contacts with the transferor forums. The "relationship between the

nonresident defendant, the forum, and the litigation must arise out of contacts that the defendant [itself] creates with the forum State." *Axiom Foods, Inc.* v. *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotation marks omitted). But Plaintiffs fail to make any non-conclusory allegations that Bain had direct contacts with California, New Jersey, or New York—or, for that matter, Direct Action Plaintiffs' other purported transferor forums. Thus, Plaintiffs do not make any allegations that the claims in the Complaints arise out of Bain's non-existent contacts with those states. *See Moser* v. *Lifewatch Inc.*, 2020 WL 1849664, at *8 (S.D. Cal. Apr. 13, 2020). And to the extent Direct Action Plaintiffs seek to argue that personal jurisdiction can be exercised over Bain on an alter ego theory, they fail to allege facts sufficient to establish that PowerSchool is an alter ego of Bain. *See infra* Section II. Plaintiffs have thus failed to satisfy their burden as to the second prong. *See Walsh* v. *LG Chem Ltd.*, 834 F. App'x 310, 312 (9th Cir. 2020) (finding no personal jurisdiction where complaint failed to allege a "direct nexus" between alleged injuries and alleged contacts).

*Third*, the Court need not even reach the final prong because Plaintiffs plainly have failed to allege that their claims arise out of or relate to Bain's purported contacts with California, New Jersey, or New York (or Direct Action Plaintiffs' purported transferor forums). *See Matter of Star & Crescent Boat Co.*, 549 F. Supp. 3d at 1170. Even so, each of the seven factors courts in the Ninth Circuit consider weigh against exercising personal jurisdiction over Bain. *See Core-Vent Corp.* v. *Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993) (setting forth factors). As discussed above, the Complaints do not allege that Bain purposefully injected itself into or directed its actions toward those states. The burden on Bain in adjudicating this dispute in those states is high, while the states' interest in exercising jurisdiction over an investment firm not domiciled or incorporated in those states is comparatively low, especially absent any specific allegation that the investment firm's actions were directed to those states. The exercise of personal jurisdiction

over Bain in those states also would not promote the efficient judicial resolution of this dispute, especially in light of the lack of allegations that jurisdiction is proper in any transferor court. Finally, Plaintiffs do not allege that an attempt to obtain relief against PowerSchool would be futile, such that their interest in obtaining convenient and effective relief justifies an exception to the well-accepted restrictions on the exercise of personal jurisdiction over a non-resident defendant who did not commit in-forum acts giving rise to a plaintiff's claims. *See id.*

In sum, Plaintiffs' "'bare bones' assertions of minimum contacts" in California alone are not sufficient to satisfy "plaintiff[s'] pleading burden." *See Palomar Health*, 2021 WL 4035005, at *2 (quoting *Swartz* v. *KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)). The Court should therefore dismiss Bain as a defendant in Track 2 of this MDL for lack of personal jurisdiction. Finally, because "bare allegations are insufficient to justify jurisdictional discovery," and Bain does not raise any factual disputes with respect to those allegations, jurisdictional discovery is not warranted. *See Reynolds* v. *Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1010 (N.D. Cal. 2020).

## II. THE DIRECT ACTION COMPLAINT FAILS TO STATE A CLAIM AGAINST BAIN ON AN ALTER EGO THEORY OF LIABILITY

Even if personal jurisdiction were properly alleged, which it is not, 42 of Direct Action Plaintiffs' 43 counts should be dismissed for failure to adequately allege that Bain is liable for PowerSchool's alleged conduct under the alter ego doctrine. Because Class Action Plaintiffs have confirmed that they do not allege that PowerSchool is Bain's alter ego, Bain focuses its discussion on the deficiencies in the Direct Action Complaint.[16] *See* Ex. A.

"Alter ego is an extreme remedy, sparingly used." *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539; *accord Price* v. *Synapse Grp., Inc.*, 2017 WL 3131700, at

[16] Bain reserves all rights to raise arguments addressing an alter ego theory of liability if this argument is raised in the future by Class Action Plaintiffs.

*11 (S.D. Cal. July 24, 2017). Consistent with that bedrock principle, courts have emphasized that the corporate form will only be disregarded in "exceptional" cases.[17] *Sears, Roebuck & Co.* v. *Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990); *Reynolds* v. *Lifewatch, Inc.*, 136 F. Supp. 3d 503, 525 (S.D.N.Y. 2015) (same); *Cummings* v. *Worktap, Inc.*, 2019 WL 4221652, at *5 (N.D. Cal. Sept. 4, 2019) (same). Thus, a "heavy burden rests on the shoulders of the party seeking to pierce the corporate veil." *Santa Clarita Org. for Planning & Env't* v. *Castaic Lake Water Agency*, 1 Cal. App. 5th 1084, 1105 (2016); *TNS Holdings, Inc.* v. *MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (1998); *PR Acquisitions, LLC* v. *Midland Funding LLC*, 2018 WL 2041521, at *15 (Del. Ch. Apr. 30, 2018).

To establish alter ego liability, a plaintiff must allege: (1) "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist," and (2) "an inequitable result if the acts in question are treated as those of the corporation alone." *Sonora Diamond Corp.*, 83 Cal. App. 4th at 538; *see also Reynolds*, 136 F. Supp. 3d at 525 (materially the same); *PXP Producing Co. LLC* v.

---

[17] As explained in Bain's Track 1 Motion to Dismiss (Dkt. 286 at 21 n.16), courts typically apply the alter ego law of the jurisdiction where an action is filed or where the defendant is incorporated. *See generally* Gregory Scott Crespi, *Choice of Law in Veil-Piercing Litigation: Why Courts Should Discard the Internal Affairs Rule and Embrace General Choice-of-Law Principles*, 64 N.Y.U. Ann. Surv. Am. L. 85, 90–91 (2008) (explaining that most jurisdictions apply "the law of the state of incorporation" or "local piercing law"). Accordingly, Bain cites to California law because Direct Action Plaintiffs purport to bring their actions in "this judicial district," or the Southern District of California, (Direct Action Compl. ¶ 22); to New York law because two Direct Action Plaintiffs purport to bring New York claims (*see* Dkt. 282); and to Delaware law, where Bain is incorporated, (*see* Class Compl. ¶ 18). In addition, California, New York, and Delaware law are representative of the law governing the alter ego doctrine because that doctrine is materially similar across all jurisdictions. *See* 114 Am. Jur. Proof of Facts 3d 403 (originally published in 2010) ("In spite of the various ways different jurisdictions define their piercing test, they essentially require proof [of] a (1) unity of interest between the individual and entity and (2) an inequitable result would follow as a consequence."). Bain reserves all rights to respond with arguments under the laws of other states, to the extent Plaintiffs pursue such arguments.

*MitEnergy Upstream LLC*, --- A.3d ---, 2025 WL 1779457, at *9 (Del. Ch. June 26, 2025) (materially the same). The level of control required to pierce the corporate veil is an exceptionally high bar; a plaintiff must plead "manipulative control" such that "a parent dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Gerritsen*, 116 F. Supp. 3d at 1138 (internal quotation marks and alterations omitted); *see also Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P.* v. *Wood*, 752 A.2d 1175, 1183–84 (Del. Ch. 1999) (same); *Allen* v. *Oberdorfer Foundries, Inc.*, 192 A.D.2d 1077, 1078 (N.Y. App. Div. 1993) (same).

The Direct Action Complaint fails to plead sufficient facts to plausibly allege that (1) Bain controlled PowerSchool's day-to-day operations such that the separate corporate personalities of both companies ceased to exist, and that (2) it would be inequitable for this Court to decline the "extreme remedy" of alter ego liability. *See Sonora Diamond Corp.*, 83 Cal. App. 4th at 538–39; *Morris* v. *N.Y. State Dep't of Tax'n & Fin.*, 82 N.Y.2d 135, 141 (1993). Direct Action Plaintiffs' allegations of control are threadbare, and courts faced with more robust allegations of control have declined to allow these types of claims to proceed. *See*, *e.g.*, *In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *3–5 (D.N.J. Feb. 26, 2025) (concluding that plaintiffs failed to state a claim that a wholly owned subsidiary was an alter ego of a parent company where the subsidiary was the victim of a cyberattack), *appeal pending*, No. 25-1626 (3d Cir. Apr. 2, 2025).[18] This is not the "exceptional case" where the Court should disregard the bedrock principle of corporate separateness. *See PXP Producing Co.*, 2025 WL 1779457, at *9 (citation omitted); *Cummings*, 2019 WL 4221652, at *5; *Reynolds*, 136 F. Supp. 3d at 525. Indeed, Bain could not locate ***any*** case in which a private investment firm was held liable on an alter ego

[18] If the Court were to conclude that Direct Action Plaintiffs have adequately pled that PowerSchool was an alter ego of Bain, then the Direct Action Complaint fails to state a claim against Bain for the same reasons set forth in PowerSchool's Motion to Dismiss. (*See* Dkt. 302). Bain adopts those arguments in full.

theory for a cybersecurity incident at one of its portfolio companies. And if the Court were to adopt Direct Action Plaintiffs' novel and expansive alter ego theory—that a private investment firm can be held liable under the alter ego doctrine based on ordinary, routine private investment activities—it would have a severe chilling effect on private investment across the country.

### A. Direct Action Plaintiffs Fail to Allege Control *Before* Bain Acquired an Equity Interest in PowerSchool

A fundamental requirement of an alter ego relationship is a formal or equitable ownership relationship between companies. *See Hickey*, 322 F.3d at 1130 (noting that the "clear rule of law established by the California courts [is] that [one] ***must*** own at least part of a corporation for an alter ego relationship to exist" (emphasis added)); *see also Ross Holding & Mgmt. Co.* v. *Advance Realty Grp., LLC*, 2010 WL 1838608, at *13 (Del. Ch. Apr. 28, 2010) (explaining that piercing the corporate veil allows a plaintiff to "ignore the corporate boundaries between an ***owner*** and its controlled corporate entity" (emphasis added)); *Freeman* v. *Complex Computing Co., Inc.*, 119 F.3d 1044, 1051 (2d Cir. 1997).[19] That widely accepted, common-sense principle defeats Direct Action Plaintiffs' efforts to cobble together sufficient allegations predating Bain's alleged acquisition of equity in PowerSchool.

As a matter of law, Bain could not have plausibly controlled PowerSchool before it had any actual or equitable ownership relationship with PowerSchool, and while it was an opposing party negotiating an arm's-length deal with PowerSchool. *See Gerritsen*, 116 F. Supp. 3d at 1137 (listing as one of the factors considered for

[19] Though New York law recognizes that a non-shareholder may in some cases be treated as an "equitable owner" for the purposes of alter ego doctrine, equitable ownership typically involves "unique facts" demonstrating exceptional authority that disregards the corporate form. *Freeman*, 119 F.3d at 1051–52 (concluding that alter ego liability could apply where two corporations were located in the same apartment, the corporations were established to further a single individual's software endeavors, and the shareholder in one corporation was the sole signatory on the bank account for the other). Here, Direct Action Plaintiffs allege no "unique facts" sufficient to allege that Bain equitably owned PowerSchool. *Cf. id.*

alter ego liability the "***failure*** to maintain arm's length relationships among related entities" (emphasis added)); *see also Reynolds*, 136 F. Supp. 3d at 525. According to Direct Action Plaintiffs, Bain did not acquire PowerSchool until October 1, 2024, (Direct Action Compl. ¶ 56), yet Direct Action Plaintiffs seek to hold Bain liable for acts they allege PowerSchool took well before that date. It cannot be plausibly alleged that Bain and PowerSchool, who were counterparties to a negotiation, failed to "maintain [an] arm's length relationship[]." *See Gerritsen*, 116 F. Supp. 3d at 1137; *Reynolds*, 136 F. Supp. 3d at 525. Indeed, Bain was unable to identify a single case in which a court found an alter ego relationship based on allegations of control that predated any formal ownership relationship and where the two companies were on opposite sides of an arm's-length negotiation.

Even setting that defect aside, Direct Action Plaintiffs have failed to sufficiently allege that Bain was an alter ego of PowerSchool before the transaction. "In evaluating the two requirements of the alter ego doctrine, courts look to the totality of the circumstances bearing on the relationship between the parent and its subsidiary." *Santa Clarita*, 1 Cal. App. 5th at 1105; *In re Liberty Bridge Cap. Mgmt., GP, LLC*, 670 B.R. 676, 689 (S.D.N.Y. 2025) (same); *StrikeForce Techs., Inc.* v. *PhoneFactor, Inc.*, 2013 WL 6002850, at *5 (D. Del. Nov. 13, 2013), *as amended* (Nov. 14, 2013) (same). Courts consider various factors in reaching this determination, including whether the companies commingle funds and corporate records; whether one company holds out that it is liable for the other's debts; whether one company owns 100% of the other's stock; whether the companies share the same offices, employees, and "identical directors and officers"; whether one company uses the other as its "mere shell or conduit," or diverts the other's assets; whether one company is undercapitalized; and whether the companies disregard corporate formalities. *See Santa Clarita*, 1 Cal. App. 5th at 1105–06; *see also Reynolds*, 136 F. Supp. 3d at 525; *Verdantus Advisors, LLC* v. *Parker Infrastructure Partners, LLC*, 2022 WL 611274, at *2 (Del. Ch. Mar. 2, 2022).

The insufficiency of Direct Action Plaintiffs' allegations is plain from what they do ***not*** allege. Direct Action Plaintiffs do not allege that Bain and PowerSchool commingled funds, corporate records, or assets; that they shared offices or employees; that they shared directors or officers; that Bain diverted any funds away from PowerSchool; or that Bain owned 100% of PowerSchool's stock, all of which are typical indicia of the day-to-day control required for alter ego liability. *See Wechsler* v. *Macke Int'l Trade Inc.*, 327 F. Supp. 2d 1139, 1144 (C.D. Cal. 2004) (setting forth factors and determining plaintiff failed to allege alter ego liability); *Reynolds*, 136 F. Supp. 3d at 525, 527 (same); *PXP Producing Co.*, 2025 WL 1779457, at *9–10 (same). Direct Action Plaintiffs' failure to allege those basic indicia of an alter ego relationship is fatal to their claims.

Instead of making specific allegations of control, Direct Action Plaintiffs allege that Bain previously sought to invest in companies offering outsourcing services, and that it was involved in reducing costs or headcounts at ***other*** portfolio companies. (*See* Direct Action Compl. ¶¶ 76–79). These allegations, even if assumed to be true, are insufficient to support a claim that Bain exercised manipulative control over ***PowerSchool***. To the contrary, Direct Action Plaintiffs' suggestion that Bain has previously encouraged other portfolio companies to reduce costs, and that it previously expressed interest in companies providing offshore operations, underscores Direct Action Plaintiffs' effort to derive alter ego liability from the "typical" characteristics of relationships between investment firms and portfolio companies. *See Gerritsen*, 116 F. Supp. 3d at 1141; *Standex Int'l Corp.* v. *QCP, Inc.*, 2017 WL 481447, at *6 (S.D.N.Y. Feb. 6, 2017).

The Direct Action Complaint also alleges in conclusory fashion that Bain controlled a limited number of supposed business decisions regarding personnel and resourcing, even though the law is clear that a business's involvement in the "financing and macro-management" of affiliates does not render it an alter ego. *See ViaSat, Inc.* v. *Space Sys./Loral, Inc.*, 2012 WL 12844738, at *5 (S.D. Cal. July 30,

2012); *Ranza*, 793 F.3d at 1075; *Hernandez* v. *Mimi's Rock Corp.*, 632 F. Supp. 3d 1052, 1059 (N.D. Cal. 2022); *Fletcher* v. *Atex*, 68 F.3d 1451, 1459 (2d Cir. 1995); *PXP Producing Co.*, 2025 WL 1779457, at *11. Direct Action Plaintiffs' conclusory allegations are thus insufficient because the degree of control necessary to plead alter ego liability is not established "simply because an active parent corporation is involved directly in decision-making about its subsidiaries' holdings, where the corporations observe all of the corporate formalities necessary to maintain corporate separateness." *See Martifer-Silverado Fund I, LLC* v. *Zhongli Sci. & Tech. Grp. Co.*, 2020 WL 1322926, at *5 (N.D. Cal. Mar. 20, 2020) (internal quotation marks and alteration omitted); *see also Oxbow Calcining USA Inc.* v. *Am. Indus. Partners*, 96 A.D.3d 646, 649 (N.Y. App. Div. 2012); *Verdantus*, 2022 WL 611274, at *2 (full ownership and lack of corporate formalities are "not the exceptionally rare stuff of veil-piercing").

Direct Action Plaintiffs also point to certain financial forecasts prepared prior to the transaction, which they contend accounted for PowerSchool's non-U.S. growth in headcount. (*See* Direct Action Compl. ¶ 69). But the mere existence of financial forecasts, and the theoretical goals Plaintiffs allege are contained within them, does not demonstrate the type of pervasive, day-to-day control by ***Bain*** required to pierce the corporate veil. Moreover, even as alleged by Direct Action Plaintiffs, those forecasts were prepared prior to Bain's acquisition of a stake in PowerSchool and therefore do not establish Bain's control. Direct Action Plaintiffs also do not explain how PowerSchool's financial forecasts and announcement of plans to expand its India-based workforce in January 2024—more than ***nine months*** before the transaction was finalized—has any relevance to whether Bain exercised such control. (Direct Action Compl. ¶ 66).

After the execution of the Merger Agreement on June 6, 2024, Direct Action Plaintiffs attribute to Bain "cost-cutting measures" while PowerSchool was still an independent, public entity, and allege that Bain somehow influenced a 5% reduction

in force in August 2024. (Direct Action Compl. ¶¶ 56–64). Those generalized allegations would be insufficient even if they were supported by well-pled facts—and the Direct Action Complaint does not allege ***any*** specific facts as to when or how Bain purportedly "compell[ed] such cuts." (Direct Action Compl. ¶ 63). Nor could it—the Merger Agreement expressly provides that Bain did not have "the right to control or direct the business or operations" of PowerSchool prior to October 1, 2024, and that PowerSchool retained "complete control and supervision over their own business and operations" until that date.[20]

### B. Direct Action Plaintiffs Fail to Allege Control *After* Bain Acquired an Equity Interest in PowerSchool

The only allegations in the Direct Action Complaint that could be construed to postdate the merger offer "no more than conclusions." *See Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 U.S. at 679); *see also Reynolds*, 136 F. Supp. 3d at 525 ("[C]onclusory allegations of dominance and control will not suffice to defeat a motion to dismiss."). Again, to plead an alter ego relationship in which "the separate personalities" of two entities "do not in reality exist," plaintiffs must allege facts showing pervasive control, disregard of corporate formalities, and use of one entity "as a mere shell or conduit for the affairs of the other." *See Sonora Diamond Corp.*, 83 Cal. App. 4th at 538–39; *Reynolds*, 136 F. Supp. 3d at 525; *PXP Producing Co.*, 2025 WL 1779457, at *9–10.

But the Direct Action Complaint only alleges in conclusory fashion that Bain "dictated" policies and decisions regarding PowerSchool's compliance with data protection laws, that Bain "dictated" PowerSchool's strategic directives, policies, and business decisions, and that Bain is "the controlling alter ego of PowerSchool." (Direct Action Compl. ¶¶ 58, 59, 87). These allegations are vague at best, falling far short of alleging "specific facts supporting both of the necessary elements" to

[20] *See* Merger Agreement, *supra* note 7, at 64.

establish alter ego liability. *See Gerritsen*, 116 F. Supp. 3d at 1136 (collecting cases); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) (holding that "[t]he unadorned invocation of dominion and control is simply not enough"). Having failed to allege any of the indicia of control courts consider, Direct Action Plaintiffs have failed to establish the level of manipulative control necessary for alter ego liability.

### C. Direct Action Plaintiffs Fail to Allege Any Injustice from Respecting Bain's Separate Corporate Identity

Finally, Direct Action Plaintiffs "have failed to allege specific bad faith conduct that would make it inequitable to recognize the corporate form." *Est. of Ricardez* v. *Cnty. of Ventura*, 2020 WL 3891460, at *5 (C.D. Cal. June 24, 2020); *see also PXP Producing Co.*, 2025 WL 1779457, at *11; *TNS Holdings, Inc.* v. *MKI Sec. Corp.*, 92 N.Y.2d 335, 339–40 (1998). An inequitable result requires more than allegations that a plaintiff would face "[d]ifficulty in enforcing a judgment." *Sonora Diamond Corp.*, 83 Cal. App. 4th at 538–39. Direct Action Plaintiffs make only conclusory allegations that an inequitable result would occur if this Court declined to apply alter ego liability because PowerSchool is supposedly "undercapitalized and underinsured"—but they do not allege that Bain engaged in any bad faith conduct. (Direct Action Compl. ¶¶ 88–89). Because "undercapitalization alone is not per se sufficient grounds for alter ego liability," Direct Action Plaintiffs' conclusory allegation that PowerSchool is undercapitalized is insufficient to plead that it would be inequitable to recognize the corporate form. *See Lisa McConnell, Inc.* v. *Idearc, Inc.*, 2010 WL 364172, at *8 (S.D. Cal. Jan. 22, 2010); *see also Cal. Dep't of Toxic Substances Control* v. *NL Indus.,* 2021 WL 5933140, at *1, 5 (C.D. Cal. Oct. 13, 2021); *PXP Producing Co.*, 2025 WL 1779457, at *10; *Al Sayegh Bros. Trading (LLC)* v. *Doral Trading & Export, Inc.*, 219 F. Supp. 2d 285, 294 (E.D.N.Y. 2002).

Even assuming that mere allegations of undercapitalization could be sufficient, Direct Action Plaintiffs notably have not alleged that PowerSchool is

judgment proof. Direct Action Plaintiffs also do not allege that Bain used the October 2024 transaction to avoid liabilities by collateralizing debt with PowerSchool's assets, or that the transaction threatens to otherwise produce an inequitable result here. Direct Action Plaintiffs' failure to offer allegations in support of this required element—even on their legally insufficient theory—is yet another reason to dismiss the counts relying on alter ego theories. *See Futterman* v. *Kaiser Found. Health Plan, Inc.*, 91 Cal. App. 5th 656, 663 (2023), *as modified on denial of reh'g* (June 6, 2023), *review denied* (Aug. 23, 2023); *see also DePetris* v. *Traina*, 211 A.D.3d 939, 942 (N.Y. App. Div. 2022) (no alter ego liability where plaintiff failed to show that defendant's actions "were for the purpose of leaving the LLC judgment proof or to perpetrate a wrong against the petitioner").

In sum, the Court should dismiss Bain as a defendant as to all counts that Direct Action Plaintiffs pursue on an alter ego theory of liability (i.e., all counts but Direct Action Plaintiffs' claim for intentional interference with contractual relations (Direct Action Count 7)), because: (1) nearly all of their allegations predate Bain's alleged ownership of PowerSchool and thus cannot support alter ego liability; (2) their allegations of control after October 1, 2024 are conclusory and do not sufficiently allege the required level of control for alter ego liability; and (3) they have failed to allege that it would be inequitable to recognize the corporate form.

## III. THE COMPLAINTS FAIL TO STATE A CLAIM ON A DIRECT LIABILITY THEORY

Direct Action Plaintiffs clarified that they assert only a single claim against Bain on a theory of direct liability: intentional interference with contractual relations (Direct Action Count 7).[21] *See* Ex. B. Class Action Plaintiffs also assert a claim for tortious interference with contract (Class Action Count 2), as well as claims for

[21] The Court need not consider the remaining 42 common-law and statutory counts brought by Direct Action Plaintiffs against Bain (Direct Action Counts 1–6 and 11–46) under a theory of direct liability, because those counts are only brought under a theory of alter ego liability. *See* Ex. B.

negligence, unjust enrichment, and relief under the CFAA, CDAFA, and Declaratory Judgment Act, directly against Bain (Class Action Counts 3, 4, 5, 7, and 8). Each of these counts should be dismissed for failure to state a claim under Rule 12(b)(6).

*First*, Class Action and Direct Action Plaintiffs' claims for intentional interference with contractual relations (Class Action Count 2; Direct Action Count 7) fail to sufficiently allege conduct supporting the elements of intentional interference. Plaintiffs have not alleged facts to show that Bain took any action that interfered with their contracts with PowerSchool, let alone that Bain acted with the requisite intent to do so, or that any of Bain's actions caused their alleged injuries.

*Second*, Class Action Plaintiffs' claims of conspiracy under the CFAA, 18 U.S.C. § 1030, (Class Action Count 4), and of a violation under the CDAFA, Cal. Penal Code § 502, (Class Action Count 5), fail for similar reasons. As to the CFAA, Class Action Plaintiffs fail to (and cannot) allege that Bain conspired to access or cause damage to a computer—let alone that it did so intentionally—or that such access (even if pled) was unauthorized, as is required to state a claim under the CFAA. And Class Action Plaintiffs fail to allege that Bain caused or assisted the unauthorized access to or use of a computer—let alone that it did so knowingly, or without permission—as is required to state a claim under the CDAFA.

*Third*, apart from their intentional interference with contractual relations and CFAA claims, Class Action Plaintiffs engage in improper group pleading by relying on allegations that are plainly directed at PowerSchool and that fail to specify which defendants took which alleged actions, warranting dismissal of those claims on that basis alone.

*Fourth*, for Class Action Plaintiffs' claims for negligence, unjust enrichment, and relief under the Declaratory Judgment Act, Class Action Plaintiffs rely on conclusory allegations that do not give rise to a plausible claim for relief. In addition to the reasons provided below, Bain joins PowerSchool's Motion to Dismiss in its entirety and adopts all arguments made therein. (Dkt. 302).

### A. Intentional Interference with Contractual Relations (Class Action Count 2; Direct Action Count 7)

Both Class Action and Direct Action Plaintiffs bring a claim against Bain for intentional interference with contractual relations on a direct liability theory.[22] To plead that claim, Plaintiffs must allege "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Plasticware, LLC* v. *Flint Hills Res., LP*, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012). These elements are "substantially similar in most jurisdictions although sometimes varying in the number of elements stated." 9 American Law of Torts § 31:45 (Feb. 2025).[23]

---

[22] Class Action Plaintiffs bring their common-law claims for intentional interference with contractual relations (Class Action Count 2), negligence (Class Action Count 3), and unjust enrichment (Class Action Count 7) "under California law," or in the alternative, on behalf of putative statewide subclasses. (Class Compl. ¶¶ 160, 169, 247). In addition, four named class plaintiffs filed their actions in New York, two filed their actions in New Jersey, and BRICK Buffalo Academy Charter School has not filed in any jurisdiction. (Class Compl. ¶¶ 20–26). California, New York, and New Jersey are therefore relevant jurisdictions for the purposes of the Court's consideration of this Motion. Separately, Bain, PowerSchool, and Direct Action Plaintiffs agreed and jointly moved to brief six illustrative jurisdictions for Direct Action Plaintiffs' counts: Illinois, New Hampshire, New York, Pennsylvania, Tennessee, and Utah. *See* Dkt. 300, 301. Bain therefore addresses these jurisdictions in its discussion of Direct Action Plaintiffs' intentional interference claim, which is the only claim Direct Action Plaintiffs bring against Bain on a direct theory of liability. As a result, Section III.A, which addresses Class Action and Direct Action Plaintiffs' claims for of intentional interference with contractual relations, discusses the laws of California, New York, New Jersey, Illinois, New Hampshire, Pennsylvania, Tennessee, and Utah. Bain reserves all rights, including the right to respond to arguments raised in opposition to this Motion asserting that the law of other jurisdictions governs the common-law counts brought by any plaintiff.

[23] *See also Ixchel Pharma, LLC* v. *Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020); *HPI Health Care Servs., Inc.* v. *Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989); *Judge* v. *Moving Into Maths*, 1994 WL 262883, at *4 (D.N.H. Jan. 11, 1994); *Columbus LTACH Mgmt., LLC* v. *Quantum LTACH Holdings, LLC*, 2019 WL 2281632, at *3 (D.N.J. May 29, 2019); *Skiff re Bus., Inc.* v. *Buckingham Ridgeview,*

Both Complaints assert that Bain intentionally interfered with PowerSchool's performance "by directing, encouraging, and/or pressuring PowerSchool" to "reduce spending on cybersecurity infrastructure and compliance," reduce cybersecurity and information technology headcount, and assign "backend administrative operations" to subcontractors. (Class Compl. ¶ 163; Direct Action Compl. ¶ 251). But those allegations—which, again, rely on supposed acts taken by ***PowerSchool*** prior to Bain's alleged acquisition of a stake in October 2024—are conclusory, because Plaintiffs do not specifically allege any facts demonstrating that ***Bain*** directed reductions in cybersecurity resources or staff headcounts. (*See* Class Compl. ¶¶ 102–05 (generally alleging reduction in force in unspecified business areas); *see also* Direct Action Compl. ¶ 60). Beyond the conclusory nature of those allegations, Plaintiffs fail to allege that Bain acted intentionally to induce a breach; that Bain's actions caused Plaintiffs' alleged injuries; or that PowerSchool even breached the alleged contracts with Plaintiffs in the first place. Plaintiffs' allegations thus fail to state claims for intentional interference as a matter of law.

***Intentional Procurement of a Breach***. Plaintiffs do not adequately allege that Bain procured a breach of PowerSchool's contracts with the school districts, let alone that it did so intentionally. To plead these elements, Plaintiffs must allege that Bain "intentionally procured the breach" of PowerSchool's contracts, *TileBar* v. *Glazzio Tiles*, 723 F. Supp. 3d 164, 202 (E.D.N.Y. 2024), or knew that interference was "certain or substantially certain to occur as a result of [its] action," because interference was a "necessary consequence" of its action. *Quelimane Co.* v. *Stewart*

---

*LP*, 991 A.2d 956, 966 (Pa. Super. Ct. 2010); *Medtronic Sofamor Danek, Inc.* v. *Michelson*, 2002 WL 35649396, at *4 (W.D. Tenn. Sept. 10, 2002); *Moxtek, Inc.* v. *U.S. Welding, Inc.*, 2023 WL 2346316, at *4 (D. Utah Mar. 3, 2023). Some jurisdictions frame their tests to require interference with a contractual or economic relationship rather than a breach of contract. *See Skiff*, 991 A.2d at 966; *Judge*, 1994 WL 262883, at *4. Here, however, both Complaints state that their intentional interference claims arise only from an alleged breach of contract by PowerSchool. (Class Compl. ¶¶ 165–66; Direct Action Compl. ¶¶ 253–54).

*Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998) (quoting Restatement (Second) of Torts § 766, comment j).[24] Neither Complaint does so.

To begin, Plaintiffs do not sufficiently allege that Bain ***procured*** a breach. Their claims of interference amount to generalized allegations that Bain directed, encouraged, or influenced PowerSchool to reduce spending on cybersecurity, reduce its workforce, or move "backend administrative operations" to "subcontractors." (Class Compl. ¶ 163; Direct Action Compl. ¶ 251). Plaintiffs' only allegations of workforce and spending reductions pertain to actions that are alleged to have occurred before Bain allegedly acquired a 51% stake of PowerSchool in October 2024 (and, in many cases, before Bain is alleged to have entered into the Merger Agreement with PowerSchool in June 2024). And Plaintiffs do not point to anything establishing direction, encouragement, or pressure from Bain before these dates. As discussed *supra* Section II, for example, Plaintiffs allege that a reduction in force occurred in ***August 2024***, and they rely on an article from ***January 2024***, long before Bain is even alleged to have had any formal or equity interest in PowerSchool. (Direct Action Compl. ¶¶ 57, 60–66; Class Compl. ¶ 102). Furthermore, Plaintiffs have identified no reason to disregard or discredit the provision in the Merger Agreement providing that Bain did not have "the right to control or direct the business or operations" of PowerSchool prior to October 1, and that until that time

---

[24] *See Tsiatsios* v. *Anheuser-Busch, Inc.*, 2009 WL 114557, at *3 (D.N.H. Jan. 16, 2009) (similar); *JIT Concepts, Inc.* v. *Shelby Cnty. Healthcare Corp.*, 358 F. Supp. 2d 678, 686 (W.D. Tenn. 2005) (similar); *Trump Taj Mahal Assocs.* v. *Costruzioni Aeronautiche Giovanni Agusta, S.p.A.*, 761 F. Supp. 1143, 1164 (D.N.J. 1991) (intent to interfere must be "specific to th[e] contract"), *aff'd*, 958 F.2d 365 (3d Cir. 1992); *Newtek Small Bus. Fin., LLC* v. *Tex. First Cap., Inc.*, 2025 WL 439434, at *5 (E.D. Pa. Feb. 7, 2025) (requiring that defendant act "for the specific purpose of causing harm to the plaintiff"); *see also C.R. England* v. *Swift Transp. Co.*, 437 P.3d 343, 355 (Utah 2019) (requiring a plaintiff to establish that a defendant acted intentionally and "improper means," meaning "conduct contrary to law—such as violations of statutes, regulations, or recognized common-law rules—or the violation of an established standard of a trade or profession"); *Webb* v. *Frawley*, 906 F.3d 569, 579 (7th Cir. 2018) (explaining intent to induce under Illinois law "requires some active persuasion, encouragement, or inciting").

PowerSchool retained "complete control and supervision over [its] own business and operations."[25]

At most, Plaintiffs allege that the Merger Agreement included analyses that forecasted the financial effects of growing PowerSchool's non-U.S. workforce. (*See* Class Compl. ¶ 108; Direct Action Compl. ¶ 69). But an assumption in a financial forecast that is shared with the SEC and the market as a standard element of a normal-course business transaction is a far cry from inducement to breach a specific contract between PowerSchool and any school district. Plaintiffs' allegations about steps Bain purportedly took related to investments in other companies—not PowerSchool—are even less relevant to whether Bain induced PowerSchool to take any action. (*See* Class Compl. ¶ 110; Direct Action Compl. ¶¶ 67, 75–79).

Even assuming *arguendo* that Plaintiffs sufficiently alleged inducement of a breach, Plaintiffs would still fail to state a claim because they do not adequately allege that Bain ***intended*** for its alleged actions to cause PowerSchool to breach its contracts with Plaintiffs. Pleading tortious interference with contract requires "establish[ing] that the defendant purposefully intended to cause a contract party to breach a particular contract," *Conte* v. *Emmons*, 895 F.3d 168, 172 (2d Cir. 2018), or intentional action "for the specific purpose of causing harm to the plaintiff," *see Phillips* v. *Selig*, 959 A.2d 420, 429 (Pa. Super. 2008); *Quelimane*, 19 Cal. 4th at 56. But Plaintiffs allege only that Bain sought to decrease costs in cybersecurity operations, reduce headcount in cybersecurity departments, or increase the workforce based outside the United States. (Direct Action Compl. ¶ 251; Class Compl. ¶ 163). The conclusion that Bain intentionally procured a breach of a particular contract does not follow from Plaintiffs' apparent premise that Bain wanted such business changes at PowerSchool, because headcount and resourcing changes are not inconsistent with maintaining cybersecurity protections pursuant to

[25] *See* Merger Agreement, *supra* note 7, at 64.

any contract with Plaintiffs. Indeed, if Plaintiffs' theory were sufficient to state a claim for intentional interference with contract, then all companies and investors would risk liability each time that a potential or current portfolio company made changes in its workforce or resourcing. In short, the generalized allegation that Bain supposedly was interested in PowerSchool reducing costs, and the speculative allegation that cost reductions at PowerSchool could hypothetically weaken the cybersecurity measures allegedly required in its contracts with school districts, do not "support the inference that [Bain] was ***targeting*** the contract[s]" between PowerSchool and Plaintiffs. *See Roche Diagnostics GmbH* v. *Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 222 (S.D.N.Y. 2013) (emphasis added).

Furthermore, even if Plaintiffs had alleged facts sufficient to show that Bain hoped or projected that costs would decrease at PowerSchool, they do not allege that discussing cost reductions with portfolio companies is "improper." *See White Plains Coat & Apron Co., Inc.* v. *Cintas Corp.*, 8 N.Y.3d 422, 426 (2007) (collecting cases recognizing that shareholders, parents, creditors, and similar entities may be justified in inducing a breach where they have a "legal or financial stake in the breaching party's business"); *Roberts* v. *Gen. Motors Corp.*, 643 A.2d 956, 961–62 (N.H. 1994) (holding that a defendant with a "legitimate financial interest" did not interfere improperly in the plaintiff's business). Rather, a standard business practice—such as discussions about overall business strategy and costs between investment companies and portfolio companies—is not "likely to give rise to a finding of impropriety," as several of the illustrative states' laws provide. *See DiGiorgio Corp.* v. *Mendez & Co., Inc.*, 230 F. Supp. 2d 552, 565 (D.N.J. 2002); *Newtek Small Bus. Fin., LLC*, 2025 WL 439434, at *5–6 (similar). Plaintiffs have not pled that an investment company's arm's-length negotiations with a potential portfolio company have no "legitimate business purpose," or that discussions about general business strategy among investment companies and portfolio companies are anything other than legitimate business practices. *Dollar Tree Stores Inc.* v. *Toyama Partners,*

*LLC*, 2010 WL 1688583, at *4 (N.D. Cal. Apr. 26, 2010). Plaintiffs therefore do not allege intentional procurement of a breach.

***Causation***. Plaintiffs also fail to sufficiently allege a causal relationship between any of Bain's alleged actions and their alleged injuries. Plaintiffs must allege that a defendant's intentional interference is a "substantial factor" in causing the plaintiff's harm, and must either plead a "factual chain of causation," *Bank of N.Y.* v. *Fremont Gen. Corp.*, 523 F.3d 902, 909–10 (9th Cir. 2008), or show that "but for" a defendant's actions, the plaintiff's contract would have been performed, *Alt. Electrodes, LLC* v. *Empi, Inc.*, 597 F. Supp. 2d 322, 340 (E.D.N.Y. 2009); *see also Rutherford* v. *Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997) (noting that "[t]he substantial factor standard generally produces the same results as does the 'but for' rule of causation"), *as modified on denial of reh'g* (Oct. 22, 1997).[26]

Even assuming that Plaintiffs have sufficiently alleged that PowerSchool breached its contracts (which they have not), they still fail to plead that those contracts would otherwise have been performed absent Bain's purported actions. *See Alt. Electrodes*, 597 F. Supp. 2d at 340. Rather, Plaintiffs' theory of causation fails several times over. For example, Plaintiffs allege in conclusory fashion that Bain directed PowerSchool to reduce costs and headcount, but they do not allege specific facts that Bain made any such communication to PowerSchool, that Bain sent any message directing PowerSchool to breach its contracts with Plaintiffs, or that PowerSchool did not choose to make those changes for independent reasons.

---

[26] *See also Cartwright* v. *Cooney*, 788 F. Supp. 2d 744, 754 (N.D. Ill. 2011) (dismissing claim where "Plaintiff d[id] not allege that she breached her contract . . . as a result of [d]efendant's actions."); *Ben's Auto Body, Inc.* v. *Teitelbaum*, 2008 WL 5244420, at *3 (D.N.H. Dec. 15, 2008) (same); *Read* v. *Profeta*, 397 F. Supp. 3d 597, 654 (D.N.J. 2019) (same); *Lee* v. *State Volunteer Mut. Ins. Co.*, 2005 WL 123492, at *11 (Tenn. Ct. App. Jan. 21, 2005) (same); *St. Benedict's Dev. Co.* v. *St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991) (requiring that interference "caus[e] injury to the plaintiff"); *U.S. Borax Inc.* v. *Zamek*, 2019 WL 13393064, at *3–4 (E.D. Pa. July 26, 2019) (dismissing claim for failure to plead resultant damages).

(*See* Class Compl. ¶¶ 100–10, Direct Action Compl. ¶¶ 60–70). Even assuming such a directive existed, Plaintiffs fail to offer non-conclusory allegations that resources directed to cybersecurity at PowerSchool did in fact decrease. (*See* Class Compl. ¶¶ 100–10, Direct Action Compl. ¶¶ 62, 71). And even assuming Plaintiffs pled that such a directive existed *and* that the resourcing of PowerSchool's cybersecurity functions decreased, Plaintiffs still have not pled (and cannot plead) that any of Bain's alleged actions caused the cybersecurity incident. Plaintiffs allege that the "first incident of unauthorized access by a third-party actor" occurred in August 2024—months before Bain is alleged to have acquired a 51% stake in PowerSchool in October 2024, and during the period that PowerSchool expressly retained "complete control and supervision over [its] own business and operations."[27] (Class Compl. ¶ 105, Direct Action Compl. ¶ 62). Plaintiffs' chain of speculation consists only of allegations that are at best "merely consistent with" causation, and therefore insufficient to state an intentional interference claim as a matter of law. *Iqbal*, 556 U.S. at 678.

***Breach***. Finally, because Plaintiffs' intentional interference counts rely on PowerSchool's supposed breach of contract, and because they do not plead allegations sufficient to show an "underlying breach of contract," their tortious interference claims "also fail[]." *See Oddo Asset Mgmt.* v. *Barclays Bank PLC*, 19 N.Y.3d 584, 595 (2012); *Seoul Laser Dieboard Sys. Co.* v. *Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1201 (S.D. Cal. 2013) (Benitez, J.) (dismissing claim where plaintiff "d[id] not plead with any specificity the disruption of a contract");[28] (*see also* Class

---

[27] *See* Merger Agreement, *supra* note 7, at 64.

[28] *See also Cartwright*, 788 F. Supp. 2d at 754 (requiring "breach of the contract caused by the defendant's wrongful conduct"); *Ben's Auto Body*, 2008 WL 5244420, at *3 (dismissing claim where plaintiff failed to allege breach); *Bethea* v. *Roizman*, 2012 WL 4490759, at *27 (D.N.J. Sept. 27, 2012) (dismissing tortious interference claims where breach of contract claims failed); *U.S. Borax Inc.*, 2019 WL 13393064, at *3–4 (similar); *Lee*, 2005 WL 123492, at *10 (dismissing complaint as "devoid of any specific allegations" that a contract was breached); *St. Benedict's Dev. Co.*, 811 P.2d at 201. As explained *supra* note 23, certain of these states frame their tests

Compl. ¶ 165; Direct Action Compl. ¶ 253). For the reasons set forth in Section II of PowerSchool's Motion to Dismiss, which Bain incorporates by reference, Plaintiffs fail to allege that PowerSchool breached its contracts with the school districts. (*See* Dkt. 302). The intentional interference claims can be dismissed on that basis alone.

Both Complaints allege in general terms that Bain directed, encouraged, or pressured PowerSchool to reduce spending on cybersecurity infrastructure, reduce headcount, and utilize contractors based outside of the United States for certain functions. (*See* Class Compl. ¶ 163; Direct Action Compl. ¶ 251). But the contracts Plaintiffs rely on do not impose a duty on PowerSchool to maintain a specific level of spending on cybersecurity, have a specific headcount for cybersecurity or information technology personnel, or refrain from utilizing contractors. Rather, Plaintiffs' allegations about PowerSchool's contractual obligations—to the extent those allegations can be discerned from their shotgun pleading—generally concern data confidentiality, supervision, compliance with law, and incident response and notification. (*See*, *e.g.*, Class Compl. ¶¶ 68–79, 149–58; Direct Action Compl. ¶¶ 52–53, 504–24); (*see* Dkt. 302, Section II). Because Plaintiffs have not "demonstrate[d] an actual breach of the specified contract"—even if they had hypothetically alleged that PowerSchool changed its business in response to the unspecified actions Plaintiffs attribute to Bain—the intentional interference claims should be dismissed. *Corning Inc.* v. *Shenzhen Xinhao Photoelectric Tech. Co., Ltd.*, 546 F. Supp. 3d 204, 212–13 (W.D.N.Y. 2021) (collecting cases).

In sum, even if a breach of contract were sufficiently pled, Plaintiffs have not alleged that their contracts would have been performed absent Bain's alleged interference. None of the conclusory allegations Plaintiffs make about Bain's

---

to require interference with a contractual or economic relationship, but both Complaints state that their intentional interference claims arise only from an alleged breach of contract by PowerSchool. (Class Compl. ¶¶ 165–66; Direct Action Compl. ¶¶ 253–54).

direction and control overcome that pleading deficiency. Because Plaintiffs fail to sufficiently allege an intentional interference with contractual relations, these claims should be dismissed.

### B. Computer Fraud and Abuse Act (Class Action Count 4)

Class Action Plaintiffs also bring a novel claim under the CFAA, 18 U.S.C. § 1030(g), based on purported violations of 18 U.S.C. § 1030(a)(2)(C), 1030(a)(5)(C), and 1030(b), seeking to allege direct or conspiracy liability against Bain for PowerSchool's design of its cybersecurity protections. (Class Compl. ¶ 185). Those allegations fall far short of alleging that Bain "accessed" or "exceeded authorized access" to a computer, or that it conspired to do so.

The CFAA was "designed to target ***hackers*** who accessed computers to steal information or to disrupt or destroy computer functionality, as well as ***criminals*** who possessed the capacity to access and control high technology processes vital to our everyday lives." *LVRC Holdings LLC* v. *Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009) (emphasis added). And it is "applied narrowly to punish hacking" by a defendant—i.e., a defendant's "circumvention of technical access barriers"—not to punish the "circumvention of use policies." *Lakeland Tours, LLC* v. *Bauman*, 2014 WL 12570970 (S.D. Cal. Feb. 11, 2014) (quoting *United States* v. *Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (en banc)). Yet Class Action Plaintiffs seek to bring a claim under the CFAA in a novel scenario far from the hacking context described by these precedents—against an entity that invested in the ***victim*** of a third-party cyberattack—even though courts have dismissed claims brought against hacking victims rather than hackers. *See*, *e.g.*, *Nowak* v. *Xapo, Inc.*, 2020 WL 6822888, at *3 (N.D. Cal. Nov. 20, 2020).

Each of the subsections under which Class Action Plaintiffs bring a claim imposes similar requirements for liability for hacking activity: each requires some degree of access, intent, and damage. *See* 18 U.S.C. § 1030(a), (g); *Brekka*, 581 F.3d at 1132 (citing 18 U.S.C. § 1030(a)(2)). Specifically, § 1030(a)(2)(C) concerns

"intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer," and § 1030(a)(5)(C) concerns "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss." But the CFAA ***bars*** liability "for the negligent design or manufacture of computer hardware, computer software, or firmware." 18 U.S.C. § 1030(g).

***Conspiracy***. Class Action Plaintiffs principally allege that Bain should be held liable for conspiracy under § 1030(b). In order to allege a civil conspiracy, plaintiffs must "allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement." *Alfus* v. *Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1521 (N.D. Cal. 1990); *see Mauzy* v. *Mauzy*, 2025 WL 1677778, at *4 (S.D. Cal. June 12, 2025). But Class Action Plaintiffs have failed to allege facts sufficient to plead that Bain is liable for conspiracy, because the Class Complaint does not include "specific allegations of an agreement and common activities" in furtherance of any CFAA violation. *See NetApp, Inc.* v. *Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 835 (N.D. Cal. 2014).

Class Action Plaintiffs' allegations are limited to a single assertion that Bain and PowerSchool "entered into a common scheme to access information." (Class Compl. ¶ 206). But that vague and conclusory allegation—which certainly does not allege any specific facts showing that Bain and PowerSchool agreed to access computers, exceed authorized access, or cause damage to any computer—is insufficient to satisfy Class Action Plaintiffs' burden to allege conspiracy with particularity. *See Alfus*, 745 F. Supp. at 1521; *Mauzy*, 2025 WL 1677778, at *4. Further, the Class Complaint's generalized allegations that Bain purportedly controls and has oversight over PowerSchool's policies, and unspecified assertions that Bain "authorized or ratified" a PowerSchool tool, similarly fail to allege that Bain and PowerSchool entered into a conspiratorial agreement. (Class Compl. ¶¶ 201–05). Simply adding a "bare statement" in a complaint that a conspiracy

exists is insufficient to state a claim. *NetApp*, 41 F. Supp. 3d at 836. Moreover, Class Action Plaintiffs do not allege facts sufficient to plead that PowerSchool—the victim of a third-party cyberattack—even attempted any violation of the CFAA in its own right, and "[w]ithout a showing of any attempts to violate the statute, there is no triable issue of a conspiracy to do so." *Welenco, Inc.* v. *Corbell*, 126 F. Supp. 3d 1154, 1176 (E.D. Cal. 2015); (*see* Dkt. 302, Section VII). Therefore, Class Action Plaintiffs' conspiracy claims against Bain should be dismissed.

***Access***. Aside from their novel theory of conspiracy, Class Action Plaintiffs appear to allege that Bain should be held liable under § 1030(a)(2)(C) and § 1030(a)(5)(C). If they do, in fact, pursue that theory, Class Action Plaintiffs fail to adequately allege that Bain accessed the data "without authorization" or "exceeding authorized access" as required under § 1030(a)(2)(C) and § 1030(a)(5)(C).

Allegations that a platform's security architecture was designed without due care are not actionable under the CFAA and do not imply conduct "analogous to breaking and entering" that can give rise to liability under that statute. *hiQ Labs, Inc.* v. *LinkedIn Corp.*, 31 F.4th 1180, 1197 (9th Cir. 2022) (internal quotation marks omitted). Rather, the terms "without authorization" and "exceeding authorized access" concern a defendant that "accesses a computer without any permission at all," or who "has permission to access the computer, but accesses information on the computer that the person is not entitled to access," respectively. *Brekka*, 581 F.3d at 1133; *see Nosal*, 676 F.3d at 858, 863. But here, as explained in PowerSchool's Motion to Dismiss, PowerSchool's agreements with Plaintiffs specifically authorized PowerSchool to disclose the data to subcontractors. (Dkt. 302).

Class Action Plaintiffs allege only that Bain "knowingly authorized" PowerSchool's use of a purported "Backdoor Access Tool," knew that PowerSchool "was contractually prohibited from accessing" the data, "controlled, directed, and/or materially influenced PowerSchool's operations," and played an "oversight role."

(Class Compl. ¶¶ 201–03, 205). Nowhere do Class Action Plaintiffs allege that Bain accessed the data they allege to have entrusted to PowerSchool. Rather, they assert in general terms that Bain had "access to confidential information" related to PowerSchool's business operations, customer relationships, and contracts. (Class Compl. ¶ 201). Class Action Plaintiffs' allegations of "authorization" and "control" over the alleged tool are conclusory and insufficient to establish that Bain "accessed" any computer as required by the CFAA.

***Intent***. Class Action Plaintiffs also fail to adequately allege that Bain ***intentionally*** accessed a computer or exceeded authorized access under § 1030(a)(2)(C) or § 1030(a)(5)(C)—or, as explained *supra*, that it conspired with PowerSchool to do so intentionally. Class Action Plaintiffs make only conclusory allegations that Bain was "aware, or recklessly disregarded," PowerSchool's contractual commitments to school districts, and that Bain "knowingly authorized or ratified PowerSchool's use of a Backdoor Access Tool." (Class Compl. ¶¶ 202–03). But Class Action Plaintiffs offer no specific allegations that Bain knew that any such alleged tool existed, that Bain authorized use of that tool, or that Bain knew whether such a tool would impact PowerSchool's contractual commitments. Likewise, Class Action Plaintiffs' allegations that Bain "had access to confidential information" or "stood to gain directly from PowerSchool's ability to aggregate and analyze . . . data" similarly fail to establish the requisite scienter. (Class Compl. ¶¶ 201, 204). For this reason, too, the CFAA counts should be dismissed.

***Damage***. Class Action Plaintiffs also fail to satisfy the requirements of § 1030(a)(5)(C) that Bain's alleged conduct caused "damage." That term means "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). And "integrity" has been defined to require "some diminution in the completeness or usability of data or information on a computer system." *Garelli Wong & Assocs., Inc.* v. *Nichols*, 551 F. Supp. 2d 704, 709 (N.D. Ill. 2008). The CFAA thus "focus[es] on technological harms[,] such as

the corruption of files," *Van Buren* v. *United States*, 593 U.S. 374, 392 (2021), and "not damages that flow from the use of unlawfully obtained information," *Delacruz* v. *State Bar of Cal.*, 2017 WL 7310715, at *6 (N.D. Cal. June 21, 2017), *report and recommendation adopted*, 2017 WL 3129207 (N.D. Cal. July 24, 2017). Boilerplate or conclusory allegations of "harm to the integrity of [plaintiff's] data, programs, and computer system[s]" are insufficient to state a claim under § 1030(a)(5). *NetApp*, 41 F. Supp. 3d at 834.

Class Action Plaintiffs allege that damage occurred because "the integrity of the School Districts' data, systems, and/or information was impaired." (Class Compl. ¶ 208). But even if PowerSchool had accessed the school districts' computer systems or failed to employ adequate protections, that does not suggest that PowerSchool (let alone Bain) damaged or destroyed that data. If Class Action Plaintiffs' theory is instead that their injuries arose from a third-party threat actor's access to their data, then their allegations that Bain intended for the third-party hacker to access their data, or conspired to access a computer with that hacker, are implausible, conclusory, and therefore insufficient.

Because the Class Complaint's unprecedented theory of liability does not sufficiently allege CFAA liability under any of the cited provisions, the CFAA count must be dismissed.

### C. California Comprehensive Data Access and Fraud Act (Class Action Count 5)

Class Action Plaintiffs also bring a claim under the California Comprehensive Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502 (Class Compl. ¶ 213), which likewise should be dismissed. The CDAFA does not "impose liability on [a] defendant for *third party* hackers' unauthorized access of and tampering with [the] defendant's system." *Claridge* v. *RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011). Like the CFAA, the CDAFA was designed to target hackers who tamper with or gain unauthorized access to computer systems, not victims who play

"no active role" in those hacking activities—let alone an entity that allegedly invested in the victim. *See id.*; *Teran* v. *Superior Ct. of Los Angeles Cnty.*, 112 Cal. App. 5th 371, 381–82 (2025). On that basis alone, the Court should dismiss Class Action Plaintiffs' novel theory of liability under the CDAFA against Bain.

Class Action Plaintiffs cite three subsections of the CDAFA in their claim against Bain, referencing the statute's provisions concerning: (1) "[k]nowingly and without permission us[ing] or caus[ing] to be used computer services"; (2) "[k]nowingly and without permission provid[ing] or assist[ing] in providing a means of accessing a computer, computer system, or computer network"; and (3) "[k]nowingly and without permission access[ing] or caus[ing] to be accessed any computer, computer system, or computer network." Cal. Penal Code § 502(c)(3), (6), (7).[29]

Class Action Plaintiffs' allegations as to Bain's conduct are conclusory at best, and they fail to allege that Bain engaged in any of the actions proscribed by the relevant provisions, acted with the requisite knowledge or intent, or caused damages or loss. To the extent Class Action Plaintiffs seek to pursue a theory of conspiracy liability against Bain—which is far from clear from the single reference to conspiracy liability for this count in their class allegations, (*see* Class Compl. ¶ 141(m))—they fail to state a claim for the same reasons discussed *supra* Section III.B in connection with their CFAA count. *See Alert Enter., Inc.* v. *Rana*, 2023 WL 2541353, at *5–6 (N.D. Cal. Mar. 16, 2023) (granting motion to dismiss CDAFA claim where plaintiff made conclusory allegations of civil conspiracy and failed to allege an agreement). Indeed, by seeking to pursue a claim against an entity that invested in the victim of a third-party cyberattack, Class Action Plaintiffs' allegations pursue precisely the theory of liability that courts have cautioned against. *See Claridge*, 785 F. Supp. 2d at 863.

---

[29] Class Action Plaintiffs have confirmed that they are not pursuing a theory of liability under Cal. Penal Code § 502(c)(1) against Bain. *See* Ex. A.

***Access or Use***. Sections 502(c)(6) and 502(c)(7) proscribe certain conduct involving access to a computer, computer system, or network. Section 502(c)(3) proscribes certain conduct involving the use of computer services. But Class Action Plaintiffs fail to allege that Bain engaged in any conduct proscribed by those sections. Class Action Plaintiffs allege only that PowerSchool and Bain acted knowingly and, without permission, "access[ed], us[ed], or damage[ed]" their data, "us[ed] Computer Services," "caus[ed] unauthorized access," and "assist[ed] in authorized access." (Class Compl. ¶ 222). That allegation simply recites the statutory language; it does not allege facts showing that Bain accessed or used a computer without permission—or assisted or caused such access or use—and thus fails to allege that Bain "falls within the scope of liability contemplated" by the statute. *See Claridge*, 785 F. Supp. 2d at 863 (granting motion to dismiss § 502(c)(6) claim where plaintiff alleged that defendant failed "to provide a sufficiently secure computer system"); *Whitaker* v. *Tesla Motors, Inc.*, 985 F.3d 1173, 1176–77 (9th Cir. 2021). Other than incorporating by reference allegations that Bain "knowingly authorized" PowerSchool's use of a "Backdoor Tool" and "controlled, directed, and/or materially influenced PowerSchool's operations," Class Action Plaintiffs do not allege any further or more specific, direct conduct by Bain. (Class Compl. ¶¶ 201, 203, 222).

***Knowledge***. Under the CDAFA, "use" and "access" "must be both knowing and without permission." *Bui-Ford* v. *Tesla, Inc.*, 2024 WL 694485, at *5 (N.D. Cal. Feb. 20, 2024) (discussing Cal. Penal Code § 502(c)(3), (c)(7)); *see* Cal. Penal Code § 502(c)(6) (using the same phrasing). Despite the CDAFA's requirement that a defendant commit proscribed actions "knowingly," Class Action Plaintiffs' sole allegation as to Bain's knowledge is that Bain was purportedly aware of PowerSchool's contracts with school districts and "knowingly authorized or ratified" a supposed "Backdoor Access Tool" that allowed PowerSchool to view data. (Class Compl. ¶¶ 202–03). Not only is this allegation conclusory, but Class

Action Plaintiffs fail to plead that Bain's supposed authorization or ratification was given "with an understanding" that PowerSchool's alleged unauthorized access was "practically certain to follow from [Bain's alleged] conduct." *See Kirby ex rel. Kirby 2014 Trust* v. *AT&T Corp.*, 2022 WL 17184565, at *5–6 (S.D. Cal. Nov. 23, 2022) (Benitez, J.); *Bui-Ford*, 2024 WL 694485, at *5.

***Without Permission***. Class Action Plaintiffs also fail to allege that Bain engaged in any of the actions proscribed by the CDAFA "without permission." Courts have interpreted this phrase "narrowly" and as requiring the "circumvent[ing] technological barriers," *Custom Packaging Supply, Inc.* v. *Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015), or the "us[ing] or tak[ing] computer data" surreptitiously, *Zarif* v. *Hwareh.com, Inc.*, --- F. Supp. 3d ---, 2025 WL 486317, at *12 (S.D. Cal. Feb. 13, 2025). Class Action Plaintiffs do not allege that Bain did so.

***Damages***. Finally, Class Action Plaintiffs fail to adequately plead damages or loss under § 502. A plaintiff must allege *some* facts reflecting damages. *See Zarif*, 2025 WL 486317, at *13. But Class Action Plaintiffs allege only that PowerSchool and Bain "have caused loss to Plaintiffs and Class Members and profited at their expense." (Class Compl. ¶ 224). Putting aside that this allegation is conclusory and insufficient, it also confuses the alleged injury under the CDAFA—PowerSchool's supposed access to student data—with alleged injury or damages proximately caused by a third-party hacker.

### D. Class Action Plaintiffs Engage in Group Pleading

Class Action Plaintiffs' claims for negligence (Class Action Count 3), violation of the CDAFA (Class Action Count 5), unjust enrichment (Class Action Count 7), and declaratory and injunctive relief (Class Action Count 8) must be dismissed for improper group pleading because they utterly fail to satisfy the "minimal notice pleading requirements" of Rule 8.[30] *See Bustamante* v. *Bank of*

[30] In the Direct Action Complaint, 42 of the 43 counts originally asserted against Bain on a direct liability theory fail to give any notice as to what actions by Bain

*Am., N.A.*, 2012 WL 13175878, at *1 (S.D. Cal. May 21, 2012). The allegations specific to those claims are plainly directed toward PowerSchool, not Bain. (*See* Class Compl. ¶¶ 168–83, 210–27, 246–62). And as Class Action Plaintiffs do not allege that PowerSchool is an alter ego of Bain, they may not "group" all Defendants together in their allegations. *Horton* v. *NeoStrata Co. Inc.*, 2016 WL 11622008, at *3–4 (S.D. Cal. Nov. 22, 2016). "Lumping [together] multiple defendants with broad allegations does not provide" the notice required by Rule 8 and "is prohibited." *Doe* v. *Camp Pendleton & Quantico Hous. LLC*, 2020 WL 1890576, at *7 (S.D. Cal. Apr. 16, 2020) (collecting cases); *see also Better Homes Realty, Inc.* v. *Watmore*, 2017 WL 1400065, at *4 (S.D. Cal. Apr. 18, 2017) (Benitez, J.). Accordingly, Class Action Counts 3, 5, 7, and 8 must be dismissed on the basis of improper group pleading under Rule 8. *See Horton*, 2016 WL 11622008, at *3–4. At the very least, the Court should decline to interpret allegations brought against "Defendants" as also including an unwritten allegation of the same brought against Bain. Given Class Action Plaintiffs' improper group pleading, Bain proceeds to address only the allegations brought expressly against Bain, which are few and conclusory.

### E. Class Action Plaintiffs Fail to State a Claim as to Their Remaining Counts

Class Action Plaintiffs bring claims against Bain for negligence and unjust enrichment on a theory of direct liability, as well as a claim for relief under the Declaratory Judgment Act.[31] As an initial matter, nowhere do Class Action Plaintiffs

---

supposedly gave rise to their counts, as Bain is not even named ***once*** in the paragraphs setting forth those claims. (*See* Direct Action Compl. ¶¶ 148–247, 310–1167). Because Direct Action Plaintiffs have confirmed that they are no longer pursuing those 42 counts against Bain on a direct liability theory, the discussion in this Section focuses on the deficiencies in the Class Complaint. *See* Ex. B.

[31] Bain also joins Sections II (Breach of Contract), III (Negligence) IV (Negligence Per Se), V (Unjust Enrichment), VI (Fraudulent Concealment), VII (CFAA), VIII (CDAFA), IX (Illinois Biometric Information Privacy Act), X (Consumer Protection Statutes), XI (Data Breach Notification Statutes), XII (New York Education Law), XIII (Express Indemnity), and XIV (Declaratory Judgment Act) of PowerSchool's

make any allegations that Bain collected, stored, or shared their data, or otherwise did any business directly with Class Action Plaintiffs. To the contrary, the Class Complaint makes numerous allegations that PowerSchool (not Bain) supposedly collected, stored, and shared Class Action Plaintiffs' data. (*See* Class Compl. ¶¶ 28, 38, 44, 86). Moreover, because Class Action Plaintiffs do not allege a duty owed to them by Bain by virtue of possessing Class Action Plaintiffs' data or otherwise, let alone a breach or damages caused by such a breach, Class Action Plaintiffs have failed to adequately plead negligence (Class Action Count 3). Nor do they allege facts sufficient to indicate that Bain received any direct benefits from them, as is necessary for Class Action Count 7 (Unjust Enrichment). Each of these counts should be dismissed.[32]

**1. Negligence (Class Action Count 3)**

To assert a claim for negligence, Class Action Plaintiffs must allege that (1) Bain owed them "a duty to exercise due care"; (2) Bain breached that duty; (3) Bain's breach caused them harm; and (4) Class Action Plaintiffs suffered damages. *Attisha Enters., Inc.* v. *Cap. One, N.A.*, 505 F. Supp. 3d 1051, 1055 (S.D. Cal. 2020) (Benitez, J.); *see Long Beach Rd. Holdings, LLC* v. *Foremost Ins. Co.*, 75 F. Supp. 3d 575, 588 (E.D.N.Y. 2015); *Davis* v. *Brickman Landscaping, Ltd.*, 98 A.3d 1173, 1178–79 (N.J. 2014). The Class Complaint fails to adequately plead any of the required elements, and so Class Action Plaintiffs' negligence count should therefore be dismissed.[33]

---

Motion to Dismiss, and adopts all arguments made therein, all of which equally apply to Bain. (Dkt. 302).

[32] As noted *supra* note 22, Bain cites to New York and New Jersey law because Class Action Plaintiffs filed actions in those jurisdictions. Bain also cites to California law because the Class Complaint states that it brings its common-law claims under California law.

[33] The Class Complaint makes a single, conclusory allegation that Bain was negligent per se. (Class Compl. ¶¶ 172(b)–(h), 173). Class Action Plaintiffs' conclusory negligence per se theory fails for the reasons set forth in Section IV of PowerSchool's Motion to Dismiss, which are equally applicable to Bain. (Dkt. 302).

***Duty***. Class Action Plaintiffs do not allege that Bain owed them a duty of care. Only a single paragraph in support of the negligence claim alleges that Bain owed any duty (Class Compl. ¶ 172(a)), and that paragraph does nothing more than parrot the legal element of the claim itself. Plaintiffs only allege that because ***PowerSchool*** "holds itself out as a protector of consumer data," it, "***along with Bain Capital***, thereby assumed a duty to reasonably protect the Data entrusted to them." (Class Compl. ¶ 172(a) (emphasis added)). That sole allegation is insufficient because a "legal conclusion couched as a factual allegation" does not suffice to state a claim. *See Iqbal*, 556 U.S. at 678. The Class Action Complaint also does not provide any additional allegations supporting an inference that PowerSchool's alleged assumption of a duty to protect consumer data can be imputed to Bain. *See Cruz* v. *Sears*, 2012 WL 13175896, at *2 (S.D. Cal. Apr. 16, 2012) (dismissing negligence claim where "the complaint consist[ed] of conclusory allegations and [was] devoid of factual enhancement"). Class Action Plaintiffs' failure to allege that Bain had a duty to them warrants dismissal of the negligence claim. *See Attisha Enters., Inc.*, 505 F. Supp. 3d at 1057 (dismissing complaint when plaintiff failed to allege a duty); *Cohen* v. *Avanade, Inc.*, 874 F. Supp. 2d 315, 326–27 (S.D.N.Y. 2012) (same); *Port Auth. of N.Y. & N.J.* v. *Arcadian Corp.*, 991 F. Supp. 390, 399 (D.N.J. 1997) (same), *aff'd*, 189 F.3d 305 (3d Cir. 1999).

In a similar fashion, though Class Action Plaintiffs seek to allege that "Defendants" had a duty arising from purported receipt of individuals' personally identifiable information ("PII") and "the special relationship" between ***PowerSchool*** and Class Action Plaintiffs, they do not allege that ***Bain*** held individuals' data or had a "relationship" with schools or school districts. (Class Compl. ¶ 176). The dearth of allegations that Bain possessed any of Class Action Plaintiffs' PII, or had any relationship with Class Action Plaintiffs, underscores their failure to allege facts sufficient to plead a duty. *See Navarro* v. *Ski Data*, 2022 WL 18280359, at *10 (C.D. Cal. Dec. 7, 2022) (finding no duty where defendants did not store or possess

the PII that was the subject of the action); *Smahaj* v. *Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 825 (N.Y. Sup. Ct. 2020) (finding no duty where third party possessed and stored the plaintiff's data); *In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *8–9 (concluding defendant did not owe a duty because a third party collected the data, and there was "no relationship between the parties on which the [c]ourt [could] find" a duty); *see also Adkins* v. *Everest Glob. Servs., Inc.*, 2024 WL 3887127, at *9–10 (D.N.J. Aug. 21, 2024) (dismissing negligence claim because plaintiffs failed to sufficiently plead the "foundational information" of a relationship between the parties that would give rise to a duty).

***Breach***. Absent duty, there can be no breach and thus no negligence. *See Mehr* v. *Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1063 (N.D. Cal. 2015); *Ryans* v. *Lowell*, 484 A.2d 1253, 1258 (N.J. Super. Ct. App. Div. 1984). "Because Plaintiff[s] ha[ve] not demonstrated the threshold element of duty, the Court need not consider the remaining elements of the negligence tort." *See Mazed* v. *JP Morgan Chase Bank, N.A.*, 2013 WL 12131725, at *7 (C.D. Cal. May 6, 2013); *Gray* v. *Wackenhut Servs., Inc.*, 721 F. Supp. 2d 282, 287 (S.D.N.Y. 2010), *aff'd*, 446 F. App'x 352 (2d Cir. 2011).

***Causation***. Class Action Plaintiffs also fail to allege that Bain proximately caused the cybersecurity incident, because their conclusory allegations that Bain encouraged PowerSchool to reduce costs and headcount, or to increase personnel based outside the United States, are too attenuated from any harm alleged to adequately plead causation. Class Action Plaintiffs improperly rely on group pleading in an attempt to allege proximate causation as to Bain. *See supra* Section III.D. They allege in a conclusory manner that "Defendants' concealment" of "PowerSchool's known deficient data security practices" proximately caused their alleged injuries. (Class Compl. ¶ 128). There are no allegations that Bain's "data security practices" caused their alleged injuries, or that Bain was involved in "concealing" PowerSchool's (or its own) data security practices. (*See id.*).

Even if Class Action Plaintiffs had made specific allegations that Bain directed "[a]ggressive cost-cutting measures" at PowerSchool (though, as explained *supra* Section II.A, they have not), allegations of cost reductions alone would not render injuries from a subsequent cybersecurity incident "fairly traceable" to those alleged measures. *Vavak* v. *Abbott Lab'ys, Inc.*, 2011 WL 13130493, at *2 (C.D. Cal. Mar. 7, 2011); (*see* Class Compl. ¶ 101). That is because allegations of cost reductions or personnel measures are not "so close to the result, or of such significance as causes," that they can support the conclusion that those measures proximately caused the injuries from a criminal hacker's attack on PowerSchool. *Modisette* v. *Apple Inc.*, 30 Cal. App. 5th 136, 154 (2018). In sum, because the allegations of the cause of the cybersecurity incident predate Bain's investment in PowerSchool on October 1, 2024, they are too attenuated from the alleged harm to constitute its proximate cause. *See Pelman* v. *McDonald's Corp.*, 237 F. Supp. 2d 512, 537–38 (S.D.N.Y. 2003); *see also Giovanelli* v. *D. Simmons Gen. Contracting*, 2011 WL 2470591, at *4 (D.N.J. June 17, 2011).

***Damages***. For the reasons set forth in Section III of PowerSchool's Motion to Dismiss, Class Action Plaintiffs have also failed to adequately plead concrete damages. (*See* Dkt. 302). Accordingly, because they have failed to allege facts sufficient to plead any of the elements of negligence, Class Action Plaintiffs' claim must be dismissed.

**2. Unjust Enrichment (Class Action Count 7)**

Class Action Plaintiffs also fail to state a claim for unjust enrichment against Bain. "'[U]njust enrichment' is not an independent cause of action under California law," *Advanced Eng'g Sols. Co., LLC* v. *Pers. Corner, LLC*, 2021 WL 1502705, at *7 (C.D. Cal. Feb. 25, 2021), under which Class Action Plaintiffs purport to bring their common-law claims. *See supra* n.22; *see also Adkins*, 2024 WL 3887127, at *13 (same for New Jersey). When paired with an accompanying breach of law, "[t]he elements of an unjust enrichment claim are the 'receipt of a benefit and [the]

unjust retention of the benefit at the expense of another.'" *See Peterson* v. *Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (second alteration in original). Class Action Plaintiffs must plead similar elements for a claim brought under New Jersey law. *See In re U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d 369, 378 (D.N.J. 2024). In New York, plaintiffs must plead: (1) "that the defendant benefitted," (2) "at the plaintiff's expense," and (3) "that 'equity and good conscience' require restitution." *Kaye* v. *Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted). And the defendant's benefit from the plaintiff must be "specific and direct." *Id.*

Class Action Plaintiffs' allegations in support of their unjust enrichment claim against Bain are insufficient as a matter of law. Class Action Plaintiffs allege that Bain "received monetary benefits from Plaintiffs and Class Members in the form of payments made under contracts for software services." (Class Compl. ¶ 249). But Class Action Plaintiffs make no non-conclusory allegations that Bain received or retained any direct benefit at their expense (nor can they). Rather, Class Action Plaintiffs' claim arises out of contracts between the school districts and ***PowerSchool***. (*See* Class Compl. ¶¶ 1, 66, 151). That is made clear by Class Action Plaintiffs' allegations regarding any supposed overpayment, which only mention PowerSchool. (*See*, *e.g.*, Class Compl. ¶¶ 132, 134); *In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 531–32 (S.D.N.Y. 2007). In fact, the only entity who Class Action Plaintiffs adequately allege derived a benefit from the cybersecurity incident was the third-party criminal hacker, and "it is that person or persons which in equity and good conscience owes restitution." *See In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *6 (S.D.N.Y. Feb. 24, 2022).

Because the Class Complaint insufficiently alleges that Bain received any benefit, the unjust enrichment count must be dismissed. *See Advanced Eng'g Sols. Co.*, 2021 WL 1502705, at *7; *Major-Blakeney Corp.* v. *Jenkins*, 121 Cal. App. 2d 325, 339–40 (1953); *In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d at 532; *see also Rowe Plastic Surgery of N.J., LLC* v. *Aetna Life Ins. Co.*, 705 F. Supp. 3d

194, 204 (S.D.N.Y. 2023), *aff'd*, 2024 WL 4315128 (2d Cir. Sept. 27, 2024); *In re U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d at 378–79.

**3. Declaratory Judgment Act (Class Action Count 8)**

Finally, Class Action Plaintiffs attempt to bring a claim for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. But this statute does not provide an independent cause of action. *City of Reno* v. *Netflix, Inc.*, 52 F.4th 874, 878–79 (9th Cir. 2022) (collecting cases). In addition, "[a] claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action"—even if those other causes of action are ultimately dismissed. *Mangindin* v. *Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009). Because Class Action Plaintiffs seek relief through numerous other causes of action, and because their claim under the Declaratory Judgment Act does not identify a cause of action, this claim should be dismissed.

## CONCLUSION

For all the reasons discussed herein, Bain respectfully requests that the Court grant its Motion to Dismiss the claims brought against Bain in the School District Amended Putative Class Action Complaint, the School District Direct Actions First Amended Consolidated Master Complaint, and all direct-filed complaints, with prejudice.

Dated: September 25, 2025

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ John P. Carlin*
John P. Carlin

John P. Carlin (NY 3031887)*
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Dylan O. Smith (NY 5846076)*
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
jschutte@paulweiss.com
dosmith@paulweiss.com

R. Rosie Vail (SBN 317977)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant Bain Capital, L.P.*

## CERTIFICATE OF SERVICE

I certify that on the 25th day of September, 2025, I filed the foregoing notice with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ John P. Carlin*

John P. Carlin
Email: jcarlin@paulweiss.com
*Counsel for Bain Capital, L.P.*