David S. Casey, Jr., Cal. State Bar No. 60768
dcasey@cglaw.com
**CASEY GERRY**
**FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811

Carol C. Villegas, N.Y. State Bar No. 4154324*
cvillegas@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700

James J. Pizzirusso, D.C. State Bar No. 477604*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200
*Admitted Pro Hac Vice*

*Interim Co-Leads for Plaintiffs*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 3:25-md-3149-BEN-MSB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)**<br><br>Date: TBD<br>Time: TBD<br>Ctrm.: 5A<br>Judge: Hon. Roger T. Benitez |

No. 3:25-md-3149-BEN-MSB

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

# TABLE OF CONTENTS

I.    FACTUAL BACKGROUND .................................................................... 1

A.    Bain's Merger With PowerSchool................................................... 1

B.    Meet and Confers Concerning Bain Motion to Dismiss............................ 2

II.   LEGAL STANDARD............................................................................ 3

III.  ARGUMENT................................................................................... 4

A.    This Court Has Subject-Matter Jurisdiction, and Bain's Argument to the Contrary Is Moot ................................................................. 4

B.    This Court has Personal Jurisdiction Over Bain ........................................ 6

1.    Bain Purposefully Availed Itself of California's Laws and Directs Its Activities Toward California............................................................. 7

2.    Plaintiffs' Claims Against Bain Arise Out of Its California Activities .......10

3.    Exercising Jurisdiction over Bain Comports with Due Process..................11

C.    Plaintiffs Adequately Plead an Agency Relationship Between Bain and PowerSchool................................................................................13

1.    PowerSchool is Bain's Agent Because PowerSchool Has Acted at Bain's Direction ......................................................................15

2.    Bain's Arguments Against an Agency Relationship Ignore Plaintiffs' Well-Pled Allegations ........................................................16

D.    Plaintiffs' Allegations Satisfy Rule 8................................................18

E.    Plaintiffs Have Plausibly Alleged Direct Liability Against Bain ................20

1.    Plaintiffs Adequately Negligence and Negligence per se against Bain.......22

a.  Bain Had a Duty Because it Created the Risk of Harm..........................22

b.  Bain also had a Legal Duty Because of its Special Relationship with Plaintiffs................................................................27

c.  Bain Breached Its Duty to Plaintiffs......................................28

d.  Bain's Affirmative Conduct Proximately Caused Plaintiffs' Injuries .....29

e.  Negligence Per Se ........................................................30

2.    Courts Routinely Allow Unjust Enrichment Claims to Proceed as a Quasi

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

Contract Claim......................................................................................32

3.    Declaratory Judgment and Injunctive Relief Are Necessary to Prevent Future Harm..................................................................................................33

4.    Bain's Failure to Supervise PowerSchool and Movate Supports Plaintiffs' Claim for Negligent Training and Supervision.................................................35

5.    Plaintiffs Sufficiently Allege Violation of the California Consumer Privacy Act  36

6.    Plaintiffs Sufficiently Plead Violation of the California Unfair Competition Law 37

7.    Plaintiffs Sufficiently Plead Aiding and Abetting.......................................40

**IV.  CONCLUSION** ........................................................................................**41**

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*,
484 F. Supp. 3d 921 (D. Or. 2020) ................................................... 14, 15, 16, 17

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal.) .......................................................*passim*

*In re Accellion, Inc. Data Breach Litig.*,
2024 WL 4592367 (N.D. Cal. Oct. 28, 2024) ......................................................4

*In re Adobe Sys. Priv. Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal.) ......................................................35

*Advanced Eng'g Sols. Co., LLC v. Pers. Corner, LLC*,
2021 WL 1502705 (C.D. Cal. Feb. 25, 2021) ......................................................33

*Agricola Baja Best, S. De. R.L. de C.V. v. Harris Moran Seed Co.*,
44 F. Supp. 3d 974 (S.D. Cal. 2014) ..........................................................14, 15

*Am. Bank Holdings, Inc. v. Grange Mut. Cas. Co.*,
2010 WL 2302356 (D. Md. Jun. 7, 2010) ..........................................................8

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ..........................................................32

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) ..........................................................40

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................3, 17

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ..........................................................32

*Austin B. v. Escondido Union Sch. Dist.*,
149 Cal. App. 4th 860 (2007) ..........................................................40

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) ..........................................................10

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

*Bangkok Broad. & T.V. Co. v. IPTV Corp.*,
  742 F. Supp. 2d 1101 (C.D. Cal. 2010) ........................................................................22

*Bass v. Facebook, Inc.*,
  394 F. Supp. 3d 1024 (N.D. Cal. 2019) ..................................................................23, 27

*Baton v. Ledger SAS*,
  740 F. Supp. 3d 847 (N.D. Cal. 2024) ....................................................................25, 34

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................3, 17

*Berven v. LG Chem, Ltd.*,
  2019 WL 1746083 (E.D. Cal. Apr. 18, 2019) ...............................................................9

*Better Homes Realty, Inc.* v. *Watmore*,
  2017 WL 1400065 (S.D. Cal. Apr. 18, 2017) ..............................................................20

*Brady v. Bayer Corp.*,
  26 Cal. App. 5th 1156 (2018) ......................................................................................38

*Briskin v. Shopify, Inc.*,
  135 F.4th 739 (9th Cir. 2025) ......................................................................................19

*Brown v. USA Taekwondo*,
  11 Cal. 5th 204 (2021) ...................................................................................23, 27, 28

*Bustamante* v. *Bank of Am., N.A.*,
  2012 WL 13175878 (S.D. Cal. May 21, 2012) ......................................................19, 20

*Cascade Fund, LLLP v. Absolute Cap. Mgmt. Holdings Ltd.*,
  707 F. Supp. 2d 1130 (D. Colo. 2010) ........................................................................12

*Castillo v. Seagate Tech., LLC*,
  2016 WL 9280242 (N.D. Cal. Sep. 14, 2016) .........................................................23, 24

*Centinela Freeman Emergency Med. Assocs. v. Health Net of Cal.*, Inc.,
  1 Cal. 5th 994 (2016); ..................................................................................................27

*Chan v. Soc'y Expeditions, Inc.*,
  39 F.3d 1398 (9th Cir. 1994) ...........................................................................14, 16, 18

*China National Chemical Construction Chongqing Co. v. Seedling*,
  2006 WL 8449845 (D. Or. Jan. 3, 2006) ....................................................................7, 8

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

*City of L.A. v. Wells Fargo & Co.*,
22 F. Supp. 3d 1047 (C.D. Cal. 2014) ................................................................18

*Coleman* v. *Las Vegas Metro. Police Dep't*,
2022 WL 3594272 (9th Cir. Aug. 23, 2022) ......................................................26

*Consumer Fin. Prot. Bureau v. Wen*,
2025 WL 2254521 (9th Cir. Aug. 7, 2025) ........................................................18

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993) ..............................................................................12

*Cree, Inc. v. Tarr Inc.*,
2017 WL 3219974 (S.D. Cal. July 28, 2017) ....................................................19

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ......................................................................................7, 9

*Dent* v. *Nat'l Football League*,
902 F.3d 1109 (9th Cir. 2018) ............................................................................36

*Dent v. Nat'l Football League*,
968 F.3d 1126 (9th Cir. 2020) ............................................................................31

*Doe* v. *Camp Pendleton & Quantico Hous. LLC*,
2020 WL 1890576 (S.D. Cal. Apr. 16, 2020) ....................................................20

*Doe v. Uber Techs., Inc.*,
2025 WL 80365 (9th Cir. Jan. 13, 2025) ...................................... 22, 23, 24, 25

*Dudnikov v. Chalk & Vermilion Fine Arts*,
514 F.3d 1063 (10th Cir. 2008) ..........................................................................10

*E.H. v. Meta Platforms, Inc.*,
2024 WL 557728 (N.D. Cal. Feb. 12, 2024) ......................................................40

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................23

*FDIC v. Cashman*,
2011 WL 6002611 (N.D. Cal. Nov. 30, 2011) ..............................................35, 36

*Fireman's Fund Ins. Co. v. Greenberg*,
2008 WL 2262423 (S.D. Cal. Feb 25, 2008) ......................................................6

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

*Flores-Mendez v. Zoosk, Inc.*,
2021 WL 308543 (N.D. Cal. Jan. 30, 2021)......................................................28

*G & G LLC v. White*,
535 F. Supp. 2d 452 (D. Del. 2008) ...................................................................8

*In re GEICO*,
2023 WL 5524105 (E.D.N.Y. Aug. 28, 2023).................................................29

*Glinsky v. Bongalis-Royer*,
2015 WL 6755361 (S.D. Cal. Nov. 3, 2015).....................................................13

*Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma,
S.A.*,
972 F.3d 1101 (9th Cir. 2020)............................................................................7

*Grubbs v. Gen. Elec. Credit Corp.*,
405 U.S. 699 (1972)............................................................................................5

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003)....................................................................13, 21

*Heller v. NBCUniversal, Inc.*,
2016 WL 6573985 (C.D. Cal. Mar. 30, 2016).................................................19

*Henry v. Superior Court*,
160 Cal. App. 4th 440 (2008).........................................................................29

*Hernandez v. Jensen*,
61 Cal. App. 5th 1056 (2021)..........................................................................22

*Hernandez v. Mimi's Rock Corp.*,
632 F. Supp. 3d 1052 (N.D. Cal. 2022)..........................................................14

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*,
2016 WL 2897520 (N.D. Ga. May 18, 2016)..................................................34

*Honeycutt v. United States*,
581 U.S. 443 (2017)..........................................................................................18

*Horton v. Neostrata Co.*,
2016 WL 11622008 (S.D. Cal. Nov. 22, 2016) ...............................................19

*Huynh v. Quora, Inc*
508 F. Supp. 3d 633 (N.D. Cal. 2020).......................................................29, 30

*Jordan v. Paul Fin., LLC*,
   745 F. Supp. 2d 1084 (N.D. Cal. 2010).................................................................38

*Kearns* v. *Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009).................................................................39

*Lebeau v. StarNet Ins. Co.*,
   2023 WL 5095306 (D. Ariz. Aug. 9, 2023)...............................................34

*Lev v. Beverly Enters.-Mass., Inc.*,
   929 N.E.2d 303 (Mass. 2010) .................................................................31

*Linlor v. JPMorgan Chase & Co.*,
   2017 WL 3446814 (S.D. Cal. Aug 9, 2017).............................................6, 8, 12

*Lugtu v. California Highway Patrol*,
   26 Cal. 4th 703 (Cal. 2001).................................................................29

*Mackay v. Uinta Dev. Co.*,
   229 U.S. 173 (1913).................................................................5

*Malloy v. Fong*,
   232 P.2d 241 (Cal. 1951) .................................................................14

*Marcelos v. Dominguez*,
   2008 WL 2788173 (N.D. Cal. July 18, 2008)...........................................41

*Marino v. Nery's USA, Inc.*,
   2015 WL 12533063 (S.D. Cal. Feb. 25, 2015) .........................................6, 11

*Moore v. Apple, Inc.*,
   73 F. Supp. 3d 1191 (N.D. Cal. 2014).....................................................37

*Moser v. Lifewatch Inc.*,
   2020 WL 1849664 (S.D. Cal. Apr. 13, 2020)...........................................11

*In re MOVEit Customer Data Sec. Breach Litig.*,
   2025 WL 2179475 (D. Mass. July 31, 2025).............................................36

*Navarrete v. Meyer*,
   237 Cal. App. 4th 1276 (2015).................................................................40

*Navarro* v. *Ski Data*,
   2022 WL 18280359 (C.D. Cal. Dec.7, 2022) ............................................25, 26, 28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

*NJOY, LLC v. Imiracle (HK) Ltd.*,
   760 F. Supp. 3d 1084 (S.D. Cal. 2024) ......................................................................40

*Nordisk v. Goglia Nutrition, LLC*,
   2025 WL 2591944 (S.D. Cal. Sep. 8, 2025).................................................................19

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
   626 F.3d 1222 (Fed. Cir. 2010) ....................................................................................5

*Osborne v. German*,
   2012 WL 1004736 (N.D. Ohio Mar. 23, 2012) ............................................................8

*Pac. Can Co. v. Hewes*,
   95 F.2d 42 (9th Cir. 1938)...........................................................................................14

*In re Packaged Seafood Prods. Antitrust Litig.*,
   2022 WL 836951 (S.D. Cal. Mar. 21, 2022) ..........................................................21, 22

*In re Philips Recalled CPAP, Bi-Level Pap, & Mech. Ventilator Prods.*
   *Litig.*, 781 F. Supp. 3d 353 (W.D. Pa. 2025) ...............................................................5

*Plascencia v. Lending 1st Mortg.*,
   583 F. Supp. 2d 1090 (N.D. Cal. 2008).......................................................................38

*In re PowerSch. Holdings, Inc.*,
   780 F. Supp. 3d 1352 (J.P.M.L. 2025) ........................................................................13

*R.C. v. Sussex Publrs., LLC*,
   2025 WL 948060 (N.D. Cal. Mar. 28, 2025)...............................................................37

*Rachfort v. EF Institute for Cultural Exchange, Inc.*,
   2020 WL 12833951 (S.D. Cal. Sept. 8, 2020).............................................................10

*Randall v. Mich. High Sch. Athletic Ass'n*,
   965 N.W.2d 690 (Mich. Ct. App. 2020).......................................................................31

*Regents of the Univ. of California v. Aisen*,
   2016 WL 4096078 (S.D. Cal. Apr. 22, 2016)..............................................................26

*Rejoice! Coffee Co., LLC v. Hartford Fin. Servs. Group*,
   2021 WL 5879118 (N.D. Cal. Dec. 9, 2021)..........................................................32, 33

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015).......................................................................................18

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,
 768 F.3d 938 (9th Cir. 2014).................................................................4

*Reyes v. Nationstar Mortg. LLC*,
 2015 WL 4554377 (N.D. Cal. July 28, 2015)...................................33

*Reynolds v. Binance Holdings Ltd.*,
 481 F. Supp. 3d 997 (N.D. Cal. 2020)...............................................13

*Rio Props., Inc. v. Rio Int'l Interlink*,
 284 F.3d 1007 (9th Cir. 2002)..............................................................5

*Ross v. AT&T Mobility, LLC*,
 2020 WL 9848766 (N.D. Cal. May 14, 2020)....................................35

*Schmitt v. SN Serv. Corp.*,
 2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) .....................................28

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004)..............................................................11

*Sonora Diamond Corp. v. Superior Ct.*,
 99 Cal. Rptr. 2d 824 (Cal. App. 4th. 2000).......................................17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
 996 F. Supp. 2d 942 (S.D. Cal. 2014) ..........................................25, 26

*In re Star & Crescent Boat Co.*,
 549 F. Supp. 3d 1145 (S.D. Cal. 2021) ...........................................9, 10

*Stasi v. Inmediata Health Grp. Corp.*,
 501 F. Supp. 3d 898 (S.D. Cal. 2020) ...........................................24, 27

*In re Stillwater Cap. Partners Inc. Litig.*,
 851 F. Supp. 2d 556 (S.D.N.Y. 2012) ..................................................7

*Stollenwerk v. Tri-W. Health Care Alliance*,
 254 F. App'x 644 (9th Cir. 2007)........................................................29

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
 622 F. Supp. 2d 890 (N.D. Cal. 2009)...........................................14, 15

*Svenson v. Google Inc.*,
 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015).......................................38

ix    No. 3:25-md-3149-BEN-MSB

*In re Takata Airbag Prods Liab. Litig.*,
   379 F. Supp. 3d 1333 (S.D. Fla. 2019) ..................................................................5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   270 F.R.D. 535 (N.D. Cal. 2010) .........................................................................5

*Ting v. United States*,
   927 F.2d 1504 (9th Cir. 1991) ............................................................................22

*Tinoco v. San Diego Gas & Elec. Co.*,
   2018 WL 4562479 (S.D. Cal. Sep. 21, 2018) ......................................................31

*Tokio Marine & Nichido Fire Ins. Co. Ltd. v. Precision Trucking*,
   2009 WL 10672495 (S.D. Cal. Oct 16, 2009)* .....................................................6

*In re Uber Techs., Inc.*,
   734 F. Supp. 3d 934 (N.D. Cal. 2024) .................................................................4

*United States v. Bestfoods*,
   524 U.S. 51 (1998) .........................................................................................20, 21

*United States v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) ..............................................................................39

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ...............................................................................8

*Vavak* v. *Abbott Lab'ys, Inc.*,
   2011 WL 13130493 (C.D. Cal. Mar. 7, 2011) .....................................................30

*Velazquez v. GMAC Mortg. Corp.*,
   605 F. Supp. 2d 1049 (C.D. Cal. 2008) ..............................................................39

*W. Ins. Co. v. Frontier Homes, LLC*,
   2018 WL 8220544 (C.D. Cal. Mar. 27, 2018) ..................................................3, 17

*Walsh v. LG Chem Ltd.*,
   834 F. App'x 310 (9th Cir. 2020) ........................................................................11

*Wash. Rsch. Found. v. Sanofi*,
   2016 WL 11261498 (W.D. Wash. Aug. 5, 2016) ..................................................9

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ............................................................................10

x                              No. 3:25-md-3149-BEN-MSB

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

*Wolf Designs, Inc. v. DHR & Co.*,
   322 F. Supp. 2d 1065 (C.D. Cal. 2004) ...................................................................22

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
   313 F. Supp. 3d 1113 (N.D. Cal. 2018)..................................................... 30, 34, 37

*Zands v. Nelson*,
   797 F. Supp. 805 (S.D. Cal. 1992) ........................................................................18

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
   601 F. Supp. 3d 625 (C.D. Cal. 2022) ...................................................................10

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
   525 F. Supp. 3d 1017 (N.D. Cal. 2021)..................................................................39

**Statutes**

28 U.S.C. § 2201(a) .......................................................................................................33

Cal. Bus. & Prof. Code § 17200, *et seq*..........................................................................37

Cal. Civ. Code § 1798.81.5 ............................................................................................39

Cal. Civ. Code § 1798.140(d) ........................................................................................37

**Other Authorities**

Fed. R. Civ. P. 1...............................................................................................................6

Fed. R. Civ. P. 4(d)(1)......................................................................................................5

Fed. R. Civ. P. 57............................................................................................................34

Fed. R. Civ. 9(b) .......................................................................................................39, 40

Restatement (Second) of Torts § 302 cmt. a (1965) ......................................................25

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

## I.    FACTUAL BACKGROUND

### A. Bain's Merger With PowerSchool

As early as August 2022, Bain – a massive private investment firm - initiated merger discussions with PowerSchool – a company that provides cloud-based software for the K-12 education market and secured its access to PowerSchool's highly sensitive business information, including its cybersecurity and IT strategy. MC ¶¶ 14, 71, 74–84. From that point on, Bain used this access to exercise effective control of PowerSchool, including implementing cost-cutting measures like offshoring cybersecurity functions, which was consistent with Bain's business operations model when it merged with other companies like PowerSchool. *Id.* ¶¶ 72–74, 78–80, 84. By June 6, 2024, even before Bain's merger with PowerSchool formally closed, Bain Capital locked in contractual veto power over PowerSchool's core operations, allowing it to formally dictate and block capital expenditures. *Id.* ¶¶ 85–86. By then, Bain was fully aware that data security was a material, important aspect of PowerSchool's business and included data protection assurances and obligations within the merger agreement, which it required PowerSchool to confirm and adhere to. *Id.* ¶¶ 96–98. Despite recognizing the importance of data security, Bain failed to properly assess the risks of potential data breaches associated with PowerSchool's offshore expansion and failed to mitigate such risks by designing and implementing adequate systems and procedures to prevent hackers from infiltrating PowerSchool's systems. *Id.* ¶¶ 99–100. By August 2024, Bain was overseeing all major operational decisions at PowerSchool, including dictating workforce reductions. *Id.* ¶ 103. After Bain and PowerSchool signed their merger agreement, PowerSchool—at the direction of Bain and consistent with its operational strategy of cost-reduction through offshoring—shifted more operations overseas, including cybersecurity, engineering, and IT functions, to lower-cost inexperienced offshore contractors, such as Movate. *Id.* ¶¶ 79, 80, 106, 108, 110, 163. Bain's decisions to implement significant cost-cutting measures, including offshoring IT and cyber-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

security, contributed directly to the weakened security posture that enabled the data breach. *Id.* ¶¶ 101–08.

Upon merger on October 1, 2024, Bain immediately replaced PowerSchool's board and directed massive layoffs of experienced labor in the United States across PowerSchool's line of business, which further weakened PowerSchool's data security and integrity. ¶¶ 80, 91–92, 110–13. In exercising day-to-day control over PowerSchool's operations, Bain prioritized drastic expense reductions, stripping PowerSchool's assets and security to service Bain's debt from the investment. *Id.* ¶¶ 109–12. Bain's outsourcing necessitated the use of export data management tools that allowed PowerSchool's offshore vendors and contractors, such as Movate, to bypass consent protocols and directly access school districts' protected computers, all of which enabled ShinyHunters - a notorious criminal hacker and extortion group - to steal Plaintiffs and class members' Private Information. MC ¶¶ 197, 201, 998. By directing layoffs, outsourcing labor, and in turn, authorizing offshore staff to have unfettered access to all student and teacher data contained in PowerSchool's systems, Bain stripped PowerSchool of the ability to detect and prevent data breaches. MC ¶¶ 15–21, 99–100, 102–12, 114–15, 120–21, 197, 998.

As a result of Bain's day-to-day operations and aggressive cost-cutting measures, Plaintiffs' and over 70 million class members' Private Information—including social security numbers, medical information, financial information, dates of birth, email and physical addresses, learning disabilities and Individualized Education Program records, and child custody information—were stolen by ShinyHunters in December 2024 in the largest breach in the history of the educational sector. MC ¶¶ 1–2, 10, 122–23, 143, 197, 998.

**B. Meet and Confers Concerning Bain Motion to Dismiss**

On September 2, 2025, following a meet-and-confer, Plaintiffs confirmed at Bain's request the following direct liability claims Plaintiffs were pursuing against Bain in the MC: Count I – Negligence (to incorporate allegations based on negligence

per se); Count III – Unjust enrichment; Count VI – Declaratory Judgment and Injunctive Relief; Count IX – Negligent Training and Supervision; Count XIII – Violation of California Consumer Privacy Act; Count XVI – Violation of the California Unfair Competition Law; and Count XVII – Aiding and Abetting. MTD Ex. C.

On October 7, 2025, as part of the meet-and-confer process directed by the Court in Case Management Order No. 6, Plaintiffs advised counsel that, to cure the purported jurisdictional defect identified by Bain, Plaintiffs would file a short-form complaint designating the Southern District of California as the forum jurisdiction on behalf of the 51 Plaintiffs consistent with the Court's Direct Filing Order. At Bain's request, Plaintiffs shared a draft of the short-form complaint with Bain for review and consideration prior to filing. The Parties agreed that the filing mooted Bain's contest to subject matter jurisdiction before the Court.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly,* 550 U.S. at 556 (2007). "If [the plaintiff 's] explanation is plausible, [the] complaint survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation." *Iqbal*, 556 U.S. at 678. Thus, "'[a] Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not . . . resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses.'" *W. Ins. Co. v. Frontier Homes, LLC*, 2018 WL 8220544, at *2 (C.D. Cal. Mar. 27, 2018) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)). In considering a motion to dismiss under Rule 12(b)(6), a court "must accept as true all factual allegations in the complaint and draw

all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

It is Plaintiffs' position that a choice of law determination is premature at this stage because it is a "fact-intensive exercise better suited for later stages of litigation when the parties may present evidence on the issue." *In re Accellion, Inc. Data Breach Litig.*, 2024 WL 4592367, at *2 (N.D. Cal. Oct. 28, 2024). For the purposes of responding to Bain's Motion, however, which relies on California and Ninth Circuit case law, Plaintiffs will also apply California law in response to Bain's common law claims arguments.

## III.   ARGUMENT

### A. This Court Has Subject-Matter Jurisdiction, and Bain's Argument to the Contrary Is Moot

Bain urges the Court to dismiss 51 plaintiffs from this MDL because, as of the time of the filing of the Consolidated Complaint, they had not initiated a separate action that was subject to the JPML's transfer order. Bain's argument, which places form over substance, is moot.

As Bain admits, this Court—as the transferee court in this MDL—can acquire jurisdiction not only through a JPML transfer but also over "tag-along actions filed directly" pursuant to the "Direct Filing Order" (ECF No. 269). *See* MTD at 12–13. On October 10, 2025, the referenced 51 plaintiffs completed their compliance with the Court's Direct Filing Order by submitting a short-form complaint that indicated a "Designated Forum" (the "home," transferor forum) in the Eastern District of California, curing any purported jurisdictional defect and mooting Bain's jurisdictional challenge.[1] *See* Plaintiffs' Short Form Complaint (filed October 10, 2025); *see also, e.g., In re Uber Techs., Inc.*, 734 F. Supp. 3d 934, 940 & n.2 (N.D. Cal. 2024) (recognizing the direct-filing procedure Plaintiffs used here as appropriate

---

[1] For the same reasons, the Court should reject PowerSchool's request for dismissal on jurisdictional grounds. *See* PowerSchool's MTD at 5–6 n.2.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)

for the exercise of the court's jurisdiction). Transferee courts have consistently recognized their authority to "exercise subject-matter jurisdiction over" direct-filed cases as contemplated by this Court's Direct Filing Order.[2]

In a footnote (MTD at 14 n.13), Bain also requests dismissal under Rule 12(b)(5) for improper service of process. The Court should also reject this half-hearted request because, as provided in paragraph II. G. of Case Management Order No. 5 and required under Rule 4, defendants waive service of process upon the filing of a short-form complaint, which was filed by Plaintiffs on October 10, 2025. ECF No. 269 at 3; Fed. R. Civ. P. 4(d)(1) (imposing "a duty to avoid unnecessary expenses of serving the summons"). Moreover, "[d]ismissal is not appropriate when there is a reasonable prospect that service may yet be obtained.'" *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1240 (Fed. Cir. 2010). Bain has had sufficient actual notice of an MDL proceeding since the filing of *Flick v. PowerSchool Holdings, Inc.*, 2:25-cv-00232 (E.D. Cal.), on April 18, 2025 (an action Bain acknowledges directly and originally named Bain as a Defendant, *see* MTD at 15), which followed the JPML's Transfer Order in this Action, dated April 11, 2025. Further, the Court has broad discretion to authorize alternative means of service.[3] Just like its Rule 12(b)(1) request, Bain's Rule 12(b)(5) request exalts form over substance

[2] *In re Philips Recalled CPAP, Bi-Level Pap, & Mech. Ventilator Prods. Litig.*, 781 F. Supp. 3d 353, 370 (W.D. Pa. 2025); *see also*, *e.g.*, *In re Takata Airbag Prods Liab. Litig.*, 379 F. Supp. 3d 1333, 1338 (S.D. Fla. 2019) (denying dismissal on "direct-filing grounds"); *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 705–06 (1972) (holding that subject-matter jurisdiction was proper at the time of judgment, even though the initial removal to federal court was unauthorized); *Mackay v. Uinta Dev. Co.*, 229 U.S. 173, 176–77 (1913) ("[I]rregularity in docketing the case or in the order of the pleadings . . . [does not] deprive [the court] of the power to determine the cause.").

[3] *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 270 F.R.D. 535, 538 (N.D. Cal. 2010); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) ("[W]e commit to the sound discretion of the district court the task of determining when . . . a given case requires alternative service of process.").

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)

and should be rejected because it violates Rule 1's policy for "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

### B. This Court has Personal Jurisdiction Over Bain

This Court has personal jurisdiction over Bain because (1) Bain purposefully directed its activities in California, thereby availing itself of the protections of California laws; (2) Bain's activities in California gave rise to Plaintiffs' claims; and (3) this Court's exercise of jurisdiction over Bain comports with due process. *See Linlor v. JPMorgan Chase & Co.*, 2017 WL 3446814, at *4 (S.D. Cal. Aug 9, 2017) (Benitez, J.) (exercising jurisdiction based on defendant's "forum-related conduct," including directing telephonic and email communications to a California resident).[4] Plaintiffs' allegations are replete with examples of how Bain purposefully availed itself of California's laws by acquiring and exercising dominion and control over PowerSchool and how Bain's California actions gave rise to Plaintiffs' claims. *See, e.g.*, MC ¶¶ 71–85, 90–95, 102–15. As the Court has previously observed, "[w]here jurisdictional facts are in dispute, such as those here, uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Tokio Marine & Nichido Fire Ins. Co. Ltd. v. Precision Trucking,* 2009 WL 10672495, at *3 (S.D. Cal. Oct 16, 2009*)* (Benitez, J.) (cleaned up).

Courts in the Ninth Circuit consider three factors to determine whether to

---

[4] *See also*, *e.g.*, *Marino v. Nery's USA, Inc.,* 2015 WL 12533063, at *1 (S.D. Cal. Feb. 25, 2015) (Benitez, J.) (noting this Court's earlier ruling that "[p]laintiffs are domiciled in California and that [d]efendants are domiciled in Nevada, this Court concluded that it has subject matter jurisdiction"); *Tokio,* 2009 WL 10672495, at *3 (S.D. Cal. Oct 16, 2009*)* (Benitez, J.) (finding jurisdiction appropriate in California even the loss occurred in Texas because the alleged acts and omissions leading to the loss occurred in California); *Fireman's Fund Ins. Co. v. Greenberg,* 2008 WL 2262423, at *5 (S.D. Cal. Feb 25, 2008) (Benitez, J.) (exercising jurisdiction over defendant based on his purpose of real property in California).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

exercise specific personal jurisdiction over a defendant:

> (1) whether [the defendant] has either purposefully (a) directed its activities towards California or initiated a transaction with a California resident or (b) availed itself of the privileges and benefits of California permitting it to benefit from the protections of California laws; (2) whether [plaintiff's] claims arise out of [defendant's] activities related to California; and (3) whether the assertion of jurisdiction by the Southern District of California is reasonable and comports with fair play and substantial justice.

*Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). Plaintiffs' allegations satisfy each of these factors.

**1. Bain Purposefully Availed Itself of California's Laws and Directs Its Activities Toward California**

Plaintiffs allege that Bain approached PowerSchool – headquartered in California - about a business merger in August 2022. *See* MC ¶ 14. After a two-year negotiation process, Bain entered into an agreement to acquire PowerSchool in June 2024. *Id*. ¶¶ 71–85. Both during the merger negotiation process and upon acquisition, Bain exercised control over PowerSchool and, thereby, directed its activities toward California. *See id*. ¶¶ 38, 71–85, 90–95, 102–15. Via its control over PowerSchool, including directing the offshoring of IT personnel and data security functions, Bain's actions and failures to act gave rise to the Data Breach and Plaintiffs' injuries. *Id*. ¶¶ 95–115. Further, "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 (2014).

Plaintiffs' allegations more than satisfy the purposeful availment prong. Courts across the country have consistently held that merger negotiations directed to a forum state satisfy the purposeful availment prong.[5] In *China National Chemical*

---

[5] *See, e.g., In re Stillwater Cap. Partners Inc. Litig.*, 851 F. Supp. 2d 556, 571 (S.D.N.Y. 2012) (finding that defendant's activities in negotiating a merger in the

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)

*Construction Chongqing Co. v. Seedling*, for example, the District of Oregon found that a defendant's attendance at one in-person meeting in the forum state, combined with "other communications by emails, faxes and letters," constituted purposeful availment. 2006 WL 8449845, at *5 (D. Or. Jan. 3, 2006).

Here, Plaintiffs allege that Bain directed its activities towards California by negotiating a merger with PowerSchool, a California-based company. *See*, *e.g.*, MC ¶¶ 14, 71–85. Bain approached PowerSchool by initiating contacts with PowerSchool's management in August 2022. *See id*. ¶ 14. Bain and PowerSchool's merger negotiations ratcheted up in early 2024. *See* ¶ 71 & n.38 (citing PowerSchool's July 23, 2024 preliminary proxy statement).[6] Bain's and PowerSchool's merger negotiations continued for four months, culminating with the June 6, 2024, execution of the Merger Agreement. *See id.* ¶ 85. As described in detail in the "Background of the Merger" section in PowerSchool's preliminary proxy statement,[7] the merger negotiations involved multiple meetings and communications, at least some of which took place in California. *See id.* ¶¶ 71–85. The merger negotiations alone thus satisfy the purposeful availment prong. *See, e.g.*, *Linlor*, 2017 WL 3446814, at *4 (finding purposeful availment based on defendant's directing telephone calls and other communications to California).

Though the merger negotiations in California independently establish this

forum constituted sufficient contacts for personal jurisdiction); *Osborne v. German,* 2012 WL 1004736, at *4 (N.D. Ohio Mar. 23, 2012) ("Mere [merger] negotiations may subject a non-resident to personal jurisdiction if the provisions of the negotiated agreement would have affected" the forum state.); *Am. Bank Holdings, Inc. v. Grange Mut. Cas. Co.*, 2010 WL 2302356, at *5 (D. Md. Jun. 7, 2010) (same); *G & G LLC v. White*, 535 F. Supp. 2d 452, 462 (D. Del. 2008) (same).

[6] *Available at* https://www.sec.gov/Archives/edgar/data/1835681/000119312524182 995/d836904dprem14c.htm (last visited Oct. 3, 2025). The contents of PowerSchool's preliminary proxy statement (referenced in paragraphs 14, 71 of the Complaint) are incorporated by reference into the Complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[7] *See id*. (PowerSchool's preliminary proxy statement) at 21–45.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)

Court's personal jurisdiction over Bain, Plaintiffs further allege that Bain directed activities to California by exerting control over PowerSchool's operations both during and after the merger negotiations. *See* MC ¶¶ 38, 71–85, 90–95, 102–15. For example, Plaintiffs allege that, in January 2024, Bain directed PowerSchool to expand its outsourcing to India and implement its business model of cost-cutting on PowerSchool's cybersecurity staff, including directing layoffs as part of its offshore expansion. *Id*. ¶¶ 73, 81, 101–08. Then, in October 2024, immediately after the closing of the merger, Bain replaced PowerSchool's entire board of directors with its own trusted operators. *Id*. ¶ 91. Throughout this significant overhaul, Bain failed to properly assess the risks of potential data breaches associated with the offshore expansion it was directing. *Id*. ¶ 99. Plaintiffs allege that it was Bain's control over PowerSchool's operations that led to the Data Breach and Plaintiffs' injuries. *See*, *e.g.*, *id*. ¶¶ 89–115.

As the Supreme Court held in *Daimler*, "a corporation can purposefully avail itself of a forum by directing its agents . . . to take action there." 571 U.S. at 135 n.13. That is precisely what Plaintiffs have alleged here, and those allegations demonstrate that Bain has conducted forum-related activities sufficient to constitute purposeful availment. *See Berven v. LG Chem, Ltd.*, 2019 WL 1746083, at *10–13 (E.D. Cal. Apr. 18, 2019) (applying the stream of commerce test to exercise jurisdiction over a foreign parent company based on its control over its subsidiaries' California activities).[8]

Bain's arguments to the contrary rely on inapposite cases. For example, *In re Star & Crescent Boat Co.* is distinguishable because there, the underlying contract was negotiated outside of California and the defendant's scant California activities

---

[8] *See also*, *e.g.*, *Wash. Rsch. Found. v. Sanofi*, 2016 WL 11261498, at *7–8 (W.D. Wash. Aug. 5, 2016) (applying the stream of commerce theory to exercise jurisdiction over a foreign parent company based on allegations that it directed its subsidiaries to conduct business in the forum state).

9                                                    No. 3:25-md-3149-BEN-MSB

were unrelated to the underlying injuries alleged. 549 F. Supp. 3d 1145, 1162–64 (S.D. Cal. 2021) (Benitez, J.). Here, conversely, Plaintiffs have alleged that Bain both conducted merger negotiations and exerted control over PowerSchool in California. *See, e.g.,* MC ¶¶ 38, 71–85, 90–95, 102–15. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017), is likewise distinguishable because, unlike the plaintiff in *Williams*, Plaintiffs here allege Bain's *own* California-related activities and do not rely solely on PowerSchool's activities to establish jurisdiction over Bain. *See id.*; MC ¶¶ 71-116. Finally, Bain's reliance on *Rachfort v. EF Institute for Cultural Exchange, Inc.*, 2020 WL 12833951 (S.D. Cal. Sept. 8, 2020) is misplaced because, unlike there, Plaintiffs' allegations are fact-specific and particularized. *See, e.g.*, MC ¶¶ 73, 81, 91. Bain's contest to personal jurisdiction lacks legal support and should be rejected.

### 2. Plaintiffs' Claims Against Bain Arise Out of Its California Activities

To determine whether the cause of action arises out of "forum-related activities," courts in the Ninth Circuit look to whether the claim would have arisen "but for" the forum contacts. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Under this test, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction." *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1078 (10th Cir. 2008) (citing *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003)).[9]

Here, Plaintiffs allege that Bain exerted control over California-based PowerSchool at least throughout 2024 by, among other things, conducting merger negotiations and directing PowerSchool's operations, including its layoffs of IT and

---

[9] *See also, e.g.*, *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 702 (C.D. Cal. 2022) ("'[C]ourts must give real consideration to claims that "relate to" the defendant's forum contacts,' even if those contacts are not the 'but for' cause of the dispute.").

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)

data security personnel and outsourcing expansion. *See* MC ¶¶ 38, 71–85, 90–95, 102–15. Plaintiffs further allege that Bain's failure to assess the risks associated with PowerSchool's offshore expansion and layoffs of IT and data security personnel weakened PowerSchool's data-security and led to the Data Breach and Plaintiffs' injuries. *See id.* ¶¶ 99, 107–15. Plaintiffs' allegations amply demonstrate that Bain's merger negotiations and subsequent ownership and control of PowerSchool are the "but for" cause of Plaintiffs' injuries.

Bain's arguments are premised on reliance on inapposite cases. For example, in *Walsh v. LG Chem Ltd.*, 834 F. App'x 310 (9th Cir. 2020), a product-liability case, the plaintiff alleged only that defendant marketed the underlying product in the United States in general, not specifically in the forum state. *Id*. at 311. The court thus declined to exercise jurisdiction, reasoning that the plaintiff made no showing of "a direct nexus between his injuries and [defendant's] purported [forum] contacts." *Id*. at 312. Here, in contrast, Plaintiffs demonstrate that Bain's California-based activities— merger negotiations and directing PowerSchool's operations—caused the Data Breach and Plaintiffs' injuries. *See*, *e.g.*, MC ¶¶ 90–95, 102–15. *Moser v. Lifewatch Inc.*, 2020 WL 1849664 (S.D. Cal. Apr. 13, 2020) is inapposite for the same reason— because Plaintiffs' allegations here, unlike those of the plaintiff there, are specific and particularized. *See*, *e.g.*, MC ¶¶ 73, 91, 107. Thus, neither *Walsh* nor *Moser* supports Bain's argument against this Court's exercise of jurisdiction over it.

### 3. Exercising Jurisdiction over Bain Comports with Due Process

As this Court held in *Marino*, "[o]nce purposeful availment and relatedness have been established, the forum's exercise of jurisdiction is presumptively reasonable." 2015 WL 12533063, at *15 (cleaned up). The same presumption applies here: Bain bears the burden of "present[ing] a compelling case that the exercise of jurisdiction would not be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (cleaned up). Bain cannot carry this burden.

To show that the Court's exercise of jurisdiction would be unreasonable, Bain

must demonstrate that consideration of the following seven factors offends "fair play and substantial justice":

- the extent of Bain's purposeful interjection into California;
- the burden on Bain in defending in the California;
- the extent of conflict with the sovereignty of the state of Bain's principal place of business — Massachusetts;
- California's interest in adjudicating the dispute;
- the most efficient judicial resolution of the controversy;
- the importance of the forum to the Plaintiffs' interest in convenient and effective relief; and
- the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993).

Bain cannot demonstrate that any of these factors offend fair play. As discussed above, Bain's purposeful injection into California is extensive and compels a finding that the Court's exercise of jurisdiction over Bain is eminently reasonable.

Bain ignores Plaintiffs' allegations because it cannot show that its burden of litigating in California is "'so onerous or severe as to overcome' its forum contacts[,]" *see Cascade Fund, LLLP v. Absolute Cap. Mgmt. Holdings Ltd.*, 707 F. Supp. 2d 1130, 1142 (D. Colo. 2010), instead asserting in a single sentence with no citation to any supporting facts or law that burden of defending this action in California is "high." MTD at 19. This conclusory assertion falls far short of Bain's burden to present a "compelling case" against the Court's exercise of jurisdiction.

Bain also fails to demonstrate how litigating in California would conflict with the sovereignty of Massachusetts, while California's interest in this litigation is evident because PowerSchool is based here and many victims of the Data Breach, including California Plaintiffs, reside here. *See Linlor*, 2017 WL 3446814, at *4 (recognizing that "California has a strong interest in ensuring that its residents' credit disputes are serviced properly"). Further, that the JPML panel consolidated this MDL

12                           No. 3:25-md-3149-BEN-MSB

in this District conclusively establishes that litigating in California is the most efficient and convenient forum to all parties — despite the availability of alternative forums. *See In re PowerSch. Holdings, Inc.*, 780 F. Supp. 3d 1352, 1352 (J.P.M.L. 2025) ("Centralization in [the Southern District of California] encourages the efficient coordination of state and federal proceedings.").

All told, consideration of these factors weighs heavily in favor of the Court exercising jurisdiction over Bain, and Bain has not—because it cannot—satisfied its burden of presenting a "compelling case" that the Court's exercise of jurisdiction over it would be unreasonable.

Should the Court find Plaintiffs' jurisdictional allegations insufficient at this time, Plaintiffs request the opportunity for limited discovery, particularly concerning the locus of merger negotiations, which will show additional facts demonstrating that Bain's activities in California are "sufficient to constitute a basis for jurisdiction." *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (reversing denial of request for jurisdictional discovery); *see also Glinsky v. Bongalis-Royer*, 2015 WL 6755361, at *3 (S.D. Cal. Nov. 3, 2015) (Benitez, J.) (following *Harris Rutsky* and granting plaintiff's request to conduct jurisdictional discovery).[10]

### C. Plaintiffs Adequately Plead an Agency Relationship Between Bain and PowerSchool

---

[10] On this point, Bain's reliance on *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997 (N.D. Cal. 2020) is misplaced. Plaintiff in *Reynolds* sought jurisdictional discovery to establish general jurisdiction over a corporate parent based on a subsidiary's activities through an alter-ego theory. *See id.* at 1004–05. But plaintiff alleged no facts to show how jurisdictional discovery would uncover facts to support his alter-ego allegations. *Id.* at 1010 ("plaintiff's request for discovery is based on 'little more than a hunch that it might yield jurisdictionally relevant facts"). Here, in contrast, Plaintiffs have alleged facts showing that Bain directed its activities to control PowerSchool's operations (*e.g.*, MC ¶¶ 73, 91, 93, 101). These allegations are far more than a "hunch."

13    No. 3:25-md-3149-BEN-MSB

"Where one corporation is controlled by another, the former acts not for itself but as directed by the latter, the same as an agent, and the principal is liable for the acts of its agent within the scope of the agent's authority." *Pac. Can Co. v. Hewes*, 95 F.2d 42, 46 (9th Cir. 1938). An agency relationship is created by "(1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking."[11] *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009). In analyzing agency, "the question is . . . whether the degree of control exerted over the subsidiary by the parent is enough to reasonably deem the subsidiary an agent of the parent under traditional agency principles." *Agricola Baja Best, S. De. R.L. de C.V. v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 982 (S.D. Cal. 2014) (citing *Sonora Diamond Corp. v. Superior Ct.*, 99 Cal. Rptr. 2d 824 (Cal. App. 4th. 2000)).

Courts in the Ninth Circuit have found an agency relationship exists if a principal has control over "key aspects" of an agent's activities giving rise to the claims in a particular case.[12] The inquiry into the existence of an agency relationship is fact-intensive and, as a result, inappropriate for pre-discovery determination.[13]

---

[11] This test has taken various forms over the years, but the Ninth Circuit has recently emphasized that this traditional test applies. *Hernandez v. Mimi's Rock Corp.*, 632 F. Supp. 3d 1052, 1060 (N.D. Cal. 2022) (collecting cases).

[12] *See, e.g., A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 940 (D. Or. 2020) (holding that hotels were agents of holding company because holding company dictated major decisions); *Malloy v. Fong*, 232 P.2d 241, 248 (Cal. 1951) (holding that church administrative body could be liable for church because of church administrative body's power to determine where church would expand, approve or disapprove of hiring decisions, and contribute to expenses).

[13] *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406 (9th Cir. 1994) (remanding for "additional findings" on agency because "[v]ery little discovery had been accomplished" prior to motions to dismiss); *cf. Sun Microsystems*, 622 F. Supp. 2d at 899 (ruling on agency relationship at summary judgment stage); *Pac. Can Co.*, 95 F.2d at 46 (affirming that agency question should go to jury whenever there is conflicting evidence).

Because agency is based on control rather than overlapping corporate identities, Plaintiffs need not plead "comingled funds or assets, shared offices or employees, shared directors or officers, or that Bain diverted any funds away from PowerSchool, all of which are typical indicia of the day-to-day control required for alter ego liability" (MTD at 26) to establish an agency relationship here. *See Agricola Baja Best*, 44 F. Supp. 3d at 982 (explaining differences between alter ego and agency). While Bain fully incorporates its arguments related to Plaintiffs' since-dismissed alter-ego theory in arguing against Plaintiffs' agency theory (*see* MTD at 32), many of these arguments simply do not apply. All Plaintiffs must do is allege facts suggesting that Bain has controlled PowerSchool as its agent. As detailed below, Plaintiffs have done so here.

**1. PowerSchool is Bain's Agent Because PowerSchool Has Acted at Bain's Direction**

Plaintiffs' allegations detail the many ways Bain has exercised agency control over PowerSchool both before and after it formally acquired an ownership interest in PowerSchool. For example, Bain "ratified and conditioned its offer on cost reduction measures consistent with its acquisition strategy" throughout its negotiations with PowerSchool and PowerSchool assented to Bain's control conditions by agreeing to engage in exactly the cost reduction measures Bain required for acquisition. *See, e.g.,* MC ¶¶ 73, 80, 90; *Sun Microsystems Inc.*, 622 F. Supp. 2d at 899 (requiring agreement between principal and agent).

From there, Bain's control over PowerSchool grew greater when it obtained the explicit, legal right to "***strategic control over PowerSchool's key decisions***" including control over key operational, cybersecurity, and financial decisions at PowerSchool, as spelled out in the Merger Agreement. MC ¶¶ 73, 90, 103-08 (emphasis added); *see also Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d at 940 (finding agency where principal had control over "key aspects" of agent's business). Among other key strategic decisions that Bain directed were PowerSchool's mass

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)

layoffs of IT and cybersecurity personnel in in March and August 2024 and the offshoring of those positions in June and July 2024. MC ¶¶ 73, 90, 103–08. Plaintiffs allege that these decisions driven by Bain led to the Data Breach and Plaintiffs' and class members' injuries. *See id.* ¶¶ 116–20.

Upon completion of the merger, Bain's control of PowerSchool increased further. *Id.* ¶¶ 91–95, 109–15. Bain immediately replaced the entire PowerSchool board and assumed full responsibility for key decisions related to operations, cybersecurity, and finances. *Id.* In sum, Bain went beyond the level of control and general supervision expected from a corporate parent. Instead, it directed PowerSchool to take specific actions that led to harm to the Class, thus establishing that Bain is vicariously liable as PowerSchool's principal.

### 2. Bain's Arguments Against an Agency Relationship Ignore Plaintiffs' Well-Pled Allegations

Bain is wrong that the "Complaint does not allege specifically how Bain directed (or could have directed) PowerSchool to make these announcements, projections, or personnel decisions." MTD at 27. Plaintiffs specifically allege that Bain would not submit an offer to acquire PowerSchool unless PowerSchool agreed to make decisions consistent with Bain's direction. *See* MC ¶ 80. PowerSchool then acted as Bain directed and, when PowerSchool did so, Bain sent its promised offer. *Id.* ¶¶ 73, 90, 103–08. Bain cites no case requiring that Plaintiffs' agency allegations be pled with particularity to include how, when, where, or among whom an agreement was reached. To the contrary, this is why courts regularly decline to determine agency at the motion to dismiss stage and allow discovery to inform the court's decision on agency issues. *Chan*, 39 F.3d at 1406. At the pleading stage, Plaintiffs have met their burden.

Bain points to the June 6, 2024, Merger Agreement to suggest that Bain expressly disclaimed the right to control PowerSchool's business, urging the Court to effectively ignore Plaintiffs' allegations in favor of Bain's version of events. MTD at

16                    No. 3:25-md-3149-BEN-MSB

28. Bain's suggestion is improper.[14]  Bain's suggestion is also wrong. This section of the Agreement is subject to all other "terms and conditions of this Agreement[,]"[15] including the other terms that allow Bain to control PowerSchool's key operations, cybersecurity, and financial decisions. In other words, the section of the Merger Agreement that Bain claims disclaim Bain's control of PowerSchool has a massive exception that swallows the disclaimer and allowed Bain to exercise over PowerSchool's key strategic choices.

Bain's statements are self-serving and contrary to Plaintiffs' well-pled allegations. Bain controlled the day-to-day decisions of PowerSchool beyond the general supervision that courts find to be insufficient to establish an agency relationship. *Sonora Diamond Corp.*, 83 Cal. App. 4th at 551 (finding that "general monitoring," supervising budget, and "setting general policies" were insufficient). Instead, Plaintiffs allege that Bain regularly directed PowerSchool's activities, including decisions to offshore and outsource key operations, which led directly to the hiring of specific contractors like Movate. MC ¶¶ 73, 90, 103-08. A principal needs to control only the "key aspects" of an agent's business that give rise to a particular claim, not every aspect of an agent's business. *Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d at 940. Without the benefit of discovery, Plaintiffs clear that hurdle by alleging that Bain has controlled the specific PowerSchool operations that

---

[14] *See, e.g., Iqbal*, 556 U.S. at 678 ("If [the plaintiff's] explanation is plausible, [the] complaint survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation."); *Frontier Homes*, 2018 WL 8220544, at *2 ("A Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not . . . resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses.") (cleaned up); *Twombly*, 550 U.S. at 556 ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.").

[15] Agreement and Plan of Merger between BCPE Polymath Buyer, Inc., BCPE Polymath Merger Sub, Inc. and PowerSchool Holdings, Inc. (June 6, 2024), https://www.sec.gov/Archives/edgar/data/1835681/000119312524157845/d846178d ex21.htm; MC ¶ 85.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)

led to the Data Breach and Plaintiffs' injuries. Plaintiffs' allegations are sufficient at the pleading stage, absent the benefit of discovery to determine the full extent of Bain's involvement in PowerSchool's business. *See Chan*, 39 F.3d at 1406.

**D. Plaintiffs' Allegations Satisfy Rule 8**

Plaintiffs' well-pled allegations have sufficiently put Bain on notice of its alleged liability, which is "all that is required under the liberal pleading standard of Rule 8(a)." *City of L.A. v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1062 (C.D. Cal. 2014). Bain argues Plaintiffs have improperly "group pled" Bain Capital into all allegations against PowerSchool. *See* MTD at 45. In doing so, Bain ignores that entire sections of the MC are dedicated solely to detailing Bain's specific involvement and failures that resulted in the Data Breach and Plaintiffs' resulting harm. *See, e.g.,* MC §§ D-J, ¶¶ 14-19, 37-41.

Bain's argument also ignores two critical facts. First, Bain's, PowerSchool's and Movate's combined data security failures *all* contributed to and resulted in the Data Breach. A fundamental tort principle requires that when "two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount."[16] *Honeycutt v. United States*, 581 U.S. 443, 447-48, (2017). Plaintiffs have, thus, properly pleaded liability against Bain, a joint tortfeasor in the Data Breach that caused Plaintiffs' injuries.

---

[16] *See also Consumer Fin. Prot. Bureau v. Wen*, 2025 WL 2254521, at *2 (9th Cir. Aug. 7, 2025) (same); *Zands v. Nelson*, 797 F. Supp. 805, 813 (S.D. Cal. 1992) (collecting cases and explaining that a plaintiff must join all potential tortfeasors because such joinder "guarantees the presence of the responsible party"); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 696 (7th Cir. 2015). ("If there are multiple companies that could have exposed the plaintiffs' private information to the hackers, then the common law of torts has long shifted the burden of proof to defendants to prove that their negligent actions were not the but-for cause of the plaintiff's injury.") (cleaned up), citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 263, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (O'Connor, J. concurring) (citation omitted).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)

Second, Defendants have provided Plaintiffs with no discovery and, thus, Plaintiffs are operating at a significant information disadvantage in comparison to Defendants. *See Heller v. NBCUniversal, Inc.*, 2016 WL 6573985, at *3 (C.D. Cal. Mar. 30, 2016) (refusing to dismiss complaint for improper group pleading because "it is simply not possible for Plaintiff to be more specific about the role each Defendant played . . .without discovery."). In *Briskin v. Shopify, Inc.*, 135 F.4th 739, 762 (9th Cir. 2025), the Ninth Circuit recently reversed an order granting a dismissal under Rule 8 that was premised on purported improper group pleading of three closely related corporate defendants. There the Ninth Circuit clarified that its precedent "does not prohibit collective pleadings so long as the complaint gives defendants fair notice of the claims against them." *Id.* (finding dismissal improper because plaintiff's allegations "generally described each company's role in the alleged" wrongful conduct).[17]

The cases on which Bain relies, *Horton* and *Bustamante,* are inapposite and pre-date the Ninth Circuit's holding in *Briskin*. In *Horton*, unlike here, the plaintiff improperly "group[ed] all eight Defendants together" failing to specify which claims were asserted against which entities. *Horton v. Neostrata Co.*, 2016 WL 11622008, at *4 (S.D. Cal. Nov. 22, 2016). Here, Plaintiffs' MC clearly identified, which Counts were asserted against which Defendant. *See, e.g.,* MC Counts II-IV, VII, IX (specifically alleging claims against Bain). In *Bustamante*, the court did not analyze Rule 8 as it related to the plaintiff's claims but rather considered the defendant's

---

[17] *See also, e.g., Cree, Inc. v. Tarr Inc.,* 2017 WL 3219974, at *5 (S.D. Cal. July 28, 2017) (rejecting defendants' argument that plaintiff "has engaged in improper 'group pleading' that impermissibly 'lumps' [d]efendants . . . together throughout the complaint" where plaintiff alleged that defendants jointly infringed on a trademark and explained defendants' use of the trademark giving rise to each of plaintiff's four causes of action); *Nordisk v. Goglia Nutrition, LLC,* 2025 WL 2591944, at *4 (S.D. Cal. Sep. 8, 2025) ("The [c]omplaint can fairly be read to find that [p]laintiffs met their burden to show that each [d]efendant participated in the specific wrongful conduct alleged.").

motion to dismiss as unopposed because plaintiff failed to apply any "authority or address any substantive argument made in Defendants' motion to dismiss." *Bustamante* v. *Bank of Am., N.A.*, 2012 WL 13175878, at *3-4 (S.D. Cal. May 21, 2012).

Bain's argument that Plaintiffs cannot plead claims against both PowerSchool and Bain in the same counts together absent alter ego *or* agency liability overlooks that Plaintiffs *have* adequately pled agency liability. *See, e.g.,* MC §§ D-J, ¶¶ 14-19, 37-41, 71-74, 81-86, 99-100 (identifying Bain's specific actions, including directing layoffs of U.S.-based experienced IT staff, outsourcing cybersecurity to Philippines, and failing to prevent contractors like Movate's employees complete and unencrypted access to the PowerSchool database, which allowed the Data Breach to occur). Bain is therefore not "left guessing which conduct is alleged against it." MTD at 48. Bain's reliance on *Better Homes Realty* and *Doe* is also misplaced. *Better Homes* supports Plaintiffs because this Court specifically held that "a plaintiff's assertion of claims against 'Defendants' generally will not always be deficient," and collected and analyzed cases demonstrating it is regularly permissible for plaintiffs to do so including where "some allegations specific" to each defendant exist, like here. *Better Homes Realty, Inc.* v. *Watmore*, 2017 WL 1400065, at *10 (S.D. Cal. Apr. 18, 2017). What drove dismissal (with leave to amend) in *Better Homes* was that, unlike here, the complaint was devoid of *any* allegations as to individual defendants. *Id.*; *see also Doe* v. *Camp Pendleton & Quantico Hous. LLC*, 2020 WL 1890576, at *7 (S.D. Cal. Apr. 16, 2020) (dismissing allegations where unlike here, plaintiff's "broad and conclusory" allegations failed to plead "any specific [facts].")

**E. Plaintiffs Have Plausibly Alleged Direct Liability Against Bain**

"[A] shareholder, whether a natural person or a corporation, may be liable on the ground that such shareholder's activity resulted in the liability." *United States v. Bestfoods*, 524 U.S. 51, 55 (1998). As the Ninth Circuit has recognized, a parent company may be liable for harms where the parent is involved in "day-to-day

activities" that "might well be properly characterized as inconsistent with the parent corporation's investor status[.]" *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). Here, that unquestionably describes Bain's active day-to-day involvement with PowerSchool.

Through contractual veto rights and workforce directives before the merger, and then formal control and subsequent board replacement after the merger, Bain dictated the daily operations of PowerSchool, including the very cost-cutting measures that dismantled PowerSchool's cybersecurity infrastructure leading to the Data Breach. MC ¶¶ 93, 107-108. Exercising its day-to-day operational control, Bain directed layoffs of at least 5% of PowerSchool's workforce, including critical domestic information technology staff, shifting this labor oversees to Movate in the Philippines, at the expense of adequate staffing and funding of PowerSchool's data security obligations. *Id.* at ¶ 101. Bain's aggressive and debilitating cost-cutting measures resulted in the implementation of lax cybersecurity measures, including offshoring labor to access and extract troves of Plaintiffs' and class members' sensitive Private Information, which enabled hackers to access and exfiltrate Plaintiffs' and class members' sensitive Private Information. *Id.* ¶¶ 101-108. Because Bain's day-to-day involvement, direction and management of operations, cost-cutting activities, and other similar activities are inconsistent with mere "investor status," as set forth in detail in the MC, it would be improper to conclusively determine on a motion to dismiss that Bain is shielded from liability. *Bestfoods,* 524 U.S. at 72.

This court's decision in *In re Packaged Seafood Prods. Antitrust Litig.,* 2022 WL 836951, at *1 (S.D. Cal. Mar. 21, 2022) is instructive. There, Judge Sabraw held that the investor's (Lion Capital) knowledge of unlawful conduct, coupled with its active role in managing its investment (Bumble Bee), was sufficient to plausibly allege direct liability claims against the investor in antitrust litigation. The factual parallels are compelling. For example, in *In re Packaged Seafood,* "[a]t the time of the acquisition, [Bumble Bee's CEO] disseminated an internal memorandum to

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)

Bumble Bee employees stating that 'the Lion Entities team planned to be 'actively involved' in the business.'" *Id.* at \*5. The same is true here. At the time of the merger, PowerSchool's CEO announced he would work "closely with the management at Bain in management and expansion of the company." MC ¶ 93. Also, like Lion Capital, Bain was not a distant equity holder, but instead an entity that directed PowerSchool's day-to-day activities including dismantling PowerSchool's cybersecurity protocols and staff, which led to the Data Breach. *See Packaged Seafood*, 2022 WL 836951, at \*10 ("participation in the subsidiary's wrongdoing supports a finding of the parent company's liability").[18]

### 1. Plaintiffs Adequately Negligence and Negligence per se against Bain

Under California law negligence requires: "(1) a legal duty to use due care; (2) a breach of that duty; and (3) that the breach was the proximate or legal cause of the injury." *Ting v. United States*, 927 F.2d 1504, 1513 (9th Cir. 1991) (citation omitted). Further, under California law, once a duty has been established, the elements of breach of duty and causation are questions of fact for the jury to decide at trial. *Hernandez v. Jensen*, 61 Cal. App. 5th 1056, 1064 (2021). Plaintiffs have adequately alleged each of the negligence elements here.

### a. Bain Had a Duty Because it Created the Risk of Harm

California courts have repeatedly recognized a duty of care where an entity's involvement creates and causes risk of harm, such as a release of sensitive information. *See, e.g., Doe v. Uber Techs., Inc.,* 2025 WL 80365, at \*4 (9th Cir. Jan. 13, 2025) (holding a duty arose when defendant's affirmative conduct created the risk

---

[18] *See also*, *e.g.*, *accord Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1120 (C.D. Cal. 2010) (denying motion to dismiss parent company when plaintiff alleged parent company took active role in management of subsidiary and fully owned subsidiary); *and Wolf Designs, Inc. v. DHR & Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) ("[T]he corporate form may be ignored . . . by virtue of the individual's control of, and direct participation in the alleged activities.").

of harm).[19]

Here, Plaintiffs have adequately alleged that Bain owed a duty of care to Plaintiffs when it initiated the merger process with PowerSchool, and obtained non-public access to PowerSchool's financial information, cybersecurity operations, capabilities, and technology operations, and began directing PowerSchool's day-to-day activities. Plaintiffs further allege that Bain fully knew the risk of failure to adequately secure Private Information. *See, e.g.,* MC ¶¶ 163-184. As a tech-focused investor with expertise in digital technology and transformation, Bain was aware that offshoring operations on an expedited basis came with significant data security risks for PowerSchool's security systems. Bain ignored those known risks and proceeded to direct the aggressive reduction in PowerSchool's cybersecurity labor force and moved this labor to offshore contractors anyway and allowed companies like Movate unfettered access to massive troves of Private Information without any oversight. *Id.* ¶¶ 71-74, 77-81, 998. The inevitable result was to significantly weaken PowerSchool's cybersecurity posture, which enabled ShinyHunters to gain the credentials of one of the offshored contractors who had unfettered access to massive trove of unencrypted Private Information stolen here. *Id*. ¶¶ 73-74, 79-81, 85-90, 122-129. Plaintiffs' allegations specifically detail how Bain created this risk of harm that, via its own affirmative conduct, suffices to allege the legal duty Bain owed Plaintiffs. *Id*. ¶¶ 99-100; *see also, e.g., Uber.,* 2025 WL 80365, at *4; *In re Facebook, Inc.*, 402

---

[19] *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021) ("USAT") ("'Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care of skill in the management of his or her property or person . . . the default rule that each person has a duty 'to exercise, in his or her activities, reasonable care for the safety of others.'"); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (finding defendant's failure "to comply with minimum data-security standards during the period of the data breach," which "plausibly caused the harm to plaintiff resulting in alleged damages" to be "a classic negligence claim."); *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *4 (N.D. Cal. Sep. 14, 2016) (recognizing a duty to protect PII and provide prompt notice of security breaches).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)

F. Supp. 3d 767, 799 (N.D. Cal. 2019) (denying motion to dismiss negligence claims where "Facebook failed to use reasonable care to safeguard [sensitive] information, giving third parties access to it without taking any precautions to constrain that access to protect the plaintiffs' privacy [. . .]").

There exists here no compelling justification for any exception to Bain's duty to Plaintiffs.[20] "[T]he most important factor to consider," is whether the Plaintiffs' risk of harm was foreseeable. *Uber*, 2025 WL 80365, at *6 (citing *Kesner v. Superior Ct.*, 1 Cal. 5th 1132, 1145 (2016)). Here, Plaintiffs allege that a data breach was reasonably foreseeable, as a result of Bain's aggressive offshoring of PowerSchool's cybersecurity functions, laying off experience U.S. based IT employees, and allowing offshore contractors like Movate to have unfettered access to Plaintiffs' Private Information. *See* MC ¶¶ 15-17, 113-115, 163-184, 187. Thus, the most important factor, foreseeability, does not weigh in favor of narrowing Bain's duty to Plaintiffs and the Class. Nor do the remaining factors, including the "consequences to the community of imposing a duty [on defendant] to exercise care with resulting liability for breach," the moral blame, and the overall policy of preventing future harm. *Uber*, 2025 WL 80365, at *6 (cleaned up). When a parent company like Bain guts the cybersecurity of its subsidiary to boost profits, the moral blame is stark with significant consequences to the community and imposing a duty here will only reinforce public policy to prevent future similar harm.

Bain's argument that possessing, maintaining, or storing Private Information,

---

[20] *See e.g. Accellion*, 713 F. Supp. 3d at 635 (finding no factors that warranted limiting defendant's duty to plaintiffs); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 915 (S.D. Cal. 2020) ("Applied here, [the *Rowland*] factors weigh in favor of the plausibility that [defendant] owed a duty to protect [p]laintiffs' information despite the fact that Plaintiffs were not [defendant's] customers or otherwise in privity with [defendant]."); *Castillo*, 2016 WL 9280242, at *3 (N.D. Cal. 2016) ("[T]he *Rowland* factors compel the conclusion [defendant] was duty-bound to take reasonable steps to protect all personal identifying information it obtained from its employees, including information pertaining to employees' spouses and dependents.").

or that having a direct relationship with Plaintiffs, is a pre-requisite to a legal duty misapprehends both the facts and law. Factually, Plaintiffs have adequately alleged that Bain possessed and maintained the compromised Private Information. *See, e.g.,* MC ¶¶ 38, 41, 113-115, 896, 976. Legally Bain's argument fails because, where as pled here an entity's affirmative conduct creates the risk, a legal duty attaches consistent with fundamental tort law.[21]

*Accellion* is instructive. There, the court held that Accellion, a developer of file transfer software, owed a duty to individuals whose data was transmitted using the company's software even though Accellion did not have access to the data and argued that it lacked "contractual privity . . . and played no role in how Plaintiffs' information was provided or used by its clients." *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 634 (N.D. Cal. 2024). The *Accellion* court disagreed explaining that defendant was "in the position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs and Class members from a resulting data breach." *Id.* at 633. The same holds true for Bain, but with even greater force because Bain directed the negligence steps that led to Plaintiffs' harm.

The cases on which Bain relies, *Navarro* and *Sony*, are inapposite because neither case stands for the asserted proposition that possession or control of Private Information or a direct relationship is required to form a legal duty, in contravention of basic principles of tort law.[22] The cases are also inapposite factually. *Navarro*, for

---

[21] *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 907 (N.D. Cal. 2024) (finding duty of care existed where plaintiffs "relied" on defendant and defendant's subcontractors to safeguard their PII, defendant's subcontractor had "superior control over the means of protect[ing] Plaintiffs' PII," and because defendant's subcontractor had control of plaintiffs' PII "and was therefore responsible for implementing security measures.") (internal quotations omitted); *see also* Restatement (Second) of Torts § 302 cmt. a (1965).

[22] *See Navarro* v. *Ski Data*, 2022 WL 18280359, at *10 (C.D. Cal. Dec.7, 2022) (finding no duty where defendants did not create a risk of harm; they simply sold non-defective technology and installed it as directed); *In re Sony Gaming Networks &*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)

example, was decided on a motion for summary judgment and did not involve a data breach. Instead, plaintiffs sued shopping malls and the manufacturers of technology installed in parking lots intended to be used to help customers locate available parking lots and their vehicles after shopping and involved the capture of plaintiffs' license plate numbers without proper consent. *Navarro*, 2022 WL 18280359 at *1. The court simply granted summary judgment in favor of two entities that only sold and installed the non-defective systems and did not themselves collect the data at issue. That is meaningfully different than the affirmative acts directed by Bain alleged by Plaintiffs here.

Bain's reliance on *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,* 996 F. Supp. 2d 942 (S.D. Cal. 2014) is misplaced. There, the court held that a legal duty existed where an entity entrusted with confidential information failed to safeguard it. But the Court did not imply, much less hold, that this is the *only* way for a company to owe a duty to safeguard information. *See Accellion*, 713 F. Supp. 3d at 632 ("Under California law, each person has a general duty 'to exercise, in his or her activities, reasonable care for the safety of others.'") (citing *USAT*, 11 Cal. 5th at 214).[23] Creating the risk of foreseeable harm remains a valid basis on which a duty attaches and that is exactly what Bain did when it dismantled PowerSchool's

_____

*Customer Data Sec. Breach Litig.,* 996 F. Supp. 2d 942, 966 (S.D. Cal. 2014) ("the legal duty [to safeguard a customer's confidential information] is well supported by both common sense and California [] law").

[23] Other cases cited by Bain are likewise inapposite. *Coleman* v. *Las Vegas Metro. Police Dep't*, 2022 WL 3594272, at *1 (9th Cir. Aug. 23, 2022) involved civil rights claims, where the court found that a "single, conclusory allegation" was insufficient to plead a violation of civil rights in a straight-forward personal injury lawsuit. Likewise, in *Regents of the Univ. of California* v. *Aisen*, 2016 WL 4096078, at *4 (S.D. Cal. Apr. 22, 2016), this Court "dismiss[ed] claims as to particular defendants who were only mentioned once in the substantive allegations." *Id.*, at *8. In contrast, the allegations against Bain are well documented and detailed, including a thorough discussion of its relationship to the other Defendants. MC §§ D-J; *see also* ¶¶ 771-775.

cybersecurity labor forces by laying off experienced U.S.-based IT staff and outsourced critical IT and data security functions to the Philippines with Movate and allowed Movate's employees unfettered access to the massive trove of Plaintiffs' and class members' Private Information.[24]

### b. Bain also had a Legal Duty Because of its Special Relationship with Plaintiffs

Courts in the Ninth Circuit routinely find a legal duty to protect where the parties are in a "special relationship." *See, e.g., Stasi*, 501 F. Supp. 3d at 914 (finding special relationship between defendant and plaintiffs despite the fact that there was no contractual privity between the parties). Ninth Circuit courts look to several factors to determine whether a special relationship exists: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to [plaintiff], (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Centinela Freeman Emergency Med. Assocs. v. Health Net of Cal.*, Inc., 1 Cal. 5th 994, 1014 (2016); *see also Bass*, 394 F. Supp. 3d at 1039. Each of these factors weighs in Plaintiffs' favor here.

First, Bain's acquisition of PowerSchool, "the leading provider of cloud-based software for K-12 education in the United States," was intended to and did affect Plaintiffs. MC ¶¶ 49-58. Bain Capital dominated and controlled PowerSchool's internal affairs and operations before and after the merger. *Id.* ¶¶ 71–75, 85–86, 109-113. That control was aimed squarely at Plaintiffs and the Class because their Private Information was the very foundation of the PowerSchool SIS. Second, Plaintiffs allege in detail that the risk and harms were foreseeable to Bain. *Id.* ¶¶ 113-115 163-

---

[24] *See Brown,* 11 Cal. 5th at 214 (general duty of care exists when the defendant "'created a risk' of harm to the plaintiff, including when 'the defendant is responsible for making the plaintiff's position worse.'").

184, 187. Third, Plaintiffs allege in detail the actual misuse of their Private Information, as well as the risk of future harm as a result of the Data Breach. *Id.* ¶¶ 27–31, 139–44, 283, 329, 340, 346, 352, 357, 375, 399, 411, 435, 441, 503, 509, 515, 562, 581, 598, 604, 617, 635, 641. Bain's day-to-day decisions to dismantle PowerSchool's data security operations made Plaintiffs' injuries certain and directly connect Bain's conduct to Plaintiffs' injuries. Fourth, as discussed *infra*, Plaintiffs allege in detail specifically how Bain's affirmative actions resulted in Plaintiffs' harms. *See, e.g., id.* §§ D-J, ¶¶ 14-19, 37-41. Fifth, Bain's conduct is morally reprehensible because Bain knew exactly how sensitive Plaintiffs' Private Information was, yet it chose to cut experienced IT, cybersecurity, and engineering staff, outsource these operations to the lower-cost inexperienced labor in the Philippines, and provided Movate complete and unsupervised access to Plaintiffs' and class members' Private Information, all of which enabled ShinyHunters to steal Plaintiffs' and class members' Private Information. *Id*. ¶¶ 99-102, 107-111,127-133, 998. Finally, the public policy in preventing future harm also weighs in favor of finding a special relationship here, particularly given the vulnerable population affected – minor children – nationwide.[25] Taken together, these factors establish that Bain owed a duty arising from its special relationship with Plaintiffs.

### c. Bain Breached Its Duty to Plaintiffs

Bain Capital does not dispute that Plaintiffs' allegations are sufficient to establish breach—challenging only legal duty—nor could it. That is because "*when a [data] breach occurs, the thing speaks for itself.* The breach would not have occurred but for inadequate security measures, or so it can be reasonably inferred at the pleadings stage." *Flores-Mendez v. Zoosk, Inc.*, 2021 WL 308543, at *4 (N.D. Cal.

___

[25] *See USAT*, 11 Cal. 5th at 230 (finding a duty is owed to a children's sports organization to "exercise reasonable care to limit" risk "regardless of whether [defendant] 'created that risk'" due to the vulnerability of the children using defendant's services).

Jan. 30, 2021) (emphasis added); *see also Schmitt v. SN Serv. Corp.*, 2021 WL 3493754, at \*5 (N.D. Cal. Aug. 9, 2021) (noting that the "burden to plead a corresponding breach based on [defendant's] inadequate security measures is not high"). Here, Plaintiffs allege that Bain interfered with PowerSchool's operations, laid off IT employees, outsourced critical functions to Movate in the Philippines, and failed to prevent the use of tools that enabled ShinyHunters to steal Plaintiffs' and class members' Private Information. MC ¶¶ 109-112, 114–115, 121-133. At this stage, Plaintiffs' allegations sufficiently allege breach.

### d. Bain's Affirmative Conduct Proximately Caused Plaintiffs' Injuries

Because "[c]ausation is generally a question of fact for the jury unless the proof is insufficient to raise a reasonable inference that the act complained of was the proximate cause of injury," *Huynh v. Quora, Inc* 508 F. Supp. 3d 633, 650-51 (N.D. Cal. 2020) (quoting *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981)), it typically cannot be resolved on a motion to dismiss. *See, e.g.*, *In re GEICO*, 2023 WL 5524105, at \*15 (E.D.N.Y. Aug. 28, 2023) (citation omitted).

At this stage, pleading causation requires only a "logical" connection between the breach and the alleged harm, which can be established through allegations that the "type of information" stolen in a breach "is the same kind needed" to commit fraud or identity theft. *Stollenwerk v. Tri-W. Health Care Alliance*, 254 F. App'x 644, 667 (9th Cir. 2007). The breach need not be the "sole cause of the identity fraud incidents;" it suffices if the breach was a "substantial factor" in bringing about the injury "without which the injury would not have occurred." *Id.* In California, "[i]t is well established that when a defendant's negligence is based upon his or her having exposed the plaintiff to an unreasonable risk of harm from the actions of others, the occurrence of the type of conduct against which the defendant had a duty to protect the plaintiff cannot properly constitute a superseding cause that completely relieves the defendant of any responsibility for the plaintiff's injuries." *Lugtu v. California Highway Patrol*,

26 Cal. 4th 703, 725 (Cal. 2001); *see also Henry v. Superior Court,* 160 Cal. App. 4th 440, 449, (2008) ("a negligent tortfeasor is generally liable for all damage of which his negligence is a proximate cause…[a] tortfeasor may not escape this responsibility simply because another act . . . may also have been a cause of the injury.").

Here, Plaintiffs adequately allege causation because it was foreseeable that, as a result of Bain's decisions to sacrifice experienced US-based IT staff, cut costs on cyber security, and offshore cybersecurity to Philippines, Plaintiffs and Class Members would suffer harm. MC ¶¶ 108-111; 794-796.[26]

Bain's argument that it could not have caused Plaintiffs' damages and that its actions regarding PowerSchool are "too attenuated" and "not 'fairly traceable'" for it to be held liable under a negligence theory is purely conclusory. MTD at 40. Further, Bain's reliance on *Vavak* v. *Abbott Lab'ys, Inc.*, 2011 WL 13130493, at *2 (C.D. Cal. Mar. 7, 2011) is also unpersuasive. *Vavak* was not a data breach action; instead, it is a tort case where plaintiff alleged that her infant ingested a purportedly defective formula. The court held that plaintiff did not allege an injury "fairly traceable to [d]efendants' conduct" because plaintiff had not pled an actual purchase of the formula that was part of the subject recall or that the infant's sickness was caused by consuming the formula. *Id.* *5. *Vavak* bears no relevance to this case, in any respect.[27]

### e. Negligence Per Se

Plaintiffs agreed to voluntarily dismiss their standalone negligence per se claims under California, Massachusetts, and Michigan law, because those states do

---

[26] *See also e.g., In re Yahoo! Inc. Customer Data Security Breach Litig.,* 313 F. Supp. 3d 1113, 1133 (N.D. Cal. 2018) ("it was plainly foreseeable that [p]laintiffs would suffer injury if Defendants did not adequately protect the PII"); *Huynh,* 508 F. Supp. 3d at 657 ("[i]t was foreseeable that [p]laintiff would incur time and money working to secure that information when [d]efendant did not adequately protect it").

[27] Bain incorporates the argument from Section III of PowerSchool's Motion to Dismiss (ECF 285) as to damages; Plaintiffs likewise incorporate their response set forth in Opposition to PowerSchool's Motion to Dismiss, filed on October 10, 2025.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)

not recognize negligence per se as an independent cause of action. ECF No. 300. Nonetheless, the Parties also agreed that the substance of Plaintiffs' negligence per se allegations would be incorporated into Plaintiffs' negligence claim (Count I). *Id.*; *see also* MC ¶ 800.

Even though not recognized as a standalone cause of action in some states, the Ninth Circuit has recognized that "negligence per se … creates an evidentiary presumption that affects the standard of care in a cause of action for negligence." *Dent v. Nat'l Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020) (quoting *Johnson v. Honeywell Int'l Inc.*, 101 Cal. Rptr. 3d 726, 731(2009) (cleaned up).[28]

Ignoring Plaintiffs' well-pled allegations, Bain argues that Plaintiffs fail to allege that Bain violated a statute, ordinance, or regulation. See MTD at 40. Not so. Plaintiffs have pled numerous statutory violations against the Defendants, including Bain, such as violation of Section 5 of the FTC Act, the HIPAA Privacy and Security Rules, COPPA, FERPA, industry standards, and state statutory laws. MC ¶¶ 41, 784, 802-803.

Given the Parties' agreement to incorporate Plaintiffs' negligence per se allegations into Count I (negligence), rather than maintain negligence per se as a separate Count, the Court should permit Plaintiffs to maintain their negligence per se allegations under the respective state statutes and industry standards as pled. *See id.* ¶¶ 814, 815, 816, 817, 823 (alleging a non-exclusive list that also includes violating industry standards and state consumer protection statutes); *see also Tinoco v. San*

---

[28] *See also, e.g., Accellion*, 713 F. Supp. 3d at 639-40 (allowing negligence per se pleadings focused on FTC Act, HIPAA, and other statutes to support elements of negligence claim under California law); *Randall v. Mich. High Sch. Athletic Ass'n*, 965 N.W.2d 690, 703 (Mich. Ct. App. 2020) ("When a plaintiff proves that an actor has violated the terms of a statute," under Michigan law, the violation serves as "prima facie evidence of negligence."); *Lev v. Beverly Enters.-Mass., Inc.*, 929 N.E.2d 303, 313 (Mass. 2010) ("[T]he violation of a statute, ordinance, regulation or policy is relevant because it constitutes some evidence of a defendant's negligence.").

31                                              No. 3:25-md-3149-BEN-MSB

*Diego Gas & Elec. Co.*, No. 17-cv-2433-BAS-JLB, 2018 WL 4562479, at \*2 (S.D. Cal. Sep. 21, 2018) (declining to dismiss negligence per se where negligence claim could proceed).

**2. Courts Routinely Allow Unjust Enrichment Claims to Proceed as a Quasi Contract Claim**

Bain Capital argues that unjust enrichment "is not an independent cause of action under California law," citing *Advanced Eng'g Sols. Co., LLC* v. *Pers. Corner, LLC*, 2021 WL 1502705, at \*7 (C.D. Cal. Feb. 25, 2021). While it is true that "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution,'" the Ninth Circuit has held that courts "may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

This also applies in data breach class actions specifically where courts "have concluded that the failure to secure a plaintiff's data can give rise to an unjust enrichment claim,' reasoning 'that a defendant has accepted the benefits accompanying plaintiff's data, but does so at the plaintiff's expense by not implementing adequate safeguards, thus making it inequitable and unconscionable to permit defendant to retain funds that it saved by shirking data-security and leaving the plaintiff to suffer the consequences." *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1145 (C.D. Cal. 2021) (citation omitted). This observation applies with full force here. As Plaintiffs allege, Bain "fund[ed] their data security measures entirely from its general revenues" including monetary payments that were made on behalf of Plaintiffs and class members. Bain and PowerSchool accepted those payments, which should have been used to fund appropriate data security measures, and yet they failed to do so. *See* MC ¶¶ 830-832. As a result, Bain was unjustly enriched. While Bain Capital argues no benefit was conferred to it, Plaintiffs' factual allegations must be credited at the pleading stage.

Bain Capital appears to argue that any benefits they received must be derived

directly from Plaintiffs. But that is not the law, as *Rejoice! Coffee Co.* illustrates. There, the plaintiff alleged that Sentinel Insurance and Hartford Financial (Sentinel's parent company) violated California's UCL, and as a result Hartford "was unjustly enriched because 'Sentinel, beholden to and controlled by its parent corporation, turned over all or some of the'" unlawfully collected insurance premiums to Hartford. *Rejoice! Coffee Co., LLC v. Hartford Fin. Servs. Group,* 2021 WL 5879118, at *9 (N.D. Cal. Dec. 9, 2021). Hartford moved to dismiss the unjust enrichment count, in part, because it was not a party "to the contract between Rejoice and Sentinel and Rejoice [had] not alleged a sufficient relationship" with Hartford. *Id.* But the court disagreed, holding "that it is not essential that money be paid directly to the recipient by the party seeking restitution." *Id.* (citing *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, (2009) (rejecting a motion to dismiss and holding that "[f]or a benefit to be conferred, it is not essential that money be paid directly to the recipient by the party seeking restitution.")). The same reasoning applies here.[29]

### 3. Declaratory Judgment and Injunctive Relief Are Necessary to Prevent Future Harm

Bain's bid to dismiss Plaintiffs' Count VI also fails. Pursuant to the Declaratory Judgment Act, declaratory relief is independently available and not to be treated as another available equitable remedy. Under 28 U.S.C. § 2201(a), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, ***whether or not further relief is or could be sought***." (emphasis added). While a claim for declaratory relief may be unnecessary where an adequate remedy exists under some other cause of action, *c.f. Reyes v. Nationstar Mortg. LLC*, 2015 WL 4554377, at *7 (N.D. Cal.

---

[29] *Advanced Eng'g Sols.* also does not help Defendant. There, the court barred plaintiff's unjust enrichment theory because a master service agreement undisputedly governed the parties' relationship. *Advanced Eng'g Sols.*, 2021 WL 1502705, at *19-20. No such contract with Bain exists here.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

July 28, 2015), this does not apply here because "the existence of another adequate remedy **does not preclude** a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57 (emphasis added).

As a result, courts in the Ninth Circuit have allowed declaratory judgment and injunctive relief claims to proceed in cases where the negligence claim proceeds. *See Baton*, 740 F. Supp. 3d at 913 (holding that a declaratory judgment claim could proceed because it was predicated on the well-pled negligence claim). Bain relies on *City of Reno*, but that case is distinguishable because it did not prohibit plaintiffs from bringing a claim under state law for declaratory relief. *See Lebeau v. StarNet Ins. Co.*, 2023 WL 5095306, at *7 (D. Ariz. Aug. 9, 2023) (distinguishing *City of Reno* and holding that plaintiff could bring a state claim for declaratory relief).

Because Plaintiffs have adequately pled negligence and UCL claims against Bain, their claim for declaratory judgment should proceed because, as alleged, Plaintiffs' highly sensitive Private Information remains in Defendants' possession, and Bain continues to control PowerSchool and its cybersecurity policies and safeguards (or lack thereof). MC ¶¶ 38–40, 109–112, 113-115. Indeed, this demonstrates how Plaintiffs' Declaratory Judgment Act claim is distinct from their other claims that seek compensation for the past injuries they have already endured because it is forward-looking. *See Yahoo!*, 313 F. Supp. 3d at 1139 (declaratory relief allowed because contract claims seek retrospective relief and declaratory relief does not); *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016) (declaratory relief allowed where defendant's "security measures continue to be inadequate"). Plaintiffs' request for declaratory and injunctive relief is proper because monetary damages cannot fully address Plaintiffs' harms. Plaintiffs seek a prospective mandate that Bain, and its subsidiary companies, employ adequate security protocols to protect Plaintiffs' and class members' Private Information, which remains in its possession. MC ¶ 885(i)-(xi). This is exactly the type of relief that the Declaratory Judgement Act is designed to provide: "a

declaration that will prevent future harm from ongoing and future violations before the harm occurs." *In re Adobe Sys. Priv. Litig.*, 66 F. Supp. 3d 1197, 1222 (N.D. Cal.). At bottom, Plaintiffs do not simply seek a declaration of the parties' rights and liabilities. Rather, Plaintiffs seek to address the weaknesses in Defendant's cybersecurity practices, policies, and systems, to ensure that Plaintiffs' Private Information remains secure in the future. Here, Plaintiffs provide a sufficient basis to conclude that the declaratory relief claim seeks something distinct from their other claims.

### 4. Bain's Failure to Supervise PowerSchool and Movate Supports Plaintiffs' Claim for Negligent Training and Supervision

Bain Capital next argues that Plaintiffs' Negligent Training and Supervision count should be dismissed, claiming that it "is not expressly named in any of the allegations specific to Count IX." MTD at 42. Bain also argues that there is no relationship between it and the Plaintiffs sufficient to show it was able to monitor and supervise Movate. Neither argument supports dismissal.

Liability for negligence "will be imposed upon the employer if it knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes . . . Liability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability." *Ross v. AT&T Mobility, LLC*, 2020 WL 9848766, at *10 (N.D. Cal. May 14, 2020) (internal citations omitted). "Liability may be imposed 'either on the basis of . . . action — for example, the negligent hiring of an agent — or . . . inaction — for example, the failure to provide adequate supervision of the agent's work.'" *FDIC v. Cashman*, 2011 WL 6002611, at *4 (N.D. Cal. Nov. 30, 2011).

Here, Plaintiffs have pleaded that Bain exerted sufficient control over PowerSchool before and after the merger, including offshoring data security labor and operations, layoffs of IT staff, and allowing contractors like Movate complete access to the PowerSchool SIS database, which allowed a single contractor's credentials to

result in the Data Breach affecting 70 million Americans.[30] MC ¶¶ 38–40, 71–75, 85–86, 109-113, 127-133, 998. In doing so, Bain prioritized profits over security, and failed to assess the risks associated with outsourcing critical cybersecurity functions and allowed contractors complete access to PowerSchool's database. *Id.* Bain also possessed the authority to require that PowerSchool implement basic cybersecurity measures, such as multifactor authentication, implementation of least privileges, rate limiting, or network segmentation, but failed to do so for cost-cutting purposes. Therefore, Bain failed to provide adequate supervision of PowerSchool and its outsourced labor contractor Movate. MC ¶¶ 114-118, 194-203.[31]

### 5. Plaintiffs Sufficiently Allege Violation of the California Consumer Privacy Act

Neither of Bain's arguments support dismissal of Plaintiffs claims under the CCPA. First, Bain claims it is not properly named in the pleading of this Count, but this count refers to Defendants, which includes Bain. MC ¶¶ 968, 976-977. Second, Bain argues that it cannot be held liable under the CCPA because it is not a "business" as that term is defined, the MC does not plead that "Bain 'collects consumers' personal information,'" or that Bain "determines the purposes and means of the

---

[30] Bain cites *Dent* v. *Nat'l Football League*, 902 F.3d 1109, 1122 (9th Cir. 2018) where the court held ""[t]here are 'two elements necessary for a duty to arise in negligent hiring and negligent retention cases—the existence of an employment relationship *and* foreseeability of injury'" (emphasis in original) but that is the case here, where Plaintiffs have pled that Bain was involved in the decisions to outsource tasks to Movate and Plaintiffs' injuries were foreseeable. MC ¶¶ 71-74, 79-81, 96-100.

[31] *See FDIC v. Cashman*, 2011 WL 6002611, at * 4. ("Liability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability"); *see also In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2179475, at *9 (D. Mass. July 31, 2025) ("Case law does not support the [defendant's] suggestion that their duty of care is automatically discharged by hiring a contractor. A defendant does not avoid its duty simply by stashing data in a 'database that is in the possession of a third-party vendor' or independent contractor.").

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)

processing of consumers' personal information.'" MTD at 42-43. But it's evident from Plaintiffs' allegations that Bain's gross annual revenue is in excess of $25 million because it purchased PowerSchool for over $5 billion; it conducts business in California (and purchases companies like PowerSchool in California), and as a result, collects personal information from one or more California residents and "***jointly with others***, determines the purposes and means of the process" of that personal information. Cal. Civ. Code § 1798.140(d) (emphasis added); *see also* MC ¶¶ 46, 78, 86; 762. MC ¶¶ 41, 87-88, 969-976.[32]

Further, at a minimum, Plaintiffs' CCPA claim should survive under the aider-and-abettor theory of liability set forth below. *See R.C. v. Sussex Publrs., LLC,* 2025 WL 948060, at *7-9 (N.D. Cal. Mar. 28, 2025) (holding that plaintiffs sufficiently alleged aider-and-abettor liability under the California Invasion Privacy Act where the defendant gave substantial assistance to Google by sharing medical information).

### 6. Plaintiffs Sufficiently Plead Violation of the California Unfair Competition Law

Bain Capital's arguments that Plaintiffs have not properly pled a violation of California's Unfair Competition Law also fail. "California's UCL provides a cause of action for business practices that are (1) unlawful; (2) unfair; or (3) fraudulent." Cal. Bus. & Prof. Code § 17200, *et seq*. "Each prong of the UCL provides a separate and distinct theory of liability." *Yahoo!,* 2017 WL 3727318, at *96 (N.D. Cal. Aug. 30, 2017). "The UCL's coverage is sweeping, and its standard for wrongful business conduct intentionally broad." *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1204 (N.D. Cal. 2014). Aiding or abetting a violation of the UCL is also sufficient for there to be liability because "while the UCL imposes liability only for a party's 'personal participation in the unlawful practices'…***it is sufficient that the defendant aided and***

---

[32] *See also* Bain's Privacy Policy, which includes a section on the application of the CCPA is available at and refers to "the categories of personal data…collected and processed by Bain." https://www.bain.com/about/privacy/.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

**abetted the principal violator**." *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008) (emphasis added). "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer." *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1164 (2018). Generally, 'violation of almost any law may serve as a basis for a UCL claim.'" *Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1098 (N.D. Cal. 2010).

**Unfair.** Courts apply several tests in determining whether the conduct is unfair. The first line of cases requires that "the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions. *Svenson v. Google Inc.,* 2015 WL 1503429, at *9 (N.D. Cal. Apr. 1, 2015). "A second line of cases applies a test to determine whether the identified business practice is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* "The third test . . . requires that '(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Id.*

Although just one of these tests would support liability, Plaintiffs have properly alleged that Bain's conduct is unfair under all three. *See Yahoo! I,* 2017 WL 3727318, at *24 (holding that plaintiffs adequately alleged unfair conduct under the balancing test because they failed to adequately protect customer data and violated several statutes that reflected California's public policy of protecting customer data) (collecting cases). First, Bain's layoffs, outsourcing of critical cybersecurity functions, and authorization of the use of unsupervised remote technology with offshore companies like Movate led directly to the Data Breach and is, thus, tethered directly to California's public policies intended to protect consumer privacy and data

38    No. 3:25-md-3149-BEN-MSB

security. *See* MC ¶ 1023; Cal. Civ. Code § 1798.81.5 (requiring businesses to implement reasonable security measures); FTC Act, 15 U.S.C. § 45 (similar). Bain's actions are also immoral, unethical, oppressive, and substantially injurious given the gravity of harm here – theft of the Private Information of 70 million children, parents, and school district employees – that outweighs any supposed cost-saving "utility." For these reasons, Bain's conduct also meets the third test: its conduct led to a substantial injury and exposure of sensitive Private Information with no countervailing consumer benefit.

***Unlawful.*** Under the "unlawful" prong of the UCL, violations of state or federal law are "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008) (citations omitted). [A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard" *Id.* at 1159. Here, California Plaintiffs allege that Defendants violated, *inter alia*, Section 5(a) of the Federal Trade Commission Act (MC ¶ 1024), which suffices to allege a violation of the UCL's "unlawful" prong. *See, e.g.*, *Eureka Casino*, 2024 WL 4253198, at *10 (where, as here, plaintiffs allege they would not have been injured if defendant had complied with Section 5(a) of the FTC Act, the "unlawful" prong of the UCL has been sufficiently pled).

Misapplying *Kearns,* Bain argues that the heightened pleading standards of FRCP 9(b) apply to claims under the UCL.[33] *See Kearns* v. *Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). But "UCL claims of unlawful or unfair conduct are not subject to Rule 9(b) . . . . Only claims sounding in fraud[,]" which Plaintiffs do not bring, "are subject to the heightened pleading requirements of Rule 9(b)." *In re Zoom*

---

[33] *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011) is also irrelevant because it does not address UCL at all.

*Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1045 (N.D. Cal. 2021). Because Plaintiffs assert only violations of the UCL's "unlawful" and "unfair" prongs, see MC ¶¶ 1023–24, they "do not need to meet Rule 9(b) or identify misrepresentations based on their claims that [Bain's] conduct is unfair or illegal under the UCL." *E.H. v. Meta Platforms, Inc*., 2024 WL 557728, at *3 (N.D. Cal. Feb. 12, 2024). Plaintiffs' allegations more than suffice here because they "identify the particular section of the statute[s] violated" and "describe with reasonable particularity the facts supporting the violation[s]." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 986 (N.D. Cal. 2016).

### 7. Plaintiffs Sufficiently Plead Aiding and Abetting

"Under California law, [a] [d]efendant may be held liable for aiding and abetting the tort of another." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879 (2007). A defendant may also be liable as an aider and abettor of a negligent act. *Navarrete v. Meyer,* 237 Cal. App. 4th 1276, 1290 (2015) (finding aiding-and-abetting liability under California common law). The UCL, section 17200, specifically designates that "liability can be imposed for aiding and abetting a principal violator." *NJOY, LLC v. Imiracle (HK) Ltd*., 760 F. Supp. 3d 1084, 1110 (S.D. Cal. 2024) (cleaned up).

Bain contends Plaintiffs do not sufficiently allege that it knew PowerSchool breached any alleged duty to Plaintiffs, but Plaintiffs' well-pled allegations supply the details of Bain's knowledge. For example, Plaintiffs allege that Bain is a tech-focused investor with expertise in digital technology and transformation, which was aware that offshoring operations on an expedited basis came with significant data security risks for PowerSchool's security systems. MC ¶¶ 98-100, 108, 113-115, 185-188. Bain studied and then became intimately involved with PowerSchool for two years before the merger. MC ¶¶ 71-84. Then, having taken control of PowerSchool, Bain knew of PowerSchool's misrepresentations and/or omissions regarding the weakened cybersecurity, as well as Defendants' duty to Plaintiffs to protect the highly sensitive

40                                                     No. 3:25-md-3149-BEN-MSB

Private Information of Plaintiffs and class members. *Id*. ¶¶ 115, 1033. Bain also personally directed PowerSchool's elimination of critical U.S. based workforce and outsourcing of these responsibilities offshore to Movate for its own financial gain, further underscoring Bain's actual knowledge of PowerSchool's tortious actions resulting in the Data Breach. *See Marcelos v. Dominguez*, 2008 WL 2788173, at *10 (N.D. Cal. July 18, 2008) (holding that plaintiff sufficiently alleged knowledge where the entity at issue had an active role in funding the allegedly fraudulent loan).

## IV.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss or grant leave to amend.

Dated: October 10, 2025                              Respectfully submitted,

                                                     */s/ James J. Pizzirusso*
                                                     James J. Pizzirusso, D.C. State Bar No. 477604*
                                                     jpizzirusso@hausfeld.com
                                                     **HAUSFELD LLP**
                                                     1200 17th Street, N.W., Suite 600
                                                     Washington, DC 20036
                                                     Tel.: (202) 540-7200
                                                     *Co-Lead Counsel for Individual Action Plaintiffs (Track One)*

                                                     */s/ Carol C. Villegas*
                                                     Carol C. Villegas, N.Y. State Bar No. 4154324*
                                                     cvillegas@labaton.com
                                                     **LABATON KELLER SUCHAROW LLP**
                                                     140 Broadway
                                                     New York, New York 10005
                                                     Tel.: (212) 907-0700
                                                     *Co-Lead Counsel for Teachers Unions Plaintiffs (Track One)*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT
BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS
CLASS ACTION COMPLAINT (TRACK 1)

*/s/ David S. Casey, Jr.*

David S. Casey, Jr., Cal. State Bar No. 60768

dcasey@cglaw.com

**CASEY GERRY FRANCAVILLA BLATT LLP**

110 Laurel Street

San Diego, CA 92101

Tel: (619) 238-1811

*Co-Lead Counsel for Class Action Plaintiffs (Track One)*

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)