David S. Casey, Jr., Cal. State Bar No. 60768
dcasey@cglaw.com
**CASEY GERRY FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel.: (619) 238-1811

Carol C. Villegas, N.Y. State Bar No. 4154324*
cvillegas@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700

James J. Pizzirusso, D.C. State Bar No. 477604*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200

*Interim Co-Leads for Plaintiffs*

*Admitted Pro Hac Vice

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION, | Case No.: 25-md-3149-BEN-MSB<br><br>**PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS THE CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A<br>Date/Time: TBD |

**TABLE OF CONTENTS**

I.     INTRODUCTION.................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND......................................2

III.   MEET AND CONFER CONCERNING POWERSCHOOL'S MOTION TO DISMISS.......................................................................4

IV.    CHOICE OF LAW...............................................................................5

V.     POWERSCHOOL'S RULE 12(b)(1) CHALLENGES FAIL; ALL PLAINTIFFS ESTABLISH ARTICLE III STANDING............................5

       A.   All Plaintiffs Plausibly Allege Injury In Fact............................7

            1.   Some Supposed "No Injury Plaintiffs" Allege Actual or Attempted Misuse of Their Private Information.....................9

            2.   Plaintiffs Plausibly Allege Injury Based On "Imminent" Risks of Identity Theft Or Fraud..................................10

            3.   Plaintiffs Plausibly Allege Concrete Losses......................15

       B.   Plaintiffs' Injuries Are Traceable To PowerSchool's Misconduct......17

       C.   All Plaintiffs Have Standing To Seek Injunctive Relief.................22

       D.   Plaintiff Providence Teacher's Union Has Associational and Organizational Standing....................................................23

VI.    POWESCHOOL'S RULE 12(b)(6) ARGUMENTS FAIL.........................24

       A.   Standard of Review.....................................................24

       B.   Plaintiffs Adequately Allege Negligence Damages.....................24

            1.   Continued Risk of Future Harm......................................26

            2.   Lost Time..........................................................29

            3.   Lost Benefit of the Bargain........................................30

            4.   Diminished Value of Private Information............................31

            5.   Emotional Distress.................................................34

            6.   Invasion of Privacy................................................34

       C.   Plaintiffs Adequately Allege Their State Law Claims.................36

            1.   California Unfair Competition Law.................................36

            2.   California Consumer Privacy Act....................................39

            3.   California Confidentiality of Medical Information Act..............41

            4.   California Comprehensive Data Access and Fraud Act................44

VII.   NEGLIGENCE PER SE (COUNTS I–II)..............................................45

VIII.  PLAINTIFFS STATE A CLAIM FOR NEGLIGENT TRAINING & SUPERVISION (COUNT IX)......................................................49

IX.  PLAINTIFFS PROPERLY PLEAD DECLARATORY AND INJUNCTIVE RELIEF (COUNT VI) ..............................................50

X.  FIDUCIARY RELATIONSHIP (COUNT VII) .............................................52

XI.  PLAINTIFFS PLEAD A DUTY TO DISCLOSE SUFFICIENT TO STATE A DECEIT BY CONCEALMENT, CAL. CIVIL CODE 1710(3), CLAIM (COUNT XX) ....................................................53

XII.  PLAINTIFFS STATE A CLAIM UNDER GEORGIA'S RECOVERY OF EXPENSES STATUTE (COUNT XXV) ....................................................56

XIII.  PLAINTIFFS STATE CLAIMS UNDER DATA BREACH NOTIFICATION STATUTES ....................................................57

XIV.  UNJUST ENRICHMENT (COUNT III) .........................................................58

XV.  CONCLUSION ....................................................................................................59

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abellard v. Stretto, Inc.*,
  2025 WL 1674265 (C.D. Cal. Apr. 25, 2025) ...................................................... 13

*In re Accellion, Inc. Data Breach Litig.*,
  713 F. Supp. 3d 623 (N.D. Cal. 2024) .................................................. 25, 46, 47-48

*In re Adobe Sys., Inc. Priv. Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) .......................................................... 12, 51

*In re Am. Med. Coll. Agency, Inc. Customer Data Sec. Breach Litig.*,
  2021 WL 5937742 (D.N.J. Dec. 16, 2021) .......................................................... 46

*In re Ambry Genetics Breach Litig.*,
  567 F. Supp. 3d 1130 (C.D. Cal. 2021) ........................................................ *passim*

*In re Anthem Inc. Data Breach Litig.*,
  2016 WL 3029783 (N.D. Cal. May 17, 2016) ("*Anthem I*") ........................ 32, 33

*In re Anthem, Inc. Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ("*Anthem II*") ........................... 36, 37, 38

*In re Apple Inc. Device Performance Litig.*,
  386 F. Supp. 3d 1155 (N.D. Cal. 2019) .............................................................. 5

*Archambault v. Riverside Resort & Casino, Inc.*,
  2025 WL 2614044 (D. Nev. Sep. 9, 2025) ........................................................ 33

*Artzner v. A&A Exterminators, Inc.*,
  242 Ga. App. 766 (Ga. Ct. App. 2000) .............................................................. 56

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 24

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ............................................................................ 58

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
  674 F. Supp. 3d 884 (S.D. Cal. 2023) ...................................................... 45, 49-50

*Bass v. Facebook, Inc.*,
  394 F. Supp. 3d 1024 (N.D. Cal. 2019)...........................................................*passim*

*Baton v. Ledger SAS*,
  740 F. Supp. 3d 847 (N.D. Cal. 2024)..............................................17, 30, 55

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................24, 25

*Black v. IEC Grp., Inc.*,
  2024 WL 3623361 (D. Idaho July 30, 2024) ...................................................... 14

*In re Blackbaud, Inc. Customer Data Breach Litig.*,
  2021 WL 3568394 (D.S.C. Aug. 12, 2021) ........................................................ 40

*Bohnak v. Marsh & McLennan Cos.*,
  79 F.4th 276 (2d. Cir. 2023) ...............................................................27, 28, 29

*Brady v. Bayer Corp.*,
  26 Cal. App. 5th 1156 (2018)................................................................36, 39

*Branch v. Homefed Bank*,
  6 Cal. App. 4th 793 (1992)..................................................................... 34

*Brown v. Wells Fargo Bank, N.A.*,
  168 Cal. App. 4th 938 (2008)..................................................................... 52

*Bureerong v. Uvawas*,
  959 F. Supp. 1231 (C.D. Cal. 1997)................................................................ 47

*Reyes v. Nationstar Mortg., LLC*,
  2015 WL 4554377 (N.D. Cal. July 28, 2015) ...................................................... 50

*Calhoun v. Google, LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021).........................................................31-32

*In re Canon U.S.A. Data Breach Litig.*,
  2022 WL 22248656 (E.D.N.Y. Mar. 15, 2022) ................................................... 31

*In re Cap. One Consumer Data Sec. Breach Litig.*,
  488 F. Supp. 3d 374 (E.D. Va. 2020).........................................................*passim*

*City & Cnty. of S.F. v. Purdue Pharma L.P.*,
  491 F. Supp. 3d 610 (N.D. Cal. 2020).........................................................31

*Claridge v. RockYou, Inc.*,
   785 F. Supp. 2d 855 (N.D. Cal. 2011)...................................................................44

*Coene v. 3M Co. ex rel. Minn. Min. & Mfg. Co.*,
   2015 WL 5773578 (W.D.N.Y. Sep. 30, 2015)......................................................48

*Cole v. Solarius Aviation LLC*,
   2025 WL 2249740 (N.D. Cal. Aug. 6, 2025)....................................................29, 30

*Collins v. Conifer Value-Based Care*,
   2025 WL 1140788 (C.D. Cal. Feb. 28, 2025)........................................................19

*CTI III, LLC v. Devine*,
   2022 WL 1693508 (E.D. Cal. 2022) .....................................................................44

*Ctr. for Food Safety v. Perdue*,
   517 F. Supp. 3d 1034 (N.D. Cal. 2021)..................................................................23

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*,
   2025 WL 2393024 (D. Nev. Aug. 15, 2025)....................................................*passim*

*Davis v. HSBC Bank Nev., N.A.*,
   691 F.3d 1152 (9th Cir. 2012).........................................................................37-38

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
   2016 WL 6523428 (S.D. Cal. Nov. 3, 2016)..........................................................29

*E.H. v. Meta Platforms, Inc.*,
   2024 WL 557728 (N.D. Cal. Feb. 12, 2024)...........................................................38

*Ehrens v. Lutheran Church-Missouri Synod*,
   269 F. Supp. 2d 328 (S.D.N.Y. 2003) ...................................................................50

*Eisenhower Med. Ctr. v. Super. Ct.*,
   226 Cal. App. 4th 430 (2014)................................................................................42

*Elias v. Hewlett-Packard Co.*,
   2014 WL 493034 (N.D. Cal. Feb. 5, 2014)............................................................55

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
   362 F. Supp. 3d 1295 (N.D. Ga. 2019) ...........................................................12, 56

*Esparza v. Kohl's, Inc.*,
   723 F. Supp. 3d 934 (S.D. Cal. 2024) ...................................................................44

*In re Eureka Casino Breach Litig.*,
2024 WL 4253198 (D. Nev. Sep. 19, 2024)..............................................16, 32, 37

*In re Facebook Priv. Litig.*,
572 F. App'x 494 (9th Cir. 2014) ("*Facebook II*").....................................17, 32

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ("*Facebook I*").........................15-16, 35

*In re Flagstar Dec. 2021 Data Sec. Incident Litig.*,
2024 WL 5659583 (E.D. Mich. Sep. 30, 2024) ...........................................30, 32

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ...............................................................................23-24

*German by German v. Fed. Home Loan Mortg. Corp.*,
896 F. Supp. 1385 (S.D.N.Y. 1995).....................................................................48

*Gillespie v. Ormsby*,
272 P.2d 949 (1954) ...............................................................................................53

*Goz v. Allied Collection Servs., Inc.*,
812 F. App'x 544 (9th Cir. 2020).........................................................................34

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022)........................................................*passim*

*Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC*,
485 F. Supp. 3d 885 (E.D. Mich. 2020) ..............................................................52

*Hauck v. Advanced Micro Devices, Inc.*,
816 F. App'x 39 (9th Cir. 2020)...........................................................................53

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (Cal. 2009) ..................................................................................35

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (Cal. 1994) ........................................................................................35

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*,
2016 WL 2897520 (N.D. Ga. May 18, 2016) ......................................................51

*Huynh v. Quora, Inc.*,
2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ..............................................18, 27

*I.C. v. Zynga, Inc.*,
  600 F. Supp. 3d 1034 (N.D. Cal. 2022)......................................................10, 13-14

*In re Illuminate Educ. Data Sec. Incident Litig.*,
  2023 WL 3158954 (C.D. Cal. Apr. 19, 2023)............................................. 10, 13

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of
  Am. v. Brock*, 477 U.S. 274 (1986)..............................................................23

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012)........................................................35

*J.J. v. Ashlynn Mktg. Grp., Inc.*,
  749 F. Supp. 3d 1086 (S.D. Cal. 2024) .........................................................53

*Jordan v. Paul Fin., LLC*,
  745 F. Supp. 2d 1084 (N.D. Cal. 2010)..........................................................37

*Juliano v. Simpson*,
  962 N.E.2d 175 (Mass. 2012)......................................................................47

*Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*,
  391 F. Supp. 3d 959 (N.D. Cal. 2019)...........................................................25

*Kirsten v. Cal. Pizza Kitchen, Inc.*,
  2022 WL 16894503 (C.D. Cal. July 29, 2022) .............................................47

*Krottner v. Starbucks Corp.*,
  628 F.3d 1139 (9th Cir. 2010) ............................................................... 10, 11

*Landon v. TSC Acquisition Corp.*,
  2024 WL 5317240 (C.D. Cal. Nov. 1, 2024) ....................................... 19, 20, 34

*In re LastPass Data Sec. Incident Litig.*,
  2024 WL 3580646 (D. Mass. July 30, 2024) .................................................29

*Lau v. Gen Digit. Inc.*,
  2023 WL 10553772 (N.D. Cal. Sep. 13, 2023)................................................36

*Lazar v. Int'l Shoppes, LLC*,
  2025 WL 1475627 (E.D.N.Y. May 22, 2025)..................................................52

*Lerner v. McManamon*,
  2025 WL 819679 (C.D. Cal Feb. 3, 2025)......................................................55

*Lev v. Beverly Enters.-Mass., Inc.*,
  929 N.E.2d 303 (Mass. 2010)..................................................................46

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997)....................................................................54

*In re LinkedIn User Priv. Litig.*,
  2014 WL 1323713 (N.D. Cal. Mar. 28, 2014).................................36-37

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .............................................................................6, 8

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*,
  19 F.4th 58 (2d Cir. 2021)......................................................................26

*Margolis v. Apple Inc.*,
  743 F. Supp. 3d 1124 (N.D. Cal. 2024)..................................................44

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  440 F. Supp. 3d 447 (D. Md. 2020) .................................................*passim*

*Maya v. Centex Corp.*,
  658 F.3d 1060 (2011) ...............................................................................6

*McDonald v. Coldwell Banker*,
  543 F.3d 498 (9th Cir. 2008)..................................................................37

*McMorris v. Carlos Lopez & Assocs.*,
  995 F.3d 295 (2d Cir. 2021)..............................................................28, 29

*In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*,
  603 F. Supp. 3d 1183 (S.D. Fla. 2022)..............................................17, 32

*Medoff v. Minka Lighting, LLC*,
  2023 WL 4291973 (C.D. Cal. May 8, 2023)........................................6, 10

*Merlino v. City of Atlanta*,
  283 Ga. 186 (2008)..................................................................................56

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022).....................................................35

*Milan v. Clif Bar & Co.*,
  489 F. Supp. 3d 1004 (N.D. Cal. 2020).....................................................5

*Moore v. Apple, Inc.*,
   73 F. Supp. 3d 1191 (N.D. Cal. 2014)......................................................36

*In re MOVEit Customer Data Sec. Breach Litig.*,
   2024 WL 5092276 (D. Mass. Dec. 12, 2024) (*"MOVEit I"*) .................15, 28-29

*In re MOVEit Customer Data Sec. Breach Litig.*,
   2025 WL 2179475 (D. Mass. July 31, 2025) (*"MOVEit II"*)......................48, 50

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ...........................................................................8

*Owens v. Smith, Gambrell & Russell Int'l LLP*,
   2024 WL 3914663 (C.D. Cal. May 30, 2024).............................................27

*Patterson v. Med. Rev. Inst. of Am., LLC*,
   2022 WL 2267673 (N.D. Cal. June 23, 2022) .......................................14, 16

*Powell Co. v. McGarey Grp., LLC*,
   508 F. Supp. 2d 1202 (N.D. Ga. 2007) ......................................................56

*Priddy v. Zoll Med. Corp.*,
   2025 WL 975234 (D. Mass. Mar. 31, 2025)...........................................30, 34

*Prime Rate Premium Fin. Corp. v. Larson*,
   226 F. Supp. 3d 858 (E.D. Mich. 2016).....................................................50

*Ramirez v. Paradies Shops, LLC*,
   69 F.4th 1213 (11th Cir. 2023)...................................................................19

*Randall v. Mich. High Sch. Athletic Ass'n*,
   965 N.W.2d 690 (Mich. Ct. App. 2020)......................................................46

*Rejoice! Coffee Co., LLC v. Hartford Fin. Servs. Group*,
   2021 WL 5879118 (N.D. Cal. Dec. 9, 2021) ..............................................58

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015)................................................................9-10, 12

*Reuter v. Hostelling Int'l USA*,
   103 Mass. App. Ct. 1122 (2024) ................................................................46

*Rodriguez v. CRG Lynwood LLC*,
   2025 WL 2700614 (E.D. Mich. Sep. 22, 2025) ............................................8

- ix -

*Sackin v. TransPerfect Glob., Inc.*,
   278 F. Supp. 3d 739 (S.D.N.Y. 2017)................................................................27

*In re Samsung Data Sec. Breach Litig.*,
   761 F. Supp. 3d 781 (D.N.J. 2025)..................................................................14

*Schmitt v. SN Serv. Corp.*,
   2021 WL 3493754 (N.D. Cal. Aug. 9, 2021).............................................25, 29

*In re Sequoia Benefits & Ins. Data Breach Litig.*,
   2024 WL 1091195 (N.D. Cal. Feb. 22, 2024)..................................20, 21, 28

*Shea v. American Int'l Coll.*,
   2025 WL 2577196 (D. Mass. Sep. 5, 2025).....................................................34

*Shersher v. Sup. Ct.*,
   154 Cal. App. 4th 1491 (2007)........................................................................31

*In re Shield Health Care Group, Inc. Data Breach Litig.*,
   721 F. Supp. 3d 152 (D. Mass. 2024).........................................................26-27

*Smith v. Findlay Auto.*,
   2025 WL 973859 (D. Nev. Mar. 31, 2025)................................................31, 32

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
   613 F. Supp. 3d 1284 (S.D. Cal. 2020) ................................................25, 39, 44

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014) .....................................................5, 24, 55

*Spokeo, Inc. v. Robbins*,
   578 U.S. 330 (2016) ....................................................................................6, 17

*St. Aubin v. Carbon Health Techs., Inc.*,
   2024 WL 4369675 (N.D. Cal. Oct. 1, 2024).....................................................35

*Stallone v. Farmers Grp., Inc.*,
   2022 WL 10091489 (D. Nev. Oct. 15, 2022).............................................17-18, 22

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011)........................................................................22

*Stasi v. Inmediata Health Grp., Corp.*,
   501 F. Supp. 3d. 898 (S.D. Cal. 2020) ...........................................29, 35-36, 44

- x -

*Strong v. Lifestance Health Grp., Inc.*,
2025 WL 317552 (D. Ariz. Jan. 28, 2025)........................................................42

*Svenson v. Google Inc.*,
2015 WL 1503429 (N.D. Cal. Apr. 1, 2015).....................................................33

*Svenson v. Google Inc.*,
2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ..................................................31

*Tenet Healthsys. Desert, Inc. v. Blue Cross of Cal.*,
245 Cal. App. 4th 821 (2016).........................................................................54

*Terpin v. AT&T Mobility, LLC*,
399 F. Supp. 3d 1035 (C.D. Cal. 2019)............................................................45

*In re TJX Cos. Retail Sec. Breach Litig.*,
564 F.3d 489 (1st Cir. 2009) ..........................................................................49

*Torres v. Botanic Tonics, LLC*,
2023 WL 8852754 (N.D. Cal. Dec. 21, 2023) .................................................38

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..............................................................................6, 9, 26, 34

*In re UNITE HERE Data Sec. Incident Litig.*,
2024 WL 3413942 (S.D.N.Y. July 15, 2024)....................................................20

*In re USAA Data Sec. Litig.*,
621 F. Supp. 3d 454 (S.D.N.Y. 2022)....................................................26-27, 29

*W. Ins. Co. v. Frontier Homes, LLC*,
2018 WL 8220544 (C.D. Cal. Mar. 17, 2018) .................................................24

*Wall v. Wescom Cent. Credit Union*,
2024 WL 1158361 (C.D. Cal. Mar. 18, 2024) .................................................31

*Warth v. Seldin*,
422 U.S. 490 (1975) .......................................................................................23

*Webb v. Injured Workers Pharmacy, LLC*,
72 F.4th 365 (1st Cir. 2023) ..........................................................19, 27, 28, 29

*Wedlock v. Troncoso*,
712 N.Y.S.2d 328 (Richmond Cnty. Sup. Ct. 2000)...................................45-46

*Wildearth Guardians v. Chao*,
  454 F. Supp. 3d 944 (D. Mont. 2020) ......................................................................20

*Won Kyung Hwang v. Ohso Clean, Inc.*,
  2013 WL 1632697 (N.D. Cal. Apr. 16, 2013) .............................................................5

*World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*,
  66 F. Supp. 3d 1233 (N.D. Cal. 2014).....................................................................52

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017).....................................................*passim*

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  313 F. Supp. 3d 1113 (N.D. Cal. 2018)...............................................30, 45, 51, 55

*Yan Mei ZhengLawson v. Toyota Motor Corp.*,
  2018 WL 2298963 (N.D. Cal. May 21, 2018) .........................................................6

*In re Zappos.com, Inc.*,
  888 F.3d 1020 (9th Cir. 2018).............................................................6, 10, 11, 20

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
  525 F. Supp. 3d 1017 (N.D. Cal. 2021)................................................................38

**Statutes**

28 U.S.C. § 220...............................................................................................50-51

Cal. Bus. & Prof. Code § 17200 .........................................................................36

Cal. Civ. Code § 56.05.......................................................................................41

Cal. Civ. Code § 56.06.................................................................................42, 43

Cal. Civ. Code § 56.10......................................................................................43

Cal. Civ. Code § 1710.......................................................................................53

Cal. Civ. Code § 1798.81.5 .........................................................................37, 39

Cal. Civ. Code § 1798.140 ................................................................................39

Cal. Penal Code § 502 ................................................................................44, 45

Mass. Gen. Laws 93H § 1 *et seq.* .....................................................................57

N.M. Stat. 57-12C-1 *et seq.* ................................................................................57

O.C.G.A. § 13-6-11 ...................................................................................56, 57

**Other Authorities**

Fed. R. Civ. P. 57.................................................................................................51

## I.   INTRODUCTION

In December 2024, Defendants PowerSchool Holdings, Inc. and PowerSchool Group, LLC (collectively, "PowerSchool" or "Defendant") detected a massive data breach that exposed the personal information of over 70,000,000 students, teachers, and families (the "Data Breach"), which is the largest data security incident impacting the educational technology sector to date.  The Data Breach occurred because of PowerSchool's failure to adequately secure its cloud-based Student Information Systems ("SIS"), which serves as a repository for highly sensitive personally identifiable information ("PII") and personal health information ("PHI") (collectively, "Private Information") of students, parents, guardians, and educators ("Class Members"), including Plaintiffs.  The Private Information was stolen in a targeted cyberattack by known-cybercriminal group, ShinyHunters, and included, *inter alia*: names, Social Security numbers, birthdates, medical information, banking and financial information, contact information, and academic data.

PowerSchool built a multi-billion-dollar business as a leading provider of educational software services by compiling Private Information from its users. Plaintiffs were required to provide their Private Information for purposes of enrollment and/or employment with PowerSchool's school district customers, which used the Private Information for a variety of academic, medical, and administrative functions.  PowerSchool repeatedly assured Plaintiffs and Class Members that it was committed to data security.  Based on these representations, Plaintiffs and Class Members entrusted PowerSchool with their Private Information with the reasonable expectation that PowerSchool would securely maintain their data; they were wrong.

The impact of the Data Breach has been astounding, adversely impacting millions of PowerSchool's users, including current and former students, children under the age of thirteen, along with their parents, guardians, teachers, teachers' unions members, and educational staff.  Some students even received extortion demands.  As a result of PowerSchool's failure to implement basic data security

safeguards, Plaintiffs' and Class Members' Private Information is now in the hands of cybercriminals.  Plaintiffs have already suffered real harms, including: unauthorized use of their personal and financial information, identity theft, fraudulent credit and tax activity, fraudulent charges, disrupted credit histories, increased spam, lost value of their Private Information, compromised access to benefits and employment opportunities, emotional distress, out-of-pocket costs for identity theft and/or credit monitoring services, and time-consuming mitigation efforts.  Plaintiffs and Class Members also face a substantial and imminent risk of future identity theft and other fraudulent activity at the hands of cybercriminals seeking to profit from their Private Information.  The exposure of Plaintiffs' Private Information is particularly troubling, given the impact on vulnerable populations such as minors, whose information, once leaked, is more difficult to protect and will likely impact them for the rest of their lives.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

As a leading provider of educational software services, PowerSchool's customers include the country's largest schools and school districts.  *See* Consolidated Individual Users Class Action Complaint (ECF No. 259, "Master Complaint" or "MC") ¶¶3, 5, 51.  In the U.S. and Canada, more than 80% of all K-12 students use PowerSchool's software products. *Id*. ¶¶5, 51.  PowerSchool's software, including its cloud-based products, is made available to end users such as students, parents, and teachers who rely on the software for a variety of educational and administrative functions. *Id*. ¶52.  PowerSchool's SIS—which PowerSchool markets as a solution to "save time, reduce costs, improve student outcomes, and increase security"—is used by at least 15,000 schools and districts.  *Id*. ¶¶52-56.  The SIS serves as a repository for the highly sensitive Private Information that Plaintiffs and Class Members were required to provide for enrollment and employment. *Id*. ¶¶57-58.

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

PowerSchool's failure to implement and maintain adequate data security safeguards resulted in the massive Data Breach that will continue to affect indefinitely Plaintiffs and Class Members. Many Plaintiffs have already experienced incidents of actual identity theft and fraud in the wake of the Data Breach, including compromised financial accounts, fraudulent credit and tax activity, fraudulent charges, disrupted credit histories, and compromised access to benefits and employment opportunities. *See, e.g.*, *id.* ¶¶27-31, 139-44, 283, 329, 340, 346, 352, 357, 375, 399, 411, 435, 441, 503, 509, 515, 562, 581, 598, 604, 617, 635, 641 (describing incidents of identity theft, fraudulent use of Social Security numbers, hacked bank accounts, and unauthorized charges). After the Data Breach, several Plaintiffs received alerts informing them that their Private Information had been detected on the dark web.[1] *See, e.g.*, *id.* ¶¶295, 357, 399, 470, 544, 611, 635. And nearly all Plaintiffs allege they have been inundated with spam calls and phishing emails, incurred out-of-pocket expenses for identity theft and/or credit monitoring services, and/or spent time and energy attempting to mitigate the impact of the Data Breach. *See, e.g.*, *id.* ¶¶290, 302, 307, 313, 324, 340, 363, 369, 381, 387, 393, 405, 423, 427, 453, 460, 466, 476, 484, 490, 491, 520, 526, 538, 550, 556, 586, 592, 623, 647, 659, 665, 671, 677, 683, 689, 695, 700, 705, 711, 716, 722, 728, 734, 740, 746.

PowerSchool's delays in detecting and disclosing the Data Breach compounded the harms suffered by Plaintiffs and Class Members. *Id.* ¶¶28-30. Threat actors breached PowerSchool's inadequately secured systems as early as September 4, 2024, but PowerSchool failed to detect the intrusion for nearly four months and only learned of the Data Breach when it received an extortion threat from the perpetrator of the Data Breach, on or about December 28, 2024. *Id.* ¶¶10, 123, 137. PowerSchool waited until January 7, 2025 to announce that Private Information

---

[1] Terms not defined herein have the same meaning as defined in the Master Complaint. All emphasis is added unless noted, and internal quotations and citations are omitted throughout.

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

belonging to millions of students, parents, and teachers had been exposed due to the Data Breach. *Id.* ¶122. Cybercriminals used the compromised data to extort school districts for months after the Data Breach, underscoring the persistent risks Plaintiffs and Class Members continue to face. *Id.* ¶¶146-47, 158-62, 1000 (describing extortion demands to at least twenty school districts). PowerSchool's offer to provide two years of complimentary identity protection and/or credit monitoring services is woefully inadequate, because hackers may wait years to misuse the Private Information stolen in the Data Breach. *Id.* ¶¶272-79.

The Data Breach was a direct result of PowerSchool's failure to implement industry-standard cybersecurity practices. *Id.* ¶¶59-64. Contrary to its many public representations, PowerSchool "inadequately maintained its network security, its platform, and its software," making it an easy target for cybercriminals and "did not come close to implementing minimum cybersecurity protections for SIS," vastly increasing the risk of a data breach. *Id.* ¶8. Among other things, PowerSchool failed to: require multi-factor authentication; require users to change passwords and rotate credentials; restrict access to Private Information only to those who needed it for their jobs (*i.e.*, the "principle of least privileges"); utilize network segmentation; adequately train and supervise employees and vendors; timely log monitoring; and encrypt Private Information stored within its systems. *Id.* ¶¶9, 23, 130-32, 185-86, 190-94. Had even some of these basic security measures been taken by PowerSchool, the Data Breach could have been averted. *Id.* ¶9.

## III. MEET AND CONFER CONCERNING POWERSCHOOL'S MOTION TO DISMISS

On August 20, 2025 Plaintiffs conferred with PowerSchool to streamline the issues to be addressed in PowerSchool's Motion.[2] The Parties continued to confer for approximately one week. Ultimately, the Parties filed a Joint Motion dismissing

---

[2] ECF No. 285 ("Motion" or "MTD").

PLAINTIFFS' OPPOSITION TO
POWERSCHOOL'S MOTION TO DISMISS

without prejudice certain claims against PowerSchool.  ECF Nos. 307, 308 (granting joint motion).  The Parties met again on October 7, 2025, to further discuss the remaining issues.  The Parties agreed to continue their discussion in a second meeting to take place before PowerSchool files any reply in support of its Motion.

## IV.    CHOICE OF LAW

Consistent with the approach other courts have taken,[3] Plaintiffs and Defendants agree that, in the interest of efficiency, detailed choice of law analysis should be deferred to a later stage, and that the adequacy of the pleadings of at least some claims would be resolved by application of federal law, California, New York, Michigan, and Massachusetts common law, and other state statutory law.  *See* MTD at 18.  The Parties reserve the right to further litigate issues concerning choice of law as to which claims are governed by which states' common law.

Article III standing and the relevant pleading standards (here, Rule 8) are analyzed pursuant to federal law and, specifically, the law of the transferee court.  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 959 (S.D. Cal. 2014) (when interpreting federal procedural law, a transferee court in a multidistrict case looks to the law of its own circuit).

## V.    POWERSCHOOL'S RULE 12(b)(1) CHALLENGES FAIL; ALL PLAINTIFFS ESTABLISH ARTICLE III STANDING

PowerSchool tacitly concedes forty-nine Plaintiffs have alleged standing. MTD at 5-6, 9.  Thus, PowerSchool's standing arguments cannot support dismissal in full.  *Id.* at 6-18.  As for the remaining Plaintiffs, PowerSchool raises improper fact disputes.

---

[3] *See Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1008 (N.D. Cal. 2020) ("The choice-of-law issue is best resolved in this case at the class certification stage."); *Won Kyung Hwang v. Ohso Clean, Inc.*, 2013 WL 1632697, at *21 (N.D. Cal. Apr. 16, 2013) (same); *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1170 (N.D. Cal. 2019) (same).

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

To establish Article III standing, plaintiffs must "clearly . . . allege facts demonstrating:" (i) injury in fact; (ii) causation; and (iii) redressability. *See Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (2011). As such, courts typically find that "it would be premature to address [standing and class] issues at this early stage of the proceedings." *Yan Mei ZhengLawson v. Toyota Motor Corp.*, 2018 WL 2298963, at *4 (N.D. Cal. May 21, 2018).

In data breach cases, plaintiffs demonstrate injury in fact where there is (i) actual or attempted misuse or (ii) a credible threat of real and immediate harm stemming from the theft of their personal information, even if the information has not yet been misused. *In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018). Courts find a "credible threat" of "immediate harm" where the compromised data is private or sensitive. *See Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1227 (N.D. Cal. 2022) ("the injury-in-fact requirement will be satisfied when highly sensitive personal data, such as social security numbers and credit card numbers, are inappropriately revealed to the public and increase the risk of immediate future harm"); *TransUnion*, 594 U.S. at 435-37 (exposure of private data is itself a concrete harm); *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *5 (C.D. Cal. May 8, 2023) (similar).

Plaintiffs meet this standard because they provide detailed allegations explaining the theft of their sensitive Private Information. PowerSchool's challenges to these allegations fail because (i) PowerSchool repeatedly mischaracterizes Plaintiffs' core allegations and (ii) each of its arguments require factual determinations, which cannot be properly addressed at this stage.

- 6 -

## A.     All Plaintiffs Plausibly Allege Injury In Fact

PowerSchool mislabels a subset of Plaintiffs as the "No Injury Plaintiffs" and disputes whether they adequately alleged injury.   There are no "No Injury Plaintiffs"—all Plaintiffs have sufficiently alleged injury in fact.   Indeed, PowerSchool's sole basis for claiming these Plaintiffs failed to plead injury is based on the legally erroneous notion of the specificity required at this stage.

A threshold issue—that is easily satisfied here—is that one can only establish injury as to a data breach where the compromised information was sensitive.

Here, all Plaintiffs allege that they input sensitive Private Information into PowerSchool's SIS and that their Private Information was stolen in the Data Breach. MC ¶¶281-752.   The information at issue in the Data Breach was sufficiently sensitive given that it included Social Security numbers, medical information, employment information, financial information, and educational records.   *Id.* ¶¶2, 56-57.   For example, PowerSchool concedes the sufficiency of minor Plaintiff M.C.'s allegations that her Social Security number, medical information, Individualized Education Program information, and parent's contact information were input into the SIS.   *Id.* ¶378.

PowerSchool challenges whether the "No Injury Plaintiffs" allege that their sensitive information was compromised in the Data Breach.   MTD at 6-9, 11-12. This argument fails.   Many of these Plaintiffs provide specific allegations demonstrating the sensitivity of their information.   For example, former student, Plaintiff Emma Pangracs input her Social Security number, date of birth, and vaccination information into the SIS.   *Id.* ¶703.   Similarly, Plaintiff Kimberly Greer, a teacher, input her Social Security number, email and home addresses, and date of birth into the SIS.   *Id.* ¶293; *see also e.g., id.* ¶¶506-09 (Plaintiff Amy Hauser and her minor child, medical information); *id.* ¶¶396, 399 (Plaintiff David Suave and his minor child, medical information); *id.* ¶¶469-70 (Plaintiff Alysha Noble and her minor child, sensitive Private Information).

PLAINTIFFS' OPPOSITION TO
POWERSCHOOL'S MOTION TO DISMISS

PowerSchool fails to identify a single Plaintiff that does not allege that sensitive Personal Information was compromised. *Id.* ¶¶281-752. Instead, it suggests that some Plaintiffs did not provide highly specific explanations of what information precisely was compromised. This misunderstands the requisite pleading standards, "on a motion to dismiss [courts] presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561. Here, even a "general allegation" that sensitive Personal Information was compromised presumptively "embrace[s]" the more "specific facts" (*i.e.*, the precise type of information compromised) that will be demonstrated through litigation.

Despite this established standard, PowerSchool demands hyper-specific allegations of exactly what data was stolen. MTD at 6-9, 11-12. But courts in the Ninth Circuit do not require each plaintiff to tie their allegations to a personalized data breach notice. *See, e.g.*, *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036 (N.D. Cal. 2019) (finding lack of notice "does not foreclose a plausible allegation at this early stage"); *Rodriguez v. CRG Lynwood LLC*, 2025 WL 2700614, at *3 (E.D. Mich. Sep. 22, 2025) (distinguishing *Greenstein* and drawing reasonable inference in favor of plaintiff establishing injury even though breach notice stated there was only a chance plaintiff's information was breached).

Moreover, even if such specificity was sometimes required at this early stage, it certainly would not be required here. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (Even where there are heightened pleading standards, they "may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts."). That Plaintiffs do not have more precise information is a problem of PowerSchool's own making. PowerSchool has repeatedly failed to provide adequate notice of the scope of the breach and "precisely what data was accessed, viewed, downloaded, and stolen." MC ¶¶124, 140, 143. PowerSchool cannot weaponize its

- 8 -

failure to provide adequate breach notice to invent a pleading deficiency in this Rule 8 case.

**1.      Some Supposed "No Injury Plaintiffs" Allege Actual or Attempted Misuse of Their Private Information**

Several of the supposed "No Injury Plaintiffs" allege that their information has already been misused.  For example:

- Plaintiff Amy Hauser and her minor child input their Private Information into the PowerSchool SIS (including medical information).  Plaintiff Hauser alleged that she has had to respond to an increase in spam calls and has "received bills from two different credit cards that were fraudulently opened in her name." *Id*. ¶¶506-09.

- Plaintiff Melissa Gifford and her minor children input their Private Information into the PowerSchool SIS.  "Subsequent to the Data Breach . . . Plaintiff Gifford received a notification that her data was found on the dark web." *Id*. ¶¶541-44.

- Plaintiff Alysha Noble and her minor child input their sensitive Private Information into the PowerSchool SIS.  Since the Data Breach, Plaintiff Noble has learned that her data appeared on the dark web and fraudulent purchases were made on her AT&T account. *Id*. ¶¶469-70.

- PowerSchool claims "Plaintiff Charlotte Renn is an illustrative No-Injury Plaintiff."  MTD at 26.  However, PowerSchool ignores that, after inputting her Private Information into PowerSchool's SIS as a condition of her employment, she **received** a Breach Notice letter and had to cancel "multiple credit cards that had fraudulent charges entered." MC ¶¶281-83.

While not required, such allegations are more than sufficient to establish standing at this stage. *See TransUnion*, 594 U.S. at 425-26 (explaining the exposure of private data is itself a concrete harm sufficient to provide standing); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 692-93 (7th Cir. 2015) (finding injury sufficiently pled where "there [was] an objectively reasonable likelihood that"

- 9 -

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

identity theft would occur based, in part, on some plaintiffs' allegations of fraudulent charges after the breach); *Medoff*, 2023 WL 4291973, at *3 (finding injury sufficiently pled where some plaintiffs' alleged their PII was "posted on the dark web" after the breach).

PowerSchool lacks any colorable challenge to these Plaintiffs' standing. Its only argument that could even touch on these Plaintiffs' allegations is the generic suggestion that the compromised data was not sensitive enough to support a theory of misuse. That is facially incorrect. *See* Section V(A).

PowerSchool's cited cases contribute nothing to its position. *Zynga* dealt with only basic identifiers like names, emails, and phone numbers that "could [not] be used [to] make a credit inquiry, set up a new bank account or access an existing one, apply for a loan, or commit some other fraud." *See* MTD at 8 (citing *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1053 (N.D. Cal. 2022)). Similarly, in *Illuminate*, plaintiffs did not allege Social Security, credit card, or bank information was compromised because the defendants expressly informed affected individuals that no such sensitive data was ever exposed. *See id.* (citing *In re Illuminate Educ. Data Sec. Incident Litig.*, 2023 WL 3158954, at *2 (C.D. Cal. Apr. 19, 2023)).

### 2. Plaintiffs Plausibly Allege Injury Based On "Imminent" Risks of Identity Theft Or Fraud

Regardless of whether they allege actual misuse, under well-established, controlling law, Plaintiffs can establish standing by alleging an imminent risk of identity theft or fraud. *See* Section V; *Zappos*, 888 F.3d at 1027 (finding standing where "the information taken in the data breach [] gave hackers the means to commit fraud or identity theft"); *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142-43 (9th Cir. 2010) (anxiety and stress sufficient to allege injury in fact, and also finding the risk of future harm sufficient to confer standing).

Where, like here, data is stolen and is ripe for misuse, courts routinely find that plaintiffs have alleged an imminent risk. *See In re Data Breach Sec. Litig. Against*

*Caesars Ent., Inc.*, 2025 WL 2393024, at \*4 (D. Nev. Aug. 15, 2025) ("[D]istrict courts in the Ninth Circuit have focused on the nature of the information that was stolen in determining whether a plaintiff faces an imminent risk of harm.").

Plaintiffs plausibly allege that their compromised Private Information is the precise type of data that enables hackers "to commit fraud or identity theft." *Id*. For example, Plaintiff Hauser alleged that her contact information and medical information were input into PowerSchool's SIS—the same categories of data PowerSchool confirmed were involved in its Data Breach—and that she was a victim of identity theft. MC ¶¶506, 509. Several Plaintiffs have also alleged that their data has already been found on the dark web, placing them at enormous risk of fraud and identity theft. *Id.* ¶470 ("Since the Data Breach, Experian has notified Plaintiff Noble that her information has been listed on the dark web."); *id.* ¶544 (since the Data Breach, Plaintiff Gifford "received a notification [from Experian] that her data was found on the dark web"). Courts routinely credit these allegations. *See Caesars*, 2025 WL 2393024, at \*4 (finding injury in fact where users alleged data was found on the dark web after the breach).

Data like Social Security numbers is inherently ripe for misuse. However, the law does not require Plaintiffs to show that any specific data type was involved in a breach to demonstrate injury in fact. *See Zappos*, 888 F.3d at 1027 ("Although there is no allegation in this case that the stolen information included social security numbers . . . the information taken in the data breach still gave hackers the means to commit fraud or identity theft . . . ."); *Krottner*, 628 F.3d 1142-43 (finding anxiety and stress sufficient to allege injury in fact); Order Granting in Part & Den. in Part Def.'s Mot. to Dismiss Compl. at 5-6, *Rivera v. Sirva Relocation, LLC*, No. 2:24-cv-09378-FLA-MAA (C.D. Cal. Sep. 12, 2025), ECF No. 55 ("courts have found that the risk of identity theft is imminent . . . even though no social security number was taken").

PLAINTIFFS' OPPOSITION TO
POWERSCHOOL'S MOTION TO DISMISS

Defendant's citation of *Greenstein* is not to the contrary, as it merely identified Social Security numbers and credit card numbers as examples of data giving rise to an imminent risk, but explained that the inquiry turns on whether there was an "increase [in] the risk of immediate future harm to the plaintiff," based on the nature of the data released. 585 F. Supp. 3d at 1227. In applying this standard, courts have explained:

> The information taken . . . need not be sensitive to weaponize hackers in their quest to commit further fraud or identity theft. To this end . . . the rightful injury-in-fact determination is not to look at the minutia of what information had been taken — such as credit card information or social security numbers — but to specifically determine whether the data taken gave hackers the means to commit fraud or identity theft.

*Bass*, 394 F. Supp. 3d at 1035.

Here, not only was the data at issue the sort of data readily abused by wrongful actors, but it was, in fact, stolen by cybercriminals in a targeted attack. MC ¶¶21, 25, 122-33. Where data is stolen by such actors it significantly increases the imminent risk posed by the data breach. *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1316 (N.D. Ga. 2019) ("[T]he compromise of a huge amount of personally identifying information by criminal hackers presents a much more significant risk of identity fraud."); *see In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *13 (N.D. Cal. Aug. 30, 2017) (*"Yahoo I"*) (finding injury in fact established where cybercriminals stole names, emails, telephone numbers, birth dates, passwords, and account security questions); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1214-15 (N.D. Cal. 2014) (similar); *Remijas*, 794 F.3d at 693-94 ("Why else would hackers break into a store's database and steal consumers' private information? Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities.").

Plaintiffs' Private Information was stolen by a criminal actor associated with "ShinyHunters," a notorious cybercriminal group. MC ¶¶21, 25, 122-33. The

- 12 -

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

cybercriminal used stolen credentials from an employee of Movate, Inc. ("Movate"), a service provider to PowerSchool, to access SIS environments through one of PowerSchool's community-focused customer support portals, PowerSource. *See id*. Since the Data Breach, multiple school districts have been approached by cybercriminals with extortion demands stating that the stolen Private Information **remains** in the hands of cybercriminals, despite PowerSchool's public representations that it paid the hackers' ransom to avoid further exposure. *Id.* ¶¶146-47. PowerSchool has even acknowledged the ongoing risk of identity theft, stating: "As is always the case with these situations, there was a risk that the bad actors would not delete the data they stole." *Id.* ¶¶146-48.

Notably, PowerSchool ignores Plaintiffs' extensive allegations of data theft and ongoing risk of fraud by cybercriminals and, instead, cites a number of distinguishable cases to nitpick Plaintiffs' allegations. For example, PowerSchool cites the Ninth Circuit's recent *Illuminate* opinion, presumably because it involves entities in the education sector, but that is where the similarity ends. MTD at 13. Unlike here, in *Illuminate*, more than three years passed (after the breach) without **any** instances of fraud. 2023 WL 3158954, at *2. *Abellard* is easily distinguished in the same manner, as the notice plaintiffs received from defendants explicitly carved out sensitive data, like Social Security numbers or tax identification numbers. *Abellard v. Stretto, Inc.*, 2025 WL 1674265, at *5 (C.D. Cal. Apr. 25, 2025). Here, irrespective of PowerSchool's representations, the Personal Information contained in the educational records PowerSchool maintained were inherently sensitive. *See* MC ¶812 (explaining federal legislature intended to protect education record data as private). PowerSchool further relies on *Zynga* to argue that Plaintiffs lack standing, however, *Zynga* did not have access to plaintiffs' Social Security numbers, payment cards, or other sensitive financial data, whereas PowerSchool collected and accessed precisely this type of sensitive Private Information from Plaintiffs. *Zynga*, 600 F.

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

Supp. 3d at 1052.[4] Likewise, in *Black v. IEC Group, Inc.*, the defendant inadvertently disclosed plaintiffs' data, "making it unlikely the [plaintiffs'] information will be stolen and misused[,]" which the court itself distinguishes from data breaches such as PowerSchool, where there is deliberate theft of personal information. 2024 WL 3623361, at *5 (D. Idaho July 30, 2024).[5] Here, Plaintiffs' allegations that their sensitive Private Information was stolen in a targeted, criminal cyberattack and that cybercriminals have continued to threaten schools and individuals with exposure of the stolen data in ransom demands supports a reasonable inference that Plaintiffs face an imminent risk of identity theft or fraud.

Finally, some courts have also suggested that allegations of imminent risk are weaker if the plaintiff has not identified at least some instances of actual misuse of the information at issue in a data breach. In other words, if nobody's information was misused, it is less likely the plaintiff's information will be misused. Here, that consideration is a non-issue because there are many specific allegations of misuse. PowerSchool concedes that many Plaintiffs (*i.e.*, the ones PowerSchool does not label "No Injury Plaintiffs") faced actual misuse. MTD at 9.[6] In addition, as

---

[4] *See Patterson v. Med. Rev. Inst. of Am.*, *LLC*, 2022 WL 2267673, at *2 (N.D. Cal. June 23, 2022) (similarly differing from PowerSchool breach because the only information regarding the plaintiff that was "'potentially accessed by the hackers . . . consisted of a single one-page document' containing plaintiff's name, a date, the title 'Advisory,' a reference to plaintiff as the 'Insured' and the 'Patient,' the phrase 'Review Time 60 minutes,' and that the '[t]otal amount[ ] to be billed [was] $327.000[,]'" whereas PowerSchool was unable to confirm compromised data was limited to such a narrow scope).

[5] *In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781, 802-03 (D.N.J. 2025) (not denying standing merely because the plaintiffs' dark web allegations were vague, but because the record *affirmatively showed* those allegations could not be tied to the breach, confirming that their claimed injuries were not plausibly traceable to Samsung's data compromise).

[6] Several of the forty-nine Plaintiffs PowerSchool effectively concedes have experienced actual or attempted fraud. *See, e.g.*, MC ¶¶295, 352, 357, 435, 441, 503, 653.

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

discussed in Section V(A)(1), several of the supposed No Injury Plaintiffs faced misuse.

### 3.    Plaintiffs Plausibly Allege Concrete Losses

Contrary to PowerSchool's assertions, Plaintiffs also adequately allege additional grounds that independently support their standing.  Specifically, Plaintiffs allege: (i) lost time protecting themselves and their children, and the emotional distress that manifests from the knowledge of the substantial risk of identity theft that Plaintiffs face; (ii) invasion of privacy; (iii) lost benefit of the bargain; and (iv) lost value of their personal data.

**Lost Resources.**  Courts across the country routinely find allegations of lost time, money, and emotional distress sufficient to establish standing.  *See, e.g.*, *In re MOVEit Customer Data Sec. Breach Litig.*, 2024 WL 5092276, at *10 (D. Mass. Dec. 12, 2024) ("Plaintiffs have engaged in proactive and reactive mitigation efforts, such as purchasing credit freezes and monitoring services, and spending hours reviewing financial accounts — allegations sufficient to confer standing in claiming damages."); *Bass*, 394 F. Supp. 3d at 1035 (finding "loss of time establishes injury in fact" where plaintiff alleged lost time from uptick in emails, recognizing that "[a]s consequences of this data breach continue to unfold, so too, will plaintiff's invested time").  Plaintiffs' allegations include countless examples of their lost time and money as a result of the Data Breach.  MC ¶¶284, 290, 296, 302, 307, 313, 318, 329, 334, 340, 346, 352.

**Invasion of Privacy.**  Additionally, the loss of privacy Plaintiffs suffered as a result of PowerSchool's Data Breach is *itself* a concrete injury sufficient to confer standing.[7]  *See In re Facebook, Inc.*, *Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) ("*Facebook I*") ("[C]ourts have often held that this

---

[7] Congress has passed laws, like the Family Education Rights and Privacy Act, to protect the privacy and prevent the dissemination of information contained in educational records—recognizing the privacy interest in this data. *See id.* ¶812.

- 15 -    PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

particular type of intangible injury – disclosure of sensitive private information, even without further consequence – gives rise to Article III standing.").  Here, each Plaintiff alleges this precise form of harm, *i.e.*, the dissemination of their sensitive Private Information to (criminal) unauthorized third parties.  MC ¶¶281-752 (explaining Plaintiffs "would not have allowed [their] PII to be shared with or accessible by PowerSchool if [they] had known PowerSchool would not maintain sufficient data security safeguards to adequately protect [their] PII").

**Lost Value.**  Plaintiffs also allege that they have lost the monetary value of their data. *See id.* ¶835.[8]  "[T]he growing trend across courts that have considered this issue is to recognize the lost property value of this information." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020).  Courts in this Circuit have also recognized that, although "[t]he value of personal information in the digital world is fundamentally different from what might be considered a loss of value in a 'typical' market[,] [a d]ata [b]reach devalue[s p]laintiffs' PII by interfering with their fiscal autonomy." *In re Eureka Casino Breach Litig.*, 2024 WL 4253198, at *5 (D. Nev. Sep. 19, 2024); *Yahoo I*, 2017 WL 3727318, at *13-14 ("Plaintiffs' allegations that their PII is a valuable commodity, that a market exists for [p]laintiffs' PII, that [p]laintiffs' PII is being sold by hackers on the dark web, and that [p]laintiffs have lost the value of their PII as a result, are sufficient to plausibly allege injury arising from the [d]ata [b]reaches."); *Caesars*,

---

[8] PowerSchool relies on *Patterson*, however, this case is highly distinguishable. MTD at 14-16.  In *Patterson,* the only "information regarding [the plaintiff] that was 'potentially accessed by the hackers . . . consisted of a single one-page document' containing Patterson's name, a date, the title 'Advisory,' a reference to Patterson as the 'Insured' and the 'Patient,' the phrase 'Review Time 60 minutes,' and that the '[t]otal amount[ ] to be billed [was] $327.000.'" 2022 WL 2267673, at *2.  Unlike here, none of his sensitive personal data was breached, such as Patterson's Social Security number, banking information, credit card information, home address, birth date, driver's license number, disciplinary history, legal records, or substantive medical information.

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

2025 WL 2393024, at *5 ("Plaintiffs have plausibly alleged injury in the form of diminution in value of PII by alleging the existence of a market for their stolen personal information and need not also allege an impairment of their ability to participate in that market."). Indeed, in recent cases, courts have viewed lost value as evidence of a concrete injury in fact. *See In re Facebook Priv. Litig.*, 572 F. App'x 494 (9th Cir. 2014) ("*Facebook II*") (finding that plaintiffs "were harmed both by the dissemination of their personal information and by losing the sales value of that information"). Here, Plaintiffs pled that there is a "marketplace" for their data (MC ¶267), and that Plaintiffs suffered "diminution in value of their privacy and confidentiality of the stolen Private Information." *Id.* ¶922. This is more than enough to establish standing at this stage.

## B. Plaintiffs' Injuries Are Traceable To PowerSchool's Misconduct

Plaintiffs easily satisfy Article III's causation requirement by alleging a causal connection between their injuries and PowerSchool's failure to adequately safeguard their Private Information. Article III does not require PowerSchool's conduct be the most immediate—or even a proximate—cause of Plaintiffs' injuries; it requires only that those injuries be "fairly traceable" to the Data Breach and PowerSchool's failure to prevent it. *See Spokeo*, 578 U.S. at 338. Plaintiffs can establish traceability by showing that there is a "substantial likelihood that defendant's conduct caused the harm," which is a "less strict" standard than causation in the traditional tort context. *See Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 875-86 (N.D. Cal. 2024); *see also In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1205 (S.D. Fla. 2022) ("[F]airly traceable does not mean certainly traceable."). Plaintiffs meet that standard.

Ninth Circuit courts routinely find that traceability is satisfied where, as here, Plaintiffs received "a letter that [they were] subject to the Data Breach." *Stallone v. Farmers Grp., Inc.*, 2022 WL 10091489, at *9 (D. Nev. Oct. 15, 2022) ("Here, the alleged harms are fairly traceable to Defendants because Defendants notified Plaintiff

- 17 -

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

in a letter that he was subject to the Data Breach."); *see also, e.g.*, *Huynh v. Quora, Inc.*, 2019 WL 11502875, at *4 (N.D. Cal. Dec. 19, 2019) ("These alleged harms are fairly traceable to defendant because defendant notified each of the plaintiffs that they may have been the subject of the data breach." (citation modified)).  Here, almost all of the named Plaintiffs allege receipt of a notice informing them that their Private Information was compromised in PowerSchool's Data Breach, which should end the inquiry concerning traceability.[9]  In its Data Breach Notice, PowerSchool recognized that stolen Private Information can be used to perpetrate identity theft and other forms of fraud, warning Plaintiffs "to remain vigilant against incidents of identity theft and fraud by reviewing account statements for suspicious activity." *See* MC ¶123, n.69 (citing PowerSchool Data Breach Notice).  And true to the warnings of industry experts (*id.* ¶¶266-74), victims of the Data Breach have already experienced widespread fraud in the wake of the Data Breach—including the same types of fraud and identity theft PowerSchool warned Plaintiffs and Class Members might result from criminal misuse of their stolen data.  *See id.* ¶123, n.69.  But even the few Plaintiffs who do not specifically allege receipt of a Data Breach Notice have standing; courts in the Ninth Circuit have expressly recognized that "the lack of a notice alone does not foreclose [the plaintiff] from establishing standing." *Bass*, 394 F. Supp. 3d at 1036.

Plaintiffs' alleged injuries are also temporally and logically linked to the type of Private Information stolen in the Data Breach.  *See, e.g.*, Section V(A); MC ¶¶283, 340, 346, 352, 357, 375, 399.  The close connection between the timing of the Data Breach and these instances of identity theft and fraud satisfy the traceability requirement.  *See, e.g.*, MC ¶¶27-31, 139-44, 283, 329, 340, 346, 352, 357, 375, 399,

---

[9] *See, e.g.*, MC ¶¶282, 288, 294, 300, 305, 311, 316, 322, 327, 332, 338, 344, 350, 355, 361, 367, 373, 379, 385, 391, 397, 403, 409, 415, 421, 427, 433, 439, 445, 458, 464, 475, 482, 489, 495, 501, 507, 513, 524, 530, 536, 542, 548, 554, 560, 566, 573, 579, 584, 590, 596, 602, 609, 615, 621, 627, 633, 639, 645, 651, 657, 663, 669, 675, 681, 687, 693, 709, 720, 726, 732, 738, 744.

411, 435, 441, 503, 509, 515, 562, 581, 598, 604, 617, 635, 641; *see also Collins v. Conifer Value-Based Care*, 2025 WL 1140788, at *5 (C.D. Cal. Feb. 28, 2025) (finding traceability satisfied where plaintiffs "began experiencing financial fraud, unsolicited text messages and phone calls, and credit inquiries" shortly after a data breach).  For example, the Data Breach occurred in December 2024 and Plaintiff Volpert alleges that a fraudulent tax return was filed in Spring 2025 using her name. *See* MC ¶435; *see also Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 374 (1st Cir. 2023) ("There is an obvious temporal connection between the filing of the false tax return and the timing of the data breach.").  Again, PowerSchool's own Data Breach Notice noted the risks of identity theft and fraud.  *See* MC ¶123, n.69. PowerSchool offered credit-monitoring and identity-protection services to Plaintiffs and Class Members to mitigate the risk of fraud and the sale of their Private Information on the dark web.  *See* Breach Notice.  It should not now be allowed to contradict these same warnings.  This is particularly true given that courts recognize the reality that "[w]e cannot expect a [party] in [plaintiff's] position to plead with exacting detail every aspect of" facts relevant to a data breach. *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1220 (11th Cir. 2023).

Finally, courts routinely find that traceability is satisfied in the data breach context where, as here, Plaintiffs allege their Private Information was made available for sale on the dark web following the Data Breach.  *See, e.g.*, *Landon v. TSC Acquisition Corp.*, 2024 WL 5317240, at *4 (C.D. Cal. Nov. 1, 2024) ("[Plaintiff's] allegation that his data was posted on the Dark Web helps to bridge the gap created by [p]laintiff's failure to allege an actual theft, only a potential one.").  Like the inference drawn for the injury in fact requirement, the reasonable inference here is that [plaintiff's] social security number was posted on the Dark Web because it was taken during the Data Breach."); *Yahoo I*, 2017 WL 3727318, at *13 (explaining that plaintiffs alleged their stolen information appeared on the dark web and that "once stolen data have been sold or posted on the Web, fraudulent use of that information

may continue for years"). Here, Plaintiffs specifically allege that their Private Information was posted for sale on the dark web after being stolen in the Data Breach. *See, e.g.*, MC ¶¶27, 31, 147, 162, 290, 295, 357, 399, 470, 544, 562, 611, 635. Plaintiffs further allege that ShinyHunters, the cybercriminals responsible for the Data Breach, regularly post for sale on the dark web stolen information acquired via past data breaches. *See, e.g.*, *id*. ¶¶171-84. These allegations lead to "the reasonable inference" that Plaintiffs' Private Information "was posted on the Dark Web because it was taken during the Data Breach." *Landon*, 2024 WL 5317240, at *4.

PowerSchool's specious argument that the existence of other prior data breaches means Plaintiffs' injuries cannot be fairly traced to the instant Data Breach (MTD at 11-12) fails. As courts have repeatedly explained: "That hackers might have stolen [p]laintiffs' PII in unrelated breaches, and that [p]laintiffs might suffer identity theft or fraud caused by the data stolen in those other breaches (rather than the data stolen from [the defendant]), is less about standing and more about the merits of causation and damages." *Zappos*, 888 F.3d at 1020; *see also In re UNITE HERE Data Sec. Incident Litig.*, 2024 WL 3413942, at *4 (S.D.N.Y. July 15, 2024) ("The fact that there have been other large data breaches, and the speculative possibility that plaintiffs were subjected to them, are matters well beyond the allegations in the complaint and cannot be used to support defendant's motion to dismiss."). The Ninth Circuit further explained in *Zappos*: "That some other breach might also have caused the plaintiffs private information to be exposed does nothing to negate the plaintiffs' standing to sue' for the breach in question." 888 F.3d at 1029.

Moreover, Plaintiffs are not required to allege PowerSchool's actions were the last step in the chain of causation. A "causal chain does not fail simply because it has several links." *In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *2 (N.D. Cal. Feb. 22, 2024); *see also Wildearth Guardians v. Chao*, 454 F. Supp. 3d 944, 946-47 (D. Mont. 2020) (presence of third parties in the chain of causation does not defeat traceability).

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

PowerSchool ignores Plaintiffs' well-pleaded allegations and relies on inapposite cases. The primary (and distinguishable) authority PowerSchool relies on, *Greenstein* (*see* MTD at 11-12), is an outlier that involved much less sensitive information than is at issue here. 585 F. Supp. 3d at 1231. In that case, the compromised information was limited to names, addresses, and driver's license numbers. *Id.* Because "it would be difficult to commit fraud or identity theft with names, addresses, and driver's license numbers alone[,]" the court found that "any supplemental, highly sensitive information used to commit future acts of identity theft or fraud could not be specifically traced back to the data exposed [in the data breach]." *Id*.

Finally, PowerSchool's speculation that only theft of certain types of Private Information can lead to fraud or identity theft is incorrect. *See* MTD at 11-13. Courts routinely recognize that "[t]he information taken [in a data breach] need not be sensitive to weaponize hackers in their quest to commit further fraud or identity theft." *Bass*, 394 F. Supp. 3d at 1034; *see also* MC ¶¶245-50 (discussing cybercriminals' use of Fullz packages to commit fraud and identity theft without sensitive information). Regardless, Plaintiffs allege that their highly sensitive Private Information *was* stolen in the Data Breach, including, *inter alia*, Social Security numbers, birth dates, phone numbers, email addresses, medical information, and banking and financial information. *See* MC ¶¶2, 143-44. "Given the scope and sensitivity of the stolen PII, it is reasonable to infer that such information could plausibly have been used to commit the fraud that [plaintiff] suffered." *Sequoia*, 2024 WL 1091195, at *2; *see also id.* (finding that a plaintiff who alleged theft from his bank account was not required to show that his banking or credit card information was accessed in the data breach); *Marriott*, 440 F. Supp. 3d at 467 (finding that fraudulent charges on a personal checking account and opening of "accounts for credit cards, consolidated loans, consumer accounts, and other lines of credit" were

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

fairly traceable to a data breach, even though no Social Security numbers or banking information were accessed in the data breach).

PowerSchool's speculation is also irrelevant to the resolution of a motion to dismiss. *See Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable."); *see also, e.g.*, *Yahoo I*, 2017 WL 3727318, at *18-19 (injury was fairly traceable where hackers used information accessed in the data breach to procure additional other sensitive personal information not accessed in the data breach).

Plaintiffs have adequately alleged concrete and cognizable injuries that are fairly traceable to PowerSchool's failure to adequately secure and protect their Private Information.

### C.   All Plaintiffs Have Standing To Seek Injunctive Relief

Because Plaintiffs sufficiently allege actual and imminent harm (*see* Section V(A)), Plaintiffs establish standing to pursue injunctive relief. Plaintiffs' harms flow from PowerSchool's failure to take the steps necessary to safeguard their Private Information, which PowerSchool continues to maintain. Worse, PowerSchool has failed to provide adequate notice of the full scope of the breach and any purported remedial measures, meaning Plaintiffs' data may still be at risk within PowerSchool's systems. *See* MC ¶¶124, 140, 143. "These allegations are sufficient, at this stage in the proceedings, to demonstrate standing for injunctive relief." *Caesars*, 2025 WL 2393024, at *7 (accepting plaintiffs' allegations that "Caesars' inadequate security protocols remain in place today and that Caesars continues to hold their data"); *Stallone*, 2022 WL 10091489, at *9 (accepting plaintiffs' allegations where plaintiff's information could be "obtained again in the same unauthorized manner").

PLAINTIFFS' OPPOSITION TO
POWERSCHOOL'S MOTION TO DISMISS

**D.** **Plaintiff Providence Teacher's Union Has Associational and Organizational Standing**

Plaintiff Providence Teacher's Union ("PTU") has sufficiently alleged associational standing. PowerSchool overstates the holding of *Warth v. Seldin*, 422 U.S. 490, 492 (1975). There is no black letter rule that an organization can never assert claims for damages on behalf of its members. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 288 (1986) (distinguishing *Warth*). An organization has standing to bring a claim if it "can litigate [its] case without the participation of those individual claimants and still ensure that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Id*. Here, Plaintiffs allege common questions of law and fact, including concerning damages. MC ¶763. These questions can be answered without the participation of individual members of the unions. In the alternative, Plaintiff PTU has sufficiently pled standing for injunctive and declaratory relief because its members have standing as discussed in Section V above. Associational standing is appropriate.

Plaintiff PTU has also sufficiently alleged organizational standing. As a professional organization, Plaintiff PTU's mission is to serve and represent its members in their professional capacity. *See* MC ¶749. Defendants' misconduct led Plaintiff PTU to "take measures that would not otherwise be necessary," in furtherance of that mission. *Id.* ¶34. At the pleading stage, a broad allegation of a diversion-of-resources injury is sufficient to grant standing. *Ctr. for Food Safety v. Perdue*, 517 F. Supp. 3d 1034, 1041 (N.D. Cal. 2021). Plaintiff PTU has "expend[ed] time and resources to assist members in mitigating the impact of the breach …. [and] address members' concerns and experiences[.]" MC ¶750. This case is not comparable to *Food & Drug Administration v. Alliance for Hippocratic Medicine*, where the Court found that a plaintiff association cannot "spend its way into standing" by investigating and advocating against actions it disagrees with. 602 U.S.

- 23 -

367, 370 (2024). Here, Plaintiff PTU alleges diversion of resources in direct response to an injury specific to members of the PTU. *See* MC ¶¶34, 750. This is sufficient to grant organizational standing at the pleading stage.

## VI. POWESCHOOL'S RULE 12(b)(6) ARGUMENTS FAIL

### A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "If [the plaintiff's] explanation is plausible, [the] complaint survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation." *Id.* Thus, "'[a] Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not . . . resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses.'" *W. Ins. Co. v. Frontier Homes, LLC*, 2018 WL 8220544, at *2 (C.D. Cal. Mar. 17, 2018).

In assessing a motion to dismiss, courts must construe the complaint liberally, "assuming that all the [factual] allegations in the complaint are true[,]" and interpret any allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 554-56; *see also id.* at 556 ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.").

### B. Plaintiffs Adequately Allege Negligence Damages

PowerSchool solely challenges Plaintiffs' damages allegations, asserting that "[m]ost Plaintiffs do not plead . . . the sort of damages required to sustain their negligence and consumer protection claims." MTD at 2. However, Plaintiffs adequately allege the requisite type of "appreciable, non-speculative" damages (*i.e.*, harm). *Sony*, 996 F. Supp. 2d at 966. By challenging *only* the sufficiency of Plaintiffs' damages allegations (*see* MTD at 2, 19-22), PowerSchool concedes that—

- 24 -

as outlined by Plaintiffs in the MC—it had a duty of care, breached that duty of care, and was the proximate cause of Plaintiffs' injuries. *See Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959, 969 n.3 (N.D. Cal. 2019) (finding that defendant waived arguments first raised in their reply brief regarding whether allegations satisfied specific element of claim).

Throughout the MC Plaintiffs plausibly and adequately allege that the Data Breach compromised their highly sensitive Private Information (*see, e.g.*, MC at ¶¶2, 57, 142, 144) and how they have been victimized as a result of the Data Breach. *See, e.g., id.* ¶¶27-31, 139-44, 283, 329, 340, 346, 352, 357, 375, 399, 411, 435, 441, 503, 509, 515, 562, 581, 598, 604, 617, 635, 641. In evaluating PowerSchool's Motion, the Court must construe Plaintiffs' allegations as true. *See Twombly*, 550 U.S. at 555. A motion to dismiss is not the appropriate vehicle to resolve factual disputes about the scope of the Data Breach, its effect on Plaintiffs, or Plaintiffs' corresponding damages. As set forth below, Plaintiffs have plausibly and adequately alleged damages resulting from the Data Breach.

Courts across the country generally find that "[i]ncreased time spent monitoring one's credit and other tasks associated with responding to a data breach" is "specific, concrete, and non-speculative." *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1296 (S.D. Cal. 2020); *see also, e.g., In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 637 (N.D. Cal. 2024), *reconsideration denied*, 2024 WL 4592367 (N.D. Cal. Oct. 28, 2024) ("[A] growing number of courts now recognize that individuals may be able to recover Consequential Out of Pocket Expenses that are incurred because of a data breach, including for time spent reviewing one's credit accounts.'"); *Schmitt v. SN Serv. Corp.*, 2021 WL 3493754, at *6 (N.D. Cal. Aug. 9, 2021) ("The money and time plaintiffs spent on credit monitoring are both cognizable forms of harm.").

The Supreme Court has explained that, where, as here, plaintiffs allege separate, present harms caused by the exposure to the risk of future harm itself, those

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

harms also establish standing to pursue damages. *See TransUnion*, 594 U.S. at 436-37; *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021). Here, Plaintiffs allege the following damages: "(a) actual identity theft, fraud, and other misuse; (b) the loss and diminution in value of their privacy and confidentiality of the stolen PII; (c) the risk of compromise, publication, and/or theft of their PII, including illegal sales on the black market; (d) the imminent and impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals; (e) increased incidents of phishing emails and spam calls, texts, and/or emails; (f) mitigation expenses associated with detection, prevention, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (g) out-of-pocket costs associated with purchasing credit monitoring and identity theft prevention services; (h) time spent on exploring or obtaining credit monitoring, identity theft insurance, and credit freezes and unfreezes and other matters related to the Data Breach; (i) expenses and time spent initiating fraud alerts; (j) decreased credit scores and ratings; (k) lost work time; (l) the diminished value of the services Plaintiffs and Class Members paid for and received; [and] (m) continued risk of exposure to hackers and thieves of their PII[.]" MC ¶795. These damages are may be grouped into the following six categories, which all Plaintiffs have alleged and each of which standing alone is sufficient to establish Plaintiffs' negligence damages: (1) future harm; (2) lost time; (3) lost benefit of the bargain; (4) diminished value of their Private Information; (5) emotional distress; and (6) invasion of privacy.

### 1.    Continued Risk of Future Harm

Plaintiffs may recover damages "for a risk of future harm, *standing alone*, if [they] allege[] an expense is 'reasonably certain to be incurred' by virtue of the risk." *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 469 (S.D.N.Y. 2022); *see also In re Shield Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 161 (D. Mass. 2024) ("Where [p]laintiffs show a substantial risk of harm manifesting in the

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

future, the element of injury and damage will have been satisfied . . . .").[10]  With respect to future harm in the data breach context, the court's reasoning in *Bass* is particularly instructive: "Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in [p]laintiffs' complaints."  *Bass*, 394 F. Supp. 3d at 1035; *see also Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 288 (2d. Cir. 2023) ("[T]he most important factor in determining whether a plaintiff whose PII has been exposed has alleged an injury in fact is whether the data was compromised as the result of a targeted attack intended to get PII.").  The *Bass* court thus concluded that, given "the obvious goal of taking personal information, the nature and amount of information taken, and the extended phishing emails which have subsequently followed the attack, plaintiff . . . has plausibly shown he is at risk of further fraud and identity theft."  394 F. Supp. 3d at 1035; *see also, e.g.*, *Owens v. Smith, Gambrell & Russell Int'l LLP*, 2024 WL 3914663, at *5 (C.D. Cal. May 30, 2024) (noting that "the hackers persisted in their attack for over a week[,]" demonstrating that "the breach was intentional and designed to access the most sensitive information available on [d]efendant's server"); *Huynh*, 2019 WL 11502875, at *5 ("Between the obvious goal of taking personal information and the nature and amount of information taken, [p]laintiffs have plausibly shown that they are at risk of further fraud and identity theft."); *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 746 (S.D.N.Y. 2017) ("The most likely and obvious motivation for the hacking is to use [p]laintiffs' [PII] nefariously or sell it to someone who would.").

As set forth above, Plaintiffs have sufficiently alleged that they presently suffer an imminent and substantial threat of identity theft and fraud resulting from their

---

[10] To determine the existence of future harm the First Circuit considers "(1) whether the data at issue was deliberately taken by thieves intending to use the information to their financial advantage, (2) whether any other plaintiffs have shown actual misuse of their data, increasing the risk that all plaintiffs will face the same, and (3) the sensitivity of the information." *Webb*, 72 F.4th at 375.

- 27 -

Private Information being stolen and posted on the dark web by the hackers who intend to sell it.  *See, e.g.*, MC ¶¶27-31, 139-44, 283, 329, 340, 346, 352, 357, 375, 399, 411, 435, 441, 503, 509, 515, 562, 581, 598, 604, 617, 635, 641; *see* also *Bohnak*, 79 F.4th at 287 ("For example, fraudulent charges to the credit cards of *other* customers impacted by the same data breach, or evidence that a plaintiff's PII is available for sale on the Dark Web, can support a finding that a plaintiff is at a substantial risk of identity theft or fraud."); *McMorris v. Carlos Lopez & Assocs.*, 995 F.3d 295, 302 (2d Cir. 2021) ("[T]he dissemination of high-risk information such as Social Security numbers . . . especially accompanied by victims' names – makes it more likely that those victims will be subject to future identity theft or fraud").

Further, Plaintiffs do not rely on the future risk of harm.  Rather, Plaintiffs' allegations plausibly allege actual misuse resulting from the Data Breach.  *See, e.g.,* MC ¶¶27-31, 139-44, 283, 329, 340, 346, 352, 357, 375, 399, 411, 435, 441, 503, 509, 515, 562, 581, 598, 604, 617, 635, 641; *see also Sequoia*, 2024 WL 1091195, at *2 (explaining "actual misuse of PII is a concrete injury") (cleaned up); *Webb*, 72 F.4th at 373 ("Our data security precedents support the conclusion that actual misuse of PII may constitute an injury in fact.").  Even where concrete injuries were already suffered, PowerSchool mischaracterizes certain Plaintiffs as "No-Injury Plaintiffs" such as Plaintiff Renn, who was forced to cancel and request reissuance of multiple credit cards that had fraudulent charges entered, among other things.  MC ¶¶281-86.

Despite PowerSchool's efforts to categorize and distinguish between Plaintiffs throughout its Motion, courts have never required every plaintiff in a data breach class action to allege actual misuse harms.  *See, e.g.*, *Bohnak*, 79 F.4th at 288 (finding plaintiffs' allegation sufficient to survive a motion to dismiss where "some part of the compromised dataset has been misused—even if a plaintiff's own data has not").  *MOVEit I*, 2024 WL 5092276, at *8 (finding that plaintiffs' allegations "adequately support[ed] an inference, based on the claim that there was a single breach, that actual misuse of *some* plaintiffs' data means that *all* plaintiffs face a substantial and material

- 28 -

PLAINTIFFS' OPPOSITION TO
POWERSCHOOL'S MOTION TO DISMISS

risk of future harm"). Just like in *MOVEit I*, Plaintiffs' allegations more than suffice to establish cognizable damages.

### 2.    Lost Time

"[C]ircuit courts have roundly concluded" that a plaintiff's injury "based on [their] lost time spent monitoring [their] accounts following [a] data breach . . . is sufficiently concrete for standing to pursue damages." *Cole v. Solarius Aviation LLC*, 2025 WL 2249740, at *1 (N.D. Cal. Aug. 6, 2025). "[L]oss of time establishes injury in fact" in the data breach context because, "[a]s consequences of [a] data breach continue to unfold, so too, will [a] plaintiff's invested time" spent mitigating the resulting damages. *Bass*, 394 F. Supp. 3d at 1035; *see also, e.g.*, *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *8 (S.D. Cal. Nov. 3, 2016) ("Here, the Court has concluded that [p]laintiff's allegations that he lost time and money in the process of mitigating financial losses caused by the . . . breach are sufficient to state an injury in fact."); *Schmitt*, 2021 WL 3493754, at *6 ("The money and time plaintiffs spent on credit monitoring are both cognizable forms of harm."); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d. 898, 912 (S.D. Cal. 2020) (finding that spending time "'dealing with' and 'addressing' issues arising from [defendant's] breach notification" qualifies as lost time damages); *McMorris*, 995 F.3d at 303; *USAA*, 621 F. Supp. 3d at 464; *Bohnak,* 79 F.4th at 290; *Webb*, 72 F.4th at 377 ("Because this alleged injury [of lost time] was a response to a substantial and imminent risk of harm, this is not a case where the plaintiffs seek to manufacture standing . . . ."); *In re LastPass Data Sec. Incident Litig.*, 2024 WL 3580646, at *5 (D. Mass. July 30, 2024) ("Plaintiffs have plausibly shown they face a real and imminent threat of misuse of their data, so their lost time constitutes injury in fact.").

Plaintiffs' well-pleaded allegations preclude PowerSchool's meritless claim that they have "manufactured standing." *See* MTD at 14. Courts in this District have repeatedly found that where, as here, a plaintiff's lost time injury "was a response to

a substantial and imminent risk of harm, [it] is not a case where the plaintiffs seek to manufacture standing by incurring costs in anticipation of non-imminent harm." *Cole*, 2025 WL 2249740, at *2. Here, Plaintiffs allege that they entrusted PowerSchool with, *inter alia*, their Social Security numbers, medical information, and credit card information, as well as contact information and dates of birth. *See, e.g.*, MC ¶57. PowerSchool's Data Breach Notice explicitly stated that "the types of information exfiltrated in the incident included one or more of the following": contact information, date of birth, Social Security number, and medical information. *Id.* ¶¶ 121-23. Plaintiffs further allege that the Data Breach has caused them numerous present harms and injuries, including fraudulent charges on their credit and debit cards, opening of fraudulent financial accounts under their names, identity theft, filing of fraudulent tax returns, and the presence of their Private Information on the dark web. *See, e.g.*, *id.* ¶¶27-31, 139-144, 283, 329, 340, 346, 352, 357, 375, 399, 411, 435, 441, 503, 509, 515, 562, 581, 598, 604, 617, 635, 641. These allegations are more than sufficient to allege damages resulting from lost time. *Cf. Cole*, 2025 WL 2249740, at *3.

### 3.    Lost Benefit of the Bargain

As the court in *Yahoo II* explained, where a plaintiff expects to receive secure services that they would not have signed up for absent the defendant's assurances concerning privacy and security, they have "lost the benefit of the bargain" and suffered cognizable injury. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1130 (N.D. Cal. 2018) ("*Yahoo II*"); *see also Baton*, 740 F. Supp. 3d at 877 (same); *Priddy v. Zoll Med. Corp.*, 2025 WL 975234, at *8 (D. Mass. Mar. 31, 2025) ("Plaintiffs' allegations of a lost benefit of the bargain are sufficiently concrete injuries . . . ."); *In re Flagstar Dec. 2021 Data Sec. Incident Litig.*, 2024 WL 5659583, at *5 (E.D. Mich. Sep. 30, 2024) ("Overpayment and loss of benefit of the bargain are cognizable injuries."). That is precisely what Plaintiffs allege here. *See, e.g.*, MC ¶¶37, 1027, 1048.

- 30 -

PowerSchool argues that Plaintiffs' allegations are insufficient because Plaintiffs did not pay PowerSchool directly and PowerSchool thus did not confer a direct benefit on them. *See* MTD at 29-30. But numerous courts in the Ninth and Second Circuits have considered and rejected this exact argument. *See, e.g.*, *Wall v. Wescom Cent. Credit Union*, 2024 WL 1158361, at *7 (C.D. Cal. Mar. 18, 2024) (rejecting defendant's argument that plaintiff's "benefit-of-the-bargain argument fails 'because [p]laintiff never entered into any transaction . . . , contract, or bargain with [defendant]; and there is no legal authority supporting [p]laintiff 's position that benefit-of-the bargain losses apply to a defendant that was not party to an underlying transaction.'"); *Smith v. Findlay Auto.*, 2025 WL 973859, at *4 (D. Nev. Mar. 31, 2025) ("A significant body of case law in the Ninth Circuit supports a benefit-of-the-bargain theory based on an implied contract that a defendant will safeguard PII when it is provided by a customer in exchange for goods and services."); *see also City & Cnty. of S.F. v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 695 (N.D. Cal. 2020) (collecting UCL cases and finding that a "defendant can be liable for restitution under the UCL even if it is not the direct recipient of a plaintiff's misappropriated funds"); *Shersher v. Super. Ct.*, 154 Cal. App. 4th 1491, 1500 (2007) (explaining that the UCL "requires only that the plaintiff must once have had an ownership interest in the money or property acquired by the defendant through unlawful means"); *In re Canon U.S.A. Data Breach Litig.*, 2022 WL 22248656, at *10 (E.D.N.Y. Mar. 15, 2022) ("Lost benefit of the bargain is a viable theory of injury for breach of contract and unfair competition.").

### 4. Diminished Value of Private Information

In keeping with the "growing trend across courts . . . to recognize the lost property value of [personal] information[,]" *Marriott*, 440 F. Supp. 3d at 461, "[t]he Ninth Circuit has recognized diminution in value of personal information as a viable theory of damages under state contract law." *Svenson v. Google Inc.*, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016); *see also Calhoun v. Google, LLC*, 526 F.

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

Supp. 3d 605, 636 (N.D. Cal. 2021) ("[T]he Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *Facebook II*, 572 F. App'x at 494 (plaintiffs plausibly alleged that they experienced harm when their personal information was disclosed in a data breach and they lost the sales value of their personal information); *Yahoo I*, 2017 WL 3727318, at *13 (plaintiffs adequately alleged injury in fact based on the loss of value of their personal information); *In re Anthem Inc. Data Breach Litig.*, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016) ("*Anthem I*") (plaintiffs plausibly alleged injury based on the loss of value of their personal information).  Courts in the Ninth Circuit and elsewhere increasingly recognize that:

> [T]he value of consumer personal information is not derived solely (or even realistically) by its worth in some imagined market-place where the consumer actually seeks to sell it to the highest bidder, but rather in the economic benefit the consumer derives from being able to purchase goods and services remotely and without the need to pay in cash or a check.

*Marriott*, 440 F. Supp. 3d at 461-62; *see also Eureka,* 2024 WL 4253198, at *5 ("The value of personal information in the digital world is fundamentally different from what might be considered a loss of value in a 'typical' market."); *Smith*, 2025 WL 973859, at *4 (explaining that "potential future misuse of [p]laintiffs' PII interferes with [plaintiffs'] fiscal autonomy . . . [and] impairs their ability to participate in the economic marketplace"); *Flagstar*, 2024 WL 5659583, at *5; *Mednax*, 603 F. Supp. 3d at 1204 ("[T]he [c]ourt joins more recent decisions holding that, in the data breach context, plaintiffs need not reduce their PHI or PII to terms of dollars and cents in some fictitious marketplace where they offer such information for sale to the highest bidder.").

Ignoring this weight of authority, PowerSchool nevertheless insists that Plaintiffs fail to plausibly allege diminished value of their Private Information because no market exists for Plaintiffs' Private Information, and they have not

- 32 -

alleged an impairment in their ability to participate in such a market. *See* MTD at 15. This argument, too, has been summarily rejected by numerous courts in this Circuit and elsewhere. *See, e.g.*, *Anthem I*, 2016 WL 3029783, at *15 ("These statements [in the case law] appear to require a plaintiff to allege that there was *either* an economic market for their PII *or* that it would be harder to sell their own PII, *not both*."); *Svenson v. Google Inc.*, 2015 WL 1503429, at *5 (N.D. Cal. Apr. 1, 2015) ("The Ninth Circuit's holding does *not* require [this] type of explication[.]"; *Caesars*, 2025 WL 2393024, at *5 (rejecting "as unsupported by Ninth Circuit precedent" defendants' argument "that [p]laintiffs must allege both the existence of a market for their personal information and an impairment of their ability to participate in that market"); *Archambault v. Riverside Resort & Casino, Inc.*, 2025 WL 2614044, at *4 (D. Nev. Sep. 9, 2025) ("This [c]ourt has previously explained, however, that these pleading requirements, that [p]laintiffs must establish both the existence of a market for their PII and an impairment of their ability to participate in that market, is not supported by Ninth Circuit precedent, and other district courts in this Circuit have rejected them.").

Moreover, a market for Plaintiffs' Private Information *does* exist, including on the dark web, and the Data Breach has diminished the value of their Private Information. *See, e.g.*, MC ¶¶170, 178, 245-50, 267-71, 999. This Court should not "ignore what common sense compels it to acknowledge—the value that personal identifying information has in our increasingly digital economy." *Marriott*, 440 F. Supp. 3d at 462. Here, as in *Caesars*, "Plaintiffs have plausibly alleged injury in the form of diminution in value of PII by alleging the existence of a market for their stolen personal information and need not also allege an impairment of their ability to participate in that market." 2025 WL 2393024, at *5.

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

### 5.    Emotional Distress

California law allows for "[r]ecovery of emotional distress damages . . . absent impact or physical injury, in certain specialized classes of cases[,]" such as negligence cases in which "the negligence is of a type which will cause highly unusual as well as predictable emotional distress[.]" *Branch v. Homefed Bank*, 6 Cal. App. 4th 793, 800 (1992); *see also Priddy*, 2025 WL 975234, at *7 ("Because Plaintiffs have alleged a substantial risk of future misuse of their Private Information, the court finds that their allegations of emotional distress—coupled with that risk— are sufficiently concrete injuries . . . ."). Accordingly, the Ninth Circuit has found that emotional distress is a sufficiently concrete injury to establish standing. *See Goz v. Allied Collection Servs., Inc.*, 812 F. App'x 544, 545 (9th Cir. 2020).

PowerSchool asserts that Plaintiffs' claims of emotional distress are "too vague to constitute actual damages." MTD at 21. But courts applying California law have explained that allegations that a data breach "caused [plaintiffs] to suffer 'fear, anxiety, and distress' . . . suffice to allege emotional damages at the motion to dismiss stage." *Landon*, 2024 WL 5317240, at *8; *accord Shea v. Am. Int'l Coll.*, 2025 WL 2577196, at *4 (D. Mass. Sep. 5, 2025) (finding that "emotional distress (anxiety and sleep loss)" that "flowed directly from" a data breach was a cognizable harm because it was "the ordinary, foreseeable result[] of the risk created"). That is precisely what Plaintiffs allege here. *See* MC ¶1017 (alleging that Plaintiffs suffered "heightened stress, fear, anxiety"). California law is consistent with the Supreme Court's view that "a plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm." *TransUnion*, 594 U.S. at 436 n.7. Plaintiffs' claims of emotional distress are therefore sufficient.

### 6.    Invasion of Privacy

To sustain an invasion of privacy claim under California law, Plaintiffs must allege three elements: (1) a legally protected privacy interest; (2) a reasonable

PLAINTIFFS' OPPOSITION TO
POWERSCHOOL'S MOTION TO DISMISS

expectation of privacy under the circumstances; and (3) a serious invasion of the privacy interest. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). PowerSchool argues that Plaintiffs' invasion of privacy claim fails because Plaintiffs do not allege PowerSchool intentionally disclosed their Private Information and because the disclosure was not highly offensive. *See* MTD at 2, 26-28. PowerSchool further argues that the disclosure of highly sensitive Private Information in the Data Breach was not highly offensive and should not be resolved on a motion to dismiss. However, "[u]nder California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *Facebook I*, 402 F. Supp. 3d at 797.

To assess whether an invasion of privacy is "highly offensive," courts consider "the degree and setting of the intrusion," and "the intruder's motives and objectives." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (Cal. 2009). Because this assessment is factually intensive, "[c]ourts are generally hesitant to decide claims of this nature at the pleading stage." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022). Only where the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests" can the "question of [a serious or highly offensive] invasion [ ] be adjudicated as a matter of law." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 40 (Cal. 1994).

Here, Plaintiffs specifically allege that the disclosure of their highly sensitive Private Information, including medical information and Social Security numbers, was "highly offensive." *See, e.g.*, MC ¶¶57, 144, 858-863. Courts "have refused to dismiss invasion of privacy claims at the motion to dismiss stage where, as here, a data breach involved medical information, because the disclosure of such information is more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive.'" *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *13 (N.D. Cal. Oct. 1, 2024); *see also Stasi*, 501 F. Supp. 3d at 926 (distinguishing cases involving the disclosure of medical information from the "high bar" typically

- 35 -

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

required to bring invasion of privacy claims). Thus, at the motion to dismiss stage, the court cannot conclude as a matter of law that the disclosure of the Private Information in the Data Breach here was not highly offensive. *See Lau v. Gen Digit. Inc.*, 2023 WL 10553772, at *6 (N.D. Cal. Sep. 13, 2023).

### C.    Plaintiffs Adequately Allege Their State Law Claims

As set forth below, each of Plaintiffs' state law statutory claims is well-pleaded and should not be dismissed.

### 1.    California Unfair Competition Law

California's Unfair Competition Law ("UCL") prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "The UCL's coverage is sweeping, and its standard for wrongful business conduct intentionally broad." *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1204 (N.D. Cal. 2014). "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer." *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1164 (2018). Here, Plaintiffs have adequately alleged violations of the UCL's "unfair" and "unlawful" prongs. *See* MC ¶¶1023-24.

To assert standing under the UCL, a party must show that it is a "person who has suffered injury in fact and has lost money or property" because of unfair competition. *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 402 (E.D. Va. 2020). Among other injuries asserted here, Plaintiffs allege benefit-of-the-bargain damages, which courts in the Ninth Circuit consistently find sufficient to allege economic injury for UCL purposes. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985 (N.D. Cal. 2016) ("*Anthem II*") ("[B]enefit of the bargain losses . . . constitute economic injury cognizable under the UCL."); *In re LinkedIn User Priv. Litig.*, 2014 WL 1323713, at *4 (N.D. Cal. Mar.

PLAINTIFFS' OPPOSITION TO
POWERSCHOOL'S MOTION TO DISMISS

28, 2014) (finding that benefit-of-the-bargain losses are "sufficient to confer . . . statutory standing under the UCL.").

"Generally, 'violation of almost any law may serve as a basis for a UCL claim.'" *Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1098 (N.D. Cal. 2010). Here, California Plaintiffs allege that PowerSchool violated, *inter alia*, Section 5(a) of the Federal Trade Commission Act (MC ¶1024), which suffices to allege a violation of the UCL's "unlawful" prong. *See, e.g.*, *Eureka*, 2024 WL 4253198, at *10 (where, as here, plaintiffs allege they would not have been injured if defendant had complied with Section 5(a) of the FTC Act, the "unlawful" prong of the UCL has been sufficiently pled); *Anthem II*, 162 F. Supp. 3d at 992, 995 (similar); *Cap. One*, 488 F. Supp. 3d at 420 ("Section 5 of the FTC Act applies here and provides an ascertainable duty regarding data protection. . . . Therefore, Plaintiffs have adequately alleged the unlawfulness prong of an UCL claim.").

Plaintiffs also sufficiently allege violations of the UCL's "unfair" prong. Although there is no bright-line rule for determining what constitutes an "unfair business practice" under the UCL, allegations that the defendant's business practice "'offends an established public policy' or 'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'" are sufficient. *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008). Here, Plaintiffs allege that PowerSchool's failure to implement and maintain adequate data-security measures to protect their Private Information violated numerous statutes, including Cal. Civ. Code § 1798.81.5(a), which explains that "[i]t is the intent of the Legislature to ensure that personal information about California residents is protected." Courts in the Ninth Circuit routinely find that similar allegations sufficiently allege a violation of the "unfair" prong of the UCL. *See, e.g.*, *Yahoo I*, 2017 WL 3727318, at *24.

California courts also assess whether a defendant's conduct is "unfair" by "weigh[ing] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir.

- 37 -

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

2012). Here, PowerSchool's failure to follow data-security laws and practices established by state and federal governments has no utility to the public and has caused Plaintiffs and Class Members significant present and future harm. Plaintiffs have thus sufficiently alleged violations of the "unfair" prong of the UCL. *See, e.g.*, *Caesars*, 2025 WL 2393024, at \*12 (denying motion to dismiss UCL claims where, as here, plaintiffs alleged that defendant "neglected specific data security practices, explain[ed] what [defendant] should have done, and allege[d] that [defendant] misrepresented that it would protect Plaintiffs' PII").

PowerSchool ignores Plaintiffs' well-pleaded allegations, instead erecting a strawman argument about Rule 9(b) pleading standards. *See* MTD at 38. But "UCL claims of unlawful or unfair conduct are not subject to Rule 9(b). . . . Only claims sounding in fraud[,]" which Plaintiffs do not bring, "are subject to the heightened pleading requirements of Rule 9(b)." *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1045 (N.D. Cal. 2021). Because Plaintiffs assert only violations of the UCL's "unlawful" and "unfair" prongs, *see* MC ¶¶1023-24, they "do not need to meet Rule 9(b) or identify misrepresentations based on their claims that [PowerSchool's] conduct is unfair or illegal under the UCL." *E.H. v. Meta Platforms, Inc.*, 2024 WL 557728, at \*3 (N.D. Cal. Feb. 12, 2024).

Further, as *Torres v. Botanic Tonics, LLC* explained, "there are three ways to violate the UCL: fraudulent practices, unlawful practices, and unfair practices . . . . But there is no reason to think that the only way a defendant can incur liability under the UCL for the failure to disclose information is through the fraudulent-practices prong. *If the withholding of information is part of an unfair business practice that falls short of outright fraud, it could still give rise to liability . . . .*" 2023 WL 8852754, at \*4-5 (N.D. Cal. Dec. 21, 2023).

Plaintiffs' allegations more than suffice here because they "identify the particular section of the statute[s] violated" and "describe with reasonable particularity the facts supporting the violation[s]." *Anthem II*, 162 F. Supp. 3d at 986;

- 38 -

*see also Brady*, 26 Cal. App. 5th at 1164; *Solara*, 613 F. Supp. 3d at 1303 (addressing prematurity and the applicable standard on a motion to dismiss).

### 2.      California Consumer Privacy Act

Plaintiffs allege that PowerSchool failed to adequately secure their Private Information, causing it to be compromised in the Data Breach, and further failed to adequately disclose the Data Breach to Plaintiffs.  These allegations sustain a claim under the California Consumer Privacy Act ("CCPA"), and California Plaintiffs provided Defendants with the required notice of their claim.

As an initial matter, the data exfiltrated in the Data Breach included "personal information" as defined by the CCPA.  "Personal information" includes an individual's first name or first initial and the individual's last name in combination with specified nonencrypted and nonredacted data elements, including, as relevant here, Social Security numbers and "medical information."  Cal. Civ. Code §§ 1798.150(a)(1), 1798.81.5(d)(1)(iv).  "Medical information" means any individually identifiable information, in electronic or physical form, regarding the individual's medical history or medical treatment or diagnosis by a healthcare professional.  Cal. Civ. Code § 1798.81.5(d)(2).  As discussed *supra*, the "other related information" exfiltrated in the Data Breach specifically includes information that is deemed "medical information" under the CCPA, including Plaintiffs' medical diagnoses, medical conditions, and immunization records.  *See* MC ¶¶57, 144.

PowerSchool's argument that Plaintiffs' CCPA claim must be dismissed because it is a "service provider," not a "business" subject to the CCPA, *see* MTD at 51-53, is unpersuasive.  PowerSchool is a business under the CCPA because it "collects consumers' personal information" and, jointly with its school district customers, "determines the purposes and means of processing of consumers' personal information." Cal. Civ. Code § 1798.140(d)(1). "Collects" means "buying, renting, *gathering*, obtaining, *receiving*, or accessing any personal information pertaining to a consumer by any means."  Cal. Civ. Code § 1798.140(f).

- 39 -

As set forth in the MC, PowerSchool touts its SIS to school-district customers as a "secure customizable platform providing the interoperability need[ed] to power your school and district operations with accurate student data," including facilitating "gather[ing] vital information from families and staff." MC ¶¶3-4, 54. PowerSchool does more than facilitate the gathering of Private Information; its SIS serves as a cloud-based storage repository for Plaintiffs' and Class Members' Private Information. *Id.* ¶56. PowerSchool's scalable suite of customer products is customized and tailored by PowerSchool, including "the format and substance of PII and PHI that is obtained and provided from educational entity clients and individuals and based on client preferences." *Id.* ¶973. PowerSchool also *requires* end users, like Plaintiffs, to provide their Private Information to use PowerSchool's available suite of tools. *Id.* ¶57. Recognizing the volume and sensitivity of Private Information PowerSchool requires Plaintiffs and Class Members to provide and then stores on its SIS, PowerSchool represented to Plaintiffs and its school district customers that "the safe collection and management of student data is essential" and that "PowerSchool is committed to being a good custodian of student data – taking all reasonable and appropriate countermeasures to ensure data confidentiality, integrity, and availability." *Id.* ¶¶6, 60.

Because PowerSchool "determined the purposes or means of processing customers' data based on which solutions or services are utilized by the customers" and offered "professional and managed services for each of its software solutions," it "qualifies as a 'business' under the CCPA." *In re Blackbaud, Inc. Customer Data Breach Litig.*, 2021 WL 3568394, at *5 (D.S.C. Aug. 12, 2021). Here, Plaintiffs allege that PowerSchool determined the types of information Plaintiffs were required to provide to use its products, then took responsibility for the safe storage of that Private Information. PowerSchool, then—not the school districts—was responsible for processing the Private Information that it required Plaintiffs and putative class members to provide.

- 40 -

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

Here, Plaintiffs plausibly allege that PowerSchool, a "business" as defined by the CCPA, gathers and receives the Private Information of consumers, including Plaintiffs, from its school-district customers. *See* MC ¶¶3-4, 54-57. Plaintiffs further allege that, as consumers under the CCPA, they were required to provide their sensitive Private Information—as well as their minor children's sensitive Private Information—to school districts who used the PowerSchool data cloud and SIS. *See, e.g., id.* ¶¶33-34, 57, 331, 343, 686, 749. Via its school-district customers, PowerSchool solicited and collected medical information from Plaintiffs, including medical diagnoses, medical conditions, and immunization records. *See, e.g., id.* ¶¶57, 144, 360, 396, 432, 474, 481, 626, 662, 983, 995. Finally, Plaintiffs allege that their Private Information was stored on PowerSchool's cloud network after they provided it to their respective schools or school districts. *See, e.g., id.* ¶¶901, 970. Plaintiffs' allegations thus sufficiently plead that PowerSchool is a business that "collects" consumers' personal information.

### 3. California Confidentiality of Medical Information Act

PowerSchool argues that Plaintiffs fail to adequately allege a claim under the California Confidentiality of Medical Information Act ("CMIA") because the Private Information disclosed in the Data Breach was not "medical information," PowerSchool is not a "provider of healthcare" subject to the CMIA, and the medical information disclosed in the Data Breach was not viewed by third parties. *See* MTD at 49-51. All three claims fail.

Under the CMIA, "medical information" includes "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a patient's medical history, mental health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(i). PowerSchool claims that "California courts strictly enforce the requirement that the disclosed information contain medical data from a medical provider." MTD at 50 (citing *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th

430, 435 (2014)). But *Eisenhower* is inapposite. In *Eisenhower*, the compromised data included "name, *medical record number* . . . , age, date of birth, and last four digits of the person's Social Security number." 226 Cal. App. 4th at 166. Though the *Eisenhower* court concluded that a medical record number was not "medical information," it recognized that "medical history, mental or physical condition, or treatment of the individual" *would* constitute "medical information" under the CMIA. *Id.* at 170. Here, Plaintiffs allege their "medical information" was compromised in the Data Breach, including: medical diagnoses; medical conditions; immunization records (a medical history of an individual's immunizations); learning disabilities; and allergy information. *See* MC ¶¶57, 144. Accordingly, under *Eisenhower*, PowerSchool's arguments fail. *See also Strong v. Lifestance Health Grp., Inc.*, 2025 WL 317552, at *11 (D. Ariz. Jan. 28, 2025).

PowerSchool's argument that neither it nor its school-district customers are a "provider of healthcare" (MTD at 49) fares no better. Plaintiffs never claimed that PowerSchool itself is a "healthcare provider"; rather, they allege that PowerSchool is a "contractor" subject to the CMIA because it "receives, maintains, or transmits medical information" (Cal. Civ. Code § 56.06(d)) on behalf of providers of health care, its school district customers. MC ¶980. And Plaintiffs explain in great detail why the school districts, to whom Plaintiffs and Class Members provided their medical information, are the CMIA healthcare providers. *Id.*

***School districts.*** Under the CMIA, a "healthcare provider" includes "[a]ny business that offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information . . . in order to make the information available to an individual or a provider of health care at the request of the individual or for analysis by the provider of health care, or that otherwise maintains medical information for such purposes." Cal. Civ. Code § 56.06(b). As Plaintiffs allege, PowerSchool's school-district customers are healthcare providers under the CMIA because they, *inter alia*, hire

- 42 -

"physicians as full-time supervisors of health," provide ambulance care, conduct medical assessments (including to evaluate student learning disabilities), provide medical care at sports events, cooperate with local health officials to prevent the spread of communicable diseases (many school districts across the country have entire offices and staff dedicated precisely to the coordination of healthcare within the district's schools). *See* MC ¶984. Plaintiffs further allege that school districts "provide healthcare to students and employees such that their purpose of maintaining medical information is thus consistent with their role as a provider of health care." *Id.*

***PowerSchool.*** Again, PowerSchool is a "contractor" subject to the CMIA because it "receives, maintains, or transmits medical information" (Cal. Civ. Code § 56.06(d)) on behalf of providers of health care, its school district customers. Plaintiffs specifically allege that PowerSchool "provide[s] support for schools, school districts and individuals (*i.e.*, students, parents, guardians, and employees) by maintaining student medical records on its software platforms and computer networks. For example, Defendants maintain health and immunization records of the students in schools and school districts for which it provides services regarding students' medical history, mental or physical condition, or treatment." MC ¶982. PowerSchool's role in maintaining medical information as a contractor for school districts subjects it to the CMIA's requirements. *See* Cal. Civ. Code § 56.10(d) (prohibiting contractors from disclosing medical information without prior authorization). Taken as true—as they must be at this stage—Plaintiffs' specific factual allegations more than suffice to support their CMIA claim.

Finally, Plaintiffs more than adequately allege that unauthorized third parties unlawfully accessed and viewed their Private Information in the Data Breach, including their medical information. *See, e.g.*, MC ¶¶870, 997 ("Plaintiffs' medical information taken in the Data Breach was viewed by unauthorized individuals."), 998 ("Criminal threat actors accessed and viewed, and continue to access and view,

- 43 -

Plaintiffs' and California Subclass members' individually identifiable medical information."), 1004. These well-pleaded allegations are more than sufficient at the motion to dismiss stage. *See, e.g.*, *Stasi*, 501 F. Supp. 3d at 924 ("Ultimately, it may be that [p]laintiffs' allegation that their information was actually viewed while it was accessible on the internet will prove to be unsubstantiated. At this early stage in the litigation, however, [p]laintiffs allege a plausible claim based on violations of sections 56.101(a) and 56.36(b) of CMIA."); *Solara,* 613 F. Supp. 3d at 1299 (notification of data breach and allegations of increase in medical related spam enough to infer that plaintiff's information was viewed by unauthorized third parties).

### 4. California Comprehensive Data Access and Fraud Act

Defendants challenge the sufficiency of Plaintiffs' CDAFA claim and argue that CDAFA does not apply because PowerSchool (i) did not "actively participate in unauthorized hacking" and (ii) "did not access Plaintiffs' Data without permission." MTD at 47-48.

PowerSchool's first argument relies almost exclusively on *Claridge v. RockYou, Inc.*, a fourteen-year-old decision which acknowledged that "relatively few cases" existed interpreting CDAFA at the time. 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011). Defendant also selectively cites *CTI III, LLC v. Devine*, quoting *Claridge*. 2022 WL 1693508, at *4 (E.D. Cal. 2022). But CDAFA does not apply solely to "hacking"—it broadly prohibits "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." *See* Cal. Penal Code § 502(a). Multiple cases decided since *Claridge* have reflected courts' broader understanding of CDAFA liability. *See, e.g.*, *Margolis v. Apple Inc.*, 743 F. Supp. 3d 1124, 1136 (N.D. Cal. 2024) (alleging Apple knowingly accessed customer devices by encouraging users to download Apple's iOS 15 software); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 945 (S.D. Cal. 2024) (alleging Kohl's installed malware tools via its website's chat feature).

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

Plaintiffs allege that PowerSchool violated CDAFA by facilitating the acts of the party who accessed their data, a violation contemplated by the plain language of the statute. *See* Cal. Penal Code § 502(c)(6) ("assists in providing"); Cal. Penal Code § 502(c)(7) ("causes to be accessed"). *Terpin v. AT&T Mobility, LLC*, is directly on point. In *Terpin*, the court upheld plaintiff's CDAFA claim where his cellular provider was "put on actual notice that [plaintiff's] account was at risk and failed to protect his data from theft. 399 F. Supp. 3d 1035, 1044 (C.D. Cal. 2019). As in *Terpin*, Plaintiffs allege that ShinyHunters' actions were reasonably foreseeable by PowerSchool and other Defendants. MC ¶¶163-84.[11] Moreover, the intrusion on August 16, 2024, should have served as a warning that PowerSchool's security had been breached, putting them on actual notice that Plaintiffs' data was at risk. *Id.* ¶134. Unlike in *Terpin*, where plaintiff was unable to draw a connection between the breach in defendants' security and his loss, the line between PowerSchool's failure to secure its systems and the theft of Plaintiffs' Private Information is clear and was reasonably foreseeable.

## VII.   NEGLIGENCE PER SE (COUNTS I–II)

Plaintiffs agreed to voluntarily dismiss their standalone negligence *per se* claims under California, Massachusetts, and Michigan law, because those states do not recognize negligence per se as an independent cause of action. *See* MTD at 23, n.14.[12] Nonetheless, the parties also agreed that the substance of Plaintiffs'

---

[11] It is "plainly foreseeable that [p]laintiffs would suffer injury if [d]efendants did not adequately protect the[ir] PII." *Yahoo II*, 313 F. Supp. 3d at 1132; *see also In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 922 (S.D. Cal. 2023), *on reconsideration in part*, 2024 WL 3174380 (S.D. Cal. 2024) ("Plaintiffs were injured by the theft of their EDD benefits and their injuries were made possible by BANA's alleged failure to protect their account information.").

[12] New York recognizes negligence per se as a standalone cause of action. *See, e.g.*, *Cap. One*, 488 F. Supp. 3d at 406-07 ("New York courts have routinely held that a violation of a state statute, which properly imposes a duty of care, can sustain a claim for negligence *per se*."). Further, New York law does not distinguish between state and federal statutes as the basis for a negligence per se claim. *See Wedlock v.*

- 45 -

negligence per se allegations would be incorporated into Plaintiffs' negligence claim (Count I). *Id.*; *see also* MC ¶800.

Even in states where it is not recognized as a standalone cause of action, "a theory of negligence per se permits a plaintiff to establish the traditional negligence elements of duty and breach by proving that a defendant violated a statutory standard of conduct." *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *17 (D.N.J. Dec. 16, 2021) (finding it "premature to assess the merits of [p]laintiffs' negligence per se claims before determining the applicable state law"); *see also, e.g.*, *In re Accellion*, 713 F. Supp. 3d at 639-40 (allowing negligence per se pleadings focused on FTC Act, HIPAA, and other statutes to support elements of negligence claim under California law); *Randall v. Mich. High Sch. Athletic Ass'n*, 965 N.W.2d 690, 703 (Mich. Ct. App. 2020) ("When a plaintiff proves that an actor has violated the terms of a statute," under Michigan law, the violation serves as "prima facie evidence of negligence."); *Reuter v. Hostelling Int'l USA*, 103 Mass. App. Ct. 1122, at *1 (2024) (addressing "whether the plaintiff plausibly alleged a claim of negligence" based on facts alleged under claim styled as "negligence per se"); *Lev v. Beverly Enters.-Mass., Inc.*, 929 N.E.2d 303, 313 (Mass. 2010) ("[T]he violation of a statute, ordinance, regulation or policy is relevant because it constitutes some evidence of a defendant's negligence.").

Ignoring Plaintiffs' well-pleaded allegations, PowerSchool argues that Plaintiffs fail to allege that PowerSchool violated a statute, ordinance, or regulation. *See* MTD at 23. To the contrary, Plaintiffs allege "PowerSchool violated" the Federal Trade Commission ("FTC") Act, the Health Insurance Portability and Accountability Act ("HIPPA"), the Children's Online Privacy Protection Act ("COPPA"), the Family Educational Rights and Privacy Act ("FERPA"), various consumer protection

---

*Troncoso*, 712 N.Y.S.2d 328, 332 (Richmond Cnty. Sup. Ct. 2000) ("a violation of a State or Federal statute constitutes negligence *per se*.").

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

statutes,[13] and industry cybersecurity standards. *See, e.g.*, MC ¶¶806, 809, 811, 813, 815. These statutes aim to prevent the same kinds of harm Plaintiffs suffered as a result of the Data Breach, and require PowerSchool to employ reasonable measures to protect sensitive consumer data. *See id.*; *see also, e.g.*, *Kirsten v. Cal. Pizza Kitchen, Inc.*, 2022 WL 16894503, at *9 (C.D. Cal. July 29, 2022) ("Allowing unauthorized access to [p]laintiffs' PII caused substantial privacy injury that [p]laintiffs could not reasonably have avoided and did not benefit [p]laintiffs; therefore, it was an unfair practice under the FTC Act."); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142-43 (C.D. Cal. 2021) (allowing negligence per se claim based on alleged HIPAA violation to proceed in data breach case); *Juliano v. Simpson*, 962 N.E.2d 175, 179-80 (Mass. 2012) (explaining that a statutory violation is relevant to negligence analysis where defendant's negligence leads to a "consequence[] the statute was intended to prevent").

PowerSchool also argues that "Plaintiffs cannot invoke negligence per se as a presumption of negligence" because the statutes—FERPA, FTCA, and COPPA—confer no private right of action. *See* MTD at 23-24. It is the tort of negligence, however, and not the violation of the statute itself, which entitles Plaintiffs to recover. *See Bureerong v. Uvawas*, 959 F. Supp. 1231, 1237 (C.D. Cal. 1997) ("The Court disagrees with Hub's broad and general contention that the Court may not recognize a negligence per se claim simply because the statute upon which the claim is based confers no private right of action."). The Northern District of California recently found, in a data breach case, that although the "[p]laintiffs [could not] maintain their negligence per se claim as a standalone cause of action, [it would] not preclude Plaintiffs from relying on the provisions of the FTC Act, HIPAA, CCRA, or COPPA in support of the elements in their negligence claim[.]" *In re Accellion*, 713 F. Supp.

---

[13] Plaintiffs' reliance on the consumer protection statutes for negligence *per se* are properly asserted for the reasons discussed in Sections VI(B)-(D) in response to Defendant's challenges to same.

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

3d at 639-40 ("Federal courts applying California law on negligence per se in data breach case[s] have [ ] turned to [the] FTC Act and HIPAA provisions to supply the standard of care element for a standalone negligence claim.") (citing *Kirsten*, 2022 WL 16894503, at *9 (allowing reference to FTC Act Section 5 for "unfair . . . practices in or affecting commerce"), and *In re Ambry*, 567 F. Supp. 3d at 1142 (allowing reference to FTC Act and HIPAA for breach of medical information)). Defendant's reliance on *In re MOVEit Customer Data Security Breach Litigation*, 2025 WL 2179475, at *11 (D. Mass. July 31, 2025) ("*MOVEiT II*") is unavailing because that decision did not address whether California, Massachusetts, Michigan, or New York law allows negligence (as distinct from standalone negligence per se) to be premised on the at-issue federal statutes. Under New York law, "if a statute is designed to protect a class of persons, in which the plaintiff is included, from the type of harm which in fact occurred as a result of its violation, the issues of the defendant's duty of care to the plaintiff and the defendant's breach of that duty are conclusively established upon proof that the statute was violated." *German by German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1396 (S.D.N.Y. 1995); *see also Coene v. 3M Co. ex rel. Minn. Min. & Mfg. Co.*, 2015 WL 5773578, at *5 (W.D.N.Y. Sep. 30, 2015). Relying on this reasoning, the *In re Capital One Consumer Data Security Breach Litigation* district court explained:

> Several federal district courts have recognized negligence *per se* claims based on alleged violations of Section 5 of the FTC act. [internal citations omitted] In doing so, these courts have found, notably in the data breach context, that not only does the underlying substantive law permit a negligence *per se* action to rest on a violation of federal statute, but also that plaintiffs whose information was allegedly compromised by a data breach fit within the class of plaintiffs sought to be protected from the type of harm proscribed by the statute. The Court agrees with these decisions and because New York law would permit the Plaintiffs to assert a negligence per se claim premised on a federal statute and because Plaintiffs have adequately done so here - ***importing the standard of care from the FTC Act*** - Plaintiffs have plausibly alleged a claim for negligence per se under New York law.

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

488 F. Supp. 3d at 407-408; *see also In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498 (1st Cir. 2009), (denying motion to dismiss claim brought under Massachusetts statute prohibiting "unfair" or "deceptive" trade practices consistent with FTC's interpretation that defendant's lack of adequate security measures was unfair under the FTC Act).

Finally, given the Parties' agreement to incorporate Plaintiffs' negligence per se allegations into Count I (negligence), rather than maintain negligence per se as a separate Count, the Court should permit Plaintiffs to maintain their negligence per se allegations under the respective state statutes and industry standards as pled. *See* MC ¶¶814, 815, 816, 817, 823 (alleging a non-exclusive list that also includes violating industry standards and state consumer protection statutes).

## VIII.  PLAINTIFFS STATE A CLAIM FOR NEGLIGENT TRAINING & SUPERVISION (COUNT IX)

PowerSchool failed to exercise reasonable care when it hired a subcontractor, Movate, granting Movate's employees access to Plaintiffs' and Class Members' Private Information without first ensuring Movate employed adequate data security, including adequate training and supervision of employees. MC ¶¶18-20, 910-11. Defendant argues that Plaintiffs fail to plead that PowerSchool "knew or should have known" that Movate's employees were unfit. MTD at 24. But PowerSchool's argument misrepresents the pleading standard. As this Court recently explained in denying a motion to dismiss a negligent supervision claim:

> With respect to the MCC's negligent hiring claim, BANA argues Plaintiffs make only speculative claims that BANA's contractors committed a series of internal data breaches without the support of any concrete allegations. (Dkt. 84-1 at 26–27). The MCC *alleges that BANA, acting through its agent TTEC Holdings, Inc. ("TTEC"), "hired hundreds if not thousands of employees en masse to perform services for [BANA] without ever conducting a background check on these individuals" who were subsequently given access to Plaintiffs' personal and account information.* * * * While the MCC could be more detailed as to how the lack of background checks caused Plaintiffs' injuries, at the pleading stage, these allegations

- 49 -                    PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

are sufficient to support the inference that data breaches "likely occurred due to problems with [BANA's] cybersecurity practices and procedures." *Top Trade v. Grocery Outlet*, No. 2:17-cv-8467-SVW-MRW, 2018 WL 6038297, at *4 (C.D. Cal. May 9, 2018).

*Bank of Am*, 674 F. Supp. 3d at 926. A similar inference can be reached here, where Plaintiffs allege that PowerSchool acted without proper due diligence when it hired subcontractor Movate, known for its largely offshore and remote presence, who subsequently hired its own employees and granted them access to Plaintiffs' and Class Members' Private Information. MC ¶¶18-20, 910-11; *see also MOVEit II, supra*, 2025 WL 2179475, at *9 ("Case law does not support the [defendant's] suggestion that their duty of care is automatically discharged by hiring a contractor. A defendant does not avoid its duty simply by stashing data in a 'database that is in the possession of a third-party vendor' or independent contractor.").

Defendant's own cited authorities do not convert negligent supervision into an intentional tort, but rather analyze it like all negligence claims. *See Prime Rate Premium Fin. Corp. v. Larson*, 226 F. Supp. 3d 858, 870 (E.D. Mich. 2016) ("Negligent supervision, like all negligence claims, requires proof of a duty, breach, causation, and damages."); *Ehrens v. Lutheran Church-Missouri Synod*, 269 F. Supp. 2d 328, 334 (S.D.N.Y. 2003) (same). PowerSchool conflates its lack of oversight as it pertains to Movate, with Plaintiffs' allegations that PowerSchool failed to "exercise the requisite standard of care in the hiring [and] supervision of its own employees[.]" MC ¶¶912, 917.

## IX.   PLAINTIFFS PROPERLY PLEAD DECLARATORY AND INJUNCTIVE RELIEF (COUNT VI)

Contrary to Defendant's assertions, in accord with the Declaratory Judgment Act, declaratory relief is independently available and not to be treated as another available equitable remedy. Under 28 U.S.C. § 2201(a), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, ***whether or not***

- 50 -

*further relief is or could be sought*."   A claim for declaratory relief may be unnecessary where an adequate remedy exists under some other cause of action.  *C.f. Reyes v. Nationstar Mortg. LLC*, 2015 WL 4554377, at *7 (N.D. Cal. July 28, 2015). However, this does not apply here because "the existence of another adequate remedy *does not preclude* a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57.

Moreover, Plaintiffs' Declaratory Judgment Act claim is distinct from their other claims that seek compensation for the past injuries they have already endured because it is forward-looking.  *See Yahoo II*, 313 F. Supp. 3d at 1139 (declaratory relief allowed because contract claims seek retrospective relief and declaratory relief does not); *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016) (declaratory relief allowed where defendant's "security measures continue to be inadequate").  Plaintiffs' request for declaratory and injunctive relief is proper because monetary damages cannot fully address Plaintiffs' harms.  Plaintiffs seek a prospective mandate that PowerSchool employ adequate security protocols to protect Plaintiffs' and Class Members' Private Information, which remains in its possession.  MC ¶¶885(i)-(xi).  This is exactly the type of relief that the Declaratory Judgment Act is designed to provide: "a declaration that will prevent future harm from ongoing and future violations before the harm occurs."  *Adobe*, 66 F. Supp. 3d at 1222; *see also In re Ambry*, 567 F. Supp. 2d at 1141 (finding plaintiffs "demonstrate[d] concrete injury and a realistic likelihood that the injury will be repeated" sufficient for standing to pursue prospective injunctive relief").   Plaintiffs allege that PowerSchool continues to hold their Private Information and they are asking for changes—not simply a declaration of the parties' rights and liabilities—to address the weaknesses in Defendant's cybersecurity practices, policies, and systems, ensuring that Plaintiffs' Private Information remains secure in the future.  Here, Plaintiffs provide a sufficient basis to conclude that the declaratory relief claim seeks something distinct from the other claims.

- 51 -

## X.  FIDUCIARY RELATIONSHIP (COUNT VII)

PowerSchool maintains that its direct contractual relationship with schools absolves it of the fiduciary duty it owes to Plaintiffs.  MTD at 28.  Not so.  Plaintiffs and PowerSchool's relationship is not the byproduct of a standard business transaction between two enterprising parties.  Rather, due to its relationship with its educational entity clients, PowerSchool assumed a fiduciary duty owed to Plaintiffs when it became the custodian of their Private Information.  If a fiduciary relationship exists, the fiduciary is generally "duty bound to act with the utmost good faith for the benefit of the other." *Brown v. Wells Fargo Bank, N.A.*, 168 Cal. App. 4th 938, 959-60 (2008).  PowerSchool repeatedly represented a fiduciary commitment to Plaintiffs through its representations to Plaintiffs.  *See* MC ¶60 ("PowerSchool is committed to being a good custodian of student data – taking all reasonable and appropriate countermeasures to ensure data confidentiality, integrity, and availability.").  "The obligation to put the interests of the other party first is why a fiduciary relationship generally does not arise out of ordinary arms-length business dealings." *World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*, 66 F. Supp. 3d 1233, 1235 (N.D. Cal. 2014).  PowerSchool represented as much; yet PowerSchool cites a handful of cases that do not address the vital component in this case: PowerSchool serves as the custodian of the Private Information of over 80% of all children who use PowerSchool.[14]  MC ¶51.  PowerSchool cannot ignore its responsibility to Plaintiffs now.

---

[14] PowerSchool's cases do not properly address the unique situation here where the relationship is not grounded in a business transaction and where vulnerable individuals, such as schoolchildren, are victims. *See In re Ambry*, 567 F. Supp. 3d at 1145-46 (customers paying for genetic testing); *Lazar v. Int'l Shoppes, LLC*, 2025 WL 1475627 at *1 (E.D.N.Y. May 22, 2025) (cyberattack on duty-free retail stores in airports); *Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC*, 485 F. Supp. 3d 885, 897, 899-900 (E.D. Mich. 2020) (host site of accounting firm's data victim of ransomware attack).

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

## XI.  PLAINTIFFS PLEAD A DUTY TO DISCLOSE SUFFICIENT TO STATE A DECEIT BY CONCEALMENT, CAL. CIVIL CODE 1710(3), CLAIM (COUNT XX)

Deceit by concealment is grounded in the specific form of fraud outlined in Civ. Code § 1710, subpart 3: "The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."  MC ¶1063.  The claim is based on a simple premise: one who speaks is not only obligated to tell the truth, but is equally bound not to suppress or conceal any facts within their knowledge which materially qualify those stated.  *Gillespie v. Ormsby*, 272 P.2d 949, 958 (1954).  Here, PowerSchool's public assurances regarding data security—marketing itself as a "trusted, verified custodian" of student data and touting its compliance with regulations such as FERPA and GDPR—lulled schools, parents, educators, and the public into a false sense of data security.  *See, e.g.*, MC ¶¶6, 59-65.  PowerSchool concealed the inadequacies of its data security practices, which were materially worse than represented and did not meet industry standards.  *Id*. at ¶¶121-28.  PowerSchool also concealed that it had outsourced IT and cybersecurity responsibilities to Movate, an offshore subcontractor.  *Id*. ¶¶1064-65 and *passim*.

PowerSchool does not meaningfully contest any of this, instead making a threadbare argument that "Plaintiffs have not adequately alleged a duty to disclose" (MTD at 53).  Not so.  Far from "simply recit[ing] the conclusion" or making a "rote allegation," Plaintiffs' detailed account adequately alleges, on multiple independent grounds, that PowerSchool had a duty to disclose the inadequacy of its data security measures.

"A defendant 'has a duty to disclose when . . . the plaintiff alleges **one** of the four *LiMandri* factors.'"  *J.J. v. Ashlynn Mktg. Grp., Inc.*, 749 F. Supp. 3d 1086 (S.D. Cal. 2024); *see also, e.g.*, *Hauck v. Advanced Micro Devices, Inc.*, 816 F. App'x 39, 42 (9th Cir. 2020) (explaining that the *LiMandri* factors are each independent "relevant bases for a fraud claim").  Plaintiffs allege all four factors.  PowerSchool

- 53 -

(1) "is in a fiduciary relationship with" Plaintiffs; (2) "had exclusive knowledge of material facts not known to" them; and (3) "actively conceal[ed] a material fact from the plaintiff; or at least "(4) ma[de] partial representations but also suppresse[d] some material fact." *Lerner v. McManamon*, 2025 WL 819679, at *4 (C.D. Cal Feb. 3, 2025) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).

*Fiduciary relationship.* The MC alleges—in detail—that PowerSchool had a fiduciary duty to—and is thus in a fiduciary relationship with—Plaintiffs. *See* MC ¶¶896-903. As explained in Section X, PowerSchool's arguments to the contrary are meritless.

*Exclusive knowledge of a material fact.* The inadequate security of PowerSchool's SIS, computers and networks was a material fact within PowerSchool's exclusive knowledge. MC ¶1064. This fact was material because PowerSchool knew Plaintiffs and Class Members relied on it to protect their Private Information. Plaintiffs and Class Members were not in a position to assess the data security practices employed by PowerSchool, they had no means to identify PowerSchool's data security deficiencies, and Plaintiffs and Class Members, therefore, had no opportunity to safeguard their Private Information from cybercriminals. *See Tenet Healthsys. Desert, Inc. v. Blue Cross of Cal.*, 245 Cal. App. 4th 821, 844-45 (2016). The collection and storage of highly sensitive Private Information, including names combined with Social Security numbers and confidential medical information, raises identity theft and consumer fraud concerns if it falls into unauthorized hands. Had Plaintiffs and Class Members known that PowerSchool would not adequately protect their Private Information, they would not have entrusted PowerSchool with it. MC ¶1067; § IV.Q. *passim*; *see also Tenet*, 245 Cal. App. 4th at 844 (2016) (plaintiff must demonstrate that he "would not have acted as he did if he had known of the concealed or suppressed fact"). Exclusivity is not applied with rigidity and is determined, in part, by whether a defendant has superior knowledge and information that is unavailable to the public. MC ¶1064; *see also*

- 54 -

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

*Elias v. Hewlett-Packard Co.*, 2014 WL 493034, at \*9 (N.D. Cal. Feb. 5, 2014) (customers cannot be expected to seek facts that they have no way of knowing exist). Here, PowerSchool had superior knowledge of the security inadequacies of the SIS platform that was unavailable to Plaintiffs and Class Members (including students and minor children).

*Active concealment.* PowerSchool *knew* its data security practices were inadequate to deal with known, foreseeable data security threats, yet concealed its knowledge that the data security measures for the Private Information were materially worse than represented, and made worse by cost-cutting and offshoring IT and cybersecurity jobs. MC ¶¶1064-65. Plaintiffs allege, in specific and technical detail, the myriad shortcomings in PowerSchool's cybersecurity practices, which directly resulted in the Data Breach. *See supra* Section II. Similar allegations sufficed in *Baton v. Ledger SAS*, where the Northern District of California found that the plaintiffs "plausibly alleged that [the defendant] knew or should have known that its data security practices were inadequate and that its 'failure to disclose the purportedly inadequate data security measures would mislead a reasonable consumer.'" 740 F. Supp. 3d at 916; *see also In re Yahoo II*, 313 F. Supp. 3d at 1134 (finding plaintiffs' allegations sufficient to show that plaintiffs would have behaved differently had defendant disclosed the security weaknesses of its system). Here, the same can be said of PowerSchool's omissions, standing alone, even without considering its affirmative misrepresentations.

Plaintiffs have pled with particularity allegations that, taken as true—as they must be at this stage—state a plausible claim that is unsuitable for determination via a pre-discovery motion to dismiss. *See Sony*, 996 F. Supp. 2d at 990 ("[B]ecause [the defendant] made competing, potentially ambiguous representations, the Court cannot find the representations were not deceptive as a matter of law. This determination is more properly adjudicated after discovery regarding [the defendant's] use or non-use of industry-standard encryption[.]"). Plaintiffs, thus, sufficiently allege that

- 55 -

PowerSchool had a duty to disclose, and they adequately plead their claim for deceit by concealment.

## XII. PLAINTIFFS STATE A CLAIM UNDER GEORGIA'S RECOVERY OF EXPENSES STATUTE (COUNT XXV)

PowerSchool baselessly argues that Plaintiffs' claim under O.C.G.A. § 13-6-11 fails to allege "bad faith.'" MTD at 54-55.  Not so.  For purposes of O.C.G.A. § 13-6-11, the term "bad faith" is "connected with the transaction and dealings out of which the cause of action arose, rather than bad faith in defending or resisting the claim after the cause of action has already arisen." *Artzner v. A&A Exterminators, Inc.*, 242 Ga. App. 766 (Ga. Ct. App. 2000); *see also, e.g.*, *Merlino v. City of Atlanta,* 283 Ga. 186, 191 (2008) (stating bad faith warranting an award of attorney fees must be based on conduct "during the transaction out of which the lawsuit arose").  Here, Plaintiffs allege that PowerSchool's conduct leading up to the breach was egregious and that both the Data Breach and resulting injury to Plaintiffs and Class Members were foreseeable.  MC ¶¶163-30, 820, 1011.  That more than suffices to establish bad faith.  PowerSchool's reliance on *Powell Co. v. McGarey Grp., LLC,* 508 F. Supp. 2d 1202, 1219 (N.D. Ga. 2007), to argue otherwise is unavailing.  The Northern District of Georgia recently overruled pleading challenges to claims under O.C.G.A. § 13-6-11 that were premised on the exact same reasoning in *Powell*:

> The Court concludes that the Plaintiffs have alleged facts supporting bad faith.  In the Complaint, the Plaintiffs have alleged that the ***Defendants knew of severe deficiencies in their cybersecurity, and of serious threats, but nonetheless declined to act***.  Based upon Georgia caselaw, the Court concludes that these allegations ***are sufficient*** for a claim of bad faith under section 13-6-11.

*Equifax,* 362 F. Supp. 3d at 1344-45.  This Court should draw the same conclusion here and deny Defendant's request for dismissal.

Plaintiffs acknowledge the clerical error in MC ¶1108 that refers to "TK PARAS" as a placeholder that should read "[a]nd on behalf of the Georgia Subclass,

repeat and re-allege the factual allegations above as if fully set forth herein." *See e.g.*, ¶¶767, 799, 828, 851, 872, 895, 908.   While Plaintiffs admit error, PowerSchool's claim that "[i]t is wholly unclear which paragraphs Plaintiffs intend to 'repeat and reallege' to support their claim under O.C.G.A. § 13-6-11" borders on frivolous; that introductory phrase is repeated throughout the MC's eighty counts.

## XIII.  PLAINTIFFS STATE CLAIMS UNDER DATA BREACH NOTIFICATION STATUTES

PowerSchool argues that Plaintiffs fail to state claims under data breach notification because (i) some statutes do not provide for private rights of action; (ii) Plaintiffs fail to demonstrate how PowerSchool meets certain statutory definitions; and (iii) Plaintiffs' fail to plead harm as a result of PowerSchool's delayed notice. Each of these arguments fail.

First, contrary to PowerSchool's assertions, the Massachusetts and New Mexico statutes do not wholesale prohibit private actions.  In fact, the Massachusetts and New Mexico statutes are silent on the issue.  *See* Mass. Gen. Laws 93H § 1 *et seq*; N.M. Stat. 57-12C-1 *et seq*.  When analyzing breach notification statutes that are silent regarding private rights of action, Courts "conclude[] that, without any authority suggesting otherwise, [the] claim[s] should survive."  The only authority PowerSchool provides is *Clark v. TD Bank, NA*, an out of circuit decision involving a *pro se* litigant attempting to bring claims against her personal bank.  Given the absence of binding authority, the Court should allow these claims to survive.

Second, Plaintiffs sufficiently alleges facts satisfying each of the definitions within the data breach notification statutes.  *See* MTD at 44-45.  Specifically, Plaintiffs cite PowerSchool's own terms of use (which became part of the merger agreement) in which PowerSchool self-identifies as a licensor of the software and underlying data entered into the SIS.  *See* MC ¶¶97-98.  Plaintiffs also repeatedly allege they were end-user customers.  *See, e.g., id.* ¶¶53, 57, 59-60.  PowerSchool's

arguments contradict these factual allegations and cannot be addressed at this stage. *See* Section V.

Finally, for the reasons stated above, Plaintiffs sufficiently allege cognizable injury resulting from PowerSchool's inadequate, delayed notice. *See* Section V(A).

## XIV. UNJUST ENRICHMENT (COUNT III)

PowerSchool also fails to demonstrate any grounds to dismiss Plaintiffs' unjust enrichment claims. MTD at 29-31. Courts "have concluded that the failure to secure a plaintiff's data can give rise to an unjust enrichment claim," on the basis "that a defendant has accepted the benefits accompanying plaintiff's data, but does so at the plaintiff's expense by not implementing adequate safeguards, thus making it inequitable and unconscionable to permit defendant to retain funds that it saved by shirking data-security and leaving the plaintiff to suffer the consequences." *In re Ambry,* 567 F. Supp. 3d at 1145.[15] The same reasoning applies here. As Plaintiffs clearly allege, PowerSchool's entire business is based on collecting and managing Private Information. Indeed, PowerSchool's business was valued at over $5 billion based, in large part, on PowerSchool's access to troves of sensitive data. PowerSchool was only able to obtain this data because it assured end-users that their data would be kept secure; yet PowerSchool failed to do so. *See* MC ¶60.

Despite these clear and well-pleaded allegations, PowerSchool raises two meritless challenges. First, PowerSchool contends that the claim must fail because Plaintiffs did not confer any *direct* benefit on PowerSchool. However, the law does not require Plaintiffs to have paid money directly to PowerSchool. *See Rejoice! Coffee Co., LLC v. Hartford Fin. Servs. Group*, 2021 WL 5879118, at *9 (N.D. Cal. Dec. 9, 2021) (rejecting defendant's motion to dismiss claim because "it is not

---

[15] "[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution,'" however the Ninth Circuit has held that courts "may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 n.18 (9th Cir. 2015).

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

essential that money be paid directly to the recipient by the party seeking restitution"). Second, PowerSchool takes issue with Plaintiffs purported failure to state *precisely how* PowerSchool was enriched. This argument discounts Plaintiffs' adequate allegations that PowerSchool would not be able to maintain its business without their Private Information. MC ¶¶54-56. PowerSchool's disregard for Plaintiffs' allegations is not a basis for dismissal.

## XV. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny PowerSchool's motion to dismiss. Should the Court grant Defendant's Motion, Plaintiffs respectfully request leave to amend, pursuant to Fed. R. Civ. P. 15(a)(2).

Dated:     October 10, 2025

/s/Carol C. Villegas
Carol C. Villegas, N.Y. State Bar No. 4154324*
cvillegas@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700

*Co-Lead Counsel for Teachers Unions Plaintiffs (Track One)*

/s/ James J. Pizzirusso
James J. Pizzirusso, D.C. State Bar No. 477604*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200

*Co-Lead Counsel for Individual Action Plaintiffs (Track One)*

- 59 -

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION TO DISMISS

*/s/ David S. Casey, Jr.*
David S. Casey, Jr., Cal. State Bar No. 60768
dcasey@cglaw.com
**CASEY GERRY**
**FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel.: (619) 238-1811

*Co-Lead Counsel for Class Action Plaintiffs
(Track One)*

PLAINTIFFS' OPPOSITION TO
POWERSCHOOL'S MOTION TO DISMISS