David S. Casey, Jr., Cal. State Bar No. 60768
dcasey@cglaw.com
**CASEY GERRY**
**FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel.: (619) 238-1811

Carol C. Villegas, N.Y. State Bar No. 4154324*
cvillegas@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700

James J. Pizzirusso, D.C. State Bar No. 477604*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200

*Interim Co-Leads for Plaintiffs*

**Admitted Pro Hac Vice*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION | Case No.: 3:25-md-3149-BEN-MSB<br><br>**PLAINTIFFS' BRIEF PURSUANT TO ECF NO. 311**<br><br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A |

Pursuant to the Court's October 3, 2025 Minute Order (ECF No. 311), Individual Users Class Action (Track One) Plaintiffs respectfully submit this brief explaining why the Ninth Circuit's recent decision in *Kisil v. Illuminate Education, Inc.,* 2025 WL 258900 (9th Cir. Sept. 8, 2025), does not impact Plaintiffs' standing or claims.[1]

## I. INTRODUCTION

Aside from the mere coincidence that *Kisil* involves an education software company, *Kisil* is entirely inapposite. In *Kisil*, the Ninth Circuit found plaintiffs failed to demonstrate standing because they did not sufficiently allege that they: (i) suffered "tangible harms or a risk of future harm;" or (ii) "suffered intangible harms" and failed to demonstrate any "close relationship" between their alleged injuries and traditional common law privacy harms. *Kisil*, 2025 WL 258900 at *1-2.

In direct contrast to *Kisil*, Plaintiffs clearly demonstrate actual harms due to the misuse of their sensitive personally identifiable information ("PII") and personal health information ("PHI") (collectively, "Private Information"), including identity theft, fraud, hacked bank accounts, spam and phishing scams, and ransom attempts. MTDO at 9-11. Even PowerSchool concedes this as to several Plaintiffs. PowerSchool's MTD at 5-6, 9. Because of the actual harm suffered by some Plaintiffs (as Defendants readily admit), and the sensitivity of the Private Information involved in PowerSchool's Data Breach (*e.g.*, Social Security numbers, medical information, financial information), Plaintiffs also sufficiently allege imminent and substantial risk of future harm to confer standing.[2] MTDO at 10-14. Indeed, the Private Information

[1] Where possible, Plaintiffs refer to arguments already raised in their Opposition to Defendant PowerSchool's Motion to Dismiss, ECF Nos. 320 (the "MTDO"), to avoid burdening the Court with duplicative briefs. Defendants PowerSchool and Bain already addressed *Kisil* in their motions to dismiss, ECF Nos. 285-86 (Defendants' "MTD").

[2] Terms not defined herein have the same meaning as defined in the Consolidated

involved in PowerSchool's Data Breach is precisely the kind that courts consider sufficient to establish standing. *See, Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1140, 1143 (9th Cir. 2010) and Section II.A at fn. 4, *infra*. Finally, Plaintiffs anchor their claims to traditional common law violations of intrusion upon seclusion and disclosure of private information, which also confer standing. Because *Kisil* did not involve allegations, like Plaintiffs' well-pled allegations here, it is inapplicable.

## II. *KISIL* IS INAPPOSITE BECAUSE PLAINTIFFS ESTABLISH STANDING

### A. PowerSchool's Data Breach Exposed Highly Sensitive Private Information; In *Kisil*, the Breach Did Not.

Unlike the data breach in *Kisil*—which involved grades, socio-economic disadvantage status, and special education information—PowerSchool's Data Breach exposed precisely the type of sensitive personal information that the Ninth Circuit "normally considers sufficient to find a credible threat of identity theft," namely, Social Security numbers, medical information, and financial information. *Kisil*, 2025 WL 2589000, at *2 (distinguishing itself from a case (like this one) involving Social Security numbers).[3] Moreover, in *Kisil*, defendant Illuminate explicitly confirmed that sensitive information like Social Security numbers and financial information were ***not at risk*** as a result of the breach.

The situation here could not be more different. Here, PowerSchool ***confirmed*** that the Data Breach exposed Social Security numbers as well as names, contact information, birthdates, and medical information to cybercriminals in a targeted attack

---

Individual Users Class Action Complaint (ECF No. 259, "Master Complaint" or "MC"). All emphasis is added unless noted, and internal quotations and citations are omitted throughout.

[3] *Kisil* does not change the standard for demonstrating standing in data breach actions, as evidenced by the Ninth Circuit's reference to *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1140–41, 1143 (9th Cir. 2010). *See Kisil*, 2025 WL 2589000, at *2.

and warned Plaintiffs of the corresponding risk of fraud. *See* MTDO at 18; MC ¶ 123. To date, PowerSchool has not denied that the Data Breach involved sensitive Personal Information and has even conceded that numerous Plaintiffs sufficiently allege standing on this basis. PowerSchool MTD at 5-6, 9.

Additionally, Plaintiffs allege that other high-risk Private Information they entered into PowerSchool's SIS platform (as a condition of their enrollment or employment) was stolen in the Data Breach, including their medical diagnoses, medical conditions, immunization records, driver's licenses, and credit card and financial information. *See, e.g.,* MC ¶¶ 2, 56, 57, 142, 144, 293, 343, 349, 360, 378, 390, 432, and 500. The Ninth Circuit routinely finds this information sufficiently sensitive to support standing; *Kisil* does not call for a different result.[4] *See Kisil*, 2025 WL 2589000, at *2 (recognizing Social Security numbers as an archetypal example of the sort of Private Information that creates a credible threat of identity theft and fraud); MTDO at 6-9 (explaining that information at issue demonstrates a credible threat of immediate harm sufficient to confer standing).[5]

---

[4] *See, e.g., In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018) (finding account numbers, passwords, email addresses, billing and shipping addresses, telephone numbers, and credit card information as high-risk equivalents to social security numbers); *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1227 (N.D. Cal. 2022) ("the injury-in-fact requirement will be satisfied when highly sensitive personal data, such as social security numbers and credit card numbers, are inappropriately revealed to the public and increase the risk of immediate future harm"); *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *5 (C.D. Cal. May 8, 2023) (similar); *Baton v. Ledger SAS*, 740 F. Supp. 3d 847 (N.D. Cal. 2024) (same); *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 691 (N.D. Cal. 2019) (finding name, date of birth, phone number, gender, and hometown suffice for "the risk of identity theft is imminent, without a multi-link chain of inferences, even though no social security number was taken.").

[5] *See also, U.S. v. Lane*, Gov't Sentencing Mem., at p. 5, No. 25-cr-40015-MRG, [ECF No. 16] (D. Mass. Oct. 07, 2025) (acknowledging that money will not "make up for the hardship imposed on the nearly 70 million innocent students and teachers who have to navigate the remainder of their lives as identity theft victims.").

In sum, the information at issue in *Kisil* was not the type of sensitive information sufficient to demonstrate either actual misuse or a credible risk of future harm to support standing. Thus, *Kisil* has no bearing on this case which undeniably involves highly sensitive Private Information, some of which has been confirmed by PowerSchool.

**B. Unlike in *Kisil*, Plaintiffs Here Allege Actual and Imminent Risks of Harms.**

In *Kisil*, plaintiffs failed to demonstrate any actual harm, such as identity theft or fraud, in the three years after the breach. *Kisil*, 2025 WL 2589000, at *2. Their failure was particularly problematic given that they had the opportunity to obtain discovery and amend the complaint.[6]

In direct contrast, Plaintiffs here allege countless examples of actual misuse of their Private Information that occurred almost immediately after the Data Breach as a direct result of Defendants' failures to adequately protect Plaintiffs' Private Information. *See, e.g.,* MC ¶¶ 27-31, 139-44, 283, 329, 340, 346, 352, 357, 363, 375, 399, 411, 435, 441, 471, 475, 503, 509, 515, 562, 581, 598, 604, 617, 635, 641. PowerSchool itself recognizes this in its Motion to Dismiss. *See* PowerSchool's MTD at 5-6, 9. Indeed, Plaintiffs plausibly allege actual misuse of their Private Information resulting from the Data Breach, including that their financial accounts were compromised, resulting in unauthorized charges and other fraudulent credit activity, fraudulent tax activity, disrupted credit histories, and compromised access to benefits and employment opportunities. For example, Plaintiff Volpert alleges that a fraudulent tax return was filed in Spring 2025 (just a few months after the Data

[6] *In re Illuminate Edu. Data Sec. Incident Litig.,* 2023 WL 3158954, *6 (C.D. Cal. Apr. 19, 2023) ("Given the 18 months since the notification of the Data Breach, the discovery available before repleading their allegations, [redacted], the Court finds that [p]laintiffs will not be able to correct the deficiencies in the CAC.").

Breach) using her name. *See* MC ¶ 435. As a further example, Plaintiff Noble alleges that she was unable to claim her unemployment benefits because someone else had already claimed them in her name. *See* MC ¶ 471. Incidents like these, discussed more fully in the Master Complaint, *see, e.g.,* MC ¶ 399, 503, 581, 604, 635, and *in passim*, directly tie the exposure of Plaintiffs' Private Information in the Data Breach to Plaintiffs' tangible injuries.

*Kisil* is also distinguishable because it did not involve any allegations that plaintiffs' breached personal information was found on the Dark Web after the breach. Here, multiple Plaintiffs allege that, since the Data Breach, they have been informed that their Private Information has been found on the Dark Web. *See, e.g.*, *id.* ¶¶ 295, 357, 399, 470, 544, 611, 635. *See, e.g., Medoff*, 2023 WL 4291973, at *3 (finding injury sufficiently pled where some plaintiffs alleged their PII was "posted on the dark web" after the data breach).

Thus, Plaintiffs' allegations of actual harm—which were absent in *Kisil*—establish an imminent and substantial risk of identity theft and fraud, sufficient to confer standing for all Plaintiffs. *See* MTDO at 10-14.

**C. *Kisil* is also Inapposite with Respect to Emotional Distress and Injunctive Relief.**

In *Kisil*, the Ninth Circuit also found that plaintiffs could not assert standing for claims and damages for emotional distress or forward-looking injunctive relief because the plaintiffs failed to allege any actual misuse or future risk of fraud. *Kisil, supra,* 2025 WL 2589000, **1-2, n. 1.

Again, *Kisil* is inapposite because, here, Plaintiffs sufficiently allege both actual misuse and future risk of harm. *See supra* Sections I(A)-(B); MTDO at 9-14. Courts have repeatedly recognized that where, as here, "[p]laintiffs have alleged a substantial risk of future misuse of their Private Information, . . . their allegations of emotional distress—coupled with that risk—are sufficiently concrete injuries . . . ." *Priddy v. Zoll Med. Corp.,* 2025 WL 975234, at *7 (D. Mass. Mar. 31, 2025); *see also*

*Goz v. Allied Collection Servs., Inc.*, 812 F. App'x 544, 545 (9th Cir. 2020) (finding emotional distress a sufficiently concrete injury to establish standing).

### D. Unlike in *Kisil*, Plaintiffs Sufficiently Allege Concrete Injuries.

Without allegations of actual harm, plaintiffs in *Kisil* could only attempt to establish standing by alleging intangible harms. The Ninth Circuit held that "both common law and statutory claims based on intangible harm from an invasion of privacy must be benchmarked to one of four distinct privacy torts." *Kisil*, 2025 WL 2589000, at *1 (applying "*TransUnion*'s requirement that an intangible harm can be a basis for standing only where the asserted injury has a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts"). However, plaintiffs were unable to "benchmark" their allegations to any privacy torts. The Ninth Circuit rejected plaintiffs' argument that their intangible harms were "closely related to the general common law injury of intrusion upon personal privacy" because the court does not "recognize a free-roaming common law right to privacy." *See id.*[7] Notably, the court also acknowledged that plaintiffs waived this argument by failing to raise it to the trial court. *Id.*

Also, unlike *Kisil*, Plaintiffs do not solely rely on intangible harms. Instead, Plaintiffs adequately allege standing based not only on imminent risks of harms but also on actual tangible harms that have already occurred. *See supra* Sections I(A)-(C). Plaintiffs sufficiently allege intangible harms because they have expressly anchored their claims to the common law torts of intrusion upon seclusion and public disclosure of private information, asserting that the unauthorized exposure of their

---

[7] The Ninth Circuit cited *Popa*, which found that the plaintiff had not established standing because, when she "briefly point[ed] to the common-law privacy torts of intrusion upon seclusion and public disclosure of private facts[,]" she never explained "how the tracking of her interactions with the PSP website caused her to experience any kind of harm that is remotely similar to the highly offensive interferences or disclosures that were actionable at common law." 2025 WL 2448824, at *5.

Social Security numbers and other high-risk Private Information, like medical information, financial information, addresses, and birthdates, is highly offensive to a reasonable person, particularly when such information belongs to minors. *See* MTDO at 15-17; MC ¶¶ 858, 859, 860, 863, 867, 868, 1011, and 1012 (alleging the offensive nature of the disclosure of Plaintiffs' Private Information). These are precisely the type of allegations Courts find sufficient. *See* MTDO at 15-17.

For the avoidance of doubt, the law does not require intangible harms to exactly duplicate common law torts, but, instead, merely requires a "close relationship" between the intangible harms and an analogous common law tort. *See TransUnion,* 594 U.S. at 425, 427 (requiring allegations that plaintiffs have "suffered a harm that has traditionally been actionable in our nation's legal system"); *Popa*, 2025 WL 2448824, at *5. Plaintiffs have done so here. MTDO at 15-17.

## III. CONCLUSION

For the reasons discussed herein, *Kisil* was decided on facts and legal bases entirely distinct from the matter *sub judice,* and to the extent this Court applies the reasoning endorsed therein, it supports Plaintiffs' standing.

Dated: October 15, 2025

Respectfully submitted,
*/s/ David S. Casey, Jr.*
David S. Casey, Jr., Cal. State Bar No. 60768
dcasey@cglaw.com
**CASEY GERRY FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811

*Co-Lead Counsel for Class Action Plaintiffs (Track One)*

*/s/ Carol C. Villegas*
Carol C. Villegas, N.Y. State Bar No.

4154324*
cvillegas@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700
*Co-Lead Counsel for Teachers Unions Plaintiffs (Track One)*

*/s/ James J. Pizzirusso*
James J. Pizzirusso, D.C. State Bar No. 477604*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200

*Co-Lead Counsel for Individual Action Plaintiffs (Track One)*

Jennifer M. French, Cal. State Bar No. 265422
jennf@lcllp.com
**LYNCH CARPENTER, LLP**
9171 Towne Centre Dr, Ste 180
San Diego, CA 92122
Tel.: (619) 762-1903

*Plaintiffs' Liaison Counsel*