Anne Johnson Palmer
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

Christopher M. Young
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com

*Attorneys for Defendants PowerSchool*
*Holdings, Inc., PowerSchool Group, LLC*

John P. Carlin (NY 3031887)*
**PAUL, WEISS, RIFKIND,**
   **WHARTON & GARRISON**
   **LLP**
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant*
*Bain Capital, L.P.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br>All Track One Actions | Case No. 25-MD-03149 (BEN) (MSB)<br><br>**SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF POWERSCHOOL AND BAIN'S MOTIONS TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A<br>Date: TBD<br>Time: TBD |

i

Defendants PowerSchool Holdings, Inc. and PowerSchool Group, LLC ("PowerSchool"), and Bain Capital, L.P. ("Bain," and together with PowerSchool, "Defendants")[1] respectfully submit this supplemental brief in response to the Court's Order on October 3, 2025, requesting that the parties address the effect of the Ninth Circuit's decision in *Kisil v. Illuminate Education, Inc.*, No. 23-4114, 2025 WL 2589000 (9th Cir. Sept. 8, 2025).[2]

*Kisil* is part of a consistent and clear trend of decisions applying the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), to dismiss claims arising from data security incidents for lack of Article III standing. *Kisil* requires the dismissal of the claims brought by many of the Track One Plaintiffs because 121 "No-Injury Plaintiffs" completely fail to allege any of the types of sufficiently sensitive information and concrete injury necessary to plead Article III standing. Importantly, Article III standing is a threshold issue with the potential to greatly streamline this litigation: as PowerSchool's Motion to Dismiss explains, 121 of the 170 Track One Plaintiffs should be dismissed based on a clear lack of standing. ECF No. 285, at 6-17; ECF No. 285-2 (Appendix A).

## I.    *ILLUMINATE* AND *KISIL* DIRECTLY APPLY TO EACH OF THE NO-INJURY PLAINTIFFS' ALLEGATIONS OF HARM

In *Kisil*, an undeniably similar case involving another educational software provider like PowerSchool that experienced a cyberattack, the Ninth Circuit affirmed the dismissal of the plaintiffs' claims due to a lack of Article III standing. Specifically, *Kisil* affirmed the dismissal with prejudice of plaintiffs' claims in *In re*

---

[1] Any terms not otherwise defined shall have the meaning assigned to them in PowerSchool's Motion to Dismiss. Bain joined PowerSchool's arguments on standing in its Motion to Dismiss (ECF No. 286, at 12) and also joins this Supplemental Brief in its entirety.

[2] PowerSchool cited *Kisil* in its Memorandum in Support of its Motion to Dismiss the Consolidated Individual Users Class Action Complaint ("CAC") (the "Motion to Dismiss," ECF No. 285), and attached the ruling as Appendix D. Although *Kisil* is unpublished, it is properly cited and carries persuasive weight in this Court. *See* Fed. R. App. P. 32.1; Ninth Cir. R. 36-3(b).

*Illuminate Education Data Security Incident Litigation*, No. 22-cv-01164, 2023 WL 8888839 (C.D. Cal. Nov. 6, 2023) ("*Illuminate 2*"), which followed the district court's earlier ruling in *In re Illuminate Education Data Security Incident Litigation*, No. SACV 22-1164, 2023 WL 3158954 (C.D. Cal. Apr. 19, 2023) ("*Illuminate 1*"). The plaintiffs were parents suing Illuminate, which various school districts had retained to manage student information for approximately 17 million students. *Illuminate 1*, 2023 WL 3158954, at *1. The plaintiffs alleged that a third party had exfiltrated student academic, behavioral, and demographic information by accessing one of the company's software platforms. *Id.* The information at issue did not include Social Security numbers or any payment card or bank information, but was alleged to potentially include "grades, socio-economic disadvantage status, and special education information." *Kisil*, 2025 WL 2589000, at *1. The plaintiffs advanced largely the same causes of action that the Track One Plaintiffs do here, based on purportedly inadequate data security and delayed notice.

Applying *TransUnion*'s guidance that an Article III injury must be "real, and not abstract," the district court concluded that the plaintiffs lacked standing based on any of their four theories of harm. *Illuminate 1*, 2023 WL 3158954, at *2 (quoting *TransUnion*, 594 U.S. at 424); *Illuminate 2*, 2023 WL 8888839, at *2 (same). In its Motion to Dismiss, PowerSchool addressed the same four categories of alleged harm that the district court considered in *Illuminate*, and why the No-Injury Plaintiffs' allegations fail for the same reasons. ECF No. 285, at 10-17. The Ninth Circuit unequivocally affirmed the district court's dismissal on each of these grounds.

**No Actual Identity Theft.** The plaintiffs failed to plead actual identity theft. The *Illuminate* district court reasoned that certain plaintiffs' allegations of accounts being hacked or fraudulent charges were insufficient because there was no allegation that "social security, credit card, or bank information was leaked," such that the court could not infer that their purported injuries resulted from the Illuminate data breach. *Illuminate 1*, 2023 WL 3158954, at *2; *Illuminate 2*, 2023 WL 8888839, at *2. The

2

Ninth Circuit "agree[d] with the district court" that "there has been no actual identity theft." *Kisil*, 2025 WL 2589000, at *2.

So too here. The No-Injury Plaintiffs do not allege any actual identity theft resulting from PowerSchool's Cybersecurity Incident, nor do they claim that their "social security, credit card, or bank information was leaked." *Illuminate 1*, 2023 WL 3158954, at *2; *Illuminate 2*, 2023 WL 8888839, at *2. Certain of the *Illuminate* plaintiffs—just like some of the No-Injury Plaintiffs here—alleged that they experienced unauthorized debit card charges or hacks of their Amazon and PayPal accounts. *Illuminate 1*, 2023 WL 3158954, at *2. The district court rejected that theory of standing, and the Ninth Circuit affirmed that rejection, because the plaintiffs did not allege that the incident compromised the sort of information that would allow an unauthorized person to perpetrate such activity. *Id.*; *Illuminate 2*, 2023 WL 8888839, at *2. Even where a plaintiff alleged fraudulent charges had occurred, that allegation was "still insufficient" because the complaint "fail[ed] to explain how any information that was leaked could be linked to the [fraudulent] charge," leaving the court to "speculate . . . whether any actual identity theft occurred based on information leaked in the Data Breach." *Illuminate 2*, 2023 WL 8888839, at *2; *see Illuminate 1*, 2023 WL 3158954, at *2.

In their opposition to PowerSchool's motion to dismiss (*see* ECF No. 320, at 10), the Track One Plaintiffs attempt to distinguish *Illuminate* by arguing that they allege impacts to "sensitive" information—which is the case for, at most, only 49 Plaintiffs.[3] These Plaintiffs' allegations do not confer standing on the dozens of

---

[3] The PowerSchool notifications that Plaintiffs rely on throughout their complaint, *see* CAC, ECF No. 259, ¶ 143, indicate that information involved in the Cybersecurity Incident varied by person and included one or more of the following: name, contact information, date of birth, limited medical alert information, Social Security number, and other related information. Despite Plaintiffs' attempt to muddy the waters in their opposition, PowerSchool's notifications made clear that the information varied and did not include Social Security numbers for all users. The

SUPPLEMENTAL BRIEF ISO POWERSCHOOL AND BAIN'S MOTIONS TO DISMISS    CASE NO. 3:25-MD-03149

others who do not allege that they provided such information. "Every class member must have Article III standing in order to recover individual damages." *TransUnion*, 594 U.S. at 431. Plaintiffs cannot group plead their way into standing, relying on generalized allegations that the Cybersecurity Incident included "sensitive" information to mask the fact that most Plaintiffs do not allege that the Cybersecurity Incident involved any information that would place them at an "imminent and substantial risk of identity theft." *Kisil*, 2025 WL 2589000, at *2.

**No Imminent Risk of Future Harm.** The *Illuminate* district court reasoned that the plaintiffs did not adequately plead a risk of future harm because they did not allege how the type of information involved ("academic and behavioral information") put them "at harm or risk, particularly credible and immediate risk of harm." *Illuminate 1*, 2023 WL 3158954, at *3; *see Illuminate 2*, 2023 WL 8888839, at *3-4. The Ninth Circuit again "agree[d] with the district court" that "the information at issue does not create an imminent and substantial risk of identity theft." *Kisil*, 2025 WL 2589000, at *2. And with respect to injunctive relief, the Ninth Circuit held that the risk of future harm was not "imminent and substantial" both because no fraud had occurred since the incident, and because "the kind of information at issue [is not] the kind that this court normally considers sufficient to find a credible threat of identity theft." *Id.*

As PowerSchool detailed in Appendix A to its Motion to Dismiss, the No-Injury Plaintiffs lack standing because they do not claim that the Incident involved Social Security numbers or any equivalent "sensitive" information. Many of the No-Injury Plaintiffs do not even describe the information they claim to have provided to PowerSchool, instead relying on catch-all allegations that their "PII was input into PowerSchool's SIS." *See, e.g.*, CAC, ECF No. 259, ¶¶ 553, 601. Other No-Injury Plaintiffs make clear that the Incident only involved their contact, demographic, or

---

notifications also did not identify any financial information as being involved—for any potential plaintiff—nor do Plaintiffs allege any facts that would allow the Court to infer that financial information was involved in the Incident.

SUPPLEMENTAL BRIEF ISO POWERSCHOOL AND BAIN'S MOTIONS TO DISMISS    CASE NO. 3:25-MD-03149

academic information, or what they loosely term as "medical information," without any further elaboration.  *See, e.g.*, *id.* ¶¶ 488, 506.

The No-Injury Plaintiffs do not allege any fraud that could have possibly resulted from the Cybersecurity Incident despite the passage of ten months since PowerSchool announced that it had been the victim of a cyberattack.  This is because the information that the No-Injury Plaintiffs allege was compromised is no more sensitive or susceptible to fraud than the academic, behavioral, and demographic information that did not "create an imminent and substantial risk of identity theft" in *Kisil*.  2025 WL 2589000, at *2.  In response, Plaintiffs mainly invoke decisions predating *TransUnion* to argue that they face an imminent risk of future harm, *see* ECF No. 320, at 10-12.  But as the *Illuminate* district court emphasized, *TransUnion* has substantially changed the analysis since decisions like *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010), and *In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018).  *See Illuminate 1*, 2023 WL 3158954, at *3; *cf. Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at *7 (9th Cir. Aug. 26, 2025) (expressing skepticism of theories of injury inconsistent with *TransUnion*).  Those cases also involved an alleged compromise of information (e.g., Social Security numbers and credit card numbers) that the No-Injury Plaintiffs do not claim here.  The No-Injury Plaintiffs simply do not allege that the Cybersecurity Incident involved the sort of information that would place them at an imminent, substantial risk of theft or fraud.

**No Derivative Harm.**  The *Illuminate* district court concluded that plaintiffs' derivative allegations—for example, of anxiety or lost time spent on mitigation efforts—failed because they did not adequately plead any risk of future harm. *Illuminate 1*, 2023 WL 3158954, at *4; *Illuminate 2*, 2023 WL 8888839, at *4-5. Here too, the Ninth Circuit "agree[d] with the district court" that "the harms resulting from the knowledge of a risk of identity theft cannot support standing where the risk is not imminent or substantial."  *Kisil*, 2025 WL 2589000, at *2.  *Kisil* also makes clear that the No-Injury Plaintiffs' allegations that they have incurred monitoring

SUPPLEMENTAL BRIEF ISO POWERSCHOOL AND BAIN'S MOTIONS TO DISMISS      CASE NO. 3:25-MD-03149

costs to guard against a supposed risk of future identity theft, or face associated anxiety and inconvenience related to that hypothetical risk, do not confer standing. *Id.*

**No Loss of Value in Their Information or Privacy.**  Finally, the *Illuminate* district court rejected arguments based on an alleged loss of value in the plaintiffs' information or privacy, where the plaintiffs had only asserted in conclusory terms that there was a dark web or "cyber black-market" for their information, and that their information supposedly lost value.  *Illuminate 1*, 2023 WL 3158954, at *5; *Illuminate 2*, 2023 WL 8888839, at *5-6.  The district court also recognized that a loss of privacy "arising from the theft of non-sensitive personal information, standing alone" could not support standing.  *Illuminate 2*, 2023 WL 8888839, at *6.

The Ninth Circuit agreed.  In *Kisil*, the Ninth Circuit applied its recent published decision in *Popa* to reject the plaintiffs' arguments that they had standing because they asserted statutory and common law causes of action that are "injuries in themselves," and that their harms were "closely related to the general common law injury of 'intrusion upon personal privacy.'"  *Kisil*, 2025 WL 2589000, at * 1. Those arguments were barred by *TransUnion*, which clarified that Article III requires a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."  *Id.* (quoting *TransUnion*, 594 U.S. at 425).  Here, Plaintiffs offer nothing more than allegations substantially identical to those in *Illuminate* and *Kisil*.

## II.  *KISIL* IS REPRESENTATIVE OF THE POST-*TRANSUNION* LAW DISMISSING SIMILAR CLAIMS FOR LACK OF STANDING

*Kisil* is far from the only decision that rejects the No-Injury Plaintiffs' theories of standing.  The Ninth Circuit's decision is consistent with other recent decisions following *TransUnion*, which have dismissed claims for lack of Article III standing where plaintiffs fail to allege that a cybersecurity incident involved information with the potential to create an imminent and substantial risk of harm and instead rely on

cookie-cutter allegations of fear, anxiety, and lost time.  *See, e.g.*, *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1183 (N.D. Cal. 2025) (holding no standing where plaintiffs failed to allege facts showing that disclosure of IP addresses could plausibly be used to cause harm); *Williams v. Singing River Health Sys.*, 2025 WL 2487792, at *5-11 (S.D. Miss. Aug. 28, 2025) (no standing); *Dougherty v. Bojangles' Rests., Inc.*, 2025 WL 2810673, *4 (W.D.N.C. Sept. 30, 2025) (same); *see also, e.g.*, ECF No. 285, at 8, 12-14 (citing cases post-*TransUnion*).  In fact, following *TransUnion*, recent district court decisions have scrutinized allegations of actual misuse and future imminent harm even where Social Security numbers were involved, have held that plaintiffs fail to allege an injury-in-fact or traceability, and then dismissed for lack of standing.[4]  To be clear, Defendants do not concede that the 49 Other Plaintiffs in Appendix A will be able to establish  standing.  They do not, for example, plausibly allege that their harm is traceable to the Incident or, in many instances, any actual misuse of their information.  The Court should closely scrutinize whether these Plaintiffs have standing.

In sum, *Kisil* clearly demonstrates that 121 of 170 Plaintiffs—the No-Injury Plaintiffs—lack standing.  Under *Kisil*, these Plaintiffs do not plausibly allege that their information has been used to perpetrate identity theft, or that that their information is sufficiently sensitive to raise an imminent or substantial risk of identity theft.  Moreover, *Kisil* confirms that the No-Injury Plaintiffs may not manufacture an Article III injury by alleging purported derivative harms, which are speculative and self-inflicted, such as monitoring.  These Plaintiffs' claims should be dismissed for lack of Article III standing, and the Court need not consider whether they have otherwise adequately pled claims at this stage.

---

[4] *See, e.g.*, *Stuart v. Kyocera AVX Components Corp.*, 769 F. Supp. 3d 476, 485-91 (D.S.C. 2025); *Jenkins v. Associated Wholesale Grocers, Inc.*, No. 24-4039, 2025 WL 708574, at *3-5 (D. Kan. Mar. 5, 2025); Order, *Harvey v. National Amusements, Inc.*, No. 24-10027 (D. Mass. Mar. 27, 2025), ECF No. 40, at 3-5 (attached as Appendix A).

SUPPLEMENTAL BRIEF ISO POWERSCHOOL AND BAIN'S MOTIONS TO DISMISS      CASE NO. 3:25-MD-03149

Dated: October 15, 2025

*/s/ Christopher M. Young*
Anne Johnson Palmer
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

Monica Mleczko (MA BBO No. 696607)*
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 235-0337
monica.mleczko@ropesgray.com

Christopher M. Young
Oliver M. Kiefer
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com
oliver.kiefer@us.dlapiper.com

*Attorneys for Defendants PowerSchool Holdings, Inc. and PowerSchool Group, LLC.*

Dated: October 15, 2025

*/s/ John P. Carlin*
John P. Carlin (NY Reg. No. 3031887)*
jcarlin@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street NW
Washington, D.C. 20006-1047
Tel: (202) 223-7300

8

Jacobus J. Schutte (NY Reg. No. 5023353)*
jschutte@paulweiss.com
Dylan O. Smith (NY Reg. No. 5846076)*
dosmith@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 373-3000

R. Rosie Vail (SBN 317977)
rvail@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Tel.: (628) 432-5100

*Counsel for Defendant Bain Capital, L.P.*

* Admitted *pro hac vice*

9

## **CERTIFICATE OF SERVICE**

I certify that on October 15, 2025, I filed the foregoing Supplemental Brief In Support Of PowerSchool's Motion To Dismiss Consolidated Individual Users Class Action Complaint with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ Anne Johnson Palmer*
Anne Johnson Palmer

1

# APPENDIX A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 24-10027-GAO

NATHAN HARVEY and NICK DEPROSPO,
on behalf of themselves and all others similarly situated,
Plaintiffs,

v.

NATIONAL AMUSEMENTS, INC. d/b/a/ SHOWCASE CINEMAS,
Defendant.

OPINION AND ORDER
March 27, 2025

O'TOOLE, D.J.

Plaintiffs Nathan Harvey and Nick Deprospo have brought this putative class action against defendant National Amusements, Inc., d/b/a Showcase Cinemas, asserting claims of negligence, breach of implied contract, unjust enrichment, and invasion of privacy[1] stemming from a data breach which may have involved the wrongful use of certain of plaintiffs' personally identifiable information ("PII"). (Am. Compl. (dkt. no. 22).) National Amusements has moved to dismiss the amended complaint for lack of standing and failure to state a claim. (Mot. to Dismiss (dkt. no. 26).) As detailed below, the motion is GRANTED as to both theories.

National Amusements is a movie theatre operator and mass media holding company. The plaintiffs are two former National Amusements employees. As a condition of their employment, the plaintiffs provided National Amusements with PII including their names, dates of birth, financial account information, and Social Security numbers.

---

[1] Plaintiffs voluntarily dismissed their additional claim of negligence per se. (Pls.' Mem. of Law in Opp'n to Mot. to Dismiss at 2 n.1 (dkt. no. 29).)

In December 2022, an unauthorized person accessed the National Amusements data network. Files containing confidential information of employees may have been viewed and/or taken. National Amusements became aware of this data breach on December 15, 2022, and commenced an investigation.

Plaintiffs were informed of the data breach by individualized letters approximately a year later. The letter to Harvey stated that "the following types of information related to [him] could be involved: name, Social Security number, date of birth, and employer assigned identification number." (Am. Compl. Ex. A.) Deprospo's letter informed him that his "name, Social Security number, employer assigned identification number, and financial account information" could have been involved in the breach. (Id. Ex. B.) As is evident from these two letters, slightly different PII was impacted for different employees.

Harvey and Deprospo each allege that they suffered specific adverse consequences from the data breach. Harvey alleges that he was in the process of purchasing a home when he learned of the data breach and "due to the numerous inquiries and credit issues stemming from the Data Breach, [he] was removed from the homebuying process." (Id. ¶ 66.) He further states that a fraudulent LLC named "Harvey Nathan Paul LLC" was established in his name by an unknown person. He has since received three letters addressed to the LLC.

Deprospo alleges that shortly after the breach, an unknown person used his credit card to make several hundred dollars of unauthorized charges, which required him to spend time to "rectify[] the situation" and ultimately he canceled the card. (Id. ¶ 90.) Deprospo also alleges that he experienced an increase in spam telephone calls, causing him to change his phone number, as well as a high volume of password reset requests for his social media accounts.

Plaintiffs filed this putative class action on January 3, 2024, under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), seeking class certification, declaratory and injunctive relief, restitution, damages, and attorneys' fees. Plaintiffs filed a subsequent Amended Complaint on March 29, 2024.

National Amusements has moved to dismiss the amended complaint on two bases: under Federal Rule of Civil Procedure 12(b)(1), for lack of Article III standing, and under Rule 12(b)(6), for failure to state a claim as to each of the complaint's claims.

Plaintiffs fail to allege sufficient facts to establish standing. Specifically, they have not asserted facts supporting their claims that their identified injuries are traceable to the National Amusements data breach. Rule 12(b)(1) requires a court to assess whether the court has subject matter jurisdiction over the claimed injuries. Fed. R. Civ. P. 12(b)(1). Dismissing a case for "lack of standing is functionally equivalent to a dismissal for lack of jurisdiction." Hochendoner v. Genzyme Corp., 823 F.3d 724, 728 (1st Cir. 2016). "[P]laintiffs bear the burden of demonstrating that they have standing." TransUnion LLC v. Ramirez, 594 U.S. 413, 430–31 (2021). In determining whether a plaintiff has met this burden, a court "takes all well-pleaded facts in the complaint as true and indulge[s] all reasonable inferences in [plaintiff's] favor." Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc., 958 F.3d 38, 46–47 (1st Cir. 2020) (internal quotation marks omitted). "[P]laintiffs must demonstrate standing for each . . . form of relief they seek." TransUnion, 594 U.S. at 431.

To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). The traceability requirement "does not require a tort-like showing of proximate causation." Conservation L.

3

<u>Found., Inc. v. Acad. Express, LLC</u>, 129 F.4th 78, 90 (1st Cir. 2025) (citing <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct.")). For standing in the data breach context, injuries are fairly traceable if the defendant's "actions led to the exposure and actual or potential misuse of the plaintiffs'" personal information. <u>See</u> <u>Webb v. Injured Workers Pharmacy, LLC</u>, 72 F.4th 365, 377 (1st Cir. 2023).

Both plaintiffs have failed to establish standing for damages and injunctive relief because they have not demonstrated that their injuries are fairly traceable to the specific data breach at issue. The most significant allegations here concern the plaintiffs' claimed injuries that involve what case law refers to as "actual misuse" of their PII, <u>Webb</u>, 72 F.4th at 373, in this case, the alleged unauthorized credit card charges for Deprospo and the fraudulent LLC for Harvey.[2]

Deprospo attempts to conform his injury to the injury in <u>Webb</u>, a data breach case where the court found that plaintiff had standing because the plaintiff had a fraudulent tax return filed using her stolen information. 72 F.4th at 373. In that case, the plaintiff alleged her Social Security number was stolen, a necessary element to file a tax return. <u>Id.</u> at 369–70. While the Court must draw all reasonable inferences in favor of the plaintiff, it is not reasonable to infer that Deprospo's unauthorized credit card charges occurred because of the National Amusements data breach. Deprospo has not alleged that he provided National Amusements with the one piece of information necessary to make unlawful use of a credit card—a credit card number. While the letter informing

---

[2] It is not necessary to address the other injuries that the plaintiffs allege, such as emotional injuries, spam emails, and diminution in the value of their PII, because they are not instances of actual misuse of stolen data. This Court is not aware of any instances in the First Circuit where standing in a data breach case has been established absent some "actual misuse" of the stolen data. <u>See, e.g.</u>, <u>Taylor v. UKG</u>, 693 F. Supp. 3d 87, 99 (D. Mass. 2023) (collecting cases).

Deprospo of the data breach states that his financial account information may have been impacted, there is no indication that the specific breach alleged would have permitted specifically the misuse of credit card numbers. To the contrary, the Attorney General of Massachusetts Data Breach report, which is incorporated in the amended complaint, specifically notes that credit card numbers were *not* impacted in the National Amusements data breach. (Am. Compl. ¶ 42 n.6.)

The filing of a fraudulent LLC using Harvey's name also fails the traceability requirement. Harvey does not allege that he provided National Amusements with his mailing address, which, Harvey concedes, is a necessary piece of information to create an LLC. (Pls.' Mem. in Opp'n to Mot. to Dismiss at 3.) Harvey has also not shown an "obvious temporal connection" between the data breach and the actual misuse of his data, which can sometimes aid in establishing traceability, see Webb, 72 F.4th at 374; In re LastPass Data Sec. Incident Litig., 742 F. Supp. 3d 109, 122 (D. Mass. 2024), because Harvey alleges he received notice of the fraudulent LLC in January 2024, over two years after the data breach occurred. Both plaintiffs have failed to adequately allege specific facts to support a plausible conclusion of actual misuse of their specific data that is fairly traceable to the data breach at issue.

In the absence of any plausible allegation of actual misuse traceable to the specific data breach at issue in this case from either plaintiff, the plaintiffs lack standing for either damages or injunctive relief.

Even if plaintiffs had met their burden with respect to standing, they have failed to allege sufficient facts to plausibly state a claim for relief. To survive a motion to dismiss under Rule 12(b)(6), a complaint only needs to allege facts that, taken as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court reviewing a 12(b)(6) motion must accept all factual

5

allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).

Plaintiffs have not sufficiently alleged that the data breach caused the injuries pled. To state a claim for negligence under Massachusetts law, a plaintiff must show "(1) a legal duty owed to the plaintiff[s] by the defendant; (2) a breach of that duty by the defendant; (3) causation; and (4) actual loss by the plaintiff[s]." Delaney v. Reynolds, 825 N.E.2d 554, 556 (Mass. App. Ct. 2005) (first citing Glidden v. Maglio, 722 N.E.2d 971, 973 (Mass. 2000); and then citing Nelson v. Mass. Port. Auth., 771 N.E.2d 209 (Mass. App. Ct. 2002)).

Plaintiffs allege that National Amusements negligently safeguarded their PII. (Am. Compl. ¶ 131.) For the same reasons stated above, plaintiffs have failed plausibly to allege that their actual harms were caused by the National Amusements data breach. See Doull v. Foster, 163 N.E.3d 976, 982 (Mass. 2021) ("It is a bedrock principle of negligence law that a defendant cannot and should not be held liable for a harm unless the defendant caused the harm.").

Similarly, plaintiffs' claim for breach of an implied contract based on National Amusements' failure to safeguard their private information also fails. A contract can be implied "from the conduct and relations of the parties." Sullivan v. O'Connor, 961 N.E.2d 143, 153 (Mass. App. Ct. 2012) (quoting LiDonni, Inc. v. Hart, 246 N.E.2d 446 (Mass. 1969)). "A contract implied in fact requires the same elements as an express contract and differs only in the method of expressing mutual assent." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005) (citation omitted). Plaintiffs "may rely on policy directives, employee handbooks, and corporate manuals as evidence of an implied-in-fact contract." In re Shields Health Care Grp., Inc. Data Breach Litig., 721 F. Supp. 3d 152, 162 (D. Mass. 2024) (citing Salvas v. Wal-Mart Stores, Inc., 893 N.E.2d 1187, 1211 (Mass. 2008)). Here, plaintiffs fail to allege

6

sufficient facts, such as commitments made in company documents or policies, evidencing a meeting of the minds or mutual intent to support the purported implied contract terms that they provided their PII "as a condition of employment" and that "[i]n return, Defendant agreed it would not disclose the PII it collects to unauthorized persons," (Am. Compl. ¶¶ 150–51), or that the parties implicitly agreed to provide "prompt and adequate notice" of unauthorized access of their personal information, (id. ¶ 153).[3] See Longenecker-Wells v. Benecard Servs. Inc, 658 F. App'x 659, 662–63 (3d Cir. 2016) (affirming dismissal of similar claim in a data breach case because plaintiff did not offer any company-specific documents or policies that supported finding an implied contract).

Plaintiffs' claim of unjust enrichment, which is pled in the alternative, also fails. In Massachusetts, to state a claim for unjust enrichment, "a plaintiff 'must show (1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value.'" In re Shields, 721 F. Supp. 3d at 165 (quoting Infinity Fluids Corp. v. Gen. Dynamics Land. Sys., Inc., 210 F. Supp. 3d 294, 309 (D. Mass. 2016)). Here, plaintiffs allege that National Amusements unjustly "benefited from the receipt of Plaintiffs' and the Class's PII." (Am. Compl. ¶ 166.) However, the plaintiffs do not allege that National Amusements gained any benefit from storing the PII, nor did it gain an identified benefit by exposing plaintiffs' PII to misuse by an unknown person. See In re Arthur J. Gallagher Data Breach

---

[3] The privacy policy plaintiffs rely on, (Am. Compl. ¶ 27 n.5), only applies to information collected in certain manners including through: the Showcase websites, a user "register[ing] for information or content Showcase Cinemas makes available," downloading certain mobile applications, or electronic communications with Showcase Cinemas. Showcase Cinemas, Privacy Policy, https://www.showcasecinemas.com/privacy-policy/ (last visited Mar. 21, 2025). The plaintiffs do not allege that National Amusements collected their information in any of these ways, and so this policy does not apply.

7

Litig., 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) (dismissing Illinois unjust enrichment claim for similar reasons).

Finally, plaintiffs' invasion of privacy claim must also be dismissed. Invasion of privacy claims may not pass the motion to dismiss stage if the plaintiff does not plead an intentional act on the part of the defendant. See In re Shields, 721 F. Supp. 3d at 164 (quoting Nelson v. Salem State Coll., 845 N.E.2d 338, 348 (Mass. 2006)). While not binding, it is instructive that courts in this district have dismissed invasion of privacy claims at this stage when the complaint only alleged that unauthorized third parties, rather than the party tasked with storing their information, disseminated a consumer's private information. See id. Here, plaintiffs do not allege any intentional dissemination or disclosure of private facts by National Amusements. Rather, they only allege that unidentified third parties accessed and misused their PII.

Accordingly, National Amusements' Motion to Dismiss Plaintiffs' Amended Class Action Complaint (dkt. no. 26) is GRANTED for the reasons stated above. The case is dismissed.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

8