James P. Frantz, Esq. (SBN 87492)
jpf@frantzlawgroup.com
William B. Shinoff, Esq. (SBN 280020)
wshinoff@frantzlawgroup.com
**FRANTZ LAW GROUP, APLC**
402 W. Broadway, Suite 860
San Diego, CA 92101
Telephone: (619) 233-5945
Fax: (619) 525-7672

*Co-Lead Counsel for the School District Direct Action Plaintiffs*

[*Additional Counsel on Signature Page*]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>*This Document Relates to the School District Direct Action Track* | Case No. 25-MD-3149-BEN-MSB<br><br>MDL NO. 3149<br><br>**SCHOOL DISTRICT DIRECT ACTION PLAINTIFFS' OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S OMNIBUS MOTION TO DISMISS THE TRACK TWO COMPLAINTS**<br><br>Date:        N/A<br>Time:        N/A<br>Judge:      Hon. Roger T. Benitez<br>Courtroom:  5A |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

PROCEDURAL HISTORY ...........................................................................................1

FACTUAL BACKGROUND ..........................................................................................2

LEGAL STANDARD ....................................................................................................3

LEGAL ARGUMENT ...................................................................................................4

I.    BAIN IS Subject to Personal Jurisdiction in this Court ........................................4

  A.   Bain Has Purposefully Availed Itself Of The Privilege Of Conducting Activities In California ..........................................................................................5

  B.   Plaintiffs' Claims Arise Out Of Or Relate To Bain's Activities In California  7

  C.   Bain Fails To Establish That Subjecting It To Personal Jurisdiction In This Court Would Be Unreasonable .............................................................................8

II.   Plaintiffs have sufficiently pled the alter ego claim and therefore, the motion to dismiss should be denied .............................................................................................9

  A.   California Law Determine The Alter Ego Doctrine's Application ...................9

    1.   Applying Choice Of Law Analysis, California Law Applies .......................10

      a)   California Law Applies To The Alter Ego Analysis Based On The First Prong Of The Governmental Interest Test .......................................................11

      b)   For Utah, New York, Vermont, Wisconsin, And Virginia, Courts Have Already Determined That The Law Of California And Each Other State Is The Same .................................................................................................................11

      c)   For Illinois, South Carolina, Pennsylvania And Oklahoma, The Governmental Interest Test Would Also Apply California Law. ...................12

      d)   Under The Governmental Interest Test, California Law Would Apply For Idaho As Idaho Has A Similar Test To California ..................................13

      e)   Under the Governmental Interest Test, California Law Would Apply For Tennessee As Tennessee Has A Similar Test To California. ....................14

Case No. 25-MD-3149-BEN-MSB

f)    Under The Governmental Interest Test, California Law Would Apply For Arizona As Arizona Has A Similar Test To California ...........................15

2.    Under The Governmental Interest Test's Second And Third Prongs, California Law Would Apply Because California Has A Greater Interest In The Application Of Its Laws. .................................................................16

III. Plaintiffs have adequately pled that Bain Has Alter Ego Liability for Powerschool's actions based on california's alter ego test ...........................................17

A.    The Pertinent Factors Support Bain's Alter Ego Liability Based On The Unity Of Interest It Shares With PowerSchool ........................................18

1.    Bain Uses PowerSchool As A Conduit For Its Own Affairs.........................20

2.    The DAC Plausibly Alleges That Bain Maintained Inadequate Capitalization Of PowerSchool ........................................................23

3.    Equity And Judicial Policy Strongly Favor Application Of The Alter Ego Doctrine. ......................................................................25

B.    Alternatively, Assuming Arguendo That This Court Believes The Pleadings Are Not Sufficient For The Purposes Of The Motion To Dismiss, The Court Should Grant Jurisdictional Discovery And Leave To Amend. ...........................27

IV. The Plaintiffs have Sufficiently Pled the Direct Intentional Interference Claim and Therefore, the Court Should Deny the Motion to Dismiss...................................28

A.    The Master Complaint Alleges There Was Intentional Interference.............29

B.    The Complaint Alleges The Interference Was Unjustified And Improper. ..30

C.    The Complaint Alleges  Causation And Breach. .............................................33

CONCLUSION ....................................................................................................33

School District Direct Action Plaintiffs' Opposition to Bain Capitals's Omnibus Motion to Dismiss

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

**389 Orange Street Partners v. Arnold,**

   **179 F.3d 656 (9th Cir.1999)** .........................................................................**10**

**A.S. Rampell, Inc. v. Hyster Co.,**

   **3 N.Y.2d 369 (1957)** .....................................................................................**30**

**Adler, Barish, Daniels, Levin & Creskoff v. Epstein,**

   **482 Pa. 416 (1978)** .......................................................................................**31**

**ADO Fin., AG v. DACDonnell Douglas Corp.,**

   **931 F. Supp. 711 (C.D. Cal. 1996)** ...............................................................**8**

**Airbus DS Optronics GmbH v. Nivisys LLC,**

   **183 F. Supp. 3d 986 (D. Ariz. 2016)** ..........................................................**16**

**Allen v. Oberdorfer Foundries, Inc.,**

   **192 A.D.2d 1077, 595 N.Y.S.2d 995 (1993)** ..............................................**23**

**Am. Orthodontics Corp. v. MidAtlantic Orthodontics, Inc.,**

   **No. 317CV01129BENAGS, 2017 WL 4151241 (S.D. Cal. Sept. 18, 2017)** ...............**8**

**Anglo Irish Bank Corp., PLC v. Superior Court,**

   **(2008) 165 Cal.App.4th 969** ..........................................................................**6**

**Aortech Int'l Plc v. Maguire,**

   **No. 214CV00171RJSEJF, 2016 WL 6947024 (D. Utah Oct. 21, 2016)** ...................**33**

**Apple Inc. v. Allan & Assocs. Ltd.,**

   **445 F. Supp. 3d 42 (N.D. Cal. 2020)** ...........................................................**8**

**ArborCraft, LLC v. Cherrybark Flooring, Inc.,**

   **No. 2:08-CV-97, 2009 WL 10710006 (E.D. Tenn. Jan. 20, 2009)** ...........................**14**

**Asahi,**

   **480 U.S. 102, 107 S.Ct. 1026 (1987)** ............................................................**6**

School District Direct Action Plaintiffs' Opposition to Bain Capitals's Omnibus Motion to Dismiss

**Ashcroft v. Iqbal,**

    **556 U.S. 662 (2009)** ................................................................................................**3**

**Associated Vendors, Inc. v. Oakland Meat Co.,**

    **(1962) 210 Cal.App.2d 825** .................................................................................**17**

**Audio of America, Inc. v. Bronsberg & Hughes Pontiac, Inc.,**

    **321 F.Supp.3d 503 (2018)** ...................................................................................**31**

**Automotriz Del Golfo De California, S.A. De C.V. v. Resnick,**

    **47 Cal.2d 792 (1957)** ..........................................................................................**19**

**Axon Solutions, Inc. v. San Diego Data Processing Corp.,**

    **No. 09-CV-2543, 2010 WL 1797028 (S.D. Cal. May 4, 2010)** ...........................**19**

**Ayo v. Quintero,**

    **2024 IL App (4th) 230607-U, ¶ 36** ...............................................................**29, 32**

**Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,**

    **223 F.3d 1082 (9th Cir. 2000)** .............................................................................**9**

**Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp.,**

    **849 F. Supp. 702 (N.D. Cal. 1994)** ...............................................................**23, 28**

**Bell Atl. Corp. v. Twombly,**

    **550 U.S. 544 (2007)** ..........................................................................................**3, 4**

**Blue Line Foodservice Distribution, Inc. v. Cathcart,**

    **No. 24-CV-1250-W-MMP, 2025 WL 1265859 (S.D. Cal. Apr. 30, 2025)** .........**20**

**Boeing Co. v. KB Yuzhnoye,**

    **No. CV 13-730 ABC (AJWX), 2013 WL 12146121 (C.D. Cal. June 3, 2013)** .........**14**

**Boschetto v. Hansing,**

    **539 F.3d 1011 (9th Cir. 2008)** .........................................................................**6, 7**

**Bourne v. Town of Madison,**

    **No. 05-CV-365-JD, 2010 WL 1233977 (D.N.H. Mar. 23, 2010)** ........................**29**

**Brady v. UBS Fin. Servs., Inc.,**

    **No. 10-CV-284-SPF-FHM, 2013 WL 1309250 (N.D. Okla. Mar. 26, 2013)** ............**13**

**BRIGITTE DENT v. HYATT HOTELS CORP. d/b/a WORLD OF HYATT,**

**No. CV 24-6354, 2025 WL 2934911 (E.D. Pa. July 11, 2025)** ...................................12

**Burger King Corp. v. Rudzewicz,**

**471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)** ........................................6, 7, 8, 9

**C.R. England v. Swift Transportation Co.,**

**437 P.3d 343 (2019)**...............................................................................................31

**California.” Wash. Mutual Bank v. Super. Ct.,**

**24 Cal.4th 906 (2001)**...........................................................................................11

**Cam-Carson, LLC v. Carson Reclamation Auth.,**

**82 Cal. App. 5th 535, 298 Cal. Rptr. 3d 482 (2022)** .....................................25

**Canal Ins. Co. v. Montello, Inc.,**

**822 F. Supp. 2d 1177 (N.D. Okla. 2011)**............................................................13

**Certified Building Prods., Inc. v. NLRB,**

**528 F.2d 968 (9th Cir. 1976)** ................................................................................8

**Connecticut Gen. Life Ins. Co. v. Earl Scheib, Inc.,**

**No. 11CV788-AJB(WVG), 2012 WL 12868358 (S.D. Cal. May 22, 2012)**........20, 26

**Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.,**

**911 F.2d 242 (9th Cir. 1990)** ................................................................................4

**Crouch v. Kroger Co.,**

**No. 08-02044, 2009 WL 10664332 (W.D. Tenn. July 27, 2009)** ......................30

**Daimler AG v. Bauman,**

**571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)** ....................................6

**Davis v. Cranfield Aerospace Sols., Ltd.,**

**71 F.4th 1154 (9th Cir. 2023)** .........................................................................6, 7

**Demetracopoulos v. Wilson,**

**138 N.H. 371, 640 A.2d 279 (1994)** ..................................................................30

**DePetris v. Traina,**

**211 A.D.3d 939, 181 N.Y.S.3d 298 (2022)** .......................................................25

Case No. 25-MD-3149-BEN-MSB

School District Direct Action Plaintiffs' Opposition to Bain Capitals's Omnibus Motion to Dismiss

*Doe v. Unocal Corp.,*

   248 F.3d 915 (9th Cir. 2001) ...................................................................................21

*Dolarian Cap., Inc. v. SOC, LLC,*

   No. 1:11-CV-00031-LJO, 2013 WL 433001 (E.D. Cal. Feb. 1, 2013) ................18, 26

*Doney v. TRW, Inc.,*

   33 Cal.App.4th 245 (1995)..................................................................................25

*Edmunds v. Delta Partners, L.L.C.,*

   403 S.W.3d 812 (Tenn. Ct. App. 2012)..............................................................15

*Eversource Cap. LP v. Fimrite,*

   No. CV-18-02583-PHX-SMM, 2019 WL 11638377 (D. Ariz. May 21, 2019) ..........16

*Fed. Res. Bank of San Francisco v. HK Sys.,*

   No. C-95=1190, 1997 WL 227955 (N.D. Cal. Apr. 24, 1997).....................................19

*FTC - Forward Threat Control, LLC v. Dominion Harbor Enters., LLC,*

   No. 5:19-CV-06590-EJD, 2020 WL 5545156 (N.D. Cal. Sept. 16, 2020).................11

*Futterman v. Kaiser Found. Health Plan, Inc.,*

   91 Cal. App. 5th 656 (2023)................................................................................27

*Glenn v. Point Park College,*

   441 Pa. 474 (1971) ...............................................................................................30

*Glob. Commodities,*

   972 F.3d ..................................................................................................................5

*Goldin-Feldman v. Blum & Fink, Inc.,*

   2000 WL 1182798 (S.D.N.Y. Aug. 18, 2000)........................................................30

*Gourdine v. Karl Storz Endoscopy-Am., Inc.,*

   223 F. Supp. 3d 475 (D.S.C. 2016) .....................................................................13

*H.C. Duke & Son, LLC v. Prism Mktg. Corp.,*

   No. 4:11-CV-04006-SLD, 2012 WL 2792443 (C.D. Ill. July 9, 2012) .......................13

*Hanson v. Denckla,*

   357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ...............................................5

Case No. 25-MD-3149-BEN-MSB

School District Direct Action Plaintiffs' Opposition to Bain Capitals's Omnibus Motion to Dismiss

**Hawaii Disc., LLC v. Hawaii Sunset Events, LLC,**

   No. 2:21-CV-02011-DCN, 2022 WL 624704 (D.S.C. Mar. 3, 2022).........................12

**HCG Platinum, LLC v. Preferred Prod. Placement Corp.,**

   No. 2:11-CV-00496, 2023 WL 3819388 (D. Utah June 5, 2023)...............................11

**Hidalgo v. JPMorgan Chase Bank, N.A.,**

   No. 3:24-CV-02386-BEN-JLB, 2025 WL 1370488......................................................4

**HOB Ent., Inc. v. SilkHOB, LLC,**

   No. 4:08-CV-02783-TLW, 2011 WL 321780 (D.S.C. Jan. 28, 2011) ........................13

**HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,**

   131 Ill.2d 145 (1989) ..............................................................................................29, 32

**In re Anthem, Inc. Data Breach Litig.,**

   2015 WL 5286992 (N.D. Cal. Sept. 9, 2015) ...........................................................11

**In re Hydroxycut Mktg. & Sales Pracs. Litig.,**

   810 F. Supp. 2d 1100 (S.D. Cal. 2011)..........................................................11, 20, 24

**In re Jaques,**

   615 B.R. 608 (Bankr. D. Idaho 2020) .......................................................................14

**In re Moveit Customer Data Sec. Breach Litig.,**

   2025 WL 2179475 (D. Mass. July 31, 2025).............................................................34

**In re Schwarzkopf,**

   626 F.3d 1032 (9th Cir. 2010) ..................................................................................10

**In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.,**

   753 F. Supp. 3d 849 (N.D. Cal. 2024) ......................................................................10

**Intelligent SCM, LLC v. Qannu PTY Ltd.,**

   No. CV1406417MMMVBKX, 2015 WL 13916820 (C.D. Cal. July 2, 2015) 9, 10, 26, 27

**International Shoe,**

   326 U.S., 66 S.Ct. 154...............................................................................................6

**Jack Farenbaugh & Son v. Belmont Construction, Inc.,**

  **(1987) 194 Cal.App.3d 1023** ...................................................................................**17**

**Kirch v. Liberty Media Corp.,**

  **449 F.3d 388 (2d Cir. 2006)**..................................................................................**29**

**Kronos, Inc. v. AVX Corp.,**

  **81 N.Y.2d 90 (1993)** .............................................................................................**30**

**L. Bloom Sons Co.,**

  **(1962) 206 Cal.App.2d 848** ...................................................................................**18**

**Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Service, Inc.,**

  **736 F.2d 516 (9th Cir. 1984)** ................................................................................**24**

**Lake v. Lake,**

  **817 F.2d 1416 (9th Cir.1987)** .................................................................................**4**

**Lama Holding Co. v. Smith Barney, Inc.,**

  **88 N.Y.2d 413 (1996)** ...........................................................................................**29**

**Law Offices of Charles Chejfec, LLC,**

  **2023 IL App (3d) 230083, ¶ 41** ......................................................................**30, 32**

**Lincoln Imps. Inc. v. Weaver Flower Co.,**

  **No. SACV 11–1098–JST (ANX), 2012 WL 1048531 (C.D.Cal. March 27, 2012)** ..**20**

**Marc Dev., Inc. v. Wolin,**

  **845 F. Supp. 547 (N.D. Ill. 1993)**.........................................................................**33**

**Meister v. Fling Enter. Prevost LLC,**

  **No. CV-24-02943-PHX-JJT, 2025 WL 896465 (D. Ariz. Mar. 24, 2025)**................**15**

**Menken v. Emm,**

  **503 F.3d 1050 (9th Cir. 2007)** ...............................................................................**3**

**Mesler v. Bragg Management Co.,**

  **(1985) 39 Cal.3d 290 (“Mesler”)**....................................................................**18, 25**

**MHD),**

  **2012 U.S. Dist. LEXIS 188295 (S.D.N.Y. July 17, 2012)** ....................................**8**

School District Direct Action Plaintiffs' Opposition to Bain Capitals's Omnibus Motion to Dismiss

*Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc.*,

298 F.R.D. 633 (S.D. Cal. 2014) ......................................................................8

*Navigation Holdings, LLC v. Molavi*,

445 F. Supp. 3d 69 (N.D. Cal. 2020) ...............................................................4

*Oncology Therapeutics Network Connection v. Virginia Hematology Oncology PLLC*,

No. C 05-3033 WDB, 2006 WL 334532 (N.D. Cal. Feb. 10, 2006) ...............12

*Pac. Mar. Freight*,

2010 WL 3339432, 2010 U.S. Dist. LEXIS 87205 ........................................19

*Pamperin v. Streamline Mfg., Inc.*,

276 S.W.3d 428 .............................................................................................15

*Panthera Rail Car LLC v. Kasgro Rail Corp.*,

No. CIV.A. 13-679, 2013 WL 4500468 (W.D. Pa. Aug. 21, 2013) ...............13

*Phillips v. Selig*,

959 A.2d 420 (2008) ......................................................................................29

*Pixior Glob. Logistics, LLC v. Walmart, Inc*,

No. CV 22-00561 PSG (KKX), 2022 WL 18396012 (C.D. Cal. Nov. 1, 2022)..........12

*Plintron Techs. USA LLC v. Phillips*,

No. 2:24-CV-00093, 2025 WL 2223438 (W.D. Wash. Aug. 5, 2025) ...........16

*PXP Producing Co. LLC v. MitEnergy Upstream LLC*,

342 A.3d 402 (2025) ......................................................................................23

*Riot Games, Inc. v. Suga PTE, Ltd.*,

638 F. Supp. 3d 1102 (C.D. Cal. 2022) ..........................................................28

*Roberts v. Gen. Motors Corp.*,

643 A.2d 956 (N.H. 1994) .............................................................................33

*Roche Diagnostics GmbH v. Enzo Biochem, Inc.*,

992 F.Supp.2d 213 (2013) .............................................................................30

ix                    Case No. 25-MD-3149-BEN-MSB

School District Direct Action Plaintiffs' Opposition to Bain Capitals's Omnibus Motion to Dismiss

Roy v. Coyne,

259 Ill. App. 3d 269 (1994) ...................................................................................... 29, 31, 32

Rutherford Holdings, LLC v. Plaza Del Rey,

223 Cal. App. 4th 221, 166 Cal. Rptr. 3d 864 (2014) ..................................................... 23

S.E.C. v. Vassallo,

No. CIV. S-09-0665 LKK/D, 2012 WL 1868559 (E.D. Cal. May 22, 2012) ............. 12

Schwarzenegger v. Fred Martin Motor Co.,

374 F.3d 797 (9th Cir. 2004) ....................................................................................... 4, 5

Sher v. Johnson,

911 F.2d 1357 (9th Cir. 1990) ......................................................................................... 3

Silk v. Bond,

65 F.4th 445 (9th Cir. 2023) ........................................................................................ 6, 7

Simplot Livestock Co. v. Sutfin,

No. 1:18-cv-0086-EJL-CWD, 2018 WL 4259229, 2018 U.S. Dist. LEXIS 153225 (D. Idaho Sept. 6, 2018) ................................................................................................... 14

Slottow v. American Cas. Co. of Reading, Pennsylvania,

10 F.3d 1355 (9th Cir. 1993) .......................................................................................... 24

Sonora Diamond Corp. v. Superior Court,

(2000) 83 Cal.App.4th 523 ("Sonora Diamond") ..................................................... 18, 19

St. Benedict's Dev. Co. v. St. Benedict's Hosp.,

811 P.2d 194 (Utah 1991) .......................................................................................... 29, 30

Standex Int'l Corp. v. QCP, Inc.,

2017 WL 481447 (S.D.N.Y. Feb. 6, 2017) ................................................................... 25

Starr Pass Resort Devs. LLC,

No. 2 CA-CV 2018-0030, 2019 WL 2237471,n.17 (Ariz. Ct. App. May 22, 2019)...15

Stuart v. Hayden,

169 U.S. 1 (1898) ........................................................................................................... 30

Swager v. Couri,

   77 Ill.2d 173 (1979) ......................................................................................32

Synapsis, LLC v. Evergreen Data Sys., Inc., No. C 05-01524 JF (RS,

   2006 WL 3302432 (N.D. Cal. Nov. 14, 2006) ................................................28

Tecnitoys Juguetes, S.A. v. Distributoys.com, Inc.,

   No. 11 CV 3731, 2011 WL 2293855 (N.D. Ill. June 9, 2011) .......................13

Thatcher Media Grp., LLC v. Thiel,

   No. SACV1001048CJCRNBX, 2010 WL 11561159 (C.D. Cal. Oct. 15, 2010)........12

Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.,

   217 Cal.App.4th 1096 (2013)....................................................................20, 24

Towe Antique Ford Found. v. I.R.S.,

   999 F.2d 1387 (9th Cir.1993) .....................................................................10

Twentieth Century Fox Int'l Corp. v. Scriba,

   385 F. App'x 651 (9th Cir. 2010) ................................................................28

UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C.,

   289 F. Supp. 3d 852 (N.D. Ill. 2018) .........................................................10

ViaSat, Inc. v. Space Sys./Loral, Inc.,

   No. 12-CV-00260-H-WVG, 2012 WL 12844738 (S.D. Cal. July 30, 2012) .............25

Wandering Trails, LLC v. Big Bite Excavation, Inc.,

   156 Idaho 586, 329 P.3d 368 (Idaho 2014)...................................................14

Washington Homeownership Res. Ctr. v. Dragonfly Dev. Inc.,

   No. 2:24-CV-00226-LK, 2024 WL 3521611 (W.D. Wash. July 24, 2024)..............17

Wehlage v. EmpRes Healthcare Inc.,

   821 F. Supp. 2d 1122 (N.D. Cal. 2011) ..........................................11, 16, 17

Willick v. Napoli Bern Ripka & Assocs., LLP,

   No. 2:15-cv-00652-AB (Ex), 2019 WL 3064120 (C.D. Cal. Mar. 13, 2019).............28

Yamashita v. LG Chem, Ltd.,

   62 F.4th 496 (9th Cir. 2023) ........................................................................5

xi

Case No. 25-MD-3149-BEN-MSB

School District Direct Action Plaintiffs' Opposition to Bain Capitals's Omnibus Motion to Dismiss

**Youree v. Recovery House of E. Tennessee, LLC,**

No. M2021-01504-COA-R3-CV, 2023 WL 3721938 (Tenn. Ct. App. May 30, 2023) ...............................................................................................................15

**Zoran Corp. v. Chen,**

185 Cal. App. 4th 799, 110 Cal. Rptr. 3d 597 (2010) ...................................23

**Statutes**

**South Carolina Code Annotated section 33–44–1001(a)**...............................13

**Rules**

**Federal Rule of Civil Procedure 12(b)(6)** ...............................................3

**Other Authorities**

**1 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Corporations §
41.10 (rev. vol. 3A 2019)**...............................................................................16

**10A Wright, Miller & Kane, Federal Practice and Procedure § 2730, at 7 (3d ed.
1998)**.............................................................................................................30

**Don't Mistake the Proxy for the Rule: Alter Ego Liability in Tennessee,
11 Transactions: Tenn. J. Bus. L. 131 (2010)**.............................................14

**Restatement (Second) of Torts § 766**.............................................................30

**Restatement (Second) of Torts § 767 (1979)**.................................................32

**PRELIMINARY STATEMENT**

This court has personal jurisdiction over Bain Capital, L.P. ("Bain"). Bain's contrary argument ignores both this Court's status as the exclusive forum in this matter, and the extensive allegations in the School District Direct Actions First Amended Consolidated Master Complaint ("DAC") that demonstrate Bain's pervasive activities and contacts in California and with PowerSchool. Bain purposefully availed itself of the privilege of conducting activities in California that directly created the conditions that caused the data breach at issue in this litigation ("Data Breach").

The Plaintiffs have sufficiently pled alter ego theory in the DAC by alleging Bain exercised pervasive control over PowerSchool effectively rendering it Bain's alter ego. As Bain continues to capitalize on its investment, it has left PowerSchool severely undercapitalized and underinsured in the face of the massive Data Breach. To treat Bain as separate from PowerSchool would permit Bain to unjustly insulate itself from the obligations and harms arising from its ownership and control of PowerSchool.

Plaintiffs have sufficiently alleged intentional interference with contractual relations. As alleged in the DAC, Bain had actual knowledge of the Plaintiffs PowerSchool contracts and their terms, including contractually promised levels of security. Despite its knowledge of PowerSchool's cybersecurity obligations, as well as PowerSchool's already existing vulnerabilities in this area, Bain took deliberate steps to interfere with and reduce spending on cybersecurity, lay off cybersecurity personnel, and outsource operations to subcontractors, contrary to industry standards.

**PROCEDURAL HISTORY**

On April 8, 2025, this Court issued a transfer order for the multi-district litigation. ECF 1. On August 11, 2025, the School District Direct Action Plaintiffs filed an Amended Complaint against PowerSchool Holdings and PowerSchool Group and Bain Capital. ECF 258. On September 4, 2025, Plaintiffs filed a Motion for Leave to Amend their Complaint. On September 12, 2025, leave was granted, and the Plaintiffs filed an Amended Complaint. ECF 287, 288. On September 25, 2025, Bain filed its Motion. ECF 303.

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

# FACTUAL BACKGROUND

Bain, a multi-billion-dollar private equity firm, acquired PowerSchool in a leveraged buyout in October 2024, concluding a lengthy merger process during which Bain began dictating PowerSchool's policies and business decisions, saddling it with substantial debt, rendering it severely undercapitalized, and exercising direct control over its operations. DAC ¶¶ 56-58 and 89.  Among the most prominent changes that Bain effectuated included the measures that it undertook to aggressively cut costs, including a sudden mass layoff of approximately 5% of PowerSchool's workforce that eliminated around 175 critical staff, "basically gutted" entire PowerSchool staffing departments, and weakened PowerSchool's already-weak internal cybersecurity defenses. *Id.* at ¶¶ 60, 62.  Basic cybersecurity tasks such as monitoring for intrusions, promptly installing patches, and controlling privileged access became harder to fulfill after the layoffs. *Id.* at ¶ 63.

Predictably, Bain's reckless evisceration of PowerSchool's internal cybersecurity operations yielded inexorable and immediate data security exposure.  *Id.* at ¶¶ 62-64. Indeed, on August 16, 2024, just three days after Bain's layoff order, PowerSchool's systems were breached when the first incident of unauthorized access by a third-party threat actor occurred. *Id.* at ¶¶ 62.  Bain exacerbated PowerSchool's security susceptibilities through a widespread campaign to buttress its substantial domestic staffing reductions with an ambitious proliferation of cheaper offshore operations that gave short shrift to basic and necessary data security protections. *Id.* at ¶¶ 65-71. Unauthorized individuals were able to access  highly sensitive student information because PowerSchool failed to implement the safeguards it promised Plaintiffs in its contracts and advertisements. Offshore contractors were given broad credentials and access rights into PowerSchool's systems, operating outside the direct supervision of PowerSchool's domestic IT department and lacking sufficient security training or controls. *Id.* at ¶ 71.

The Data Breach is a devastating result of  Bain's cost cutting measures and myopic focus on profits over security. Plaintiffs are informed and believe that the Data Breach at issue in this litigation ultimately was enabled by a compromised login belonging to an

offshore contractor. Specifically, the credentials that hackers exploited in the December 2024 breach belonged to a subcontractor account in the Philippines that lacked multi factor authentication or other basic security measures and had access to PowerSchool's internal PowerSource support system, which in turn had maintenance access into the student information database. *Id.* at ¶ 72. Through its financial engineering and debt-loading of PowerSchool, the extensive layoffs it directed, and its aggressive outsourcing and offshoring practices, Bain dismantled the human defenses and institutional knowledge essential to preventing or detecting intrusions. As a result, Bain knowingly created the conditions that allowed hackers to infiltrate PowerSchool's systems with ease, leading to the Data Breach at issue. *Id.* at ¶ 82.

## LEGAL STANDARD

When a party seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the exercise of personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). When a motion to dismiss for lack of personal jurisdiction is based on the briefs rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed when a plaintiff's allegations fail to set forth a plausible set of facts which would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that claim must be facially plausible to survive motion to dismiss). To state a plausible claim for relief, the pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). At the same time Rule 8(a)(2) requires no more than "a short and plain statement of the claim showing that the pleader is entitled to relief." Moreover, Rule 8(d)(1) specifies that in general, "[e]ach allegation must be simple, concise, and direct." If a court dismisses a complaint, it may grant leave to amend, unless

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

"the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## LEGAL ARGUMENT

The Plaintiffs incorporate herein the Track 1 Individual User Class's Opposition to Bain's Motion to Dismiss in its entirety and adopt all of its arguments. ECF 319. The Plaintiffs further incorporate herein their separate Opposition to PowerSchool's Motion to Dismiss in its entirety and adopt all of its arguments. *See Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 74 (N.D. Cal. 2020).

## I.   BAIN IS SUBJECT TO PERSONAL JURISDICTION IN THIS COURT

Through its extensive efforts to effectuate control of PowerSchool, Bain subjected itself to personal jurisdiction in California. In "analyzing a claim of specific personal jurisdiction," the Ninth Circuit applies the following three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004), quoting *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987); *Hidalgo v. JPMorgan Chase Bank, N.A.,* No. 3:24-CV-02386-BEN-JLB, 2025 WL 1370488, at *1–6 (Benitez, J.) (S.D. Cal. May 12, 2025) (finding personal jurisdiction). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802. "Where, as here, the motion is based on written materials rather than an evidentiary

Case No. 25-MD-3149-BEN-MSB

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.' . . . uncontroverted allegations in the complaint must be taken as true. . . [and] [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* at 800 (citations omitted).

## A. Bain Has Purposefully Availed Itself Of The Privilege Of Conducting Activities In California

Bain's activities plainly satisfy this standard.  With respect to the first prong, courts have recognized that purposeful availment "exists when a defendant's dealings with a state establish[ ] a 'quid pro quo'—where the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' and in return 'submits to the burdens of litigation' in the State." *Schwarzenegger*, 374 F.3d at 802 (simplified). quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ("A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there.").

In evaluating questions of purposeful availment, courts consider a defendant's "entire course of dealing" with the forum state—"not solely the particular contract or tortious conduct giving rise to [a plaintiff's] claim," *see Glob. Commodities*, 972 F.3d at 1108, and further examine whether the defendant "deliberately reached out beyond [its] home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023) (simplified).  "[B]usiness activity constitutes purposeful availment when that activity reaches out and creates '*continuing relationships and obligations*' in the forum state." *Silk v. Bond*, 65 F.4th 445, 457 (9th Cir. 2023) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (emphasis in *Boschetto*).  "Purposeful availment can be established by a contract's negotiations, its terms, its contemplated future consequences, and the parties' actual course of dealing." *Davis v. Cranfield Aerospace Sols., Ltd.,* 71 F.4th 1154,

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

1163 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 826, 218 L. Ed. 2d 33 (2024), citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Moreover, "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman,* 571 U.S. 117, 135, 134 S. Ct. 746, 759, 187 L. Ed. 2d 624 (2014), citing *Asahi,* 480 U.S. 102, 112, 107 S.Ct. 1026 (1987) (opinion of O'Connor, J.) (defendant's act of "marketing [a] product through a distributor who has agreed to serve as the sales agent in the forum State" may amount to purposeful availment) and *International Shoe,* 326 U.S., at 318, 66 S.Ct. 154 ("the commission of some single or occasional acts of the corporate agent in a state" may sometimes "be deemed sufficient to render the corporation liable to suit" on related claims); *Anglo Irish Bank Corp., PLC v. Superior Court*, (2008)165 Cal.App.4th 969, 982 (purposeful availment found where the parent corporation purposefully caused its subsidiary to engage in forum contacts, even though the separateness of the corporations was maintained).

The DAC recites dozens of allegations that, individually and collectively, satisfy these criteria. *See* DAC ¶¶ 56–90. Plaintiffs alleged that tthroughout the course of a merger negotiation that spanned several months or longer, Bain and its agents began "exercis[ing] direct control over PowerSchool's decision-making," including via an August 13, 2024 "layoff order" that "eliminated around 175 critical staff" and "basically gutted" entire PowerSchool California staff departments. *See* DAC, ¶¶ 56, 58, 60, 62. The Plaintiffs further allege that these Bain-dictated cuts left "PowerSchool's remaining IT and security teams under-resourced, creating obvious vulnerabilities" and "directly hampered PowerSchool's ability to protect the massive amount of sensitive student data in its custody." *Id.* at ¶¶ 58 & 64. Moreover, despite Bain's assertion to the contrary, the DAC provides detailed allegations that Bain's control of PowerSchool both preceded and followed the closing of its October, 2024 leveraged buyout of the latter. *Id.* at ¶ 56. Among other salient facts, the Plaintiffs' allege that "during the merger negotiations" Bain began orchestrating plans to "boost[] PowerSchool's headcount in India and other low-cost locations as a cost-saving measure," which offshoring plans it "moved swiftly to execute"

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

in a manner that "directly undermined cybersecurity" and resulted inexorably and directly in the Data Breach at issue in the instant litigation. *Id.* at ¶¶ 65-66, 70-72.

As the above cases reflect, such Bain-driven business and other activity and course of dealing suffices quintessentially as the sort that Courts have relied upon to invoke personal jurisdiction. *See Silk v. Bond*, 65 F.4th at 457 quoting *Boschetto*, 539 F.3d at 1017 (emphasis in *Boschetto*); *Davis v. Cranfield Aerospace Sols., Ltd.,* 71 F.4th at 1163, *cert. denied,* 144 S. Ct. 826, 218 L. Ed. 2d 33 (2024), citing *Burger King Corp. v. Rudzewicz*, 471 U.S. at 479, 105 S.Ct. 2174, 85 L.Ed.2d 528. In lieu of addressing these detailed allegations Bain's motion papers recycle a reflexive and perfunctory mantra that Plaintiffs' allegations of contacts are "conclusory." Based on the foregoing, the Court should conclude that the Plaintiffs satisfy the purposeful availment prong.

**B. Plaintiffs' Claims Arise Out Of Or Relate To Bain's Activities In California**

Bain contends the Plaintiffs' claims do not "arise out of or relate[] to the defendant's forum-related activities" under the second prong of the Ninth Circuit's test. As noted above, in addition to reflecting Bain's intimate and pervasive contacts with PowerSchool's home state, the DAC describes how Bain's activities, decisions and actions, including its planned dismantling of PowerSchool's domestic workforce with lower-cost offshore staff, resulted directly and inescapably in the very Data Breach at issue in this case. Accordingly, the Court should determine that the Plaintiffs have satisfied the second prong of the applicable test.

Furthermore, it is well-settled that "[a]lter egos are treated as a single entity for purposes of personal jurisdiction." *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc.,* 298 F.R.D. 633, 644–45 (S.D. Cal. 2014) citing *Cardell Fin. Corp. v. Suchodolski Assocs.,* 09 Civ. 6148(VM) (MHD), 2012 U.S. Dist. LEXIS 188295, at *47 (S.D.N.Y. July 17, 2012) ("Other courts have permitted plaintiffs to take jurisdictional discovery to support an alter ego and agency theory of personal jurisdiction."); *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 51–52 (N.D. Cal. 2020) ("Indeed, under the federal law governing the exercise of personal

jurisdiction, if a corporation is the alter ego of an individual defendant, or one corporation the alter ego of another, "the Court may 'pierce the corporate veil' jurisdictionally and attribute 'contacts' accordingly." *ADO Fin., AG v. DACDonnell Douglas Corp.*, 931 F. Supp. 711, 716 (C.D. Cal. 1996) (quoting *Certified Building Prods., Inc. v. NLRB*, 528 F.2d 968, 969 (9th Cir. 1976)).  Bain offers only a single, cursory sentence to argue that the Plaintiffs fail to allege alter ego status.  To the contrary, at all salient times Bain has operated as PowerSchool's alter ego in this matter.  The Court may exercise personal jurisdiction over Bain on this basis alone.

## C. Bain Fails To Establish That Subjecting It To Personal Jurisdiction In This Court Would Be Unreasonable

Having purposefully availed itself of this forum's benefits, Bain cannot satisfy its burden to show that subjecting it to this Court's jurisdiction would be unreasonable under the third prong of the Ninth Circuit's test.  "[O]nce purposeful availment has been established, the forum's exercise of jurisdiction is presumptively reasonable.", quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985).  "The third prong—the reasonableness determination—requires the Court to consider several factors," *Am. Orthodontics Corp. v. MidAtlantic Orthodontics, Inc.,* No. 317CV01129BENAGS, 2017 WL 4151241, at *4 (S.D. Cal. Sept. 18, 2017), namely:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000); *see also Burger King*, 471 U.S. at 476–77.

Beyond inviting the Court to avoid this prong altogether, *see* Bain's Memorandum of Law, ECF 303, p. 16, and in lieu of any earnest treatment of its factors, Bain attempts to meet its burden with a cursory parroting of the factors themselves, baldly asserting that

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

"[t]he burden on Bain in adjudicating this dispute . . . is high," *Id.*, as if a rote recitation of magic words might suffice.  In this regard Bain also assumes erroneously that there exists more than one forum in this action.  To the contrary, because this Court constitutes the exclusive forum, Bain's concerns about "adjudicating this dispute in [other] states," are unfounded.  Bain's assertion that the Court should ignore this prong likewise is inappropriate insofar as it is premised wholly upon the erroneous proposition that Bain lacks sufficient contacts in California.

**II.   PLAINTIFFS HAVE SUFFICIENTLY PLED THE ALTER EGO CLAIM AND THEREFORE, THE MOTION TO DISMISS SHOULD BE DENIED**

**A. California Law Determine The Alter Ego Doctrine's Application**

"[G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state". When a litigant invokes foreign law, he or she must "demonstrate that the [foreign] rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply...." *Intelligent SCM, LLC v. Qannu PTY Ltd.*, No. CV1406417MMMVBKX, 2015 WL 13916820, at *14 (C.D. Cal. July 2, 2015).  "The burden of proving that a foreign jurisdiction's law applies is thus on the party invoking the foreign rule of decision." *Id.*  Indeed, in *Intelligent SCM*, the court explained that "[b]ecause Bridget has adduced no authority regarding the substance of Australian alter ego law, the court cannot determine whether it differs materially from California law. Because '[t]h[e] choice of law analysis embodies the presumption that California law applies unless the proponent of foreign law can show otherwise,' . . . the court concludes, based on the present record, that it must apply California alter ego law in evaluating the sufficiency of ISCM's alter ego allegation." *Id.* at *17 (citation omitted).

In this case, Bain does not clearly articulate which law should apply in its Motion. It cites to the law of three jurisdictions: California, New York and Delaware.  ECF 303 at 35.  It states that it applies those three laws because two Plaintiffs bring New York claims and other courts typically apply the alter ego law of where the action is filed or where the

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

defendant is incorporated.  Such cursory argument, which fails to discuss interests of the forum state, does not meet Bain's burden to overcome the presumption that the law of forum, California should apply.  Moreover, Bain concedes that the alter ego doctrine "is materially similar across all jurisdictions," which further supports applying the law of the forum state, California, to the analysis.  *Id.*

### 1.  Applying Choice Of Law Analysis, California Law Applies

Assuming arguendo that this Court decides to go beyond the concessions of Bain, the same outcome occurs, California law applies. "In determining whether alter ego liability applies, we apply the law of the forum state." *In re Schwarzkopf*, 626 F.3d 1032, 1037 (9th Cir. 2010) citing *Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387, 1391 (9th Cir.1993); *see also UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C.*, 289 F. Supp. 3d 852 (N.D. Ill. 2018).  Similarly, a federal court sitting in diversity applies the choice of law rules of the forum state when deciding which state's substantive law applies. *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir.1999).  In an MDL, the transferee court applies the law of its circuit to issues of federal law; with state law claims, however, the court applies the state law that would have been applied to the underlying case as if it had never been transferred into the MDL. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 874 (N.D. Cal. 2024); *In re Anthem, Inc. Data Breach Litig.*, 2015 WL 5286992, at *2 (N.D. Cal. Sept. 9, 2015).

Under California's choice of law rules, "First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1126-1127 (N.D. Cal. 2011).

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

### a) California Law Applies To The Alter Ego Analysis Based On The First Prong Of The Governmental Interest Test

"[U]nder the first step of the governmental interest approach, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California." *Wash. Mutual Bank v. Super. Ct.*, 24 Cal.4th 906, 919 (2001); *see also FTC - Forward Threat Control, LLC v. Dominion Harbor Enters., LLC,* No. 5:19-CV-06590-EJD, 2020 WL 5545156, at *9 (N.D. Cal. Sept. 16, 2020) Here Bain concedes the alter ego doctrine "is materially similar across all jurisdictions." ECF 303, p. 35. Case law further underscores that most states have similar requirements for establishing alter ego. *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 810 F. Supp. 2d 1100, 1121 (S.D. Cal. 2011).

### b) For Utah, New York, Vermont, Wisconsin, And Virginia, Courts Have Already Determined That The Law Of California And Each Other State Is The Same

Courts have already determined that the alter ego law is similar for California compared to Utah, New York, Vermont, Wisconsin, and Virginia. *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, No. 2:11-CV-00496, 2023 WL 3819388, at *4 (D. Utah June 5, 2023) ("Similar to Utah, California courts have identified numerous factors that may serve as relevant considerations, including, among others."); *Pixior Glob. Logistics, LLC v. Walmart, Inc*, No. CV 22-00561 PSG (KKX), 2022 WL 18396012, at *5 (C.D. Cal. Nov. 1, 2022) (finding New York and California law similar for alter ego); *S.E.C. v. Vassallo*, No. CIV. S-09-0665 LKK/D, 2012 WL 1868559, at *3 (E.D. Cal. May 22, 2012) ("The parties argue that the laws of California and Utah are the same, and so no choice of law issue arises."); *Thatcher Media Grp., LLC v. Thiel*, No. SACV1001048CJCRNBX, 2010 WL 11561159, at *5 (C.D. Cal. Oct. 15, 2010) ("Without undertaking a substantial choice-of-law analysis, the Court notes that California law and Wisconsin law regarding the alter-ego theory do not appear to be materially different."); *Oncology Therapeutics Network Connection v. Virginia Hematology Oncology PLLC*, No. C 05-3033 WDB, 2006

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

WL 334532, at *17 (N.D. Cal. Feb. 10, 2006) ("We make a preliminary finding, however, that the standard applied to determine an alter ego claim appears to be essentially the same under California and Virginia law."); *Sundance Image Tech., Inc. v. Inkjetmall.com, Ltd.*, No. 02CV2258-B (AJB), 2005 WL 8173279, at *3 (S.D. Cal. Oct. 4, 2005) ("Because the factors for piercing the corporate veil are similar under California and Vermont law, the analysis of the motion for summary judgment will be done using California law."). Thus, for these states, the Governmental Interest test would apply California law.

### c) For Illinois, South Carolina, Pennsylvania And Oklahoma, The Governmental Interest Test Would Also Apply California Law.

There has been no explicit determination for the remaining states in the Direct Action about the comparability of California law to the law of those states. Illinois, South Carolina, Pennsylvania, and Oklahoma, apply the state of incorporation. *BRIGITTE DENT v. HYATT HOTELS CORP. d/b/a WORLD OF HYATT*, No. CV 24-6354, 2025 WL 2934911, at *1 (E.D. Pa. July 11, 2025) ("need not undertake that inquiry here because it is well established that, '[u]nder Pennsylvania law, the veil-piercing analysis is governed by the law of the state of incorporation.'" (quotation and citation omitted); *Hawaii Disc., LLC v. Hawaii Sunset Events, LLC*, No. 2:21-CV-02011-DCN, 2022 WL 624704, at *6 (D.S.C. Mar. 3, 2022); *Gourdine v. Karl Storz Endoscopy-Am., Inc.*, 223 F. Supp. 3d 475, 490 (D.S.C. 2016) ("the laws of the state under which a domesticated foreign corporation is organized governs the liability of its shareholders to the extent liability arose before domestication, KSEA has never been domesticated in South Carolina; any liability therefore necessarily arose before domestication and so the law of California, KSEA's state of incorporation, controls the alter-ego question in this case."); *Brady v. UBS Fin. Servs., Inc.*, No. 10-CV-284-SPF-FHM, 2013 WL 1309250, at *4 (N.D. Okla. Mar. 26, 2013) ("Oklahoma's choice-of-law rules, veil piercing liability is determined by reference to the law of the state of incorporation."); *Panthera Rail Car LLC v. Kasgro Rail Corp.*, No. CIV.A. 13-679, 2013 WL 4500468, at *6 (W.D. Pa. Aug. 21, 2013) ("[u]nder Pennsylvania's choice of law rules, '[t]he existence and extent of the liability of a

shareholder for ... payments of debts of the corporation, is determined by the law of the state of incorporation."); *H.C. Duke & Son, LLC v. Prism Mktg. Corp.*, No. 4:11-CV-04006-SLD, 2012 WL 2792443, at *4 (C.D. Ill. July 9, 2012) ("Illinois choice-of-law rules require Plaintiff's alter ego theory to be governed by the law of the incorporating state," applying to incorporation state of contracting defendant); *Tecnitoys Juguetes, S.A. v. Distributoys.com, Inc.*, No. 11 CV 3731, 2011 WL 2293855, at *1 (N.D. Ill. June 9, 2011) ("Under the internal affairs doctrine the substantive law of the state of incorporation governs . . . Distributoys is a Delaware corporation." (quotation and citation omitted)); *HOB Ent., Inc. v. SilkHOB, LLC*, No. 4:08-CV-02783-TLW, 2011 WL 321780, at *7 (D.S.C. Jan. 28, 2011) ("Based on South Carolina Code Annotated section 33–44–1001(a), which provides that the laws of the state under which a foreign limited liability company is organized govern the liability of its members, Delaware law controls the veil-piercing and alter-ego questions in this case."); *Canal Ins. Co. v. Montello, Inc.,* 822 F. Supp. 2d 1177, 1184 (N.D. Okla. 2011) ("the law of the state of incorporation will be applied to determine whether piercing the corporate veil is appropriate.").

In this case, PowerSchool is a Delaware corporation, DAC, ¶¶ 16-18, which means that for Illinois, South Carolina, Pennsylvania, and Oklahoma, Delaware law would apply. Courts in California have already determined that California and Delaware law are similar. *Boeing Co. v. KB Yuzhnoye*, No. CV 13-730 ABC (AJWX), 2013 WL 12146121, at *5 (C.D. Cal. June 3, 2013) ("[B]oth Delaware and California examine similar factors in determining whether an individual or corporation is the alter ego of another corporation." (citation omitted)).

Hence, given that they are similar, for Illinois, South Carolina, Pennsylvania, and Oklahoma, the Governmental Interest test would apply California law.

### d) Under The Governmental Interest Test, California Law Would Apply For Idaho As Idaho Has A Similar Test To California

Idaho's alter ego test is the exact same test as California. Under Idaho law, whether alter ego liability exists is an equitable question to be determined by the Court. *Simplot*

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

*Livestock Co. v. Sutfin*, No. 1:18-cv-0086-EJL-CWD, 2018 WL 4259229, 2018 U.S. Dist. LEXIS 153225 (D. Idaho Sept. 6, 2018) ("*Simplot*"); *In re Jaques*, 615 B.R. 608, 626–31 (Bankr. D. Idaho 2020) ("*In re Jaques*"); *Wandering Trails, LLC v. Big Bite Excavation, Inc.,* 156 Idaho 586, 591–92, 329 P.3d 368, 373–74 (Idaho 2014) ("*Wandering Trails*"). Thus, given that Idaho and California apply the same test, California law would apply.

### e) Under the Governmental Interest Test, California Law Would Apply For Tennessee As Tennessee Has A Similar Test To California.

"Tennessee's choice-of-law principles regarding alter ego liability, however, are somewhat unsettled." *See* George W. Kuney, *Don't Mistake the Proxy for the Rule: Alter Ego Liability in Tennessee*, 11 Transactions: Tenn. J. Bus. L. 131, 132–33 (2010) ("Tennessee has not definitively determined whether the law of the state of incorporation or the law of the state in which the alter ego action is brought should be applied."); *ArborCraft, LLC v. Cherrybark Flooring, Inc.*, No. 2:08-CV-97, 2009 WL 10710006, at *2 (E.D. Tenn. Jan. 20, 2009).

Tennessee applies the same test as California. "When piercing the corporate veil, a court may disregard the corporate entity in order to impose liability against a related entity, such as a parent corporation or a controlling shareholder, where the two entities are in fact identical or indistinguishable and where necessary to accomplish justice." *Pamperin v. Streamline Mfg., Inc.,* 276 S.W.3d 428, 437 (Tenn. Ct. App. 2008. "Generally, no one factor is conclusive in determining whether to pierce the corporate veil; rather, courts will rely upon a combination of factors in deciding the issue. . . . Even though corporate formalities have been observed, one may still challenge the corporate entity by showing that he has been the victim of some basically unfair device by which the corporate form of business organization has been used to achieve an inequitable result." *Id.* (quotation and citation omitted); *see also Edmunds v. Delta Partners, L.L.C.,* 403 S.W.3d 812, 829 (Tenn. Ct. App. 2012); *Youree v. Recovery House of E. Tennessee, LLC,* No. M2021-01504-COA-R3-CV, 2023 WL 3721938, at *3 (Tenn. Ct. App. May 30, 2023), *appeal granted,* No.

M202101504SCR11CV, 2023 WL 8183813 (Tenn. Nov. 21, 2023), and *aff'd,* 705 S.W.3d 193 (Tenn. 2025).

Hence, the standard that Tennessee applies is the same as California and therefore, under the Governmental Interest test, California law should apply.

**f)  Under The Governmental Interest Test, California Law Would Apply For Arizona As Arizona Has A Similar Test To California**

Arizona courts apply Arizona law for determining alter ego. *Meister v. Fling Enter. Prevost LLC*, No. CV-24-02943-PHX-JJT, 2025 WL 896465, at *3 (D. Ariz. Mar. 24, 2025) ("Nevertheless, there is one memorandum decision from the Arizona Court of Appeals that is somewhat on point. In determining what substantive law to apply to an alter-ego dispute concerning a Delaware corporation, the court noted that it would not employ the law of the state of incorporation but would instead apply Arizona law under the Restatement (Second) of Conflicts. *U.S. Bank Nat'l Ass'n v. Starr Pass Resort Devs. LLC*, No. 2 CA-CV 2018-0030, 2019 WL 2237471, at *14 n.17 (Ariz. Ct. App. May 22, 2019).").

Nonetheless, like Idaho and Tennessee, Arizona law is similar to California and all other jurisdictions. *Eversource Cap. LP v. Fimrite*, No. CV-18-02583-PHX-SMM, 2019 WL 11638377, at *5 (D. Ariz. May 21, 2019) ("The Court applies Arizona law because it reflects the alter-ego doctrine in most jurisdictions. *See* 1 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Corporations § 41.10 (rev. vol. 3A 2019)."). In Arizona, to "prevail and hold a parent corporation liable pursuant to the alter ego theory, Plaintiff must "prove both (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice." *Airbus DS Optronics GmbH v. Nivisys LLC*, 183 F. Supp. 3d 986, 991–92 (D. Ariz. 2016).  This total control may be proved by a number of factors, including "stock ownership by the parent; common officers or directors; financing of subsidiary by the parent; payment of salaries and other expenses of subsidiary by the parent; failure of subsidiary to maintain formalities of separate corporate existence;

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

similarity of logo; and plaintiff's lack of knowledge of subsidiary's separate corporate existence." *Id*.

Hence, the standard that Arizona applies is the same as California and therefore, under the Governmental Interest test, California law should apply.

### 2. Under The Governmental Interest Test's Second And Third Prongs, California Law Would Apply Because California Has A Greater Interest In The Application Of Its Laws.

One federal District Court has concluded, without analysis, that the alter ego liability laws of Washington and California are different. *Wehlage v. EmpRes Healthcare Inc.,* 821 F. Supp. 2d 1122, 1129 (N.D. Cal. 2011). At the same time, Washington District Courts have concluded that Washington alter ego law is the same as other jurisdictions, including Delaware and Wisconsin, which are identical to California alter ego law. *Plintron Techs. USA LLC v. Phillips*, No. 2:24-CV-00093, 2025 WL 2223438, at *7 (W.D. Wash. Aug. 5, 2025) ("However, Counterclaim Defendants concede that "because Delaware's and Washington's alter ego tests are the same, it does not matter which state law the Court applies."); *Washington Homeownership Res. Ctr. v. Dragonfly Dev. Inc.,* No. 2:24-CV-00226-LK, 2024 WL 3521611, at *4 (W.D. Wash. July 24, 2024) ("There is no conflict between Wisconsin and Washington law regarding the prerequisites to pierce a corporate veil under an alter ego theory"); *see supra* pp. 14-17.

If Washington and California alter ego law are different, the court would turn to the second and third prongs. This case is distinct from *Wehlage* because there the corporation was incorporated in Washington. By contrast, in this case, PowerSchool is incorporated in Delaware and headquartered in California. California law would apply for all other school districts and Delaware and California law are the same as outlined above. Like in *Wehlage*, Washington districts would be able to seek relief through application of California law. Thus, the second and third prongs support applying California law.

## III.   PLAINTIFFS HAVE ADEQUATELY PLED THAT BAIN HAS ALTER EGO LIABILITY FOR POWERSCHOOL'S ACTIONS BASED ON CALIFORNIA'S ALTER EGO TEST[1]

"The conditions under which the corporate entity may be disregarded vary according to the circumstances in each case and the matter is particularly within the province of the trial court." *Jack Farenbaugh & Son v. Belmont Construction, Inc.* (1987) 194 Cal.App.3d 1023, 1033, citing *Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 836–837. "The *alter ego* doctrine is founded in equity and its application is not made to depend upon prior decisions involving factual situations which appear to be similar." *DACLaughlin v. L. Bloom Sons Co.* (1962) 206 Cal.App.2d 848, 853. Rather, "it is the general rule that the conditions under which a corporate entity may be disregarded vary according to the circumstances of each case." *Dolarian Cap., Inc. v. SOC, LLC*, No. 1:11-CV-00031-LJO, 2013 WL 433001, at *4 (E.D. Cal. Feb. 1, 2013) (quotation and citation omitted).  The California Supreme Court has stated that "[w]hen it is claimed that a parent corporation should be liable because it is the alter ego of its subsidiary, equity commands that the corporate wall be breached." *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 301 ("*Mesler*").

Two conditions are necessary to proceed against a defendant under this theory: (1) there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist; and (2) there must be an inequitable result if the acts in question are treated as those of the corporation alone. *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 ("*Sonora Diamond*"). As explained below, Plaintiffs sufficiently

---

[1] Because the transferor court is Eastern District of California, California law applies to all alter ego state law claims.  Moreover, as outlined above, the standards for determining whether to piece the veil are the similar across jurisdictions and Bain has already conceded the analysis is the same.

allege Alter Ego Liability in the Complaint and therefore, this Court should deny Bain's request to dismiss.

### A. The Pertinent Factors Support Bain's Alter Ego Liability Based On The Unity Of Interest It Shares With PowerSchool

In deciding to hold a parent company liable for the acts of its subsidiary under the alter ego doctrine, courts look to the following factors under the first question:

- Commingling of funds and other assets of the two entities
- The holding out by one entity that it is liable for the debts of the other
- Identical equitable ownership in the two entities
- Use of the same offices and employees
- Use of one as a mere shell or conduit for the affairs of the other
- Inadequate capitalization
- Disregard of corporate formalities
- Lack of segregation of corporate records, and identical directors and officers

*Sonora Diamond*, 83 Cal.App.4th at pp. 538-539, citations and internal quotations omitted. Importantly, "[n]o one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied. [Citation.]" *Id*. at p. 539. "The identification of the elements of alter-ego liability plus two or three factors has been held sufficient to defeat a 12(b)(6) motion to dismiss." *Pac. Mar. Freight*, 2010 WL 3339432, at *6, 2010 U.S. Dist. LEXIS 87205 citing *Fed. Res. Bank of San Francisco v. HK Sys.*, No. C-95=1190, 1997 WL 227955, at *6 (N.D. Cal. Apr. 24, 1997); *see also Axon Solutions, Inc. v. San Diego Data Processing Corp.*, No. 09-CV-2543, 2010 WL 1797028, at *3 (S.D. Cal. May 4, 2010); *Automotriz Del Golfo De California, S.A. De C.V. v. Resnick*, 47 Cal.2d 792, 796 (1957) (finding unity of interest based on failure to issue stock and undercapitalization).

For example, in *Laguna v. Coverall N. Am., Inc.,* No. 09CV2131 JM (RBB), 2009 WL 5125606, at *2 (S.D. Cal. Dec. 18, 2009), the Plaintiff alleged alter ego because "Allied is the sole shareholder in Coverall and Coverall Cleaning Concepts, LLC; regularly removed cash and other assets from Coverall to minimize the ability of creditors to attach funds; did not respect normal corporate formalities (failed to keep corporate minutes and/or

backdated such minutes); failed to contribute capital, issue stock, or otherwise complete the formation of these entities; and failed to provide adequate capital and operating funds." The court refused to dismiss stating "that these allegations raise the right to relief beyond a mere speculative level." *Id.* "The allegations sufficiently identify the contours of an alter ego claim such that Allied is able to prepare a response to the SAC and to conduct discovery." *Id.* The Court underscored that: "The fundamental inquiry to establish a viable alter ego claim requires the parties to delve into the unity of interests shared by Allied and Coverall-knowledge uniquely within the possession of the corporate entities, and not Plaintiff." *See Fed. Reserve Bank of San Francisco v. HK Sys.,* No. C–95–1190, 1997 WL 227955, at *6 (N.D.Cal. Aug. 24, 1997) (noting that various factual allegations may satisfy two-prong alter ego test, including manipulation of assets, failure to adequately capitalize, use of one corporation as shell, and failure to maintain corporate records and legal formalities); *Lincoln Imps. Inc. v. Weaver Flower Co.,* No. SACV 11–1098–JST (ANX), 2012 WL 1048531, at *4 (C.D.Cal. March 27, 2012) (finding that party adequately pled alter ego claim when they alleged failure to adequately capitalize, disregard for corporate formalities, and possible unjust result by upholding corporate veil).

Similarly, in *Blue Line Foodservice Distribution, Inc. v. Cathcart*, No. 24-CV-1250-W-MMP, 2025 WL 1265859, at *11 (S.D. Cal. Apr. 30, 2025), the Court refused to dismiss an alter ego claim, explaining: "The Complaint states alter-ego liability plus the following factors: commingling of funds and Cathcart's use of Mercator, Nerys Logistics, and Nery's USA for his individual purpose. The Complaint also alleges that Nery's USA and Com Nerys were under-capitalized. These allegations are sufficient for Plaintiff's alter ego theory of liability to survive dismissal, even if disputed facts ultimately prove otherwise." In another example, in *Connecticut Gen. Life Ins. Co. v. Earl Scheib, Inc.,* No. 11CV788-AJB(WVG), 2012 WL 12868358, at *3 (S.D. Cal. May 22, 2012), the Court refused to dismiss stating that: "Based on the allegations in the complaint, particularly concerning undercapitalization, the Court concludes that Plaintiff has alleged facts sufficient to state claim under the first factor showing a 'unity of interest and ownership between the

corporation and its equitable owner that no separation actually exists.'"  In this case, the DAC alleges that at least two of these factors apply, and therefore, sufficiently alleges alter ego.

### 1.    Bain Uses PowerSchool As A Conduit For Its Own Affairs.

Two companies may each be considered alter egos of one another where "though formed as separate corporations," the companies are "operated with integrated resources in pursuit of a single business purpose . . . " *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* 217 Cal.App.4th 1096, 1109 (2013) (*Morgan Creek*). A parent corporation's use of a subsidiary "'as a marketing conduit' and attempts to shield itself from liability based on its subsidiaries' activities" satisfies the alter-ego test and provides an appropriate basis to pierce the corporate veil. *In re Hydroxycut,* 810 F.Supp.2d at 1123, citing *Doe v. Unocal Corp*. 248 F.3d 915, 926 (9th Cir. 2001).

Here, there is no dispute that Bain controls over 51% of PowerSchool.  Upon completion of the merger, Bain immediately replaced the entire PowerSchool board and assumed full responsibility for key decisions related to operations, cybersecurity, and finances based on this control.  ECF 319, p. 28.  The DAC alleges in Paragraph 58 that: "Bain Capital's role was not that of a passive investor. Rather, Bain Capital exercised direct control over PowerSchool's decision-making, treating PowerSchool as a mere instrumentality of its own financial interests. Indeed, Bain Capital's representatives and executives dictated many of the policies and business decisions that ultimately gave rise to the Data Breach, blurring any separation between Bain and PowerSchool."  It continues in Paragraph 59 that:  "From the moment Bain took over, PowerSchool was operating under Bain Capital's thumb, with Bain Capital's profit-driven mandates superseding all else when it came to budget allocations and risk management."  Paragraph 60 indicates that:  "One of Bain Capital's first acts as PowerSchool's new owner was to impose aggressive cost-cutting measures, including a sudden mass layoff of approximately 5% of PowerSchool's workforce. Bain Capital's mandate eliminated around 175 critical staff within weeks of the acquisition. Many of those terminated were long-term employees with valuable

institutional knowledge, including some employees with over twenty years of experience as PowerSchool employees. An inside source reported that entire departments were "'basically gutted' by these layoffs." Paragraph 61 explains that: "The purported justification for this drastic reduction was pretextual—PowerSchool had missed an earnings-per-share target by a mere $0.01—revealing that Bain was willing to sacrifice personnel, including IT and security staff, to appease Bain's short-term financial goals." Paragraph 65 further describes this control, indicating that: "At the same time it was systematically gutting PowerSchool's U.S. workforce, Bain Capital also pursued an aggressive offshoring strategy that exposed School District data to under-secured overseas access. Bain's post-acquisition plan for PowerSchool called for rapidly expanding cheaper overseas operations while shrinking domestic infrastructure." Paragraph 67 notes that the offshoring was to benefit another company Bain had acquired, Outsourcing, Inc. Paragraph 68 underscores that the goal was to shift " as much labor as possible to offshore 'centers of excellence' under Bain's control." These Paragraphs show that Bain was using PowerSchool to benefit its other owned businesses, and thus using PowerSchool for its personal benefit. The DAC in Paragraph 84 summarizes the control, indicating that: "In sum, Bain Capital exercised such pervasive control over PowerSchool that PowerSchool became Bain's alter ego, carrying out Bain's directives to reduce costs regardless of the known dangerous consequences."

Bain argues that it was not responsible because it became the official owner on October 1, 2024. ECF 303, p. 37. First, the breach occurred in or around December 20, 2024, when Bain was an owner of PowerSchool. The cuts and control pled in the DAC may have started prior to October 1, 2024, but the DAC does not allege that they stopped on that date, in fact, even identifying specific measures that occurred in January 2025[2]. DAC, ¶ 66. As a result, Bain's direct control and use of PowerSchool as a mere

---

[2] The Motion to Dismiss states that the date of this decision was January 2024, but the Complaint lists it as January 2025. ECF 303, p. 40.

instrumentality of its own financial interests occurred between October 1, 2024 and December 20, 2024 and lead to liability and the data breach that occurred.

Second, as Bain acknowledges, Bain and PowerSchool finalized a Merger Agreement on June 6, 2024. ECF 303, p. 40. This Merger Agreement enabled Bain to control and use PowerSchool as its instrumentality as alleged in the DAC.. The Opposition to Bain's Motion to Dismiss from Track 1 states that under the Merger Agreement, Bain gained: "strategic control over PowerSchool's key control." ECF 319, p. 27. It states that Bain "'ratified and conditioned its offer on cost reduction measures consistent with its acquisition strategy' throughout its negotiations with PowerSchool and PowerSchool assented to Bain's control conditions by agreeing to engage in exactly the cost reduction measures Bain required for acquisition." *Id.* Although Bain argues that PowerSchool was "still an independent, public entity," the DAC and other papers in this filing allege facts disputing Bain's characterization. The DAC for the purposes of the Motion under 12(b)(6) must be taken as true. As outlined in *Laguna*, the fundamental inquiry here is the unity of interests shared by Bain and PowerSchool after the Merger Agreement in June 2024, knowledge uniquely within the possession of the corporate entities, and not Plaintiffs. As in *Laguna*, Plaintiffs have pled specific allegations within their knowledge establishing alter ego liability sufficient to surpass the Motion to Dismiss stage and enter the critical stage of discovery.

Indeed, courts routinely deny motions to dismiss and motions for summary judgment on the alter ego issue because they are questions of fact, which are ultimately most appropriately addressed at trial, not through motion practice. *Allen v. Oberdorfer Foundries, Inc.,* 192 A.D.2d 1077, 1078, 595 N.Y.S.2d 995 (1993) (case Bain cites on page 36 where court denied summary judgment on alter ego issue saying was issue for trial); *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 815, 110 Cal. Rptr. 3d 597, 610 (2010) (explaining cannot make a determination of law on unity of interests, but is a question of fact for trial); *Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp.,* 849 F. Supp. 702, 707 (N.D. Cal. 1994) (without further discovery on alter ego issue, summary judgment is

22   Case No. 25-MD-3149-BEN-MSB

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

inappropriate). As a California court denying a motion to dismiss explained in *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 236, 166 Cal. Rptr. 3d 864, 876 (2014), "Defendants argue that Rutherford failed to allege specific facts to support an alter ego theory, but Rutherford was required to allege only 'ultimate rather than evidentiary facts.' . . .. Moreover, the 'less particularity [of pleading] is required where the defendant may be assumed to possess knowledge of the facts at least equal, if not superior, to that possessed by the plaintiff,' which certainly is the case here." (Quotation and citation omitted); *compare with PXP Producing Co. LLC v. MitEnergy Upstream LLC,* 342 A.3d 402 (2025) (case which Bain cites which is distinct because there was six-year gap between action and financial trouble; in this case, by contrast, impact of the reductions was felt very shortly (within months) of the change).

The sum of the above supports that PowerSchool "had no separate 'mind, will or existence' of their own, but were merely conduits through which [Bain] conducted its business." *Morgan Creek*, *supra*, 217 Cal.App.4th at 1109. To the extent that Bain states it could not locate a case where a private investment firm was held to be an alter ego, Bain imputes a factor into the analysis of alter ego law that does not exist.

The cases highlighted above stand for the proposition that an entity can be liable under alter ego theory; it is irrelevant the type of business of the owner. Instead, what matters is the level of control and how the other corporation is utilized by the owner. Moreover, to the extent that imputing alter ego liability to a firm like Bain would cause private investment firms to act differently than Bain when controlling a firm that they own, the Plaintiffs believe that would be an appropriate consequence.

### 2. The DAC Plausibly Alleges That Bain Maintained Inadequate Capitalization Of PowerSchool

"Under California law, inadequate capitalization of a subsidiary may alone be a basis for holding the parent corporation liable for acts of the subsidiary. [Citations.]" *Slottow v. American Cas. Co. of Reading, Pennsylvania* 10 F.3d 1355, 1360 (9th Cir. 1993). Broadly, "a corporation is undercapitalized when it is unable to meet debts that may reasonably be

expected to arise in the normal course of business." *Hydroxycut Marketing*, *supra*, 810 F.Supp.2d at p. 1123, citing *Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Service, Inc.* 736 F.2d 516, 524 (9th Cir. 1984), *compare with In re U.S. Vision Data Breach Litigation*, Slip Copy (2025) (case Bain cites on page 36 is distinct from this case as in that case plaintiffs did not allege under capitalization.)

In this case, the DAC alleges sufficient facts to meet this critical factor. The DAC states in Paragraph 57, "In the process, Bain Capital saddled PowerSchool with substantial debt that was used to finance the buyout, imposing significant financial pressures on the company's operations. By design, Bain Capital's financial engineering prioritized extracting short-term profits from PowerSchool—for example, by burdening the company with loans and demanding aggressive cost reductions—at the expense of investments in cybersecurity and stability." This case is distinct from *ViaSat, Inc. v. Space Sys./Loral, Inc.,* No. 12-CV-00260-H-WVG, 2012 WL 12844738, at *5 (S.D. Cal. July 30, 2012), which Bain cites on page 39 of its Motion. In that case a motion to dismiss was granted because the plaintiffs had not alleged inadequate capitalization of a subsidiary such that adherence to the separate existence of SS/L and Loral would sanction a fraud or promote injustice. *Compare with DePetris v. Traina*, 211 A.D.3d 939, 941–42, 181 N.Y.S.3d 298 (2022) (this case is distinct from *DePetris* that Bain cites on page 43, where no alter ego is found because "the petitioner presented no evidence that the LLC was undercapitalized or that Traina commingled the assets of the LLC with his own or used corporate funds for personal use."); *Standex Int'l Corp. v. QCP*, Inc., 2017 WL 481447, at *6 (S.D.N.Y. Feb. 6, 2017) (this case is distinct from *Standex* that Bain cites on page 39 because the complaint here alleges that Bain was making all decisions for PowerSchool and by comparison, in *Standex*, plaintiff only alleged that parent company had acquired subsidiary and assumed its liabilities/obligations).

The DAC allegations are specific and support the claim of undercapitalization, which is sufficient by itself to find alter ego liability.

Case No. 25-MD-3149-BEN-MSB

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

### 3. Equity And Judicial Policy Strongly Favor Application Of The Alter Ego Doctrine.

"The essence of the alter ego doctrine is that justice be done." *Mesler*, *supra*, 39 Cal.3d at p. 301. Equity and justice support finding alter ego "where, because of the corporation's utilization of the corporate form, the party harmed will not be adequately compensated for its damages." *Doney v. TRW, Inc.* 33 Cal.App.4th 245, 249 (1995), citing *Mesler*, *supra*, 39 Cal.3d at 300, 302-304. *Cam-Carson, LLC v. Carson Reclamation Auth.*, 82 Cal. App. 5th 535, 552, 298 Cal. Rptr. 3d 482, 493 (2022) ("plaintiff need not allege a claim for fraud in order to establish alter ego liability. The alter ego doctrine does not require proof of fraud, and can be satisfied by evidence that adherence to the fiction of the separate existence of the corporation would promote injustice" (quotation and citation omitted)).

In *Dolarian Cap., Inc. v. SOC, LLC*, No. 1:11-CV-00031-LJO, 2013 WL 433001, at *4 (E.D. Cal. Feb. 1, 2013), the Court determined that the equities weighed in favor of granting alter ego, explaining that "Accepting these allegations as true and construing the pleading in the light most favorable to SOC, the foregoing gives rise to a reasonable inference that DCI is 'organized and carries on business without substantial capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts,' and that Dolarian set up DCI 'to do corporate business without providing any sufficient basis of financial responsibility." (citation and quotation omitted). The Court concluded: "As such, recognizing DCI as a corporate entity separate from Dolarian would 'sanction a fraud or promote injustice. Therefore, SOC has sufficiently alleged the second prong of the test for application of the alter ego doctrine." *Id.* (citation and quotation omitted).

In another example, in *Connecticut Gen. Life Ins. Co. v. Earl Scheib, Inc.*, No. 11CV788-AJB(WVG), 2012 WL 12868358, at *3 (S.D. Cal. May 22, 2012), the court concluded that "The first amended complaint alleges that to treat Kelly and Scheib as separate entities would "'permit an abuse of the limited corporate immunities and privileges and would sanction fraud and promote injustice and bad faith.' (Id. ¶ 30.) The Court concludes that Plaintiff has stated a claim for relief as to the second factor."

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

In a third example, in *Intelligent SCM, LLC v. Qannu PTY Ltd,* the Court determined "If a corporation is organized and carries [on] business without substantial capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts, it is inequitable that shareholders should set up such flimsy organization to escape personal liability. The attempt to do corporate business without providing any sufficient basis of financial responsibility to creditors is an abuse of the separate entity and will be ineffectual to exempt shareholders from corporate debts.... If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is a ground for denying the separate entity privilege." *Intelligent SCM, LLC v. Qannu PTY Ltd.,* No. CV1406417MMMVBKX, 2015 WL 13916820, at *21 (C.D. Cal. July 2, 2015) "Thus, 'the status of an entity as undercapitalized is an independent basis for inequitable result' under the alter ego doctrine." *Id*.; *compare with Futterman v. Kaiser Found. Health Plan, Inc*., 91 Cal. App. 5th 656, 663 (2023), *as modified on denial of reh'g* (June 6, 2023), *review denied* (Aug. 23, 2023) (this case distinct from *Futterman* that Bain cites on page 43 because in *Futterman*, at summary judgment stage, plaintiff presented no evidence to show that she was defrauded by the subsidiary or that subsidiary could not pay its own debts; here, at the motion to dismiss stage, Plaintiffs allege that Bain undercapitalized PowerSchool and threatened its financial viability by taking on tremendous debt to Bain's advantage).

Here, the Plaintiffs have stated a claim for relief as to the second factor. Paragraph 86 of the DAC notes that: "Bain Capital reaped financial benefits from its reckless action as it extracted substantial value from PowerSchool. Meanwhile, Plaintiffs paid the price. Had Bain Capital prioritized bare minimum data security measures over short-term profit, the Data Breach could have been prevented. Instead, Bain's deliberate actions and inaction caused the conditions that made the breach possible." It continues in Paragraph 88 that: "The law does not permit Bain to hide behind PowerSchool's corporate form in these circumstances. An unconscionable and grossly inequitable result would follow if Bain were permitted to use PowerSchool's separate corporate form to avoid liability." Paragraph 89 adds that: "Bain has reaped substantial benefits from PowerSchool's operations while simultaneously exposing it to liability and financial vulnerability. As Bain continues to

capitalize on its investment, it has left PowerSchool severely undercapitalized and underinsured in the face of the massive Data Breach, despite Bain's knowledge of PowerSchool's existing vulnerabilities when the merger occurred and Bain's direct contributions to the Breach itself. To treat Bain as separate from PowerSchool would permit Bain to unjustly insulate itself from the obligations and harms arising from its ownership and control of PowerSchool."

Thus, given the undercapitalization of PowerSchool by Bain, failing to allow for alter ego liability would cause the Plaintiffs to lack a defendant with sufficient resources to compensate them for the damages from the breach and would allow Bain to benefit from its own improper actions. As a result, the equities favor denying the request to dismiss.

**B. Alternatively, Assuming Arguendo That This Court Believes The Pleadings Are Not Sufficient For The Purposes Of The Motion To Dismiss, The Court Should Grant Jurisdictional Discovery And Leave To Amend.**

In the alternative, if this Court does not believe that Plaintiffs have alleged sufficient facts for alter ego theory, the Plaintiffs request an order to allow them to conduct discovery regarding their alter ego allegations and leave to amend after conducting discovery. *See, e.g., Twentieth Century Fox Int'l Corp. v. Scriba,* 385 F. App'x 651 (9th Cir. 2010) (holding that district court abused its discretion in denying discovery on jurisdictional facts); *Riot Games, Inc. v. Suga PTE, Ltd.,* 638 F. Supp. 3d 1102, 1121 (C.D. Cal. 2022) (granting jurisdictional discovery); *Willick v. Napoli Bern Ripka & Assocs., LLP,* No. 2:15-cv-00652-AB (Ex), 2019 WL 3064120, at *6 (C.D. Cal. Mar. 13, 2019) ("the Court grants [p]laintiff's request to conduct limited jurisdictional discovery as to Plaintiff's alter ego liability theory. *Plaintiff's discovery shall not be limited in any extent*, insofar as it seeks to support its prima facie case for its alter ego theory.") (emphasis added); *Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp.,* 849 F. Supp. 702, 707 (N.D. Cal. 1994) ("Whether Hitachi America and Hitachi Data are 'mere instrumentalities' of Hitachi and each other is a factual issue. Bell Atlantic is entitled to discovery on the alter ego issue.").

Specifically, the Plaintiffs seek jurisdictional discovery on the agreements between Bain and PowerSchool, Bain's decision-making and communications with PowerSchool

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

after June 2024 and Bain's actions relative to PowerSchool after October 2024 to have a greater understanding of the inner workings of PowerSchool.    Additionally, Plaintiffs request that to the extent this court believes agency theory is the more appropriate analysis, leave to amend to specifically incorporate such theory. *Synapsis, LLC v. Evergreen Data Sys., Inc.*, No. C 05-01524 JF (RS), 2006 WL 3302432, at *4 (N.D. Cal. Nov. 14, 2006) (explaining the issues of fact and law were almost identical for agency and alter ego). Leave to amend is necessary because if some plaintiffs are able to allege agency and others are not it would lead to an inequitable result.

If the court agrees to neither of these remedies, the Plaintiffs seek dismissal without prejudice to allow a refiling based on further discovery.

## IV.    THE PLAINTIFFS HAVE SUFFICIENTLY PLED THE DIRECT INTENTIONAL INTERFERENCE CLAIM AND THEREFORE, THE COURT SHOULD DENY THE MOTION TO DISMISS.

To plead a tort of intentional interference with contractual relations, the Plaintiff must allege: "'(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.'" *Roy v. Coyne*, 259 Ill. App. 3d 269, 275 (1994) (citing *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145 (1989)); *see also Bourne v. Town of Madison*, No. 05-CV-365-JD, 2010 WL 1233977, at *2 (D.N.H. Mar. 23, 2010); *Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 424 (1996); *Kirch v. Liberty Media Corp.,* 449 F.3d 388 (2d Cir. 2006). *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991) (intentional and improper interference are elements); *Phillips v. Selig,* 959 A.2d 420, 429 (2008).    Bain Capital does not contest, and the Plaintiffs have sufficiently alleged, the validity, enforceability, and Bain's own awareness of the contract between the Plaintiffs and PowerSchool. Rather, Bain Capital alleges lack of sufficient pleadings in intent,

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

causation, and breach. Plaintiffs incorporate herein their Opposition to the PowerSchool Motion to Dismiss relative to the breach of the contract.

### A. The Master Complaint Alleges There Was Intentional Interference.

"[T]he interfering defendant must have knowledge of both the contract and of the fact that he is interfering with the performance of that contract." *Ayo v. Quintero*, 2024 IL App (4th) 230607-U, ¶ 36, quoting Law Offices of Charles Chejfec, LLC, 2023 IL App (3d) 230083, ¶ 41 (citing Restatement (Second) of Torts § 766, cmt. i (1979)). "A defendant's acts are intentional if the defendant, in committing those acts, either desired to bring about the harm to the plaintiff (the breach of the contract by the other party) or knew that such a result was substantially certain to be produced by those acts." *Id.* at 230607-U; *Crouch v. Kroger Co.*, No. 08-02044, 2009 WL 10664332, at *4 (W.D. Tenn. July 27, 2009), *aff'd sub nom. Crouch v. Pepperid; ge Farm, Inc.,* 424 F. App'x 456 (6th Cir. 2011); *Goldin-Feldman v. Blum & Fink, Inc.,* 2000 WL 1182798 (S.D.N.Y. Aug. 18, 2000); *Glenn v. Point Park College,* 441 Pa. 474, 481 (1971); *Demetracopoulos v. Wilson*, 138 N.H. 371, 374, 640 A.2d 279, 282 (1994). There is no requirement that there be actual malice in the inducement of the breach. *A.S. Rampell, Inc. v. Hyster Co.,* 3 N.Y.2d 369, 376 (1957); Restatement (Second) of Torts, §§ 766 cmt. (r); 766B cmt. (f); *compare with Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F.Supp.2d 213 (2013) (Bain cites on page 49 of motion to dismiss, but factually distinct as no allegation of control, direction or inducement like in this case); *St. Benedict's Development Co. v. St. Benedict's Hospital*, 811 P.2d 194 (1991) (cited on page 50 of the motion to dismiss because distinct since there was no breach as tenants all had a right to not renew the leases). A claim can arise when the defendant induces actions that render the performance of the contract impossible. *Kronos, Inc. v. AVX Corp.,* 81 N.Y.2d 90, 94 (1993).

Courts explain that the "intent with which an act was done may be proved by ... the declarations of the party concerned, or by facts and circumstances from which the existence of the intent may be reasonably inferred." *Stuart v. Hayden,* 169 U.S. 1, 9 (1898). Determination of an actor's state of mind usually entails the drawing of factual inferences

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

as to which reasonable people might differ and is therefore a function typically left to a jury. 10A Wright, Miller & Kane, Federal Practice and Procedure § 2730, at 7 (3d ed. 1998).

Here, the facts sufficiently alleged that Bain had knowledge of its interference with the performance of the contract and rendered performance of the contract impossible. As alleged, Bain had actual knowledge of the contracts and their terms, including contractually promised levels of security. DAC, ¶ 250. Despite its knowledge of PowerSchool's cybersecurity obligations, as well as PowerSchool's already existing vulnerabilities in this area, Bain took deliberate steps to reduce spending on cybersecurity, lay off cybersecurity personnel, and outsource operations to subcontractors, which were contrary to industry standards. DAC, ¶ 251. Taken together, it can be reasonably inferred that Bain knew it was hindering PowerSchool's ability to comply with its cybersecurity obligations and that breach was a substantially certain result of their interference with PowerSchool's cybersecurity team. Further, as outlined earlier, Bain acknowledges that there was a Merger Agreement in June 2024. The DAC underscores that Bain took these steps after the Merger Agreement allowed it to do so. Bain did not need to know that a data breach would occur, only that PowerSchool was not prepared to protect the Plaintiffs against such a breach. Ultimately, as outlined in *Crouch*, the intent is a question of fact for the juryand the Court should deny the motion to dismiss on these grounds.

**B. The Complaint Alleges The Interference Was Unjustified And Improper.**

"Whe[n] the complaint establishes the existence of a privilege, the plaintiff must plead and later prove that defendant acted unjustifiably, i.e., inconsistent with his privilege." *Roy v. Coyne*, 259 Ill. App. 3d 269, 283 (1994). "An action is improper if the conduct contrary to law—such as violations of statutes, regulations, or recognized common-law rules—or the violation of an established standard of a trade or profession." *C.R. England v. Swift Transportation Co.*, 437 P.3d 343, 355 (2019); *Audio of America, Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 321 F.Supp.3d 503, 518 (2018) (quoting *Adler,*

*Barish, Daniels, Levin & Creskoff v. Epstein*, 482 Pa. 416 (1978)).   The standard is not "no legitimate purpose," as outlined in Bain's Motion.  ECF 303, p. 49.

In *Roy v. Coyne*, the Court rejected ill-will or malice as an element of this tort and instead explored two means for determining whether an interference is justified. "The first approach looks to balance the plaintiff's right to contract against the conduct of the defendant which caused interference with that right," turning on "whether protection of the particular contractual interest at issue merits prohibition of the particular conduct at issue." *Roy*, 259 Ill App. 3d. at 285, citing *Swager v. Couri*, 77 Ill.2d 173, 190 (1979). "The second approach ignores the subject matter of the contract interfered with and looks only to the motivation for the defendant's action. . . bas[ing] the justification for defendants' conduct solely on defendant's action, paying no attention to the subject matter of the contract with which defendant interfered." *Id.*; *see also HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145 (1989) (reasoning that one may permissibly interfere in the business relations of another "where the defendant was acting to protect an interest the law deems to be of equal or greater value than the plaintiff's contractual rights").  "Whether a defendant's acts are improper, however, is determined based upon a consideration of several factors, including (1) the nature of the defendant's conduct, (2) the defendant's motive, (3) the interests of the defendant and of the other party, and (4) the social interests involved." *L. Offs. of Charles Chejfec, LLC v. Franz*, 2023 IL App (3d) 230083, ¶ 40, , appeal denied, 238 N.E.3d 314 (Ill. 2024), citing Restatement (Second) of Torts § 767 (1979); *see also Ayo v. Quintero*, 2024 IL App (4th) 230607-U.

Here, Bain's conduct demonstrates a purposeful attempt to minimize cybersecurity protections, at the expense of PowerSchool's obligations to the Plaintiffs, to profit Bain and in a direct effort to benefit its other, recently acquired company, Outsourcing, Inc. DAC, ¶ 67.  Bain acted with improper means when it directed, encouraged, and pressured PowerSchool to weaken its cybersecurity, contrary to established and objective industry-wide standards.  For example, the Plaintiffs point to the FTC guidelines which emphasize that business decisions should factor in the need for adequate data security. *Id.*  at ¶ 45.

Case No. 25-MD-3149-BEN-MSB

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

Plaintiffs further point to established industry standards like strong passwords, educated employees, and multi-factor authentication. *Id.* at ¶ 49. Bain intentionally let PowerSchool's data security weaken, in direct contradiction to these established standards, through cuts in spending, layoffs, and outsourcing, resulting in a compromised login belonging to an offshore contractor with no multi-factor authentication. *Id*. at ¶ 75. *See e.g. Aortech Int'l Plc v. Maguire,* No. 214CV00171RJSEJF, 2016 WL 6947024, at *5 (D. Utah Oct. 21, 2016) (denying motion to dismiss where Plaintiff alleged that Defendant "knowingly gave substantial assistance and encouragement to Maguire to commit his breach of fiduciary duty to AorTech" such as "encouraging and facilitating Mr. Maguire's diversion of his time and efforts to promote his and the Folda Defendants' business interests over those of AorTech, encouraging and facilitating Mr. Maguire's attempts to capitalize on business opportunities for his and the Folda Defendants' benefit, and setting up a business to take advantage of Mr. Maguire's efforts.").

The DAC could not have been more clear: Bain's actions were taken to benefit itself, at the expense PowerSchool's investment in cybersecurity and stability. *Marc Dev., Inc. v. Wolin*, 845 F. Supp. 547, 555 (N.D. Ill. 1993) (finding unjustified action where defendants induced the bank to use plaintiff's payments as a setoff for their own personal financial interest, contrary to the interests of the bank and in order to benefit a holding company where defendants were controlling officers). Furthermore, Plaintiffs' contractual right to sufficient cybersecurity protections, as well as PowerSchool's duty under federal law to protect the PII of current and former students and school faculty members, far outweigh Bain's profit interest. *Compare with Roberts v. Gen. Motors Corp*., 643 A.2d 956, 961–62 (N.H. 1994) (Bain cites this case on page 49 of its Motion but in that case a legitimate business practice was a franchise exercising its right of first refusal in a potential sale of a franchise to protect its legitimate financial interest in its franchise, which is very different then mandating cost reductions that led to a security breach and violated Federal and state law to leave student data unprotected). Thus, the interference was unjustified and improper.

## C. The Complaint Alleges Causation And Breach.

The Plaintiffs have sufficiently alleged that Bain's act of encouraging, instructing and pressuring PowerSchool to make reductions in force and spending and increasing outsourcing, directly caused PowerSchool to breach its cybersecurity obligations. The link between Bain's directives and PowerSchool's insufficient cybersecurity measures is only heightened by the fact, which must be taken as true, that the Data Breach was ultimately enabled by a compromised login belonging to one of the offshore contractors. DAC, ¶¶ 72-73. *See e.g., In re Moveit Customer Data Sec. Breach Litig.,* 2025 WL 2179475 (D. Mass. July 31, 2025). Bain's actions, taken despite their knowledge of PowerSchool's responsibility to the Plaintiffs and their duty of care, reinforce that "but for" Bain's actions, PowerSchool would have the resources necessary to prevent such an attack on customer's information.

## CONCLUSION

For all the reasons discussed herein, the Plaintiffs respectfully request that the Court deny Bain's Motion to Dismiss the claims brought against Bain in the School District Direct Actions First Amended Consolidated Master Complaint, and all direct-filed complaints. Alternatively, the Plaintiffs request jurisdictional discovery and leave to amend.

DATED: October 28, 2025            By: */s/ William B. Shinoff*

James P. Frantz (State Bar No. 87492)
William B. Shinoff (State Bar No. 280020)
Kristin J. Westphal (State Bar No. 202046)
Edward M. Burak (State Bar No. 361196)
**FRANTZ LAW GROUP, APLC**
402 W. Broadway, Suite 860
San Diego, CA 92101
(619) 233-5945
jpf@frantzlawgroup.com
wshinoff@frantzlawgroup.com
kwestphal@frantzlawgroup.com

33                    Case No. 25-MD-3149-BEN-MSB

School District Direct Action Plaintiffs' Opposition to Bain Capital's Omnibus Motion to Dismiss

eburak@frantzlawgroup.com

Daniel Shinoff (State Bar No. 99129)
Gil Abed (State Bar No. 195771)
**ARTIANO SHINOFF**
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
(619) 232-3122
dshinoff@as7law.com
gabed@as7law.com

Peter Mello (MA 659680)
*Admitted Pro Hac Vice*
Felicia Vasudevan (MA 687463)
*Admitted Pro Hac Vice*
**MURPHY, HESSE, TOOMEY & LEHANE LLP**
50 Braintree Hill Office Park, Suite 410
Braintree, MA 02184
(617) 479-5000
pmello@mhtl.com
fvasudevan@mhtl.com

*Attorneys for Plaintiffs, Co-Lead Counsel, and Steering Committee for the School District Direct Actions*