David S. Casey, Jr., Cal. State Bar No. 60768
dcasey@cglaw.com
**CASEY GERRY**
**FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811

Carol C. Villegas, N.Y. State Bar No. 4154324*
cvillegas@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700

James J. Pizzirusso, D.C. State Bar No. 477604*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200

*Interim Co-Lead Counsel*
*\*Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 3:25-md-3149-BEN-MSB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT MOVATE, INC.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)**<br><br>Date: TBD<br>Time: TBD<br>Ctrm.: 5A<br>Judge: Hon. Roger T. Benitez |

3:25-md-3149-BEN-MSB

# TABLE OF CONTENTS

I.    INTRODUCTION AND FACTUAL BACKGROUND.....................................1

II.   MOVATE'S JURISDICTIONAL ARGUMENTS FAIL .............................3

A.    This Court Has Subject-Matter Jurisdiction Over Direct-Filed Actions.....3

B.    This Court has Personal Jurisdiction Over Movate........................................3

    1.    Movate Purposefully Directed Its Activities Toward California..................4

    2.    Movate Purposefully Availed Itself of California's Laws............................6

    3.    Plaintiffs' Claims Arise Out of Movate's Activities in California................7

    4.    This Court's Exercise of Jurisdiction Over Movate Comports With Due Process.........................................................................................................8

III.  PLAINTIFFS HAVE ARTICLE III STANDING.......................................11

A.    Plaintiffs' Sensitive Private Information Was Stolen in the Data Breach .12

B.    Plaintiffs Allege Concrete Injuries-in-Fact .......................................15

    1.   Movate's Associational Standing Argument Fails Because Plaintiffs' Associational Claims are Not Reliant on a Singular Rhode Island Plaintiff ..17

IV.   MOVATE'S 12(b)(6) ARGUMENTS FAIL .................................................18

A.    Legal Standard ............................................................................................18

B.    Choice of Law..............................................................................................18

C.    Plaintiffs Adequately Allege Negligence.....................................................19

    1.   Movate Owed a Duty to Plaintiffs Because it Created the Risk of Harm ...19

    2.   Movate Owed a Duty to Plaintiffs by Virtue of its Special Relationship With Them .........................................................................................................21

    3.   Movate Breached the Duty it Owed to Plaintiffs.......................................23

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

4.    Movate's Wrongful Conduct Proximately Caused Plaintiffs' Harm ..........24

5.    Plaintiffs Adequately Allege Negligence Damages .....................................25

**D.    Negligence Per Se**.........................................................................................**26**

**E.    Negligent Hiring and Supervision**.................................................................**30**

**F.    Unjust Enrichment**........................................................................................**32**

**G.    Declaratory Judgment Can be a Cause of Action**.........................................**34**

**V.    CONCLUSION**...............................................................................................**35**

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
2005 WL 8164062 (W.D. Wash. Mar. 7, 2005)...............................................7, 9

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024), *reconsideration denied*, 2024
WL 4592367 (N.D. Cal. Oct. 28, 2024)...................................................20, 26, 29

*In re Adobe Sys., Inc. Priv. Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014)...............................................................35

*In re Ambry Genetics Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)........................................................29, 33

*In re Anthem, Inc. Data Breach Litig.*,
2016 WL 3029783 (N.D. Cal. May 27, 2016) ...................................................33

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................18

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
674 F. Supp. 3d 884 (S.D. Cal. 2023) ..........................................................30, 31

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019)................................................19, 20, 22

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024), *motion to certify appeal
granted*, 2025 WL 1866348 (N.D. Cal. July 7, 2025).....................21, 30, 31, 35

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017).............................................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................18

*Bohnak v. Marsh & McLennan Cos., Inc.*,
79 F.4th 276 (2d. Cir. 2023)..........................................................................16, 17

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

*Brown v. USA Taekwondo*,
    11 Cal. 5th 204 (2021) ........................................................................................19

*Bruton v. Gerber Prods. Co.*, 703 Fed. App. 468 (9th Cir. 2017) ..........................32

*Bugarin v. All Nippon Airways Co.*,
    513 F. Supp. 3d 1172 (N.D. Cal. 2021) ...............................................................10

*Bureerong v. Uvawas*,
    959 F.Supp. 1231 (C.D. Cal. 1997) ......................................................................28

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ..........................................................................................9, 11

*Calder v. Jones*,
    465 U.S. 783 (1984) ..........................................................................................5, 6

*Calhoun v. Google, LLC*,
    526 F. Supp. 3d 605 (N.D. Cal. 2021)..................................................................26

*In re Capital One Consumer Data Security Breach Litigation*,
    488 F. Supp. 3d 374 ..............................................................................................27

*Cascade Fund, LLLP v. Absolute Cap. Mgmt. Holdings Ltd.*,
    707 F. Supp. 2d 1130 (D. Colo. 2010) .................................................................10

*Castillo v. Seagate Tech., LLC*,
    2016 WL 9280242 (N.D. Cal. Sept. 14, 2016).....................................................20

*Centinela Freeman Emergency Med. Assocs. v. Health Net of Cal., Inc.*,
    1 Cal. 5th 994 (2016)............................................................................................21

*Cherkin v. PowerSchool Holdings, Inc.*,
    2025 WL 844378 (N.D. Cal. Mar. 17, 2025) .......................................................32

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ...............................................................................9

*Collins v. Conifer Value-Based Care*,
    2025 WL 1140788 (C.D. Cal. Feb. 28, 2025).......................................................13

*Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977)...............................................................................11

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

*Diaz v. Tesla, Inc.*,
  598 F. Supp. 3d 809 (N.D. Cal. 2022)................................................................30

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. 2023)..............................................................34

*Doe v. Uber Techs., Inc.*,
  2025 WL 80365 (9th Cir. Jan. 13, 2025).............................................................19

*Ehrens v. Lutheran Church-Mo. Synod*,
  269 F. Supp. 2d 328 (S.D.N.Y. 2003) .................................................................31

*Esquer v. StockX LLC*,
  2020 WL 3487821 (N.D. Cal. June 26, 2020) .....................................................11

*In re Facebook, Inc. Consumer Priv. Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019)...........................................................20, 21

*Facebook, Inc. v. ConnectU LLC*,
  2007 WL 2326090 (N.D. Cal. Aug. 13, 2017).................................................... 6, 7

*Flores-Mendez v. Zoosk, Inc.*,
  2021 WL 308543 (N.D. Cal. Jan. 30, 2021) ........................................................23

*In re GEICO Customer Data Breach Litig.*,
  2023 WL 5524105 (E.D.N.Y. Aug. 28, 2023) .....................................................24

*Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
  972 F.3d 1101 (9th Cir. 2020) .....................................................................4, 8, 9

*Go-Best Assets Ltd. v. Citizens Bank of Mass.*,
  972 N.E.2d 426 (Mass. 2012)..............................................................................19

*Golden Valley Grape Juice & Wine, LLC v. Centrisys Corp.*,
  2009 WL 4828743 (E.D. Cal. Dec. 9, 2009)......................................................... 7

*In re Google Assistant Privacy Litigation*,
  546 F. Supp. 3d 945 (N.D. Cal. 2021).................................................................35

*Gray v. Schenectady City Sch. Dist.*,
  86 A.D.3d 771 (2011)..........................................................................................30

*Haas v. Travelex Ins. Servs, Inc.*,
  555 F. Supp. 3d 970 (C.D. Cal. 2021).................................................................33

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

*Hartford Cas. Ins. Co. v. J.R. Mktg. LLC*,
    61 Cal. 4th 988 (2015)................................................................................32

*Henry v. Superior Ct.*,
    160 Cal. App. 4th 440 (2008)....................................................................24

*Hernandez v. Jensen*,
    61 Cal. App. 5th 1056 (2021)....................................................................23

*Hummel v. Teijin Auto. Tech, Inc.*,
    2023 WL 6149059 (E.D. Mich. Sept. 20, 2023) .........................................19, 24

*Huynh v. Quora, Inc.*,
    508 F. Supp. 3d 633 (N.D. Cal. 2020)......................................................24

*Imran v. Vital Pharms., Inc.*,
    2019 WL 1509180 (N.D. Cal. Apr. 5, 2019)..............................................10

*Kim v. Cnty. of Monterey*,
    43 Cal. App. 5th 312 (2019)......................................................................19

*Koeller v. Numrich Gun Parts Corp.*,
    675 F. Supp. 3d 260 (N.D.N.Y. 2023) ......................................................19

*L'Garde, Inc. v. Raytheon Space & Airborne Sys.*,
    805 F. Supp. 2d 932 (C.D. Cal. 2011).......................................................10

*Landon v. TSC Acquisition Corp.*,
    2024 WL 5317240 (C.D. Cal. Nov. 1, 2024)..............................................26

*Lebrun v. CBS Television Studios, Inc.*,
    68 Cal. App. 5th 199, 210 (2021)..............................................................32

*Linlor v. JPMorgan Chase & Co.*,
    2017 WL 3446814 (S.D. Cal. Aug 9, 2017) (Benitez, J.) .............................4, 11

*Loomis v. Slendertone Distrib., Inc.*,
    420 F. Supp. 3d 1046 (S.D. Cal. 2019) ......................................................10

*Lugo v. St. Nicholas Assocs.*,
    2 Misc. 3d 212, 772 N.Y.S.2d 449 (Sup. Ct. 2003), *aff'd,* 18 A.D.3d
    341, 795 N.Y.S.2d 227 (2005) ..................................................................29

*Lugtu v. Cal. Highway Patrol*,
    26 Cal. 4th 703 (2001)..............................................................................24

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    440 F. Supp. 3d 447 (D. Md. 2020) ........................................................................15

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) .............................................................................4, 5

*Medoff v. Minka Lighting, LLC*,
    2023 WL 4291973 (C.D. Cal. May 8, 2023).........................................................15

*Melchior v. New Line Productions, Inc.*,
    106 Cal. App. 4th 779 (2003) ...............................................................................32

*Meyers v. Rieck*,
    509 Mich. 460, 983 N.W.2d. 747 (2022) ..............................................................29

*In re MOVEit Customer Data Sec. Breach Litig.*,
    2024 WL 5092276 (D. Mass. Dec. 12, 2024) ..................................................15, 17

*Mueller v. Brannigan Bros. Rests. & Taverns, LLC*,
    323 Mich. App. 566 (2018) ...................................................................................30

*NetApp, Inc. v. Nimble Storage, Inc.*,
    41 F. Supp. 3d 816 (N.D. Cal. 2014).....................................................................5, 6

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) .....................................................................................13

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998)..................................................................................7

*Peralta v. Certified Emp. Screening, Inc.*,
    2025 WL 1723142 (C.D. Cal. May 7, 2025)...........................................................34

*In re Philips Recalled CPAP, Bi-Level Pap, & Mech. Ventilator Prods. Litig.*,
    781 F. Supp. 3d 353 (W.D. Pa. 2025) ......................................................................3

*Priddy v. Zoll Med. Corp.*,
    2025 WL 975234 (D. Mass. Mar. 31, 2025) ..........................................................26

*Prime Rate Premium Fin. Corp. v. Larson*,
    226 F. Supp. 3d 858 (E.D. Mich. 2016) .................................................................31

*Ramirez v. Paradies Shops, LLC*,
    69 F.4th 1213 (11th Cir. 2023)...............................................................................13

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

*Rejoice! Coffee Co. LLC v. Hartford Fin. Servs. Group*,
  2021 WL 5879118 (N.D. Cal. Dec. 9, 2021) ......................................................33

*Reyes v. Nationstar Mortg. LLC*,
  2015 WL 4554377 (N.D. Cal. July 28, 2015) ....................................................34

*Roth v. Garcia Marquez,*
  942 F.2d 617 (9th Cir. 1991) ............................................................................9

*In re S.F. 49ers Data Breach Litig.*,
  2024 WL 3849336 (N.D. Cal. Aug. 15, 2024)....................................................20

*Schmitt v. SN Servicing Corp.*,
  2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) .....................................................23

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ....................................................................*passim*

*In re Sequoia Benefits & Ins. Data Breach Litig.*,
  2024 WL 1091195 (N.D. Cal. Feb. 22, 2024)..............................................13, 15

*In re Shield Health Care Grp., Inc. Data Breach Litig.*,
  721 F. Supp. 3d 152 (D. Mass. 2024)................................................................26

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
  613 F. Supp. 3d 1284 (S.D. Cal. 2020) .............................................................32

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ...............................................................19

*St. Aubin v. Carbon Health Techs., Inc.*,
  2024 WL 4369675 (N.D. Cal. Oct. 1, 2024).....................................................26

*Stasi v. Inmediata Health Grp. Corp.*,
  501 F. Supp. 3d. 898 (S.D. Cal. 2020) .........................................................13, 21

*Stollenwerk v. Tri-West Health Care Alliance*,
  254 F. App'x 664 (9th Cir. 2007)......................................................................25

*In re Takata Airbag Prods Liab. Litig.*,
  379 F. Supp. 3d 1333 (S.D. Fla. 2019).................................................................3

*Theisz v. Mas. Bay Transp.*,
  103 Mass. App. Ct. 822 (2024) .........................................................................30

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

*Tokio Marine & Nichido Fire Ins. Co. Ltd. v. Precision Trucking*,
   2009 WL 10672495 (S.D. Cal. Oct 16, 2009) (Benitez, J.) .................................. 4

*Toretto v. Donnelley Fin. Sols., Inc.*,
   583 F. Supp. 3d 570 (S.D.N.Y. 2022) .............................................................. 24

*In re USAA Data Sec. Litig.*,
   621 F. Supp. 3d 454 (S.D.N.Y. 2022) .............................................................. 20

*W. Ins. Co. v. Frontier Homes, LLC*,
   2018 WL 8220544 (C.D. Cal. Mar. 17, 2018) .................................................. 18

*Webb v. Injured Workers Pharmacy, LLC*,
   72 F.4th 365 (1st Cir. 2023) ....................................................................... 15, 23

*Wedlock v. Troncoso*,
   712 N.Y.S.2d 328 (Cty. Sup. Ct. 2000) .......................................................... 28

*Weekes v. Cohen Cleary P.C.*,
   723 F. Supp. 3d 97 (D. Mass. 2024) ............................................................... 20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   313 F. Supp. 3d 1113 (N.D. Cal. 2018) .......................................................... 35

*Yahoo! Inc. v. La Ligue Contre Le Racisme*,
   433 F.3d 1199 (9th Cir. 2006) ...................................................................... 5, 6

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) ....................................................................... 15

**Statutes**

28 U.S.C. § 2201(a) ............................................................................................ 34

**Other Authorities**

Restatement (Second) of Torts § 302 cmt. a (1965) ............................................ 21

Fed. R. Civ. P. 9(b) ............................................................................................ 19

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 18

Fed. R. Civ. P.57 ................................................................................................ 34

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

## I.   INTRODUCTION AND FACTUAL BACKGROUND

Movate is a global outsourcing company with an international network of 12,000 employees that provides technical and customer support to its institutional clients. ECF No. 259 at ¶ 117.[1] Those clients include Defendants PowerSchool Holdings, Inc. and PowerSchool Group, LLC ("PowerSchool"), a provider of educational software services whose customers include some of the country's largest schools and school districts. ¶¶ 3, 5, 20, 51, 116. Movate provided direct support services to PowerSchool's school district customers, including technical support, customer service, assistance with network operations, and configuration of online platforms. ¶¶ 20, 116, 910. Pursuant to its contract with PowerSchool, Movate received access to and control over the highly sensitive information stored in PowerSchool's student information system ("SIS"), including the personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") of Plaintiffs and millions of Class Members. ¶¶ 23, 910.

Movate assured current and prospective clients that it was well-equipped to handle highly sensitive Private Information and advertised its compliance with internationally recognized data security standards. ¶¶ 118, 780. Contrary to those promises, however, Movate failed to implement basic, industry-standard data security measures. For example, Movate did not require employees to change passwords or rotate credentials at regular intervals, protect employee accounts with multi-factor authentication, properly restrict employees' access to Private Information, or adequately train and supervise its employees and vendors. ¶¶ 130, 144 n.90, 916.

Movate's inadequate data security practices resulted in a massive data breach that exposed the highly sensitive Private Information of over 70 million students, teachers, and parents, including Plaintiffs and Class Members (the "Data Breach"). ¶¶

---

[1] All citations to the Consolidated Individual Users Class Action Complaint (the "Complaint," ECF No. 259) are referenced herein as "¶ _" or "¶¶ __."

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

185, 197. The cybercriminals responsible for the Data Breach used a Movate employee's stolen credentials (username and password) to gain unauthorized access to Plaintiffs' and Class Members' Private Information. ¶¶ 21, 131–33. Those stolen credentials then gave the hackers unfettered access to PowerSchool's SIS and allowed them to exfiltrate a staggering amount of highly sensitive information, including the Private Information of Plaintiffs and millions of Class Members. ¶ 197. In other words, without Movate, the breach at issue in this case would not have occurred.

As a direct result of Movate's data security failures, Plaintiffs' and Class Members' Private Information is now in the hands of cybercriminals. Plaintiffs and Class Members have already and will continue to suffer harm in the wake of the Data Breach. Many Plaintiffs reported specific incidents of actual misuse of their stolen information, including actual and attempted identity theft, fraudulent use of their Social Security numbers, compromised financial accounts, fraudulent tax activity, disrupted credit histories, and compromised access to benefits and employment opportunities.[2] Since the Data Breach, many Plaintiffs have received alerts informing them that their Private Information has been detected on the dark web.[3] And nearly all Plaintiffs have been flooded with spam and phishing emails and calls. To address these harms and mitigate the risk of future harm, nearly all Plaintiffs have incurred out-of-pocket expenses for identity theft and/or credit monitoring services, and/or spent time and energy responding to the Data Breach.[4] The Private Information stolen in the Data Breach remains in the hands of cybercriminals, and several school districts have reported extortion attempts since the Data Breach. *Id*. ¶¶ 146–47.

---

[2] *See, e.g.,* ¶¶ 27–31, 139–44, 283, 329, 340, 346, 352, 357, 375, 399, 411, 435, 441, 503, 509, 515, 562, 581, 598, 604, 611, 617, 635, 641.

[3] *See, e.g.,* ¶¶ 295, 357, 399, 470, 544, 611, 635.

[4] *See, e.g.,* ¶¶ 290, 302, 307, 313, 324, 340, 363, 369, 381, 387, 393, 405, 423, 427, 453, 460, 466, 476, 484, 490, 491, 520, 526, 538, 550, 556, 586, 592, 623, 647, 659, 665, 671, 677, 683, 689, 695, 700, 705, 711, 716, 722, 728, 734, 740, 746.

Movate now seeks to evade all liability for breaching the duties it owed to Plaintiffs and Class Members under statutory and common law. *See* ECF No. 317 ("Mot." or "Motion"). But, contrary to Movate's contentions, Plaintiffs plead cognizable injuries and plausibly allege that their Private Information was stolen in the Data Breach as a direct result of Movate's failure to implement and maintain adequate data security safeguards. Movate's Motion should therefore be denied in its entirety.

## II.    MOVATE'S JURISDICTIONAL ARGUMENTS FAIL

### A.    This Court Has Subject-Matter Jurisdiction Over Direct-Filed Actions

This Court has jurisdiction over "tag-along actions" filed directly in this district pursuant to the Court's Direct Filing Order. *See, e.g.*, *In re Philips Recalled CPAP, Bi-Level Pap, & Mech. Ventilator Prods. Litig.*, 781 F. Supp. 3d 353, 370 (W.D. Pa. 2025); *In re Takata Airbag Prods Liab. Litig.*, 379 F. Supp. 3d 1333, 1338 (S.D. Fla. 2019) (denying dismissal on "direct-filing grounds"). The Short Form Complaint, filed by 51 Plaintiffs with the Clerk's Office on October 10, 2025, and provided via e-mail to Movate's counsel on October 13, 2025, complied with this Court's Direct Filing Order (ECF No. 269), curing any purported jurisdictional defect and mooting Movate's subject matter jurisdiction challenge. *See* Mot. at 8; *see also* Pls.' Opp. to Def. Bain Cap., L.P.'s Mot. to Dismiss (ECF No. 319) at 4–5.[5]

### B.    This Court has Personal Jurisdiction Over Movate

This Court has personal jurisdiction over Movate because: (1) Movate purposefully availed itself of the protections of California law by directing its

---

[5] Movate's subject matter jurisdiction argument is also moot. *See* Mot. at 8 n.5. Movate has had sufficient actual notice of this MDL proceeding since at least August 11, 2025, when Plaintiffs filed their Consolidated Complaint and named Movate as a Defendant. See ECF No. 259. Further, Plaintiffs e-mailed counsel for Movate a copy of the filed Short Form Complaint, on October 13, 2025. Movate's 12(b)(5) argument puts form above substance and should therefore be denied.

activities toward California; (2) Plaintiffs' claims arise out of Movate's California activities; and (3) this Court's exercise of jurisdiction over Movate comports with due process. *See, e.g.*, *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020); *Linlor v. JPMorgan Chase & Co.*, 2017 WL 3446814, at *4 (S.D. Cal. Aug 9, 2017) (Benitez, J.) (exercising specific jurisdiction based on defendant's "forum-related conduct"). Plaintiffs "must satisfy the first two prongs of this test"; "the burden then shifts to [Defendant] to present a compelling case that the exercise of jurisdiction would not be reasonable." *Global Commodities*, 972 F.3d at 1107.

Where, as here, "[a] motion is based on written materials rather than an evidentiary hearing, [] plaintiff[s] need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citation omitted). And as this Court has explained, "[w]here jurisdictional facts are in dispute, such as those here, uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Tokio Marine & Nichido Fire Ins. Co. Ltd. v. Precision Trucking*, 2009 WL 10672495, at *3 (S.D. Cal. Oct 16, 2009*)* (Benitez, J.) (internal quotation marks and citations omitted).

**1.     Movate Purposefully Directed Its Activities Toward California**

In cases involving tortious conduct, like this one, courts "typically inquire whether a defendant 'purposefully direct[s] [its] activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)); *see also Schwarzenegger*, 374 F.3d at 803 ("[D]ue process permits the exercise of personal jurisdiction over a defendant who 'purposefully direct[s]' [its] activities at residents

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

of a forum, even in the 'absence of physical contacts' with the forum." (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985))). Consistent with the "effects" test set forth in *Calder v. Jones*, 465 U.S. 783 (1984), Plaintiffs adequately allege that Movate purposefully directed its activities to California by: (1) committing an intentional act; (2) expressly aimed at California; (3) causing harm that Movate knew was likely to be suffered in California. *See, e.g.*, *Mavrix Photo*, 647 F.3d at 1228; *Yahoo!*, 433 F.3d at 1206.

To adequately plead that Movate committed an "intentional act," Plaintiffs must allege that Movate had "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Here, Plaintiffs do just that by alleging that Movate, pursuant to its contract with PowerSchool, intentionally and knowingly accessed computer systems in California, including PowerSchool's SIS. ¶¶ 20, 24, 47, 117, 120, 133, 910. These allegations satisfy the first prong of the effects test. *See NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 825 (N.D. Cal. 2014) (finding jurisdiction over an Australian resident who "purposefully accessed [computer] systems in California") .

Movate "expressly aimed" its intentional acts at California by: (1) contracting with PowerSchool, a California-based company; (2) performing services for PowerSchool's school district customers, many of whom Movate knew or reasonably should have known were located in California; and (3) accessing and exercising control over the Private Information of California Plaintiffs and Class Members that was stored in PowerSchool's SIS. *See, e.g.*, ¶¶ 20, 47, 132–33, 197, 772–73, 910, 1035. These allegations satisfy the second prong of the effects test. *See NetApp*, 41 F. Supp. 3d at 825, 826–27. Pursuant to its contract with PowerSchool, Movate "access[ed] [ ] computer systems in California" and "had, at minimum, reason to know that [it] was accessing [those] systems in California." *Id.* at 825. "[C]ourts have held that similar activities over the Internet can be sufficient to support personal

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

jurisdiction." *Id.* (collecting cases); *see also Facebook, Inc. v. ConnectU LLC*, 2007 WL 2326090, at *5 (N.D. Cal. Aug. 13, 2017) ("[T]he technology of the Internet can . . . provide a means whereby specific, targeted, conduct may be 'expressly aimed' at a particular individual or entity, despite the fact that the person engaging in the conduct may not know the *geographic* location of the individual or entity."). Movate's misconduct "caused harm" that it "knew would likely occur in California." *NetApp*, 41 F. Supp. 3d at 827. Movate does not deny that it knew PowerSchool was located in California, that it was servicing PowerSchool's customers in California, or that its employees had access to and control over highly sensitive Private Information belonging to students, teachers, and parents in California. ¶ 197. Movate "knew that hackers routinely attempt to steal [Private Information] and use it for nefarious purposes" (¶ 915), and it knew or should have known that "[s]chool districts around the country have [] repeatedly experienced well-publicized data breach incidents resulting from compromised and unprotected credentials[,]" ¶ 169. Plaintiffs and Class Members "were [therefore] the foreseeable and probable victims" of Movate's inadequate data security practices. ¶ 914; *see also* ¶¶ 915–16.

Plaintiffs have thus satisfied all three prongs of the *Calder* effects test.

### 2. Movate Purposefully Availed Itself of California's Laws

Personal jurisdiction is also appropriate where, as here, "a defendant purposefully avail[s] [itself] of the privilege of doing business in a forum state[,]" which can be established with "evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802; *see also Yahoo!*, 433 F.3d at 1206. Here, Movate contracted with PowerSchool, a California-based company, to provide technical support and network operations to PowerSchool and California school districts and maintained access to and control over the Private Information of Plaintiffs and Class Members residing in California. *See, e.g.*, ¶¶ 20, 47, 132–33, 197, 772–73, 910, 1035. Specifically, Plaintiffs allege that Movate and PowerSchool entered into a contractual agreement in July 2024, pursuant

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

to which Movate agreed to provide PowerSchool with, *inter alia*, "technical support and network operations," customer service, and configuration of PowerSchool's SIS. *See* ¶¶ 20, 910.

Specific details about Movate's and PowerSchool's contractual agreement are not publicly available and have not been produced by Defendants. Investigation of the Data Breach, however, revealed that Movate's employees were provided "full access to PowerSchool customers' SIS data" and full capability to exfiltrate Plaintiffs' Private Information "without raising any alarms at PowerSchool[.]" ¶¶ 132–33 (cleaned up).

Movate's forum-state contract with PowerSchool and the services it performed for PowerSchool's California customers satisfy the "purposeful availment" standard. *See, e.g.*, *Absolute Software, Inc. v. Stealth Signal, Inc.*, 2005 WL 8164062, at *3–5, 8 (W.D. Wash. Mar. 7, 2005) (finding personal jurisdiction over defendant company specializing in computer security software because it maintained "an ongoing customer relationship with [forum] residents by nature of its service contract of monitoring and tracking its customers' laptop computers"); *Golden Valley Grape Juice & Wine, LLC v. Centrisys Corp.*, 2009 WL 4828743, at *7 (E.D. Cal. Dec. 9, 2009) (finding purposeful availment where defendant provided "ongoing warranty support and service" to a California resident).

### 3. Plaintiffs' Claims Arise Out of Movate's Activities in California

Plaintiffs' claims "arise out of" Movate's forum-related activities because they "would not have been injured 'but for'" Movate's misconduct. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *see also Facebook*, 2007 WL 2326090, at *7.

Movate does not dispute that the cybercriminals who perpetrated the Data Breach gained unfettered access to Plaintiffs' and Class Members' Private Information using a Movate employee's stolen credentials. *See, e.g.*, ¶¶ 134, 153. Plaintiffs thus plausibly allege that the Data Breach was caused by Movate's

inadequate data security practices, including its failure to, *inter alia*: protect its employees' accounts with multi-factor authentication; properly restrict employees' access to sensitive Private Information; or adequately secure its employees' credentials. *See* ¶ 193 ("Had the Movate employee account required multifactor authentication, the Data Breach would not have happened because a simple username and password would have been insufficient for [hackers] to gain access [to PowerSchool's SIS]."); ¶ 197 ("Had . . . Movate effectively implemented the principle of least privileges . . . [the hackers] would not have been able to access [and exfiltrate]" Plaintiffs' and Class Members' Private Information using the stolen credentials of a Movate employee); ¶ 208 ("Movate could have prevented the [Data] Breach by rotating the credentials of [its] employees on a regular basis."); *see also, e.g.*, ¶¶ 127, 128, 131, 913, 919–21, 923, 1035. Plaintiffs have therefore shown that their alleged injuries would not have occurred but for Movate's forum-related activities.

Movate's arguments—that there is no "[r]elation [b]etween Movate's [a]lleged [c]ontacts and Plaintiffs' [c]laims[,]" because Plaintiffs "do not allege facts showing that any of Movate's challenged conduct had anything to do with California itself" (Mot. at 11)—are also contradicted by Plaintiffs' well-pled allegations that their injuries resulted from Movate's performance of its contract with a California based-company, pursuant to which it provided services to California-based customers, among others. *See, e.g.*, ¶¶ 3, 5, 20, 51, 116.

**4. This Court's Exercise of Jurisdiction Over Movate Comports With Due Process**

Movate fails to meet its burden of "present[ing] a compelling case that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (cleaned up); *see also, e.g.*, *Global Commodities*, 972 F.3d at 1107 (Plaintiffs "must satisfy the first two prongs of this test"; "the burden then shifts to [the defendant] to present a compelling case that the exercise of jurisdiction would not be reasonable.");

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

*Roth v. Garcia Marquez,* 942 F.2d 617, 625 (9th Cir. 1991) ("Once purposeful availment and relatedness have been established, the forum's exercise of jurisdiction is ***presumptively reasonable***.") (emphasis in original) (citation omitted).

Courts consider seven factors to evaluate the reasonableness of exercising jurisdiction over a non-resident defendant:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011); *see also Burger King*, 471 U.S. at 476–77. Movate falls far short of its burden to "present a compelling case that the exercise of jurisdiction would not be reasonable" here. *Global Commodities*, 972 F.3d at 1107; *see also* Mot. at 12–13.

Movate's attempt to minimize its forum-related conduct (*see* Mot. at 12) ignores Plaintiffs' Complaint. Movate cannot dispute that its challenged conduct arises from the contract it entered into with a California-based company, pursuant to which Movate provided services directly to PowerSchool's California customers, among others. ¶¶ 3, 5, 20, 51, 47, 132–33, 197, 772–73, 910, 1035. Nor can Movate contest that its employees had access to and exercised control over Private Information belonging to Plaintiffs and Class Members in California, among others. ¶¶ 21, 23, 120, 133, 193, 197, 773, 910–11, 921. These factual allegations distinguish this case from Movate's cited authorities. *Compare* Mot. at 12 (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (finding that "the lone transaction for the sale of one item does not establish that the [d]efendants purposefully availed themselves of the privilege of doing business in California")), *with Absolute Software*, 2005 WL 8164062, at *3–5, 8 (finding exercise of personal jurisdiction reasonable where the defendant maintained "an ongoing customer relationship with [forum]

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

residents by nature of its service contract of monitoring and tracking its customers' laptop computers").

Movate's argument that it has "no operational presence in this state" is contradicted by its own website, which lists an office location in San Jose, California. *See* Mot. at 12. Movate has been registered to do business in California since 2000 (registration # 2219179) and has an actively registered business agent in California.[6] *See L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011) (taking judicial notice of results of records searches on the California Secretary of State's business search website); *see also, e.g.*, *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1070 (S.D. Cal. 2019) (exercising jurisdiction in part because defendant "maintain[ed] ties to California through having a designated agent for service of process and registration with the California Secretary of State"); *Bugarin v. All Nippon Airways Co.*, 513 F. Supp. 3d 1172, 1186 (N.D. Cal. 2021) (same).

Movate's argument that "[l]itigating in California would impose a significant burden" (Mot. at 12) is therefore hollow; any burden does not overcome the numerous other factors weighing in favor of personal jurisdiction here. *See, e.g.*, *Cascade Fund, LLLP v. Absolute Cap. Mgmt. Holdings Ltd.*, 707 F. Supp. 2d 1130, 1142 (D. Colo. 2010) (recognizing that litigating in the United States would impose a burden on a business entity organized under the laws of the Cayman Islands but concluding that "this burden is not so onerous or severe as to overcome [the defendant's forum-related contacts]").

Contrary to Movate's arguments (*see* Mot. at 12), California has a strong interest in this litigation, which concerns the security of its residents' highly sensitive and confidential information. *See, e.g.*, *Imran v. Vital Pharms., Inc.*, 2019 WL 1509180, at *6 (N.D. Cal. Apr. 5, 2019) (finding California's interest significant

---

[6] *Business Search*, CAL. SEC'Y OF STATE, https://bizfileonline.sos.ca.gov/search/business (last visited Oct. 22, 2025).

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

where the class brought claims predominantly under California law, even when five other class-action lawsuits were pending in three other different federal districts); *Esquer v. StockX LLC,* 2020 WL 3487821, at *7 (N.D. Cal. June 26, 2020) (finding California's interest weighed against transfer where plaintiffs brought, *inter alia*, claims under California's UCL and a California statutory claim for failure to maintain "reasonable security" of personal information); *Linlor*, 2017 WL 3446814, at *4 (finding exercise of personal jurisdiction reasonable in part because "California has a strong interest in ensuring that its residents' credit disputes are serviced properly").

Because Movate has not met its burden to "present a compelling case that the exercise of jurisdiction would not be reasonable," its Motion should be denied. *See Schwarzenegger*, 374 F.3d at 802. Should the Court find that Plaintiffs have not sufficiently alleged specific jurisdiction, however, Plaintiffs respectfully request the opportunity to conduct limited jurisdictional discovery to assess the relevant contract(s) and the extent to which Movate conducts business in California. Discovery may be appropriately granted "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). To the extent that "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are relevant to the Court's determination of "whether [Movate] purposefully established minimum contacts within the forum[,]" jurisdictional discovery may be warranted here. *See Burger King*, 471 U.S. at 479.

## III.    PLAINTIFFS HAVE ARTICLE III STANDING

Movate adopts PowerSchool's challenges to Plaintiffs' standing, summarily claiming that "most Plaintiffs lack Article III standing" because they allege: (1) "no compromise of sensitive information"; and (2) "no concrete injury beyond speculative

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

risk." Mot. at 5, 7 (citing ECF No. 285-2 at 8–9, 16 ("PowerSchool Mot."))[7] Both arguments are meritless.

**A. Plaintiffs' Sensitive Private Information Was Stolen in the Data Breach**

Movate's reliance on PowerSchool's argument—that "121 out of 170 Plaintiffs . . . fail to show that the information allegedly breached included their [S]ocial [S]ecurity number[s] or medical or financial information"—is unavailing. *See* Mot. at 7 (citing PowerSchool Mot. at 8–9, 16). Like PowerSchool, Movate implicitly concedes that 49 Plaintiffs have standing. *See* Mot. at 7; PowerSchool Opp. at 5. As to the remaining 121 Plaintiffs, Defendants' argument ignores Plaintiffs' well-pleaded allegations and raises factual disputes that cannot be resolved at this stage of the litigation.

Forty-two purported "No-Injury Plaintiffs" plausibly allege that their highly sensitive Private Information—including Social Security numbers and protected medical and health information ("PHI")—was compromised and stolen in the Data Breach. *See, e.g.*, ¶¶ 293, 378, 703 (Social Security numbers); ¶¶ 337, 372, 402, 420, 426, 444, 463, 488, 506, 512, 529, 535, 547, 583, 632, 674, 686, 692, 698, 708, 714, 725, 731, 743, 749 (medical data and protected health information). Plaintiffs' allegations are grounded in PowerSchool's own Data Breach Notice, which explicitly acknowledged that the Private Information stolen in the Data Breach included, *inter alia*, Social Security numbers and medical information. ¶¶ 123 n.69, 143–44. PowerSchool's Data Breach Notice also encouraged Plaintiffs and Class Members to "review[] [their] account statements for suspicious activity" and offered complimentary credit monitoring services to address the risk of financial fraud. ¶ 123 n.69.

Defendants now claim that the purported "No-Injury Plaintiffs" fail to adequately allege standing because they do not identify the specific types of Private

_____

[7] Plaintiffs hereby incorporate by reference their arguments in opposition to PowerSchool's Motion to Dismiss. *See* ECF No. 320 ("PowerSchool Opp.").

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

Information compromised in the Data Breach. *See* ECF PowerSchool Mot. at 9. Defendants ignore 42 Plaintiffs' specific allegations that, for the purposes of enrollment and/or employment with school districts, they were required to provide their medical information and/or PHI, which was input into PowerSchool's SIS. *See, e.g.*, ¶¶ 337, 372, 402, 420, 426, 444, 463, 488, 506, 512, 529, 535, 547, 583, 632, 674, 686, 692, 698, 708, 714, 725, 731, 743, 749 (identifying 42 so-called "No-Injury Plaintiffs" who alleged their medical information and/or PHI was input into PowerSchool's SIS). Courts have consistently found the unwanted exposure of medical information alone suffices to confer standing. *See, e.g.*, *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d. 898, 910 (S.D. Cal. 2020) ("[T]he harm that results from posting medical information on the internet has a close relationship to harm that has traditionally been regarded as providing a basis for a lawsuit[.]"); *Collins v. Conifer Value-Based Care*, 2025 WL 1140788, at *5 (C.D. Cal. Feb. 28, 2025) ("The disclosure of [plaintiffs'] medical information alone is a concrete injury for standing purposes because the disclosure of private information is an injury closely related to a traditionally recognized harm."). Thus, these 42 of the 121 so-called "No-Injury Plaintiffs" have alleged injuries-in-fact sufficient to confer Article III standing.

Moreover, Movate cannot rely on PowerSchool's own failure to provide adequate notice of the Data Breach to invent a pleading deficiency. *See* PowerSchool Opp. at 8–9. Where, as here, Defendants failed to provide adequate notice (¶¶ 845, 890), "plaintiffs cannot be expected to have personal knowledge of the relevant facts." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (pleading standards "may be relaxed with respect to matters within the opposing party's knowledge"); *see also In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *2 (N.D. Cal. Feb. 22, 2024) (finding injury in fact where plaintiffs alleged "wide range of sensitive PII was accessed during the data breach" without specifying which named plaintiffs had what PII stolen); *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1220 (11th Cir.

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

2023) ("We cannot expect a [party] in [plaintiff's] position to plead with exacting detail every aspect of" facts relevant to a data breach).

Plaintiff Campbell, who graduated high school in 2017, is representative of the myriad problems with Defendants' argument with respect to these Plaintiffs. ¶¶ 743–48. At the time of her graduation, Plaintiff Campbell had been enrolled in the St. Croix Falls School District for over ten years, starting as an elementary student. ¶ 743. When Plaintiff Campbell was enrolled as a young child in the District, she was not responsible for providing her PII for enrollment in the District—her parents were and did. Nearly *8 years after she graduated from high school*, Plaintiff Campbell discovered that her Private Information had been stolen in the Data Breach when she happened upon a Facebook post from the St. Croix Falls School District identifying her graduating class year as among those whose data was exposed in the Data Breach—*not* because Defendants sought to notify her. ¶ 744. In response, Plaintiff Campbell called the St. Croix Falls School District, who confirmed that her Private Information was exposed in the Data Breach. *Id.* But neither PowerSchool nor the school district provided any direct notice to Plaintiff Campbell or detail concerning precisely which of her Private Information was exposed in the Data Breach. ¶¶ 743–48. Having, for no apparent reason, stored Plaintiff Campbell's Private Information in PowerSchool's SIS for nearly 8 years after she graduated and having failed to provide Plaintiff Campbell with any notice at all that she is entitled to under the law concerning the Data Breach or its effect on her, *see* ¶¶ 1687–704, Defendants now argue she has not been specific enough about what Private Information they held of hers for nearly two decades, effectively seeking to penalize Plaintiff Campbell for their own failures, *see* ECF No. 285-2. The Court should not indulge Defendants' absurd position as to Plaintiff Campbell or the other similarly situated Plaintiffs, particularly where such information is exclusively in Defendants' hands.

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

**B.      Plaintiffs Allege Concrete Injuries-in-Fact**

Plaintiffs in a data breach case plead Article III injuries-in-fact where, as here, they allege: (1) actual or attempted misuse of their stolen information; or (2) a credible threat of real and immediate harm stemming from the theft of their personal information, even if the information has not yet been misused. *See In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018). Here, Plaintiffs allege both.

Contrary to Defendants' arguments, 13 of the so-called "No-Injury Plaintiffs" allege actual misuse of their stolen information following the Data Breach.[8] These allegations are more than sufficient to confer Article III standing. *See, e.g.*, *Webb v. Injured Workers Pharmacy, LLC,* 72 F.4th 365, 373 (1st Cir. 2023) ("Our data security precedents support the conclusion that actual misuse of PII may constitute an injury in fact."); *Sequoia*, 2024 WL 1091195, at *2 (explaining that "actual misuse of PII is a concrete injury"); *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *4 (C.D. Cal. May 8, 2023) (finding plaintiffs sufficiently pled injury where some plaintiffs alleged their PII was "posted on the dark web" after the breach); *In re MOVEit Customer Data Sec. Breach Litig.*, 2024 WL 5092276, at *9 (D. Mass. Dec. 12, 2024) ("[B]ecause a significant number of Plaintiffs . . . allege actual misuse of their data after the Data Breach, the Plaintiffs plausibly allege that the breach substantially and materially increased the risk of future harm for ***all*** Plaintiffs." (emphasis added)); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460 (D. Md. 2020) ("The allegations about the targeting of personal information in the cyberattack and the allegations of identity theft by other plaintiffs whose personal information was stolen makes the threatened injury sufficiently

---

[8] *Compare* ¶¶ 27–31, 139–44, 329, 340, 375, 399, 411, 509, 515, 544, 562, 604, 611, 635, 641 (detailed allegations of actual misuse experienced by many so-called "No-Injury Plaintiffs"), *with* ECF No. 285-2 (claiming that these plaintiffs are "No-Injury Plaintiffs").

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

imminent. In other words . . . Plaintiffs do not have to wait until they, too, suffer identity theft to bring their claims to this court.").

For example, Defendants claim that 13 Plaintiffs who have specifically alleged that they suffered actual misuse injury as a result of the Data Breach (Plaintiff Sauve, Plaintiff Q.D., Plaintiff Spence, Plaintiff Newell, Plaintiff Harrell, one of Plaintiff Jackson's minor children, Plaintiff Henry, Plaintiff Pritchett, Plaintiff Brownlee, Plaintiff Stewart, Plaintiff Friedman, Plaintiff Gifford, and Plaintiff Hauser) are "No Injury Plaintiffs" because they purportedly had "No Specific Discussion of Data" or purportedly provided limited contact information. *See* ECF No. 285-2. Not so. Each of these 13 Plaintiffs specifically discussed that, as a condition of their minor children's enrollment, they was required to provide their PII, which was input into PowerSchool's SIS and that they suffered actual misuse of their PII following the Data Breach resulting in financial fraud, closure of bank accounts, thefts of their identity, or their PII appearing on the dark web.[9] Defendants' assertion that these 13 Plaintiffs are "No-Injury Plaintiffs" is inaccurate.

Plaintiffs' allegations of actual misuse are precisely the type of allegations that "push the threatened injury of future identity theft [for all Plaintiffs] beyond the speculative to the sufficiently imminent." *Beck v. McDonald*, 848 F.3d 262, 274 (4th Cir. 2017); *see also Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 287 (2d. Cir. 2023) ("[F]raudulent charges to the credit cards of *other* customers impacted by the same data breach, or evidence that a plaintiff's PII is available for sale on the Dark Web, can support a finding that a plaintiff is at a substantial risk of identity theft or fraud." (citing *McMorris v. Carlos Lopez & Assocs.*, 995 F.3d 295, 302 (2d Cir. 2021) ("[T]he dissemination of high-risk information such as Social Security numbers . . . especially accompanied by victims' names – makes it more likely that those victims will be subject to future identity theft or fraud."))). Thus, even Plaintiffs who do not

---

[9] *See, e.g.,* MC ¶¶ 326, 329, 336, 340, 372, 375, 396, 399, 408, 411, 506, 509, 512, 515, 541, 544, 559, 562, 601, 604, 608, 611, 632, 635, 638, 641.

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

allege actual misuse of their stolen information have standing because "some part of the compromised dataset has been misused—even if a plaintiff's own data has not." *Bohnak*, 79 F.4th at 288; *see also In re MOVEit Customer Data Sec. Breach Litig.*, 2024 WL 5092276, at *8 (D. Mass. Dec. 12, 2024) (finding plaintiffs' allegations "adequately support[ed] an inference, based on the claim that there was a single breach, that actual misuse of some plaintiffs' data means that all plaintiffs face a substantial and material risk of future harm").

**1. Movate's Associational Standing Argument Fails Because Plaintiffs' Associational Claims are Not Reliant on a Singular Rhode Island Plaintiff**

Movate argues that Plaintiff Providence Teachers Union ("PTU") lacks standing to represent its members because "the one member allegedly employed in Rhode Island is a 'No-Injury Plaintiff.'" Mot. at 7. Movate's argument is wrong in all respects.

First, Plaintiffs do not identify or refer to any "one member" of the PTU employed in Rhode Island. Rather, Plaintiffs' allegations identify PTU as "a professional organization consisting of over 2000 members[.]" ¶ 192. Plaintiffs' allegations separately identify one individual who is employed with a Rhode Island school who Plaintiffs never allege is one of PTU's 2000 members in Rhode Island. ¶¶ 315–20.

Second, as to PTU itself, Movate's argument fails because PTU is not a "No-Injury Plaintiff." PTU specifically alleges that its members provided medical information that was input into PowerSchool's SIS, which, as discussed above, confers standing on PTU. ¶ 749. As set forth fully in Plaintiffs' Opposition to PowerSchool's Motion to Dismiss, PTU Plaintiffs have adequately alleged associational standing. *See* PowerSchool Opp. at 2–-24.

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

## IV.   MOVATE'S 12(b)(6) ARGUMENTS FAIL

### A. Legal Standard

A Rule 12(b)(6) motion "tests the sufficiency of a complaint; it does not . . . resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses.'" *W. Ins. Co. v. Frontier Homes, LLC*, 2018 WL 8220544, at *2 (C.D. Cal. Mar. 17, 2018). Therefore, courts must construe the complaint liberally in evaluating such a motion by "assuming that all the [factual] allegations in the complaint are true" and interpreting them in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.").

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff's explanation is plausible, the complaint survives—"regardless of whether there is a more plausible alternative explanation." *Id.*

### B.   Choice of Law

The parties have agreed that determination of the choice of law issue will be reserved. *See* Order Granting Joint Mot. to Dismiss Certain Claims Against Movate Without Prejudice ("Order re: Dismissal of Certain Claims") ¶¶ 2–3, Oct. 8, 2025, ECF No. 314. Notwithstanding the Parties' agreement and the Court's Order, Movate summarily concludes, without analysis, that "[t]he choice of law outcome is the same: the law of the state where the Plaintiff suffered the injury applies." Mot. at 13. The Parties agreed that, for the purposes of this briefing, the common law counts shall be resolved based on the laws of California, Massachusetts, Michigan, and New York— not the law of the state where each Plaintiff suffered injury. *Id.*; *see also* Order Re: Dismissal of Certain Claims at ¶ 2. Further, Plaintiffs' consumer protection statutory

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

claims are state-specific, and Article III standing and Rule 9(b) pleading standards are governed by federal law. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 959 (S.D. Cal. 2014) (when interpreting federal procedural law, a transferee court in a multidistrict case looks to the law of its own circuit). Thus, consistent with the Parties' agreement and the Court's Order re: Dismissal of Certain Claims, the Court should not decide choice-of-law issues at this juncture.

### C.    Plaintiffs Adequately Allege Negligence

Plaintiffs adequately plead the elements of a negligence claim here: (1) Movate owed a duty or had an "obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks"; (2) Movate breached that duty; and (3) Movate's breach was the proximate cause of (4) Plaintiffs' injuries. *See Bass v. Facebook, Inc.,* 394 F. Supp. 3d 1024, 1038–39 (N.D. Cal. 2019); *see also, e.g.*, *Kim v. Cnty. of Monterey*, 43 Cal. App. 5th 312, 324 (2019); *Go-Best Assets Ltd. v. Citizens Bank of Mass.*, 972 N.E.2d 426, 431 (Mass. 2012); *Hummel v. Teijin Auto. Tech, Inc.,* 2023 WL 6149059, at *5 (E.D. Mich. Sept. 20, 2023); *Koeller v. Numrich Gun Parts Corp.*, 675 F. Supp. 3d 260, 269 (N.D.N.Y. 2023).

### 1. Movate Owed a Duty to Plaintiffs Because it Created the Risk of Harm

Movate's argument that it owed no duty to Plaintiffs because they "had no relationship with Movate whatsoever" (Mot. at 14) is unavailing. Plaintiffs allege Movate caused and created the foreseeable risk of a data breach and the resulting harm to Plaintiffs and Class Members. ¶¶ 118, 163–84, 187. No more is needed.

California, Massachusetts, Michigan, and New York courts have repeatedly recognized a duty of care where a defendant creates and causes a risk of harm, such as a release of sensitive information. *See, e.g.*, *Doe v. Uber Techs., Inc.*, 2025 WL 80365, at *4 (9th Cir. Jan. 13, 2025) (finding a duty arose when defendant's affirmative conduct created the risk of harm); *Brown v. USA Taekwondo*, 11 Cal. 5th

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

204, 213 (2021) ("Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care of skill in the management of his or her property or person . . . the default rule that each person has a duty to exercise, in his or her activities, reasonable care for the safety of others.") (cleaned up); *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 632 (N.D. Cal. 2024), *reconsideration denied*, 2024 WL 4592367 (N.D. Cal. Oct. 28, 2024) (finding file transfer company assumed duty of care to prevent criminals from accessing personal information it had been entrusted to transfer); *In re S.F. 49ers Data Breach Litig.*, 2024 WL 3849336, at *2 (N.D. Cal. Aug. 15, 2024) (finding negligence claim sufficiently pleaded where data breach victims alleged that the defendant obtained and stored their PII without using reasonable safeguards against hacking); *In re Facebook, Inc. Consumer Priv. Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (finding that "[defendant] had a responsibility to handle its users' sensitive information with care"); *Bass*, 394 F. Supp. 3d at 1039 (finding defendant's failure "to comply with minimum data-security standards during the period of the data breach," which "plausibly caused the harm to plaintiff resulting in alleged damages" to be "a classic negligence claim"); *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *3 (N.D. Cal. Sept. 14, 2016) (finding defendant was "duty-bound to take reasonable steps to protect *all* personal identifying information it obtained from [plaintiffs]") (emphasis in original); *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 469 (S.D.N.Y. 2022) (finding "duty of care exist[s] [under New York law] when the custodian [of data] was in the best position to protect information on its own servers from [a] data breach, understood the importance of data security to its business, knew it was the target of cyber-attacks, and touted its data security to current and potential customers"); *Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 103 (D. Mass. 2024) (finding "a duty to protect PII from foreseeable cyberattacks in the data breach context").

Here, Plaintiffs adequately allege that Movate owed a duty of care to Plaintiffs because it had unfettered access to and control over Plaintiffs' Private Information.

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

*See, e.g.*, ¶¶ 23, 47, 120, 133. Plaintiffs further allege that Movate fully understood the importance of adequately securing Private Information. *See* ¶ 118. And Plaintiffs' allegations detail how Movate created a foreseeable risk of harm by failing to implement and maintain adequate data security measures. ¶¶ 43, 185, 193–97, 204–08, 877, 880, 916, 919–21. These allegations more than suffice to plead the legal duty Movate owed to Plaintiffs. *Facebook*, 402 F. Supp. 3d at 799 (denying motion to dismiss negligence claims where the defendant "failed to use reasonable care to safeguard [sensitive] information, giving third parties access to it without taking any precautions to constrain that access to protect the plaintiffs' privacy").

Movate's argument that Plaintiffs did not depend on Movate and that Movate did not control Plaintiffs' Private Information (Mot. at 14) misapprehends both the facts and law. Plaintiffs adequately allege that Movate possessed, maintained, and controlled their Private Information. *See, e.g.*, ¶¶ 23, 47. Where, as here, a defendant's affirmative conduct creates a foreseeable risk of harm, a legal duty attaches. *See Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 907 (N.D. Cal. 2024), *motion to certify appeal granted*, 2025 WL 1866348 (N.D. Cal. July 7, 2025) (finding duty of care existed where plaintiffs "relied" on defendant and defendant's subcontractors to safeguard their PII, defendant's subcontractor had "superior control over the means of protect[ing] Plaintiffs' PII," and defendant's subcontractor had control of plaintiffs' PII "and was therefore responsible for implementing security measures" (internal quotations omitted)); *see also* Restatement (Second) of Torts § 302 cmt. a (1965).

**2.  Movate Owed a Duty to Plaintiffs by Virtue of its Special Relationship With Them**

Contrary to Movate's arguments, courts do not require contractual privity to find that a special relationship exists. *See, e.g.*, *Stasi*, 501 F. Supp. 3d at 914. Here, each of the special relationship factors Ninth Circuit courts consider weigh in Plaintiffs' favor. *See, e.g.*, *Centinela Freeman Emergency Med. Assocs. v. Health Net of Cal., Inc.*, 1 Cal. 5th 994, 1014 (2016) (outlining six factors); *Bass*, 394 F. Supp.

3d at 1039.

First, Movate entered into a contractual agreement to service PowerSchool's school district customers, which was intended to and did affect Plaintiffs by virtue of their enrollment or employment in the school districts served by Movate. ¶¶ 49–58, 116-120. Plaintiffs further allege that, to service its contract with PowerSchool, Movate had unfettered access to and control over Plaintiffs' Private Information. *See, e.g.*, ¶¶ 23, 47, 120, 133. These activities were aimed squarely at Plaintiffs and the Class because their Private Information was the very foundation of the PowerSchool SIS.

Second, Plaintiffs allege that the risk of a data breach, and resulting harm to Plaintiffs and Class Members, were foreseeable to Movate. ¶¶ 118, 163-184, 187.

Third, the purported "No-Injury Plaintiffs" allege in detail the actual misuse of their Private Information as a result of the Data Breach. ¶¶ 27–31, 139–44, 329, 340, 375, 399, 411, 509, 515, 544, 562, 604, 611, 635, 641.

Fourth, Plaintiffs' allegations describe how Movate's affirmative actions resulted in Plaintiffs' harms. *See, e.g.*, ¶¶ 23, 47, 108, 116, 119–20, 133.

Fifth, Movate's conduct is morally reprehensible because Movate knew how sensitive Plaintiffs' Private Information was, yet it chose to outsource cybersecurity to lower-cost, inexperienced labor in the Philippines, and failed to adequately supervise and train its employees with respect to protecting the highly sensitive Private Information it possessed, maintained and controlled, all of which enabled ShinyHunters to steal Plaintiffs' and Class Members' Private Information. ¶¶ 116–20, 127–33, 794, 998.

Finally, public policy weighs in favor of finding a special relationship here, particularly given the vulnerable population of minor children affected by the Data Breach. Taken together, these factors establish that Movate owed a duty arising from its special relationship with Plaintiffs.

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

### 3.     Movate Breached the Duty it Owed to Plaintiffs[10]

Ignoring Plaintiffs' well-pleaded allegations, Movate argues that "[n]othing in the Complaint plausibly suggests that Movate failed to act with due care." Mot. at 16. Courts in the Ninth Circuit, however, have explained that "***when a [data] breach occurs, the thing speaks for itself.*** The breach would not have occurred but for inadequate security measures, or so it can be reasonably inferred at the pleadings stage." *Flores-Mendez v. Zoosk, Inc.*, 2021 WL 308543, at *4 (N.D. Cal. Jan. 30, 2021) (emphasis added); *see also Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *5 (N.D. Cal. Aug. 9, 2021) (noting that the "burden to plead a corresponding breach based on [defendant's] inadequate security measures is not high").

Here, Plaintiffs allege Movate breached the duty it owed to Plaintiffs in several ways, including by failing to: "(1) appropriately train its employees to secure their credentials; (2) rotate its employees' credentials; (3) and implement the principle of least privileges for data systems' access." ¶ 776. Plaintiffs allege that Movate's failures made it possible for cybercriminals to access and exfiltrate Plaintiffs' and Class Members' Private Information in the Data Breach. ¶¶ 793–94. Plaintiffs further allege that Movate was well aware of the importance of implementing these and other security measures to protect Plaintiffs' and Class Members' Private Information. *See, e.g.*, ¶¶ 118, 163–84, 780. These allegations are more than sufficient to support Plaintiffs' claim that Movate breached the duties it owed to them. *See, e.g.*, *Webb*, 2023 WL 5938606, at *2 (defendant breached duty to protect PII "by failing to implement proper safeguards to protect against a data breach," especially where "'best practices' to prevent and detect cyberattacks" were publicly available); *Hummel*, 2023 WL 6149059, at *5 (finding breach of duty where defendant did not encrypt plaintiff's

---

[10] Plaintiffs maintain that a choice of-law-analysis is inappropriate at the motion to dismiss stage. Under California law, however, once a duty has been established, the elements of breach and causation are questions of fact for the jury to decide at trial. *Hernandez v. Jensen*, 61 Cal. App. 5th 1056, 1064 (2021).

PII stored on its server); *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 595 (S.D.N.Y. 2022) (finding allegations sufficient to sustain a negligence claim where the complaint alleged that the defendant failed to implement security systems sufficient to protect personal information and was aware that it was the target of cybersecurity threats).

### 4. Movate's Wrongful Conduct Proximately Caused Plaintiffs' Harm

Generally, proximate causation is not amenable to resolution on a motion to dismiss. *See, e.g.*, *In re GEICO Customer Data Breach Litig.*, 2023 WL 5524105, at *15 (E.D.N.Y. Aug. 28, 2023) (citation omitted). "Causation is generally a question of fact for the jury unless the proof is insufficient to raise a reasonable inference that the act complained of was the proximate cause of injury." *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 650–51 (N.D. Cal. 2020) (quoting *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981)).

Movate's attempt to shift blame for the Data Breach entirely to PowerSchool and cybercriminals (Mot. at 16) is unavailing. In California, "[i]t is well established that when a defendant's negligence is based upon his or her having exposed the plaintiff to an unreasonable risk of harm from the actions of others, the occurrence of the type of conduct against which the defendant had a duty to protect the plaintiff cannot properly constitute a superseding cause that completely relieves the defendant of any responsibility for the plaintiff's injuries." *Lugtu v. Cal. Highway Patrol*, 26 Cal. 4th 703, 725 (2001) (emphasis added); *see also Henry v. Superior Ct.*, 160 Cal. App. 4th 440, 449, (2008) ("[A] negligent tortfeasor is generally liable for all damage of which his negligence is a proximate cause . . . . A tortfeasor may not escape this responsibility simply because another act . . . may also have been a cause of the injury[.]").

Here, Plaintiffs allege that "the entire Breach was purportedly carried out using the compromised credentials of a single Movate employee." ¶ 127. Moreover, the

Data Breach need not be the "sole cause of the identity fraud incidents[.]" *Stollenwerk v. Tri-West Health Care Alliance*, 254 F. App'x 664, 667 (9th Cir. 2007). It is sufficient if the breach was a "substantial factor" in bringing about the injury, "without which the injury would not have occurred." *Id*.

Movate claims that the compromise of its employee's credentials, which provided hackers with unauthorized access to Plaintiffs' Private Information, would "still fail to plausibly allege proximate cause." Mot. at 17. Movate is wrong. Here, Plaintiffs adequately allege that Movate proximately caused the current and future foreseeable harm suffered by Plaintiffs and putative Class Members because the allegations of misuse are logically connected to the same type of Private Information compromised in the Data Breach.

### 5.    Plaintiffs Adequately Allege Negligence Damages

Movate claims that "most Plaintiffs do not plead actual, compensable damages." Mot. at 17. As set forth above, however, the so called "No-Injury Plaintiffs" plausibly and adequately allege that the Data Breach compromised their highly sensitive Private Information (*see, e.g.*, ¶¶ 2, 57, 142, 144) and how they have been victimized as a result of the Data Breach. *See, e.g.*, ¶¶ 329, 340, 375, 399, 411, 509, 515, 544, 562, 604, 611, 635, 641. At this stage, the Court must accept Plaintiffs' well-pled allegations as true. *See Twombly*, 550 U.S. at 555 (2007). A motion to dismiss is not the appropriate vehicle to resolve factual disputes about the scope of the Data Breach, its effect on Plaintiffs, or Plaintiffs' corresponding damages.

As set forth fully in Plaintiffs' Opposition to PowerSchool's Motion to Dismiss, Plaintiffs have plausibly and adequately alleged damages resulting from the Data Breach in the following six categories, each of which standing alone is sufficient to

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

establish Plaintiffs' negligence damages: (1) future harm[11]; (2) lost time[12]; (3) lost benefit of the bargain[13]; (4) diminished value of their Private Information[14]; (5) emotional distress[15]; and (6) invasion of privacy.[16]

### D.   Negligence Per Se

Movate argues the Court should dismiss Plaintiffs' negligence per se allegations for several reasons; as Movate tells it: (1) Plaintiffs' "impermissible group pleading" does not give Movate fair notice; (2) negligence per se is not a standalone claim; (3) Plaintiffs fail to allege any source of duty as pertains to Movate; (4) the statutes cited do not provide a private right of action; (5) Plaintiffs do not allege that they fall within the ambit of the class of persons or harms sought to be protected by

---

[11] *In re Shield Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 161 (D. Mass. 2024) ("Where [p]laintiffs show a substantial risk of harm manifesting in the future, the element of injury and damage will have been satisfied[.]")

[12] *Accellion*, 713 F. Supp. 3d 623, 637 (N.D. Cal. 2024) ("[A] growing number of courts now recognize that individuals may be able to recover Consequential Out of Pocket Expenses that are incurred because of a data breach, including for time spent reviewing one's credit accounts.'").

[13] *Priddy v. Zoll Med. Corp.,* 2025 WL 975234, at *8 (D. Mass. Mar. 31, 2025) ("Plaintiffs' allegations of a lost benefit of the bargain are sufficiently concrete injuries[.]").

[14] *Calhoun v. Google, LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) ("[T]he Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing.").

[15] *Landon v. TSC Acquisition Corp.,* 2024 WL 5317240, at *8 (C.D. Cal. Nov. 1, 2024) (finding that where a data breach "caused [plaintiffs] to suffer 'fear, anxiety, and distress' . . . suffice to allege emotional damages at the motion to dismiss stage."); *Priddy*, 2025 WL 975234, at *7 ("Because Plaintiffs have alleged a substantial risk of future misuse of their Private Information, the court finds that their allegations of emotional distress—coupled with that risk—are sufficiently concrete injuries[.]").

[16] *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *13 (N.D. Cal. Oct. 1, 2024) (Courts "have refused to dismiss invasion of privacy claims at the motion to dismiss stage where, as here, a data breach involved medical information, because the disclosure of such information is more likely to constitute an egregious breach of the social norms that is 'highly offensive.'") (cleaned up).

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

said statutes; and (6) Plaintiffs do not adequately allege causation or damages. Mot. at 19–21. Each of Defendant's arguments fail for the reasons discussed below.

First, Plaintiffs have not impermissibly group pled, and Movate's contention that none of the negligence per se allegations "pertain to Movate" is false. Mot. at 19; *cf.* MC ¶ 807 (alleging that "HIPAA requires covered entities and their business associates, like PowerSchool *and Movate*, to 'reasonably protect' confidential data. . . . ." (emphasis added)). Moreover, Movate's assertion that it did not have fair notice ignores that Plaintiffs' negligence per se count expressly incorporates negligence in that "Plaintiffs separately state their claim for negligence based on negligence per se *to put Defendants on notice* that they intend to seek such a presumption." *See* MC ¶ 800 (emphasis added); *see also, e.g.,* MC ¶¶ 771–73, 776, 780, 787, 789 (alleging facts and law against Movate). Also, prior to Movate's filing of the Motion to Dismiss, the Parties agreed to "the incorporation of the allegations set forth in these [negligence per se] claims into the other causes of action in the Consolidated Complaint." Order re: Dismissal of Certain Claims ¶ 1. Movate cannot now insist that the negligence per se allegations must be confined to the four corners of that count to comply with notice pleading.

Second, Defendant's argument that negligence per se is not an independent cause of action ignores that, before Movate moved to dismiss, Plaintiffs agreed to voluntarily dismiss the standalone negligence per se claim for California, Massachusetts, and Michigan law. *See id.* ¶ 1. New York, however, recognizes negligence per se as a standalone cause of action. For example, in *In re Capital One Consumer Data Security Breach Litigation*, 488 F. Supp. 3d 374, the court noted that New York courts have routinely held that a violation of a statute, which properly imposes a duty of care, can sustain a negligence per se claim. 488 F. Supp. 3d 374, 406–08 (E.D. Va. 2020); *see also,* Mot. at 20 (citing *Dance v. Town of Southampton*, 95 A.D.2d 442, 445 (N.Y. App. Div. 1983), which recognized negligence per se but found it inapplicable in that particular automobile accident case). In addition, New

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

York law does not distinguish between state and federal statutes as the basis for a negligence per se claim. *Wedlock v. Troncoso*, 712 N.Y.S.2d 328, 332 (Cty. Sup. Ct. 2000) ("[A] violation of a State or Federal statute constitutes negligence *per se.*"). Thus, arguments that negligence per se is not a separate cause of action are moot as to California, Massachusetts, and Michigan and are incorrect as applied to New York.

Third, Movate's argument that Plaintiffs fail to allege the source of any statutory duty ignores Plaintiffs' well-pled allegations identifying numerous duties sourced from federal and state statutes and specifically targeting Movate. *See, e.g.*, MC ¶¶ 772–73 ("Movate had a duty to take reasonable steps to ensure adequate data security procedures and practices sufficient to maintain confidentiality of the PII"); ¶ 776 ("Movate owed a duty to Plaintiffs and Class Members to exercise the requisite standard of care to monitor and audit the security protocol and practices of its employees and agents"); ¶ 780 ("Movate held itself out as having undertaken certain security measures and safeguards"); ¶ 784 (alleging violation of Section 5 of the FTC Act, 15 U.S.C. § 45); ¶ 785 (alleging independent duties under federal and state laws); ¶ 789 (alleging that Movate breached its non-delegable duties to, among other things: (a) appropriately train its employees to secure their credentials; (b) rotate its employees' and agents' credentials; and (c) implement the principle of least privileges for data systems' access); *see also* Order re: Dismissal of Certain Claims, ¶ 1. Plaintiffs thus adequately allege the federal, state, and regulatory sources of Movate's statutory duties.

Fourth, Defendant's contention that the Court cannot recognize negligence per se because the underlying statutes confer no private right of action is without merit. *See, Bureerong v. Uvawas,* 959 F.Supp. 1231, 1237 (C.D. Cal. 1997) ("Disagree[ing] with [defendant's] broad and general contention that the Court may not recognize a negligence per se claim simply because the statute upon which the claim is based confers no private right of action."). It is the tort of negligence, and not the violation of the statute itself, which entitles Plaintiffs to recover. Plaintiffs may rely on

provisions of the FTC Act, HIPAA, CCRA, and COPPA in support of their negligence claim. *Accellion,* 713 F. Supp. 3d 623 (ruling that while negligence per se is not a standalone cause of action, "the Court also will not preclude Plaintiffs from relying on the provisions of the FTC Act, HIPAA, CCRA, or COPPA in support of the elements in their negligence claim"); *see also In re Ambry Genetics Breach Litig.*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021) (allowing reference to the FTC Act and HIPAA for breach of medical information). This is true in New York where, even if the underlying statute does not provide a private right of action, its standard of care may be relevant for purposes of negligence. *Lugo v. St. Nicholas Assocs.*, 2 Misc. 3d 212, 215, 772 N.Y.S.2d 449, 453 (Sup. Ct. 2003), *aff'd,* 18 A.D.3d 341, 795 N.Y.S.2d 227 (2005). This is also true in Michigan where a statute or legal regulation can establish the standard of care. *Meyers v. Rieck*, 509 Mich. 460, 472, 983 N.W.2d. 747, 754 (2022) (violation of a statutory duty constitutes negligence per se such that its breach establishes the first two elements of negligence: duty and breach of duty)

Fifth, contrary to Defendant's assertions, Plaintiffs explicitly allege that they are within the class of persons that Section 5 of the FTC Act, HIPAA Privacy and Security Rules, COPPA, FERPA, industry standards, and state consumer protection statutes were intended to protect. MC ¶ 816. Plaintiffs also allege that the harm that occurred was akin to the types of harms intended to be guarded against. MC ¶ 817.

Finally, Plaintiffs plausibly allege causation, *see*, *e.g.*, MC ¶¶ 193, 197, 208, 793–95, and cognizable damages, *see, e.g.*, MC ¶¶ 923–24 (alleging as a direct result of Movate's breach of duties Plaintiffs and Class Members suffered one or more of fourteen specified categories of harms, along with generalized damages to be proven at trial). Plaintiffs also repeat and incorporate their arguments in response to Defendant's proximate causation and cognizable damages under its negligence challenges herein. *See* Section IV(C), *supra* (replying to Movate's negligence challenges).

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

### E.      Negligent Hiring and Supervision

Plaintiffs plausibly allege that Movate owed a duty and breached its duty to adequately hire, train, and supervise its employees or contractors who had access to Plaintiffs' Private Information stolen in the Data Breach. MC ¶¶ 909, 913, 917, 919–21, 923–24. Specifically, Plaintiffs allege that Movate failed to adequately train and supervise its employees and staff concerning data security . MC ¶¶ 32, 882, 884, 913 ("Defendant Movate, acting as PowerSchool's agent, owed non-delegable duties to Plaintiffs and Class Members to hire competent employees and agents and to train and supervise them to ensure they recognize the duties owed to Plaintiffs and Class Members."). Had Movate done so, the Data Breach would have been averted or, at a minimum, been limited in scope. MC ¶ 919 (alleging that the Data Breach would not have occurred and/or the extent of exfiltration would have been less). These allegations are sufficient to support a claim for negligent hiring, supervision, and retention.

The cases relied on by Movate to the contrary (Mot. at 21–22) are inapposite.[17] Here, Plaintiffs well plead that the Data Breach was foreseeable due to Movate's inadequate hiring, training, and supervision of employees and agents. *See* MC ¶ 916 (alleging Movate's inadequate hiring, training, and supervising of employees and agents as to protecting their passwords, regular credential changes, and restricting data access foreseeably led to compromise of Plaintiffs' PII). *Baton v. Ledger* and *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884 (S.D. Cal.

---

[17] *Diaz v. Tesla, Inc.*, 598 F. Supp. 3d 809, 833 (N.D. Cal. 2022) (reviewing sufficiency of evidence for jury verdict); *Mueller v. Brannigan Bros. Rests. & Taverns, LLC*, 323 Mich. App. 566 (2018) (wrongful death case on post-trial appeal where a tavern was not liable due to unforeseeable employee conduct); *Gray v. Schenectady City Sch. Dist.*, 86 A.D.3d 771 (2011) (finding the refusal to dismiss plaintiff's negligent supervision claim proper); and *Theisz v. Mas. Bay Transp.*, 103 Mass. App. Ct. 822 (2024), (denial of summary judgment affirmed because public-employer defendant was not immune from plaintiff's negligent hiring, supervision, and retention claim).

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

2023), are instructive here. In *Baton*, plaintiffs were customers of Ledger who purchased hardware wallets from Ledger's e-commerce site, which operates on Shopify's platform, to manage their cryptocurrency. *See Baton*, F. Supp. 3d at 866–67. Shopify hired subcontractor TaskUs to provide customer support operations, but two rogue TaskUs employees accessed Shopify's database and leaked over 270,000 Ledger users' personal information. *See id.* Plaintiffs alleged that TaskUs negligently hired and supervised agents who had access to sensitive customer data. The court allowed plaintiffs' negligent supervision claim to proceed against the customer support services subcontractor. *See id.* at 909.

As in *Baton*, Plaintiffs' allegations that Movate failed to implement adequate security systems, training, oversight, and protocols to protect personal information, and otherwise subjected Plaintiffs' and Class Members' Private Information to unreasonable risk of exfiltration suffice to establish a breach of the standard of care. This Court reached a similar conclusion in *In re Bank of America,* when it likewise refused to dismiss plaintiffs' negligent supervision claims that implicated a subcontractor's access to plaintiffs' sensitive personal data. 674 F. Supp. 3d at 926.

Defendant argues that Plaintiffs must show that Movate knew or should have known that the hiring and retention of its employee Raymond Cruz created a risk of a cybersecurity breach, but that is not the standard. Negligent supervision is not an intentional tort; rather, it is analyzed like all other negligence claims. *See Prime Rate Premium Fin. Corp. v. Larson,* 226 F. Supp. 3d 858, 870 (E.D. Mich. 2016) ("Negligent supervision, like all negligence claims, requires proof of a duty, breach, causation, and damages."); *Ehrens v. Lutheran Church-Mo. Synod*, 269 F. Supp. 2d 328, 334 (S.D.N.Y. 2003) (same). Here, Plaintiffs allege that Defendant knew that its failure to protect Plaintiffs' Private Information would lead to harm.

Finally, Defendant's contention that Plaintiffs failed to allege the elements of proximate causation and damages is wrong. Plaintiffs allege proximate causation tied to a litany of Plaintiffs' and Class Members' cognizable damages suffered as a direct

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

result of Movate's breach of its duties owed to Plaintiffs. *See, e.g.,* MC ¶¶ 193 (alleging failure to require multi-factor authentication); 197 (alleging failure to implement least-privileges access); 208 (alleging failure to rotate credentials); 793– 95 (alleging causation and damages); 916 (alleging foreseeability); 32, 882, 884, 913 (alleging failure to adequately train and supervise); 923–24 (alleging that, as a direct result of Movate's breach of duties, Plaintiffs and Class Members suffered one or more of fourteen specified categories of harms, along with generalized damages to be proven at trial) Plaintiffs repeat and incorporate their arguments in response to Movate's negligence challenges to the extent they are invoked as to the negligent hiring and supervision claim.

### F.    Unjust Enrichment

Unjust enrichment is recognized as an independent cause of action under the laws of California, Massachusetts, New York, and Michigan. With respect to California, Defendant's reliance on *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003) is misplaced because it predates the California Supreme Court's subsequent clarification that unjust enrichment is a valid, standalone claim. *See Hartford Cas. Ins. Co. v. J.R. Mktg. LLC,* 61 Cal. 4th 988, 993 (2015); *see also Lebrun v. CBS Television Studios, Inc.*, 68 Cal. App. 5th 199, 210 (2021) (recognizing that unjust enrichment as a validly pleaded cause of action). In *Cherkin v. PowerSchool Holdings, Inc.,* Judge Donato allowed unjust enrichment to proceed against arguments that it is not an independent cause of action because,

> [f]ollowing a decision by the Supreme Court of California 'allowing an independent claim for unjust enrichment to proceed in an insurance dispute,' the Ninth Circuit, in unpublished decisions, has twice recognized such standalone claims may be viable under California law.

2025 WL 844378 (N.D. Cal. Mar. 17, 2025), at *7 (citing *Bruton v. Gerber Prods. Co.*, 703 Fed. App. 468, 470 (9th Cir. 2017) (unpublished) and *Chong v. Nestle Water N.A., Inc.*, 2021 WL 4938128, at *1 (9th Cir. 2021) (unpublished)); *see also In re*

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

*Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1298 (S.D. Cal. 2020) ("The California Supreme Court has clarified California law and allowed independent claims for unjust enrichment to proceed.") As Defendant recognizes and concedes, Massachusetts, New York, and Michigan also all recognize unjust enrichment as an independent cause of action. Mot. at 23 & n.9 (citing Massachusetts and New York cases analyzing standalone unjust enrichment claims and stating that Michigan recognizes unjust enrichment as an independent cause of action).

Procedurally, Plaintiffs allege that they have no adequate remedy at law and that forcing an election of remedies at the initial pleadings stage is premature. MC ¶¶ 844-847; *see also, Haas v. Travelex Ins. Servs, Inc.*, 555 F. Supp. 3d 970, 980 (C.D. Cal. 2021) ("Indeed, [t]his Court is aware of no basis in California or federal law for prohibiting the plaintiff [ ] from pursuing [her] equitable claims in the alternative to legal remedies at the pleadings stage"). Substantively, Plaintiffs allege that they conferred monetary and non-monetary benefits on Movate that would be inequitable for it to retain. MC ¶¶ 829–31, 835 (alleging that Movate received a sum of money from Plaintiffs who utilized its services and provided their PII data). Plaintiffs' unjust enrichment claim requires only that a defendant received a benefit and unjustly retained it at the plaintiff's expense; direct privity in conferring said benefit is not required. Mot. at 24 (acknowledging that privity is not required); *see also Rejoice! Coffee Co. LLC v. Hartford Fin. Servs. Group,* 2021 WL 5879118, at *11 (N.D. Cal. Dec. 9, 2021) ("[I]t is not essential that money be paid directly to the recipient by the party seeking restitution."). Moreover, where, as here, plaintiffs allege that they paid money for services that included data management and security, courts routinely recognize that the failure to secure data can give rise to an unjust enrichment. *See, e.g., Ambry Genetics*, 567 F. Supp. 3d at*; In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at * 29 (N.D. Cal. May 27, 2016) (finding under New York law that non-privity relationship was not too attenuated where health premium payments were

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

aggregated by different employers, who then paid defendants, and who were aware of plaintiffs' existence).

Alternatively, Plaintiffs allege that the res (the subject matter) for the unjust enrichment claim is Plaintiffs' Private Information itself. MC ¶ 835 (alleging Plaintiffs' and Class Members' Private Information has monetary value); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) (acknowledging that where the provider derives economic benefit from use of the PII, the res for unjust enrichment can be the PII itself). Here, Movate derived economic benefit by marketing itself as a technology support service provider "certified as compliant under ISO 27001:2013 frameworks" and, thus, capable of safely engaging with Plaintiffs' and Class Members' Private Information. MC ¶¶ 118. Plaintiffs allege that Movate received benefits—including monetary payments and possession of Plaintiffs' Private Information—and then unjustly retained those benefits by failing to adequately safeguard Plaintiffs' Private Information. Therefore, the unjust enrichment claim is plausible, properly pled, and should not be dismissed.

## G.   Declaratory Judgment Can be a Cause of Action

Defendant's contention that declaratory judgment cannot be a cause of action is incorrect. The Declaratory Judgment Act allows for declaratory relief as a standalone remedy, not merely an equitable one. Under 28 U.S.C. § 2201(a), U.S. courts can declare the rights and legal relations of any party seeking such a declaration, regardless of whether additional relief is pursued. Though not the case here, even where a declaratory relief claim might be redundant if another adequate remedy is available, the presence of another adequate remedy does not bar a declaratory judgment that is otherwise suitable. *Reyes v. Nationstar Mortg. LLC*, 2015 WL 4554377, at *7 (N.D. Cal. July 28, 2015). Under Rule 57, "the existence of another adequate remedy ***does not preclude*** a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57 (emphasis added); *see also Peralta v. Certified Emp. Screening, Inc.*, 2025 WL 1723142, at *9 (C.D. Cal. May 7, 2025) (rejecting

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS

defendant's argument that injunctive relief and declaratory relief are not standalone claims and declining to dismiss those claims on that basis at motion to dismiss stage)

Additionally, dismissal is not warranted where Plaintiffs' declaratory relief seeks to account for forward-looking harm, even while pressing for damages for past wrongdoing. Here, Plaintiffs and Class Members still face substantial risk of harm due to Movate's current and continued failure to properly train employees and utilize reasonable measures to provide adequate data security. ¶¶ 879–80, 882, 884, 886; *see also Baton,* 740 F. Supp. 3d at 913 ("Plaintiffs' allegations of continuing inadequate security measures are sufficient to maintain their claim for declaratory relief."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1139 (N.D. Cal. 2018) (distinguishing contract claim for past damages and declaratory relief claim for forward-looking conduct); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1222–23 (N.D. Cal. 2014) (declaratory relief appropriate to address current and future controversy regarding "existing security measures"). Unlike *In re Google Assistant Privacy Litigation*, 546 F. Supp. 3d 945, 975–76 (N.D. Cal. 2021), which Movate relies on, Plaintiffs here seek not only a declaration of rights under the identified common laws and statutes but also prospective injunctive relief to remedy ongoing inadequate data security. *See* ¶¶ 877, 886–88, 890–99. Plaintiffs' claims "thus request[s] precisely the type of relief that the Declaratory Judgment Act is supposed to provide: a declaration that will prevent future harm from ongoing and future violations before the harm occurs." *In re Adobe Sys.,* 66 F. Supp. 3d at 1222. Accordingly, Plaintiffs' declaratory cause of action is necessary to address Movate's current and future employee oversight and data security practices and should not be dismissed.

## V.   CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss or grant leave to amend.

Dated: October 31, 2025

Respectfully submitted,

/s/ James J. Pizzirusso

James J. Pizzirusso, D.C. State Bar No. 477604*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200

*Co-Lead Counsel for Individual Action Plaintiffs (Track One)*

/s/ Carol C. Villegas

Carol C. Villegas, N.Y. State Bar No. 4154324*
cvillegas@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700

*Co-Lead Counsel for Teachers Unions Plaintiffs (Track One)*

/s/ David S. Casey, Jr.

David S. Casey, Jr., Cal. State Bar No. 60768
dcasey@cglaw.com
**CASEY GERRY FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811

*Co-Lead Counsel for Class Action Plaintiffs (Track One)*

PLAINTIFFS' OPPOSITION TO DEFENDANT
MOVATE, INC.'S MOTION TO DISMISS