Anne Johnson Palmer
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

Christopher M. Young
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com

Monica Mleczko
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 235-0337
monica.mleczko@ropesgray.com

*Attorneys for Defendants PowerSchool
Holdings, Inc., PowerSchool Group, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br><br>This Document Relates To:<br>All Track One Actions | Case No. 25-MD-03149 (BEN) (MSB)<br><br>**REPLY MEMORANDUM IN SUPPORT OF POWERSCHOOL'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS' CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A<br>Date: TBD<br>Time: TBD<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................2

I.  PLAINTIFFS CANNOT OVERCOME *KISIL*, WHICH CONFIRMS THAT THE NO-INJURY PLAINTIFFS LACK STANDING........................................................................................2

    A.  The Opposition Cannot Manufacture an Injury-in-Fact for the No-Injury Plaintiffs ...........................................5

        1.  Allegations of Misuse Do Not Confer Standing When the Information Is Not of the Type That Could Enable Fraud ..................................................5

        2.  The Non-Sensitive Information That the No-Injury Plaintiffs Allege Was Compromised Creates No Imminent Risk of Harm ........................................7

        3.  No-Injury Plaintiffs' Assertions of Future Harm Are Defective, So They Cannot Plead Standing Based on Derivative Harms ...........................................9

        4.  The No-Injury Plaintiffs Fail to Allege Standing on the Basis of Lost Data Value or Privacy .........................9

    B.  The No-Injury Plaintiffs Also Do Not Satisfy Article III's Traceability Requirement...........................................11

    C.  The "Other" Plaintiffs Lack Article III Standing ....................12

    D.  Plaintiff PTU's Own Cited Authority Confirms It Has Neither Associational Nor Organizational Standing ...............14

II.  THE OPPOSITION FAILS TO SAVE THE NEGLIGENCE CLAIM ...........................................................................................15

III.  THE SOURCES OF LAW PLAINTIFFS OFFER CANNOT SUPPORT THEIR NEGLIGENCE PER SE CLAIM .......................20

-i-

IV.    THE OPPOSITION MISSTATES THE RELEVANT STANDARD FOR THE NEGLIGENT TRAINING & SUPERVISION CLAIM ....................................................21

V.    THE INVASION OF PRIVACY CLAIM REMAINS DEFICIENT ....................................................................22

VI.    THE OPPOSITION FAILS TO SUPPORT PLAINTIFFS' FIDUCIARY DUTY THEORY .........................................23

VII.    THE UNJUST ENRICHMENT CLAIM FAILS AS PLAINTIFFS DO NOT IDENTIFY ANY BENEFIT PROVIDED TO POWERSCHOOL ....................................24

VIII.    PLAINTIFFS HAVE ABANDONED ALL OF THEIR STATUTORY CONSUMER PROTECTION CLAIMS, EXCEPT UNDER CALIFORNIA'S UCL, WHICH REMAINS DEFECTIVE ................................................................25

IX.    THE OPPOSITION DOES NOT SALVAGE THE DATA BREACH NOTIFICATION CLAIMS ..............................26

X.    PLAINTIFFS' RELIANCE ON NON-DATA-BREACH CASES FAILS TO SAVE THEIR CDAFA CLAIM ........................27

XI.    PLAINTIFFS' CMIA CLAIM MUST BE DISMISSED BECAUSE POWERSCHOOL IS NOT A "CONTRACTOR" ..........28

XII.    THE OPPOSITION FAILS TO SHOW THAT POWERSCHOOL IS SUBJECT TO THE CCPA .............................28

XIII.    PLAINTIFFS DO NOT OVERCOME THE GROUNDS FOR DISMISSAL OF THEIR OTHER CLAIMS .....................................29

XIV.    ANY AMENDMENT WOULD BE FUTILE, SO DISMISSAL SHOULD BE GRANTED WITH PREJUDICE................................30

-ii-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdulaziz v. Twitter, Inc.*,
   2021 WL 633812 (N.D. Cal. Feb. 18, 2021) ...................................................21

*In re Accellion, Inc. Data Breach Litig.*,
   713 F. Supp. 3d 623 (N.D. Cal. 2024) ...........................................................22

*Adkins v. Facebook, Inc.*,
   424 F. Supp. 3d 686 (N.D. Cal. 2019) ...........................................................15

*In re Ambry Genetics Data Breach Litig.*,
   567 F. Supp. 3d 1130 (C.D. Cal. 2021) .....................................................24, 25

*Andrews v. Cal. Pizza Kitchen*,
   2022 Cal. Super. LEXIS 54707 (Super. Ct. Sep. 9, 2022) ...............................17

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
   674 F. Supp. 3d 884 (S.D. Cal. 2023) .......................................................21, 22

*Barker v. Insight Glob., LLC*,
   2018 WL 3548911 (N.D. Cal. July 24, 2018) .................................................26

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ....................................................12, 16

*Baton v. Ledger SAS*,
   740 F. Supp. 3d 847 (N.D. Cal. 2024) ...........................................................11

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
   2021 WL 3568394 (D.S.C. Aug. 12, 2021) .................................................26, 29

*Brown v. Wells Fargo Bank, N.A.*,
   168 Cal. App. 4th 938 (2008) ........................................................................23

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ..............................................................................9, 11, 13

-iii-

*Claridge v. RockYou, Inc.*,
  785 F. Supp. 2d 855 (N.D. Cal. 2011).........................................................27, 28

*Cohen v. Ne. Radiology, P.C.*,
  2021 WL 293123 (S.D.N.Y. Jan. 28, 2021) .......................................................20

*Corona v. Sony Pictures Ent., Inc.*,
  2015 WL 3916744 (C.D. Cal. June 15, 2015).................................................15, 17

*CTI III, LLC v. Devine*,
  2022 WL 1693508 (E.D. Cal. May 26, 2022) .................................................27, 28

*Ctr. for Food Safety v. Perdue*,
  517 F. Supp. 3d 1034 (N.D. Cal. 2021)................................................................14

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. 2023)................................................................20

*Dougherty v. Bojangles' Rests., Inc.*,
  2025 WL 2810673 (W.D.N.C. Sep. 30, 2025) ................................................8, 13

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
  362 F. Supp. 3d 1295 (N.D. Ga. 2019)..................................................................9

*In re Flagstar Dec. 2021 Data Sec. Incident Litig.*,
  2024 WL 5659583 (E.D. Mich. Sep. 30, 2024).....................................................19

*Harvey v. Nat'l Amusements, Inc.*,
  2025 WL 928776 (D. Mass. Mar. 27, 2025) .....................................................6, 7

*Huynh v. Quora, Inc.*,
  2019 WL 11502875 (N.D. Cal. Dec. 19, 2019)....................................................17

*I.C. v. Zynga, Inc.*,
  600 F. Supp. 3d 1034 (N.D. Cal. 2022).........................................................*passim*

*In re Illuminate Educ. Data Sec. Incident Litig.*,
  2023 WL 8888839 (C.D. Cal. Nov. 6, 2023) .................................................*passim*

*In re Illuminate Educ. Data Sec. Incident Litig.*,
  2023 WL 3158954 (C.D. Cal. Apr. 19, 2023)................................................*passim*

-iv-

*Int'l Longshore & Warehouse Union v. Nelson*,
    599 F. App'x 701 (9th Cir. 2015) ........................................................................... 14

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................. 10

*Jenkins v. Associated Wholesale Grocers, Inc.*,
    2025 WL 708574 (Mar. 5, 2025) ............................................................................ 13

*Khamooshi v. Politico LLC*,
    786 F. Supp. 3d 1174 (N.D. Cal. 2025) ........................................................... 6, 7, 11

*Kisil v. Illuminate Educ., Inc.*,
    2025 WL 2589000 (9th Cir. Sep. 8, 2025) ........................................................ *passim*

*Krottner v. Starbucks Corp.*,
    406 Fed. App'x 129 (9th Cir. 2010) ....................................................................... 15

*Krottner v. Starbucks Corp.*,
    628 F. Supp. 3d 1139 (9th Cir. 2010) ...................................................................... 8

*Landon v. TSC Acquisition Corp.*,
    2024 WL 5317240 (C.D. Cal. Nov. 1, 2024) ..................................................... 18, 19

*London v. New Albertson's, Inc.*,
    2008 WL 4492642 (S.D. Cal. Sep. 30, 2008) ......................................................... 29

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................. 22

*Mahonak v. Rubio*,
    2025 WL 449044 (C.D. Cal. Feb. 10, 2025) ........................................................... 22

*Margolis v. Apple Inc.*,
    743 F. Supp. 3d 1124 (N.D. Cal. 2024) ................................................................. 27

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    440 F. Supp. 3d 447 (D. Md. 2020) ........................................................................ 19

*In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*,
    603 F. Supp. 3d 1183 (S.D. Fla. 2022) ................................................................... 11

REPLY MEMO ISO POWERSCHOOL'S MOTION TO DISMISS          CASE NO. 3:25-MD-03149 (BEN) (MSB)

*Medoff v. Minka Lighting, LLC*,
    2023 WL 4291973 (C.D. Cal. May 8, 2023)..................................................9, 15

*Mikulsky v. Noom, Inc.*,
    682 F. Supp. 3d 855 (S.D. Cal. 2023)..........................................................3, 4

*Moore v. Apple, Inc.*,
    73 F. Supp. 3d 1191 (N.D. Cal. 2014)..........................................................25

*Powell Co. v. McGarey Grp., LLC*,
    508 F. Supp. 2d 1202 (N.D. Ga. 2007)..........................................................30

*Pruchnicki v. Envision Healthcare Corp.*,
    439 F. Supp. 3d 1226 (D. Nev. 2020),
    *aff'd*, 845 F. App'x 613 (9th Cir. 2021) ......................................................18

*Pruchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir. 2021) ..................................................................18

*Quiroz v. Seventh Ave. Ctr.*,
    140 Cal. App. 4th 1256 (2006) ......................................................................21

*Razuki v. Caliber Home Loans, Inc.*,
    2018 WL 2761818 (S.D. Cal. June 8, 2018) ..................................................22

*Rejoice! Coffee Co.v. Hartford Fin. Servs. Grp.*,
    2021 WL 5879118 (N.D. Cal. Dec. 9, 2021)..................................................24

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ........................................................................30

*In re Sequoia Benefits & Ins. Data Breach Litig.*,
    2024 WL 1091195 (N.D. Cal. Feb. 22, 2024)................................................12

*Shea v. Am. Int'l Coll.*,
    2025 WL 2577196 (D. Mass. Sep. 5, 2025)...................................................19

*Simon v. E. Ky. Welfare Rts. Org.*,
    426 U.S. 26 (1976)............................................................................................3

*Smith v. Sabre Corp.*,
    2017 WL 11678765, at *4 (C.D. Cal. Oct. 23, 2017) ....................................25

-vi-

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .........................................................................25

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012).......................................................15, 19

*St. Aubin v. Carbon Health Techs., Inc.*,
    2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ...................................................23

*Stach v. Amazon Servs. LLC*,
    2015 WL 13283841 (C.D. Cal. Sep. 8, 2015) .................................................23

*Stasi v. Inmediata Health Grp. Corp.*,
    501 F. Supp. 3d 898 (S.D. Cal. 2020)..............................................................23

*Stuart v. Kyocera AVX Components Corp.*,
    769 F. Supp. 3d 476 (D.S.C. 2025) ..................................................................13

*Terpin v. AT&T Mobility, LLC*,
    399 F. Supp. 3d 1035 (C.D. Cal. 2019).......................................................27, 28

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)...........................................................................1, 3, 7, 8

*In re USAA Data Sec. Litig.*,
    621 F. Supp. 3d 454 (S.D.N.Y. 2022) ..............................................................16

*Williams v. Singing River Health Sys.*,
    2025 WL 2487792 (S.D. Miss. Aug. 28, 2025)............................................11, 12

*World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*,
    66 F. Supp. 3d 1233 (N.D. Cal. 2014)..............................................................23

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ...................................................9

*In re Zappos.com, Inc.*,
    888 F. Supp. 3d 1020 (9th Cir. 2018)................................................................8

**Statutes**

Cal. Bus. & Prof. Code § 17204 ............................................................................25

-vii-

Cal. Civ. Code §§ 56.05(d), 56.10(a)..................................................................28

Cal. Civ. Code § 1709.....................................................................................29

Cal. Civ. Code §§ 1798.100, *et seq.*........................................................28, 29

Cal. Evid. Code § 669....................................................................................21

**Other Authorities**

RESTATEMENT (SECOND) OF TORTS § 652B .........................................................10

Fed. R. Civ. P. 9(b) .......................................................................................29

-viii-

# <u>INTRODUCTION</u>[1]

The Opposition fails to respond to the Ninth Circuit's recent decision in *Kisil*, which confirms that the Court should dismiss the 121 No-Injury Plaintiffs for lack of Article III standing. Those Plaintiffs fail to allege that the Cybersecurity Incident involved *any* information that courts recognize as potentially giving rise to standing and therefore cannot allege an injury-in-fact. *See Kisil v. Illuminate Educ., Inc.*, 2025 WL 2589000 (9th Cir. Sep. 8, 2025). *Kisil* involved a cyberattack on another education software provider that allegedly resulted in the compromise of academic, demographic, and contact information. The types of information that the No-Injury Plaintiffs claim was involved in the Incident mirror what was at issue in *Kisil* and are not data that courts recognize as presenting any actual harm or imminent risk—even where there are allegations of misuse—because the information does not enable fraudulent activity or identity theft. The Opposition is unable to distinguish *Kisil* and instead focuses on the few "Other Plaintiffs" who do allege that PowerSchool's Incident involved their Social Security numbers or medical information. PowerSchool does not concede that the "Other" Plaintiffs have standing, particularly because there is a growing body of law applying the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) to reject similar claims. But there is a clear group of No-Injury Plaintiffs who are not properly before this Court and whose claims must be dismissed. Such a ruling would greatly streamline this case—reducing the number of claims, including by eliminating 18 of the 40 states at issue—

---

[1] Capitalized terms not defined below shall have the meaning assigned to them in PowerSchool's Motion to Dismiss the Consolidated Individual Users' Class Action Complaint (the "Motion" or "Mot."), Dkt. 285. And unless otherwise noted, all emphasis herein has been added, and all subsequent history, internal citations, and internal quotation marks have been omitted.

-1-

allowing the parties to better identify which Plaintiffs (if any) survive, and to tailor any discovery accordingly.

Beyond the dispositive, threshold issue of Article III standing, Plaintiffs have failed to state a claim. Plaintiffs' tort claims require more than Article III standing to allege damages. Of the 49 Plaintiffs who allege they provided PowerSchool with more "sensitive" information, 40 fail to allege any misuse and instead rest on supposed harms that courts have consistently held are not cognizable damages for negligence and breach of fiduciary duty (or for standing under California's UCL). Further, the Opposition does not address many of PowerSchool's arguments—most notably, Plaintiffs do not respond with respect to 38 of the consumer protection claims, thereby waiving their opposition. And when they do engage with PowerSchool's Motion, Plaintiffs offer inapposite cases outside of the data breach context or fail to meaningfully address PowerSchool's arguments, including that the litany of statutes Plaintiffs invoke have no application here or their claims fail on threshold grounds (for example with the UCL, due to the existence of an adequate remedy at law). Plaintiffs' decision to not address PowerSchool's arguments head-on and to instead manufacture artificially lowered pleading standards gives away the game: Plaintiffs fail to adequately plead their claims, and the Master Complaint should be dismissed.

## ARGUMENT[2]

### I. PLAINTIFFS CANNOT OVERCOME *KISIL*, WHICH CONFIRMS THAT THE NO-INJURY PLAINTIFFS LACK STANDING

Plaintiffs cannot satisfy the requirement that they possess Article III standing.

---

[2] Pursuant to Case Management Order No. 6 (Dkt. 289), the parties met and conferred via videoconference for about 40 minutes on November 5, 2025 (the third

Article III standing is a threshold issue of law that determines whether this court has subject-matter jurisdiction and therefore cannot be decided by a claims administrator. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37–39 (1976). It is determined on an individual basis and "is not dispensed in gross." *TransUnion*, 594 U.S. at 431. In a class action, each named plaintiff must have standing to proceed with their claims. *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 863 (S.D. Cal. 2023).

The Ninth Circuit recently decided *Kisil*.[3] The decision is part of a consistent and clear trend of rulings applying *TransUnion* to dismiss claims for lack of standing where plaintiffs have not alleged that their information has been used to perpetrate identity theft, or that their information is sufficiently sensitive to raise an imminent or substantial risk of future theft. *Kisil* underscores that allegations of unauthorized activity must be scrutinized closely—in particular, that there is "no actual identity theft" where a plaintiff alleges only the compromise of non-sensitive information and thus fails to "explain how any information that was leaked could be linked" to alleged instances of fraudulent activity. *Kisil*, 2025 WL 2589000, at *2; *Illuminate 2*, 2023 WL 8888839, at *2.

Plaintiffs largely ignore *Kisil*'s obvious application to this case. Remarkably, the Opposition suggests that "***all***" Plaintiffs have alleged that they provided

---

such conference to date). Plaintiffs' counsel remained unwilling, at that time, to stipulate to dismissal of any additional Plaintiffs or claims, notwithstanding the parties' discussion with the Court during the October 17, 2025, status conference.

[3] *Kisil v. Illuminate Educ., Inc.*, 2025 WL 2589000 (9th Cir. Sept. 8, 2025) affirmed the dismissal with prejudice of the plaintiffs' claims in *In re Illuminate Educ. Data Sec. Incident Litig.*, 2023 WL 8888839 (C.D. Cal. Nov. 6, 2023) ("*Illuminate 2*"), which followed the district court's earlier ruling in *In re Illuminate Education Data Security Incident Litigation*, 2023 WL 3158954 (C.D. Cal. Apr. 19, 2023) ("*Illuminate 1*"). PowerSchool recently addressed *Kisil* in supplemental briefing ordered by the Court. *See* Dkt. 323.

-3-

"sensitive" information to PowerSchool. Opp. at 7. That argument flies in the face of the Master Complaint, where 121 of the 170 Plaintiffs—the "No-Injury Plaintiffs"[4]—advance allegations that are indistinguishable from those in *Kisil*. To be clear, PowerSchool's standing challenge does not center on the "Other" Plaintiffs like Emma Pangracs or Kimberly Greer, who claim their Social Security numbers were involved in the Incident. *See* Opp. at 6-8. Those Plaintiffs' allegations do not confer standing on the dozens of No-Injury Plaintiffs who do not allege that they provided Social Security numbers or other, equivalent information to PowerSchool. Plaintiffs cannot rely on generalized, catch-all allegations that the Incident included "sensitive" information to mask the fact that most Plaintiffs do not allege that the Incident involved any information that would place them at an "imminent and substantial risk of identity theft." *Kisil*, 2025 WL 2589000, at *2. Contrary to what Plaintiffs contend, PowerSchool is not insisting on "hyper-specific allegations" or looking to Plaintiffs to allege information not within their own possession. Plaintiffs simply must identify the type of information that they provided to PowerSchool (and, indeed, many Plaintiffs do in the Master Complaint). Formulaic labels like "PII" or "medical information" do not suffice, because "in data breach cases, courts must examine the nature of the specific information at issue." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022); *see also Mikulsky*, 682 F. Supp. 3d at 864 ("Plaintiff's conclusory allegation that she disclosed 'personal information' does not allow the Court to determine whether Plaintiff has a protectable privacy interest in that information.").

---

[4] As described in PowerSchool's Motion and Appendix A thereto (Dkt. 285, 285-2), the "No-Injury Plaintiffs" are those 121 Plaintiffs who allege that only non-sensitive Data was involved or who fail to describe the Data that they allege was involved. The "Other Plaintiffs" are the remaining 49 Plaintiffs who claim the Incident involved Data that is of the type that could potentially confer standing.

-4-

Below, PowerSchool addresses the Opposition's arguments on injury-in-fact, which track the same four theories of alleged harm that the district court considered and rejected in *Illuminate* and the Ninth Circuit addressed in *Kisil*. The No-Injury Plaintiffs have failed to adequately allege any injury, so their claims should be dismissed on this basis alone. PowerSchool then addresses Plaintiffs' arguments on traceability. Next, PowerSchool explains why the Other Plaintiffs also lack standing. Finally, PowerSchool rebuts Plaintiffs' argument regarding the standing of the one teachers' union Plaintiff.

### A. The Opposition Cannot Manufacture an Injury-in-Fact for the No-Injury Plaintiffs

#### 1. Allegations of Misuse Do Not Confer Standing When the Information Is Not of the Type That Could Enable Fraud

Especially after *Kisil*, the mere compromise of non-sensitive information—names and contact information, and data like "grades, socio-economic disadvantage status, and special education information"—does not constitute an injury-in-fact. 2025 WL 2589000, at *1. The Opposition therefore emphasizes allegations made by certain No-Injury Plaintiffs of actual or attempted misuse of their information. Opp. at 6. Critically, Plaintiffs overlook that even when faced with such allegations, courts **still** conclude plaintiffs lack standing where the information allegedly compromised is not of the type that would enable fraud.

*Kisil* addressed precisely the sort of allegations the No-Injury Plaintiffs offer here. A subset of the *Illuminate* plaintiffs claimed that they had experienced unauthorized debit card charges or hacks of their Amazon and PayPal accounts. *Illuminate 1*, 2023 WL 3158954, at *2. The Ninth Circuit agreed that there was "no actual identity theft," *Kisil*, 2025 WL 2589000, at *2, because those plaintiffs did not allege that the incident compromised the sort of information that would allow an

-5-

unauthorized person to perpetrate such activity. *Id.*; *Illuminate 2*, 2023 WL 8888839, at *2. Even where a plaintiff alleged fraudulent charges had occurred, that allegation was "still insufficient" because the complaint "fail[ed] to explain how any information that was leaked could be linked to the [fraudulent] charge," leaving the court to "speculate . . . whether any actual identity theft occurred based on information leaked in the Data Breach." *Illuminate 2*, 2023 WL 8888839, at *2; *see Illuminate 1*, 2023 WL 3158954, at *2. *Kisil* is dispositive but is far from alone. In *Zynga*, the court dismissed for lack of standing, because the plaintiffs did not "plausibly allege that any of [the] information stolen in the data breach could be used to set up an account with a financial institution." *Zynga*, 600 F. Supp. 3d at 1051; *see also Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1183 (N.D. Cal. 2025) (dismissing for failure to allege "facts indicating that the disclosed information could plausibly be used to commit fraud or otherwise cause harm."); *Harvey v. Nat'l Amusements, Inc.*, 2025 WL 928776, at *3 (D. Mass. Mar. 27, 2025) (dismissing where the breach did not involve "the one piece of information necessary to make unlawful use of a credit card—a credit card number").

The No-Injury Plaintiffs who do claim that their information has been misused lack standing for this same reason. For example, the Opposition points to Amy Hauser, who alleges that "contact and medical information" for herself and her child were compromised in the Incident. Opp. at 9; MC ¶ 506. Ms. Hauser goes on to allege that two credit cards were fraudulently opened in her name. MC ¶ 509. The Master Complaint does not allege how an individual could open a credit card using only contact and medical information (including for Ms. Hauser's minor child). Plaintiffs, again, do not allege any facts indicating the Incident involved financial information. *See* Mot. at 26-27. Nor does the Opposition address this fatal gap. In fact, Plaintiffs acknowledge that "basic identifiers like names, emails, and phone

-6-

numbers . . . 'could not be used to make a credit inquiry, set up a new bank account or access an existing one, apply for a loan, or commit some other fraud.'" Opp. at 10. Another Plaintiff identified in the Opposition, Alysha Noble, lacks standing for the same reason. Ms. Noble alleges that only her "birth date," "phone number," and "address" were compromised in the Incident. MC ¶¶ 469–73. Plaintiffs offer no explanation of how someone could use any of this information to make fraudulent purchases on her AT&T account.[5] These and other No-Injury Plaintiffs offer no link (and none is discernible) between the type of information they allege was compromised in the Incident and the fraud they claim to have experienced. Courts routinely reject such allegations as failing to allege an injury-in-fact. *Kisil*, 2025 WL 2589000, at *2; *Zynga*, 600 F. Supp. 3d at 1050; *Khamooshi*, 786 F. Supp. 3d at 1183; *Harvey*, 2025 WL 928776, at *3.

### 2. The Non-Sensitive Information That the No-Injury Plaintiffs Allege Was Compromised Creates No Imminent Risk of Harm

In *TransUnion*, the Supreme Court clarified that a mere prospect of future harm does not support Article III standing for a damages claim. 594 U.S at 437, 441. Applying *TransUnion*, the *Illuminate* district court reasoned that the plaintiffs did not adequately plead standing because they did not allege how the type of information involved ("academic and behavioral information") put them "at harm or risk, particularly credible and immediate risk of harm." *Illuminate 1*, 2023 WL 3158954, at *3; *see Illuminate 2*, 2023 WL 8888839, at *3-4. The Ninth Circuit "agree[d] with the district court" that "the information at issue does not create an

---

[5] The Plaintiffs listed in rows 12 and 16 of Appendix A to PowerSchool's Motion, Dkt. 285-2 (which the Court raised in the October 17, 2025 status conference) lack standing for the same reason: there is no link between the unspecified "PII" they allege was compromised and the fraudulent activity they claim to have experienced. *Cf. Illuminate 2*, 2023 WL 8888839, at *2.

-7-

imminent and substantial risk of identity theft." *Kisil*, 2025 WL 2589000, at *2. And with respect to injunctive relief, *Kisil* held that the risk of future harm was not "imminent and substantial" because "the kind of information at issue [is not] the kind that this court normally considers sufficient to find a credible threat of identity theft." *Id.* The Opposition's reliance on pre-*TransUnion* case law, *see* Opp. at 10—including *In re Zappos.com, Inc.*, 888 F. Supp. 3d 1020, 1027 (9th Cir. 2018) and *Krottner v. Starbucks Corp.*, 628 F. Supp. 3d 1139, 1142-43 (9th Cir. 2010)—ignores *Kisil*'s recognition that *TransUnion* necessarily changes the analysis.

Faced with this clear authority, Plaintiffs attempt an end-run, asking the Court to find that Plaintiffs face an imminent risk of harm simply based on generalized allegations that their information has appeared on the dark web.[6] But no such rule exists, as demonstrated by numerous cases dismissing claims for lack of standing post-*TransUnion* even where the plaintiffs had alleged that their information has been posted on the dark web. *E.g.*, *Zynga*, 600 F. Supp. 3d at 1039 (dismissing for lack of standing despite allegations that plaintiffs' information had "been sold or otherwise published on the dark web"); *Dougherty v. Bojangles' Rests., Inc.*, 2025 WL 2810673 (W.D.N.C. Sep. 30, 2025) (dark-web allegations, increased spam, and mitigation efforts were insufficient). The Opposition's cases, including *Zappos* and

---

[6] Only four of the 121 No-Injury Plaintiffs allege anything about the dark web, *see* Mot., Appendix A, and their allegations fall short of plausibility. Each of those Plaintiffs alleges only that they received a notification that their "information" was posted on the dark web, with no elaboration about what *kind* of information was posted or *when* that information appeared on the dark web. Because the No-Injury Plaintiffs do not allege that their sensitive information was compromised, the only plausible inference is that the information relating to these Plaintiffs that was posted on the dark web, if anything, was non-sensitive. *See, e.g.*, MC ¶¶ 396-401 (Plaintiff David Sauve alleging that his family's address and phone number were compromised and also claiming that "his PII is available on the dark web").

-8-

*Krottner*, also involve the sort of sensitive information that the No-Injury Plaintiffs do not allege here, such as payment card information or Social Security numbers. *See also In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1310 (N.D. Ga. 2019) (Social Security numbers, driver's licenses, and credit card numbers); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *2 (N.D. Cal. Aug. 30, 2017) ("records involving credit cards, retail accounts, banking, account passwords, IRS documents, and social security numbers from transactions conducted by email").  The No-Injury Plaintiffs, again, do not allege the exposure of any such information.

### 3.    No-Injury Plaintiffs' Assertions of Future Harm Are Defective, So They Cannot Plead Standing Based on Derivative Harms

The No-Injury Plaintiffs cannot plead standing based on derivative harms, such as lost time or emotional distress arising from the Incident, because they do not allege any imminent risk of future harm.  The Supreme Court has made clear that a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).  Applying this principle, *Kisil* recognized that "the harms resulting from the knowledge of a risk of identity theft cannot support standing where the risk is not imminent or substantial."  2025 WL 2589000, at *2.  Plaintiffs make no attempt to distinguish this on-point authority, or any of the decisions applying its rationale to dismiss similar cases, *see, e.g., Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *6 (C.D. Cal. May 8, 2023).

### 4.    The No-Injury Plaintiffs Fail to Allege Standing on the Basis of Lost Data Value or Privacy

Plaintiffs finally turn to intangible harms, namely lost value of their data or a loss of privacy.  To assert standing based on lost value allegations, Plaintiffs must

-9-

allege "both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market." *Zynga*, 600 F. Supp. 3d at 1054. Instead of doing so, Plaintiffs merely parrot case law about the existence of a market, *see* MC ¶¶ 267-71. The *Illuminate* district court rejected similar allegations, where the plaintiffs had asserted in conclusory terms that there was a dark web or "cyber black-market" for their information, and that their information supposedly lost value. *Illuminate 1*, 2023 WL 3158954, at *5; *Illuminate 2*, 2023 WL 8888839, at *5-6. The Ninth Circuit affirmed. *Kisil*, 2025 WL 2589000, at *1.

To assert standing based on an alleged loss of privacy, Plaintiffs must explain how that harm has "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Kisil*, 2025 WL 2589000, at *1 (affirming dismissal of equivalent allegations). As PowerSchool showed, *see* Mot. at 16, 26, invasion of privacy torts require that the violation constitute "an egregious breach of the social norms" and be "highly offensive," *e.g.*, Restatement (Second) of Torts § 652B. The No-Injury Plaintiffs are unable to satisfy this standard. A loss of privacy "arising from the theft of non-sensitive personal information, standing alone" does not support standing. *Illuminate 2*, 2023 WL 8888839, at *6. Courts have repeatedly held that the types of information that the No-Injury Plaintiffs allege are not sufficiently sensitive for the alleged conduct to be "highly offensive." *Zynga*, 600 F. Supp. 3d at 1049; *see also, e.g.*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1050 (N.D. Cal. 2012) (involving addresses, current whereabouts, geographic location, unique identifiers assigned to devices, gender, age, ZIP code, among other application-specific information).

-10-

**B.    The No-Injury Plaintiffs Also Do Not Satisfy Article III's Traceability Requirement**

To have Article III standing, not only must Plaintiffs allege an injury-in-fact, but their claimed harm must be "fairly traceable" to the defendant's conduct. *Clapper*, 568 U.S. at 409.  Plaintiffs cannot depend on an "attenuated chain of inferences necessary to find harm." *Id.* at 410.

Rather than attempt to explain how their allegations meet this standard, the Opposition asks the Court to manufacture various per se rules for traceability, none of which finds support in the law.  Plaintiffs first ask the Court to find traceability simply because they allege receipt of a notification from PowerSchool that their information was involved in the Incident. Opp. at 17-18.  But the receipt of a notice from PowerSchool does not compel the conclusion that a causal link exists between the Incident and any complained-of harm.  As addressed above, in the data breach context, courts must examine whether "the disclosed information could plausibly be used to commit fraud." *Khamooshi*, 786 F. Supp. 3d at 1183.  Again, the sort of information that the No-Injury Plaintiffs allege is at issue is not of the type that would enable the actual misuse that some Plaintiffs allege to have suffered.  *See* Section I.A.1.  Plaintiffs' cases are not to the contrary, as each involved the sort of sensitive information that could plausibly enable the fraud that the plaintiffs had alleged.[7]

Here too, Plaintiffs ask the Court to assume that traceability exists whenever a data breach plaintiff alleges that their information has been posted on the dark web.  Again, the case law does not support Plaintiffs' proffered shortcut.  Indeed, courts

---

[7] *See, e.g., Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 866, 875-76 (N.D. Cal. 2024) ("confidential financial information"); *In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1196 (S.D. Fla. 2022) (Social Security numbers, medical records, patient account numbers, health insurance information, diagnosis, provider names, and dates of service).

-11-

that have recently addressed this question have rejected Plaintiffs' position and have scrutinized the "causal connection between the injury and the conduct complained of." *Williams v. Singing River Health Sys.*, 2025 WL 2487792, at *8–9 (S.D. Miss. Aug. 28, 2025). For instance, in *Williams*, the plaintiff alleged (as certain Plaintiffs do here) that various credit reporting agencies had notified her that her information was available on the dark web. But because the plaintiff had not provided any "information linking the dark web posts with the [defendants'] data breach," the court held that the plaintiff had failed to plausibly allege a "causal connection" that would make any of her harm "fairly traceable" to the defendant's conduct. *Id.*

Finally, despite an abundance of case law holding the opposite, Plaintiffs suggest that they need not plead any logical connection between the type of data compromised and the alleged misuse. Plaintiffs fail to marshal any support for their position. Plaintiffs cite *Bass* but without mentioning that the court actually dismissed the lead plaintiff for lack of standing, on the same grounds that PowerSchool argues, because the harm the plaintiff alleged did "not suffice to connect the dots to the data breach." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036 (N.D. Cal. 2019). Plaintiffs' other cases involve the compromise of sensitive information that could facilitate the alleged fraud and therefore confirm PowerSchool's argument (and highlight that the No-Injury Plaintiffs' allegations miss the mark). *See, e.g.*, *In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *2 (N.D. Cal. Feb. 22, 2024) (involving compromise of Social Security numbers, driver's licenses, and dates of birth).

### C. The "Other" Plaintiffs Lack Article III Standing

Contrary to Plaintiffs' assertion, PowerSchool has not admitted that the Other Plaintiffs have adequately alleged Article III standing. *See* Mot. at 9, n.6 ("To be clear, PowerSchool does not concede that these 49 Plaintiffs [the Other Plaintiffs]

-12-

actually satisfy Article III's requirements."). In fact, PowerSchool's challenge to these Other Plaintiffs is supported by a growing body of cases dismissing on standing grounds even where plaintiffs have alleged the compromise of "sensitive" information, including Social Security numbers. *See Jenkins v. Associated Wholesale Grocers, Inc.*, 2025 WL 708574, at *7 (Mar. 5, 2025) (dismissing for lack of standing even where Social Security Numbers were involved); *Stuart v. Kyocera AVX Components Corp.*, 769 F. Supp. 3d 476, 485-92 (D.S.C. 2025) (same); *Dougherty*, 2025 WL 2810673, at *2-5 (same). These cases confirm that: (1) when the plaintiffs have yet to experience any misuse, they cannot obtain standing based on an ***imminent risk of future harm***; (2) when there is no imminent risk of future harm, plaintiffs cannot manufacture standing on the basis of ***"derivative" harms***; and (3) plaintiffs have no standing to recover for alleged misuse or fraud absent ***a plausible causal connection*** between the Incident and the alleged misuse or fraud. *E.g.*, *Jenkins*, 2025 WL 708574, at *6-11.

The Other Plaintiffs' claims should be dismissed applying these principles. ***First***, only nine of the 49 Other Plaintiffs allege any actual misuse (leaving 40 that do not). Those who do fail to sufficiently allege a causal connection between the Incident and the misuse they suffered because they fail to allege facts indicating why they believe the claimed fraud is attributable to the Incident. Many of these Plaintiffs do not even allege when the purported misuse occurred. *See Smith v. Sabre Corp.*, 2017 WL 11678765, at *4 (C.D. Cal. Oct. 23, 2017) (no traceability where plaintiff failed to allege when the fraud occurred). These Plaintiffs' allegations are especially deficient when coupled with the Master Complaint's assertions that data breaches have become increasingly common, including in the educational sector. *See* MC ¶¶ 163-67; *Smith*, 2017 WL 11678765, at *4 (noting the "frequency of data breaches and credit card fraud" while scrutinizing the lack of temporal allegations).

-13-

**Second**, none of these Other Plaintiffs can obtain standing on the basis of an imminent risk of future harm, as any claim that future harm is "imminent" is "significantly undercut[]" by the fact that they do not plausibly allege that they experienced any fraud or misuse that is traceable to the Incident. *Jenkins*, 2025 WL 708574, at *10. **Third**, without a risk of imminent future harm, these Other Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416.

At a minimum, the No-Injury Plaintiffs must be dismissed under *Kisil*. But the Other Plaintiffs also cannot withstand the individual scrutiny required by Article III and should be dismissed for lack of standing as well.

**D.** **Plaintiff PTU's Own Cited Authority Confirms It Has Neither Associational Nor Organizational Standing**

Because Plaintiff PTU has neither associational nor organizational standing to sue on behalf of its members, its claims should be dismissed. With respect to associational standing, Plaintiffs do not refute PowerSchool's argument that the only Plaintiff who is a conceivable member of the PTU is a No-Injury Plaintiff (Denise Champney). The PTU cannot sue on behalf of its members when they themselves lack standing to sue. *See Int'l Longshore & Warehouse Union v. Nelson*, 599 F. App'x 701, 702 (9th Cir. 2015). Further, neither the Master Complaint nor the Opposition provides any factual allegations about any "frustration of [the PTU's] organizational mission," *Ctr. for Food Safety v. Perdue*, 517 F. Supp. 3d 1034, 1041 (N.D. Cal. 2021), so the PTU has failed to establish organizational standing as well.

-14-

## II.   <u>THE OPPOSITION FAILS TO SAVE THE NEGLIGENCE CLAIM</u>[8]

Plaintiffs do not contest that if they fail to plead Article III standing, they also fail to plead actual damages, a required element for negligence.  Opp. at 24-36; Mot. at 19.  The Court need go no further to dismiss the 121 No-Injury Plaintiffs' negligence claim.  But it is not true—as Plaintiffs presume, relying on Article III standing cases—that pleading standing alleges cognizable damages for purposes of negligence.  The bar for pleading actual damages is *higher* than for pleading an injury-in-fact for purposes of Article III.  That is why courts routinely dismiss negligence claims in data breach cases even where the court has determined that the plaintiffs had Article III standing.  *See, e.g.*, *Krottner v. Starbucks Corp.*, 406 Fed. App'x 129, 131 (9th Cir. 2010) ("As an initial matter, our holding that Plaintiffs-Appellants pled an injury-in-fact for purposes of Article III standing does not establish that they adequately pled damages for purposes of their state-law claims. . . . Plaintiffs-Appellants have not established a cognizable injury for purposes of their negligence claim."); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. 2012) ("*Sony II*") (similarly distinguishing between Article III standing and damages for negligence).  Plaintiffs' arguments as to why the No-Injury Plaintiffs plead cognizable damages therefore miss the mark: they simply argue they meet the lower bar for Article III standing.  That is plainly not enough to sustain their negligence claim.  *See Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 695 (N.D. Cal. 2019) (risk of future identity theft "alone does not rise to the level of appreciable harm to assert a negligence

---

[8] Plaintiffs argue here and elsewhere in the Opposition that not briefing every element of Plaintiffs' claims constitutes a concession on PowerSchool's part that those elements are satisfied.  *See, e.g.*, Opp. at 24.  For purposes of this Motion, PowerSchool focused on the damages element; PowerSchool does not concede any others, and reserves all rights.

claim"); *Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015) (finding "general allegations of lost time are too speculative to constitute cognizable injury"); *Medoff*, 2023 WL 4291973, at *9 (describing "emotional distress" allegation as "insufficient to sustain a negligence claim at the motion to dismiss stage").

Turning to the 40 Other Plaintiffs, the Opposition fails to counter PowerSchool's argument that these Plaintiffs do not allege actual damages either. These Other Plaintiffs claim exposure of their (or their children's) Social Security number or medical information, *see* Mot., App'x A at 123, 126, 128-29, 131-32, 134-37, 139, 141, and 143-70, but do not allege any misuse and only offer allegations that they face a future risk of harm or have incurred lost time and have experienced emotional distress.  As addressed below, these 40 Other Plaintiffs' negligence claims must be dismissed because their alleged injuries do not constitute actual damages.[9]

***Risk of Future Harm.***  The Opposition fails to distinguish any of the cases holding that pleading a risk of future harm does not, on its own, establish cognizable damages in negligence.  *See* Mot. at 20 (collecting cases).  Instead, Plaintiffs argue that the mere future risk of harm can suffice if they allege "an expense is reasonably certain to be incurred" due to that risk.  Opp. at 26 (quoting *In re USAA Data Sec.*

---

[9] Nine Other Plaintiffs claim actual misuse of their data but fail to do so with plausible factual allegations. *See* Appendix A (yellow-highlighted Plaintiffs).  These nine Plaintiffs do not allege how the purported misuse resulted from the data involved in the Incident.  For example, Plaintiff Eleanor Tillman alleges that she and her minor child input "birth certificates and Social Security numbers" into the SIS and she "experienced unauthorized charges for fraudulent purchases on her account." MC ¶ 653.  The Master Complaint does not allege any facts indicating that the Incident involved any financial information, nor does it (or the Opposition) explain how fraudulent charges resulted from the Incident (or even when they occurred).

-16-

*Litig.*, 621 F. Supp. 3d 454, 469 (S.D.N.Y. 2022)). But the 40 Other Plaintiffs—who do not allege any theft or fraud involving their information—fail to identify any "expense" they stand to reasonably incur. *See* Opp. at 28-29. To the extent Plaintiffs invoke "mere time and effort" in responding to the Incident, that argument fails for the reasons addressed below. *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d at 470 (time and effort alone are insufficient). Plaintiffs' reliance on *Bass* is unavailing. There the court found future risk of harm sufficient to satisfy *standing* for injunctive relief. *See Bass*, 394 F. Supp. 3d at 1035.

**Lost Time.** Plaintiffs sidestep PowerSchool's argument that their lost time allegations are too conclusory, Mot. at 20-21, and again misdirect the Court to the injury-in-fact requirement under Article III. Opp. at 29. Plaintiffs point to the nature of the information they provided (e.g., SSNs) to PowerSchool, ignoring PowerSchool's cases, which *do* analyze lost time in the context of negligence damages. Opp. at 29-30; Mot. at 20-21. At most, Plaintiffs suggest they *could* allege lost time due to the risk of future harm given the sensitive nature of the information alleged. Opp. at 29-30. Plaintiffs fail to identify any non-conclusory facts they have pled of any lost time, relying solely on vague allegations like "significant time" that other courts have rejected. MC ¶ 683; *see, e.g.*, *Corona*, 2015 WL 3916744, at *4.

**Lost Benefit of the Bargain.** Plaintiffs next argue that they would not have signed up for PowerSchool's "services . . . absent [its] assurances," and so they suffered cognizable damages by supposedly losing their benefit of the bargain. *See* Opp. at 30. But Plaintiffs fail to allege any "bargain"—they do not (and cannot) allege that they provided their schools or PowerSchool with any payment in exchange for using the SIS, much less in exchange for any security protections. *See Huynh v. Quora, Inc.*, 2019 WL 11502875, at *10 (N.D. Cal. Dec. 19, 2019) (holding "the lost benefit of the bargain is not sufficient to allege damages because Plaintiffs

-17-

have not shown that they paid anything for the asserted privacy protections"); *Andrews v. Cal. Pizza Kitchen*, 2022 Cal. Super. LEXIS 54707, at *15 (Super. Ct. Sep. 9, 2022) (noting that the benefit-of-the-bargain theory "has been rejected where the plaintiff paid nothing for the service or good or where the causal connection between the wrongful conduct and injury is not apparent or alleged with any specificity").[10]

***Diminished Value of Their Information.*** PowerSchool argued that the 40 Other Plaintiffs do not allege lost-value damages because they do not claim any prior economic interest in their (or their children's) information, nor do they allege actual loss in the value of it. *See* Mot. at 21. The Opposition responds that these Plaintiffs need to allege only that there is a market for their information *or* that their ability to participate in that market has been somehow impaired. Opp. at 31-33. Plaintiffs confuse the standard and their allegations remain insufficient.

Plaintiffs fixate on whether they are required to plead either the existence of a market or the impairment of their data's value. Ninth Circuit case law favors both. *See Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1234 (D. Nev. 2020) (holding that a plaintiff "must establish both the existence of a market for her personal information and an impairment of her ability to participate in that market"), *aff'd*, 845 F. App'x 613 (9th Cir. 2021). The "mere misappropriation of personal information" alone does not constitute cognizable damages. *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021); *see also Landon v. TSC*

---

[10] Further, Plaintiffs do not allege that *they* saw any of PowerSchool's purported misrepresentations or, if so, when relative to the Incident. Plaintiffs also repeatedly assert that they were required to provide information to their schools to enter into PowerSchool's SIS. *See, e.g.*, MC ¶ 5. This squarely contradicts the Opposition's arguments that Plaintiffs somehow *chose* to supply their information based on PowerSchool's alleged representations.

-18-

*Acquisition Corp.*, 2024 WL 5317240, at *6 (C.D. Cal. Nov. 1, 2024) (cited in Opp. at 19, 20, 34) (requiring both market and impairment allegations and rejecting "conclusory allegation that their PII 'has been damaged and diminished by its acquisition by cybercriminals'").

Plaintiffs do not allege any diminution in the value of their data. These 40 Other Plaintiffs fail to allege actual misuse of their information. In *Pruchnicki*, the Ninth Circuit held that the plaintiff did not sufficiently "allege that *her* personal information actually lost value." 845 F. App'x at 615. Here, Plaintiffs similarly appeal to the general notion that personal information has value but fail to allege facts showing an actual loss of value in their own information. Their allegations do not cross the divide between speculation and plausibility. *See Pruchnicki*, 845 F. App'x at 614-15; *Sony II*, 903 F. Supp. 2d at 962-63.[11] Plaintiffs do not identify any contrary authority and fail to distinguish PowerSchool's cases that their lost value allegations are insufficient under Massachusetts, Michigan, and New York law. *See* Mot. at 22. The only case that Plaintiffs cite is *Flagstar*, Opp. at 32, which, contrary to Plaintiffs' argument, dismissed the negligence claim because the plaintiffs "fail[ed] to allege cognizable injury under Michigan law." *In re Flagstar Dec. 2021 Data Sec. Incident Litig.*, 2024 WL 5659583, at *11 (E.D. Mich. Sep. 30, 2024).

***Emotional Distress.*** Plaintiffs do not engage with PowerSchool's argument that general allegations of "emotional distress" or "increased concern" are too vague

---

[11] Plaintiffs quote an out-of-circuit case, *Marriott*, to argue that personal information has "value . . . in our increasingly digital economy." Opp. at 33 (citing *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 462 (D. Md. 2020)). But on this reasoning, the *Marriott* court concluded that the plaintiffs pled injury-in-fact for Article III purposes, not negligence. *Marriott*, 440 F. Supp. 3d at 462. Notably, there the plaintiffs also alleged actual misuse ("lower credit scores" and "fraudulent accounts and tax returns"), unlike the 40 Other Plaintiffs. *See id.*

-19-

to state cognizable damages.  Mot. at 21; Opp. at 34.  Addressing only California and Massachusetts (and thereby waiving their arguments under New York and Michigan law), Plaintiffs offer *Landon* to suggest that allegations of "fear, anxiety, and distress" are enough.  Opp. at 34.  *Landon* actually supports PowerSchool's Motion: the court reasoned that "a plaintiff may not rest solely on conclusory allegations" and must go further, for example, by alleging "how the plaintiff's pain and suffering has manifested."  *Landon*, 2024 WL 5317240, at *8; *see also Shea v. Am. Int'l Coll.*, 2025 WL 2577196, at *3-4 (D. Mass. Sep. 5, 2025) (similar).  Plaintiffs' allegations plainly fail to clear that bar.[12]

## III.    THE SOURCES OF LAW PLAINTIFFS OFFER CANNOT SUPPORT THEIR NEGLIGENCE PER SE CLAIM

Plaintiffs voluntarily dismissed their negligence per se claims under the laws of three of the four states the parties had agreed to brief with respect to their common law claims: California, Massachusetts, and Michigan.  *See* Opp. at 45; Dkt No. 307, at 3.  For New York, they argue for a standalone claim and, under the remaining state laws, assert that the allegations are incorporated into other claims.

Plaintiffs do not contest that they must plead cognizable damages to proceed in negligence, and so however their negligence per se allegations are construed, they fail for the reasons just addressed in Section II.  Plaintiffs also fail to allege negligence per se for another reason: they do not sufficiently allege that PowerSchool "violated a statute, ordinance, or regulation."  Mot. at 23.  *First*, Plaintiffs do not contest PowerSchool's arguments that their consumer protection

---

[12] The Opposition's negligence section has an "Invasion of Privacy" argument. Opp. at 34-36.  PowerSchool does not understand Plaintiffs to be arguing that invasion of privacy constitutes cognizable damages for purposes of negligence.  Not only do Plaintiffs fail to make that argument, but Plaintiffs again cite to standing principles. The invasion of privacy count is separately addressed below in Section V.

-20-

claims (except under the California UCL) should be dismissed, *see infra* Section VIII, and so those statutes cannot form a basis of any negligence per se claim. Any claim premised on the UCL fails for the same reasons as the UCL claim. *See id*.

*Second*, Plaintiffs' negligence per se claim as premised on federal statutes— the FTCA, HIPAA, COPPA, and FERPA (Opp. at 46)—fails because these statutes lack any private right of action. *See* Mot. at 24. Longstanding and recent decisions in California reject relying on violations of these statutes to supply a per se duty. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1087 (N.D. Cal. 2023) (collecting cases). The result is the same under New York law. *See, e.g.*, *Cohen v. Ne. Radiology, P.C.*, 2021 WL 293123, at *7 (S.D.N.Y. Jan. 28, 2021) (dismissing negligence per se claims premised on HIPAA/FTCA). *Third*, Plaintiffs' "industry cybersecurity standards" theory fails for a separate reason: negligence per se requires a "statute, ordinance, or regulation," not private guidelines. Cal. Evid. Code § 669; *see Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285 (2006).

## IV.    THE OPPOSITION MISSTATES THE RELEVANT STANDARD FOR THE NEGLIGENT TRAINING & SUPERVISION CLAIM

The Court can (and should) dismiss the negligent training and supervision claim on the same grounds as the other negligence-based claims: the No-Injury and the 40 Other Plaintiffs are unable to identify any actual damages. *See supra* Section II. The Opposition's arguments fail for at least two other reasons.

*First*, Plaintiffs' arguments are premised on an incorrect standard. To plead negligent supervision, Plaintiffs must allege that PowerSchool either "knew or should have known that the employee created a particular risk or hazard, and that particular harm materializes." *Abdulaziz v. Twitter, Inc.*, 2021 WL 633812, at *7 (N.D. Cal. Feb. 18, 2021). Plaintiffs do not contest that they "fail to plead that PowerSchool 'knew or should have known' that Movate's employees were unfit."

-21-

Opp. at 49 (quoting Mot. at 24). *Second*, Plaintiffs' own cases underscore that they have not pled sufficient facts. Plaintiffs allege that Movate was a PowerSchool "subcontractor," had access to SIS and its data, and did not implement Plaintiffs' chosen security protocols. MC ¶¶ 908-924. As to Movate's own involvement, Plaintiffs merely allege that one of Movate's employees had access to the SIS and his credentials were hijacked. MC ¶¶ 120, 134. Plaintiffs rely chiefly on *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 926 (S.D. Cal. 2023). But Plaintiffs' allegations come nowhere close to the facts pled there—that the defendant "hired hundreds if not thousands of employees *en masse* to perform services . . . without ever conducting a background check on these individuals." *Id.* The negligence per se count should be dismissed.

## V.    THE INVASION OF PRIVACY CLAIM REMAINS DEFICIENT

The Opposition does not contest that the Master Complaint—which repeatedly claims that PowerSchool acted negligently—contains no allegations that PowerSchool "intentionally" disclosed Plaintiffs' information or intruded upon their seclusion. Opp. at 34-36. Plaintiffs accordingly have waived any argument that PowerSchool acted intentionally, as is required to plead an invasion of privacy claim. *See Mahonak v. Rubio*, 2025 WL 449044, at *8 (C.D. Cal. Feb. 10, 2025).

Plaintiffs also fail to meet the requirement that the invasion of privacy be "highly offensive" and constitute an "egregious breach of the social norms." Mot. at 25-26 (collecting cases). The Opposition attempts to skirt this standard by relying on cases from outside the data breach context and by claiming this issue is too fact-intensive to resolve now. *See* Opp. at 35-36. Recent law in the data breach context confirms that courts view the "highly offensive" standard as "a high bar." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Courts also routinely dismiss when the information alleged to have been compromised is as non-sensitive

-22-

REPLY MEMO ISO POWERSCHOOL'S MOTION TO DISMISS          CASE NO. 3:25-MD-03149 (BEN) (MSB)

as—and, in some cases, even more sensitive than—the information in this case. *See, e.g.*, *Razuki v. Caliber Home Loans, Inc.*, 2018 WL 2761818, at *1 (S.D. Cal. June 8, 2018) (dismissal involving "sensitive customer information like social security numbers"); *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 630 (N.D. Cal. 2024) (same, involving "Social Security numbers, driver's license numbers and/or state identification numbers, [and] bank account information").

Plaintiffs also grasp at their allegations that the Incident allegedly compromised "Medical Information." Most Plaintiffs do not allege any of their medical information was involved and those who do offer only conclusory allegations, such as "Medical Information" or "PHI," which are too vague to satisfy the "highly offensive" standard. *Cf. Stach v. Amazon Servs. LLC*, 2015 WL 13283841, at *3 (C.D. Cal. Sep. 8, 2015) (dismissing invasion of privacy claim because the allegations were "insufficient and conclusory" where plaintiff alleged only stolen "account data elements"). The Opposition's cases are also dissimilar. *See St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *1-2, *9 (N.D. Cal. Oct. 1, 2024) (defendant surreptitiously transmitted patients' medical records to third-party advertisers); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 905-06 (S.D. Cal. 2020) (defendant posted medical information on the Internet).

## VI. THE OPPOSITION FAILS TO SUPPORT PLAINTIFFS' FIDUCIARY DUTY THEORY

The Opposition does not contest that the fiduciary duty claim fails if Plaintiffs do not plead that they have suffered cognizable damages, and so this claim also fails for the same reasons addressed in Section II. Moreover, the lack of any relationship (not just a direct one) between PowerSchool and Plaintiffs is fatal. Mot. at 28. The Opposition's only response is that "due to its relationship with its educational entity clients," PowerSchool "assumed a fiduciary duty owed to Plaintiffs when it became

-23-

the custodian of their Private Information." Opp. at 52. Plaintiffs do not identify any legal source that gives rise to such a duty. Nor do Plaintiffs' cases support this argument. *World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*, 66 F. Supp. 3d 1233, 1235 (N.D. Cal. 2014) (recognizing that "a fiduciary relationship generally does not arise out of ordinary arms-length business dealings"); *Brown v. Wells Fargo Bank, N.A.*, 168 Cal. App. 4th 938, 961-62 (2008) (finding only that a stockbroker owed a fiduciary duty to its client).

## VII. THE UNJUST ENRICHMENT CLAIM FAILS AS PLAINTIFFS DO NOT IDENTIFY ANY BENEFIT PROVIDED TO POWERSCHOOL

The Opposition does not rebut PowerSchool's argument that Plaintiffs have not alleged how they bestowed any benefit on PowerSchool, much less how PowerSchool was unjustly enriched. Mot. at 29-30.[13] *First*, Plaintiffs argue that the benefit need not be direct, but they allege no means through which PowerSchool indirectly received any benefit from Plaintiffs—as occurred in the case they offer. *See Rejoice! Coffee Co. v. Hartford Fin. Servs. Grp.*, 2021 WL 5879118, at *11 (N.D. Cal. Dec. 9, 2021) (subsidiary-parent relationship where parent was alleged to receive part of the payments plaintiffs made to subsidiary). *Second*, Plaintiffs argue that the "benefit" PowerSchool received is that it "would not be able to maintain its business without their Private Information," Opp. at 58-59. Plaintiffs' reliance on *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1145 (C.D. Cal. 2021) is misplaced. There, plaintiffs alleged exactly what is missing here—that "they paid Defendants money for Defendants' services, and expected that a portion of their payments would go toward 'data management and security.'" *Id*.

---

[13] The unjust enrichment claim under Massachusetts and New York law should be dismissed because Plaintiffs fail to address PowerSchool's arguments that their claim is not viable in those states. *See* Mot. at 29.

-24-

## VIII. <u>PLAINTIFFS HAVE ABANDONED ALL OF THEIR STATUTORY CONSUMER PROTECTION CLAIMS, EXCEPT UNDER CALIFORNIA'S UCL, WHICH REMAINS DEFECTIVE</u>

Plaintiffs do not respond to PowerSchool's arguments for dismissal of each of the 38 consumer protection statutes aside from the California UCL (including on the grounds presented in Appendix B to the Motion), thereby waiving any opposition to their dismissal. *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) (dismissing UCL claim with prejudice on waiver grounds).

The one non-abandoned consumer protection claim—under the UCL on behalf of the California Plaintiffs—remains defective. Plaintiffs must "establish that [they] lack[] an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Although they pay lip service to this requirement by parroting that they satisfy this rule, they do not address how the other 80 causes of action in their Master Complaint fail to constitute an adequate remedy at law. The Court should dismiss with prejudice on this basis alone. *Id.*; *Ambry*, 567 F. Supp. 3d at 1147 ("Plaintiffs have failed to allege that the legal remedies they seek for the injuries they incurred as a result of Defendants' past failure to protect their information are inadequate.").

Plaintiffs also do not plead the statutory standing required to proceed under the UCL, which requires that they have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. The Opposition offers a "benefit-of-the-bargain" theory, but Plaintiffs do not allege any bargain between themselves and PowerSchool, as addressed above, *see* Section II. Plaintiffs are unable to identify any case that did not involve a direct bargain between the plaintiff and defendant. Opp. at 36.

-25-

REPLY MEMO ISO POWERSCHOOL'S MOTION TO DISMISS                    CASE NO. 3:25-MD-03149 (BEN) (MSB)

## IX.    THE OPPOSITION DOES NOT SALVAGE THE DATA BREACH NOTIFICATION CLAIMS

PowerSchool argued that the Notification Law claims fail because (i) PowerSchool is not an owner or licensee of Plaintiffs' information, (ii) certain states do not provide a private right of action under their Notification Laws, (iii) Plaintiffs are not customers of PowerSchool under California's Notification Law, and (iv) Plaintiffs do not allege any injury arising from the supposedly delayed notification. Mot. at 43-47.  The Opposition's few responses are unavailing.

*First*, Plaintiffs argue that a private right of action is available under the Massachusetts and New Mexico statutes because the statutes are silent on this point. But Plaintiffs' claims under these statutes are asserted only through their consumer protection counts (MC ¶¶ 1294, 1418) and should be dismissed for the reasons covered above in Section VIII.  *Second*, Plaintiffs claim that they have alleged facts showing that PowerSchool is "a licensor of the software and underlying data entered into the SIS" because PowerSchool supposedly "self-identifies" as such in its terms of use.  Opp. at 57.  Plaintiffs do not point to any such allegation in the Master Complaint.  *See Barker v. Insight Glob., LLC*, 2018 WL 3548911, at *10 (N.D. Cal. July 24, 2018) (ignoring extraneous allegations).  And the rote allegations Plaintiffs do offer here, that PowerSchool is an owner or licensor of their information (*see, e.g.*, MC ¶ 958), have been rejected by numerous courts in other data breach cases. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, 2021 WL 3568394, at *16-17 (D.S.C. Aug. 12, 2021) (dismissing claim under South Carolina's Notification Law in case involving software provider for failure to adequately allege defendant owned or licensed plaintiffs' data).  *Third*, Plaintiffs appear to argue that they satisfy the definition of "customers" for their California Notification Law Claim (Count XII) because they have alleged that they are "end-user customers."  Opp. at

-26-

57. Plaintiffs "because I said so" argument ignores that they fail to meet the statutory definition of a customer twice over. Plaintiffs do not allege that they provided information directly to PowerSchool, or "for the purpose of purchasing . . . a product or obtaining a service." *See* Mot. at 45. *Finally*, instead of engaging with PowerSchool's arguments that Plaintiffs do not allege injury resulting from any purportedly delayed notification, that Plaintiffs were timely notified, and that some Plaintiffs fail to specify when they were notified (see Mot. at 46-47 & Appendix C), Plaintiffs invoke their standing arguments. Opp. at 58. Their non-response is fatal. The Court should dismiss these claims with prejudice.

## X.    PLAINTIFFS' RELIANCE ON NON-DATA-BREACH CASES FAILS TO SAVE THEIR CDAFA CLAIM

PowerSchool argued that the CDAFA claim should be dismissed because the statute is not intended "to impose liability on defendant for *third party* hackers' unauthorized access of and tampering with defendant's system." *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011); *see also CTI III, LLC v. Devine*, 2022 WL 1693508, at *3-5 (E.D. Cal. May 26, 2022). Plaintiffs make only a feeble attempt to distinguish *Claridge*, asking the Court to ignore this on-point authority merely because it was decided fourteen years ago. Opp. at 44. They fail to acknowledge *CTI III* at all and offer a smattering of cases that apply the CDAFA outside of the data breach context. *See, e.g.*, *Margolis v. Apple Inc.*, 743 F. Supp. 3d 1124, 1130 (N.D. Cal. 2024) (involving allegations of Apple releasing updates that degraded software's performance). The Opposition identifies one decision, *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035 (C.D. Cal. 2019), that is arguably more analogous. Plaintiffs contend that *Terpin* "upheld plaintiff's CDAFA claim where his cellular provider was 'put on actual notice that [plaintiff's] account was at risk and failed to protect his data from theft.'" Opp. at 45 (quoting *Terpin*,

-27-

399 F. Supp. 3d at 1044). In reality, *Terpin* **dismissed** the CDAFA claim on several grounds. *Terpin*, 399 F. Supp. 3d at 1047-48. In any event, the *Terpin* plaintiff actually satisfied the requirement that CDAFA liability attaches only if the defendant "actually participates" in the unauthorized disclosure, because the plaintiff alleged that the defendant had physically assisted the hackers by "granting the hackers/fraudsters access to [the plaintiff's] phone number." *Id.* at 1044. Because plaintiffs are unable to allege that PowerSchool "actually participated" in the Cybersecurity Incident, their CDAFA claim should be dismissed with prejudice. *Claridge*, 785 F. Supp. 2d at 863; *CTI III*, 2022 WL 1693508, at *3-5.

## XI. PLAINTIFFS' CMIA CLAIM MUST BE DISMISSED BECAUSE POWERSCHOOL IS NOT A "CONTRACTOR"

PowerSchool argued that the CMIA has no application here. The Opposition concedes (as it must) that PowerSchool is not a "provider of health care," instead arguing that PowerSchool somehow is a "contractor." Opp. at 42. Critically, Plaintiffs fail to address the statute's definition of "contractor," which unequivocally does not apply to PowerSchool. PowerSchool is not a "medical group, independent practice association, pharmaceutical benefits manager, or a medical service organization." Cal. Civ. Code § 56.05(d). The Court should dismiss the CMIA claim for this reason alone, but the claim fails for the two additional reasons PowerSchool argued, that the Plaintiffs have not adequately alleged that their "medical information," Cal. Civ. Code § 56.10(a), was involved in the Incident, or that anyone viewed their medical information. Mot. at 50-51.

## XII. THE OPPOSITION FAILS TO SHOW THAT POWERSCHOOL IS SUBJECT TO THE CCPA

The Opposition does not overcome the fact that, as a matter of law, PowerSchool is a "service provider" and not subject to the CCPA. The CCPA

-28-

provides a private right of action against only "business[es]," *see* Cal. Civ. Code § 1798.150. In order to qualify as a business, an entity must both: (1) collect consumers' personal information, and (2) "determine[] the purposes and means of the processing of consumers' personal information." Cal. Civ. Code § 1798.140(d)(1). Although the Opposition contends that PowerSchool "collects" users' data, it skips over the additional requirement that PowerSchool must "determine[] the purposes and means of the processing" of that data. *Id.* The Master Complaint makes clear that PowerSchool's **customers** determine the purposes and means of processing this data. *See, e.g.*, MC ¶ 972. In support of their argument that PowerSchool is a business, Plaintiffs point only to *Blackbaud*. But unlike here, the *Blackbaud* complaint was "filled with claims" detailing how the defendant had determined the purposes and means of processing consumers' information. *Blackbaud*, 2021 WL 3568394, at *5. The Master Complaint contains no such allegations. PowerSchool is the quintessential "service provider," *see* Cal. Civ. Code § 1798.140(ag)(1), and the CCPA claim should be dismissed with prejudice.

## XIII. PLAINTIFFS DO NOT OVERCOME THE GROUNDS FOR DISMISSAL OF THEIR OTHER CLAIMS

Plaintiffs' remaining claims fail for the reasons PowerSchool argued:

***Cal. Civ. Code § 1709***. Despite offering no allegations of fraudulent conduct by PowerSchool (and despite abandoning any fraud-based claim under the UCL), Plaintiffs continue to advance a deceit by concealment claim under California law. They offer only conclusory allegations that they would have acted differently had they known certain facts, but do not specify any representations made by PowerSchool that they relied on. *See* Opp. at 54-55. Their allegations also indicate that school requirements—not PowerSchool's conduct—prompted them to use PowerSchool's SIS. *See, e.g.*, MC ¶ 5; *supra* n.10. This claim should be dismissed

-29-

as lacking the particularity required by Rule 9(b).  *See London v. New Albertson's, Inc.*, 2008 WL 4492642, at *7 (S.D. Cal. Sep. 30, 2008).

***O.G.C.A. § 13-6-11***.  The Georgia Plaintiffs claim they allege "PowerSchool's conduct" before the Incident was "egregious" and the "resulting injury . . . [was] foreseeable."  Opp. at 56.  Their allegations do not permit such an inference where PowerSchool was a victim of the Incident caused by a third-party criminal actor.  *Cf. Powell Co. v. McGarey Grp., LLC*, 508 F. Supp. 2d 1202, 1219-20 (N.D. Ga. 2007) ("Bad faith requires more than bad judgment or negligence.").

***Declaratory Judgment Act***.  Plaintiffs respond that their DJA claim seeks prospective relief, which supposedly sets its apart from other claims.  Opp. at 50-51.  But Plaintiffs similarly seek prospective relief under multiple other causes of action.  *See, e.g.*, MC ¶ 798 (Negligence).  Plaintiffs' request under the DJA remains duplicative and should be dismissed.  *See* Mot. at 55.

## XIV.  ANY AMENDMENT WOULD BE FUTILE, SO DISMISSAL SHOULD BE GRANTED WITH PREJUDICE

Dismissal should be with prejudice in light of the fundamental defects in the Master Complaint, which already spans well over 400 pages and represents Plaintiffs' further attempt to amend their initial pleadings to state a claim.  The deficiencies in Plaintiffs' allegations relate primarily to their inability to plead damages and to meet basic elements of their claims.  Because Plaintiffs are unable to cure these defects via amendment (and have not specified what allegations they would offer to do so), dismissal should be with prejudice.  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).[14]

---

[14] PowerSchool incorporates by reference in full Bain Capital, L.P.'s argument on this point and seeks dismissal with prejudice on the same grounds.

-30-

Dated: November 10, 2025

/s/ Christopher M. Young

Anne Johnson Palmer
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

Monica Mleczko
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 235-0337
monica.mleczko@ropesgray.com

Christopher M. Young
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com

*Attorneys for Defendants PowerSchool
Holdings, Inc. and PowerSchool Group, LLC.*

-31-

## CERTIFICATE OF SERVICE

I certify that on November 10, 2025, I filed the foregoing Reply Memorandum In Support Of PowerSchool's Motion To Dismiss Consolidated Individual Users Class Action Complaint with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ Christopher M. Young*
Christopher M. Young

REPLY MEMO ISO POWERSCHOOL'S MOTION TO DISMISS                    CASE NO. 3:25-MD-03149 (BEN) (MSB)