John P. Carlin (NY 3031887)*
**PAUL, WEISS, RIFKIND,**
  **WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

R. Rosie Vail (SBN 317977)
**PAUL, WEISS, RIFKIND,**
  **WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Dylan O. Smith (NY 5846076)*
**PAUL, WEISS, RIFKIND,**
  **WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
jschutte@paulweiss.com
dosmith@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant
Bain Capital, L.P.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION | Case No. 3:25-md-3149-BEN-MSB<br><br>MDL No. 3149<br><br>**DEFENDANT BAIN CAPITAL, L.P.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE CONSOLIDATED INDIVIDUAL USERS PUTATIVE CLASS ACTION COMPLAINT (TRACK 1)**<br><br>Date: TBD<br>Time: TBD<br>Ctrm.: 5A<br>Judge: Hon. Roger T. Benitez |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ................................................................................................... 4

    I.    PLAINTIFFS FAIL TO PLEAD AGENCY LIABILITY ................... 4

        A.    The Complaint Does Not Allege a Bilateral Agreement That PowerSchool Act as Bain's Agent ................. 5

        B.    The Complaint Does Not Allege That Bain Exercised Pervasive Control Over PowerSchool ...................... 8

    II.    EACH OF PLAINTIFFS' DIRECT LIABILITY CLAIMS FAILS ........................................................................... 11

        A.    Plaintiffs Rely on Allegations Only Directed at PowerSchool in Support of their Direct Liability Counts .................................................................... 13

        B.    Where Plaintiffs Bring Specific Allegations as to Bain, They Fail to Plead The Claims' Basic Elements ................................................................. 16

        C.    Plaintiffs' Declaratory Judgment Act Claim Also Fails (Count VI) ............................................................. 21

    III.    PLAINTIFFS FAIL TO ALLEGE THAT BAIN IS SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA ............................................................................. 22

CONCLUSION ............................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024)...................................................................17

*Anderson* v. *Cnty. of Fresno*,
2023 WL 2761168 (E.D. Cal. Apr. 3, 2023)...............................................4, 8, 10

*Apple, Inc.* v. *Allan & Assocs. Ltd*,
445 F. Supp. 3d 42 (N.D. Cal. 2020)............................................................. 14, 18

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009) ................................................................................................6

*B&L Prods., Inc.* v. *Newsom*,
2022 WL 3567064 (S.D. Cal. Aug. 18, 2022) ............................................22, 25

*Barker* v. *Insight Glob., LLC*,
2018 WL 3548911 (N.D. Cal. July 24, 2018) ......................................................13

*Bily* v. *Arthur Young & Co.*,
11 Cal. Rptr. 2d 51 (Cal. 1992) ...........................................................................17

*Brown* v. *USA Taekwondo*,
276 Cal. Rptr. 3d 434 (Cal. 2018) .......................................................................18

*Cal-Star Prod., Inc* v. *Fencepost Prods., Inc.*,
2019 WL 13038581 (C.D. Cal. Apr. 18, 2019)......................................................5

*China National Chemical Construction Chongqing Co.* v. *Seedling*,
2006 WL 8449845 (D. Or. Jan. 3, 2006)..............................................................23

*Choon's Design, LLC* v. *ContextLogic Inc.*,
2020 WL 6891824 (N.D. Cal. Nov. 24, 2020)......................................................15

*City of Reno* v. *Netflix, Inc.*,
52 F.4th 874 (9th Cir. 2022)................................................................................22

*Cousins* v. *Lockyer*,
568 F.3d 1063 (9th Cir. 2009).................................................................................8

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT          25-md-3149-BEN-MSB

*CrossFit, Inc.* v. *Matrix Solutions, LLC*,
2020 WL 6484554 (S.D. Cal. Nov. 4, 2020) ......................................................24

*In re Delta Dental Antitrust Litig.*,
509 F. Supp. 3d 1377 (J.P.M.L. 2020) ................................................................25

*Elden* v. *Sheldon*,
250 Cal. Rptr. 254 (Cal. 1988) ...........................................................................17

*Est. of Ricardez* v. *Cnty. Of Venutra*,
2020 WL 3891460 (C.D. Cal. June 24, 2020) ....................................................4, 8

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ..........................................................................20, 21

*Flores* v. *Evergreen at San Diego, LLC*,
148 Cal. App. 4th 581 (2007) ............................................................................... 6

*Gen-Prob, Inc.* v. *Amoco Corp., Inc.*,
926 F. Supp. 948 (S.D. Cal. 1996) ...............................................................12, 13

*Gerritsen* v. *Warner Bros. Ent. Inc.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015)....................................................12, 14, 20

*Hamchorom, Inc.* v. *88 Market*,
2019 WL 13092929 (C.D. Cal. Sept. 19, 2019)..................................................23

*Hearden* v. *Windsor Redding Care Ctr., LLC*,
103 Cal. App. 5th 1010 (2024)......................................................................2, 5, 7

*Hoffmann* v. *Young*,
13 Cal. 5th 1257 (2022)....................................................................................... 5

*Horton* v. *Neostrata Co.*,
2016 WL 11622008 (S.D. Cal. Nov. 22, 2016) ............................................12, 13

*Kalter* v. *Keyfactor, Inc.*,
2022 WL 658976 (S.D. Cal. Mar. 4, 2022).........................................................24

*Mann* v. *City of Chula Vista*,
2020 WL 5759749 (S.D. Cal. Sept. 28, 2020) ....................................................16

*McDonald* v. *Bonded Collectors, LLC*,
2007 WL 9776487 (S.D. Cal. May 9, 2007).......................................................10

- iii -

*Mciver* v. *Metro. Life Ins., Co.*,
  2022 WL 3013199 (C.D. Cal. May 23, 2022)............................................. 13, 19

*Mehr* v. *Fed'n Internationale de Football Ass'n*,
  115 F. Supp. 3d 1035 (N.D. Cal. 2015) ....................................................... 16

*Ocampo* v. *United States*,
  2023 WL 6305801 (S.D. Cal. Sept. 27, 2023) .............................................. 5, 23

*Osborne* v. *German*,
  2012 WL 1004736 (N.D. Ohio Mar. 23, 2012)................................................ 23

*In re Packaged Seafood Prods. Antitrust Litig.*,
  242 F. Supp. 3d 1033 (S.D. Cal. 2017) ........................................................ 10

*Reynolds* v. *Binance Holdings Ltd.*,
  481 F. Supp. 3d 997 (N.D. Cal. 2020)......................................................... 25

*Rochfort* v. *EF Inst. for Cultural Exch., Inc.*,
  2020 WL 12833951 (S.D. Cal. Sept. 8, 2020) .............................................. 22

*Sonora Diamond Corp* v. *Superior Ct.*,
  83 Cal. App. 4th 523 (2000)................................................................... 9, 10

*Sivilli* v. *Wright Med. Tech., Inc.*,
  2019 WL 2579794 (S.D. Cal. Jun. 24, 2019)................................................ 23

*Matter of Star & Crescent Boat Co., Inc.*,
  549 F. Supp. 3d 1145 (S.D. Cal. 2021) (Benitez, J.).................................... 22

*Stasi* v. *Inmediata Health Grp Corp.*,
  501 F. Supp. 3d 898 (S.D. Cal. 2020) ........................................................ 19

*Stichting Pensioenfonds ABP* v. *Countrywide Fin. Corp.*,
  802 F. Supp. 2d 1125 (C.D. Cal. 2011)......................................................... 4

*Sunderland* v. *PharmaCare U.S., Inc.*,
  2024 WL 2116069 (S.D. Cal. May 10, 2024) ................................................ 23

*Vance* v. *Berkshire Hathaway Life Ins. Co. of Nebraska*,
  2021 WL 1061179 (S.D. Cal. Mar. 18, 2021) (Benitez, J.) ............................. 19

*whiteCryption Corp.* v. *Arxan Techs., Inc.*,
  2015 WL 3799585 (N.D. Cal. June 18, 2015) ............................................. 9, 10

- iv -

*Williams* v. *Yamaha*,
 851 F.3d 1015 (9th Cir. 2017) ........................................................................... 23

*Young* v. *Greystar Real Est. Partners, LLC*,
 2019 WL 4169889 (S.D. Cal. Sept. 3, 2019) (Benitez, J.) ................................ 20

*Zarif* v. *Hwareh.com, Inc.*,
 2023 WL 5242452 (S.D. Cal. Aug. 15, 2023) ................................................... 23

**Statutes**

Cal. Civ. Code § 1798.140(d)(1) .............................................................................. 20

Cal. Civ. Code § 1798.150 ....................................................................................... 19

**Other Authorities**

Rule 8(a)(2)............................................................................................................... 12

Rule 9(b) ................................................................................................................... 15

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                    25-md-3149-BEN-MSB

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief ("Opposition" or "Opp.") (Dkt. 319) concedes that the claims brought in this litigation are entirely unprecedented, as neither Bain[1] nor Plaintiffs were able to identify *any* prior instance in which a private investment firm was held liable for a data breach suffered by one of its portfolio companies, whether through agency or alter ego liability (the latter theory now abandoned by Plaintiffs), or some other direct liability claim. This is not a test case with egregious allegations that might warrant a new expansion of liability for investment firms. Indeed, Plaintiffs allege that the breach began *before* Bain had any ownership interest in PowerSchool. For the reasons set forth below, it is clear that Bain should not be a defendant in this MDL.

**Agency Liability**: Plaintiffs completely abandon their alter ego theory in their Opposition and now purport to pursue only an agency theory of vicarious liability—a theory referenced only once in the Complaint in wholly conclusory terms. Just like Plaintiffs' (now abandoned) alter ego theory, *none* of the basic elements of agency liability are pled here. Tellingly, Plaintiffs' agency theory of liability is entirely inconsistent with the other Plaintiff groups in this case, who either pursue alter ego liability (Track 2 Direct Action Plaintiffs) or concede that there is no vicarious liability at all (Track 2 Class Action Plaintiffs). That plaintiffs across both Track 1 and Track 2 do not even pursue the same theories of liability against Bain underscores why Bain should not be involved in this MDL.

As Bain showed in its Track 1 Motion to Dismiss ("Motion" or "MTD") (Dkt. 286), there are plain and logical reasons for dismissal:

- Plaintiffs' agency theory hinges on allegations that Bain somehow directed PowerSchool to initiate layoffs in early 2024 when Bain and PowerSchool were engaged in the negotiation of a potential investment by Bain. This

---

[1]   All capitalized terms used herein are as defined in Bain's Motion.

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                    25-md-3149-BEN-MSB

theory is both entirely unsupported by any legal precedent and defies common sense; holding one party to a transaction liable for acts taken by the counterparty while they are negotiating a potential transaction would be an unprecedented and untenable expansion of agency liability.

- To the extent Plaintiffs purport to allege an agency relationship following the signing of the merger agreement in June 2024, the merger agreement expressly provided that PowerSchool maintained control over its operations until October 1, 2024, when Bain would acquire an ownership interest in PowerSchool.  And even considering Plaintiffs' allegations that Bain had certain ***unexercised*** veto rights under the agreement, these unexercised rights fall miles short of what is required to plead that Bain and PowerSchool entered into an agency relationship where PowerSchool acted as Bain's agent.[2]

- Plaintiffs make only minimal and conclusory allegations of Bain's purported control of PowerSchool after Bain acquired its ownership interest on October 1, 2024 (likely because this occurred months after the alleged cybersecurity incident allegedly began in August 2024).  Again, none of these allegations come anywhere close to satisfying the high standard for showing that PowerSchool was acting as Bain's agent.

**Direct Liability Claims**:  Plaintiffs' direct liability claims must also be dismissed because Plaintiffs' Opposition makes clear that those claims rely exclusively on allegations directed at PowerSchool.  But having failed to allege that PowerSchool was an alter ego or agent of Bain, their allegations against PowerSchool cannot be imputed to Bain, and Plaintiffs' attempts to include unwritten allegations against Bain whenever an allegation is directed at

---

[2]  *See Hearden* v. *Windsor Redding Care Ctr., LLC*, 103 Cal. App. 5th 1010, 1020 (2024) ("The principal must in some manner indicate that the agent is to act for the principal, and the agent must act or agree to act on the principal's behalf and subject to the principal's control.").

- 2 -

PowerSchool constitutes impermissible group pleading.  Unlike the Track 2 Plaintiffs, who at least attempt to include allegations about *Bain's* purported conduct in support of their intentional interference with contract claims (a claim not alleged here), the Track 1 Plaintiffs conflate their vicarious and direct liability theories to take two bites at the apple.[3]  Looking only to the scant allegations specific to Bain, Plaintiffs fail to (and, indeed, cannot) plead necessary elements of each direct claim.

**No Personal Jurisdiction**:  Finally, Plaintiffs are unable to satisfy basic jurisdictional requirements, and the Court should dismiss Bain as a defendant for lack of personal jurisdiction.  Plaintiffs' argument that Bain's investment in PowerSchool and participation in merger negotiations constitute minimum contacts in California is contrary to the law and unsupported by the Complaint's allegations.  Moreover, Plaintiffs make no argument whatsoever that jurisdiction is proper in the transferor jurisdictions other than California, effectively conceding a lack of jurisdiction in those cases.

Simply put, there is no reason that Bain should be a defendant in this case, which is about an alleged data breach of PowerSchool's systems that began before Bain had any ownership interest in PowerSchool.  For the reasons articulated below and in Bain's Motion, as well as those articulated in PowerSchool's Motion to Dismiss,[4] the Court should narrow the focus of the dispute by dismissing the claims against Bain.[5]

---

[3]  As explained in Bain's Omnibus Motion to Dismiss the Track 2 Complaints and in its forthcoming reply brief, Track 2 Plaintiffs' claims are plainly deficient even where they bring specific allegations against Bain.

[4]  Bain joins PowerSchool's Reply in Support of its Motion to Dismiss (Dkt. 360) in its entirety and adopts all arguments made therein.  Bain also reiterates and fully incorporates the arguments made in its Supplemental Brief in Further Support of PowerSchool and Bain's Motions to Dismiss Consolidated Individual Users Class Action Complaint regarding Plaintiffs' lack of standing.  (Dkt. 323).

[5]  Pursuant to Case Management Order No. 6 (Dkt. 289), the parties met and conferred on November 7, 2025.  Bain agreed to no longer pursue its subject matter

- 3 -

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                25-md-3149-BEN-MSB

## **ARGUMENT**

### I.   PLAINTIFFS FAIL TO PLEAD AGENCY LIABILITY

In response to Bain's argument that Plaintiffs failed to plead alter ego liability, Plaintiffs abandon that theory of liability in its entirety.  (*See* Opp. at 15) (describing Plaintiffs' alter ego theory as "since-dismissed"); *see Stichting Pensioenfonds ABP* v. *Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").  Plaintiffs now pivot to an agency theory of liability, which is mentioned only in a single, conclusory allegation that PowerSchool acted as Bain's "agent."  (Compl. ¶ 40; MTD at 31–32; Opp. at 15–16).  The Complaint paragraphs that Plaintiffs cite in support of their agency theory fail for the reasons explained in Bain's Motion and below—the Complaint does not allege a bilateral agreement that PowerSchool would act as Bain's agent.  (*E.g.*, Opp. at 15) (citing Compl. ¶¶ 73, 80, 90, 103–08).  Just like their abandoned alter ego theory, Plaintiffs have failed to plead agency liability.

Courts have made clear that portfolio companies, like PowerSchool, are ***not*** ordinarily considered agents of investment firms, like Bain, and Plaintiffs have not identified any case where a portfolio company was found to be an agent of an investment firm.  *See Est. of Ricardez* v. *Cnty. of Venutra*, 2020 WL 3891460, at *5 (C.D. Cal. June 24, 2020) (dismissing allegations that portfolio company was private equity firm's agent); *Anderson* v. *Cnty. of Fresno*, 2023 WL 2761168, at *67 (E.D. Cal. Apr. 3, 2023), *report and recommendation adopted*, 2023 WL 4637099 (E.D. Cal. July 20, 2023) (same).  To plead an agency relationship, Plaintiffs must allege: (1) a manifestation by Bain that PowerSchool shall act for Bain; (2) that PowerSchool has accepted that undertaking; and (3) that there is an understanding

jurisdiction defense because a short form complaint naming the new plaintiffs was filed and transferred to this MDL.  (Dkt. 354).

- 4 -

between Bain and PowerSchool that Bain "is to be in control of the undertaking." *Cal-Star Prod., Inc* v. *Fencepost Prods., Inc.*, 2019 WL 13038581, at *3 (C.D. Cal. Apr. 18, 2019).  Again, Plaintiffs' agency theory rests on a ***single***, conclusory allegation:  "PowerSchool acted as Bain's agent, and was authorized and acted within the scope of authority as dictated by Bain" and that Bain "had dominant control" over PowerSchool, which "was authorized and acted within the scope of authority as dictated by Bain."  (Compl. ¶ 40).  As set forth below, that paragraph cites no supporting facts, nor does the rest of the Complaint contain any facts necessary to plead the elements of agency liability—most significantly, that Bain directed PowerSchool to act on its behalf and that PowerSchool accepted that undertaking. *See Hoffmann* v. *Young*, 515 P.3d 635, 646 (Cal. 2022) ("The principal must in some manner indicate that the agent is to act *for him*, and the agent must act or agree to act on his behalf and subject to his control.").  That failure requires dismissal of all 79 claims brought under an agency theory.

### A. The Complaint Does Not Allege a Bilateral Agreement That PowerSchool Act as Bain's Agent

Plaintiffs fail to plead or argue the first two elements of agency, which require a bilateral agreement that PowerSchool act as Bain's agent.  *See Hearden*, 103 Cal. App. 5th at 1020.  Plaintiffs make no allegations whatsoever (nor can they) that Bain consented for PowerSchool to act on its behalf or that PowerSchool agreed to do so, nor does Plaintiffs' Opposition even argue that such agreement is alleged in the Complaint.[6] *See Cal-Star Prod.*, 2019 WL 13038581, at *3 (requiring an agreement

---

[6]  In addition to failing to plead the basic elements of an agency relationship, Plaintiffs fail to "make a prima facie showing that [PowerSchool] represents [Bain] by performing services sufficiently important to [Bain] that if it did not have a representative to perform them, [Bain] would undertake to perform substantially similar services." *Ocampo* v. *United States*, 2023 WL 6305801, at *12 (S.D. Cal. Sept. 27, 2023).  Neither the Opposition nor the Complaint claims that if Bain had not invested in PowerSchool, Bain would have had to begin selling educational technology on its own.

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                25-md-3149-BEN-MSB

"that the principal is to be in control of the undertaking"). For that reason alone, all 79 vicarious liability counts should be dismissed for failure to state a claim.

Without any case support, Plaintiffs say that all they must do is "allege facts **suggesting** that Bain has controlled PowerSchool as an agent." (Opp. at 15) (emphasis added). That is simply incorrect. Plaintiffs must plead specific facts that show more than a "mere possibility of misconduct" in order to survive a motion to dismiss. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009). And here, the Complaint makes **no** allegations that Bain and PowerSchool entered into a bilateral agreement that PowerSchool would act as Bain's agent. *See Cal-Star Prod.*, 2019 WL 13038581, at *3 (dismissing agency liability claims when there were no "specific allegations of direction by a principal, compliance by a subsidiary, or one of the [d]efendants acting on behalf of another"). Nor do Plaintiffs argue otherwise.

Plaintiffs instead point to negotiations between Bain and PowerSchool beginning in 2022 and assert that PowerSchool's actions were "consistent" with Bain's goals. (Opp. at 15–16; Compl. ¶¶ 72–73). They also point to allegations that PowerSchool reduced its domestic workforce to induce Bain to purchase a stake in PowerSchool. (Opp. at 15–16; Compl. ¶ 80). None of these allegations suggest that Bain and PowerSchool had a "bilateral" agreement that PowerSchool was to act as Bain's agent, much less support a plausible inference that such an agreement was in place. *See Flores* v. *Evergreen at San Diego, LLC*, 148 Cal. App. 4th 581, 587–88 (2007) (holding that "an agency cannot be created by the conduct of the agent alone; rather, *conduct by the principal* is essential to create the agency"). Nor have plaintiffs identified a single case finding an agency relationship between two independent counterparties negotiating a merger. Bain also could not find such a case and for good reason—that proposition is absurd.

With respect to Bain and PowerSchool's relationship after June 6, 2024, when the merger agreement was signed, Plaintiffs repeatedly point to a standard provision in that agreement preventing major business changes without approval from Bain

- 6 -

during the interim period prior to the deal becoming effective on October 1, 2024. (MTD at 27–28).[7]  But there are no allegations that Bain ever exercised this right. And even if there were such an allegation, Plaintiffs misread the agreement by asserting that it enabled Bain to ***direct*** PowerSchool's activity.  (Opp. at 16–17). Crucially, and contrary to Plaintiffs' assertions, the agreement explicitly did not permit Bain to direct any changes at PowerSchool, including the alleged offshoring and workforce reductions—the relevant provisions only required that Bain "approve[] in advance" certain business decisions ***pursued by PowerSchool***.[8]  And nowhere does the agreement provide that PowerSchool would act as Bain's agent in any capacity.  Plaintiffs also point to the conclusory allegation that, "prior to October 1, 2024, when the deal closed . . . Bain began exercising its influence over staffing, spending and operational priorities."  (Compl. ¶ 90).  But, again, that allegation is belied by the plain language of the merger agreement, which is incorporated into the Complaint by reference.[9]  At bottom, an agency relationship is fundamentally defined by a bilateral agreement that the agent will act on the principal's behalf and subject to its control, *see Hearden*, 103 Cal. App. 5th at 1020, but the agreement the Complaint incorporates provides exactly the opposite:  "The Parties acknowledge and agree that the restrictions set forth in this Agreement are not intended to give [the Bain entities], on the one hand, or [PowerSchool], on the other hand, directly or indirectly, the right to control or direct the business or operations of the other at any time prior to [October 1, 2024]."[10]

---

[7]  *See* Agreement and Plan of Merger by and among BCPE Polymath Buyer, Inc., BCPE Polymath Merger Sub, Inc. and PowerSchool Holdings, Inc., at 56–64 (June 6, 2024), https://www.sec.gov/Archives/edgar/data/1835681/000119312524157845/d846178dex21.htm.

[8]  *See id.* at 56.

[9]  *See id.* at 64

[10]  *See id.*  Moreover, were the Court to conclude that the existence of such provisions can plead agency liability, thousands of arms-length transaction agreements would effectively be converted into bilateral agency agreements.

- 7 -

Finally, any agreement between Bain and PowerSchool after the transaction's close in October 2024 (and after the cybersecurity incident allegedly began in August 2024) is irrelevant, because at that point PowerSchool's alleged offshoring and reductions in workforce had already occurred. (*See* Compl. ¶¶ 73, 101–03). Moreover, neither the Complaint nor the Opposition refers to any agency agreement between Bain and PowerSchool after the transaction closed, and a portfolio company cannot be the agent of an investment company without such an agreement. *See Est. of Ricardez*, 2020 WL 3891460, at *5 (dismissing without leave to amend vicarious liability claims involving a private equity firm and a portfolio company because the plaintiffs' "agency allegations are mere legal conclusions . . . which are insufficient"); *Anderson*, 2023 WL 2761168, at *67.

### B.    The Complaint Does Not Allege That Bain Exercised Pervasive Control Over PowerSchool

The Complaint's "conclusory allegations of law," which merely recite the legal requirements for an agency relationship, cannot and do not support a plausible inference of agency liability against Bain. *See Cousins* v. *Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Whether before or after the merger agreement became effective on October 1, 2024, the Complaint fails to allege the pervasive and continual control required to plead agency liability.

*First*, neither the Complaint nor the Opposition actually alleges any ***facts*** in support of Plaintiffs' legal conclusion that Bain exercised pervasive and continual control over PowerSchool prior to October 1, 2024, when Bain acquired a 51% stake in PowerSchool. (*See, e.g.*, Compl. ¶¶ 69, 90). Plaintiffs point to vague and conclusory allegations that Bain had "strategic control over PowerSchool's key decisions," and that the control included "key operational, cybersecurity, and financial decisions at PowerSchool." (Opp. at 15) (citing Compl. ¶¶ 73, 90, 103–08, but quoting ¶ 85). And while Plaintiffs argue that Bain "regularly directed" PowerSchool's activities at least from March 2024, no such allegation—in form or

- 8 -

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                    25-md-3149-BEN-MSB

in substance—appears in the paragraphs they cite. (Opp. at 17) (citing Compl. ¶¶ 73, 90, 103–08). Those paragraphs allege only that **PowerSchool** announced its expansion in India and that **PowerSchool's** alleged workforce reductions occurred in March and August 2024—all of which occurred before Bain acquired a stake in PowerSchool in October 2024. (Opp. at 17; Compl. ¶¶ 73, 90, 103–08).

To the extent Plaintiffs rely on the merger agreement signed on June 6, 2024, the "No Control" provision[11] expressly disclaims Bain's authority to direct or control PowerSchool's activities. Bain could not have the kind of "pervasive and continual" control over "day-to-day operations" that is necessary to establish corporate agency *at any point* prior to October 1, 2024. *See Sonora Diamond Corp* v. *Superior Ct.*, 83 Cal. App. 4th 523, 540–41 (2000); *whiteCryption Corp.* v. *Arxan Techs., Inc.*, 2015 WL 3799585, at \*2 (N.D. Cal. June 18, 2015); (MTD at 31–32). Plaintiffs argue that the provision's exception subjecting the companies to the remainder of the agreement "swallows" the provision itself, but that is factually incorrect, and Plaintiffs point to no specific "terms and conditions" of the agreement supporting that proposition. (Opp. at 17). As explained *supra*, the "veto" provision (to which Plaintiffs point) only allows Bain to protect the status quo against a narrow category of major and business-altering decisions by PowerSchool. (*Id.*).[12] It does not give Bain any authority to initiate, direct, or implement such changes.[13] Not only are there no allegations that Bain ever exercised its rights pursuant to that provision, but also the power that Plaintiffs imagine—to initiate reductions in workforce—is reserved for PowerSchool alone under the agreement Plaintiffs cite.[14]

*Second*, the Opposition similarly fails to identify allegations that Bain exercised purported control after the transaction's closing in October 2024, months

---

[11] *See supra* n.7, at 64.

[12] *See id.* at 57–59.

[13] *See id.* at 56–64.

[14] *See id.* at 56–58, 64.

- 9 -

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT          25-md-3149-BEN-MSB

after the alleged offshoring and workforce reductions occurred and when the alleged incident began.  Courts routinely hold that the general degree of executive control exercised by an ordinary majority shareholder, as is alleged here, is not enough.  *See*, *e.g.*, *McDonald* v. *Bonded Collectors, LLC*, 2007 WL 9776487, at \*5 (S.D. Cal. May 9, 2007) ("An agency relationship . . . requires more than control through stock ownership.").  "[R]ather there must be a strong showing beyond simply facts evidencing 'the broad oversight typically indicated by [the] common ownership and common directorship' present in a normal parent-subsidiary relationship."  *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1063 (S.D. Cal. 2017).  "To meet this standard, 'the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy.'"  *whiteCryption Corp.*, 2015 WL 3799585, at \*2.  Neither the Complaint nor the Opposition cites any caselaw applying a different standard for agency liability.

Plaintiffs' arguments are based only on Bain's investment interest in PowerSchool after that point, (*see* Opp. at 14)—and more than that is required.  *See, e.g.*, *Anderson*, 2023 WL 2761168, at \*65–67 (investment interest in portfolio company insufficient to establish agency); *Sonora Diamond Corp.*, 83 Cal. App. 4th at 541–42 (even full ownership insufficient to establish agency).  Plaintiffs claim that the Complaint alleges Bain "directed PowerSchool to take specific actions" after Bain acquired an ownership interest in PowerSchool, (Opp. at 16), but the paragraphs Plaintiffs cite in support of that argument do not allege any directions by Bain or any actions by PowerSchool leading to the cybersecurity incident, (*see* Compl. ¶¶ 91–95, 109–15).  Similarly, the Opposition vaguely implies that Bain influenced "expense reductions" after October 1, 2024, but no actions by Bain after that point are alleged in the Complaint.  (*See* Opp. at 2) (citing Compl. ¶¶ 80, 91–92, 110–13).  Finally, Plaintiffs argue that Bain replaced the Board of PowerSchool

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                    25-md-3149-BEN-MSB

when Bain's stake in PowerSchool became official in October 2024.  (Opp. at 16; Compl. ¶ 91).  As explained in Bain's Motion, appointing board members is entirely normal in the course of any acquisition transaction and does not rise to the level of unusual and pervasive day-to-day control required for a finding of corporate agency liability.  (MTD at 23) (citing *Sonora Diamond Corp*, 83 Cal. App. 4th at 548).  Nor do Plaintiffs cite a single case holding otherwise.

In sum, there are numerous independently sufficient grounds to dismiss all 79 vicarious liability counts brought against Bain.  Plaintiffs abandon their alter ego arguments in an attempt to save their vicarious liability arguments, but they make only perfunctory allegations of an agency relationship in their Complaint.  Even accepting the Opposition's mischaracterizations of the Complaint's allegations, Plaintiffs still fail to plead ***any*** of the elements required for an agency relationship. No additional allegations or discovery will change that fact, and all of Plaintiffs' vicarious liability claims against Bain should be dismissed without leave to amend.

## II.    EACH OF PLAINTIFFS' DIRECT LIABILITY CLAIMS FAILS[15]

Plaintiffs' Opposition fails to counter any of the arguments in Bain's Motion regarding the deficiencies of the Direct Liability Counts (Counts I, III, VI, IX, XIII, XVI, and XVII) in the Complaint.  These plainly deficient claims against Bain should be dismissed to streamline the proceedings to the core allegations of liability.

*First*, the Direct Liability Counts should be dismissed because Plaintiffs do not allege that ***Bain*** took any of the alleged actions that gave rise to Plaintiffs' claims.  The Complaint contains no allegations that Bain collected, stored, or shared Plaintiffs' data, or otherwise did any business directly with Plaintiffs.  (*See* MTD at 35–36).  Plaintiffs' rebuttal to the Motion's arguments is that Bain was allegedly involved in "day-to-day activities" in a manner "inconsistent with [Bain's] investor

---

[15]  Bain joins PowerSchool's Reply in Support of Its Motion to Dismiss (Dkt. 360) and incorporates the arguments from Sections II–IV, VII, VIII, and XII explaining why Plaintiffs' Direct Liability Counts should be dismissed for failure to state a claim against Bain.

- 11 -

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                    25-md-3149-BEN-MSB

status." (Opp. at 21–22) (quoting *Harris Rutsky & Co. Ins. Servs., Inc.* v. *Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)). But such allegations conflate Plaintiffs' Direct Liability Counts with their vicarious liability theories (which, as explained *supra*, fail on their own terms). Allegations that Bain exercised "day-to-day" control over PowerSchool's actions (particularly when there is no dispute that Bain had no ownership interest in PowerSchool when the incident allegedly began in August 2024) do not advance Plaintiffs' Direct Liability Counts against Bain. *See Gerritsen* v. *Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1125–26 (C.D. Cal. 2015) (refusing to consider vicarious liability theories as the basis for a direct liability count). Further, to the extent Plaintiffs contend they have made specific allegations against Bain by referring to "Defendants" or "PowerSchool," Plaintiffs have engaged in improper group pleading, which cannot be cured through amendment, since those allegations plainly refer to actions purportedly taken by PowerSchool only. *See Horton* v. *Neostrata Co.*, 2016 WL 11622008, at *3–4 (S.D. Cal. Nov. 22, 2016); *Gen-Prob, Inc.* v. *Amoco Corp., Inc.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) ("[A] complaint which 'lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).'").

*Second*, even setting aside Plaintiffs' failure to allege actions taken by Bain, all of the Direct Liability Counts should be dismissed for failure to allege required elements of each claim. Among the deficiencies in their pleadings, Plaintiffs still have not sufficiently alleged that Bain: (1) owed a duty to Plaintiffs, as is required to support their negligence and negligence per se counts; (2) knew of any breach of such a duty, as necessary to support an aiding and abetting count; or (3) qualified as a "business" such that it might be subject to the CCPA. The Opposition does not cure these errors because it doubles down on the factual impossibility that Bain controlled PowerSchool before October 1, 2024, and the unsupported contention that Bain collected and possessed Plaintiffs' data—an allegation not pled anywhere in the Complaint and which should be accorded no weight when determining whether

- 12 -

dismissal is proper.  *See Barker* v. *Insight Glob., LLC*, 2018 WL 3548911, at *10 (N.D. Cal. July 24, 2018), *reconsideration granted on other grounds*, 2019 WL 176260 (N.D. Cal. Jan. 11, 2019) (dismissing claim because courts "may not consider allegations not present in the operative complaint").  Notably, Plaintiffs have failed to cite any case holding that an investment company is liable—directly or vicariously—for a cybersecurity incident at one of its portfolio companies, let alone where the investment company did not possess (and is not alleged to have possessed) any data that was involved in the incident.

Because of those numerous fatal defects in Plaintiffs' Direct Liability Counts, those counts should be dismissed without leave to amend.  Plaintiffs have not and cannot explain how "granting leave to amend would materially change their case." *Mciver* v. *Metro. Life Ins., Co.*, 2022 WL 3013199, at *5 (C.D. Cal. May 23, 2022).

### A. Plaintiffs Rely on Allegations Only Directed at PowerSchool in Support of their Direct Liability Counts

Plaintiffs fail to rebut Bain's arguments that their Direct Liability Counts rely on improper group pleading.  Although Plaintiffs state that the Complaint contains allegations "dedicated solely to detailing Bain's specific involvement and failures," (Opp. at 18), the Opposition cites to alleged actions that Plaintiffs themselves claim only PowerSchool carried out.  (*See*, *e.g.*, MTD at 34–36).  Because Plaintiffs fail to adequately plead any vicarious liability theory against Bain, or any plausible connection between PowerSchool's alleged actions and Bain, allegations of PowerSchool's actions alone cannot form the basis for Plaintiffs' Direct Liability Counts brought against Bain.  *See Horton*, 2016 WL 11622008, at *3; *Gen-Prob, Inc.*, 926 F. Supp. at 961.  For example:

***Unjust Enrichment* (Count III).**  Plaintiffs claim that Bain was unjustly enriched because it "accepted the benefits accompanying plaintiff's data . . . at the plaintiff's expense," (Opp. at 32), but the Complaint only alleges that PowerSchool—not Bain—received benefits from Plaintiffs.  (*See*, *e.g.*, Compl.

- 13 -

¶¶ 833, 836, 841). For example, the Complaint alleges: "*PowerSchool* enriched itself;" "*PowerSchool's* unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein;" and "[t]here is no justification for *PowerSchool's* enrichment." (Compl. ¶¶ 840–42). As explained in Bain's Motion, Plaintiffs do not plead the "conferral of a benefit" *to Bain*, which "requires an implied promise to pay or the expectation of payment." (MTD at 41) (citing *Advanced Eng'g Sols. Co., LLC* v. *Pers. Corner, LLC*, 2021 WL 1502705, at \*7 (C.D. Cal. Feb. 25, 2021)). The Complaint contains no specific allegations that Bain ever received money (or benefits) from Plaintiffs, or that Bain sold any products or services to Plaintiffs. (*cf.* Opp. at 32) (citing *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1145 (C.D. Cal. 2021) (concluding the defendant was unjustly enriched because plaintiffs paid the defendants for their services)).

*Negligent Training & Supervision* **(Count IX).** Plaintiffs contend they have stated a claim for negligent supervision against Bain because it "failed to provide adequate supervision of PowerSchool and its outsourced labor contractor Movate," (Opp. at 36)—but the Complaint contains no allegations that Bain negligently supervised PowerSchool.[16] (Compl. ¶¶ 908–24). As noted in Bain's Motion, (MTD at 42), Plaintiffs only allege that PowerSchool engaged, interacted with, and was in a position to monitor and supervise Movate, (Compl. ¶¶ 910, 911, 913, 917) ("*PowerSchool* outsourced and hired various subcontractors, including Movate," "*PowerSchool* granted Movate access," Movate was "acting as *PowerSchool's* agent," and "*PowerSchool* . . . failed to exercise the requisite standard of care in the hiring, supervision of its own employees and in its retention of Movate") (emphasis

---

[16] Asserting for the first time in the Opposition that Bain negligently supervised PowerSchool constitutes an improper attempt by Plaintiffs to amend the allegations in the Complaint; it is "axiomatic" that Plaintiffs cannot amend their Complaint "by the briefs in opposition to a motion to dismiss." *Apple, Inc.* v. *Allan & Assocs. Ltd*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020); *Gerritsen*, 116 F. Supp. 3d at 1126 ("[I]t is improper for a plaintiff to assert an unpled theory of liability in opposition to defendant's Rule 12(b)(6) motion to dismiss.").

- 14 -

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT          25-md-3149-BEN-MSB

added).  Plaintiffs also fail to sufficiently allege that Bain negligently supervised Movate on a direct liability theory, as their argument appears to turn on Bain's "control over PowerSchool"—*i.e.*, their agency theory, which fails for the reasons explained *supra*.  (Opp. at 35–36).  Plaintiffs' improper (and incomplete) attempt to assert a new liability theory, even if accepted, cannot overcome the fact that they have failed to allege Bain had any relationship with Movate at all—let alone a supervisory or contractual relationship—to serve as the basis for this claim.

*California Unfair Competition Law* **("UCL") (Count XVI).**  Plaintiffs argue they have stated a claim under the UCL because Bain's actions were "immoral, unethical, oppressive, and substantially injurious," and it authorized "the use of unsupervised remote technology with offshore companies like Movate,"  (Opp. at 38–39)—but the Complaint only alleges that ***PowerSchool*** announced the plans to expand its non-U.S. personnel headcount and its reduction in overall workforce in early 2024, long before even the signing of the merger agreement in June 2024. (Compl. ¶¶ 71–80, 101–08).  The Complaint does not allege specifically how Bain directed (or could have directed) PowerSchool to make these announcements, projections, or personnel decisions.  Additionally, the Complaint alleges that PowerSchool hired Movate—not Bain.  (Compl. ¶ 20).[17]

---

[17]  Plaintiffs also argue that, contrary to Bain's Motion, Rule 9(b) does not apply because they only assert violations of the UCL's unlawful and unfair prongs. (Opp. at 39–40).  But the Complaint repeatedly alleges that PowerSchool engaged in fraudulent actions. (*See, e.g.*, Compl. ¶ 1032).  For example, Plaintiffs allege they were harmed "[a]s a direct and proximate result of Defendants' unfair, unlawful, and ***fraudulent*** acts and practices." (Compl. ¶ 1027).  Rule 9(b) thus applies to these allegations. Plaintiffs have failed to meet this heightened pleading standard, for they fail to "state with particularity the circumstances constituting" Bain's alleged fraudulent conduct. *See* Fed. R. Civ. P. 9(b); *Choon's Design, LLC* v. *ContextLogic Inc.*, 2020 WL 6891824, at *5 (N.D. Cal. Nov. 24, 2020).

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                    25-md-3149-BEN-MSB

## B. Where Plaintiffs Bring Specific Allegations as to Bain, They Fail to Plead The Claims' Basic Elements

Even in the rare instances when the Direct Liability Counts include specific allegations of Bain's conduct, Plaintiffs fail to plead the basic elements of each of their claims, and Plaintiffs' Opposition does little to save the deficiencies identified in Bain's Motion. The remaining arguments in Plaintiffs' Opposition should also be disregarded because they improperly rely on legal conclusions or on Plaintiffs' theory that PowerSchool acted as Bain's agent, which fails for the reasons explained *supra*. Additional allegations and discovery will not help Plaintiffs to defeat these deficiencies and, accordingly, these counts should be dismissed as to Bain.

***Negligence* (Count I).** Nowhere in the Complaint or the Opposition do Plaintiffs sufficiently allege that Bain owed them a duty—the "threshold element of a cause of action for negligence." *Mehr* v. *Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1063 (N.D. Cal. 2015); *see Mann* v. *City of Chula Vista*, 2020 WL 5759749, at *9 (S.D. Cal. Sept. 28, 2020). Because Plaintiffs have failed to plead duty, there can be no breach and thus no negligence on the part of Bain.

Plaintiffs' Opposition attempts to make several arguments that Bain owed Plaintiffs a duty, all of which are flawed and should be disregarded. *First*, Plaintiffs' contention that Bain owed a duty to them "when it initiated the merger process with PowerSchool," received non-public information about PowerSchool's finances and operations, and "began directing PowerSchool's day-to-day activities," (Opp. at 23), would substantially and baselessly expand the duty of care. Plaintiffs' argument implies that, during arms' length negotiations, a company that participates in a "merger process" and obtains non-public business information as part of normal course due diligence assumes a duty of care not only to all of the target company's contracted clients, but also to any individual who uses the services of those clients. Plaintiffs cite no precedent supporting this novel and sweeping theory of liability. If accepted, it would dramatically broaden the law on duty of care and would have

- 16 -

significant repercussions, including deterring investment activity. Because there are no allegations that Plaintiffs used Bain's services or that Bain played ***any*** role in collecting Plaintiffs' data, adopting Plaintiffs' precedent-defying legal theory and imposing a duty on Bain would not limit "the otherwise potentially infinite liability which would follow." *Bily* v. *Arthur Young & Co.*, 834 P.2d 745, 761 (Cal. 1992); *Elden* v. *Sheldon*, 758 P.2d 582, 586 (Cal. 1988). Courts have cautioned that "the consequences of a negligent act must be limited in order to avoid an intolerable burden on society." *Elden*, 758 P.2d at 586.[18]

*Second*, Plaintiffs' assertion that Bain owed a duty because Plaintiffs' risk of harm and a "data breach was reasonably foreseeable, as a result of Bain's aggressive offshoring of PowerSchool's cybersecurity functions," (Opp. at 24), improperly bootstraps a legal conclusion that PowerSchool acted as Bain's agent and somehow directed actions before it had any actual ownership interest. As argued above, Plaintiffs have failed to plead or adequately argue that theory.

*Third*, though Plaintiffs insist that they have "adequately alleged that Bain possessed and maintained the compromised Private Information," (Opp. at 25), the Complaint plainly alleges that ***PowerSchool*** collected, stored, and shared Plaintiffs' data. (*E.g.*, Compl. ¶¶ 7, 54–58, 388, 454). Plaintiffs then repeat their theory that Bain had a duty because it "directed the negligence steps that led to Plaintiffs' harm,"

---

[18] Plaintiffs cite *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 633–34 (N.D. Cal. 2024) to argue that Bain owed a duty because it "directed the negligence steps that led to Plaintiffs' harm," (Opp. at 25), but that case is inapposite. The court concluded the defendant owed a duty because it "was in the position to ensure that its systems were sufficient" to protect plaintiffs' data. *Id.* at 633 (internal quotation marks omitted). Here, there are no allegations that Bain ever possessed Plaintiffs' data. The cases to which *Accellion* (and Plaintiffs) cite are also inapposite for the same reason—they all found a duty where a company collected individuals' information, and Bain is not alleged to have collected or possessed any of the at-issue data. *Id.* at 634 (citing *Stasi* v. *Inmediata Health Grp Corp.*, 501 F. Supp. 3d 898 (S.D. Cal. 2020); *Castillo* v. *Seagate Tech., LLC,* 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019); *Bass* v. *Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019)).

- 17 -

(Opp. at 25), but for the reasons articulated *supra*, this theory fails because it relies on Plaintiffs' insufficient allegations of agency and is not a factor courts consider when determining a duty for a negligence claim.  (*See* MTD at 39–40).

*Fourth*, Plaintiffs argue that Bain had a "special relationship" with Plaintiffs, such that Bain owed Plaintiffs a duty, (Opp. at 27), but that argument (a) contradicts the Complaint, (b) relies on Plaintiffs' failed agency theory, and (c) contradicts numerous decisions identifying special relationships only in narrow situations that are not present here.  To begin, the Complaint alleges that "***PowerSchool*** formed a special relationship" with Plaintiffs, "[b]y accepting, taking possession, collecting, storing, processing, and accessing Plaintiffs' and Class Members' highly sensitive data."  (Compl. ¶ 781) (emphasis added).  That allegation is silent as to Bain's relationship, if any, with Plaintiffs, and Plaintiffs are not permitted to amend their Complaint by making new allegations in their Opposition.  *See Apple, Inc.*, 445 F. Supp. 3d at 59 (noting plaintiffs cannot amend their complaint "by the briefs in opposition to a motion to dismiss").  Moreover, Plaintiffs conflate their "special relationship" theory with their effort to assert agency for vicarious liability by concluding that Bain's "control was aimed squarely at Plaintiffs and the Class," without any supporting facts alleged.  (Opp. at  27).  They assert in a conclusory fashion that Bain's "day-to-day decisions . . . dismantle[d] PowerSchool's data security operations," (Opp. at 28), but the Complaint only alleges that PowerSchool initiated workforce reductions.  (*See* Compl. ¶¶ 73, 101–08).  The Complaint thus fails to allege a special relationship between Bain and Plaintiffs and thus a negligence claim against Bain on theory of direct liability.

Additionally, courts have only found special relationships in specific and narrow circumstances where "special relationship between the defendant and the victim is one that 'gives the victim a right to expect protection' from the defendant"—such as between "parents and children," "employers and employees," or "innkeepers and guests"—none of which exist (or are alleged) here.  *Brown* v.

- 18 -

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                    25-md-3149-BEN-MSB

*USA Taekwondo*, 483 P.3d 159, 166 (Cal. 2018).  Nor are any of those situations analogous.  Plaintiffs cite to *Stasi* v. *Inmediata Health Grp Corp.*, (Opp. at 27), in which the court found that the company that "possess[ed] personal and medical information" owed a duty to plaintiffs "to safeguard that information."  501 F. Supp. 3d 898, 915 (S.D. Cal. 2020).  That case is inapposite, because Plaintiffs do not (and cannot) allege that Bain possessed Plaintiffs' personal or medical information.  (*Cf.* Compl. ¶¶ 7, 388, 454).

Because Plaintiffs' duty arguments suffer from several and distinct core defects, Plaintiffs' negligence claim must be dismissed.[19]  And because Plaintiffs have not described the additional allegations they would include to show how "granting leave to amend would materially change their case," *Mciver*, 2022 WL 3013199, at *5, granting leave to amend the Complaint would thus be an "an exercise in futility."  *Vance* v. *Berkshire Hathaway Life Ins. Co. of Nebraska*, 2021 WL 1061179, at *3 (S.D. Cal. Mar. 18, 2021) (Benitez, J.).

***California Consumer Privacy Act* ("CCPA") (Count XIII).**  As explained in Bain's motion to dismiss, the CCPA allows for a private cause of action ***only*** against a "business."  Cal. Civ. Code § 1798.150.  The CCPA defines a "business," as an entity "that collects consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determines the

---

[19]  To the extent the Court finds that Plaintiffs have adequately pled that Bain owed them a duty, Plaintiffs' negligence claim still fails because they have not adequately pled causation.  Plaintiffs contend that because of Bain's alleged decisions regarding personnel and costs at PowerSchool, it was "foreseeable" that Plaintiffs would be harmed.  (Opp. at 30).  Again, however, Plaintiffs conflate their allegations about *PowerSchool*'s actions with their allegations regarding Bain.  (*See* Comp. ¶¶ 73, 101–08).  Regardless, they do not point to any decision holding that an investment company's management discussions about business strategy with a portfolio company proximately caused damages in the data breach context.  Further, Plaintiffs' causation argument is limited to the argument that the cybersecurity incident caused a risk of identity theft.  They utterly fail to argue that Bain caused the cybersecurity incident, even if that argument is accepted.  (Opp. at 29–30).  This failure is independently sufficient to dismiss their negligence claim.

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT            25-md-3149-BEN-MSB

purposes and means of the processing of consumers' personal information."  Cal. Civ. Code § 1798.140(d)(1).  Plaintiffs fail to plead that Bain meets this definition. (MTD at 42–43).  Plaintiffs' Opposition offers no additional explanation—nor could it—to support the conclusion that Bain is a "business" liable under the CCPA when Plaintiffs do not allege that Bain collected or stored Plaintiffs' data.  (Opp. at 36–37).  Additionally, merely asserting that "it's evident [Bain] 'jointly with others, determines the purposes and means of the process' of that personal information," (Opp. at 37) (emphasis omitted), is a legal conclusion and not a substitute for well-pleaded facts.  *See Young* v. *Greystar Real Est. Partners, LLC*, 2019 WL 4169889, at *3 (S.D. Cal. Sept. 3, 2019) (Benitez, J.); (*see also* MTD at 43).  Plaintiffs' footnote citation to Bain's Privacy Policy, (Opp. at 37 n.32), cannot defeat dismissal of this claim because at most it could only hope to establish that Bain may collect data in certain situations—not that it collected **Plaintiffs'** data.

Plaintiffs also argue that their CCPA claim "should survive under the aider-and-abettor theory of liability."  (Opp. at 37).  Once again, Plaintiffs are improperly "assert[ing] an unpled theory of liability in opposition" to Bain's Motion.  *See Gerritsen*, 116 F. Supp. 3d at 1126.  The Complaint only alleges that Bain aided and abetted PowerSchool's violation of the UCL, not the CCPA.  (*See* Compl. ¶¶ 1031–36).  Moreover, Plaintiffs do not even identify what allegations would theoretically support an aider-and-abettor theory, had they asserted one.  For example, though California law requires that a plaintiff plead a defendant knew that another party breached a duty it owed to the plaintiff (among other required elements), *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006), Plaintiffs fail to plead Bain had knowledge of any duty at all, let alone of any alleged breach.  Nor does the case Plaintiffs cite support this newly pleaded theory, as an entirely different statute was at issue in that case.  (Opp. at 37) (citing *R.C.* v. *Sussex Publrs., LLC*, 2025 WL 948060, at *7–8 (N.D. Cal. Mar. 28, 2025) (dismissing the CCPA claim because plaintiffs conceded it)).

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                    25-md-3149-BEN-MSB

***Aiding and Abetting* (Count XVII).**  To state a claim against Bain, Plaintiffs must allege that Bain ***knew*** PowerSchool's conduct "constitute[d] a breach of a duty and g[ave] substantial assistance or encouragement to the other to so act." *In re First All. Mortg. Co.*, 471 F.3d at 993.  Although the Opposition contends that Plaintiffs' "well-pled allegations supply the details of Bain's knowledge" necessary to state a claim for aiding and abetting, (Opp. at. 40), merely stating that the allegations are well pled or that Bain knew of PowerSchool's actions does not render those requirements met.  In support of their arguments, not only do Plaintiffs rely on purported actions that they allege only ***PowerSchool*** carried out, (Opp. at 40–41), but Plaintiffs also improperly equate Bain's alleged control of PowerSchool with Bain's knowledge of PowerSchool's supposed negligent actions.  For example, the Opposition contends that Bain's purported control of PowerSchool meant that Bain knew of PowerSchool's alleged misrepresentations.  *Id.*  These are not equivalent, and there are no factual allegations supporting such an inference.  Similarly, it would be improper to infer from Bain's discussions with PowerSchool about a potential transaction and Bain "stud[ying] and bec[oming] intimately involved with PowerSchool" that Bain aided and abetted PowerSchool's alleged violations, even if those allegations were adequately pled—which they are not.  (Opp. at 40).

### C. Plaintiffs' Declaratory Judgment Act Claim Also Fails (Count VI)

The cases Plaintiffs cite in their Opposition that permit declaratory judgment claims to proceed, (Opp. at 33–35), are distinguishable from this case because the plaintiffs in each of those cases adequately pled an underlying claim.  Here, however, Plaintiffs have failed to plead any viable cause of action against Bain and therefore cannot pursue declaratory judgment.  Plaintiffs contend that their claim for declaratory judgment should proceed specifically because they contend they have adequately pled negligence and UCL claims against Bain.  (Opp. at 34).  Tellingly, they do not even suggest that they have adequately pled the remainder of their Direct

- 21 -

Liability Counts.  Regardless, Plaintiffs have not sufficiently alleged any claim against Bain—let alone one for negligence or under the UCL—warranting dismissal of their declaratory judgment claim.  *See also City of Reno* v. *Netflix, Inc.*, 52 F.4th 874, 878–79 (9th Cir. 2022) (providing, contrary to Plaintiffs' contention, that "the Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists").

### III.   PLAINTIFFS FAIL TO ALLEGE THAT BAIN IS SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA

Plaintiffs have not met their burden of demonstrating that they have met all three prongs of specific jurisdiction: purposeful availment or direction, relatedness, and reasonableness.[20]  *See Matter of Star & Crescent Boat Co., Inc.*, 549 F. Supp. 3d 1145, 1161, 1170 (S.D. Cal. 2021) (Benitez, J.).  Plaintiffs' Opposition relies on the flawed premise that the Court has personal jurisdiction over Bain because it allegedly controlled PowerSchool, (Opp. at 8–9), but the mere fact that PowerSchool is based in California is not a sufficient basis for the Court to exercise personal jurisdiction over Bain.

***Purposeful Availment or Direction.***  Plaintiffs fail to allege that Bain engaged in specific conduct that created a substantial connection with or expressly aimed its activities at California.  (MTD at 17) (citing *Medimpact Healthcare Sys., Inc.* v. *IQVIA Holdings Inc.*, 2020 WL 1433327, at *5 (S.D. Cal. Mar. 24, 2020); *Rochfort* v. *EF Inst. for Cultural Exch., Inc.*, 2020 WL 12833951, at *5 (S.D. Cal. Sept. 8, 2020)).  Contrary to Plaintiffs' assertions, the Complaint does not allege that merger negotiations took place in California.  (Opp. at 8; *see* Compl. ¶¶ 71–85).  And the

---

[20]   The Opposition failed to acknowledge or respond to Bain's argument that Bain is not subject to general jurisdiction in California. (MTD at 16).  Accordingly, the Court need not consider general jurisdiction as to Bain.  *See B&L Prods., Inc.* v. *Newsom*, 2022 WL 3567064, at *6 (S.D. Cal. Aug. 18, 2022) ("Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate.").

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                25-md-3149-BEN-MSB

mere fact that Bain entered negotiations with a California company does not suffice to establish purposeful availment, because the "focus" of the purposeful direction inquiry is Bain's "contacts with the forum state, not [Bain's alleged] contacts with [a] resident of the forum." *See Zarif* v. *Hwareh.com, Inc.*, 2023 WL 5242452, at *3 (S.D. Cal. Aug. 15, 2023); *Hamchorom, Inc.* v. *88 Market*, 2019 WL 13092929, at *4 (C.D. Cal. Sept. 19, 2019) (same).[21]   Additionally, Plaintiffs face a significant burden to establish specific jurisdiction based on an agency relationship, as they must allege that Bain "ha[d] the right to substantially control" PowerSchool's activities.[22] *See Williams* v. *Yamaha*, 851 F.3d 1015, 1024–25 & n.5 (9th Cir. 2017); *see also Sunderland* v. *PharmaCare U.S., Inc.*, 2024 WL 2116069, at *4 (S.D. Cal. May 10, 2024) ("[S]pecific jurisdiction based on a parent-subsidiary agency relationship . . . requires a showing higher than 'normal oversight of a parent over a subsidiary' and more akin to 'control of day-to-day operations.'" (citations omitted)); *Sivilli* v. *Wright Med. Tech., Inc.*, 2019 WL 2579794, at *6 (S.D. Cal. Jun. 24, 2019) (similar).[23]   For the reasons discussed *supra*, Section I.B, Plaintiffs'

---

[21]   Plaintiffs' citations to out-of-state precedent are unavailing. *See China National Chemical Construction Chongqing Co.* v. *Seedling*, 2006 WL 8449845, at *6–7 (D. Or. Jan. 3, 2006) (Merger negotiations did not establish personal jurisdiction because "the record fail[ed] to reveal that the merger . . . had anything to do with the arbitration award which petitioners [sought] to confirm"); *Osborne* v. *German,* 2012 WL 1004736, at *4 (N.D. Ohio Mar. 23, 2012) (no personal jurisdiction following merger negotiations because "plaintiff ha[d] not shown . . . how the contemplated merger would have affected Ohio").

[22]   Plaintiffs have conceded that they cannot establish the level of control necessary to establish purposeful availment under an alter ego theory. (Opp. at 15) (describing Plaintiffs' alter ego theory as "since-dismissed").  Their failure to follow through on this theory indicates that Plaintiffs cannot plead the level of control necessary under an agency theory either.  *See Ocampo*, 2023 WL 6305801, at *6 (declining to consider personal jurisdiction under an agency theory after concluding that the plaintiffs did not adequately plead alter ego).

[23]   The "stream of commerce" cases that Plaintiffs cite are inapposite. (Opp. at 9 & n.8) (citing *Berven* v. *LG Chem, Ltd.*, 2019 WL 1746083, at *10–13 (E.D. Cal. Apr. 18, 2019) and *Wash. Rsch. Found.* v. *Sanofi*, 2016 WL 11261498, at *7–8 (W.D. Wash. Aug. 5, 2016)).  Plaintiffs do not seek to hold Bain liable for products liability,

- 23 -

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                    25-md-3149-BEN-MSB

conclusory allegations of control cannot meet this burden. *See Kalter* v. *Keyfactor, Inc.*, 2022 WL 658976, at *2–3 (S.D. Cal. Mar. 4, 2022) (finding no personal jurisdiction over a venture capital firm based a portfolio company's conduct where Plaintiffs made only conclusory allegations).

***Relatedness.*** Plaintiffs fail to identify a "direct nexus" between their allegations that PowerSchool failed to safeguard Plaintiffs' data and Bain's decision to invest in PowerSchool. (MTD at 18) (citing *Walsh* v. *LG Chem Ltd.*, 834 Fed. App'x 310, 312 (9th Cir. 2020)). They contend that Bain's "merger negotiations and subsequent ownership and control of PowerSchool are the 'but for' cause of Plaintiffs' injuries," (Opp. at 11), but those alleged activities are too attenuated from Plaintiffs' claims to demonstrate that the claims arose out of Bain's supposed contacts with California. Though Plaintiffs emphasize that PowerSchool allegedly changed its behavior during arms-length negotiations, (*e.g.*, Compl. ¶¶ 71–74), in order to become more desirable to investors, "another defendant's actions cannot serve as the basis for exercising personal jurisdiction." *CrossFit, Inc.* v. *Matrix Solutions, LLC*, 2020 WL 6484554, at *4 n.2 (S.D. Cal. Nov. 4, 2020). Under Plaintiffs' theory, when an investment firm and a potential portfolio company engage in negotiations for a potential transaction, any tort allegedly committed by the portfolio company would necessarily arise out of the negotiations and transaction itself. Such a theory is unprecedented and would allow plaintiffs everywhere to circumvent well-established constitutional limitations on personal jurisdiction.

Even if Plaintiffs could allege that Bain exercised sufficient control to constitute an agency relationship prior to October 1 (which they cannot, see *supra* Section I.B), Plaintiffs' claims cannot be said to arise out of Bain's alleged control, which did not exist until ***months after*** PowerSchool engaged in the alleged workforce reductions.

---

nor do they allege Bain engaged in sales or marketing in California through PowerSchool.

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                25-md-3149-BEN-MSB

***Reasonableness.*** Plaintiffs cannot rely on the fact that the JPML opted to consolidate the MDL in this District (Opp. at 12–13) to assert that personal jurisdiction over Bain would be reasonable in California, because personal jurisdiction is rooted in that of the transferor court, not the transferee forum or the JPML. *See In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379–80 (J.P.M.L. 2020). In their Opposition, Plaintiffs only argue California's interest in exercising jurisdiction over PowerSchool—not Bain. (MTD at 19; Opp. at 12).

Separate from Plaintiffs' failure to plead the above requirements as to California, Plaintiffs' Complaint and Opposition completely ignore the requirements for all jurisdictions aside from California. (*See* MTD at 15). Because jurisdiction over a member case in an MDL must exist in the district where the action is filed, the claims in those suits should be dismissed because Plaintiffs' opposition fails to state any reason why jurisdiction exists in those states. *See Delta Dental*, 509 F. Supp. 3d at 1379–80; *B&L Prods., Inc.*, 2022 WL 3567064, at *6. Additionally, the Court should dismiss the *Moreno* complaint and need not consider the claims brought by those plaintiffs listed in Exhibit B to Bain's Motion, who were transferred to the MDL but did not join in the Track 1 Amended Complaint, as Plaintiffs' Opposition fails to acknowledge or respond to Bain's arguments on either point. (MTD at 4 n.1; Ex. B, Dkt. 286-4); *see B&L Prods., Inc.*, 2022 WL 3567064, at *6.

Recognizing their failure to plead jurisdiction over Bain, Plaintiffs ask this Court to order discovery "concerning the locus of merger negotiations." (Opp. at 13). But discovery on this point would be futile because, even if the Court found that the arms-length negotiations between Bain and PowerSchool took place in California, it would not change the fact that Plaintiffs' claims regarding the cybersecurity incident do not arise out of or relate to those negotiations. Therefore, the "pertinent facts ***bearing on the question of jurisdiction***" are not controverted. *Reynolds* v. *Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1009 (N.D. Cal. 2020)

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                    25-md-3149-BEN-MSB

(quoting *Butcher's Union Local No. 498* v. *SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)) (emphasis added).  Plaintiffs' request should therefore be denied.

## CONCLUSION

Accordingly, Bain respectfully requests that the Court grant its motion to dismiss the claims brought against Bain in the Consolidated Individual Users Putative Class Action Complaint with prejudice.

- 26 -

Dated:  November 10, 2025        Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON
        & GARRISON LLP

By:    */s/ John P. Carlin*
       John P. Carlin

       John P. Carlin (NY 3031887)*
       PAUL, WEISS, RIFKIND, WHARTON
               & GARRISON LLP
       2001 K Street, NW
       Washington, D.C. 20006-1047
       Telephone: (202) 223-7300
       jcarlin@paulweiss.com

       Jacobus J. Schutte (NY 5023353)*
       Dylan O. Smith (NY 5846076)*
       PAUL, WEISS, RIFKIND, WHARTON
               & GARRISON LLP
       1285 Avenue of the Americas
       New York, NY 10019
       Telephone: (212) 373-3000
       jschutte@paulweiss.com
       dosmith@paulweiss.com

       R. Rosie Vail (SBN 317977)
       PAUL, WEISS, RIFKIND, WHARTON
               & GARRISON LLP
       535 Mission Street, 25th Floor
       San Francisco, CA 94105
       Telephone: (628) 432-5100
       Facsimile: (628) 232-3101
       rvail@paulweiss.com

       *admitted *pro hac vice*

       *Attorneys for Defendant
       Bain Capital, L.P.*

- 27 -

BAIN'S REPLY IN SUPPORT OF MOTION TO DISMISS
CONSOLIDATED INDIVIDUAL USERS COMPLAINT                    25-md-3149-BEN-MSB

## CERTIFICATE OF SERVICE

I certify that on the 10th day of November, 2025, I filed the foregoing notice with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:  */s/ John P. Carlin*
John P. Carlin
Email:  jcarlin@paulweiss.com
*Counsel for Bain Capital, L.P.*

- 28 -