James E. Cecchi (NJ 030861989)
*Admitted Pro Hac Vice*
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
Email: jcecchi@carellabyrne.com

*Lead Counsel for Plaintiffs and the Putative School District Class*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION,<br><br>*This Document Relates to the School District Direct Action Track* | Case No. 25-md-3149-BEN-MSB<br><br>**SCHOOL DISTRICT CLASS ACTION PLAINTIFFS' RESPONSE TO SCHOOL DISTRICT DIRECT ACTION PLAINTIFFS' MOTION TO APPOINT PAUL W. EVANS TO SCHOOL DISTRICT DIRECT ACTION PLAINTIFFS' STEERING COMMITTEE**<br><br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A<br>Date: November 19, 2025<br>Time: 2:00 p.m. |

## I.    PREFATORY REMARKS

Plaintiffs, Brooklyn Laboratory Charter Schools, The Academy Charter School, The Academy Charter School 2, Gateway Academy Charter School, BRICK Buffalo Academy Charter School, Our World Neighborhood Charter Schools, and Irvington Public Schools (collectively "School District Class Plaintiffs"), respectfully submit this Response to School District Direct Action Plaintiffs' Motion to Appoint Paul W. Evans to School District Direct Action Plaintiffs' Steering Committee[1] (Dkt. No. 357) and state as follows:

As a preliminary matter, it is unclear to the School District Class Plaintiffs why the expansion of the School District Direct Plaintiffs' leadership team is necessary or warranted here. Presumably, from the outset, the School District Direct Plaintiffs had confidence that their leadership structure was capable of leading the litigation on behalf of their clients and there have been no developments in this case that should disturb that initial confidence. To the contrary, the School District Direct Plaintiffs have already sought and been appointed lead counsel, filed their master complaint, researched, drafted, and submitted their oppositions to Defendants' respective Motions to Dismiss, and engaged in the informal discovery process to prepare for mediation before Judge Phillips in January. Indeed, the litigation appears to be proceeding at the clip desired by this Court and there are no apparent circumstances that warrant the introduction of another member of the Court appointed leadership structure.

The School District Direct Plaintiffs' Motion provides little in the way of answering this question, stating only that "Mr. Evans and his firm possess a vast amount of resources and experience that will benefit Plaintiffs in this action" and generally reciting the accomplishments of Mr. Evans and his firm. Mot. at 1. Moreover, while Mr. Evan's litigation experience is noteworthy, it does not appear to include data privacy experience, which one would assume would be the type of experience to most benefit the School District Direct Action Plaintiffs in this litigation. Instead, the Court and the parties are left

---

[1] Hereinafter, the "Motion."



to guess at the reasons for this eleventh-hour request to expand what was previously represented to be a capable leadership structure.

Moreover, given that the Parties have been working to prepare for mediation before Hon. Layn R. Phillips in January, the Motion generates significant concerns that the introduction of additional firms to the Court appointed leadership structure could complicate the Parties' progress toward a meaningful mediation and disturb the Court's intention to oversee efficient and streamlined MDL proceedings. These concerns are amplified by the School District Class Action Plaintiffs' observations regarding the solicitation of individual clients by the School District Direct Action Plaintiffs.

## II.    <u>BACKGROUND</u>

Since the Court's appointment of leadership in the respective school district tracks, Counsel for the School District Class Plaintiffs has learned of a nationwide advertising campaign to solicit school districts to participate in individual litigation against PowerSchool that employs false and misleading information and generates confusion amongst putative class members.

Shortly after PowerSchool began notifying school districts across the United States that it had experienced a cybersecurity incident, the Frantz Law Group began contracting with other firms, bringing those firms in as co-counsel, in exchange for a share of the attorneys' fees ("Referral Firms"), and consequently undermining the efficiencies of resolving this litigation. The Referral Firms, on behalf of Frantz Law, also began sending emails, letters, and outreach materials to solicit individual school district clients for the Direct Actions in the litigation.

To solicit these clients, who are otherwise members of the putative School District Class, the Frantz Law Group appears to distort the lay understanding of a "class action" by comparing it negatively to a "mass action" and suggesting that only by participating in a "mass action" will school districts receive a favorable recovery. The false comparisons and misleading descriptions disseminated by the Referral Firms deceive putative class members into believing, among other things, that they will be denied adequate recovery if



they remain in the class. As explained in a memorandum sent by one of the Referral Firms on behalf of Frantz Law:

> **What is the difference between a Class Action v. Mass Action Litigation?**
>
> This litigation is commonly referred to as a "Mass Action." *The difference between a Class Action and Mass Action is the final financial benefit to the client.* In this Lawsuit, each school district will file their own individual action, in California Federal or State Courts where all the school district cases against Defendant will be litigated. As a group, we will be conducting extensive discovery against Defendant, in order to prove our claims in this matter.
>
> During this timeframe, there will be motion practice and settlement discussions between the parties to determine whether a settlement is appropriate. This is where the difference between a Class Action and Mass Action exists. When there is a resolution, *each client will be presented with an individualized settlement offer that provides **compensation for all past and future damages**.*
>
> In a Class Action, the signed-up, individual *plaintiffs do not receive the full extent of their actual past and future damages; rather, **they receive a nominal amount** which represents the credibility of their claim. For cases where there is extensive damages for a plaintiff, such as this case, **a Mass Action offers greater benefits** to the school district.*

Ex. A at 3 (emphasis added).

The putative School District Class Action members are misled by these representations to believe that any recovery in a class action will be nominal at best, that only in a "mass action" can they maximize their financial recovery, and that any settlement will "provide[] compensation for *all* past and future damages." *Id*. These plainly false statements generate confusion and mislead putative class members into believing that absent individual litigation, their rights will not be protected.

Another attorney for a Referral Firm, Ashley Story, of White & Law Story LLC, represented that:

> [H]er firm is partnering with Frantz Law Group to represent the district in a mass action lawsuit, not a class action. In a mass action, each district files individually and can pursue damages based on its own losses. '*This district is owed certainly more than **30 or 100 dollars**,*' [Ashley] Story said. 'You all have paid a lot of money for secured data, and it has not been secured since 2008, 2009.'



Ex. B at 2-3 (emphasis added). In making such a statement, Ms. Story is attempting to conjure images of pennies on the dollar class settlements that have been popularized to stigmatize the class action device. By representing that by remaining in the Class that School District Class Action members will realize only $30-100 in settlement benefits, Ms. Story flatly misrepresents the potential range of the potential class action recovery, which account for individualized damages.

These concerns are not merely hypothetical, with at least one school administrator believing that if his district did not join the Direct Actions then his district would receive no recovery at all:

> [I]f PowerSchool decides to settle right away and we're not signed on by that date, then we will not be part of it, not getting anything . . .[and] [t]his litigation will have it in the settlement, if we win, that we are not liable for this data breach or any actions thereof in the future."

Ex. C at 1-2.

By misleading putative School District Class members into believing that, absent retaining Frantz Law, they will receive nothing in the event a settlement is reached and that particular results (immunity from future suit) will be achieved in a yet to be consummated settlement, Frantz Law's agents have made false and misleading statements and misrepresented the status or effect of the pending action which has resulted in actual confusion amongst putative class members.

Importantly, these misrepresentations deprive putative class members of the ability to make informed decisions regarding whether to seek independent counsel or remain represented by Class Counsel. Frantz Law is also omitting from their consideration the benefits of remaining an absent class member, including not having to participate in discovery or devote significant and scarce public resources to participate in the action directly.

Indeed, the Frantz Law Group misleadingly suggests that the required time and commitment of filing an individual action will amount to mere hours. As one advertising memorandum states:



**What time commitment will be required of my district if we choose to join the Lawsuit?**

Unlike "typical" litigation, which often requires a tremendous amount of time and resources, we anticipate that participation in the Lawsuit will require a much more limited commitment on behalf of the school districts. Although we cannot say with certainty (as each case is different), it is our best estimate that a district representative may need to devote no more than 5-8 hours of time to assist with the Lawsuit. This time will consist of helping to draft responses to written questions from Defendant's attorneys and/or the Court, gather relevant documentation, and review a final version of responses to questionnaire for filing with the Court.

Unlike other litigation that your district may have previously been involved in, we do <u>not</u> anticipate that any district representative will be deposed or have to appear in court. If your district is selected as a bellwether plaintiff, a greater time commitment will be required. Should this be the case, your district will be informed and be able to make a decision whether to proceed with the Lawsuit or opt out.

Ex. A at 3-4. This representation ignores the actual obligation that each school is assuming, including participating in the discovery process by producing documents or sitting for depositions, or attending court hearings or perhaps trial.

The impact on school district personnel is quite real. For example, in a Technology Board Report for New Hampshire Administrative Unit #15 dated May 13, 2025, Mr. Adam Hollins wrote that "[t]his month I spoke with an attorney for the Frantz Law Group, whom is the law office filing the mass action lawsuit against PowerSchool . . . the law office will only get paid if the lawsuit is successful and part of the lawsuit is payment of any legal fees so if successful schools will get 100% of awarded funds. *Participating Districts will only need to complete a questionnaire that takes between **1-3 hours** to complete.*" Ex. D. at 27 (emphasis added).

Accordingly, Class Action Members are signing up to pursue individual actions with a complete misunderstanding of what their enrollment actually means, their obligations to the Court and opposing parties, and the legal implications of filing an individual lawsuit, including the risk of dismissal or adverse evidentiary findings. Frantz Law's unbridled drive to retain clients will result in significant harm to School District Class members,

especially if those who file in the Direct Actions are later tasked with responding to discovery, sitting for depositions, or bringing a case to trial—which even in a bellwether process remains a possibility for each case filed.

The inconsistencies and misstatements in these communications have caused significant harm among putative School District Class Action Members and are highly prejudicial to the putative class. School District Class Action Members solicited by the Direct Action counsel are led to believe they are joining a mass action with a time commitment of one to seven hours. Nowhere are the school districts informed that each case is an individual action that could go to trial, even with a bellwether process. Class Action Class members have also been misled to believe that they need to join or else waive their rights to relief, while being led to believe that they will be compensated only $30-$100 or some nominal amount by remaining as Class Action Members. These statements are false, misleading, and create confusion amongst the Class Action Members.

It is clear that these statements are sowing confusion amongst putative class members as evidenced by statements made by Pittsfield Public Schools Information Technology Director Richard White, including:

- [I]f PowerSchool decides to settle right away and we're not signed on by that date, then we will not be part of it, not getting anything[.] Ex. C.

- [The] suit differs from a class action, where all of the litigants have the same lawsuit. It is a mass action suit because the districts have individual contracts and agreements. *Id*.

- We could potentially get money back for 25 years of PowerSchool. *Id*.

Accordingly, given that these statements have already been disseminated and have provoked actual confusion amongst the putative class, the request by the School District Direct Action Plaintiffs to expand their leadership slate with a proposed lead that lacks particular experience in the subject matter of the litigation raises concerns that the intent is to amplify these solicitation activities. These concerns are not speculative as counsel for the School District Direct Action has publicly stated that "[w]e're just in the initial stages.



We expect there to be hundreds if not over a thousand school districts that will end up getting involved in this case."[2] Given that the School District Direct Action's activities have already provoked confusion amongst the class allowing counsel for the School District Direct Action to increase the scope and pace of these activities will foster inefficiencies, sow confusion, and disrupt the efficient pace of these proceedings. If the School District Direct Action leadership is experiencing difficulty managing their current caseload then the answer, perhaps, is to stop adding to the pool of clients rather than expand the leadership structure. Alternatively, to address concerns about manageability and misrepresentation, the Court could enter a protective order governing the solicitation of clients.

### III.    CLOSING REMARKS

Ultimately, the decision as to whether or not to expand the School District Direct Action leadership slate is matter within the discretion of the Court. However, to aid the Court in making that determination, to preserve the pace of litigation, maintain the progress toward mediation, and prevent further confusion amongst members of the putative school district class, the School District Class Action Plaintiffs bring these matters to the Court's attention.

---

[2] Index-Journal (Greenwood, S.C.), *D50 Joins PowerSchool Data Breach Lawsuit* (May 21, 2025), https://www.indexjournal.com/news/d50-joins-powerschool-data-breach-lawsuit/article_b5aa0e52-e47c-435a-8b85-5f64a5c5269c.html

Dated: November 14, 2025

Respectfully submitted,

/s/ James E. Cecchi
James E. Cecchi (NJ 030861989)
*Admitted Pro Hac Vice*
Jason H. Alperstein (FL 64205)
*Admitted Pro Hac Vice*
Jordan M. Steele (SBN 362684)
**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
Email: jcecchi@carellabyrne.com
Email: jalperstein@carellabyrne.com
Email: jsteele@carellabyrne.com

*Lead Counsel for the proposed School*
*District Class and Counsel for Plaintiff*

John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
402 W Broadway, Suite 1760
San Diego, California 92101
Tel.: (858) 209-6941
Email: jnelson@milberg.com

M. Anderson Berry (SBN 262879)
**ARNOLD LAW FIRM**
865 Howe Avenue,
Sacramento, California 95825
Tel.: (916) 777-7777
Email: aberry@justice4you.com

Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel.: (954) 525-4100
Email: cardoso@kolawyers.com

Tyler S. Graden (NJ 028462007)
*Admitted Pro Hac Vice*
**KESSLER TOPAZ**
 **MELTZER CHECK LLP**
280 King of Prussia Road



Radnor, Pennsylvania 19087
Tel.: (610) 667-7706
Email: tgraden@ktmc.com

*Steering Committee for the proposed*
*School District Class*

Michael Critchley, Sr. (NJ 251821972)
*Pro Hac Vice Forthcoming*
**CRITCHLEY & LURIA, LLC**
75 Livingston Avenue
Roseland, New Jersey 07068
Tel.: (973) 422-9200
Email: mcritchley@critchleylaw.com

*Additional Counsel for Plaintiffs*

