# EXHIBIT D

**AUBURN SCHOOL BOARD MEETING**
**Tuesday, May 13, 2025 6:00 p.m.**
**Auburn Village School Media Center**

**BUILDING WALK-THROUGH**

I. **CALL TO ORDER** – Derek Berger, Board Chair

II. **PLEDGE OF ALLEGIANCE**

III. **PROOF OF POSTING** – William Rearick

IV. **APPROVAL OF MINUTES**
 A. Minutes of the Auburn School Board Meeting on April 8, 2025* (action required)
 B. Non-Public, Sealed Meeting Minutes of April 8, 2025 (action required)

V. **OPPORTUNITY FOR PUBLIC TO ADDRESS THE BOARD**

VI. **SUPERINTENDENT'S UPDATES**

VII. **REPORTS**
 A. Reports of Administrators*
 B. Reports of Sub-Committees

VIII. **OLD BUSINESS**
 A. Communications Committee-M. Gilbert

IX. **NEW BUSINESS**
 A. Retreat Agenda
 B. General Assurances

X. **FINANCIAL**
 A. Expenditure Report*
 B. Manifest Approval

XI. **PERSONNEL**
 A. Resignations*

XII. **POLICIES**
 A. Second Reading* ILD Non-Academic Surveys and Questionnaires, IHAMA Teaching About Alcohol, Drugs and Tobacco, JJIC Eligibility for Interscholastic Athletics, JFABB Foreign Exchange Students, JF Enrollment and BK School Board Memberships
 B. First Reading* GBAA and JBAA Sexual Harassment and JH Attendance, Absenteeism and Truancy

XIII. **OPPORTUNITY FOR PUBLIC TO ADDRESS THE BOARD**

XIV. **NON-PUBLIC SESSION:  RSA 91-A:3 Section II (a-l if necessary)**

XV. **INFORMATIONAL ITEMS AND CORRESPONDENCE, and/or MISCELLANEOUS INFORMATION**
Enrollments*
Upcoming: Annually Reviewed Policies

XVI. **ADJOURNMENT** (**action required**)

The next regularly scheduled Auburn Board Meeting is on Tuesday, June 10, 2025 at 6:00 p.m. at the Auburn Village School Media Center.

The SAU Board will meet on Wednesday, May 29, 2025 at 6:30 p.m. at the Auburn Village School.

*Materials provided in packet*
Please note: In addition to the items listed on the agenda, the Board may consider other matters not on the posted agenda and they may enter a non-public session or convene in non-meeting session in accordance with RSA 91-A if the need arises.

**IV.A.**

**AUBURN SCHOOL BOARD MEETING**
**April 8, 2025 AT 6:00 P.M.**
**AUBURN VILLAGE SCHOOL MEDIA CENTER**

**These minutes have not been approved.**

William (Bill) Rearick called the meeting to order at 6:00 p.m. Those in attendance were members Janice Baker, Derek Berger, Adrian Newton, Michelle Gilbert and Anthony Piascik. Also in attendance was Principal Lori Collins, Assistant Principal's, Lindsay Murray and Jennifer Barnhill, Director of Student Services, Christina Catalano, Curriculum Coordinator Jenn Bordis, Maintenance Director, Scott Dube, Superintendent of Schools William (Bill) Rearick, Assistant Superintendent Kimberly Sarfde, and Business Administrator, Cheryl DiGennaro.

Bill Rearick said the first order of business was for Board Reorganization.
Motion by Janice Baker, seconded by Adrian Newton, to nominate Derek Berger as Board Chair, and the motion carried unanimously.
Derek then presided over the meeting.
Motion by Adrian Newton, seconded by Anthony Piascik, to nominate Janice Baker as Vice Chair, and the motion carried unanimously.
Motion by Janice Baker, seconded by Anthony Piascik, to nominate Adrian Newton as Board Clerk, and the motion carried unanimously.

**PLEDGE OF ALLEGIANCE**
Derek Berger introduced 8th graders Kylie Baillargeon and Callie Ouellette led the attendees in the Pledge of Allegiance.

**PROOF OF POSTING**
Bill Rearick provided proof of posting.

**APPROVAL OF MINUTES**
Motion by Janice Baker, seconded by Adrian Newton, to approve the March 11, 2025 Board meeting minutes, and the motion carried unanimously.

**OPPORTUNITY FOR PUBLIC INPUT**
Mark Monroe-McEvoy Rd. stated that the deliberation minutes should be improved to be more robust. He also said that the Pinkerton start-time survey was lacking in information. He said other creative options should be considered. Finally, Mr. Monroe stated that he felt the Board should respond to comments made in the public input session of the meeting.

**SUPERINTENDENT'S UPDATES**
Bill Rearick stated that the newly reinstated Board member stipends will be issued on Friday. Bill summarized his report and added that his offices was notified by the NH Department of Education that the federal government is requiring school districts to verify they don't participate in any DEI initiatives, and asked Superintendent's to sign a letter attesting that their district(s) don't engage in illegal actions related to DEI initiatives. He said the NH ACLU has filed an injunction to determine whether or not to move forward. Bill said Auburn Policy DAF will be before the policy committee to remove language specifically related to Title VI.
Bill also spoke of continuing issues with the bus company and the number of late buses and missed buses which invoices are being held back paying as liquidated damages. He said First Student has now started charging for 'excess hours' which the district is challenging. Bill said he has been meeting with the attorneys and First Student to come to some sort of agreement.
Janice Baker said it would be helpful to know all the non-town revenues. Derek Berger gave a brief history of the Pinkerton Start Time committee and how it was established. Pinkerton formed a committee and invited the sending towns to participate as well. Pinkerton sent out a survey and requested that the sending towns do so as well. Of the two town's in SAU #15 which participated, Bill Rearick said the majority of the responses were not in favor. Derek Berger said further discussions will take place at the next Start Time Committee meeting.

**REPORTS**
Reports of administrators were reviewed.
Kimberly Sarfde stated all teachers' certifications which were up for renewal for the 2024/2025 school year have been renewed. Kimberly added that many new bills are being considered for the legislature.

Adrian Newton asked who tracks policies and changes in law, to which Bill Rearick stated that he and Kimberly do. Adrian said she would like a paragraph dedicated to policy tracking in an administrator report.
Jenn Bordis said they are working on getting back to annual reviews of curriculum and getting grade level representatives to hash out problems and gaps. Janice Baker requested a deeper dive into curriculum and its review cycle.
Scott Dube asked the Board if they would be interested in a walk-through of the building.

Adrian Newton reported on PTA events that included:
- Summer camp enrollment is up
- Mother –son event
- Missoula Children's Theater
- Fundraising cash calendar
- Applied for a grant for 7th grade rocket materials

**OLD BUSINESS**
**Strategic Plan**
Jenn Bordis summarized the Strategic Plan, the strategy, progress, evidence, accountability and deadline of each category, which was in the packet.

**NEW BUSINESS**
**2025 Meeting Schedule**
The Board consensus was to accept the 25/26 Board Meeting Schedule as amended and presented, changing the October meeting to the 14th and the November meeting to Wednesday, November 12.
**Standing Committee Assignments**
Budget-Member, Derek Berger – Alternate, Janice Baker
Policy-Michelle Gilbert
Sick Leave Bank-Anthony Piascik
Technology-TBD
PTA-Member, Anthony Piascik
AEA Negotiations-Member, Janice Baker – Alternate, Adrian Newton
Transportation-Michelle Gilbert
Pinkerton Start Time-Derek Berger
Manifest-Adrian Newton
Motion by Janice Baker, seconded by Adrian Newton, to approve the 2025/2026 Standing Committee assignments, and the motion carried unanimously.
Michelle Gilbert questioned if there was a need for a communications committee. Some discussion ensued. This topic will be on the May agenda for further discussion.

**FINANCIAL**
**Expenditure Report**
The expenditure report was in the packet for review.
**Manifest Approval**
Motion by Adrian Newton, seconded by Janice Baker, to approve the manifest in the amount of $809,570.22, and the motion carried unanimously.

**POLICIES**
Policies ILD Non-Academic Surveys and Questionnaires, IHAMA Teaching About Alcohol, Drugs and Tobacco, JJIC Eligibility for Interscholastic Athletics, JFABB Foreign Exchange Students, JF Enrollment and BK School Board Memberships were reviewed as a first reading.
Motion by Janice Baker, seconded by Adrian Newton, to approve the first reading of the policies as amended, and the motion carried unanimously.
Janice Baker spoke to the policy process and asked for policies to be added to the retreat agenda for further discussion.

**PUBLIC INPUT**
Mark Monroe addressed the Board and asked for better communication. He reiterated his earlier comment about the Start Time survey was 'not hitting its goal', asked again for creativity when considering transportation to Pinkerton Academy. Mr. Monroe also spoke to Bill Rearick's update regarding having to sign an attest letter, saying the district is not doing anything illegal; that we are not breaking any law as no federal law has been changed. Derek Berger said the district's attorneys are looking into this matter.

**INFORMATION ITEMS**
Enrollments

Upcomin: General Assurances, Communications committee discussion, Building Walk-through, Retreat agenda

At 8:10 p.m., motion by Janice Baker, seconded by Adrian Newton, to enter into a non-public meeting under RSA 91:A 3 Section ll a. A roll call vote was taken. With all in favor, the motion carried.
The Board re-entered a public session at 8:50 p.m.

Motion by Janice Baker, seconded by Adrian Newton, to seal the non-public minutes in perpetuity, and the motion carried unanimously.

**ADJOURNMENT**
Motion by Adrian Newton, seconded by Anthony Piascik to adjourn the meeting at 8:55 p.m., and the motion carried unanimously.

The Auburn School Board's next regularly scheduled meeting will be held on Tuesday, May 13 at 6:00 p.m. in the Auburn Village School Media Center.


Respectfully submitted.

Rebecca SJ McCarthy
School Board Recording Secretary

# New Hampshire School Administrative Unit #15                    VI.

90 Farmer Road
Hooksett, New Hampshire 03106-2125
*Telephone* (603) 622-3731    *Fax* (603) 669-4352

| **William J. Rearick** | **Kimberly Sarfde** | **Cheryl DiGennaro** |
|---|---|---|
| *Superintendent of Schools* | *Assistant Superintendent* | *Business Administrator* |

## Auburn Board Report
## May 13, 2025

## Pinkerton Start Time Committee

I attended the Pinkerton Start Time Committee meeting on April 23, 2025. Dr. Chris Harper reviewed the results of the Pinkerton Start Time Survey that some sending districts distributed to their parents and staff. Only three of the seven sending districts—Auburn, Candia, and Fremont—distributed the survey. In Auburn, 61% of respondents did not support a time change, while 39% were in favor. In Candia, 71% were against, and 29% were in favor. Fremont's results were split evenly: 50% in favor and 50% against.

Hampstead reported they would distribute their survey toward the end of the school year. Derry chose not to send the survey, as they are changing start times at all of their schools next year and believed the survey could confuse parents. Chester did not submit any results. Since the majority of feedback received did not support changing start times, the issue has been placed "on the back burner."

The sending districts expressed interest in exploring the feasibility of forming a busing consortium that would include all the sending districts. The goal would be to identify operational efficiencies that could lead to cost savings. It was agreed that the next step would be to meet with First Student (which currently services all the sending districts) to discuss the possibility of forming such a consortium. I noted that SAU 15 has not had a positive relationship with First Student. As a result, the committee agreed to reach out to companies that provide bus tracking software for schools. The intention is to review at least two proposals, rather than hearing solely from First Student.

## South Central Superintendents' Meeting

I attended the South Central Superintendents' meeting on April 18, 2025, held at Pinkerton Academy. Commissioner Frank Edelblut provided an update on Title VI recertification. He acknowledged that some districts may be hesitant to sign the attestation document that the NHDOE sent out in early April. He reaffirmed that by signing the document, districts are simply confirming compliance with the Civil Rights Act of 1964.

We were informed that the NHDOE has a webpage showing which districts have submitted the attestation. Districts have until April 23, 2025, to do so. Commissioner Edelblut reminded superintendents that failure to submit the document may result in the loss of federal funding.

The Commissioner also gave an update on the status of federal grants for next year, including IDEA, Title I, II, III, and IV. He expressed confidence that the state would receive funding for all except Title II, which remains uncertain. While the federal government provides initial estimates in July, the final figures won't be confirmed until October. Therefore, the Commissioner recommended that districts avoid committing all federal funds until the final allocations are known. He also urged districts with unspent

***Serving the School Districts of Auburn, Candia, and Hooksett***
*Equal Opportunity Employer - Equal Educational Opportunities*

SAFE Grant funds to use them before the end of the fiscal year or risk losing them. SAFE Grants support school safety upgrades. An additional $10 million is included in next year's state budget for these grants.

## Cybersecurity Meeting

On April 14, I met with the SAU 15 administrative team. The purpose of this meeting was to review the estimates we received for moving all our paper and electronic files to be stored on a separate cloud-based server. We are researching this because each district wants to ensure access to these files in the event of a cyberattack. If we were to experience a cyberattack, we would not be able to access any of these files for a period of two weeks. The downtime could be longer depending on the nature of the attack.

I will have the final estimate for the Board to review and consider at the Board Retreat on June 6.

## School Visits

On April 11, Lori, Kimberly, and I visited the 4th-grade and World Cultures classrooms. During our visit, we observed students learning to convert minutes to hours and  to solve word problems. One class was participating in a whole-group lesson, while another was working in small groups. Students in the last 4th-grade classroom we visited were participating in a reading lesson.

We also had the opportunity to visit the World Cultures classroom. Students were engaged in a group lesson called *Cultural Pizza*, where facts about different countries were written on paper shaped like pizza slices. Students had to remember various facts about the country and report back to their classmates.

On April 24, I was invited by Melissa Prunier to visit her classroom to watch students present their research reports on an animal of their choosing. I had the pleasure of sitting in a small group with three students who explained what they learned from their research. Each of the students did an excellent job with their presentations. It was a pleasure to interact with students in this setting.

## Grading Meeting

On April 23, Kimberly and I attended the middle school grading committee meeting. Teachers discussed the current late work requirements being used in their classrooms. Each grade level has different policies. Jen Barnhill, who chaired the meeting, emphasized the need to streamline these expectations. The next meeting will be held on May 7.

## Curriculum Update

I met with Lori and her administrative team on April 24 to review a draft of a Curriculum Review Cycle for all the major content areas. Lori and Jenn Bordis also provided me with an overview of the subject standards that will be provided to teachers at the beginning of the 2025–26 school year. Lori and her team will have the final draft ready to present at next month's Board Retreat.

## Special Education Meetings

*Serving the School Districts of Auburn, Candia, and Hooksett*
*Equal Opportunity Employer - Equal Educational Opportunities*

Cheryl and I met with Christina on April 23 and May 7 to review the special education budget. There were no significant changes to any line items. I would like to note how impressed I am with Christina's diligence in monitoring the special education portion of the budget. She is extremely familiar with the budget and is able to clearly explain any variations that may occur.

## Expenditure Report

The May expenditure report indicates a balance of $545,770, reflecting a decrease of $37,884 from the April expenditure report.

## Pending Legislation

Attached is a summary of key legislation currently under review by the Legislature in Concord for your review.

*Serving the School Districts of Auburn, Candia, and Hooksett*
*Equal Opportunity Employer - Equal Educational Opportunities*

**Pending Legislative Bills**

1. **HB-742 Funding of Special Education by the state.**

   This bill would eliminate the prorating of special education funds to school districts.

   The governor would be able to draw funds from the Educational Trust Fund if the account falls below zero.

   An additional 16.4m will be added to the FY26 budget for special education reimbursement to school districts

2**. HB-771 Open Enrollment for public schools**

   This bill would all districts to accept students from other districts.

   Sending districts would pay 80% of their pupil costs.

   The sending districts would be responsible for paying for transportation.

3. **HB-718 Unfunded financial impact on school districts for unfunded federal and state mandates.**

   If passed, this bill would require school districts to report the costs when they exceed federal and state minimal standards**.**

4. **HB-557 Information on School Budget ballot**

   This bill would require the following information to be placed on school district's Budget warrant articles.
   - Average per pupil enrollment divided by expenditure
   - 5 yr. enrollment data
   - Full-time teacher/admin ratio

5. **HB- 560 Parental access to medical records**

   If passed, parents would be able to request their child's medical records.  The bill provides for the following exceptions.
   - Any treatment a minor can consent to.
   - Protection Order
   - Healthcare provider believes release of the records may lead to abuse or neglect.

6. **HB-265 Public Body Minutes**

   This bill would require the minutes for all public bodies to contain the start/end times and they must contain the individual's printed name and signature of whoever is taking the minutes.

**7. HB-90 Definition of Part-time teachers**

Teachers who work up to 20hrs. per week do not need to be certified

**8. HB-231 Transportation of students by school personnel.**

If passed, this bill would prohibit school personnel from transporting students to Medical or mental health appoints without parent consent.

Students could be transported if a school is following its medical/health protocols.

**9. HB-184 Establishment of a committee to study start times for school districts.**

**10. SB-268 Permitting classification individuals based on biological sex under**

This bill if passed introduces a definition for "biological sex" and clarifies that certain classifications based on biological sex do not constitute unlawful discrimination. Specifically, it amends RSA 354-A:1 to include a new section that recognizes the importance of treating all individuals with dignity and respect while also acknowledging that there are limited circumstances where classifying individuals by biological sex is necessary. These circumstances are aimed at protecting privacy rights and physical safety, as outlined in the newly inserted RSA 354-A:25-a.

The new section specifies that it is not considered unlawful discrimination for individuals or organizations to classify based on biological sex in specific contexts, including the use of multi-person lavatory facilities, participation in athletic events where physical attributes may confer advantages, and the operation of facilities such as prisons and mental health treatment centers. The bill defines "biological sex" as the male and female biological sexes but clarifies that it does not mandate the separation of individuals based on biological sex.

**11. SB-295 Freedom Education Accounts**

This bill amends the eligibility criteria for education freedom accounts (EFAs) by eliminating household income thresholds, thereby increasing the number of students who can access these accounts. Specifically, it removes the requirement that a student's annual household income must be less than or equal to 350 percent of the federal poverty guidelines at the time of application. Additionally, the bill introduces new provisions that establish a cap on total enrollment for the EFA program at 10,000 students, with the possibility of increasing this cap by 25 percent if applications reach 90 percent of the cap in any given fiscal year. The bill also prioritizes applications based on specific criteria, such as current EFA enrollment and family income levels, and mandates the scholarship organization to set and publicize application deadlines.

Furthermore, the bill includes provisions that remove certain conditions tied to the use of EFA funds and establishes a new paragraph outlining the responsibilities of the scholarship organization. The changes aim to streamline the application process and ensure that students who meet priority guidelines are given preference when applications exceed the enrollment cap. The bill is expected to have an indeterminable fiscal impact, as it may lead to an increase in the number of students accessing the EFA program, which could affect state expenditures and local school district funding.

**12. SB-204** Relative to the responsibility of local school districts to provide meals to students during school hours, reimbursing schools for meals provided to students at no cost, and making an appropriation therefor.

If passed this bill amends RSA 189:11-a to raise the eligibility threshold for free meals in schools to 200 percent of the federal poverty level. It ensures that meals served to students who meet federal income guidelines will continue to receive federal reimbursement, while meals not covered by federal rates will be reimbursed by the state at a rate covering 50 percent of the difference between federal rates for free and reduced-price meals or paid meals. Additionally, the Department of Education is mandated to adopt rules that require school districts to provide both online and physical applications for free meals, along with offering administrative assistance for the establishment of online applications.

The bill allocates $107,000 for administrative costs and $250,000 for reimbursements related to software for the online application process, with funding designated for the biennium ending June 30, 2026. It also estimates the funding required for breakfast and lunch reimbursements for students whose family income falls between the federal reduced-price guideline of 185% and the new 200% threshold, totaling approximately $6.9 million. Furthermore, the bill includes provisions for hiring two positions to manage the eligibility determination process and provide technical assistance to schools. While the bill does not specify any deletions from current law, it introduces new funding mechanisms and administrative requirements to support the expanded eligibility for meal reimbursements,

**13. HB-292 Establish a commission to study the consolidations of SAU's.**

**14. HB-781 Cell phone use in schools**

This bill mandates that school districts develop and adopt policies regarding the use of student cell phones and other personal electronic communication devices in schools. Specifically, it requires that these policies restrict the use of personal cell phones during class instruction, with exceptions allowed for students with medical needs, disabilities, or language proficiency requirements as determined by the superintendent or their designee.

The new legal language added to RSA 189:1-a includes a provision that ensures students with medical devices or those identified in individualized education programs (IEPs) are not prohibited rom using their devices to support their learning.

3

Additionally, the bill includes a fiscal note indicating that it does not provide funding or authorize new positions, but it does allocate $250,000 from the general fund in FY 2026 to reimburse school districts for the implementation of these policies. While the exact costs for implementation are indeterminate, the Department of Education anticipates needing a temporary program specialist to manage reimbursement requests, although the bill does not authorize this new position. The act is set to take effect on July 1, 2025

**15. HB-68 Making best interest placements within the same school district mandatory in the absence of a valid reason to deny the placement**.

If passed this bill will make it mandatory for school districts to grant a parent's request to change schools if the school is within the same school district.

**17. HB- Relative to prohibiting obscene or harmful sexual materials in schools.**

This bill seeks to prohibit the distribution of obscene or harmful materials to minors in educational settings and establishes a formal complaint process for parents or guardians. It amends RSA 650:4, I to allow individuals or institutions with "higher" educational justification to possess obscene material, while introducing a new subdivision under RSA 189 that defines harmful materials and outlines the responsibilities of educators. The bill clarifies key terms such as "material," "nudity," and "sexual conduct," ensuring a comprehensive understanding of what constitutes harmful content.

Local school boards are required to adopt a publicly posted complaint resolution policy by November 1, 2026, which will facilitate the submission of written complaints by parents. Schools must investigate these complaints and respond within specified timelines, with provisions for civil actions against non-compliant schools or districts. Successful petitioners may receive damages and legal fees, and educators may face disciplinary actions for violations. The Attorney General is empowered to enforce these provisions, potentially receiving damages for violations. The bill is set to take effect on January 1, 2026, and while it introduces new legal language regarding harmful materials and complaint policies, no deletions from current law are specified. The fiscal impact remains uncertain, particularly regarding enforcement costs.

**18.-HB-187 Relative to restraining orders sought by a parent on behalf of a minor child.**

This bill amends the Child Protection Act to broaden the scope of individuals against whom a parent or guardian can seek a restraining order on behalf of a minor child alleging abuse. Specifically, it removes the limitation that such petitions can only be filed against members of the minor's family or household, allowing for restraining orders to be sought against individuals outside of these categories. The bill also clarifiesthat a minor plaintiff does not need to be accompanied by a parent or guardian to receive relief or services under this chapter. Additionally, it maintains that any order issued under this chapter can be in conjunction with orders issued under RSA 173-B.

The bill is set to take effect on January 1, 2026, and is expected to have an indeterminable fiscal impact, with estimates suggesting an increase in expenditures ranging from $10,000 to $100,000 starting in fiscal year 2026. This potential increase in costs is attributed to the uncertainty surrounding the frequency of new restraining order petitions filed by parents against individuals outside the family or household context, such as peers or educators. The financial implications will largely depend on the volume of new cases filed and the associated administrative and judicial costs.

**19. HB-358.  Relative to exemption from immunization requirements on the basis of religious belief.**

This bill amends the current law regarding exemptions from childhood immunization requirements based on religious beliefs. It allows a parent or legal guardian to claim an exemption by providing a signed statement indicating that the child has not been immunized due to religious beliefs. The bill removes the previous requirement for a specific form to be filled out for this exemption, simplifying the process for parents and guardians.

The new legal language inserted into the law specifies that the exemption will only require a statement and a signature from the parent or legal guardian, eliminating the need for additional documentation. The bill retains the existing exemption for medical reasons, certified by a licensed physician, and clarifies that an exemption for one disease does not affect the requirement for other immunizations. The act is set to take effect 60 days after its passage.

**20. SB-211 Relative to biological sex in student athletics.**

The proposed bill, known as the Protection of Women's Sports Act, mandates that all school sports teams be explicitly categorized as male, female, or coeducational based on the biological sex of the participants at birth. It prohibits biologically male students from participating in female-designated sports or using female locker room facilities. The bill specifies that any athletic event designated for females is exclusively for students of the female sex, while male-designated events are open to students of either sex. Additionally, the bill does not apply to grades K-5 or to intramural or club sports.

Furthermore, the bill establishes a cause of action for athletes who suffer harm due to violations of these provisions, allowing them to seek injunctive relief and other equitable remedies against the responsible school or organization. It also protects athletes from retaliation for reporting violations, granting them similar legal recourse. The bill includes a provision stating that no governmental entity or educational institution will be liable for compliance with these regulations.

**21.  HB-10 Establishing the parental bill of rights**

This bill, known as HB 10-FN, establishes a "Parental Bill of Rights" to affirm and protect the rights of parents in making decisions regarding their minor children s upbringing, education, health care, and mental health. It introduces a new chapter, RSA 169-I, which defines key terms and outlines specific rights for parents, including access to information about their children, the ability to make health care decisions, and the right to be notified of any suspected criminal offenses against their children. The bill emphasizes that parental rights are inalienable and cannot be limited unless legally waived or terminated. It also prohibits state employees from encouraging minors to withhold information from their parents and sets forth consequences for violations of these rights.

Additionally, the bill mandates that school boards develop policies to promote parental involvement in education, including procedures for parental participation, access to course materials, and the ability to object to instructional content based on personal beliefs. It requires health care practitioners to obtain written parental consent before providing services to minors, with exceptions for emergencies. The bill does not allocate new funding but may increase legal complaints and right-to-know requests as it codifies existing regulations.

**22. HB-520 Relative to authorizing hearing officers of the department of education to issue subpoenas.**

This bill amends RSA 21-N:4 to authorize hearing officers of he Department of Education to issue subpoenas for investigations related to violations of the educator code of conduct.

**23. HB-446 Relative to parental notice for non-academic surveys in public schools.**

The bill mandates that school districts must email parents copies of non-academic surveys conducted in public schools, ensuring that parents are informed about the surveys and their purposes. It removes the previous exception for the Youth Risk Behavior Survey, which means that parents must now opt-in for their children to participate in this survey. The bill also stipulates that no student can be required to participate in a non-academic survey without the written consent of a parent or legal guardian, unless the student is an adult or an emancipated minor.

Additionally, the bill requires school districts to make these surveys available for review on their websites and at the school, and to notify parents or legal guardians at least 10 days prior to the distribution of any non-academic survey. The new legal language includes provisions for notifying parents via email and other means deemed appropriate by the district, while the previous language that allowed for an opt-out option for the Youth Risk Behavior Survey has been deleted.

**24.  HB-191 Providing criminal and civil penalties for the transporting of an unemancipated minor in order to obtain a surgical procedure without parental permission.**

This bill introduces criminal penalties for the transportation of an unemancipated minor without parental consent for the purpose of obtaining a surgical procedure. Specifically, it amends the criminal code by adding a new section, RSA 633:4-a, which classifies such transportation as a class A misdemeanor, escalating to a class B felony for repeat offenders. The bill defines an unemancipated minor as any child under 18 who is not married or legally freed from parental custody. Notably, the bill outlines exceptions for parents or guardians, individuals with notarized consent, common carriers, and emergency medical personnel. Additionally, it states that the minor's consent does not serve as a defense against prosecution.

Furthermore, the bill establishes a private right of action for civil suits against individuals who violate the new law. It allows parents or guardians, as well as the minor once they reach adulthood, to sue for damages, which may include economic and noneconomic damages, punitive damages, and legal fees. The act is set to take effect 60 days after passage. The fiscal impact of the bill is indeterminable, as it may affect judicial and correctional systems, potentially influencing costs related to prosecution and incarceration.

**25. HB-138 Relative to tax impact notation on warrant articles with multi-year tax impacts.**

This bill mandates that any special warrant articles with multi-year tax impacts in towns that have already voted to require a notation of the estimated tax impact for the annual budget and all special warrant articles must include specific tax impact information. The new legal language inserted into RSA 32:5, V-b specifies that these articles must contain a notation detailing the estimated tax impact for each year over the first five years, or for each year if the tax impact is less than five years. This requirement aims to enhance transparency regarding the financial implications of such articles for the towns' residents. Additionally, the bill clarifies that the amended provisions will apply to any town or district that has adopted the requirement for tax impact notations, eliminating the need for local amendments or re-adoption.

**26. SB-96 Relative to mandatory disclosure by school district employees to parents.**

The proposed bill, known as the Honesty and Transparency in Education Act, mandates that all educators credentialed by the New Hampshire Department of Education must respond to written inquiries from parents regarding material information about their children. The bill stipulates that responses must be provided within 10 business days and must be complete and honest, as long as they comply with state and federal laws.  Additionally, if a credential holder believes that providing a complete response could put a student at imminent risk of harm, they are required to report this to the Department of Health and Human Services within 48 hours and may withhold only the information that poses the risk.

Furthermore, the bill includes provisions for the state board of education to adopt rules by June 30, 2026, to amend the code of ethics and conduct for educators in relation to this new requirement. Violations of this section will be treated as breaches of the code of conduct and will be subject to investigation. The bill introduces new legal language by inserting a new section (RSA 189:13-d) into current law, while no specific deletions from existing law are noted. The act is set to take effect on January 1, 2026.

VII.A.

# New Hampshire School Administrative Unit #15

90 Farmer Road

Hooksett, New Hampshire 03106-2125

*Telephone* (603) 622-3731     *Fax* (603) 669-4352

| | |
|---|---|
| **William J. Rearick** | **Kimberly Sarfde** |
| *Superintendent of Schools* | *Assistant Superintendent* |

## MEMORANDUM

To:        Auburn Board of Education

From:     Dr. Kimberly Sarfde

Date:     May 2025

Subject:  BOE Update

### Classroom Walk-Throughs at Auburn Village School

Recently, I had the privilege of conducting two classroom walk-throughs at Auburn Village School—first with Dr. Collins and then with both Dr. Collins and Superintendent Rearick. During the initial visit, we observed vibrant Read Across America celebrations, where students eagerly engaged with literature across various genres. The enthusiasm for reading was a clear reflection of our school's commitment to fostering a lifelong love of literacy.

Our visit also included time in the STEM classroom at Auburn Village School, where we had an in-depth conversation with Linda Reinelt about the innovative robotics curriculum. We discussed the engineering design process and how it fosters problem-solving and critical thinking skills.

During the second walk-through, we focused on Grades 3 and 4. In a fourth-grade classroom, students were actively annotating texts and demonstrating their ability to critically analyze complex materials. Their engagement and skill level affirmed their preparedness for the NHSAS assessment and highlighted the strength of our instructional approaches at Auburn Village School in building strong foundational literacy and comprehension skills.

### Robotics Rising: Celebrating Innovation at the CoderZ Finals

On April 23, I had the pleasure of attending the CoderZ Finals at Pinkerton Academy, where I proudly cheered on Mrs. Reinelt and her incredible robotics team from Auburn Village School. It was an inspiring event that showcased not only student creativity and collaboration, but also the tremendous growth of a program that started as a spark and has become a true powerhouse.

### Read Alouds in Grade 1

On April 14, I visited three first-grade classrooms at Auburn Village School—Miss Chiesa's, Mrs. Moynihan's, and Miss Ahnen's classrooms—to read *The Most Magnificent Thing*. We talked about the power of perseverance, and the students' excitement and attentiveness during

the story reinforced the importance of direct adult interaction in early learning environments. These visits offered a firsthand look at the well-established systems in place to ensure safe, joyful, and engaging spaces for our youngest learners.

### South Central Superintendent Group

On Thursday, April 17, I had the opportunity to participate in instructional rounds with a group of South Central Superintendents. Hosted by Hollis-Brookline, the visit featured engaging and thought-provoking discussions focused on instructional practices and student learning.

Instructional rounds are a collaborative professional development practice in which educators visit classrooms to observe teaching and learning in action. Modeled after medical rounds, the goal is to gather insights, reflect on trends, and identify opportunities for growth. This process fosters a culture of continuous improvement, shared learning, and strengthened instructional leadership.

### 25-26 Federal Grant Information

I am currently working with the Directors of Student Services for Hooksett, Candia, and Auburn to complete the 2025–2026 ESEA Consolidated Application for federal Title programs. This collaborative effort ensures that each district's needs are accurately represented and that proposed activities align with allowable uses, identified priorities, and compliance requirements.

**What is the 2025–2026 ESEA Consolidated Application for Federal Title Programs?**
The ESEA Consolidated Application is a required submission to the New Hampshire Department of Education (NHED) that enables districts to apply for multiple federal Title programs under the Elementary and Secondary Education Act (ESEA), as reauthorized by the Every Student Succeeds Act (ESSA). This includes Title I, Title II, Title III, Title IV, and other eligible programs.

**What is the 2025–2026 IDEA Consolidated Application?**
The IDEA Consolidated Application is an annual submission required by NHED under the Individuals with Disabilities Education Act (IDEA). It allows districts to apply for special education funding through IDEA Part B, Section 611 (ages 3–21) and Section 619 (ages 3–5), supporting the provision of special education and related services.

For the 2025–2026 school year, NHED requires each district to ensure that all proposed uses of IDEA funds:

- Improve outcomes for students with disabilities using data such as IEP goal performance, disproportionality, indicator compliance (e.g., timely evaluations), staffing needs, and service delivery models;
- Include stakeholder input from special education directors, related service providers, and others to reflect local priorities;
- Ensure continued provision of Free Appropriate Public Education (FAPE) in the least restrictive environment;

*Serving the School Districts of Auburn, Candia, and Hooksett*
*Equal Opportunity Employer - Equal Educational Opportunities*

- Maintain local and state funding levels for special education in accordance with Maintenance of Effort (MOE) requirements unless a federally allowed exception applies;
- Support allowable activities such as hiring special education staff, purchasing assistive technology, offering professional development, and implementing evidence-based programs;
- Address equitable services for eligible parentally-placed private school students, including proportionate share and consultation procedures (if applicable);
- Include detailed justifications if funds are used for Coordinated Early Intervening Services (CEIS); and
- Provide a line-item budget with narrative justifications to ensure expenditures are aligned with IDEA regulations and support compliance and student services.

**What Are School Districts' Obligations Under McKinney-Vento?**
Under the McKinney-Vento Homeless Assistance Act, school districts must identify and support students experiencing homelessness to ensure equal access to public education. This includes:

- Immediately enrolling students in school
- Ensuring transportation to the school of origin, if requested and in the best interest of the child;
- Removing barriers to enrollment, attendance, and academic success; and
- Appointing a local McKinney-Vento liaison to coordinate services and support.

McKinney-Vento services are often supported through Title I, Part A funds, which may be used to meet the unique needs of homeless students, including tutoring, transportation, and school supplies.

**April Committee Meetings at AVS**
I attended the Grading Committee meeting on April 23 and the Science Curriculum Evaluation meeting on April 24. Both meetings were highly productive, and I want to recognize Jennifer Bordis and Jennifer Barnhill for doing an excellent job facilitating the discussions and keeping the groups focused and engaged. Their leadership and organization helped ensure that important progress was made toward the district's goals.

**Update: Title VI Certification**
On April 24, 2025, a federal court granted a preliminary injunction in the NEA v. U.S. Department of Education case, blocking enforcement of the February 14, 2025 Dear Colleague Letter (DCL) regarding Title VI and DEI programs. A similar stay was also issued in a related case in Maryland. As a result, the U.S. Department of Education cannot enforce the DCL.

*Serving the School Districts of Auburn, Candia, and Hooksett*
*Equal Opportunity Employer - Equal Educational Opportunities*



# Auburn School District  VII.A.
## Principal's Report
### May 13, 2025

**2024-2025 Enrollment**

| Grade | Enrollment | Teachers | Av. Class Sizes | |
|---|---|---|---|---|
| PK3 | 9 | 1 | 9 | Tentas |
| PK4 | 6 | 1 | 7 | Tentas |
| K | 78 | 4 | 20 | Overhulser, Moynihan, Ahnen, Duquette |
| 1 | 68 | 4 | 17 | Prunier, Podbelski, Mullen, Chiesa |
| 2 | 72 | 4 | 18 | Dupont, Nusbaum, Smith, O'Toole |
| 3 | 83 | 4 | 22 | Pampel, Russell, Duffy, Seidell |
| 4 | 69 | 3 | 23 | Carlson, Fortier, Royce |
| 5 | 64 | 3 | 22 | Vilandre, Strabone, Dwyer |
| 6 | 88 | 4 | 22 | Roggenbuck Villeneuve, Joaquin, Winter |
| 7 | 74 | 4 | 19 | Winter, Poulin, Greene, Rankin |
| 8 | 80 | 4 | 20 | Paraskevas, Huston, Wheeler, Lavigne |
| Total | 691 | 35 | | |
| | | | | |

**UA Team:**
- Steve Tewksbury-Physical Education
- Danika Ashness-Health Teacher
- Andrea Johnston-Band Teacher
- Melissa West-Art Teacher
- Marissa Leary-.5 Art Teacher
- Linda Reinelt-STEAM Teacher
- Andrea O'Neil-Librarian
- Sarah Kaufman-General Music Teacher

Jennifer Bordis - Curriculum Coordinator
Lindsay Murray - ES Assistant Principal
Jennifer Barnhill - MS Assistant Principal
Cristina Catalano - Special Education Director

**May Events at AVS**
May 8-Geo Bee
May 9-4th grade field trip to The State House
May 9-Student Council Dance
May 13- School Board Meeting
May 14-Early Release (Prof Dev Day)
May 15-3rd and 4th grade Music Showcase
May 16-Kindergarten and First Grade field trip to Pinkerton
May 16-8th gr Leadership Day
May 20-PTA Meeting
May 21-Earth Day Celebration (K-4)

May 23-Memorial Day Celebration
May 26-No School/Memorial Day
May 27-Rain Date for Memorial Day Celebration
May 28-First Gr "Outdoor Classroom"
May 31-Town "Sport Swap"
**June Events at AVS**
June 2-Kindergarten Screenings
June 3-1st and 2nd grade Field Day
June 3- LEAD Celebration
June 4-3rd, 4th and 5th grade Field Day
June 5-Kindergarten Field Day
June 6-Administration Retreat with SB
June 6-Wax Museum (gr 4)

June 10-School Board Mtg
June 11-8th grade Field Trip to Canobie Lake
June 11-3rd grade "Market Day"
June 12-8th grade "Dinner Dance"

June 13-8th grade Field Day/BBQ
June 16-Middle School Awards
June 16-8th grade Graduation
June 17-Last Day of School (early release)

## Mental Health Awareness Month
On Friday, April 25th, 2025, students in grades K–4 attended a social-emotional learning (SEL) presentation by Plymouth State's TIGER program. The performance, True Blue You, used music, theatre, and dance to explore themes like being true to oneself, standing up for what's right, and caring for others. It introduced the TIGER acronym:



T – Trust yourself
I – Include others
G – Give to others
E – Empower yourself and others
R – Respect yourself and others
The program aimed to help children better understand and practice empathy, inclusion, and self-confidence.

For Mental Health Awareness Month in middle school, we had a Guest Speaker, Mallory, from Minding Your Mind come to share her story with the students and encourage them to reach out if they ever have overwhelming feelings. Mallory shared about her own Anxiety and Depression and how a friend helped her to talk with her parents about her struggles to get help. She also led a discussion around healthy coping skills. The students and staff had a very positive response and many said they would love to have her come and speak again.

## Athletics
Spring sports are off to a busy start! All 4 teams have full rosters and have had multiple games, with a busy schedule for the rest of May. Boys and girls lacrosse have a lot of newcomers excited to learn the sport, and baseball and softball had many returners ready to play! The playoff season will be upon us in the next few weeks so teams are buckling down for several weeks of intentional practices and games. Softball has started off strong once again, winning all of their games so far, including a scrimmage with a D2 team!

Looking ahead, we have several exciting home games coming up: Baseball and Softball v. Chester 5/7 at 4pm and Boys and Girls lacrosse v. Hooksett 5/8 at 4pm. Playoffs for both sports will be hosted May 27-June 5 this year. Go Braves!

## Curriculum
**Grading Committee:** We have segmented our grading committee into three main areas of discussion:
- Location, presentation, and expectations in regards to homework for all content areas grades 5-8
- Grading Policies: late work and make up work
- Grading Policies: Weighting of assignments and Test Retakes

Our second grading committee meeting focused on late work. We discussed creating a late work policy across grade levels, while still allowing for flexibility when needed. Our goal was to set clear and uniform expectations for when work is considered late and any potential penalties to teach responsibility while maintaining fairness. A few housekeeping issues were to have assignment names on PowerSchool to match up with Google Classroom assessment and timeliness of feedback/ grading. We also discussed homework needs and that it should show effort.

**Our Assessment Committee** meeting consisted of a discussion of the assessment tools that we presently use. These include the following:

- IXL (K-8)
- Acadience Math (K-5)
- DIBELS (K-5)
- Modulars or Interim? (Grades 3-8)

We discussed how they are being used and if they provide information that informs instruction and determines student growth. Our next meeting will focus on assessment tools that will be used next year.

**AVS CoderZ Robotics Teams Shine at State Finals**
On Wednesday, April 23rd, three of our four CoderZ Competitive Robotics Teams competed in the 6th Annual CoderZ New Hampshire Spring Robotics Finals, held at Pinkerton Academy. To qualify for the finals, teams had to place in the top three of their division during the preliminary competition. Our fourth team also performed exceptionally well, finishing in the top 10 out of over 70 teams.Due to a lack of opposing teams in the Pro Division at the finals, our Pro Team held an inter-team competition to determine the Most Valuable Player. Congratulations to Pierce Chen, who earned the MVP Award! The entire Pro Team was also recognized as 1st Place League Champions.

Our Novice and Junior Teams each competed against two other teams in their divisions — and both emerged 1st Place Champions in their respective divisions. Over the past three years, student participation in competitive robotics has grown by 83%, increasing from 12 students to 22. This growth reflects our students' passion for STEM and the success of our robotics programming.

We're incredibly proud of all our CoderZ competitors for their hard work, dedication, and impressive achievements! A special thank you to the New Hampshire Department of Education (NHDOE) for their continued support of our robotics teams and curriculum through the NHDOE Robotics Grant.

**Eighth Grade End of Year Celebration Events**
June 11th Canobie Lake Park
June 12th Dinner Dance at Derryfi8eld Country Club
June 13th Graduation Barbecue
June 16th Awards Ceremony and Graduation
June 17th No School for 8th Graders

**Summer Reading Assignment Read Any Book of Your Choice!** This summer, you get to choose any book that interests you! It can be fiction or nonfiction, a graphic novel, or even an audiobook. The goal is to enjoy reading while also thinking about what you've read.
**Assignment Options** After reading your book, you will complete **one** assignment from the choice board below OR complete an in-school assignment during the first week back. Choose the option that best suits your learning style!

**Choice Board (Pick One)**

1. **Creative Summary** – Create a comic strip, storyboard, or illustrated timeline summarizing key events in the book.
2. **Letter to a Character** – Write a letter to a character in your book, asking them questions or giving them advice.
3. **Book Trailer** – Create a short video trailer (1-2 minutes) that highlights the book's key themes and events.
4. **Alternate Ending** – Rewrite the ending of the book in a way that you think would be interesting.
5. **Theme Analysis** – Write a short reflection (one page) explaining a theme from the book and how it connects to your own life.

6. **Playlist & Explanation** – Create a playlist of 5 songs that relate to events or characters in the book and explain your choices.
7. **Interview the Author** – Write five questions you would ask the author and explain why they are important.
8. **Character Social Media Profile** – Design a social media page (Instagram, TikTok, or Twitter) for a character, including posts and captions.

**In-School Option:** If you prefer, you can wait and complete a structured assignment during the first week of school. This will include a written reflection and a discussion about your book.

**Musical Performances**

**First and Second Grade Music Showcase**

On Thursday, April 3, 2025, 6:30pm in the AVS Gym, I attended the first and second grade music showcase with Mrs. Murray. Another standing room event with lots of smiles, especially when the second grade did their line dancing!

**5th and 6th Grade Band Spring Concert**

On April 22 at 6:30 Mrs. Barnhill and I attended the 5th and 6th grade band concert for an exciting performance. They are an amazing group that has shown tremendous growth this year.



**7th & 8th Grade Spring Band and Chorus Concert**

On Thursday, April 24, 2025, 6:30pm in the AVS Gym, Mrs. Barnhill and I attended the 7th and 8th grade band and chorus concert. It was an amazing show of growth and musical performance. Parents, friends and other staff members were impressed with the music selection.

**3rd & 4th Grade Music Showcase**

On Thursday, May 15, 2025, 6:30pm in the AVS Gym, come enjoy a lively and entertaining evening as our talented 3rd and 4th grade students take the stage for a special musical performance! Our enthusiastic 3rd graders will showcase their vocal talents and rhythmic skills with an exciting mix of singing and bucket drumming, while our dedicated 4th graders will delight the audience with their harmonious singing and impressive recorder playing. This concert promises a wonderful blend of melody, rhythm, and energy, highlighting the hard work and musical growth of our young performers. Bring your family and friends for a night of joyful music and celebration—you won't want to miss it!



**Second Grade Visits the Discovery Center**

On April 18, the AVS second grade explored the exhibits at the Concord Planetarium Discovery Center. They discovered incredible findings from moon rocks, technology used in space for everyday living, as well as plant life that can exist in their atmospheres. The 3D show taught the students about the various planets and their many moons that orbit them. Students explored an Infrared machine detecting warm areas on the body to determine the structure of a space suit. The students were thrilled to relate their new knowledge to a former unit in our Language Arts curriculum about the Nights Sky.



**Tsongas Industrial History Center**

On April 25, 2025 AVS 7th graders visited the historic Boott Cotton Mills in Lowell, Massachusetts for a collaborative learning experience between their Social Studies and Language classes. Students witnessed first-hand what boardinghouse living and factory working conditions were like during the Industrial Revolution: an experience that many rural farm girls from New England would have during the 19th century. The field trip overlapped with our Industrial Revolution unit in Social Studies and our book study of Lyddie in Language Arts. Fun was had by all through

simulations on the assembly line, weaving on a loom or exploring the water power systems that formerly operated the factory. This former textile mill is part of the National Park Service and provides the valuable service of preserving a living history museum.

**Third Grade**
Today the third graders heard about our big project- "Become and Entrepreneur."  This project will consist of several parts. All parts of this project will be completed at home.  The culmination of this project will be "Market Day."

**Drama Club**
On April Friday, April 18th, the AVS Drama Club presented Our Teacher is an Alien to the Auburn community! The audience was filled with staff, families and friends and there wasn't an open seat in the house! Tryouts began immediately following the Christmas break and with 3 rehearsals a week, the students were thrilled to show off their hard work. This Drama Club season was a bit unique compared to prior seasons. After recasting 3 lead parts over the course of the season due to cast members' scheduling conflicts and an extended illness, not to mention, a malfunctioning spotlight, the students persevered through these setbacks and put on a fantastic show for the audience! Our Teacher is an Alien required multiple set changes, sound and lighting effects and multiple students backstage to help! The audience loved the fact that they never really knew the outcome of the play until the last couple of lines. This comedy was very fun to direct and the twist ending made it very fun for the audience and the students (it was very hard to keep the ending a secret)! Thank you to Madame/Signora Pope for directing this wonderful production!

**VII.A.**

## School Board Report - May 2025
## Department of Student Services
## Christina Catalano, Director of Student Services

**Special Education Enrollment Snapshot**

| Grade | May 2024 | Sept 2024 | Oct 2024 | Nov. 2024 | Dec. 2024 | Jan 2025 | Feb 2025 | March 2025 | April 2025 | May 2025 | Net Gain/ Reduction | Net Gain/ Reduction Sept-May |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Preschool | 17 | 11 | 11 | 13 | 14 | 14 | 16 | 17 | 19 | 19 | 0 | +8 |
| K-4 | 40 | 38 | 38 | 38 | 39 | 41 | 43 | 43 | 42 | 40 | -2 | +2 |
| 5-8 | 44 | 37 | 37 | 36 | 35 | 34 | 34 | 33 | 32 | 33 | +1 | -4 |
| 9-12 | 28 | 34 | 32 | 31 | 30 | 30 | 30 | 27 | 25 | 25 | 0 | -9 |
| Out of District K-12 | 7 | 7 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 0 | -1 |

***\*\*\* Current total enrollment for Auburn special education students in all learning environments: 123***
***Difference from Sept 2024- May 2025 -4 total students***

*Yearly LEA Determinations FY 2024-2025 (data from 23-24): The New Hampshire Department of Education, Bureau of Special Education Support (Bureau) issued the FY 2025 Local Education Agency (LEA) determination letters for each school district. The determinations, required under the Individuals with Disabilities Education Act 2004, are part of the ongoing efforts to improve results for children and youth with disabilities.*

*School district determinations are made using the same four categories that the Office of Special Education Programs (OSEP) used when making the determination of States. The four categories of determination based on the rubric criterion are:*

1. Meets the requirements and purposes of the IDEA;
2. Needs assistance in implementing the requirements of the IDEA;
3. Needs intervention in implementing the requirements of the IDEA; or
4. Needs substantial intervention in implementing the requirements of the IDEA or substantial failure to comply with the requirements of IDEA.

| *Auburn's OVERALL SCORE = 2 (Needs Assistance, Year 2) Need to identify one area on rubric to focus on and reach out to DOE for consultation* | | | |
|---|---|---|---|
| *Category Area* | *OSEP Determination 2023* | *OSEP Determination 2024* | *Category Elements* |
| *Results Based* | Meets requirements | Needs Assistance | Graduation rate; **preschool outcomes**; education environments (LRE) |
| *Assessment* | Needs Intervention | Needs Intervention | **Proficiency on NHSAS** & Alt. Assessment; proficiency gap between special ed and regular ed; assessment participation |
| *Compliance* | Meets requirements | Meets requirements | Child Find; Transition; Discipline |
| *Finance/Other* | Meets requirements | Meets requirements | Grant Management; Grant Reporting; Complaints |

***\*\*\*\*Items in bold italics represent potential areas to focus on for consultation and improvement***

**<u>Special Education Hiring Updates:</u>**

| Vacant position | Person leaving | Status Update |
|---|---|---|
| Paras (15 total positions) | 1 vacancy- checking references for a new hire | Still in need of 1 paraeducator<br>13 District hired paras and 2 contracted paras<br>Preschool Para- is currently only work 2 days per week (Tues/Thurs) |

**Staffing needs for FY 25-26**

The following roles are currently posted as vacancies.

- School Psychologist (currently Contracted)
- Speech & Language Pathologist (currently Contracted)
- Occupational Therapist
- Special Education Teacher - Grant Funded
- BCBA
- Paraprofessionals

**Professional Engagements:**

May 6, 2025- South Central Meeting
May 8, 2025- New Director Institute
May 16, 2024- NHASEA Monthly meeting
May 23, 2025- Pinkerton Transition meetings

**VII.A.**

## Curriculum Coordinator Board Report
Meeting: May 13, 2025

**Academics:** Students and teachers kept up the great work in April. Seventh grade completed their industrial revolution projects. Fourth grade has been hard at work on their state projects in preparation for their visit to the NH State House. Kindergarten and First grade students had lots of fun reading with Mrs. Cohen's reading classes.

**Assessments:** SAS testing is well underway. We are looking forward to seeing the growth our students have made this year.

**Professional Development:** Grade level meetings with Tom were changed to May 19 and 20. Our May 14th early release day is scheduled to focus on curriculum work.

I met with Meghan McLain from Hooksett and Assistant Superintendent Sarfde to discuss summer professional development. We will be offering two full weeks of additive, multiplicative and fractional reasoning training. We also discussed new teacher training the week of August 18th.

**Committees and Meetings:** We had our second middle school grading committee on April 23 and discussed our late work policy.  We have scheduled two more meetings to finalize homework, late work, and retake policies.

The K-8 assessment committee also met on April 23. We did an assessment audit to determine what assessments we have, how we use them, and if we are missing any data. Our future meetings will decide on an assessment plan for the 2025-26 year and future years.

On April 24, we met as an administrative team with Superintendent Rearick to discuss our curriculum review cycle and processes and will have examples available for the retreat.

Respectfully submitted,

Jennifer Bordis, Curriculum Coordinator

**VII.A.**

Technology Board Report

Auburn Village School Meeting Date: 5/13/2025

This month I spoke with an attorney for the Frantz Law Group, whom is the law office filing the mass action lawsuit against Powerschool. I wanted to get more details and figure out next steps if we were to join the lawsuit. Below is a quick summary of the details surrounding the case. Frantz Law filed the lawsuit on behalf of the TEC (The Education Cooperative) and encourages all member Schools and Districts to participate even if they were not directly impacted by the breach. The Lawsuit alleges that PowerSchool had the responsibility to protect the PII (Personally identifiable information) of millions of District students and educators. PowerSchool was contractually obligated to implement sufficient security measures. Due to PowerSchool's failure to secure PII and meet the industry standards, they breached their contracts with the school districts. The following is what Frantz Law is seeking for damages:

1.) Recoupment/reimbursement of any monies paid to PowerSchool for contractual services it failed to provide under its respective contracts.

2.) Past and future monetary damages (i.e., staff time, forensic testing, expert/vendor expenses, legal expenses), related to securing district databases and handling the negative impacts from the breach including but not limited to: district reputational harm, costs and employee training related to resetting of passwords, and costs and employee training related to notifications of breach to impacted users;

3.) Future expenses for having to change platforms and migrating the data;

4.) Indemnity from PowerSchool for any future litigation brought against the school district due to this data breach.

5.) The Lawsuit will also seek punitive damages as related to fraud claims; and

6.) The Lawsuit will also seek injunctive relief for the appointment of a monitor to establish industry standard security systems, including rapid detection of unauthorized access, and an incident response plan that will in fact provide and require rapid and accurate notice to school districts and parents

Districts who join the lawsuit will incur no costs as the law office will only get paid if the lawsuit is successful and part of the lawsuit is payment of any legal fees so if successful schools will get 100% of awarded funds. Participating Districts will only need to complete a questionnaire that takes between 1-3 hours to complete. I believe it would be worthwhile to join the lawsuit as there is nothing to lose and much to potentially gain but I will leave that up to administration and the school board to decide the best course of action on this matter.

Our Admin team and Superintendent met with Primex associates this month to begin work on our Continuity of Operation Plan (CoOP). We talked through the major areas of necessity such as communication, facilities, HR/Payroll, attendance, dismissal, student services, nursing, etc.

We were tasked with coming up with 3-5 questions of what the most critical functions of our responsibilities and how we would navigate it if we lost access to technology/internet. Primex took note of our discussions and will be sending us a detailed report in the next couple weeks. Once we have the report I can use that as an outline to create the actual plan.

I began work on an updated Technology Plan for 2025-2028. I took the existing 2022-2025 Technology plan and updated the figures and added the necessary information to reflect the current state of technology in Auburn as well as future goals, projects and plans. It is mostly complete in draft form. I will be sharing it with the Technology Committee to get their input and make any necessary additions or changes.


Thanks,

Adam Hollins

Auburn School District
Expenditure Report
May 5, 2025

| ACCOUNT | TITLE | BUDGET | ENCUMBRANCES OUTSTANDING | YEAR TO DATE EXP | ENCUMBRANCES PLUS YTD EXPENDITURES | AVAILABLE BALANCE |
|---|---|---|---|---|---|---|
| 11 1100 1 01 00 5108 | REG ED MATH COORDINATOR | 91,800.00 | 14,123.06 | 77,676.94 | 91,800.00 | - |
| 11 1100 1 01 00 5109 | REG ED RETIREMENTS | 60,000.00 | - | 60,000.00 | 60,000.00 | - |
| 11 1100 1 01 00 5112 | REG ED TEACHER SALARIES | 2,705,250.83 | 731,710.84 | 1,969,792.56 | 2,701,503.40 | 3,747.43 |
| 11 1100 1 01 00 5114 | REG ED PARAPROFESSIONAL | 114,856.25 | 28,106.60 | 82,735.28 | 110,841.88 | 4,014.37 |
| 11 1100 1 01 00 5120 | REG ED SUBSTITUTE SALARIES | 90,000.00 | 5,398.50 | 57,442.45 | 62,840.95 | 27,159.05 |
| 11 1100 1 01 00 5122 | REG ED HEALTH INSURANCE BUYOUT | 42,500.00 | - | 33,750.00 | 33,750.00 | 8,750.00 |
| 11 1100 1 01 00 5211 | REG ED HEALTH INSURANCE | 726,420.84 | 104,913.67 | 666,845.49 | 771,759.16 | (45,338.32) |
| 11 1100 1 01 00 5212 | REG ED DENTAL INSURANCE | 16,150.38 | - | 17,863.74 | 17,863.74 | (1,713.36) |
| 11 1100 1 01 00 5213 | REG ED LIFE INSURANCE | 3,700.00 | 355.28 | 3,808.72 | 4,164.00 | (464.00) |
| 11 1100 1 01 00 5214 | REG ED DISABILITY INSURANCE | 6,800.00 | 633.48 | 6,893.26 | 7,526.74 | (726.74) |
| 11 1100 1 01 00 5220 | REG ED FICA | 236,342.12 | 59,344.45 | 164,101.20 | 223,445.65 | 12,896.47 |
| 11 1100 1 01 00 5232 | REG ED NHRS PROFESSIONAL | 561,408.26 | 145,130.96 | 410,483.09 | 555,614.05 | 5,794.21 |
| 11 1100 1 01 00 5240 | REG ED TUITION REIMBURSEMENT | 30,000.00 | 5,147.50 | 24,757.50 | 29,905.00 | 95.00 |
| 11 1100 1 01 00 5241 | REG ED WORKSHOP REIMB PROF | 12,480.00 | 746.00 | 2,145.50 | 2,891.50 | 9,588.50 |
| 11 1100 1 01 00 5242 | REG ED WORKSHOP REIMB SUPPORT | - | - | - | - | - |
| 11 1100 1 01 00 5250 | REG ED UNEMPLOYMENT INSURANCE | 2,102.07 | - | 1,890.00 | 1,890.00 | 212.07 |
| 11 1100 1 01 00 5260 | REG ED WORKER'S COMPENSATION | 8,653.09 | - | 8,653.09 | 8,653.09 | - |
| 11 1100 1 01 00 5330 | REG ED OTHER PROF SVCS | - | 500.00 | - | 500.00 | (500.00) |
| 11 1100 1 01 00 5335 | REG ED TUTORING | - | 3,432.00 | 68.00 | 3,500.00 | (3,500.00) |
| 11 1100 1 01 00 5339 | REG ED STUDENT TEAM BUILDING | - | - | - | - | - |
| 11 1100 1 01 00 5430 | REG ED REPAIRS & MAINT SERVICES | - | 2,885.83 | 8,097.85 | 10,983.68 | (10,983.68) |
| 11 1100 1 01 00 5442 | REG ED RENTAL OF EQUIPMENT | - | 1,745.00 | 9,711.64 | 11,456.64 | (11,456.64) |
| 11 1100 1 01 00 5610 | REG ED SUPPLIES | 30,000.00 | 3,393.25 | 26,552.08 | 29,945.33 | 54.67 |
| 11 1100 1 01 00 5642 | REG ED ELECTRONIC INFORMATION | - | - | - | - | - |
| 11 1100 1 01 00 5643 | REG ED INFORMATION ACCESS FEES | 17,808.43 | - | 13,762.54 | 13,762.54 | 4,045.89 |
| 11 1100 1 01 00 5737 | REG ED REPLACEMENT FURNITURE & F | - | - | - | - | - |
| 11 1100 1 01 06 5610 | FOREIGN LANGUAGE SUPPLIES | 342.87 | - | 251.76 | 251.76 | 91.11 |
| 11 1100 1 01 06 5641 | FOREIGN LANGUAGE TEXTBOOKS | 131.63 | - | 59.88 | 59.88 | 71.75 |
| 11 1100 1 01 08 5610 | ART SUPPLIES | 5,564.82 | 683.23 | 4,813.21 | 5,496.44 | 68.38 |
| 11 1100 1 01 08 5739 | ART OTHER EQUIPMENT | 1,753.11 | 86.04 | 1,014.72 | 1,100.76 | 652.35 |
| 11 1100 1 01 15 5610 | LANGUAGE ARTS SUPPLIES | 938.07 | - | 807.05 | 807.05 | 131.02 |
| 11 1100 1 01 15 5641 | LANGUAGE ARTS TEXTBOOKS | 1,932.00 | - | 972.02 | 972.02 | 959.98 |
| 11 1100 1 01 15 5643 | LANGUAGE ARTS INFORMATION ACCESS FEES | 128.00 | - | 135.00 | 135.00 | (7.00) |
| 11 1100 1 01 15 5645 | LANGUAGE ARTS PRACTICE BOOKS | 3,832.55 | - | 3,541.13 | 3,541.13 | 291.42 |
| 11 1100 1 01 18 5610 | HEALTH SUPPLIES | 1,099.53 | - | 1,096.52 | 1,096.52 | 3.01 |
| 11 1100 1 01 20 5610 | TECH ED SUPPLIES | 2,065.58 | - | 2,053.43 | 2,053.43 | 12.15 |
| 11 1100 1 01 20 5643 | TECH ED INFORMATION ACCESS FEES | 344.00 | - | 374.00 | 374.00 | (30.00) |
| 11 1100 1 01 20 5810 | TECH ED DUES & FEES | - | - | - | - | - |
| 11 1100 1 01 23 5610 | MATH SUPPLIES | 1,006.71 | - | 832.33 | 832.33 | 174.38 |
| 11 1100 1 01 23 5641 | MATH TEXTBOOKS | - | - | - | - | - |
| 11 1100 1 01 23 5643 | MATH INFORMATION ACCESS FEES | 822.00 | - | - | - | 822.00 |
| 11 1100 1 01 23 5645 | MATH PRACTICE BOOKS | 25,415.00 | - | 24,199.20 | 24,199.20 | 1,215.80 |
| 11 1100 1 01 24 5430 | MUSIC REPAIRS & MAINT SVCS | - | 864.61 | 1,135.39 | 2,000.00 | (2,000.00) |
| 11 1100 1 01 24 5442 | MUSIC RENTAL OF EQUIPMENT | - | - | - | - | - |
| 11 1100 1 01 24 5610 | MUSIC SUPPLIES | 2,486.96 | 368.01 | 2,122.26 | 2,490.27 | (3.31) |
| 11 1100 1 01 24 5739 | MUSIC OTHER EQUIPMENT | 840.00 | 281.84 | 600.00 | 881.84 | (41.84) |

Auburn School District
Expenditure Report
May 5, 2025

| ACCOUNT | TITLE | BUDGET | ENCUMBRANCES OUTSTANDING | YEAR TO DATE EXP | ENCUMBRANCES PLUS YTD EXPENDITURES | AVAILABLE BALANCE |
|---------|-------|--------|--------------------------|------------------|-----------------------------------|-------------------|
| 11 1100 1 01 24 5810 | MUSIC DUES & FEES | 821.00 | 378.00 | 345.00 | 723.00 | 98.00 |
| 11 1100 1 01 25 5610 | PHYS ED SUPPLIES | 2,350.55 | - | 2,350.55 | 2,350.55 | - |
| 11 1100 1 01 27 5610 | READING SUPPLIES | 919.85 | - | 844.12 | 844.12 | 75.73 |
| 11 1100 1 01 27 5645 | READING PRACTICE BOOKS | 2,417.21 | - | 2,392.57 | 2,392.57 | 24.64 |
| 11 1100 1 01 27 5737 | READING REPLACEMENT FURNITURE & F | - | - | - | - | - |
| 11 1100 1 01 29 5610 | SCIENCE SUPPLIES | 4,251.94 | 763.78 | 2,392.27 | 3,156.05 | 1,095.89 |
| 11 1100 1 01 29 5643 | SCIENCE INFORMATION ACCESS FEES | 7,188.75 | - | 6,182.82 | 6,182.82 | 1,005.93 |
| 11 1100 1 01 30 5610 | SOCIAL STUDIES SUPPLIES | - | - | 1,608.44 | 1,608.44 | (1,608.44) |
| 11 1100 1 01 30 5641 | SOCIAL STUDIES - TEXTBOOKS | 2,500.00 | - | - | - | 2,500.00 |
| 11 1100 1 01 33 5610 | TECH INTEGRATION SUPPLIES | - | - | - | - | - |
| 11 1100 1 01 33 5643 | TECH INTEGRATION INFORMATION ACCESS FEES | - | - | - | - | - |
| 11 1100 1 01 40 5610 | DRAMA SUPPLIES | 2,461.00 | - | - | - | 2,461.00 |
| **1100 Total** | **REGULAR EDUCATION** | **4,827,885.40** | **1,110,991.93** | **3,707,154.60** | **4,818,146.53** | **9,738.87** |
| 11 1105 3 01 00 5561 | REG ED HIGH SCHOOL TUITION OTHER LEA'S | - | 8,604.00 | 7,704.00 | 16,308.00 | (16,308.00) |
| 11 1105 3 01 00 5563 | REG ED HIGH SCHOOL TUITION PUBLIC ACADEMIES | 3,652,992.00 | 24,624.12 | 3,681,368.88 | 3,705,993.00 | (53,001.00) |
| 11 1105 3 01 00 5564 | REG ED HIGH SCHOOL TUITION TO PRIVATE SCHOOL | - | - | 14,400.00 | 14,400.00 | (14,400.00) |
| **1105 Total** | **REG ED HIGH SCHOOL** | **3,652,992.00** | **33,228.12** | **3,703,472.88** | **3,736,701.00** | **(83,709.00)** |
| 11 1200 1 01 00 5111 | SPED ADMIN/OTHER SALARIES | 101,908.20 | 15,678.10 | 86,230.10 | 101,908.20 | - |
| 11 1200 1 01 00 5112 | SPED TEACHER SALARIES | 322,485.01 | 86,822.63 | 246,488.26 | 333,310.89 | (10,825.88) |
| 11 1200 1 01 00 5114 | SPED PARAPROFESSIONAL | 354,535.10 | 78,243.39 | 202,301.13 | 280,544.52 | 73,990.58 |
| 11 1200 1 01 00 5115 | SPED SECRETARIAL SALARIES | 46,542.60 | 9,828.00 | 35,989.20 | 45,817.20 | 725.40 |
| 11 1200 1 01 00 5122 | SPED HEALTH INSURANCE BUYOUT | 2,500.00 | - | 2,500.00 | 2,500.00 | - |
| 11 1200 1 01 00 5211 | SPED HEALTH INSURANCE | 362,570.36 | 31,816.60 | 225,626.91 | 257,443.51 | 105,126.85 |
| 11 1200 1 01 00 5212 | SPED DENTAL INSURANCE | 2,083.94 | - | 2,882.73 | 2,882.73 | (798.79) |
| 11 1200 1 01 00 5213 | SPED LIFE INSURANCE | 900.00 | 86.57 | 850.31 | 936.88 | (36.88) |
| 11 1200 1 01 00 5214 | SPED DISABILITY INSURANCE | 1,000.00 | 126.66 | 1,250.58 | 1,377.24 | (377.24) |
| 11 1200 1 01 00 5220 | SPED FICA | 63,340.10 | 14,553.66 | 40,728.93 | 55,282.59 | 8,057.51 |
| 11 1200 1 01 00 5231 | SPED NHRS SUPPORT | 6,297.20 | 1,329.73 | 4,869.31 | 6,199.04 | 98.16 |
| 11 1200 1 01 00 5232 | SPED NHRS PROFESSIONAL | 83,843.31 | 20,131.07 | 64,462.01 | 84,593.08 | (749.77) |
| 11 1200 1 01 00 5240 | SPED TUITION REIMBURSEMENT | - | - | - | - | - |
| 11 1200 1 01 00 5241 | SPED WORKSHOP REIMB PROF | 1,000.00 | - | 770.00 | 770.00 | 230.00 |
| 11 1200 1 01 00 5250 | SPED UNEMPLOYMENT INSURANCE | 1,021.00 | - | 709.00 | 709.00 | 312.00 |
| 11 1200 1 01 00 5260 | SPED WORKER'S COMPENSATION | 2,036.02 | - | 2,036.02 | 2,036.02 | - |
| 11 1200 1 01 00 5320 | SPED PROFESSIONAL EDUCATIONAL | - | 13,615.28 | 65,087.68 | 78,702.96 | (78,702.96) |
| 11 1200 1 01 00 5330 | SPED OTHER PROF SVCS | 130,250.00 | 57,548.26 | 98,654.89 | 156,203.15 | (25,953.15) |
| 11 1200 1 01 00 5335 | SPED TUTORING | - | 405.00 | 1,595.00 | 2,000.00 | (2,000.00) |
| 11 1200 1 01 00 5336 | SPED MEDICAID SERVICE PROVIDER | - | - | - | - | - |
| 11 1200 1 01 00 5430 | SPED REPAIRS & MAINT SERVICES | - | 36.54 | 93.46 | 130.00 | (130.00) |
| 11 1200 1 01 00 5442 | SPED RENTAL OF EQUIPMENT | - | 385.30 | 1,926.50 | 2,311.80 | (2,311.80) |
| 11 1200 1 01 00 5531 | SPED TELEPHONE | 360.00 | 420.00 | 300.00 | 720.00 | (360.00) |
| 11 1200 1 01 00 5534 | SPED POSTAGE | 200.00 | - | - | - | 200.00 |
| 11 1200 1 01 00 5564 | SPED TUITION TO PRIVATE SCHOOL | 276,577.87 | 50,402.84 | 174,894.56 | 225,297.40 | 51,280.47 |
| 11 1200 1 01 00 5580 | SPED MILEAGE REIMBURSEMENT | 2,000.00 | - | 2,053.66 | 2,053.66 | (53.66) |
| 11 1200 1 01 00 5610 | SPED SUPPLIES | 5,250.00 | - | 2,349.46 | 2,349.46 | 2,900.54 |
| 11 1200 1 01 00 5641 | SPED TEXTBOOKS | 1,464.00 | - | 1,407.12 | 1,407.12 | 56.88 |
| 11 1200 1 01 00 5643 | SPED INFORMATION ACCESS FEES | 15,133.80 | - | 6,977.00 | 6,977.00 | 8,156.80 |

Auburn School District
Expenditure Report
May 5, 2025

| ACCOUNT | TITLE | BUDGET | ENCUMBRANCES OUTSTANDING | YEAR TO DATE EXP | ENCUMBRANCES PLUS YTD EXPENDITURES | AVAILABLE BALANCE |
|---|---|---|---|---|---|---|
| 11 1200 1 01 00 5645 | SPED PRACTICE BOOKS | - | - | - | - | - |
| 11 1200 1 01 00 5650 | SPED SOFTWARE | - | - | - | - | - |
| 11 1200 1 01 00 5733 | SPED NEW FURNITURE | 14,571.00 | - | 7,593.82 | 7,593.82 | 6,977.18 |
| 11 1200 1 01 00 5739 | SPED OTHER EQUIPMENT | - | - | 2,765.81 | 2,765.81 | (2,765.81) |
| 11 1200 1 01 00 5810 | SPED DUES & FEES | 1,105.00 | - | 325.00 | 325.00 | 780.00 |
| 11 1200 2 01 00 5330 | SPED MIDDLE OTHER PROF SVCS | - | - | - | - | - |
| 11 1200 2 01 00 5564 | SPED MIDDLE TUITION TO PRIVATE SCHOOL | - | - | - | - | - |
| 11 1200 3 01 00 5320 | SPED HIGH SCHOOL PROFESSIONAL EDUCATIONAL | 74,970.00 | 48,738.55 | 51,261.45 | 100,000.00 | (25,030.00) |
| 11 1200 3 01 00 5330 | SPED HIGH SCHOOL OTHER PROF SVCS | - | 795.00 | 3,425.00 | 4,220.00 | (4,220.00) |
| 11 1200 3 01 00 5563 | SPED HIGH SCHOOL TUITION PUBLIC ACADEMIES | 1,032,394.20 | 76,646.07 | 833,577.93 | 910,224.00 | 122,170.20 |
| 11 1200 3 01 00 5564 | SPED HIGH SCHOOL TUITION TO PRIVATE SCHOOL | 171,802.59 | 34,663.59 | 223,658.25 | 258,321.84 | (86,519.25) |
| **1200 Total** | **SPECIAL EDUCATION** | **3,078,141.30** | **542,272.84** | **2,395,641.08** | **2,937,913.92** | **140,227.38** |
| 11 1230 1 01 00 5112 | ESY ELEMENTARY TEACHER SALARIES | 21,000.00 | - | 16,750.00 | 16,750.00 | 4,250.00 |
| 11 1230 1 01 00 5114 | ESY ELEMENTARY PARAPROFESSIONAL | 6,750.00 | - | 5,250.00 | 5,250.00 | 1,500.00 |
| 11 1230 1 01 00 5115 | ESY ELEMENTARY SECRETARIAL SALARIES | - | - | - | - | - |
| 11 1230 1 01 00 5220 | ESY ELEMENTARY FICA | 2,122.88 | - | 1,680.87 | 1,680.87 | 442.01 |
| 11 1230 1 01 00 5231 | ESY ELEMENTARY NHRS SUPPORT | 913.28 | - | - | - | 913.28 |
| 11 1230 1 01 00 5232 | ESY ELEMENTARY NHRS PROFESSIONAL | 4,124.40 | - | 3,289.70 | 3,289.70 | 834.70 |
| 11 1230 1 01 00 5330 | ESY ELEMENTARY OTHER PROF SVCS | 5,500.00 | - | 9,980.97 | 9,980.97 | (4,480.97) |
| 11 1230 1 01 00 5563 | ESY ELEMENTARY TUITION PUBLIC ACADEMIES | 20,400.00 | - | - | - | 20,400.00 |
| 11 1230 2 01 00 5330 | ESY MIDDLE OTHER PROF SVCS | - | - | - | - | - |
| 11 1230 2 01 00 5563 | ESY MIDDLE TUITION PUBLIC ACADEMIES | - | - | - | - | - |
| 11 1230 3 01 00 5320 | ESY HIGH SCHOOL PROFESSIONAL EDUCATIONAL | - | - | 6,283.34 | 6,283.34 | (6,283.34) |
| 11 1230 3 01 00 5330 | ESY HIGH SCHOOL OTHER PROF SVCS | - | - | - | - | - |
| 11 1230 3 01 00 5564 | ESY HIGH SCHOOL TUITION TO PRIVATE SCHOOL | - | - | 3,750.75 | 3,750.75 | (3,750.75) |
| **1230 Total** | **EXTENDED SCHOOL YEAR** | **60,810.56** | **-** | **46,985.63** | **46,985.63** | **13,824.93** |
| 11 1260 1 01 00 5112 | ELL TEACHER SALARIES | 35,647.91 | - | - | - | 35,647.91 |
| 11 1260 1 01 00 5114 | ELL PARAPROFESSIONAL | - | 10,014.15 | 25,635.61 | 35,649.76 | (35,649.76) |
| 11 1260 1 01 00 5220 | ELL FICA | 2,727.06 | 766.09 | 1,961.15 | 2,727.24 | (0.18) |
| 11 1260 1 01 00 5232 | ELL NHRS PROFESSIONAL | - | - | - | - | - |
| 11 1260 1 01 00 5250 | ELL UNEMPLOYMENT INSURANCE | - | - | 30.00 | 30.00 | (30.00) |
| 11 1260 1 01 00 5260 | ELL WORKER'S COMPENSATION | 44.54 | - | 44.54 | 44.54 | - |
| **1260 Total** | **ELL** | **38,419.51** | **10,780.24** | **27,671.30** | **38,451.54** | **(32.03)** |
| 11 1270 1 01 00 5561 | ADV LEARNER TUITION OTHER LEA'S | - | - | - | - | - |
| 11 1270 1 01 00 5563 | ADV LEARNER TUITION PUBLIC ACADEMIES | - | - | - | - | - |
| **1270 Total** | **ADV LEARNER** | **-** | **-** | **-** | **-** | **-** |
| 11 1410 1 01 00 5117 | COCURRICULAR CO-CURRICULAR SALARIES | 24,132.66 | 10,900.42 | 12,299.46 | 23,199.88 | 932.78 |
| 11 1410 1 01 00 5220 | COCURRICULAR FICA | 1,846.15 | 832.24 | 911.18 | 1,743.42 | 102.73 |
| 11 1410 1 01 00 5232 | COCURRICULAR NHRS PROFESSIONAL | 4,739.65 | 1,912.04 | 2,186.64 | 4,098.68 | 640.97 |
| 11 1410 1 01 00 5610 | COCURRICULAR SUPPLIES | 664.98 | - | 578.84 | 578.84 | 86.14 |
| 11 1410 1 01 00 5616 | COCURRICULAR DI SUPPLIES | 1,905.00 | 12.80 | 1,140.69 | 1,153.49 | 751.51 |
| **1410 Total** | **COCURRICULAR** | **33,288.44** | **13,657.50** | **17,116.81** | **30,774.31** | **2,514.13** |
| 11 1420 1 01 00 5117 | ATHLETICS CO-CURRICULAR SALARIES | 20,500.00 | 4,424.86 | 14,731.09 | 19,155.95 | 1,344.05 |
| 11 1420 1 01 00 5220 | ATHLETICS FICA | 1,568.25 | 338.38 | 1,117.93 | 1,456.31 | 111.94 |
| 11 1420 1 01 00 5232 | ATHLETICS NHRS PROFESSIONAL | 4,026.20 | 626.88 | 1,375.14 | 2,002.02 | 2,024.18 |
| 11 1420 1 01 00 5330 | ATHLETICS OTHER PROF SVCS | 7,000.00 | - | 7,000.00 | 7,000.00 | - |

Auburn School District
Expenditure Report
May 5, 2025

| ACCOUNT | TITLE | BUDGET | ENCUMBRANCES OUTSTANDING | YEAR TO DATE EXP | ENCUMBRANCES PLUS YTD EXPENDITURES | AVAILABLE BALANCE |
|---|---|---|---|---|---|---|
| 11  1420  1  01  00  5610 | ATHLETICS SUPPLIES | 1,622.34 | - | 2,132.73 | 2,132.73 | (510.39) |
| 11  1420  1  01  00  5735 | ATHLETICS REPLACEMENT EQUIPMENT | 2,881.95 | - | 2,351.65 | 2,351.65 | 530.30 |
| 11  1420  1  01  00  5739 | ATHLETICS OTHER EQUIPMENT | 3,022.75 | - | 3,298.29 | 3,298.29 | (275.54) |
| 11  1420  1  01  00  5810 | ATHLETICS DUES & FEES | 1,800.00 | - | 1,815.00 | 1,815.00 | (15.00) |
| **1420 Total** | **ATHLETICS** | **42,421.49** | **5,390.12** | **33,821.83** | **39,211.95** | **3,209.54** |
| 11  1430  1  01  00  5112 | SUMMER SCHOOL TEACHER SALARIES | - | - | - | - | - |
| 11  1430  1  01  00  5114 | SUMMER SCHOOL PARAPROFESSIONAL | - | - | - | - | - |
| 11  1430  1  01  00  5220 | SUMMER SCHOOL FICA | 1,606.50 | - | - | - | 1,606.50 |
| 11  1430  1  01  00  5232 | SUMMER SCHOOL NHRS PROFESSIONAL | 4,124.40 | - | - | - | 4,124.40 |
| 11  1430  1  01  00  5610 | SUMMER SCHOOL SUPPLIES | 200.00 | - | - | - | 200.00 |
| **1430 Total** | **SUMMER SCHOOL** | **5,930.90** | **-** | **-** | **-** | **5,930.90** |
| 11  1490  1  01  00  5112 | SUMMER ENRICHMENT TEACHER SALARIES | - | - | - | - | - |
| **1490 Total** | **SUMMER ENRICHMENT** | **-** | **-** | **-** | **-** | **-** |
| 11  2120  1  01  00  5112 | GUIDANCE TEACHER SALARIES | 129,337.77 | 34,821.50 | 94,595.50 | 129,417.00 | (79.23) |
| 11  2120  1  01  00  5122 | GUIDANCE HEALTH INSURANCE BUYOUT | - | - | - | - | - |
| 11  2120  1  01  00  5211 | GUIDANCE HEALTH INSURANCE | 42,448.08 | 3,943.88 | 32,594.00 | 36,537.88 | 5,910.20 |
| 11  2120  1  01  00  5212 | GUIDANCE DENTAL INSURANCE | 520.98 | - | 438.98 | 438.98 | 82.00 |
| 11  2120  1  01  00  5213 | GUIDANCE LIFE INSURANCE | 170.00 | 16.25 | 175.51 | 191.76 | (21.76) |
| 11  2120  1  01  00  5214 | GUIDANCE DISABILITY INSURANCE | 329.83 | 28.53 | 313.83 | 342.36 | (12.53) |
| 11  2120  1  01  00  5220 | GUIDANCE FICA | 9,894.34 | 2,663.45 | 6,832.11 | 9,495.56 | 398.78 |
| 11  2120  1  01  00  5232 | GUIDANCE NHRS PROFESSIONAL | 25,401.94 | 6,838.95 | 18,578.53 | 25,417.48 | (15.54) |
| 11  2120  1  01  00  5250 | GUIDANCE UNEMPLOYMENT INSURANCE | 90.09 | - | 60.00 | 60.00 | 30.09 |
| 11  2120  1  01  00  5260 | GUIDANCE WORKER'S COMPENSATION | 349.94 | - | 349.94 | 349.94 | - |
| 11  2120  1  01  00  5330 | GUIDANCE OTHER PROF SVCS | - | - | - | - | - |
| 11  2120  1  01  00  5610 | GUIDANCE SUPPLIES | 250.00 | 131.90 | 80.00 | 211.90 | 38.10 |
| 11  2120  1  01  00  5617 | GUIDANCE ASSESSMENT SUPPLIES | 2,552.70 | - | - | - | 2,552.70 |
| 11  2120  1  01  00  5643 | GUIDANCE INFORMATION ACCESS FEES | 500.00 | - | 500.00 | 500.00 | - |
| 11  2120  1  01  00  5810 | GUIDANCE DUES & FEES | 358.00 | - | 358.00 | 358.00 | - |
| **2120 Total** | **GUIDANCE** | **212,203.67** | **48,444.46** | **154,876.40** | **203,320.86** | **8,882.81** |
| 11  2130  1  01  00  5112 | NURSE TEACHER SALARIES | 75,705.00 | 20,382.13 | 55,511.96 | 75,894.09 | (189.09) |
| 11  2130  1  01  00  5114 | NURSING ASSISTANT | 15,296.74 | 3,002.99 | 14,701.76 | 17,704.75 | (2,408.01) |
| 11  2130  1  01  00  5120 | NURSE SUBSTITUTE SALARIES | 3,000.00 | - | 1,940.00 | 1,940.00 | 1,060.00 |
| 11  2130  1  01  00  5211 | NURSE HEALTH INSURANCE | 30,179.28 | 1,838.28 | 12,571.22 | 14,409.50 | 15,769.78 |
| 11  2130  1  01  00  5212 | NURSE DENTAL INSURANCE | 520.98 | - | 519.42 | 519.42 | 1.56 |
| 11  2130  1  01  00  5213 | NURSE LIFE INSURANCE | 73.68 | 9.25 | 83.25 | 92.50 | (18.82) |
| 11  2130  1  01  00  5214 | NURSE DISABILITY INSURANCE | 173.88 | 18.12 | 163.08 | 181.20 | (7.32) |
| 11  2130  1  01  00  5220 | NURSE FICA | 7,191.13 | 1,789.03 | 5,447.43 | 7,236.46 | (45.33) |
| 11  2130  1  01  00  5232 | NURSE NHRS PROFESSIONAL | 14,868.46 | 4,003.05 | 10,865.34 | 14,868.39 | 0.07 |
| 11  2130  1  01  00  5240 | NURSE TUITION REIMBURSEMENT | 1,350.00 | - | 1,323.00 | 1,323.00 | 27.00 |
| 11  2130  1  01  00  5241 | NURSE WORKSHOP REIMB PROF | - | - | - | - | - |
| 11  2130  1  01  00  5250 | NURSE UNEMPLOYMENT INSURANCE | 45.04 | - | 60.00 | 60.00 | (14.96) |
| 11  2130  1  01  00  5260 | NURSE WORKER'S COMPENSATION | 190.88 | - | 190.88 | 190.88 | - |
| 11  2130  1  01  00  5330 | NURSE OTHER PROF SVCS | 3,000.00 | - | 1,399.00 | 1,399.00 | 1,601.00 |
| 11  2130  1  01  00  5610 | NURSE SUPPLIES | 3,000.00 | 32.65 | 2,597.06 | 2,629.71 | 370.29 |
| 11  2130  1  01  00  5650 | NURSE SOFTWARE | 1,365.50 | - | - | - | 1,365.50 |
| 11  2130  1  01  00  5735 | NURSE REPLACEMENT EQUIPMENT | - | - | - | - | - |

Auburn School District
Expenditure Report
May 5, 2025

| ACCOUNT | TITLE | BUDGET | ENCUMBRANCES OUTSTANDING | YEAR TO DATE EXP | ENCUMBRANCES PLUS YTD EXPENDITURES | AVAILABLE BALANCE |
|---|---|---|---|---|---|---|
| 11 2130 1 01 00 5737 | NURSE REPLACEMENT FURNITURE & F | - | - | - | - | - |
| 11 2130 3 01 00 5330 | NURSE SVCS HIGH SCHOOL OTHER PROF SVCS | - | - | - | - | - |
| **2130 Total** | **HEALTH SERVICES** | **155,960.57** | **31,075.50** | **107,373.40** | **138,448.90** | **17,511.67** |
| 11 2140 1 01 00 5112 | PSYCH SERVICES TEACHER SALARIES | 82,976.00 | - | - | - | 82,976.00 |
| 11 2140 1 01 00 5122 | PSYCH SERVICES HEALTH INSURANCE BUYOUT | - | - | - | - | - |
| 11 2140 1 01 00 5211 | PSYCH SERVICES HEALTH INSURANCE | 30,179.28 | - | 5,700.65 | 5,700.65 | 24,478.63 |
| 11 2140 1 01 00 5212 | PSYCH SERVICES DENTAL INSURANCE | 520.98 | - | 286.12 | 286.12 | 234.86 |
| 11 2140 1 01 00 5213 | PSYCH SERVICES LIFE INSURANCE | 100.00 | - | - | - | 100.00 |
| 11 2140 1 01 00 5214 | PSYCH SERVICES DISABILITY INSURANCE | 200.00 | - | - | - | 200.00 |
| 11 2140 1 01 00 5220 | PSYCH SERVICES FICA | 6,347.66 | - | - | - | 6,347.66 |
| 11 2140 1 01 00 5232 | PSYCH SERVICES NHRS PROFESSIONAL | 16,296.49 | - | - | - | 16,296.49 |
| 11 2140 1 01 00 5250 | PSYCH SERVICES UNEMPLOYMENT INSURANCE | 45.04 | - | - | - | 45.04 |
| 11 2140 1 01 00 5260 | PSYCH SERVICES WORKER'S COMPENSATION | 159.06 | - | 159.06 | 159.06 | - |
| 11 2140 1 01 00 5330 | PSYCH SERVICES OTHER PROF SVCS | - | 42,784.00 | 108,416.00 | 151,200.00 | (151,200.00) |
| 11 2140 1 01 00 5337 | PSYCH SERVICES DIAGNOSTIC TESTING | 5,000.00 | - | 4,399.64 | 4,399.64 | 600.36 |
| 11 2140 1 01 00 5610 | PSYCH SERVICES SUPPLIES | - | - | - | - | - |
| **2140 Total** | **PSYCH SERVICES** | **141,824.51** | **42,784.00** | **118,961.47** | **161,745.47** | **(19,920.96)** |
| 11 2150 1 01 00 5112 | SPEECH SVCS TEACHER SALARIES | 164,165.15 | 22,839.78 | 61,624.71 | 84,464.49 | 79,700.66 |
| 11 2150 1 01 00 5122 | SPEECH SVCS HEALTH INSURANCE BUYOUT | 2,500.00 | - | - | - | 2,500.00 |
| 11 2150 1 01 00 5211 | SPEECH SVCS HEALTH INSURANCE | 23,174.40 | 3,204.50 | 20,028.60 | 23,233.10 | (58.70) |
| 11 2150 1 01 00 5212 | SPEECH SVCS DENTAL INSURANCE | 1,041.96 | - | 617.06 | 617.06 | 424.90 |
| 11 2150 1 01 00 5213 | SPEECH SVCS LIFE INSURANCE | 185.00 | 10.38 | 113.42 | 123.80 | 61.20 |
| 11 2150 1 01 00 5214 | SPEECH SVCS DISABILITY INSURANCE | 450.00 | 19.43 | 213.73 | 233.16 | 216.84 |
| 11 2150 1 01 00 5220 | SPEECH SVCS FICA | 12,749.88 | 1,739.73 | 4,429.10 | 6,168.83 | 6,581.05 |
| 11 2150 1 01 00 5232 | SPEECH SVCS NHRS PROFESSIONAL | 32,733.03 | 4,485.73 | 12,103.15 | 16,588.88 | 16,144.15 |
| 11 2150 1 01 00 5250 | SPEECH SVCS UNEMPLOYMENT INSURANCE | 90.09 | - | 30.00 | 30.00 | 60.09 |
| 11 2150 1 01 00 5260 | SPEECH SVCS WORKER'S COMPENSATION | 477.19 | - | 477.19 | 477.19 | - |
| 11 2150 1 01 00 5330 | SPEECH SVCS OTHER PROF SVCS | 29,540.00 | 43,285.95 | 100,963.73 | 144,249.68 | (114,709.68) |
| 11 2150 1 01 00 5610 | SPEECH SVCS SUPPLIES | 250.00 | - | - | - | 250.00 |
| 11 2150 2 01 00 5330 | SPEECH SVCS MIDDLE OTHER PROF SVCS | - | - | - | - | - |
| 11 2150 3 01 00 5330 | SPEECH SVCS HIGH OTHER PROF SVCS | 1,900.00 | - | - | - | 1,900.00 |
| **2150 Total** | **SPEECH SERVICES** | **269,256.70** | **75,585.50** | **200,600.69** | **276,186.19** | **(6,929.49)** |
| 11 2160 1 01 00 5111 | THERAPY SVCS ADMIN/OTHER SALARIES | 53,887.00 | 12,273.78 | 33,314.22 | 45,588.00 | 8,299.00 |
| 11 2160 1 01 00 5211 | THERAPY SVCS HEALTH INSURANCE | - | 1,838.28 | 8,348.52 | 10,186.80 | (10,186.80) |
| 11 2160 1 01 00 5212 | THERAPY SVCS DENTAL INSURANCE | - | - | 347.58 | 347.58 | (347.58) |
| 11 2160 1 01 00 5213 | THERAPY SVCS LIFE INSURANCE | 25.00 | 5.75 | 51.75 | 57.50 | (32.50) |
| 11 2160 1 01 00 5214 | THERAPY SVCS DISABILITY INSURANCE | 221.57 | 11.21 | 100.89 | 112.10 | 109.47 |
| 11 2160 1 01 00 5220 | THERAPY SVCS FICA | 4,122.36 | 938.54 | 2,471.96 | 3,410.50 | 711.86 |
| 11 2160 1 01 00 5232 | THERAPY SVCS NHRS PROFESSIONAL | 10,583.41 | 2,410.57 | 6,542.85 | 8,953.42 | 1,629.99 |
| 11 2160 1 01 00 5250 | THERAPY SVCS UNEMPLOYMENT INSURANCE | 45.04 | - | 30.00 | 30.00 | 15.04 |
| 11 2160 1 01 00 5260 | THERAPY SVCS WORKER'S COMPENSATION | 254.50 | - | 254.50 | 254.50 | - |
| 11 2160 1 01 00 5331 | THERAPY SVCS OT CONTRACTED SVCS | 6,270.00 | - | - | - | 6,270.00 |
| 11 2160 1 01 00 5333 | THERAPY SVCS VISION CONTRACTED SVCS | 2,205.00 | 433.00 | 2,067.00 | 2,500.00 | (295.00) |
| 11 2160 1 01 00 5334 | THERAPY SVCS PT CONTRACTED SVCS | 10,800.00 | 5,598.25 | 13,175.75 | 18,774.00 | (7,974.00) |
| 11 2160 1 01 00 5610 | THERAPY SVCS SUPPLIES | 1,200.00 | - | 1,176.41 | 1,176.41 | 23.59 |
| 11 2160 2 01 00 5330 | THERAPY SVCS - MIDDLE OTHER PROF SVCS | - | - | - | - | - |

Auburn School District
Expenditure Report
May 5, 2025

| ACCOUNT | TITLE | BUDGET | ENCUMBRANCES OUTSTANDING | YEAR TO DATE EXP | ENCUMBRANCES PLUS YTD EXPENDITURES | AVAILABLE BALANCE |
|---|---|---|---|---|---|---|
| 11 2160 2 01 00 5331 | THERAPY SVCS - MIDDLE OT CONTRACTED SVCS | - | - | - | - | - |
| 11 2160 2 01 00 5333 | THERAPY SVCS - MIDDLE VISION CONTRACTED SVCS | - | - | - | - | - |
| 11 2160 2 01 00 5334 | THERAPY SVCS - MIDDLE PT CONTRACTED SVCS | - | - | - | - | - |
| 11 2160 3 01 00 5330 | THERAPY SVCS - HS OTHER PROF SVCS | - | - | - | - | - |
| 11 2160 3 01 00 5331 | THERAPY SVCS - HS OT CONTRACTED SVCS | - | - | - | - | - |
| 11 2160 3 01 00 5333 | THERAPY SVCS - HS VISION CONTRACTED SVCS | - | - | - | - | - |
| 11 2160 3 01 00 5334 | THERAPY SVCS - HS PT CONTRACTED SVCS | - | 1,251.80 | 748.20 | 2,000.00 | (2,000.00) |
| **2160 Total** | **THERAPY SERVICES** | **89,613.88** | **24,761.18** | **68,629.63** | **93,390.81** | **(3,776.93)** |
| 11 2190 1 01 00 5610 | OTHER SUPPORT SERVICES SUPPLIES | - | - | - | - | - |
| 11 2190 1 01 00 5810 | OTHER SUPPORT SERVICES DUES & FEES | - | - | - | - | - |
| **2190 Total** | **OTHER SUPPORT SERVICES** | **-** | **-** | **-** | **-** | **-** |
| 11 2210 1 01 00 5111 | STAFF DEVELOPMENT ADMIN/OTHER SALARIES | - | - | - | - | - |
| 11 2210 1 01 00 5112 | STAFF DEVELOPMENT TEACHER SALARIES | 52,533.24 | 8,000.00 | 35,807.26 | 43,807.26 | 8,725.98 |
| 11 2210 1 01 00 5211 | STAFF DEVELOPMENT HEALTH INSURANCE | - | - | - | - | - |
| 11 2210 1 01 00 5212 | STAFF DEVELOPMENT DENTAL INSURANCE | - | - | - | - | - |
| 11 2210 1 01 00 5213 | STAFF DEVELOPMENT LIFE INSURANCE | - | - | - | - | - |
| 11 2210 1 01 00 5214 | STAFF DEVELOPMENT DISABILITY INSURANCE | - | - | - | - | - |
| 11 2210 1 01 00 5220 | STAFF DEVELOPMENT FICA | 4,018.80 | 610.69 | 2,605.08 | 3,215.77 | 803.03 |
| 11 2210 1 01 00 5232 | STAFF DEVELOPMENT NHRS PROFESSIONAL | 10,318.01 | 1,374.49 | 6,782.19 | 8,156.68 | 2,161.33 |
| 11 2210 1 01 00 5231 | STAFF DEVELOPMENT NHRS SUPPORT | - | 135.30 | 135.30 | 270.60 | (270.60) |
| 11 2210 1 01 00 5241 | STAFF DEVELOPMENT WORKSHOP REIMB PROF | 4,598.69 | - | 2,839.74 | 2,839.74 | 1,758.95 |
| 11 2210 1 01 00 5250 | STAFF DEVELOPMENT UNEMPLOYMENT INSURANCE | - | - | - | - | - |
| 11 2210 1 01 00 5260 | STAFF DEVELOPMENT WORKER'S COMPENSATION | - | - | - | - | - |
| 11 2210 1 01 00 5322 | STAFF DEVELOPMENT ORIENTATION | 1,000.00 | - | 968.73 | 968.73 | 31.27 |
| 11 2210 1 01 00 5330 | STAFF DEVELOPMENT OTHER PROF SVCS | - | - | 1,295.40 | 1,295.40 | (1,295.40) |
| 11 2210 1 01 00 5641 | STAFF DEVELOPMENT TEXTBOOKS | 100.00 | - | - | - | 100.00 |
| **2210 Total** | **STAFF DEVELOPMENT** | **72,568.74** | **10,120.48** | **50,433.70** | **60,554.18** | **12,014.56** |
| 11 2220 1 01 00 5111 | MEDIA ADMIN/OTHER SALARIES | 83,174.00 | 22,941.21 | 60,233.04 | 83,174.25 | (0.25) |
| 11 2220 1 01 00 5114 | MEDIA PARAPROFESSIONAL | 28,138.35 | 5,554.92 | 23,528.38 | 29,083.30 | (944.95) |
| 11 2220 1 01 00 5211 | MEDIA HEALTH INSURANCE | 36,536.40 | 5,514.50 | 29,268.60 | 34,783.10 | 1,753.30 |
| 11 2220 1 01 00 5212 | MEDIA DENTAL INSURANCE | 520.98 | - | 891.26 | 891.26 | (370.28) |
| 11 2220 1 01 00 5213 | MEDIA LIFE INSURANCE | 110.00 | 12.26 | 133.36 | 145.62 | (35.62) |
| 11 2220 1 01 00 5214 | MEDIA DISABILITY INSURANCE | 230.00 | 18.74 | 206.14 | 224.88 | 5.12 |
| 11 2220 1 01 00 5220 | MEDIA FICA | 8,515.39 | 2,172.46 | 6,128.74 | 8,301.20 | 214.19 |
| 11 2220 1 01 00 5232 | MEDIA NHRS PROFESSIONAL | 16,335.37 | 4,505.65 | 11,829.78 | 16,335.43 | (0.06) |
| 11 2220 1 01 00 5241 | MEDIA WORKSHOP REIMB PROF | - | - | - | - | - |
| 11 2220 1 01 00 5250 | MEDIA UNEMPLOYMENT INSURANCE | 90.09 | - | 60.00 | 60.00 | 30.09 |
| 11 2220 1 01 00 5260 | MEDIA WORKER'S COMPENSATION | 311.77 | - | 311.77 | 311.77 | - |
| 11 2220 1 01 00 5430 | MEDIA REPAIRS & MAINT SERVICES | 1,404.05 | 719.83 | 2,500.61 | 3,220.44 | (1,816.39) |
| 11 2220 1 01 00 5442 | MEDIA RENTAL OF EQUIPMENT | - | 448.12 | 2,240.60 | 2,688.72 | (2,688.72) |
| 11 2220 1 01 00 5610 | MEDIA SUPPLIES | 977.55 | - | 733.35 | 733.35 | 244.20 |
| 11 2220 1 01 00 5641 | MEDIA TEXTBOOKS | 2,000.00 | 225.00 | 1,245.85 | 1,470.85 | 529.15 |
| 11 2220 1 01 00 5642 | MEDIA ELECTRONIC INFORMATION | - | - | - | - | - |
| 11 2220 1 01 00 5643 | MEDIA INFORMATION ACCESS FEES | 9,258.28 | - | 3,138.82 | 3,138.82 | 6,119.46 |
| 11 2220 1 01 00 5644 | MEDIA PERIODICALS | 539.99 | - | 344.94 | 344.94 | 195.05 |
| 11 2220 1 01 00 5735 | MEDIA REPLACEMENT EQUIPMENT | - | - | - | - | - |

Auburn School District
Expenditure Report
May 5, 2025

| ACCOUNT | TITLE | BUDGET | ENCUMBRANCES OUTSTANDING | YEAR TO DATE EXP | ENCUMBRANCES PLUS YTD EXPENDITURES | AVAILABLE BALANCE |
|---|---|---|---|---|---|---|
| 11 2220 1 01 00 5810 | MEDIA DUES & FEES | 230.00 | - | 188.00 | 188.00 | 42.00 |
| **2220 Total** | **MEDIA** | **188,372.22** | **42,112.69** | **142,983.24** | **185,095.93** | **3,276.29** |
| 11 2310 1 01 00 5111 | SCHOOL BOARD SERVICES ADMIN/OTHER SALARIES | - | - | 9,100.00 | 9,100.00 | (9,100.00) |
| 11 2310 1 01 00 5113 | SCHOOL BOARD SERVICES TREASURER SALARY | 2,300.00 | - | 2,300.00 | 2,300.00 | - |
| 11 2310 1 01 00 5115 | SCHOOL BOARD SERVICES SECRETARIAL SALARIES | 2,250.00 | - | 1,500.00 | 1,500.00 | 750.00 |
| 11 2310 1 01 00 5220 | SCHOOL BOARD SERVICES FICA | 348.23 | - | 986.90 | 986.90 | (638.67) |
| 11 2310 1 01 00 5231 | SCHOOL BOARD SERVICES NHRS SUPPORT | 304.43 | - | 202.99 | 202.99 | 101.44 |
| 11 2310 1 01 00 5330 | SCHOOL BOARD SERVICES OTHER PROF SVCS | - | - | - | - | - |
| 11 2310 1 01 00 5332 | SCHOOL BOARD SERVICES AUDIT EXPENSES | 9,200.00 | - | 9,200.00 | 9,200.00 | - |
| 11 2310 1 01 00 5338 | SCHOOL BOARD SERVICES CRIMINAL RECORD CHECK | 1,500.00 | 167.84 | 1,380.41 | 1,548.25 | (48.25) |
| 11 2310 1 01 00 5341 | SCHOOL BOARD SERVICES LEGAL & CONSULTING | 20,000.00 | 4,444.46 | 24,089.92 | 28,534.38 | (8,534.38) |
| 11 2310 1 01 00 5342 | SCHOOL BOARD SERVICES DISTRICT MEETING SERVICES | 500.00 | - | - | - | 500.00 |
| 11 2310 1 01 00 5613 | SCHOOL BOARD SERVICES SCHOOL BOARD SUPPLIES | 275.00 | - | 160.85 | 160.85 | 114.15 |
| 11 2310 1 01 00 5614 | SCHOOL BOARD SERVICES DISTRICT MEETING SUPPLIES | 1,750.00 | 1,000.00 | 1,331.44 | 2,331.44 | (581.44) |
| 11 2310 1 01 00 5618 | SCHOOL BOARD SERVICES TREASURER SUPPLIES | 500.00 | - | - | - | 500.00 |
| 11 2310 1 01 00 5810 | SCHOOL BOARD SERVICES DUES & FEES | - | 1,972.00 | 129.00 | 2,101.00 | (2,101.00) |
| 11 2310 1 01 00 5840 | SCHOOL BOARD CONTINGENCY | 188,291.94 | - | - | - | 188,291.94 |
| **2310 Total** | **SCHOOL BOARD SERVICES** | **227,219.60** | **7,584.30** | **50,381.51** | **57,965.81** | **169,253.79** |
| 11 2320 0 01 00 5590 | SAU SERVICES SAU SERVICES | 389,399.00 | - | 389,399.00 | 389,399.00 | - |
| **2320 Total** | **SAU SERVICES** | **389,399.00** | **-** | **389,399.00** | **389,399.00** | **-** |
| 11 2410 1 01 00 5111 | PRINCIPAL SERVICES ADMIN/OTHER SALARIES | 123,445.50 | 18,991.70 | 104,453.80 | 123,445.50 | - |
| 11 2410 1 01 00 5115 | PRINCIPAL SERVICES SECRETARIAL SALARIES | 82,317.11 | 19,233.35 | 62,420.94 | 81,654.29 | 662.82 |
| 11 2410 1 01 00 5118 | PRINCIPAL SERVICES ASSISTANT PRINCIPAL SALAR | 199,925.10 | 30,757.64 | 169,167.46 | 199,925.10 | - |
| 11 2410 1 01 00 5122 | PRINCIPAL SERVICES HEALTH INSURANCE BUYOUT | - | - | - | - | - |
| 11 2410 1 01 00 5211 | PRINCIPAL SERVICES HEALTH INSURANCE | 99,429.84 | 12,761.93 | 78,674.02 | 91,435.95 | 7,993.89 |
| 11 2410 1 01 00 5212 | PRINCIPAL SERVICES DENTAL INSURANCE | 3,109.50 | - | 1,854.96 | 1,854.96 | 1,254.54 |
| 11 2410 1 01 00 5213 | PRINCIPAL SERVICES LIFE INSURANCE | 500.00 | 63.74 | 480.82 | 544.56 | (44.56) |
| 11 2410 1 01 00 5214 | PRINCIPAL SERVICES DISABILITY INSURANCE | 1,100.00 | 124.35 | 954.57 | 1,078.92 | 21.08 |
| 11 2410 1 01 00 5220 | PRINCIPAL SERVICES FICA | 31,035.11 | 5,271.68 | 24,312.22 | 29,583.90 | 1,451.21 |
| 11 2410 1 01 00 5231 | PRINCIPAL SERVICES NHRS SUPPORT | 11,137.50 | 2,602.27 | 8,170.85 | 10,773.12 | 364.38 |
| 11 2410 1 01 00 5232 | PRINCIPAL SERVICES NHRS PROFESSIONAL | 63,509.99 | 9,770.77 | 53,739.40 | 63,510.17 | (0.18) |
| 11 2410 1 01 00 5240 | PRINCIPAL SERVICES TUITION REIMBURSEMENT | - | - | - | - | - |
| 11 2410 1 01 00 5241 | PRINCIPAL SERVICES WORKSHOP REIMB PROF | 1,350.00 | - | 1,580.00 | 1,580.00 | (230.00) |
| 11 2410 1 01 00 5244 | PRINCIPAL SERVICES SECRETARIAL WORKSHOP | 600.00 | - | 493.86 | 493.86 | 106.14 |
| 11 2410 1 01 00 5250 | PRINCIPAL SERVICES UNEMPLOYMENT INSURANCE | 210.21 | - | 120.00 | 120.00 | 90.21 |
| 11 2410 1 01 00 5260 | PRINCIPAL SERVICES WORKER'S COMPENSATION | 1,113.45 | - | 1,113.45 | 1,113.45 | - |
| 11 2410 1 01 00 5430 | PRINCIPAL SERVICES REPAIRS & MAINT SERVICES | 20,000.00 | 607.90 | 12,607.25 | 13,215.15 | 6,784.85 |
| 11 2410 1 01 00 5442 | PRINCIPAL SERVICES RENTAL OF EQUIPMENT | 15,000.00 | 493.41 | 1,480.23 | 1,973.64 | 13,026.36 |
| 11 2410 1 01 00 5531 | PRINCIPAL SERVICES TELEPHONE | 22,320.00 | 1,947.13 | 12,091.44 | 14,038.57 | 8,281.43 |
| 11 2410 1 01 00 5532 | PRINCIPAL SERVICES DATA COMMUNICATIONS | - | 2,299.29 | 9,218.06 | 11,517.35 | (11,517.35) |
| 11 2410 1 01 00 5534 | PRINCIPAL SERVICES POSTAGE | 3,000.00 | - | 3,000.00 | 3,000.00 | - |
| 11 2410 1 01 00 5540 | PRINCIPAL SERVICES ADVERTISING | 400.00 | - | 62.20 | 62.20 | 337.80 |
| 11 2410 1 01 00 5550 | PRINCIPAL SERVICES PRINTING | 500.00 | - | - | - | 500.00 |
| 11 2410 1 01 00 5580 | PRINCIPAL SERVICES MILEAGE REIMBURSEMENT | 800.00 | - | 748.20 | 748.20 | 51.80 |
| 11 2410 1 01 00 5610 | PRINCIPAL SERVICES SUPPLIES | 1,800.00 | 237.61 | 607.53 | 845.14 | 954.86 |
| 11 2410 1 01 00 5735 | PRINCIPAL SERVICES REPLACEMENT EQUIPMENT | 2,000.00 | - | - | - | 2,000.00 |

Auburn School District
Expenditure Report
May 5, 2025

| ACCOUNT | TITLE | BUDGET | ENCUMBRANCES OUTSTANDING | YEAR TO DATE EXP | ENCUMBRANCES PLUS YTD EXPENDITURES | AVAILABLE BALANCE |
|---|---|---|---|---|---|---|
| 11 2410 1 01 00 5737 | PRINCIPAL SERVICES REPLACEMENT FURNITURE & F | 500.00 | - | - | - | 500.00 |
| 11 2410 1 01 00 5810 | PRINCIPAL SERVICES DUES & FEES | - | - | - | - | - |
| **2410 Total** | **PRINCIPAL SERVICES** | **685,103.31** | **105,162.77** | **547,351.26** | **652,514.03** | **32,589.28** |
| 11 2600 1 01 00 5111 | MAINTENANCE ADMIN/OTHER SALARIES | 91,927.50 | 14,142.76 | 77,784.74 | 91,927.50 | - |
| 11 2600 1 01 00 5116 | MAINTENANCE CUSTODIAL SALARIES | 184,994.69 | 49,041.69 | 138,988.37 | 188,030.06 | (3,035.37) |
| 11 2600 1 01 00 5211 | MAINTENANCE HEALTH INSURANCE | 92,970.24 | 15,750.72 | 61,820.03 | 77,570.75 | 15,399.49 |
| 11 2600 1 01 00 5212 | MAINTENANCE DENTAL INSURANCE | 4,074.40 | - | 2,508.44 | 2,508.44 | 1,565.96 |
| 11 2600 1 01 00 5213 | MAINTENANCE LIFE INSURANCE | 250.00 | 19.54 | 310.62 | 330.16 | (80.16) |
| 11 2600 1 01 00 5214 | MAINTENANCE DISABILITY INSURANCE | 500.00 | 119.68 | 607.68 | 727.36 | (227.36) |
| 11 2600 1 01 00 5220 | MAINTENANCE FICA | 21,184.55 | 4,832.67 | 16,404.25 | 21,236.92 | (52.37) |
| 11 2600 1 01 00 5231 | MAINTENANCE NHRS SUPPORT | 32,265.02 | 6,010.07 | 25,231.89 | 31,241.96 | 1,023.06 |
| 11 2600 1 01 00 5232 | MAINTENANCE NHRS PROFESSIONAL | - | - | - | - | - |
| 11 2600 1 01 00 5241 | MAINTENANCE WORKSHOP REIMB PROF | 450.00 | - | - | - | 450.00 |
| 11 2600 1 01 00 5250 | MAINTENANCE UNEMPLOYMENT INSURANCE | 262.77 | - | 180.00 | 180.00 | 82.77 |
| 11 2600 1 01 00 5260 | MAINTENANCE WORKER'S COMPENSATION | 5,060.48 | - | 5,060.48 | 5,060.48 | - |
| 11 2600 1 01 00 5360 | MAINTENANCE CONTRACTED SERVICES | 3,900.00 | - | 4,360.00 | 4,360.00 | (460.00) |
| 11 2600 1 01 00 5430 | MAINTENANCE REPAIRS & MAINT SERVICES | 20,630.00 | 308.00 | 30,432.82 | 30,740.82 | (10,110.82) |
| 11 2600 1 01 00 5431 | MAINTENANCE REPAIRS EQUIPMENT | 560.00 | - | 609.50 | 609.50 | (49.50) |
| 11 2600 1 01 00 5432 | MAINTENANCE REPAIRS BUILDINGS | 17,100.00 | 4,989.02 | 16,370.44 | 21,359.46 | (4,259.46) |
| 11 2600 1 01 00 5433 | MAINTENANCE REPAIRS GROUNDS | 24,425.00 | 6,713.06 | 13,986.94 | 20,700.00 | 3,725.00 |
| 11 2600 1 01 00 5434 | MAINTENANCE BUILDING IMPROVEMENTS | 39,500.00 | - | 39,233.50 | 39,233.50 | 266.50 |
| 11 2600 1 01 00 5435 | MAINTENANCE SEC & SAFETY EQUIP REPAIR | 1,875.00 | - | 11,355.42 | 11,355.42 | (9,480.42) |
| 11 2600 1 01 00 5437 | MAINTENANCE GARBAGE REMOVAL | 12,950.00 | 4,358.99 | 8,239.31 | 12,598.30 | 351.70 |
| 11 2600 1 01 00 5438 | MAINTENANCE GROUNDS MAINTENANCE CONTR | 14,820.00 | 2,890.00 | 11,930.00 | 14,820.00 | - |
| 11 2600 1 01 00 5439 | MAINTENANCE LIFE SAFETY REPAIRS | 6,050.00 | 1,000.00 | 6,514.67 | 7,514.67 | (1,464.67) |
| 11 2600 1 01 00 5521 | MAINTENANCE PROPERTY/LIABILITY INS | 35,698.00 | - | 35,698.00 | 35,698.00 | - |
| 11 2600 1 01 00 5531 | MAINTENANCE TELEPHONE | - | 420.00 | 1,020.00 | 1,440.00 | (1,440.00) |
| 11 2600 1 01 00 5580 | MAINTENANCE MILEAGE REIMBURSEMENT | 750.00 | - | 313.07 | 313.07 | 436.93 |
| 11 2600 1 01 00 5610 | MAINTENANCE SUPPLIES | 20,515.00 | 892.96 | 18,934.94 | 19,827.90 | 687.10 |
| 11 2600 1 01 00 5612 | MAINTENANCE MAINTENANCE SUPPLIES | 9,000.00 | 67.90 | 8,692.96 | 8,760.86 | 239.14 |
| 11 2600 1 01 00 5621 | MAINTENANCE PROPANE | 45,000.00 | 10,488.75 | 34,511.25 | 45,000.00 | - |
| 11 2600 1 01 00 5622 | MAINTENANCE ELECTRICITY | 100,000.00 | 17,226.78 | 82,773.22 | 100,000.00 | - |
| 11 2600 1 01 00 5731 | MAINTENANCE NEW EQUIPMENT | 1,100.00 | - | 880.12 | 880.12 | 219.88 |
| 11 2600 1 01 00 5735 | MAINTENANCE REPLACEMENT EQUIPMENT | 750.00 | - | 233.97 | 233.97 | 516.03 |
| **2600 Total** | **MAINTENANCE** | **788,562.65** | **139,272.59** | **654,986.63** | **794,259.22** | **(5,696.57)** |
| 11 2700 0 01 00 5517 | REG ED TRANSPORTATION ATHLETIC TRANS | 15,000.00 | 5,695.44 | 9,242.89 | 14,938.33 | 61.67 |
| 11 2700 0 01 00 5518 | REG ED TRANSPORTATION FIELD TRIP TRANS | 7,500.00 | 1,915.02 | 5,302.95 | 7,217.97 | 282.03 |
| 11 2700 0 01 00 5519 | REG ED TRANSPORTATION TRANSPORTATION | 719,698.35 | 198,948.96 | 391,853.44 | 590,802.40 | 128,895.95 |
| 11 2700 0 01 61 5519 | SPED TRANSPORTATION TRANSPORTATION | 560,000.00 | 167,213.48 | 314,470.02 | 481,683.50 | 78,316.50 |
| **2700 Total** | **TRANSPORTATION** | **1,302,198.35** | **373,772.90** | **720,869.30** | **1,094,642.20** | **207,556.15** |
| 11 2840 1 01 00 5111 | IT ADMIN/OTHER SALARIES | 94,554.00 | 14,546.82 | 80,007.18 | 94,554.00 | - |
| 11 2840 1 01 00 5114 | IT PARAPROFESSIONAL | 17,952.00 | 5,429.00 | 15,181.00 | 20,610.00 | (2,658.00) |
| 11 2840 1 01 00 5121 | IT STAFFING TIME SALARIES | - | - | - | - | - |
| 11 2840 1 01 00 5122 | IT HEALTH INSURANCE BUYOUT | - | - | - | - | - |
| 11 2840 1 01 00 5211 | IT HEALTH INSURANCE | 23,174.40 | 3,361.80 | 19,556.70 | 22,918.50 | 255.90 |
| 11 2840 1 01 00 5212 | IT DENTAL INSURANCE | 520.98 | - | 466.80 | 466.80 | 54.18 |

Auburn School District
Expenditure Report
May 5, 2025

| ACCOUNT | TITLE | BUDGET | ENCUMBRANCES OUTSTANDING | YEAR TO DATE EXP | ENCUMBRANCES PLUS YTD EXPENDITURES | AVAILABLE BALANCE |
|---|---|---|---|---|---|---|
| 11 2840 1 01 00 5213 | IT LIFE INSURANCE | 125.00 | 11.88 | 130.68 | 142.56 | (17.56) |
| 11 2840 1 01 00 5214 | IT DISABILITY INSURANCE | 250.00 | 22.79 | 250.69 | 273.48 | (23.48) |
| 11 2840 1 01 00 5220 | IT FICA | 8,606.71 | 1,525.47 | 6,985.03 | 8,510.50 | 96.21 |
| 11 2840 1 01 00 5231 | IT NHRS SUPPORT | 12,793.16 | 1,968.18 | 10,824.88 | 12,793.06 | 0.10 |
| 11 2840 1 01 00 5241 | IT WORKSHOP REIMB PROF | 750.00 | - | 540.00 | 540.00 | 210.00 |
| 11 2840 1 01 00 5250 | IT UNEMPLOYMENT INSURANCE | 52.56 | - | 60.00 | 60.00 | (7.44) |
| 11 2840 1 01 00 5260 | IT WORKER'S COMPENSATION | 668.08 | - | 668.08 | 668.08 | - |
| 11 2840 1 01 00 5330 | IT OTHER PROF SVCS | 29,758.00 | 2,000.00 | 5,131.55 | 7,131.55 | 22,626.45 |
| 11 2840 1 01 00 5431 | IT REPAIRS EQUIPMENT | 2,000.00 | - | 16,611.98 | 16,611.98 | (14,611.98) |
| 11 2840 1 01 00 5531 | IT TELEPHONE | - | 180.00 | 540.00 | 720.00 | (720.00) |
| 11 2840 1 01 00 5610 | IT SUPPLIES | 2,750.00 | 233.84 | 3,181.17 | 3,415.01 | (665.01) |
| 11 2840 1 01 00 5641 | IT TEXTBOOKS | - | - | - | - | - |
| 11 2840 1 01 00 5643 | IT INFORMATION ACCESS FEES | - | - | 27,844.28 | 27,844.28 | (27,844.28) |
| 11 2840 1 01 00 5650 | IT SOFTWARE | 30,628.75 | - | 462.69 | 462.69 | 30,166.06 |
| 11 2840 1 01 00 5733 | IT NEW FURNITURE | - | - | - | - | - |
| 11 2840 1 01 00 5734 | IT NEW COMPUTER EQUIP | 6,032.96 | 319.00 | 5,225.98 | 5,544.98 | 487.98 |
| 11 2840 1 01 00 5738 | IT REPLACE COMPUTERS | 45,500.00 | - | 44,530.00 | 44,530.00 | 970.00 |
| 11 2840 1 01 00 5810 | IT DUES & FEES | 970.00 | - | 984.15 | 984.15 | (14.15) |
| **2840 Total** | **INFORMATION TECHNOLOGY** | **277,086.60** | **29,598.78** | **239,182.84** | **268,781.62** | **8,304.98** |
| 11 2900 1 01 00 5114 | WAGE POOL | 20,000.00 | - | - | - | 20,000.00 |
| **2900 Total** | **WAGE POOL** | **20,000.00** | **-** | **-** | **-** | **20,000.00** |
| 11 5110 1 01 00 5910 | PRINCIPAL OF DEBT PRINCIPAL OF DEBT | 785,000.00 | - | 785,000.00 | 785,000.00 | - |
| **5110 Total** | **DEBT SERVICE PRINCIPAL** | **785,000.00** | **-** | **785,000.00** | **785,000.00** | **-** |
| 11 5120 1 01 00 5830 | DEBT SERVICE INTEREST | 393,095.00 | - | 393,095.00 | 393,095.00 | - |
| **5120 Total** | **DEBT SERVICE INTEREST** | **393,095.00** | **-** | **393,095.00** | **393,095.00** | **-** |
| 11 5310 1 01 00 5564 | CHARTER SCHOOL TUITION | 11,000.00 | - | - | - | 11,000.00 |
| **5310 Total** | **CHARTER SCHOOL TUITION** | **11,000.00** | **-** | **-** | **-** | **11,000.00** |
| **Grand Total** | | **17,748,354.40** | **2,646,595.90** | **14,555,988.20** | **17,202,584.10** | **545,770.30** |

Auburn School District
Estimated Revenues Less Appropriations - All Sources
As of May 6, 2025

| BUDGET UNIT | DESCRIPTION | | BUDGET | YTD RECEIVED | ANTICIPATED | TOTAL REVENUE |
|---|---|---|---|---|---|---|
| | **GENERAL FUND** | | | | | |
| 11-1310-0-00-00 | Tuition | | 0.00 | 4,800.00 | 0.00 | 4,800.00 |
| 11-1510-0-00-00 | Interest | | 16,000.00 | 28,134.96 | 12,800.00 | 40,934.96 |
| 11-1910-0-00-00 | Rentals | | 2,000.00 | 2,000.00 | 0.00 | 2,000.00 |
| 11-1920-0-00-00 | Donations | | 0.00 | 200.00 | 0.00 | 200.00 |
| 11-1990-0-00-00 | Other Local Revenue | | 0.00 | 336.45 | 0.00 | 336.45 |
| 11-3111-0-00-00 | State Adequacy Grant | | 2,491,450.72 | 2,491,450.72 | 0.00 | 2,491,450.72 |
| 11-3112-0-00-00 | State Education Tax | | 1,724,951.00 | 1,724,951.00 | 0.00 | 1,724,951.00 |
| 11-3190-0-00-00 | Other State Aid | | 1,025.00 | 3,268.22 | 0.00 | 3,268.22 |
| 11-3230-0-00-00 | Special Education Aid | | 125,000.00 | 103,590.33 | 0.00 | 103,590.33 |
| | | **TOTALS** | **4,360,426.72** | **4,358,731.68** | **12,800.00** | **4,371,531.68** |
| | **GRANT FUNDS** | | | | | |
| 12-3249-0-00-05 | Robotics | | 8,130.00 | 6,120.00 | 1,802.90 | 7,922.90 |
| 12-4520-0-00-00 | Title I | | 31,627.95 | 13,358.98 | 7,026.55 | 20,385.53 |
| 12-4530-0-00-02 | Title II | | 24,134.32 | 4,986.62 | 7,554.73 | 12,541.35 |
| 12-4530-0-00-04 | Title IV | | 10,000.00 | 9,680.00 | 270.60 | 9,950.60 |
| 12-4570-0-00-00 | IDEA/Preschool | | 217,301.12 | 108,471.70 | 98,586.72 | 207,058.42 |
| 12-4595-4-00-05 | Learning Into Literacy | | 3,906.00 | 3,906.00 | 0.00 | 3,906.00 |
| 12-4700-0-00-10 | E-Rate | | 10,868.95 | 10,868.95 | 0.00 | 10,868.95 |
| | | **TOTALS** | **305,968.34** | **157,392.25** | **115,241.50** | **272,633.75** |
| | **FOOD SERVICE** | | | | | |
| 14-1600-0-00-00 | Lunch/Milk Sales | | 213,544.00 | 153,839.09 | 45,000.00 | 198,839.09 |
| 14-3260-0-00-00 | State Lunch Reimbursement | | 3,700.00 | 3,575.82 | 0.00 | 3,575.82 |
| 14-3261-0-00-00 | State Breakfast Reimbursement | | 0.00 | 166.95 | 0.00 | 166.95 |
| 14-4560-0-00-00 | Federal Lunch Reimbursement | | 51,000.00 | 24,319.14 | 18,000.00 | 42,319.14 |
| 14-4565-0-00-00 | Fedeeral Breakfast Reimbursement | | 0.00 | 2,681.01 | 2,500.00 | 5,181.01 |
| | | **TOTALS** | **268,244.00** | **184,582.01** | **65,500.00** | **250,082.01** |

## **Auburn School District: 2024–2025 Federal Grant Funds Overview**

The Auburn School District receives federal funding through the *Every Student Succeeds Act (ESSA)* and the *Individuals with Disabilities Education Act (IDEA)* to support equitable access to high-quality instruction, professional learning, enrichment opportunities, and special education services.

Federal grant funds are not discretionary and cannot be used to support general district operations or strategic plan initiatives unless those initiatives are directly identified through a federally compliant needs assessment. All expenditures must be:

- Identified through a comprehensive needs assessment that includes multiple data sources and stakeholder feedback (list of potential data sources identified at the end of this document)
- Allowable, allocable, necessary, and reasonable under federal Uniform Grant Guidance (2 CFR §200)
- Aligned to the specific allowable uses of each individual federal grant program

### **Title I, Part A – Improving Basic Programs Operated by Local Educational Agencies**

Purpose: Provides supplemental support for students most at risk of not meeting state standards.

Allowable Uses: Academic intervention, targeted instructional support, family engagement, and support for homeless students under the McKinney-Vento Homeless Assistance Act (e.g., transportation, school supplies, enrollment support).

- Limitations: Funds must supplement—not supplant—state and local efforts. They may not be used for general classroom instruction, staffing, or school wide initiatives not directly tied to the needs of Title I-eligible students. Use is restricted to eligible schools and student populations.

| 24-25 Allocation | Title IA $31,627.95 |
|---|---|
| 24-25 Encumbered | Title IA $30,227.61 |

### **Title II, Part A – Supporting Effective Instruction**

Purpose: Improves educator effectiveness through professional learning and leadership development.

Allowable Uses: Evidence-based professional development, instructional coaching, mentoring, and support for educator recruitment and retention.

Limitations: May not fund district initiatives outlined in the strategic plan unless identified through the federal needs assessment. Funds may not be used for curriculum materials, student

programming, or administrator training unrelated to instruction. Salaries/stipends are only allowed if tied directly to professional learning.

| 24-25 Allocation | Title IIA $24,134.32 |
| --- | --- |
| 24-25 Encumbered | Title IIA $24,134.32 |

**Title IV, Part A – Student Support and Academic Enrichment (SSAE) Grants**

Purpose: Enhances academic achievement by supporting well-rounded education, safe and healthy learning conditions, and effective use of technology.

Allowable Uses: (1) Well-Rounded Education (minimum 20%) – e.g., STEM, civics, literacy enrichment; (2) Safe and Healthy Students (minimum 20%) – e.g., mental health awareness, school climate improvement; (3) Effective Use of Technology – e.g., digital learning and educator tech PD (infrastructure capped at 15%).

Limitations: Cannot support core instruction, general technology upgrades, building improvements, or non-instructional administrative costs. All activities must align with one or more of the three required areas and be supported by data from the needs assessment.

| 24-25 Allocation | Title IVA $10,000 |
| --- | --- |
| 24-25 Encumbered | Title IVA $10,000 |

**IDEA – Individuals with Disabilities Education Act**

Purpose: Ensures students with disabilities receive a Free Appropriate Public Education (FAPE) in the least restrictive environment.

Allowable Uses: Salaries for special education staff, related services (e.g., OT, PT, speech), assistive technology, and PD for staff working with students with disabilities.

Limitations: Funds must exclusively support services for students with IEPs. Cannot be used to supplant state/local special education funding or pay for general education services, even if students with disabilities are present.

| 24-25 Allocation | IDEA $211,140.40<br>Preschool $6,160.72 |
| --- | --- |
| 24-25 Encumbered | IDEA $210,691.33<br>Preschool $6,144.00 |

**Evidence-Based Requirements**
Under ESSA, federally funded activities must be "evidence-based," meaning they demonstrate a

statistically significant effect on improving student outcomes. ESSA defines four tiers of evidence:

- Tier 1: Strong evidence from well-designed and well-implemented experimental studies (randomized control trials)
- Tier 2: Moderate evidence from quasi-experimental studies
- Tier 3: Promising evidence from correlational studies with controls for bias
- Tier 4: Demonstrates a rationale based on high-quality research or positive evaluation with ongoing efforts to examine effectiveness

Each funded activity must cite evidence supporting its effectiveness and show alignment to identified needs.

**Indirect Costs**

A small portion of each federal grant is allocated for indirect costs, which support administrative functions necessary to operate federal programs, such as accounting, grant reporting, and payroll. Auburn's rate is approved annually by the New Hampshire Department of Education and applied consistently.

**Additional Grants**

**Robotics**

| 24-25 Allocation | Robotics $8,130 |
|---|---|
| 24-25 Encumbered | Robotics $8,130 |

**Important Takeaways**

Federal grant funds are tightly regulated, and each activity must be approved by the NH Department of Education. To ensure this compliance with ESEA guidelines, the New Hampshire Department of Education (NHED) conducts fiscal monitoring—which may be randomly scheduled—to verify that all expenditures are properly documented, aligned to approved grant activities, and in accordance with federal cost principles. The purpose of fiscal monitoring is to safeguard public funds, prevent misuse, and confirm that internal controls are in place to manage federal dollars responsibly.

In addition to fiscal monitoring, we are also subject to programmatic audits conducted by both NHED and, periodically, the U.S. Department of Education. These audits assess whether the implementation of grant-funded activities aligns with the approved plans, supports the intended student populations, and produces measurable outcomes. The goal of programmatic audits is to ensure that federally funded programs are making meaningful impacts and that districts are meeting the goals of federal education laws.

There are multiple layers of approval involved in managing federal grants, and even activities that are initially approved may later be rejected upon further review by NHED. If this occurs, the district is responsible for covering the cost of the disallowed activity.

**Potential Data Sources for a Comprehensive Needs Assessment for ESEA Federal Grants:**

- State assessment data (e.g., NH SAS scores in ELA, Math, Science)
- Universal screening data (e.g., DIBELS)
- Benchmark or interim assessments
- Graduation and dropout rates
- College and career readiness indicators (e.g., PSAT, SAT, AP, dual enrollment)
- Discipline and referral data (including suspension and expulsion by subgroup)
- Attendance and chronic absenteeism data
- Multilingual Learner progress data (e.g., ACCESS for MLs scores and growth)
- Staff qualifications and certification data
- Professional development surveys and evaluations
- Classroom observation and evaluation data
- Teacher retention and turnover rates
- Educator feedback through surveys, listening sessions, or focus groups
- School and district budget data, especially federal fund usage history
- Title program performance reports
- Cost-effectiveness reviews of previously funded initiatives
- Inventory of instructional materials and technology resources
- Achievement gaps by subgroup (e.g., economically disadvantaged, students with disabilities, English Learners, foster youth, students experiencing homelessness)
- Access to advanced coursework and enrichment opportunities
- Enrollment in intervention or support services
- Data disaggregated by various demographics
- Parent and family engagement surveys
- Community and family input through forums, advisory councils, or other outreach
- Needs assessment responses from Title I Schoolwide Planning teams
- Title-specific data such as:
    - For Title I: Literacy and math performance, poverty data, school-level needs
    - For Title II: Teacher recruitment and retention, PD effectiveness, leadership capacity
    - For Title III: ML services effectiveness and language acquisition rates
    - For Title IV-A: Access to well-rounded education (e.g., STEM, arts), safe and healthy schools, and effective use of technology

**XI.A.**

**AUBURN SCHOOL BOARD**

**May 13, 2025**

<u>**Resignation**</u>

**Christina Catalano**
Director of Student Services

**Emilie Landry**
Occupational Therapist

| Policy Second Reading- Auburn | | | | XII.A. |
|---|---|---|---|---|
| | | | 2nd Board Reading Date: | 5/13/2025 |
| | | | 1st Board Reading Date: | 4/8/2025 |
| | | | Committee Meeting Date: | 3/31/2025 |
| CURRENT CODE | | POLICY TITLE/CATEGORY | Board Changes at First Reading | Last reviewed |
| ILD | REQ | Non-Academic Surveys and Questionnaires | No changes | |
| IHAMA | REQ | Teaching About Alcohol, Drugs and Tobacco | Word added (highlighted in blue) | |
| JJIC | REQ | Eligibility for Interscholastic Athletics | Some changes (highlighted in blue) | |
| JFABB | | Foreign Exchange Students | Paragraph stricken | 2000 |
| JF | | Enrollment | No changes | 2000 |
| BK | | School Board Memberships | Agreed to eliminate | 2001 |

**ASD File:  ILD**

**AUBURN SCHOOL DISTRICT
NON-ACADEMIC SURVEYS AND QUESTIONNAIRES**

The Auburn school district shall not administer to students non-academic surveys or questionnaires that would in any way attempt to solicit personal information pertaining to:

1.  Sexuality or sexual behavior
2.  Gender
3.  Religious beliefs, affiliations or practices
4.  Political beliefs, affiliations or practices
5.  Physical or mental health status
6.  Opinions or attitudes regarding controversial or topical contemporary social issues
7.  Drug usage
8.  Firearms ownership or usage
9.  Student's or family member's income or finances
10. Student's family members or household practices
11. Any other personal information that is non-academic in nature

**Youth Risk Behavior Survey Developed by the Centers for Disease Control and Prevention**
State law does not require prior written consent from a parent or guardian for administration of the Youth Risk Behavior Survey developed by the Centers for Disease Control and Prevention. ~~Guidance issued by the Center for Disease Control, United States Department of Health and Human Services, concludes that federal law, including the Protection of Pupil Rights Amendment, also does not require prior written consent from parents or guardians because students are not required to participate and the survey is not paid for by the United States Department of Education.~~ As required by both New Hampshire and federal law, the District shall provide parents and guardians with notice at least ten (10) days before the Youth Risk Behavior Survey is administered. Parents may inspect the Youth Risk Behavior Survey at the school's administrative office. Parents or guardians may opt their student out of participating in the Youth Risk Behavior Survey by providing the Principal with written notice. District staff administering the Youth Risk Behavior Survey shall insure students understand that participation is voluntary and that students who opt-out will not be penalized.

**ASD File:  IHAMA**

**AUBURN SCHOOL DISTRICT**
**TEACHING ABOUT ALCOHOL, DRUGS, AND TOBACCO**

The Superintendent and/or designee shall be responsible to establish and periodically review the district's guidelines related to drug, alcohol and tobacco education with staff members providing such health education or education on such topics. An evidence-based prevention program, approved by the Superintendent, may be used for this purpose for conducting alcohol, drug, and tobacco education.

As part of the health education program for grades K-8, the District shall provide age and developmentally appropriate education based upon the needs of pupils and the community regarding the effects of alcohol and other drugs, abuse thereof, the hazards of using tobacco products, e-cigarettes, liquid nicotine and like suspensions, as well as the state laws and related penalties prohibiting minors from using or possessing such products.

Adopted:  November 14, 2000

**ASD File:  JJIC**

**AUBURN SCHOOL DISTRICT**
**ELIGIBILITY FOR INTERSCHOLASTIC ATHLETICS**

NEW/REQUIRED

Interscholastic team approved by the School board for any of grades 5-12 shall be designated as a boys, girls or coed team. Teams designated for boys will not be open to girls, and teams designated for girls will not be open to boys. For the purposed of this section, a student's sex is determined by the birth certificate or other evidence as described in RSA 193:41. Coed teams are open to students of all sexes.

For purposes of this policy, an "original birth certificate" is one issued at or near the time of the student's birth. If a copy is indicated as "modified", it must clearly show that any modification to sex relates only to correction of a scrivener or clerical error.

If the submitted birth certificate does not appear to be the original birth certificate, or it does not indicate the student's sex at birth, then the student/parent/guardian must provide other evidence indicating the student's sex at birth. Such evidence may include such things as: hospital records, social or publications produced near the time of birth, notarized statements from the parent or guardian regarding the student's biological sex at birth. The student or the student's parent or guardian must pay any costs associated with providing such alternative evidence.

Legal References:
RSA 193:38 Discrimination in Public Schools, RSA 193:41 School Athletics, and RSA 193:42 School Athletics; Causes of Action

**ASD File:  JFABB**

## AUBURN SCHOOL DISTRICT
## FOREIGN EXCHANGE STUDENTS

**Purpose**

~~In order to promote~~ **provide** ~~cultural awards~~ **awareness,** ~~and understanding, and to provide diverse experiences to district students, the Board shall admit foreign exchange students into the school district.~~

**Authority**

~~The Board shall accept foreign exchange students who meet the established guidelines for admission to the school district.~~

The Board may accept exchange students on a J-1 Visa who reside within the district as participants in group-sponsored exchange programs approved by the Board.  The Board may waive tuition for these exchange student(s).  **J-1 Visa students may be admitted for the period of time permitted by the J-1 Visa program.**

~~The Board shall accept privately sponsored exchange students on a F-1 Visa for attendance in secondary schools upon payment of tuition at the established district rate; tuition payments may not be waived.  The period of attendance shall not exceed twelve (12) months.~~

The Board reserves the right to limit the number of foreign exchange students admitted to the school.

**Delegation of Responsibility**

The Superintendent or designee shall be responsible for determining the Visa status and eligibility of foreign exchange students applying for admission to the school district.

Foreign exchange students shall comply with all immunization requirements for students.  Once admitted, all exchange students shall be subject to all district policies and regulations governing students.

Adopted:  November 14, 2000

<u>**ASD File:  JF**</u>

**AUBURN SCHOOL DISTRICT**
**<u>ENROLLMENT POLICY</u>**

It is the policy of the Board that all students enrolling in school must do so on a full-time basis. "Full-time basis" shall be defined as attending classes for the full instructional day within the public school system or in conjunction with another state-accredited institution**.** The only exception**s** to this policy shall be for special education students whose IEP's require variations of student schedules<mark>. **as well as non-public, charter school and home-educated pupils who are subject to policy JJJ.**</mark>

Adopted:  November 14, 2000
Revised:   April 9, 2024

**ASD File:  BK**

**AUBURN SCHOOL DISTRICT**
**SCHOOL BOARD MEMBERSHIPS**

ELIMINATE

It is the policy of the Auburn School Board to be a dues-paying member of the New Hampshire School Boards Association.  The Board shall seek to participate as fully as possible in the activities of the New Hampshire and National School Boards Associations.  The Chair of the Auburn School Board shall keep these organizations informed of the Board's concerns and official positions on matters of common interest and concern.  It will be represented at meetings of the state association by a duly elected delegate who must be a member of the Auburn School Board.

Adopted:  December 19, 2001

| | | Policy First Reading - Auburn | | XII.B. |
|---|---|---|---|---|
| | | | 2nd Board Reading Date: | 6/10/2025 |
| | | | 1st Board Reading Date: | 5/13/2025 |
| | | | Committee Meeting Date: | 5/5/2025 |
| **CURRENT CODE** | | **POLICY TITLE/CATEGORY** | **SUGGESTIONS/REQUIREMENTS** | |
| GBAA | *Required* | Sexual Harassment | Changes made prior need to be removed due to changes in law | |
| JBAA | *Required* | Sexual Harassment | Changes made prior need to be removed due to changes in law | |
| JH | *Required* | Attendance, Absenteeism and Truancy | Principal requested review/revisions | |
| | | | | |
| UPDATE: JKAA Use of Restraint & Seclusion, JKAA-R Procedures on Use of Child Restraint & Seclusion,  JRA, JRA-E, JRA-R Student Education Records and Information (forms and annual notice) are still with Drummond Woodsum for further review. | | | | |
| | | | | |

**ASD File:  GBAA**

**AUBURN SCHOOL DISTRICT**
**SEXUAL HARASSMENT AND SEXUAL VIOLENCE-EMPLOYEES**

**CURRENT**

**SEXUAL DISCRIMINATION, HARASSMENT AND VIOLENCE**

**I.  PURPOSE**

The purpose of this policy is to maintain a working environment that is free from sexual discrimination, harassment and violence, or other improper or inappropriate behavior that may constitute harassment as defined below.

Sexual discrimination, harassment, and violence are against the law and school board policy.  Any form of sexual discrimination, harassment or violence is strictly prohibited.

It is a violation of this policy for any employee to harass a student, employee or person within the District through conduct or communication of a sexual nature as defined by this policy.  It is a violation of this policy for any employee to be sexually violent toward another employee, or person within the District.

The District will investigate all formal complaints of sexual harassment, discrimination, or sexual violence in accordance with the grievance procedures in this policy, and will discipline any employee who sexually discriminates, harasses or is sexually violent toward another person within the District.  For all complaints the District will offer supportive measures to both complainants and respondents

**II.  TITLE IX COORDINATOR**

The District's Title IX Coordinator is: The District's Title IX Coordinator is: Assistant Superintendent, 90 Farmer Rd., Hooksett, NH  03106, ksarfde@sau15.net 603-322-3731 x 4012.

The Title IX Coordinator is responsible for coordinating the District's efforts to comply with Title IX, including coordinating the effective implementation of supportive measures and effective implementation of remedies.

The Title IX Coordinator's responsibilities include establishing a process to notify applicants for employment and admission, employees, and all unions of the Title IX Coordinator's name or title, office address, e-mail address and telephone number.

The District shall post the Title IX Coordinator's title or name, office address, e-mail address and telephone number in conspicuous places throughout school buildings, on the District's website, and in each handbook.

**III.  SEXUAL DISCRIMINATION, HARASSMENT/SEXUAL VIOLENCE DEFINED**

Sexual discrimination is discrimination based on sex in the District's education programs or activities and extends to employment and admissions.

Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, sexually motivated physical conduct or other verbal or physical conduct or communication of a sexual nature that satisfies one or more of the following:

1

1. An employee of the District conditions the provision of an aid benefit, or service on an individual's participation in unwelcome sexual conduct;

2. Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the District's education program or activity; or

3. Sexual assault as defined in 20 U.S.C. §1092(f)(6)(A(v) dating violence as defined in 34 U.S.C. §12291(a)(10), domestic violence as defined in 34 U.S.C. §12291(a)(8) or stalking as defined in 34 U.S.C. §12291(a)(30).

Sexual harassment may include, but is not limited to:

1. Verbal harassment and/or abuse of a sexual nature;

2. Subtle pressure for sexual activity;

3. Inappropriate patting, pinching or other touching;

4. Intentional brushing against a person's body;

5. Demanding sexual favors accompanied by implied or overt threats;

6. Demanding sexual favors accompanied by implied or overt promises of preferential treatment;

7. Any sexually motivated unwelcome touching; or

8. Sexual violence that is a physical act of aggression that includes a sexual act or sexual purpose.

Throughout this policy reference to sexual harassment includes sexual discrimination and violence.

## IV.  REPORTING PROCEDURES

Any employee who believes he or she has been the victim of sexual harassment should report the alleged act(s) immediately to their immediate supervisor.  That employee shall then report the allegation immediately to an appropriate District official, as designated by this policy.  The District encourages the reporting employee to use the report form available from the Principal of each building or available from the Superintendent's office.

1. In each building, the Principal is the person responsible for receiving oral or written reports of sexual harassment.  Upon receipt of a report, the Principal must notify the Title IX Coordinator immediately without screening or investigating the report.  If the report was given verbally, the Principal shall reduce it to written form within twenty-four (24) hours and forward it to the Title IX Coordinator.  Failure to forward any sexual harassment report or complaint as provided herein will result in disciplinary action. If the complaint involves the building Principal or designee the complaint shall be filed directly with the Title IX Coordinator.

2. The designated person to receive any report or complaint of sexual harassment and sexual violence is the Title IX Coordinator.  If the complaint involves the Title IX Coordinator, the complaint shall be filed directly with the Superintendent.

3. Any person may also report sexual harassment in person, by mail, telephone or e-mail to the Title IX Coordinator at any time including non-business hours.

4. Submission of a complaint or report of sexual harassment will not affect the employee's standing in school, future employment, or work assignments.

2

**V.  DISTRICT'S RESPONSE TO ALL COMPLAINTS OF SEXUAL HARASSMENT**

The District will respond promptly and in a manner that is reasonable in light of the known circumstances when it has actual knowledge of sexual harassment in its education programs or activities.  Actual knowledge means notice to any employee of the District.  Education programs or activities are locations, events, or circumstances over which the District exercised substantial control over both the alleged perpetrator of sexual harassment (the respondent) and the context in which the sexual harassment occurs.

The District will treat complainants and respondents equitably by offering supportive measures and following the grievance process before the imposition of any disciplinary sanctions or other non-supportive measures against the respondent.  The District may place an employee on administrative leave during the pendency of the grievance process.

The District may remove a respondent from its education programs or activities on an emergency basis based upon an individualized safety and risk analysis that determines that the respondent poses an immediate threat to the physical health or safety of any employee or other individual arising from the allegations of sexual harassment.  The District shall provide the respondent with notice and an opportunity to challenge the decision immediately upon removal.

The Title IX Coordinator will promptly contact the complainant to discuss the availability of supportive measures, consider the complainant's wishes with respect to supportive measures, inform the complainant of the availability of supportive measures with or without the filing of a formal complaint, and explain to the complainant the process for filing a formal complaint.

These provisions do not modify rights under the IDEA, Section 504, or the ADA.

The District's response shall not restrict rights protected by the United States Constitution including the First, Fifth, and Fourteenth Amendments.


**VI.  SUPPORTIVE MEASURES**

Supportive measures are non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the complainant or the respondent before or after the filing of a formal complaint or where no formal complaint has been filed which are designed to restore or preserve equal access to the District's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the District's educational environment, or deter sexual harassment.  Supportive measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, shadowing, mutual restrictions on contact between parties, changes in work or school locations, leaves of absence, increased security and monitoring of certain areas of the school, and other similar measures.

The District will maintain as confidential any supportive measures provided to the complainant or respondent, to the extent that maintaining such confidentiality would not impair the ability of the District to provide the supportive measures.


**VII.  FORMAL COMPLAINTS**

A formal complaint is a document filed by a person who is alleged to be the victim of conduct that could constitute sexual harassment (the complainant) or signed by the Title IX Coordinator and requesting that the District investigate the allegation of sexual harassment.  The formal complaint may be filed with the Title IX Coordinator in person, by mail, or e-mail and must contain the

3

complainant's physical or digital signature or otherwise indicate that the complainant is the person filing the formal complaint.

Parents or legal guardians may file complaints on behalf of their children.

The complainant's wishes with respect to investigating a complaint should be respected unless the Title IX Coordinator determines that the Title IX Coordinator's signing a formal complaint over the complainant's wishes is not clearly unreasonable in light of the known circumstances.

The Title IX Coordinator may in his/her discretion consolidate formal complaints where the allegations arise out of the same facts.

In response to a formal complaint, the District will follow the grievance procedures in this policy.

## VIII.  GRIEVANCE PROCEDURE FOR FORMAL COMPLAINTS

A.      Notice of Allegations

The Title IX Coordinator upon receipt of a formal complaint shall provide written notice to the complainant and respondent of the following:

1. The allegations including the date and location of the alleged incident, if known;

2. A statement that the respondent is presumed not responsible for the alleged conduct and a determination of responsibility will be made at the conclusion of the grievance process;

3. The complainant and respondent may have an advisor of their choice who may but is not required to be an attorney and may inspect and review evidence during the investigation;

4. Provisions in the District's code of conduct that prohibit knowingly making false statements or knowingly submitting false information;

5. A copy of this Title IX policy.

B.      Grievance Procedure Requirements

1. Both the complainant and respondent shall have an equal opportunity to submit and review evidence throughout the investigation;

2. The District will use trained Title IX personnel to objectively evaluate all relevant evidence without prejudgment of the facts at issue and free from conflicts of interest or bias for or against either party.

3. The District will protect the parties' privacy by requiring a party's written consent before using the party's medical, psychological or similar treatment records during a grievance process.

4. The District will obtain the parties' voluntary written consent before using any kind of informal resolution process, such as mediation or restorative justice, and not use an informal process where an employee allegedly sexually harassed a student.

5. The District will apply a presumption that the respondent is not responsible during the grievance process so that the District bears the burden of proof and the standard of

4

evidence is applied correctly.

6. The District will use the preponderance of the evidence standard for formal complaints against students and employees.

7. The District will ensure the decision-maker for determining responsibility is not the same person as the investigator or the Title IX Coordinator.

8. The District will permit the parties to submit written questions for the other parties and witnesses to answer before determining responsibility.

9. The District will protect all complainants from inappropriately being asked about prior sexual history.

10. The District will not restrict the parties' ability to discuss the allegations under investigation or to gather and produce relevant evidence.

11. The District will send both parties a written determination regarding responsibility explaining how and why the decision-maker reached conclusions.

12. The District will effectively implement remedies for a complainant if a respondent is found responsible for sexual harassment.

13. The District will offer both parties an equal opportunity to appeal.

14. The District will protect all individuals, including complainants, respondents, and witnesses, from retaliation for reporting sexual harassment, or participating or refusing to participate in any Title IX grievance process.

15. The District will make all materials used to train Title IX personnel publicly available on the District's website.

16. The District will document and keep records of all sexual harassment complaints, investigations, and training for seven (7) years.

## IX. INVESTIGATION

The Title IX Coordinator (or the Superintendent, if the Title IX Coordinator is the subject of the complaint), upon receipt of a formal complaint alleging sexual harassment shall immediately authorize an investigation. This investigation may be conducted by District officials or by a third party designated by the District. The investigating party shall provide a written report of the status of the investigation within ten (10) working days to the Title IX Coordinator. If the Title IX Coordinator is the subject of the complaint, the report shall be submitted to the Superintendent.

In determining whether alleged conduct constitutes sexual harassment, the District should consider the surrounding circumstances, the nature of the sexual advances, relationships between the parties involved and the context in which the alleged incidents occurred. Whether a particular action or incident constitutes sexual harassment or sexual violence requires a determination based on all the facts and surrounding circumstances.

The investigation may consist of personal interviews with the complainant, the individual(s) against whom the complaint is filed, and others who may have knowledge of the alleged incident(s) or circumstances giving rise to the complaint. The investigation may also consist of any other methods and documents deemed pertinent by the investigator.

5

If during the investigation, the District decides to investigate allegations not in the formal complaint, the Title IX Coordinator shall provide written notice to the parties of the additional allegations.

The District shall provide to a party whose participation is invited or expected written notice of the date, time, location, participants and purposes of all investigative interviews, other meetings, or hearings with sufficient time for the party to prepare to participate.

Prior to the conclusion of the investigation, the investigator shall provide both parties an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations in the formal complaint including evidence that the investigator does not intend to rely upon.  Each party shall have an opportunity to respond to the evidence.

Prior to the completion of the investigation report, the investigator must send to each party and the party's advisor, if any, either in electronic format or hard copy the evidence subject to inspection and review.  The parties shall have at least ten (10) days to submit a written response.

The investigator shall create an investigation report fairly summarizing the relevant evidence.  The investigator shall send each party and the party's advisor, if any, a copy of the investigation report either in electronic format or hard copy.  The parties have ten (10) days to review the investigation report and file a written response.

## X.  DETERMINING RESPONSIBILITY

A decision-maker who is not the Title IX Coordinator or investigator must issue a written determination regarding responsibility based on a preponderance of evidence.

Before reaching a determination, the decision-maker must provide each party the opportunity to submit written, relevant questions of any party or witness provide both parties with the answers, and allow for additional, limited follow-up questions.  If the decision-maker determines a question is not relevant, the decision-maker must provide a written explanation to the party proposing the question.

## XI.  WRITTEN DETERMINATION OF RESPONSIBILITY

The decision-maker's written determination must include:

1. An identification of the allegations potentially constituting sexual harassment;
2. A description of the procedural steps taken by the District from the receipt of the formal complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, and methods used to gather other evidence;
3. Findings of fact supporting the determination;
4. Conclusions regarding the application of the District's code of conduct to the facts;
5. A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility, any disciplinary sanctions the District imposes on the respondent, and whether remedies designed to restore or preserve equal access to the District's education program or activity will be provided by the District to the complainant; and
6. The District's procedures and permissible bases for the complainant and respondent to appeal.

The District must provide the written determination to the parties simultaneously.

6

The responsibility determination becomes final either on the date that the District provides the parties with the written determination of the result of the appeal, if an appeal is filed; or if an appeal is not filed, the date on which an appeal would no longer be considered timely.

## XII.  DISMISSAL OF FORMAL COMPLAINT

A.       Mandatory Dismissal
If the allegations in the formal complaint are not sexual harassment even if proved; or did not occur in the District's education program or activity; or did not occur against a person in the United States, the District will dismiss the formal complaint.

B.       Permissive Dismissal
The District may dismiss the formal complaint, or any allegations, if at any time during the investigation a complainant notifies the Title IX Coordinator in writing that the complainant would like to withdraw the formal complaint, or any allegations therein; or the respondent is no longer enrolled or employed by the District; or specific circumstances prevent the District from gathering evidence sufficient to reach a determination as to the formal complaint or allegations therein.

The District shall promptly send to the parties simultaneously written notice of the dismissal and reasons.

## XIII.  APPEALS

Within ten (10) days of the receipt of the written determination, the complainant and respondent may appeal to the Superintendent the dismissal of a formal complaint or any allegations; or the determination of responsibility for the following reasons:

1. Procedural irregularity that affected the outcome of the matter;
2. New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter; or
3. The Title IX Coordinator, investigator, or decision-maker had a conflict of interest or bias for or against complainants or respondents generally or the individual complainant or respondent that affected the outcome of the matter.

The Superintendent shall notify the other party in writing when an appeal is filed and implement appeal procedures equally for both parties.

In the appeal, both parties shall have a reasonable, equal opportunity to submit a written statement in support of, or challenging the outcome.  The Superintendent shall issue a written decision describing the result of the appeal, the rationale for the result, and provide the written decision simultaneously to both parties within ten (10) days of receiving all information submitted by the parties.

## XIV.  REPRISAL/RETALIATION

No person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this part.  Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not

7

involve sex discrimination or sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or formal complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by Title IX, constitutes retaliation.

The District will keep confidential the identity of any individual who has made a report or filed a formal complaint of sexual harassment, any complainant, any individual who has been reported to be the perpetrator of sex discrimination, any respondent, and any witness, except as may be permitted by the FERPA, or as required by law, or to carry out Title IX, including the conduct of any investigation, hearing of judicial proceeding arising thereunder.

Complaints alleging retaliation may be filed according to the grievance procedures for sex discrimination.

The exercise of rights protected under the First Amendment does not constitute retaliation.

## XV.  ALLEGED CONDUCT NOT PROHIBITED UNDER TITLE IX

Allegations of conduct that are not prohibited by Title IX may be investigated under the District's other policies and rules of conduct.

## XVI.  SEXUAL HARASSMENT OR SEXUAL VIOLENCE AS CHILD ABUSE OR SEXUAL ABUSE

Under certain circumstances, sexual harassment or sexual violence may constitute child abuse or sexual abuse under New Hampshire law. In such situations, the District shall comply with said laws including any reporting obligations.

## XVII.  DISCIPLINE

The School District will take such disciplinary action it deems necessary and appropriate, including warning, suspension or immediate discharge to end sexual harassment and sexual violence and prevent its recurrence.

## XVIII.  ALTERNATIVE COMPLAINT PROCEDURES, LEGAL REMEDIES, AND INQUIRIES ABOUT TITLE IX

At any times, whether or not an individual files a complaint or report under this policy, an individual may file a complaint with the Office for Civil Rights ("OCR"), of the United States Department of Education, or with the New Hampshire Commission for Human Rights.

1.  Office for Civil Rights, U.S. Department of Education, 5 Post Office3 Square, 8th Floor, Boston, MA 02019-3921; Telephone number (617) 289-0111; Fax number (617) 289-0150; E-mail OCR.Boston@ed.gov.

2.  New Hampshire Commission for Human Rights, 2 Industrial Park Drive, Concord, NH 03301; Telephone number (603) 271-2767; E-mail humanrights@nh.gov.

Notwithstanding any other remedy, any person may contact the police or pursue a criminal prosecution under state or federal criminal law.

Inquiries about the application of Title IX may be referred to the Title IX Coordinator, the Assistant

Secretary of the United States Department of Education, or both.

## XIX.  RECORD KEEPING

The District must maintain all records relating to a sexual harassment complaint, investigation, and training for seven (7) years.

Legal Reference:
Title IX
NH Code of Administrative Rules, Section Ed. 303.01(j), Substantive Duties of School Boards; Sexual Harassment Policy
NH Code of Administrative Rules, Section 306.04(a)(9), Sexual Harassment

Adopted:    January 12, 1985
Adopted:    June 13, 2000
Revised:    June 8, 2021, August 22, 2023, August 13, 2024

9

**ASD File:  GBAA**

## AUBURN SCHOOL DISTRICT
## SEXUAL HARASSMENT AND SEXUAL VIOLENCE

**I.      General Statement of Policy**

Sexual harassment is a form of sex discrimination which violates Section 703 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., and Title IX.  Sexual violence is a physical act of aggression that includes a sexual act or sexual purpose.

It is the policy of district to maintain a learning and working environment that is free from sexual harassment and sexual violence.  The district prohibits any form of sexual harassment and sexual violence.

It shall be a violation of this policy for any student or employee to harass a student or an employee through conduct or communication of a sexual nature as defined by this policy.

It shall be a violation of this policy for any student or employee to be sexually violent to a student or employee.

The district will act to investigate all complaints, either formal or informal, verbal or written, of sexual harassment or sexual violence and to discipline any student or employee who sexually harasses or is sexually violent to a student or employee of the district.

**II.     Sexual Harassment/Sexual Violence Defined**

A.   Sexual harassment consists of unwelcome sexual advances, requests for sexual favors, sexually motivated physical conduct or other verbal or physical conduct or communication of a sexual nature when:

   1.   Submission to that conduct or communication is made a term or condition, either explicitly or implicitly, of obtaining or retaining employment, or of obtaining an education; or

   2.   Submission to or rejection of that conduct or communication by an individual is used as a factor in decisions affecting that individual's employment or education; or

   3.   That conduct or communication has the purpose or effect of substantially or unreasonably interfering with an individual's employment or education, or creating an intimidating, hostile or offensive employment or education environment.

        Any sexual harassment as defined when perpetrated on any student or employee will be treated as sexual harassment under this policy.

B.   Sexual harassment may include but is not limited to:

   1.   Verbal harassment and/or abuse of a sexual nature;

   2.   Subtle pressure for sexual activity;

**ASD File:  GBAA**

3. Inappropriate patting or pinching;

4. Intentional brushing against a student's or an employee's body;

5. Demanding sexual favors accompanied by implied or overt threats concerning an individual's employment or educational status;

6. Demanding sexual favors accompanied by implied or overt promises of preferential treatment with regard to an individual's employment or educational status;

7. Any sexually motivated unwelcome touching; or

8. Sexual violence which is a physical act of aggression that includes a sexual act or sexual purpose.

### III.    Reporting Procedures

Any person who believes he or she has been the victim of sexual harassment or sexual violence by a student or an employee of the district, or any third person with knowledge or belief of conduct which may constitute sexual harassment or sexual violence should report the alleged acts immediately to an appropriate district official as designated by this policy.  The district encourages the reporting party or complainant to use the report form available from the Principal of each building or available from the Superintendent's Office.

A.  **In each building.**  The building Principal is the person responsible for receiving oral or written reports of sexual harassment or sexual violence at the building level.  Upon receipt of a report, the Principal must notify the Superintendent immediately without screening or investigating the report.  A written report will be forwarded simultaneously to the Superintendent.  If the report was given verbally, the Principal shall reduce it to written form within 24 hours and forward it to the Superintendent.  Failure to forward any sexual harassment or sexual violence report or complaint as provided herein will result in disciplinary action.  If the complaint involves the building Principal, the complaint shall be filed directly with the Superintendent.

B.  **District-Wide.**  The Board hereby designates the Superintendent as the district Human Rights Officer to receive reports or complaints of sexual harassment and sexual violence from any individual, employee or victim of sexual harassment or sexual violence and also from the building Principals as outlined above.  If the complaint involves the Superintendent, the complaint shall be filed directly with the School Board.

The District shall conspicuously post the name of the Human Rights Officer, including a mailing address and telephone number.

C.  Submission of a complaint or report of sexual harassment or sexual violence will not affect the individual's future employment, grades or work assignments.

**ASD File:  GBAA**

D.  Use of formal reporting forms is not mandatory.

The district will respect the confidentiality of the complainant and the individual(s) against whom the complaint is filed as much as possible, consistent with the school district's legal obligations and the necessity to investigate allegations of sexual harassment and sexual violence and take disciplinary action when the conduct has occurred.

## IV.    Investigation and Recommendation

By authority of the district, the Human Rights Officer, upon receipt of a report or complaint alleging sexual harassment or sexual violence shall immediately authorize an investigation.  This investigation may be conducted by district officials or by a third party designated by the district.  The investigating party shall provide a written report of the status of the investigation within ten working days to the Superintendent.  If the Superintendent is the subject of the complaint, the report shall be submitted to the Board.

In determining whether alleged conduct constitutes sexual harassment or sexual violence, the district should consider the surrounding circumstances, the nature of the sexual advances, relationships between the parties involved and the context in which the alleged incidents occurred.  Whether a particular action or incident constitutes sexual harassment or sexual violence requires a determination based on all the facts and surrounding circumstances.

The investigation may consist of personal interviews with the complainant, the individual(s) against whom the complaint is filed, and others who may have knowledge of the alleged incident(s) or circumstances giving rise to the complaint.  The investigation may also consist of any other methods and documents deemed pertinent by the investigator.

In addition, the district may take immediate steps, at its discretion, to protect the complainant, students, and employees pending completion of an investigation of alleged sexual harassment or sexual violence.

## V.    School District Action

A.  Upon receipt of a recommendation that the complaint is valid, the district will take such action as appropriate based on the results of the investigation.

B.  The complainant may appeal the investigations recommendations to the Superintendent (presuming the Superintendent is not the subject of investigation, or to the Board).

C.  The result of the investigation of each complaint filed under these procedures will be reported in writing to the complainant by the school district.  The report will document any disciplinary action taken as a result of the complaint.

## VI.   Reprisal

The school district will discipline any individual who retaliates against any person who reports alleged sexual harassment or sexual violence or who retaliates against any person who testifies, assists or participates in an investigation, proceeding or hearing relating to a sexual harassment or sexual violence complaint.  Retaliation includes, but is not limited to, any form of intimidation, reprisal, or harassment.

**ASD File:  GBAA**

**VII.      Right to Alternative Complaint Procedures**

These procedures do not deny the right of any individual to pursue other avenues of recourse which may include filing charges with the Commissioner of Education, initiating civil action or seeking redress under state criminal statutes and/or federal law.

**VIII.    Sexual Harassment or Sexual Violence as Sexual Abuse**

Under certain circumstances, sexual harassment or sexual violence may constitute sexual abuse under New Hampshire law.  In such situations, the district shall comply with said law.

Nothing in this policy will prohibit the school district from taking immediate action to protect victims of alleged sexual abuse.

**IX.      Discipline**

The school district will take such disciplinary action it deems necessary and appropriate, including warning, suspension, or immediate discharge to end sexual harassment and sexual violence and prevent its recurrence.

**X.       By-Pass of Policy**

Any individual with a sexual harassment complaint may choose to by-pass this policy and accompanying regulation and proceed to:  NH Commission on Human Rights, 2 Chenelle Drive, Concord, NH, telephone number 603-271-2767 or Office of Civil Rights, Health and Human Services, Region #1 Room 2403, JFK Federal Building, Government Center, Boston, Massachusetts 02203, telephone number 617-565-1340.

Adopted:    January 12, 1985                         Administrative Rules:
Adopted:    June 13, 2000                            Ed 303.01 (j), 1-9

**ASD File:  GBAA-R**

**AUBURN SCHOOL DISTRICT**
**SEXUAL HARASSMENT AND SEXUAL VIOLENCE**
**REPORT FORM**

**General Statement of Policy Prohibiting Sexual Harassment**

The school district maintains a firm policy prohibiting all forms of discrimination based on sex. Sexual harassment and sexual violence against students or employees is sex discrimination.  All persons are to be treated with respect and dignity.  Sexual violence, sexual advances or other forms of personal harassment by any person, male or female, which create an intimidating, hostile or offensive environment will not be tolerated under any circumstances.

Complainant:

Home Address:                                Work Address:

Home Telephone: _____ Work Telephone: _____

Date of Alleged Incident(s): _____

Name of person you believe sexually harassed or was sexually violent toward you:

List any witnesses that were present:

Where did the incident(s) occur?: _____

**<u>ASD File:  GBAA-R</u>**

Describe the incident(s) as clearly as possible, including such things as:  what force, if any was used; any verbal statements (i.e., threats, requests, demands, etc.); what, if any, physical contact was involved; what did you do to avoid the situation, etc. (Attach additional pages if necessary):

_____

_____

_____

_____

This complaint is filed based on my honest belief that _____ has sexually harassed or was sexually violent to me.  I hereby certify that the information I have provided in this complaint is true, correct, and complete to the best of my knowledge and belief.


_____          _____
Complainant's Signature                              Date


_____          _____
Received by                                              Date


Adopted:  June 13, 2000

**ASD File:  JBAA**

### AUBURN SCHOOL DISTRICT
### SEXUAL HARASSMENT AND SEXUAL VIOLENCE-STUDENTS

<mark>CURRENT</mark>

#### SEXUAL DISCRIMINATION, HARASSMENT AND VIOLENCE

#### I. PURPOSE

The purpose of this policy is to maintain a learning environment that is free from sexual discrimination, harassment and violence, or other improper or inappropriate behavior that may constitute harassment as defined below.

Sexual discrimination, harassment, and violence are against the law and school board policy. Any form of sexual discrimination, harassment or violence is strictly prohibited.

It is a violation of this policy for any student to harass another student, employee or person within the District through conduct or communication of a sexual nature as defined by this policy. It is a violation of this policy for any student to be sexually violent toward another student, employee, or person within the District.

The District will investigate all formal complaints of sexual harassment, discrimination, or sexual violence in accordance with the grievance procedures in this policy, and will discipline any student who sexually discriminates, harasses or is sexually violent toward another person within the District.  For all complaints the District will offer supportive measures to both complainants and respondents

#### II.  TITLE IX COORDINATOR

The District's Title IX Coordinator is: The District's Title IX Coordinator is: Assistant Superintendent, 90 Farmer Rd., Hooksett, NH  03106, ksarfde@sau15.net, 603-322-3731 x12.

The Title IX Coordinator is responsible for coordinating the District's efforts to comply with Title IX, including coordinating the effective implementation of supportive measures and effective implementation of remedies.

The Title IX Coordinator's responsibilities include establishing a process to notify applicants for employment and admission, students, parents or legal guardians, employees, and all unions of the Title IX Coordinator's name or title, office address, e-mail address and telephone number.

The District shall post the Title IX Coordinator's title or name, office address, e-mail address and telephone number in conspicuous places throughout school buildings, on the District's website, and in each handbook.

#### III.  SEXUAL DISCRIMINATION, HARASSMENT/SEXUAL VIOLENCE DEFINED

Sexual discrimination is discrimination based on sex in the District's education programs or activities and extends to employment and admissions.

Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, sexually motivated physical conduct or other verbal or physical conduct or communication of a sexual nature that satisfies one or more of the following:

1

1. An employee of the District conditions the provision of an aid benefit, or service on an individual's participation in unwelcome sexual conduct;

2. Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the District's education program or activity; or

3. Sexual assault as defined in 20 U.S.C. §1092(f)(6)(A(v) dating violence as defined in 34 U.S.C. §12291(a)(10), domestic violence as defined in 34 U.S.C. §12291(a)(8) or stalking as defined in 34 U.S.C. §12291(a)(30).

Sexual harassment may include, but is not limited to:

1. Verbal harassment and/or abuse of a sexual nature;

2. Subtle pressure for sexual activity;

3. Inappropriate patting, pinching or other touching;

4. Intentional brushing against a person's body;

5. Demanding sexual favors accompanied by implied or overt threats;

6. Demanding sexual favors accompanied by implied or overt promises of preferential treatment;

7. Any sexually motivated unwelcome touching; or

8. Sexual violence that is a physical act of aggression that includes a sexual act or sexual purpose.

Throughout this policy reference to sexual harassment includes sexual discrimination and violence.

### IV. REPORTING PROCEDURES

Any student who believes he or she has been the victim of sexual harassment should report the alleged act(s) immediately to a school district employee. That employee shall then report the allegation immediately to an appropriate District official, as designated by this policy. The District encourages the reporting student to use the report form available from the Principal of each building or available from the Superintendent's office.

1. In each building, the Principal is the person responsible for receiving oral or written reports of sexual harassment. Upon receipt of a report, the Principal must notify the Title IX Coordinator immediately without screening or investigating the report. If the report was given verbally, the Principal shall reduce it to written form within twenty-four (24) hours and forward it to the Title IX Coordinator. Failure to forward any sexual harassment report or complaint as provided herein will result in disciplinary action. If the complaint involves the building Principal or designee the complaint shall be filed directly with the Title IX Coordinator.

2. The designated person to receive any report or complaint of sexual harassment and sexual violence is the Title IX Coordinator. If the complaint involves the Title IX Coordinator, the complaint shall be filed directly with the Superintendent.

3. Any person may also report sexual harassment in person, by mail, telephone or e-mail to the Title IX Coordinator at any time including non-business hours.

4. Submission of a complaint or report of sexual harassment will not affect the student's standing in school, grades, assignments, or right to attend school and receive and

2

education. The use of formal reporting forms provided by the District is voluntary. Certain students, especially younger children, may not be able to submit a written complaint. In such cases, the District will make available alternate methods of filing complaints.

## V.  DISTRICT'S RESPONSE TO ALL COMPLAINTS OF SEXUAL HARASSMENT

The District will respond promptly and in a manner that is reasonable in light of the known circumstances when it has actual knowledge of sexual harassment in its education programs or activities. Actual knowledge means notice to any employee of the District. Education programs or activities are locations, events, or circumstances over which the District exercised substantial control over both the alleged perpetrator of sexual harassment (the respondent) and the context in which the sexual harassment occurs.

The District will treat complainants and respondents equitably by offering supportive measures and following the grievance process before the imposition of any disciplinary sanctions or other non-supportive measures against the respondent. The District may place an employee on administrative leave during the pendency of the grievance process.

The District may remove a respondent from its education programs or activities on an emergency basis based upon an individualized safety and risk analysis that determines that the respondent poses an immediate threat to the physical health or safety of any student or other individual arising from the allegations of sexual harassment. The District shall provide the respondent with notice and an opportunity to challenge the decision immediately upon removal.

When the complainant and/or respondent are minor students, notices shall be provided to the student's parent or legal guardian.

The Title IX Coordinator will promptly contact the complainant to discuss the availability of supportive measures, consider the complainant's wishes with respect to supportive measures, inform the complainant of the availability of supportive measures with or without the filing of a formal complaint, and explain to the complainant the process for filing a formal complaint.

These provisions do not modify rights under the IDEA, Section 504, or the ADA.

The District's response shall not restrict rights protected by the United States Constitution including the First, Fifth, and Fourteenth Amendments.

## VI.  SUPPORTIVE MEASURES

Supportive measures are non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the complainant or the respondent before or after the filing of a formal complaint or where no formal complaint has been filed which are designed to restore or preserve equal access to the District's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the District's educational environment, or deter sexual harassment. Supportive measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, shadowing, mutual restrictions on contact between parties, changes in work or school locations, leaves of absence, increased security and monitoring of certain areas of the school, and other similar measures.

The District will maintain as confidential any supportive measures provided to the complainant or respondent, to the extent that maintaining such confidentiality would not impair the ability of the

3

District to provide the supportive measures.

## VII.  FORMAL COMPLAINTS

A formal complaint is a document filed by a person who is alleged to be the victim of conduct that could constitute sexual harassment (the complainant) or signed by the Title IX Coordinator and requesting that the District investigate the allegation of sexual harassment.  The formal complaint may be filed with the Title IX Coordinator in person, by mail, or e-mail and must contain the complainant's physical or digital signature or otherwise indicate that the complainant is the person filing the formal complaint.

Parents or legal guardians may file complaints on behalf of their children.

The complainant's wishes with respect to investigating a complaint should be respected unless the Title IX Coordinator determines that the Title IX Coordinator's signing a formal complaint over the complainant's wishes is not clearly unreasonable in light of the known circumstances.

The Title IX Coordinator may in his/her discretion consolidate formal complaints where the allegations arise out of the same facts.

In response to a formal complaint, the District will follow the grievance procedures in this policy.

## VIII.  GRIEVANCE PROCEDURE FOR FORMAL COMPLAINTS

A.      Notice of Allegations

The Title IX Coordinator upon receipt of a formal complaint shall provide written notice to the complainant and respondent of the following:

1.  The allegations including the date and location of the alleged incident, if known;

2.  A statement that the respondent is presumed not responsible for the alleged conduct and a determination of responsibility will be made at the conclusion of the grievance process;

3.  The complainant and respondent may have an advisor of their choice who may but is not required to be an attorney and may inspect and review evidence during the investigation;

4.  Provisions in the District's code of conduct that prohibit knowingly making false statements or knowingly submitting false information;

5.  A copy of this Title IX policy.

B.      Grievance Procedure Requirements

1.  Both the complainant and respondent shall have an equal opportunity to submit and review evidence throughout the investigation;

2.  The District will use trained Title IX personnel to objectively evaluate all relevant evidence without prejudgment of the facts at issue and free from conflicts of interest or bias for or against either party.

3.  The District will protect the parties' privacy by requiring a party's written consent before using the party's medical, psychological or similar treatment records during a grievance

4

process.

4. The District will obtain the parties' voluntary written consent before using any kind of informal resolution process, such as mediation or restorative justice, and not use an informal process where an employee allegedly sexually harassed a student.

5. The District will apply a presumption that the respondent is not responsible during the grievance process so that the District bears the burden of proof and the standard of evidence is applied correctly.

6. The District will use the preponderance of the evidence standard for formal complaints against students and employees.

7. The District will ensure the decision-maker for determining responsibility is not the same person as the investigator or the Title IX Coordinator.

8. The District will permit the parties to submit written questions for the other parties and witnesses to answer before determining responsibility.

9. The District will protect all complainants from inappropriately being asked about prior sexual history.

10. The District will not restrict the parties' ability to discuss the allegations under investigation or to gather and produce relevant evidence.

11. The District will send both parties a written determination regarding responsibility explaining how and why the decision-maker reached conclusions.

12. The District will effectively implement remedies for a complainant if a respondent is found responsible for sexual harassment.

13. The District will offer both parties an equal opportunity to appeal.

14. The District will protect all individuals, including complainants, respondents, and witnesses, from retaliation for reporting sexual harassment, or participating or refusing to participate in any Title IX grievance process.

15. The District will make all materials used to train Title IX personnel publicly available on the District's website.

16. The District will document and keep records of all sexual harassment complaints, investigations, and training for seven (7) years.

### IX. INVESTIGATION

The Title IX Coordinator (or the Superintendent, if the Title IX Coordinator is the subject of the complaint), upon receipt of a formal complaint alleging sexual harassment shall immediately authorize an investigation. This investigation may be conducted by District officials or by a third party designated by the District. The investigating party shall provide a written report of the status of the investigation within ten (10) working days to the Title IX Coordinator. If the Title IX Coordinator is the subject of the complaint, the report shall be submitted to the Superintendent.

In determining whether alleged conduct constitutes sexual harassment, the District should consider the surrounding circumstances, the nature of the sexual advances, relationships

5

between the parties involved and the context in which the alleged incidents occurred.  Whether a particular action or incident constitutes sexual harassment or sexual violence requires a determination based on all the facts and surrounding circumstances.

The investigation may consist of personal interviews with the complainant, the individual(s) against whom the complaint is filed, and others who may have knowledge of the alleged incident(s) or circumstances giving rise to the complaint.  The investigation may also consist of any other methods and documents deemed pertinent by the investigator.  Students who are interviewed may have a parent present during the interview.

If during the investigation, the District decides to investigate allegations not in the formal complaint, the Title IX Coordinator shall provide written notice to the parties of the additional allegations.

The District shall provide to a party whose participation is invited or expected written notice of the date, time, location, participants and purposes of all investigative interviews, other meetings, or hearings with sufficient time for the party to prepare to participate.

Prior to the conclusion of the investigation, the investigator shall provide both parties an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations in the formal complaint including evidence that the investigator does not intend to rely upon.  Each party shall have an opportunity to respond to the evidence.

Prior to the completion of the investigation report, the investigator must send to each party and the party's advisor, if any, either in electronic format or hard copy the evidence subject to inspection and review.  The parties shall have at least ten (10) days to submit a written response.

The investigator shall create an investigation report fairly summarizing the relevant evidence.  The investigator shall send each party and the party's advisor, if any, a copy of the investigation report either in electronic format or hard copy.  The parties have ten (10) days to review the investigation report and file a written response.

## X.  DETERMINING RESPONSIBILITY

A decision-maker who is not the Title IX Coordinator or investigator must issue a written determination regarding responsibility based on a preponderance of evidence.

Before reaching a determination, the decision-maker must provide each party the opportunity to submit written, relevant questions of any party or witness provide both parties with the answers, and allow for additional, limited follow-up questions.  If the decision-maker determines a question is not relevant, the decision-maker must provide a written explanation to the party proposing the question.

## XI.  WRITTEN DETERMINATION OF RESPONSIBILITY

The decision-maker's written determination must include:

1. An identification of the allegations potentially constituting sexual harassment;
2. A description of the procedural steps taken by the District from the receipt of the formal complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, and methods used to gather other evidence;

6

3. Findings of fact supporting the determination;
4. Conclusions regarding the application of the District's code of conduct to the facts;
5. A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility, any disciplinary sanctions the District imposes on the respondent, and whether remedies designed to restore or preserve equal access to the District's education program or activity will be provided by the District to the complainant; and
6. The District's procedures and permissible bases for the complainant and respondent to appeal.

The District must provide the written determination to the parties simultaneously.

The responsibility determination becomes final either on the date that the District provides the parties with the written determination of the result of the appeal, if an appeal is filed; or if an appeal is not filed, the date on which an appeal would no longer be considered timely.

## XII.  DISMISSAL OF FORMAL COMPLAINT

A.        Mandatory Dismissal
If the allegations in the formal complaint are not sexual harassment even if proved; or did not occur in the District's education program or activity; or did not occur against a person in the United States, the District will dismiss the formal complaint.

B.        Permissive Dismissal
The District may dismiss the formal complaint, or any allegations, if at any time during the investigation a complainant notifies the Title IX Coordinator in writing that the complainant would like to withdraw the formal complaint, or any allegations therein; or the respondent is no longer enrolled or employed by the District; or specific circumstances prevent the District from gathering evidence sufficient to reach a determination as to the formal complaint or allegations therein.

The District shall promptly send to the parties simultaneously written notice of the dismissal and reasons.

## XIII.  APPEALS

Within ten (10) days of the receipt of the written determination, the complainant and respondent may appeal to the Superintendent the dismissal of a formal complaint or any allegations; or the determination of responsibility for the following reasons:

1. Procedural irregularity that affected the outcome of the matter;
2. New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter; or
3. The Title IX Coordinator, investigator, or decision-maker had a conflict of interest or bias for or against complainants or respondents generally or the individual complainant or respondent that affected the outcome of the matter.

The Superintendent shall notify the other party in writing when an appeal is filed and implement appeal procedures equally for both parties.

In the appeal, both parties shall have a reasonable, equal opportunity to submit a written statement in support of, or challenging the outcome.  The Superintendent shall issue a written

7

decision describing the result of the appeal, the rationale for the result, and provide the written decision simultaneously to both parties within ten (10) days of receiving all information submitted by the parties.

## XIV. REPRISAL/RETALIATION

No person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this part. Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not involve sex discrimination or sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or formal complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by Title IX, constitutes retaliation.

The District will keep confidential the identity of any individual who has made a report or filed a formal complaint of sexual harassment, any complainant, any individual who has been reported to be the perpetrator of sex discrimination, any respondent, and any witness, except as may be permitted by the FERPA, or as required by law, or to carry out Title IX, including the conduct of any investigation, hearing of judicial proceeding arising thereunder.

Complaints alleging retaliation may be filed according to the grievance procedures for sex discrimination.

The exercise of rights protected under the First Amendment does not constitute retaliation.

## XV. ALLEGED CONDUCT NOT PROHIBITED UNDER TITLE IX

Allegations of conduct that are not prohibited by Title IX may be investigated under the District's other policies and rules of conduct.

## XVI. SEXUAL HARASSMENT OR SEXUAL VIOLENCE AS CHILD ABUSE OR SEXUAL ABUSE

Under certain circumstances, sexual harassment or sexual violence may constitute child abuse or sexual abuse under New Hampshire law. In such situations, the District shall comply with said laws including any reporting obligations.

## XVII. DISCIPLINE

The School District will take such disciplinary action it deems necessary and appropriate, including warning, suspension or immediate discharge to end sexual harassment and sexual violence and prevent its recurrence.

## XVIII. ALTERNATIVE COMPLAINT PROCEDURES, LEGAL REMEDIES, AND INQUIRIES ABOUT TITLE IX

At any times, whether or not an individual files a complaint or report under this policy, an individual may file a complaint with the Office for Civil Rights ("OCR"), of the United States

8

Department of Education, or with the New Hampshire Commission for Human Rights.

1. Office for Civil Rights, U.S. Department of Education, 5 Post Office3 Square, 8th Floor, Boston, MA 02019-3921; Telephone number (617) 289-0111; Fax number (617) 289-0150; E-mail OCR.Boston@ed.gov.

2. New Hampshire Commission for Human Rights, 2 Industrial Park Drive, Concord, NH 03301; Telephone number (603) 271-2767; E-mail humanrights@nh.gov.

Notwithstanding any other remedy, any person may contact the police or pursue a criminal prosecution under state or federal criminal law.

Inquiries about the application of Title IX may be referred to the Title IX Coordinator, the Assistant Secretary of the United States Department of Education, or both.

## XIX.  AGE-APPROPRIATE SEXUAL HARASSMENT POLICY

Ed 303.01(j) requires the school board to establish a policy on sexual harassment, written in age appropriate language and published and available in written form to all students.  This policy is intended to apply to middle-school and high-school aged students.

The Superintendent and Building Principal(s) are charged with establishing policies, rules, protocols and other necessary age-appropriate information or materials for the District's elementary schools.

## XX.  RECORD KEEPING

The District must maintain all records relating to a sexual harassment complaint, investigation, and training for seven (7) years.


Legal Reference:
Title IX
NH Code of Administrative Rules, Section Ed. 303.01(j), Substantive Duties of
School Boards; Sexual Harassment Policy
NH Code of Administrative Rules, Section 306.04(a)(8), Student Harassment
NH Code of Administrative Rules, Section 306.04(a)(9), Sexual Harassment

Adopted:    January 12, 1985
Adopted:    November 14, 2000
Revised:    June 8, 2021, August 22, 2023, August 13, 2024

**ASD File:  JBAA**

**AUBURN SCHOOL DISTRICT**
**SEXUAL HARASSMENT AND SEXUAL VIOLENCE-STUDENTS**

**SEXUAL DISCRIMINATION, HARASSMENT AND VIOLENCE**

**I.  PURPOSE**

The purpose of this policy is to maintain a learning environment that is free from sexual discrimination, harassment and violence, or other improper or inappropriate behavior that may constitute harassment as defined below.

Sexual discrimination, harassment, and violence are against the law and school board policy. Any form of sexual discrimination, harassment or violence is strictly prohibited.

It is a violation of this policy for any student to harass another student, employee or person within the District through conduct or communication of a sexual nature as defined by this policy. It is a violation of this policy for any student to be sexually violent toward another student, employee, or person within the District.

The District will investigate all formal complaints of sexual harassment, discrimination, or sexual violence in accordance with the grievance procedures in this policy, and will discipline any student who sexually discriminates, harasses or is sexually violent toward another person within the District.  For all complaints the District will offer supportive measures to both complainants and respondents

**II.   TITLE IX COORDINATOR**

The District's Title IX Coordinator is: The District's Title IX Coordinator is: Assistant Superintendent, 90 Farmer Rd., Hooksett, NH  03106, mpolak@sau15.net, 603-322-3731 x12.

The Title IX Coordinator is responsible for coordinating the District's efforts to comply with Title IX, including coordinating the effective implementation of supportive measures and effective implementation of remedies.

The Title IX Coordinator's responsibilities include establishing a process to notify applicants for employment and admission, students, parents or legal guardians, employees, and all unions of the Title IX Coordinator's name or title, office address, e-mail address and telephone number.

The District shall post the Title IX Coordinator's title or name, office address, e-mail address and telephone number in conspicuous places throughout school buildings, on the District's website, and in each handbook.

**III.  SEXUAL DISCRIMINATION, HARASSMENT/SEXUAL VIOLENCE DEFINED**

Sexual discrimination is discrimination based on sex in the District's education programs or activities and extends to employment and admissions.

Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, sexually motivated physical conduct or other verbal or physical conduct or communication of a sexual nature that satisfies one or more of the following:

1.  An employee of the District conditions the provision of an aid benefit, or service on

1

an individual's participation in unwelcome sexual conduct;

2. Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the District's education program or activity; or

3. Sexual assault as defined in 20 U.S.C. §1092(f)(6)(A(v) dating violence as defined in 34 U.S.C. §12291(a)(10), domestic violence as defined in 34 U.S.C. §12291(a)(8) or stalking as defined in 34 U.S.C. §12291(a)(30).

Sexual harassment may include, but is not limited to:

1. Verbal harassment and/or abuse of a sexual nature;

2. Subtle pressure for sexual activity;

3. Inappropriate patting, pinching or other touching;

4. Intentional brushing against a person's body;

5. Demanding sexual favors accompanied by implied or overt threats;

6. Demanding sexual favors accompanied by implied or overt promises of preferential treatment;

7. Any sexually motivated unwelcome touching; or

8. Sexual violence that is a physical act of aggression that includes a sexual act or sexual purpose.

Throughout this policy reference to sexual harassment includes sexual discrimination and violence.

## IV. REPORTING PROCEDURES

Any student who believes he or she has been the victim of sexual harassment should report the alleged act(s) immediately to a school district employee.  That employee shall then report the allegation immediately to an appropriate District official, as designated by this policy.  The District encourages the reporting student to use the report form available from the Principal of each building or available from the Superintendent's office.

1. In each building, the Principal is the person responsible for receiving oral or written reports of sexual harassment.  Upon receipt of a report, the Principal must notify the Title IX Coordinator immediately without screening or investigating the report.  If the report was given verbally, the Principal shall reduce it to written form within twenty-four (24) hours and forward it to the Title IX Coordinator.  Failure to forward any sexual harassment report or complaint as provided herein will result in disciplinary action. If the complaint involves the building Principal or designee the complaint shall be filed directly with the Title IX Coordinator.

2. The designated person to receive any report or complaint of sexual harassment and sexual violence is the Title IX Coordinator.  If the complaint involves the Title IX Coordinator, the complaint shall be filed directly with the Superintendent.

3. Any person may also report sexual harassment in person, by mail, telephone or e-mail to the Title IX Coordinator at any time including non-business hours.

4. Submission of a complaint or report of sexual harassment will not affect the student's standing in school, grades, assignments, or right to attend school and receive and education. The use of formal reporting forms provided by the District is voluntary. Certain students, especially younger children, may not be able to submit a written

2

complaint.  In such cases, the District will make available alternate methods of filing complaints.

## V.  DISTRICT'S RESPONSE TO ALL COMPLAINTS OF SEXUAL HARASSMENT

The District will respond promptly and in a manner that is reasonable in light of the known circumstances when it has actual knowledge of sexual harassment in its education programs or activities.  Actual knowledge means notice to any employee of the District.  Education programs or activities are locations, events, or circumstances over which the District exercised substantial control over both the alleged perpetrator of sexual harassment (the respondent) and the context in which the sexual harassment occurs.

The District will treat complainants and respondents equitably by offering supportive measures and following the grievance process before the imposition of any disciplinary sanctions or other non-supportive measures against the respondent.  The District may place an employee on administrative leave during the pendency of the grievance process.

The District may remove a respondent from its education programs or activities on an emergency basis based upon an individualized safety and risk analysis that determines that the respondent poses an immediate threat to the physical health or safety of any student or other individual arising from the allegations of sexual harassment.  The District shall provide the respondent with notice and an opportunity to challenge the decision immediately upon removal.

When the complainant and/or respondent are minor students, notices shall be provided to the student's parent or legal guardian.

The Title IX Coordinator will promptly contact the complainant to discuss the availability of supportive measures, consider the complainant's wishes with respect to supportive measures, inform the complainant of the availability of supportive measures with or without the filing of a formal complaint, and explain to the complainant the process for filing a formal complaint.

These provisions do not modify rights under the IDEA, Section 504, or the ADA.

The District's response shall not restrict rights protected by the United States Constitution including the First, Fifth, and Fourteenth Amendments.

## VI.  SUPPORTIVE MEASURES

Supportive measures are non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the complainant or the respondent before or after the filing of a formal complaint or where no formal complaint has been filed which are designed to restore or preserve equal access to the District's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the District's educational environment, or deter sexual harassment.  Supportive measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, shadowing, mutual restrictions on contact between parties, changes in work or school locations, leaves of absence, increased security and monitoring of certain areas of the school, and other similar measures.

The District will maintain as confidential any supportive measures provided to the complainant or respondent, to the extent that maintaining such confidentiality would not impair the ability of the District to provide the supportive measures.

3

## VII. FORMAL COMPLAINTS

A formal complaint is a document filed by a person who is alleged to be the victim of conduct that could constitute sexual harassment (the complainant) or signed by the Title IX Coordinator and requesting that the District investigate the allegation of sexual harassment.  The formal complaint may be filed with the Title IX Coordinator in person, by mail, or e-mail and must contain the complainant's physical or digital signature or otherwise indicate that the complainant is the person filing the formal complaint.

Parents or legal guardians may file complaints on behalf of their children.

The complainant's wishes with respect to investigating a complaint should be respected unless the Title IX Coordinator determines that the Title IX Coordinator's signing a formal complaint over the complainant's wishes is not clearly unreasonable in light of the known circumstances.

The Title IX Coordinator may in his/her discretion consolidate formal complaints where the allegations arise out of the same facts.

In response to a formal complaint, the District will follow the grievance procedures in this policy.

## VIII.  GRIEVANCE PROCEDURE FOR FORMAL COMPLAINTS

A.      Notice of Allegations

The Title IX Coordinator upon receipt of a formal complaint shall provide written notice to the complainant and respondent of the following:

1. The allegations including the date and location of the alleged incident, if known;

2. A statement that the respondent is presumed not responsible for the alleged conduct and a determination of responsibility will be made at the conclusion of the grievance process;

3. The complainant and respondent may have an advisor of their choice who may but is not required to be an attorney and may inspect and review evidence during the investigation;

4. Provisions in the District's code of conduct that prohibit knowingly making false statements or knowingly submitting false information;

5. A copy of this Title IX policy.

B.      Grievance Procedure Requirements

1. Both the complainant and respondent shall have an equal opportunity to submit and review evidence throughout the investigation;

2. The District will use trained Title IX personnel to objectively evaluate all relevant evidence without prejudgment of the facts at issue and free from conflicts of interest or bias for or against either party.

3. The District will protect the parties' privacy by requiring a party's written consent before using the party's medical, psychological or similar treatment records during a grievance process.

4

4. The District will obtain the parties' voluntary written consent before using any kind of informal resolution process, such as mediation or restorative justice, and not use an informal process where an employee allegedly sexually harassed a student.

5. The District will apply a presumption that the respondent is not responsible during the grievance process so that the District bears the burden of proof and the standard of evidence is applied correctly.

6. The District will use the preponderance of the evidence standard for formal complaints against students and employees.

7. The District will ensure the decision-maker for determining responsibility is not the same person as the investigator or the Title IX Coordinator.

8. The District will permit the parties to submit written questions for the other parties and witnesses to answer before determining responsibility.

9. The District will protect all complainants from inappropriately being asked about prior sexual history.

10. The District will not restrict the parties' ability to discuss the allegations under investigation or to gather and produce relevant evidence.

11. The District will send both parties a written determination regarding responsibility explaining how and why the decision-maker reached conclusions.

12. The District will effectively implement remedies for a complainant if a respondent is found responsible for sexual harassment.

13. The District will offer both parties an equal opportunity to appeal.

14. The District will protect all individuals, including complainants, respondents, and witnesses, from retaliation for reporting sexual harassment, or participating or refusing to participate in any Title IX grievance process.

15. The District will make all materials used to train Title IX personnel publicly available on the District's website.

16. The District will document and keep records of all sexual harassment complaints, investigations, and training for seven (7) years.


**IX. INVESTIGATION**

The Title IX Coordinator (or the Superintendent, if the Title IX Coordinator is the subject of the complaint), upon receipt of a formal complaint alleging sexual harassment shall immediately authorize an investigation. This investigation may be conducted by District officials or by a third party designated by the District. The investigating party shall provide a written report of the status of the investigation within ten (10) working days to the Title IX Coordinator. If the Title IX Coordinator is the subject of the complaint, the report shall be submitted to the Superintendent.

In determining whether alleged conduct constitutes sexual harassment, the District should consider the surrounding circumstances, the nature of the sexual advances, relationships between the parties involved and the context in which the alleged incidents occurred. Whether a particular action or incident constitutes sexual harassment or sexual violence requires a

5

determination based on all the facts and surrounding circumstances.

The investigation may consist of personal interviews with the complainant, the individual(s) against whom the complaint is filed, and others who may have knowledge of the alleged incident(s) or circumstances giving rise to the complaint.  The investigation may also consist of any other methods and documents deemed pertinent by the investigator.  Students who are interviewed may have a parent present during the interview.

If during the investigation, the District decides to investigate allegations not in the formal complaint, the Title IX Coordinator shall provide written notice to the parties of the additional allegations.

The District shall provide to a party whose participation is invited or expected written notice of the date, time, location, participants and purposes of all investigative interviews, other meetings, or hearings with sufficient time for the party to prepare to participate.

Prior to the conclusion of the investigation, the investigator shall provide both parties an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations in the formal complaint including evidence that the investigator does not intend to rely upon.  Each party shall have an opportunity to respond to the evidence.

Prior to the completion of the investigation report, the investigator must send to each party and the party's advisor, if any, either in electronic format or hard copy the evidence subject to inspection and review.  The parties shall have at least ten (10) days to submit a written response.

The investigator shall create an investigation report fairly summarizing the relevant evidence.  The investigator shall send each party and the party's advisor, if any, a copy of the investigation report either in electronic format or hard copy.  The parties have ten (10) days to review the investigation report and file a written response.

## X.  DETERMINING RESPONSIBILITY

A decision-maker who is not the Title IX Coordinator or investigator must issue a written determination regarding responsibility based on a preponderance of evidence.

Before reaching a determination, the decision-maker must provide each party the opportunity to submit written, relevant questions of any party or witness provide both parties with the answers, and allow for additional, limited follow-up questions.  If the decision-maker determines a question is not relevant, the decision-maker must provide a written explanation to the party proposing the question.

## XI.  WRITTEN DETERMINATION OF RESPONSIBILITY

The decision-maker's written determination must include:

1. An identification of the allegations potentially constituting sexual harassment;
2. A description of the procedural steps taken by the District from the receipt of the formal complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, and methods used to gather other evidence;
3. Findings of fact supporting the determination;
4. Conclusions regarding the application of the District's code of conduct to the facts;

6

5. A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility, any disciplinary sanctions the District imposes on the respondent, and whether remedies designed to restore or preserve equal access to the District's education program or activity will be provided by the District to the complainant; and

6. The District's procedures and permissible bases for the complainant and respondent to appeal.

The District must provide the written determination to the parties simultaneously.

The responsibility determination becomes final either on the date that the District provides the parties with the written determination of the result of the appeal, if an appeal is filed; or if an appeal is not filed, the date on which an appeal would no longer be considered timely.

## XII.  DISMISSAL OF FORMAL COMPLAINT

A.      <u>Mandatory Dismissal</u>
If the allegations in the formal complaint are not sexual harassment even if proved; or did not occur in the District's education program or activity; or did not occur against a person in the United States, the District will dismiss the formal complaint.

B.      <u>Permissive Dismissal</u>
The District may dismiss the formal complaint, or any allegations, if at any time during the investigation a complainant notifies the Title IX Coordinator in writing that the complainant would like to withdraw the formal complaint, or any allegations therein; or the respondent is no longer enrolled or employed by the District; or specific circumstances prevent the District from gathering evidence sufficient to reach a determination as to the formal complaint or allegations therein.

The District shall promptly send to the parties simultaneously written notice of the dismissal and reasons.

## XIII.  APPEALS

Within ten (10) days of the receipt of the written determination, the complainant and respondent may appeal to the Superintendent the dismissal of a formal complaint or any allegations; or the determination of responsibility for the following reasons:

1. Procedural irregularity that affected the outcome of the matter;
2. New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter; or
3. The Title IX Coordinator, investigator, or decision-maker had a conflict of interest or bias for or against complainants or respondents generally or the individual complainant or respondent that affected the outcome of the matter.

The Superintendent shall notify the other party in writing when an appeal is filed and implement appeal procedures equally for both parties.

In the appeal, both parties shall have a reasonable, equal opportunity to submit a written statement in support of, or challenging the outcome.  The Superintendent shall issue a written decision describing the result of the appeal, the rationale for the result, and provide the written decision simultaneously to both parties within ten (10) days of receiving all information submitted

7

by the parties.

## XIV.  REPRISAL/RETALIATION

No person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this part.  Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not involve sex discrimination or sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or formal complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by Title IX, constitutes retaliation.

The District will keep confidential the identity of any individual who has made a report or filed a formal complaint of sexual harassment, any complainant, any individual who has been reported to be the perpetrator of sex discrimination, any respondent, and any witness, except as may be permitted by the FERPA, or as required by law, or to carry out Title IX, including the conduct of any investigation, hearing of judicial proceeding arising thereunder.

Complaints alleging retaliation may be filed according to the grievance procedures for sex discrimination.

The exercise of rights protected under the First Amendment does not constitute retaliation.

## XV.  ALLEGED CONDUCT NOT PROHIBITED UNDER TITLE IX

Allegations of conduct that are not prohibited by Title IX may be investigated under the District's other policies and rules of conduct.

## XVI.  SEXUAL HARASSMENT OR SEXUAL VIOLENCE AS CHILD ABUSE OR SEXUAL ABUSE

Under certain circumstances, sexual harassment or sexual violence may constitute child abuse or sexual abuse under New Hampshire law. In such situations, the District shall comply with said laws including any reporting obligations.

## XVII.  DISCIPLINE

The School District will take such disciplinary action it deems necessary and appropriate, including warning, suspension or immediate discharge to end sexual harassment and sexual violence and prevent its recurrence.

## XVIII.  ALTERNATIVE COMPLAINT PROCEDURES, LEGAL REMEDIES, AND INQUIRIES ABOUT TITLE IX

At any times, whether or not an individual files a complaint or report under this policy, an individual may file a complaint with the Office for Civil Rights ("OCR"), of the United States Department of Education, or with the New Hampshire Commission for Human Rights.

1. Office for Civil Rights, U.S. Department of Education, 5 Post Office3 Square, 8th Floor, Boston, MA 02019-3921; Telephone number (617) 289-0111; Fax number (617) 289-0150; E-mail OCR.Boston@ed.gov.

2. New Hampshire Commission for Human Rights, 2 Industrial Park Drive, Concord, NH 03301; Telephone number (603) 271-2767; E-mail humanrights@nh.gov.

Notwithstanding any other remedy, any person may contact the police or pursue a criminal prosecution under state or federal criminal law.

Inquiries about the application of Title IX may be referred to the Title IX Coordinator, the Assistant Secretary of the United States Department of Education, or both.

## XIX. AGE-APPROPRIATE SEXUAL HARASSMENT POLICY

Ed 303.01(j) requires the school board to establish a policy on sexual harassment, written in age appropriate language and published and available in written form to all students. This policy is intended to apply to middle-school and high-school aged students.

The Superintendent and Building Principal(s) are charged with establishing policies, rules, protocols and other necessary age-appropriate information or materials for the District's elementary schools.

## XX. RECORD KEEPING

The District must maintain all records relating to a sexual harassment complaint, investigation, and training for seven (7) years.

Legal Reference:
Title IX
NH Code of Administrative Rules, Section Ed. 303.01(j), Substantive Duties of School Boards; Sexual Harassment Policy
NH Code of Administrative Rules, Section 306.04(a)(8), Student Harassment
NH Code of Administrative Rules, Section 306.04(a)(9), Sexual Harassment

Adopted:    January 12, 1985
Adopted:    November 14, 2000
Revised:    June 8, 2021

9

<u>**ASD File:  JH**</u>

**AUBURN SCHOOL DISTRICT**
<u>**ATTENDANCE, ABSENTEEISM AND TRUANCY**</u>

**Absences**

The Board requires that school-aged children enrolled in the District attend school in accordance with all applicable state laws and Board policies.  The educational program offered by the District is predicated upon the presence of the student and requires continuity of instruction and classroom participation in order for students to achieve academic standards and consistent educational progress.

Attendance shall be required of all students enrolled in the District during the days and hours that school is in session, except that the Principal **or designee** may excuse a student for temporary absences when receiving satisfactory evidence of conditions or reasons that may reasonably cause the student's absence.

The Board considers the following to be excused absences:

1. Illness
2. Recovery from an accident
3. Required court attendance
4. Medical and dental appointments
5. Death in the immediate family
6. Observation or celebration of a bona fide religious holiday
7. Such other good cause as may be acceptable to the Principal or designee or permitted by   law

Any absence that has not been excused for any of these reasons will be considered an unexcused absence.

In the event of an illness, parent **or guardian** must call the school and inform the District of the student's illness and absence.  For other absences, parent **or guardian** must provide written notice **to the Principal or designee,** ~~or a written excuse~~ that states one of these reasons for non-attendance.  The Principal **or designee** has the authority to request that parent **or guardian** provide additional documentation supporting the stated reason for non-attendance**,** and to render the absence unexcused if such documentation is insufficient.

If a parent **or guardian** wish for their child to be absent for a reason not listed above, the parent **or guardian** must provide a written explanation of the reason for such absence, including why the student will be absent and for how long the student will be absent.  The Principal **or designee** will make a determination as to whether the stated reason for the student's absence constitutes good cause and will notify the parent **or guardian** via telephone and writing of his/her decision.  If the Principal **or designee** determines that good cause does not exist, the parent **or guardian** may request a conference with the Principal **or designee** to again explain the reasons for non-attendance.  The Principal **or designee** may then reconsider his initial determination.  However, at this juncture, the Principal **or designee's** decision shall be final.

**Family Vacations/Educational Opportunities**

Generally, absences other than for illness during the school year are discouraged.  The school Principal or his/her designee may, however, grant special approval of absence for family vacations, provided written approval is given in advance.

The parent **or guardian** are asked to write a note to the Principal **or designee** at least two

weeks before the trip.

The Principal **or designee** will notify the child's teacher if the request is approved.  This advance planning will allow the teacher enough time to work with parent **or guardian** and the student regarding homework completion.

**Truancy**

Truancy is defined as any unexcused absence from class or school.  Any absence that has not been excused for any of the reasons listed above will be considered an unexcused absence.

Ten half-days of unexcused absence during a school year constitutes habitual truancy.

A half-day absence is defined as a student missing more than two hours of instructional time and less than three and one-half hours of instructional time.

Any absence of more than three and one-half hours of instructional time shall be considered a full-day absence.

The Principal **or designee** or his/her designee is hereby designated as the District employee responsible for overseeing truancy issues.

**Intervention Process to Address Truancy**
The Principal **or designee** shall ensure that the administrative guidelines on attendance properly address the matter of truancy by including a process that identifies students who are habitually truant, as defined above.

When the Principal **or designee** identifies a student who is habitually truant or who is in danger of becoming habitually truant, he/she shall commence an intervention with the student, the student's parent **or guardian**, and other staff members as may be deemed necessary.  The intervention shall include processes including, but not limited to:

  1.  Investigates the cause(s) of the student's truant behavior;

  2.  Considers, when appropriate, modification of his/her educational program to meet particular needs that may be causing the truancy;

  3.  Involves the parent **or guardian** in the development of a plan designed to reduce the truancy;

  4.  Seeks alternative disciplinary measures, but still retains the right to impose discipline in accordance with the District's policies and administrative guidelines on student discipline;

**Parent or Guardian Involvement in Truancy Intervention**
When a student reaches habitual truancy status or is in danger of reaching habitual truancy status, the Principal **or designee** will send the student's parent **or guardian** a letter which includes:

  1.  A statement that the student has become or is in danger of becoming habitually truant;

  2.  A statement of the parent **or guardian's** responsibility to ensure that the student attends school; and

  3.  A request for a meeting between the parent **or guardian** and the Principal **or designee** to discuss the student's truancy and to develop a plan for reducing the student's truancy.

**Developing and Coordinating Strategies for Truancy Reduction**

Page 2 of 3

The Board encourages the administration to seek truancy-prevention and truancy-reduction strategies along with the recommendations listed below.  However, these guidelines shall be advisory only.  The Superintendent is authorized to develop and utilize other means, guidelines and programs aimed at preventing and reducing truancy.

1.  Coordinate truancy-prevention strategies based on the early identification of truancy, such as prompt notification of absences to parent **or guardian**.

2.  Assist school staff to develop site attendance plans by providing development strategies, resources, and referral procedures.

3.  Encourage and coordinate the adoption of attendance-incentive programs at school sites and in individual classrooms that reward and celebrate good attendance and significant improvements in attendance.

**Parent or Guardian Notification of Truancy Policy**

~~Prior to adopting this policy, the Board will place the item on the agenda of a public school board meeting and will allow two weeks for public input as to the policy's provisions.  Any public input shall be advisory only and final adoption as to the policy's provisions will remain solely with the Board.~~

Additionally, the Superintendent shall also ensure that this policy is included in or referenced in the ~~student~~ **family** handbook and is sent to parent **or guardian** annually at the beginning of each school year.

Proposed:  December 13, 1989
Adopted:   January 30, 2001
Revised:   October 6, 2008
Revised:   May 12, 2011

*Legal References:*
RSA 189:34, RSA 189:35-a,
RSA 193:1, RSA 193:7,
RSA 193:8, RSA 193:16,
NH Admin Rules, Sec. Ed 306.04 (a)(1)
NH Admin Rules, Sec. Ed 306.04 (c)

**X.V.**

**School Administrative Unit #15**
**Auburn Pupil Accounting**
**Monthly Enrollment**
**DATE: May 5, 2025**

| GRADE | SECTION | TOTAL 2024-2025 | TOTAL 2023-2024 | TOTAL 2022-2023 | TOTAL 2021-2022 |
|---|---|---|---|---|---|
| Pre-School | 1 | **9** | 9 | | |
| Pre-K | 1 | **6** | 11 | | |
| K | 4 | **78** | 63 | 64 | 70 |
| 1 | 4 | **68** | 70 | 82 | 62 |
| 2 | 4 | **72** | 84 | 63 | 63 |
| 3 | 4 | **83** | 70 | 64 | 84 |
| 4 | 3 | **69** | 62 | 85 | 75 |
| 5 | 3 | **64** | 83 | 77 | 77 |
| 6 | 4 | **88** | 75 | 78 | 72 |
| 7 | 4 | **74** | 80 | 74 | 74 |
| 8 | 4 | **80** | 70 | 74 | 55 |
| TOTAL | 34 | **691** | 677 | 661 | 632 |

*23/24 Pre-school/Pre-K numbers from June 2024

**School Administrative Unit #15**
**Auburn Pupil Accounting**
**High School Monthly Enrollment**

**DATE:  May 5, 2025**

| School | Grade 9 | Grade 10 | Grade 11 | Grade 12 | TOTAL |
|---|---|---|---|---|---|
| **Pinkerton Academy** | 71 | 70 | 53 | 62 | 256 |
| **Memorial High School** | 0 | 1 | 1 | 0 | 2 |
| **Private** | 4 | 3 | 8 | 10 | 25 |
| **TOTALS by Grade** | 75 | 74 | 62 | 72 | 283 |
| **Special Education Placements** | 1 | 0 | 2 | 2 | 5 |
| **GRAND TOTAL** | | | | | 288 |