BROWN RUDNICK LLP
SAMANTHA J. FLATTERY, No. 342420
sflattery@brownrudnick.com
RENEE M. MOULTON, No. 353065
rmoulton@brownrudnick.com
2121 Avenue of the Stars, Suite 720
Los Angeles, CA 90067
T: 1.424.525.0200
F: 1.424.525.0201

BROWN RUDNICK LLP
DYLAN P. KLETTER, NY Bar No. 5924659 (admitted *pro hac vice*)
dkletter@brownrudnick.com
JONATHAN D. WHITE, NY Bar No. 5393780 (admitted *pro hac vice*)
jwhite@brownrudnick.com
7 Times Square
New York, NY 10036
T: 1.212.209.4800
F: 1.212.209.4801

Attorneys for Defendant,
MOVATE, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br>All Track One Actions | CASE NO. 3:25-md-3149-BEN-MSB<br><br>MDL No. 3149<br><br>Hon. Roger T. Benitez<br><br>**REPLY IN SUPPORT OF DEFENDANT MOVATE, INC.'S MOTION TO DISMISS CONSOLIDATED INDIVIDUAL USERS CLASS ACTION COMPLAINT (TRACK 1)**<br><br>Courtroom:    5A<br>Date:    TBD<br>Time:    TBD<br><br>**ORAL ARGUMENT REQUESTED** |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   PROCEDURAL DEFICIENCIES ...................................................... 2

    A.    Plaintiffs Fail to Establish Personal Jurisdiction Over Movate ............ 2

        (1)    Plaintiffs Fail to Plead Purposeful Direction ............................. 3

        (2)    Plaintiffs Fail to Plead Purposeful Availment ........................... 4

        (3)    Plaintiffs' Claims Do Not Arise Out of Movate's Activities ..... 5

        (4)    The Court's Exercise of Jurisdiction Over Movate Would Be Unreasonable ............................................................................ 6

    B.    Plaintiffs Lack Article III Standing ......................................................... 7

III.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE 12(B)(6) .......... 8

    A.    Negligence ................................................................................................ 8

        (1)    Movate Owes Plaintiffs No Duty ............................................... 8

        (2)    Plaintiffs' Conclusory Breach Allegations Are Insufficient .... 12

        (3)    Plaintiffs Fail to Sufficiently Allege Damages ......................... 13

    B.    Negligence *Per Se* .................................................................................. 14

    C.    Negligent Hiring And Supervision ........................................................ 16

    D.    Unjust Enrichment ................................................................................. 18

    E.    Declaratory Judgment ............................................................................ 20

IV.   CONCLUSION ................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Absolute Software Inc. v. Stealth Signal, Inc.*,
2005 WL 8164062 (W.D. Wash. Mar. 8, 2005)....................................................5

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024)......................................................9, 10, 11

*In re Ambry Genetics Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ......................................................19, 20

*In re Anthem, Inc. Data Breach Litig.*,
2016 WL 3029783, (N.D. Cal. May 27, 2016) ...........................................19, 20

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017).......................................................................3, 4

*In re Bank of Am. California Unemployment Benefits Litig.*,
674 F. Supp. 3d 884 (S.D. Cal. 2023) ...................................................................18

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019).................................................................13

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024).............................................*passim*

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) .................................................................5, 7

*Brandon v. Quicken Loans, Inc.*,
2021 WL 1015830 (E.D. Mich. Feb. 22, 2021) .....................................................17

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017) ....................................................................................5

*Brown v. USA Taekwondo*,
11 Cal. 5th 204 (2021).............................................................................8, 12

*Buoniello v. Ethicon Women's Health & Urology*,
2020 WL 5802276 (E.D.N.Y. Sept. 29, 2020)......................................................18

CASE NO. 3:25-md-3149-BEN-MSB

MOVATE'S REPLY IN SUPPORT OF TRACK 1 MOTION TO DISMISS

*Bureerong v. Uvawas*,
    959 F. Supp. 1231 (C.D. Cal. 1997) .................................................................. 15

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................................ 4

*Calder v. Jones*,
    465 U.S. 783 (1984) .................................................................................. 1, 3, 4

*Castillo v. Seagate Tech., LLC*,
    2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) .................................................. 13

*Cohen v. Ne. Radiology, P.C.*,
    2021 WL 293123 (S.D.N.Y. Jan. 28, 2021) ...................................................... 15

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) ............................................................................... 6

*Corona v. Sony Pictures Ent., Inc.*,
    2015 WL 3916744 (C.D. Cal. June 15, 2015) ................................................... 14

*Diaz v. Tesla, Inc.*,
    598 F. Supp. 3d 809 (N.D. Cal. 2022) ............................................................... 17

*Doe v. Brandeis Univ.*,
    718 F. Supp. 3d 83 (D. Mass. 2024) .................................................................. 17

*Doe v. Meta Platforms, Inc.*,
    690 F. Supp. 3d 1064 (N.D. Cal. 2023) .................................................. 15, 19, 20

*Doe v. Uber Technologies, Inc.*,
    2025 WL 80365 (9th Cir. Jan. 13, 2025) ....................................................... 9, 10

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
    371 F. Supp. 3d 1150 (N.D. Ga. 2019) ............................................................ 7, 8

*Esquer v. StockX LLC*,
    2020 WL 3487821 (N.D. Cal. June 26, 2020) .................................................... 6

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
    655 F. Supp. 3d 899 (N.D. Cal. 2023) ............................................................. 9, 10

*Flores-Mendez v. Zoosk, Inc.*,
    2021 WL 308543, at *1 (N.D. Cal. Jan. 30, 2021) ........................................... 12

MOVATE'S REPLY IN SUPPORT OF TRACK 1 MOTION TO DISMISS

*Golden Valley Grape Juice & Wine LLC v. Centrisys Corp.*,
2009 WL 4828743 (E.D. Cal. Dec. 9, 2009)......................................................5

*Gray v. Schenectady City Sch. Dist.*,
86 A.D.3d 771 (N.Y. App. Div. 2011)............................................................17

*Haas v. Travelex Ins. Servs., Inc.*,
555 F. Supp. 3d 970 (C.D. Cal. 2021)........................................................18, 19

*Hummel v. Teijin Automotive Techs.*,
2023 WL 6149059 (E.D. Mich. 2023) ............................................................13

*Jimenez v. OE Fed. Credit Union*,
2025 WL 2402137 (N.D. Cal. Aug. 19, 2025)....................................................20

*Krottner v. Starbucks Corp.*,
406 Fed. App'x 129 (9th Cir. 2010)...............................................................13

*Lee v. Albarran*,
2024 WL 4987310 (S.D.N.Y. Dec. 5, 2024)......................................................16

*Lee v. Netgain Tech., LLC*,
2022 WL 993552 (S.D. Cal. Apr. 1, 2022) ........................................................7

*Linlor v. JPMorgan Chase & Co.*,
2017 WL 3446814 (S.D. Cal. Aug. 9, 2017).......................................................6

*Loomis v. Slendertone Distrib., Inc.*,
420 F. Supp. 3d 1046 (S.D. Cal. 2019) .............................................................6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2014)..........................................................20

*Mueller v. Brannigan Bros. Rests. & Taverns LLC*,
323 Mich. App. 566 (Mich. Ct. App. 2018).......................................................17

*Navarro v. Ski Data*,
2022 WL 18280359 (C.D. Cal. Dec. 7, 2022)......................................................9

*NetApp, Inc. v. Nimble Storage, Inc.*,
41 F. Supp. 3d 816 (N.D. Cal. 2014).............................................................4, 5

*Palmer v. Alameda Cnty.*,
2019 WL 5626633 (N.D. Cal. Oct. 31, 2019) ....................................................17

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015)...................................................................................3, 6

*Pruchnicki v. Envision Healthcare Corp.*,
  845 F. App'x 613 (9th Cir. 2021)......................................................................14

*Reyes v. Nationstar Mortg. LLC*,
  2015 WL 4554377 (N.D. Cal. July 28, 2015).......................................................20

*In re S.F. 49ers Data Breach Litig.*,
  2024 WL 3849336 (N.D. Cal 2024).....................................................................10

*Schmitt v. SN Servicing Corp.*,
  2021 WL 3493754 (N.D. Cal. Aug. 9, 2021).......................................................13

*Seirafi v. Ledger SAS*,
  No. 21-cv-02470-EMC, Dkt. No. 111...................................................................17

*Shalghoun v. N. L.A. Cnty. Reg'l Ctr., Inc.*,
  99 Cal. App. 5th 929 (2024).................................................................................11

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
  131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020)..............................................................16

*Matter of Star & Crescent Boat Co., Inc.*,
  549 F. Supp. 3d 1145 (S.D. Cal. 2021) (Benitez, J.).......................................3, 6

*Theisz v. Mass. Bay Transp. Auth.*,
  103 Mass. App. Ct. 822 (2024) .............................................................................17

*Tomasella v. Nestlé USA, Inc.*,
  962 F.3d 60 (1st Cir. 2020) ..................................................................................18

*Toretto v. Donnelley Fin. Sols.*,
  583 F. Supp. 3d 570 (S.D.N.Y. 2022) .............................................................13, 19

*In re USAA Data Sec. Litig.*,
  621 F. Supp. 3d 454 (S.D.N.Y. 2022).................................................................9, 10

*Walden v. Fiore*,
  571 U.S. 277 (2014) .......................................................................................3, 4, 5

*Wall v. Wescom Cent. Credit Union*,
  2024 WL 1158361 (C.D. Cal. Mar. 18, 2024) .....................................................19

MOVATE'S REPLY IN SUPPORT OF TRACK 1 MOTION TO DISMISS

*Webb v. Injured Workers Pharmacy, LLC*,
2023 WL 5938606 (D. Mass. Sept. 12, 2023) ....................................................12

*Weekes v. Cohen Cleary P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024).............................................................9, 10

*Yahoo! Inc. v. La Ligue Contre Le Racisme*,
433 F.3d 1199 (9th Cir. 2006).......................................................................4

*Yu v. Design Learned, Inc.*,
2016 WL 1621704 (N.D. Cal. Apr. 22, 2016)......................................................19

**Federal Statutes**

Children's Online Privacy Protection Act of 1998
15 U.S.C. § 6501  ...............................................................................15

Fair Labor Standards Act of 1938
29 U.S.C. § 203 ................................................................................15

Federal Trade Commission Act
15 U.S.C. §§ 41–58  ....................................................................2, 15, 16

Health Insurance Portability and Accountability Act of 1996
42 U.S.C. §§ 1320d *et seq.* ...........................................................2, 15, 16

**California Statutes**

California Consumer Legal Remedies Act of 1970,
Civ. Proc. Code § 1750 *et seq.* ...............................................................17

California Unfair Competition Law,
Bus. & Prof. §§ 17200 et seq..............................................................15, 17

**Other State Statutes**

Florida Deceptive and Unfair Trade Practices Act (FDUPTA),
Fla. Stat. §§ 501 *et seq*.....................................................................15

New York Deceptive Trade Practices Act,
NY CLS Gen Bus § 350 .......................................................................17

**Other Authorities**

Fed. R. Civ. P. 8.........................................................................14, 19

Fed. R. Civ. P. 12(B)(6)..............................................................................................8

U.S. Const. art. III, § 2, cl. 1 ...........................................................................1, 7, 13, 20

MOVATE'S REPLY IN SUPPORT OF TRACK 1 MOTION TO DISMISS

## I.    **<u>INTRODUCTION</u>**[1]

Plaintiffs' opposition brief (Dkt. 353, the "Opposition") fails to cure the fundamental defects in their claims against Movate, a remote IT support subcontractor to PowerSchool. The Complaint relies on speculation and conclusory assertions that fail federal pleading standards. Plaintiffs seek to hold Movate liable for a data breach in PowerSchool's SIS—a system Movate neither controlled nor secured. Plaintiffs' attempt to establish personal jurisdiction over Movate in California, and to state claims for negligence, negligent hiring, unjust enrichment, and declaratory judgment, is unsupported by the facts alleged and contrary to well-settled law.

As Movate's opening brief established, Plaintiffs fail to allege personal jurisdiction. The Opposition rests almost entirely on the existence of Movate's contract with PowerSchool, a California-based company, but a customer's location alone cannot create jurisdiction. Plaintiffs' invocation of the *Calder v. Jones* "effects test" is misplaced, because *Calder* governs intentional torts, not negligence. Even if it applied, Plaintiffs have not alleged that Movate expressly aimed any conduct at California; rather, the alleged acts occurred outside the forum and affected individuals nationwide. The Supreme Court and Ninth Circuit have repeatedly held that the location of a customer or the foreseeability of harm is insufficient absent forum-directed conduct.

Many Plaintiffs also lack Article III standing. Movate joins PowerSchool's arguments that Plaintiffs fail to allege a concrete injury traceable to Movate. The No-Injury Plaintiffs' asserted harms—exposure of personal data and risk of future misuse—are speculative and unsupported by allegations of actual misuse or economic loss. Plaintiffs' reliance on claims of lost time, emotional distress, and diminished data

---

[1] Capitalized terms not defined below shall have the meaning assigned to them in Defendant Movate, Inc.'s Notice of Motion and Motion to Dismiss the Consolidated Individual Users' Class Action Complaint (the "Motion") (Dkt. 317). Unless otherwise noted, all emphasis herein has been added, and all subsequent history, internal citations, and internal quotation marks have been omitted.

value fall short of establishing injuries that meet the standard for concrete harm. Moreover, Providence Teachers Union ("PTU") lacks associational standing because the Complaint identifies no injured member or compromised member-specific data.

Plaintiffs' negligence claim fails as a matter of law because they plead no facts establishing that Movate owed them a legal duty. The jurisdictions at issue—California, Massachusetts, Michigan, and New York—do not impose a duty on a remote vendor who neither controls the breached system nor possesses the data at issue. Plaintiffs' own Complaint confirms that PowerSchool, not Movate, configured the relevant security settings and maintained custody of the data. Their attempt to invoke a "special relationship" is unsupported by factual allegations, and Movate's role as a remote subcontractor does not make it a custodian of Plaintiffs' information.

Plaintiffs' pleadings for negligence *per se*, negligent hiring, unjust enrichment, and declaratory judgment are likewise deficient. The negligence *per se* theory fails because HIPAA and the FTCA do not create a private right of action. The negligent hiring claim is unsupported by any allegation that Movate knew or should have known of a risk posed by its employee, Rayson Cruz. Plaintiffs' unjust enrichment claim is duplicative of their negligence claim and identifies no direct benefit conferred on Movate. Finally, Plaintiffs' declaratory judgment claim merely repackages their negligence allegations and fails to state a standalone claim.

The Court should dismiss all claims against Movate with prejudice because amendment would be futile.

## II. PROCEDURAL DEFICIENCIES[2]

### A. Plaintiffs Fail to Establish Personal Jurisdiction Over Movate

Plaintiffs have not met their burden to establish the three required prongs of

---

[2] Pursuant to Case Management Order No. 6 (Dkt. 289), the parties met and conferred via videoconference on November 13, 2025 and November 17, 2025 for approximately 15 minutes total. Plaintiffs' counsel remains unwilling to stipulate to dismissal of any additional Plaintiffs or claims.

specific jurisdiction:[3] purposeful availment or direction, claims arising out of forum contacts, and reasonableness. *See Matter of Star & Crescent Boat Co., Inc.* ("*Matter of Star*"), 549 F. Supp. 3d 1145, 1161, 1170 (S.D. Cal. 2021) (Benitez, J.). The crux of their argument is that jurisdiction exists because Movate contracted with PowerSchool, a California company, but Movate's contract with PowerSchool is not a sufficient basis for personal jurisdiction.

(1)    Plaintiffs Fail to Plead Purposeful Direction

Plaintiffs rely on the "effects test" in *Calder v. Jones*, 465 U.S. 783 (1984), to argue that Movate "purposefully directed" its conduct towards California. But courts apply *Calder* in cases involving *intentional* torts, not negligence or contract cases. *See Matter of Star*, 549 F. Supp. 3d at 1162 ("In cases involving intentional torts, courts analyze purposeful direction by applying the *Calder* effects test. . . . In cases involving mere negligence or breach of contract, however, courts analyze whether the defendant committed acts evidencing purposeful availment."). Here, Plaintiffs assert only negligence-based theories against Movate, not any intentional tort. Because *Calder* does not govern such negligence-based claims, the *Calder* "effects test" does not apply, and the analysis instead turns on purposeful availment.[4]

---

[3] Plaintiffs make no attempt to engage with Movate's argument that the Court lacks general jurisdiction over it, thereby "tacitly admit[ting]" that Movate is not subject to general jurisdiction. *See Matter of Star & Crescent Boat Co., Inc.*, 549 F. Supp. 3d at 1161 (S.D. Cal. 2021) (Benitez, J).

[4] Even if the *Calder* effects test applied, Plaintiffs do not satisfy it. To establish purposeful direction, Plaintiffs must allege that Movate's conduct was expressly aimed at California, "not just to . . . plaintiff[s] who lived there." *Walden v. Fiore*, 571 U.S. 277, 288 (2014); *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). Mere knowledge that a client or affected party is in the forum is insufficient. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070–71 (9th Cir. 2017) (rejecting jurisdiction where the defendant's only forum link were emails that incidentally reached California recipients). Express aiming requires that the defendant target the forum state through conduct performed in or directed toward the forum itself, (footnote continued)

(2)    Plaintiffs Fail to Plead Purposeful Availment

Plaintiffs fail to meet the correct test—purposeful availment. Plaintiffs argue that Movate purposefully availed itself of California's laws because it "contracted with PowerSchool, a California-based company, to provide technical support and network operations to PowerSchool and California school districts and maintained access to and control over the Private Information" of Plaintiffs residing in California. Opp. at 6. But contracting with a forum resident alone does not create jurisdiction. In contract cases, purposeful availment exists only where the defendant's own in-forum conduct creates "continuing and wide-reaching contacts" in the forum or deliberately exploits the forum's laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 480 (1985).

Movate's contract with PowerSchool does not establish purposeful availment. Plaintiffs do not allege that *Movate* negotiated, executed, or performed the contract in California. *See* Compl. ¶ 47. And Plaintiffs allege the contract pertained to PowerSchool's nationwide software platform, not a California-specific project. *See id.* ¶ 20. Movate's alleged remote IT-support and network-management services were performed outside California to fulfill contractual obligations, not to establish a presence or ongoing operations here. *Id.* ¶¶ 108, 120.

The cases Plaintiffs cite confirm that jurisdiction is improper. Opp. at 6–7. In

---

demonstrating intent to exploit or affect the state, not merely someone there. *See id.*; *Walden*, 571 U.S. at 287–88. Plaintiffs' cited cases highlight this distinction. *Yahoo!* involved foreign defendants who deliberately sought to regulate Yahoo's California operations and servers, including by seeking orders from a French court directing Yahoo to "perform significant acts in California." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1208–09 (9th Cir. 2006); Opp. at 4. And *NetApp* involved intentional intrusion into a competitor's California systems after receiving multiple notices of the systems' locations. *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 825 (N.D. Cal. 2014); Opp. at 5–6. Plaintiffs allege neither deliberate regulation nor intrusion; only a negligent credential lapse outside California. Because Movate's conduct was not "expressly aimed" at California, Plaintiffs cannot meet the *Calder* test.

MOVATE'S REPLY IN SUPPORT OF TRACK 1 MOTION TO DISMISS

*Absolute Software Inc. v. Stealth Signal, Inc.*, 2005 WL 8164062 (W.D. Wash. Mar. 8, 2005), jurisdiction existed because the defendant sold its computers to forum residents and continuously monitored computers physically in the forum. *Id.* at *3. Likewise, in *Golden Valley Grape Juice & Wine LLC v. Centrisys Corp.*, 2009 WL 4828743 (E.D. Cal. Dec. 9, 2009), jurisdiction was proper because the defendant's contract with plaintiff was to install equipment in California and defendant repeatedly sent technicians there. *Id.* at *6. Movate did nothing comparable. Its contract with PowerSchool was not "for the specific purpose" of engaging with California. And unlike in *NetApp*, where the defendant intentionally intruded into computer systems it knew were physically located in California, Movate is alleged only to have provided remote support to PowerSchool under a nationwide contract. *See NetApp*, 41 F. Supp. 3d at 825. The mere fact that Movate provided remote support using online systems does not transform its out-of-state work into purposeful availment of California. "[T]raditional jurisdictional analyses are not upended simply because a case involves technological developments that make it easier for parties to reach across state lines." *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008).

      (3) <u>Plaintiffs' Claims Do Not Arise Out of Movate's Activities</u>

  Plaintiffs contend their alleged injuries "arise out of" Movate's conduct because they would not have occurred but for Movate's alleged negligence and its contract with a California company. Opp. at 7–8. But the "arising out of" requirement demands a direct connection between the defendant's forum-related conduct and the plaintiff's claims, not an attenuated "but-for" link. *See Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264–66 (2017). The alleged credential compromise and security failures occurred outside California, and Plaintiffs do not allege any negligent act was performed in or directed at this state. The fact that Movate's client is headquartered in California does not supply the necessary nexus. The Supreme Court makes clear due process requires the connection to arise from Movate's own forum-focused conduct, not its customer's location. *See Walden*, 571 U.S. at 284–85. The asserted injuries—

exposure of personal data and risk of misuse—are nationwide in scope and "not tethered to California in any meaningful way." *Picot*, 780 F.3d at 1215. Because neither the conduct nor the alleged harm connects to California, Plaintiffs fail the second prong of specific jurisdiction.

(4)    The Court's Exercise of Jurisdiction Over Movate Would Be Unreasonable

Because Plaintiffs fail the first two prongs of the specific-jurisdiction test, the Court need not reach the third. *Matter of Star*, 549 F. Supp. 3d at 1169. But if it did, exercising jurisdiction over Movate would be unreasonable. Movate did not purposefully inject itself into California's affairs. Its PowerSchool contract concerned a nationwide software platform, not a California-focused project. *See* Compl. ¶ 20. Requiring Movate—a Delaware corporation headquartered in Texas—to defend negligence claims in California would impose significant burdens unrelated to any deliberate forum conduct. California's interest is already assured by PowerSchool's presence.[5] *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993) (affirming dismissal against foreign defendant where "[t]he fact that the lawsuit will continue in California with other parties tips the efficiency factor" in the foreign defendant's favor).

Despite Plaintiffs' indication to the contrary (Opp. at 10), registration to do business does not equal consent to suit. *Loomis v. Slendertone*, which Plaintiff cites, confirms as much; there, jurisdiction was proper only because the defendant paired its California registration with California-directed sales, marketing, and customer

---

[5] The decisions relied on by Plaintiffs on this point involve defendants engaged in direct, suit-related conduct in California. *See Esquer v. StockX LLC*, 2020 WL 3487821, *7 (N.D. Cal. June 26, 2020) (California statutory claims involving conduct specifically directed at California consumers); *Linlor v. JPMorgan Chase & Co.*, 2017 WL 3446814, *4 (S.D. Cal. Aug. 9, 2017) (defendant repeatedly transmitted debt-collection communications into California to a California resident).

MOVATE'S REPLY IN SUPPORT OF TRACK 1 MOTION TO DISMISS

activity. 420 F. Supp. 3d 1046, 1069–70 (S.D. Cal. 2019). Movate is alleged to have done nothing similar, and one satellite office in San Jose does not create the suit-related contacts that specific jurisdiction requires. *See Lee v. Netgain Tech., LLC*, 2022 WL 993552, *3–6 (S.D. Cal. Apr. 1, 2022) (Minnesota-based IT provider with satellite office in San Diego not subject to California jurisdiction where data breach and technical operations occurred outside the forum). Forcing Movate to litigate here based solely on its customers' location would offend traditional notions of fair play and substantial justice.[6]

### B.    Plaintiffs Lack Article III Standing

Movate joins PowerSchool's argument regarding the No-Injury Plaintiffs' lack of standing. *See* Reply in Support of its Motion to Dismiss Consolidated Individual Users' Class Action Complaint ("PowerSchool Reply") (Dkt. 360) at 2–14. Movate also reiterates the arguments made in the Supplemental Brief in Further Support of PowerSchool and Bain's Motion to Dismiss Consolidated Individual Users Class Action Complaint regarding Plaintiffs' lack of standing (Dkt. 323).[7]

Finally, PTU lacks associational standing. Plaintiffs acknowledge the Rhode Island plaintiff is not a PTU member. Opp. at 17 ("Plaintiffs[] . . . separately identify one individual who is employed with a Rhode Island school who Plaintiffs never allege is one of PTU's 2000 members in Rhode Island."). Thus, the Court should focus on PTU-specific allegations. *See* Compl. ¶ 24. "Failure to identify an injured constituent prevents an association from asserting associational standing." *In re Equifax, Inc.,*

---

[6] Plaintiffs' jurisdictional discovery request is speculative, unsupported by forum-directed conduct, and should be denied. *See Boschetto*, 539 F.3d at 1020 (affirming dismissal and denial of jurisdictional discovery where plaintiff's request "was based on little more than a hunch that it might yield jurisdictionally relevant facts").

[7] Plaintiffs recite Plaintiff Campbell's experience and lament "neither PowerSchool nor the school district provided any direct notice to Plaintiff Campbell . . . ." Opp. at 14. However, Movate is neither PowerSchool nor the school district, nor did Movate make any decision regarding storing her information for 8 years post her graduation.

*Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1165 (N.D. Ga. 2019). Here, the Complaint offers only blanket allegations about member data without identifying a specific member or compromised information. *See* Compl. ¶ 749; *see also In re Equifax*, 371 F. Supp. 3d at 1165 (dismissing claims for lack of associational standing where organization failed to identify an injured constituent). Therefore, the Complaint does not allege PTU members have standing, and its claims should be dismissed.

## III.    <u>PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE 12(B)(6)</u>

### A.    <u>Negligence</u>

Plaintiffs' negligence claim fails because they do not plausibly allege Movate owed a duty, breached it, or caused compensable harm.

#### (1)    <u>Movate Owes Plaintiffs No Duty</u>

Plaintiffs fail to allege facts that plausibly support the existence of a legal duty owed by Movate. Their theory rests on the assertion that Movate, a remote support subcontractor, should be held liable for a data breach that occurred within PowerSchool's SIS environment, despite having no direct relationship with Plaintiffs, no control over the breached system, and no custody of the compromised data. Neither California, Massachusetts, Michigan, nor New York law—the jurisdictions the parties stipulated to focus on for resolving this Motion (Dkt. 314 ¶ 2)[8]—imposes a duty of care on a vendor under these circumstances. *See* Opp. at 19–22. Duty turns on misfeasance—conduct that creates or controls the risk—or on a special relationship that justifies imposing an affirmative obligation to protect against third-party misconduct. *See Brown v. USA Taekwondo*, 11 Cal. 5th 204, 214–16 (2021). Plaintiffs fail to allege either as to Movate.

***Movate owed Plaintiffs no duty because it lacked control over PowerSchool's security protocols***. Plaintiffs cannot establish a duty of care because they do not allege

---

[8]    As noted in the Motion, each of these states applies materially similar principles of negligence law. Mot. at 13 (citing cases).

that Movate exercised meaningful control over the system where the breach occurred or over the security measures that governed access to Plaintiffs' data. Plaintiffs make conclusory assertions that Movate "created the risk of harm" and had "unfettered access" to Plaintiffs' data. *See* Opp. at 19–20. But their own Complaint confirms that the breach occurred inside *PowerSchool's* SIS, through *PowerSchool's* support portal, using a single support credential—not Movate's systems. *See, e.g.*, Compl. ¶¶ 123, 129 (breach occurred through PowerSchool's SIS environment through its customer support portal PowerSource). Plaintiffs' own allegations attribute core security configurations (multi-factor authentication, encryption, segmentation, logging) to *PowerSchool's* choices, not Movate's. *Id* ¶¶ 185–93, 198–203, 209–30. Plaintiffs do not allege that Movate had any authority over PowerSchool to determine whether multi-factor authentication would be implemented to access PowerSchool's systems.

This lack of control is dispositive. Plaintiffs' cited cases—*Doe v. Uber Techs., Inc.*, *Baton v. Ledger SAS*, *In re Accellion, Inc. Data Breach Litig.*, *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, *In re USAA Data Sec. Litig.*, and *Weekes v. Cohen Cleary P.C.*—all involved defendants who operated the compromised system, stored the affected data, or made direct representations to plaintiffs. *See* Opp. at 19–21. By contrast, Movate never designed or operated PowerSchool's SIS, never stored Plaintiffs' data, and made no representations to Plaintiffs. *See* Compl. ¶¶ 116–20 (alleging Movate was hired to provide technical support on PowerSchool's behalf).

Movate's limited role aligns Movate with the defendants in *Navarro v. Ski Data*, 2022 WL 18280359, at *10 (C.D. Cal. Dec. 7, 2022)—cited in Movate's opening brief (Mot. at 15) but notably not addressed by Plaintiffs in their opposition. In *Navarro*, the court held that defendants owed no duty where they did not store or possess PII and had no control over the breached system. *Id.* Plaintiffs here similarly allege no such control by Movate over PowerSchool's SIS or its security protocols.

Instead, Plaintiffs rely on cases like *Doe v. Uber Technologies, Inc.*, 2025 WL 80365 (9th Cir. Jan. 13, 2025), to argue that Movate "created the risk." Opp. at 19. But

*Uber* is easily distinguishable—that case involved risks to Uber passengers stemming from the consumer-facing platform that Uber designed and operated. 2025 WL 80365, at *1. In a split 2-1 decision, the Ninth Circuit found a duty because Uber controlled the risk-creating interaction between riders and drivers—it designed the Uber app that the plaintiff claimed created a risk of sexual assault. *Id.* at *4. Movate, by contrast, is a remote IT support subcontractor with no control over PowerSchool's consumer interface, no control over PowerSchool's SIS, and no role in designing PowerSchool's data protection or security protocols.

The other data breach cases Plaintiffs cite—*In re Accellion, Inc. Data Breach Litigation*, *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, *In re S.F. 49ers Data Breach Litig., In re USAA Data Security Litigation*, and *Weekes v. Cohen Cleary P.C.*—are similarly inapposite. Opp. at 20. Each involved a defendant that was the owner and operator of the compromised system or stored the data. In *Accellion*, the defendant's <u>own</u> file transfer application was breached; the court found duty based on Accellion's role in designing, maintaining, and operating the vulnerable product. *See In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 630–31 (N.D. Cal. 2024). In *Facebook*, the defendant's <u>own</u> platform collected and controlled user data and made public-facing privacy representations; the court allowed negligence claims to proceed based on Facebook's failure to safeguard that data. *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 655 F. Supp. 3d 899, 902–03 (N.D. Cal. 2023). And in *In re S.F. 49ers Data Breach Litig.*, the 49ers' <u>own</u> computer systems were hacked. 2024 WL 3849336, at *2 (N.D. Cal. Aug. 15, 2024). Plaintiffs' Massachusetts and New York-law cases fare no better for the same reasons. *See In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 469–470 (S.D.N.Y. 2022) (finding duty where defendant's <u>own</u> website design exposed sensitive data); *Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 101–02 (D. Mass. 2024) (finding duty where law firm stored PII and PHI on its <u>own</u> servers that were compromised).

Finally, Plaintiffs' reliance on *Baton v. Ledger SAS*, 740 F. Supp. 3d 847 (N.D.

MOVATE'S REPLY IN SUPPORT OF TRACK 1 MOTION TO DISMISS

Cal. 2024), is misplaced. *See* Opp. at 21. *Baton* involved a vendor and its subcontractor that not only operated the breached customer database but also exercised direct control over the employees who stole the data. 740 F. Supp. 3d at 868–69. This case is distinguishable because the court found a duty because the subcontractor was specifically hired to safeguard customer PII by providing "data security consulting services." *Id.* at 907. Here, by contrast, Plaintiffs do not allege that PowerSchool hired Movate to provide data security consulting services or that Movate had control over decisions on how to safeguard Plaintiffs' data within PowerSchool's SIS. Compl. ¶¶ 116–20, 122–33, 185–230. Rather, Movate was hired to provide customer support, and PowerSchool set the data protection protocols. *Id.* ¶ 116–20, 122–33.

***Movate does not have a special relationship with Plaintiffs***. Plaintiffs also argue that Movate owed a duty by virtue of a "special relationship." *See* Opp. at 21–22.[9] But courts narrowly construe special relationships to situations where the plaintiff is dependent on the defendant's superior control over the plaintiff's protection—such as carrier-passenger, jailor-prisoner, or employer-employee. *Shalghoun v. N. L.A. Cnty. Reg'l Ctr., Inc.*, 99 Cal. App. 5th 929, 946 (2024), *as modified on denial of reh'g* (Feb. 22, 2024) (citing *Regents of Univ. of Cal. v. Superior Court*, 4 Cal. 5th 607, 619–21 (2018)).[10]

Plaintiffs and Movate have no such relationship. Movate is a subcontractor to PowerSchool, not a school, coach, or governing body. It had no custodial or supervisory relationship with Plaintiffs. *See* Compl. ¶¶ 116–20. While Plaintiffs allege

---

[9] In assessing special relationships, courts consider whether (i) plaintiff was dependent on defendant for protection; (ii) defendant had "superior control over the means of protection"; (iii) the duty is owed to a limited community or the public at large; and (iv) whether the relationship benefitted the party that owed the duty. *In re Accellion*, 713 F. Supp. 3d at 633 (citing *Regents*, 4 Cal. 5th at 620-21).

[10] New York, Massachusetts, and Michigan also narrowly interpret the special relationship doctrine, focusing on whether the relationship involves dependence, control, or intended beneficiary status. *See* Mot. at 14 (citing cases).

MOVATE'S REPLY IN SUPPORT OF TRACK 1 MOTION TO DISMISS

Movate had *access* to their data in order to provide technical support, they do not allege that Movate had control over their data. *See id.* ¶¶ 23, 120, 132–33 (describing Movate's alleged access to customer data). Nor could they. Plaintiffs' own allegations confirm that PowerSchool—not Movate—configured access, chose whether to require multi-factor authentication, controlled logging and IDS/IPS, and decided how to segment and encrypt SIS data. *Id.* ¶¶ 186–204, 209–21.

A duty to protect against third-party criminal acts arises only where the defendant has both superior control and a relationship of dependency. *See Brown*, 11 Cal. 5th at 216, 222 (affirming that United States Olympic Committee did not have a special relationship with victims who were sexually abused by their taekwondo coach, as the Committee lacked the ability to control the coach's conduct). Movate had neither. Accordingly, Plaintiffs' negligence claims must be dismissed with prejudice.

(2)    Plaintiffs' Conclusory Breach Allegations Are Insufficient

Plaintiffs fail to sufficiently allege any breach of duty *by Movate*, as they fail to identify any non-conclusory, specific conduct by Movate that plausibly supports a negligence claim. As Plaintiffs point out, courts may tolerate conclusory allegations of breach under a *res ipsa loquitur* theory where the defendant owned the system or was responsible for implementing security protocols. *See* Opp. at 23. But that inference requires control over the instrumentality of the harm. The Complaint does not identify any specific act or omission by Movate that fell below the applicable standard of care. Instead, it offers conclusory assertions, such as the failure to rotate credentials or train employees without factual support. *See* Compl. ¶ 789.

Again, Plaintiffs rely on cases where defendants directly owned and/or controlled the compromised systems or stored the affected data. *See* Mot. at 23–24. For example, in *Flores-Mendez v. Zoosk, Inc.*, because defendant operated the breached platform and was responsible for its security, the *res ipsa loquitur* doctrine was potentially applicable. 2021 WL 308543, at *1, *4 (N.D. Cal. Jan. 30, 2021); *see also Webb v. Injured Workers Pharmacy, LLC*, 2023 WL 5938606, at *1 (D. Mass.

Sept. 12, 2023) (hackers stole plaintiff's PII from defendant's patient records system, and defendant allegedly failed to implement adequate security protocols); *Hummel v. Teijin Automotive Techs.*, 2023 WL 6149059, at *8 (E.D. Mich. 2023) (plaintiff-employee's PII was stolen from defendant-employer's own patient data systems, which defendant allegedly failed to encrypt); *Toretto v. Donnelley Fin. Sols.*, 583 F. Supp. 3d 570, 581 (S.D.N.Y. 2022) (defendant controlled the breached proxy services platform and was responsible for its allegedly deficient network security). Here, Plaintiffs concede that PowerSchool—not Movate—oversaw PowerSchool's security protocols (Compl. ¶¶ 185–93, 198–203, 209–30), and Movate was merely granted access to PowerSchool's system to provide remote technical support (*id.* ¶¶ 20–21, 23, 120, 132–33). While a breach of a company's own systems may, in some cases, support a *res ipsa* inference—on the theory that the defendant company controlled its own relevant security protocols—that inference cannot be extended to third-party vendors absent sufficient allegations that they caused the breach.[11]

(3)   Plaintiffs Fail to Sufficiently Allege Damages

Plaintiffs fail to adequately allege actual damages, a required element of their negligence claim. As PowerSchool explains in its reply brief, pleading damages requires more than Article III standing; courts routinely dismiss negligence claims in data breach cases even where there is standing. *See Krottner v. Starbucks Corp.*, 406 Fed. App'x 129, 131 (9th Cir. 2010); PowerSchool Reply (Dkt. 360) at 15–16. Plaintiffs rely on speculative harms—such as future risk, lost time, emotional distress,

---

[11] The other cases Plaintiffs cite are similarly distinguishable. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1030–31 (N.D. Cal. 2019) (data breach occurred on defendant Facebook's proprietary platform due to a vulnerability in its internal code); *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *1 (N.D. Cal. Sept. 14, 2016) (defendant-employer controlled the breached database containing employees' W-2s); *Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *1–2 (N.D. Cal. Aug. 9, 2021) (defendant operated the loan servicing platform from which borrower data was exfiltrated and allegedly failed to implement basic cybersecurity protocols).

and diminished data value—but offer no non-conclusory allegations of actual misuse or economic loss. "General allegations of lost time are too speculative to constitute cognizable injury," and emotional distress claims must be supported by facts showing its manifestation. *See Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015); PowerSchool Reply (Dkt. 360) at 16, 18–19.

Plaintiffs also fail to allege any benefit-of-the-bargain or data value loss damages. They do not claim to have paid Movate for services, nor do they allege any economic interest in their data or actual diminution in its value. Plaintiffs fail to allege any "bargain"—they do not allege they paid anything to use the SIS. *See* PowerSchool MTD Reply at 17 (citing *Huynh v. Quora, Inc.*, 2019 WL 11502875, at *10 (N.D. Cal. Dec. 19, 2019)). Likewise, Plaintiffs' diminished data value theory fails because they do not allege the existence of a market and impairment of their ability to participate in it. *See Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614–15 (9th Cir. 2021); PowerSchool MTD Reply at 18–19. Plaintiffs' failure to plead actual damages requires dismissal of their negligence claim with prejudice.[12]

## B.   Negligence *Per Se*

Plaintiffs' negligence *per se* claim fails as a matter of law. The claim remains fundamentally unclear. Any objective reader of Count II (Compl. ¶¶ 799–827) would be at a loss to determine which statutes Plaintiffs claim Movate violated. The issue is not, as Plaintiffs claim, whether they may incorporate allegations from other portions of their 400-plus-page Complaint (Opp. at 27), but whether they have provided adequate notice of the legal basis for their claim against Movate. They have not. To satisfy Rule 8, the Complaint must do more than gesture at several federal statutes without specifying which provisions Movate allegedly violated or how those violations support a negligence *per se* theory under applicable state law.

---

[12] For purposes of this Reply, Movate relies on its prior causation arguments and does not concede this point. Mot. at 16-17. Movate expressly reserves all rights.

Plaintiffs' Opposition confirms this ambiguity. Plaintiffs appear to base their negligence *per se* claim against Movate on alleged violations of HIPAA (Opp. at 27) and the Federal Trade Commission Act (FTCA) (Opp. at 28).[13] While they also reference COPPA and FERPA, they do not allege anywhere in the Complaint that Movate violated either statute. The provisions they cite (Compl. ¶¶ 816–17; *see* Opp. at 29) relate to PowerSchool's conduct and do not identify any statutory duty owed by Movate to Plaintiffs. Plaintiffs' failure to articulate a clear statutory basis for their claim—let alone one that applies to Movate—requires dismissal.

Federal statutes like the FTCA and HIPAA do not create a private right of action and cannot serve as the basis for a negligence *per se* claim under New York law.[14] *See Cohen v. Ne. Radiology, P.C.*, 2021 WL 293123, at 7 (S.D.N.Y. Jan. 28, 2021) (dismissing negligence *per se* claim based on HIPAA or the FTCA, noting "neither the parties nor the Court have identified a single case in [the Second] Circuit that has recognized a private cause of action for negligence per se arises under New York law from violations of HIPAA or the FTC Act"); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1087 (N.D. Cal. 2023) (citing cases dismissing negligence *per se* based on HIPAA and the FTCA); PowerSchool Reply at 21.[15]

---

[13] Plaintiffs do not allege that Movate violated any of the state consumer protection statutes identified in the Complaint (such as the California Unfair Competition Law or the Florida Deceptive and Unfair Trade Practices Act), so these cannot serve as the basis for a negligence *per se* claim against Movate. *See* Mot. at 1 n.2.

[14] Because Plaintiffs have voluntarily dismissed their negligence *per se* claims under California, Massachusetts, and Michigan law without prejudice, the only remaining theory at issue on this Motion is that Movate is *per se* negligent under New York law for purported violations of the FTCA or HIPAA. *See* Dkt. 314.

[15] Plaintiffs cite *Bureerong v. Uvawas* in claiming that their New York law negligence *per se* claim may be premised on statutes that lack a private right of action. 959 F. Supp. 1231, 1237 (C.D. Cal. 1997); *see* Opp. at 28. There, the court considered whether violations of the Fair Labor Standards Act—a statute not at issue here—could support a negligence *per se* claim under California law. *Id.* The court dismissed the
(footnote continued)

Plaintiffs' argument that "[i]t is the tort of negligence, and not the violation of the statute itself, which entitles Plaintiffs to recover" is meritless. Opp. at 28–29. As one New York court explained: "If mere proof of a violation of [the FTCA] . . . were to establish negligence per se, plaintiff would effectively be afforded a private right of action that [the statute] does not recognize." *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 827 (N.Y. Sup. Ct. 2020). Here, Plaintiffs also improperly try to afford themselves a private right of action where none exists.

Accordingly, Plaintiffs' negligence *per se* claim against Movate fails.

C.    Negligent Hiring and Supervision

Plaintiffs' negligent hiring theory fails because they do not allege facts showing that Movate knew or should have known that its employee, Rayson Cruz, posed a risk to the security of PowerSchool's data. The Opposition misstates the applicable standard, which requires a showing that the employer knew or should have known of the employee's propensity to cause the specific harm alleged.

Plaintiffs incorrectly argue that Movate's articulation of the negligent hiring standard is flawed because some of the cited cases were not resolved at the motion to dismiss stage. Mot. at 30 n.17. This misses the point. The standard—that Plaintiffs must allege facts showing the employer knew or should have known the employee posed a risk of the specific harm that occurred—is well-established, and courts routinely dismiss negligent hiring claims at the pleading stage for failure to meet it. *See Lee v. Albarran*, 2024 WL 4987310, at *6–7 (S.D.N.Y. Dec. 5, 2024) (dismissing negligent hiring, retention, and supervision claims under New York law for failure to allege how employer-defendants "knew or should have known about [employee's]

claim as pled but declined to rule that negligence *per se* claims must be dismissed solely because the underlying statute lacks a private right of action. *Id.* at 1237-38. Here, Plaintiffs assert their negligence *per se* claim under New York law (*see* n.14, *supra*), and rely on different statutes—HIPAA and the FTCA—neither of which has been recognized by New York courts as a valid basis for negligence *per se*.

propensity for the conduct that caused Plaintiff's injury prior to the actual injury occurring"); *Palmer v. Alameda Cnty.*, 2019 WL 5626633, at \*4 (N.D. Cal. Oct. 31, 2019) (dismissing California negligent hiring, supervision, and retention claim based on conclusory allegations lacking facts that defendant knew or should have known employee "was incompetent, careless, or otherwise likely to cause injury"); *Brandon v. Quicken Loans, Inc.*, 2021 WL 1015830, at \*3 (E.D. Mich. Feb. 22, 2021), *report and recommendation adopted*, 2021 WL 983135 (E.D. Mich. Mar. 16, 2021) (same under Michigan law); *Doe v. Brandeis Univ.*, 718 F. Supp. 3d 83, 92–94 (D. Mass. 2024) (same under Massachusetts law).

Here, Plaintiffs offer no allegations that Cruz had a history of misconduct or that Movate should have suspected he would be targeted by cybercriminals. The Complaint is silent on any facts suggesting Movate was on notice of a risk specific to Cruz. This failure is dispositive. *See, e.g.*, *Diaz v. Tesla, Inc.*, 598 F. Supp. 3d 809, 832–33 (N.D. Cal. 2022) (employer liable only where it knew or should have known that retaining the employee created a risk of a particular harm and the harm materialized); *Mueller v. Brannigan Bros. Rests. & Taverns LLC*, 323 Mich. App. 566, 574 (Mich. Ct. App. 2018); *Gray v. Schenectady City Sch. Dist.*, 86 A.D.3d 771, 773 (N.Y. App. Div. 2011); *Theisz v. Mass. Bay Transp. Auth.*, 103 Mass. App. Ct. 822, 826 (2024).

Moreover, Plaintiffs' reliance on *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, is misplaced. *See* Opp. at 31. Plaintiffs incorrectly claim that the *Baton* court "allowed plaintiffs' negligent supervision claim to proceed against the customer support services contractor." *Id.* In fact, the *Baton* plaintiffs *did not even assert negligent hiring or supervision causes of action*, so the court could not possibly have permitted these non-existent claims to proceed. *See* Second Amended Class Action Complaint, *Seirafi v. Ledger SAS*, No. 21-cv-02470-EMC, Dkt. No. 111 ¶¶ 231–306, 2023 WL 9511648 (N.D. Cal. Dec. 7, 2023) (asserting causes of action for negligence, negligence *per se*, and violations of California Unfair Competition Law and the California Consumer Legal Remedies Act, and the New York Deceptive Trade Practices Act). The court

17

CASE NO. 3:25-md-3149-BEN-MSB

MOVATE'S REPLY IN SUPPORT OF TRACK 1 MOTION TO DISMISS

addressed only a general negligence claim and did not analyze negligent hiring or supervision. *See Baton*, 740 F. Supp. 3d at 854–57.[16] And, as discussed above, the negligence claim in *Baton* is factually distinct because the breach was intentionally caused by two rogue employees of the subcontractor, which was specifically hired to safeguard customer PII by providing data security consulting services. *See* Section III(A)(1), *supra* (citing *Baton*, 740 F. Supp. at 868–69, 907).[17]

Finally, because Plaintiffs have not sufficiently alleged the elements of their negligence claims (*see* Section III(A), *supra*), their negligent hiring claim fails.

D.   Unjust Enrichment

Plaintiffs' unjust enrichment claims fail because (i) under New York and Massachusetts law, unjust enrichment is unavailable where there is an adequate legal remedy; and (ii) Plaintiffs fail to adequately plead its elements against Movate.

Plaintiffs' unjust enrichment claims are barred under New York and Massachusetts law because they duplicate claims with an adequate legal remedy. *See Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 69 (1st Cir. 2020) ("Under Massachusetts law, plaintiffs with an adequate remedy at law cannot maintain a parallel claim for unjust enrichment, even if that remedy at law is not viable."); *Buoniello v. Ethicon Women's Health & Urology*, 2020 WL 5802276, at *4 (E.D.N.Y. Sept. 29, 2020) (unjust enrichment unavailable where it "simply duplicates" plaintiff's tort claims). Plaintiffs fail to address either case, which squarely address unjust enrichment's availability under those laws when a legal remedy exists. Instead, they cite *Haas v.*

---

[16] Following the parties' meet and confer, Plaintiffs' counsel acknowledged that their Opposition was inaptly worded in characterizing *Baton* as "allow[ing] plaintiffs' negligent hiring claims to proceed . . . ." Rather, *Baton* found plaintiffs' negligent hiring and supervision allegations adequately supported their negligence claim.

[17] Plaintiffs' reliance on *In re Bank of Am. California Unemployment Benefits Litig.*, is misplaced. Opp. at 30-31. There, plaintiffs alleged the defendant never conducted a background check on "hundreds if not thousands of employees" with access to plaintiffs' data—allegations absent here. 674 F. Supp. 3d 884, 926 (S.D. Cal. 2023).

*Travelex Ins. Servs., Inc.*, 555 F. Supp. 3d 970, 980 (C.D. Cal. 2021), which interprets California law and only permits pleading equitable claims in the alternative. But *Haas* does not speak to the substantive bar on unjust enrichment under Massachusetts and New York law where a legal remedy is available. Because Plaintiffs have asserted negligence claims against Movate under New York and Massachusetts law, those claims—however deficient—preclude unjust enrichment under these states' laws

Even if unjust enrichment were available, Plaintiffs fail to adequately plead its elements against Movate. Plaintiffs do not rebut the argument that the Complaint fails to allege how Plaintiffs conferred a benefit on Movate specifically. *See* Mot. at 23; *see also* Compl. ¶ 829–31 (alleging only that "Defendant" or "Defendants" received a benefit). These allegations fail to provide Movate with fair notice required under Rule 8. *See Yu v. Design Learned, Inc.*, 2016 WL 1621704, at *4 (N.D. Cal. Apr. 22, 2016) ("[G]rouping multiple defendants together in a broad allegation is insufficient to provide the defendants with fair notice of the claims against them. . . .").

Plaintiffs argue that they paid money for services that included data management and security. Opp. at 33. But this misstates the standard. Plaintiffs must allege that they conferred a benefit on *Movate* specifically—not on PowerSchool or Bain. *See Wall v. Wescom Cent. Credit Union*, 2024 WL 1158361, at *6 (C.D. Cal. Mar. 18, 2024) ("[A] defendant against whom the claim is brought must have unjustly retained a benefit from the plaintiff."). The Complaint contains no non-conclusory allegations that Movate received any payment, service, or other benefit from Plaintiffs. At most, Plaintiffs allege that Movate was a downstream service provider to PowerSchool. That connection is too attenuated to support an unjust enrichment claim. See *Toretto*, 583 F. Supp. 3d at 601 (dismissing unjust enrichment claim where connection between parties was "too attenuated").[18]

---

[18] Plaintiffs cite *In re Ambry Genetics*, *In re Anthem*, and *Doe v. Meta Platforms,* (footnote continued)

E.    Declaratory Judgment

Plaintiffs' declaratory judgment claim should be dismissed because it is duplicative and not an independent cause of action. Declaratory relief may be a "standalone remedy," but not a standalone cause of action. *See* Opp. at 34; *Jimenez v. OE Fed. Credit Union*, 2025 WL 2402137, at \*9 (N.D. Cal. Aug. 19, 2025) ("[D]eclaratory relief is a remedy and not a standalone cause of action. . . ."). Courts routinely dismiss such claims where adequate legal remedies exist. *See id.* (dismissing declaratory relief cause of action that "merely restate[d] elements of their negligence claim"); *Reyes v. Nationstar Mortg. LLC*, 2015 WL 4554377, at \*8 (N.D. Cal. July 28, 2015) (dismissing plaintiffs' claim for declaratory relief predicated on breach of contract and wrongful disclosure). Plaintiffs' allegations simply restate their negligence claim, making relief duplicative. *Compare* Compl. ¶¶ 770, 772–87, 789, 792–95 *with* Compl. ¶¶ 872–79. The claim should be dismissed.[19]

## IV.    CONCLUSION

For the reasons above and those stated in the Motion, Movate respectfully requests that the Court dismiss all claims against it with prejudice.[20]

---

*Inc.* to support their unjust enrichment theory, but each involved defendants who directly received money or services from plaintiffs. Opp. at 33-34. In *Ambry Genetics*, plaintiffs paid genetic-testing companies for services, alleging part of those payments was for data security defendants failed to provide. 567 F. Supp. 3d 1130, 1138, 1145 (C.D. Cal. 2021). Similarly, in *Anthem*, plaintiffs alleged they paid premiums directly to insurers, who promised to protect their personal information. 2016 WL 3029783, at \*1–3 (N.D. Cal. May 27, 2016). And in *Meta Platforms*, Meta monetized plaintiffs' medical data for its own gain. 690 F. Supp. 3d 1064, 1073–74 (N.D. Cal. 2023).

[19] Movate joins Bain's declaratory judgment argument in its Reply in Support of Motion to Dismiss Consolidated Individual Users Complaint (Dkt. 361) Section II(C).

[20] Because Plaintiffs cannot cure defects in Article III standing, personal jurisdiction, or the core elements of their claims, amendment would be futile. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032–33 (N.D. Cal. 2014) (denying leave and dismissing with prejudice because "doing so would be an exercise in futility").

DATED: November 18, 2025          Respectfully submitted,

BROWN RUDNICK LLP


By:  */s/ Dylan P. Kletter*
　　　DYLAN P. KLETTER
　　　JONATHAN D. WHITE
　　　SAMANTHA J. FLATTERY
　　　RENEE M. MOULTON
　　　Attorneys for Defendant,
　　　MOVATE, INC.