Anne Johnson Palmer
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

Monica Mleczko
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 235-0337
monica.mleczko@ropesgray.com

Christopher M. Young
Justin Van Ligten
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com
justin.vanligten@us.dlapiper.com

*Attorneys for Defendants PowerSchool Holdings, Inc., PowerSchool Group, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>*This Document Relates To:*<br>*All Track Two Actions* | Case No. 25-MD-03149 (BEN) (MSB)<br><br>**REPLY MEMORANDUM IN SUPPORT OF POWERSCHOOL'S OMNIBUS MOTION TO DISMISS THE TRACK TWO COMPLAINTS**<br><br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A<br>Date: TBD<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

Page


INTRODUCTION ........ 1

ARGUMENT ........ 2

I. THE OPPOSITIONS DO NOT SAVE PLAINTIFFS' BREACH OF CONTRACT CLAIMS ........ 2

A. The Class Plaintiffs Have Failed to Meet Their Pleading Burden ........ 3

B. The Direct Plaintiffs' Claims Are Likewise Flawed ........ 4

1. The Direct Plaintiffs Concede That They Have Not Alleged Damages for Each Direct Plaintiff ........ 4

2. The Direct Plaintiffs Do Not Allege Facts Showing a Breach of Any of the Provisions Identified in the DAC ........ 4

a. *The Opposition Does Not Salvage the Breach of Contract Claims Based on Data Security Provisions* ........ 4

b. *The Opposition Confirms the Absence of Any Well-Pled Facts Regarding Vendor Supervision* ........ 5

c. *The Direct Plaintiffs Cannot Sustain a Claim Based on Noncompliance with Applicable Law* ........ 6

d. *The Direct Plaintiffs Do Not Identify Damages Arising from Alleged Breaches of Notification Obligations* ........ 7

C. Plaintiffs Cannot Avoid the MSA's Limitation of Liability Provision, Which Bars Their Claims for Special Damages ........ 8

II. THE ECONOMIC LOSS DOCTRINE BARS THE CLASS AND DIRECT PLAINTIFFS' NEGLIGENCE CLAIMS ................10

A. The Independent Duty Exception to the Economic Loss Doctrine Does Not Apply ....................................................11

B. The Special Relationship Exception to the Economic Loss Doctrine Does Not Apply..............................................14

C. HIPAA and the FTC Act Do Not Sustain Plaintiffs' Negligence and Negligence Per Se Claims..............................15

III. PLAINTIFFS' UNJUST ENRICHMENT COUNTERARGUMENTS MISS THE MARK................................16

IV. THE DIRECT PLAINTIFFS DO NOT IDENTIFY ANY DUTY TO DISCLOSE THAT WOULD SUPPORT THEIR FRAUDULENT CONCEALMENT CLAIM...................................19

V. THE CLASS PLAINTIFFS DO NOT SALVAGE THEIR CFAA CLAIM ..........................................................................20

A. The Class Plaintiffs' Opposition Does Not Save Their Claims under 18 U.S.C. §§ 1030(a)(2)(C) or (a)(5)(C)...........21

B. The Class Plaintiffs Do Not Plausibly Allege That PowerSchool Acted with the Requisite Intent..........................23

C. The Class Plaintiffs Still Have Not Sufficiently Pled Damages or Loss to Sustain their CFAA Claim......................24

VI. THE CLASS PLAINTIFFS CONTINUE TO FAIL TO STATE A CLAIM UNDER CDAFA.....................................................25

VII. THE DIRECT PLAINTIFFS' BIPA CLAIM REMAINS DEFICIENT ..........................................................................26

VIII. THE DIRECT PLAINTIFFS IGNORE MANY OF POWERSCHOOL'S ARGUMENTS ON THE CONSUMER PROTECTION CLAIMS.............................................................27

IX. THE DIRECT PLAINTIFFS' OPPOSITION DOES NOT RESCUE THEIR DATA BREACH NOTIFICATION LAW CLAIMS ....31

X. THERE IS NO THIRD-PARTY INDEMNITY CLAIM THAT WOULD RIPEN THE DIRECT PLAINTIFFS' EXPRESS INDEMNITY CLAIM ....33

XI. THE CLASS PLAINTIFFS' DJA CLAIM REMAINS DUPLICATIVE....34

XII. ANY AMENDMENT WOULD BE FUTILE ....34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) .......... 14

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) .......... 16

*Alaska v. Express Scripts*,
774 F. Supp. 3d 1150 (D. Alaska 2025) .......... 20

*Alfi v. Nordstrom, Inc.*,
2010 WL 5093434 (S.D. Cal. Dec. 8, 2010) .......... 34

*In re Apple Inc. Device Performance Litig.*,
347 F. Supp. 3d 434 (N.D. Cal. 2018) .......... 21, 22

*Apple Inc. v. Allan & Assocs. Ltd.*,
445 F. Supp. 3d 42 (N.D. Cal. 2020) .......... 3

*Arnson v. My Investing Place L.L.C.*,
2013 WL 5724048 (D. Utah Oct. 21, 2013) .......... 17

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 23

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) .......... 7

*Bruton v. Gerber Prods. Co.*,
703 F. App'x 468 (9th Cir. 2017) .......... 16

*Bui-Ford v. Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) .......... 21

*In re Capital One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020) .......... 32

*CIBC, Inc. v. Grande Vill. LLC*,
2015 WL 5723135 (D.N.J. Sept. 29, 2015) .......... 4

*Civic Ctr. Drive Apartments Ltd. v. Southwestern Bell Video Servs.*,
295 F. Supp. 2d 1091 (N.D. Cal. 2003)....................9

*Claridge v. RockYou, Inc.*,
785 F. Supp. 2d 855 (N.D. Cal. 2011)....................25

*Community Bank of Trenton v. Schnuck Mkts., Inc.*,
887 F.3d 803 (7th Cir. 2018)....................10, 13

*Constellation Brands, Inc. v. Keste, LLC*,
2014 WL 6065776 (W.D.N.Y. 2014)....................9

*Corona v. Sony Pictures Ent., Inc.*,
2015 WL 3916744 (C.D. Cal. June 15, 2015)....................32

*Dittman v. UPMC*,
196 A.3d 1036 (Pa. 2018)....................11, 12

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)....................9

*Ewiz Express Corp. v. Ma Lab'ys, Inc.*,
2015 WL 5680904 (N.D. Cal. Sept. 28, 2015)....................22

*First Mercury Ins. v. Great Divide Ins.*,
203 F. Supp. 3d 1043 (N.D. Cal. 2016)....................34

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016)....................25

*Fish Net, Inc. v. ProfitCenter Software, Inc.*,
2011 WL 1235204 (E.D. Pa. Mar. 31, 2011)....................17

*Flores v. Aon Corp.*,
242 N.E.3d 340 (Ill. App. Ct. 2023)....................12

*Foti Fuels, Inc. v. Kurrle Corp.*,
90 A.3d 885 (Vt. 2013)....................28

*Fox v. Iowa Health Sys.*,
399 F. Supp. 3d 780 (W.D. Wis. 2019)....................10

*In re Geico Customer Data Breach Litig.*,
2023 WL 4778646 (E.D.N.Y. July 21, 2023)....28

*In re General Motors LLC Ignition Switch Litig.*,
257 F. Supp. 3d 372 (S.D.N.Y. 2017), *modified on reconsideration*, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017)....17

*Goldstein v. General Motors LLC*,
2022 WL 484995 (S.D. Cal. Feb. 16, 2022)....17

*Gondim L. Corp. v. Micone*,
2025 WL 2019823 (C.D. Cal. Feb. 26, 2025)....4

*Grapevine Educ., LLC v. Educational Ventures, LLC*,
2023 WL 6536237 (S.D. Cal. Aug. 21, 2023)....3

*Griffey v. Magellan Health Inc.*,
562 F. Supp. 3d 34 (D. Ariz. 2021)....19

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*,
171 N.E.3d 1192 (N.Y. 2021)....28

*United States ex rel. Holder v. Special Devices, Inc.*,
296 F. Supp. 2d 1167 (C.D. Cal. 2003)....7

*Ixta v. County. of Ventura*,
2023 WL 9319261 (C.D. Cal. Aug. 17, 2023)....31

*Kalos, LLC v. White House Vill., LLC*,
2024 WL 4579299 (Tenn. Ct. App. Oct. 25, 2024)....17

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*,
2015 WL 1289984 (N.D. Cal. Mar. 20, 2015)....23

*Krantz v. Old Copper Co.*,
2025 WL 2326840 (C.D. Cal. Aug. 11, 2025)....18

*Lynch v. Conley*,
853 A.2d 1212 (R.I. 2004)....29

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)....33

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183 (S.D. Fla. 2022) ........ 29

*Miami Prods. & Chem. Co. v. Olin Corp.*, 546 F. Supp. 3d 223 (W.D.N.Y. 2021) ........ 27

*In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518 (N.D. Ill. 2011) ........ 10

*In re Mondelez Data Breach Litig.*, 2024 WL 2817489 (N.D. Ill. June 3, 2024) ........ 10

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989) ........ 19

*Moorman Mfg. Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982) ........ 10

*In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2176590 (D. Mass. July 31, 2025) ........ 27

*In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2179475 (D. Mass. July 31, 2025) ........ 33

*MyWebGrocer, Inc. v. Adlife Mktg. & Commc'ns Co.*, 383 F. Supp. 3d 307 (D. Vt. 2019) ........ 28

*Novalk, LLC v. Kinsale Ins.*, 2021 WL 4134741 (S.D. Cal. Sept. 10, 2021) ........ 27

*Nowak v. Xapo, Inc.*, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ........ 25

*Omar v. Tabatabai*, 2018 WL 1081466 (Cal. Ct. App. Feb. 28, 2018) ........ 17

*People Express Airlines, Inc. v. Consolidated Rail Corp.*, 100 N.J. 246 (1985) ........ 14

*Perez v. Romantix Online, Inc.*, 2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) ........ 16

*Ponzio v. Mercedes-Benz USA, LLC*,
447 F. Supp. 3d 194 (D.N.J. 2020) .................... 18

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
2017 WL 539578 (D. Or. Feb. 9, 2017) .................... 7

*Prignoli v. Bruczynski*,
2021 WL 4443895 (E.D.N.Y. Sept. 28, 2021) .................... 29

*Rosenbach v. Six Flags Ent. Corp.*,
2019 Il 123186 (2019) .................... 26

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) .................... 34

*Salmon v. CRST Expedited, Inc.*,
2015 WL 1395237 (N.D. Okla. Mar. 25, 2015) .................... 29

*Scheibe v. Esupplements, LLC*,
681 F. Supp. 3d 1101 (S.D. Cal. 2023) .................... 17

*In re Shields Health Care Grp., Inc. Data Breach Litig.*,
721 F. Supp. 3d 152 (D. Mass. 2024) .................... 29

*Smith v. Lifevantage Corp.*,
2020 WL 6940735 (D. Utah Nov. 25, 2020) .................... 17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014) .................... 30

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
533 F.3d 162 (3d Cir. 2008) .................... 11

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .................... 14

*Stichting Pensioenfonds ABP* v. *Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) .................... 10

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
313 F. Supp. 3d 1056 (N.D. Cal. 2018) .................... 24

*Tarlea v. Crabtree*,
687 N.W.2d 333 (Mich. Ct. App. 2004) ........................................................ 8

*Triaxx Prime CDO 2006-1 Ltd. v. U.S. Bank Nat'l Ass'n.*,
2024 WL 1381354 (S.D.N.Y. Mar. 31, 2024) ................................................ 13

*In re U.S. Vision Data Breach Litig.*,
732 F. Supp. 3d 369 (D.N.J. 2024) .............................................................. 30

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
745 F. Supp. 3d 869 (N.D. Cal. 2024) .......................................................... 4

*University Sports Publ'ns Co. v. Playmakers Media Co.*,
725 F. Supp. 2d 378 (S.D.N.Y. 2010) .......................................................... 23

*Universal Prot. Serv., LP v. Coastal Fire & Integration Sys., Inc.*,
2023 WL 4042582 (S.D. Cal. June 15, 2023) ............................................... 24

*Van Buren v. United States*,
593 U.S. 374 (2021) ........................................................................................ 24

*In re Wawa, Inc. Data Sec. Litig.*,
2021 WL 1818494 (E.D. Pa. May 6, 2021) ................................................... 12

*Williams v. Carr*,
68 Cal. 2d 579 (1968) ....................................................................................... 8

*Young v. Greystar Real Est. Partners, LLC*,
2019 WL 4169889 (S.D. Cal. Sept. 3, 2019) ................................................. 21

*Zimmerman v. Highmark, Inc.*,
780 F. Supp. 3d 588 (W.D. Pa. 2025) ............................................................ 13

**Statutes**

18 U.S.C. § 1030(a)(2)(C) ................................................................ *passim*

18 U.S.C. § 1030(a)(5)(C) ................................................................ *passim*

18 U.S.C. § 1030(g) ........................................................................... 23, 25

28 U.S.C. § 1407 ..................................................................................... 4

Cal. Civ. Proc. Code § 3294(c)(3) ............................................................ 8

California Unfair Competition Law ........................................................................26

New York Education Law, § 2-d ................................................................................3

**Other Authorities**

Fed. R. Civ. P. 8(a)........................................................................................4, 6, 31

Fed. R. Civ. P. 9(b) ..............................................................................19, 22, 30, 31

## INTRODUCTION[1]

The Track Two Plaintiffs' Oppositions fail to rescue their claims from the numerous fatal deficiencies identified in PowerSchool's Motion and instead underscore Plaintiffs' kitchen-sink approach to this litigation. Unable to rebut PowerSchool's showing that their complaints fail to allege a breach of contract, Plaintiffs instead attempt to rewrite the parties' contracts in their Oppositions.[2] These efforts fail in multiple respects. The Class Plaintiffs improperly try to amend their breach of contract claims in their Opposition, while the Direct Plaintiffs concede that they do not allege damages for any specific plaintiff and instead resort to improper group pleading. Plaintiffs' claims for special damages are plainly barred by the limitation of liability provisions in the operative contracts, and their belated attempts to conjure allegations of fraud, gross negligence, or willful misconduct to evade these provisions are unsupported by the complaints. And tort law cannot rescue Plaintiffs' negligence claims: the economic loss doctrine, as well as analogous doctrines prohibiting duplicative claims for both breach of contract and negligence, preclude Plaintiffs' negligence claims.

Beyond their contract and negligence claims, Plaintiffs' Oppositions fail to salvage any of their other scattershot claims. Plaintiffs are not individual users whose personal information was involved in the Incident, but instead are entities that contracted with PowerSchool for particular products. They cannot seek an equitable remedy for unjust enrichment where the complained-of conduct falls within the scope of the parties' operative contracts. The Class Plaintiffs also fail to support

---

[1] Capitalized terms not defined below shall have the meaning assigned to them in PowerSchool's Motion to Dismiss the Track Two Complaints (the "Motion" or "Mot."), Dkt. No. 302. Unless otherwise noted, all emphases herein have been added, and all subsequent history, internal citations, and internal quotation marks have been omitted.

[2] Class Opp. and Direct Opp., respectively.

their unprecedented theory of liability under the CFAA and CDAFA, which are anti-hacking statutes targeted at cybercriminals, not *victims* of cyber crime like PowerSchool. As to their fraudulent concealment claims, the Direct Plaintiffs do not meet the heightened pleading standard or identify any duty to disclose. The Direct Plaintiffs' statutory claims remain deficient: they never provided any biometric information to PowerSchool and so have no claim under BIPA, they invoke consumer protection statutes that do not apply, and they fail to allege any delay or damages for their breach notification claims. Finally, the Direct Plaintiffs' express indemnity claims fail: no third-party claim has been brought against Plaintiffs to actually trigger the indemnification provision.

Plaintiffs' efforts to rewrite or evade the plain language in their contracts, and to amend their complaints through their Oppositions, fail. And their attempts to defend their grab-bag of additional claims, all of which are still plainly unsupported by the complaints, fare no better. For all these reasons, PowerSchool respectfully requests that the Court grant its Motion to Dismiss in its entirety.

## ARGUMENT[3]

### I. THE OPPOSITIONS DO NOT SAVE PLAINTIFFS' BREACH OF CONTRACT CLAIMS

Neither the Class Plaintiffs nor the Direct Plaintiffs have adequately alleged a breach of contract. The Class Plaintiffs improperly attempt to amend their CAC in

[3] PowerSchool met and conferred with the Track Two Class and Direct Plaintiffs on September 30, October 15, October 22, October 24, and October 31, 2025 to narrow the issues in PowerSchool's Motion to Dismiss. Following the meet and confers, the parties filed joint motions to dismiss certain causes of action, namely the Class Plaintiffs' California UCL (Count 6) claim, as well as the Direct Plaintiffs' claims under the Computer Fraud and Abuse Act (Count 4) and New York Education Law, § 2-d (Count 23). *See* Dkt. Nos. 362, 373. Pursuant to CMO No. 6, the parties also met and conferred via videoconference for about 25 minutes on November 21, 2025.

their Opposition by identifying contractual provisions that appear nowhere in their pleadings. The Direct Plaintiffs do not contest that they have failed to allege damages and instead resort to a baseless argument that the pleading standard is altered by the procedural vehicle of a master complaint. Further, despite post hoc attempts to recharacterize Plaintiffs' allegations as within the MSA's narrow exceptions for fraud, gross negligence, and willful misconduct, neither complaint can avoid the limitation of liability provision in PowerSchool's contracts that bars Plaintiffs' claims for special damages.

### A. <u>The Class Plaintiffs Have Failed to Meet Their Pleading Burden</u>

The Class Opposition confirms that Plaintiffs' CAC did not identify the contractual provisions at issue, as is required for their breach of contract claim. Class Opp. 7 (submitting the parties' contracts "with highlighting of relevant contractual language and provisions"); Mot. 8–9. None of the Opposition's extensive quotations to PowerSchool's MSAs and DPAs appear anywhere in the CAC. Class Opp. 8. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020). Moreover, the Class Plaintiffs' authorities do not save their claims. In *Grapevine Education, LLC v. Education Ventures, LLC*, the court concluded that the relevant payment provision at issue was clear despite not being expressly pleaded because the plaintiff alleged a failure to pay. 2023 WL 6536237,

---

Plaintiffs' counsel remained unwilling to stipulate to dismissal of any additional claims. There is no apparent dispute on the substantive law applicable to the Motion. The Direct Plaintiffs agree that the transferor court's choice-of-law rules apply, the contractual choice-of-law provisions are enforceable under California law, and their tort claims are governed by the law of each Plaintiff's state of residence. Direct Opp. 5. The Class Plaintiffs do not address choice of law, but, consistent with PowerSchool's position that the law of Plaintiffs' states of residence apply, their Opposition relies on California, New Jersey, and New York law.

at *2–3 (S.D. Cal. Aug. 21, 2023). As to the other cited case, the court allowed a breach of contract claim to proceed based on the party's clear repudiation of the contract. *CIBC, Inc. v. Grande Vill. LLC*, 2015 WL 5723135, at *6 (D.N.J. Sept. 29, 2015). The source of Plaintiffs' breach claim is not obvious in an equivalent manner here. Mot. 9.

### B. The Direct Plaintiffs' Contract Claims Are Likewise Flawed

#### 1. The Direct Plaintiffs Concede That They Have Not Alleged Damages for Each Direct Plaintiff

The Direct Plaintiffs do not dispute that they have not alleged damages for any Direct Plaintiff. Direct Opp. 5–6, 13–15. Instead, they argue that the procedural format of the master complaint relieves them from any requirement to plead their damages. Direct Opp. 12–13. Not so. Black-letter law requires each plaintiff to state the basis of their claim for relief. Fed. R. Civ. P. 8(a); *Gondim L. Corp. v. Micone*, 2025 WL 2019823, at *2 (C.D. Cal. Feb. 26, 2025) ("[T]he plaintiff still must allege a distinct and palpable injury to *himself*, even if it is an injury shared by a large class of other possible litigants." (alteration and emphasis in original)). 28 U.S.C. § 1407 merely affords a means to more efficiently manage multiple actions arising from the same facts; filing a master complaint does not relax the Direct Plaintiffs' pleading burden. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 745 F. Supp. 3d 869, 883 (N.D. Cal. 2024) (master complaint procedure "does not excuse [p]laintiffs from the obligation to plead the facts that are necessary to support their claims").

#### 2. The Direct Plaintiffs Do Not Allege Facts Showing a Breach of Any of the Provisions Identified in the DAC

##### a. *The Opposition Does Not Salvage the Breach of Contract Claims Based on Data Security Provisions*

PowerSchool's Motion addressed why the Direct Plaintiffs fail to allege any breach of the four categories of provisions they identify: data security provisions,

vendor supervision provisions, compliance with laws provisions, and notification provisions. The Opposition mainly reasserts that the occurrence of the Incident, in and of itself, somehow demonstrates a breach of the MSA and DPA, without alleging facts indicating how PowerSchool failed to meet its contractual obligations.

As to the first category, the DAC advances an unsupportable theory that PowerSchool breached data confidentiality provisions when it "allowed" criminal actors to export the Data, thereby allegedly "disclos[ing] the Data to criminal actors." DAC ¶¶ 319, 381, 470, 644, 740, 853, 910, 1040. The Direct Plaintiffs abandon these allegations in their Opposition, instead suggesting that they have identified "numerous provisions" relating to data security and have supplied "allegations that describe how and why PowerSchool did not implement the promised protocols and practices." Direct Opp. 8. The Opposition, however, specifies only a single portion of PowerSchool's contracts—a section within the DPA relating to physical, administrative, and technical safeguards—as the basis for this claim. *Id.* (identifying Section A.1 of Schedule 1-C of the DPA, *see* DAC ¶ 335 and Dkt. No. 302-7, at 10).

The Direct Plaintiffs cite general allegations relating to the alleged absence of multi-factor authentication and encryption, but do not explain how these generalized allegations reflect a breach of PowerSchool's actual contractual obligations with respect to security measures. This failure to identify the actual breach exemplifies the Direct Plaintiffs' scattershot approach to pleading. At a minimum, their claims related to data security should be dismissed to the extent they rely on contractual provisions beyond Section A.1 of Schedule 1-C of the DPA. Direct Opp. 8.

b. ***The Opposition Confirms the Absence of Any Well-Pled Facts Regarding Vendor Supervision***

The DAC does not allege any facts concerning PowerSchool's supervision and vetting of subcontractor Movate, which is fatal to the second category of

contractual provisions that the Direct Plaintiffs invoke. Mot. 13. Their Opposition does not cure this deficiency. The Opposition's few arguments mischaracterize their own pleadings and double down on the incorrect assertion that the mere fact of the Incident itself suffices to establish a breach. Direct Opp. 10. For example, the Direct Plaintiffs claim Paragraph 70 of the DAC alleges that "increased outsourcing in a short period meant that PowerSchool did not bother to supervise or vet its outsourced vendors." In actuality, Paragraph 70 simply asserts that PowerSchool's "critical support functions and infrastructure were increasingly handled by third-party contractors." Likewise, Paragraph 65 of the DAC contains no discussion of supervision or vetting of third-party vendors, and Paragraph 71 offers only the conclusory assertion that contractors operated "outside the direct supervision of PowerSchool's domestic IT department" and "lack[ed] sufficient security training or controls." These statements comprise the sum total of the DAC's allegations regarding PowerSchool's relationship with any third-party vendor. Plaintiffs cannot mask these deficiencies by arguing that they need not plead "specifics" about information within PowerSchool's knowledge. Direct Opp. 10. Their argument misses the point: the DAC does not satisfy Rule 8's notice requirements because it does not contain ***any*** non-conclusory allegations about PowerSchool's supervision of third-party vendors. These breach claims should be dismissed.

#### c. *The Direct Plaintiffs Cannot Sustain a Claim Based on Noncompliance with Applicable Law*

The Direct Plaintiffs take the position that mere allegations that some statute has been violated—without facts showing how the violation occurred, or even an identification of the statute(s) at issue—can support a breach of contract claim based on a provision requiring compliance with applicable laws. *See* Direct Opp. 11. But a breach of contract claim requires more than vaguely claiming that a law has been violated. *See* Mot. 13. The Direct Plaintiffs bring claims based on purported

noncompliance with dozens of statutes, including unspecified state "statutes that impose specific [unstated] requirements." DAC ¶ 584. Neither the DAC nor the Opposition explains how each statute was violated, nor do the Direct Plaintiffs address the core legal principle barring their claims: statutory obligations cannot create contractual obligations where a defendant is required by law to adhere to the statute without consideration from the plaintiff. *Brush v. Mia. Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017). The Direct Plaintiffs' reliance on a False Claims Act case gets them no farther because it rested on whether the defendant had falsely certified compliance with the law to obtain payments, not a breach of contract. *See United States ex rel. Holder v. Special Devices, Inc.*, 296 F. Supp. 2d 1167, 1175 (C.D. Cal. 2003) ("The question of [defendant's] actual compliance is not at issue."). Nor do any of the Direct Plaintiffs' other cited cases support the conclusion that a statutory violation, standing alone, can support a breach of contract claim. *See, e.g.*, *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2017 WL 539578, at *15 (D. Or. Feb. 9, 2017) (allowing breach claim based on data security provision, rather than alleged HIPAA violation).

#### d. ***The Direct Plaintiffs Do Not Identify Damages Arising from Alleged Breaches of Notification Obligations***

As to the final category of contract provisions, relating to PowerSchool's incident response and notice obligations, the Direct Plaintiffs do not identify any damages arising from any claimed delay in notification (rather than from the occurrence of the Incident itself), which is a necessary element of their claims. Mot. 15; Direct Opp. 6 (acknowledging "resulting damage" as a necessary element of claim for breach of contract). Instead of addressing this key deficiency, the Direct Plaintiffs argue that filing a master complaint relieves them of the pleading burden. Direct Opp. 12–13. This argument is unavailing. *See supra* Section I.B.1.

### C. Plaintiffs Cannot Avoid the MSA's Limitation of Liability Provision, Which Bars Their Claims for Special Damages

Both the Class and Direct Plaintiffs concede that they seek special damages that are precluded by the MSA's limitation of liability provision, Section 11.1, which bars recovery of special, consequential, and punitive damages. Class Opp. 11; Direct Opp. 15. In an attempt to circumvent this contractual bar, Plaintiffs instead argue that they have pled the *exceptions* to the limitation of liability, for gross negligence, willful misconduct, or fraud. *Id.* This argument finds no support in either of Plaintiffs' complaints.

The Class Plaintiffs bring no claims for fraud, or any claims premised on willful misconduct or gross negligence. The Class Opposition instead points to allegations that PowerSchool "deliberately allowed its personnel to have broad, unfettered access to the Data despite PowerSchool's contractual restrictions." Class Opp. 11 (citing CAC ¶¶ 7, 46, 88, 153(b)). These paragraphs do not allege any deliberate or willful misconduct and instead assert that PowerSchool failed "to detect or contain the Breach following a series of cost-cutting measures," installed a maintenance access tool "by default" and "in perpetuity," and breached its contractual obligations. None of these allegations permits an inference that PowerSchool fraudulently, grossly, or willfully allowed a cybercriminal access to the data stored in its SIS. *See Tarlea v. Crabtree*, 687 N.W.2d 333, 339 (Mich. Ct. App. 2004) (gross negligence requires "a substantial lack of concern for whether an injury results").[4]

---

[4] *See also* Cal. Civ. Proc. Code § 3294(c)(3) (fraud requires an "intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury"); *Williams v. Carr*, 68 Cal. 2d 579, 584 (1968) (willful misconduct requires "knowledge . . . that serious injury is a probable, as distinguished from a possible, result, or the intentional doing of an act with a wanton and reckless disregard of its consequences").

The Class Plaintiffs' cases do not support a different result and in fact only illustrate how far short their allegations fall. For example, in *Doe v. Meta Platforms, Inc.*, the plaintiffs alleged that Meta intentionally took their data from health care provider portals and monetized it by using it to power targeted advertising. 690 F. Supp. 3d 1064, 1074 (N.D. Cal. 2023). By contrast, Plaintiffs do not (and cannot) allege that PowerSchool took any affirmative steps to permit an attacker to access the data involved in the Incident. Likewise, in *Civic Center*, the plaintiffs presented evidence that the defendant—a provider of satellite video and audio services—intentionally concealed from them that it had installed a cable it knew to be defective and waited a full seven months to notify them. *Civic Ctr. Drive Apartments Ltd. v. Sw. Bell Video Servs.*, 295 F. Supp. 2d 1091, 1100, 1106 (N.D. Cal. 2003). Again, Plaintiffs do not allege that PowerSchool knew its data security supposedly was inadequate, or that PowerSchool took steps to conceal the state of its data security from Plaintiffs.

The Direct Plaintiffs bring a claim for fraudulent concealment, which fails for the reasons set forth in PowerSchool's Motion. Mot. 24–27. The only other allegation they point to baldly asserts that PowerSchool "intentionally failed to perform acts which constitute PowerSchool's duties under contract," and "acted with gross negligence in committing breaches of contract." Direct Opp. 15 (citing DAC ¶ 350). Labeling actions "intentional" and "gross[ly] negligen[t]" does not transform quintessentially negligence-based allegations into willful misconduct or gross negligence. *See Constellation Brands, Inc. v. Keste, LLC*, 2014 WL 6065776, at *6 (W.D.N.Y. 2014). Plaintiffs' breach of contract claims should be dismissed to the extent they seek damages barred by the MSA.

## II. THE ECONOMIC LOSS DOCTRINE BARS THE CLASS AND DIRECT PLAINTIFFS' NEGLIGENCE CLAIMS

The economic loss doctrine prevents a plaintiff from overriding the terms of a contract—and undoing the parties' negotiated allocation of risk—by resorting to tort law to recover purely economic losses. Mot. 17; *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 817 (7th Cir. 2018) (Plaintiffs "are disappointed in the amounts the card networks' contractual reimbursement process provided. That type of tort claim is not permitted . . . ."). Plaintiffs do not dispute that the economic loss doctrine bars their claims in California, New Jersey, Illinois, New Hampshire, Pennsylvania, Arizona, Virginia,[5] and Utah unless one of two narrow exceptions apply—that PowerSchool owed them a duty independent of contract, or the parties had a special relationship giving rise to a duty.[6] *See* Class Opp. 12; Direct Opp. 18. Plaintiffs' allegations do not invoke either exception. Instead, Plaintiffs'

---

[5] The Direct Plaintiffs' Opposition does not address Virginia's or Arizona's economic loss doctrine, so they have waived any arguments as to these states. Direct Opp. 17–19; *Stichting Pensioenfonds ABP* v. *Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment.").

[6] As to Illinois, the Direct Plaintiffs argue the economic loss doctrine has no application because the alleged harm does not qualify as "economic loss." Direct Opp. 17–19. The Direct Plaintiffs misconstrue the concept of "economic loss," cherry-picking language from the seminal case *Moorman Manufacturing Co. v. National Tank Co.*, while ignoring the plethora of subsequent case law extending *Moorman* beyond the products liability context. 91 Ill. 2d 69 (1982); *see also In re Mondelez Data Breach Litig.*, 2024 WL 2817489, at *5 (N.D. Ill. June 3, 2024) (economic loss doctrine applies to the services context because it "provide[s] the ability to comprehensively define a relationship by contract"). The Direct Plaintiffs also ignore cases applying the economic loss doctrine under Illinois law to bar negligence claims based on a data breach incident. *See, e.g.*, *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 794 (W.D. Wis. 2019); *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 528 (N.D. Ill. 2011); *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 821 (7th Cir. 2018).

Opposition repeatedly cites cases involving negligence claims brought by individual users (like the plaintiffs in Track One), rather than customers like the School District Plaintiffs here with a contractual relationship with the defendant. The distinction between end users and customers is critical because the Track One plaintiffs paid no consideration to PowerSchool for any service and had no contractual relationship with PowerSchool. The School District Plaintiffs, by contrast, have contracts with PowerSchool that they allege imposed an obligation upon the Company to secure personal data. Direct Opp. 8; Class Opp. 7–8. The existence of contracts governing the subject matter of Plaintiffs' claims fully supports the application of the economic loss doctrine to bar any attempt to recover in negligence. *See* Mot. 16–17.

### A. __The Independent Duty Exception to the Economic Loss Doctrine Does Not Apply__

Plaintiffs argue that the independent duty exception to the economic loss doctrine applies in California, New Jersey, New Hampshire, Pennsylvania, and Utah. *See* Class Opp. 12; Direct Opp. 18. Under this exception, Plaintiffs must identify a duty owed to them that arises separate and apart from the parties' contract. *Id.* They have identified none. Plaintiffs' data breach cases consistently address individual *end users* like the Track One Plaintiffs who had no contract governing the subject matter of their negligence claims—not contracted *customers* like the School District Plaintiffs that have negotiated an allocation of risk with respect to PowerSchool's services.

Plaintiffs' attempt to minimize case law rejecting claims analogous to theirs fails. *See* Mot. 18; Direct Opp. 19; Class Opp. 14–15. Plaintiffs invite the Court to ignore the Third Circuit's ruling in *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162 (3d Cir. 2008) simply because it predates *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018). This argument misses the mark. *Sovereign Bank* addressed a data breach where card-issuing banks brought negligence claims against a retailer seeking

to recover for expenses incurred responding to the incident (much like these Plaintiffs do here). 533 F.3d at 175–78. The Third Circuit applied the economic loss doctrine to dismiss the negligence claims, because the banks sought to recover purely economic losses that were addressed by the parties' shared contractual relationship as members of the Visa network. By contrast, the Pennsylvania Supreme Court's later decision in *Dittman* involved employees who sued their employer for inadequate security measures after their personal information was implicated in a data breach. 196 A.3d at 1047. *Dittman* addressed whether an employer owes a common law duty to its employees to safeguard their personal information. The court did not reach whether the economic loss doctrine applies where two commercial counterparties have entered into a contract addressing the subject matter at issue.[7] Likewise, in *Flores v. Aon Corp.*, the court's consideration of whether Illinois recognizes a duty to safeguard data was limited to user plaintiffs whose personal data allegedly was compromised. 242 N.E.3d 340, 353 (Ill. App. Ct. 2023).

In short, Plaintiffs' cited cases focus on individuals like the Track One Plaintiffs. These decisions provide no basis for the Court to disregard the more

---

[7] The Direct Plaintiffs cite a single Pennsylvania case—*In re Wawa*—for the proposition that the independent duty doctrine applies here. Direct Opp. 21. *Wawa* also involved issuing banks suing a retailer after a data breach for negligence. The *Wawa* court concluded that whether the parties had entered into a contractual relationship was a factual question the court could not resolve on the motion to dismiss and emphasized that the plaintiffs (unlike the School District Plaintiffs here) had not asserted any claim for breach of contract. *In re Wawa, Inc. Data Sec. Litig.*, 2021 WL 1818494, at *3, *5 (E.D. Pa. May 6, 2021). The *Wawa* court concluded it could not "immediately discard" the negligence claim. *Id.* at *5. By contrast, neither PowerSchool nor Plaintiffs dispute that the parties have valid and enforceable contracts that impose certain contractual obligations regarding data security (though, to be sure, PowerSchool challenges whether Plaintiffs have adequately pled a breach of those obligations).

salient case law addressing claims brought by parties like the School District Plaintiffs with a pre-existing contractual relationship with the defendant addressing the subject of data security. *See* Mot. 18 (citing *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 499 (1st Cir. 2009); *Cmty. Bank of Trenton*, 887 F.3d at 817). Plaintiffs fail to identify any case, in any jurisdiction, where a court has found that a common law duty to safeguard information exists where a customer entity enters into a services contract with the defendant. And courts that have considered whether the economic loss doctrine applies in this context have consistently found that it does. Mot. 17–18.

Plaintiffs argue that PowerSchool owed them a supposedly independent common law duty to safeguard data because they "owned" the Data at issue. Class Opp. 16; Direct Opp. 20–21. But Plaintiffs only "owned" the Data in the limited sense created and specified by contract. MSA § 3.1 ("Customer is and will remain the sole and exclusive owner of all right, title and interest in and to all Customer Data . . . ."). The Data was and is the personal information of the parents, students, and teachers who used the SIS. None of Plaintiffs' cited cases recognizes a common law duty to safeguard the sensitive data *of third parties*. Class Opp. 17; Direct Opp. 21. It is axiomatic that a "negligence plaintiff must show that the defendant owed a duty to it, not to non-parties capable of enforcing their own rights." *Triaxx Prime CDO 2006-1 Ltd. v. U.S. Bank Nat'l Ass'n*, 2024 WL 1381354, at *15 (S.D.N.Y. Mar. 31, 2024). And beyond their conclusory say-so of an independent duty, Plaintiffs do not identify any obligations that PowerSchool owes to them apart from the contract. There are no allegations in the CAC or DAC—or any argument in the Oppositions—that PowerSchool was required to do anything pursuant to a tort duty it was not already obligated to do by contract. *See, e.g.*, *Zimmerman v. Highmark, Inc.*, 780 F. Supp. 3d 588, 602–03 (W.D. Pa. 2025) (exceptions to economic loss

doctrine only apply where common law duty "goes beyond a contractual duty"). The only duty PowerSchool owed Plaintiffs was specified in the parties' contracts, a duty dependent on the terms of that agreement and that would not have existed otherwise. The parties' contractual relationship here squarely supports application of the economic loss doctrine.

### B. **The Special Relationship Exception to the Economic Loss Doctrine Does Not Apply**

The Class Plaintiffs also assert that the special relationship exception to the economic loss doctrine applies, yet their own cases confirm that it does not. Class Opp. 18–19. The special relationship exception does not "involve a breach of contract claim between parties in privity," but instead involves "tort claims by innocent third parties" "at the hands of negligent defendants *with whom no direct relationship existed*." *People Express Airlines, Inc. v. Consol. Rail Corp.*, 100 N.J. 246, 256 (1985) (cited Class Opp. 18). There is no dispute that PowerSchool and Plaintiffs are in privity. The Class Plaintiffs identify no New Jersey, New York, or California data breach case in which a court found a special relationship between a data processor and its contracted customers. Class Opp. 18–20. *Accellion*, for example, found a special relationship between a software provider with a file transfer technology and users who were "required to provide PII that is then transferred by" the company. *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 633 (N.D. Cal. 2024). Unlike here, the *Accellion* defendants argued that no contractual privity existed between the plaintiffs and the defendants. *Id.* at 634. Likewise, in *Stasi v. Inmediata Health Group Corp.*, the court concluded that a special relationship existed between a data processor and *patients* whose medical data was compromised—another case without privity between the parties. 501 F. Supp. 3d 898 (S.D. Cal. 2020); Class Opp. 19. The Court should decline Plaintiffs' invitation

to recognize a novel and unprecedented special relationship exception to the economic loss doctrine.

Finally, the Class Plaintiffs suggest that they need not demonstrate a special relationship under New York law, because New York does not recognize the economic loss doctrine in data breach cases. Class Opp. 18. But in New York, a negligence claim cannot be maintained where it is duplicative of a breach of contract claim. Mot. 19. Plaintiffs suggest that their negligence and breach of contract claims are not "based on the same misconduct" and "for the same injury" because PowerSchool had independent *duties* to safeguard Plaintiffs' information. Class Opp. 15; *see* Direct Opp. 18–19. Plaintiffs do not contest that the underlying alleged facts, conduct, and injury at issue are the same; the only difference they identify between their negligence and breach of contract claims is the purportedly different sources of duties. As addressed above, PowerSchool owed no independent duty to the Track Two School Districts to safeguard the Track One end users' information. Plaintiffs' negligence claims are entirely duplicative of their breach of contract claims and should be dismissed under New York law.

### C. HIPAA and the FTC Act Do Not Sustain Plaintiffs' Negligence and Negligence Per Se Claims

The Direct Plaintiffs do not contest that their negligence per se claims fail if their negligence claim is dismissed. Instead, they seem to assert that violations of federal statutes can satisfy the breach and duty elements of a negligence claim. Direct Opp. 22–23. Likewise, the Class Plaintiffs attempt to save their negligence claims by citing supposed violations of HIPAA and the FTC Act. Class Opp. 21. But the Oppositions confirm that any duty to comply with HIPAA or the FTC Act arose directly from the parties' contracts and thus falls within the ambit of the economic loss doctrine. Direct Opp. 11 (arguing that compliance with "HIPAA and other federal statutes" was incorporated into the parties' contracts). Plaintiffs offer

no precedent to suggest that alleging violations of HIPAA or the FTC Act can support a negligence claim where none otherwise exists. In *In re Ambry Genetics Data Breach Litigation*, for example, the court concluded that the complaint's references to "negligence *per se*" based on alleged violations of HIPAA and the FTC Act could remain, but only after concluding that the plaintiffs had alleged non-economic injuries including anxiety, concern, and unease that fell outside the scope of the economic loss doctrine. 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021). The Oppositions also ignore PowerSchool's argument that HIPAA and the FTC Act cannot form the basis of a negligence per se claim as a general matter (or supply the duty for a negligence claim) because neither statute recognizes a private right of action. *See* Mot. 21–22; Direct Opp. 22. While the HIPAA and the FTC Act may serve as "evidence of industry reasonable standards" that are "relevant" to a negligence claim, Class Opp. 21 & Direct Opp. 22, "relevant" evidence falls well short of stating an independent tort duty or breach, much less a per se claim.

## III. PLAINTIFFS' UNJUST ENRICHMENT COUNTERARGUMENTS MISS THE MARK

*First*, the Class Plaintiffs fail to distinguish the California and New Jersey cases PowerSchool cited rejecting unjust enrichment claims brought as independent causes of action. The Class Plaintiffs' New Jersey case does not address whether unjust enrichment can be brought as a standalone claim. *See* Class Opp. 21–22 (citing *Gaddy v. Long & Foster Cos.*, 2022 WL 22894854, at *12 (D.N.J. Mar. 16, 2022)). And since *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468 (9th Cir. 2017) (unpublished) was decided, California courts have repeatedly dismissed unjust enrichment claims as unavailable under California law. *See, e.g.*, *Perez v. Romantix*

*Online, Inc.*, 2025 WL 3085786, at *4 (N.D. Cal. Oct. 27, 2025) ("[I]n California, [u]njust enrichment is not a cause of action.").[8]

*Second*, Plaintiffs' arguments under New York, Pennsylvania, Tennessee, and Utah law—which require plaintiffs to allege they lack an adequate remedy at law—are unavailing. The Direct Plaintiffs, for their part, argue that "[n]ot all illustrative states require" such an allegation. Direct Opp. 24. But other than citing an Eastern District of Pennsylvania case applying Utah law, they fail to explain which of the illustrative states they contend do not require them to allege they have no adequate remedy at law. In reality, all these states do.[9] The Class Plaintiffs, by contrast, appear to concede that a plaintiff must allege inadequate remedies at law. *See* Class Opp. 22–23. They instead argue that they made such an allegation. *See id.* (citing CAC ¶ 248).[10] But, contrary to their suggestion, simply reciting the words

---

[8] *See also Omar v. Tabatabai*, 2018 WL 1081466, at *2 (Cal. Ct. App. Feb. 28, 2018) ("This court has repeatedly held that unjust enrichment is not a separate cause of action.").

[9] *See In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433–34 (S.D.N.Y. 2017) ("Plaintiffs' only retort is that unjust enrichment may be pleaded in the alternative . . . . But this Court has previously rejected that argument . . . ."), *modified on reconsideration*, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017); *Fish Net, Inc. v. ProfitCenter Software, Inc.*, 2011 WL 1235204, at *10 (E.D. Pa. Mar. 31, 2011) (similar); *Kalos, LLC v. White House Vill., LLC*, 2024 WL 4579299, at *4 (Tenn. Ct. App. Oct. 25, 2024) (similar); *see also Goldstein v. Gen. Motors LLC*, 2022 WL 484995, at *6 (S.D. Cal. Feb. 16, 2022) (similar); *Scheibe v. Esupplements, LLC*, 681 F. Supp. 3d 1101, 1110 (S.D. Cal. 2023) (Benitez, J.) (dismissing claims for equitable relief where the complaint "alleges claims for equitable relief in the alternative but does not plead inadequate legal remedies"). This includes Utah. *See Arnson v. My Investing Place L.L.C.*, 2013 WL 5724048, at *6 (D. Utah Oct. 21, 2013) ("When seeking an equitable remedy, a plaintiff must affirmatively show a lack of an adequate remedy at law on the face of the pleading."); *Smith v. Lifevantage Corp.*, 2020 WL 6940735, at *5 (D. Utah Nov. 25, 2020) (same).

[10] They also point the Court to CAC ¶ 227, but that paragraph appears in the context of the Class Plaintiffs' CDAFA claim.

"inadequate remedies at law" is not enough. *See Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 259 (D.N.J. 2020) (even though plaintiffs "pled a lack of adequate remedy," the complaint "lack[ed] any allegations to support such a conclusion").

*Third*, the Direct Plaintiffs' attempt to plead unjust enrichment "in the alternative" misses the point. Direct Opp. 23–24. It is well established that "a plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid." *Krantz v. Old Copper Co.*, 2025 WL 2326840, at *11 (C.D. Cal. Aug. 11, 2025). Plaintiffs' contention that "the parties dispute the application of the contract" falls flat. Class Opp. 22; Direct Opp. 24. There are no allegations that the contracts are invalid, unenforceable, or that they do not apply to the relevant subject matter. Nor has PowerSchool advanced any argument to that effect. The existence of a contract containing data privacy and security obligations requires dismissal of the unjust enrichment claims, *see* Mot. 23, and Plaintiffs' cited cases do not compel a different result.

*Finally*, the Oppositions do not identify any benefit that PowerSchool supposedly received from Plaintiffs that would be unjust for PowerSchool to retain when PowerSchool was the victim of a cyberattack. The Direct Plaintiffs fail to address PowerSchool's argument, *see* Mot. 23–24, that they have not adequately alleged that they conferred a benefit that would be unjust for PowerSchool to retain, *see* Direct Opp. 23–25. The Class Plaintiffs argue that "PowerSchool was unjustly enriched by receiving money for data maintenance and security that it did not provide." Class Opp. 23. But they can hardly contend that PowerSchool "did not provide" data security. That PowerSchool was the victim of a cyberattack does not establish otherwise, particularly when Plaintiffs themselves allege that data breaches

are common. *See* DAC ¶ 40. Even companies with the "best" data security cannot guarantee perfection. *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 51–52 (D. Ariz. 2021) (dismissing plaintiff's argument that "[b]ecause there was a data breach, [the defendant's] data security must have been inadequate").

## IV. THE DIRECT PLAINTIFFS DO NOT IDENTIFY ANY DUTY TO DISCLOSE THAT WOULD SUPPORT THEIR FRAUDULENT CONCEALMENT CLAIM

To plead fraudulent concealment, the Direct Plaintiffs must allege that PowerSchool had a duty to disclose its allegedly deficient data security practices and its supposedly improper use of data. Mot. 26–27. The Direct Plaintiffs concede that their allegations of such a duty must arise separately from contract, yet they fail to identify where any duty to disclose could arise from. Direct Opp. 26. None of their cases recognizes a duty to disclose on the part of a contracting party in circumstances like this case.

The Direct Plaintiffs likewise concede that the heightened Rule 9(b) pleading standard applies. Direct Opp. 25. They admit their pleadings lack the requisite particularity and instead ask the Court to apply a "relaxed" pleading standard. *Id*. at 25–26. The Direct Plaintiffs' claim fails even under their proffered standard. In the case they cite, the Ninth Circuit held that the plaintiffs had failed to meet the "relaxed" standard where the allegedly misleading prospectuses were "not specifically identified as to content, date or author," and the complaint did "not specify which plaintiff received which prospectus, or which plaintiff(s) made purchases through the stockbroker defendants, or which securities the investors allegedly purchased." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Like the *Moore* plaintiffs, the Direct Plaintiffs do not allege where, when, or how PowerSchool took affirmative steps to conceal any information from any Direct Plaintiff. Nor do the Direct Plaintiffs explain where, when, or how the

supposedly concealed information could or should have been disclosed to them.

The Direct Plaintiffs' other cited cases do not help their cause. The *Express Scripts* plaintiffs provided more detailed allegations regarding the defendants' affirmative steps to conceal the information at issue, such as allegations that they "manipulat[ed] and distort[ed] public information, knowledge, and facts," "hid[] the true nature of its relationships with the Opioid Enterprise Manufacturers," and "enter[ed] into overly broad confidentiality agreements with entities in the supply chain with whom it contracted." *Alaska v. Express Scripts*, 774 F. Supp. 3d 1150, 1165 (D. Alaska 2025). By contrast, the Direct Plaintiffs merely proclaim that PowerSchool "failed to disclose" information about the alleged tracking and monitoring activities, without pleading facts that would suggest that PowerSchool took affirmative acts to conceal any information from them. Direct Opp. 26. The fraudulent concealment claim should be dismissed.

## V. THE CLASS PLAINTIFFS DO NOT SALVAGE THEIR CFAA CLAIM

The Direct Plaintiffs have voluntarily dismissed their CFAA claim. *See* Dkt. No. 362. The Class Plaintiffs nonetheless continue to advance a claim under the anti-hacking statute. Their Opposition argues that (1) PowerSchool accessed Data without authorization in violation of 18 U.S.C. § 1030(a)(5)(C) because authorization was "premised on 'ill-gotten consent'" and (2) if PowerSchool had authorization, the Company exceeded that authorized access by accessing Data beyond what was permitted in the contracts, namely "unencrypted information," in violation of § 1030(a)(2)(C). Class Opp. 25–27. Both arguments fail.[11]

[11] PowerSchool also joins and incorporates here the arguments Bain sets forth in its Reply (filed contemporaneously on November 26, 2025) with respect to the CFAA claim, which fail as to PowerSchool for the same reasons.

**A. The Class Plaintiffs' Opposition Does Not Save Their Claims under 18 U.S.C. §§ 1030(a)(2)(C) or (a)(5)(C)**

*First*, the Class Plaintiffs' claims under 18 U.S.C. §§ 1030(a)(2)(C) and (a)(5)(C) require *actual access*, which Plaintiffs fail to plausibly allege. The Class Plaintiffs emphasize that PowerSchool allegedly maintained a "maintenance access tool . . . that allows PowerSchool's customer support team full, direct access to unencrypted customer databases." Class Opp. 26 (citing CAC ¶ 46). But it is not enough that PowerSchool simply *had access* to the Data. The plain language of the CFAA requires more.[12] *See* 18 U.S.C. §§ 1030(a)(2)(C) ("intentionally accesses a computer without authorization or exceeds authorized access"), 1030(a)(5)(C) ("intentionally accesses a protected computer without authorization").

*Second*, the Class Plaintiffs seek to extend § 1030(a)(5)(C) of the CFAA well beyond its intended reach by suggesting that if PowerSchool accessed the Data with authorization, any consent was "ill-gotten." The Class Plaintiffs do not cite a single case in which a court found that a plaintiff had stated a claim under § 1030(a)(5)(C) because the defendant had obtained unauthorized access through some sort of "ill-gotten consent." Indeed, Class Plaintiffs' cited cases ***dismissed*** the § 1030(a)(5)(C) claim. *See Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *4 (N.D. Cal. Feb. 20, 2024); *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 452–53

[12] To the extent the Class Plaintiffs contend in their Opposition that, unbeknownst to them, PowerSchool accessed "protected computers" to "insert[] the Backdoor Tool," that argument lacks any foundation in the CAC. Class Opp. 26–27. The Class Plaintiffs allege that PowerSchool "installed" the maintenance access tool "as part of the PowerSchool installation." CAC ¶ 46. Put differently, Plaintiffs' own allegations indicate that the PowerSource customer support portal had always contained a maintenance access tool within it, not that PowerSchool somehow accessed one of the Class Plaintiff's own computer systems to install a tool without their knowledge or consent. "Mere conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Young v. Greystar Real Est. Partners, LLC*, 2019 WL 4169889, at *3 (S.D. Cal. Sept. 3, 2019) (Benitez, J.).

(N.D. Cal. 2018). Nor are the theoretical circumstances referenced in *In re Apple* present here. There are no plausible allegations that PowerSchool "posed as someone else or blatantly misdescribed the nature of [a product or update] in order to gain access."[13] *In re Apple*, 347 F. Supp. 3d at 452–53. The Class Plaintiffs offer only conclusory allegations that "PowerSchool concealed the backdoor access tool," CAC ¶ 196, which is belied by their own allegations that the tool was utilized by PowerSchool's "customer support team" to provide support *to its customers*, CAC ¶ 46.

*Finally*, with respect to their claim under § 1030(a)(2)(C), the Class Plaintiffs purport to point the Court to various provisions of the DPAs that restrict PowerSchool's access to "unencrypted information." Class Opp. 28. But none of these provisions restrict access in the way the Class Plaintiffs claim. These provisions refer generally to "limitations on access" and the use of "encryption technology to protect Protected Information," *e.g.*, Class Opp. 28 (quoting Dkt. No. 302-4, at 5 (N.Y. DPA § 5(d))), but nowhere do they point to any contractual provisions indicating that PowerSchool did not have any access whatsoever to "unencrypted information" stored on PowerSchool's own database. There can be no plausible allegation that PowerSchool did not have authorization to access the Data. *See* Mot. 30; MSA § 3.2 ("Customer hereby grants all such rights and permissions in or relating to Customer Data to PowerSchool, its subprocessors and the PowerSchool personnel as are necessary to provide, perform and deliver the Services."). Where, as here, the defendant has "full access to the database," "any

[13] To the extent the Class Plaintiffs' CFAA claim is based on an alleged "course of fraudulent conduct," as their Opposition seems to suggest, Rule 9(b) applies, which the Class Plaintiffs do not attempt to satisfy. *See Ewiz Express Corp. v. Ma Lab'ys, Inc.*, 2015 WL 5680904, at *5 (N.D. Cal. Sept. 28, 2015).

[CFAA] claim based on [the defendant's] conduct" is "foreclose[d]." *Univ. Sports Publ'ns Co. v. Playmakers Media Co.*, 725 F. Supp. 2d 378, 385 (S.D.N.Y. 2010).

Contrary to the Class Plaintiffs' contentions, the CFAA is, at bottom, an anti-hacking statute. *See Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, 2015 WL 1289984, at *4 (N.D. Cal. Mar. 20, 2015) ("CFAA violations require a person to engage in the hacking."). As such, "the en banc Ninth Circuit has favored an interpretation of the statute that maintains the CFAA's focus on hacking." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 129 (N.D. Cal. 2020). If sustained, the Class Plaintiffs' CFAA claim would extend the CFAA far beyond its intended reach.

**B. <u>The Class Plaintiffs Do Not Plausibly Allege That PowerSchool Acted with the Requisite Intent</u>**

The Class Plaintiffs argue that, because PowerSchool's authorization was "ill-gotten" and/or because PowerSchool exceeded its authorized access by accessing "unencrypted information," the intent element is automatically satisfied. Class Opp. 29–30. Their theories fail for the reasons just addressed and also because the Opposition does not point to any factual allegations that would permit an inference of intent.[14] At most, the Class Plaintiffs contend that PowerSchool "stood to directly profit from" such access and therefore had a "strong incentive" to do so. Class Opp. 30; CAC ¶ 195(a) (alleging that PowerSchool's "PowerBuddy" tool "create[ed] every financial incentive for PowerSchool to loosen access restrictions, improve data aggregation, and reduce privacy protections"). Alleging improper motive is plainly

---

[14] With respect to § 1030(a)(2)(C) in particular, the Class Plaintiffs argue that "negligence is all that is required under [the statute]." Class Opp. 30. They are wrong: § 1030(a)(2)(C) only prohibits intentional access. *See* 18 U.S.C. § 1030(a)(2)(C) ("***intentionally*** access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] information from any protected computer"); *see also* 18 U.S.C. § 1030(g) ("No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.").

insufficient. *See Van Buren v. United States*, 593 U.S. 374, 378 (2021) ("[The CFAA] does not cover those who . . . have improper motives for obtaining information that is otherwise available to them."). Conspicuously absent from the CAC are any allegations that PowerSchool actually did access the Data, let alone that it did so intentionally.

### C. The Class Plaintiffs Still Have Not Sufficiently Pled Damages or Loss to Sustain Their CFAA Claim[15]

The Class Plaintiffs try to skirt their obligation to allege damage and/or loss under the CFAA by arguing that their allegations need not be "particularly detailed." Class Opp. 31. But they have provided no detail whatsoever, instead offering threadbare assertions. *See* CAC ¶ 207; Class Opp. 30–32. As courts have consistently held, "[a] mere conclusion of damage or loss is insufficient." *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1070 (N.D. Cal. 2018).

Equally important, the injuries the Class Plaintiffs plead resulted from a cybercriminal's actions, not PowerSchool's supposed unauthorized access. *See* Class Opp. 31 (alleged injuries include "*the cost of responding to the Data Breach*, conducting damages assessments, restoring SIS data [to] its condition prior to the Data Breach"). To bring a claim under the CFAA, the plaintiff must suffer "damage or loss *by reason of a violation of this section*." 18 U.S.C. § 1030(g). Because the Class Plaintiffs do not allege damage or loss resulting from PowerSchool's "access," their CFAA claim must be dismissed. *Universal Prot. Serv., LP v. Coastal Fire & Integration Sys., Inc.*, 2023 WL 4042582, at *9 (S.D.

---

[15] In footnote 20 of their Opposition, the Class Plaintiffs seem to argue that PowerSchool did not "raise any argument" regarding a supposed "distinction" between the harm that must be pled for a § 1030(a)(2)(C) claim and the harm that must be pled for a § 1030(a)(5)(C) claim. Class Opp. 30 n.20. It is not clear what the Class Plaintiffs are referencing. PowerSchool's Motion nowhere states that to succeed on a § 1030(a)(2)(C) claim, a plaintiff must allege both damage ***and*** loss.

Cal. June 15, 2023) (dismissing CFAA claim because plaintiff "fail[ed] to factually allege what damages its actual computers or computer systems or computer networks suffered as a result of [d]efendants' access").

## VI. THE CLASS PLAINTIFFS CONTINUE TO FAIL TO STATE A CLAIM UNDER CDAFA

The Class Plaintiffs argue that because their CFAA claim should survive, their CDAFA claim should too. *See* Class Opp. 32–33. The CDAFA claim fails for the reasons just covered in Section V. The Class Plaintiffs' only cited case to support their CDAFA claim is completely inapposite here. In *Facebook, Inc. v. Power Ventures, Inc.*, the plaintiff sent the defendants a cease-and-desist letter that unambiguously "revoked authorization for *any* access" to plaintiff's website. 844 F.3d 1058, 1068 (9th Cir. 2016) (emphasis in original). The Class Plaintiffs do not allege that PowerSchool received any communications from the Class Plaintiffs revoking authority to access the Data. Nor do Plaintiffs allege that PowerSchool "without permission took, copied, and made use of [Class Plaintiffs'] data." *Id.* at 1069. The Class Plaintiffs do not cite a single case in which the victim of a cyberattack has been held liable under CDAFA—nor is PowerSchool aware of any such case.

The Class Plaintiffs also contend that the *Nowak* and *Claridge* cases cited by PowerSchool are factually distinguishable because, there, "unrelated third parties had committed violations of the CDAFA or CFAA." Class Opp. 33. The same is alleged here: the CAC alleges that "hackers gained access to the SIS and exfiltrated unencrypted data belonging to the School Districts." CAC ¶ 1. What the Class Plaintiffs attempt to portray as a distinguishing factor is precisely what makes *Nowak* and *Claridge* applicable. *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011); *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020). The Class Plaintiffs' CDAFA claim fails.

## VII. THE DIRECT PLAINTIFFS' BIPA CLAIM REMAINS DEFICIENT

The Direct Plaintiffs lack standing to sue under BIPA, as they do not (and cannot) allege that they provided any biometric data to PowerSchool. The Direct Plaintiffs' suggestion that their status as customers of PowerSchool renders them "persons aggrieved" with respect to the Track One user plaintiffs' biometric data is wrong. Direct Opp. 28. In their cited case, *Rosenbach v. Six Flags Entertainment Corp.*, the court concluded that a Six Flags passholder whose minor son's fingerprint was collected for entry into a theme park was a "person aggrieved" for purposes of BIPA. 2019 IL 123186, at *663 (2019). The "customer" in *Rosenbach* was a natural person who claimed a personal privacy interest in their own, or their son's, biometric data. *Rosenbach* affirms that BIPA "vests individuals and customers the right to control their [own] biometric information," Direct Opp. 28, and hardly suggests that an entity may bring a BIPA claim for a violation of *some other person's* right to control their biometric information, Mot. 34.

Additionally, BIPA applies only to entities "in possession of" an individual's biometric data. Mot. 34. The Opposition merely parrots a conclusory recitation of elements and does not engage with the case law making clear that allegations that a mobile app used biometric identifiers for Face ID or equivalent technologies to enable logins do not create an inference that PowerSchool is "in possession of" biometric data. Mot. 34 (citing *G.T. v. Samsung Elecs. Am., Inc.*, 742 F. Supp. 3d 788, 796 (N.D. Ill. 2024)). Critically, the Direct Plaintiffs, like the *Samsung* plaintiff, offer no allegations that any biometric data "is sent to any centralized [defendant-controlled] repository or database, or that [the defendant] can access the data on individual devices." *Id.* The Direct Plaintiffs' BIPA claim should also be dismissed for failure to plead that PowerSchool obtained any biometric data.

## VIII. <u>THE DIRECT PLAINTIFFS IGNORE MANY OF POWERSCHOOL'S ARGUMENTS ON THE CONSUMER PROTECTION CLAIMS</u>

The Class Plaintiffs voluntarily dismissed their claim under the California Unfair Competition Law and bring no other consumer protection claims. *See* Class Opp. 2, n.2. The Direct Plaintiffs fail to rebut any of PowerSchool's arguments for dismissal of their consumer protection claims. *See* Mot. 35–43.

*First*, the Opposition fails to explain how the Direct Plaintiffs' allegations satisfy the requirement in several states that the SIS product be for personal, family, or household use. The Direct Plaintiffs acknowledge that the Rhode Island and Virginia consumer protection statutes impose such a "personal, family, or household use" requirement.[16] *See* Direct Opp. 29–31. The Direct Plaintiffs attempt to portray themselves as "consumers" by asserting that they are "the vector through which persons, families, and households use PowerSchool's products." *Id.* at 31. The argument that, because PowerSchool's software holds information regarding students and their families, school districts that use that software for their operations as school districts are "consumers," is illogical. The *MOVEit* court rejected a nearly identical argument. *See In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2176590, at *29 (D. Mass. July 31, 2025) (software purchased to help universities

---

[16] The Direct Plaintiffs do not address Utah's consumer protection statute, so they have waived any argument that their claim is not subject to dismissal because SIS is not used for personal, family, or household use. *See Novalk, LLC v. Kinsale Ins.*, 2021 WL 4134741, at *2 (S.D. Cal. Sept. 10, 2021) (Benitez, J.) (addressing waiver); *see also Mia. Prods. & Chem. Co. v. Olin Corp.*, 546 F. Supp. 3d 223, 235 (W.D.N.Y. 2021) (dismissing claim under Utah's statute where product at issue was not purchased for "primarily personal, family, or household purposes").

and other institutions "engage in [their] own business or commercial enterprise" was not for personal, family or household purposes).[17]

With respect to the New York GBL § 349 claim, the Direct Plaintiffs cite *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E.3d 1192, 1197 (N.Y. 2021), and contend that § 349 does not require that the plaintiff be a consumer. *See* Direct Opp. 29–30. But as *Himmelstein* notes, one element of a § 349 claim is that "the defendant's conduct was consumer-oriented"; "what matters is whether the defendant's allegedly deceptive act or practice is *directed to the consuming public and the marketplace*." *Himmelstein*, 171 N.E.3d at 1197–98. PowerSchool's statements regarding its data security were not "directed to the consuming public" but rather its school district clients. Indeed, the Direct Plaintiffs allege as much in their Complaint. DAC ¶ 533 ("PowerSchool made affirmative misrepresentations *to the New York Districts* . . . ."); *see also In re Geico Customer Data Breach Litig.*, 2023 WL 4778646, at *17 (E.D.N.Y. July 21, 2023) (dismissing § 349 claim where the plaintiffs had "not alleged that the

[17] With respect to the Vermont statute, the Direct Plaintiffs contend that "businesses [have] the same rights as other consumers." Direct Opp. 30. But the Direct Plaintiffs ignore that "[t]he VCPA addresses transactions that take place in commerce," which means that "the practice must have a potential harmful effect on the consuming public, and thus constitute a breach of a duty owed to consumers in general." *MyWebGrocer, Inc. v. Adlife Mktg. & Commc'ns Co.*, 383 F. Supp. 3d 307, 314 (D. Vt. 2019); *see Foti Fuels, Inc. v. Kurrle Corp.*, 90 A.3d 885, 892 (Vt. 2013) ("whether the transaction was in commerce" is a "threshold inquiry"). The DAC identifies no consumer-facing conduct, and PowerSchool does not make the SIS available to the general public. While the Incident might have impacted "the people of Vermont whose children attend public schools," DAC ¶¶ 624–25, PowerSchool's alleged misrepresentations were not directed at them. As such, the Direct Plaintiffs have not alleged sufficient facts to show that the transaction at issue occurred "in commerce." *Foti Fuels*, 90 A.3d at 894 (finding that the "parties' transaction does not constitute a transaction in commerce" at least in part because the "plaintiff held his offer out to defendant only, not the public at large").

statement about GEICO's security measures was made available to consumers in any form"). The Court need not accept the Direct Plaintiffs' generic recitation otherwise. *See* DAC ¶ 542. "When a plaintiff makes only conclusory allegations of impact on consumers at large, a GBL § 349 claim must be dismissed." *Prignoli v. Bruczynski*, 2021 WL 4443895, at *7 (E.D.N.Y. Sept. 28, 2021).

*Second*, the Direct Plaintiffs' cases support—rather than contradict—PowerSchool's argument that the Oklahoma and Rhode Island safe harbor provisions bar their claims. *See Salmon v. CRST Expedited, Inc.*, 2015 WL 1395237, at *6 (N.D. Okla. Mar. 25, 2015) (rejecting plaintiff's argument that "the mere regulation of conduct by a federal agency does not place the defendant's conduct within the statutory exemption from liability under the OCPA"); *Lynch v. Conley*, 853 A.2d 1212, 1215–16 (R.I. 2004) (affirming dismissal of RIDTPA claim where conduct at issue was already "comprehensively regulated by the state and federal government"). Because the Direct Plaintiffs contend that PowerSchool's actions are governed by HIPAA and the FTC Act, *see, e.g.*, DAC ¶¶ 26, 159, 176–80, and the Oklahoma and Rhode Island consumer protection statutes expressly exempt claims based on actions governed by regulatory bodies, their claims under these statutes should be dismissed. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1216–17 (S.D. Fla. 2022) (OCPA) ("the relevant inquiry is not whether federal law governs deceptive misrepresentations by healthcare providers," but rather "whether the actions or transactions underlying those misrepresentations are regulated under laws administered by a federal agency"); *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 165–66 (D. Mass. 2024) (RIDTPA).

*Third*, the Direct Plaintiffs largely ignore PowerSchool's argument that the alleged misrepresentations are inactionable aspirational statements, as well as its

argument that most of the statutes at issue—Arizona, Idaho, New Hampshire, New York, South Carolina, Tennessee, Utah, Vermont, Virginia, Washington, and Wisconsin—require a causal link between the alleged misrepresentation and their claimed injury, and/or reliance on the allegedly deceptive conduct. Mot. 41–42, 41 n.28. Rather than address the numerous cases PowerSchool identified regarding causation and reliance, *see* Mot. 41, n.28, the Direct Plaintiffs' only response is that "no claim requires proof of scienter, reliance, and injury," Direct Opp. 33–34 (quoting *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 769 (C.D. Ill. 2020)). Contrary to Plaintiffs' suggestion, *Perdue* does not hold that the relevant consumer protection statutes do not require "reliance." The Direct Plaintiffs make no effort to engage with PowerSchool's state and statute-specific case law.

The Direct Plaintiffs instead argue that PowerSchool "fail[ed] to show—as it must—that Plaintiffs' claims sound in fraud" and therefore that Rule 9(b) applies. Direct Opp. 33. As PowerSchool argued, the consumer protection claims rely heavily on assertions that PowerSchool made misrepresentations and omissions about its data security practices and procedures.[18] Allegations that a party misrepresented its data practices sound in fraud. *See In re U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d 369, 379–82 (D.N.J. 2024) (applying Rule 9(b) to consumer protection claims based on allegations that defendants "made deceptive omissions . . . by failing to inform [p]laintiffs . . . that [d]efendants would not adequately secure [p]laintiffs' . . . PII/PHI"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 993–96, 1005 (S.D. Cal.

[18] *See, e.g.*, DAC ¶¶ 1017–20 (Arizona), 680–82 (Idaho), 440–46 (Illinois), 779–81 (New Hampshire), 532–37 (NY GBL § 349), 548–53 (NY GBL § 350), 1081–85 (Oklahoma), 832–35 (Rhode Island), 489–92 (South Carolina), 715–19 (Tennessee), 360–64 (Utah), 615–21 (Vermont), 954–58 (Virginia), 1144–48 (Washington), 397–401 (Wisconsin).

2014) (similar). As such, Rule 9(b) applies, and the Direct Plaintiffs have failed to satisfy its heightened pleading standards.[19]

*Finally*, PowerSchool argued in its Motion that to state a claim based on unlawful, unfair, or unconscionable conduct under several of the statutes, a plaintiff must allege that the defendant's conduct (i) offends established public policy; (ii) is "immoral, unethical, and oppressive"; or (iii) is substantially injurious to consumers, Mot. 42–43, to which the Direct Plaintiffs responded that "[n]ot all of the [statutes] require" such a pleading, Direct Opp. 34. Setting aside that PowerSchool itself acknowledged that this argument did not apply to *all* of the Consumer Protection Claims, nowhere do Plaintiffs identify which statutes they contend lack such a requirement. The Direct Plaintiffs fail to oppose PowerSchool's argument regarding their failure to allege unlawful, unfair, or unconscionable conduct. *See Ixta v. County. of Ventura*, 2023 WL 9319261, at *7 (C.D. Cal. Aug. 17, 2023) (plaintiff waived counterarguments by failing to "meaningfully respond to . . . arguments" in his opposition brief).

## IX. THE DIRECT PLAINTIFFS' OPPOSITION DOES NOT RESCUE THEIR DATA BREACH NOTIFICATION LAW CLAIMS

The Direct Plaintiffs do not overcome the grounds PowerSchool offered for dismissal of the Direct Plaintiffs' claims under the New Hampshire, Virginia, and Washington Notification Laws: (1) they do not allege facts indicating they were injured by any supposed delay in notice, and (2) they do not plausibly allege that PowerSchool's notification was unreasonably delayed. *See* Mot. 44–46.

*First*, the Notification Law claims indisputably require damages. *See* Mot. 45–46. The Direct Plaintiffs argue that they have alleged injuries in the form of "increased regulatory and statutory compliance costs, increased remediation and

[19] As PowerSchool argued in the Motion, the Direct Plaintiffs' allegations do not satisfy Rule 8(a) either. *See* Mot. 40.

mitigation costs, operational disruption, and costs of strengthening security systems following the Data Breach." Direct Opp. 37.[20] While the Virginia and Washington School Districts make that allegation, *see* DAC ¶¶ 977, 1166, the New Hampshire School Districts do not, *see* DAC ¶ 794. None of these Plaintiffs adequately pleads any damages actually arising from a delay in notification. They do not allege any facts that would plausibly explain how a ten-day "delay" in notification could result in, for example, "increased regulatory and statutory compliance costs" or "reputational harm with tangible consequences." Direct Opp. 37. The cases they cite do not compel a different result. Those decisions involve users like the Track One Plaintiffs identifying an injury attributable to the alleged delay in notification, with more elaboration than the Direct Plaintiffs offer here. *See, e.g.*, *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 417 (E.D. Va. 2020) (claiming "additional monitoring costs that [the plaintiff] would not have otherwise taken" had he been notified sooner). The Court need not accept the Direct Plaintiffs' conclusory and unsupported allegation that the ten-day "delay" in notification injured them. *See Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at *5 (C.D. Cal. June 15, 2015) (finding "implausible any argument that Sony's alleged delay in notification proximately caused any of the economic injury").

*Second*, the Direct Plaintiffs do not rebut PowerSchool's argument that its supposed ten-day delay is unreasonable. The only case they offer is *Capital One*. There, the plaintiff alleged that "it took [the defendant] approximately four (4) months to realize that there had been a breach." *Capital One*, 488 F. Supp. 3d at 416. PowerSchool notified customers within ten days, including four weekend days, New Year's Eve, and New Year's Day.

---

[20] The Direct Plaintiffs cite paragraph 495 of the DAC to support this assertion. *See* Direct Opp. 37. But paragraph 495 contains no such assertion; it pertains only to the South Carolina School Districts. *See* DAC ¶ 495.

PowerSchool identified multiple cases in which courts dismissed the notification law claim, finding that even longer delays in notification were reasonable as a matter of law. *See* Mot. 44–45 (citing cases). The Direct Plaintiffs argue that "none of [these cases] address claims that share similar features to Plaintiffs'," but they fail to explain which "features" are different or why those differences matter. Direct Opp. 37. In reality, these cases are highly comparable because they rejected arguments similar to those raised here. *See, e.g.*, *In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2179475, at *27 (D. Mass. July 31, 2025) (refusing to "take at face value [plaintiff's] assertion that the delay was unreasonable"). The Notification Law claims should therefore be dismissed in full.

**X. <u>THERE IS NO THIRD-PARTY INDEMNITY CLAIM THAT WOULD RIPEN THE DIRECT PLAINTIFFS' EXPRESS INDEMNITY CLAIM</u>**

PowerSchool moved to dismiss the express indemnity claim for a straightforward reason: the MSA's indemnification provision requires a claim "brought by a third party," Mot. 47, and the Direct Plaintiffs identify none. The Direct Plaintiffs respond that this MDL is a "pending action in which primary liability is being adjudicated" that creates a ripe indemnity dispute. Direct Opp. 35 (quoting *In re Waikiki Hobron Assocs.*, 13 B.R. 700, 703 (Bankr. D. Haw. 1981)). Their argument is nonsensical. This MDL will adjudicate the "primary liability" of PowerSchool to the Direct Plaintiffs and the Track One Plaintiffs, not the Direct Plaintiffs' liability to any third-party claimant.

The Direct Plaintiffs cite *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), to support their claim that "Plaintiffs should not have to wait for a lawsuit to clarify their rights to indemnification." Direct Opp. 35–36. *MedImmune* simply recognizes that a plaintiff need not affirmatively expose itself to liability to create a case or controversy—for example, by breaching a license agreement before seeking a declaratory judgment that the agreement is invalid or unenforceable. *MedImmune*,

549 U.S. at 130. The Direct Plaintiffs need not affirmatively take any such steps, and they can seek indemnification if a third-party claim materializes and there is a finding of liability. *See First Mercury Ins. v. Great Divide Ins.*, 203 F. Supp. 3d 1043, 1053–54 (N.D. Cal. 2016).

## XI. THE CLASS PLAINTIFFS' DJA CLAIM REMAINS DUPLICATIVE

The Class Plaintiffs argue that their DJA claim seeks prospective relief, which sets it apart from their other claims. Unlike the cases they cite, the Class Plaintiffs seek similar prospective relief under other causes of action. *See* CAC ¶¶ 209 (CFAA), 225 (CDAFA). "Requests for declaratory judgment orders that merely impose the remedies provided for in other claims are duplicative and may be dismissed on that basis." *Alfi v. Nordstrom, Inc.*, 2010 WL 5093434, at *4 n.4 (S.D. Cal. Dec. 8, 2010) (Benitez, J.). So, too, here.

## XII. ANY AMENDMENT WOULD BE FUTILE

Dismissal should be with prejudice in light of the fundamental defects in the Complaints: Plaintiffs are unable to allege basic elements of their claims.[21] Because Plaintiffs cannot cure these defects via amendment (and have not specified what allegations they would offer to do so), dismissal should be with prejudice. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

---

[21] Both the Direct and Class Plaintiffs have had ample time since the start of this MDL to amend their pleadings, which both sets of Plaintiffs have already done at least once. *See* Dkt. No. 263 (CAC); Dkt. No. 288 (DAC).

Dated: November 26, 2025

*/s/ Christopher M. Young*
Christopher M. Young
Justin Van Ligten
DLA PIPER LLP (US)
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com
justin.vanligten@us.dlapiper.com

Anne Johnson Palmer
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

Monica Mleczko
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 235-0337
monica.mleczko@ropesgray.com

*Attorneys for Defendants PowerSchool Holdings, Inc. and PowerSchool Group, LLC.*

**CERTIFICATE OF SERVICE**

I certify that on November 26, 2025, I filed the foregoing Reply Memorandum in Support of PowerSchool's Motion to Dismiss the Track Two Complaints with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ Christopher M. Young*
Christopher M. Young