John P. Carlin (NY 3031887)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

R. Rosie Vail (SBN 317977)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Dylan O. Smith (NY 5846076)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
jschutte@paulweiss.com
dosmith@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant Bain Capital, L.P.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION

Case No. 3:25-md-3149-BEN-MSB

MDL No. 3149

**DEFENDANT BAIN CAPITAL, L.P.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE SCHOOL DISTRICT AMENDED PUTATIVE CLASS ACTION COMPLAINT AND THE SCHOOL DISTRICT DIRECT ACTIONS FIRST AMENDED MASTER CONSOLIDATED COMPLAINT (TRACK 2)**

Date: TBD
Time: TBD
Ctrm.: 5A
Judge: Hon. Roger T. Benitez

# TABLE OF CONTENTS


**Page**

PRELIMINARY STATEMENT ........................................ 1

ARGUMENT ........................................ 4

I. DIRECT ACTION PLAINTIFFS FAIL TO PLEAD ALTER EGO LIABILITY ........................................ 4

A. Direct Action Plaintiffs Fail to Allege a Unity of Interest and Ownership ........................................ 5

B. Direct Action Plaintiffs Fail to Allege an Inequitable Result from Recognizing Corporate Separateness ........................................ 10

II. EACH OF PLAINTIFFS' DIRECT LIABILITY CLAIMS FAIL ........................................ 11

A. Intentional Interference with Contractual Relations (Class Action Count 2; Direct Action Count 7) ........................................ 12

B. Computer Fraud and Abuse Act (Class Action Count 4) and California Comprehensive Data Access and Fraud Act (Class Action Count 5) ........................................ 17

C. Class Action Plaintiffs' Remaining Group-Pled Counts Fail to State a Claim ........................................ 21

1. Negligence (Class Action Count 3) ........................................ 22

2. Unjust Enrichment (Class Action Count 7) ........................................ 25

3. Declaratory Judgment Act (Class Action Count 8) ........................................ 26

III. PLAINTIFFS FAIL TO ALLEGE THAT BAIN IS SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA, NEW JERSEY, OR NEW YORK ........................................ 27

A. Class Action Plaintiffs Fail to Allege Personal Jurisdiction Over Bain ........................................ 27

B. Direct Action Plaintiffs Also Fail to Allege Personal Jurisdiction Over Bain .......... 31

C. Jurisdictional Discovery Is Unnecessary Because It Would Not Alter the Jurisdictional Analysis .......... 32

CONCLUSION .......... 33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Sayegh Bros. Trading (LLC)* v. *Doral Trading & Export, Inc.*, 219 F. Supp. 2d 285 (E.D.N.Y. 2002) .......... 10

*Alert Enter., Inc.* v. *Rana*, 2023 WL 2541353 (N.D. Cal. Mar. 16, 2023) .......... 19

*Alfus* v. *Pyramid Tech. Corp.*, 745 F. Supp. 1511 (N.D. Cal. 1990) .......... 19

*Am. Fuel Corp.* v. *Utah Energy Dev. Co.*, 122 F.3d 130 (2d Cir. 1997) .......... 4

*Am. Inst. of Intradermal Cosms., Inc.* v. *Soc'y of Permanent Cosm. Pros.*, 2013 WL 1685558 (C.D. Cal. Apr. 16, 2013) .......... 32

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) .......... 23

*Apple Inc*. v. *Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42 (N.D. Cal. 2020) .......... 8

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009) .......... 17

*Astiana* v. *Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) .......... 25

*Axiom Foods, Inc.* v. *Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017) .......... 29

*Bui-Ford* v. *Tesla, Inc.*, 2024 WL 694485 (N.D. Cal. Feb. 20, 2024) .......... 20

*Cal. Dep't of Toxic Substances Control* v. *NL Indus.*, 2021 WL 5933140 (C.D. Cal. Oct. 13, 2021) .......... 10, 11

*Calder* v. *Jones*,
465 U.S. 783 (1983) .......... 29

*In re Capital One Consumer Data Sec. Breach Litigation*,
488 F. Supp. 3d 374 (E.D. Va. 2020) .......... 26

*City of Reno* v. *Netflix, Inc.*,
52 F.4th 874 (9th Cir. 2022) .......... 26

*Conte* v. *Emmons*,
895 F.3d 168 (2d Cir. 2018) .......... 15

*Contreras* v. *Dowling*,
5 Cal. App. 5th 394 (2016) .......... 20

*Covington* v. *Aryming Asset Mgmt., LLC*,
2025 WL 2654139 (E.D. Cal. Sept. 16, 2025) .......... 28

*Crete* v. *Resort Condominiums Intern., LLC*,
2011 WL 666039 (D.N.J. Feb. 14, 2011) .......... 25

*CrossFit, Inc.* v. *Matrix Sols., LLC*,
2020 WL 6484554 (S.D. Cal. Nov. 4, 2020) .......... 30

*Davis* v. *Wells Fargo Bank N.A.*,
2010 WL 1779927 (E.D. Cal. Apr. 29, 2010) .......... 20

*In re Delta Dental Antitrust Litig.*,
509 F. Supp. 3d 1377 (J.P.M.L. 2020) .......... 31

*DiMuro* v. *Clinique Lab'ys, LLC*,
572 F. App'x 27 (2d Cir. 2014) .......... 25

*Doe* v. *Camp Pendleton & Quantico Hous. LLC*,
2020 WL 1890576 (S.D. Cal. Apr. 16, 2020) .......... 21

*Dollar Tree Stores Inc.* v. *Toyama Partners, LLC*,
2010 WL 1688583 (N.D. Cal. Apr. 26, 2010) .......... 16

*Eclectic Props. E., LLC* v. *Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......... 13

*Est. of Ricardez* v. *Cnty. of Ventura*,
2020 WL 3891460 (C.D. Cal. June 24, 2020) .......... 10

*Ferry* v. *Black Diamond Video, Inc.*,
2016 WL 3381237 (D.N.J. June 14, 2016) .......... 28, 29

*Flores* v. *Evergreen at San Diego, LLC*,
148 Cal. App. 4th 581 (2007) .......... 11

*Gerritsen* v. *Warner Bros. Ent. Inc.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015) .......... 8, 9, 10

*IMO Indus., Inc.* v. *Kiekert AG*,
155 F.3d 254 (3d Cir. 1998) .......... 30

*Kalter* v. *Keyfactor, Inc.*,
2022 WL 658976 (S.D. Cal. Mar. 4, 2022) .......... 29, 31

*Keilholtz* v. *Superior Fireplace Co.*,
2009 WL 839076 (N.D. Cal. Mar. 30, 2009) .......... 25, 26

*Kirby ex rel. Kirby 2014 Tr.* v. *AT&T Corp.*,
2022 WL 17184565 (S.D. Cal. Nov. 23, 2022) (Benitez, J.) .......... 21

*Komaiko* v. *Baker Techs., Inc.*,
2020 WL 1915884 (N.D. Cal. Apr. 20, 2020) .......... 28

*Liberty Media Holding, LLC* v. *Tabora*,
2012 WL 28788 (S.D. Cal. Jan. 4, 2012) .......... 32

*Lisa McConnell, Inc.* v. *Idearc, Inc.*,
2010 WL 364172 (S.D. Cal. Jan. 22, 2010) .......... 10

*Long Side Ventures LLC* v. *Hempacco Co.*,
2023 WL 6386888 (S.D.N.Y. Sept. 29, 2023) .......... 29

*Macpherson* v. *United States*,
2017 WL 766722 (S.D. Cal. Feb. 28, 2017) (Benitez, J.) .......... 27

*McCarthy* v. *Olin Corp.*,
119 F.3d 148 (2d Cir. 1997) .......... 24

*Modisette* v. *Apple Inc.*,
30 Cal. App. 5th 136 (2018) .......... 24, 25

*Navarro* v. *Ski Data*,
2022 WL 18280359 (C.D. Cal. Dec. 7, 2022) .......... 23

*NetApp, Inc.* v. *Nimble Storage, Inc.*,
41 F. Supp. 3d 816 (N.D. Cal. 2014) .......... 18, 19

*Nguyen* v. *Nissan N. Am., Inc.*,
487 F. Supp. 3d 845 (N.D. Cal. 2020) .......... 6

*In re Packaged Seafood Prods. Antitrust Litig.*,
338 F. Supp. 3d 1118 (S.D. Cal. 2018) .......... 9, 10

*Paulsen* v. *CNF Inc.*,
559 F.3d 1061 (9th Cir. 2009) .......... 7

*Philips* v. *Selig*,
959 A.2d 420 (Pa. Super. 2008) .......... 15

*Plasticware, LLC* v. *Flint Hills Res., LP*,
852 F. Supp. 2d 398 (S.D.N.Y. 2012) .......... 13

*PXP Producing Co.* v. *MitEnergy Upstream LLC*,
342 A.3d 402 (Del. Ch. 2025) .......... 9, 10, 11

*Quelimane Co.* v. *Stewart Title Guar. Co.*,
19 Cal. 4th 26 (1998) .......... 15

*Ray* v. *Alad Corp.*,
19 Cal. 3d 22 (1977) .......... 28

*In re Roman Cath. Diocese of Rockville Ctr.*,
652 B.R. 16 (Bankr. S.D.N.Y. 2023) .......... 28

*RSM Prod. Corp.* v. *Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009) .......... 16

*Rutherford* v. *Owens-Illinois, Inc.*,
16 Cal. 4th 953 (1997) .......... 16

*S.M.* v. *Madura*,
223 A.D.3d 486 (N.Y. App. Div. 2024) .......... 8

*Santa Clarita Org. for Plan. & Env't* v. *Castaic Lake Water Agency*,
1 Cal. App. 5th 1084 (2016) .......... 5, 6, 9

*Schwarzenegger* v. *Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 30

*Sears, Roebuck & Co.* v. *Sears plc*,
744 F. Supp. 1297 (D. Del. 1990) .......... 8

*SEC* v. *Hickey*,
322 F.3d 1123 (9th Cir. 2003) .......... 4, 5, 8

*Seoul Laser Dieboard Sys. Co.* v. *Serviform, S.r.l.*,
957 F. Supp. 2d 1189 (S.D. Cal. 2013) (Benitez, J.) .......... 17

*Shih* v. *Starbucks Corp.*,
53 Cal. App. 5th 1063 (2020) .......... 25

*Smahaj* v. *Retrieval-Masters Creditors Bureau, Inc.*,
131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020) .......... 23

*Sonora Diamond Corp.* v. *Superior Ct.*,
83 Cal. App. 4th 523 (2000) .......... *passim*

*Spy Optic Inc.* v. *AreaTrend, LLC*,
2020 WL 1849672 (S.D. Cal. Apr. 13, 2020) .......... 32

*Matter of Star & Crescent Boat Co., Inc.*,
549 F. Supp. 3d 1145 (S.D. Cal. 2021) (Benitez, J.) .......... 27, 30, 31

*Stichting Pensioenfonds ABP* v. *Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) .......... 18, 27

*Ticketmaster L.L.C.* v. *Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) .......... 21

*TNS Holdings, Inc.* v. *MKI Sec. Corp.*,
92 N.Y.2d 335 (1998) .......... 11

*Toho-Towa Co., Ltd.* v. *Morgan Creek Prods., Inc.*,
217 Cal. App. 4th 1096 (2013) .......... 6

*Trademotion, LLC* v. *Marketcliq, Inc.*,
857 F. Supp. 2d 1285 (M.D. Fla. 2012) .......... 20

*Trs. of Vill. of Arden* v. *Unity Const. Co.*,
2000 WL 130627 (Del. Ch. Jan. 26, 2000) .......... 5

*Tucker* v. *CBS Radio Stations, Inc.*,
194 Cal. App. 4th 1246 (2011) .......... 24

*In re U.S. Vision Data Breach Litig.*,
2025 WL 615366 (D.N.J. Feb. 26, 2025) .......... 23

*Vance* v. *Berkshire Hathaway Life Ins. Co. of Neb.*,
2021 WL 1061179 (S.D. Cal. Mar. 18, 2021) (Benitez, J.) .......... 11

*ViaSat, Inc.* v. *Space Sys./Loral, Inc.*,
2012 WL 12844738 (S.D. Cal. July 30, 2012) .......... 8, 10

*Wainberg* v. *Mellichamp*,
93 F.4th 1221 (11th Cir. 2024) .......... 20

*Waldbaum* v. *Laufer Delena Cadicina Jensen & Boyd, LLC*,
2019 WL 4735386 (S.D.N.Y. Sept. 27, 2019) .......... 17

*Wall* v. *Wescom Cent. Credit Union*,
2024 WL 1158361 (C.D. Cal. Mar. 18, 2024) .......... 25, 26

*Waste Mgmt., Inc.* v. *Admiral Ins. Co.*,
649 A.2d 379 (N.J. 1994) .......... 30

*Weinberg* v. *Waystar, Inc.*,
294 A.3d 1039 (Del. 2023) .......... 14, 18

*White Plains Coat & Apron Co., Inc.* v. *Cintas Corp.*,
8 N.Y.3d 422 (2007) .......... 16

*Young* v. *Greystar Real Est. Partners, LLC*,
2019 WL 4169889 (S.D. Cal. Sept. 3, 2019) (Benitez, J.) .......... 14

**Statutes**

18 U.S.C. § 1030 ........ *passim*

Cal. Penal Code § 502 ........ *passim*

28 U.S.C. § 2201 ........ 22, 26

**Other Authorities**

Fed. R. Civ. P. 4 ........ 27, 31

Fed. R. Civ. P. 8 ........ 21

Fed. R. Civ. P. 9(b) ........ 25

Fed. R. Civ. P. 12(b)(5) ........ 27

## PRELIMINARY STATEMENT

Plaintiffs do not dispute that no other court has endorsed their sweeping view of liability, which would hold a private investment firm potentially liable whenever a portfolio company in which it had invested suffers a data breach. The conclusory allegations and tenuous theories Plaintiffs present in their briefs in opposition ("Opposition" or "Opp.") (Dkt. 342, 344) give no reason for why this Court should be the first.[1] Plaintiffs fail to address the obvious deficiencies in the Complaints by ignoring: (1) the glaring inconsistency in the timeline alleged by Plaintiffs related to Bain's supposed control of PowerSchool, both before and at the time the alleged cybersecurity incident began in August 2024; (2) the plain text of the merger agreement, which explicitly confirms that Bain had no ability to control the operations of PowerSchool prior to October 2024; and (3) settled law rejecting their alter ego liability theory and common-law and statutory claims. For the reasons set forth below, all of the claims against Bain should be dismissed.[2]

**Alter Ego Liability**: Following the Track 1 Individual User Plaintiffs' abandonment of their alter ego claims, Direct Action Plaintiffs are the only plaintiffs still pursuing an alter ego theory of liability. But they are unable to identify ***any*** prior instance in which a private investment firm was held liable on an alter ego theory for a data breach suffered by one of its portfolio companies—let alone where such a firm was held liable for alleged acts occurring ***before*** its investment in the

---

[1] All capitalized terms used herein are as defined in Bain's Motion to Dismiss the School District Amended Putative Class Action Complaint and the School District Direct Actions First Amended Master Consolidated Complaint (Track 2) (Dkt. 303) ("Motion" or "MTD").

[2] To facilitate the Court's review of the claims asserted against Bain in this litigation, Appendix A to this Reply Memorandum provides an overview of (1) the theories of vicarious liability and claims raised by Track 1 Individual User Plaintiffs and both groups of Track 2 Plaintiffs; (2) the claims and theories that have been abandoned since Plaintiffs filed their respective complaints; and (3) a summary of the reasons why, for the remaining counts and theories, Track 1 Individual User Plaintiffs and Track 2 Plaintiffs fail to state a claim.

portfolio company. In response to Bain's showing that the alter ego claims asserted by Direct Action Plaintiffs are plainly barred by black-letter law, they either ignore or fail to address the legal and factual deficiencies with their unprecedented theory of liability. Direct Action Plaintiffs utterly fail to show the exceptional circumstances required to pierce the corporate veil and disregard the bedrock principle of corporate separateness. The Court should dismiss the claims alleged under this theory as insufficiently pled.

**Direct Liability Claims**: Both Class Action and Direct Action Plaintiffs continue to pursue claims for intentional interference with contractual relations. But their Oppositions do not identify any factual allegations supporting their theory that Bain somehow directed business decisions at PowerSchool prior to October 1, 2024—when they allege Bain affiliates acquired a 51% stake in PowerSchool—or that any such conduct could have sufficiently caused their alleged injuries. The plain language of the merger agreement expressly provides that Bain had ***no*** right to control PowerSchool prior to October 1, 2024. Instead, Plaintiffs blur the timeline of the critical dates, obfuscating the fact that nearly all the events they allege to support these claims occurred prior to October 1, 2024. Plaintiffs' claims are not saved by their far-fetched attempt to allege that Bain directed PowerSchool through routine interim operating covenants preventing substantial changes to the business in the period between signing and closing—particularly where there is no allegation that Bain even exercised any rights under those covenants.

Class Action Plaintiffs (but not Direct Action Plaintiffs) also continue to pursue claims directly against Bain for alleged violations of the Computer Fraud and Abuse Act ("CFAA"), the California Comprehensive Data Access and Fraud Act ("CDAFA"), negligence, unjust enrichment, and declaratory and injunctive relief. Across all of these counts, Class Action Plaintiffs are unable to point to any specific allegations that Bain committed any act that might incur liability as a matter of law under the statutory or common-law doctrines, or that Bain had a relationship with

Class Action Plaintiffs (whether before or after Bain allegedly assumed an ownership interest in PowerSchool in October 2024) that might create a tort or quasi-contractual duty, or rise to the level of conspiracy under the CFAA or liability for "assisting" a CDAFA violation. Indeed, despite not pursuing a theory of vicarious liability against Bain, Class Action Plaintiffs still rely on allegations of conduct by PowerSchool. This is textbook group pleading that is routinely rejected on a motion to dismiss. Even ignoring that deficiency, Class Action Plaintiffs still fail to state a claim on any of their direct liability counts against Bain.

**No Personal Jurisdiction**: Both sets of Plaintiffs fail to show that the relevant transferor courts would have personal jurisdiction over Bain. Like the Individual User Plaintiffs in Track 1, Plaintiffs here argue that the Court has personal jurisdiction over Bain merely because it is alleged to have engaged in negotiations with a potential portfolio company in a forum. That expansive proposition is inconsistent with due process and ultimately relies on the same conclusory allegations as Plaintiffs use for their flawed theories of liability.

As a last-ditch effort, Plaintiffs seek leave to amend their Complaints or conduct discovery. But no amount of amendments or discovery can fix the deficiencies in the claims they pursue against Bain, because their novel theories of liability and jurisdiction are fatally flawed on their own terms. Plaintiffs seek to expand liability to investment firms for data breaches at portfolio companies—even where the liability is premised on alleged acts that occurred prior to the effective date of the investment. This case is about an alleged data breach of PowerSchool's systems that allegedly began before Bain had any ownership interest in PowerSchool. After hundreds of pages of complaints and briefing, Plaintiffs have given this Court no reason to conclude that it should significantly expand investment firm liability by keeping Bain as a defendant. As explained below and in

PowerSchool's Motion to Dismiss briefing,[3] Bain's motion to dismiss should be granted.[4]

## ARGUMENT

### I. DIRECT ACTION PLAINTIFFS FAIL TO PLEAD ALTER EGO LIABILITY

Following Track 1 Plaintiffs' abandonment of their alter ego theory, Direct Action Plaintiffs now stand alone in pursuing a novel theory of alter ego liability to sustain their claims against Bain.[5] Direct Action Plaintiffs allege the "first incident of unauthorized access" occurred in August 2024, two months ***before*** Bain is alleged to have first acquired an ownership interest in PowerSchool. (*See* Direct Action Compl. ¶¶ 56, 62; *see also* MTD at 5–8). But Direct Action Plaintiffs cannot identify any non-conclusory allegations supporting their argument that Bain somehow controlled PowerSchool before Bain was alleged to have acquired a 51% ownership stake on October 1, 2024, and, critically, Direct Action Plaintiffs do not contest that settled law forecloses any alter ego theory for alleged conduct that occurred before any ownership interest. *See SEC* v. *Hickey*, 322 F.3d 1123, 1130 (9th Cir. 2003) (holding that an entity "must own at least part of a corporation for an alter ego relationship to exist"); *Am. Fuel Corp.* v. *Utah Energy Dev. Co.*, 122 F.3d 130, 134

---

[3] Bain joins PowerSchool's Reply in Support of its Motion to Dismiss, (Dkt. 378), and incorporates all arguments applicable to Bain that are made therein.

[4] Pursuant to Case Management Order No. 6 (Dkt. 289), Bain met and conferred with Class Action Plaintiffs on November 19, 2025, and Bain agreed to no longer pursue its subject matter jurisdiction defense against BRICK Buffalo Academy Charter School after it files a short-form complaint. Bain also met and conferred with Direct Action Plaintiffs on November 20, 2025, and agreed to no longer pursue its subject matter jurisdiction defense against the seven Direct Action Plaintiffs that had not yet filed short-form complaints by the date of Bain's Motion, following the subsequent filing of those short-form complaints. (*See* Dkt. 345–51).

[5] Class Action Plaintiffs have confirmed that they do not allege that PowerSchool is Bain's alter ego. (MTD at 4–5, 17; Ex. A, Dkt. 303-2). Bain reserves all rights to raise arguments addressing an alter ego theory of liability if this argument is raised in the future by Class Action Plaintiffs.

(2d Cir. 1997) (explaining that under New York law, piercing the corporate veil requires that an "***owner*** exercised complete domination over the corporation with respect to the transaction at issue" (emphasis added)); *Trs. of Vill. of Arden* v. *Unity Const. Co.*, 2000 WL 130627, at *3 (Del. Ch. Jan. 26, 2000) (explaining that veil-piercing is available "where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its ***owner***" (emphasis added)); (*see also* MTD at 20) (collecting additional cases). Even putting aside this fatal flaw, Plaintiffs still fail to identify any non-conclusory allegations—before or after October 1, 2024—that are sufficient to satisfy the high bar to plead alter ego liability. *Santa Clarita Org. for Plan. & Env't* v. *Castaic Lake Water Agency*, 1 Cal. App. 5th 1084, 1105 (2016) ("[A] heavy burden rests on the shoulders of the party seeking to pierce the corporate veil."), *as modified on denial of reh'g* (Aug. 16, 2016). As Bain showed in its Motion, Direct Action Plaintiffs have entirely failed to plead either of the two requirements necessary: (1) unity of interest and ownership, and (2) an inequitable result if the separate corporate personalities of the entities are recognized. *Sonora Diamond Corp.* v. *Superior Ct.*, 83 Cal. App. 4th 523, 538 (2000). The Court should therefore dismiss Direct Action Counts 1–3, 5–6, 11–22, and 24–46.

### A. Direct Action Plaintiffs Fail to Allege a Unity of Interest and Ownership

Direct Action Plaintiffs fail to rebut Bain's showing that they have entirely failed to allege that Bain exercised the type of complete and pervasive control over PowerSchool required to plead alter ego liability. Because a company "must own at least a part of a corporation for an alter ego relationship to exist," and Bain is not alleged to have owned any part of PowerSchool prior to October 1, 2024, Direct Action Plaintiffs cannot possibly allege that Bain was PowerSchool's alter ego before that date. *Hickey*, 322 F.3d at 1130. Direct Action Plaintiffs in no way dispute this controlling law, and all allegations of control prior to October 1, 2024, should be disregarded. As to alleged conduct after that date, Direct Action Plaintiffs merely

offer conclusory allegations that Bain "dictated" unspecified business decisions. (MTD at 24–25). Even if the Court were to ignore the fact that Bain is not alleged to have acquired an interest in PowerSchool until October 1, 2024 (which it should not), the generalized and conclusory assertions regarding Bain's alleged control are insufficient as a matter of law to plead alter ego liability. (MTD at 20–24).

In their Opposition, Direct Action Plaintiffs' only alter ego arguments concern two of the eight factors they contend courts consider under California law: whether PowerSchool was (1) a "conduit for the affairs of [Bain]" and (2) undercapitalized. (Direct Action Opp. 18, 20–24). Neither factor supports Direct Action Plaintiffs' alter ego theory because the arguments raised with respect to both factors rest on the aforementioned timeline deficiencies and conclusory allegations. *See Sonora Diamond*, 83 Cal. App. 4th at 538–39.[6]

***First***, Direct Action Plaintiffs do not identify factual allegations sufficient to plead that Bain used PowerSchool as a mere "conduit for its own affairs" at any time. (Direct Action Opp. at 20). Establishing that factor requires well-pled facts that Bain and PowerSchool were "operated with integrated resources in pursuit of a single business purpose." *Toho-Towa Co., Ltd.* v. *Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1109 (2013). But no such shared "single business purpose" could have existed before Bain is alleged to have acquired an investment interest in PowerSchool on October 1, 2024. And, after the transaction became effective, the sparse allegations—an overlap in ownership and the appointment of board members—are insufficient to show that one company is the "mere conduit or instrumentality" of another. *See Santa Clarita Org. for Plan. & Env't*, 1 Cal. App. 5th at 1106.

Direct Action Plaintiffs argue that, before October 1, 2024, Bain was involved

[6] Further, because Direct Action Plaintiffs fail to articulate any argument as to six of the eight factors they name, they abandon any argument as to those factors. *See Nguyen* v. *Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 857 (N.D. Cal. 2020) ("Issues raised in a brief which are not supported by argument are deemed abandoned.").

in high-level engagement on business strategy decisions, including offshoring and workforce reductions. (Direct Action Opp. at 20–21) (citing Direct Action Compl. ¶¶ 59–61, 65, 67–68, 84). Though the Direct Action Opposition omits the dates of the events alleged, the Direct Action Complaint alleges that workforce reductions occurred in August 2024—two months ***before*** Bain allegedly acquired an ownership stake. (Direct Action Opp. at 20; Direct Action Compl. ¶¶ 56, 60–62). During that period, the unambiguous terms of the merger agreement confirm that Bain had no right to control PowerSchool.[7]

Direct Action Plaintiffs' allegations regarding the period following October 1, 2024, fare no better. They assert that Bain took "specific measures that occurred in January 2025," (Direct Action Opp. at 21 & n.2), but cite an allegation in their Complaint relying on an article about PowerSchool's decision to expand its overseas operations written in January 2024—***nine months before*** Bain allegedly acquired a stake in PowerSchool, and five months before Bain affiliates even signed the merger agreement. (Direct Action Compl. ¶ 66 & n.11).[8] Even if Direct Action Plaintiffs had pointed to any conduct by Bain in January 2025, that alleged conduct would have occurred ***after*** the culmination of the cybersecurity incident, which Direct Action Plaintiffs allege was discovered in December 2024. (*See* Direct Action Opp. 2–3; Direct Action Compl. ¶¶ 5, 31). The Court is not "required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *See Paulsen* v. *CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). And

---

[7] *See* Agreement and Plan of Merger by and among BCPE Polymath Buyer, Inc., BCPE Polymath Merger Sub, Inc. and PowerSchool Holdings, Inc., at 64 (June 6, 2024), https://www.sec.gov/Archives/edgar/data/1835681/000119312524157845/d846178dex21.htm ("Merger Agreement").

[8] Direct Action Plaintiffs chide Bain for pointing out that their allegation of offshoring in January 2025 is inaccurate. (Direct Action Opp. at 21 & n.2). But the only article Direct Action Plaintiffs cite in support of their January 2025 allegation is dated January 2024. (Direct Action Compl. ¶ 66 n.11). Direct Action Plaintiffs must know that fact; after all, they included the correct date in their citation. (*Id.*).

Direct Action Plaintiffs do not dispute the controlling law finding that an alter ego relationship cannot exist without an actual ownership interest. *See Hickey*, 322 F.3d at 1130.

Even setting those timeline defects aside, such alleged high-level "financing and macro-management" decisions are plainly insufficient to show a unity of interest. *See ViaSat, Inc.* v. *Space Sys./Loral, Inc.*, 2012 WL 12844738, at *5 (S.D. Cal. July 30, 2012); (MTD at 20–24). Direct Action Plaintiffs' allegations about measures purportedly taken by Bain regarding PowerSchool's business strategy fail to establish that the "extreme remedy" of alter ego liability should be applied here, *see Sonora Diamond*, 83 Cal. App. 4th at 539, or that this is an "exceptional case" in which there are "substantial reasons" for disregarding the corporate form, *see Sears, Roebuck & Co.* v. *Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990).

Direct Action Plaintiffs now also contend that when the merger agreement became effective, Bain appointed new PowerSchool board members and "assumed full responsibility for key decisions related to operations, cybersecurity, and finances," but those assertions are unsupported by any allegation in their Complaint or any document cited therein. (Direct Action Opp. at 20) (citing Compl. ¶¶ 58–61, 67–68, 84). That new argument should be dismissed as an improper attempt to amend the Direct Action Complaint "by the briefs in opposition to a motion to dismiss." *Apple Inc*. v. *Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) (noting the "axiomatic" principle that Plaintiffs cannot make assertions for the first time in an opposition).

Even if those allegations were considered, they merely describe normal-course board-level oversight on business policies that are standard practices among investors—far less than the "manipulative control" required for alter ego liability. *Gerritsen* v. *Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1138 (C.D. Cal. 2015); *S.M.* v. *Madura*, 223 A.D.3d 486, 487 (N.Y. App. Div. 2024) (affirming dismissal where alter ego "allegations of complete dominion over a corporation" were

"conclusory"); *see also PXP Producing Co.* v. *MitEnergy Upstream LLC*, 342 A.3d 402, 417 (Del. Ch. 2025) (explaining that petitioner's claims "fall short of th[e] high bar" required to adequately plead veil piercing). The case law is clear that investment alone is "not sufficient" to plead a unity of interest or ownership. *Santa Clarita Org. for Plan. & Env't*, 1 Cal. App. 5th at 1106 (emphasis omitted); (*see* Direct Action Opp. at 20) (alleging ownership of shares in PowerSchool). Allegations of shared officers or directors are also insufficient, as it is a "normal attribute of ownership" that officers and directors of an investing corporation serve on the entity receiving the investment, *Gerritsen*, 116 F. Supp. 3d at 1138–39, and because courts "presum[e] that each common officer or director wore the appropriate 'hat' when making corporate and operational decisions for the respective entities." *Sonora Diamond*, 83 Cal. App. 4th at 538–39, 548–49. Accepting Direct Action Plaintiffs' theory that an investor can be treated as an alter ego of a portfolio company merely by alleging that an investor's representatives sit on the company's board and participate in board-level decision-making would upend private investment across the country, and Direct Action Plaintiffs have offered no basis for such a drastic step here.

***Second***, the Direct Action Complaint does not sufficiently allege that PowerSchool is undercapitalized. (Direct Action Opp. at 23–24). In their Opposition, Direct Action Plaintiffs acknowledge that undercapitalization requires that a corporation be unable to meet its debts as they come due, but they do not (and cannot) allege that PowerSchool is unable to do so. (*Id.*). Direct Action Plaintiffs point to vague allegations of "financial pressures" upon PowerSchool created by debt. (*Id.* at 24) (quoting Direct Action Compl. ¶ 57). But even where a company "carried a higher debt load post-acquisition than it did pre-acquisition," "the relevant question is whether [the company's] capital was sufficient to 'operate its normal business.'" *See In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1154–55 (S.D. Cal. 2018). Indeed, a "roughly ***ninety percent*** debt to capital

ratio does not demonstrate" undercapitalization. *See id.* (emphasis added). There are no allegations that PowerSchool's debt to capital ratio is anywhere close to that high or that PowerSchool lacks the capital necessary to operate as normal.

Moreover, as explained in Bain's Motion, "undercapitalization alone is not per se sufficient grounds for alter ego liability." (MTD at 25) (quoting *Lisa McConnell, Inc.* v. *Idearc, Inc.*, 2010 WL 364172, at *8 (S.D. Cal. Jan. 22, 2010)). The clear weight of precedent is consistent. *See Cal. Dep't of Toxic Substances Control* v. *NL Indus.*, 2021 WL 5933140, at *1, *5 (C.D. Cal. Oct. 13, 2021) (explaining that undercapitalization is merely one of "a number of factors relevant to" alter ego analysis); *PXP Producing Co.*, 342 A.3d at 417 ("No single factor is determinative."); *Al Sayegh Bros. Trading (LLC)* v. *Doral Trading & Export, Inc.*, 219 F. Supp. 2d 285, 294 (E.D.N.Y. 2002) (holding that undercapitalization, "standing alone, is an insufficient reason to pierce the corporate veil").

In sum, Direct Action Plaintiffs have not (and cannot) point to any allegations that would support an inference that (1) PowerSchool was a conduit of Bain's affairs or that (2) PowerSchool was undercapitalized. Thus, Direct Action Plaintiffs have failed to allege any of the factors California courts rely on to determine a unity of interest or ownership for alter ego liability, let alone pled the required "manipulative control." *Gerritsen*, 116 F. Supp. 3d at 1138. That alone is sufficient to dismiss the alter ego claim against Bain. *See ViaSat*, 2012 WL 12844738, at *5 (dismissing alter ego claims where plaintiffs did not plead "any of the factors that courts traditionally look to in considering whether a unity of interest exists").

### B. Direct Action Plaintiffs Fail to Allege an Inequitable Result from Recognizing Corporate Separateness

Direct Action Plaintiffs also have not sufficiently alleged that injustice would result from recognizing corporate separateness, as is required to pierce the corporate veil. They do not (and cannot) allege any facts of bad faith. *See Est. of Ricardez* v. *Cnty. of Ventura*, 2020 WL 3891460, at *5 (C.D. Cal. June 24, 2020) ("Plaintiffs fail

to allege any facts, undoubtedly because there are none, regarding [bad faith]."); *see also PXP Producing Co.*, 342 A.3d at 417–18 ("Undercapitalization . . . . must be coupled with facts suggesting a deliberate intent to improperly avoid the Company's liabilities or obligations."); *TNS Holdings, Inc.* v. *MKI Sec. Corp.*, 92 N.Y.2d 335, 339–40 (1998) (similar). Instead, Direct Action Plaintiffs reiterate their statements that Bain obtained unidentified "benefits" by virtue of its alleged stake in PowerSchool. (Direct Action Opp. at 26–27) (citing Direct Action Compl. ¶¶ 86, 88–89). That argument is conclusory at best and does not support an inference that it would be inequitable to not pierce the corporate veil. Moreover, if the conclusory allegations and arguments raised in the Direct Action Opposition were sufficient to constitute such an "exceptional circumstance," *NL Indus.*, 2021 WL 5933140 at *3, then piercing the corporate veil would be the rule rather than the "sparingly used" exception, *Sonora Diamond*, 83 Cal. App. 4th at 539; (Direct Action Opp. at 25–27).[9]

## II. EACH OF PLAINTIFFS' DIRECT LIABILITY CLAIMS FAIL

Dismissal of the Direct Action Plaintiffs' alter ego theory leaves only Plaintiffs' direct liability counts: specifically, the intentional-interference counts brought by both sets of Plaintiffs, along with five counts brought by Class Action Plaintiffs. Though there are multiple grounds to dismiss each of these counts,

---

[9] Implicitly acknowledging the deficiencies in their alter ego theory, Direct Action Plaintiffs request leave to amend their Complaint and instead pursue an agency theory of vicarious liability. (Direct Action Opp. at 27–28). But amendment would be "an exercise in futility." *Vance* v. *Berkshire Hathaway Life Ins. Co. of Neb.*, 2021 WL 1061179, at *3 (S.D. Cal. Mar. 18, 2021) (Benitez, J.). As explained in Bain's Reply in Support of its Motion to Dismiss the Consolidated Individual Users Putative Class Action Complaint (Dkt. 361 at 5), any agency argument would have the same incurable flaw: Direct Action Plaintiffs cannot allege that Bain and PowerSchool had a "bilateral" agreement that PowerSchool would act "on [Bain's] behalf and subject to [Bain's] control." *Flores* v. *Evergreen at San Diego, LLC*, 148 Cal. App. 4th 581, 587–88 (2007). Rather than allow yet another round of briefing on a fruitless second amended complaint, the Court should simplify these proceedings by dismissing the claims against Bain with prejudice.

Plaintiffs' claims share a common defect: the Complaints' allegations of an arms-length negotiation and standard provisions in a transaction agreement do not support any claim for direct liability against Bain or indicate that any of the alleged injuries were proximately caused by Bain's purported conduct.

### A. Intentional Interference with Contractual Relations (Class Action Count 2; Direct Action Count 7)

The only direct-liability count brought by both Class Action and Direct Action Plaintiffs is for intentional interference with contractual relations. Plaintiffs' repetition of their Complaints' conclusory allegations that Bain supposedly "directed" actions at PowerSchool, when it had no ability to do so, or took "steps" to reduce PowerSchool's cybersecurity personnel, when it was merely a potential contractual counterparty, are plainly insufficient to state a claim. (Class Opp. at 17; Direct Action Opp. at 30).

In their Oppositions, Plaintiffs focus on their allegations regarding Bain's conduct ***before*** it is alleged to have acquired a 51% stake in October 2024. (*See* Class Opp. at 17–18) (alleging acts "beginning in August 2022," "[a]fter executing the Merger Agreement" in June 2024, and occurring "in August 2024"); (*see also* Direct Action Opp. at 30) (referencing allegations of acts "after the Merger Agreement" in June 2024). But the merger agreement confirms that Bain and its affiliates did ***not*** have a "right to control" PowerSchool after the agreement was signed, let alone to direct any of its actions.[10] Plaintiffs respond to this point by arguing that Bain had control under the agreement's standard interim operating covenants, which provided that PowerSchool would not initiate certain business changes prior to the transaction's effective date without its counterparty's consent.[11] (Class Opp. at 18; *see also* Direct Action Opp. at 30). Apart from Plaintiffs' failure to allege that any such approval right was exercised or "unreasonably withheld,

[10] *See* Merger Agreement, *supra* n.7, at 64.

[11] *See id.* at 57–60.

conditioned or delayed,"[12] their theory would drastically expand liability by making investment companies potentially liable each time a potential or current portfolio company makes changes to its workforce or cost structure. (*See* MTD at 32). This cannot be the law. Because Plaintiffs fail to allege each of (i) intentional procurement of a breach of contract, (ii) actual breach, (iii) causation, and (iv) damages, *see Plasticware, LLC* v. *Flint Hills Res., LP*, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012), Plaintiffs' intentional interference counts should be dismissed with prejudice.

***Intentional Procurement of a Breach***. Plaintiffs' Oppositions do not rebut Bain's showing that Plaintiffs have entirely failed to adequately allege that Bain procured a breach of PowerSchool's contracts with the school districts, let alone did so intentionally. (*See* MTD at 29–32). Instead, the Oppositions restate Plaintiffs' arguments that Bain somehow directed various business decisions at PowerSchool when it had no power to do so, relying on alleged events occurring ***before*** October 2024. (Class Opp. at 16–19; Direct Action Opp. at 29–32). Plaintiffs have no answer to their self-defeating timeline or the text of the merger agreement, which confirms that no Bain affiliate had the ability to control business decisions at PowerSchool prior to October 2024. And Plaintiffs still do not identify any specific alleged acts taken by Bain after October 2024 that could support their allegations of intentional interference. (*See* Class Opp. at 16–19; Direct Action Opp. at 29–32).

***First***, Plaintiffs argue that Bain directed various personnel and cost measures at PowerSchool, primarily relying on conclusory allegations of conduct predating the alleged acquisition of a 51% stake on October 1, 2024. (Direct Action Opp. at 30; Class Opp. at 17). Those arguments are bereft of specific factual allegations indicating any direction from Bain. *See Eclectic Props. E., LLC* v. *Marcus & Millichap Co.*, 751 F.3d 990, 998–99 (9th Cir. 2014) (declining to "accept the

---

[12] *See id.* at 57.

conclusory assertions" raised by plaintiffs on a motion to dismiss). Further, the merger agreement plainly does not authorize Bain to direct PowerSchool's actions; instead, that agreement explicitly states that "[p]rior to the Effective Time" of October 1, 2024, the Bain entities did not have a "right to control or direct the business or operations of [PowerSchool]."[13] *Weinberg* v. *Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023) (stating that where contract language is "unambiguous," courts "will give effect to the plain meaning of the contract's terms and provisions").

Resisting that unambiguous meaning, Class Action Plaintiffs instead point to generic covenants providing that between the merger agreement's signing in June 2024 and its October 2024 effective date, PowerSchool would not take certain actions to change the business's status quo, unless its counterparty agreed to the measures, as required by law, or as otherwise provided in the agreement.[14] (Class Opp. at 18; *see also* Direct Action Opp. at 30). Yet those covenants do not confer on Bain the right to direct any PowerSchool business decisions; they are typical normal-course provisions of complex corporate transactions, not specific evidence of intentional interference with *these* contracts. In any event, neither set of Plaintiffs identifies any purported "direction" from Bain to PowerSchool pursuant to these covenants or otherwise, or any additional act by which Bain could have interfered with PowerSchool's contracts with school districts.

As to the period after October 1, 2024, Plaintiffs still do not allege any specific acts taken by Bain that interfered with PowerSchool's contracts with school districts. Instead, they merely point to general allegations that Bain directed PowerSchool's activity. (*See* Class Opp. at 16–19; Direct Action Opp. at 29–32). Such conclusory allegations are insufficient to allege interference with contract. *See Young* v. *Greystar Real Est. Partners, LLC*, 2019 WL 4169889, at *3 (S.D. Cal. Sept. 3, 2019)

---

[13] *See id.* at 64.

[14] *See id.* at 57–59.

(Benitez, J.) (explaining that "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss").

***Second***, even if Plaintiffs' allegations were sufficient to indicate interference with contracts (they are not), Plaintiffs still do not plead that Bain "purposefully intended" to cause PowerSchool "to breach a particular contract," *Conte* v. *Emmons*, 895 F.3d 168, 172 (2d Cir. 2018), or that Bain knew that "interference [was] certain or substantially certain to occur as a result of [its] action," *Quelimane Co.* v. *Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998). In their Oppositions, Plaintiffs contend they alleged that Bain intended for PowerSchool to breach its contracts with school districts because Bain supposedly directed PowerSchool to pursue various actions (though as explained *supra*, these allegations are self-contradictory or conclusory) and that Bain knew PowerSchool had data security provisions in contracts with school districts. (Direct Action Opp. at 30; Class Opp. at 17–18). Allegations that Bain knew of PowerSchool's security obligations, or that Bain encouraged cost reductions or personnel changes, do not indicate that those alleged actions were done "for the specific purpose of" harming Plaintiffs. *Philips* v. *Selig*, 959 A.2d 420, 429 (Pa. Super. 2008).

Plaintiffs incorrectly contend that their conclusory allegations that Bain caused a breach of contract are sufficient to plead that the purported interference was improper or lacked a legitimate business purpose. (Class Opp. at 19; Direct Action Opp. at 30–32).[15] Courts do not infer impropriety from a breach of contract, standing alone. Rather, entities with a "legitimate business purpose" are justified in pursuing

[15] Direct Action Plaintiffs' unfounded contention that Bain's purported conduct was unjustified and improper because it "demonstrate[d] a purposeful attempt . . . to profit Bain and . . . its other, recently acquired company, Outsourcing, Inc.," (Direct Action Opp. at 31), should be disregarded. Direct Action Plaintiffs only cite to a single allegation about Bain's acquisition of Outsourcing, Inc.—not that Bain ever directed PowerSchool to use that company, or that the two entities had any business relationship. (Direct Action Compl. ¶ 67). That Direct Action Plaintiffs even make this argument only emphasizes the weakness of their intentional interference claim.

courses of action that may result in another party breaching a contract. *Dollar Tree Stores Inc.* v. *Toyama Partners, LLC*, 2010 WL 1688583, at *4 (N.D. Cal. Apr. 26, 2010) (granting motion to dismiss a tortious interference claim where the complaint revealed the defendant acted with a "legitimate business purpose"); *see*, *e.g.*, *White Plains Coat & Apron Co., Inc.* v. *Cintas Corp.*, 8 N.Y.3d 422, 426 (2007) (collecting cases recognizing a justification in inducing a breach where a party has a "legal or financial stake in the breaching party's business"). Plaintiffs do not contend that an investment company's arms-length negotiations or discussions about business strategy with a potential portfolio company lack a legitimate business purpose. (*See* Class Opp. 19; Direct Action Opp. 30–32).

***Causation***. Plaintiffs do not and cannot rebut Bain's showing that they have failed to allege that Bain's alleged actions were a substantial factor or but-for cause of Plaintiffs' alleged damages. *See Rutherford* v. *Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997) (explaining that "[t]he substantial factor standard generally produces the same results as does the 'but for' rule of causation"); *RSM Prod. Corp.* v. *Fridman*, 643 F. Supp. 2d 382, 405 (S.D.N.Y. 2009) (requiring "but for" causation), *aff'd*, 387 F. App'x 72 (2d Cir. 2010). In their Oppositions, Plaintiffs do not specify how Bain's supposed encouragement of workforce-related or cost-reduction business strategies (even if sufficiently alleged) caused a breach of PowerSchool's contractual cybersecurity obligations with Plaintiffs. (Class Opp. at 19–20; Direct Action Opp. at 33). Nor do they allege facts sufficient to show that PowerSchool would have performed its contracts but for Bain's alleged conduct. (*See* Class Opp. at 19–20; Direct Action Opp. at 33).

Further, Plaintiffs do not explain the incongruity between their theory that Bain's actions sufficiently caused their injuries and their allegation that the "first incident of unauthorized access by a third-party actor" occurred months before Bain is alleged to have acquired a 51% stake. (MTD at 33–34) (quoting Class Compl. ¶ 105, Direct Action Compl. ¶ 62). As Plaintiffs' causation allegations are, at most,

"merely consistent with" causation (and sometimes actually inconsistent), they are insufficient to state a claim. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

***Breach***.[16] Finally, neither Opposition specifies the nature of the purported breach Plaintiffs believe that Bain induced, other than asserting in a general fashion that PowerSchool did not provide "sufficient cybersecurity protections" and failed to "abide by access restrictions to the security of Plaintiffs'" data. (Direct Action Opp. at 32; Class Opp. at 20). Those allegations do not sufficiently plead specific violations of the contracts at issue, which do not require PowerSchool to, among other things, maintain a specific headcount for cybersecurity information technology personnel or refrain from utilizing contractors. (MTD at 34); *see Waldbaum* v. *Laufer Delena Cadicina Jensen & Boyd, LLC*, 2019 WL 4735386, at *4–5 (S.D.N.Y. Sept. 27, 2019) (dismissing tortious interference claim because plaintiff alleged breaches that were "not violations of the specific" contract on which the plaintiff based the complaint); *Seoul Laser Dieboard Sys. Co.* v. *Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1201 (S.D. Cal. 2013) (Benitez, J.) (dismissing tortious interference claims because plaintiffs did not "plead with any specificity the disruption of [the] contract."). As such, Plaintiffs' intentional-interference claims should be dismissed.

### B. Computer Fraud and Abuse Act (Class Action Count 4) and California Comprehensive Data Access and Fraud Act (Class Action Count 5)

Class Action Plaintiffs appear to recognize that no other court has found CFAA or CDAFA liability in circumstances like this case. (*See* Class Opp. 21). Yet in trying to graft Bain onto this litigation, they invent a novel theory whereby an investment firm considering an investment in a company with access to personal data risks liability under those statutes. Class Action Plaintiffs still cannot show either that Bain had an agreement to participate in an unlawful act, participated in

[16] Bain also incorporates the arguments from Section I of PowerSchool's Reply in Support of Its Motion to Dismiss, (Dkt. 378), explaining why Class Action Plaintiffs have failed to state a claim for breach of contract.

any common activities in furtherance of that alleged act, or had the intent to further a violation of the statutes. Therefore, Class Action Plaintiffs' CFAA and CDAFA claims still fail.[17]

Class Action Plaintiffs now rely solely on their argument that Bain is liable under the CFAA as a co-conspirator and under the CDAFA for "assist[ing]" PowerSchool's alleged actions. (Class Opp. at 22–23, 25).[18] Both of those remaining arguments rest on the unfounded allegation that the merger agreement enabled Bain to direct PowerSchool's actions. As explained *supra* Section II.A, the plain terms of the agreement contradict that argument.[19] What is more, Class Action Plaintiffs' arguments paper over their additional failures to allege the acts or state of mind required to plead liability under either statute.

***First***, Class Action Plaintiffs' "bare statement" in their Complaint and Opposition that Bain somehow authorized, ratified, or directed PowerSchool's use of a purported access tool, (Class Opp. at 22–23), is insufficient as a matter of law to state a claim for CFAA conspiracy. *NetApp, Inc.* v. *Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 835–36 (N.D. Cal. 2014). In their Opposition, Class Action Plaintiffs insist that their CFAA conspiracy allegation is not conclusory because their

---

[17] Reflecting the poor match between the CFAA and this dispute, Direct Action Plaintiffs—who never brought CFAA claims on a theory of direct liability against Bain—have agreed to drop their CFAA claims against PowerSchool. (*See* Dkt. 362, 368; *see also* Dkt. 303-3).

[18] By failing to respond to relevant arguments made in Bain's Motion to Dismiss, Class Action Plaintiffs have waived their direct liability theory against Bain under the CFAA. *See Stichting Pensioenfonds ABP* v. *Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment."); (Class Compl. ¶ 185; MTD at 38–40).

[19] *See* Merger Agreement, *supra* n.7, at 64 ("The Parties acknowledge and agree that the restrictions set forth in this Agreement are not intended to give [the Bain entities], on the one hand, or [PowerSchool], on the other hand, directly or indirectly, the right to control or direct the business or operations of the other at any time prior to [October 1, 2024]."). Where, as here, the contractual language is "unambiguous," courts "will give effect to the plain meaning of the contract's terms and provisions." *Weinberg*, 294 A.3d at 1044.

Complaint declared that Bain had an "oversight role" over certain personnel and compliance decisions at PowerSchool. (Class Opp. at 23) (quoting Class Compl. ¶ 205). Even disregarding the lack of well-pled allegations to support that generalized contention either before or after the October 1, 2024, effective date of the merger agreement, "oversight" over business decisions does not support the inference that Bain specifically authorized the use of a particular access tool—let alone that such authorization amounted to "an agreement to participate in an unlawful act." *Alfus* v. *Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1520–21 (N.D. Cal. 1990) (dismissing a civil conspiracy claim where the plaintiff failed to make "a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement").

For their CDAFA count, Class Action Plaintiffs argue that Bain "directed" PowerSchool's alleged actions. (Class Opp. at 25). As with the CFAA count, that argument simply recasts allegations about negotiations culminating in a merger agreement, which expressly stated that Bain could ***not*** control PowerSchool's actions prior to its effective date, as "direction." (*See* Class Compl. ¶ 222); *supra* n.19. Class Action Plaintiffs do not identify any other allegation supporting their contention that Bain "[a]ssisted" PowerSchool in supposedly violating the CDAFA. (Class Opp. at 25–26). And to the extent that Class Action Plaintiffs pursue a theory of conspiracy liability under the CDAFA, that attempt fails for the same reason as the CFAA conspiracy claim: they do not allege any agreement to participate in an unlawful act. *See Alert Enter., Inc.* v. *Rana*, 2023 WL 2541353, at *5–6 (N.D. Cal. Mar. 16, 2023) (dismissing a CDAFA conspiracy claim because plaintiffs had not adequately pled "an agreement to commit wrongful acts") (alterations omitted).

***Second***, Class Action Plaintiffs fail to allege that PowerSchool and Bain engaged in "common activities" in furtherance of the alleged conspiracy. *See NetApp*, 41 F. Supp. 3d at 835 (explaining that courts require "specific allegations of . . . common activities to state a [CFAA] conspiracy claim"). A civil conspiracy

requires an "overt act in furtherance of [the] illegal objective." *Wainberg* v. *Mellichamp*, 93 F.4th 1221, 1225 (11th Cir. 2024); *see Trademotion, LLC* v. *Marketcliq, Inc.*, 857 F. Supp. 2d 1285, 1294 (M.D. Fla. 2012) (explaining that conspiracy under the CFAA shares the same meaning as conspiracy in other contexts). The Class Action Opposition still does not identify any allegations of common activities or an overt act by Bain in furtherance of a conspiratorial objective; Class Action Plaintiffs merely rest on generalized statements that PowerSchool accessed information, without explaining how (even if assumed to be true) those allegations could show that Bain took any act. (*See* Class Opp. 21–23). The same problem plagues the CDAFA count: Class Action Plaintiffs insist that Bain "assisted" PowerSchool to "affirmatively act[]" to access computers, but other than their conclusory statement that Bain directed PowerSchool, they identify zero action taken by Bain. (Class Opp. 25) (citing Class Compl. ¶ 222).[20]

***Third***, Class Action Plaintiffs do not even attempt to allege that Bain had the requisite intent for conspiracy liability under the CFAA (or the CDAFA). *See Contreras* v. *Dowling*, 5 Cal. App. 5th 394, 416–17 (2016) (explaining that for civil conspiracy, "knowledge of the planned tort must be combined with intent to aid in its commission"). Nor do they articulate how they have alleged that any "use" or "access" was "both knowing and without permission," as required under the CDAFA. *Bui-Ford* v. *Tesla, Inc.*, 2024 WL 694485, at *5 (N.D. Cal. Feb. 20, 2024). At most, Class Action Plaintiffs purport to allege that Bain was aware of PowerSchool's contracts with school districts and of a supposed "Backdoor Access Tool" that allowed PowerSchool to view data. (*See* Class Compl. ¶¶ 202–05; Class

---

[20] Bain also adopts PowerSchool's arguments in full, including that Class Action Plaintiffs' CFAA or CDAFA counts fail because they cannot allege facts sufficient to show that PowerSchool accessed their data without permission. (Dkt. 378). Class Action Plaintiffs' failure to plead underlying violations defeats the CFAA and CDAFA counts, as well. *Davis* v. *Wells Fargo Bank N.A.*, 2010 WL 1779927, at *4 (E.D. Cal. Apr. 29, 2010) ("In order to allege a civil conspiracy, a plaintiff must allege that an underlying tort has been committed.").

Opp. 21–23, 25–26). Even setting the conclusory nature of those allegations aside, they do not articulate how Bain's purported authorization or ratification was done with "an understanding" that unauthorized access would be "practically certain to follow from" Bain's conduct. *See Kirby ex rel. Kirby 2014 Tr.* v. *AT&T Corp.*, 2022 WL 17184565, at *5–6 (S.D. Cal. Nov. 23, 2022) (Benitez, J.); (*see* MTD at 39, 42–43). They do not suggest any intent to further an unlawful objective.

***Finally***, though Class Action Plaintiffs insist in their Opposition that the cybersecurity incident "has no bearing" on their claims for damages, the only damages or losses they identify are the costs of responding to that cybersecurity incident. (Class Opp. at 21, 24). Class Action Plaintiffs concede that their alleged losses arise from "responding to the Data Breach," (Class Opp. at 24, 26) (citing Class Compl. ¶ 207), rather than costs relating "analyzing, investigating, and responding to a ***defendant's*** unauthorized access," *Ticketmaster L.L.C.* v. *Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1173 (C.D. Cal. 2018) (emphasis added). Simply put, there are no allegations that ***Bain*** accessed any of data implicated in the cybersecurity incident—indeed, they allege that a non-defendant, third party obtained unauthorized access to that data. (*See* Class Compl. ¶¶ 1, 46, 87, 91). Thus, Class Action Plaintiffs do not, and cannot, identify any damages based on a freewheeling CFAA or CDAFA claim separate from the cybersecurity incident. (Class Opp. at 23–26).

### C. Class Action Plaintiffs' Remaining Group-Pled Counts Fail to State a Claim

Class Action Plaintiffs fail to rebut Bain's arguments that their remaining claims for negligence, unjust enrichment, and declaratory and injunctive relief should be dismissed. As an initial matter, these counts, along with the CDAFA count, allege actions taken by PowerSchool, but Federal Rule of Civil Procedure 8 prohibits such "lumping" of defendants and allegations. *Doe* v. *Camp Pendleton & Quantico Hous. LLC*, 2020 WL 1890576, at *7 (S.D. Cal. Apr. 16, 2020); (*see* MTD

at 43–44). In arguing that they did not engage in group pleading, Class Action Plaintiffs prove Bain's point: they respond with a seven-item summary of their own Complaint in which four items name only PowerSchool, two concern only Bain's alleged negotiation and investment in PowerSchool but conveniently omit the timeline of the transaction and do not indicate how that alleged investment relates to the causes of action pursued, and one simply repeats the conclusory allegations that Bain directed PowerSchool's actions (which, as explained *supra* Section II.A, are implausible). (*See* Class Opp. 26–27). Class Action Plaintiffs' response only confirms that they engage in group pleading—and seek to hold Bain liable for the alleged actions of PowerSchool—despite disclaiming any theory of vicarious liability. (*Id.*; *see* Ex. A, Dkt. 303-2; Class Compl. ¶¶ 168–83, 210–27, 246–62). Regardless of the label Class Action Plaintiffs give to their theory of liability, this Court should dismiss the counts against Bain that allege acts taken by PowerSchool.

Moreover, as explained below, Class Action Plaintiffs still fail to indicate how their attenuated theories of liability are supported by allegations of essential elements of their counts for negligence, unjust enrichment, and relief under the Declaratory Judgment Act. These counts all should be dismissed.

**1. Negligence (Class Action Count 3)**

Class Action Plaintiffs cannot identify a duty owed by Bain to school districts, as they do not allege that Bain held the data affected in the cybersecurity incident or had a relationship with school districts at any point—let alone during the alleged events predating October 1, 2024 that underlie their allegations of cost reductions and workforce measures. (*See* Class Opp. 28); *supra* Section II.A. Nor do they point to any actions that proximately caused their injuries, as is required to state a claim for negligence.[21]

[21] As explained in Bain's Motion, there can be no breach without duty. (MTD at 47). Class Action Plaintiffs do not meaningfully contest this point. (Class Opp. at 30). They therefore fail to sufficiently allege the element of breach, as well. In addition, for the reasons explained in PowerSchool's brief, which Bain joins, Class

***Duty***. Class Action Plaintiffs' allegations that PowerSchool held data provided by school districts is insufficient as a matter of law to show that ***Bain*** owed them a duty of care. (*See* MTD 46–47). In their Opposition, Class Action Plaintiffs are still unable to articulate a theory as to why Bain owed them a duty, and they identify no decision imposing a duty on an investment company to protect the customer data of one of its portfolio companies, especially where the investment company never possessed that data. Without any well-pled allegations that Bain collected or stored the data at issue, they have not sufficiently pled a duty. (*See id.*); *Navarro* v. *Ski Data*, 2022 WL 18280359, at *10 (C.D. Cal. Dec. 7, 2022); *Smahaj* v. *Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 825 (N.Y. Sup. Ct. 2020); *In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *8–9 (D.N.J. Feb. 26, 2025), *appeal filed*, No. 25-1626 (3d Cir. Apr. 2, 2025).

Although Class Action Plaintiffs claim that the "fact that Bain itself did not hold any of the data does not change" their arguments, the only case they rely on shows why their theory fails. (Class Opp. at 28) (quoting *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.* ("*AMCA*"), 2021 WL 5937742, at *14 (D.N.J. Dec. 16, 2021)). In *AMCA*, the court expressly stated that a duty to protect the plaintiffs' data ***only*** arose "[o]nce [d]efendants collected [p]laintiffs' information." 2021 WL 5937742, at *14. According to the Class Action Complaint, however, only PowerSchool collected and stored Plaintiffs' information, (*see* Class Compl. ¶¶ 28, 38, 44, 86), and Class Action Plaintiffs do not (and cannot) allege otherwise. *Cf. In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *9 (explaining that unlike *AMCA*, "there is no relationship between the parties on which the Court can find . . . a duty" where the defendant stored, but did not collect data from, the plaintiffs); (Class Action Compl. ¶¶ 38, 44, 86).

---

Action Plaintiffs' negligence claims should be dismissed because they seek to recover for purely economic losses, as barred by New Jersey and California law, and because their negligence claims are duplicative of their contract claims, as barred by New York law. (Dkt. 378).

Class Action Plaintiffs also contend that Bain owed a duty to them because they allege that Bain knew of PowerSchool's contracts with school districts and that it was foreseeable that Bain's alleged direction of workforce changes (which, again, they plead in conclusory terms) would lead to Plaintiffs' harm. (Class Opp. at 28–29). If that argument were the law, then every investment company would be liable for every data incident at every portfolio company. Instead of that wide-ranging rule, courts recognize that "[e]ven if such a consequence was foreseeable, however, this alone does not establish the existence of a duty." *Tucker* v. *CBS Radio Stations, Inc.*, 194 Cal. App. 4th 1246, 1253 (2011) (declining to impose duty of care even assuming that a plaintiffs' injury was foreseeable).

***Causation***. Because Class Action Plaintiffs cannot show a "reasonably close causal connection" between Bain's conduct and their injury, their negligence count fails for that reason as well. *McCarthy* v. *Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997). Class Action Plaintiffs' attenuated description of their theory of causation—that "Bain's cost-cutting" led "to a reduction of workforce and outsourcing of data security to overseas third-parties," and that, in turn, "contractors' credentials . . . were compromised"—only underscores the failure to allege proximate causation. (Class Opp. at 31). Despite Class Action Plaintiffs' insistence to the contrary, nothing in their Complaint suggests that Bain's actions were a substantial factor causing the cybersecurity incident, (MTD at 48), especially because they allege PowerSchool announced personnel changes long before the merger agreement became effective in October 2024, (Class Compl. ¶ 106).

In response, Class Action Plaintiffs argue that their failure to allege causation should not be addressed at the motion-to-dismiss stage, relying on selective quotes from *Modisette* v. *Apple Inc.*, 30 Cal. App. 5th 136 (2018)—a decision holding that plaintiffs failed to allege causation at the motion-to-dismiss stage. (Class Opp. at 30–32). The *Modisette* court even explained that causation is an issue of "law," appropriate for dismissal, "where the facts are such that the only reasonable

conclusion is an absence of causation." 30 Cal. App. 5th at 152. Similarly here, the only "reasonable conclusion" is that Bain's actions did not cause the cybersecurity incident; Class Action Plaintiffs' conclusory allegations (even if assumed to be true) are simply "too remotely connected with [their] injuries" alleged from the cybersecurity incident "to constitute their legal cause." *Shih* v. *Starbucks Corp.*, 53 Cal. App. 5th 1063, 1069 (2020); (*see* Class Opp. 30–33; MTD at 47–48). Class Action Plaintiffs cite no case to the contrary.

**2. Unjust Enrichment (Class Action Count 7)**

As explained in Bain's Motion, "there is not a standalone cause of action for 'unjust enrichment'" under California law, under which Plaintiffs purport to bring this count. *Astiana* v. *Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); (*see* MTD at 48). Even setting that fact aside, Class Action Plaintiffs' unjust enrichment claim fails several times over.

Class Action Plaintiffs do not (and cannot) point to any non-conclusory allegations that their payments to PowerSchool "confer[red] any benefit" on Bain. *See Wall* v. *Wescom Cent. Credit Union*, 2024 WL 1158361, at *1, *6 (C.D. Cal. Mar. 18, 2024). Their assertion that Bain "received some of the money that Plaintiffs paid to PowerSchool" is not supported by any specific factual allegations in any of the paragraphs they cite in their Complaint. (Class Opp. at 33–34) (citing Class Compl. ¶¶ 101, 126, 164, 249). Declaring that an allegation is non-conclusory because it is the "crux" of a claim does not cure that pleading deficiency. (*Id*. at 34).[22]

[22] Though Class Action Plaintiffs' unjust enrichment count fails under any pleading standard, their allegations of "fraudulent misrepresentations, omissions, and systemic concealment of material facts," (Class Compl. ¶ 251), make clear that Rule 9(b) should apply. *See Keilholtz* v. *Superior Fireplace Co.*, 2009 WL 839076, at *5 (N.D. Cal. Mar. 30, 2009); *DiMuro* v. *Clinique Lab'ys, LLC*, 572 F. App'x 27, 32 (2d Cir. 2014); *Crete* v. *Resort Condominiums Intern., LLC*, 2011 WL 666039, at *5–6 (D.N.J. Feb. 14, 2011). Class Action Plaintiffs do not state with particularity Bain's role in the alleged misrepresentations, specifically "when [Bain] made or failed to make the statements complained of, where [Bain] made the statements, and

The cases that Class Action Plaintiffs cite do not cure that defect. In *Wall*, the court ***dismissed*** the plaintiffs' unjust enrichment claim against a data management corporation, because the plaintiffs had not paid it or given it their PII, but rather had paid and provided data to a credit union that contracted with the data management corporation. 2024 WL 1158361, at *6. And in *In re Capital One Consumer Data Security Breach Litigation*, 488 F. Supp. 3d 374 (E.D. Va. 2020), the court reasoned that the web-storage service that charged Capital One to store PII had "profited from its storage and retention" of that data. *Id.* at 413. Here, like the plaintiffs in *Wall*, Class Action Plaintiffs do not allege that they paid Bain for its services or provided it with their data; unlike the *Capital One* plaintiffs, Class Action Plaintiffs do not allege that Bain ever stored their PII, let alone profited from that nonexistent storage. (Class Opp. at 33–34). Those decisions underscore that Class Action Plaintiffs are required to provide non-conclusory allegations that Bain retained a benefit at their expense. Their failure to do so warrants dismissal of this claim.

**3. Declaratory Judgment Act (Class Action Count 8)**

Because each of Class Action Plaintiffs' independent claims for relief fail, their claim for declaratory judgment should also be dismissed. *See City of Reno* v. *Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) (explaining that the Declaratory Judgment Act does not provide a cause of action where a party "lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief"). Class Action Plaintiffs do not contest the legal standard or Bain's conclusion; they only assert that their other claims succeed and insist that it is premature to dismiss their claim absent some fact development. (*See* Class Opp. 34–35). But, as explained above, Class Action Plaintiffs do not sufficiently plead any claim against Bain on any of their counts, warranting dismissal of this count, too.

---

why [Bain's] statements were false or misleading," *Keilholtz*, 2009 WL 839076, at *5–6, and instead rely solely on allegations of PowerSchool's actions, *see supra*; (MTD at 48–50). The unjust enrichment count can be dismissed on this basis, as well.

## III. PLAINTIFFS FAIL TO ALLEGE THAT BAIN IS SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA, NEW JERSEY, OR NEW YORK

Finally, Class Action Plaintiffs and Direct Action Plaintiffs attempt to remedy their failure to plead personal jurisdiction in their Complaints by raising a hodgepodge of theories in their Oppositions.[23] (Class Opp. 9–15; Direct Action Opp. 4–9). Neither Class Action Plaintiffs' arguments that personal jurisdiction is proper under successor liability, purposeful direction, substantial justice, or pendent jurisdiction theories—nor Direct Action Plaintiffs' effort to argue that Bain's alleged investment in PowerSchool suffices for specific jurisdiction—satisfy Plaintiffs' burden to demonstrate that jurisdiction is appropriate. *Matter of Star & Crescent Boat Co., Inc.*, 549 F. Supp. 3d 1145, 1170 (S.D. Cal. 2021) (Benitez, J.).

### A. Class Action Plaintiffs Fail to Allege Personal Jurisdiction Over Bain

Class Action Plaintiffs raise four flawed theories of personal jurisdiction in their Opposition: (1) successor liability, (2) express aiming, (3) fair play and substantial justice, and (4) pendent jurisdiction.[24] None is persuasive.

***Successor Liability***. Class Action Plaintiffs attempt to rely on PowerSchool's jurisdictional contacts to allege personal jurisdiction over Bain on a successor

[23] Plaintiffs' Oppositions fail to acknowledge or respond to Bain's argument that neither this Court nor any transferor court in the relevant jurisdictions—California, New Jersey, or New York—would have general jurisdiction over Bain, and have thus conceded the Court lacks general jurisdiction over Bain. (MTD at 16); *see Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132 ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment.").

[24] BRICK Buffalo Academy Charter School has not yet filed a short form complaint or served Bain pursuant to Rule 4 or the Direct Filing Order. *See* (Dkt. 269 at 4) *Macpherson* v. *United States*, 2017 WL 766722, at *1 (S.D. Cal. Feb. 28, 2017) (Benitez, J.) (explaining that plaintiffs "bear[] the burden of establishing the validity of service as governed by Rule 4" when facing a motion under Rule 12(b)(5)). As explained *supra* n.4, Bain agreed to no longer pursue its subject matter jurisdiction defense against BRICK Buffalo Academy Charter School after it files a short-form complaint. (*See* MTD at 10 n.9).

theory, but courts do not recognize such a stretched version of that theory. Rather, courts apply a baseline presumption of "successor nonliability": "where a corporation purchases, or otherwise acquires by transfer, the assets of another corporation, the acquiring corporation ***does not assume*** the selling corporation's debts and liabilities." *Covington* v. *Aryming Asset Mgmt., LLC*, 2025 WL 2654139, at *2 (E.D. Cal. Sept. 16, 2025) (emphasis added); *In re Roman Cath. Diocese of Rockville Ctr.*, 652 B.R. 16, 26 (Bankr. S.D.N.Y. 2023) (similar). As Class Action Plaintiffs acknowledge (Class Opp. 11 n.10), a successor "does not assume" a seller's liabilities unless an exception applies, namely: (1) there is "an express or implied agreement of assumption"; (2) there is "a consolidation or merger of the two corporations"; (3) "the purchasing corporation is a mere continuation of the seller"; or (4) "the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Ray* v. *Alad Corp.*, 19 Cal. 3d 22, 28 (1977); *Roman Cath. Diocese*, 652 B.R. at 26 (same); *Ferry* v. *Black Diamond Video, Inc.*, 2016 WL 3381237, at *10 (D.N.J. June 14, 2016) (same).

Class Action Plaintiffs argue Bain is subject to personal jurisdiction in New Jersey and New York because "Bain's affiliate agreed to assume PowerSchool's liabilities and the transaction essentially amounted to a consolidation or merger of Bain and PowerSchool" through which Bain "effectively absorbed the jurisdictional contacts of PowerSchool." (Class Opp. at 11 & n.11). But Class Action Plaintiffs allege only that Bain affiliates acquired a 51% stake in PowerSchool—not that Bain agreed to assume any liabilities or invested without adequate consideration. (*See* MTD at 5 & n.6) (citing Class Compl. ¶ 98). Rather, after an arms-length transaction, PowerSchool remained a separate corporation from Bain.[25] *See Komaiko* v. *Baker Techs., Inc.*, 2020 WL 1915884, at *10–12 (N.D. Cal. Apr. 20,

---

[25] *See* Merger Agreement, *supra* n.7, at 21–22. Plaintiffs also do not allege that PowerSchool transferred its assets for the fraudulent purpose of escaping liability for its debts.

2020) (no personal jurisdiction where plaintiffs failed to plead with specificity "the existence of a contract and its terms which establish the obligation in issue"; the defendant did not absorb all of the company's assets or provide inadequate consideration; and where the companies "continue[d] to exist separately") (alterations omitted); *Long Side Ventures LLC* v. *Hempacco Co.*, 2023 WL 6386888, at *13 (S.D.N.Y. Sept. 29, 2023) (no personal jurisdiction where the transferor "remains a legal entity with valuable assets"); *Black Diamond Video*, 2016 WL 3381237, at *10–11 (no personal jurisdiction where the transferor was "still a separate corporation" with different locations of incorporation and principal place of business than the transferee).

***Purposeful Direction***. Class Action Plaintiffs' allegations fail to satisfy the "effects" test from *Calder* v. *Jones*, 465 U.S. 783 (1983), on which they also rely for their intentional tort claims. Under that test, they must demonstrate that Bain (1) committed an intentional act, (2) expressly aimed at the forum state, (3) which caused harm that Bain knew was likely to be suffered in the forum state. *Axiom Foods, Inc.* v. *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). Class Action Plaintiffs' theory amounts to the allegation that, because Bain supposedly "knew of" PowerSchool's contracts with school districts in New Jersey and New York, Bain therefore "committed intentional acts" that were "expressly aimed" at those jurisdictions. (Class Opp. at 12) (citing Class Compl. ¶¶ 101, 162–63, 198, 202, 205, 222).

However, "[e]xpress aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because the plaintiff cannot be the only link between the defendant and the forum." *Kalter* v. *Keyfactor, Inc.*, 2022 WL 658976, at *2–3 (S.D. Cal. Mar. 4, 2022) (no personal jurisdiction over a venture capital firm based on alleged acts of a portfolio company, where plaintiffs made conclusory allegations that the venture capital firm "compelled, coerced, aided, and/or abetted" those acts). An investment firm's

knowledge that a portfolio company has entered contracts in the course of business thus cannot suffice to plead that it expressly aimed conduct at the forum state. *See IMO Indus., Inc.* v. *Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998) ("[K]nowledge that the plaintiff is located in the forum . . . alone is insufficient to satisfy the targeting prong of the effects test."). Class Action Plaintiffs acknowledge that their claims "arise out of or relate to ***PowerSchool's*** forum-related conduct," (Class Opp. at 10) (emphasis added), and "another defendant's actions cannot serve as the basis for exercising personal jurisdiction." *CrossFit, Inc.* v. *Matrix Sols., LLC*, 2020 WL 6484554, at *4 n.2 (S.D. Cal. Nov. 4, 2020); *see also Waste Mgmt., Inc.* v. *Admiral Ins. Co.*, 649 A.2d 379, 389 (N.J. 1994) ("[J]urisdiction over one defendant may not be based on the activities of another defendant, nor on the plaintiff's connection to the forum state.").

***Fair Play and Substantial Justice***. In contending that personal jurisdiction would be reasonable, Class Action Plaintiffs ignore their burden to show that Bain purposefully availed itself of the transferor jurisdictions and that their claims arise out of those contacts. *See Schwarzenegger* v. *Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *Matter of Star & Crescent Boat Co.*, 549 F. Supp. 3d at 1170. Regardless, Class Action Plaintiffs do not explain how exercising personal jurisdiction over Bain would be reasonable. On their theory, any investment company can be brought into any court based on the alleged actions of any portfolio company, regardless of the investment company's contacts with the forum and the nexus between those contacts and the claims alleged.

***Pendent Jurisdiction***. Lastly, Class Action Plaintiffs' argument for pendent jurisdiction is irrelevant and incorrect. They contend Bain "does not dispute that the Court has personal jurisdiction for purposes of Plaintiffs' claims under the CFAA." (Class Opp. at 14). But Bain's position has always been that personal jurisdiction is improper in the transferor jurisdictions on ***any*** claim. (MTD at 10–17). Regardless, the CFAA is subject to the same jurisdictional requirements as Class Action

Plaintiffs' state-law claims, and offers no separate basis to exercise jurisdiction where it is otherwise unavailable. *See* 18 U.S.C. § 1030; Fed. R. Civ. P. 4.

### B. Direct Action Plaintiffs Also Fail to Allege Personal Jurisdiction Over Bain

Direct Action Plaintiffs' Opposition also makes clear that they have not met their burden as to any of the three prongs for establishing specific jurisdiction in California: purposeful availment or direction, relatedness, and reasonableness. *Matter of Star & Crescent Boat Co.*, 549 F. Supp. 3d at 1161. Instead, they rely on a similar, flawed premise as the Individual User Plaintiffs,[26] resting their jurisdictional theory on conclusory allegations that Bain controlled PowerSchool. (*See* Direct Action Opp. at 7).

Contrary to Direct Action Plaintiffs' assertions (Direct Action Opp. at 6–9), a defendant's participation in a negotiation or a transaction with an in-forum company is insufficient to allege that the defendant purposefully availed itself of the forum or that a claim arises out of a forum where, as here, a plaintiff sues on alleged injuries from a data breach unrelated to the transaction. *See Kalter*, 2022 WL 658976, at *2–3. Further, as explained *supra* Section I, Direct Action Plaintiffs fail to allege that PowerSchool is an alter ego of Bain. Nor can they rest on the consolidation of these MDL proceedings in the Southern District of California to argue that the exercise of personal jurisdiction over Bain in California would be reasonable, (Direct Action Opp. at 9), because personal jurisdiction is rooted in the transferor court, not the transferee forum or the JPML. *See In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379–80 (J.P.M.L. 2020). They offer no explanation as to why their strategic decision to file short-form complaints in this District gives California an

[26] *See* Plaintiffs' Opposition to Bain's Motion to Dismiss the Consolidated Individual Users Putative Class Action Complaint (Dkt. 319). To promote efficiency and avoid needless repetition, Bain incorporates by reference its arguments in Section III of Bain's Reply in Support of its Motion to Dismiss the Consolidated Individual Users Putative Class Action Complaint (Dkt. 361).

interest in adjudicating a dispute consisting of 19 school districts located ***outside*** California.

### C. Jurisdictional Discovery Is Unnecessary Because It Would Not Alter the Jurisdictional Analysis

Implicitly acknowledging the weakness of their jurisdictional allegations, Class Action Plaintiffs seek jurisdictional discovery on the "corporate arrangements," "relationship," and "actions" of Bain and PowerSchool, (Class Opp. at 15), and Direct Action Plaintiffs seek discovery on Bain's and PowerSchool's "agreements," their "decision-making and communications," and "Bain's actions relative to PowerSchool after October 2024," (Direct Action Opp. at 27–28). Those transparent efforts to conduct a wide-ranging fishing expedition and needlessly prolong this litigation should be denied.

As explained *supra*, neither Direct Action Plaintiffs nor Class Action Plaintiffs have made even a "colorable showing that this Court might be able to exercise personal jurisdiction" over Bain. *Liberty Media Holding, LLC* v. *Tabora*, 2012 WL 28788, at *7 (S.D. Cal. Jan. 4, 2012); *see also Am. Inst. of Intradermal Cosms., Inc.* v. *Soc'y of Permanent Cosm. Pros.*, 2013 WL 1685558, at *11 (C.D. Cal. Apr. 16, 2013) (denying jurisdictional discovery where "[f]urther discovery would likely only reveal contacts unrelated to this dispute"). Additional discovery on Bain and PowerSchool's relationship "would not change the jurisdictional analysis," because Plaintiffs' theories of jurisdiction are rooted in an October 1, 2024 transaction between Bain and PowerSchool that is far too attenuated from the cybersecurity incident at the center of the claims at issue. *Spy Optic Inc.* v. *AreaTrend, LLC*, 2020 WL 1849672, at *9 (S.D. Cal. Apr. 13, 2020) (denying jurisdictional discovery where the jurisdictional allegations were "attenuated," the defendants made "specific denials" of jurisdiction, and any additional information "would not change the jurisdictional analysis"), *aff'd*, 843 F. App'x 66 (9th Cir. 2021).

## **CONCLUSION**

Accordingly, Bain respectfully requests that the Court grant its Motion to Dismiss the claims brought against Bain in the School District Amended Putative Class Action Complaint, the School District Direct Actions First Amended Consolidated Master Complaint, and all direct-filed complaints, with prejudice.

Dated: November 26, 2025

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ John P. Carlin*
John P. Carlin

John P. Carlin (NY 3031887)*
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Dylan O. Smith (NY 5846076)*
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
jschutte@paulweiss.com
dosmith@paulweiss.com

R. Rosie Vail (SBN 317977)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant Bain Capital, L.P.*

**CERTIFICATE OF SERVICE**

I certify that on the 26th day of November, 2025, I filed the foregoing notice with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ John P. Carlin*
John P. Carlin
Email: jcarlin@paulweiss.com
*Counsel for Bain Capital, L.P.*