James P. Frantz, Esq. (SBN 87492)
jpf@frantzlawgroup.com
William B. Shinoff, Esq. (SBN 280020)
wshinoff@frantzlawgroup.com
**FRANTZ LAW GROUP, APLC**
402 W. Broadway, Suite 860
San Diego, CA 92101
Telephone: (619) 233-5945
Fax: (619) 525-7672

*Co-Lead Counsel for the School District Direct Action Plaintiffs*

[*Additional Counsel on Signature Page*]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>*This Document Relates to the School District Direct Action Track* | Case No. 25-MD-3149-BEN-MSB<br><br>MDL NO. 3149<br><br>**SCHOOL DISTRICT DIRECT ACTION PLAINTIFFS' OPPOSITION TO DEFENDANT MOVATE, INC.'S MOTION TO DISMISS THE TRACK TWO DIRECT ACTION COMPLAINT**<br><br>Date:       N/A<br>Time:       N/A<br>Judge:      Hon. Roger T. Benitez<br>Courtroom:  5A |

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................... 1

SUMMARY ............................................................................................................... 1

PROCEDURAL HISTORY ......................................................................................... 2

MEET AND CONFER EFFORTS ............................................................................... 3

CHOICE OF LAW ..................................................................................................... 3

LEGAL STANDARD ................................................................................................. 5

ARGUMENT ............................................................................................................. 6

I.   THE COURT HAS SPECIFIC JURISDICTION OVER CLAIMS ARISING OUT OF MOVATE'S CONDUCT IN CALIFORNIA ......................................................... 6

    A.   Movate Purposefully Directed Its Activities Toward California ...................... 6

    B.   Movate Purposefully Availed Itself Of California's Laws ............................... 8

    C.   Plaintiffs' Claims Arise Out Of Movate's Activities In California .................. 9

    D.   The Exercise of Jurisdiction Over Movate Comports With Due Process ........ 10

II.   PLAINTIFFS PLAUSIBLY ALLEGE BREACH OF CONTRACT CLAIMS AS THIRD-PARTY BENEFICIARIES UNDER THE GSA ........................................... 13

    A.   Plaintiffs Are Third-Party Beneficiaries ......................................................... 13

    B.   The Contract Terms Are Sufficiently Pled On Information And Belief .......... 15

    C.   Plaintiffs May Pursue Simultaneous Tort And Breach Of Contract Claims.... 16

III.   PLAINTIFFS' NEGLIGENCE CLAIMS ARE ADEQUATELY PLED ........... 18

    A.   Plaintiffs Plausibly Allege The Legal Duty Movate Owed To Plaintiffs ........ 18

    B.   Movate's Additional Arguments Do Not Negate The Existence Of A Duty.... 21

    C.   Plaintiffs Plausibly Allege That Movate Breached The Duties Owed ............. 24

IV.   PLAINTIFFS' ALLEGATIONS SUPPORT THEIR CLAIMS FOR NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION ............. 24

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
  2005 WL 8164062 (W.D. Wash. Mar. 7, 2005)........................................................9, 11

*Alicea v. City of New York*,
  534 N.Y.S.2d 983 (N.Y. App. Div. 1988).........................................................................14

*Anderson v. U.S. Dep't of Hous. & Urb. Dev.*,
  554 F.3d 525 (5th Cir. 2008).........................................................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................................5

*Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*,
  692 F.3d 42 (2d Cir. 2012)............................................................................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................................5

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008)........................................................................................11

*Bugarin v. All Nippon Airways Co.*,
  513 F. Supp. 3d 1172 (N.D. Cal. 2021).........................................................................12

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)...........................................................................................7, 11, 13

*Burns Jackson Miller Summit & Spitzer v. Lindner*,
  451 N.E.2d 459 (1983)....................................................................................................14

*Calder v. Jones*,
  465 U.S. 783 (1984)...........................................................................................................7

*Cascade Fund, LLLP v. Absolute Cap. Mgmt. Holdings Ltd.*,
  707 F. Supp. 2d 1130 (D. Colo. 2010) ...........................................................................12

*Cavi v. Evolving Sys., Inc.*,
  245 F. Supp. 3d 604 (D. Del. 2017) ...................................................................18

*City of Buffalo City Sch. Dist. v. LPCiminelli, Inc.*,
  73 N.Y.S.3d 836 (N.Y. App. Div. 2018) ............................................................15

*CollegeSource, Inc. v. AcademyOne, Inc.*,
  653 F.3d 1066 (9th Cir. 2011) ...........................................................................11

*Comfort Inn Oceanside v. Hertz Corp.*,
  2011 WL 5238658 (E.D.N.Y. Nov. 1, 2011) .....................................................16

*Cooley v. Salopian Indus., Ltd.*,
  383 F. Supp. 1114 (D.S.C. 1974) .......................................................................18

*Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*,
  557 F.2d 1280 (9th Cir. 1977) ...........................................................................13

*Dittman v. UPMC*,
  196 A.3d 1036 (Pa. 2018) ......................................................................19, 20, 23

*Does 1-4 v. Butler Univ.*,
  712 F. Supp. 3d 1154 (S.D. Ind. 2024) .........................................................18, 25

*Dormitory Auth. v. Samson Constr. Co.*,
  94 N.E.3d 456 (N.Y. 2018) ................................................................................14

*Esquer v. StockX LLC*,
  2020 WL 3487821 (N.D. Cal. June 26, 2020) ...................................................12

*Facebook, Inc. v. ConnectU LLC*,
  2007 WL 2326090 (N.D. Cal. Aug. 13, 2017) .................................................8, 9

*First Choice Fed. Credit Union v. Wendy's Co.*,
  2017 WL 9487086 (W.D. Pa. Feb. 13, 2017) .....................................................24

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*,
  485 N.E.2d 208 (N.Y. 1985) ..............................................................................14

*G-I Holdings, Inc. v. Baron & Budd*,
  238 F. Supp. 2d 521 (S.D.N.Y. 2002) ................................................................18

Case No. 25-MD-3149-BEN-MSB
School District Direct Action Plaintiffs' Opposition to Movate's Motion to Dismiss

*Gilligan v. Jamco Dev. Corp.*,

  108 F.3d 246 (9th Cir. 1997) ............................................................................. 6

*Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A*,

  972 F.3d 1101 (9th Cir. 2020) ............................................................... 6, 10, 11

*Golden Valley Grape Juice & Wine, LLC v. Centrisys Corp.*,

  2009 WL 4828743 (E.D. Cal. Dec. 9, 2009) ..................................................... 9

*Grapevine Education, LLC v. Education Ventures, LLC*,

  2023 WL 6536237 (S.D. Cal. Aug. 21, 2023) ................................................. 16

*Guillemin v. Stein*,

  104 Cal. App. 4th 156 ...................................................................................... 13

*Haney v. Charter Foods N., LLC*,

  747 F. Supp. 3d 1093 (E.D. Tenn. 2024) ........................................... 22, 23, 24

*Harmsen v. Smith*,

  693 F.2d 932 (9th Cir. 1982) ............................................................................. 3

*Hoffmann v. Major Model Mgmt., Inc.*,

  2022 WL 992795 (S.D.N.Y. Mar. 31, 2022) ................................................... 17

*Imran v. Vital Pharms., Inc.*,

  2019 WL 1509180 (N.D. Cal. Apr. 5, 2019) ................................................... 12

*In re Anthem, Inc. Data Breach Litig.*,

  2015 WL 5286992 (N.D. Cal. Sept. 9, 2015) .................................................... 3

*In re Arby's Rest. Grp. Inc. Litig.*,

  2018 WL 2128441 (N.D. Ga. Mar. 5, 2018) ................................................... 21

*In re Bank of Am. California Unemployment Benefits Litig.*,

  674 F. Supp. 3d 884 (S.D. Cal. 2023) ............................................................. 26

*In re Cap. One Consumer Data Sec. Breach Litig.*,

  488 F. Supp. 3d 374 (E.D. Va. 2020) .............................................................. 24

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,

  986 F. Supp. 2d 428 (S.D.N.Y. 2013) ............................................................. 23

*In re GlassHouse Techs., Inc.*,

    604 B.R. 600  (Bankr. D. Mass. 2019) ...........................................................................4

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,

    753 F. Supp. 3d 849 (N.D. Cal. 2024)............................................................................3

*In re Target Corp. Data Sec. Breach Litig.*,

    66 F. Supp. 3d 1154 (D. Minn. 2014) ..........................................................................22

*In re USAA Data Sec. Litig.*,

    621 F. Supp. 3d 454 (S.D.N.Y. 2022) ..........................................................................20

*In re: Premera Blue Cross Customer Data Sec. Breach Litig.*,

    2017 WL 539578 (D. Or. Feb. 9, 2017) .......................................................................24

*Jackson v. Health Ctr. Partners of S. California*,

    2024 WL 3708867 (S.D. Cal. Aug. 7, 2024).................................................................5

*Jent v. BAC Home Loans Servicing, LP*,

    2011 WL 2971846 (S.D. Ohio July 21, 2011) .............................................................18

*Johnson v. City of Shelby, Miss.*,

    574 U.S. 10 (2014) .......................................................................................................18

*LaSalle Nat. Bank v. Ernst & Young LLP*,

    729 N.Y.S.2d 671 (N.Y. App. Div. 2001).....................................................................16

*L'Garde, Inc. v. Raytheon Space & Airborne Sys.*,

    805 F. Supp. 2d 932 (C.D. Cal. 2011) .........................................................................11

*Linlor v. JPMorgan Chase & Co.*,

    2017 WL 3446814 (S.D. Cal. Aug 9, 2017)..............................................................6, 12

*Loomis v. Slendertone Distrib., Inc.*,

    420 F. Supp. 3d 1046 (S.D. Cal. 2019) ........................................................................11

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,

    519 F.3d 1025 (9th Cir. 2008).......................................................................................5

*Matter of Part 60 Put-Back Litig.*,

    165 N.E.3d 180 (N.Y. 2020) ........................................................................................17

*Mavrix Photo, Inc. v. Brand Techs.*, Inc.,

    647 F.3d 1218 (9th Cir. 2011) ................................................................. 7

*McKenzie v. Allconnect, Inc.*,

    369 F. Supp. 3d 810 (E.D. Ky. 2019) ............................................... 22, 23

*Mendiondo v. Centinela Hosp. Med. Ctr.*,

    521 F.3d 1097 (9th Cir. 2008) ................................................................. 5

*Morris v. Zimmer*,

    2014 WL 7474770 (S.D.N.Y. Feb. 11, 2014) ...................................... 14, 15

*N. Shore Bottling Co. v. C. Schmidt & Sons, Inc.*,

    239 N.E.2d 189 (N.Y. 1968) ............................................................. 17, 20

*Nat'l Specialty Pharmacy, LLC v. Padhye*,

    734 F. Supp. 3d 922 (N.D. Cal. 2024) .................................................... 4

*NCCMI, Inc. v. Bersin Props., LLC*,

    208 N.Y.S.3d 27 (N.Y. App. Div. 2024) ............................................... 15

*Nedlloyd Lines B.V. v. Superior Ct.*,

    3 Cal. 4th 459 (1992) ............................................................................... 4

*NetApp, Inc. v. Nimble Storage, Inc.*,

    41 F. Supp. 3d 816 (N.D. Cal. 2014) ................................................... 7, 8

*Neubronner v. Milken*,

    6 F.3d 666 (9th. Cir. 1993) .................................................................. 17

*Ottman v. Anthem Life Ins. Co.*,

    2015 WL 12683809 (C.D. Cal. Oct. 15, 2015) ....................................... 4

*Panavision Int'l, L.P. v. Toeppen*,

    141 F.3d 1316 (9th Cir. 1998) ................................................................ 9

*Pulka v. Edelman*,

    40 N.Y.2d 781 (N.Y. Ct. App. 1976) ..................................................... 22

*Rojas v. Bosch Solar Energy Corp.*,

    443 F. Supp. 3d 1060 (N.D. Cal. 2020) ................................................. 4

*Roth v. Garcia Marquez*,
   942 F.2d 617 (9th Cir. 1991) ....................................................................... 10

*Sackin v. TransPerfect Glob., Inc.*,
   278 F. Supp. 3d 739 (S.D.N.Y. 2017) ...................................................... 21, 23

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ............................................................... Passim

*Septembertide Pub., B.V. v. Stein & Day, Inc.*,
   884 F.2d 675 (2d Cir. 1989) ........................................................................ 14

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
   131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020) ..................................................... 21

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
   521 F. Supp. 3d 929 (S.D. Cal. 2021) ........................................................ 14

*Sommer v. Fed. Signal Corp.*,
   593 N.E.2d 1365 (N.Y. 1992) ..................................................................... 17

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .................................................................... 26

*Stasi v. Inmediata Health Grp. Corp.*,
   501 F. Supp. 3d 898 (S.D. Cal. 2020) ........................................................ 17

*Tokio Marine & Nichido Fire Ins. Co. Ltd. v. Precision Trucking*,
   2009 WL 10672495 (S.D. Cal. Oct 16, 2009) .............................................. 6

*Toretto v. Donnelley Fin. Sols., Inc.*,
   583 F. Supp. 3d 570 (S.D.N.Y. 2022) ........................................................ 20

*Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*,
   925 F.2d 566 (2d Cir. 1991) ........................................................................ 14

*Wash. Mut. Bank, FA v. Superior Court*,
   24 Cal. 4th 906 (2001) ................................................................................... 4

*Yahoo! Inc. v. La Ligue Contre Le Racisme*,
   433 F.3d 1199 (9th Cir. 2006) ................................................................. 7, 8

**Statutes**

Cal. Gov't Code § 6103 ........................................................................................12

**Rules**

Federal Rule of Civil Procedure 8 ...........................................................5, 17, 18

Federal Rule of Civil Procedure 12 ...............................................................5, 25

Case No. 25-MD-3149-BEN-MSB

School District Direct Action Plaintiffs' Opposition to Movate's Motion to Dismiss

**INTRODUCTION**

School Districts contracted with PowerSchool to collect, store, and safeguard data containing the sensitive personal information of millions of students, parents, and school employees. Movate agreed to provide technical support and network operations for PowerSchool's Student Information System. Movate took possession of School Districts' data and failed to take basic precautions to secure it, allowing hackers to obtain a trove of private information with ease. Does the law shield Movate from liability?

It does not. The Court should deny Movate's Motion to Dismiss.

**SUMMARY**

Plaintiffs are School Districts located throughout the United States that are customers of Defendants PowerSchool Holdings, Inc. and PowerSchool Group LLC ("PowerSchool").[1] Their claims came to light following a December 2024 Data Breach of PowerSchool's security systems.

At the center of this Breach is Defendant Movate, Inc. PowerSchool retained Movate as a subcontractor to provide technical support and network operations for its Student Information System ("SIS"). In this role, Movate's employees gained unfettered administrative access to databases containing the highly sensitive personally identifiable information ("PII") of over 70 million students, parents, and faculty members.

Casting aside applicable industry standards and ignoring the sensitive nature of the educational data involved, Movate failed to implement basic cybersecurity measures. Movate's employee, Rayson Cruz, provided the entry point for hackers to breach PowerSchool's systems. Cruz's account lacked multi-factor authentication, despite having

---

[1] "Plaintiffs" refers to all Plaintiffs whose cases were either transferred to or directly filed in the MDL and classified as Track Two – Direct Actions. Naming conventions herein are consistent with those used in the operative School District Direct Action Plaintiffs' First Amended Consolidated Master Complaint ("DAC"). *See* ECF 289.

access to a massive volume of highly sensitive data. Movate failed to monitor, rotate, or adequately secure employee credentials with administrative database access.

Cybercriminals easily exploited Cruz's compromised credentials to gain "maintenance access" to PowerSchool's SIS database. Through this access, hackers exported entire "Students" and "Teachers" database tables to .CSV files, exfiltrating the sensitive PII that Plaintiffs entrusted to PowerSchool.

School Districts assert claims against Movate for negligence, negligent hiring, training, supervision, and retention, and breach of contract as third-party beneficiaries to Movate's contract with PowerSchool. Movate seeks to avoid accountability by challenging this Court's jurisdiction and attacking the sufficiency of Plaintiffs' allegations.

Movate fails to acknowledge that it assumed a position of trust as PowerSchool's subcontractor with direct access to School Districts' most sensitive data. By doing so, Movate became an integral component of the data security framework that School Districts relied upon. Plaintiffs allege how Movate breached its duties through multiple security failures, how those failures directly caused the Data Breach, and ultimately contributed to Plaintiffs' resulting damages.

Movate's arguments universally fail. Plaintiffs therefore respectfully ask that this Court deny Movate's Motion in its entirety.

## PROCEDURAL HISTORY

The original master complaint for the Track Two Direct Actions was filed on August 11, 2025. ECF 258. Plaintiffs then became aware of the facts giving rise to Movate's liability. After obtaining leave to amend, Plaintiffs filed the operative School District Direct Actions First Amended Master Complaint ("DAC") on September 12, 2025. ECF 288. The amendment added Movate as a Defendant and included additional factual allegations, as well as three claims for relief asserted against Movate.

On November 17, 2025, Movate filed its Motion to Dismiss ("Motion" or "MTD"). ECF 366. Plaintiffs herein submit their response in opposition to the Motion.

1

## **MEET AND CONFER EFFORTS**

2   On November 26, 2025, Plaintiffs' counsel met and conferred with Movate's
3   counsel to streamline the issues to be addressed in the instant briefing. The Parties
4   discussed and heard their respective positions regarding issues surrounding choice of law
5   and several of Plaintiffs' claims. While no agreement was reached, the Parties came to a
6   mutual understanding regarding the scope of the issues to be addressed.

7

## **CHOICE OF LAW**

8   "In an MDL, the transferee court applies the law of its circuit to issues of federal
9   law, but on issues of state law it applies the state law that would have been applied to the
10  underlying case as if it had never been transferred into the MDL." *In re Soc. Media*
11  *Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.,* 753 F. Supp. 3d 849, 874 (N.D. Cal.
12  2024) (citing *In re Anthem, Inc. Data Breach Litig.*, 2015 WL 5286992, at *2 (N.D. Cal.
13  Sept. 9, 2015) (collecting Ninth Circuit cases)). A district court sitting in diversity must
14  "apply the substantive law of the state in which it sits, including choice-of-law rules."
15  *Harmsen v. Smith*, 693 F.2d 932, 946–47 (9th Cir. 1982).

16  Here, all Plaintiffs filed their complaints in California's federal district courts.
17  California's choice-of-law rules apply with respect to all claims against Movate.

18  As Movate notes, the Parties agreed to focus on the laws of Illinois, New
19  Hampshire, New York, Pennsylvania, Tennessee, and Utah for purposes of this briefing.
20  MTD at 10.  Movate contends that New York law applies to Plaintiffs' breach of contract
21  claims against Movate. MTD at 18–19. But Movate offers no legal analysis to support its
22  contention. It only mentions that the purported contract[2] between Movate and
23  PowerSchool contains a New York choice-of-law provision.

24  California courts apply section 187 of the Restatement Second of Conflict of Laws

25

26

27  _____

[2] While Plaintiffs do not dispute the authenticity of the contract ("GSA") attached to
28  Movate's Motion, Plaintiffs do not concede that this document encompasses the full
agreement relevant to Plaintiffs' claims for breach of contract.

("Restatement") to determine the enforceability of a choice-of-law provision. *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 464–465 (1992). Under this test, "[t]he party seeking to enforce the choice of law provision has the burden of demonstrating that the chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law." *Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1072 (N.D. Cal. 2020) (citing *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 917 (2001)).

No apparent substantial relationship appears in this case. PowerSchool and Movate are Delaware corporations headquartered in California and Texas, respectively. DAC ¶¶ 17, 18, 20. With no apparent geographic connection to the chosen jurisdiction, Movate does not meet its burden to show the existence of a substantial relationship. *See Ottman v. Anthem Life Ins. Co.*, 2015 WL 12683809, at *3 (C.D. Cal. Oct. 15, 2015) (declining to enforce provision designating Ohio law as the governing law when plaintiff was a California citizen and defendant was incorporated and headquartered elsewhere).

Movate likewise offers no other reasonable basis for the New York choice-of-law designation. And the total absence of any connection between these Defendants and New York points to an unreasonable, unenforceable provision. *Cf. Nat'l Specialty Pharmacy, LLC v. Padhye*, 734 F. Supp. 3d 922, 927 (N.D. Cal. 2024) (refusing to enforce forum selection clause because California had "no logical connection" to parties when plaintiff was domiciled in Nevada and defendant was incorporated in Delaware).

On the other hand, case law suggests an ulterior motive. At least one district court has noted that "courts interpreting New York law have not as been as expansive in applying the restatement to determine that unnamed third parties constitute third party beneficiaries of professional services contracts so as to allow those parties to maintain actions for breach of contract." *In re GlassHouse Techs., Inc.*, 604 B.R. 600, 616 (Bankr. D. Mass. 2019), *aff'd*, 654 B.R. 190 (D. Mass. 2023) (comparing interpretations of Massachusetts and New York law addressing third party breach of contract claims).

Movate offers no reason for this Court to depart from applying the law of the forum

state—California. To streamline this briefing, Plaintiffs address only New York law as applied to the breach of contract (third party beneficiary) claims. If the Court agrees with Plaintiffs and declines to enforce the choice-of-law provision, Plaintiffs request the opportunity to brief these claims as they apply under California law at a later time.

Nevertheless, Plaintiffs submit that regardless of which state's law applies, the result is the same: Movate's Motion fails.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a claim's plausibility, courts must assume the truth of the allegations pled and liberally construe them in favor of the non-moving party. *Jackson v. Health Ctr. Partners of S. California*, 2024 WL 3708867, at *2 (S.D. Cal. Aug. 7, 2024) (Benitez, J.) (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)). But "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Therefore, the relevant inquiry before the Court in this instance is not whether Plaintiffs will ultimately prevail, but whether they may offer evidence in support of their claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

## **ARGUMENT**

### **I.    THE COURT HAS SPECIFIC JURISDICTION OVER CLAIMS ARISING OUT OF MOVATE'S CONDUCT IN CALIFORNIA**

This Court has personal jurisdiction over Movate because: (1) Movate purposefully availed itself of the protections of California law by directing its activities toward California; (2) Plaintiffs' claims arise out of Movate's California activities; and (3) this Court's exercise of jurisdiction over Movate comports with due process. *See, e.g.*, *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.,* 972 F.3d 1101, 1107 (9th Cir. 2020); *Linlor v. JPMorgan Chase & Co.*, 2017 WL 3446814, at *4 (S.D. Cal. Aug 9, 2017) (Benitez, J.) (exercising specific jurisdiction based on defendant's "forum-related conduct"). Plaintiffs "must satisfy the first two prongs of this test"; "the burden then shifts to [Defendant] to present a compelling case that the exercise of jurisdiction would not be reasonable." *Global Commodities*, 972 F.3d at 1107.

When, as here, "[a] motion is based on written materials rather than an evidentiary hearing, [] plaintiff[s] need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citation omitted). And, as this Court has explained, "[w]here jurisdictional facts are in dispute, such as those here, uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Tokio Marine & Nichido Fire Ins. Co. Ltd. v. Precision Trucking*, 2009 WL 10672495, at *3 (S.D. Cal. Oct 16, 2009) (Benitez, J.) (internal quotation marks and citations omitted).

### **A. Movate Purposefully Directed Its Activities Toward California**

In cases involving tortious conduct, like this one, courts "typically inquire whether a defendant 'purposefully direct[s] [its] activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix Photo, Inc. v. Brand Techs.,* Inc., 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting *Yahoo! Inc. v. La Ligue Contre Le*

*Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)); *see also Schwarzenegger*, 374 F.3d at 803 ("[D]ue process permits the exercise of personal jurisdiction over a defendant who 'purposefully direct[s]' [its] activities at residents of a forum, even in the 'absence of physical contacts' with the forum." (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985))). Consistent with the "effects" test set forth in *Calder v. Jones*, 465 U.S. 783 (1984), Plaintiffs adequately allege that Movate purposefully directed its activities to California by: (1) committing an intentional act; (2) expressly aimed at California; (3) causing harm that Movate knew was likely to be suffered in California. *See, e.g., Mavrix Photo*, 647 F.3d at 1228; *Yahoo!*, 433 F.3d at 1206.

To adequately plead that Movate committed an "intentional act," Plaintiffs must allege that Movate had "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Here, Plaintiffs do just that by alleging that Movate, pursuant to its contract with PowerSchool, intentionally and knowingly accessed computer systems in California, including PowerSchool's SIS. *See, e.g.*, DAC ¶¶ 257–258, 261–262, 268, 290, 298. These allegations satisfy the first prong of the effects test. *See NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 825 (N.D. Cal. 2014) (finding jurisdiction over an Australian resident who "purposefully accessed [computer] systems in California").

Movate "expressly aimed" its intentional acts at California by: (1) contracting with PowerSchool, a California-based company; (2) performing services for PowerSchool's School District customers who accessed PowerSchool's systems by contracting with PowerSchool as it performed operations in California; and (3) accessing and exercising control over the PII that PowerSchool stored, collected, and purported to secure in California. *See, e.g.*, DAC ¶¶ 17, 258, 260–261, 268, 290. These allegations satisfy the second prong of the effects test. *See NetApp*, 41 F. Supp. 3d at 825, 826–27 ("[C]ourts have held that similar activities over the Internet can be sufficient to support personal jurisdiction.") (collecting cases); *see also Facebook, Inc. v. ConnectU LLC*, 2007 WL 2326090, at *5 (N.D. Cal. Aug. 13, 2017) ("[T]he technology of the Internet can . . . provide

a means whereby specific, targeted, conduct may be 'expressly aimed' at a particular individual or entity, despite the fact that the person engaging in the conduct may not know the geographic location of the individual or entity."). Movate's misconduct "caused harm" that it "knew would likely occur in California." *NetApp,* 41 F. Supp. 3d at 827.

Movate does not deny that it knew PowerSchool was located in California, that it was servicing PowerSchool's customers in California, or that its employees had access to and control over highly sensitive PII PowerSchool stored in California. DAC ¶¶ 17, 258, 260, 268, 277, 290. Movate knew that hackers routinely target this PII and use it for nefarious purposes (¶ 292), and it knew or should have known that school districts around the country have repeatedly experienced well-publicized data breach incidents resulting from compromised and unprotected credentials (¶ 293).

Plaintiffs accordingly satisfy all three prongs of the *Calder* effects test.

## B. Movate Purposefully Availed Itself Of California's Laws

Personal jurisdiction is also appropriate when, as here, "a defendant purposefully avail[s] [itself] of the privilege of doing business in a forum state[,]" which can be established with "evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802; *see also Yahoo!*, 433 F.3d at 1206. Here, Movate contracted with PowerSchool, a California-based company, to provide technical support and network operations to PowerSchool, and maintained access to and control over the data that Plaintiffs entrusted to PowerSchool and its subprocessors. *See, e.g.*, DAC ¶¶ 257–258, 268, 290, 303.

Specific details about Movate's and PowerSchool's contractual agreement are not publicly available and were not produced by Defendants until the time that Movate filed its Motion. Investigation of the Data Breach, however, revealed that Movate's employees were provided full access to PowerSchool customers' SIS data and full capability to exfiltrate the PII Plaintiffs entrusted to PowerSchool without any meaningful limitations on employee access. *See* DAC ¶¶ 258, 262, 290, 298.

With these allegations, Movate's forum-state contract with PowerSchool and the services it performed for PowerSchool's California customers satisfy the "purposeful availment" standard. *See, e.g., Absolute Software, Inc. v. Stealth Signal, Inc.*, 2005 WL 8164062, at *3–5, 8 (W.D. Wash. Mar. 7, 2005) (finding personal jurisdiction over defendant company specializing in computer security software because it maintained "an ongoing customer relationship with [forum] residents by nature of its service contract of monitoring and tracking its customers' laptop computers"); *Golden Valley Grape Juice & Wine, LLC v. Centrisys Corp.*, 2009 WL 4828743, at *7 (E.D. Cal. Dec. 9, 2009) (finding purposeful availment where defendant provided "ongoing warranty support and service" to a California resident).

## C. Plaintiffs' Claims Arise Out Of Movate's Activities In California

Plaintiffs' claims "arise out of" Movate's forum-related activities because they "would not have been injured 'but for'" Movate's misconduct. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *Facebook*, 2007 WL 2326090, at *7.

Movate does not dispute that the cybercriminals who perpetrated the Data Breach gained unfettered access to Plaintiffs' student and teachers' PII by using a Movate employee's stolen credentials. *See, e.g.*, DAC ¶¶ 72, 261–263. Plaintiffs thus plausibly allege that the Data Breach was caused by Movate's inadequate data security practices, including its failure to, inter alia: protect its employees' accounts with multi-factor authentication; properly restrict employees' access to sensitive PII; or adequately secure its employees' credentials. Plaintiffs have therefore shown that their alleged injuries would not have occurred but for Movate's forum-related activities.

Movate's arguments—that there is no relation between Movate's alleged contacts and Plaintiffs' claims because Plaintiffs do not allege facts showing that any of Movate's challenged conduct had anything to do with California itself—are also contradicted by Plaintiffs' well-pled allegations that their injuries resulted from Movate's performance of its contract with a California based-company, pursuant to which it exercised control over data PowerSchool stored in California.

### D. The Exercise of Jurisdiction Over Movate Comports With Due Process

Movate fails to meet its burden of "present[ing] a compelling case that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (cleaned up); *see also, e.g., Global Commodities*, 972 F.3d at 1107 (Plaintiffs "must satisfy the first two prongs of this test"; "the burden then shifts to [the defendant] to present a compelling case that the exercise of jurisdiction would not be reasonable."); *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991) ("Once purposeful availment and relatedness have been established, the forum's exercise of jurisdiction is presumptively reasonable.") (emphasis in original) (citation omitted).

Courts consider seven factors to evaluate the reasonableness of exercising jurisdiction over a non-resident defendant:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs;
> (2) the burden on the defendant of defending in the forum;
> (3) the extent of conflict with the sovereignty of the defendant's state;
> (4) the forum state's interest in adjudicating the dispute;
> (5) the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
> (7) the existence of an alternative forum.

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011); *see also Burger King*, 471 U.S. at 476–77. Movate falls far short of its burden to "present a compelling case that the exercise of jurisdiction would not be reasonable" here. *Global Commodities*, 972 F.3d at 1107; *see also* MTD at 9–10.

Movate's attempt to minimize its forum-related conduct ignores Plaintiffs' allegations. Movate cannot dispute that its challenged conduct arises from the contract it entered into with a California-based company, pursuant to which Movate provided services directly to PowerSchool's California customers, among others. DAC ¶¶ 257–258, 268. Nor can Movate refute that its employees had access to and exercised control over PII belonging to that PowerSchool held in California. *Id*. at ¶¶ 258, 262, 290. These factual allegations

distinguish this case from Movate's cited authorities. *Compare* MTD at 9 (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (finding that "the lone transaction for the sale of one item does not establish that the [d]efendants purposefully availed themselves of the privilege of doing business in California")), *with Absolute Software*, 2005 WL 8164062, at *3–5, 8 (finding exercise of personal jurisdiction reasonable where the defendant maintained "an ongoing customer relationship with [forum] residents by nature of its service contract of monitoring and tracking its customers' laptop computers").

Movate's argument that it has "no operational presence in this state" is contradicted by its own website, which lists an office location in San Jose, California. Movate has been registered to do business in California since 2000 (registration # 2219179) and has an actively registered business agent in California. *See L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011) (taking judicial notice of results of records searches on the California Secretary of State's business search website); *see also Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1070 (S.D. Cal. 2019) (exercising jurisdiction in part because defendant "maintain[ed] ties to California through having a designated agent for service of process and registration with the California Secretary of State"); *Bugarin v. All Nippon Airways Co.*, 513 F. Supp. 3d 1172, 1186 (N.D. Cal. 2021) (same).

Movate's argument that "[l]itigating in California would impose a significant burden" rings hollow. Any burden does not overcome the numerous other factors weighing in favor of personal jurisdiction here. *See, e.g.*, *Cascade Fund*, *LLLP v. Absolute Cap. Mgmt. Holdings Ltd.*, 707 F. Supp. 2d 1130, 1142 (D. Colo. 2010) (recognizing that litigating in the United States would impose a burden on a business entity organized under the laws of the Cayman Islands but concluding that "this burden is not so onerous or severe as to overcome [the defendant's forum-related contacts]").

Contrary to Movate's arguments, California has a strong interest in this litigation, which concerns its dealings with a California company that purported to guarantee the security of highly sensitive and confidential information. *See, e.g.*, *Imran v. Vital Pharms.*,

*Inc.*, 2019 WL 1509180, at *6 (N.D. Cal. Apr. 5, 2019) (finding California's interest significant when the class brought claims predominantly under California law, even when five other class-action lawsuits were pending in three other different federal districts); *Esquer v. StockX LLC*, 2020 WL 3487821, at *7 (N.D. Cal. June 26, 2020) (finding California's interest weighed against transfer where plaintiffs brought, inter alia, claims under California's UCL and a California statutory claim for failure to maintain "reasonable security" of personal information); *Linlor,* 2017 WL 3446814, at *4 (finding exercise of personal jurisdiction reasonable in part because "California has a strong interest in ensuring that its residents' credit disputes are serviced properly"). Because Movate has not met its burden to "present a compelling case that the exercise of jurisdiction would not be reasonable," its Motion should be denied. *See Schwarzenegger*, 374 F.3d at 802.

This conclusion is reinforced by California's strong interest in adjudicating claims brought by School Districts. California's legislature recognizes the unique financial challenges public entities face and seeks to serve equitable purposes when possible, as evidenced by the codified waiver of filing fees for those entities. *E.g.*, Cal. Gov't Code § 6103. The statute containing this exemption has expanded several times since its enactment. *See Guillemin v. Stein*, 104 Cal. App. 4th 156, 165–166 (summarizing expansion of statutory scope over time). Thus, California has a uniquely strong interest in overseeing the adjudication of claims against a company that purposefully availed itself of the benefits of doing business with a California company that exists by virtue of sales it makes to public entity subdivisions. *See* DAC ¶ 3 (identifying Plaintiffs as "divisions of public entities that exist for the benefit of public school students and the local communities they serve"); ¶ 54 (describing the vast extent of PowerSchool's reach in the EdTech market for K–12 schools).

Should the Court find that Plaintiffs have not sufficiently alleged specific jurisdiction, however, Plaintiffs respectfully request the opportunity to conduct limited jurisdictional discovery to assess the relevant contract(s) and the extent to which Movate conducts business in California. Discovery may be appropriately granted "where pertinent

facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc., Inc. v. Sys. Tech. Assocs., Inc*., 557 F.2d 1280, 1285 n.1 (9th Cir. 1977). To the extent that "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are relevant to the Court's determination of "whether [Movate] purposefully established minimum contacts within the forum[,]" jurisdictional discovery may be warranted here. *See Burger King*, 471 U.S. at 479.

## II.    PLAINTIFFS PLAUSIBLY ALLEGE BREACH OF CONTRACT CLAIMS AS THIRD-PARTY BENEFICIARIES UNDER THE GSA

A plaintiff may recover on a breach of contract claim as a third-party beneficiary under New York law "by establishing (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 451 N.E.2d 459, 469 (1983) (citations omitted).

Movate concedes that a valid and binding contract exists. MTD at 18–19. But Movate appears to challenge whether Plaintiffs' allegations establish the second and third elements. Thus, Plaintiffs address these elements. *Cf. Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 946 (S.D. Cal. 2021) (Benitez, J.) (considering only the mutual consent element of contract formation when neither party's briefing addressed the other three elements). As explained below, Plaintiffs adequately plead facts to establish these elements of their claims.

### A. Plaintiffs Are Third-Party Beneficiaries

"In determining whether a third-party beneficiary exists, courts look at the surrounding circumstances as well as the agreement." *Morris v. Zimmer*, 2014 WL 7474770, at *13 (S.D.N.Y. Feb. 11, 2014) (citing *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 679 (2d Cir. 1989)). "The best evidence, however, of whether the contracting parties intended a benefit to accrue to a third party can be ascertained from the

words of the contract itself." *Alicea v. City of New York*, 534 N.Y.S.2d 983, 985 (N.Y. App. Div. 1988)). Nonetheless, "it is well-settled that the obligation to perform to the third party beneficiary need not be expressly stated in the contract." *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 573 (2d Cir. 1991). A third party plaintiff may show that a contract was intended for his benefit when it is "clear from the language of the contract that there was 'an intent to permit enforcement by the third party.'" *Dormitory Auth. Of the State of N.Y. v. Samson Constr. Co.*, *Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 459 (N.Y. 2018) (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208, 212 (N.Y. 1985)).

Here, the GSA evinces a clear intent to permit enforcement by Plaintiffs. First, in the DPA—which *supersedes* the GSA in the event of any conflict—Section 1.5 defines "Education Records" as "presumed to be owned and under the control of PowerSchool's Customer(s)." DPA Section 5.5 provides that "[Movate] will use the Education Records only for the purpose of fulfilling its duties under the Agreement for PowerSchool Customer's and its Users' benefit." Contrary to Movate's characterization's, Movate's duties expressly inure for the benefit of PowerSchool's customers: Plaintiffs.

Second, Movate's duties run directly to Plaintiffs, as opposed to just PowerSchool. The GSA provides in Section 10.7 that "[Movate] will reasonably co-operate and assist in . . . notifying the affected Data Subject(s) of the unauthorized access." The GSA thus imposes duties that Movate owes to Plaintiffs, as well as to the actual students, teachers, and parents whose personal data it possessed. And "New York courts also examine whether the performance is rendered directly to a third party, in which case that party is generally considered an intended beneficiary of the contract." *Morris*, 2014 WL 7474770, at *13. Movate offers no reason to depart from this general rule.

Third, Section 2 of the GSA's superseding DPA states that its self-proclaimed purpose is "[t]o describe Supplier's responsibilities as a Vendor-Data Sub-processor for handling and protecting Customer Data." Movate's proffered interpretation would require the Court to discern an intent that PowerSchool alone would have the right to enforce

promises conferred on Plaintiffs. But courts "cannot interpret the contract in such a manner as to render [a] provision meaningless . . . " *City of Buffalo City Sch. Dist. v. LPCiminelli, Inc.*, 73 N.Y.S.3d 836, 842 (N.Y. App. Div. 2018). Denying Plaintiffs a right to sue under an agreement that unmistakably exists for their benefit would do exactly that. And it would circumvent New York's longstanding rule that "a contract should not be interpreted to produce a result that is absurd . . . ." *NCCMI, Inc. v. Bersin Props., LLC*, 208 N.Y.S.3d 27, 34 (N.Y. App. Div. 2024) (internal quotation marks and citations omitted).

Fourth, Section 15.1 of the DPA provides that "[t]he Parties acknowledge that Customer Data may include Personal Data from Education Records that are subject to Applicable Law of the applicable jurisdiction." Movate thereby acknowledges that it owes duties constrained by laws protecting students. The DAC explains in detail how these laws create duties running to School Districts. To argue the absence of an intent to benefit Plaintiffs in the face of this language goes against common sense.

This language taken together demonstrates that Plaintiffs are intended beneficiaries. Movate's arguments fail to negate the DPA's language demonstrating that "the parties' intent to benefit the third party" is "apparent from the face of the contract." *LaSalle Nat. Bank v. Ernst & Young LLP*, 729 N.Y.S.2d 671, 676 (N.Y. App. Div. 2001).

## B. The Contract Terms Are Sufficiently Pled On Information And Belief

Plaintiffs adequately plead Movate's contractual responsibilities throughout the DAC and fully satisfy applicable pleading standards. "To plead the existence of a contract, the plaintiff may set forth the terms of the contract verbatim, attach the contract as an exhibit to the pleading, or plead it according to its legal effect—*i.e.*, allege the substance of its material terms." *Grapevine Education, LLC v. Education Ventures, LLC*, 2023 WL 6536237, at *3 (S.D. Cal. Aug. 21, 2023). Federal courts "have generally recognized that relatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*." *Comfort Inn Oceanside v. Hertz Corp.*, 2011 WL 5238658, at *7 (E.D.N.Y. Nov. 1, 2011). Here, Plaintiffs allege that in the applicable contract, Movate "agreed to process, store, collect, and safeguard the sensitive and private data that Plaintiffs

entrusted to PowerSchool." DAC ¶ 303. Movate confirms the validity of this information and belief in its Motion. As identified in the quoted portions of the GSA above, Movate materially breached numerous provisions intended for Plaintiffs' benefit by "failing to adequately safeguard the data in its possession and allowing the Data Breach to occur[.]" *Id*. at ¶ 306. While perhaps too short and plain for Movate's liking, these allegations—combined with the GSA's confirmed terms—satisfy the key requirement to "put the defendant on notice as to what conduct is being called for defense in a court of law." *Anderson v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 525, 528–529 (5th Cir. 2008).

Movate argues that pleading on information and belief constitutes grounds on its own to dismiss the breach of contract claim. MTD at 22. This assertion ignores that "[i]n the early stages of litigation, plaintiffs may base their allegations, even jurisdictional ones, on information and belief when the allegations include facts that are primarily within the defendant's knowledge." *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 920 (S.D. Cal. 2020). At the time of filing the DAC, the GSA was a "matter[] within the opposing party's knowledge" of which Plaintiffs could "not be expected to have personal knowledge[.]" *Neubronner v. Milken*, 6 F.3d 666, 672 (9th. Cir. 1993). Since Movate has notice of the conduct at issue and now the provisions Plaintiffs allege Movate breached, the Court should reject Movate's arguments.

### C. Plaintiffs May Pursue Simultaneous Tort And Breach Of Contract Claims

Under New York law, "a contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract." *N. Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 239 N.E.2d 189, 193 (N.Y. 1968). Such a "duty may be imposed by law as an incident to the parties' relationship. Professionals, common carriers and bailees, for example, may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties." *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1369 (N.Y. 1992) (citations omitted). Both state and federal courts reject the notion that plaintiffs cannot pursue breach of contract claims concurrent with negligence claims arising from the same conduct. *E.g.*, *Matter of Part 60*

*Put-Back Litig.*, 165 N.E.3d 180, 190 (N.Y. 2020) ("[T]he defendant's conduct also gives rise to separate liability in tort arising from a duty of care independent of the contract, which duty of care may be breached by the same conduct constituting the contractual breach" (citation omitted)); *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) ("Where an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct."); *cf. Hoffmann v. Major Model Mgmt., Inc.*, 2022 WL 992795, at *3–5 (S.D.N.Y. Mar. 31, 2022) (remarking that a plaintiff could plead a breach of an "alleged duty to safeguard [p]laintiff's PII" despite being in privity with defendant).

Moreover, Movate's arguments fail as a matter of procedure regardless of whether Plaintiffs allege an independent duty. Rule of Civil Procedure 8(d)(2) provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Movate seeks to undermine this Rule in arguing that the Court should not permit Plaintiffs to pursue "duplicative" claims for breach of contract and negligence. MTD at 23. Federal district courts faced with similar arguments have rejected them, as the Court should in this case.

Rule 8(d) confirms that "a plaintiff need not commit to a single 'theory of the pleadings[.]'" *Does 1-4 v. Butler Univ.*, 712 F. Supp. 3d 1154, 1159 (S.D. Ind. 2024) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014)). Applying this Rule, district courts consistently permit a complaint to plead both contract and tort claims in the alternative. *See, e.g.*, *Jent v. BAC Home Loans Servicing, LP*, 2011 WL 2971846, at *4 (S.D. Ohio July 21, 2011) ("Plaintiffs correctly state that under Rule 8(d) they may plead contract and tort causes of action in the alternative."); *Cooley v. Salopian Indus., Ltd.*, 383 F. Supp. 1114, 1116 (D.S.C. 1974) (declining to require the "election of inconsistent remedies" and permitting plaintiff to "proceed under both a tort theory and a contract theory at the trial of the case on the merits."); *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp.

2d 521, 536–537 (S.D.N.Y. 2002) (allowing tortious interference with contract and tortious interference with prospective economic advantage to be pled in the alternative).

This procedural safeguard allows a plaintiff to pursue "duplicative" remedies at the pleadings stage—even when applicable state law does not. Federal courts observe that they "'should not be bound by a state law requiring that an election be made at the pleading stage, because a local practice of this type might cripple the flexible pleading provisions sanction by [Rule 8(d)(3)] and defeat the overriding federal policy of having disputes determined on their merits.'" *Cavi v. Evolving Sys., Inc.*, 245 F. Supp. 3d 604, 605 (D. Del. 2017) (cleaned up) (citations omitted).

Considering these authorities, dismissal of the breach of contract claims simply because they appear intertwined with negligence does not comport with federal pleading standards. The Court should allow Plaintiffs to exercise their rights under Rule 8(d)(2) and proceed on these alternative theories of recovery.

## III. PLAINTIFFS' NEGLIGENCE CLAIMS ARE ADEQUATELY PLED

### A. Plaintiffs Plausibly Allege The Legal Duty Movate Owed To Plaintiffs

Plaintiffs allege that Movate owed them "a duty to exercise reasonable care in handling, securing, and preventing unauthorized access to student and faculty PII." DAC ¶ 266. The DAC identifies numerous sources for this duty, including:

- The foreseeability of harm that Plaintiffs would surely endure if Movate failed to uphold this duty;

- The special relationship that arose when Movate took possession of the highly sensitive data and assumed a crucial role in ensuring Plaintiffs' data was secure;

- Industry standards and regulations applicable to Movate when it undertook responsibility for storing and protecting the data at issue;

- Duties explicitly applicable to Movate, a subprocessor, under the contracts Plaintiffs entered into with PowerSchool; and

- FTC guidelines that expressly required Movate, as a third-party service provided, to maintain reasonable security systems.

DAC ¶¶ 267–272. Movate's attempt to deny the adequacy of these well pled allegations contradicts the law of every jurisdiction applicable to its Motion.[3]

In Illinois, an appellate court rejected Movate's exact argument that "there is no common law duty to safeguard personal information in Illinois." *Flores v. Aon Corp.*, 2242 N.E.3d 340, 353 (Ill. App. Ct. 2023). Applying Illinois' four factor duty test, the *Flores* court found it "foreseeable that a failure to maintain reasonable security measures would allow unauthorized third parties to gain access to stored personal information, and . . . likely that a data breach of this information would cause injury to the individuals that the personal information belongs to." *Id*. at 354. Like Movate, the *Flores* defendant argued that plaintiffs failed to allege the requisite awareness of defective security practices. The court disagreed, reasoning that defendant was "a sophisticated company that provides cyber security services to its clients" and "well aware of the risks of providing inadequate security measures for personal information." *Id*.; *see* DAC ¶ 283 ("Movate, as a technology services provider, knew or should have known these risks and the likely consequences of its security failures."). On these facts, the court held that defendant had "common law duty to protect the personal information of its clients, in addition to its duty under the [Illinois] Information Protection Act." *Flores*, 2242 N.E.3d at 354.

*Flores* illustrates the objective legal falsehoods prevalent throughout Movate's duty arguments. In *Dittman v. UPMC*, Pennsylvania's Supreme Court held that defendant owed a "common law duty to act with reasonable care in collecting and storing [plaintiffs']

---

[3] Movate's Motion cites the law of several jurisdictions not among those on which the Parties previously agreed to focus their briefing. *See, e.g.*, MTD at 11 (citing cases applying common law principles of California and Michigan). Plaintiffs focus the briefing of this Opposition on the six representatives states' law. Plaintiffs who reside in states mentioned by Movate but not included within the jurisdictions the Parties agreed to brief reserve all rights, including the right to respond to these arguments at a later, appropriate time.

personal and financial information on its computer systems." 196 A.3d 1036, 1056 (Pa. 2018). Much like Movate, defendant "undertook the collection and storage of [plaintiffs'] requested sensitive personal data without implementing adequate security measures to protect against data breaches, including encrypting data properly, establishing adequate firewalls, and implementing adequate authentication protocol." *Id.* at 1047.

"Numerous courts applying New York law have denied motions to dismiss negligence claims in data breach cases." *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 594–595 (S.D.N.Y. 2022) (collecting cases). Case law contradicts Movate's assertion that Plaintiffs' duty allegations fail under New York law. *See, e.g.*, *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 469 (S.D.N.Y. 2022) (finding "duty of care exist[s] [under New York law] when the custodian [of data] was in the best position to protect information on its own servers from [a] data breach, understood the importance of data security to its business, knew it was the target of cyber-attacks, and touted its data security to current and potential customers"); *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 748 (S.D.N.Y. 2017) (recognizing existence of a "duty to take reasonable precautions to protect the PII" when plaintiffs "have no means to protect that information in the hands of the [defendant], nor is withholding their PII a realistic option.").

To overcome the weight of the preceding authorities, Movate relies on *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020). The *Smahaj* plaintiff "did not assert that AMCA was aware of any specific risks to its data security system, let alone that CBLPATH was aware of such risks to AMCA's network." *Id*. at 825. The court distinguished this from cases that "underscore[d] the foreseeability of harm, such as prior notice to data breaches, lax security measures, disabled security features, etc." *Id*. (citing *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441, at *5 (N.D. Ga. Mar. 5, 2018)). The DAC matches what the *Smahaj* court distinguished. Plaintiffs allege that Movate had notice of the importance of data security due to abundance of information about serious risks of inadequate security, including highly publicized breaches against educational institutions similarly situated to Plaintiffs. DAC ¶ 293.

Movate knew that educational technology systems are known high-value targets for cybercriminals; accounts with administrative database access are particularly attractive and dangerous attack vectors; and the lack of multi-factor authentication on privileged accounts being a critical security vulnerability. *Id*. at ¶ 282. And Movate was aware of the heightened regulatory environment governing educational data; the increased threats of data breaches to educational technology providers; and PowerSchool's prior notification to the FBI regarding targeting by threat actors. *Id*. at ¶ 277. Thus, Plaintiffs plausibly allege the duty element under New York law.

Courts applying the laws of the other representative states have permitted negligence claims to proceed when premised on "the duty to safeguard information." *See In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1173, 1175 (D. Minn. 2014) (denying motion to dismiss negligence claims of plaintiffs suing under New Hampshire law); *Haney v. Charter Foods N., LLC*, 747 F. Supp. 3d 1093, 1111 (E.D. Tenn. 2024) (finding that under Tennessee law "[d]efendants had a duty to take reasonable care to protect Plaintiffs from the data breach."); *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 818 (E.D. Ky. 2019) (determining that defendant "had a duty to take reasonable steps to safeguard [plaintiffs'] personal information" under Utah law). With this, the assertion that Movate owed no duty—or that Plaintiffs failed to plausibly allege one—simply does not square with settled law.

### B. Movate's Additional Arguments Do Not Negate The Existence Of A Duty

Movate does not clarify the necessity of a special relationship in relation to justifying dismissal of Plaintiffs' claims. MTD at 12–13. Nor does Movate make apparent the relevance of its other arguments regarding statutory duties of care, contract duties, or the breach of duties it evidently owed. Movate's arguments fail in any event.

First, the special relationship argument appears to advance the point that a defendant owes no duty to control the conduct of a third party absent a special relationship between the defendant and plaintiff. *See Pulka v. Edelman*, 40 N.Y.2d 781, 783–84 (N.Y. Ct. App. 1976). But that argument generalizes Plaintiffs' allegations in a manner that does not tell

the full story. In *Mckenzie*, the defendant used a similar technique when it "cited numerous cases that stand for the legal principle that there is no common law duty to protect persons from harm caused by unknown third parties in a data breach situation like this one." 369 F. Supp. 3d at 818. The court answered that defendant did "not comprehensively capture [p]laintiffs' claim for negligence," through which plaintiffs alleged that defendant "had a duty to safeguard the sensitive personal information that employees were obligated to provide [defendant] as conditions of their employment." *Id*. Reading the complaint in the light most favorable to plaintiffs, the court found that defendants "did have a duty to prevent foreseeable harm to its employees and, as part of that duty, had a duty to safeguard the sensitive personal information of its employees from unauthorized release or theft." *Id*.

Here, Plaintiffs allege that Movate had a duty to prevent foreseeable harm to them as beneficiaries of Movate's commercial relationship with PowerSchool. Movate's own affirmative acts gave it "unfettered access to PowerSchool's PowerSource customer support portal and SIS containing highly sensitive PII of School District students, parents, and faculty." DAC at ¶ 258. Movate thereby "assumed a position of trust and became an integral component of the data security framework that School Districts relied upon." *Id*. at ¶ 268. As such, "[t]his is not a case where the Plaintiffs claim that [Movate] was responsible solely for the actions of unknown third-party cybercriminals." *McKenzie*, 369 F. Supp. 3d at 818. Rather, Plaintiffs allege that Movate's own acts gave rise to "a duty to take reasonable steps to safeguard their personal information." *Id*.

Beyond *McKenzie*, federal courts frequently reject the view that Movate advocates here. *See, e.g.*, *Haney*, 747 F. Supp. 3d at 1111 ("Given the high level of foreseeability and known risks of data breaches, Defendants had a duty to take reasonable care to protect Plaintiffs from the data breach."); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 460–461 (S.D.N.Y. 2013) (noting that a special relationship arises when "the defendant has a created a duty to protect the plaintiff" (citation omitted)); *Sackin*, 278 F. Supp. 3d at 748 (finding duty when plaintiffs alleged that defendant "was aware of the sensitivity of PII and the need to protect it"); *Dittman*, 196 A.3d at 1045 (agreeing with

plaintiff's contention that "the fact that the ultimate harm in this case resulted from criminal activity does not eviscerate the duty [defendant] owed"). Movate's argument that Plaintiffs either failed or needed to plead a special relationship fails according to the applicable law and the pleadings themselves.

Next, the fact that a complaint pleads violations of federal statutes or regulations in conjunction with negligence claims does not merit dismissal. In the data breach context, "federal district courts have recognized negligence *per se* claims based on alleged violations of Section 5 of the FTC act." *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407 (E.D. Va. 2020). These courts have found "that not only does the underlying substantive law permit a negligence *per se* action to rest on a violation of federal statute, but also that plaintiffs whose information was allegedly compromised by a data breach fit within the class of plaintiffs sought to be protected from the type of harm proscribed by the statute." *Id.* (collecting cases). Thus, in *In Re Capital One*, the court allowed plaintiffs to proceed on negligence claims under New York law by "importing the standard of care from the FTC Act[.]" *Id.* at 407–408.

Movate attacks allegations related to statutory framework with a combination of dicta and inapposite cases. It follows with the proclamation that "Plaintiffs identify no statute, regulation, or standard that turns compliance expectations into a private cause of action or common-law duty." MTD at 14. But the DAC does just that. Plaintiffs permissibly allege that Movate did not comply with several applicable statutory standards of care (DAC ¶ 268) that courts have allowed to define duties owed by defendants in similar cases. *See, e.g.*, *First Choice Fed. Credit Union v. Wendy's Co.*, 2017 WL 9487086, at *4 (W.D. Pa. Feb. 13, 2017) (FTC Act); *In re: Premera Blue Cross Customer Data Sec. Breach Litig.*, 2017 WL 539578, at *21 (D. Or. Feb. 9, 2017) (HIPAA); *cf. Haney*, 747 F. Supp. 3d at 1112 (preserving plaintiffs' "ability to rely on failure to comply with Section 5 of the FTC Act and other statutory and regulatory violations as a vehicle to establish that [d]efendants breached their common-law duty"). Thus, the Court should allow Plaintiffs well pled negligence claims to proceed.

### C. Plaintiffs Plausibly Allege That Movate Breached The Duties Owed

Movate argues that Plaintiffs do not plausibly allege the breach of a duty because "Plaintiffs do not allege that Movate had any control over PowerSchool's decision to configure its systems or enforce authentication policies." MTD at 15. But Movate deliberately engaged in business with PowerSchool with the knowledge of PowerSchool's contractual obligations to implement multi-factor authentication, in addition to other security safeguards. DAC at ¶ 270. No binding authority requires Movate to have had independent control over PowerSchool's system configuration. And, in any event, Movate fails to acknowledge the allegations that it breached the duties it owed to secure its own employees' credentials (¶¶ 274-275), train employees about credential security (¶ 294, 299), implementing credential rotation policies (¶ 299), or apply least privilege principles to its employees' access levels (¶¶ 264, 280, 299). Like its arguments addressing duty, Movate's breach argument provides no cognizable basis to warrant dismissal.

### IV. PLAINTIFFS' ALLEGATIONS SUPPORT THEIR CLAIMS FOR NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION

Plaintiffs plausibly allege that Movate owed and breached its duty to adequately hire, train, supervise, and retain its employees or contractors who had access to the data containing the PII of Plaintiffs' students and faculty. DAC ¶¶ 289–291. Specifically, Plaintiffs allege that Movate breached its duty to prevent foreseeable harm to Plaintiffs, foreseeably suffer harm as the direct and proximate result of Movate's inadequate security practices. *Id*. at ¶ 292. Had Movate done so, the Data Breach would have been averted. *Id*. at ¶¶ 298, 301–302. These allegations suffice to support a plausible entitlement to relief based on Plaintiffs' claims for negligent hiring, training, supervision, and retention.

Unable to overcome the sufficiency of these allegations, Movate proposes that the Court should dismiss these claims because the DAC lacks facts showing Movate knew or should have known of the employee's propensity to engage in the conduct that caused the plaintiff's injuries. MTD at 16. That proposition mistakes the standard at the pleadings stage. "Ultimately, 'negligent supervision' is just negligence—there are no special

elements just because the claim, as a convenient shorthand, specifies the allegedly negligent action in its title." *Does 1-4 v. Butler Univ.*, 712 F. Supp. 3d 1154, 1159 (S.D. Ind. 2024) (citation omitted). Federal courts recognize that negligent supervision is not an intentional tort; rather, it is analyzed like all other negligence claims. With this, Plaintiffs' allegations of Movate's specific failures plausibly entitle them to relief. *Compare* DAC ¶ 294 (alleging that Movate failed to train employees and agents about the importance of protecting their passwords, require credential changes at regular intervals, and provide restricted access, leading to the Data Breach), *with In re Bank of Am. California Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 917 (S.D. Cal. 2023) (Burns, J.) (finding allegations that defendant "failed to ensure its agents were subjected to background checks" sufficient to support claims premised on defendant's failure to implement and maintain reasonable security procedures and practices).

Movate lastly argues the Court should dismiss these claims because "it is equally plausible that Movate acted with due care under the facts alleged[.]" MTD at 17. Notwithstanding Movate's incorrect assertion, it woefully mistakes the standard the Court must apply. A "[p]laintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis in original). Assuming the truth of facts pled, Movate entirely failed to train employees about the importance of protecting their passwords, did not require credential changes at regular intervals, and provided unrestricted access to low-ranking employees, no reasonable person could conclude that Movate's responsibility is implausible. And even if  Movate offered an equally plausible "alternative explanation" for what caused the Data Breach, the DAC still "survives a motion to dismiss under Rule 12(b)(6)." *Ibid*.

## CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that this Court deny Movate's Motion to Dismiss in its entirety. If the Court grants the Motion in whole or part, Plaintiffs request leave to amend their complaint.

1

2                                             Respectfully submitted,

3

4   DATED: December 2, 2025              By: _/s/ William B. Shinoff_____

5                                             James P. Frantz (State Bar No. 87492)
                                              William B. Shinoff (State Bar No. 280020)
6                                             Kristin J. Westphal (State Bar No. 202046)
                                              Edward M. Burak (State Bar No. 361196)
7
                                              **FRANTZ LAW GROUP, APLC**
8                                             402 W. Broadway, Suite 860
9                                             San Diego, CA 92101
                                              (619) 233-5945
10                                            jpf@frantzlawgroup.com
                                              wshinoff@frantzlawgroup.com
11                                            kwestphal@frantzlawgroup.com
                                              eburak@frantzlawgroup.com
12

13
                                              Daniel Shinoff (State Bar No. 99129)
14                                            Gil Abed (State Bar No. 195771)
15                                            **ARTIANO SHINOFF**
                                              3636 Fourth Avenue, Suite 200
16                                            San Diego, CA 92103
17                                            (619) 232-3122
                                              dshinoff@as7law.com
18                                            gabed@as7law.com
19
                                              Peter Mello (MA Bar No. 659680)
20                                            *Admitted Pro Hac Vice*
21                                            Felicia Vasudevan (MA Bar No. 687463)
                                              *Admitted Pro Hac Vice*
22                                            **MURPHY, HESSE, TOOMEY & LEHANE
23                                            LLP**
                                              50 Braintree Hill Office Park, Suite 410
24                                            Braintree, MA 02184
25                                            (617) 479-5000
                                              pmello@mhtl.com
26                                            fvasudevan@mhtl.com

27

28

School District Direct Action Plaintiffs' Opposition to Movate's Motion to Dismiss

Paul W. Evans (AL Bar Member)
*Admitted Pro Hac Vice*
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS, & MILES, P.C.**
24 Commerce Street
Montgomery, AL 36103
(334) 269-2343
paul.evans@beasleyallen.com

*Attorneys for Plaintiffs, Co-Lead Counsel, and*
*Steering Committee for the Track Two School*
*District Direct Actions*