James E. Cecchi (NJ 030861989)
*Admitted Pro Hac Vice*
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
Email: jcecchi@carellabyrne.com

*Lead Counsel for the proposed School
District Class and Counsel for Class
Action Plaintiffs*

James P. Frantz (SBN 87492)
William B. Shinoff (SBN 280020)
**FRANTZ LAW GROUP, APLC**
402 W. Broadway, Suite 860
San Diego, CA 92101
Tel.: (619) 233-5945
Email: jpf@frantzlawgroup.com
wshinoff@frantzlawgroup.com

*Co-Lead Counsel for the School District
Direct Action Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION,<br><br>*This Document Relates to the Track Two School District Actions* | Case No. 25-md-3149-BEN-MSB<br><br>MDL 3149<br><br>CONSOLIDATED MDL DOCKET |

**TRACK 2 PLAINTIFFS' SYNOPSIS AS TO
DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS
THE SCHOOL DISTRICT AMENDED PUTATIVE CLASS ACTION
COMPLAINT AND THE SCHOOL DISTRICT ACTIONS FIRST AMENDED
<u>MASTER CONSOLIDATED COMPLAINT (TRACK 2)</u>**

## I.   PROCEDURAL HISTORY

School District Direct Action Plaintiffs ("DAPs") filed their First Amended Consolidated Master Complaint on September 12, 2025. (Dkt. 288). School District Class Action Plaintiffs ("CAPs") filed their Amended Class Action Complaint on August 12, 2025. (Dkt. 263). Defendant Bain Capital, L.P. ("Bain") filed its Motion to Dismiss the School District Amended Putative Class Action Complaint and the School District Direct Actions First Amended Master Consolidated Complaint (Track 2) ("Motion to Dismiss") on September 25, 2025. (Dkt. 303). CAPs filed their Opposition to the Motion to Dismiss on October 27, 2025. (Dkt. 342). DAPs also filed their Opposition to the Motion to Dismiss on October 27, 2025. (Dkt. 344). Bain filed its Reply in Support of its Motion to Dismiss on November 26, 2025. (Dkt. 379).

On December 1, 2025, the Court entered an Order requiring the parties to file separate synopses addressing, *inter alia*, Bain's Motion to Dismiss. (Dkt. 380). CAPs and DAPs address their respective arguments in opposition to Bain's Motion to Dismiss below.

## II.   BAIN ARGUES THE COURT HAS NO PERSONAL JURISDICTION OVER BAIN.

Bain argues CAPs make only conclusory allegations that Bain is subject to personal jurisdiction in California and no allegations that Bain is subject to jurisdiction in any other transferor jurisdiction. CAPs submit this Court has personal jurisdiction over Bain for multiple reasons: (1) under the theory of successor liability, Bain's acquisition of PowerSchool affords a basis for specific jurisdiction; (2) Bain expressly aimed its conduct at New Jersey and New York, thus establishing specific jurisdiction for purposes of CAPs' claim for intentional interference tortious interference with contract; (3) this Court's exercise of jurisdiction over Bain comports with due process; and (4) pendent personal jurisdiction is appropriate because CAPs' state law claims share a common nucleus of operative facts with their federal claim under the CFAA.

Bain's arguments regarding DAPs' failure to establish personal jurisdiction are substantially similar. DAPs rely on allegations that Bain directly controlled PowerSchool's



decision-making. DAPs focus on Bain's intentional acts that created cybersecurity vulnerabilities, hampering PowerSchool's ability to protect the data in its custody. Bain also argues that DAPs do not allege a nexus between Bain's contacts and DAPs' injuries. DAPs respond that "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 (2014). DAPs argue that their allegations aimed at Bain's course of dealing with PowerSchool suffice to show purposeful availment. DAPs further contend that the Court may exercise jurisdiction over Bain as PowerSchool's controlling alter ego. Bain replies that DAPs made a strategic decision to file short-form complaints. The reply adds that DAPs sue on alleged injuries from a data breach unrelated to its acquisition of PowerSchool. Bain's reading of the allegations leads Bain to summarily conclude that the theories of jurisdiction are rooted in an October 1, 2024 transaction, as opposed to Bain's purposeful conduct directed at a California company that it controlled before and after that date.

## III.    BAIN ARGUES THE DIRECT ACTION COMPLAINT FAILS TO STATE A CLAIM AGAINST BAIN ON AN ALTER EGO THEORY OF LIABILITY.

**(i) Motion:** Bain argues that DAPs do not plausibly allege that (1) Bain controlled PowerSchool's day-to-day operations such that the separate corporate personalities of both companies ceased to exist, and that (2) it would be inequitable to decline applying the "extreme remedy" of alter ego liability, citing *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 539 (2000). Bain contends that DAPs' allegations of control are impermissibly threadbare and that DAPs call for an application of law that would severely chill private investment across the country. Bain adds that it cannot be liable as PowerSchool's alter ego because DAPs do not allege that Bain and PowerSchool commingled funds, corporate records, or assets, nor that that the companies shared offices, employees, directors, or officers, among other factors Bain fashions as required. Bain states that DAPs' allegations lack the typical indicia of the day-to-day control required for alter ego liability but instead focus on Bain's past conduct. And Bain repeatedly characterizes

itself as a passive investment company in arguing that DAPs' allegations do not evince the level of domination and control necessary to pierce the corporate veil.

**(ii) Opposition:** DAPs counter that California law applies and that "[u]nder California law, inadequate capitalization of a subsidiary may alone be a basis for holding the parent corporation liable for acts of the subsidiary." *Slottow v. Am. Cas. Co. of Reading, Pennsylvania*, 10 F.3d 1355, 1360 (9th Cir. 1993) (citations omitted). DAPs cite to their allegations that Bain saddled PowerSchool with substantial debt that was used to finance its buyout of PowerSchool, imposing significant financial pressures on the company's operations. DAPs argue that preventing Bain from facing liability would promote injustice because, as DAPs allege, Bain burdened PowerSchool with loans and demanded aggressive cost reductions at the expense of investments in cybersecurity and stability which led to the Data Breach giving rise to DAPs' actions. DAPs also distinguish the cases Bain relies on. DAPs note that *DePetris v. Traina*, 211 A.D.3d 939, 181 N.Y.S.3d 298 (2022) did not concern *allegations* but *evidence* of undercapitalization. And DAPs distinguish *Standex Int'l Corp. v. QCP, Inc.*, 2017 WL 481447 (S.D.N.Y. Feb. 6, 2017), in which the plaintiff only alleged that the parent company defendant had acquired a subsidiary and thereby assumed its liabilities and obligations. DAPs observe that courts routinely deny motions to dismiss claims alleged on the basis of alter ego liability because they require the resolution of factual questions most appropriately addressed at evidentiary stages of proceedings. In response to Bain's continual focus on its status as an investment company, DAPs assert that the relevant inquiry requires consideration of the level of control and how the other corporation is utilized by the owner, rather than the type of controlling alter ego involved. DAPs lastly advance that equity and judicial policy favor application of the alter ego doctrine based on DAPs' allegations and the circumstances of the case. DAPs cite *Dolarian Cap., Inc. v. SOC, LLC*, in which the court construed the pleadings in plaintiff's favor to conclude that plaintiffs plausibly alleged defendant was "organize[d] and carrie[d] on business without substantial capital in such a way that the corporation [was] likely to have

no sufficient assets available to meet its debts[.]" 2013 WL 433001, at *4 (E.D. Cal. Feb. 1, 2013) (internal quotation marks and citation omitted).

**(iii) Reply:** Bain replies that DAPs cannot identify any non-conclusory allegations supporting their argument that Bain controlled PowerSchool before Bain acquired a controlling ownership interest in PowerSchool. Bain argues that DAPs fail to satisfy the high bar to plead alter ego liability irrespective of the time Bain engaged in any of the relevant conduct alleged, citing *Santa Clarita Org. for Plan. & Env't v. Castaic Lake Water Agency*, 1 Cal. App. 5th 1084, 1105 (2016*), as modified on denial of reh'g* (Aug. 16, 2016). According to Bain, DAPs' "only alter ego arguments" concern whether PowerSchool was a conduit for Bain's affairs and whether PowerSchool was undercapitalized. Bain characterizes the business decisions at issue in DAPs' allegations as "unspecified" and repeatedly cites *SEC v. Hickey*, 322 F.3d 1123 (9th Cir. 2003), for the proposition that Bain is immune from liability for anything Bain did before October 2024.

Bain's reply also mentions DAPs' contention that when Bain and PowerSchool entered into a merger agreement, Bain appointed new PowerSchool board members and assumed full responsibility for key decisions related to operations, cybersecurity, and finances. Bain claims that DAPs' Complaint did not allege this. Bain then contends that, as a matter of fact, DAPs' allegations describe regular board-level oversight of business policies constituting standard practices among investors. Bain's string citation that follows this proposition includes several state court decisions applying state procedural rules to alter ego liability allegations. *See, e.g.*, *S.M. v. Madura*, 223 A.D.3d 486, 487 (N.Y. App. Div. 2024); *PXP Producing Co. v. MitEnergy Upstream LLC*, 342 A.3d 402, 417 (Del. Ch. 2025); *Santa Clarita Org. for Plan. & Env't*, 1 Cal. App. 5th at 1106. In addition, Bain advances that DAPs did not sufficiently allege undercapitalization because DAPs merely point to vague allegations of Bain's pressure campaign on PowerSchool before and after acquisition. It argues that these allegations do not suffice because DAPs allege only that Bain carried a higher debt load post-acquisition than it did pre-acquisition, when the relevant question is whether a defendant's capital was sufficient to operate its normal

business. *See In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1154–55 (S.D. Cal. 2018). Bain does not address the opposition's points regarding Bain's decisions forced upon PowerSchool through which PowerSchool took on considerably more risk than before the merger occurred, making the data breach more likely and foreseeable. Further, Bain makes no attempt to distinguish Ninth Circuit cases the opposition quoted to clarify that undercapitalization alone may suffice to apply the alter ego doctrine under California law. *E.g.*, *Slottow*, 10 F.3d at 1360. Bain instead replies that DAPs do not allege bad faith beyond conclusory allegations that Bain obtained benefits that Bain characterizes as unidentified.

## IV. BAIN ARGUES CAPS FAIL TO STATE A CLAIM.

### A. Intentional Interference with Contractual Relation (Count 2)

Bain argues that CAPs' allegations regarding Bain's intentional interference with PowerSchool's performance are conclusory and fail to allege that Bain acted intentionally to induce a breach; that Bain's actions caused CAPs' alleged injuries; or that PowerSchool even breached the alleged contracts with CAPs in the first place. CAPs argue they sufficiently allege that: (1) Bain's drastic workforce reductions after its merger with PowerSchool and only months before the Data Breach prevented PowerSchool from complying with its contractual data security promises, thus interfering with those contracts; (2) Bain's approved reduction and international outsourcing of, *inter alia*, PowerSchool's workforce such as those responsible for reviewing access controls and network monitoring, "expressly breached PowerSchool's contractual and other obligations with the School Districts," because it prevented PowerSchool from providing the promised level of cybersecurity protections, exposing CAPs to the Data Breach and consequent harms; and (3) that PowerSchool breached its Master Services Agreements and Data Privacy Agreements by failing to encrypt and abide by access restrictions to the security of CAPs' highly sensitive PII and PHI.

## B.    Negligence (Count 3)

Bain argues that CAPs fail to state a negligence claim because they fail to allege that Bain owed them a duty of care and that absent duty, there can be no breach and thus no negligence. Bain also argues that CAPs fail to allege that Bain proximately caused the data incident because their conclusory allegations that Bain encouraged PowerSchool to reduce costs and headcount, or to increase personnel based outside the United States, are too attenuated from any harm alleged to adequately plead causation. Finally, Bain argues that CAPs also fail to adequately plead concrete damages. CAPs state they have alleged all the necessary elements of their negligence claim. Bain owed a duty of care to CAPs because it knew, or should have known, of PowerSchool's promises and representations vis-à-vis data security; the vast amount of personal and sensitive data PowerSchool collected, stored, and controlled that was owned by CAPs; and the serious risks of a data breach and the subsequent harm to CAPs. Thus, Bain had an independent duty not to cause PowerSchool to breach its duty of care or to increase the risk of a data breach through Bain's cost-cutting measures. *See In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig. ("AMCA")*, 2021 WL 5937742, at *14-15 (D.N.J. Dec. 16, 2021) ("[i]t is axiomatic that a defendant has a duty to protect a plaintiff against foreseeable harm."). Because Bain profited from PowerSchool's data-dependent business and controlled the resources that provided security to PowerSchool's SIS system, it owed a duty of care to CAPs. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019). Further, "one's general duty to exercise due care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct (including the reasonably foreseeable negligent conduct) of a third person." *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 145 (2018). Thus, Bain's duty to exercise due care required it not to place PowerSchool, and thus CAPs, in a situation in which they were exposed to the unreasonable risk of a data breach through the reasonably foreseeable conduct of threat actors hacking into and breaching the SIS. Because CAPs have established Bain's duty, Bain has waived any right to dispute the existence of a breach



of that duty. CAPs have sufficiently alleged proximate cause at the pleading stage. Finally, CAPs have sufficiently alleged concrete damages for the reasons set forth in Section B of their opposition to PowerSchool's Motion to Dismiss.

### C.    Computer Fraud and Abuse Act ("CFAA") (Count 4)

Bain argues CAPs fail to state a claim for violation of the CFAA because they do not allege that Bain "accessed" or "exceed authorized access" to a computer, or that it conspired to do so. CAPs state that "the CFAA penalizes both access without authorization *and* situations where a defendant possesses some authorization, but acts excess of that authorization." *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1172 (C.D. Cal. 2018) (citing to 18 U.S.C. § 1030(a)(2)(c)). CAPs allege that PowerSchool intentionally intruded into CAPs' Protected Computers in violation of those access restrictions. CAPs also allege that "Bain Capital knowingly authorized or ratified PowerSchool's use of a Backdoor Access Tool that bypassed bargained-for consent and access protocols," Bain "directed or allowed PowerSchool to engage in conduct that Bain Capital knew would—or was willfully blind to—violate the CFAA. Moreover, PowerSchool's layoffs required Bain to take action by providing approval in writing. Bain Capital's oversight role extended not only to governance but also to risk mitigation and legal compliance" and it stood to financially benefit from PowerSchool's violation of the CFAA. These allegations support a conspiracy. *See Ryanair DAC v. Booking Holdings Inc.*, 636 F. Supp. 3d 490, 510 (D. Del. 2022) ("[c]ourts have routinely entertained claims under section 1030(b) in civil cases."). Like *In re: Lenovo Adware Litig.*, CAPs have alleged "facts showing 'a knowing agreement with another to commit the unlawful act.'" 2016 WL 6277245, at *6 (N.D. Cal. Oct. 27, 2016).

### D.    California Comprehensive Data Access and Fraud Act ("CDAFA") (Count 5)

Bain argues CAPs fail to state a claim for violation of the CDAFA because their allegations as to Bain's conduct are conclusory and fail to allege that Bain engaged in any of the actions proscribed by the relevant provisions, acted with the requisite knowledge or



intent, or caused damages or loss. CAPs allege that Bain directed PowerSchool's use of a tool, the Backdoor Tool, to secretly and without the knowledge of CAPs, access the Protected Data with full knowledge that it was doing so without the requisite consent. *See Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147 (C.D. Cal. 2018) (use of tool to access computer network was knowing, intentional effort and thus violated the CDAFA). As for CAPs' alleged losses, they allege they incurred losses, "including the cost of responding to the Data Breach, conducting damages assessments, restoring SIS data, programs, systems, or information to its condition prior to the Data Breach, costs incurred from overpayment of PowerSchool's security services, and/or other consequential damages."

### E.    Unjust Enrichment (Count 7)

Bain argues that CAPs fail to state an unjust enrichment claim because they make no non-conclusory allegations that Bain received or retained any direct benefit at their expense. CAPs state they allege that Bain received some of the money that Cass Action CAPs paid to PowerSchool, while also benefiting from cost-cutting by directing PowerSchool to skimp on data security funding. They allege that Bain was financially incentivized to reduce PowerSchool's operational costs to boost PowerSchool's gross profit margin, *i.e.*, Bain's own bottom line. Accordingly, CAPs' allegations that Bain received and unjustly retained a benefit from CAPs are hardly conclusory. *See In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 413 (E.D. Va. 2020) (concluding that "[r]etaining…profits without adequately securing the data would be unjust.").

### F.    Declaratory Judgment Act (Count 8)

Bain argues that CAPs fail to state a declaratory and injunctive relief claim under 28 U.S.C. § 2201 because this statue does not provide an independent cause of action and because such a claim is unnecessary where an adequate remedy exists. CAPs state that "[u]nder 28 U.S.C. § 2201(a), the Court may, in its discretion, declare the rights of the parties in the event of an actual controversy between them." *Canal Ins. Co. v. Fema*

*Trucking, LLC*, 2022 WL 3227188, at *5 (D.N.J. Aug. 10, 2022). Thus, the Court is empowered to resolve the dispute regarding Bain's obligations to CAPs and Class Members with respect to Bain's obligation to CAPs. Further, declaratory relief is necessarily forward looking and intended to prevent future harm rather than compensate for past injuries. *See In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1151 (C.D. Cla. 2021). It would be premature to dismiss CAPs' claim at this stage. *See Clemens v. ExecuPharm, Inc.*, 678 F. Supp. 3d 629, 639 (E.D. Pa. 2023).

### G.    CAPs Do Not Engage in Group Pleading

Bain argues that CAPs' claims for negligence, violation of the CDAFA, unjust enrichment, and declaratory and injunctive relief must be dismissed for improper group pleading in violation of Rule 8. CAPs state that, consistent with the standards for a Rule 12 motion, CAPs' specific allegations, and the reasonable inferences that may be drawn therefrom, provide ample notice of Bain's illegal conduct that forms the basis of CAPs' claims.

## V.    BAIN ARGUES DAPS FAIL TO STATE A CLAIM.

### A.    Intentional Interference with Contractual Relations (Count 7)

**(i) Motion:** Bain's arguments regarding DAPs' claims for intentional interference with contractual relations largely mirror those aimed at CAPs. Bain rehashes the use of the word "conclusory" repeatedly in how it describes DAPs' allegations pertaining to any given element. Bain states that DAPs do not specifically allege any facts demonstrating that Bain directed reductions in cybersecurity resources or staff headcounts. It offers no federal case law to indicate what level of specificity is required, nor does Bain explain why DAPs' allegations do not contain the undefined requisite level of specificity. Similarly, Bain argues that DAPs do not allege that Bain procured a breach of contract with an (undefined) requisite level of specificity. Bain says that DAPs do not point to anything establishing direction, encouragement, or pressure from Bain. Per Bain's reading of DAPs' allegations, DAPs rely on an assumption in a financial forecast that is shared with the SEC and the market. Bain asserts that this is an element of a normal-course business transaction

and claims it is insufficient to establish inducement of a contractual breach. Bain lastly contends that DAPs' tortious interference claims must fail because DAPs do not plead allegations showing an underlying breach of contract.

**(ii) Opposition:** DAPs respond that the allegations pled sufficiently allege that Bain had knowledge of Bain's interference with the performance of the contracts. DAPs rely on allegations that Bain had actual knowledge of the contractual terms that require certain levels of security, and that Bain still deliberately reduced PowerSchool's spending on cybersecurity, laid off PowerSchool's cybersecurity personnel, and outsourced PowerSchool's operations to knowingly unreliable subcontractors, in deviation from the industry standards by which PowerSchool promised to abide. DAPs argue that their allegations suffice because liability may arise when a defendant induces actions that render the performance of the contract impossible, citing *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993). And DAPs contend that they allege causation and breach through Bain's acts of encouraging, instructing, and pressuring PowerSchool to make reductions in work force spending and increased outsourcing, making Bain the "but-for" cause of the contractual breach alleged. DAPs reference *In re MOVEit Customer Data Sec. Breach Litig.*, in which the court found "plead[ing] that this specific breach could not have occurred but for Defendants' failure to take certain preventative steps" was "sufficient." , 2025 WL 2179475, at *26 (D. Mass. July 31, 2025).

**(iii) Reply:** Bain's reply relies on the merger agreement as factually establishing that Bain and its affiliates did not have a right to control PowerSchool or direct any of its actions. Thus, Bain asserts that it cannot be held liable for tortious interference because the merger agreement apparently establishes as a matter of fact that Bain did nothing to interfere with these contracts at any relevant time. Undeterred by the opposition's notion that the Court must take all factual allegations as true, Bain insists that none of the referenced allegations show Bain knew that interference was certain or substantially certain to occur as a result of its actions, citing *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998).

Dated: December 8, 2025

Respectfully submitted,

  /s/ James E. Cecchi
James E. Cecchi (NJ 030861989)
*Admitted Pro Hac Vice*
Jason H. Alperstein (FL 64205)
*Admitted Pro Hac Vice*
Jordan M. Steele (SBN 362684)
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
Email: jcecchi@carellabyrne.com
Email: jalperstein@carellabyrne.com
Email: jsteele@carellabyrne.com

*Lead Counsel for the proposed School
District Class and Counsel for Class Action
Plaintiffs*

John Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
402 W Broadway, Suite 1760
San Diego, California 92101
Tel.: (858) 209-6941
Email: jnelson@milberg.com

M. Anderson Berry (SBN 262879)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Tel.: (916) 823-6955
Email: anderson@emeryreddy.com

Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel.: (954) 525-4100
Email: cardoso@kolawyers.com

Tyler S. Graden (NJ 028462007)
*Admitted Pro Hac Vice*
**KESSLER TOPAZ
  MELTZER CHECK LLP**



280 King of Prussia Road
Radnor, Pennsylvania 19087
Tel.: (610) 667-7706
Email: tgraden@ktmc.com

*Steering Committee for the
proposed School District Class*

Michael Critchley, Sr. (NJ 251821972)
*Pro Hac Vice Forthcoming*
**CRITCHLEY & LURIA, LLC**
75 Livingston Avenue
Roseland, New Jersey 07068
Tel.: (973) 422-9200
Email: mcritchley@critchleylaw.com

*Additional Counsel for Class Action
Plaintiffs*


    /s/ William B. Shinoff
James P. Frantz (State Bar No. 87492)
William B. Shinoff (State Bar No. 280020)
Kristin J. Westphal (State Bar No. 202046)
Edward M. Burak (State Bar No. 361196)
**FRANTZ LAW GROUP, APLC**
402 W. Broadway, Suite 860
San Diego, CA 92101
(619) 233-5945
jpf@frantzlawgroup.com
wshinoff@frantzlawgroup.com
kwestphal@frantzlawgroup.com
eburak@frantzlawgroup.com

Daniel Shinoff (State Bar No. 99129)
Gil Abed (State Bar No. 195771)
**ARTIANO SHINOFF**
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
(619) 232-3122
dshinoff@as7law.com
gabed@as7law.com

Peter Mello (MA Bar No. 659680)
*Admitted Pro Hac Vice*
Felicia Vasudevan (MA Bar No. 687463)
*Admitted Pro Hac Vice*



**MURPHY, HESSE, TOOMEY & LEHANE LLP**
50 Braintree Hill Office Park, Suite 410
Braintree, MA 02184
(617) 479-5000
pmello@mhtl.com
fvasudevan@mhtl.com

Paul W. Evans (AL Bar No. 9270Z18F)
*Admitted Pro Hac Vice*
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
24 Commerce Street
Montgomery, AL 36103
(334) 269-2343
paul.evans@beasleyallen.com

*Attorneys for Direct Action Plaintiffs, Co-Lead Counsel, and Steering Committee for the Track Two School District Direct Actions*

