David S. Casey, Jr., Cal. State Bar No. 60768
dcasey@cglaw.com
**CASEY GERRY**
**FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811

Carol C. Villegas, N.Y. State Bar No. 4154324*
cvillegas@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700

James J. Pizzirusso, D.C. State Bar No. 477604*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200

*Co-Lead Counsel for Track One Plaintiffs*

**Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION | Case No.: 3:25-md-3149-BEN-MSB<br><br>**TRACK ONE PLAINTIFFS' SYNOPSIS IN RESPONSE TO THE COURT'S DECEMBER 1, 2025 ORDER**<br><br>Ctrm.: 5A<br>Judge: Hon. Roger T. Benitez |

Pursuant to the Court's December 1, 2025, Order, Track One Plaintiffs respectfully submit a synopsis of Defendant Bain Capital's Motion to Dismiss for Failure to State a Claim (the "Motion to Dismiss" or "Motion") the Consolidated Individual User Putative Class Action Complaint (the "Complaint"). Dkt. 259.

## I.   INTRODUCTION

On August 11, 2025, Track One Plaintiffs filed a Consolidated Complaint naming Bain as a Defendant (Dkt. 259), which Bain moved to dismiss on September 25th. Dkt. 286.  Bain's Motion challenged Plaintiffs' claims on five ground: (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction; (3) failure to establish alter ego, agency, or vicarious liability; (4) improper group pleading pursuant to Fed. R. Civ. P. 8; and (5) failure to state direct liability claims for negligence, unjust enrichment, negligent training and supervision, California's Consumer Privacy Act, California's Unfair Competition Law, and aiding and abetting. On October 10, 2025, Plaintiffs opposed Bain's Motion and explained why each of Bain's arguments fail, including the Parties' resolution of Bain's subject matter jurisdiction defense. Dkt. 361 at 3-4 n.5.  Bain subsequently filed a reply in support of its Motion on November 10, 2025. Currently, only Bain's arguments 2 through 4 remain in dispute and are summarized herein.

## II.   SUMMARY

### A.   DISPUTED ISSUE 1: THIS COURT HAS PERSONAL JURISDICTION OVER BAIN

Plaintiffs have never asserted the Court has general jurisdiction over Bain and, therefore, Bain's general jurisdiction arguments are a red herring. Rather, Plaintiffs have asserted the Court has specific personal jurisdiction over Bain, which is the focus of the analysis below.[1]

---

[1] Because the Parties have resolved Bain's subject matter jurisdiction defense, Plaintiffs' response does not address that issue here. Dkt. 361 at 3-4 n.5.

TRACK ONE PLAINTIFFS' SYNOPSIS
IN RESPONSE TO THE COURT'S DECEMBER 1, 2025 ORDER
No. 3:25-md-03149-BEN-MSB

### 1.    Bain's Position

Bain asserts that Plaintiffs fail to allege the Court's specific jurisdiction over Bain because Bain has not purposefully availed itself of this forum, Plaintiffs' claims neither arise from or are related to Plaintiffs' claims, and the exercise of jurisdiction over Bain would not be reasonable. Dkt. 286 at 16-20.

First, Bain argues that Plaintiffs fail to allege purposeful availment because merger negotiations and investment activity in the forum do not suffice (Dkt. 286 at 17; Dkt. 361 at 22-23), and PowerSchool's California contacts cannot be imputed to Bain because Plaintiffs fail to plausibly allege agency. Dkt. 361 at 23. Second, Bain asserts that Plaintiffs fail to allege relatedness because: Plaintiffs' claims do not arise from Bain's direct contacts with California; the claims do not arise out of Bain's decision to invest in PowerSchool; and contract negotiations and Bain's later ownership of PowerSchool are too attenuated. Dkt. 286 at 17-18; Dkt. 361 at 24. Third, Bain argues that Plaintiffs fail to show reasonableness because the "*Core-Vent* factors" weigh against jurisdiction (Dkt. 286 at 18-19), and JPML centralization does not create jurisdiction Dkt. 361 at 25.[2]

### 2.    Plaintiffs' Position

Plaintiffs contend that the Court has specific personal jurisdiction over Bain because: (1) Bain purposefully directed its activities in California, thereby availing itself of the protections of California laws; (2) Bain's activities in California gave rise to Plaintiffs' claims; and (3) this Court's exercise of jurisdiction over Bain comports with due process. Dkt. 319 at 6. First, Bain purposefully availed itself of California by initiating and completing merger negotiations with PowerSchool in this State. Dkt. 319 at 8. Moreover, Bain exerted control over PowerSchool's operations

---

[2] Bain further argues that jurisdictional discovery is unwarranted because "Bain's arguments do not raise any factual disputes," including concerning Bain's negotiations to acquire a controlling stake in PowerSchool. Dkt. 286 at 19-20; Dkt. 361 at 25-26.

TRACK ONE PLAINTIFFS' SYNOPSIS
IN RESPONSE TO THE COURT'S DECEMBER 1, 2025 ORDER
No. 3:25-md-03149-BEN-MSB

during and after the merger negotiations, including by accessing sensitive data, obtaining veto rights by June 2024, and directing offshoring and layoffs affecting California operations: acts by Bain which directly contributed to the Data Breach. *Id.* at 8-9. Plaintiffs further argue that the claims arise out of Bain's California contacts under the Ninth Circuit's "but for" test because, in addition to exerting control over PowerSchool by conducting merger negotiations and directing PowerSchool's operations, Bain failed to assess the risks associated with PowerSchool's data-security – acts which led directly to the Data Breach and Plaintiffs' injuries. *Id.* at 10-11.

On reasonableness, Plaintiffs explain why the *Core-Vent* factors also favor jurisdiction: Bain's interjection was substantial, California has a strong interest because PowerSchool is based in California and California Plaintiffs reside there, and MDL centralization promotes efficiency. *Id.* at 12-13.[3]

### B. DISPUTED ISSUE 2: BAIN HAS AN AGENCY RELATIONSHIP WITH POWERSCHOOL

#### 1. Bain's Position

Bain asserts that, for a corporate subsidiary to be an agent of a parent, a plaintiff must allege facts establishing pervasive and continual control. Dkt. 286 at 32. Bain argues the Complaint lacks allegations establishing such control both before October 1, 2024 when Bain acquired a 51% stake in PowerSchool, and after. *Id.*; Dkt. 361 at 8.

Bain argues that the Court should decline to make an inference in Plaintiffs' favor on the factual issue of PowerSchool's expansion to foreign countries,

---

[3] And, should the Court find Plaintiffs' jurisdictional allegations insufficient, Plaintiffs, in any case, request jurisdictional discovery to bolster their claims, which contrary to Bain's claims, would not be futile here given the negotiation and consummation of the relevant contract here in California and Bain's above-discussed actions relating directly to the Data Breach. (Dkt. 319 at 13).

offshoring of data security functions, and IT and cybersecurity personnel layoffs because these decisions were PowerSchool's decisions alone and happened before October 1, 2024. *Id.* at 8-9. Bain also contends that the Merger Agreement dated June 6, 2024 establishes that Bain could not have directed PowerSchool prior to October 1, 2024. *Id.* at 9. Bain points to a contractual clause that disclaims Bain's control over PowerSchool. *Id.* Bain disputes Plaintiffs' characterization of the Merger Agreement as allowing for explicit control of key operational, cybersecurity, and financial decisions, instead characterizing the Merger Agreement as merely allowing Bain a "veto" over such decisions. *Id.* at 9.

Bain further argues that the agency relationship standard requires Plaintiffs to establish an "extreme degree of day-to-day control" after October 1, 2024. *Id.* As for Plaintiffs' allegations that Bain exercised control by replacing the entire PowerSchool board and assuming full responsibility for key decisions related to operations, cybersecurity, and finances, Bain submits that this level of control is insufficient because these activities are typical in a parent-subsidiary relationship. Dkt. 361 at 10-11. Lastly, Bain urges the Court to deny further discovery to determine whether any agency relationship exists. *Id.* at 11.

### 2.      Plaintiffs' Position

Bain's arguments discount and ignore Plaintiffs' well-pled allegations, which suffice to establish an agency relationship.[4] First, Plaintiffs emphasize that Bain is mistaken as to the applicable standard to establish an agency relationship, which does not require Plaintiffs to establish that Bain had an "extreme degree of day-to-day control" over PowerSchool's business. Dkt. 319 at 14. Rather, to adequately allege an agency relationship, Plaintiffs need only point to facts, as they have, showing

---

[4] Plaintiffs no longer pursue the theory that Bain is liable as the alter ego of PowerSchool. Dkt. 319 at 15; Dkt. 361 at 4.

TRACK ONE PLAINTIFFS' SYNOPSIS
IN RESPONSE TO THE COURT'S DECEMBER 1, 2025 ORDER
No. 3:25-md-03149-BEN-MSB

Bain's control over key aspects of PowerSchool's activities giving rise to the claims in this case – Bain's decisions concerning cybersecurity. *Id*. at 15. It is sufficient for Plaintiffs to allege facts that allow for the inference that Bain has controlled PowerSchool as its agent. *Id.*

To that end, Plaintiffs describe Bain's escalating control over PowerSchool starting in early 2024, when Bain directed cost-cutting cybersecurity and IT measures as a condition of negotiations to acquire a controlling stake in PowerSchool. *Id*. Bain's control grew greater when Bain obtained the right to strategically control PowerSchool, which led to mass layoffs of IT and cybersecurity personnel, and the offshoring of those positions. *Id.* at 15-16. Plaintiffs' Complaint explains that these decisions led directly to the Data Breach and Plaintiffs' injuries. *Id*. at 16. Furthermore, Bain's control intensified upon completion of the merger, when Bain assumed full responsibility for key decisions related to operations, cybersecurity, and finances. *Id*. Cumulatively, Plaintiffs allege that these actions by Bain meet the standard to establish that Bain controlled PowerSchool as its agent insofar as Bain directed PowerSchool to take specific actions that led to harm to the Class. *Id*.

Finally, Plaintiffs dispute Bain's interpretation of the June 2024 Merger Agreement, which Plaintiffs contend does *not* disclaim Bain's ability to control PowerSchool because the disclaimer contains an explicit exception to allow control as provided in other parts of the Agreement. *Id.* Plaintiffs' contention is supported by other sections of the Merger Agreement that allow control, and Plaintiffs' allegations that control was, in fact, exercised by Bain. *Id*.[5]

---

[5] For example, Bain exercised control via its decisions to offshore and outsource key PowerSchool operations, which led to the decision to hire Movate. Dkt. 319 at 16.

### C.    DISPUTED ISSUE 3: PLAINTIFFS' ALLEGATIONS SATISFY RULE 8.

#### 1.    Bain's Position

Bain argues that Plaintiffs failed to "make any allegations that Bain collected, stored, or shared Plaintiffs' data, or otherwise did any business directly with Plaintiffs" and, instead, "group" Bain with the other Defendants such that each of Plaintiffs' "Direct Liability Counts" fail to satisfy Rule 8. Dkt. 286 at 33-37 (§ IV(A)); Dkt. 361 at 13.

#### 2.    Plaintiffs' Position

Plaintiffs satisfy the lenient Rule 8 notice pleading standard, for at least six reasons:

(1)    Plaintiffs are not required to allege Bain collected, stored, or shared their data in order to put Bain on notice of its alleged liability here. Entire sections of the Complaint are devoted to doing just that, alleging in detail Bain's specific involvement and failures that resulted in the Data Breach (*see* Compl. at §§ D-J, ¶¶ 14-19, 37-41);

(2)    Bain is a joint tortfeasor with the other Defendants, and Bain's conduct contributed to the Data Breach (Dkt. 319 at 18);

(3)    Courts consistently refrain from dismissing claims on the basis of group pleading where, like here, "it is simply not possible for Plaintiff to be more specific about the role each Defendant played . . .without discovery" (*see* Dkt. 319 at 19, collecting cases);

(4)    The Ninth Circuit recently reversed an order granting a dismissal under Rule 8 that was premised on purported improper group pleading and clarified that its precedent "does not prohibit collective pleadings so long as the complaint gives defendants fair notice of the claims against them" (*see id.*);

(5)    The cases Bain cites predate that Ninth Circuit opinion and are inapposite because the plaintiffs therein did not specify which claims were brought against which entities, whereas here the Complaint clearly does so (*see id*, citing such counts), or the plaintiff did not oppose the group pleading argument (*see id.*, distinguishing *Bustamante*); and

(6)    Plaintiffs have alleged agency liability against Bain. (*Id.* at 13-18, 20).

**D.    DISPUTED ISSUE 4: PLAINTIFFS PLAUSIBLY ALLEGE DIRECT LIABILITY CLAIMS AGAINST BAIN**

Recycling its argument that Plaintiffs failed to make sufficient allegations of its conduct, Bain also argues that all of Plaintiffs' Direct Liability Counts fail. Dkt. 286 at 38-44. Bain's argument is unavailing based on the numerous cases cited by Plaintiffs—including from this Court and others within the Ninth Circuit—which uniformly hold that Bain's involvement in the day-to-day activities of PowerSchool render it directly liable for the conduct at issue here. Dkt. 319 at 20-22 (collecting cases). That conduct includes Bain:

(1)    dictating the daily operations of PowerSchool through its contractual veto rights and workforce directives before the merger, and formal control after the merger (Dkt. 319 at 21);

(2)    laying off at least 5% of PowerSchool's workforce including critical technology staff directly involved with its cybersecurity practices (*see id.*);

(3)    shifting critical IT and cybersecurity functions oversees to Movate in the Philippines at the expense of adequate staffing and funding of PowerSchool's cybersecurity obligations (*see id.*); and

(4)    directing staffing decisions driven by cost-cutting that directly resulted in the inadequate storage of Plaintiffs' and class members' PII that exposed it to hackers in the Data Breach (*see id.*).

**1.    Plaintiffs adequately allege all elements of Negligence.**

*Bain's Position:* Bain argues Plaintiffs failed to allege duty and breach because they did not allege Bain possessed, maintained, or stored Plaintiffs' data or that Bain had any direct relationship with Plaintiffs (Dkt. 286 at 39; Dkt. 361 at 16-18), and that Plaintiffs' allegations "are too attenuated" to establish causation Dkt. 286 at 40.

*Plaintiffs' Position:* Plaintiffs allege duty because (1) California courts consistently recognize a duty of care where, as here, Bain created a foreseeable risk of harm that Plaintiffs' PII would be compromised by offshoring PowerSchool's cybersecurity functions, laying off experienced U.S.-based IT employees, and allowing offshore contractors like Movate to have unfettered access to Plaintiffs' PII

TRACK ONE PLAINTIFFS' SYNOPSIS
IN RESPONSE TO THE COURT'S DECEMBER 1, 2025 ORDER
No. 3:25-md-03149-BEN-MSB

(Dkt. 319 at 22-23); (2) Bain's argument that possessing Plaintiffs' PII or having a direct relationship with Plaintiffs is a prerequisite to a duty misapprehends the governing law, and Bain's cited cases are factually and procedurally inapposite (*id.* at 24-25); and (3) Plaintiffs allege all requirements to establish a special relationship with Bain sufficient to establish a duty of care (*id.* at 27-28).

With respect to causation, Plaintiffs adequately alleged the requisite "logical connection" and contend that this element involves a factual determination that cannot be made at the pleading stage, without discovery. *Id.* at 24-25, 29-30. [6]

### 2. Plaintiffs adequately allege all elements of Unjust Enrichment.

*Bain's Position:* Bain argues that (1) unjust enrichment is not an independent cause of action and—because Plaintiffs failed to state any claims against Bain—the claim fails; and (2) that Plaintiffs must allege they conferred a benefit *directly* on Bain. Dkt. 286 at 41; Dkt. 361 at 13-14. [7]

*Plaintiff's Position:* Plaintiffs establish that the Ninth Circuit has held that unjust enrichment *can* be construed as a quasi-contract claim, and there is no such direct benefit requirement. Dkt. 319 at 32-33 (collecting cases). [8]

---

[6] Bain does not dispute the damages element and, instead, relied on PowerSchool's argument. Plaintiffs too incorporated their response to PowerSchool's damages argument. Dkt. 319 at 30 n.27. Similarly, Bain relied on its duty argument to argue that Plaintiffs' negligence *per se* duty fails. *See* Dkt. 286 at 40-41. For the reasons above, Bain's argument is unavailing. Dkt. 319 at 30-32.

[7] Similarly, Bain's only basis for challenging Plaintiffs' claims for injunctive and declaratory relief is that Plaintiffs did not state a claim against Bain under any count and the Declaratory Judgment Act "does not provide an independent cause of action." Dkt. 286 at 41; Dkt. 361 at 21-22. Thus, for the reasons set forth herein with respect to all of Plaintiffs' claims, Bain's argument fails. Dkt. 319 at 34-35.

[8] *See also Cherkin v. PowerSchool Holdings, Inc.,* 2025 WL 844378 at *7 (N.D. Cal. Mar. 17, 2025) (allowing unjust enrichment to proceed against arguments that it is not an independent cause of action because, "[f]ollowing a decision by the Supreme Court of California allowing an independent claim for unjust enrichment to proceed in an insurance dispute, the Ninth Circuit, in unpublished decisions, has twice recognized such standalone claims may be viable under California law.") (internal quotations omitted).

TRACK ONE PLAINTIFFS' SYNOPSIS
IN RESPONSE TO THE COURT'S DECEMBER 1, 2025 ORDER
No. 3:25-md-03149-BEN-MSB

### 3. Plaintiffs adequately allege all elements of Negligent Training and Supervision.

*Bain's Position:* Bain argues that this claim should be dismissed because (1) Bain "is not expressly named in any of the allegations specific to Count IX"; and (2) there is no relationship between Bain and Plaintiffs sufficient to show Bain was able to monitor and supervise Movate. Dkt. 319 at 35-36; Dkt. 361 at 14-15.

*Plaintiffs' Position:* Plaintiffs sufficiently allege that Bain: (1) controlled PowerSchool before and after the merger, during which it made a series of decisions that directly led to PowerSchool's lax cybersecurity; and (2) had authority to require PowerSchool to improve its cybersecurity but failed to do so in order to cut costs—acts which led to the Data Breach. Dkt. 319 at 35-36.

### 4. Plaintiffs adequately allege all elements under California's Consumer Privacy Act.

*Bain's Position:* Bain argues it is not a "business" as defined by the statute because it did not collect Plaintiffs' PII or determine how it would be processed. Dkt. 286 at 42-43; Dkt. 361 at 19-20.

*Plaintiff's Position:* Plaintiffs argue that Bain is a "business" for the purposes of the CCPA, including its purchase of a California company. Dkt. 319 at 37. Plaintiffs further allege that Bain collected PII and determined how it is to be processed "jointly with other[]" Defendants. *Id.*

### 5. Plaintiffs do not need to satisfy Rule 9's pleading standards for their claims under California's Unfair Competition Law.

*Bain's Position:* Bain argues Plaintiffs' allegations fail to satisfy Rule 9(b) and that Plaintiffs' allegations only address PowerSchool's actions, not Bain's. Dkt. 286 at 43-44; Dkt. 361 at 15.

*Plaintiffs' Position:* Plaintiffs have no requirement to satisfy Rule 9(b) which applies only to *fraudulent* violations of the UCL, not alleged by Plaintiffs here; it does *not* apply to the unlawful or unfair violations that are alleged by Plaintiffs here.

Dkt. 319 at 39-40. Plaintiffs satisfy Rule 8, all that is required, for their unlawful and unfair claims:

(1) <u>Unfair</u>: Bain's layoffs, outsourcing of critical cybersecurity functions, and direction and/or authorization of unsupervised remote technology with offshore companies like Movate led directly to the Data Breach, and is therefore, sufficiently tethered to California's public policies intended to protect consumer privacy and data security. Bain's actions are also immoral, unethical, oppressive, and substantially injurious given the gravity of harm here: the theft of the PII of 70 million individuals, which outweighs any supposed cost-saving "utility," and, has no countervailing consumer benefit. *Id.* at 38-39.

(2) <u>Unlawful</u>: Plaintiffs allege Bain violated Section 5(a) of the FTC Act, which courts consistently hold satisfies the unlawful prong of the UCL. *Id.* at 39.

### 6.    Plaintiffs adequately allege all elements of Aiding and Abetting.

*Bain's Position:* Plaintiffs failed to plead with specificity under Rule 9(b) Bain's knowledge that PowerSchool breached any duty owed to Plaintiffs. Dkt. 286 at 44; Dkt. 361 at 21.

*Plaintiffs' Position:* The Complaint contains many detailed and specific allegations of Bain's knowledge based upon: (1) Bain's status as a tech-focused expert in digital technology and its due diligence concerning PowerSchool's cybersecurity operations; (2) Bain's awareness that offshoring operations on an expedited basis came with significant data security risks for PowerSchool; (3) Bain's intimate involvement with PowerSchool for years before the merger; (4) Bain's exercise of control over PowerSchool, through which Bain knew of PowerSchool's misrepresentations and/or omissions regarding the weakened cybersecurity, and of its own duty owed to Plaintiffs to protect their PII; and (5) Bain personally directing PowerSchool's elimination of critical U.S. workforce which weakened the protection of Plaintiffs' PII. Dkt. 319 at 40-41.

DATED: December 8, 2025

**CASEY GERRY FRANCAVILLA BLATT LLP**

By: *David S. Casey, Jr.*
David S. Casey, Jr. (#60768)
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
Fax: (619) 544-9232
dcasey@cglaw.com

**LABATON KELLER SUCHAROW LLP**
Carol C. Villegas N.Y. State Bar No. 4154324*
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
cvillegas@labaton.com

**HAUSFELD LLP**
James J. Pizzirusso D.C. State Bar No. 477604*
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel: (202) 540-7200
jpizzirusso@hausfeld.com

*Co-Lead Counsel for Track One Plaintiffs*

*\*Admitted Pro Hac Vice*

11