John P. Carlin (NY 3031887)*
**PAUL, WEISS, RIFKIND,**
   **WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

R. Rosie Vail (SBN 317977)
**PAUL, WEISS, RIFKIND,**
   **WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Dylan O. Smith (NY 5846076)*
**PAUL, WEISS, RIFKIND,**
   **WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
jschutte@paulweiss.com
dosmith@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant
Bain Capital, L.P.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION | Case No. 3:25-md-3149-BEN-MSB<br><br>MDL No. 3149<br><br>**DEFENDANT BAIN CAPITAL, L.P.'S SYNOPSIS OF ITS MOTION TO DISMISS THE CONSOLIDATED INDIVIDUAL USERS PUTATIVE CLASS ACTION COMPLAINT (TRACK 1)**<br><br>Date: TBD<br>Time: TBD<br>Ctrm.: 5A<br>Judge: Hon. Roger T. Benitez |

1    Plaintiffs' consolidated complaint seeks to impose unprecedented liability on
2    Bain for a cybersecurity incident at PowerSchool that began months before Bain
3    acquired any ownership interest in PowerSchool.[1]  Plaintiffs cite no authority—nor
4    is Bain aware of any—holding an investment firm vicariously or directly liable for
5    a portfolio company's data-security incident.  Plaintiffs' scattershot claims ignore
6    black-letter law, rely on vague and conclusory speculation rather than well-pled
7    facts, and contradict the express terms of the governing merger agreement.  These
8    deficiencies bar all of Plaintiffs' claims against Bain.

9    *First*, Plaintiffs fail to plead a theory of vicarious liability against Bain.  "It is
10   a general principle of corporate law deeply ingrained in our economic and legal
11   systems that a parent corporation . . . is not liable for the acts of its subsidiaries."
12   *United States* v. *Bestfoods*, 524 U.S. 51, 61 (1998) (internal citations omitted).
13   Accordingly, in its Motion to Dismiss, Bain argued that Plaintiffs failed to state any
14   claim against Bain on alter ego or agency theories of vicarious liability.  Plaintiffs
15   completely abandoned their alter ego theory in their Opposition, and now assert only
16   an agency theory of vicarious liability—a theory referenced only once in the
17   Complaint in wholly conclusory terms.  But Plaintiffs do not—and cannot—plead
18   the basic elements of agency.  Plaintiffs neither allege a bilateral agreement that
19   PowerSchool would operate as Bain's agent, nor "pervasive and continual" control,
20   much less the "strong showing" of these elements required to plead agency.

21   *Second*, Plaintiffs' direct liability claims against Bain should be dismissed
22   because they rely almost exclusively on allegations directed at PowerSchool.
23   Plaintiffs' attempt to impute PowerSchool's conduct to Bain—and sidestep their

24   ───────────────

25   [1]   Bain joined PowerSchool's Track 1 briefing in its entirety.  All capitalized and
26   defined terms used herein are as defined in Bain's Motion to Dismiss the Track 1
     Individual Users Complaint ("Motion to Dismiss" or "MTD") and its Reply
27   ("Reply").  "Plaintiffs" refers to Track 1 Class Action Plaintiffs.  This synopsis takes
     the facts alleged in the Complaint as true, as is required at this stage.  Nothing in this
28   synopsis should be taken as an admission of the truth of the allegations brought or a
     waiver of any objection to the accuracy of those allegations.

BAIN'S SYNOPSIS ADDRESSING THE MOTION TO DISMISS
TRACK 1 INDIVIDUAL USERS CLASS ACTION COMPLAINT          25-md-3149-BEN-MSB

plain failure to plead vicarious liability—constitutes improper group pleading and must be rejected. Further, Plaintiffs' direct liability claims against Bain fail because they do not (and, indeed, cannot) plead basic elements of each direct claim.

*Finally*, Plaintiffs do not plead that the Court has personal jurisdiction over Bain, as is their burden. Plaintiffs argue that Bain's investment in PowerSchool and participation in merger negotiations constitute minimum contacts with California, but that position contravenes existing law and is untethered to the allegations in the Complaint. Further, by only arguing personal jurisdiction in California, Plaintiffs concede that the Court lacks jurisdiction over cases filed in courts outside of California that were subsequently transferred to or filed in this MDL.

In sum, Plaintiffs' claims against Bain should be dismissed with prejudice. Plaintiffs have not pled any theory of vicarious or direct liability, and no discovery or amendment could rescue the claims against Bain. A synopsis of the arguments presented in the Track 1 Motion to Dismiss briefing follows and in Dkt. 379-1 (summarizing claims against Bain).[2]

***Alter Ego Liability***. Plaintiffs abandoned their alter ego theory in their Opposition. (Opp. at 15; Reply at 4.)

***Agency Liability (All Counts)***. <u>Motion to Dismiss</u>. Bain argued that Plaintiffs fail to plead agency liability because an agency relationship requires an agreement that one party shall act subject to the other's control. *See Am. Airlines, Inc.* v. *Mawhinney*, 904 F.3d 1114, 1124 (9th Cir. 2018). Beyond the ordinary control inherent in any ownership relation, the principal's influence must be "so pervasive and continual that the [affiliate] may be considered nothing more than an agent or instrumentality of the [company]." *Sonora Diamond Corp.* v. *Superior Ct.*, 83 Cal. App. 4th 523, 541 (2000). Plaintiffs' only agency allegation is the conclusory statement that PowerSchool "acted as Bain's agent." (MTD at 31). As such, they

---

[2]  After Plaintiffs filed their short form complaint, Bain agreed to withdraw its subject matter jurisdiction arguments. (Reply at 3 n.5).

did not plead the requisite agreement or control. This is true both before and after the Merger Agreement was signed on June 6, 2024. Before that date, Bain was a counterparty to an arm's-length negotiation with PowerSchool and could not possibly have exercised the extreme and rare degree of control required for agency liability. (MTD at 32). After signing, and contrary to Plaintiffs' bald assertion that Bain "conditioned" its investment on layoffs and offshoring, the agreement's "no control" provision confirms that PowerSchool maintained complete control over its business. (MTD at 32, 28). And the agreement's routine interim operating covenant, which required Bain's approval on major business changes before closing, does not come close to establishing the pervasive control required for vicarious liability. (MTD at 32, 24–29). Moreover, Plaintiffs do not allege that Bain ever even exercised its rights under this provision. After the deal closed on October 1, Plaintiffs merely allege that Bain replaced PowerSchool's Board of Directors and that PowerSchool's CEO announced he planned on working closely with Bain going forward. These allegations describe the normal incidents of an investment firm-portfolio company relationship—nothing remotely close to "pervasive and continual" control—and courts regularly reject attempts to impose vicarious liability in similar circumstances. *See*, *e.g.*, *In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *3–5 (D.N.J. Feb. 26, 2025), *appeal pending*, No. 25-1626 (3d Cir. April 2, 2025); *Sonora Diamond Corp.* v, 83 Cal. App. 4th at 541–2; (MTD at 32, 29–30).

Opposition. Plaintiffs responded that PowerSchool is Bain's agent for three reasons. First, untethered to any specific factual allegations, Plaintiffs argue that Bain conditioned its offer to invest in PowerSchool on the alleged offshoring and workforce reductions. (Opp. at 15). Second, the Merger Agreement signed in June 2024 gave Bain control over PowerSchool via a "veto provision," despite the "no control" provision, which was subject to the other terms of the agreement and therefore contained an "exception that swallows the disclaimer." (Opp. at 16–17). Third, when the transaction closed in October 2024, Bain replaced PowerSchool's

- 3 -

Board and "assumed full responsibility for key decisions" at PowerSchool. (Opp. at 16).

Reply. Bain replied that, in addition to their failure to plead "pervasive and continual" control, Plaintiffs make no allegations that Bain consented for PowerSchool to act on its behalf or vice versa. (Reply at 4–9). First, even if Bain's investment offer depended on offshoring and workforce reductions—a speculation unsupported by any factual allegations and contradicted by the plain terms of the agreement—Plaintiffs do not claim that PowerSchool agreed to act under Bain's control in making the reductions, all of which allegedly occurred *before* Bain acquired its investment interest in PowerSchool. (Reply at 4–6). Second, Plaintiffs also misinterpret the relevant provisions of the Merger Agreement: the "veto provision" only granted Bain an approval right for certain major business changes during the period between signing and closing. It did not permit Bain to direct or control PowerSchool's activities. Indeed, the "no control" provision expressly confirmed the opposite, that PowerSchool maintained complete control over its business until October 1, 2024. (Reply at 5–9). Third, after the transaction closed, the only allegations Plaintiffs can point to are the ordinary acts of an investment firm after acquiring a majority stake in a portfolio company, such as naming directors to the Board. Allegations of normal course investor behavior are plainly insufficient to plead an agency relationship. (Reply at 8–11).

***Group Pleading.*** In its Motion to Dismiss, Bain argued that each of the direct-liability counts listed below fails to state a claim against Bain because they rely almost entirely on allegations of PowerSchool's conduct—not Bain's. Having abandoned their alter ego theory and failed to plead agency, Plaintiffs cannot infer or impute unwritten allegations against Bain wherever the Complaint refers to PowerSchool, and Bain cannot be held liable for PowerSchool's conduct. (MTD at 33–38). In their Opposition, Plaintiffs assert that they adequately put Bain on notice of these claims because the Complaint contains allegations about Bain's "specific

involvement," and because Bain, PowerSchool, and Movate all "contributed" to the cybersecurity incident. (Opp. at 18). In its <u>Reply</u>, Bain explained that Plaintiffs' Opposition cites allegations brought against PowerSchool (not Bain), reiterating that Plaintiffs cannot infer unwritten allegations against Bain from allegations directed at PowerSchool because they did not plead agency. (Reply at 11–13).

***Negligence (Count I).*** <u>Motion to Dismiss</u>. Bain argued that Plaintiffs fail to plead the elements of a negligence claim: that Bain owed Plaintiffs any duty, breached any duty, or proximately caused their harm. The Complaint contains only a single conclusory assertion that "Bain Capital owed a duty" to Plaintiffs. But Plaintiffs have not identified—and Bain is not aware of—any data breach case holding that a defendant owes any duty to a plaintiff where, like Bain, the defendant did not collect, store, possess, or maintain the data at issue. (MTD at 38–40). Even if Bain owed such a duty under the law, which it does not, Plaintiffs' alleged harm is far too attenuated from Bain's purported conduct to state a claim for proximate causation. (MTD at 40).

<u>Opposition</u>. Plaintiffs first argued that Bain owed a duty to them when it "initiated the merger process with PowerSchool, and obtained non-public" information, and because Bain's purported actions led to the cybersecurity incident that harmed Plaintiffs. (Opp. at 23). Second, Plaintiffs assert that they have adequately alleged that Bain possessed the data in question but insist that such allegations are unnecessary. (Opp. at 24–25). Third, they argued that Bain owed a duty because of its special relationship with Plaintiffs. Fourth, Plaintiffs argued that only a "logical" connection is required to plead proximate causation, and that Bain's actions rendered Plaintiffs' harm foreseeable. (Opp. at 29–30).

<u>Reply</u>. First, Bain argued that accepting Plaintiffs' argument that merger negotiations create a duty to end-users of the customers of an arm's-length counterparty to a negotiation would dramatically expand negligence liability. (Reply at 16–19). Plaintiffs do not cite any relevant case law supporting that absurd

- 5 -

position (nor can they) or their other arguments that Bain owed Plaintiffs a duty. Second, Plaintiffs' argument that Bain owed them a duty because it possessed Plaintiffs' data and because the cybersecurity incident was foreseeable are meritless because the Complaint does not allege Bain ever possessed Plaintiffs' data, and because PowerSchool's purported workforce decisions (which allegedly caused the cyberattack) occurred months before Bain acquired an investment interest in PowerSchool. (Reply at 17–18). Third, none of the narrow situations in which courts have found a special relationship apply or are analogous here. Fourth, Plaintiffs' proximate causation argument is a distraction that relies on allegations about PowerSchool's conduct, not Bain's. Moreover, it is a non sequitur. Plaintiffs argue that the cybersecurity incident may cause future fraud, not that PowerSchool's workforce decisions proximately caused the cybersecurity incident.

**_Unjust Enrichment (Count III)_**. In its <u>Motion to Dismiss</u>, Bain explained that Plaintiffs cannot state a claim against Bain for unjust enrichment because it "is not an independent cause of action under California law." *Advanced Eng'g Sols. Co., LLC* v. *Pers. Corner, LLC*, 2021 WL 1502705, at *7 (C.D. Cal. Feb. 25, 2021). In any event, Plaintiffs fail to plead the basic element of this claim: that they conferred any benefit on Bain or that Bain unjustly retained any benefit. Their claim is based solely on PowerSchool's alleged conduct—not Bain's. (MTD at 41). In their <u>Opposition</u>, Plaintiffs argued that the Court should construe their unjust enrichment claim instead as a quasi-contract claim, and that direct conferral of a benefit is unnecessary. They then argued that Bain funded its data security measures using the money it accepted from school districts "on behalf of" Plaintiffs, despite Plaintiffs not being customers of either Bain or PowerSchool. (Opp. at 32–33) (citing Compl. ¶¶ 830–832). In its <u>Reply</u>, Bain countered that the Opposition relied entirely on allegations about PowerSchool receiving benefits, which cannot be attributed to Bain without any viable theory of vicarious liability. The Complaint does not contain any specific allegations that Bain ever received money (or any other

1  benefit) from Plaintiffs, or that Bain sold any products or services to Plaintiffs—and
2  nor could it.  (Reply at 13–14).

3        ***Negligent Training & Supervision (Count IX)***.  In its <u>Motion to Dismiss</u>,
4  Bain argued that a negligent training and supervision claim requires that Plaintiffs
5  plead the elements of negligence and a supervisory relationship.  Once again, the
6  Complaint only alleges that PowerSchool—not Bain—hired, oversaw, and granted
7  system access to Movate.  There are no allegations that Bain ever oversaw Movate.
8  (MTD at 42).   In their <u>Opposition</u>, Plaintiffs argued that Bain controlled
9  PowerSchool, including in its retention of Movate, and Bain did not require specific
10 cybersecurity measures from PowerSchool.  (Opp. at 35–36).  In <u>Reply</u>, Bain
11 contended that Plaintiffs did not address their failure to allege a supervisory
12 relationship between Bain and Movate, and the Complaint contains no allegations
13 that Bain negligently supervised PowerSchool.  PowerSchool's relationship with
14 Movate cannot be imputed to Bain absent a viable agency claim.  (Reply at 14–15).

15       ***California Consumer Privacy Act ("CCPA") (Count XIII)***.  In its <u>Motion to</u>
16 <u>Dismiss</u>, Bain argued that Plaintiffs cannot allege that Bain violated the CCPA,
17 because Bain does not constitute a "business" under the statute.  Plaintiffs have not—
18 and cannot—allege that Bain "collects consumers' personal information or . . .
19 jointly with others, determines the purposes and means of the processing of
20 consumers' personal information."  Cal. Civ. Code § 1798.140(d)(1).  Bain never
21 collected, processed, maintained, or accessed Plaintiffs' data.  (MTD at 42–43).  In
22 their <u>Opposition</u>, Plaintiffs argued that Bain "jointly with others, determine[d] the
23 purposes and means of the process" of personal information through its supposed
24 control of PowerSchool.  They also contend that their CCPA claim should "survive
25 under the aider-and-abettor theory of liability" articulated later in their Opposition.
26 (Opp. at 36–37).  In its <u>Reply</u>, Bain argued that there are no allegations that Bain
27 "determine[d] the purposes and means of the processing" Plaintiffs' data, jointly or
28 otherwise, so the Complaint fails to allege that Bain is a business subject to the

- 7 -

CCPA. (Reply at 19–20). Further, Plaintiffs improperly attempt to amend their Complaint by claiming that Bain aided and abetted a violation of the CCPA; but the Complaint only alleged that Bain aided and abetted PowerSchool's purported violation of the UCL. (Reply at 20).

***California Unfair Competition Law (UCL) (Count XVI).*** In its <u>Motion to Dismiss</u>, Bain argued that Plaintiffs fail to plead any conduct by Bain that was fraudulent, unlawful, or unfair in violation of the UCL. Plaintiffs' allegations of PowerSchool's purported fraudulent conduct cannot be imputed to Bain for the reasons stated *infra*, and they do not satisfy basic pleading requirements, much less the heightened pleading standards of Rule 9(b). (MTD at 43–44). In <u>Opposition</u>, Plaintiffs first asserted that Rule 9(b) does not apply because their claims are brought under the "unlawful" and "unfair" prongs, not the fraud prong. Second, they claim that workforce reductions and offshoring are unfair or unlawful under the UCL as a matter of policy. Third, Plaintiffs identify purported statutory predicates supporting the "unlawful" prong. (Opp. at 37–39). In its <u>Reply</u>, Bain argued that Rule 9(b) applies because Plaintiffs repeatedly claim that PowerSchool engaged in "fraudulent" conduct. (Reply at 15 & n.6) (citing Compl. ¶¶ 1027, 1032). Second, Plaintiffs fail to meet Rule 9(b)'s heightened pleading standard, or even the basic pleading standard, because they do not plead UCL violations by Bain, nor explain how Bain directed (or could have directed) PowerSchool to make the purported announcements, projections, or personnel decisions they say underpin UCL liability.

***Aiding and Abetting (Count XVII).*** In its <u>Motion to Dismiss</u>, Bain argued that an aiding and abetting claim requires that Plaintiffs plead knowledge of a primary tort and substantial assistance, but Plaintiffs allege neither. *See In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006). The Complaint alleges only that Bain knew data security was important and demanded compliance warranties—it does not allege Bain's knowledge of any purported breach of duty by PowerSchool. Plaintiffs' single conclusory allegation as to Bain's assistance also relies on alleged

conduct from before Bain acquired an interest in PowerSchool. (MTD at 44). In their <u>Opposition</u>, Plaintiffs contended that their allegations suffice because Bain is a "tech-focused investor," made supposed workforce decisions, and received information about PowerSchool during negotiations. (Opp. at 40–41). In its <u>Reply</u>, Bain countered that even if true, none of the allegations sufficiently plead Bain's knowledge of a breach of duty by PowerSchool, or substantial assistance of the same. (Reply at 21).

***Declaratory Judgment Act (Count VI)***. <u>Motion to Dismiss</u>. Bain argued that the Declaratory Judgment Act is not a standalone cause of action; it requires a viable underlying cause of action, which Plaintiffs fail to plead. (MTD at 41); *City of Reno* v. *Netflix, Inc.*, 52 F.4th 874, 878–79 (9th Cir. 2022). In their <u>Opposition</u>, Plaintiffs contended that declaratory and injunctive relief are appropriate to prevent future harm, that the Act authorizes declarations of rights regardless of whether other relief is available, and that their negligence and UCL claims supply the requisite underlying controversy. (Opp. at 33–35). In its <u>Reply</u>, Bain countered that the cases that Plaintiffs cite permitted declaratory judgment claims to proceed only where other claims were adequately pled—here, there are none. (Reply at 21–22).

***Personal Jurisdiction***. <u>Motion to Dismiss</u>. Bain argued that because Plaintiffs only allege personal jurisdiction in California and not in all transferor courts, the Plaintiffs who filed cases in states other than California should be dismissed. (MTD at 15). Plaintiffs also fail to allege that California has general jurisdiction over Bain because Bain is a Delaware entity whose principal place of business is in Massachusetts. (MTD at 16). Nor have Plaintiffs alleged that California has specific jurisdiction over Bain because (1) Bain did not purposely avail itself of California's laws and protections; (2) Plaintiffs' claims do not arise from any in-forum acts by Bain; and (3) the exercise of jurisdiction would not be reasonable. Merely investing in a California entity does not satisfy the purposeful availment prong. Finally, PowerSchool's California contacts cannot be imputed to

Bain because Plaintiffs abandoned their alter ego theory and did not plead agency. (MTD at 16–18).

Opposition.  Plaintiffs argued that Bain is subject to specific jurisdiction in California.  First, they argued that Bain purposely availed itself of California because Bain, through its affiliates, allegedly participated in negotiations in California concerning PowerSchool (a California business), directed PowerSchool's activities during and after those negotiations, and controlled PowerSchool as an agent.  (Opp. at 7–10).  Second, Plaintiffs argued that their claims arise out of those negotiations and Bain's purported direction of PowerSchool's activities because the cyberattack would not have occurred but for the alleged offshoring and workforce reductions. (Opp. at 10–11).  Last, Plaintiffs contended that subjecting Bain to jurisdiction in California is reasonable.   In the alternative, Plaintiffs requested jurisdictional discovery "concerning the locus of merger negotiations." (Opp. at 11–13).

Reply.    First, Bain argued that Plaintiffs did not allege that merger negotiations took place in California, and it is settled law that contact with a forum resident does not satisfy the purposeful availment prong.  The allegations that Bain controlled PowerSchool are also far too vague and conclusory to be credited. Moreover, Plaintiffs cannot rely on their agency theory to plead purposeful availment because, as explained *supra*, Plaintiffs fail to plead that theory.  (Reply at 22–24).  Second, even assuming those allegations sufficed, which they do not, the alleged connection between Plaintiffs' harm (injuries stemming from the cyberattack) and Bain's supposed direction of PowerSchool's workforce decisions is too attenuated to allege but-for causation.  According to Plaintiffs' timeline, the cybersecurity incident began before Bain owned any stake in PowerSchool.  (Reply at 24).  Third, given Bain's lack of California contacts, subjecting it to personal jurisdiction in California would not be reasonable.   Bain also argued that jurisdictional discovery about the locus of merger negotiations would be futile because Plaintiffs' claims do not arise out of those negotiations. (Reply at 25–26).

Dated:  December 8, 2025            Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP

By:   */s/ John P. Carlin*
        John P. Carlin (NY 3031887)*
        PAUL, WEISS, RIFKIND, WHARTON
            & GARRISON LLP
        2001 K Street, NW
        Washington, D.C. 20006-1047
        Telephone: (202) 223-7300
        jcarlin@paulweiss.com

        Jacobus J. Schutte (NY 5023353)*
        Dylan O. Smith (NY 5846076)*
        PAUL, WEISS, RIFKIND, WHARTON
            & GARRISON LLP
        1285 Avenue of the Americas
        New York, NY 10019
        Telephone: (212) 373-3000
        jschutte@paulweiss.com
        dosmith@paulweiss.com

        R. Rosie Vail (SBN 317977)
        PAUL, WEISS, RIFKIND, WHARTON
            & GARRISON LLP
        535 Mission Street, 25th Floor
        San Francisco, CA 94105
        Telephone: (628) 432-5100
        Facsimile: (628) 232-3101
        rvail@paulweiss.com

        *admitted *pro hac vice*

        *Attorneys for Defendant
        Bain Capital, L.P.*

- 11 -

1

<u>**CERTIFICATE OF SERVICE**</u>

2      I certify that on the 8th day of December, 2025, I filed the foregoing notice

3  with the Clerk of the Court for the United States, Southern District of California by

4  using the Court's CM/ECF system, which will send notifications of such filing to

5  all counsel of record.

6

7                          PAUL, WEISS, RIFKIND, WHARTON &
                             GARRISON LLP
8

9                  By:    */s/ John P. Carlin*
                          John P. Carlin
10                         Email:  jcarlin@paulweiss.com
                          *Counsel for Bain Capital, L.P.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -