John P. Carlin (NY 3031887)*
**PAUL, WEISS, RIFKIND,**
  **WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

R. Rosie Vail (SBN 317977)
**PAUL, WEISS, RIFKIND,**
  **WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Dylan O. Smith (NY 5846076)*
**PAUL, WEISS, RIFKIND,**
  **WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
jschutte@paulweiss.com
dosmith@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant*
*Bain Capital, L.P.*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION | Case No. 3:25-md-3149-BEN-MSB<br><br>MDL No. 3149<br><br>**DEFENDANT BAIN CAPITAL, L.P.'S SYNOPSIS ADDRESSING ITS MOTION TO DISMISS THE SCHOOL DISTRICT AMENDED PUTATIVE CLASS ACTION COMPLAINT AND THE SCHOOL DISTRICT DIRECT ACTIONS FIRST AMENDED MASTER CONSOLIDATED COMPLAINT (TRACK 2)**<br><br>Date: TBD<br>Time: TBD<br>Ctrm.: 5A<br>Judge: Hon. Roger T. Benitez |

Track 2 Plaintiffs seek to impose unprecedented liability on Bain for an alleged cyberattack on PowerSchool's systems that began months before Bain had any ownership interest in PowerSchool.[1] No court has endorsed their sweeping view that a private investment firm can be held liable when a portfolio company suffers a cyberattack; to the contrary, Plaintiffs' theories are plainly inconsistent with the principle "deeply ingrained in our economic and legal systems" that a corporation is "not liable for the acts of its subsidiaries," let alone portfolio companies even further removed than the traditional parent-subsidiary relationship. *United States* v. *Bestfoods*, 524 U.S. 51, 61 (1998). Plaintiffs' alleged timeline is also inconsistent with, and indeed contradicts, their claims against Bain, which turn primarily on allegations that Bain somehow controlled or directed PowerSchool when it had no ability to do so. Plaintiffs allege that in June 2024, Bain, through its affiliates, agreed to acquire a 51% ownership interest in PowerSchool. The agreement became effective in October 2024, months after the alleged cyberattack began in August 2024. The agreement provided that it was "not intended to give" the Bain entities "the right to control or direct the business or operations" of PowerSchool before October.[2] That timeline, in addition to the reasons below, makes clear that Plaintiffs fail to state a claim against Bain across any of their four categories of claims.

*First*, Direct Action Plaintiffs pursue an alter ego theory of liability against Bain for all but one of their counts but fail to meet their "heavy burden" to pierce the corporate veil. *Santa Clarita Org. for Plan & Env't* v. *Castaic Lake Water Agency*, 1 Cal. App. 5th 1084, 1105 (2016). They are unable to identify any prior

---

[1] Bain joined PowerSchool's Track 2 briefing in its entirety. All capitalized terms used herein are as defined in Bain's Motion to Dismiss (Dkt. 303) and its Reply (Dkt. 379). A chart describing the claims is at Dkt. 379-1. This synopsis takes the facts alleged in the Complaints as true, as is required at this stage. Nothing in this synopsis should be taken as an admission of the truth of the allegations brought or a waiver of any objection to the accuracy of those allegations.

[2] Merger Agreement at 64; (*see* Reply 7 n.7).

- 1 -

instance in which a private investment firm was held liable on an alter ego theory for a cyberattack suffered by a portfolio company—much less where such a firm was held liable for alleged acts occurring before its investment in the portfolio company. *See SEC* v. *Hickey*, 322 F.3d 1123, 1130 (9th Cir. 2003) (holding that an entity "must own at least part of a corporation for an alter ego relationship to exist").

*Second*, both sets of Plaintiffs assert intentional interference with contractual relations. But they do not sufficiently allege that Bain directed business decisions at PowerSchool prior to October 2024, purposefully interfered with Plaintiffs' contracts, or caused their injuries. In their Oppositions, they argue that Bain directed PowerSchool through routine interim operating covenants in the merger agreement, but the plain contractual text contradicts that interpretation; regardless, they do not allege that Bain exercised any rights under those covenants.

*Third*, Class Action Plaintiffs' five remaining direct claims against Bain are unsupported by any well-pled or relevant allegations of Bain's conduct (as opposed to PowerSchool's), or any allegations that Bain had a relationship with Class Action Plaintiffs that could give rise to a duty.

*Finally*, Plaintiffs fail to show that the relevant transferor courts would have personal jurisdiction over Bain merely because it is alleged to have engaged in negotiations with a potential portfolio company in a forum.

**Alter Ego Liability (Direct Action).** Motion to Dismiss. Bain argued that Direct Action Plaintiffs fail to plead sufficient facts to overcome the high bar to pierce the corporate veil, because they do not plausibly allege that (1) Bain controlled PowerSchool's day-to-day operations such that the separate corporate personalities of both companies ceased to exist, and (2) it would be inequitable for this Court to decline the "extreme remedy" of alter ego liability. *Sonora Diamond Corp.* v. *Superior Ct.*, 83 Cal. App. 4th 523, 538–39 (2000); (*see* MTD 17–26). On the first prong, alter ego requires well-pled facts alleging that Bain "must own at least part" of PowerSchool, *Hickey*, 322 F.3d at 1130, but Bain was not alleged to

- 2 -

have any ownership interest until October 1, 2024. Thus, Direct Action Plaintiffs' allegations before October 1 cannot plead the extensive control required for alter ego liability. Moreover, even considering their pre-October 1 allegations, their Complaint plainly falls far short of the high standard required to disregard the corporate form. Direct Action Plaintiffs also fail to allege facts after October 2024 sufficient to demonstrate pervasive control, as they make only vague and conclusory allegations that Bain controlled business decisions. On the second prong, Direct Action Plaintiffs' allegations that an inequitable result may occur because PowerSchool is supposedly undercapitalized are conclusory and inadequate to justify alter ego liability.

Opposition. First, Direct Action Plaintiffs argued that they allege that Bain uses PowerSchool as a conduit for its own affairs, citing conclusory allegations that Bain "dictated" PowerSchool's business decisions after signing the merger agreement on June 6, 2024, and following the effective date on October 1, 2024. (Direct Opp. 17–22). Second, Direct Action Plaintiffs argued that undercapitalization is a sufficient basis to pierce the corporate veil. (*Id.* at 23–24).

Reply. Bain confirmed that Direct Action Plaintiffs' Opposition does not contest that the applicable law requires an ownership relationship to find alter ego liability. *See Hickey*, 322 F.3d at 1130; (Reply 4–5). On Direct Action Plaintiffs' conduit argument, their allegations for the period before October 1, 2024 predate any purported ownership relationship; after that date, their allegations are conclusory and plainly inconsistent with their Complaint. (Reply 6–8). At most, those allegations describe normal-course conduct between an investment firm and a portfolio company, not the "manipulative control" required for alter ego liability. *Gerritsen* v. *Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1138 (C.D. Cal. 2015); (Reply 8–9). Regarding their undercapitalization argument, courts do not find undercapitalization unless a corporation is unable to meet its debts as they come due—which Direct Action Plaintiffs do not (and cannot) allege. (Reply 9–10).

***Intentional Interference (Class Action Count 2; Direct Action Count 7).***
Motion to Dismiss. Bain argued Plaintiffs fail to state a claim for several reasons. (MTD 28–36). First, Plaintiffs fail to adequately allege that Bain "intentionally procured the breach" of PowerSchool's contracts. *TileBar* v. *Glazzio Tiles*, 723 F. Supp. 3d 164, 202 (E.D.N.Y. 2024). Rather, their allegations concern conduct occurring months before Bain allegedly acquired a 51% stake in PowerSchool, and none support the inference that Bain acted with intent to interfere with contracts between PowerSchool and Plaintiffs. Second, Plaintiffs do not adequately plead a "factual chain of causation," *Bank of N.Y.* v. *Fremont Gen. Corp.*, 523 F.3d 902, 910 (9th Cir. 2008), or a chain of causation wherein their contracts would have been honored "but for" Bain's conduct, *see TileBar*, 723 F. Supp. 3d at 202–03. Third, Plaintiffs' generalized allegations about cybersecurity fail to "plead with any specificity the disruption of a contract." *Seoul Laser Dieboard Sys. Co.* v. *Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1201 (S.D. Cal. 2013).

Oppositions. First, Plaintiffs responded that Bain induced a breach of contract by allegedly "direct[ing]" cost-cutting measures in August 2024 or other unspecified times prior to the effective date of the merger agreement. (Class Opp. 17); (*see* Direct Opp. 30). Second, they contended that they adequately allege that Bain had the state of mind for required intentional interference, and that a separate showing of wrongfulness is unnecessary. (Class Opp. 19); (Direct Opp. 30–32). Third, on causation, Class Action Plaintiffs contended that Bain's alleged "approv[al]" of workforce measures was a substantial factor in the alleged breach of contract, and Direct Action Plaintiffs asserted that Bain "directly caused" a breach. Both similarly disputed Bain's breach arguments. (Class Opp. 20); (Direct Opp. 33).

Reply. First, Bain explained that both Oppositions' arguments rely on Plaintiffs' conclusory allegations regarding conduct before Bain was alleged to have invested in PowerSchool. (Reply 12–17). Bain explained that the agreement expressly stated that Bain lacked the ability to control PowerSchool's business

before the transaction's effective date, and that Plaintiffs cannot contort normal-course interim operating covenants into evidence of direction. (*Id.* at 14). Second, Bain stated that Plaintiffs fail to articulate how generalized discussions about cost reductions were done with the requisite intent to interfere with particular contracts—or how Bain lacked a legitimate business purpose in conducting arm's-length negotiations. (*Id.* at 15–16). Third, Bain noted that Plaintiffs still fail to adequately allege that PowerSchool would have performed its contracts but for Bain's alleged conduct, or that PowerSchool had even breached its contracts. (*Id.* at 16–17).

***CFAA (Class Action Count 4).*** <u>Motion to Dismiss</u>. Bain argued Class Action Plaintiffs invent a novel CFAA theory and fail to plead several essential elements on either a conspiracy or non-conspiracy theory. (MTD 36–40). They fail to sufficiently allege that Bain unlawfully accessed any data, did so intentionally, or caused damages. Regarding conspiracy, Class Action Plaintiffs fail to make "specific allegations of an agreement and common activities." *See NetApp, Inc.* v. *Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 835 (N.D. Cal. 2014).

<u>Opposition</u>. Class Action Plaintiffs addressed only their conspiracy allegations and conceded that their CFAA theory is novel. (Class Opp. 20–24). They contended PowerSchool, not Bain, employed a tool in violation of contractual provisions. (*Id.* at 21–22). They argued their assertions that Bain authorized or directed PowerSchool's use of the alleged tool, and that Bain allegedly had an "oversight role," sufficiently plead conspiratorial agreement. (*Id*. at 22–23). Finally, they maintained that they adequately plead damages. (*Id.* at 23–24).

<u>Reply</u>. Bain explained that Class Action Plaintiffs fail to rebut its argument that they do not allege facts sufficient to plead a CFAA conspiracy. (Reply 17–21). Class Action Plaintiffs still do not allege that Bain specifically authorized the use of a particular access tool or otherwise entered any "agreement to participate in an unlawful act." *Alfus* v. *Pyramid Tech Corp.*, 745 F. Supp. 1511, 1520 (N.D. Cal. 1990); (Reply 17–19). They also do not identify "common activities" in furtherance

of an illegal act or the requisite intent to commit the act. *NetApp, Inc.*, 41 F. Supp. at 835; (Reply 19–21). And they fail to articulate a damages theory based on alleged unlawful access, rather than the actions of a third-party hacker. (Reply 21).

***CDAFA (Class Action Count 5).*** In its <u>Motion to Dismiss</u>, Bain argued that Class Action Plaintiffs fail to allege that Bain accessed or used a computer, acted with the requisite knowledge or intent, or caused damages or loss, as required to state a claim under Cal. Penal Code § 502(c)(3), (6), and (7). (MTD 40–43). Bain noted that a CDAFA conspiracy claim (if raised) would fail because, as with the CFAA, Class Action Plaintiffs fail to allege an agreement to commit an unlawful act. In their <u>Opposition</u>, Class Action Plaintiffs argued that their assertion that Bain "directed" PowerSchool's alleged actions suffices to plead that Bain "[a]ssisted" PowerSchool in violating the statute. (Class Opp. 25). They also listed various purported losses. (*Id.* at 26). In its <u>Reply</u>, Bain first noted the merger agreement stated that Bain could not control PowerSchool before October 2024, undercutting Class Action Plaintiffs' generalized assertion that Bain "directed" PowerSchool's alleged acts. (Reply 19). Second, as with the CFAA, they identify no actions taken by *Bain*, rather than PowerSchool. (*Id.* at 20). Third, they do not articulate how any "use" or "access" was "both knowing and without permission," as required. *Bui-Ford* v. *Tesla, Inc.*, 2024 WL 694485, at *5 (N.D. Cal. Feb. 20, 2024); (Reply 20). Fourth, they do not identify damages based on unauthorized access to a computer by Bain or PowerSchool, rather than the conduct of a third party. (Reply 21).

***Group Pleading.***[3] In its <u>Motion to Dismiss</u>, Bain argued that Class Action Plaintiffs' claims for negligence, violation of the CDAFA, unjust enrichment, and declaratory and injunctive relief should be dismissed because they engage in improper group pleading and their allegations are plainly directed toward

---

[3] Direct Action Plaintiffs failed to give notice as to what actions by Bain gave rise to 42 of their counts, but they have confirmed that they are no longer pursuing those counts against Bain on a direct liability theory. (MTD 43 n.30).

PowerSchool, not Bain. (MTD 43–44). In their <u>Opposition</u>, Class Action Plaintiffs argued that Bain had sufficient notice of their claims because Bain made "specific arguments" about those claims, and they listed allegations they considered to satisfy Rule 8 (Class Opp. at 26–27). In its <u>Reply</u>, Bain observed that Class Action Plaintiffs' list of allegations underscores their group pleading, as those allegations point to conduct by PowerSchool, obscure the timeline of Bain's alleged investment in PowerSchool, and repeat implausible, conclusory allegations. (Reply 21–22).

***Negligence (Class Action Count 3).*** <u>Motion to Dismiss</u>. Bain argued that Class Action Plaintiffs fail to adequately plead the elements for negligence. (MTD 45–48). First, they fail to allege that Bain owed them a duty, because they do not allege that Bain held individuals' data, that it had a special relationship with Class Action Plaintiffs, or that PowerSchool's alleged duty could be imputed to Bain. Second, absent a duty, they fail to allege a breach. Third, they fail to allege that Bain proximately caused the cybersecurity incident, because the alleged cause of the cybersecurity incident predated Bain's alleged ownership stake or alleged conduct, and because Bain's alleged actions were too attenuated from any purported harm.[4]

<u>Opposition</u>. On duty, Class Action Plaintiffs responded that they adequately plead that Bain owed a duty to them by alleging that Bain knew or should have known about PowerSchool's data collection and security practices. (Class Opp. 27–28). They further argued that Bain owed a duty because it was "foreseeable" that Bain's alleged actions would lead to the harms at issue. (*Id.* at 28–29). On breach, they contended that because their allegations are sufficient to "establish[] Bain's duty," Bain "waived" the argument that the duty was breached. (*Id.* at 30). Finally, they argued that causation should not be decided on a motion to dismiss and maintained that they plausibly allege that cost cutting led to a reduction of workforce

---

[4] Bain also joined PowerSchool's Track 2 briefing, including its argument that the economic loss doctrine or similar doctrines applied. (*See* MTD 48; Reply 22 n.21).

and outsourcing of data security, which in turn caused injuries. (*Id.*).

<u>Reply</u>. On duty, Bain explained that Class Action Plaintiffs still fail to adequately allege Bain owed them a duty merely because PowerSchool held data, and that they fail to allege that Bain collected or stored the data at issue. (*Id.* at 23). Even Class Action Plaintiffs' cited decision states that a duty to protect data only arose "[o]nce [d]efendants collected [p]laintiffs' information." (*Id.*) (citing *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *14 (D.N.J. Dec. 16, 2021)). Class Action Plaintiffs' foreseeability theory is unprecedented, sweeping, and plainly incorrect: under that theory, every investment firm could be liable for every data incident at every portfolio company. (*Id.* at 24). Finally, Bain explained that Class Action Plaintiffs' allegations on causation are implausible and properly resolved on a motion to dismiss, especially since the purported workforce and cost measures are alleged to have occurred months before the merger agreement became effective. (*Id.*).

**Unjust Enrichment (Class Action Count 7).** In its <u>Motion to Dismiss</u>, Bain argued that Class Action Plaintiffs fail to adequately allege unjust enrichment, because (1) that claim is not an independent cause of action under California law, *see Advanced Eng'g Sols. Co., LLC* v. *Pers. Corner, LLC*, 2021 WL 1502705, at *7 (C.D. Cal. Feb. 25, 2021), and (2) they offer no non-conclusory allegations that Bain received or retained any direct benefit at their expense. (MTD 48–50). In their <u>Opposition</u>, Class Action Plaintiffs contended that an unjust enrichment claim may be maintained through quasi-contract. (Class Opp. 33). They also argued that they sufficiently allege that Bain received a benefit in the form of alleged money initially paid to PowerSchool and cost-cutting. (*Id.* at 33–34). In its <u>Reply</u>, Bain reiterated that California law does not recognize a standalone cause of action for unjust enrichment, and that, regardless, Class Action Plaintiffs have not identified any non-conclusory allegations that they conferred any benefit to Bain (as opposed to PowerSchool). (Reply at 25–26).

***Declaratory Judgment Act (Class Action Count 8).*** In its Motion to Dismiss, Bain explained that the Act does not provide an independent cause of action. *City of Reno* v. *Netflix, Inc.*, 52 F.4th 874, 878–79 (9th Cir. 2022); (*see* MTD 50). Furthermore, declaratory relief "is unnecessary where an adequate remedy exists under some other cause of action." *Mangindin* v. *Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009). In their Opposition, Class Action Plaintiffs argued that the Court has authority to order declaratory relief, such relief is appropriate to prevent future harm, and dismissal is premature. (Class Opp. 34–35). In its Reply, Bain explained that relief under the Act is unavailable where a party "lacks a cause of action under a separate statute," that Class Action Plaintiffs do not contest the applicable legal standard, and that they do not sufficiently plead a cause of action against Bain on any of their counts. *Netflix*, 52 F.4th at 878; (*see* Reply 26).

***Personal Jurisdiction.***[5] Motion to Dismiss. Bain argued that Plaintiffs fail to satisfy their burden to allege (1) purposeful availment or direction toward the transferor forum states (California, New Jersey, and New York); and (2) that the claims arise out of or relate to any alleged in-forum acts. (MTD 10–17); *see Matter of Star & Crescent Boat Co., Inc.*, 549 F. Supp. 3d 1145, 1170 (S.D. Cal. 2021). Allegations that Bain is subject to jurisdiction in California due to its alleged control over PowerSchool are conclusory, and the existence of an investment firm/portfolio company relationship alone cannot form the requisite contacts. Given Plaintiffs' failure to meet their burden on the first two prongs, the Court need not reach the final prong, but regardless, exercising jurisdiction over Bain would be unreasonable.

Class Action Opposition. Class Action Plaintiffs raised four theories. (Class Opp. 9–15). First, they argued PowerSchool's contacts can be imputed to Bain under a theory of successor liability. Second, they contended that, under *Calder* v. *Jones*,

---

[5] Bain agreed not to pursue a subject matter jurisdiction defense against school districts that have filed short-form complaints. (Reply 4 n.4).

- 9 -
BAIN'S SYNOPSIS ADDRESSING THE MOTION TO DISMISS
TRACK 2 SCHOOL DISTRICT COMPLAINTS                    25-md-3149-BEN-MSB

465 U.S. 783 (1983), they adequately allege that Bain committed intentional acts expressly aimed at forum states. Third, they argued that Bain fails to show that exercising jurisdiction would be unreasonable. Fourth, they argued that the Court can exercise pendent jurisdiction based on the CFAA.

Reply. Bain explained that, first, Class Action Plaintiffs fail to overcome the presumption of successor nonliability, as they did not allege that Bain agreed to assume PowerSchool's liabilities or invested without adequate consideration. (Reply 27–29). Second, they cannot satisfy *Calder*, because PowerSchool's contacts with Class Action Plaintiffs cannot serve as the only link between Bain and the forum state. (*Id.* at 30). Third, they ignore their burden to establish that personal jurisdiction would be proper and, regardless, jurisdiction would be unreasonable. (*Id.*) Finally, personal jurisdiction is improper on **any** claim, including the CFAA, such that pendent jurisdiction is inapposite. (*Id.* at 30–31).

Direct Action Opposition. Direct Action Plaintiffs argued that they allege that Bain purposefully availed itself of California by engaging in merger negotiations with and exercising control over PowerSchool. (Direct Opp. 4–9). They suggested that this Court may exercise jurisdiction over Bain as an alter ego of PowerSchool, and that Bain did not show that the exercise of jurisdiction would be unreasonable.

Reply. Bain explained that a defendant's participation in negotiations with a company is insufficient as a matter of law to confer personal jurisdiction over claims for a cyberattack unrelated to that transaction. Moreover, Direct Action Plaintiffs fail to allege that PowerSchool is an alter ego of Bain. (Reply 31–32).

Jurisdictional Discovery. Plaintiffs each sought jurisdictional discovery. (Class Opp. 15; Direct Opp. 27–28). Bain argued that such discovery should be denied: neither set of Plaintiffs makes a colorable showing that this Court might be able to exercise personal jurisdiction, and additional discovery would not change that jurisdictional analysis, because the transaction between Bain and PowerSchool is far too attenuated from the cybersecurity incident at issue. (Reply 32).

| | | |
|---|---|---|
| Dated: December 8, 2025 | | Respectfully submitted, |
| | | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| | By: | */s/ John P. Carlin* |
| | | John P. Carlin |
| | | |
| | | John P. Carlin (NY 3031887)* |
| | | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| | | 2001 K Street, NW |
| | | Washington, D.C. 20006-1047 |
| | | Telephone: (202) 223-7300 |
| | | jcarlin@paulweiss.com |
| | | |
| | | Jacobus J. Schutte (NY 5023353)* |
| | | Dylan O. Smith (NY 5846076)* |
| | | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| | | 1285 Avenue of the Americas |
| | | New York, NY 10019 |
| | | Telephone: (212) 373-3000 |
| | | jschutte@paulweiss.com |
| | | dosmith@paulweiss.com |
| | | |
| | | R. Rosie Vail (SBN 317977) |
| | | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| | | 535 Mission Street, 25th Floor |
| | | San Francisco, CA 94105 |
| | | Telephone: (628) 432-5100 |
| | | Facsimile: (628) 232-3101 |
| | | rvail@paulweiss.com |
| | | |
| | | *admitted *pro hac vice* |
| | | |
| | | *Attorneys for Defendant Bain Capital, L.P.* |

## CERTIFICATE OF SERVICE

I certify that on the 8th day of December, 2025, I filed the foregoing notice with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:   */s/ John P. Carlin*
     John P. Carlin
     Email: jcarlin@paulweiss.com
     *Counsel for Bain Capital, L.P.*