Jennifer M. French, Cal. State Bar No. 265422
jennf@lcllp.com
**LYNCH CARPENTER, LLP**
9171 Towne Centre Dr, Ste. 180
San Diego, CA 92122
Tel.: (619) 762-1903

*Plaintiffs' Liaison Counsel*

[Additional Counsel listed below]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION, | Case No.: 3:25-md-03149-BEN-MSB<br><br>**JOINT SUBMISSION IN ADVANCE OF HEARING ON DEFENDANTS' MOTIONS TO DISMISS**<br><br>Date:    January 26, 2026<br>Time:    9:00 a.m.<br>Judge:  Hon. Roger T. Benitez<br>Ctrm:   5A |

The Parties respectfully submit the following "Gilbert-Style outlines" in advance of the hearings scheduled for January 26, 2026:

| TRACK 1 | | |
|---|---|---|
| **Ex.** | **Description** | **Starting Page** |
| A | PowerSchool Defendants' Outline | 1 |
| B | Bain Capital's Outline | 12 |
| C | Movate's Outline | 19 |
| D | Track 1 Plaintiffs' Outline | 28 |
| **TRACK 2** | | |
| E | PowerSchool Defendants' Outline | 51 |
| F | Bain Capital's Outline | 58 |
| G | Movate's Outline | 65 |
| H | Track Two Class Plaintiffs' Outline | 74 |
| I | Track Two Direct Plaintiffs' Outline | 83 |

Dated: January 23, 2026

*/s/ Jennifer M. French*
*Plaintiffs' Liaison Counsel*
jennf@lcllp.com

David S. Casey, Jr., Cal. State Bar No. 60768
dcasey@cglaw.com
**CASEY GERRY FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811

*Co-Lead Counsel for Class Action Plaintiffs*

Carol C. Villegas, N.Y. State Bar No. 4154324*
cvillegas@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700

*Co-Lead Counsel for Teachers Unions Plaintiffs*

James J. Pizzirusso, D.C. State Bar No. 477604*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200

*Co-Lead Counsel for Individual Action Plaintiffs*

James E. Cecchi, N.J. State Bar No. 030861989*
jcecchi@carellabyrne.com
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700

*Lead Counsel for School District Class Action Plaintiffs*

James P. Frantz, Cal. State Bar No. 87492
jpf@frantzlawgroup.com
William B. Shinoff, Cal. State Bar No. 280020
wshinoff@frantzlawgroup.com
**FRANTZ LAW GROUP, APLC**
402 West Broadway, Suite 860
San Diego, CA 92101
Tel.: (619) 233-5945

*Co-Lead Counsel for School District Direct Action Plaintiffs*

Dated: January 23, 2026

*/s/ Anne Johnson Palmer*
Anne Johnson Palmer, Cal. State Bar No. 302235
anne.johnsonpalmer@ropesgray.com
**ROPES & GRAY LLP**
3 Embarcadero Center, Suite 300
San Francisco, CA 94111-4006
Tel.: 415-315-6337

Monica Mleczko, Mass. State Bar No. 696607*
monica.mleczko@ropesgray.com
**ROPES & GRAY LLP**
800 Boylston Street
Boston, MA 02199
Tel.: 617-235-4082

Christopher M. Young, Cal. State Bar No. 163319
christopher.young@dlapiper.com
**DLA PIPER LLP**
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: 619-699-4748

*Counsel for the PowerSchool Defendants*
* Admitted *pro hac vice*

JOINT SUBMISSION IN ADVANCE OF HEARING ON MOTIONS TO DISMISS
No. 3:25-md-03149-BEN-MSB

Dated: January 23, 2026

/s/ Jacobus J. Schutte

Jacobus J. Schutte, NY State Bar No. 5023353*
jschutte@paulweiss.com
Dylan O. Smith, NY State Bar No. 5846076*
dosmith@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON, & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000

John P. Carlin, NY State Bar No. 3031887*
jcarlin@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON, & GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006-1047
Tel.: 202-223-7300

R. Rosie Vail, Cal. State Bar No. 317977
rvail@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON, & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Tel.: 628-432-5100

*Counsel for Defendant Bain Capital, L.P.*
* Admitted *pro hac vice*

Dated: January 23, 2026

/s/ Jonathan D. White

Jonathan D. White, NY State Bar No. 5393780*
jwhite@brownrudnick.com
Dylan P. Kletter, NY State Bar No. 5924659*
dkletter@ brownrudnick.com
**BROWN RUDNICK LLP**
Seven Times Square
New York, NY 10036
Tel: 212-209-4800

Renee Moulton, Cal. State Bar No. 353065
rmoulton@brownrudnick.com
**BROWN RUDNICK LLP**
2121 Avenue of the Stars, Suite 720
Los Angeles, CA 90067
Tel.: 424-525-0200

*Counsel for Defendant Movate, Inc.*
* Admitted *pro hac vice*

JOINT SUBMISSION IN ADVANCE OF HEARING ON MOTIONS TO DISMISS
No. 3:25-md-03149-BEN-MSB

# CERTIFICATION REGARDING ELECTRONIC SIGNATURES

I hereby certify that the content of this document is acceptable to counsel and that I have obtained authorization to affix electronic signatures to this document as required Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedure Manual.

Dated: January 23, 2026                    */s/ Jennifer M. French*
                                           *Plaintiffs' Liaison Counsel*
                                           jennf@lcllp.com

# EXHIBIT A

## PowerSchool's Track One Outline

**PowerSchool's Track One Motion to Dismiss Outline**
*In re PowerSchool*, 3:25-md-3149 (S.D. Cal.)

## I.      INTRODUCTION

Criminal cyber attacks on U.S. companies like the one PowerSchool experienced in December 2024 (the "Incident") happen nearly every day and befall even the most sophisticated and technically savvy organizations in the world.  This case is representative of the cascade of legal actions that seem inevitably to follow whenever companies fall victim to such breaches.  As the prevalence of cyberattacks has exploded, the law has recognized that the familiar limits on legal liability apply to claims arising out of these incidents.  One limitation, recently reiterated by the Ninth Circuit, is that mere exposure of one's information to a cyber criminal is not grounds to bring a legal action, especially when that information is of the type that (a) is routinely made publicly available from multiple sources, and (b) is not the kind of data that allows criminals to perpetrate identity theft.

The information implicated in the PowerSchool Incident varies significantly by person, but the vast majority had nothing more involved than name, contact information, and date of birth—the kind of information that millions of people make available on social media, or that might historically have been included in the phone book.  For a much smaller subset, the hacker accessed limited medical alert information (such as innocuous as needing glasses, which are on open display), or a Social Security number ("SSN").  Significantly, however, PowerSchool has not identified financial information as being involved in the Incident, nor do Plaintiffs plead facts indicating such.

Notwithstanding the limited exposure of any conceivably sensitive information, the Track One Master Complaint (the "MC") seeks to impose on PowerSchool vast liability, even for individuals whose only implicated data is information already routinely available to the public.  And allowing such Plaintiffs' claims to proceed past the motion to dismiss stage not only would flaunt recent Ninth Circuit precedent, it would affirmatively invite similar avalanches of claims after every future data breach, with the ultimate consequence that no company could afford to be in the data processing business, knowing that cyberattacks are impossible to fully protect against.

PowerSchool's motion asks the Court to apply recent precedent from this Circuit to indistinguishable facts alleged here, and to, at the very least, substantially narrow this case and require Plaintiffs who seek relief in federal court to meet the Article III pleading standard.  The decision tree on standing is set forth in Graphic 1 and summarized in greater detail below, followed by a summary of Plaintiffs' failure to plead the elements of their remaining claims:

**Graphic 1: Decision Tree for Standing Analysis**



## II.    TRACK ONE PLAINTIFFS LACK ARTICLE III STANDING

A.    Article III standing is a threshold issue of law that determines whether this court has subject-matter jurisdiction. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37–39 (1976). Standing is determined on an individual basis and "is not dispensed in gross," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). In a class action, each named plaintiff must have standing to proceed with their claims. *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 863 (S.D. Cal. 2023).

B.    PowerSchool's motion to dismiss focuses on the first two requirements for Article III standing: injury-in-fact and traceability.

C.    In data breach cases, the nature of the information at issue matters and is determinative of standing. Based on recent Ninth Circuit precedent, the disclosure of non-sensitive information (e.g., birth date, name or address) does not confer standing. *See, e.g., Kisil v. Illuminate Educ., Inc.*, 2025 WL 2589000, at *2 (9th Cir. Sep. 8, 2025).

-2-

D.   Examination of the nature of the data avoids "every data breach (or any situation in which one loses control of information) [conferring] standing, regardless of whether private information is exposed." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022).

E.   To provide the parties with clarity on what is required to have standing, the Court should address the Plaintiffs' allegations in terms of three buckets.[1]  To be clear, PowerSchool challenges each bucket as lacking standing under straightforward application of Supreme Court precedent.  But at a minimum, those in the first bucket—the No-Injury Plaintiffs—lack standing in light of *Kisil*.

1.   **The No-Injury Plaintiffs.  These are the Plaintiffs who <u>do not</u> claim that the Incident involved their SSN or any medical information.**  *Kisil* makes clear that the mere compromise of names and contact information, and data like "grades, socio-economic disadvantage status, and special education information" does not constitute an injury-in-fact.  2025 WL 2589000, at *1.

The No-Injury Plaintiffs are identically situated to the plaintiffs in *Kisil*. Like the plaintiffs in *Kisil*, some of the No-Injury Plaintiffs claim to have experienced fraudulent activity, like unauthorized payment card charges. Their allegations do not confer standing, because the data that these Plaintiffs allege was involved in the Incident—contact or demographic information—is not of the kind that can be used to commit fraud.  *Kisil*, 2025 WL 2589000, at *2 ("We agree with the district court.  Plaintiffs have not shown that identity theft has occurred[.]"); *In re Illuminate Education Data Security Incident Litigation*, No. 22-cv-01164, 2023 WL 8888839, at *[__] (C.D. Cal. Nov. 6, 2023) (finding no actual identity theft where the plaintiff claiming fraudulent debit card charges failed to "explain how any information that was leaked could be linked" to that alleged fraudulent activity).

2.   **The Other Plaintiffs.  These are the Plaintiffs who do allege the Incident involved their SSN and/or what they term medical information.  These Plaintiffs fall into two categories, both of which are addressed by a**

---

[1] Appendix A to PowerSchool's Motion to Dismiss groups Plaintiffs into these buckets, namely: the 121 Plaintiffs who do not allege that SSNs or actual medical information was involved, or who only generically describe what data was involved (the "No-Injury Plaintiffs"), and (ii) the remaining 49 Plaintiffs (the "Other Plaintiffs") who claim the Incident involved SSNs or medical information, only nine of whom allege any form of misuse.  *See* ECF No. 333.  The third bucket of Plaintiffs stems from the second.  Nine of those 49 Plaintiffs fail to plausibly trace their allegations of harm to this Incident.

-3-

growing body of law applying the Supreme Court's decision in
*TransUnion* to dismiss for lack of standing:

i.   **Plaintiffs who claim the exposure of SSN or medical
     information, without alleging any misuse of their data**.  For this
     group of Plaintiffs (40 in total), having personal information
     involved in a data breach, even if it is sensitive, does not confer
     standing without allegations of misuse.  *See, e.g.*, *Stuart v. Kyocera
     AVX Components Corp.*, 769 F. Supp. 3d 476, 485-92 (D.S.C. 2025)
     (no Article III standing—even where SSNs were implicated—
     because plaintiffs did not allege actual misuse).

ii.  **Plaintiffs who claim the exposure of SSN or medical information
     and who do allege misuse of their data**.  This small subset (nine
     Plaintiffs in total) still lack standing because they do not plausibly
     allege a connection between the Incident and alleged misuse of their
     data.   As a result, they do not allege any injury traceable to
     PowerSchool's alleged conduct.  *See, e.g.*, *Jenkins v. Associated
     Wholesale Grocers, Inc.*, 2025 WL 708574, at *6-11 (D. Kan. Mar.
     5, 2025) (fraud not traceable to the breach despite involvement of
     SSN); *Dougherty v. Bojangles' Rests., Inc.*, 2025 WL 2810673
     (W.D.N.C. Sep. 30, 2025) (same).

## III.   LACK OF COGNIZABLE DAMAGES IS FATAL TO MANY OF PLAINTIFFS' CLAIMS, INCLUDING THEIR NEGLIGENCE-BASED COUNTS

### A.   **Cognizable Damages Requires More than Article III Standing**

1.   Article III standing is only the first hurdle Plaintiffs face.  Many of their
     claims further require cognizable damages, which is a higher bar than
     alleging an injury-in-fact for Article III purposes.  *See Krottner v. Starbucks
     Corp.*, 406 Fed. App'x 129, 131 (9th Cir. 2010) (plaintiffs had Article III
     standing but did *not* "establish[] a cognizable injury for purposes of their
     negligence claim").[2]

---

[2] *See, e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d
942, 963 (S.D. Cal. 2012) ("*Sony II*") (negligence); *Rand v. Travelers Indem. Co.*, 637 F. Supp.
3d 55, 72 (S.D.N.Y. 2022) (negligence per se); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d
1056, 1069 (C.D. Cal. 2024) (breach of fiduciary duty); Cal. Bus. & Prof. Code § 17204 (plaintiff
must have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair
competition."); *Sony II*, 903 F. Supp. 2d at 964 (dismissing UCL claim on this ground).

-4-

2.    The claims requiring cognizable damages are Plaintiffs' negligence-based counts, as well as their claims for breach of fiduciary duty and for violation of multiple state consumer protection statutes.[3]

3.    The No-Injury Plaintiffs do not plead cognizable damages for the same reasons they lack standing.

4.    Turning to the 49 Other Plaintiffs, 40 of them do not claim any misuse of their data. Plaintiffs do not allege that the cybercriminals responsible for the Incident—one of whom has already been apprehended and pled guilty, MC ¶ 25—have posted the data involved on the dark web. These Other Plaintiffs instead offer theories of harm that courts consistently have held do not constitute cognizable damages, especially when it is common to receive notifications of such cyberincidents.

    i.    ***Future Risk of Harm.*** The mere risk of future harm does not plead cognizable damages standing alone. *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 695 (N.D. Cal. 2019). Plaintiffs contend risk of future harm suffices where "an expense is 'reasonably certain to be incurred'" due to that risk. *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 469 (S.D.N.Y. 2022) (quoting *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 281 (S.D.N.Y. 2008)). But the Plaintiffs do not allege any theft or fraud involving their information, or any "reasonably certain" "expense" they will incur.[4]

    ii.    ***Lost Time; Emotional Distress.*** Generalized allegations of lost time are not enough. *See, e.g., Corona v. Sony Pictures Ent., Inc.*, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015); *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *9 (C.D. Cal. May 8, 2023).

    iii.    ***Diminution of Value.*** Plaintiffs cannot seek damages for loss of value in their data because they do not allege that they had a pre-

---

[3] Negligence-Based Claims (Counts I, II, IV, IX, and XV); Breach of Fiduciary Duty Claims (Count VII); Consumer Protection Statutes (Counts X, XI, XXII, XVI, XVIII, XXIII, XXIV, XXVIII, XXIX, XXX, XXXII, XXXIV, XXXVI, XXXVII, XL, XLI, XLIII, XLIV, XLVI, XLVII, XLIX, LI, LIII, LIV, LV, LVII, LIX, LXI, LXII, LXIV, LXVI, LXVIII, LXX, LXXI, LXXII, LXXIII, LXXVII, LXXIX, LXXXI).

[4] Generalized allegations that "information" appeared on the dark web do not save these claims. Most of these Plaintiffs fail to specify that the information supposedly appearing on the dark web resulted from the Incident or when the information appeared and whether it was the same information involved in the Incident.

-5-

existing economic interest in the information, or that the value of their information to them has diminished, for example, through identity theft or misuse. *See Landon v. TSC Acquisition Corp.*, 2024 WL 5317240, at *6 (C.D. Cal. Nov. 1, 2024) (finding conclusory allegation that data "has been damaged and diminished by its acquisition by cybercriminals" insufficient to show that plaintiffs' "ability to participate in that market has been impaired"). "[T]he mere misappropriation of personal information" does not constitute cognizable damages. *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021). In *Pruchnicki*, the Ninth Circuit held that the plaintiff did not sufficiently "allege that *her* personal information actually lost value[,]" which Plaintiffs also fail to do here. *Id.*

iv.    ***Benefit-of-the-Bargain.*** Plaintiffs do not allege any "bargain" they reached with PowerSchool. They do not allege that they provided their schools or PowerSchool with any payment in exchange for using the SIS, much less in exchange for any security protections. *See Huynh v. Quora, Inc.*, 2019 WL 11502875, at *10 (N.D. Cal. Dec. 19, 2019) (rejecting benefit-of-the-bargain theory where plaintiffs "have not shown that they paid anything for the asserted privacy protections").[5]

5.    Nine Other Plaintiffs claim actual misuse of their data but fail to do so with plausible factual allegations of damages resulting from the Incident. *See* Appendix A (ECF No. 333) (yellow-highlighted Plaintiffs).

## IV.    PLAINTIFFS FAIL TO PLEAD BASIC ELEMENTS OF THEIR REMAINING CLAIMS

### A.    <u>Invasion of Privacy (Count IV, XV)</u>

1.    ***No "Highly Offensive" Conduct.*** Mere negligence does not rise to the level of an "egregious breach of social norms" that would sustain a claim for invasion of privacy. *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 646 (N.D. Cal. 2024). This is true even where a data breach involves information that courts regard as presenting more sensitivity. *Id.* (involving

---

[5] Plaintiffs' negligence-based, fiduciary duty, and consumer protection claims are subject to additional, independent grounds for dismissal set forth in PowerSchool's briefing. *See* PowerSchool's Motion to Dismiss (ECF No. 285) at 19 (negligence), 28 (fiduciary duty), and 31 (consumer protection); PowerSchool's Reply (ECF No. 360) at 15 (negligence), 23 (fiduciary duty), and 25 (consumer protection).

-6-

"names, dates of birth, Social Security numbers, driver's license numbers and/or state identification numbers, bank account information, employment information, and personal health information").

    i.    Contrary to what Plaintiffs claim, courts routinely dismiss invasion of privacy claims at the pleading stage where there are insufficient allegations of highly offensive conduct. *See, e.g.*, *Razuki v. Caliber Home Loans, Inc.*, 2018 WL 2761818, at *1 (S.D. Cal. June 8, 2018) (Burns, J.) (dismissing invasion of privacy claim in a case involving "sensitive customer information like social security numbers").

**B.**    <u>**Unjust Enrichment (Count III)**</u>

    1.    ***No Benefit Conferred.***  Plaintiffs do not allege that they conferred any benefit (such as payment of money) on PowerSchool, whether directly or indirectly. *Cf. Rejoice! Coffee Co. v. Hartford Fin. Servs. Grp.*, 2021 WL 5879118, at *11 (N.D. Cal. Dec. 9, 2021) (subsidiary-parent relationship where parent was alleged to receive part of the payments plaintiffs made to subsidiary).

        i.    Plaintiffs vaguely claim that PowerSchool was enriched by storing their information, but these allegations are wholly conclusory. *See, e.g.*, *Harvey v. Nat'l Amusements, Inc.*, 2025 WL 928776, at *4 (D. Mass. Mar. 27, 2025) (dismissing unjust enrichment claim under Massachusetts law where plaintiffs alleged generally that defendant "unjustly benefited from the receipt of [p]laintiffs' and the Class's PII").

        ii.    Plaintiffs also argue that the "benefit" PowerSchool received is that it would not be able to maintain its business without their data. Their cited case, *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1145 (C.D. Cal. 2021), is inapposite as it involved a direct payment for the defendants' services—exactly what is missing here.

    2.    ***No Unlawful Retainment.***  The unjust benefit here, if any, was retained by the third-party hackers, not PowerSchool. *See In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *6 (S.D.N.Y. Feb. 24, 2022).

**C.**    <u>**Plaintiffs Have Waived Their Consumer Protection Claims Outside of California and the California UCL Claim Should Be Dismissed**</u>

    1.    ***Plaintiffs Have Waived Their Non-UCL Claims.***

        i.    Plaintiffs do not oppose PowerSchool's arguments for dismissal of each consumer protection statute aside from California's Unfair Competition Law (the "UCL") and have thus waived opposition to

-7-

their dismissal. *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014).

ii.     The non-UCL claims are also subject to dismissal for several reasons—including the absence of a consumer relationship or transaction and bars against representative claims—covered in Appendix B to PowerSchool's Motion (ECF No. 285).

2.     ***The UCL Claim Fails Given a Lack of Cognizable Damages (as addressed above) and Adequate Remedies at Law.***

i.     Plaintiffs must "establish that [they] lack[] an adequate remedy at law before securing equitable restitution for past harm under the UCL." *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

ii.     Apart from parroting that they satisfy this requirement, Plaintiffs do not address how their 80 other causes of action fail to constitute an adequate remedy at law (if they could prove them). *Scheibe v. Esupplements, LLC*, 681 F. Supp. 3d 1101, 1109 (S.D. Cal. 2023) (Benitez, J.) (dismissing UCL claim because Plaintiff did not allege facts establishing the inadequacy of legal remedies).

D.     <u>There is No Basis to Invoke the Data Breach Notification Statutes (Counts XII, XXXI, XXXIII, XXXV, L, LVI, LXVII, LXIX, LXXIV, LXXVI, LXXX)</u>

1.     ***Notification Duty Owed to the School Districts, Not Plaintiffs***. PowerSchool owed a duty to notify *the school districts*, not Plaintiffs, because PowerSchool is a data processor rather than the owner of the data. *See, e.g.*, Cal. Civ. Code § 1798.82(b). Plaintiffs' bare recitation that PowerSchool is a "licensor" is insufficient. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, 2021 WL 3568394, at *16-17 (D.S.C. Aug. 12, 2021).

2.     ***No Damages Resulting from Delay***. Plaintiffs do not plausibly allege any form of injury resulting from the supposed delay in notification, rather than from the Incident itself. *See, e.g.*, *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *7 (S.D. Cal. Nov. 3, 2016).

E.     <u>The California Plaintiffs Invoke Statutes That Are Plainly Inapplicable Here</u>

1.     ***CDAFA (Count XIX)—CDAFA Does Not Permit Recovery Against the Victim of a Hacking Incident***. The Comprehensive Data Access and Fraud Claim Act is not meant to "impose liability" on PowerSchool because of "third party hackers' unauthorized access of and tampering with [its] system." *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal.

-8-

2011) (rejecting theory that a security vulnerability amounted to providing unauthorized access). The only case Plaintiffs offer involving a data compromise, *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1047-48 (C.D. Cal. 2019), dismissed the CDAFA claim and involved allegations of the defendant's actual participation in the unauthorized disclosure, which are absent here.

2.    ***CMIA (Count XIV)—PowerSchool is Not Subject to the Statute.*** Plaintiffs' claimed basis for subjecting PowerSchool to the California Confidentiality of Medical Information Act is that PowerSchool is a "contractor" within the meaning of the statute. PowerSchool plainly does not meet the definition of a contractor because it is not a "medical group, independent practice association, pharmaceutical benefits managers, or a medical service organization[.]" Cal. Civ. Code § 56.05(d). The CMIA claim fails for at least two additional reasons:

    i.    ***No "Medical Information."*** The CMIA only covers "medical information," but most of the California Plaintiffs do not allege their medical information was input into SIS or provided to PowerSchool. *See* ECF No. 259, ¶¶ 366-72, 384-89. The remaining California Plaintiffs allege only that unspecified "medical information" or "PHI" was stored in the SIS. MC ¶¶ 372, 378, 390. These allegations do not provide enough information to determine whether the data in question is "medical information" under the CMIA. *See Rossi v. Sequoia Union Elementary Sch.*, 94 Cal. App. 5th 974, 997 (2023) (requiring "factual allegations that defendants received [] 'medical information,' such as medical records, a medical certification, or other information").

    ii.    ***No Allegations Plaintiffs' Own Information Was Viewed.*** Plaintiffs do not allege that anyone viewed *their* medical information due to the Incident. *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1558 (2014).

3.    ***CCPA (Count XIII)—PowerSchool is Not Subject to the Statute.*** The California Consumer Privacy Act is inapplicable to PowerSchool for multiple reasons, most fundamentally because PowerSchool is a "service provider," not a "business." Under the California Consumer Privacy Act, individuals can only sue a covered "business," which is defined as an entity that *both* (i) collects personal information, *and* (ii) determines the purposes, and means of processing that information. Cal. Civ. Code § 1798.140(d)(1). There are no facts alleged indicating that PowerSchool (as opposed to the schools and school districts) determines how Plaintiffs' data is processed. To the contrary, Plaintiffs allege that PowerSchool's customers determine the purposes and means of processing the data. *See* MC ¶¶ 54, 972.

-9-

4. ***Cal. Civ. Code § 1709 (Count XX)—No Duty to Disclose.*** The California Plaintiffs claim that PowerSchool violated California Civil Code section 1709 by allegedly "fail[ing] to disclose and actively conceal[ing] information" about its security practices. MC ¶ 1064.

    i. Because this claim sounds in fraud, Fed. R. Civ. P. 9(b)'s heightened pleading standard applies. Plaintiffs' conclusory allegations of active concealment, *see* MC ¶ 1064, do not particularize any duty to disclose. Plaintiffs also fail to identify any representation by PowerSchool that they claim to have relied upon.

F. <u>**The Remaining Statutory Claims Are Not Adequately Pled**</u>

1. ***O.C.G.A. § 13-6-11 (Count XXV).*** The Georgia Plaintiffs' allegation on the bad faith element necessary to proceed under this statute, *see* MC ¶ 8, is conclusory and falls far short of being actionable, especially when PowerSchool was a victim of a third-party criminal actor.

2. ***DJA**, 28 U.S.C. § 2201 **(Count VI)***. Plaintiffs seek both declaratory and injunctive relief under the Declaratory Judgment Act, but this claim is entirely duplicative of their other claims, which do seek prospective relief (*see, e.g.*, MC ¶ 798). *Kho v. Wells Fargo & Co.*, 2012 WL 3240041, at *9 (C.D. Cal. Aug. 6, 2012).

-10-

# EXHIBIT B

## Bain Capital's Track One Outline

## Bain Capital, L.P.'s Track One Motion to Dismiss Outline
*In re PowerSchool*, 3:25-md-3149 (S.D. Cal.)

## I.    Introduction

Plaintiffs' theory of liability against Bain departs sharply from decades of settled law.  By suing Bain—one of several investors in PowerSchool—Plaintiffs disregard both the absence of any precedent imposing liability for a cybersecurity incident on an entity with no access to or control over the relevant data, as well as the undisputed fact that Bain's investment occurred two months *after* the alleged breach began.  It is also undisputed that no court has ever found an investor vicariously or directly liable for a data-security incident at a company in which it invested.  Allowing Plaintiffs' claims to proceed would dramatically and unjustifiably expand data-breach liability nationwide, in a manner entirely inconsistent with existing precedent.  It would also conflict with a fundamental principle of corporate law that "[l]imited liability is the rule not the exception"—the foundation upon which "large undertakings are rested, vast enterprises are launched, and huge sums of capital attracted."  *Greenspan* v. *LADT, LLC*, 191 Cal. App. 4th 486, 510 (2010) (quoting *Anderson* v. *Abbott*, 321 U.S. 349, 362 (1944)).

These fundamental defects are only underscored by the sparse allegations made against Bain in the Complaint—which reveal that the supposed causes of the breach predated Bain's acquisition of any interest in PowerSchool.  Because Plaintiffs' allegations fall far short of pleading the elements of any of Plaintiffs' claims, the claims against Bain should be dismissed in full.

**First**, as to Plaintiffs' agency theory, Plaintiffs do not—and cannot—plead either element required to allege a bilateral agency agreement: neither (i) that PowerSchool agreed to operate as Bain's agent nor (ii) the "pervasive and continual" control necessary to satisfy the "strong showing" demanded by black-letter law.  *See Sonora Diamond Corp.* v. *Superior Ct.*, 83 Cal. App. 4th 523, 541–42 (2000).  This is unsurprising.  Plaintiffs never allege the core feature of any agency relationship—that PowerSchool was acting on Bain's behalf to advance Bain's interests.  Nor can they.  PowerSchool is an independent company with its own business and objectives.  Plaintiffs' convoluted effort to manufacture an agency relationship should not survive a motion to dismiss.

**Second**, as to their direct-liability claims, having failed to plead a basis for vicarious liability, Plaintiffs cannot rely on group pleading and wholly conclusory allegations to circumvent the bedrock principle of corporate separateness.  The

-1-

allegations against Bain are threadbare and, like Plaintiffs' agency theory, devoid of any specific factual assertions that could support liability. Plaintiffs offer only a single, conclusory allegation that Bain owed them a duty—an essential element of negligence—but they plead no relationship with Bain and do not allege that Bain ever collected, possessed, maintained, or accessed the data at issue. Critically, Plaintiffs have not identified a single case holding a defendant directly liable to plaintiffs—under any theory or statute—for a data-security incident at a separate entity where the defendant did not collect, possess, maintain, or access the relevant data.

In early discovery, Bain has already confirmed that it is not aware of and has not identified any recommendations or directives regarding cost-cutting measures affecting PowerSchool's cybersecurity operations, reductions to PowerSchool's cybersecurity workforce, or offshoring of PowerSchool's cybersecurity operations between June 6, 2024, and when the alleged cybersecurity incident was discovered at the end of 2024. Bain should not be required to undertake further, expensive discovery to satisfy a fishing expedition when the pleadings plainly do not state a viable cause of action against Bain. Further, keeping Bain as a defendant would not facilitate resolution of this action, as there is no dispute about PowerSchool's ability to satisfy any judgment or settlement by itself. If dismissed, Bain's investment in PowerSchool still exposes it to economic consequences (like all of PowerSchool's investors). Bain respectfully submits that its dismissal is compelled by binding precedent, supported by decades of market reliance, and is entirely consistent with the facts as alleged by the Plaintiffs.

## II. Imposing Agency Liability Would Be Unprecedented, Upending Black-Letter Corporate Law and Settled Business Expectations (All Counts). (MTD 31–32; Reply 4–11).

A. None of Plaintiffs' allegations come close to alleging an agency relationship, which requires that one party agree to act on behalf of another and in furtherance of that other party's interests. There are no allegations that PowerSchool ever agreed to act on Bain's behalf, to pursue Bain's interests, or to serve as Bain's representative in any way.

B. Critically, the law starts from the opposite premise: Companies are not agents of their investors. *See Sonora Diamond*, 83 Cal. App. 4th at 542.

C. Plaintiffs also fail to allege the two additional "essential characteristics" of agency: that PowerSchool had the authority to alter Bain's legal relationships with third parties or that it served as Bain's fiduciary.

*Gerritsen* v. *Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1146 (C.D. Cal. 2015).

D.  Plaintiffs identify no case in which a company has been deemed the agent of its investor, and allowing this claim to proceed would be a broad expansion of liability for all investors.  Addressing Plaintiffs' threadbare arguments:

   1.  *Prior to June 6, 2024 Merger Agreement*.  Plaintiffs' agency theory rests on the claim that Bain "directed" PowerSchool to initiate layoffs in early 2024 while the parties were engaged in arm's-length negotiations over a potential investment.  But at that time Bain was simply a counterparty—incapable of exercising anything resembling the extreme, atypical degree of control required to establish an agency relationship.  *Sonora Diamond*, 83 Cal. App. 4th at 541–42.

   2.  *After June 6, 2024 Merger Agreement*.  Plaintiffs speculate that Bain "conditioned" its investment on layoffs and offshoring, yet the Merger Agreement's express "no-control" provision made clear that PowerSchool retained operational control until October 1, 2024, when Bain's ownership interest would commence.  The interim operating covenant—requiring Bain's approval for major changes before closing—is a standard transactional protection, not remotely the "pervasive and continual" control required for vicarious liability.  *Sonora Diamond*, 83 Cal. App. 4th at 541.  Plaintiffs do not even allege that Bain exercised any approval rights under this provision.

   3.  *After October 1, 2024 Closing*.  Plaintiffs' allegations that Bain replaced PowerSchool's Board and that PowerSchool's CEO intended to work closely with Bain reflect nothing more than normal post-closing governance—far from the extraordinary control necessary for agency.  Courts routinely reject attempts to impose vicarious liability based on ordinary investor oversight.  *See, e.g., In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *3–5 (D.N.J. Feb. 26, 2025), *appeal pending*, No. 25-1626 (3d Cir. Apr. 2, 2025); *Sonora Diamond*, 83 Cal. App. 4th at 541–42.  Doing otherwise would suggest that all portfolio companies are agents of their investors.

**III.    Impermissible Group Pleading**.  (MTD 33–37; Reply 11–13).

    A.    Each of Plaintiffs' direct-liability counts fails as a matter of law because they rest entirely on allegations about PowerSchool's conduct—not Bain's.  Plaintiffs identify no actionable conduct by Bain itself, and direct liability cannot be premised on another company's actions.

    B.    Having abandoned their alter-ego theory (Opp. 15; Reply 4) and failed to plead an agency relationship, Plaintiffs cannot rely on group pleading to impute PowerSchool's alleged conduct to Bain.  The Complaint contains no factual allegations suggesting Bain engaged in, directed, or controlled the conduct at issue, and Plaintiffs cannot rewrite their pleading by treating references to PowerSchool as unwritten allegations against Bain.  Without a viable basis to attribute PowerSchool's actions to Bain, Plaintiffs' direct-liability claims necessarily fail.

**IV.    Plaintiffs' Negligence Claim Is Based on Entirely Novel Theories of Duty and Causation (Count I)**.  (MTD 38–41; Reply 16–19).

    A.    *Duty.*  The Complaint offers only a single, wholly conclusory assertion that "Bain Capital owed a duty" to Plaintiffs.  But Plaintiffs identify no authority—and Bain is aware of none—holding that a defendant owes a duty in a data-breach case where, as here, the defendant did not collect, store, possess, or maintain the data at issue.  Courts simply do not impose negligence duties on entities with no involvement in handling the compromised data.  To hold otherwise would turn the corporate form on its head.

        1.    Plaintiffs' suggestion that participation in merger negotiations creates a duty to end-users of a counterparty's customers would mark an extraordinary and unwarranted expansion of negligence liability.  Recognizing such a duty would extend obligations far beyond any existing precedent governing arm's-length negotiations and would improperly transform ordinary transactional conduct into a basis for tort liability.

        2.    Plaintiffs' foreseeability argument is also nonsensical.  Their theory rests on PowerSchool's alleged workforce decisions—decisions that purportedly contributed to the cyberattack—but those decisions occurred months before Bain acquired any investment interest in PowerSchool.  Plaintiffs' attempt to impose a duty on an investor that

BAIN'S TRACK ONE MOTION TO DISMISS OUTLINE                25-md-3149-BEN-MSB

had no investment interest at the time of the alleged negligent acts is baseless.  Even setting aside the factual implausibility of Plaintiffs' claim in the context of the undisputed timeline, the vague "direction" that Bain allegedly offered is insufficient to create a duty for an investor.

B. *Proximate causation.*  Plaintiffs also fail to allege proximate causation. Their alleged harm is far too attenuated from any purported conduct by Bain to support a negligence claim.  The Complaint does not tie any act or omission by Bain to the breach itself or to Plaintiffs' alleged injuries, and the causal chain Plaintiffs propose is speculative at best.

## V.    Plaintiffs' Other Direct Claims All Fail for Obvious Reasons.

A. *Unjust Enrichment (Count III).*  (MTD 41; Reply 13–14). Plaintiffs allege no facts suggesting that Bain—rather than PowerSchool—received or retained any direct benefit at Plaintiffs' expense.  Even if they could, unjust enrichment "is not an independent cause of action."  *Advanced Eng'g Sols. Co., LLC* v. *Pers. Corner, LLC*, 2021 WL 1502705, at *7 (C.D. Cal. Feb. 25, 2021).

B. *Negligent Training & Supervision (Count IX).*  (MTD 42; Reply 14–15). Plaintiffs fail to plead the elements of negligence or a supervisory relationship.  The Complaint alleges only that PowerSchool—not Bain—hired, oversaw, and granted system access to Movate.  Absent a viable agency theory, PowerSchool's relationship with Movate cannot be imputed to Bain.

C. *California Consumer Privacy Act (CCPA) (Count XIII).*  (MTD 42–43; Reply 19–20).  Plaintiffs' CCPA claim fails because Bain is not a "business" under the statute—Bain never collected, possessed, maintained, or accessed Plaintiffs' data.  Plaintiffs did not assert an aider-and-abettor CCPA theory in their Complaint (see Compl. ¶ 1036), and they cannot amend their Complaint through their opposition. (And, in any event, such a claim would also fail.)

D. *California Unfair Competition Law (UCL) (Count XVI) and Aiding & Abetting (Count XVII).*  (MTD 43–44; Reply 15, 21).  Plaintiffs' UCL and aiding-and-abetting theories fail for the same fundamental reason:  They plead no actionable conduct by Bain, do not explain how Bain directed—or could have directed—PowerSchool's challenged conduct, and cannot

BAIN'S TRACK ONE MOTION TO DISMISS OUTLINE                25-md-3149-BEN-MSB

impute PowerSchool's alleged conduct to Bain absent a viable agency relationship. That Bain allegedly understood the importance of data security and sought ordinary compliance warranties is not enough to show that Bain had knowledge of a breach or gave substantial assistance. *See In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006).

E. *Declaratory Judgment Act (Count VI)*. (MTD 41; Reply 21–22). Relief under the Declaratory Judgment Act is unavailable where a party "lacks a cause of action under a separate statute." *City of Reno* v. *Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022). Plaintiffs do not sufficiently plead a cause of action on any of their claims.

## VI. Bain Should Also Be Dismissed for Lack of Personal Jurisdiction. (MTD 14–20; Reply 22–26).

A. Plaintiffs' vague, conclusory assertions that Bain "controlled" PowerSchool and participated in merger negotiations in California are not enough to satisfy the purposeful-availment requirement, and PowerSchool's California contacts cannot be imputed to Bain because Plaintiffs abandoned their alter ego theory and failed to plead agency.

B. Even if credited, Plaintiffs' allegations bear no meaningful connection to their claimed injuries. The asserted harm—stemming from the cyberattack—is far too attenuated from Bain's supposed involvement in PowerSchool's workforce decisions, particularly given that the cybersecurity incident began before Bain acquired any ownership interest.

C. Finally, jurisdictional discovery concerning the location of merger negotiations would be futile: Plaintiffs' claims do not arise out of those negotiations and cannot be cured through additional jurisdictional discovery.

# EXHIBIT C

## Movate's Track One Outline

BROWN RUDNICK LLP
SAMANTHA J. FLATTERY, No. 342420
sflattery@brownrudnick.com
RENEE M. MOULTON, No. 353065
rmoulton@brownrudnick.com
2121 Avenue of the Stars, Suite 720
Los Angeles, CA 90067
T: 1.424.525.0200
F: 1.424.525.0201

BROWN RUDNICK LLP
DYLAN P. KLETTER, NY Bar No. 5924659 (admitted *pro hac vice*)
dkletter@brownrudnick.com
JONATHAN D. WHITE, NY Bar No. 5393780 (admitted *pro hac vice*)
jwhite@brownrudnick.com
7 Times Square
New York, NY 10036
T: 1.212.209.4800
F: 1.212.209.4801

Attorneys for Defendant,
MOVATE, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br>Track One Class Action | CASE NO. 3:25-md-3149-BEN-MSB<br><br>MDL No. 3149<br><br>Hon. Roger T. Benitez<br><br>**DEFENDANT MOVATE, INC.'S OUTLINE OF ITS ARGUMENT IN SUPPORT OF MOTION TO DISMISS (TRACK 1)**<br><br>Courtroom:   5A<br>Date:        January 26, 2026<br>Time:        9:00 A.M. |

## I.    <u>MOVATE DOES NOT BELONG IN THIS CASE</u>

- Plaintiffs assert claims of negligence (Count I), negligence *per se* (Count II), negligent hiring and supervision (Count IX), unjust enrichment (Count III), and declaratory judgment (Count VI) against Movate.

- **Movate is a downstream IT vendor with no custody or control over the SIS or the security measures Plaintiffs challenge.** PowerSchool owned and operated the SIS, set access permissions, and decided whether to deploy MFA, rotate credentials, or apply least-privilege. Plaintiffs' own Complaint attributes those decisions to PowerSchool. Track 1 Compl. ¶¶ 4–7, 9, 23, 184, 193.

- Even taking the allegations as true, there are **no well-pled, Movate-specific facts** showing Movate owed Plaintiffs a duty or breached any Movate-controlled standard. The targeted security choices were PowerSchool's.

## II.    <u>NEGLIGENCE (COUNT I)</u>[1]

### A.    <u>No duty because Movate lacked custody or control over the risk-creating instrumentality (the SIS and its security configuration).</u>

- Plaintiffs' own allegations—and PowerSchool's mediation statement—confirm that core security settings such as MFA, credential rotation, and access permissions were controlled exclusively by PowerSchool, not Movate. *See* Track 1 Compl. ¶¶ 23, 184, 193 (alleging MFA and least-privilege settings applied by PowerSchool); PowerSchool Track One Mediation Reply at 1 (explaining MFA for the SIS was not enabled by PowerSchool at the time of the breach).

- Courts refuse to impose a duty on vendors who do not operate the system, control access, or store/use the data after installation or in operation. *See*

---

[1] Track One briefing focused on the state law of CA, MA, MI, and NY.

CASE NO. 3:25-md-3149-BEN-MSB
MOVATE'S NOTICE OF MOTION AND MOTION TO DISMISS TRACK 2 DIRECT ACTION COMPLAINT

Movate MTD at 13–15; Movate Reply at 9-11.

- o *Navarro v. Ski Data*, summary judgment for vendor; duty turned on who controlled the system and access; vendor did not. 2022 WL 18280359, at *10 (C.D. Cal.).

- o *Smahaj v. Retrieval-Masters*, MTD granted; no duty where alleged breach occurred on another entity's system outside defendant's control; foreseeability is not enough. 131 N.Y.S.3d 817, 827 (N.Y. Sup. Ct. 2020).

- o *In re U.S. Vision Data Breach Litig.*, MTD granted; even a defendant that stored data had no duty absent control over security decisions and access permissions. 2025 WL 615366, at *8–10 (D.N.J.).

- Plaintiffs argue Movate owed a duty because it had access/control and created a foreseeable risk. Opp. at 19–21.

  - o But Plaintiffs allege PowerSchool controlled the very security decisions at issue; without custody/control, no duty lies against a downstream vendor. *See* Movate MTD at 13–15; Movate Reply at 9-12.

  - o Plaintiffs' cited cases all involved defendants who, unlike Movate, operated the compromised system. *See* Movate Reply at 9-10.

**B.**    **<u>Foreseeability alone cannot create duty in these jurisdictions.</u>**

- California Supreme Court: expanding duty based on generalized risk creates a "universe of potential claims" and overwhelming liability—precisely the concern here if every subcontractor owes duties to every end user. *See* Movate MTD at 14–15 (discussing *Southern Cal. Gas Leak Cases*, 7 Cal. 5th 391, 401–03 (2019)).

- Plaintiffs rely on the foreseeability of a hack. *See* Opp.at 21–22.

  - o But foreseeability cannot substitute for control of SIS security and, Plaintiffs do not allege Movate knew of any specific vulnerability in

PowerSchool's system.  Movate MTD at 14–15.

**C.**    <u>**No "special relationship"**</u>

- Special-relationship duties are narrow and generally require custody/control—not present here. *See* Movate MTD at 14–15

  o *Regents of Univ. of California v. Superior Court*, *Brown v. USA Taekwondo*, and *Navarro v. Ski Data, Inc.* confirm vendors lacking control do not have such relationships with end users. *See* Movate MTD at 14-15.

- Plaintiffs say Movate became an "integral component" of data security, satisfying special-relationship factors.  Opp. at 21–22.

  o But providing remote support to the system owner does not create a special relationship with end users.  *See* Movate MTD 14–15.

  o Plaintiffs' foreseeability argument is inconsistent with *Brown v. USA Taekwondo*'s requirement of misfeasance or special relationship. *See* Movate Reply at 8.

**D.**    <u>**No breach plausibly alleged against Movate under *Twombly/Iqbal***</u>

- The only concrete allegations of missing MFA, credential rotation, and access restrictions are PowerSchool's choices for its own system. Track 1 ¶¶ 23, 184, 193. Plaintiffs allege no facts that Movate could enable MFA, disable PowerSchool's MFA, refused to use PowerSchool's MFA if available, or violated a PowerSchool policy. *See* Movate MTD at 15–17.

- Training allegations are wholly conclusory; there are **no facts** tying the PowerSchool credential compromise to any Movate training failure.

- Plaintiffs argue the breach shows inadequate security and identify failures in training, rotation, MFA, and access restriction. Opp. at 23–25.

  o But Plaintiffs still ascribe the operative settings (MFA/least-privilege/rotation) to *PowerSchool*, and plead no Movate-controlled breach mechanism. *See* Movate MTD at 15–17.

**E.    Causation is speculative and not plausibly tied to Movate**

- The Complaint pleads multiple non-Movate, PowerSchool-controlled causes (no MFA, broad access, detection failures). Under federal pleading standards, speculation cannot bridge the gap. *Vavak v. Abbott Labs.*, 2011 WL 13130493, at *2 (C.D. Cal.). *See* Movate MTD at 16-17.

- Plaintiffs assert the compromise occurred via a Movate employee's PowerSchool credential supports causation and that competing causes do not defeat proximate cause at 12(b)(6). Opp. at 24–25.

    o But Plaintiffs' own allegations point to PowerSchool's security configuration as plausible alternative causes, defeating a Movate-specific causal theory. Movate MTD at 16-17.

**III.    NEGLIGENCE *PER SE* (COUNT II)**

- **Not a standalone cause of action (CA).** Negligence *per se* borrows a statute to supply standard of care; it is not an independent claim. *Bacon v. Pape Truck Leasing*, 2020 WL 799747, at *5 (E.D. Cal.). *See* Movate MTD at 19–20.

- **Cited statutes confer no private right of action** (FTC Act, HIPAA, FERPA, COPPA). *Doe v. Meta Platforms*, 690 F. Supp. 3d 1064, 1087; *Henry v. UTI*, 559 F. App'x 648, 650; *Benson v. Perris*, 2022 WL 3574290, at *5. Permitting negligence *per se* to form the basis of a statutory claim would create a private right that Congress and legislatures declined to provide. *See* Movate MTD at 20-21; Movate Reply at 15-16.

- **Impermissible group pleading**—the count's specific allegations target PowerSchool, not Movate. (Track 1 ¶¶ 799–827); *Yu v. Design Learned*, 2016 WL 1621704, at *4 (N.D. Cal.). *See* Movate MTD at 19.

- Plaintiffs' Opposition fails to identify any statutory provision that applies to Movate specifically. *See* Movate Reply at 14.

## IV.    NEGLIGENT HIRING/SUPERVISION (COUNT IX)

- Plaintiffs must allege that the employer knew or should have known the employee posed a foreseeable risk of the type of harm that occurred. *See* Movate MTD at 21–22; Movate Reply at 16-18.

- Plaintiffs plead no prior misconduct, no complaints, no discipline, and no red flags regarding Mr. Cruz—only that criminals allegedly used his PowerSchool credentials. That is not notice as a matter of law. *Compare Diaz v. Tesla, Inc.*, 598 F. Supp. 3d 809 at 832–33 (N.D. Cal. 2022) (plaintiff produced evidence he complained to supervisors on several occasions regarding employee's racist and harassing behavior), *with Z.V. v. County of Riverside*, 238 Cal. App. 4th 889, 903 (2015) (victim could not maintain negligent supervision claim where county had no knowledge of employee's propensity to commit sexual assault); *see* Movate Reply at 16-17.

- Plaintiffs argue negligent hiring/supervision is sufficiently pled by alleging Movate failed to train/supervise personnel with access to PII. Opp. at 30–32.
  - But the missing notice element is dispositive; Plaintiffs identify no facts showing Movate knew or should have known Cruz posed a risk. Movate MTD at 21–22.

## V.    UNJUST ENRICHMENT (COUNT III)

- Several Track One jurisdictions do not recognize unjust enrichment as a standalone claim and/or bar it where legal remedies are adequate (CA, MA, NY). *Melchior*, 106 Cal. App. 4th at 793; *Tomasella*, 962 F.3d at 82; *Toretto*, 583 F. Supp. 3d at 602. *See* Movate MTD at 23.

- Plaintiffs also fail to allege any benefit conferred on Movate (no privity; attenuated chain). *See Sperry v. Crompton*, 863 N.E.2d 1012, 1018 (N.Y. 2007) (attenuation defeats claim). *See* Movate MTD at 23-24.

- Group-pleading problem under Rule 8 compounds the defect. *Yu*, 2016 WL 1621704, at *4. *See* Movate MTD at 23-24.

## VI. DECLARATORY JUDGMENT (COUNT VI)

- The Declaratory Judgment Act is a remedy, not a cause of action, and declaratory relief is unnecessary where duplicative of other claims. *Buck v. American Airlines*, 476 F.3d 29, 33 n.3; *In re Google Assistant*, 546 F. Supp. 3d 945, 975–76. Plaintiffs seek declarations about "adequacy" of security and policies that rise and fall with their tort theories. *See* Movate MTD at 24.

## VII. ARTICLE III STANDING

- The "No-Injury Plaintiffs" allege exposure of basic PII (not SSNs/financial/medical) and no actual misuse → no concrete, imminent injury. *Kisil v. Illuminate*, 2025 WL 2589000, at *1–2 (9th Cir. Sept. 8, 2025); *I.C. v. Zynga*, 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022). *See* Movate MTD at 6–7; Movate Reply at 7-8.

- Plaintiffs' Opposition cites instances of actual misuse and argues risk for all; the pleaded record still leaves many with only generalized anxieties and mitigation time, which *Kisil/Zynga* hold are insufficient. Opp. at 13-14.

- Providence Teachers Union lacks associational-standing, as the identified member is a "no-injury" plaintiff. *Equifax MDL*, 371 F. Supp. 3d at 1165. *See* Movate MTD at 7; Movate Reply at 8.

## VIII. PERSONAL JURISDICTION OVER MOVATE

- Plaintiffs plead a single, conclusory paragraph: Movate "directed contacts to California through technical support." (Track One Compl. ¶ 47.) That is insufficient to establish general or specific jurisdiction. *Schwarzenegger*, 374 F.3d at 800–02; *Daimler*, 571 U.S. at 137–39; *Walden*, 571 U.S. at 285–86. *See* Movate MTD at 8–13; Movate Reply at 2-6.

- Specific jurisdiction also fails for lack of purposeful availment/direction and arising-out-of nexus; support was remote and not targeted at California; the alleged PowerSchool credential misuse occurred in the Philippines. *Picot v. Weston*, 780 F.3d 1206, 1215. *See* Movate MTD at 11; Movate Reply at 3-

6.

- Plaintiffs have not established personal jurisdiction over Movate.    While there may be procedural avenues to do so, it is Plaintiffs' burden.

## IX.    CONCLUSION

Movate respectfully reiterates that all claims against it should be dismissed with prejudice.

DATED: January 23, 2026                Respectfully submitted,

BROWN RUDNICK LLP


By:  */s/ Dylan P. Kletter*
_____
DYLAN P. KLETTER
JONATHAN D. WHITE
SAMANTHA J. FLATTERY
RENEE M. MOULTON
Attorneys for Defendant,
MOVATE, INC.

# EXHIBIT D

Track One Plaintiffs' Outline

David S. Casey, Jr., Cal. State Bar No. 60768
dcasey@cglaw.com
**CASEY GERRY**
**FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel.: (619) 238-1811

Carol C. Villegas, N.Y. State Bar No. 4154324*
cvillegas@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700

James J. Pizzirusso, D.C. State Bar No. 477604*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200

*Interim Co-Leads for Plaintiffs*

*Admitted Pro Hac Vice*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION, | Case No.: 25-md-3149-BEN-MSB<br><br>**TRACK ONE PLAINTIFFS' OUTLINE OF ISSUES FOR MOTIONS TO DISMISS**<br><br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A<br>Date/Time: January 26, 2026 9:00 A.M. |

I.    **ISSUES RELATED TO DEFENDANT POWERSCHOOL'S MOTION
TO DISMISS**[1]

   **A. PowerSchool's Rule 12(b)(1) Arguments Fail, Since All Plaintiffs
   Establish Article III Standing**

   1) PowerSchool concedes that at least 49 Plaintiffs have standing. *See*
      MTD at 5-6, 9. For this reason alone, PowerSchool's argument
      must fail. *See Healy v. Milliman, Inc.*, 2026 WL 71863, at *3 (9th
      Cir. Jan. 9, 2026) ("we have consistently held that Article III's
      requirements are satisfied before a class is certified as long as at
      least one named plaintiff has standing").

   2) PowerSchool argues that the remaining Plaintiffs do not have
      standing—incorrectly referring to this group as so-called "No
      Injury Plaintiffs." MTD at 6-9, 11-12. PowerSchool's argument
      ignores Plaintiffs' clear factual allegations and fails because:

      i.    All Plaintiffs establish injury in fact. *See* Track One Plaintiffs'
            Opposition to PowerSchool's Motion to Dismiss ("T1 Opp.")
            at 7-17. In data breach cases, plaintiffs demonstrate injury in
            fact where there is (i) actual or attempted misuse *or* (ii) a
            credible threat of real and immediate harm stemming from the
            theft of their Private Information, even if the information has
            not yet been misused. *See id*. at 6-7. Courts find a credible
            threat of immediate harm where at least some of the
            compromised data is private or sensitive. *Id*.; *In re
            Zappos.com, Inc.,* 888 F.3d 1020, 1027 (9th Cir. 2018).

            i.    All Plaintiffs sufficiently allege actual or attempted
                  misuse of their sensitive Private Information—

---

[1] All terms are defined in accordance with the definitions provided in Plaintiffs' Oppositions
to Defendants' Motions to Dismiss ("MTD"). ECF Nos. 320.

including Social Security numbers, medical, financial, and educational records—that was input into PowerSchool's SIS and compromised in the Data Breach. *Id*. Nonetheless, PowerSchool reiterates that the so-called "No Injury Plaintiffs" do not plausibly allege any identity theft or misuse of their data. This argument ignores several of Plaintiffs' allegations that their information has already been misused, including reports of increased spam calls, fraudulent charges, fraudulent account creation, and data leaks on the dark web. *See id*. at 9-10.

ii. All Plaintiffs also allege a credible threat of immediate and/or imminent harm sufficient to establish standing. *See id*. at 10-14. Specifically, Plaintiffs allege an imminent risk of identity theft or fraud because their highly sensitive Private Information has been stolen by a notorious cybercriminal group and, in several cases, been found on the dark web. Moreover, several Plaintiffs have already experienced actual misuse which courts routinely recognize as an indicium of imminent risk to all Plaintiffs and the Class.

ii. PowerSchool's argument also fails because Plaintiffs' injuries are sufficiently concrete. Specifically, Plaintiffs allege: (i) lost time protecting themselves and their children, and the emotional distress that manifests from the knowledge of the substantial risk of identity theft that Plaintiffs face; (ii) invasion of privacy; (iii) lost benefit of the bargain; and (iv) lost value of their Private Information. *See id.* at 15-17.

3) PowerSchool also argues that Plaintiffs' injuries are not traceable to Defendants' misconduct. PowerSchool's argument ignores Plaintiffs' clear factual allegations and fails because:

   i.   Plaintiffs' injuries are "fairly traceable" to the Data Breach. The Ninth Circuit routinely finds traceability satisfied where plaintiffs received a data breach notice—as countless Plaintiffs did here. Additionally, here, there is a close temporal proximity between the Data Breach, the examples of widespread actual fraud or misuse, and the appearance of Plaintiffs Private Information on the dark web, which further establishes the causal link. *See id*. 17-22.

4) PowerSchool argues that Plaintiffs do not have standing to seek injunctive relief. *See* MTD at 12. However, for the reasons stated above, Plaintiffs have standing for injunctive relief because they have alleged actual harm and/or an imminent threat of future harm that stems from PowerSchool's ongoing failure to implement adequate security measures to protect Plaintiffs' Private Information, which PowerSchool (and cybercriminals) continues to possess. *See id*. at 33.

5) PowerSchool argues that Plaintiff Providence Teacher's Union ("PTU"), lacks standing. Again, PowerSchool's argument ignores the Complaint's well-plead allegations and fails because Plaintiff PTU sufficiently alleges associational standing—specifically because, its members would have standing, the interests at stake are germane to the Union's purpose of protecting its members, and the relief sought does not require individual member participation. Plaintiff PTU separately establishes organizational standing because it diverted its own time and resources from its core mission

to address the Data Breach, establishing a concrete and particularized injury. *See id.* at 23-24.

## B. PowerSchool's Rule 12(b)(6) Arguments Regarding Negligence Fail

1) PowerSchool argues that Plaintiffs fail to adequately plead their negligence claims. Specifically, PowerSchool incorrectly argues that Plaintiffs fail to adequately plead damages as required. *See* MTD at 19. Courts routinely find damages adequately plead where plaintiffs demonstrate both that a data breach compromised their highly sensitive Private Information and resulting harm or victimization. Contrary to PowerSchool's argument, and as explained above, Plaintiffs meet and surpass the requirements for demonstrating harm (*i.e.*, injury and damages). Plaintiffs make this showing in the following ways (*see* T1 Opp. at 24-34):

    i. Plaintiffs demonstrate that they presently suffer an imminent and substantial threat of identity theft and fraud resulting from their Private Information being stolen by a known cybercriminal group and posted on the dark web by the hackers with the intent to sell it.

    ii. Plaintiffs demonstrate that they have spent time responding to the breach, which courts recognize as a concrete injury.

    iii. Plaintiffs show that they lost the benefit of the bargain because they expected to receive secure services and they would not have signed up for PowerSchool's services absent assurances that their highly sensitive Private Information would be kept private and secure.

    iv. Plaintiffs sufficiently allege that the Data Breach has diminished the value of their Private Information in data

TRACK ONE PLAINTIFFS' OUTLINE OF
ISSUES FOR MOTIONS TO DISMISS

markets (which courts routinely recognize regardless of Plaintiffs' ability to participate).

    v.    Plaintiffs' claim of emotional damages is sufficient at the Motion to Dismiss stage because the breach caused Plaintiffs to suffer fear, anxiety, and distress.

    vi.    The dissemination of Plaintiffs' sensitive Private Information to unauthorized third parties constitutes an invasion of privacy, which is a well-established cognizable harm.

**C. PowerSchool's Rule 12(b)(6) Arguments Regarding Plaintiffs' State Law Claims Fail**

    1)    PowerSchool argues Plaintiffs' Unfair Competition Law ("UCL") claim fails because Plaintiffs cannot plead unfair, unlawful, or deceptive conduct. *See* MTD at 41.

    i.    However, this argument fails because Plaintiffs have adequately alleged violations of the UCL's "unlawful" and "unfair" prongs. *See* T1 Opp. at 36-38.[2] Specifically, Plaintiffs allege that PowerSchool violated, *inter alia*, Section 5(a) of the Federal Trade Commission Act, which suffices to state a claim under the UCL's "unlawful" prong. *See id*. at 37. Plaintiffs also state a claim under UCL's "unfair" prong by alleging PowerSchool's failure to implement adequate data-

---

[2] During post-briefing meet and confer discussions, Defendants have claimed that Plaintiffs waived all non-California state claims by failing to address them in Plaintiffs' Oppositions to Defendants' Motions to Dismiss. Plaintiffs are confused and disappointed by Defendants' position, since the parties jointly agreed to streamline the state laws at issue in the Motion to Dismiss and informal discovery stages. In any event, agreement aside, Defendants' belated argument must fail. Plaintiffs need only address the arguments raised in ***Defendants'*** Motions. Any arguments not included in their briefs are waived by Defendants—not Plaintiffs.

TRACK ONE PLAINTIFFS' OUTLINE OF
ISSUES FOR MOTIONS TO DISMISS

security measures offends established public policy is injurious to consumers and lacks any countervailing benefit. *See id*.

2) PowerSchool incorrectly argues that Plaintiffs cannot state a claim under the California Consumer Privacy Act ("CCPA") because PowerSchool is not a "Business". *See* MTD at 51-53.

   i.  This argument must fail because Plaintiffs sufficiently allege PowerSchool qualifies as a "business" under the act and failed in its duty to secure Plaintiffs' Private Information. *See* T1 Opp. at 37-38. First, the data exfiltrated in the Data Breach included "personal information" as defined by the CCPA. Cal. Civ. Code §§ 1798.150(a)(1), 1798.81.5(d)(1)(iv). Second, PowerSchool is a business under the CCPA because it "collects consumers' personal information" and, jointly with its school district customers, "determines the purposes and means of processing of consumers' personal information." *In re Blackbaud, Inc. Customer Data Breach Litig.*, 2021 WL 3568394, at *5 (D.S.C. Aug. 12, 2021).

3) PowerSchool wrongfully states that Plaintiffs did not sufficiently state a claim under the California Confidentiality of Medical Information Act ("CMIA") because: (1) PowerSchool is not a provider of healthcare; (2) the data at issue is not medical information; and (3) such data was not viewed by third parties. *See* MTD at 49-51.

   i.  This argument must also fail for three reasons. First, "medical information" was compromised in the Data Breach, including medical diagnoses; medical conditions; immunization records (a medical history of an individual's immunizations); learning

disabilities; and allergy information.  *See* T1 Opp. at 41-42. Second, although PowerSchool is not considered a "provider of healthcare" it operates as a "contractor" subject to the CMIA because it "receives, maintains, or transmits medical information" on behalf of providers of health care, its school district customers.  Third, Plaintiffs adequately allege that their Private Information was viewed by unauthorized third parties.  At the pleading stage, an inference that the information was viewed is sufficient, and, here, Plaintiffs surpass that standard.  *See id*. at 43-44; *Solara*, 613 F. Supp. 3d at 1299 (notification of data breach and allegations of increase in medical related spam enough to infer that plaintiff's information was viewed by unauthorized third parties).

4) PowerSchool incorrectly claims the California Comprehensive Data Access and Fraud Act ("CDAFA") does not apply because PowerSchool: (i) did not actively participate in unauthorized hacking; and (ii) did not access Plaintiffs' data without permission. MTD at 47-48.

   i.   However, this argument fails because PowerSchool relies on outdated case law when determining that CDAFA only applies to hacking, disregarding multiple recently decided cases that broaden CDAFA liability to include facilitating the acts of the party who accessed their data, as PowerSchool did here.  *See* T1 Opp. at 44-45.

**D. PowerSchool's Rule 12(b)(6) Arguments Regarding Plaintiffs' Remaining Claims Fail**

TRACK ONE PLAINTIFFS' OUTLINE OF
ISSUES FOR MOTIONS TO DISMISS

1) PowerSchool incorrectly claims that Plaintiffs do not accurately plead **negligence** *per se*. PowerSchool argues that Plaintiffs failed to allege any underlying statutory violation (*i.e.*, that PowerSchool violated a statute, ordinance, or regulation) and, for that reason, cannot claim a presumption of negligence. This argument is based, in part, on PowerSchool's flawed assertion that the statutes Plaintiffs *do* rely on lack a private right of action. *See* MTD at 23-24. PowerSchool's argument fails for two reasons:

    i. First, Plaintiffs allege that PowerSchool violated the Federal Trade Commission ("FTC") Act, the Health Insurance Portability and Accountability Act ("HIPAA"), the Children's Online Privacy Protection Act ("COPPA"), the Family Educational Rights and Privacy Act ("FERPA"), various consumer protection statutes, and industry cybersecurity standards. *See* T1 Opp. at 46-47. Second, Plaintiffs sufficiently argue that it is the tort of negligence, and not the violations of the statutes themselves, which entitles Plaintiffs to recover. *See id*.

2) PowerSchool misinterprets the pleading standard for **negligent training and supervision** by arguing that Plaintiffs fail to plead that PowerSchool "knew or should have known" that Movate's employees were unfit. *See* MTD at 24. However, Plaintiffs sufficiently show that PowerSchool acted without due diligence when it hired subcontractor Movate—known for its largely offshore presence—which then hired employees who were granted access to Plaintiffs Private Information. *See* T1 Opp. at 24.

3) PowerSchool argues that Plaintiffs' claim for declaratory and injunctive relief under the **Declaratory Judgment Act** ("DJA")

TRACK ONE PLAINTIFFS' OUTLINE OF
ISSUES FOR MOTIONS TO DISMISS

should be dismissed for two reasons: (i) declaratory and injunctive relief are remedies, not causes of action; and (ii) the DJA claim is encompassed by Plaintiffs' other claims and thus serves no useful purpose. *See* MTD at 55.

    i.    However, under the Declaratory Judgment Act, declaratory relief is independently available and not to be treated as another available equitable remedy. *See* T1 Opp. at 51. Moreover, Plaintiffs' request for declaratory and injunctive relief is proper because monetary damages cannot fully address Plaintiffs' harms. Plaintiffs seek a prospective mandate that PowerSchool employ adequate security protocols to protect Plaintiffs' and Class Members' Private Information, which remains in its possession. *See id.*

4) PowerSchool argues that its direct contractual relationship with schools absolves it of any **fiduciary duty** to Plaintiffs. *See* MTD at 28.

    i.    PowerSchool is mistaken. Due to its relationship with its educational entity clients, PowerSchool assumed a fiduciary duty owed to Plaintiffs when it became the custodian of their Private Information. *See* T1 Opp. at 51. Additionally, PowerSchool repeatedly represented a fiduciary commitment to Plaintiffs through its representations to Plaintiffs. *See id*. at 52.

5) PowerSchool incorrectly asserts that Plaintiffs have inadequately shown a duty to disclose sufficient to state a **deceit by concealment** claim. *See* MTD at 53. However, this argument fails because, as Plaintiffs clearly establish, PowerSchool had a duty to disclose the

TRACK ONE PLAINTIFFS' OUTLINE OF
ISSUES FOR MOTIONS TO DISMISS

inadequacy of its data security measures on multiple independent grounds. For example:

    i.    The inadequate security of PowerSchool's SIS, computers, and networks was a material fact within PowerSchool's exclusive knowledge. This fact was material because PowerSchool knew Plaintiffs and Class Members relied on PowerSchool to protect their Private Information. *See* T1 Opp. at 54-55. Additionally, PowerSchool knew its data security practices were inadequate in the face of known, foreseeable data security threats, yet concealed this knowledge (*i.e.* knowledge that the data security measures taken as to Plaintiffs' Private Information were materially worse than represented and diminished by cost-cutting and offshoring IT and cybersecurity jobs). *See id*. at 55.

6) PowerSchool incorrectly argues that Plaintiffs' claim under the **Georgia Recovery of Expenses Statute** fails to allege bad faith. *See* MTD at 54-55. However, Plaintiffs sufficiently allege bad faith by arguing that PowerSchool's conduct leading up to the breach was egregious and that both the Data Breach and resulting injury to Plaintiffs and Class Members were foreseeable. *See* T1 Opp. at 56-57.

7) PowerSchool argues that Plaintiffs fail to state claims under **data breach notification statutes** because (i) some statutes do not provide for private rights of action; (ii) Plaintiffs fail to demonstrate how PowerSchool meets certain statutory definitions; and (iii) Plaintiffs fail to plead harm resulting from PowerSchool's delayed notice. *See* MTD at 43.

- 10 -

i.  First, contrary to PowerSchool's assertions, the Massachusetts and New Mexico statutes do not wholesale prohibit private actions. *See* Mass. Gen. Laws 93H § 1, *et seq*; N.M. Stat. 57-12C-1, *et seq*.; *see also* T1 Opp. at 57. Second, Plaintiffs sufficiently allege facts satisfying each of the definitions within the data breach notification statutes. *See* T1 Opp. at 57. Finally, Plaintiffs sufficiently allege cognizable injury resulting from PowerSchool's inadequate, delayed notice. *See id.*

8)  PowerSchool raises two meritless challenges regarding Plaintiffs' **unjust enrichment** claim: (1) that the claim must fail because Plaintiffs did not confer any direct benefit on PowerSchool; and (2) Plaintiffs purportedly failed to state precisely how PowerSchool was enriched. MTD at 29-31.

i.  First, the law does not require Plaintiffs to have paid money directly to PowerSchool. *See* T1 Opp. at 58-59. PowerSchool's second argument discounts Plaintiffs' adequate allegations that PowerSchool would not be able to maintain its business without their Private Information. *See id.*

## II. ISSUES RELATED TO DEFENDANT BAIN'S MOTION TO DISMISS

### A. Subject Matter Jurisdiction

1)  Bain incorrectly argues that the Court lacks subject matter jurisdiction. *See* Bain MTD at 12-13. However, as Bain admits, this Court—as the transferee court in this MDL—can acquire jurisdiction not only through a JPML transfer but also over "tag-

TRACK ONE PLAINTIFFS' OUTLINE OF
ISSUES FOR MOTIONS TO DISMISS

along actions filed directly" pursuant to the "Direct Filing Order."
*See id*.

2) Bain's Rule 12(b)(5) objection for improper service of process also fails because defendants waive service upon the filing of a short-form complaint (per CMO No. 5), which Plaintiffs filed on October 10, 2025.  Moreover, courts allow alternative service and disfavor dismissal where service can be obtained.  *See* Bain MTD Opp. at 5.

## B. Personal Jurisdiction

1) Bain argues that Plaintiffs fail to adequately plead personal jurisdiction.  Not so.  This Court has personal jurisdiction over Bain because (1) Bain purposefully directed its activities in California, thereby availing itself of the protections of California laws; (2) Bain's activities in California gave rise to Plaintiffs' claims; and (3) this Court's exercise of jurisdiction over Bain comports with due process.

## C. Bain attempts to argue that it is not an agent of PowerSchool

1) However, Plaintiffs meet and surpass the standard for pleading an agency relationship between Bain and PowerSchool.

2) The inquiry into the existence of an agency relationship is fact-intensive and, therefore, cannot be properly resolved on a Motion to Dismiss.  That said, courts in the Ninth Circuit have found an agency relationship exists if a principal has control over "key aspects" of an agent's activities giving rise to the claims in a particular case.

3) Here, Plaintiffs have sufficiently alleged an agency relationship based on Bain's substantial control over PowerSchool's operations, both before and after it formally acquired an ownership interest in PowerSchool.  *See* Bain MTD Opp at 15.

- 12 -

TRACK ONE PLAINTIFFS' OUTLINE OF
ISSUES FOR MOTIONS TO DISMISS

**D. Bain's argument that Plaintiffs purportedly engaged in "group pleading" is inaccurate and provides no basis for dismissal. *See id*. at 33-37.**

    1) First, Plaintiffs properly plead liability against Bain, a joint tortfeasor in the Data Breach that caused Plaintiffs' injuries, because Plaintiffs allege that PowerSchool's and Movate's combined data security failures all contributed to and resulted in the Data Breach. *See id.* at 18.

    2) Second, Defendants have provided Plaintiffs with no discovery and, thus, Plaintiffs are operating at a significant information disadvantage in comparison to Defendants. *See id.* at 19.

**E. Bain also argues that Plaintiffs' Direct Liability claims are meritless**

    1) Bain's arguments must fail because they are based on flawed interpretations of the law and facts applicable here.

    2) Bain argues that Plaintiffs fail to adequately plead any negligence claims. *See id.* at 38-40.

        i. However, Plaintiffs have adequately alleged that Bain owed a duty of care to Plaintiffs because its affirmative conduct created a foreseeable risk that sensitive information would be released. *See id.* at 23. Plaintiffs also plausibly allege a special relationship that created a legal duty through examining the following factors. *See id.* at 27-28. Indeed, Bain's acquisition of PowerSchool was intended to, and did affect Plaintiffs. Bain dominated and controlled PowerSchool's internal affairs and operations before and after the merger, and that control was aimed squarely at Plaintiffs and the Class because their Private Information was the very foundation of the PowerSchool SIS. Plaintiffs also allege that

the risk and harms were foreseeable to Bain.    Further,
Plaintiffs allege in detail the actual misuse of their Private
Information, as well as the risk of future harm as a result of
the Data Breach. Bain's day-to-day decisions to dismantle
PowerSchool's data security operations made Plaintiffs'
injuries certain and directly connect Bain's conduct to
Plaintiffs' injuries.    Moreover, Plaintiffs adequately allege
causation by showing that it was foreseeable that Bain's
decisions to cut costs on cyber security—*e.g.* by sacrificing
experienced US-based IT staff and offshoring cybersecurity to
the Philippines—would cause Plaintiffs and Class Members to
suffer harm.  *See id.*at 30.

3) Bain ignores Plaintiffs' well-pleaded allegations regarding
   Plaintiffs' negligence per se claim, arguing that Plaintiffs fail to
   allege that PowerSchool violated a statute, ordinance, or
   regulation. *See id.* at 40.  To the contrary, Plaintiffs allege
   PowerSchool violated the FTC Act, HIPPA, COPPA, FERPA,
   various consumer protection statutes, and established industry
   cybersecurity standards.  *See id.* at 30.

4) Bain incorrectly argues that Plaintiffs' unjust enrichment claim
   cannot proceed.  This argument must fail for two reasons (*see id*. at
   32):

   i.    First, Bain incorrectly argues that unjust enrichment is not an
         independent cause of action.  *See id*. at 41.

         a.  While unjust enrichment is not a standalone cause of
             action, courts construe it as a quasi-contract claim.
             Here, Bain was unjustly enriched by accepting
             payments that should have funded data security but, by

TRACK ONE PLAINTIFFS' OUTLINE OF
ISSUES FOR MOTIONS TO DISMISS

failing to do so, retained funds it saved by shrinking security at Plaintiffs' expense.

ii.  Second, Bain misapplies governing law by arguing that any benefit they received must have been derived directly from Plaintiffs for the unjust enrichment claim to stand. *See id*. However, a plaintiff need not allege direct payment or contractual privity where the complaint plausibly alleges, as it does here, that the subsidiary transferred unlawfully collected funds to the parent. *See LLC v. Hartford Fin. Servs. Group*, 2021 WL 5879118, at *9 (N.D. Cal. Dec. 9, 2021).

5) The declaratory judgment claim is proper and not duplicative, contrary to Bain's argument.

i.  The claim is not duplicative because it is forward-looking and seeks to prevent *future* harm by mandating adequate security measures for data still in Defendants' possession, which monetary damages for past harm cannot address. *See* Bain MTD Opp at 33-35; *In re Adobe Sys. Priv. Litig.*, 66 F. Supp. 3d 1197, 1222 (N.D. Cal.).

6) Bain argues that: (i) Plaintiffs' negligent training and supervision count should be dismissed, claiming that it "is not expressly named in any of the allegations specific to Count IX"; and (ii) that there is no relationship between Bain and the Plaintiffs sufficient to show it was able to monitor and supervise Movate.  MTD at 42.

i.  Plaintiffs have alleged that Bain exerted sufficient control over PowerSchool to establish a duty to supervise, including directing offshoring and layoffs.  Bain then failed to provide adequate supervision over PowerSchool and its contractor Movate by allowing unfettered access to sensitive data without

TRACK ONE PLAINTIFFS' OUTLINE OF
ISSUES FOR MOTIONS TO DISMISS

proper oversight, leading to the breach.  *See* Bain MTD Opp at 35-36;  *Ross v. AT&T Mobility, LLC*, 2020 WL 9848766, at *10 (N.D. Cal. May 14, 2020).

7)  Bain claims it is not properly named in the pleading of the CCPA, and that it cannot be held liable under the CCPA because: it is not a "business" as that term is defined, the Complaint does not plead that "Bain 'collects consumers' personal information,'" or that Bain "determines the purposes and means of the processing of consumers' personal information.'"  MTD at 42-43.  Bain is mistaken.

    i.   First, Bain is properly named in the pleading of this Count because the Count refers to Defendants, which includes Bain. *See* Bain MTD Opp at 36.

    ii.   Second, Plaintiffs allege that: Bain's gross annual revenue is in excess of $25 million because it purchased PowerSchool for over $5 billion, it conducts business in California (and purchases companies like PowerSchool in California), and as a result, collects personal information from one or more California residents and "jointly with others, determines the purposes and means of the process" of that personal information.  *See id.* at 37; Cal. Civ. Code § 1798.140(d).

8)  Bain's arguments that Plaintiffs have not properly pled a violation of California's UCL also fail.

    i.   First, Bain's conduct satisfies all three tests for 'unfair' practices: (1) it is tethered to public policy violations (*e.g.*, Cal. Civ. Code § 1798.81.5, and FTC Act); (2) the harm from the data theft of millions of children's data outweighs any utility of cost-cutting; and (3) the injury was substantial,

TRACK ONE PLAINTIFFS' OUTLINE OF ISSUES FOR MOTIONS TO DISMISS

unavoidable by consumers, and without countervailing benefits. *See* Bain MTD Opp at 38-39; *Yahoo!* I, 2017 WL 3727318, at *24.

    ii.   California Plaintiffs allege that Defendants violated, inter alia, Section 5(a) of the FTC Act, which suffices to allege a violation of the UCL's "unlawful" prong. *See, e.g., Eureka Casino*, 2024 WL 4253198, at *10 (where, as here, plaintiffs allege they would not have been injured if defendant had complied with Section 5(a) of the FTC Act, the "unlawful" prong of the UCL has been sufficiently pled).

    iii.   Bain's reliance on Rule 9(b)'s heightened pleading standard is misplaced. Because Plaintiffs assert violations of the UCL's 'unlawful' and 'unfair' prongs, not fraud, they are not required to meet the Rule 9(b) standard. *See E.H. v. Meta Platforms, Inc.*, 2024 WL 557728, at *3 (N.D. Cal. Feb. 12, 2024).

9) Bain incorrectly argues that Plaintiffs fail to plead aiding and abetting because Plaintiffs did not sufficiently allege Bain knew PowerSchool breached their duty to Plaintiffs. *See* MTD at 44.

    i.   Plaintiffs sufficiently allege Bain's liability for aiding and abetting because Bain knew of PowerSchool's inadequate security and substantially assisted in wrongdoing by directing cost-cutting measures that weakened cyber security.

## III. ISSUES RELATED TO DEFENDANT MOVATE'S MOTION TO DISMISS

### A. Article III Standing

1) Movate challenges Article III standing by adopting the arguments raised by PowerSchool. These arguments fail for the reasons stated above. Section (I)(A).

**B. Negligence**

1) Movate argues that Plaintiffs did not adequately allege any negligence claim as to Movate. This argument is incorrect and fails for the reasons set forth above—specifically, because Movate was (separately from the other Defendants) negligent in its own data security, policies, practices, and procedures and in the training and supervision of its own employees. *See supra* Section I.D.(ii); Movate MTD Opp at 19-26.

   i.   Movate owed a duty to protect Plaintiffs from the foreseeable harm flowing from the compromise of their sensitive Private Information by virtue of: (1) its access to and control over vast troves of that Private Information; (2) the risk of harm it created by acts and omissions that failed to comport with industry data security standards; and (3) its special relationship with Plaintiffs as guardian of their Private Information. Movate also separately owed a duty to train and supervise its own employees to secure that data and to understand the duties owed to Plaintiffs. Movate Opp 19–22, 30-31.

   ii.  Movate breached these duties by failing to adequately train its employees in reasonable security practices and according to industry standards, and by failing to secure or rotate its employees' credentials, implement multifactor authentication, or implement the principle of least privileges. *See id.* at 23.

   iii. These breaches proximately caused Plaintiffs' injuries, as outlined above. *See* Section I.B(i) (explaining that Plaintiffs detail and surpass the required showing of harm).

**C. Negligence Per Se**

TRACK ONE PLAINTIFFS' OUTLINE OF
ISSUES FOR MOTIONS TO DISMISS

1        1) Movate's challenges to Plaintiffs' negligence per se claim—
2        namely, that it (1) impermissibly group pled, (2) is not recognized
3        as a standalone claim, (3) must be based on a statue with a private
4        right of action, and (4) fails to allege causation and injury—fail
5        across the board. Courts have recognized that New York (the only
6        state at issue here) allows standalone negligence *per se* claims to
7        proceed based on violations of the FTC Act, despite that Act
8        lacking a private right of action.  *See* Section I(b); Movate MTD
9        Opp at 26-30.  In any case, negligence *per se*, even if not permitted
10       as a standalone claim, provides alternative evidentiary support for
11       the duty owed by Movate to Plaintiffs and for Movate's breach of
12       that duty.

### D. Negligent Hiring, Supervision, and Retention

14       1) Movate argues that Plaintiffs fail to adequately plead negligent
15       hiring, supervision, and retention.  However, Movate's argument
16       fails because it misapprehends Plaintiffs' argument, which
17       expressly emphasizes Movate's failure to *train* its employees.
18       Again, Plaintiffs plausibly allege that Movate owed a duty to
19       Plaintiffs to adequately hire, train, and supervise its employees or
20       contractors with access to Plaintiffs' Private Information stolen in
21       the Data Breach.  Movate breached this duty by failing to
22       implement any of these practices, and these systemic failures
23       require no special information that Movate knew or had known
24       about Movate's employee Rayson Cruz—specifically that his
25       individual credentials were compromised, allowing for the breach
26       and exfiltration of Plaintiffs' Private Information.  *See* Movate
27       MTD Opp at 30-32.

### E. Unjust Enrichment

TRACK ONE PLAINTIFFS' OUTLINE OF
ISSUES FOR MOTIONS TO DISMISS

1    1) Movate argues that Plaintiffs do not adequately allege a claim of
2        unjust enrichment.  This argument fails for the reasons stated above
3        (*see* Sections I.D(vii); II.E(iii)):  no contractual privity is required
4        between Movate and Plaintiffs for this claim to succeed (as Movate
5        itself acknowledges (Movate MTD at 24)), rather equitable
6        principles apply because Movate received something of value—
7        Plaintiffs' Private Information and the benefits flowing from its
8        service contract with PowerSchool—and it would be inequitable
9        for Movate to retain those benefits at Plaintiffs' expense. *Id*. at 32-
10       34).

11   **F. Declaratory Relief**

12   1) Movate's contention that declaratory relief is not a cause of action
13       fails for the reasons discussed in Section I.D(iii).  Plaintiffs'
14       for declaratory and injunctive relief is proper because monetary
15       damages cannot fully address Plaintiffs' harms, as Plaintiffs seek a
16       prospective mandate that Movate employ adequate security
17       protocols to protect Plaintiffs' and Class Members' Private
18       Information, which remains in its access and control.  *See* Movate
19       Opp at 34-35.  Moreover, Plaintiffs did not impermissible group
20       plead, as their allegations discuss the conduct of each individual
21       Defendant (*see e.g.* Compl. ¶ 846).

TRACK ONE PLAINTIFFS' OUTLINE OF
ISSUES FOR MOTIONS TO DISMISS

Dated:    January 23, 2026

*/s/Carol C. Villegas*
Carol C. Villegas, N.Y. State Bar No.
4154324*
cvillegas@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700

*Co-Lead Counsel for Teachers Unions
Plaintiffs (Track One)*

*/s/ James J. Pizzirusso*
James J. Pizzirusso, D.C. State Bar No.
477604*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200

*Co-Lead Counsel for Individual Action
Plaintiffs (Track One)*

*/s/ David S. Casey, Jr.*
David S. Casey, Jr., Cal. State Bar No. 60768
dcasey@cglaw.com
**CASEY GERRY
FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel.: (619) 238-1811

*Co-Lead Counsel for Class Action Plaintiffs
(Track One)*

- 21 -

# EXHIBIT E

## PowerSchool's Track Two Outline

**PowerSchool's Track Two Motion to Dismiss Outline**
*In re PowerSchool*, 3:25-md-3149 (S.D. Cal.)

## I.  INTRODUCTION

This case is, at most, a breach of contract case, despite the Track Two Plaintiffs' attempt to piggyback a grab-bag of additional tort and statutory claims.  PowerSchool contracted with the Track Two Plaintiffs to provide cloud-based K-12 education software.  Those contracts govern the entirety of the Track Two Plaintiffs' relationships with PowerSchool—from the duties PowerSchool owed, to the allocation of risk each party assumed in the event of a cybersecurity incident, which the contracts expressly contemplated.  Data breaches are a daily occurrence in today's world.  Every company that manages sensitive data, and every company that contracts for data processing services, is aware of this risk and factors it into their contracts.  PowerSchool did not contract to provide, nor did the Track Two Plaintiffs pay for, insurance against a cybersecurity incident.  Yet Plaintiffs' contract claims press far beyond the four corners of the parties' agreements.  Worse yet, Plaintiffs bring a slew of duplicative tort and inapposite statutory claims seeking to evade the terms of the contracts they agreed to and to dodge the damages cap.  The success of these claims would eviscerate the parties' agreed-upon risk allocation.  These tort and statutory claims were never meant to impose liability on a victim of a cyberattack, like PowerSchool, for good reason: to allow Plaintiffs to prosecute these tort and statutory claims would transform the unavoidable risk of cybercriminal attacks into a basis for strict liability against the cybercriminal's victims.  PowerSchool respectfully requests that the Court hold the Plaintiffs to their negotiated contracts, deny their tort and statutory claims, and enforce the limitations on liability to which they agreed.

## II.  PLAINTIFFS' BREACH OF CONTRACT CLAIMS ARE BOTH PROCEDURALLY AND SUBSTANTIVELY DEFICIENT, AND PLAINTIFFS ARE BARRED FROM SEEKING DAMAGES IN EXCESS OF THE CONTRACTUAL LIMITS ON LIABILITY (CLASS ACTION COUNT 1, DIRECT ACTION COUNTS 11, 13, 15, 18, 20, 24, 26, 28, 30, 33, 35, 37, 40, 42, & 44).

### A.  <u>The Breach of Contract Claims Suffer from Fatal Pleading Deficiencies</u>

1. In their complaint, the Class Plaintiffs do not identify any specific contractual provision that PowerSchool breached.  *Eprotec Pres., Inc. v. Engineered Materials, Inc.*, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011).  They cannot remedy this deficiency by appending the contracts to, or alleging new facts in, their Opposition. *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020).

2. Even if the Court considers the Class Plaintiffs' references to particular contractual provisions in their Opposition, *see* ECF 341 at 8, these suffer from the same deficiency as the Direct Plaintiffs' claims about protecting confidentiality.  *See, supra* at I.B.1.

3. The Direct Plaintiffs engage in blunderbuss pleading that fails to identify how each individual Plaintiff meets each element of their breach of contract claims, including damages.  The Direct Plaintiffs bring claims individually; they cannot plead their claims in aggregate.  *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 745 F. Supp. 3d 869, 883 (N.D. Cal. 2024).

### B.  <u>Plaintiffs Do Not Allege a Viable Breach of Contract Claim for Any of the Categories of Contractual Provisions They Cite</u>

1

1. ***Duty to Maintain Data Confidentiality.*** Plaintiffs offer no plausible allegations that PowerSchool intentionally disclosed any data; rather, they allege that PowerSchool was the victim of a cyberattack.

   i. The contract language demonstrates that neither PowerSchool nor Plaintiffs intended the mere fact of a cybersecurity incident (which the parties contemplated) to constitute a breach of the confidentiality-related provisions. *See, e.g.*, ECF 288 ¶¶ 331, 656 (provisions outlining PowerSchool's obligations in the event of a breach of security of personal data). In the confidentiality-related provisions, PowerSchool agreed it would not, itself, disclose the information. And it did not. PowerSchool never guaranteed that it would not be a cyberattack victim.

   ii. Rather than mandate specific safeguards, such as Multi-Factor Authentication (MFA), PowerSchool contracted to maintain systems that were certified and had appropriate safeguards. The complaints fail to allege that those systems ever failed to receive certification before the breach, nor do the complaints cite any provision or industry standard that suggests that MFA is the only safeguard that can qualify a cybersecurity program as appropriate. By attempting to convert a forward-looking contractual requirement of obtaining certification into a "hindsight" standard of liability for not having the single feature the criminals exploited, Plaintiffs attempt to convert the contract, as a practical matter into a guarantee against incursions.

2. ***Duty to Supervise.*** Plaintiffs do not allege any specific facts about PowerSchool's supervision or oversight of its contractor Movate, or any other vendors. *See* ECF 302 at 13.

   i. Vague allegations that PowerSchool "offshored" its staffing and operations do not relate to PowerSchool's supervision or oversight of its vendors; simply alleging the mere fact of the Cybersecurity Incident or that PowerSchool's vendor did not use MFA is just hindsight and does not suffice to allege failure to supervise. *Id.*

3. ***Compliance with Laws.*** PowerSchool is required to adhere to applicable laws without receiving consideration from Plaintiffs. The compliance with law provisions therefore cannot create contractual obligations. *Brush v. Mia. Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017).

   i. Even if these provisions could create contractual obligations, Plaintiffs must "do something more to allege a breach of contract claim than merely point to allegations of a statutory violation." *In re Anthem, Inc. Data Breach Litig.,* 162 F. Supp. 3d 953, 982 (N.D. Cal. 2016).

4. ***Incident Response and Notification.*** Plaintiffs do not plausibly identify any damages arising from the supposed delay in notification (rather than from the incident itself), so their claims should be dismissed for lack of damages. *See supra* at II.B.5.

5. ***Express Indemnity (Direct Action Count 6).*** The Direct Plaintiffs bring an independent claim for "express indemnity," but seek indemnification pursuant to the parties' contractual indemnification provisions. This claim is not ripe. There are no currently-pending third-party claims against any Plaintiff and no damages arising from the indemnification provision. *Texas v. United States*, 523 U.S. 296, 300 (1998).

**6.** ***Declaratory Judgment Act (Class Action Count 8).*** The Class Plaintiffs bring an independent claim for declaratory judgment that PowerSchool breached various contractual duties. There is no standalone cause of action for declaratory relief, particularly where the claim is encompassed by Class Plaintiffs' breach of contract claims. *Landon v. TSC Acquisition Corp.*, 2024 WL 5317240, at *9 (C.D. Cal. Nov. 1, 2024).

**C.** **Plaintiffs' Claims for Damages Beyond the Contractual Limit Should Be Dismissed.**

**1.** Damages are a foundational element of a breach of contract claim that each Plaintiff (including all nineteen Direct Plaintiffs and four Class Plaintiffs) must allege.

**2.** The contract claims should be dismissed to the extent they seek categories of damages precluded by the contract or an amount that exceeds the contractual damages cap.

**3.** Dismissal is appropriate when a category of damages is unavailable as a matter of law. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1147 (N.D. Cal. 2018) (dismissing punitive damages on Rule 12(b)(6) motion).

**4.** The contracts explicitly limit the damages for which PowerSchool might be liable by both category and amount. MSA §§ 11.1-11.3. Special damages are not available, nor are damages beyond twice the amount each Plaintiff paid for SIS in the prior twelve months. *Id.* Plaintiffs' claims in excess of those limits should be dismissed.

i. The contractual exceptions to the limitation of liability and monetary cap for gross negligence, willful misconduct, and fraud do not apply.

a. Plaintiffs have not alleged that PowerSchool engaged in gross negligence, willful misconduct, or fraud. Allegations that PowerSchool "deliberately" allowed overbroad access to the data are both conclusory and inconsistent with the facts pled, namely that PowerSchool was a victim of a criminal cyberattack. *Tarlea v. Crabtree*, 687 N.W.2d 333, 339 (Mich. Ct. App. 2004).

**III.** **PLAINTIFFS CANNOT AVOID THE TERMS OF THEIR AGREEMENTS, INCLUDING THEIR LIMITS ON DAMAGES, BY ASSERTING NON-CONTRACT CLAIMS, WHICH ARE UNAVAILABLE TO THESE PLAINTIFFS.The Existence of Applicable Contracts Precludes the Track Two Plaintiffs' Negligence and Unjust Enrichment Claims.**

**1.** ***The Economic Loss Doctrine Precludes Negligence Claims Where the Parties Are in a Contractual Relationship (Class Action Count 3, Direct Action Count 1)***

i. Pursuant to the economic loss doctrine and similar principles, the fact that PowerSchool and the Plaintiffs are in a contractual relationship for data security bars tort recovery for purely economic loss. *See Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 817 (7th Cir. 2018); *Triaxx Prime CDO 2006-1 Ltd. v. U.S. Bank Nat'l Ass'n*, 2024 WL 1381354, at *15 (S.D.N.Y. Mar. 31, 2024).

a. PowerSchool contracted with the Track Two Plaintiffs for data processing services.

3

    b. The Track Two Plaintiffs' alleged injuries are purely economic (*i.e.*, remediation, staff time, security enhancements, reputational/funding impacts).

  ii. The exceptions to the economic loss doctrine do not apply.

    a. The independent duty exception does not apply because Plaintiffs have identified no duty independent of the parties' contracts. The duty to protect personal information runs only to the end users, not the schools or school districts (the businesses that collect and control the data).

    b. The special relationship exception applies only in very narrow circumstances (which are specifically defined by those jurisdictions that recognize this exception, such as a fiduciary relationship) and does not apply where the parties' sole relationship is contractual—or the exception would swallow the rule. *See People Express Airlines, Inc. v. Consol. Rail Corp.*, 100 N.J. 246, 256 (1985); *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 633 (N.D. Cal. 2024).

**2.** ***The Parties' Contractual Relationship Also Precludes Their Unjust Enrichment Claims (Class Action Count 7, Direct Action Count 3)***

  i. An unjust enrichment claim cannot exist where there is a contract governing the same subject matter. *Krantz v. Old Copper Co., Inc.*, 794 F. Supp. 3d 724, 746 (C.D. Cal. 2025). Here, the contracts between PowerSchool and Plaintiffs govern the subject matter at issue (data security).

  ii. No party has alleged that the contracts are invalid or unenforceable.

**B. <u>Plaintiffs' Remaining Claims Do Not Apply to Companies that Are Mere Victims of a Cyberattack.</u>**

Although each of the Class and Direct Plaintiffs assert additional, non-contract claims, they cannot agree among themselves what additional claims are appropriate. Not one of the following theories were ones that both sets of Plaintiffs thought worthwhile to pursue. In each case, the set of Plaintiffs that omitted the claims did so for good reason—these claims do not lie against a party like PowerSchool, which was itself the victim of a cybercriminal.

**1.** ***Computer Fraud and Abuse Act ("CFAA") and California's Comprehensive Data Access and Fraud Act ("CDAFA") (Class Action Counts 4–5)***

  i. The CFAA and the CDAFA are **anti-hacking statutes**. By Plaintiffs' own allegations, violation of these statutes requires unauthorized "access" by the defendant. Put another way, it penalizes defendants who actually access data without authorization (*i.e.*, hackers), not victims of hackers like PowerSchool.

    a. *United States v. Nosal*, 676 F.3d 854, 857 (9th Cir. 2012) (rejecting interpretation that would "transform the CFAA from an anti-hacking statute into an expansive misappropriation statute"); *Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, 2015 WL 1289984, at *4 (N.D. Cal. Mar. 20, 2015) (similar).

    b. *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011) (CDAFA requires defendant to "actually participate[] in unauthorized hacking").

4

ii. The Class Plaintiffs concede that PowerSchool did not hack anything; it was the ***victim*** of a cyberattack. *See* ECF 263 ¶ 1.

**2. *Consumer Protection Statutes Are Unavailable Against the Victim of a Cyberattack (Direct Action Counts 12, 14, 16, 19, 21-22, 25, 27, 29, 31, 34, 38, 41, 43, & 45)***

i. The Direct Plaintiffs advance two theories claims under the consumer protection statutes of 14 states—deceptive and unfair practices—but these statutes do not reach the failure to prevent hacking by a cybercriminal.

ii. The language used to describe "unfair" practices subject to consumer protection statutes (like "immoral," "unconscionable," and "unlawful"), as well as the significant statutory damages applied to such practices, make clear that these statutes are intended to apply to truly outrageous conduct that preys on victims, which cannot be said of the simple allegation that PowerSchool failed to maintain a particular level of data security that the Direct Plaintiffs claim it should have.

    a. Plaintiffs' theory would convert consumer protection statutes into all-purpose, general "bad conduct" statutes, which courts routinely reject.

    b. Plaintiffs' expansion of these statutes has dramatic consequences. A purported violation would have occurred, and statutory damages would be owed, *before* there was ever a cyberattack on PowerSchool, and even if none had ever occurred.

**3. *The Track Two Direct Plaintiffs Do Not Have Standing Under the Illinois Biometric Privacy Act (BIPA) (Direct Action Count 17)***

i. BIPA creates rights for natural persons "aggrieved," and it applies to entities "in possession of" biometric data. *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1205 (Ill. 2019); 740 Ill. Comp. Stat. 14/20(a), 14/15(E).

    a. The Direct Plaintiffs are not "persons aggrieved" under BIPA. They have no personal privacy interest in any biometric data, and they identify no basis for them to bring claims on behalf of their students, teachers, or parents.

    b. The Direct Plaintiffs fail to allege that PowerSchool was ever "in possession of" biometric data. Allegations that a company's application used Face ID, Touch ID, or other biometric logins do not show "possession" within the meaning of the statute. *G.T. v. Samsung Elecs. Am. Inc*., 742 F. Supp. 3d 788, 796 (N.D. Ill. 2024).

**4. *The Direct Plaintiffs' Fraudulent Concealment Claim Fails for Several Reasons (Direct Action Count 5)***

i. To be liable for fraudulent concealment, PowerSchool must have had a duty to disclose its allegedly deficient data security practices and supposedly improper use of data.

    a. Here, the parties negotiated arms-length contracts. As such, PowerSchool owed no duty to disclose. *See Protex Indus. (H.K.) Ltd. v. Vince Holding Corp.*, 748 F. Supp. 3d 234, 253 (S.D.N.Y. 2024) (duty to disclose must exist separately from contract).

ii. The Direct Plaintiffs fail to meet the heightened Rule 9(b) pleading standard for fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–26 (9th Cir. 2009). They do not allege where or when each Plaintiff heard or saw the alleged misrepresentations about PowerSchool's data security and use of customer data.

    iii. As Your Honor has already indicated, "a fraud cause of action" on these facts "kind of sounds like a stretch." Dec. 12 ,2025 Hr'g Tr. 11:20–24.

**5. *The Direct Plaintiffs' State Data Breach Notification Claims Fail Because They Do Not Plausibly Allege that PowerSchool's Notification Was Unreasonably Delayed (Direct Action Counts 32, 39, & 46)***

    i. To succeed on their claims, the Direct Plaintiffs must allege that PowerSchool unreasonably delayed notifying them about the incident, which they fail to do. PowerSchool notified its customers on January 7, 2025, 10 days after it occurred. Courts have found longer delays reasonable as a matter of law. *See, e.g.*, *In re MOVEit*, 2025 WL 2179475, at *27 (two to six weeks).

    ii. The Direct Plaintiffs' claims also fail because they do not plausibly allege damages caused by the supposedly unreasonable delay, rather than from the incident itself.

      a. The Direct Plaintiffs must allege damages arising from the supposed "delay" in notification. *See, e.g.*, *Grigsby v. Valve Corp.*, 2013 WL 12310666, at *5 (W.D. Wash. Mar. 18, 2013).

      b. The Direct Plaintiffs' claimed injuries include "increased" compliance costs, remediation and mitigation costs, operational disruption, and costs to strengthen their security systems. DAC ¶¶ 793–94, 977, 1166. These alleged injuries arise from the incident itself, not a delay in notification.

6

# EXHIBIT F

Bain Capital's Track Two Outline

## Bain Capital, L.P.'s Track Two Motion to Dismiss Outline
### *In re PowerSchool*, 3:25-md-3149 (S.D. Cal.)

## I.    Introduction

Track 2 Plaintiffs attempt to impose an extraordinary—and unprecedented—form of liability on Bain, one of a number of investors in PowerSchool, for a cyberattack that, by their own account, began months *before* Bain had any ownership interest in PowerSchool.  Setting aside that Plaintiffs do not—and cannot—plead the elements of any of their claims, no court has ever endorsed the notion that a private investment firm can be held liable when a company in which it invests experiences a cybersecurity incident.  Plaintiffs' theory would radically expand data-breach liability and run head-on into the "deeply ingrained" rule that corporations are "not liable for the acts of [their] subsidiaries," much less the acts of independent companies even further removed from a parent-subsidiary structure.  *United States* v. *Bestfoods*, 524 U.S. 51, 61 (1998).

The Direct Action Plaintiffs' alter ego allegations are plainly insufficient to survive a motion to dismiss (a fact already recognized by Track 1 Plaintiffs, who have abandoned this claim following the filing of Bain's motion to dismiss, and the Class Action Plaintiffs who never asserted this legal theory in the first place). The Direct Action Plaintiffs fail to meet the "heavy burden" required to pierce the corporate veil.  *Santa Clarita Org. for Plan & Env't* v. *Castaic Lake Water Agency*, 1 Cal. App. 5th 1084, 1105 (2016).  They cannot point to a single instance—ever—where an investment firm was held liable as an alter ego for a portfolio company's cyberattack, much less for alleged conduct that occurred before the investment firm acquired any stake in the portfolio company.  Indeed, black-letter law prohibits this type of claim when there is no ownership interest, as was the case before Bain's investment closed on October 1, 2024.  *SEC* v. *Hickey*, 322 F.3d 1123, 1130 (9th Cir. 2003).  And Plaintiffs do not even attempt to plead the bad faith or injustice necessary to justify veil-piercing, which is a sparingly used tool for when a corporation is abusing the corporate form.  *Gerritsen* v. *Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1143 (C.D. Cal. 2015).

Track 2 Plaintiffs' direct-liability theories fare no better.  Plaintiffs do not allege any relationship between themselves and Bain.  They do not allege that Bain ever collected, possessed, maintained, or accessed the data at issue.  And they identify no precedent—because none exists—holding an investor directly liable for a data breach under such circumstances.  The core of their case lies entirely in

BAIN'S TRACK TWO MOTION TO DISMISS OUTLINE          25-md-3149-BEN-MSB

PowerSchool's conduct, and Plaintiffs plead no affirmative act by Bain that could give rise to any independent cause of action.

In early discovery, Bain has already confirmed that it is not aware of and has not identified any recommendations or directives regarding cost-cutting measures affecting PowerSchool's cybersecurity operations, reductions to PowerSchool's cybersecurity workforce, or offshoring of PowerSchool's cybersecurity operations between June 6, 2024, and when the alleged cybersecurity incident was discovered at the end of 2024. Requiring Bain to endure expensive discovery on claims this deficient would sanction a fishing expedition. There is no dispute that PowerSchool alone can satisfy any judgment or settlement, and Bain's dismissal would not impede Plaintiffs' ability to obtain full relief. Bain's investment already exposes it to economic consequences (like all of PowerSchool's investors); forcing it to remain in this litigation despite the utter absence of viable allegations would serve no purpose, and it would radically and unjustifiably expand data breach liability. Because Plaintiffs' allegations are legally and factually deficient, the claims against Bain should be dismissed in full.

## II. Alter Ego Liability—An "Extreme Remedy" for Bad-Faith Abuse of the Corporate Form—Is Entirely Inapplicable Here (Direct Action Counts 1–3, 5–6, 11–22, 24–46).[1] (MTD 17–26; Reply 4–11).

A. Direct Action Plaintiffs do not come close to meeting the high bar for piercing the corporate veil. They fail to allege either that (1) Bain so dominated PowerSchool's day-to-day operations that their corporate separateness collapsed, or that (2) Bain has acted in bad faith or abused the corporate form such that denying the "extreme remedy" of alter ego liability would be inequitable. *Sonora Diamond Corp.* v. *Superior Ct.*, 83 Cal. App. 4th 523, 538–39 (2000).

B. *Control*. Direct Action Plaintiffs do not allege any actions by Bain, at any point, that remotely approach such "manipulative control" over PowerSchool that Bain "dictate[d] every facet of [PowerSchool's] business—from broad policy decision[s] to routine matters of day-to-day operations." *Gerritsen*, 116 F. Supp. at 1142. At most, Plaintiffs describe

---

[1] Direct Action Plaintiffs have confirmed that they are not pursuing 42 of their counts against Bain on a direct liability theory. (MTD 43 n.30). If the Court finds that they have failed to plead alter ego liability, Direct Action Plaintiffs will only have one remaining claim.

BAIN'S TRACK TWO MOTION TO DISMISS OUTLINE          25-md-3149-BEN-MSB

ordinary interactions between an investment firm and an invested company and label those interactions as controlling in conclusory fashion.

1. Further, Direct Action Plaintiffs' timeline makes no sense. An alter ego theory requires well-pled facts showing the defendant "*must* own at least part" of the entity at issue. *Hickey*, 322 F.3d at 1130. Because Bain is not alleged to have held any ownership interest until ***October 1, 2024***, Direct Action Plaintiffs' pre-October 1 allegations cannot establish any ownership, let alone the extensive control that alter ego liability requires. But, even setting this issue aside, Direct Action Plaintiffs' pre-October 1 allegations fall far short of the "heavy burden" required to disregard the corporate form. *Santa Clarita*, 1 Cal. App. 5th at 1105.

2. Direct Action Plaintiffs' post-October 1 allegations fare no better: They assert only vague, conclusory statements that Bain "controlled" or "directed" business decisions—again, far from what is required to invoke this "extreme remedy, sparingly used." *Sonora*, 83 Cal. App. 4th at 539.

C. *Inequitable Result/Abuse of Corporate Form.*  Direct Action Plaintiffs' assertion that an inequitable result may occur because PowerSchool was "undercapitalized" is wholly conclusory and insufficient.

1. Undercapitalization requires allegations that the company could not meet its debts as they came due—something Direct Action Plaintiffs do not (and cannot) allege.

2. Moreover, Direct Action Plaintiffs fail to allege any specific bad-faith conduct or abuse of the corporate form and thus cannot show that veil piercing is necessary to avoid "sanction[ing] a fraud or promot[ing] injustice." *Gerritsen*, 116 F. Supp. 3d at 1143.

**III. Intentional Interference Requires Control and Intent to Disrupt a Contract; Neither Is Alleged  (Class Action Count 2; Direct Action Count 7)**. (MTD 28–36; Reply 12–17).

A. Plaintiffs fail to—and cannot—allege that Bain "intentionally procured the breach" of any PowerSchool contract. *TileBar* v. *Glazzio Tiles*, 723 F. Supp. 3d 164, 202 (E.D.N.Y. 2024). Instead, they rely on conclusory assertions about conduct purportedly occurring months before Bain acquired a 51% stake in PowerSchool, even though the merger agreement

expressly provides that Bain had **no ability to control PowerSchool** before October 2024.

B. Even if Plaintiffs had alleged that Bain anticipated or projected cost reductions at PowerSchool (they have not), they still fail to explain how such generalized discussions reflect an intent to interfere with any particular contracts.  Nor do they allege facts showing Bain lacked a legitimate business purpose when engaging in ordinary arm's-length negotiations.

C. Plaintiffs also fail to plead a "factual chain of causation," *Bank of N.Y.* v. *Fremont Gen. Corp.*, 523 F.3d 902, 910 (9th Cir. 2008), or that PowerSchool would have performed its contracts "but for" Bain's supposed conduct, *TileBar*, 723 F. Supp. 3d at 202–03.

D. Finally, Plaintiffs' generalized cybersecurity allegations do not "plead with any specificity the disruption of a contract," as required to state an interference claim.  *Seoul Laser Dieboard Sys. Co.* v. *Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1201 (S.D. Cal. 2013).

## IV. Computer Fraud And Abuse Act (CFAA) (Class Action Count 4) and California Comprehensive Data Access And Fraud Act (CDAFA) (Class Action Count 5).  (MTD 36–43; Reply 17–21).

A. Class Action Plaintiffs offer concededly novel and unsupported theories of liability under the CFAA and CDAFA, and their allegations fail to satisfy core elements of either a CFAA or CDAFA claim.

B. Class Action Plaintiffs do not allege that **Bain** accessed any system, exceeded any authorization, or knowingly caused any access.  Instead, they rely on PowerSchool's alleged actions and simply assert—without facts—that Bain "directed" those actions (Class Opp. 21–22, 25).  Those allegations are defeated by the merger agreement, which expressly provided that Bain had **no ability to control PowerSchool** before October 2024.  And in any event, it is an absurd reading of these statutes to impose liability on the *victim* of the data breach, let alone its investors.

C. Class Action Plaintiffs' conspiracy theory necessarily fails, because they do not identify any "common activities" or any agreement to participate in an unlawful act.  *See NetApp, Inc.* v. *Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 835–36 (N.D. Cal. 2014).

    D. Class Action Plaintiffs' damages theory rests entirely on the conduct of a third-party hacker—not on alleged unauthorized access by Bain or even PowerSchool—which is fatal to both their CFAA and CDAFA claims.

## V.    Impermissible Group Pleading.  (MTD 43–44; Reply 21–22).

    A. Class Action Plaintiffs depend on impermissible group pleading.  Their allegations are aimed squarely at ***PowerSchool***, not Bain, and they identify ***no conduct by Bain*** that could support any of these causes of action.

## VI.    Plaintiffs' Other Direct Claims All Fail for Obvious Reasons.

    A. *Negligence (Class Action Count 3)*.  (MTD 45–48; Reply 22–25).  Class Action Plaintiffs' negligence claim fails for the same reasons Track 1 Plaintiffs' claim fails—it is based on entirely novel theories of duty and causation that would dramatically transform black-letter negligence and corporate law.

        1. *Duty*.  Plaintiffs do not allege that Bain collected, possessed, maintained, or accessed the data at issue; that Bain had any special relationship with Class Action Plaintiffs; or that PowerSchool's alleged duty can be imputed to Bain.  Even the case they cite recognizes that a duty to protect data arises only "[o]nce [d]efendants collected [p]laintiffs' information." (*See* Class Opp. 28) (citing *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *14 (D.N.J. Dec. 16, 2021)).  And under their unsupported foreseeability logic, every investment firm would now owe a duty for every data incident at every portfolio company—an unprecedented and untenable expansion of negligence law and a complete end-run of the doctrine of limited liability and corporate separateness.

        2. *Causation*.  Class Action Plaintiffs also fail to allege proximate causation.  The workforce and cost-related decisions they claim caused the cybersecurity incident all predate Bain's alleged ownership interest or alleged conduct, and any supposed link between Bain and the breach is far too attenuated to support a negligence claim.  *Modisette* v. *Apple Inc.*, 30 Cal. App. 5th 136, 153–54 (2018).

    B. *Unjust Enrichment (Class Action Count 7)*.  (MTD 48–50; Reply 25–26).  Class Action Plaintiffs allege no facts suggesting that Bain—rather than

PowerSchool—received or retained any direct benefit at their expense. Even if they could, unjust enrichment "is not an independent cause of action." *Advanced Eng'g Sols. Co., LLC* v. *Pers. Corner, LLC*, 2021 WL 1502705, at *7 (C.D. Cal. Feb. 25, 2021).

C. *Declaratory Judgment Act (Class Action Count 8)*. (MTD 50; Reply 26). Relief under the Declaratory Judgment Act is unavailable where a party "lacks a cause of action under a separate statute." *City of Reno* v. *Netflix, Inc.*, 52 F.4th 874, 878–79 (9th Cir. 2022). Class Action Plaintiffs do not sufficiently plead any other cause of action, and this count should therefore be dismissed.

## VII. Bain Should Also Be Dismissed for Lack of Personal Jurisdiction. (MTD 10–17; Reply 27–32).

A. Plaintiffs' vague, conclusory assertions that Bain "controlled" PowerSchool and participated in merger negotiations in California are not enough to establish minimum contacts, and PowerSchool's California contacts cannot be imputed to Bain because Plaintiffs either do not plead or fail to plead alter ego liability. *See Kalter* v. *Keyfactor, Inc.*, 2022 WL 658976, at *2–3 (S.D. Cal. Mar. 4, 2022).

B. Class Action Plaintiffs also cannot overcome the strong presumption of successor non-liability. They do not allege that Bain agreed to assume PowerSchool's liabilities or that Bain acquired its interest without adequate consideration—both prerequisites to any successor-liability theory.

C. Finally, jurisdictional discovery concerning the location of merger negotiations would be futile: Plaintiffs' claims do not arise out of those negotiations and cannot be cured through additional jurisdictional discovery.

BAIN'S TRACK TWO MOTION TO DISMISS OUTLINE          25-md-3149-BEN-MSB

# EXHIBIT G

## Movate's Track Two Outline

1  BROWN RUDNICK LLP
   SAMANTHA J. FLATTERY, No. 342420
2  sflattery@brownrudnick.com
   RENEE M. MOULTON, No. 353065
3  rmoulton@brownrudnick.com
   2121 Avenue of the Stars, Suite 720
4  Los Angeles, CA 90067
   T: 1.424.525.0200
5  F: 1.424.525.0201

6  BROWN RUDNICK LLP
   DYLAN P. KLETTER, NY Bar No. 5924659 (admitted *pro hac vice*)
7  dkletter@brownrudnick.com
   JONATHAN D. WHITE, NY Bar No. 5393780 (admitted *pro hac vice*)
8  jwhite@brownrudnick.com
   7 Times Square
9  New York, NY 10036
   T: 1.212.209.4800
10 F: 1.212.209.4801

11 Attorneys for Defendant,
   MOVATE, INC.

12

13             **UNITED STATES DISTRICT COURT**

14           **SOUTHERN DISTRICT OF CALIFORNIA**

15

16 | IN RE: POWERSCHOOL | CASE NO. 3:25-md-3149-BEN-MSB |
   HOLDINGS, INC. AND
17 POWERSCHOOL GROUP, LLC | MDL No. 3149
   CUSTOMER SECURITY
18 BREACH LITIGATION | Hon. Roger T. Benitez

19 This Document Relates To: | **DEFENDANT MOVATE, INC.'S**
   Track Two Direct Action | **OUTLINE OF ITS ARGUMENT IN**
20 | **SUPPORT OF MOTION TO**
   | **DISMISS TRACK TWO DIRECT**
21 | **ACTION COMPLAINT (TRACK 2)**

22
   Courtroom:    5A
23 Date:         January 26, 2026
   Time:         9:00 a.m.

24

25

26

27

28

## I.  <u>MOVATE DOES NOT BELONG IN THIS CASE</u>

- Plaintiffs assert claims of negligence (Count 8), negligent hiring and supervision (Count 9), and breach of contract (Count 10) against Movate.

- **Movate is a downstream IT vendor with no custody or control over the SIS or the security measures Plaintiffs challenge**. Plaintiffs' own allegations confirm that PowerSchool—not Movate—owned the SIS, controlled access permissions, and made the relevant security decisions. *E.g.*, Track 2 Compl. ¶¶ 6, 31, 52–54.

- Even taking the allegations as true, there are **no well-pled, Movate-specific facts** showing Movate owed Plaintiffs a duty or breached any Movate-controlled standard. The targeted security choices were PowerSchool's.

- Plaintiffs' breach-of-contract claim also fails at the outset because Movate's agreements with PowerSchool do not confer third-party enforcement rights on Plaintiffs, as required by New York law.

## II.  <u>NEGLIGENCE (COUNT VIII)[1]</u>

### A.  <u>No duty because Movate lacked custody or control over the risk-creating instrumentality (the SIS and its security configuration).</u>

- Plaintiffs' own allegations—and PowerSchool's Track 1 mediation statement, which is now part of the record—confirm that core security settings such as MFA and access permissions were controlled exclusively by PowerSchool, not Movate.  *See* Track 2 Compl. ¶¶ 23, 184, 193, 208 (alleging MFA and other security settings applied by PowerSchool); PowerSchool Track One Mediation Reply at 1 (explaining MFA for the SIS was not enabled by PowerSchool at the time of the breach).

---

[1] Track Two briefing focused on the state law of IL, NH, NY, PA, TN, and UT.

MOVATE'S OUTLINE OF ITS ARGUMENT IN SUPPORT OF MOTION TO DISMISS TRACK TWO DIRECT ACTION COMPLAINT

- Courts refuse to impose a duty on vendors who do not operate the system, control access, or store/use the data after installation or in operation. *See* Movate Track 2 MTD at 13.
    - *Navarro v. Ski Data*, summary judgment for vendor; duty turned on who controlled the system and access; vendor did not. 2022 WL 18280359, at *10 (C.D. Cal.).
    - *Smahaj v. Retrieval-Masters*, MTD granted; no duty where alleged breach occurred on another entity's system outside defendant's control; foreseeability of data breach is not enough. 131 N.Y.S.3d 817, 827 (N.Y. Sup. Ct. 2020).
    - *In re U.S. Vision Data Breach Litig.*, MTD granted; even a defendant that stored data had no duty absent control over security decisions and access permissions. 2025 WL 615366, at *8–10 (D.N.J.).
- Plaintiffs argue Movate owed a duty because it had access/control and created a foreseeable risk. Opp. at 21–22.
    - But Plaintiffs allege PowerSchool controlled the very security decisions at issue; without custody/control, no duty lies against a downstream vendor. *See* Movate Track 2 MTD at 13; Movate Track 1 Reply at 9–12.

**B.     Foreseeability alone cannot create duty in these jurisdictions.**

- California Supreme Court: expanding duty based on generalized risk creates a "universe of potential claims" and overwhelming liability—precisely the concern here if every subcontractor owes duties to every end user. *See* Movate Track 2 MTD at 11–12 (discussing *Southern Cal. Gas Leak Cases*, 7 Cal. 5th 391, 401–03 (2019)).
- Plaintiffs rely on the foreseeability of a hack. *See* Opp. at 21–22.
    - But foreseeability cannot substitute for control of SIS security and Plaintiffs do not allege Movate knew of any specific vulnerability in

PowerSchool's system. Movate Track 2 MTD at 11–12.

**C.    No "special relationship" between Movate and Plaintiffs.**

- Special-relationship duties are narrow and generally require custody/control—not present here. *See* Movate Track 2 MTD at 12–13.

  - *Regents of Univ. of California v. Superior Court*, *Brown v. USA Taekwondo*, *Navarro*, and *In re U.S. Vision Data Breach Litig.* confirm vendors lacking control do not have such relationships with end users. *See* Movate Track 2 MTD at 12–13.

- Plaintiffs argue that the foreseeability of cyberattacks, combined with Movate's system access, created a "position of trust" that allegedly gave rise to a special relationship with Plaintiffs. Opp. at 21–22.

  - But foreseeability does not create a special relationship; special relationships require custodial control/dependency, not generalized cyber risk or downstream access. *See* Movate Track 2 MTD at 12–13.

  - Plaintiffs' foreseeability argument is inconsistent with *Navarro* and *Smahaj*, which reject the notion that general foreseeability of cybercrime can create a duty for vendors who lack custody/control over the compromised system.

**D.    Industry standards do not establish a duty.**

- "Best practices" do not establish legal duty. *See Fischl v. Pac. Life Ins. Co.*, 94 Cal.App.5th 108, 129 (2023) ("[I]ndustry custom or practice cannot create a legal duty."); Movate Track 2 MTD at 13–14.

**E.    Contracts with PowerSchool do not create a duty to Plaintiffs.**

- Plaintiffs' attempt to derive duty from Movate's contract with PowerSchool fails as a matter of law. Plaintiffs are not parties to or intended beneficiaries of the contract. Movate's subcontract does not extend PowerSchool's contractual obligations—or tort liability—to a downstream vendor. *See* Movate Track 2 MTD at 14–15.

**F.**    **No breach plausibly alleged against Movate under *Twombly/Iqbal*.**

- The only concrete allegations of missing MFA, credential rotation, and access restrictions are PowerSchool's choices for its own system. *E.g.*, Track 2 Compl. ¶¶ 208, 220, 336. Plaintiffs allege no facts that Movate could enable MFA unilaterally, disabled MFA, refused to use MFA if available, or violated a PowerSchool policy. *See* Movate Track 2 MTD at 15.

- Training allegations are wholly conclusory; there are **no facts** tying the PowerSchool credential compromise to any Movate training failure.

**III.    NEGLIGENT HIRING/SUPERVISION (COUNT IX)**

- Negligent hiring/supervision **requires** allegations that the employer knew or should have known the employee posed a foreseeable risk of the type of harm that occurred. *See* Movate Track 2 MTD at 16–17.

- Plaintiffs plead no prior misconduct, no complaints, no discipline, and no red flags regarding Mr. Cruz—only that criminals allegedly used his PowerSchool credentials. That is not notice as a matter of law.

- Plaintiffs argue negligent hiring/supervision is sufficiently pled by alleging Movate failed to train/supervise personnel with access to PII. Opp. at 24–25.
  - But the missing notice element is dispositive; Plaintiffs identify no facts showing Movate knew or should have known Cruz posed a risk. Movate Track 2 MTD at 16–18.

**IV.    BREACH OF CONTRACT (COUNT X)**

**A.**    **Plaintiffs lack standing to assert a claim under Movate's contract with PowerSchool.**

- The General Services Agreement ("GSA") states that the "Agreement shall be governed by and construed in accordance with the laws of New York." GSA § 15.2.
  - California courts generally enforce contractual choice-of-law provisions. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464

4

(1992) ("Such choice-of-law provisions are usually respected by California courts.").

○ Where the contracting parties are sophisticated commercial entities, California enforces their chosen law unless applying it would violate a fundamental California policy. *Pure Bioscience v. Ross Sys., Inc.*, No. 07-CV-1117 W (WMC), 2008 WL 938956, at *3 (S.D. Cal. Apr. 7, 2008) (applying *Nedlloyd* and enforcing negotiated choice-of-law clause between commercial parties); *Medimatch, Inc. v. Lucent Techs. Inc.*, 120 F. Supp. 2d 842, 859–62 (N.D. Cal. 2000) (same).

- Non-parties may enforce a contract under NY law **only where** the agreement "clearly evidence[s] an intent to permit enforcement by the third-party." *Dormitory Auth. v. Samson Constr.*, 94 N.E.3d 456, 459 (N.Y. 2018). Incidental benefit is insufficient; enforcement rights must be express and unmistakable. *See* Movate Track 2 MTD at 19–21.

- Nothing in the GSA or the attached Data Privacy Agreement ("DPA") grants enforcement rights to school districts or end users; all rights run to PowerSchool alone. *See* GSA § 15.1; DPA §§ 10.2, 7.2.11, 16; Movate Track 2 MTD at 20–21.

- Courts routinely dismiss third-party beneficiary claims at the pleading stage where contracts lack clear intent to confer enforcement rights. *E.g.*, *4C Foods Corp. v. Package Automation Co.*, 2014 WL 6602535, at *9 (S.D.N.Y.).

**B.**    **Plaintiffs fail to identify the relevant contractual provisions.**

- A breach-of-contract claim under NY law **requires** identification of the specific contractual provision allegedly violated, but Plaintiffs plead breach only "on information and belief" without citing any provision of the GSA or DPA. Track 2 Compl. ¶¶ 297–301; *see* Movate Track 2 MTD at 22–23.

**C.**    **If Plaintiffs are third-party beneficiaries, then their tort claims**

**should be dismissed as duplicative.**

- Plaintiffs' negligence theories are entirely derivative of the same contractual obligations they claim Movate owed under the GSA/DPA. Every alleged duty in tort they invoke arises from the same alleged contractual obligations and the same alleged misconduct. Movate Track 2 MTD at 23–24.

- NY law bars tort claims that merely restate breach of contract. Were Plaintiffs found to be third-party beneficiaries (they are not), then *Clark-Fitzpatrick v. Long Island R.R. Co.* requires dismissal of their tort theories. 516 N.E.2d 190, 193–94 (N.Y. 1987).

## V.    NO PERSONAL JURISDICTION OVER MOVATE

- Movate is a Texas-based vendor providing backend technical support to PowerSchool. It did not target California, contract with California plaintiffs, or direct any forum-specific conduct giving rise to the claims. Remote support and incidental contacts are not enough. *See Lee v. Netgain Tech., LLC*, 2022 WL 993552, *3–6 (S.D. Cal. Apr. 1, 2022) (Minnesota-based IT provider not subject to jurisdiction in California where the data breach and relevant technical operations occurred outside the forum); Movate Track 2 MTD at 5–10.

- Plaintiffs have not established personal jurisdiction over Movate. While there may be procedural avenues to do so, it is Plaintiffs' burden.

## VI.    CONCLUSION

Movate respectfully reiterates that all claims against it should be dismissed with prejudice.

1   DATED: January 23, 2026     Respectfully submitted,

2

3                        BROWN RUDNICK LLP

4

                      By: */s/ Dylan P. Kletter*

5                        DYLAN P. KLETTER

6                        JONATHAN D. WHITE
                        SAMANTHA J. FLATTERY

7                        RENEE M. MOULTON
                        Attorneys for Defendant,

8                        MOVATE, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT H

Track Two Class Plaintiffs' Outline

### Motion to Dismiss Argument Outline for the School Class Track

**Attorneys:**
James E. Cecchi of Carella, Byrne, Cecchi, Brody & Agnello, P.C.
John Nelson of Milberg LLC
Jordan M. Steele of Carella, Byrne, Cecchi, Brody & Agnello, P.C.

*    *    *

### Opening Statement
Time: 1:00 p.m. to 1:10 p.m.
Attorney: James E. Cecchi

### Breach of Contract and Common Law Claims Against PowerSchool
Attorney: James E. Cecchi
Time: 2:00 p.m. to 2:15 p.m.

    **A.** **Plaintiffs have adequately pled PowerSchool breached its Contracts with the School Districts, including the terms of the Contracts that were breached.**

- Plaintiffs allege throughout that PowerSchool breached its Contracts by failing to safeguard the data it obtained from Plaintiffs and the Class (*i.e.*, by failing to implement multi-factor authentication and password rotation for its contracts, endpoint protection for suspicious network activity and encryption of data in motion or use).

- Plaintiffs identify the Contracts that were breached (*i.e.*, MSAs and DPAs).

- Plaintiffs allege the specific contractual requirements in the Contracts that were breached, tying the specific provisions of the Contracts to Plaintiffs' allegations.

- Plaintiffs' pleading of PowerSchool's breach of Contract satisfies the notice pleading standard and are sufficient at the motion to dismiss stage.

    **B.** **Plaintiffs' damages are not barred by the MSA's limitation of liability provision.**

- The limitation of liability provision includes an exception for "liability arising out of a party's gross negligence, willful misconduct or fraud."

75

- Plaintiffs allege that PowerSchool breached the Contracts by deliberately allowing its personnel to have broad, unfettered access to the data despite PowerSchool's contractual restrictions.

- These facts adequately allege willful or grossly negligent conduct on the part of PowerSchool, which proximately caused the data breach.

- The question of whether Plaintiffs have established the Contracts were breached with willful intent or gross negligence to overcome the limitation of liability provision is one of fact, appropriate for resolution at the summary judgment stage.

## Personal Jurisdiction is Appropriate and Claims Against Bain are Well Pleaded
Attorney: John Nelson
Time: 2:15 p.m. to 2:30 p.m.

### C.    This Court's exercise of personal jurisdiction over Bain is proper

- (1) under the theory of successor liability, Bain's acquisition of PowerSchool affords a basis for specific jurisdiction; (2) Bain expressly aimed its conduct at New Jersey and New York, thus establishing specific jurisdiction for purposes of Plaintiffs' claim for intentional interference tortious interference with contract; (3) this Court's exercise of jurisdiction over Bain comports with due process;[1] and (4) pendent personal jurisdiction is appropriate because Plaintiffs' state law claims share a common nucleus of operative facts with their federal claim under the CFAA.

- Bain not only controls PowerSchool which has sufficient contacts with the forum states to impose personal jurisdiction but it also maintains offices in California and New York and thus avails itself of the legal protections of those states.

- This Court, the District of New Jersey court, and the Eastern District of New York court would have had personal jurisdiction over PowerSchool because it purposefully directed its conduct at these forums and Plaintiffs' claims arise out of or relate to that conduct. Specifically, PowerSchool's purposeful direction occurred when it entered into contracts with schools of the Plaintiffs in New Jersey and New Jersey to provide and perform

---

[1] *Lawn Dr., Inc. v. Branon*, No. CIV.A. 07-CV-04735FL, 2008 WL 2064477, at *5 (D.N.J. May 14, 2008) ("tortious interference is an intentional tort that can confer personal jurisdiction under the *Calder* 'effects test.'")

the services it offered to them. Bain in turn controlled and directed the conduct that resulted in the cyberattack.

**D.    School District Class Plaintiffs' remaining claims are well pleaded**

**1.    Plaintiffs adequately allege a claim for intentional interference with contract;**

- The crux of Plaintiff tortious interference claim is that Bain directed PowerSchool to implement substandard data security measures to increase profitability and drive profit to Bain. The claim does not require that Bain have intended the results of the breach, i.e., the cyberattack, only that it interfered with the performance of the contracts. *Connell v. Weiss*, 1985 WL 428, at *2 (S.D.N.Y. Mar. 19, 1985) ("[w]here a contract exists, intentional interference by the defendant is actionable even in the absence of malice"); *Harris v. Perl*, 197 A.2d 359, 363 (N.J. 1964) ("one who unjustifiably interferes with the contract of another is guilty of a wrong"); *NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*, 87 N.Y.2d 614, 621 ("[W]here there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior.")

- While Bain argues that the language of its merger agreement precludes a finding that it was able to direct control of PowerSchool, the allegations of the complaint make clear that the parties disregarded that contractual provision and Bain directed PowerSchool to take certain actions, and because PowerSchool did so, the threat actor was able to exploit PowerSchool's reduced data security posture

- To the extent Bain insists that the allegations be pleaded with exacting specificity, no such requirement is found in Rule 8(a) and Bain is sufficiently on notice of the conduct with which it is charged.

**2.    Plaintiffs have established the elements of duty, breach, causation, and injury to support their negligence claim against Bain;**

- Duty: "[i]t is axiomatic that a defendant has a duty to protect a plaintiff against foreseeable harm." *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *14-15 (D.N.J. Dec. 16, 2021). "The general rule in

California is that everyone is responsible for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person. In other words, each person has a duty to use ordinary care and is liable for injuries caused by his failure to exercise reasonable care in the circumstances." *In re San Francisco 49ers Data Breach Litigation*, 2024 WL 3849336, at *2 (N.D. Cal. Aug. 15, 2024); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 69 Misc. 3d 597, 603, 131 N.Y.S.3d 817, 823 (N.Y. Sup. Ct. 2020) (stating that plaintiff could have established defendant's duty if there were allegations that the defendant "retained, supervised, controlled, directed[,] and authorized all actions of AMCA, which resulted in [p]laintiff['s] and class members' personal information being compromised")

- **Breach:** While Bain has waived this argument, by directing PowerSchool to reduce and offshore its data security practices, and alleging that the cyberattack was the result of the threat actor being able to exploit unrestricted access controls of offshore contractors, Plaintiffs have sufficiently alleged Bain's breach of its duty.

- **Causation:** Plaintiffs have sufficiently alleged a nexus between Bain's conduct and the resulting unauthorized access to the School Districts data sufficient to allege causation. Moreover, proximate cause is a question of fact which cannot be decided as a matter of law from the allegations of a complaint." *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 152 (2018).

- **Injury:** Plaintiffs have alleged that as a result of Bain's conduct, they have been forced to spend their own resources to remedy or mitigate the consequences of the cyberattack.

3. **The Economic Loss Doctrine does not bar Plaintiffs' claims**

- The economic loss doctrine does not bar negligence claims where the defendant owed a duty independent of contract (CA, NJ, NY).

- Plaintiffs seek economic damages via their negligence claim based on their allegations that PowerSchool violated duties to protect the sensitive Data, which was independent from their contractual obligations.

- PowerSchool owed independent duties to reasonably safeguard Plaintiffs' sensitive Data that arose from statutory obligations,

public policy, PowerSchool's representations about data security, and the special relationship created when Plaintiffs were required to entrust PowerSchool with their Data. It was also foreseeable that Plaintiffs would be harmed if there was inadequate security.

- Time spent responding to a data breach is a non-economic injury that defeats an economic loss doctrine argument (CA).

**4.    Plaintiffs have adequately alleged that PowerSchool and Bain were unjustly enriched by diverting funds intended to apply to data security to their own profit.**

- Under California law, unjust enrichment is a quasi-contractual remedy that can be pleaded in the alternative to contract claims. *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1145 (C.D. Cal. 2021).

- Under both New York and California law, Plaintiffs need only show that Defendants received and unjustly retained a benefit at Plaintiffs' expense, i.e., that Defendants realized increased revenue by cutting necessary expenses. *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *11 (S.D.N.Y. Mar. 23, 2021).

- Under New Jersey's approach, Plaintiffs need only show that Defendants realized a benefit by commoditizing or monetizing the personal information in their possession and Plaintiffs have alleged as much here. *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2023 WL 8540911, at *5 (D.N.J. May 5, 2023)

**5.    Declaratory and injunctive relief are proper as to Bain and PowerSchool.**

- Declaratory and Injunctive relief are forward looking remedies and thus not duplicative of Plaintiff claims for damages. *In re Ambry*, 567 F. Supp. 3d at 1151 ("Plaintiffs may seek both damages for past harm and injunctive relief to prevent future harm."). Whether construed as an independent cause of action or an available remedy is a distinction without a difference as the Court is empowered to declare the rights of the parties in the event of an actual controversy between them.

- It is premature to dismiss this claim at the pleading stage.

**Statutory Claims Against PowerSchool and Bain**
Time:  2:30 p.m. to 2:45 p.m.
Attorney: Jordan M. Steele

**E.    Plaintiffs adequately pleaded their CFAA claims**

- The CFAA is a statute that concerns "the circumvention of technological access barriers." *U.S. v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012).

**1.    Plaintiffs bring claims under 18 U.S.C. §§ 1030(a)(2)(C) and (a)(5)(C) against PowerSchool, and under § 1030(b) against Bain. Under these Subsections, the CFAA creates liability for whoever:**

- 1030(a)(2) (PowerSchool): Intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—information from any protected computer;

- 1030(a)(5) (PowerSchool): Intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss; or

- 1030(b) (Bain): Conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section.

**2.    PowerSchool exceeded its authorization to access Plaintiffs' and Class Members' Protected Computers in violation of 1030(a)(2)**

- Under 1030(e)(6), the term "exceeds authorized access" is defined to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."

- An individual "exceeds authorized access" when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off-limits to him. *Van Buren v. U.S.*, 593 U.S. 374, 396 (2021).

- Plaintiffs allege that PowerSchool violated both code-based, technological access barriers and contractual access limitations. Plaintiffs state in their Complaint:

- o PowerSchool installed a code-based maintenance access tool that acted as a backdoor for PowerSchool's personnel to access Plaintiffs' data without their knowledge or consent, including data stored locally on Plaintiffs' self-hosted servers. ECF 263, ¶¶ 188, 196.

- o PowerSchool was also required by contract to restrict access to unencrypted information but intentionally circumvented that restriction, leading to time lost and expenses incurred by Plaintiffs and Class Members. ECF 263, ¶¶ 190-195, 209.

### 3. PowerSchool's access was intentional

- Subsection 1030(a)(2) requires only that access be intentional, and penalizes access without authorization and exceeding authorization. *U.S. v. Nosal*, 844 F.3d 1024, 1033 (9th Cir. 2016) *overruled in part on other grounds* by *Lagos v. United States*, 584 U.S. 577 (2018).

### 4. Plaintiffs allege damages and loss as defined by the CFAA under 1030(e)(8), (e)(11)

- Under 1030(e)(8), the term "damage" means any impairment to the integrity or availability of data, a program, a system, or information.

- Under 1030(e)(11), the term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

### 5. PowerSchool also accessed the Protected Computers without authorization in violation of 1030(a)(5)(C)

- Unlike access based on valid, voluntary and adequately informed consent, "ill-gotten consent," such as one obtained through "blatantly misdescrib[ing] the nature of [the software] in order to gain access," is sufficient to satisfy the "access . . . without authorization" element of 1030(a)(5).

### 6. Bain conspired to violate the Computer Fraud and Abuse Act under 1030(b).

- Courts have routinely entertained claims under section 1030(b) in civil cases. *See Ryanair DAC v. Booking Holdings Inc.*, 636 F. Supp. 3d 490, 510 (D. Del. 2022).

- Plaintiffs allege that Bain:

  o "[W]as aware [] that PowerSchool was contractually prohibited from accessing unencrypted and identifiable student and teacher data stored on the Protected Computers[.]." ECF 263, ¶ 202.

  o Knew that "[t]he data for the School Districts should have resided in access-restricted environments – encrypted or otherwise siloed – under their Contracts, and this data fell outside PowerSchool's authorization to access." ECF 263, ¶ 202.

  o "[K]nowingly authorized or ratified PowerSchool's use of a Backdoor Access Tool that bypassed bargained-for consent and access protocols, enabling PowerSchool employees to access the School Districts' unencrypted, identifiable data." ECF 263, ¶ 203. *See also* ECF 263, ¶¶ 188-96, 200-03.

## F.    Plaintiffs' CDAFA claims are adequately pled against Defendants

- Plaintiffs CDAFA claim is well pled because the statute, California's analogue to the CFAA, is even broader: it requires only "knowing access," not "unauthorized access," as confirmed in *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016).

82

# EXHIBIT I

Track Two Direct Plaintiffs' Outline

## Track Two School District Direct Action Plaintiffs'

## Opposition Outline to PowerSchool's Motion to Dismiss

I.    **BREACH OF CONTRACT PROPERLY PLED**

A.  **Governing Standard**

> Existence of contract
> Plaintiff performance
> Defendant breach of specific provision
> Resulting damages

B.  **Improper Grouping of Allegations**

- <u>Grouping together entire swaths of individualized allegations is not a proper means to dismiss an entire claim under Rule 12(b)(6)</u>. *See, e.g.*, *Brown v. Sweetwater Union High Sch. Dist.*, 2025 WL 525111, at *7 (S.D. Cal. Feb. 18, 2025) ("Rule 12(b) is not the proper mechanism for eliminating specific allegations from a complaint."); *Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129 (D. Ariz. 2009) ("The Court is unaware, however, of any situation in which a Rule 12(b)(6) motion may be used to strike certain allegations in support of a claim, where the underlying claim itself is not challenged.").

C.  **Pleading Elements of A Contract are Met**

- <u>The Direct Action Complaint ("DAC") includes factual allegations to show how and why PowerSchool breached every identified provision of Plaintiffs' respective contracts.</u>
  - o  PowerSchool's claim that Plaintiffs do not sufficiently allege facts about what PowerSchool "did" to breach the contracts fails as a matter of law and procedure.
  - o  The relevant inquiry is whether Plaintiffs pled the facts about what PowerSchool *did not do* in conjunction with what the contracts required. *See, e.g.*, *Comfort Inn Oceanside v. Hertz Corp.*, 2011 WL 5238658, at *7 (E.D.N.Y. Nov. 1, 2011) ("A contractual breach arises when a party agrees to do something and does not do it. The non-performance itself establishes this element of the claim.").

- <u>Specific allegations against PowerSchool are not impermissible 'shotgun' pleadings.</u>
  - o  Courts will dismiss an impermissible shotgun pleading, which may consist of "a complaint that asserts multiple claims against multiple defendants without specifying which one of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *TV Ears, Inc. v. Joyshiya Development Ltd.*, 20-cv-1708-WQH-BGS, 2021 WL 5396111 at *13 (S.D. Cal. Nov. 18, 2021).
  - o  Here, however, Plaintiffs specifically identify which provisions of the contracts PowerSchool breached. They explain how and why PowerSchool—and only PowerSchool—materially breached these provisions. That is not 'shotgun' pleading under any case PowerSchool cites.

84

- <u>No violation of Rule 8 exists in the DAC</u>.
  - o PowerSchool complains that the DAC's length and number of the breach of contract allegations violates Rule 8(a)(2)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."
  - o This argument fails as measured against the applicable legal standard. The Ninth Circuit takes the "view that verbosity or length is not by itself a basis for dismissing a complaint based on Rule 8(a)." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008). A complaint may rightfully "set out more factual detail than necessary," provided that the allegations "are intelligible and clearly delineate the claims and the Defendants against whom the claims are made." *Id.* at 1132; see also *Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013) ("Length and unintelligibility, as grounds for dismissal of a complaint, need to be distinguished.").

- <u>Plaintiffs properly plead damages within their breach of contract allegations</u>.
  - o The purported limitation on liability in the contracts at issue is either void or inapplicable as a matter of law.
    - ▪ The majority of states follow *Tunkl v. Regents of Univ. of Cal*, 60 Cal. 2d 92, 98–101 (1963), which sets forth the factors courts consider to determine the enforceability of a contract provision that seeks to exculpate a party for future violations of the law. Every single *Tunkl* factor weighs against enforcing this limitation here:
      (1) The transaction involves a business suitable for public regulation;
      (2) PowerSchool provides a service of great public importance and necessity, offers services to the public under established standards, and holds superior bargaining power over School Districts;
      (3) PowerSchool's release appears in the MSA—a standardized adhesion contract without a negligence opt-out; and
      (4) The resulting transaction places Plaintiffs' property under PowerSchool's control and risk.
    - ▪ PowerSchool also omits that this provision contains an exception for cases of fraud, gross negligence, and willful injury. Here, PowerSchool willfully failed to implement the security measures it promised to implement despite knowing the consequences to Plaintiffs for its failure. *See* DAC¶¶ 38–43, 71, 74 350, 431, 521, 707, 771, 888. This shows gross negligence under both Ninth Circuit precedent and in the data breach context. *See, e.g.*, *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1015 (9th Cir. 1999) (defining gross negligence as "such a gross want of care and regard for the rights of others as to justify the presumption of willfulness and wantonness"); *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 352 (S.D.N.Y. 2023) (finding gross negligence plausible based on allegations that company ignored multiple warning signs before data breach occurred).

  - o Plaintiffs do not claim special damages; they claim "general damages – i.e., damages that flow directly and necessarily from [a defendant's] alleged breach."

> *King v. Facebook Inc.*, 599 F. Supp. 3d 901, 910 (N.D. Cal. 2022), *aff'd*, No. 22-15602, 2023 WL 5318464 (9th Cir. Aug. 18, 2023).

- o Even if special damages were sought, dismissal would be unwarranted. "Unless the existence of special damages is an essential ingredient of plaintiff's claim for relief, the purpose of requiring that special damages be specifically pleaded is to protect the defendant against being surprised at trial by the extent and character of the plaintiff's claim." *Adams v. United States*, 823 F. Supp. 2d 1074, 1086 (D. Idaho 2011) (cleaned up).

## II. Plaintiffs' Negligence Claims Are Properly Pled.

- The economic loss rule does not bar recovery of the damages sought in negligence.
  - o Plaintiffs' losses do not stem from a "loss of profits" or "an unexpectedly defective product," meaning the economic loss rule does not apply. *See, e.g., In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 754 F. Supp. 3d 946, 980 (N.D. Cal. 2024).
  - o The independent duty exception to the economic loss rule applies here. *See Matter of Part 60 Put-Back Litig.*, 165 N.E.3d 180, 190 (N.Y. 2020) ("[T]he defendant's conduct also gives rise to separate liability in tort arising from a duty of care independent of the contract, which duty of care may be breached by the same conduct constituting the contractual breach" (citation omitted)).
- PowerSchool owed a duty according to the common law negligence jurisprudence of all the states at issue. *E.g.*, *Haney v. Charter Foods N., LLC*, 747 F. Supp. 3d 1093, 1111 (E.D. Tenn. 2024) ("Given the high level of foreseeability and known risks of data breaches, Defendants had a duty to take reasonable care to protect Plaintiffs from the data breach."); all other cases cited at pp. 20–23 of Opposition.

## III. Plaintiffs May Proceed On The Unjust Enrichment Claims.

- A plaintiff may set out alternative claims for breach of contract and unjust enrichment at the pleadings stage.
  - o "While plaintiff may not recover on both a breach of contract claim and an unjust enrichment claim, a plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts." *Simonson v. Hertz Corp.*, 2011 WL 1205584, at *6 (D.N.J. Mar. 28, 2011); *see Wadeea v. Mercedes-Benz USA, LLC*, 758 F. Supp. 3d 1217, 1229 (S.D. Cal. 2024) (declining to dismiss unjust enrichment claim merely because plaintiff "pled the existence of an express contract"); *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 916 (E.D. Pa. 2012) ("[T]hat a complaint alleges an unjust enrichment claim and also brings alternative claims for relief that might constitute adequate remedies at law is of no consequence under the pleading constraints of the Federal Rules of Civil Procedure."). PowerSchool's contrary argument fails.
  - o The scope of damages sought exceed the contracts in any event; Plaintiffs in fact seek recovery for PowerSchool's *years* of failing to perform services as promised. *See* DAC ¶¶27, 195–198.

- <u>No adequate remedy at law can be reasonably inferred, invalidating PowerSchool's arguments as a whole</u>.
  - An unjust enrichment claim should survive a motion to dismiss when "allowing for all inferences to be drawn in favor of Plaintiffs, the Court cannot rule as a matter of law that Plaintiffs have failed to plausibly suggest that there is an absence of an adequate remedy at law." *In re Processed Egg Prods*., 851 F. Supp. 2d at 918.

## IV. The Fraudulent Concealment Claims Pass Rule 9 Pleading Standards.

- The Ninth Circuit recognizes that "in cases of corporate fraud, plaintiffs will not have personal knowledge of all the underlying facts," such that Rule 9(b)'s particularity requirement "may be relaxed." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Here, Plaintiffs' allegations provide notice to PowerSchool of the specific facts which "if proven, could establish that [PowerSchool] engaged in wrongful concealment of the facts underlying [Plaintiffs'] claim for relief." *Alaska v. Express Scripts, Inc.*, 774 F. Supp. 3d 1150, 1165 (D. Alaska 2025).

## V. Plaintiffs Have Standing To Pursue Relief Under The BIPA.

- The Illinois Biometric Privacy Act ("BIPA") permits any person aggrieved by a violation of its requirement to store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry to pursue a private action. 740 Ill. Comp. Stat. 14/15(e)(2), 14/20(a).
- The BIPA, as interpreted by Illinois' Supreme Court, "vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent." Rosenbach v. Six Flags Ent. Corp., 129 N.E.3d 1197 (Ill. 2019).
- PowerSchool was responsible for storing and protecting from disclosure "Customer Data" per its own contracts and admissions. As a PowerSchool customer who suffered economic injuries from PowerSchool's BIPA violations, Plaintiffs stated a plausible claim under the statute. *See* DAC ¶¶34, 455–458, 461.

## VI. Plaintiffs Stated Plausible Claims Under The Consumer Protection Statutes.

*(Multiple Counts)*

## A. School Districts Are "Consumers"

**Rule:** Entities purchasing commercial products may qualify as consumers.

**Application:**

- Districts purchased PowerSchool's products
- Statutes are broadly construed
- Districts are the conduit for household and student use

## B. Deceptive Practices Adequately Alleged

- Misrepresentations about security
- Omission of monetization practices
- Reliance pled at contracting stage
- Causation plausibly alleged

## C. Specific State Aruguments

- <u>Plaintiffs have plausible claims per statutory definition or interpretation.</u>
    - o New York's high court explicitly held that PowerSchool's argument fails because there exists "no textual support in GBL § 349 for a limitation on the definition of 'consumer' based on use." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 171 N.E.3d 1192, 1197 (N.Y. 2021).
    - o Vermont's consumer statute "give[s] businesses the same rights as other consumers" to pursue private rights of action.
    - o Rhode Island and Virginia law also afford Plaintiffs a private right of action since Plaintiffs are consumers when applying a "commonsense understanding of the word that encompasse[s] activities like purchasing and utilizing commercial goods or services." *Laccinole v. Navient Sols., LLC*, 589 F. Supp. 3d 261, 269 (D.R.I. 2022).
- <u>The 'safe harbor' provisions do not apply to conduct not specially regulated.</u>
    - o "[S]afe harbor 'does not apply when a defendant's conduct is governed in some respects by a state or federal agency, but the specific conduct at issue is not within the scope of the agency's authority.'" *Salmon v. CRST Expedited, Inc.*, 2015 WL 1395237, at *6 (citing *Conatzer v. Am. Mercury Ins. Co., Inc.*, 15 P.3d 1252, 1255 (Okla. Civ. App. 2000)).
- <u>Consumer statutory claims are not subject to heightened pleading standards.</u>
    - o None of Plaintiffs' claims "sound in fraud" since they are not "premised on a fraudulent course of conduct." *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 768–769 (C.D. Ill. 2020) (citation and internal quotation marks omitted). Courts in MDL cases like this reject PowerSchool's argument time and time again. *See id*. at 769 ("[C]ourts have held that similar complaints alleging fraud and deceptive practices in federal court should be judged under Rule 8(a) and not the particularity requirement for fraud under Rule 9(b)." (collecting cases)); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]here fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b).").
- <u>The allegations show a sufficiently unlawful, unconscionable, or unfair course of conduct where they must.</u>
    - o Not all state consumer statutes require these elements as PowerSchool suggests. But, where they do, Plaintiffs allegations' suffice. *See, e.g.*, DAC ¶495 (explaining how PowerSchool took "advantage of School Districts' limited financial resources and their need for a comprehensive online system to organize the personal information of students and employees" in addition to committing other specified acts that "were offensive to public policy, and were immoral, unethical, and

oppressive."); ¶¶1090, 1093 (detailing how PowerSchool's "false, deceptive, and misleading business practices" were both procedurally and substantively unconscionable); ¶632 ("PowerSchool's unfair and deceptive conduct was unlawful and in direct violation of Section 5 of the FTC Act.").

- o  Regardless, courts frequently reject dismissal arguments on this basis. *See, e.g.*, *City of Charleston, S.C. v. Hotels.com, LP*, 520 F. Supp. 2d 757, 775 (D.S.C. 2007) (finding that allegations of defendant's "practice of collecting from consumers a higher tax than [defendants] intended to remit, thereby wrongfully denying the municipalities of their tax revenues" was "sufficiently unfair and deceptive to satisfy the liberal pleading requirements of Rule 12(b)(6)"); *Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 789, 798 (E.D. Tenn. 2009) ("[W]hether a specific representation in a particular case is 'unfair' or 'deceptive' is a question of fact.").

## VII. DATA BREACH NOTIFICATION STATUTES

*(NH, VA, WA)*

### A. Governing Standard

- Notification must be made without unreasonable delay

### B. Unreasonable Delay Adequately Alleged

**Facts:**

- Some districts not notified until August 2025
- Breach affected 62.4 million students
- Delay prevented mitigation and protection

**Conclusion:** Reasonableness is a fact question.

## VIII. CFAA / CDAFA

*(Counts 4 & 5)*

### A. Governing Rule

- Liability exists for exceeding authorized access

### B. Unauthorized Access Adequately Alleged

**Application:**

- "Backdoor Access Tool" provided unrestricted access
- Use exceeded contractual authorization

- Authorization was obtained through misrepresentations
- Data monetization exceeded permitted purposes

## IX. RELIEF REQUESTED

1. Deny PowerSchool's Motion to Dismiss in its entirety
2. Alternatively:
     - Grant leave to amend
     - Permit discovery on matters within PowerSchool's exclusive control

## Track Two School District Direct Action Plaintiffs'

## Opposition Outline to Bain Capital's Motion to Dismiss

### I. PERSONAL JURISDICTION

### A. Governing Legal Standard

1. Specific jurisdiction requires:
   - o (1) Purposeful availment or direction
   - o (2) Claims arising out of or relating to forum-related conduct
   - o (3) Reasonableness
2. Alter egos are treated as a single entity for jurisdictional purposes
3. Once purposeful availment is established, jurisdiction is presumptively reasonable
4. Prima facie showing of jurisdictional facts suffices to establish jurisdiction, and Court assumes truth of Plaintiff's allegations.

### B. Purposeful Availment

**Rule**: A defendant purposefully avails itself of the forum by, among other things, directing agents or controlled entities to take action there, including without limitation by negotiating or entering a contractual relationship, and a variety of other activities in myriad contexts and involving various degrees of engagement with the underlying jurisdiction.

**Application**:

1. Bain exercised direct control over PowerSchool's operations during merger negotiations beginning at least as early as June 2024
2. Bain directed August 13, 2024 mass layoffs eliminating ~175 California employees and gutting entire CA departments
3. Bain's control preceded and continued after October 1, 2024 acquisition
4. A corporation purposefully avails itself by directing agents to act in the forum

**Conclusion:** Bain deliberately injected itself into California.

### C. Claims Arise From Forum-Related Conduct

**Rule:** "But for" test applies.

**Application:**

1. Bain-directed workforce reductions weakened cybersecurity
2. First unauthorized access occurred three days after Bain's layoff order
3. Data Breach occurred December 2024 while Bain owned PowerSchool
4. Alter ego doctrine requires imputation of PowerSchool's forum contacts to Bain

**D. Reasonableness**

1. Once availment shown, Bain bears burden to show unreasonableness, which it fails utterly to sustain and could not plausibly satisfy
2. This MDL is the exclusive forum
3. California's interest in protecting student data is compelling
4. Bain's factor analysis is conclusory and insufficient

**E. Alternative Relief**

- Even assuming, *arguendo*, that Court were to determine that jurisdiction is not sufficiently pled, the appropriate course in lieu of dismissal would be to allow Plaintiffs to undertake  limited jurisdictional discovery

## II. ALTER EGO LIABILITY

**A. Governing Rule**

1. Alter ego requires:
    - Unity of interest and Ownership or equitable control and
    - Inequitable result
2. In deciding to hold a parent company liable for the acts of its subsidiary under the alter ego doctrine, courts look to the following factors under the first question:
- Commingling of funds and other assets of the two entities
- The holding out by one entity that it is liable for the debts of the other
- Identical equitable ownership in the two entities
- Use of the same offices and employees
- Use of one as a mere shell or conduit for the affairs of the other
- Inadequate capitalization
- Disregard of corporate formalities
- Lack of segregation of corporate records, and identical directors and officers

No single factor is required; Two or three factors may suffice at Rule 12.  Alter ego determinations are fact-intensive and rarely resolved on dismissal

3. Additionally, in terms of inequitable result:
    - Doctrine exists to prevent injustice
    - Fraud is not required
    - Undercapitalization and risk shifting may establish inequity

**B. Ownership / Control Adequately Alleged**

**Application:**

1. Merger Agreement finalized June 6, 2024
2. Bain exercised strategic and operational control prior to closing

92

    a.   August 13, 2024 — Bain orders mass layoffs
3. Cost-cutting and control continued post-October 1, 2024
4. Breach occurred December 20, 2024 — after Bain became owner
5. Self-dealing
    1. Offshoring to benefit another Bain-owned company
6. Undercapitalization
    1. Bain saddled PowerSchool with acquisition debt
    2. Financial engineering prioritized short-term extraction over security
    3. Under California law, undercapitalization can independently support alter ego liability

**Key Point:**
The Defendants do not allege control began prior to October 1 and intensified after October 1.

**C. Inequitable Result Adequately Alleged**

**Application:**

1. Bain extracted substantial value from PowerSchool
2. Bain imposed debt and cost-cutting measures
3. Bain left PowerSchool undercapitalized and underinsured
4. Allowing Bain to escape liability would permit it to profit from misconduct

**Conclusion:**
Recognizing the corporate fiction here would promote injustice.

**D. Alternative Relief**

- If Court determined that alter ego was not sufficiently pled, the appropriate course in lieu of dismissal would be to allow Plaintiffs to undertake  limited discovery on the issue of alter ego and/or if the Court believes potential liability exists under agency theory to allow leave to amend to plead agency.

**V. INTENTIONAL INTERFERENCE WITH CONTRACT**

**A. Elements**

1. Existence of valid contracts
2. Bain's knowledge of those contracts
3. Intentional acts designed to induce breach

    a. A defendant's acts are intentional if the defendant, in committing those acts, either desired to bring about the harm to the plaintiff (the breach of the contract by the other party) or knew that such a result was substantially certain to be produced by those acts.

4. Improper conduct

a. An action is improper if the conduct is contrary to law—such as violations of statutes, regulations, or recognized common-law rules—or the violation of an established standard of a trade or profession.

5. Resulting breach and damages

## B. Intent Adequately Alleged

**Rule:**
Intent exists where defendant knew breach was substantially certain — malice not required.

**Application:**

1. Bain knew of PowerSchool's contractual cybersecurity obligations
2. Bain deliberately reduced cybersecurity staffing and spending
3. Bain need not desire breach — only knowingly created conditions making breach likely

## C. Improper Means Adequately Alleged

**Rule:**
Conduct is improper if it violates law or established industry standards.

**Application:**

1. Bain's directives violated established cybersecurity standards
2. Bain ignored known vulnerabilities
3. Bain engaged in self-dealing offshoring
4. Profit motive does not justify undermining contractual duties

## D. Causation Adequately Alleged

1. Data breach enabled by compromised offshore contractor credentials
2. Offshore contractor role was product of Bain's directives
3. Plausible causal chain easily satisfies Rule 12

## VI. RELIEF REQUESTED

1. Deny Bain's Motion to Dismiss in its entirety
2. Alternatively:
   - Permit alter ego discovery
   - Permit jurisdictional discovery
   - Grant leave to amend

**Track Two School District Direct Action Plaintiffs'**

**Opposition Outline to Movate's Motion to Dismiss**

## I. PERSONAL JURISDICTION

### A. Governing Legal Standards

1. Specific jurisdiction requires:
    - (1) Purposeful direction or availment
    - (2) Claims arising out of forum-related activities
    - (3) Reasonableness
2. Once purposeful availment is shown, jurisdiction is presumptively reasonable
    - Burden shifts to defendant to make a "compelling case" of unreasonableness

### B. Purposeful Direction (Calder Effects Test)

**Rule:** Jurisdiction is present when a defendant purposefully directs conduct at forum when it commits intentional acts expressly aimed at forum causing foreseeable harm there.

**Application:**

1. Intentional Acts
    - Movate intentionally contracted with California-based PowerSchool
    - Movate intentionally accessed systems and data located in California
    - Movate intentionally exercised control over California-stored PII
2. Express Aiming
    - Contractual relationship centered on California company and systems
    - Continuous technical access to California SIS infrastructure
3. Foreseeable Harm
    - Movate knew PowerSchool was California-based
    - Movate knew it serviced California school districts
    - Movate knew education PII is a known, high-value cyber target

**Conclusion:** Purposeful direction is adequately alleged.

### C. Purposeful Availment (Independent Basis)

**Rule:** Purposeful availment exists where defendant deliberately engages in significant activities within forum or creates continuing obligations there.

**Application:**

1. Ongoing, long-term technical support contract with California company

95

2. Persistent access to and control over Plaintiffs' data
3. "Unfettered" administrative-level system access

**Conclusion:** Movate deliberately availed itself of California.

## D. Claims Arise From Forum-Related Conduct

**Rule:** "But for" test applies.

**Application:**

1. But for Movate's credential security failures, breach would not have occurred
2. Breach flowed directly through Movate employee credentials
3. Injuries arose from Movate's performance of its California-centered contract

## E. Actual California Presence (Undermines Movate's Premise)

1. San Jose, California office listed by Movate
2. Registered to do business in California since 2000
3. Maintains California agent for service of process

## F. Reasonableness

1. California has compelling interest in protecting student data
2. Movate fails to meet "compelling case" standard
3. Burden arguments insufficient as a matter of law

## G. Alternative Relief

- If allegations deemed insufficient: Plaintiffs request limited jurisdictional discovery

## II. NEGLIGENCE — DUTY OF CARE (COUNT 8)

### A. Governing Principles

1. Duty exists where:
   - Harm is foreseeable **and**
   - Defendant is in best position to prevent it **and/or**
   - Defendant assumes control over sensitive information
2. Vendors entrusted with sensitive PII routinely owe duty under common law

### B. Sources of Duty Alleged (Multiple, Independent Bases)

1. Foreseeability
   - Known risks of credential compromise
   - Known targeting of education systems

96

    2. Special Relationship
- Movate took possession and control of highly sensitive student data
- Had full administrative credential access
- Movate assumed trusted role in data-security architecture

    3. Industry Standards & Regulations
- Applicable to data processors (not privately enforced—but probative of duty)

    4. Contractual Role as Sub-Processor
- Independent of privity with Plaintiffs

## C. Overwhelming Authority Recognizes Duty

- Courts across IL, PA, NY, NH, TN recognize common-law duty to safeguard data
- Movate's "no duty exists" argument has been expressly rejected

## D. Distinguishing Movate's Authorities

1. This is **not** a case of passive data possession
2. Movate knew:
   - MFA absence was critical vulnerability
   - Admin credentials are prime attack vectors
3. Knowledge + control = duty

## E. Criminal Acts Do Not Negate Duty

- Intervening criminal conduct does not eliminate duty where negligence created the risk

## III. NEGLIGENCE — BREACH

## A. Governing Standard

- Breach exists where defendant fails to act reasonably under known risks

## B. Movate's Independent Breaches (System-Agnostic)

Movate failed to:

1. Secure employee credentials
2. Train employees on credential security
3. Rotate credentials
4. Apply least-privilege access
5. Implement MFA on Movate-controlled accounts
6. Monitor credential usage

**Key Point:** Liability rests on Movate's own security failures—not PowerSchool's configuration.

## C. "No Control" Argument Fails

97

1. Control over PowerSchool systems is not required
2. Movate controlled:
    o   Its employees
    o   Its credentials
    o   Its access policies
3. Contract required reasonable security practices

### D. Criminal Acts Do Not Break Causation

- Hackers exploited conditions created by Movate's negligence

## IV. NEGLIGENT HIRING, TRAINING, SUPERVISION & RETENTION (COUNT 9)

### A. Governing Rule

- Negligent supervision is analyzed like ordinary negligence
- No "propensity" showing required at pleading stage

### B. Specific Failures Adequately Alleged

1. Failure to train on password security
2. Failure to enforce credential hygiene
3. Failure to restrict access based on role
4. Failure was substantial factor in breach

### C. Movate's Pleading Standard Is Wrong

1. "Equally plausible" does not warrant dismissal
2. Plaintiffs need only plead plausibility—not eliminate alternatives
3. Movate cites cases involving isolated, unforeseeable criminal or defamatory acts by individual workers of the defendants

## V. BREACH OF CONTRACT — THIRD-PARTY BENEFICIARY (COUNT 10)

### A. Choice of Law Not Resolved at Pleading Stage

1. No substantial relationship to New York
2. Enforcement subject to California conflicts analysis
3. Plaintiffs entitled to alternative briefing if needed

### B. Express Language Confers Beneficiary Status

**Rule:** Express intent controls.

**Contractual Provisions:**

98

1. DPA § 5.5 — Movate's services performed **"for PowerSchool Customer's . . . benefit"**
2. Data ownership vested in School Districts
3. Notification and cooperation duties run directly to data subjects
4. DPA supersedes GSA in event of conflict

**Conclusion:** Plaintiffs are not incidental beneficiaries—they are the protected class.

### C. "Information and Belief" Pleading Is Proper

1. Contract was in Movate's exclusive possession
2. Movate confirmed allegations by attaching agreement to motion

## VI. DUPLICATIVE TORT / CONTRACT CLAIMS

### A. Substantive Law Permits Concurrent Claims

- Independent tort duties may coexist with contract duties

### B. Federal Rules Control at Pleading Stage

- FRCP 8(d)(2) expressly permits alternative and overlapping claims

### C. Duties Are Independent

- Negligence duties arise from:
  - Foreseeability
  - Control over data
  - Industry standards
    —not solely from contract

## VII. CAUSATION (ALL CLAIMS)

### A. Governing Standard

- Plaintiffs must plausibly allege substantial factor causation

### B. Causation Is Direct

1. Breach occurred through Movate employee credentials
2. Credentials provided administrative access
3. Hackers used those credentials to exfiltrate data

**Conclusion:** Causal chain is direct, foreseeable, and uninterrupted.

## VIII. RELIEF REQUESTED

1. Deny Movate's Motion to Dismiss in its entirety
2. Alternatively, grant leave to amend
3. If jurisdiction questioned, allow limited jurisdictional discovery