UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION.** | ) Case No.:  25-md-03149-BEN-MSB )<br>)<br>) **ORDER GRANTING IN PART AND** ) **DENYING IN PART DEFENDANT** ) **BAIN CAPITAL'S MOTION TO** ) **DISMISS (TRACK 1)** )<br>) [Dkt. 286] |

## I. INTRODUCTION

This multidistrict litigation arises from a data breach involving Defendants PowerSchool Holdings, Inc. and PowerSchool Group, LLC (collectively, "PowerSchool").  PowerSchool provides cloud-based data management software for students and educators for K-12 students and educators and stores sensitive student medical, academic, and other personally identifiable information in a searchable format. Defendant Bain Capital ("Bain") is an investment firm that acquired a 51-percent majority ownership stake in PowerSchool.  Plaintiffs allege that Bain implemented data-management changes that compromised cybersecurity protections, contributing to a breach that exposed the personal information of approximately 50 million individuals.

Bain moves to dismiss all claims against it.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Bain's motion.

-1-

## II. BACKGROUND[1]

Bain initiated merger and acquisition discussions with PowerSchool, a Sacramento-based provider of educational software, in August 2022.  *See* Consolidated Individual Users Class Action Complaint, Dkt. 259 ("MC") at ¶¶ 14, 50, 71.  Schools and school-district customers provide PowerSchool with sensitive personally identifiable information ("PII"), which PowerSchool stores and maintains.  (*Id.* ¶¶ 54, 56, 897.)

In early 2024, during merger negotiations, PowerSchool announced plans to offshore its cybersecurity and IT functions.  (*Id.* ¶¶ 72–74, 80, 90.)  In January 2024, under Bain's direction, the company expanded its cybersecurity operations to India.  (*Id.* ¶ 73.)  By March 2024, PowerSchool began reducing its workforce.  (*Id.* ¶¶ 73–74, 81–84, 101–02.)

On June 6, 2024, Bain agreed to acquire majority ownership of PowerSchool.  The Merger Agreement granted Bain contractual consent rights over capital expenditures exceeding $5 million, material vendor contracts, and major workforce changes.  (*Id.* ¶¶ 85[2]–86.)  The agreement recognized data security as a material aspect of PowerSchool's business, included data-protection obligations, and stated that neither party controlled the other's operations before closing.  (*Id.* ¶¶ 96–98.)

Unauthorized system access began in August 2024, and data exfiltration occurred on September 4, 2024.  (*Id.* ¶¶ 125, 134, 136.)  The merger closed on October 1, 2024,

---

[1] *See Retail Prop. Trust v. United Bhd. Of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), the following facts are drawn from the Consolidated Master Complaint ("MC") (Dkt. 259) and are accepted as true for purposes of this motion.

[2] "Bain's strategic discussions and business planning with PowerSchool culminated in a Merger Agreement signed on June 6, 2024.  From that point forward, PowerSchool was required to consult Bain Capital prior to making any changes to operational, cybersecurity, and financial decisions, such as restrictions on hiring, engaging, or terminating any 'current or former director, officer, employee, or individual independent contractor' above a certain base compensation, as well as restriction on incurring capital expenses above a certain amount.  Furthermore, Bain secured veto rights before the merger officially closed on October 1, 2024, granting Bain strategic control over PowerSchool's key decisions months in advance. As a result, Bain began shaping the company's operations longer before December 2024 data breach. . . ."

25-md-03149-BEN-MSB

when Bain replaced PowerSchool's board and assumed operational control.  (*Id.* ¶¶ 85, 91–92.)

Following the acquisition, Bain directed PowerSchool to offshore cybersecurity, engineering, and IT functions to contractors, including Movate.  (*Id.* ¶¶ 79–80, 106, 108, 110, 163.)  This offshoring required data-management tools that enabled vendors to bypass consent protocols and access protected school district computers directly.  (*Id.* ¶¶ 197, 201, 998.)

On December 20, 2024, the criminal group ShinyHunters used stolen Movate employee credentials to access PowerSchool's student information system through its PowerSource portal.  (*Id.* ¶¶ 10, 21, 25, 127.)  PowerSchool discovered the breach on December 28, 2024, and notified customers on January 7, 2025.  (*Id.* ¶¶ 122–23.)  The breach compromised approximately 50 million individuals' data, including social security numbers, medical information, financial information, addresses, disability records, and custody information.  (*Id.* ¶¶ 1–2, 10, 122–23, 143, 197, 998.)

**III. APPLICABLE LAW**

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.   If the plaintiff's explanation is plausible, the complaint survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation.  *Id.* [3]  Thus, a "Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not . . . resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses."  *W. Ins. Co. v. Frontier Homes,*

[3] *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.")

-3-

*LLC*, No. EDCV 17-2181-R 2018 WL 8220544, at *2 (C.D. Cal. Mar. 27, 2018) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).  Rule 9(b) requires fraud or mistake claims to be pleaded "with particularity," including statutory consumer protection claims based on alleged deception.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009).

Plaintiffs contend that determining the applicable is premature at this stage, as it requires a detailed analysis that is more appropriate for later stages of litigation when both parties can present relevant evidence.  *In re Accellion, Inc. Data Breach Litig.*, No. 21-cv-01155-EJD 2024 WL 4592367, at *2 (N.D. Cal. Oct. 28, 2024).

## IV. DISCUSSION

Bain seeks dismissal on multiple grounds: lack of Article III standing, lack of personal jurisdiction, and failure to state a claim under Rule 12(b)(6).  The Court addresses each in turn.

### A. Article III Standing

Bain Capital urges dismissal asserting that the plaintiffs lack Article III standing.  "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold [*sic*] requirement imposed by Article III of the Constitution by alleging an actual case or controversy."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  Article III standing requires plausible allegations that: (1) the plaintiff suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the defendant; and (3) a favorable decision would likely redress the injury.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000).

Both sides agree this is the standard.  Instead, the parties disagree about the nature and qualities of an injury-in-fact in a data breach case and what court decisions guide the decision-making.  These issues are discussed and addressed at length in the companion Order deciding Powerschool Holdings, Inc.'s and Powerschool Group, LLC's Motion to Dismiss and that reasoning is adopted here.  Consistent therewith, Plaintiffs have at this

point in the litigation plausibly alleged facts demonstrating all of the standing requirements of Article III and compensable damages to proceed to class certification and summary judgment.

## B. Personal Jurisdiction Over Bain

Bain moves to dismiss for lack of personal jurisdiction, arguing that Plaintiffs fail to allege sufficient minimum contacts with California.  The Court holds that it may exercise specific personal jurisdiction over Bain.

Courts in the Ninth Circuit evaluate three factors when determining whether to exercise specific personal jurisdiction:

> (1) whether [the defendant] has either purposefully (a) directed its activities towards California or initiated a transaction with a California resident or (b) availed itself of the privileges and benefits of California permitting it to benefit from the protections of California laws; (2) whether [plaintiff's] claims arise out of [defendant's] activities related to California; and (3) whether the assertion of jurisdiction by the [district court] is reasonable and comports with fair play and substantial justice.

*Glob'l Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020).  The Court addresses each factor below, preceded by a threshold question concerning the non-California transferor courts.

### 1. Non-California Transferor Courts

Bain argues that Plaintiffs have failed to establish personal jurisdiction in the non-California transferor courts from which actions were transferred to this MDL.  In MDL proceedings, personal jurisdiction over a defendant "must exist in the district where [the action] is filed" because the transferee court's jurisdiction derives from and is coextensive with that of the transferor courts.  *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379–80 (J.P.M.L. 2020).  The Complaint contains no allegations that Bain has independent minimum contacts with Connecticut, Illinois, Michigan, Minnesota, Missouri, New York, or North Carolina.

-5-

Plaintiffs respond by alleging that PowerSchool acted as Bain's agent, whose contacts may be imputed to Bain. (Dkt. 259 ¶¶ 38, 40.) Under Ninth Circuit law, "[w]here one corporation is controlled by another, the former acts not for itself but as directed by the latter, the same as an agent, and the principal is liable for the acts of its agent within the scope of the agent's authority." *Pac. Can Co. v. Hewes*, 95 F.2d 42, 46 (9th Cir. 1938). While "[t]he existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction," contacts may be imputed where a true agency relationship is established. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).

As discussed *infra.*, the Court holds that Plaintiffs have adequately alleged an agency relationship between Bain and PowerSchool at the pleading stage. The complaint alleges that Bain exercised control over PowerSchool's key strategic decisions—including cybersecurity operations, workforce decisions, and capital expenditures—both before and after the merger closed. (Dkt. 259 ¶¶ 38, 40, 73, 85-86, 90, 103-08.) PowerSchool, as "the leading provider of cloud-based software for K-12 education in the United States" serving over 18,000 customers across North American (*Id.* at ¶¶ 49–58), has substantial contacts with each of the non-California transferor states. Taking Plaintiffs' agency allegations as true, as the Court does at this stage, PowerSchool's contacts with the transferor states may be imputed to Bain for jurisdictional purposes. *See Ranza*, 793 F.3d at 1070-71.

Bain's motion to dismiss for lack of personal jurisdiction as to Plaintiffs who filed in non-California transferor courts is **DENIED**.

### 2. Purposeful Availment

Plaintiffs allege that Bain purposefully directed its activities toward California and availed itself of the benefits and protections of California law. The allegations support this conclusion on two independent grounds: merger-related contacts and operational control.

**Merger Contacts**.  Bain approached PowerSchool—a California-headquartered company—about a business merger in August 2022.  (Dkt. 259 at ¶ 14.)  Negotiations intensified in early 2024 and continued for four months, culminating in the June 6, 2024, execution of the Merger Agreement.  (*Id.* ¶¶ 71, 85.)  These negotiations involved multiple meetings and communications, at least some of which occurred in California, as described in PowerSchool's preliminary proxy statement incorporated by reference into the Complaint.[4]

**Operational Control**.  Beyond the merger negotiations, Plaintiffs allege that Bain directed activities to California by exerting control over PowerSchool's operations.  In January 2024, Bain directed PowerSchool's operations to expand outsourcing to India and implement cost-cutting measures affecting cybersecurity staff, including layoffs as part of its offshore expansion.  (Dkt. 259 ¶¶ 73, 81, 101–08.)  In October 2024, immediately after the merger closed, Bain replaced PowerSchool's entire board of directors.  (*Id.* ¶ 91.)  Throughout this period, Bain failed to assess the data-breach risks associated with the offshore expansion it was directing.  (*Id.* ¶ 99.)  As the Supreme Court has held, "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."  *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014).  That is what Plaintiffs allege here.

Bain contends that it cannot be subject to jurisdiction based on conduct predating its October 1, 2024, acquisition. This argument fails for two reasons.  First, purposeful availment does not require formal ownership; it requires purposeful direction of activities toward the forum.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Bain's two-year course of merger negotiations with a California-headquartered company, culminating in the June 6, 2024, Merger Agreement, constitutes purposeful direction toward California irrespective of when formal ownership transferred.

---

[4] *See* Id. ¶ 14 & n.38 (citing PowerSchool's July 23, 2024, preliminary proxy statement.)

Second, Plaintiffs allege that the Merger Agreement granted Bain "de facto operational control" over PowerSchool during the interim period, including consent rights over capital expenditures, material vendor contracts, and headcount changes. (Dkt. 259 ¶¶ 85–86.) These contractual rights—exercised over a California company—further support purposeful availment independently. Moreover, while unauthorized data access may have first occurred in August 2024, the Data Breach continued through December 2024, after Bain's acquisition closed. (MC ¶¶ 125, 134–35.) Bain's post-acquisition conduct in California thus independently supports jurisdiction.

Bain's reliance on *Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017), is misplaced. In *Williams*, the plaintiff relied solely on the subsidiary's activities to establish jurisdiction over the parent company. (*Id.* at 1022–25.) Here, by contrast, Plaintiffs allege Bain's own California-related activities: conducting merger negotiations with a California-based company, obtaining contractual control rights over that company during the interim period, and exerting control over that company's California operations after the acquisition closed. Plaintiffs have adequately alleged purposeful availment.

### 3. Relatedness

Courts in the Ninth Circuit apply a "but for" test to determine whether claims arise out of forum-related activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Under this test, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008); *accord Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

Bain argues that its merger negotiations are too attenuated from a cyberattack perpetrated by third-party hackers to satisfy the relatedness requirement. The Court disagrees. The Ninth Circuit's "but for" test is deliberately broad, requiring only that the claim would not have arisen "but for" the defendant's forum contacts. *Ballard*, 65 F.3d at 1500. Plaintiffs do not allege that Bain committed the cyberattack. Rather, they allege that Bain's California-directed decisions—including directing PowerSchool to offshore

cybersecurity functions, implementing cost-cutting measures that reduced IT staff, and failing to assess data-breach risks—created the vulnerabilities that the hackers exploited. (Dkt. 259 ¶¶ 73, 81, 99, 101–15.)  These decisions that Plaintiffs allege made the Data Breach possible.  The intervening criminal act does not break the causal chain for purposes of specific jurisdiction when the defendant's own form-directed conduct created the conditions that the third party exploited.[5]  *See Dudnikov*, 514 F.3d at 1078.

Bain's reliance on *Walsh v. LG Chem Ltd.*, 834 Fed. App'x 310 (9th Cir. 2020), is unavailing.  In *Walsh*, the plaintiff alleged only that the defendant marketed its product in the United States generally—not in the forum state—and the court accordingly found no "direct nexus between his injuries and [defendant's] purported [forum] contacts." *Id.* at 311–12.  Here, Plaintiffs allege specific, California-directed conduct by Bain that weakened PowerSchool's data security and proximately caused the Data Breach.  The distinction is dispositive.

### 4. Reasonableness

Once purposeful availment and relatedness have been established, the forum's exercise of jurisdiction is presumptively reasonable, and the burden shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802.  Courts consider seven factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993).

---

[5] *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1078 (10th Cir. 2008)(citing *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003)) ("any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction."); *see also, e.g., In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 702 (C.D. Cal. 2022) ("'[C]ourts must give real consideration to claims that "relate to" the defendant's forum contacts,' even if those contacts are not the 'but for' cause of the dispute.").

-9-

Bain has not met its burden.  The Court considers each factor.

**Purposeful Interjection**.  Bain's interjection into California is extensive: it negotiated a multi-billion-dollar acquisition of a California-headquartered company over two years, obtained contractual control rights during the interim period, and directed that company's operations after closing.  This factor weighs in favor of jurisdiction.

**Burden on Defendant**.  A defendant asserting that litigation in the forum would be burdensome must offer more than conclusory assertions.  Bain states that its burden is "high" but identifies no supporting facts.  Bain is a sophisticated investment firm managing $185 billion in assets with counsel admitted in this district.  (Dkt. 256 ¶¶ 66–70.)  This factor weighs in favor of jurisdiction.

**Sovereignty Conflict**.  Bain fails to demonstrate how litigating in California would conflict with the sovereignty of Massachusetts or Delaware, its state of incorporation.  This factor is neutral.

**Forum State Interest**.  California's interest in this litigation is substantial: PowerSchool is headquartered here, California residents' data was compromised, and California Plaintiffs seek relief under California law.  This factor weighs in favor of jurisdiction.

**Efficient Resolution**.  The JPML's consolidation of this MDL in this District confirms that California promotes efficient judicial resolution.  *See In re PowerSch. Holdings, Inc.*, 780 F. Supp. 3d 1352, 1355 (J.P.M.L. 2025).[6]  This factor weighs in favor of jurisdiction.

**Convenient and Effective Relief**.  California is important to Plaintiffs' interests because PowerSchool is headquartered here and relevant documents and witnesses are likely located here.  This factor weighs in favor of jurisdiction.

---

[6] *Id*. ("Centralization in [the Southern District of California] encourages the efficient coordination of state and federal proceedings.").

**Alternative Forum**.  While Massachusetts or Delaware might serve as alternative forums, the existence of an alternative forum does not render California unreasonable when all other factors support jurisdiction.  This factor is neutral at best for Bain.

Six of the seven factors weigh in favor of exercising jurisdiction.  Bain has not presented a "compelling case" that jurisdiction would be unreasonable.[7]

Bain's motion to dismiss for lack of personal jurisdiction is **DENIED**.

**C. Theories of Liability**

Before turning to Plaintiffs' substantive claims, the Court addresses the three theories of liability that Plaintiffs assert against Bain—agency, direct liability, and aiding and abetting—because these theories underpin several of the claims analyzed below.[8, 9]

### 1. Agency Liability

Ninth Circuit courts apply common law agency principles from the Restatement (Third) of Agency.  *See Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017).  An actual agency relationship requires "(1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking." *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009); *See also* Restatement (Third) of Agency § 1.01.

When assessing whether a principal has sufficient authority to control an agent's actions, the Ninth Circuit considers the following non-exhaustive factors:

> 1) the control exerted by the employer, 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the

---

[7] *See Schwarzenegger*, 374 F.3d at 802 "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."

[8] The theories of liability discussed here also inform the personal jurisdiction analysis in Part IV.B.1, as well as the negligence, CCPA, UCL, and unjust-enrichment claims addressed in Parts IV.D—G

[9] (*See* Opp. at 15; Reply at 4.) Plaintiffs originally alleged alter ego liability against Bain but have since abandoned that theory. The Court therefore does not address alter ego.

-11-

employer supplies tools and instrumentalities, 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business.

*United States v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010); *see also* Restatement (Third) of Agency § 7.07(f).

Here, Plaintiffs allege that Bain "ratified and conditioned its offer on cost reduction measures" and PowerSchool assented by agreeing to these measures. (Dkt. 259 at ¶¶ 73, 80, 90.) Bain obtained "strategic control over PowerSchool's key decisions" through the Merger Agreement. (Id. ¶¶ 73, 90, 103–08.) These decisions—mass IT layoffs and offshoring—allegedly left to the breach. (Id. ¶¶ 116–20.)[10] Taken together, these allegations satisfy the agency framework: Bain manifested that PowerSchool should act on its behalf by conditioning the merger on cost-reduction measures; PowerSchool accepted the undertaking by implementing those measures; and the Merger Agreement reflects an understanding that Bain would control the undertaking.

The Merger Agreement's disclaimer of control does not compel a different result at this stage. This disclaimer is subject to "all other terms" that allegedly allowed Bain to control key operations. Plaintiffs allege that Bain directed specific activities beyond general supervision, including offshoring decisions that led to the hiring of Movate. (MC ¶¶ 73, 90, 103–08.) Because Plaintiffs plausibly allege an agency relationship, Bain's motion to dismiss as to the agency theory is **DENIED**.

### 2. Direct Liability

A shareholder—whether a natural person or a corporation—"may be liable on the ground that such shareholder's activity resulted in the liability." *United States v. Bestfoods*, 524 U.S. 51, 65 (1998) (citation omitted). The Ninth Circuit has recognized

---

[10] *See, e.g.*, MC §§ D–J, ¶¶ 14–19, 37–41, 71–74, 81–86, 99–100 (Plaintiffs plausibly identify Bain's specific actions, including directing layoffs of U.S.-based IT staff, outsourcing cybersecurity to the Philippines, and failing to prevent contractors like Movate's employees from having unencrypted access to the PowerSchool database, which allegedly allowed the Data Breach to occur).

-12-

that direct liability may attach where a parent company engages in "day-to-day activities" that "might well be properly characterized as inconsistent with the parent corporation's investor status[.]" *Harris Rutsky & Co. Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).  The question, is whether Bain's conduct went beyond what an ordinary investor would do.

The Complaint describes conduct that did.  Before the merger, Bain exercised control through contractual veto rights and workforce directives; after the merger, Bain assumed formal control and replaced the board.  (Dkt. 259 ¶¶ 93, 107–08.)  Through this control, Bain allegedly dictated PowerSchool's daily operations, including the cost-cutting measures that dismantled the company's cybersecurity infrastructure and led to the Data Breach. (*Id.*)  Bain directed layoffs of at least 5% of PowerSchool's workforce, including critical domestic IT staff, and shifted this labor overseas to Defendant Movate in the Philippines—at the expense of adequate staffing and funding for data security obligations.  (*Id.* ¶ 101.) These cost-cutting measures resulted in decreased cybersecurity practices, including the offshoring of labor with access to Plaintiffs' sensitive PII, which ultimately enabled hackers to infiltrate PowerSchool's systems and exfiltrate data. (*Id.* ¶¶ 101–08.)

These allegations, if proven, would establish that Bain's day-to-day involvement, operational direction, and cost-cutting activities are inconsistent with mere "investor status." *See Bestfoods*, 524 U.S. at 72.  In *In re Packaged Seafood Products Antitrust Litig.*, the court held that an investor's knowledge of unlawful conduct, combined with its active role in managing its investment, was sufficient to state a direct liability claim.  No. 15-md-02670-JLS-MDD, 2022 WL 836951, at *5 (S.D. Cal. Mar. 21, 2022).  The facts here are similar: at the time of the merger, PowerSchool's CEO announced that he would work "closely with the management at Bain in management and expansion of the company." (Dkt. 259 ¶ 93.)  Plaintiffs plausibly allege that Bain was not a distant equity holder but rather directed PowerSchool's day-to-day activities—including dismantling

-13-

the company's cybersecurity protocols and staff—which allegedly led to the Data Breach.[11]

Bain's motion to dismiss the direct liability theory is **DENIED**.

### 3. Aiding and Abetting

Under California law, a defendant may be held liable for aiding and abetting the tort of another. *See Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879 (2007). "Aiding and abetting" implies "an intentional participation with knowledge of the object to be attained." *Lomita Land & Water Co. v. Robinson*, 154 Cal. 36, 47 (1908); *Upasani v. State Farm Gen. Ins. Co.*, 227 Cal. App. 4th 509, 519 (2014). Under the common law definition,

> [l]iability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

*Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325–26 (1996).[12] A defendant may also be liable as an aider and abettor of a negligent act. *Navarrete v. Meyer*, 237 Cal. App. 4th 1276, 1290 (2015). The UCL specifically recognizes that "liability can be imposed for aiding and abetting a principal violator." *NJOY, LLC v. Imiracle (HK) Ltd.*, 760 F. Supp. 3d 1084, 1110 (S.D. Cal. 2024).

Bain contends Plaintiffs do not sufficiently allege knowledge—that is, that Bain knew PowerSchool would be breaching any alleged duty. The Complaint, however, supports the inference. Plaintiffs allege that Bain studied and became involved with

---

[11] *See In re Packaged Seafood Products Antitrust Litig.*, 2022 WL 836951, at *10 ("[P]articipation in the subsidiary's wrongdoing supports a finding of the parent company's liability.").

[12] *See Cesario v. Biocept, Inc.*, No. 23-cv-1803-WQH-BLM, 2025 WL 525120, at *33 (S.D. Cal. Feb. 18, 2025), aiding and abetting claims sounding in fraud are subject to Rule 9(b)'s heightened pleading standard.

-14-

PowerSchool for two years before the merger, during which time Bain gained familiarity with PowerSchool's data-security practices and obligations. (Dkt. 259 ¶¶ 71–84.) Plaintiffs further allege that, having taken control of PowerSchool, Bain knew of PowerSchool's misrepresentations and omissions regarding weakened cybersecurity, as well as Defendants' duty to protect Plaintiffs' sensitive information.[13] (*Id.* ¶¶ 98–100, 108, 113–15, 185–88, 1033.)[14]

Moreover, Plaintiffs allege that Bain directed PowerSchool to eliminate critical U.S.-based workforce and to outsource these responsibilities offshore to Movate for its own financial gain—conduct that constitutes "substantial assistance" under the aiding-and-abetting framework.[15] These allegations plausibly allege both knowledge and substantial assistance.

Bain's motion to dismiss the aiding-and-abetting claim is **DENIED**.

**C. Negligence Claims**

Turning to Plaintiffs' substantive claims, Bain moves to dismiss the claim that Bain was negligent. Under California law, negligence requires that a "defendant had a

---

[13] Plaintiffs allege that Bain is a tech-focused investor with expertise in digital technology and transformation, which was aware that offshoring on an expedited basis came with significant data security risks for PowerSchool's security system. *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) ("Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person . . . *knows* the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act.") (emphasis added).

[14] For example, Plaintiffs allege that Bain is a tech-focused investor with expertise in digital technology and transformation, which was aware that offshoring on an expedited basis came with significant data security risks for PowerSchool's security systems.

[15] *See Marcelos v. Dominguez*, No. C 08-0056 CW, 2008 WL 2788173, at *10 (N.D. Cal. July 18, 2008) (holding that plaintiff sufficiently alleged knowledge where the entity at issue had an active role in funding the allegedly fraudulent loan); *see also In re First Alliance Mortgage Co.*, 471 F.3d at 995 (quoting *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005)) ("'[O]rdinary business transactions' a bank performs for a customer can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing a specific tort. Knowledge is the crucial element.").

25-md-03149-BEN-MSB

duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021) (citation omitted). "Recovery for negligence depends as a threshold matter on the existence of a legal duty of care." (*Id.*) (citation omitted). Once duty is established, breach and causation are questions of fact for the jury. *Hernandez v. Jensen*, 61 Cal. App. 5th 1056, 1063 (2021).

### 1. Duty

Bain contends that it owed no duty to protect Plaintiffs from harm caused by third-party threat actors and that any such duty belongs to PowerSchool alone. (Dkt. 286 at 39.) The Court rejects this framing. Plaintiffs allege that "PowerSchool and Bain Capital owed a duty of care to take reasonable measures to ensure that the agents and associates they entrusted with Plaintiffs' and Class Members PII . . . implement adequate data security practices to prevent unauthorized third parties access." (Dkt. 259 ¶ 776.) So framed, the duty alleged is not one "'to exercise, in his or her activities, reasonable care for the safety of others'." *Cabral v. Ralphs Grocery Co.* 51 Cal. 4th 764, 768 (2011). It is a duty arising from Defendants' own actions and failures in handling data entrusted to them.

The Complaint supports this characterization. Plaintiffs adequately allege that the risk of harm to their data was foreseeable to both Bain and PowerSchool: both Defendants understood the importance of data security, data breaches are common, and both Defendants could have taken steps to prevent this breach. (Dkt. 259 ¶¶ 1, 9, 32.)[16] Because the risk of harm was foreseeable and both Defendants' own conduct created that

---

[16] Dkt. 259 ¶ 9 (Plaintiffs allege that PowerSchool, among other things, "(1) failed to require a multi-factor authentication procedure to enter its systems; (2) failed to require users to change their passwords; and (3) permitted individuals to access PII despite those individuals not needing access to that PII to do their jobs. PowerSchool also failed to encrypt PII within its system. Had PowerSchool taken just *one* of these basic security measures, the Data Breach could have been easily averted.").

-16-

risk, Plaintiffs plausibly allege that Bain owed a duty of care to protect Plaintiffs' PII data.

### 2. Breach

To sufficiently plead breach, Plaintiffs "must be clear on the relevant standard of care . . . the source of that standard, and what factual allegations show that the duty was breached." *Jasso v. Citizens Telecomm. Co.*, No. 1:06-cv-00393-OWW-DLB, 2007 WL 97036, at *5 (E.D. Cal. Jan. 9, 2007).

Plaintiffs satisfy each component. They identify the standard of care—industry standards for cybersecurity. They identify the source: industry standard safeguards, including multifactor authentication.[17]  And they allege facts showing breach: that Bain had "responsibility, authority, and expertise to ensure that PowerSchool implemented basic, industry-standard safeguards—including requiring all their vendors and employees to use a multifactor authentication" (Dkt. 259 ¶ 114) and failed to do so. These allegations sufficiently state a claim for breach.  *See In re Data Breach Sec. Litig. Against Caesars Ent. Inc.*, 2025 WL 2393024, at *12.

### 3. Causation

Bain argues that Plaintiffs failed to allege causation because the Complaint does not allege that Bain proximately caused the cybersecurity incident.  (Dkt. 286 at 40; Dkt. 361 at 19 n.19.)  At the pleading stage, causation requires only a "logical" connection between the breach and the alleged harm, which can be established through allegations that the "type of information" stolen in a breach "is the same kind needed" to commit fraud or identity theft.  *Stollenwerk v. Tri-West Health Care All.*, 254 Fed. App'x 664, 667 (9th Cir. 2007).  Causation is generally a question of fact for the jury and typically cannot be resolved on a motion to dismiss.  *See Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 650–51 (N.D. Cal. 2020) (quoting *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th

---

[17] Dkt. 259 ¶ 114 (Plaintiffs allege that "Bain holds itself out as a sophisticated, tech-focused investor with the expertise to guide companies through digital transformation.").

Cir. 1981)); *see also In re GEICO Customer Data Breach Litig.*, 691 F. Supp. 3d 624, 632 (E.D. N.Y. Aug. 28, 2023).  The breach need not be the "sole cause" of the identity fraud; it suffices if the breach was a "substantial factor"[18] in bringing about the injury "without which the injury would not have occurred."  *Stollenwerk*, 254 Fed. App'x at 667 (citation omitted).  Under California law, a "defendant [who] had a duty to protect the plaintiff cannot properly constitute a superseding cause that completely relieves the defendant of any responsibility for the plaintiff's injuries."  *Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 725 (2001).[19]

Here, Plaintiffs allege that Bain's decisions to export U.S.-based IT staff, cut costs on cybersecurity, and offshore cybersecurity functions to the Philippines caused Plaintiffs and Class Members harm.  (Dkt. 259 ¶¶ 108–11, 794–96.)  The causal chain is straightforward: Bain directed offshoring and cost-cutting; those decisions weakened PowerSchool's cybersecurity infrastructure; and that weakened infrastructure enabled the breach.  It is reasonably foreseeable that offshoring IT cybersecurity would increase the likelihood of a data breach, and that a threat actor would exploit the resulting vulnerabilities.  The acts or omissions by Defendant Movate and the threat actors do not sever Bain's potential liability because those acts and omissions were themselves foreseeable risks of data breaches and the importance of data security.  (Dkt. 259 ¶ 114.)  Plaintiffs have sufficiently alleged causation, particularly in the absence of MFA requirements and other security measures.

### 4. Damages

---

[18] *Id.*

[19] *See also Henry v. Superior Court*, 160 Cal. App. 4th 440, 449 (2008) ("[A] negligent tortfeasor is generally liable for all damage of which his negligence is a proximate cause . . . [A] tortfeasor may not escape this responsibility simply because another act . . . may also have been a cause of the injury.").

-18-

Bain argues that Plaintiffs' damages are not recoverable because they are "too attenuated" and "not fairly traceable" to Bain's conduct. (Dkt. 286.) Bain relies on *Vavak v. Abbott Lab'y, Inc.*, No. CV 10-01995-SVW-JCX, 2011 WL 13130493 (C.D. Cal. Mar. 7, 2011), where the court dismissed a product liability claim because the plaintiff did not allege purchase of the formula that was part of the recall or that caused the infant's sickness. *Id.* at *5.

*Vavak* is distinguishable. There, the connection between the defendant's product and the plaintiff's injury was absent. Here, Plaintiffs allege that all their data was subject to the Data Breach—a direct connection between Bain's alleged conduct and the resulting harm. Plaintiffs have sufficiently alleged damages to survive a motion to dismiss their negligence claims. The motion to dismiss the negligence claim is **DENIED**.

### 5. Negligence Per Se

Plaintiffs agreed to voluntarily dismiss their standalone negligence per se claims under California, Massachusetts, and Michigan state law because those states do not recognize negligence per se as an independent cause of action. (ECF No. 307.) As a result, only the negligence per se claim based on New York law remains (Count II). The parties also agreed that the substance of Plaintiffs' negligence per se allegations would be incorporated into Plaintiffs' other negligence claim (Count I). (*Id.*; *see* Dkt. 259 ¶¶ 800-827.)[20] Consistent with the parties' agreement, the Court permitted Plaintiffs to maintain

---

[20] *See Dent v. National Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020) (quoting *Johnson v. Honeywell International Inc.*, 101 Cal. Rptr. 3d 726, 731 (Ct. App. 2009)) (recognizing that "negligence per se . . . creates an evidentiary presumption that affects the standard of care in a cause of action for negligence"); *see also In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 580, 639–40 (N.D. Cal. 2024) (allowing negligence per se allegations under the FTC Act, HIPAA, and other statutes to support elements of negligence claim under California law); *Randall v. Michigan High School Athletic Ass'n*, 965 N.W.2d 690, 703 (Mich. Ct. App. 2020) ("When a plaintiff proves that an actor has violated the terms of a statute," the violation serves as "prima facie evidence of negligence."); *Lev v. Beverly Enterprises-Massachusetts, Inc.*, 929 N.E.2d 303, 313

-19-

their negligence per se allegations under the respective state statutes and industry standards as pled within their negligence claim.

Concerning the New York law-based claim, Powerschool argues that the federal statutes Plaintiffs rely on do not provide a basis for a negligence per se claim because the federal statutes do not provide a private cause of action. Reply Mem. in Support of MTD, Dkt. 360 at 21. One court applying New York law found that negligence per se could not be based on federal statutes that do not confer a private right of action such as HIPAA and the FTC. *See Cohen v. Ne. Radiology, P.C.*, No. 20 CV 1202 (VB), 2021 WL 293123, at *7 (S.D.N.Y. Jan. 28, 2021) ("And several New York courts have concluded that neither HIPAA nor the FTC Act can sustain a negligence per se claim."). Other courts applying New York law have come to the opposite conclusion. *See e.g., In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407–08 (E.D. Va. 2020) ("[B]ecause New York law would permit the Plaintiffs to assert a negligence *per se* claim premised on a federal statute and because Plaintiffs have adequately done so here—importing the standard of care from the FTC Act—Plaintiffs have plausibly alleged a claim for negligence *per se* under New York law."). Under New York law, even if a statute does not provide a private cause of action, it may still serve as a predicate for a negligence per se claim. *German by German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1397 (S.D.N.Y. 1995) ("Although a statutory scheme intended for the protection of a particular class does not expressly provide for civil liability, a court may, in furtherance of the statutory purpose, impose negligence *per se,* or even strict liability, for a statutory violation.") (citing *Trimarco v. Klein,* 56 N.Y.2d 98, 107, 436 N.E.2d 502, 506 (1982)).

Because the Court finds that the federal statutes Plaintiffs identify in their Complaint are of the type which would serve as a basis for negligence per se under New

---

(Mass. 2010) ("[T]he violation of a statute, ordinance, regulation, or policy is relevant because it constitutes some evidence of a defendant's negligence.").

-20-

York state law, Bain's motion to dismiss the remaining negligence per se claim (Count II) is **DENIED**.

### 6. Negligent Training and Supervision

To state a claim for negligent training and supervision, Plaintiffs must allege that "an employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit. . . . Negligence liability will be imposed upon the employer if it knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Delfino v. Agilent Tech., Inc.*, 145 Cal. App. 4th 790, 815 (2006). "Liability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability."[21] *Id.*

Here, Plaintiffs allege that Bain exerted control over PowerSchool before and after the merger. (Dkt. 259 ¶¶ 38–40, 71–75, 85–86, 109–13, 127–33, 998.) But Plaintiffs do not plausibly allege that Bain hired or supervised Powerschool's IT employees. Another step removed is the allegation that an employee hired by Defendant Movate was negligently hired or trained by Bain. Bain's authority over PowerSchool may have given it leverage to impose on Powerschool decisions as to whom to hire and where to hire subcontractors, but to impose upon Bain liability for those decisions goes well beyond the accepted concepts of tort liability for negligent hiring or supervision.

Bain's motion to dismiss the negligent training and supervision claim is **GRANTED**.

---

[21] *Federico v. Superior Court (Jenry G.)*, 59 Cal. App. 4th 1207, 1213 (1997) ("An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit. . . . The rule of direct employer liability under the Restatement Second of Agency section 213 is: A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless. . . .(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others. . . As explained in comment (d): The principal may be negligent because he has reason to know that the. . . agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him.") (citation and internal quotes omitted) (citation modified)

-21-

**E. California Consumer Privacy Act Claim**

Bain argues that the California Consumer Privacy Act ("CCPA") claim must be dismissed for improper shotgun pleading under Rule 8 and for failure to state a claim under the plain language of the statute.  (Dkt. 286 at 42–43.)  Bain also separately argues that Plaintiffs have not alleged facts establishing that Bain operates as a "business" within the meaning of the CCPA. *Id.*

The CCPA provides a private right of action when  "[a]ny consumer whose nonencrypted and nonredacted information, as defined in [Section 1798.81.5(d)(1)(A) of the California Civil Code] . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures appropriate to the nature of the information to protect the personal information may institute a civil action . . . ."  Cal. Civ. Code § 1798.150(a)(1). A plaintiff invoking this provision must therefore allege that (1) the defendant is a "business" under the CCPA, (2) the plaintiff's "personal information" as defined in Section 178.81.5(d)(1)(A) was nonencrypted and nonredacted, (3) that information was subject to unauthorized access, and (4) the unauthorized access resulted from the business's failure to implement and maintain reasonable security procedures.

Section 1798.81.5(d)(1)(A) defines "personal information" to include an individual's first name or first initial and last name in combination with data elements such as driver's license numbers, government identification numbers, or account numbers with security codes permitting financial account access—when not encrypted or redacted.

The CCPA defines "business" as a for-profit entity "that collects consumers' personal information or on the behalf of which that information is collected and that alone, or jointly with others, determines the purpose and means of the processing of consumers' personal information." Cal. Civ. § 1798.140(c)(1). The entity must also satisfy at least one of three revenue or data-volume thresholds: (1) have annual gross revenues of more than $25 million, (2) annually buy, receive, sell, or share personal information of 50,000 or more consumers, households, or devices, or (3) derive 50%  or

more of annual revenues from selling consumers' personal information. *Id.* § 1798.140(c)(1)(A)-(C).

Here, Plaintiffs allege that the information exposed in the Data Breach constitutes "personal information" as defined in Section 1798.81.5. (Dkt. 259 ¶¶ 123–25.) Specifically, the Data Breach exposed names and sensitive information, including "social security numbers, dates of birth, addresses, phone numbers, emails, photo identification, tax information numbers, health histories, and other medical information" (*Id.* ¶¶ 248, 975).[22,23]

Although Plaintiffs have adequately alleged the exposure of qualifying personal information, the CCPA claim does not survive a threshold step: Plaintiffs have not plausibly alleged that Bain is a "business" under the statute. To qualify as a "business," an entity must "collect[] consumers' personal information, or on the behalf of which that information is collected" and must "alone, or jointly with others, determine[] the purposes and means of the processing of consumers' personal information." Cal. Civ Code § 1798.140(c)(1); *See Karter v. Eriq Sys.*, No. 2:21-cv-01682-CJC-AGR, 2021 WL 4353274, at *2 (C.D. Cal. July 16, 2021).

Plaintiffs contend that Bain was involved in the collection and processing of personal information through its control of PowerSchool. These allegations, however, amount to creative factual attenuations that do not cross the threshold of plausibility. Bain is an investment firm. It does not collect or process student information at schools. The

---

[22] Dkt. 259 ¶ 975 ("The Data Breach exposed PII and PHI, including, but not limited, name, social security numbers, dates of birth, addresses, phone numbers, emails, photo identification, tax information numbers, health histories, and other medical information.").

[23] Dkt. 259 ¶ 998 ("Criminal threat actors accessed and viewed, and continue to access and view, Plaintiffs' and California Subclass members' individually identifiable medical information. The Data Breach threat actors gained access to Defendants' SIS data using an 'export data manager' customer support tool, PowerSource. PowerSource contains a maintenance access tool that allows PowerSchool engineers to access Customer SIS for ongoing support and to troubleshoot performance issues. Using this tool, the attacker exported the PowerSchool SIS 'Students' and 'Teachers' database tables, which included Plaintiffs'' individually identifiable medical records, to a CSV file, which was then stolen.").

-23-

assertion that Bain—by virtue of its investment relationship with PowerSchool—collects or determines the purposes and means of processing consumers' personal information is not plausible on the facts alleged.  Plaintiffs strains to connect the alleged facts to a viable cause of action.

Because Plaintiffs have not plausibly alleged that Bain qualifies as a "business" under Cal. Civ. Code § 1798.140(c)(1), the CCPA claim cannot proceed against Bain.  Accordingly, Bain's motion to dismiss the CCPA claim is **GRANTED.**

**F. California Unfair Competition Law Claim**

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Bain argues that Plaintiffs' UCL claim fails because Plaintiffs did not plead with "particularity" any direct liability in violation of Rules 8 and 9(b), relying on *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  This argument fails for two reasons.[24]

First, it misapplies *Kearns*.  That case addressed a UCL claim predicated on the "fraudulent" prong, where the plaintiff alleged affirmative misrepresentations.[25]  Here, California Plaintiffs assert only violations of the UCL's "unlawful" and "unfair" prongs. (MC ¶¶ 1023–24.)  They do not allege that Bain made fraudulent misrepresentations to

---

[24] *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1303 (S.D. Cal. 2020).  The court held that plaintiffs in a putative class action adequately stated a UCL claim under the unlawful prong against the medical supply company following a cybersecurity incident that may have compromised personal information.  The complaint identified violations of multiple statutes, including the California Consumer Records Act, satisfying the requirement of predicate unlawful conduct. Cal. Bus. & Prof. Code §17200 et seq.; Cal. Civ. § 1798.82.

[25] *See Kearns*, 567 F.3d at 1127 ("Because the Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b). Therefore, Kearns's contention that his nondisclosure claims need not be pleaded with particularity is unavailing. Kearns's claims of nondisclosure were couched in general pleadings alleging Ford's intent to conceal from customers that CPO vehicles were essentially the same as ordinary used vehicles. Such general pleadings do not satisfy the heightened pleading requirements of Rule 9(b). Therefore, we hold that Kearns's nondisclosure claims are claims of fraud and were properly dismissed for not being sufficiently pleaded.").

-24-

consumers; rather, they allege Bain engaged in unlawful and unfair business practices by gutting cybersecurity protections and facilitating a massive data breach.

This distinction is dispositive.  As the court held in *In re Zoom Video Commc'n Inc. Priv. Litig.*, "UCL claims of unlawful or unfair conduct are not subject to Rule 9(b) . . . .Only claims sounding in fraud[,]" which Plaintiffs do not bring, "are subject to the heightened pleading requirements of Rule 9(b)."  525 F. Supp. 3d 1017, 1045 (N.D. Cal. 2021).  This principle was reaffirmed in *E.H. v. Meta Platforms, Inc.*, where the court held that plaintiffs asserting only "unlawful" and "unfair" UCL claims "do not need to meet Rule 9(b) or identify misrepresentations based on their claims that [defendant's] conduct is unfair or illegal under the UCL."  No. 23-cv-05489-TSH, 2024 WL 557728, at *3 (N.D. Cal. Feb. 12, 2024).  Rule 9(b)'s particularity requirement exists to provide defendants notice of specific fraudulent statements or omissions; where the claim rests on unlawful or unfair conduct independent of any alleged misrepresentation, that rationale does not apply.

Second, because Rule 9(b) does not apply, California Plaintiffs need only satisfy the standard pleading requirements of Rule 8(a).  Their allegations suffice because they "identify the particular section of the statute that was violated" and "describe with reasonable particularity the facts supporting the violation[s]."  *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 989 (N.D. Cal. 2016) (internal quotation omitted) (citation omitted).  California Plaintiffs identify violations of Section 5(a) of the FTC Act and California Civil Code § 1798.81.5, and they describe in detail how Bain's layoffs, outsourcing decisions, and authorization of unsupervised remote access led to the breach.

Bain's motion to dismiss the UCL claim is **DENIED**.

**G.  Unjust Enrichment**

Plaintiffs assert a claim for unjust enrichment against Bain.  California construes unjust enrichment claims as seeking quasi-contractual restitution.  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  A court may "construe the cause

-25-

of action as a quasi-contract claim seeking restitution." *Id* (citation omitted).[26]  To succeed, Plaintiffs must show that Bain received and unjustly retained benefits that rightfully belonged to Plaintiffs.[27]

Plaintiffs have plausibly stated this claim.  They allege that Bain received a benefit through its majority ownership of PowerSchool and that PowerSchool implemented Bain's cost-cutting measures, creating a financial benefit for Bain at the expense of adequate data security.  Through Bain's intertwined relationship with PowerSchool, Plaintiffs plausibly allege unjust enrichment via the agency theory sustained above.  *See Supra* Part IV.C.1.

Bain's motion to dismiss the unjust enrichment claim is **DENIED**.

**H.  Declaratory Judgment and Injunctive Relief**

The Declaratory Judgment Act provides a remedy, not an independent cause of action.  *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878–79 (9th Cir. 2022).  Pursuant to the Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  Declaratory relief must be predicated upon an "actual controversy," which is "definite and concrete . . . real and substantial." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937); *cf. Owens v. Wells Fargo Bank, N.A.*, No. 08-cv-01050-LHK, 2009 WL 3353313, at *4–7 (N.D. Cal. Oct. 16, 2009) (dismissing declaratory relief claim where underlying claims failed).

Because Plaintiffs' negligence claims and other claims survive—establishing the requisite "actual controversy"—and because Plaintiffs' declaratory-judgment claims are

---

[26] *See Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'").

[27] *Echo & Rig Sacramento, LLC v. AmGuard Ins. Co.*, 698 F. Supp. 1210, 1218 (E.D. 2023), under California law, when a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution.

predicated on those claims, Plaintiffs have sufficiently stated a claim for declaratory relief.  Bain's motion to dismiss the claim is **DENIED**.

### I. Shotgun Pleading

Pursuant to Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."  *Iqbal*, 556 U.S. at 677-78.  The pleading must contain more than "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement."  *Id.*  (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted)).

Bain argues that Plaintiffs improperly "group pled" Bain into all allegations against PowerSchool.  (Dkt. 286 at 45.)  This argument ignores the sections of the Consolidated Master Complaint that detail Bain's specific alleged involvement and the failures that led to the Data Breach and Plaintiffs' resulting harm.  (MC §§ D–J, ¶¶ 14–19, 37–41.)

Bain's argument also overlooks two points.  First, Bain's, PowerSchool's, and Movate's combined data security failures plausibly contributed to the lapse in sound security practices that increased the chances of the resulting Data Breach. Plaintiffs have plausibly pled liability against Bain as a joint tortfeasor—a theory that, by its nature, involves allegation against multiple defendants within the same counts.[28]  Second, Bain's argument that Plaintiffs cannot plead claims against both PowerSchool and Bain in the same counts absent alter ego or agency liability is moot given the Court's findings on agency and direct liability.

Bain relies on *Better Homes Realty, Inc. v. Watmore*, No. 16-cv-01607-BAS-DHB, 2017 WL 1400065 (S.D. Cal. Apr. 18, 2017), and *Doe v. Camp Pendleton & Quantico*

---

[28] *See Honeycutt v. United States*, 581 U.S. 443, 447–48 (2017) ("[T]wo or more defendants [who] jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount.").

*Hous. LLC*, No. 19-cv-02466-GPC-MSB, 2020 WL 1890576 (S.D. Cal. Apr. 16, 2020). Both cases are distinguishable.  In *Better Homes* and *Doe*, the pleadings lacked plausible allegations as to the individual defendants and were "broad" and "conclusory." Here, Plaintiffs have adequately pled that Bain was the majority owner of PowerSchool and, through this majority ownership, instituted cost-cutting measures that resulted in decreased cybersecurity control by exporting IT and account security functions to Movate in the Philippines.  These are specific, factually grounded allegations—not the kind of conclusory group pleading that *Better Homes* and *Doe* condemned.

Bain's motion to dismiss on shotgun-pleading grounds is **DENIED**.

///

///

///

**V. CONCLUSION**

For the foregoing reasons, the Court **ORDERS** as follows:

1. Bain's motion to dismiss for lack of Article III standing is **DENIED**.

2. Bain's motion to dismiss for lack of personal jurisdiction is **DENIED**.

3. Bain's motion to dismiss on agency, direct liability, and aiding and abetting theories is **DENIED**.

4. Bain's motion to dismiss Plaintiffs' negligence claim is **DENIED**.

5. Bain's motion to dismiss negligence per se claim is **DENIED**.

6. Bain's motion to dismiss Plaintiffs' negligent training and supervision claim is **GRANTED**.

7. Bain's motion to dismiss Plaintiffs' CCPA claim is **GRANTED**.

8. Bain's motion to dismiss Plaintiffs' UCL claim is **DENIED**.

9. Bain's motion to dismiss Plaintiffs' unjust enrichment claim is **DENIED**.

10. Bain's motion to dismiss Plaintiffs' claim for declaratory judgment and injunctive relief is **DENIED**.

-28-

11.Bain's motion to dismiss on shotgun-pleading grounds is **DENIED**.

**IT IS SO ORDERED.**

DATED:    March 18, 2026

_____
HON. ROGER T. BENITEZ
United States District Judge

-29-