UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION., | ) Case No.:  25-md-03149-BEN-MSB<br>)<br>) **ORDER GRANTING IN PART AND**<br>) **DENYING IN PART BAIN**<br>) **CAPITAL'S MOTION TO DISMISS**<br>) **(TRACK 2)**<br>)<br>**[ECF No. 303 ]** |

Defendant Bain Capital's motion to dismiss under Rules 12(b)(2) and 12(b)(6) is denied in part and granted in part.  The motion is *denied* as to: (1) personal jurisdiction over Bain with respect to the Direct Action Plaintiffs; (2) the direct-liability claims for intentional interference with contractual relations; (3) the Class Action Plaintiffs' negligence claim; and (4) the Class Action Plaintiffs' request for declaratory and injunctive relief.

The motion is *granted* without prejudice as to: (1) personal jurisdiction over Bain with respect to the Class Action Plaintiffs; (2) the Direct Action Plaintiffs' alter ego theories; (3) the Class Action Plaintiffs' CFAA conspiracy claim; (4) the Class Action Plaintiffs' CDAFA claim; (5) negligence per se; and (6) the Class Action Plaintiffs' unjust-enrichment claim.

-1-

BACKGROUND

A. Factual Allegations

This multidistrict litigation arises from an alleged data breach involving Defendants PowerSchool Holdings, Inc. and PowerSchool Group, LLC (collectively, "PowerSchool"). PowerSchool provides cloud-based data-management software for K-12 students and educators and stores sensitive student medical, academic, and other personally identifiable information. Plaintiffs allege that Defendant Bain Capital ("Bain"), an investment firm that acquired a 51-percent majority ownership stake in PowerSchool, implemented data-management changes that compromised cybersecurity protections and contributed to a breach exposing the personal information of approximately 50 million individuals.

Bain initiated merger and acquisition discussions with PowerSchool, a Sacramento-based provider of educational software, in August 2022. (Dkt. 263 ¶ 98.) Schools and school-district customers provide PowerSchool with sensitive personally identifiable information ("PII"), which PowerSchool stores and maintains. (*Id*. ¶¶ 1, 38, 170; Dkt. 288 ¶¶ 2, 10.)

The Track 2 or school entity Plaintiffs allege that in early 2024, during merger negotiations, PowerSchool announced plans to offshore its cybersecurity and IT functions. It is alleged that Bain imposed on PowerSchool these cost-cutting measures for its workforce. (Dkt. 288 ¶¶ 58, 62, 65; Dkt. 263 ¶¶ 7, 102, 104, 105.)

On June 6, 2024, Bain agreed to acquire a majority ownership stake in PowerSchool. (Dkt. 342 at 17; Dkt. 388 at 1.) The Merger Agreement provided that before closing, neither party had "the right to control or direct the business or operations" of the other. (Dkt. 303 at 7; Dkt. 379 at 24.) Plaintiffs contend that during the interim period, PowerSchool could not implement layoffs affecting 50 or more employees without Bain's express permission. (Dkt. 342 at 18.) Plaintiffs also rely on the agreement's representations regarding compliance with data protection obligations. (Dkt. 342 at 17-18.)

Plaintiffs allege that unauthorized system access began in August 2024, with data exfiltration occurring later.[1]  (Dkt. 288 ¶ 62; Dkt. 263 ¶¶ 46-47.)  The acquisition closed on October 1, 2024, when Bain replaced PowerSchool's board and assumed operational control. (Dkt. 263 ¶ 17; Dkt. 288 ¶ 56.)

Following the acquisition, Bain directed PowerSchool to offshore cybersecurity, engineering, and IT functions to contractors, including Defendant Movate.  (Dkt. 288 ¶¶ 65, 70-72; Dkt. 263 ¶¶ 7, 104, 163.)  According to the Complaints this offshoring required data-management tools that enabled vendors to bypass consent protocols and access protected school district computers directly.  (Dkt. 288 ¶¶ 70-74; Dkt. 263 ¶¶ 46, 196, 198.)

In December 2024, hackers used stolen Movate employee credentials to access PowerSchool's student information system through its PowerSource portal.  (Dkt. 288 ¶ 72.)  PowerSchool discovered the breach on December 28, 2024, and notified customers on January 7, 2025.  (Dkt. 288 ¶¶ 5, 8, 31; Dkt. 263 ¶¶ 40, 41, 48.)  The breach compromised approximately 50 million individuals' data, including Social Security numbers, medical and financial information, addresses, disability records, and custody information. (Dkt. 288 ¶¶ 7, 25, 33; Dkt. 263 ¶¶ 42, 45, 48.)

**B. Procedural History**

On April 8, 2025, the Judicial Panel on Multidistrict Litigation transferred this matter to this Court.  (Dkt. 1.)  The litigation is organized into two tracks: Track 1 (Individual User Class Action) and Track 2 (School Direct Actions).

As relevant here, Track 2 encompasses both the Class Action Plaintiffs, who pursue claims directly against Bain, and Direct Action Plaintiffs, who pursue claims against Bain under both alter ego and direct liability theories.

The Class Action Plaintiffs pursue direct claims against Bain for intentional

---

[1] Dkt. 263 ¶ 17 ("[T]he first know incident of unauthorized access occurred on August 16, 2024, and on September 17, 2024, the earliest known date of unauthorized access attributable to the Threat Actors.")

interference with contractual relations (Count 2), negligence (Count 3), conspiracy to violate the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 (Count 4), violation of the California Comprehensive Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502 (Count 5), unjust enrichment (Count 7), and declaratory and injunctive relief (Count 8).[2]

Direct Action Plaintiffs assert intentional interference with contractual relations as their sole direct-liability claim against Bain, with the remainder of their counts proceeding against Bain solely on an alter ego theory of vicarious liability.[3]

Bain moves to dismiss all claims asserted against it under Rules 12(b)(2) and 12(b)(6).

## LEGAL STANDARDS

### A. Rule 12(b)(6)

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the plaintiff's explanation is plausible, the complaint survives regardless of whether a more plausible alternative explanation exists. *Id.*[4] A "Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not . . . resolve contests surrounding the facts, the merits of the claim, or the applicability of

---

[2] (Dkt. 303, Ex. A.), Class Action Plaintiffs confirmed they do not pursue alter ego or other vicarious liability theories against Bain.

[3] (*See* Dkt. 379 at 1.), Track 1 Individual User Plaintiffs previously abandoned their alter ego claims against Bain.

[4] *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.")

defenses." *W. Ins. Co. v. Frontier Homes, LLC*, No. EDCV 17-2181-R, 2018 WL 8220544, at *2 (C.D. Cal. Mar. 27, 2018).

### B. Rule 9(b)

Rule 9(b) requires fraud or mistake claims to be pleaded "with particularity," including statutory consumer protection claims based on alleged deception. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009).

### C. Rule 12(b)(2)

When a defendant moves to dismiss under Rule 12(b)(2) and the motion is decided on written submissions, the plaintiff "need only make a prima facie showing of jurisdictional facts." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020). The Court takes uncontroverted allegations as true and resolves genuine factual disputes in the plaintiff's favor. *Id.*

In multidistrict litigation, personal jurisdiction over a defendant "must exist in the district where [the action] is filed." *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379–80 (J.P.M.L. 2020). Plaintiffs must establish personal jurisdiction in the transferor forums—California for the Direct Action Plaintiffs and New Jersey and New York for the Class Action Plaintiffs. California's and New Jersey's long-arm statutes extend to the limits of federal due process. *See* Cal. Civ. Proc. Code § 410.10; N.J. Ct. R. 4:4-4(b)(1).

General jurisdiction exists where a defendant is "at home"—typically, its state of incorporation or principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Specific jurisdiction requires: "(1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum . . . ; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

### D. Choice of Law

Plaintiffs argue that a choice of law determination is premature at this stage

because it is a "fact-intensive exercise better suited for later stages of litigation when the parties may present evidence on the issue." *In re Accellion, Inc. Data Breach Litig.*, No. 21-cv-01155-EJD, 2024 WL 4592367, at *2 (N.D. Cal. Oct. 28, 2024). At this stage, the Court need not definitively resolve all choice-of-law questions where the parties agree that the relevant standards are materially similar or where the result would be the same under the standards cited by the parties.

**DISCUSSION**

## I. PERSONAL JURISDICTION

### A. General Jurisdiction

Bain is a limited partnership organized in Delaware with its principal place of business in Massachusetts. (Dkt. 263 ¶ 18.) Plaintiffs do not dispute those facts or meaningfully respond to Bain's general-jurisdiction argument. General jurisdiction, therefore, does not exist over Bain in California, New Jersey, or New York. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (non-opposition may be construed as waiver).

### B. Direct Action Plaintiffs (California)

The Direct Action Plaintiffs have made a prima facie showing of specific jurisdiction in California.

#### 1. Purposeful availment

The Court agrees with Bain that a parent-subsidiary or investor-portfolio company relationship alone cannot serve as the basis for specific jurisdiction. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022–25 (9th Cir. 2017). But the Direct Action Complaint goes beyond describing a simple investment relationship. It alleges with specificity that Bain began "exercising direct control over PowerSchool's decision-making" before the merger closed, including by issuing an August 13, 2024, "layoff order" that "eliminated around 175 critical staff" and "basically gutted" PowerSchool's California-based departments. (Dkt. 288 ¶¶ 58, 60, 62; Dkt. 263 ¶¶ 17, 102.) It further alleges that Bain orchestrated plans to "boost[] PowerSchool's headcount in India and

-6-

other low-cost locations" and "moved swiftly to execute" those offshoring plans.[5]

Taken as true, those allegations specify particular directives that Bain allegedly issued, the California-based workforce they targeted, and the operational effects those directives caused at PowerSchool's California operations. At this stage, that is enough to establish that Bain "deliberately reached out beyond [its] home" to direct conduct in California and created "continuing relationships and obligations" in the forum. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023); *Silk v. Bond*, 65 F.4th 445, 457 (9th Cir. 2023).

### 2. Relatedness

The Direct Action Plaintiffs also meet the relatedness requirement. They allege that Bain's layoff orders targeting California-based staff and its directive to offshore operations "directly undermined cybersecurity" and caused the data breach.[6] Those allegations support a reasonable inference that the alleged injury is the type of harm that would "tend to be caused" by dismantling a company's in-forum security infrastructure. *See Yamashita*, 62 F.4th at 505–06; *Briskin v. Shopify, Inc.*, 135 F.4th 739, 760 (9th Cir. 2025).

Bain's reliance on *Walsh v. LG Chem Ltd.*, 834 F. App'x 310, 312 (9th Cir. 2020), is misplaced. In *Walsh*, the complaint did not establish a direct connection between the defendant's forum contacts and the injury. In this case, the Direct Action Complaint clearly links Bain's California-centered decisions to the breach.

### 3. Reasonableness

Because the Direct Action Plaintiffs satisfy the first two prongs, the burden shifts to Bain to "present a compelling case" that jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802. Bain has not made that showing. Its discussion of reasonableness is undeveloped and unsupported by evidence. The allegations instead

---

[5] (Dkt. 288 ¶¶ 65–66, 70–72.)
[6] (Dkt. 288 ¶¶ 65–66, 70–72.)

-7-

describe significant and deliberate intervention in California.  Bain identifies no specific financial or logistical burden associated with litigating in California.  California has a substantial interest in resolving disputes arising from conduct allegedly directed at a California-based company's workforce and operations.  The MDL posture of this case also promotes efficiency.

Accordingly, Bain's motion to dismiss for lack of personal jurisdiction is **denied** as to the Direct Action Plaintiffs.

### C. Class Action Plaintiffs (New Jersey and New York)

The result is different for the Class Action Plaintiffs.  Their complaint alleges that personal jurisdiction is proper in California, but it contains no allegations showing that Bain is subject to personal jurisdiction in New Jersey or New York.[7]  The four theories they advance do not change that result.

### 1. Successor liability

The undisputed transactional structure shows that BCPE Polymath Merger Sub, Inc. merged into PowerSchool Holdings, Inc., with PowerSchool continuing as the surviving corporation.  (Dkt. 342 at 8.)  PowerSchool thus remains a separate legal entity.  When the predecessor survives as its own corporation, courts have refused to apply successor liability for jurisdictional reasons.  *See Komaiko v. Baker Techs., Inc.*, 2020 WL 1915884, at *10–12 (N.D. Cal. Apr. 20, 2020); *Long Side Ventures LLC v. Hempacco Co.*, 2023 WL 6386888, at *13 (S.D.N.Y. Sept. 29, 2023); *Ferry v. Black Diamond Video, Inc.*, 2016 WL 3381237, at *10–11 (D.N.J. June 14, 2016).  The jurisdictional gap for successor liability does not exist here.

### 2. Calder Effects Test

The "express aiming" requirement requires more than just knowing that the plaintiff lives in or has connections to the forum.  *See Kalter v. Keyfactor, Inc.*, 2022 WL

---

[7] (Dkt. 263 ¶¶ 23, 26, 138.)

658976, at *2–3 (S.D. Cal. Mar. 4, 2022).  An investment firm's awareness that a portfolio company maintains contracts within forum states does not constitute evidence that the firm expressly aimed its conduct towards those states.  *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998).  The Class Complaint does not specify any conduct by Bain directed at New Jersey or New York independent of PowerSchool's actions.

### 3.  Pendent Personal Jurisdiction

Pendent personal jurisdiction requires an independent basis for jurisdiction over at least one claim.  The Class Action Plaintiffs assert that Bain does not contest jurisdiction over the CFAA claim.  Bain's reply states that it objects to jurisdiction over all claims.[8] The CFAA also contains no special jurisdictional provision that would, in and of itself, establish jurisdiction here.  Because the CFAA claim must satisfy the same jurisdictional requirements, and those requirements are not met, pendent personal jurisdiction does not apply.

### 4.  Jurisdictional Discovery

Although the current allegations are inadequate, the Court will permit limited jurisdictional discovery.  The record raises factual questions about Bain's corporate and partnership relationships with PowerSchool, how liabilities were allocated after the merger, and Bain's authority over PowerSchool's operations in New Jersey and New. Since Bain controls this information, limited discovery is appropriate.  *See Munenzon v. Peters Advisors, LLC*, 2022 WL 1486195, at *5–7 (D.N.J. May 10, 2022); *Cohodes v. MiMedx Grp., Inc.*, 2022 WL 15523079, at *3 (N.D. Cal. Oct. 27, 2022).

Accordingly, Bain's motion to dismiss for lack of personal jurisdiction is **granted** without prejudice concerning the Class Action Plaintiffs.  The Class Action Plaintiffs are permitted to undertake limited jurisdictional discovery focused on Bain's corporate

---

[8] (Dkt. 303 at 10-17; Dkt. 379 at 30.)

arrangements with PowerSchool, the allocation of liabilities pursuant to the merger, and Bain's decision-making authority over PowerSchool's operations in New Jersey and New York.

## II.   ALTER EGO (DIRECT ACTION PLAINTIFFS ONLY)

The Direct Action Plaintiffs contend that Bain may be held liable under an alter ego theory by attributing PowerSchool's conduct and forum contacts to Bain. Class Action Plaintiffs do not pursue an alter ego theory and have confirmed that point. (Dkt. 303 at 4–5; Ex. A.) The Court therefore limits this analysis to the Direct Action Plaintiffs.

The parties disagree on which jurisdiction's alter ego law applies but agree that the doctrine is substantially the same in the relevant jurisdictions. (Dkt. 303 at 18 n.17.) Direct Action Plaintiffs cite authority indicating that New York, Delaware, Utah, Vermont, Wisconsin, Virginia, Illinois, South Carolina, Pennsylvania, Oklahoma, Idaho, Tennessee, and Arizona law is materially similar to California's. (Dkt. 344 at 9–16.[9]) Because the parties agree, and because the cited authorities support that premise, the Court applies California's two-prong test under *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538 (2000): unity of interest and ownership and inequitable result.

### A. Unity of Interest and Ownership

To establish an alter ego relationship under California law, a plaintiff must show: (1) "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist," and (2) "an inequitable result if the acts in question are treated as those of the corporation alone." *Id*. at 538. Alter ego is an "extreme remedy, sparingly used." *Id*. at 539. The corporate form is disregarded only in exceptional cases, and the burden of

---

[9] *Lincoln Imps. Inc. v. Weaver Flower Co*., No. SACV 11–1098–JST (ANX), 2012 WL 1048531, at *4 (C.D. Cal. March 27, 2012) (finding that party adequately pleaded an alter ego claim by alleging failure to adequately capitalize, disregard for corporate formalities, and the potential unjust result of upholding the corporate veil.)

-10-

proof rests heavily on the party seeking to pierce the corporate veil.  *Santa Clarita Org. for Plan. & Env't v. Castaic Lake Water Agency*, 1 Cal. App. 5th 1084, 1105 (2016).  The degree of control required is exacting: a plaintiff must plead "manipulative control" such that "a parent dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation."  *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1138 (C.D. Cal. 2015).  A threshold requirement is ownership.  *SEC v. Hickey*, 322 F.3d 1123, 1130 (9th Cir. 2003).

### 1. Pre-acquisition conduct

A key requirement of alter ego liability is that the alleged alter ego "must own at least part of a corporation."  *Hickey*, 322 F.3d at 1130 ("[A]n individual must own at least a portion of a corporation before an alter ego relationship is deemed to exist under California law.").  Direct Action Plaintiffs allege that Bain's involvement went beyond passive investment and that Bain controlled PowerSchool's decisions, set policies, and offshored cybersecurity to external contractors, granting them access to Plaintiffs' PII and PHI.  (Dkt. 288 ¶¶ 56, 70-74.)  But before October 1, 2024, Bain and PowerSchool appeared to have been engaged in an arm's-length transaction as independent parties.  The Merger Agreement, incorporated by reference, states that Bain *did not* have "the right to control or direct the business or operations of" PowerSchool prior to the closing.  (Dkt. 303 at 7.)

As a matter of law, allegations of control during a time when the alleged alter ego had no ownership interest cannot prove the unity of interest needed for an alter ego relationship.  *See Hickey*, 322 F.3d at 1130.  To the extent the Direct Action Plaintiffs rely on pre-acquisition control allegations, those allegations are either conclusory or implausible in view of  the Merger Agreement.  *See Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

### 2. Post-acquisition conduct

The post-acquisition allegations also fall short.  The Direct Action Complaint alleges that Bain "dictated" policies and business decisions and acted as "the controlling

-11-

alter ego of PowerSchool." (Dkt. 288 ¶¶ 58, 87.)  Those assertions are too conclusory. The complaint does not provide sufficient detail as to when Bain gave specific directives, what those directives required, or how Bain's conduct differed from ordinary ownership oversight.  Under New York law, "conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss."  *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 525 (S.D.N.Y. 2015).

The Court also considers what the complaint does not allege: no commingling of funds, no shared corporate records, assets, offices, employees, directors, or officers, no diversion of funds, and no disregard of corporate formalities.  *See Wechsler v. Macke Int'l Trade Inc.*, 327 F. Supp. 2d 1139, 1144 (C.D. Cal. 2004); *Reynolds*, 136 F. Supp. 3d at 525, 527.  Nor does the complaint plausibly allege the sort of ongoing manipulative control necessary to pierce the corporate veil.  A parent's involvement in "financing and macro-management" of its affiliates, without more, does not establish alter ego.  *See ViaSat, Inc. v. Space Sys./Loral, Inc.*, 2012 WL 12844738, at *5 (S.D. Cal. July 30, 2012); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1075 (9th Cir. 2015).

### 3.  Conduit theory

The Direct Action Plaintiffs emphasize that Bain used PowerSchool as a conduit. (Dkt. 344 at 18, 20–24.)  That theory is not sufficiently pleaded.  For the period before October 1, 2024, the theory fails because Bain lacked an ownership interest and the Merger Agreement disclaimed control.  After October 1, 2024, the allegations remain limited and conclusory.  The fact that Bain replaced PowerSchool's board and participated in high-level decisions is a typical exercise of ownership, not the pervasive operational domination required for alter ego liability.  *Morgan Creek*, 217 Cal. App. 4th at 1109; *Gerritsen*, 116 F. Supp. 3d at 1138–39.

The authorities cited by the Direct Action Plaintiffs—*Laguna v. Coverall N. Am., Inc.*, No. 09CV2131 JM (RBB), 2009 WL 5125606, at *2 (S.D. Cal. Dec. 18, 2009), *Blue Line Foodservice Distribution, Inc. v. Cathcart*, No. 24-CV-1250W-MMP, 2025 WL 1265859, at *11 (S.D. Cal. Apr. 30, 2025), and *Connecticut Gen. Life Ins. Co. v. Earl*

-12-

*Scheib, Inc.*, No. 11CV788AJB(WVG), 2012 WL 12868358, at *3 (S.D. Cal. May 22, 2012)—involved materially different allegations, such as commingling of funds, asset diversion, a disregard of corporate formalities, or sole ownership.  Those allegations are absent here.

### 4.  Undercapitalization theory

The undercapitalization theory fares no better.  Direct Action Plaintiffs allege that Bain "saddled PowerSchool with substantial debt" and left it "undercapitalized and underinsured."  (Dkt. 288 ¶¶ 57, 89.)  A corporation is undercapitalized when it is unable to meet debts reasonably expected to arise in the ordinary course of business.  *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 810 F. Supp. 2d 1100, 1123 (S.D. Cal. 2011).  Even a debt-to-capital ratio approaching ninety percent does not, by itself, establish undercapitalization.  *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1154–55 (S.D. Cal. 2018).  The complaint does not allege that PowerSchool cannot pay its debts as they become due, lacks the capital to operate normally, or is judgment-proof.  Bare allegations of financial pressure are insufficient.

### B.  Inequitable Result

The complaint also fails to satisfy the second prong of *Sonora Diamond*.   It does not allege that Bain used the October 2024 transaction to avoid liabilities, divert assets, or engage in bad-faith conduct designed to prevent PowerSchool from satisfying its obligations.  Difficulty in enforcing a judgment is not enough.  *Sonora Diamond*, 83 Cal. App. 4th at 538–39.  Plaintiffs' assertion that respecting the corporate form would be "unconscionable" is conclusory.

Because the Direct Action Plaintiffs have not adequately pleaded alter ego, PowerSchool's forum contacts cannot be attributed to Bain on that theory, and the claims proceeding solely against Bain on an alter ego basis must be dismissed.

Although the present allegations are insufficient, the record raises factual questions regarding Bain's corporate and partnership arrangements with PowerSchool, the extent of Bain's operational control after October 1, 2024, and the allocation of liabilities under the

-13-

merger.  Those facts are within Bain's possession and control.  *See Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp.*, 849 F. Supp. 702, 707 (N.D. Cal. 1994).  This case is unlike *Spy Optic*, where the jurisdictional allegations were weak and the defendants submitted specific denials supported by evidence.  2020 WL 1849672, at *9 (S.D. Cal. Apr. 13, 2020).

Accordingly, Bain's motion to dismiss only the alter ego theories of the Direct Action Plaintiffs as to New York and New Jersey is **granted without prejudice**.  The Direct Action Plaintiffs may conduct limited jurisdictional discovery related to Bain's corporate arrangements with PowerSchool, the allocation of liabilities under the merger, and Bain's decision-making authority over PowerSchool's operations after October 1, 2024.

## III.   DIRECT-LIABILITY CLAIMS AGAINST BAIN

### A. Intentional Interference with Contractual Relations

Both sets of Plaintiffs assert direct liability claims against Bain for intentional interference with contractual relations.  The parties agree that the elements are materially consistent across the potentially applicable jurisdictions.  A plaintiff must allege: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third party's breach without justification; (4) actual breach; and (5) resulting damages. *See e.g.*, *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012).

For purposes of this motion, Bain does not dispute the first two elements: the existence of valid contracts and Bain's knowledge of them.  (Dkt. 342 at 16; Dkt. 344 at 28.)  The dispute concerns procurement, intent, justification, causation, and breach.  Plaintiffs adequately plead each element.

### 1. Procurement

Both complaints allege that Bain interfered with PowerSchool's contracts with Plaintiffs by directing, encouraging, and pressuring PowerSchool to cut cybersecurity

-14-

spending, reduce cybersecurity staff, and outsource operations to subcontractors.[10]  Bain argues that those allegations are conclusory and contradicted by the Merger Agreement's "No Control" clause.  (Dkt. 303 at 6–7, 29–30.)

Plaintiffs, however, point to specific interim operating covenants in the Merger Agreement that allegedly prevented PowerSchool from implementing layoffs affecting fifty or more employees without Bain's explicit permission during the period between signing and closing.  (Dkt. 342 at 18.)  The Direct Action Plaintiffs further allege that Bain issued a layoff order in August 2024, eliminating approximately 175 employees.  (Dkt. 288 ¶¶ 58, 60, 62.)

At the pleading stage, Plaintiffs plausibly allege procurement of a breach.  The "No Control" clause functions as a general disclaimer; the interim operating covenants are specific contractual provisions that gave Bain approval rights over layoffs above a defined threshold.  Reading those provisions together and drawing reasonable inferences in Plaintiffs' favor, the existence of those consent rights, combined with the alleged August 2024 layoffs, supports a plausible inference that Bain directed or approved the conduct which resulted in PowerSchool's breach of its contracts with Plaintiffs.

**2. Intent**

Plaintiffs also adequately plead intent.  The required mental state is satisfied if the defendant desired the breach or knew that interference was certain or substantially certain to occur as a result of its conduct.  *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998).  Intent may be pleaded generally. Fed. R. Civ. P. 9(b); *see also Sun Life Assur. Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1215 (11th Cir. 2018).

Plaintiffs allege that Bain knew of PowerSchool's cybersecurity-related contractual obligations and nevertheless directed PowerSchool to cut cybersecurity costs, fire

---

[10] (Dkt. 288. ¶¶ 55,58, 61, 63, 69, 71, 249; Dkt. 263 ¶¶ 7, 163-64 .)

cybersecurity staff, and outsource cybersecurity work.  (Dkt. 288 ¶¶ 250–51; Dkt. 263 ¶¶ 7, 163.)  These are not generic allegations of cost-cutting.  They concern security-related directives made with knowledge of the corresponding contractual duties.  From those facts, a factfinder could infer that Bain knew its directives were likely to materially hinder PowerSchool's performance.  *See Quelimane*, 19 Cal. 4th at 56; *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993).

### 3. Justification

Whether Bain's conduct was justified cannot be resolved on the pleadings.  Under California law, "it is not necessary that defendant's conduct be wrongful apart from the interference with the contract itself." *Quelimane*, 19 Cal. 4th at 55.  And whether a defendant acted with justification is generally "a matter for trial—not resolution on a motion to dismiss." *Id.* at 56–57.

### 4. Causation and breach

Plaintiffs also plausibly allege causation and breach.  They allege that Bain ordered layoffs of cybersecurity staff and outsourced cybersecurity functions to offshore contractors, including Defendant Movate, leaving PowerSchool's security teams understaffed.  They further allege that the December 2024 breach was carried out using stolen Movate credentials.[11]  That causal chain is sufficient at the pleading stage. *See Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 909–10 (9th Cir. 2008); *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997).

Bain argues that unauthorized access began in August 2024, before the merger closed in October 2024.  (Dkt. 303 at 34.)  But Plaintiffs allege that Bain's causal actions—including its approval of layoffs under the interim operating covenants and related directives—took place from June to October 2024, overlapping with the alleged initial intrusion.  Whether Bain's conduct preceded, followed, or coincided with the

---

[11] (Dkt. 288 ¶¶ 72–73.)

intrusion is a factual question not suitable for resolution on a motion to dismiss.

Plaintiffs also adequately allege breach.  Both complaints identify contractual obligations in the PowerSchool Master Service Agreements with Plaintiffs requiring industry-standard security measures, including access controls, data encryption in transit and at rest, password rotation, monthly review of access credentials, multi-factor authentication, endpoint protection, and related safeguards.  (Dkt. 288 ¶¶ 49, 53, 336; Dkt. 263 ¶¶ 1, 30, 68.)  Plaintiffs allege that PowerSchool failed to maintain those standards.  At this stage, Plaintiffs may plausibly assert that the staffing and outsourcing measures allegedly directed by Bain contributed to that failure.

Accordingly, Bain's motion to dismiss the direct-liability claims for intentional interference with contractual relations is **denied**.

### B. CFAA Conspiracy (Class Action Count 4)

Class Action Plaintiffs assert a federal CFAA claim against Bain under 18 U.S.C. § 1030(g), citing the conspiracy provision in § 1030(b).  They have confirmed they do not pursue direct-liability theories under §§ 1030(a)(2)(C) or (a)(5)(C). (Dkt. 342. at 22.[12])

To plead civil conspiracy under § 1030(b), a plaintiff must allege that the defendant and a co-conspirator "reached some explicit or tacit understanding or agreement" to commit a CFAA violation.  *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1521 (N.D. Cal. 1990); *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 835–36 (N.D. Cal. 2014).

The Class Complaint does not plausibly allege such an agreement.  It asserts that Bain and PowerSchool "entered into a common scheme to access information" (Dkt. 263 ¶ 206) and that Bain "knowingly authorized or ratified PowerSchool's use of a Backdoor

---

[12] *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011), By failing to respond to Bain's arguments regarding direct liability under §§ 1030(a)(2)(C) and (a)(5)(C), Class Action Plaintiffs have waived those theories.

-17-

Access Tool that bypassed bargained-for consent and access protocols." (*Id*. ¶¶ 203–06). Those allegations are too conclusory. A "common scheme" allegation is the sort of bare assertion *NetApp* found insufficient. 41 F. Supp. 3d at 836–37. Allegations of authorization, ratification, or oversight, without more, do not establish a conspiratorial agreement directed toward unlawful computer access. The Merger Agreement's disclaimer of Bain's control over PowerSchool's pre-closing operations further undermines the plausibility of any agreement during that period.

The intent allegations are likewise inadequate. The CFAA requires intentional unauthorized access. 18 U.S.C. §§ 1030(a)(2)(C), (a)(5)(C). To establish liability for conspiracy, Plaintiffs must plausibly allege that Bain intended to advance the unlawful objective. *See Contreras v. Dowling*, 5 Cal. App. 5th 394, 416–17 (2016). Even accepting the allegations that Bain "was aware, or recklessly disregarded" PowerSchool's commitments and "knowingly authorized or ratified" the use of the access tool, those allegations do not plausibly show that Bain intended to commit unauthorized computer access. Knowledge of a portfolio company's operations and contracts, standing alone, does not establish the specific intent the CFAA requires. *See Kirby ex rel. Kirby 2014 Tr. v. AT&T Corp.*, 2022 WL 17184565, at *5–6 (S.D. Cal. Nov. 23, 2022).

Finally, conspiracy liability under § 1030(b) cannot stand in the absence of sufficient allegations of an underlying substantive CFAA violation by PowerSchool itself. *See Welenco, Inc. v. Corbell*, 126 F. Supp. 3d 1154, 1176 (E.D. Cal. 2015). To the extent the predicate CFAA theory against PowerSchool is deficient, the derivative conspiracy theory against Bain necessarily fails as well.

Accordingly, Bain's motion to dismiss the CFAA conspiracy claim is **granted** without prejudice.

## C. CDAFA (Class Action Count 5)

The Class Action Plaintiffs also assert a claim under the CDAFA, Cal. Penal Code § 502, invoking §§ 502(c)(3), (c)(6), and (c)(7). The CDAFA allegations are insufficiently pleaded to Bain.

-18-

The operative allegations largely track the statutory language, alleging that PowerSchool and Bain acted "knowingly" and "without permission" to "access[], us[e], or damage[]" data and "caus[e] unauthorized access." (Dkt. 263 ¶ 222.)  Such allegations primarily restate the statute.  *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176–77 (9th Cir. 2021).

The allegation that Bain "knowingly authorized" and "directed" the Backdoor Tool (Dkt. 263 ¶¶ 7, 203) is itself conclusory.  The complaint does not identify with sufficient factual detail what Bain did to deploy, direct, or cause deployment of the tool or why it would cause deployment.  And because the tool was allegedly installed during the pre-closing period, the Merger Agreement's "No Control" clause further undermines the plausibility that Bain directed that conduct at that time.

The CDAFA claim also relies on impermissible group pleading.  The operative allegations are directed at "Defendants" collectively.  Because the Class Action Plaintiffs disclaim alter ego and other vicarious-liability theories as to Bain, they must plead Bain-specific conduct.  They do not.  *See Doe v. Camp Pendleton & Quantico Hous. LLC*, 2020 WL 1890576, at *7 (S.D. Cal. Apr. 16, 2020); *Horton v. NeoStrata Co. Inc.*, 2016 WL 11622008, at *3–4 (S.D. Cal. Nov. 22, 2016).

Accordingly, Bain's motion to dismiss the CDAFA claim is **granted** without prejudice.

## D. Bain-Specific Pleading

Because the Class Action Plaintiffs disclaim any alter ego or other vicarious-liability theory as to Bain, their direct claims against Bain must rest on Bain-specific conduct.  "Lumping" multiple defendants together with broad allegations does not provide the notice Rule 8 requires.  *See Camp Pendleton*, 2020 WL 1890576, at *7; *Better Homes Realty, Inc. v. Watmore*, 2017 WL 1400065, at *4 (S.D. Cal. Apr. 18, 2017); *Horton,* 2016 WL 11622008, at *3–4.

That deficiency warrants dismissal of the CFAA and CDAFA counts, but it does not justify dismissal of the remaining direct-liability claims at this stage.  Although those

-19-

remaining counts sometimes refer to "Defendants" collectively, the complaint elsewhere attributes specific conduct to Bain—namely, reducing cybersecurity spending and staffing, outsourcing cybersecurity functions to contractors including Movate, and implementing cost-cutting measures that allegedly benefited Bain financially.[13]  Those allegations are sufficient to provide Bain notice of the conduct at issue

### E. Negligence (Class Action Count 3)

Plaintiffs plausibly state a negligence claim against Bain.  To state a claim for negligence, Plaintiffs must allege duty, breach, causation, and damages.  *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (Cal. 2021); *Regents of University of California v. Superior Court*, 4 Cal. 5th 607, 619 (Cal. 2018).

### 1. Duty

Bain argues that it had no duty to protect Plaintiffs from harm caused by third-party threat actors and that any such duty rests solely with PowerSchool.  (Dkt. 303 at 46.)  The Court disagrees.  Plaintiffs do not allege a generalized duty to prevent all third-party misconduct.  Rather, they allege that Bain, through its own decisions, contributed to creating the cybersecurity vulnerabilities that enabled the breach.  On that theory, the asserted duty arises from Bain's own conduct in directing or controlling the security-related decisions at issue.  *See Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 768 (2011).

Plaintiffs also adequately plead foreseeability.  They allege that Bain understood the importance of data security, knew that student PII data is valuable and targeted by criminals, that data breaches were a common and foreseeable risk, and nonetheless directed reductions in cybersecurity staffing and outsourced cybersecurity functions to unguarded contractors whose credentials were later used to access the system.[14]  Accepting those allegations as true, Plaintiffs plausibly allege that Bain owed a duty of

---

[13] (Dkt. 263 ¶¶ 47, 87, 89, 92, 99–101, 103, 126, 163, 168–83, 246–62.)
[14] (Dkt. 263 ¶¶ 1, 32, 47, 87, 89, 92, 163.)

-20-

reasonable care in directing the security measures and contractor access it allegedly put in place.

### 2. Breach

Plaintiffs also plausibly allege breach.  They identify the relevant standard of care as basic, industry-standard cybersecurity protections, including access controls, credential review, multi-factor authentication, endpoint protection, and related safeguards.  They allege that Bain had the authority and responsibility to ensure that PowerSchool implemented those protections, but instead directed decisions that weakened them through cost-cutting and outsourcing.  At the pleading stage, that is sufficient.  *See In re Data Breach Sec. Litig. Against Caesars Ent. Inc.*, 2025 WL 2393024, at *8.

### 3. Causation

Causation ordinarily presents a factual question not suitable for resolution on a motion to dismiss.  *See Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 650–51 (N.D. Cal. 2020) (quoting *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981)); *see also In re GEICO Customer Data Breach Litig.*, 691 F. Supp. 3d 624, 632 (E.D.N.Y. 2023).

Here**,** Plaintiffs allege a plausible causal chain: Bain directed offshoring and cost-cutting affecting cybersecurity; those decisions weakened PowerSchool's cybersecurity infrastructure; and the breach was later carried out using stolen Movate credentials after cybersecurity functions had been outsourced to that contractor.[15]  At the pleading stage, that is enough.  The involvement of Movate or third-party threat actors does not break the chain of causation because, on Plaintiffs' theory, those were foreseeable consequences of weakened cybersecurity controls over valuable and sensitive data.  *See Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 725 (2001).

### 4. Damages

Bain also argues that Plaintiffs' damages are too indirect and not adequately tied to

---

[15] (Dkt. 263 ¶¶ 47, 87, 89, 92, 163.)

Bain's conduct.  The Court disagrees.  Plaintiffs allege that data was exfiltrated in the breach and that they suffered resulting harm.  At the pleading stage, those alleged losses are sufficiently direct to support a negligence claim.  *Vavak v. Abbott Lab'y, Inc.,* No. CV 10-01995-SVW-JCX, 2011 WL 13130493 (C.D. Cal. Mar. 7, 2011), is distinguishable because there the defendant's product was not connected to the plaintiff's injury.  Here, Plaintiffs allege a direct link between Bain's challenged conduct, the weakening of PowerSchool's cybersecurity, the breach, and the resulting harm.

Accordingly, Bain's motion to dismiss the negligence claim is **denied.**

Bain also joins PowerSchool's arguments that the negligence claim is barred by the economic loss doctrine under New Jersey and California law and is duplicative of contract claims under New York law.  (Dkt. 379 at 22 n.21; Dkt. 303 at 44 n.31.)  Because those arguments were developed in separate briefings and adopted by Bain through joinder rather than independent analysis, the Court reserves ruling on those grounds.  Nothing in this Order precludes Bain from raising those arguments at the appropriate time.

### F. Negligence Per Se

Class Action Plaintiffs claim that Bain is liable under the doctrine of negligence per se based on violating data protection laws.  (Dkt. 302)  Bain argues these statutes do not impose duties on it, and Plaintiffs do not respond adequately.  (Dkt. 303 at 45 n.33; Dkt. 379 at 22 n.21.)  For negligence per se, the defendant must violate a law protecting the plaintiff's class from the harm suffered.  *See Software Designs & Application, LTD v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 474, 482 (Cal. Ct. App. 1996).  Plaintiffs cite statutes imposing obligations on data collectors, but it is not alleged that Bain collected or handled the PII data; PowerSchool did.  (Dkt. 263 ¶¶ 172(b)–(h), 173.)  Each of these provisions, however, imposes obligations on entities that collect, store, maintain, or process personal data.  *See Modisette v. Apple Inc.,* 30 Cal. App. 5th 136, 152 (2018) (proximate causation is an issue of law "where the facts are such that the only reasonable conclusion is an absence of causation").  An investor in a data handler is not necessarily

-22-

liable.  Plaintiffs also cannot argue Bain oversaw PowerSchool's operations to extend obligations.  Even if statutes applied, causation is speculative: Plaintiffs link Bain's cost-cutting policies to PowerSchool's violations, but this is unsupported.  Bain's motion to dismiss the negligence per se claim is **granted.**

### G. Unjust Enrichment (Class Action Count 7)

Bain argues Count 7 should be dismissed for two reasons. First, Bain contends that unjust enrichment is not a standalone cause of action under the law invoked by the Plaintiffs.  Second, Bain argues Plaintiffs do not plausibly allege that Bain received or retained any direct benefit at Plaintiffs' expense.  Bain emphasizes that any payments made by Plaintiffs were payments made under contracts with PowerSchool, not Bain, and that Plaintiffs' overpayment allegations concern PowerSchool alone.  (Dkt. 303 at 48-49; Dkt. 388 at 8.)

In opposition, Plaintiffs argue that unjust enrichment may proceed through a quasi-contract theory and does not require privity.  Plaintiffs further contend they sufficiently allege Bain received a benefit because Bain "received some of the money that Plaintiffs paid to PowerSchool" and also benefitted from cost-cutting measures that allegedly improved Bain's bottom line.  (Dkt. 342 at 33-34.)

In reply, Bain argues that Plaintiffs still do not identify any non-conclusory factual allegations showing that Plaintiffs conferred any benefit on Bain, in contrast to PowerSchool.  Bain further argues that the authorities Plaintiffs cite do not cure that defect because, unlike here, those cases involved allegations that the defendant itself was paid by the plaintiff or directly profited from storing or retaining the plaintiff's data. (Dkt. 379 at 25-26; Dkt. 388 at 8.)

The Court agrees with Bain that Count 7 is not plausibly pleaded.  Even assuming Plaintiffs may seek restitutionary relief under an unjust-enrichment or quasi-contract theory, the allegations described in the briefing do not plausibly demonstrate that Bain received and unjustly retained a concrete benefit conferred by Plaintiffs.  Plaintiffs' theory remains that their schools paid money directly to PowerSchool under software

contracts and that Bain, by virtue of its relationship with PowerSchool, indirectly benefited from those payments and from alleged cost-cutting.  But Plaintiffs seem not to identify any non-conclusory factual allegations showing what benefit was actually transferred to Bain, how Plaintiffs themselves conferred that benefit on Bain rather than PowerSchool, or how Bain's alleged gain was anything more than an attenuated downstream consequence of payments made to another entity.  (Dkt. 303 at 49; Dkt. 379 at 25-26.)

Plaintiffs' response does not cure that deficiency.  Their assertion that Bain received "some of the money" paid to PowerSchool and profited from reduced security spending remains stated at a high level of generality and without factual allegations that would make it plausible that Plaintiffs directly or specifically conferred a benefit on Bain.  And Plaintiffs' own theory, as presented in the briefing, depends on contracts and payments involving PowerSchool, not Bain.  (Dkt. 342 at 33-34; Dkt. 303 at 49.)  Accordingly, Bain's motion to dismiss Count 7 for unjust enrichment is **granted.**

**H. Declaratory Judgment and Injunctive Relief (Class Action Count 8)**

The Declaratory Judgment Act provides a remedy, not an independent cause of action.  *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878–79 (9th Cir. 2022).  Declaratory relief requires an "actual controversy" that is "definite and concrete . . . real and substantial."  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937).

Because Plaintiffs' negligence claim survives, an actual controversy remains.  Plaintiffs' request for declaratory relief is predicated on that surviving claim, which is sufficient at this stage.  For the same reason, Plaintiffs' request for injunctive relief may proceed as a form of prospective relief tied to a surviving substantive claim.

Accordingly, Bain's motion to dismiss the claim for declaratory judgment and injunctive relief is **denied**.

**IV.    LEAVE TO AMEND AND DISCOVERY SCHEDULE**

All dismissals in this Order are without prejudice.  Under Ninth Circuit law, leave to amend should be granted unless the pleading cannot be cured by additional factual

-24-

allegations. *See Cook, Perkiss & Liehe*, 911 F.2d 242, 247 (1990).  The Court concludes that the deficiencies identified here are factual rather than legal defects.  Bain's request for dismissal with prejudice is therefore **denied**.

## V.    CONCLUSION

For the reasons set forth above, Bain's motion to dismiss is **denied** in part and **granted** in part as follows:

The motion is <u>**DENIED**</u> as to:

1. personal jurisdiction over Bain with respect to the Direct Action Plaintiffs;

2. the direct liability claims for intentional interference with contractual relations;

3. the Class Action Plaintiffs' negligence claim; and

4. the Class Action Plaintiffs' request for declaratory and injunctive relief.

The motion is <u>**GRANTED**</u> without prejudice as to:

1. personal jurisdiction over Bain with respect to the Class Action Plaintiffs;

2. the Direct Action Plaintiffs' alter ego theories;

3. the Class Action Plaintiffs' CFAA conspiracy claim;

4. the Class Action Plaintiffs' CDAFA claim;

5. negligence per se; and

6. the Class Action Plaintiffs' unjust-enrichment claim.

**IT IS SO ORDERED.**

DATED:    March 18, 2026

_____
**HON. ROGER T. BENITEZ**
United States District Judge

-25-

25-md-03149-BEN-MSB