UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION.** | ) Case No.:  25-md-03149-BEN-MSB<br>)<br>) **ORDER GRANTING IN PART AND**<br>) **DENYING IN PART DEFENDANT**<br>) **MOVATE, INC.'s MOTION TO**<br>) **DISMISS THE SCHOOL DISTRICT**<br>) **DIRECT ACTION FIRST AMENDED**<br>) **CONSOLIDATED COMPLAINT**<br>) **(TRACK 2)**<br><br>**[Dkt. 366]** |

## I. INTRODUCTION

This multidistrict litigation arises from a data breach involving Defendants PowerSchool Holdings, Inc. and PowerSchool Group, LLC (collectively, "PowerSchool").  PowerSchool provides cloud-based data management software for students and educators in K-12th.  PowerSchool stores sensitive student medical, academic, and other personally identifiable information in a searchable format. Powerschool entered into a subcontract with Defendant Movate, Inc. for computer technology support services.

-1-

Defendant Movate moves to dismiss the Track 2 School District Direct Action First Amended Consolidated Master Complaint and the three claims therein brought specifically against Movate. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Movate's motion.

## II. BACKGROUND[1]

It is alleged that PowerSchool is a Sacramento-based provider of educational management software used by schools. Schools require students, parents, and teachers to provide PowerSchool with sensitive personally identifiable information ("PII"), and PowerSchool stores and maintains this data. There are approximately 4,700 school customers, 4,668,000 teachers and 43,800,000 students affected by Powerschool's maintenance of PII. Powerschool, according to the Complaint, holds out its school software product as being a secure repository of PII data.

On December 20, 2024, the criminal group ShinyHunters used the stolen employee credentials of a Powerschool cybersecurity subcontractor (Movate, Inc.) to access PowerSchool's student information system through its PowerSource portal. The hacker(s) exfiltrated PII and demanded a ransom from Powerschool. Powerschool paid the ransom.

There are two groups of plaintiff school districts. This Order addresses only one of the Track 2 groups. The School District Direct Actions First Amended Consolidated Master Complaint ("DAC") (Dkt. 288) sets forth 46 claims for relief. The Complaint asserts three claims against Movate: Negligence (DAC Count 8), Negligent Hiring and

---

[1] When deciding whether to grant a motion to dismiss, the court generally accepts as true all well-pleaded factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The Court is not making findings of fact, but summarizing some of the allegations made in the 250 page, 46 claim, School District Direct Actions First Amended Consolidated Master Complaint (filed September 12, 2025) (Dkt. 288) ("DAC").

Movate has not moved to dismiss the other Track 2 Plaintiffs' School District Amended Class Action Complaint ("CAC") (Dkt. 263) which sets out eight claims for relief.

-2-

25-md-03149-BEN-MSB

Supervision (DAC Count 9), and Breach of Contract—Third Party Beneficiary (DAC Count 10).  The Complaint alleges that the breach compromised the PII of approximately 50 million individuals, PII including social security numbers, medical information, financial information, addresses, disability records, and custody information.

Movate is a Delaware corporation headquartered in Texas.  PowerSchool hired Movate to provide technical support, customer service, network operations, and platform configuration for its online platform.  According to the Complaint, PowerSchool gave Movate employees extensive access to the SIS and sensitive PII of students, their families, faculty, and teachers.

Plaintiffs claim that the attackers used the credentials of Rayson Cruz, a Movate employee in the Philippines with access to PowerSchool's SIS.  Multiple school districts reportedly identified a "Remote Support connection from the user 'Rayson Cruz'" as a key sign of compromise.  Plaintiffs assert that Movate failed to implement basic, industry-standard security measures, including credential rotation, multi-factor authentication, restrictions on employee access to PII, and proper training and supervision for employees and vendors.

**III. APPLICABLE LAW**

Under FRCP Rule 12(b)(2), "[i]n general, the court may exercise personal jurisdiction over an out of state defendant consistent with both the forum state's long-arm statute and constitutional due process." *Palomar Health v. Am. Guar. & Liab. Ins. Co.,* 2021 WL 4035005, at *2 (S.D. Cal. Sept. 3, 2021), *aff'd,* 2022 WL 3006356 (9th Cir. July 28, 2022).  "Where . . . the motion is based on written materials and affidavits rather than an evidentiary hearing, a plaintiff is only required to make a 'prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Id.*; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Tokio Marine & Nichido Fire Ins. Co. v. Precision Trucking*, 2009 U.S. Dist. LEXIS 139910, at *7 (S.D. Cal. Oct. 16, 2009).

In determining whether a plaintiff has satisfied his burden, uncontroverted allegations in the complaint are taken as true. *Id.* On the other hand, bare bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations do not carry a plaintiff's pleading burden. *Id.* (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)).

Specific jurisdiction requires a showing that: (1) the defendant purposefully availed itself of the forum or purposefully directed its activities toward the forum; (2) the claim arises out of or relates to the forum-related conduct; and (3) the exercise of jurisdiction would be reasonable. *Schwarzenegger*, 374 F.3d at 802.

A motion to dismiss under FRCP 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Under FRCP 8, a complaint should include a "short and plain statement of the claim showing that the pleader is entitled to relief," and may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts to support such a theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). The court construes the alleged facts in the light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.,* 768 F.3d 938, 945 (9th Cir. 2014). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556. If the plaintiff's explanation is plausible, the complaint survives a motion to dismiss under Rule 12(b)(6), "regardless of whether there is a more plausible alternative explanation." *Iqbal*, 556 U.S. at 678.

Thus, a "Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not . . . resolve contests surrounding the facts, the merits of the claim, or the applicability of

defenses." *W. Ins. Co. v. Frontier Homes, LLC*, 2018 WL 8220544, at *2 (C.D. Cal. Mar. 27, 2018) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).

## IV. DISCUSSION

### A. Personal Jurisdiction

Movate argues that the Court should dismiss Plaintiffs' claims because the Court lacks personal jurisdiction. Movate contends that it is a Delaware corporation with its principal place of business in Texas and Plaintiffs fail to allege purposeful, suit-related conduct by Movate directed at California or any facts that would fairly justify pulling a Texas-based computer tech company into this forum. As discussed in a companion Order, the Court lacks general jurisdiction over Movate. However, it may exercise specific jurisdiction.

The parties dispute whether purposeful direction or purposeful availment provides the correct analytical framework for specific jurisdiction. Plaintiffs discuss purposeful direction, arguing that this is a tort case and that Movate's conduct was aimed at California. Movate asserts a lack of specific jurisdiction under purposeful availment analysis. In cases involving negligence or contract-like conduct, courts analyze whether the defendant engaged in acts demonstrating purposeful availment rather than *Calder*-style purposeful direction. *See Schwarzenegger*, 374 F.3d at 802–03; *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007); *Matter of Star & Crescent Boat Co.*, 549 F. Supp. 3d 1145, 1162 (S.D. Cal. 2021). There is no hard line distinction between the two approaches.

The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted). A showing of purposeful availment "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802.

25-md-03149-BEN-MSB

Movate argues that Plaintiffs have not demonstrated purposeful availment. However, under that framework, Plaintiffs have made a prima facie showing. Plaintiffs allege that Movate entered into a contract with PowerSchool, a California-based company, to provide technical support, customer service, network operations, and configuration services for PowerSchool's SIS. Plaintiffs further assert that, under that contract, Movate intentionally accessed California computer systems, including PowerSchool's SIS, and provided services to PowerSchool's California school-district customers. Although Movate argues that the contract was nationwide and that its work was done remotely, those points do not negate jurisdiction at this stage. By servicing a multi-state school software system that contains sensitive information, including that of California students, parents, and teachers, Movate can be said to have assumed the benefits and responsibilities of operating as a California company and supporting data systems that affect California residents. *See Burger King*, 471 U.S. at 475-76, 480.

The second prong is also satisfied. Plaintiffs allege that the breach occurred through the misuse of credentials belonging to a Movate employee who had access to PowerSchool's SIS and that Movate's failures to implement multi-factor authentication, credential rotation, least-privilege access, and adequate training enabled the breach. Accepting those allegations as true, the Plaintiffs' claims stem directly from Movate's conduct related to the forum and demonstrate the "something more" required. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).

As to reasonableness, once the first two prongs are met, Movate bears the burden of presenting a compelling case that jurisdiction would be unreasonable. *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). The relevant factors—including California's interest in adjudicating claims involving the alleged compromise of sensitive information belonging to its residents and the efficiency of resolving those claims in this MDL—do not support dismissal. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011).

-6-

Movate downplays its role by describing itself as only "providing technical support remotely from outside the state, including employees located abroad, on behalf of its client, Powerschool under a contract governed by New York law," calling it an "incidental, background commercial relationship."  The Direct Action School Districts Complaint paints a different picture of Movate providing technical support for a software product requiring technical competency across internet information flow and computer network maintenance for hundreds of schools and their millions of students and teachers affecting the safe-keeping of extremely important personal information data.  The alleged role of Movate may have been a commercial relationship in the background, but it is hardly plausibly described as "incidental."  The Complaint adequately demonstrates Movate's purposeful availment of the forum.

Since the first two elements are shown in Plaintiffs' favor, the exercise of jurisdiction is presumptively reasonable and the burden shifts to Movate to present a compelling case of unreasonableness.  *CollegeSource, Inc.*, 653 F.3d at 1079.  This, Movate has not done.  None of the seven factors articulated by the Ninth Circuit in *CollegeSource* demonstrate that it would be unfair for Movate to defend itself in this forum.  *Id*.  And although Movate says it has, "no operational presence in the state," Plaintiffs point out that Movate's website lists an office location in San Jose, California and has been registered to do business in California since 2000 with an actively registered business agent here.  The Direct Action School Plaintiffs sufficiently allege facts supporting the fair exercise of personal jurisdiction over Defendant Movant.  The motion to dismiss for lack of personal jurisdiction is denied.

**B.  Negligence**

Movate next argues that even if Plaintiffs can establish personal jurisdiction, the Complaint fails to state a negligence claim against Movate because it owed no duty to Plaintiffs, and Plaintiffs do not allege facts showing that Movate breached any such duty.

To establish a negligence claim, Plaintiffs must demonstrate duty, breach, causation, and injury.  *Vasilenko v. Grace Family Church*, 3 Cal. 5th 1077, 1083 (2017).

-7-

"The existence of a duty is a question of law." *Id*. The Court finds that Plaintiffs have sufficiently stated a plausible negligence claim upon which relief can be granted.

### 1. Duty and Breach

Movate argues it owed no duty to the Direct Action School District Plaintiffs. Movate argues that the foreseeability of a breach does not create a duty, by itself. But the Complaint alleges more than foreseeability by itself. Movate says that it had no special relationship with the Plaintiffs because it is just a commercial service provider steps removed. But the Complaint does allege a special relationship, a special hazard, and a special undertaking.

Movate uses an analogy of a bank's online system describing Powerschool as the bank and Movate as a bank customer. Using this analogy, Movate argues that the bank's online security vulnerabilities are not the customer's fault. Applying the analogy, Movate defends itself by saying Powerschool (like the bank) set up the internet security protocols and it (like the customer) was simply using the Powerschool protocols already in place. As such, it had no duty to do more, goes the argument.

A better analogy is that of a grammar school and fenced schoolyard in a neighborhood known for predators and criminals. The Plaintiffs are like the school requiring vulnerable children to be on its campus. Powerschool is like a school contractor hired to erect fencing and gates and padlocks around the schoolyard to keep the children safe within. Movate is like the security guard team hired by Powerschool to walk the fence line and rattle the gates and provide support to ensure the enclosure is secure. Movate attempts to deflect its alleged breach of duty by arguing Powerschool (in this analogy) should have built better gates with bigger padlocks and Movate's security guards were not responsible for the security setup they were given. But the better analysis in this schoolyard analogy is that Movate's school security guard team was well aware of the vulnerable children inside and the dangerous predators and criminals outside yet Movate (as the security guards in this analogy) negligently left the gates open and the padlocks on the ground. The allegations in the Complaint plausibly allege that Movate

-8-

knew of the precious and valuable content of student and faculty PII, could foresee the likelihood of an attempt to exfiltrate the PII by criminals and predators, and negligently left the internet gates open with the data padlocks left on the ground.

Under California law, a defendant has a general duty of reasonable care when their conduct creates a risk of harm. *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 214 (2021). Where the defendant did not itself create the risk, a duty to protect may nonetheless arise from a special relationship with the plaintiff—one marked by dependency, control, and other indicia—even absent contractual privity. *Id.* at 215–16; *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 633–35 (N.D. Cal. 2024) (applying *Brown*'s framework and *Regents* factors to find a special relationship between a data-transfer company and data subjects despite no privity); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (failure to comply with minimum data-security standards constitutes a classic negligence claim); *In re Facebook, Inc. Consumer Priv. Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (defendant had responsibility to handle sensitive information with care); *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *3 (N.D. Cal. Sept. 14, 2016) (defendant duty-bound to protect personal identifying information it obtained). Courts in other jurisdictions have applied the same principle. *See In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 469 (S.D.N.Y. 2022); *Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 103 (D. Mass. 2024).

Here, Plaintiffs allege that Movate had broad access to and control over their private information, understood its sensitivity, and publicly touted compliance with recognized data-security standards. Plaintiffs also allege that Movate failed to put in place basic safeguards, even though credential-based attacks on school systems were predictable and well-publicized. At the pleading stage, these allegations sufficiently establish a duty and breach of the duty. Courts have recognized that the pleading standard for breach in data-breach negligence cases is not high, as the occurrence of a breach itself permits a reasonable inference of inadequate security at the pleading stage. *See Schmitt v. Sn Servicing Corp.*, No. 2:18-cv-00133-JAM-CKD, 2021 WL 3493754, at

-9-

5 (E.D. Cal. Aug. 9, 2021) (quoting *Flores-Mendez v. Zoosk, Inc.*, No. C 20-04929 WHA, 2021 WL 308543, at 4 (N.D. Cal. Jan. 29, 2021)) (when a breach occurs, the thing speaks for itself).  Here, Plaintiffs go further.  The Complaint points out specific failures: inadequate training on credential security; failure to rotate employee credentials; failure to implement least-privilege access; failure to require multi-factor authentication; and failure to limit access to private information.

### 2. Causation

The Complaint plausibly alleges causation.  Plaintiffs allege that the breach was carried out using the compromised credentials of a Movate employee and that the breach would not have occurred had Movate required multi-factor authentication, rotated credentials, and limited employee access.  Under the authorities cited by the parties, the intervention of third-party criminals does not sever causation where the defendant's negligence allegedly created the risk that materialized.  *See Lugtu v. Cal. Highway Patrol*, 26 Cal. 4th 703, 725 (2001) ("It is well established that when a defendant's negligence is based upon his or her having exposed the plaintiff to an unreasonable risk of harm from the actions of others, the occurrence of the type of conduct against which the defendant had a duty to protect the plaintiff cannot properly constitute a superseding cause that completely relieves the defendant of any responsibility for the plaintiff's injuries.").  At this stage, Plaintiffs need only plausibly allege that Movate's conduct was a substantial factor in bringing about the harm.

Movate emphasizes that its systems were not breached and that PowerSchool owned the underlying platform and core security settings.  That point may bear on the ultimate allocation of responsibility.  It does not defeat causation at the pleading stage.

### 3. Damages

Plaintiffs have adequately alleged cognizable damages.  The Complaint alleges compromise of sensitive information, including Social Security numbers and medical information, as well as actual misuse, dark-web exposure, fraudulent activity, credit monitoring expenses, and time spent responding to the breach.  Those allegations suffice

-10-

at the pleading stage. *See In re Shield Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 161 (D. Mass. 2024); *Accellion*, 713 F. Supp. 3d at 637.

Each of the requirements to state a common law claim of negligence under any of the relevant states' jurisprudence is satisfied by the plausible allegations set forth in the Plaintiff's Complaint. Movate's motion to dismiss the negligence claim is **DENIED.**

### C. Negligent Hiring or Negligent Supervision

Movate next argues that Plaintiffs' negligent hiring and supervision claim fails because Plaintiffs do not allege that Movate knew or should have known of any specific risk posed by its employee, Rayson Cruz.

An employer may be liable for harm caused by negligent hiring, supervision, or retention of an incompetent employee, but the plaintiff must allege facts showing the employer knew or should have known that keeping the employee posed a risk of the specific harm that materialized. *See Diaz v. Tesla, Inc.*, 598 F. Supp. 3d 809, 832–33 (N.D. Cal. 2022); *Gray v. Schenectady City Sch. Dist.*, 86 A.D.3d 771, 773 (N.Y. App. Div. 2011).

Plaintiffs' theory extends beyond a propensity claim targeting a single employee. They allege systemic failures in training and supervision, including failures to require credential rotation, restrict access to sensitive information, and train employees in data security practices. At the pleading stage, those allegations are sufficient. Plaintiffs allege that Movate, acting as PowerSchool's agent, had a duty to hire qualified employees and to train and supervise them properly, especially since those employees had access to sensitive information. Plaintiffs further claim that systemic failures foreseeably contributed to the breach. Movate remonstrates that it is plausible that Movate acted with due care in its hiring and supervision of Mr. Cruz. That may prove to be true on summary judgment or at trial. But Plaintiffs' allegations plausibly allege a claim of negligent hiring, training, or supervision, even without allegations of a prior specific tendency toward misconduct by the employee whose credentials were used. *See In re*

-11-

*Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 926 (S.D. Cal. 2023).

Movate's motion to dismiss the negligent hiring and supervision claim is **DENIED.**

### D. Breach of Contract Intended to Benefit Plaintiffs

Movate's last contention is that the breach of contract claim based on Plaintiffs as direct intended beneficiaries fails to state a claim for relief because Plaintiffs are not parties to the contract between Movate and PowerSchool, and they are not mentioned as intended beneficiaries. To state a claim for relief, it is important that the Plaintiffs plausibly allege facts showing the contract was intended for their direct benefit, otherwise the law does not recognize a claim where a plaintiff is simply an incidental beneficiary.

Under New York law, only an intended beneficiary of a contract may assert a claim as a third party. *Vista Co. v. Columbia Pictures Indus., Inc.,* 725 F. Supp 1286, 1296 (S.D.N.Y. 1989) (citations omitted). "An intended beneficiary is one whose 'right to performance is appropriate to effectuate the intention of the parties to the contract and either the performance will satisfy a money debt obligation of the promisee to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" *Id*. (citations omitted). While the obligation to perform to the third party plaintiff need not necessarily be expressly stated in the contract (*id*.), "the intent to benefit a third party must be shown and the benefit must not be merely incidental but immediate to such a degree as to indicate the assumption of a duty to make reparation if the benefit is lost." *Strauss v. Belle Realty Co,* 98 A.D. 2d 424 *6 (N.Y. App. Div. Dec. 27, 1983) (citations omitted).

Both parties point to the Global Services Agreement ("GSA") agreement between Powerschool and Movate.[2] *See* Movate's MTD Dkt. 366, at n.8 and Exh. "A" to

---

[2] The GSA is a contract entered into on March 28, 2022 between Powerschool and Movate, Inc., formerly known as SlashSupport, Inc. doing business as CSS Corp.

-12-

Declaration of J.D. White. They just differ about whether the terms of the GSA evince an intent to directly benefit the Direct Action School Districts. The School District Plaintiffs say it does and then point to Section 1.5 and 5.5 of the Data Privacy Agreement ("DPA") which is an amendment to the main contracts between Movate and Powerschool, rather than pointing to the GSA. *See* Oppo. Dkt 381, at 14. The DPA is an eight page agreement. Section 1.5 simply define what are education records. Section 5.5 defines Movate as a "school official" for purposes of the federal Family Educational Rights and Privacy Act ("FERPA") and imposes an obligation to abide by the FERPA limitations and requirements imposed on school officials.

Next, the Plaintiffs point to Section 10.7 of the GSA which describes an obligation of Movate to "assist" Powerschool in notifying victims in the event of a data breach. It does not impose an obligation on Movate to notify schools or students on its own. Plaintiffs then refer back to DPA Sections 2 and 15.1. Section 2 simply describes the purpose of the agreement – which is to describe Movate's responsibilities for handling and protecting Powerschool's customer data. Section 15.1 is no more than an acknowledgement that Powerschool's customer data may include personal data from education records. Plaintiffs conclude by asserting that the language of these various subsections, when taken together, demonstrate that Plaintiffs are the intended beneficiaries.

The argument is unpersuasive. At most, the agreements demonstrate Powerschool required Movate to treat data with care and security for Powerschool's own benefit and in the event of a breach for Movate to assist Powerschool in its notification obligations. Beyond that, there is little to suggest that Powerschool's contract with Movate was intended to directly benefit the Plaintiff schools. Instead, the GSA describes ordinary contractual intent such that one party, Movate, will work for the direct benefit of the other party, Powerschool, in managing its software product in exchange for money paid.

Plaintiffs concede in their brief that *the best evidence* of whether the contracting parties intended to directly benefit Powerschool's School District customers "can be

-13-

ascertained from *the words of the contract* itself." *Alicea v. City of New York*, 534 N.Y.S.2d 983, 985 (N.Y. App. Div. 1988) (emphasis added). Here the words of the contract do not mention the names of the School District Plaintiffs. Missing from the words of the GSA is any provision empowering the School District Plaintiffs to enforce the Powerschool / Movate contract. Also missing from the words of the contract are any other terms or conditions that Movate was to directly benefit the School Plaintiffs. Like the contract in *Alicea*, Plaintiffs are not signatories, and no part of the GSA or DPA refers to the Plaintiffs as third-party beneficiaries. *Id.* And like the contract at issue in *Alicea*, the GSA and DPA contracts are "devoid of any language showing an intent to allow enforcement by plaintiffs." *Id.*

Therefore, Plaintiffs have not successfully pleaded a plausible claim for breach of contract as a third party intended direct beneficiary and Movate's motion to dismiss is granted. In the event that the Direct Action School Plaintiffs discover evidence that they were, in fact, the intended direct beneficiaries of the Powerschool / Movate contract, they may later move to amend their Complaint.

## V.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** that the:

1.   The Court exercises personal jurisdiction over Defendant Movate, Inc.

2.   The motion to dismiss the claim for negligence (DAC Count 8) is denied.

3.   The motion to dismiss the claim for negligent hiring, training, or supervision (DAC Count 9) is denied.

4.   The motion to dismiss the breach of contract claim based on the theory of intended beneficiary (DAC Count 10) is granted.

**IT IS SO ORDERED.**

**DATED:     March 24, 2026**

_____

**Hon. Roger T. Benitez**

**United States District Judge**

-14-

25-md-03149-BEN-MSB

-15-