Douglas Hallward-Driemeier (MA BBO #627643)*
**ROPES & GRAY LLP**
2009 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 508-4600
Douglas.hallward-driemeier@ropesgray.com

Anne Johnson Palmer (SBN 302235)
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6300
anne.johnsonpalmer@ropesgray.com

Christopher M. Young (SBN 163319)
Justin Van Ligten (SBN 353587)
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
christopher.young@us.dlapiper.com
justin.vanligten@us.dlapiper.com

*Attorneys for Defendants PowerSchool Corporation and PowerSchool Group, LLC*

[*Additional Counsel in Signature Block*]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br>*All Track One Actions* | Case No. 3:25-MD-03149-AJB-MSB<br><br>**COMBINED MEMORANDUM OF LAW IN SUPPORT OF POWERSCHOOL'S MOTIONS TO RECONSIDER OR, IN THE ALTERNATIVE, TO CERTIFY FOR INTERLOCUTORY APPEAL AND STAY DISCOVERY** |

# TABLE OF CONTENTS


Page

INTRODUCTION ........ 1

LEGAL STANDARD ........ 5

I. MOTION TO RECONSIDER ........ 5

II. MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL AND STAY DISCOVERY ........ 5

ARGUMENT ........ 5

I. RECONSIDERATION IS WARRANTED BECAUSE THE COURT COMMITTED CLEAR ERROR ........ 5

A. The Court Erred by Failing to Individually Analyze the Standing of Each Named Plaintiff, as Binding Precedent Requires ........ 6

B. The Court Erred in Its Application of Supreme Court and Ninth Circuit Precedent to Determine Whether the "No-Injury" Plaintiffs Suffered Concrete Harm ........ 12

II. IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY REVIEW AND STAY DISCOVERY ........ 14

A. The Court's Order Squarely Raises Controlling Questions of Law ........ 15

B. The Court's Order Conflicts with Other Decisions, Demonstrating Substantial Ground for Difference of Opinion ........ 16

C. An Immediate Appeal Would Advance the Termination of the Litigation by Promoting Resolution and Simplifying Discovery ........ 18

D. The Court Should Stay Discovery Pending Interlocutory Review ........ 20

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abellard v. Stretto, Inc.*,
No. 24-cv-01030, 2025 WL 1674265 (C.D. Cal. Apr. 25, 2025)........................18

*Asis Internet Servs. v. Active Response Grp.*,
No. C07 6211, 2008 WL 4279695 (N.D. Cal. Sep. 16, 2008) ............................15

*August v. PowerSchool Holdings, Inc.*,
No. 2:25-cv-00431 (E.D. Cal. filed Jan. 31, 2025), *transferred*, No. 3:25-cv-01012 (S.D. Cal. Apr. 23, 2025) ..........................................................9

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019)............................................................17

*Beaver v. Tarsadia Hotels*,
29 F. Supp. 3d 1323 (S.D. Cal. 2014)...........................................................5, 20

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*,
No. 21-cv-00762, 2023 WL 1769810 (S.D. Cal. Feb. 2, 2023) ...........................5

*E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*,
No. CV F 03-5412, 2008 WL 4224492 (E.D. Cal. Sep. 12, 2008) ......................3

*Franco-Gonzalez v. Napolitano*,
No. CV 10-02211, 2011 WL 13117372 (C.D. Cal. July 18, 2011)......................8

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022)............................................................18

*Harvey v. National Amusements, Inc.*,
No. 24-10027, 2025 WL 928776 (D. Mass. Mar. 27, 2025) ..............................18

*Healy v. Milliman, Inc.*,
164 F.4th 701 (9th Cir. 2026) ........................................................*passim*

*Holmes v. Elephant Ins.*
156 F.4th 413 (4th Cir. 2025) ...................................................................17, 18

*I.C. v. Zynga, Inc.*,
600 F. Supp. 1034 (N.D. Cal. 2022) ........................................................ 18

*In re Illuminate Educ. Data Sec. Incident Litig.*,
No. SACV 22-1164, 2023 WL 3158954 (C.D. Cal. Apr. 19, 2023) .................. 12

*J.B. v. PowerSchool Holdings, Inc.*,
No. 2:25-cv-00327 (E.D.N.Y. filed Jan. 17, 2025), *transferred*, No. 3:25-cv-00994 (S.D. Cal. Apr. 22, 2025) .................................................... 9

*Kisil v. Illuminate Educ., Inc.*,
No. 23-4114, 2025 WL 2589000 (9th Cir. Sep. 8, 2025) ........................... *passim*

*In re Korean Air Lines Co., Antitrust Litig.*,
642 F.3d 685 (9th Cir. 2011) ........................................................................ 9

*Krottner v. Starbucks Corp.*,
628 F.3d 1139 (9th Cir. 2010) ................................................................. 4, 14

*United States v. Lee*,
821 F.3d 1124 (9th Cir. 2016) ..................................................................... 11

*Lowden v. T-Mobile*,
512 F.3d 1213 (9th Cir. 2008) ....................................................................... 7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ....................................................................................... 8

*Mehedi v. View, Inc.*,
No. 21-cv-06374, 2024 WL 3748012 (N.D. Cal. Aug. 8, 2024) ........................ 16

*Nuh Nhuoc Loi v. Scribner*,
671 F. Supp. 2d 1189 (S.D. Cal. 2009) ......................................................... 13

*Perron v. Hewlett-Packard Co.*,
No. 10-CV-00695, 2011 WL 1748431 (N.D. Cal. May 6, 2011) ........................ 8

*Pittman v. County of San Diego*,
No. 09-CV-1952, 2010 WL 4570252 (S.D. Cal. 2010) ....................................... 5

*Quinn v. Proctor & Gamble Co.*,
No. 24-CV-856, 2025 WL 437905 (S.D. Cal. Feb. 6, 2025) ............................... 3

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ....................5, 16

*Rollins v. Dignity Health*,
2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ....................16, 17, 19

*In re Samsung Data Sec. Breach Litig.*
761 F. Supp. 3d 781, 790 (D.N.J. 2025)....................17, 18

*Sanford v. MemberWorks, Inc.*,
625 F.3d 550 (9th Cir. 2010) ....................2, 7, 8, 16

*School Dist. No. 1J v. ACandS, Inc.*,
5 F.3d 1255 (9th Cir. 1993) ....................5

*SEC v. Mercury Interactive, LLC*,
No. 07-cv-02822, 2011 WL 1335733 (N.D. Cal. Apr. 7, 2011) ....................19

*Singh v. Bondi*,
161 F.4th 560 (9th Cir. 2025) ....................4

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011)....................8

*Smith v. Clark Cnty. Sch. Dist.*,
727 F.3d 950 (9th Cir. 2013) ....................14

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................6, 7

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*,
785 F. Supp. 2d 925 (C.D. Cal. 2011) ....................9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................*passim*

*United States v. Lee*,
821 F.3d 1124 (9th Cir. 2016) ....................11

*We Are Am./Somos Am., Coalition of Ariz. v. Maricopa Cnty. Bd. of Supervisors*,
809 F. Supp. 2d 1084 (D. Ariz. 2011) ....................19

*Western Watersheds Project v. Grimm*,
921 F.3d 1141 (9th Cir. 2019) .......................................................................14

*Youssofi v. Credit One Fin.*,
2016 WL 6395086 (S.D. Cal. Oct. 28, 2016)...............................................15, 19

*In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*,
888 F.3d 1020 (9th Cir. 2018) ..........................................................4, 10, 11, 14

**Statutes**

28 U.S.C. § 1292(b) ...........................................................................*passim*

**Other Authorities**

9th Cir. R. 36-2 .......................................................................................13

9th Cir. R. 36-3(b).....................................................................................13

Bureau of Justice Statistics, Data Breach Notifications & Identity
Theft, 2021 (Jan. 2024), https://perma.cc/S428-N29U .......................................3

Civ. L. R. 7.1 .............................................................................................5

FBI, Internet Crime Report 2025, https://perma.cc/774R-J85A; .............................3

Fed. R. App. P. 32.1(a) ..............................................................................13

Testimony of James Everett Lee, Chief Operating Officer, Identity
Theft Resource Center, Before the Subcomm. on Consumer Prot.,
Prod. Safety & Data Sec. of the S. Comm. on Com., Sci. & Tech.
(May 8, 2024), https://perma.cc/DJ6P-6NVS ....................................................3

# INTRODUCTION

While reconsideration and certification for interlocutory appeal are exceptional forms of relief, this is a truly exceptional case. A recent Ninth Circuit decision applied Supreme Court precedent to affirm dismissal of identical claims, arising out of an identical data breach, against the direct competitor of the defendant in this multidistrict litigation ("MDL"). *Kisil v. Illuminate Educ., Inc.*, 2025 WL 2589000, at *1-2 (9th Cir. Sep. 8, 2025) ("*Illuminate*") (unpublished). The Court's Order on PowerSchool's Motion to Dismiss the Track 1 Complaints, Dkt. No. 436 ("Order"), however, declined to follow that precedent, simply because it was unpublished. Had the Order followed the Supreme Court's requirements for standing, as articulated by the Ninth Circuit, over 70% of the named Plaintiffs would have been dismissed, including several complaints in their entirety. *See* App. A, Dkt. No. 333-1 (tracking 121 named Plaintiffs who have failed to allege sufficient injury or harm). But instead of streamlining further proceedings, the Order has thus led the Track 1 parties to embark on discovery of 32 named Plaintiffs—25 of whom should have been dismissed—in four "bellwether" states, one of which—New York—does not have a *single* named Plaintiff whose claims would have survived dismissal under the Ninth Circuit's recent standard. *See id*. This raises the distinct possibility that, after discovery is completed and the Court finally reaches the question of these individuals' standing, counsel for Plaintiffs will seek a "do-over" with other named Plaintiffs. While Defendants would strongly resist any such bellwether substitution, it would nevertheless be a colossal waste of resources.

That the Court's Order conflicts with a Ninth Circuit panel decision directly on point itself demonstrates that the Order, at the very least, warrants certification for interlocutory appeal. But the Court need not certify, because nothing precludes this Court from following that unpublished Ninth Circuit decision right now—particularly because that decision merely applied the Supreme Court's holdings in

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). The Order's premise—that if "at least one Plaintiff's sensitive data" was exposed, *all* the named Plaintiffs have standing to survive a motion to dismiss, Order 10-11, including those who failed to allege that any of their own sensitive information was at risk—was clear error under binding Ninth Circuit precedent. While it is true that *unnamed* plaintiffs need not establish standing before class certification, *see Healy v. Milliman, Inc.*, 164 F.4th 701, 706 (9th Cir. 2026), prior to certification each *named* plaintiff asserts only her "individual claims" and "must satisfy the jurisdictional requirements of Article III independently of" other named plaintiffs, *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 556 n.3 (9th Cir. 2010) (affirming dismissal of one of three named plaintiffs in a putative class action for lack of standing). The Order cites *no* decision of the Ninth Circuit, or any other court, that relieves a named plaintiff from the obligation to establish standing to assert her own individual claims prior to class certification. *Sanford* applied well-settled law that, prior to certification, each plaintiff simply asserts her own claims and, as the Supreme Court has made clear, "standing is not dispensed in gross." *TransUnion*, 594 U.S. at 431. The Order's failure to address the standing of each named Plaintiff was clear error under settled, binding precedent.

Properly applying that precedent and evaluating the standing of each named Plaintiff would have significantly narrowed this case because, under current Supreme Court and Ninth Circuit jurisprudence, only data-breach victims who allege the theft of highly confidential information have standing in federal court. Data breaches have become an unfortunate fact of modern life, and standing law has developed to recognize that reality. Hundreds of millions of Americans have their personally identifiable information stolen each year.[1] Confronting this new reality,

---

[1] *See, e.g.*, FBI, Internet Crime Report 2025, https://perma.cc/774R-J85A; Bureau

the Supreme Court articulated clear principles governing standing that preclude every individual who has had some data exposed from successfully pursuing a lawsuit. In *TransUnion*, the Court held that Article III requires "concrete harm," and that, "without more," the "mere risk of future harm" from the disclosure of information "cannot qualify as a concrete harm in a suit for damages." *Id.* at 415, 437. The Ninth Circuit applied that principle in *Illuminate* to facts indistinguishable from those here, holding that the cyber theft of demographic and educational data that did *not* include "Social Security numbers and financial information" did not create any concrete injury. 2025 WL 2589000, at *1-2.

Under *TransUnion* and *Illuminate*, the named plaintiffs who alleged the exposure of only non-sensitive data of the kind included in phone books or similar public databases, or who do not specify what sensitive information was exposed—those termed the "No-Injury Plaintiffs" in PowerSchool's motion to dismiss—do not, as a matter of law, have standing to proceed. In this pre-certification MDL, the Order should have evaluated those No-Injury Plaintiffs' allegations separately and then applied *Illuminate* to dismiss them from the case, allowing the parties and the Court to focus on only those Plaintiffs and complaints that allege the sort of harm that can suffice for standing at this stage. Instead, the Order aggregated allegations across individuals and even across complaints, and it favored older decisions like *In re Zappos.com, Inc., Customer Data Security Breach Litigation.*, 888 F.3d 1020 (9th

---

of Justice Statistics, Data Breach Notifications & Identity Theft, 2021 (Jan. 2024), https://perma.cc/S428-N29U; Written Testimony of James Everett Lee, Chief Operating Officer, Identity Theft Resource Center, Before the Subcomm. on Consumer Prot., Prod. Safety & Data Sec. of the S. Comm. on Com., Sci. & Tech. (May 8, 2024), https://perma.cc/DJ6P-6NVS. The Court can take judicial notice of these facts. *See, e.g.*, *Quinn v. Proctor & Gamble Co.*, 2025 WL 437905, at *3 (S.D. Cal. Feb. 6, 2025) (taking judicial notice of facts published by government entities); *E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, 2008 WL 4224492, at *6 (E.D. Cal. Sep. 12, 2008) (same for testimony before California State Senate).

Cir. 2018), and *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010), that have been abrogated in relevant respect by the Supreme Court. *See* Order 7-11.

The Court should reconsider its Order to correct that series of mistakes. A panel of the Ninth Circuit has already held that data-breach victims like the No-Injury Plaintiffs who fail to allege the exposure of their *own* sensitive data should be dismissed. For the same reason that *Illuminate* was unpublished, the Order should have applied it here: *Illuminate* does not break new ground or create new law (much less do so incorrectly). It was not published because it merely applies settled Supreme Court standing doctrine to a particular data-breach case—one with identical facts to those here. *See Singh v. Bondi*, 161 F.4th 560, 570 (9th Cir. 2025) (VanDyke, J., concurring) (suggesting that, under 9th Cir. R. 36-2, when a case's result is "obvious" when evidence is "properly considered," its resolution will not be published). If the Court does not reconsider, respectfully, it should certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b). The Order raises important questions of law about whether and when named plaintiffs without Article III standing must be dismissed from a putative class action. Because those questions will fundamentally shape the trajectory of this case, the Ninth Circuit should have the opportunity to answer them definitively now. So long as the No-Injury Plaintiffs remain in this case, it is much less likely that the parties will resolve it, and much *more* likely that the parties and the Court will spin their wheels on needless discovery. The Track 1 discovery order, Dkt. No. 441, proves the point: over 78% of the bellwether Plaintiffs identified for discovery did not allege any disclosure of sensitive data, and should have been dismissed under settled Supreme Court law and *Illuminate*, the most on-point Ninth Circuit decision applying that law. If the Court believes the Ninth Circuit panel decision was in error, it should certify the Order so that the Ninth Circuit can consider that question itself.

## LEGAL STANDARD

## I. MOTION TO RECONSIDER

The Court may reconsider its decision on a motion to dismiss "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Pittman v. County of San Diego*, 2010 WL 4570252, at *2 (S.D. Cal. 2010) (citation omitted) "To determine the merits of a request to reconsider an interlocutory order, district courts in this circuit apply the standard for Rule 59(e) reconsideration motions." *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 2023 WL 1769810, at *3 (S.D. Cal. Feb. 2, 2023) (motion for reconsideration on denial of motion to dismiss); *see also* Civ. L. R. 7.1(i). "Reconsideration is appropriate," among other grounds, "if the district court . . . committed clear error or the initial decision was manifestly unjust." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

## II. MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL AND STAY DISCOVERY

Under 28 U.S.C. § 1292(b), a party may petition the district court for appellate review of interlocutory orders. An order merits interlocutory appeal where it "[1] involves a controlling question of law as to which [2] there is substantial ground for difference of opinion' and where [3] 'an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687-88 (9th Cir. 2011) (citation omitted). A stay pending interlocutory appeal is appropriate "if it will promote economy of time and effort." *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1323, 1338 (S.D. Cal. 2014).

## ARGUMENT

## I. RECONSIDERATION IS WARRANTED BECAUSE THE COURT COMMITTED CLEAR ERROR

The Court committed clear error by (1) allowing the No-Injury Plaintiffs to

bootstrap their standing from the allegations of other named Plaintiffs, despite Article III's requirement that *each* named Plaintiff independently establish standing, and (2) compounding that error by failing to evaluate the No-Injury Plaintiffs' allegations under highly persuasive Ninth Circuit authority applying binding Supreme Court precedent to identical facts. The Court should reconsider its Order and hold that the No-Injury Plaintiffs lack Article III standing.

### A. **The Court Erred by Failing to Individually Analyze the Standing of Each Named Plaintiff, as Binding Precedent Requires**

In the Order, the Court construed *Zappos* and *Healy* to prohibit it from individually evaluating the standing of each named Plaintiff—or even from considering the named Plaintiffs under the three "bucket" framework in which Defendants proposed grouping Plaintiffs by their allegations—because it believed that "one named plaintiff's injury suffices for all" named Plaintiffs. Order 8-9. As discussed further below, a more careful review demonstrates that neither *Zappos* nor *Healy* supports that rule.[2] More important, the rule on which the Order is premised directly contradicts both Supreme Court and other Ninth Circuit precedent that directly addresses this question.

In *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), the Supreme Court specifically noted that "named plaintiffs who represent a class must allege and show that they personally have been injured," observing that the fact "that a suit may be a class action adds nothing to the question of standing." *Id.* at 338 n.6 (citation modified). That caution is directly contrary to the premise of the Order here in which the standing of 121 named Plaintiffs turned *entirely* on the fact that these were purported

[2] Plaintiffs first cited *Healy* as purported support for a rule that "one named plaintiff" suffices in an "outline" of their argument submitted on the eve of oral argument. Dkt. No. 412, at 30. Plaintiffs never cited *Zappos* for that supposed rule in their Motion to Dismiss briefing.

class actions. The Supreme Court specifically observed that a named plaintiff may not rely on an injury "suffered by other, unidentified members of the class to which they belong," *id.* (citation omitted); similarly, a *named* plaintiff cannot rely on the alleged injury of other *named* plaintiffs, for "standing is not dispensed in gross," *TransUnion*, 594 U.S. at 431. PowerSchool cited both *Spokeo* and *TransUnion* in its Motion to Dismiss briefing, but the Order failed to follow their instruction.

The Court need not rely solely on that Supreme Court precedent, however, because the Ninth Circuit has itself recognized these same principles, explicitly holding that a named plaintiff in a putative class action must independently have standing to survive a motion to dismiss, rather than rely on the standing of other named plaintiffs. In *Sanford*, three named plaintiffs brought a consumer fraud suit styled as a putative class action. 625 F.3d at 556. The district court granted a motion to dismiss one of the named plaintiffs, Patricia Sanford, for lack of standing but allowed the other two plaintiffs, Preston and Rita Smith, to pursue their claims. *See id*. Ms. Sanford appealed to the Ninth Circuit, arguing that the district court need not have considered her standing because the Smiths had satisfied Article III. *See id.* at 556 n.3. For support, Ms. Sanford cited another Ninth Circuit case, *Lowden v. T-Mobile*, 512 F.3d 1213, 1215 n.1 (9th Cir. 2008), which repeats the same uncontroversial principle laid out in *Zappos* and *Healy*: '"In a class action, standing is satisfied if at least one named plaintiff meets the requirements' of Article III" (meaning that the class action "case" can proceed). *Sanford*, 625 F.3d at 556 n.3 (citation omitted). The Ninth Circuit expressly rejected, however, Ms. Sanford's attempt to stretch that proposition to mean that all named plaintiffs in a putative class survive a motion to dismiss if any one of them has standing. *See id.* Specifically, the court held that, because the case had not yet reached class certification, and no class had yet been certified, "this action consists of Sanford's individual claims and the Smiths' individual claims, which arise out of different facts." *Id.*; *see also Smith*

*v. Bayer Corp.*, 564 U.S. 299, 313-14 (2011) (until a class is certified, the putative class includes only the named plaintiffs). "To bring her individual claims," the Ninth Circuit held, "***Sanford must satisfy the jurisdictional requirements of Article III independently of the Smiths***." *Sanford*, 625 F.3d at 556 n.3 (emphasis added). In other words, *Sanford* held unequivocally that, before class certification, each named plaintiff in a putative class must individually demonstrate her own standing to pursue her individual claims in order to proceed past a motion to dismiss. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation"). District courts within the Ninth Circuit have since relied on *Sanford* for precisely this rule. *See, e.g.*, *Franco-Gonzalez v. Napolitano*, 2011 WL 13117372, at *2 (C.D. Cal. July 18, 2011) (citing *Sanford* for the proposition that "[w]here a class has yet to be certified, each [p]laintiff must satisfy Article III standing requirements independently of each other"); *Perron v. Hewlett-Packard Co.*, 2011 WL 1748431, at *5 (N.D. Cal. May 6, 2011) (dismissing the plaintiffs' complaint in reliance on the principle from *Sanford* that before class certification, the named plaintiffs' claims must be evaluated individually). And, as discussed below, the Fourth Circuit and other courts have applied the rule *Sanford* articulates to dismiss certain named plaintiffs in putative class actions while allowing other plaintiffs to proceed. *See infra* pp. 16-17.

The principle that each named plaintiff must individually satisfy Article III is even more apt in this case, an MDL comprising dozens of separate class actions. It is black-letter law that "[w]ithin the context of MDL proceedings, individual cases that are consolidated or coordinated for pretrial purposes remain fundamentally separate actions, intended to resume their independent status once the pretrial stage of litigation is over." *In re Korean Air Lines Co., Antitrust Litig.*, 642 F.3d 685, 700 (9th Cir. 2011). Furthermore, courts handling multi-district litigation proceedings

must be cognizant not to "elevate the status of the Master Consolidated Complaint beyond that of a mere procedural device [in a way that would] have the impermissible effect of altering the parties' substantive rights." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 785 F. Supp. 2d 925, 928 (C.D. Cal. 2011). The Court's adoption of the "standing for one is standing for all" approach in this MDL context did just that. By allowing one Plaintiff's standing to confer standing on all Plaintiffs, the Court effectively allowed a Plaintiff who filed suit in one jurisdiction to confer standing on Plaintiffs who filed entirely separate complaints in separate jurisdictions. This result is wholly incompatible with the principle that these cases "remain fundamentally separate actions," *In re Korean Air Lines*, 642 F.3d at 700, and that the consolidated complaint in the MDL is "a mere procedural device," that ought not "have the impermissible effect of altering the parties' substantive rights," *In re Toyota*, 785 F. Supp. 2d at 928. Had these cases never been consolidated into an MDL for pretrial proceedings, the various courts separately considering the standing of the plaintiffs before them would, of course, not look to the standing of plaintiffs in separate suits filed in other jurisdictions, resulting in the dismissal of at least 18 complaints. *See, e.g.*, *J.B. v. PowerSchool Holdings, Inc.*, No. 2:25-cv-00327 (E.D.N.Y. filed Jan. 17, 2025), *transferred*, No. 3:25-cv-00994 (S.D. Cal. Apr. 22, 2025); *August v. PowerSchool Holdings, Inc.*, No. 2:25-cv-00431 (E.D. Cal. filed Jan. 31, 2025), *transferred*, No. 3:25-cv-01012 (S.D. Cal. Apr. 23, 2025). But by adopting the "one for all" approach to evaluating standing, the Court effectively reached such a result, thereby using the MDL procedure to rewrite the parties' substantive rights. The Court should reconsider its Order to correct that clear error.

As noted above, the Order reached its contrary conclusion based on its reading of *Zappos* and *Healy*. But *Zappos* and *Healy* state merely that a putative class action may proceed as long as one named plaintiff has standing to litigate, not that named

plaintiffs without standing may proceed. Neither addressed, much less held, that a named plaintiff in a putative class need not establish his standing to pursue his individual claims at the motion to dismiss stage. In *Zappos*, *all* named plaintiffs alleged that their highly sensitive credit or debit card information had been compromised in a data breach, but only a subset alleged they had actually experienced misuse. *See* 888 F.3d at 1023. The district court dismissed the plaintiffs who had not yet experienced misuse for lack of standing. *Id.* at 1024. That "no-misuse" group appealed, and the Ninth Circuit reversed. *Id.* at 1023. It did so in part because, pre-*TransUnion*, the other plaintiffs' allegations of actual misuse increased the plausibility of the "no-misuse" group's risk-of-future-harm allegations. *See id.* at 1027. In a footnote regarding the purported inadequacies of one named plaintiff's allegations in his original complaint, the Ninth Circuit wrote that "only one Plaintiff needs to have standing for a class action to proceed," *id.* at 1028 n.11, but it held that each of the named plaintiffs had adequately alleged their own standing in a subsequent amended complaint, *id* at 1028. *Zappos* thus had no occasion to discuss whether a named plaintiff in a putative class could proceed past a motion to dismiss without adequately alleging standing to support that plaintiff's individual claims. *Healy* also provides no support for the No-Injury Plaintiffs. Eight years after *Zappos*, the Ninth Circuit in *Healy* cited *Zappos*'s footnote 11 for the proposition that "Article III's requirements are satisfied *before* a class is certified so long as at least one named plaintiff has standing." 164 F.4th at 706 (emphasis added). But that language was cited in support of a holding that after class certification at summary judgment even *unnamed* plaintiffs must establish their own standing. *Id.* Thus, *Healy* too did not hold that *named* plaintiffs need not establish their standing at the motion to dismiss stage.

Notably, the Court's reading of *Zappos* would render the entire *Zappos* appellate decision superfluous. In *Zappos*, the district court had already concluded

that one group of named plaintiffs had standing. *See* 888 F.3d at 1024. If the Ninth Circuit had subscribed to a "standing for one is standing for all" principle, it could have reversed the district court merely on the grounds that the district court had already found that other named plaintiffs satisfied Article III. Instead, the Ninth Circuit carefully evaluated the other named plaintiffs' allegations. *See id*. at 1025-26. Indeed, the original panel decision did not include the quoted language at all, which was instead inserted on rehearing to address the claims of plaintiff Ree. *See id.* at 1022. Because the Ninth Circuit abides by the '"cardinal principle of judicial restraint' that 'if it is not necessary to decide more, it is necessary not to decide more,"' *United States v. Lee*, 821 F.3d 1124, 1127 n.2 (9th Cir. 2016) (citation omitted), its detailed analysis of the appealing plaintiffs' standing in *Zappos* is irreconcilable with the "standing for one is standing for all" approach that the Order attributed to the Ninth Circuit. *Healy*, too, is facially inconsistent with the Court's approach: In the sentence before the one indicating that standing for one named plaintiff is sufficient before class certification for the "case" to proceed, *Healy* described as uncontroversial the proposition that, "[a]t the start of the life cycle of a class action before a class is certified, . . . named class members"—all of them—"must demonstrate evidence of standing." 164 F.4th at 706. That is precisely what the Order failed to analyze.

The Order treated the allegations of the individual named plaintiffs as though they could be assembled, Frankenstein-like, into an amalgam "Plaintiff" for standing analysis. *See* Order 9-11. Under binding law, however, each individual Plaintiff was required to establish standing on the basis of their own alleged injuries. The Order's failure to hold each Plaintiff to that standard was clear error, and the Court should grant reconsideration to correct it.

### B. **The Court Erred in Its Application of Supreme Court and Ninth Circuit Precedent to Determine Whether the "No-Injury" Plaintiffs Suffered Concrete Harm**

In *TransUnion*, the Supreme Court made clear, in another case about the wrongful disclosure of information, that only certain injuries—those that have a '"close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts"—qualify as "concrete harm" as required under Article III. 594 U.S. at 424, 442 (citation omitted). The Supreme Court also emphasized that "the mere risk of future harm, without more" does not suffice for a damages claim. *Id.* at 437. That is because "[i]f the risk of future harm materializes and [an] individual suffers a concrete harm, then the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages." *Id.* at 436. Were mere risk enough to satisfy Article III, individuals who actually experienced an injury would be severely undercompensated.

In *Illuminate*, the Ninth Circuit illustrated how to apply *TransUnion* in the data-breach context. There, another education technology provider experienced a cyberattack compromising substantially the same type of information as PowerSchool collected on behalf of its school-district customers. *In re Illuminate Educ. Data Sec. Incident Litig.*, 2023 WL 3158954, at *1 (C.D. Cal. Apr. 19, 2023). The parents of the more than three million students affected by the breach sued. *Id.* They alleged in a putative class action complaint that a third party had exfiltrated student academic, behavioral, and demographic information by accessing one of Illuminate's software platforms. *Id.* As with the No-Injury Plaintiffs' data, the compromised data in *Illuminate* did not include Social Security numbers or any payment card or bank information, but it was alleged to potentially include "grades, socio-economic disadvantage status, and special education information." *Illuminate*, 2025 WL 2589000, at *1. The *Illuminate* plaintiffs advanced largely the

same causes of action that the Track One Plaintiffs assert here, based on purportedly inadequate data security. In *Illuminate*, however, the district court dismissed the plaintiffs' claims for lack of standing, and the Ninth Circuit affirmed. *Id.* Applying *TransUnion*, the Ninth Circuit explained that the plaintiffs had not plausibly alleged any concrete harm. *See id.* at *1-2. Importantly, the Ninth Circuit agreed with the district court that "the kind of information at issue"—educational data, but not SSNs or financial accounts—was not "the kind that this court normally considers sufficient to find a credible threat of identity theft." *Id.* at *2.

Here, the Court acknowledged that *Illuminate* "offers a forward-looking take on the requirements for standing in a data breach case." Order 7. The Court had specifically requested supplemental briefing on how *Illuminate* affected PowerSchool's dismissal arguments. But without any specific briefing or argument from the parties on *Illuminate*'s precedential value, the Court decided not to rely on *Illuminate* because it is an unpublished case. Order 7. That was an error. Even nonbinding, unpublished decisions can be cited, "have persuasive value[,] and indicate how the Ninth Circuit applies binding authority." *Nuh Nhuoc Loi v. Scribner*, 671 F. Supp. 2d 1189, 1202 n.10 (S.D. Cal. 2009); *see also* Fed. R. App. P. 32.1(a); 9th Cir. R. 36-3(b). That is especially true when, as in *Illuminate*, an unpublished case involves identical facts and illustrates the uncontroversial application of intervening Supreme Court precedent. Indeed, the Ninth Circuit does not publish dispositions that do not create new law or break new ground. *See* 9th Cir. R. 36-2 (explaining the justifications for publication). The Order expressed concern that relying on *Illuminate* would be the "kind of mistake" that the Ninth Circuit would reverse. Order 7 (citing *W. Watersheds Project v. Grimm*, 921 F.3d 1141, 1147 (9th Cir. 2019)). But *Watersheds* has no application here. There, the Ninth Circuit held that a district court erred in relying on an unpublished decision because the case was "significantly different factually" and resulted in applying the

incorrect standard. *W. Watersheds Project v. Grimm*, 921 F.3d 1141, 1147 (9th Cir. 2019). *Illuminate* and this litigation, however, could not be more alike.

The Order compounds this error by relying on *Zappos* and *Krottner*, Order 7, neither of which is factually analogous, and each of which has been abrogated at least in part by *TransUnion*. *See Healy*, 164 F.4th at 708 (*Zappos* has "been abrogated [by *TransUnion*] to the extent [it] would have permitted unnamed class members to go without demonstrating standing at trial or in any later claims process."). More importantly, *Zappos* and *Krottner* are fundamentally different from this case. In both, the plaintiffs alleged that the relevant data breaches compromised their SSNs or payment card information. *See Zappos*, 888 F.3d at 1023; *Krottner*, 628 F.3d at 1140. Those crucial allegations are entirely absent from the No-Injury Plaintiffs' pleadings. *See* App. A, Dkt. No. 333-1, at 1-12. And as *Illuminate* shows, in a data breach case, "the kind of information at issue" matters. 2025 WL 2589000, at *2. Because, on that point, *Illuminate* was merely applying binding Supreme Court precedent to an indistinguishable set of facts, it was error for the Court to disregard it. *See Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) ("[I]t is a clear error of law to not apply controlling Supreme Court precedent.").

## II. IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY REVIEW AND STAY DISCOVERY

If the Court does not reconsider its Order, respectfully, it should certify the Order to allow the Ninth Circuit to review two issues under 28 U.S.C. § 1292(b): (1) whether, to survive a motion to dismiss, each named plaintiff alleging individual claims for damages in a proposed class must individually allege their own concrete harm; and (2) whether a named plaintiff in a data breach case can ever plausibly plead concrete harm when they allege only that non-sensitive "phonebook" information was involved. Both issues present controlling questions of law: how

Article III's standing requirements apply to (and narrow) the universe of potential plaintiffs in a data breach case. There are substantial grounds for difference of opinion – on both issues, the Court disagreed with on-point decisions from the Ninth Circuit and other district and appellate courts. And the resolution of both issues may materially advance the ultimate termination of this litigation: Dismissing the claims of the 121 named Plaintiffs who have alleged no concrete harm now—rather than waiting inevitably to dismiss them at summary judgment or post-class certification—will promote resolution, prevent the parties from engaging in needlessly inefficient bellwether discovery, and narrow the grounds of the dispute for the Court. PowerSchool thus respectfully requests certification, and asks the Court to stay the Track One proceedings pending the Ninth Circuit's review.

### A. The Court's Order Squarely Raises Controlling Questions of Law

"Whether [p]laintiffs have standing to bring [a] case is a controlling question of law." *Asis Internet Servs. v. Active Response Grp.*, 2008 WL 4279695, at *3 (N.D. Cal. Sep. 16, 2008). The reason is that a "question is controlling if its resolution on appeal could have a material effect on the outcome of the case in the district court." *Youssofi v. Credit One Fin.*, 2016 WL 6395086, at *2 (S.D. Cal. Oct. 28, 2016) (Battaglia, J.). The questions PowerSchool has identified easily satisfy that test. If every named plaintiff in a proposed class action must allege concrete harm, and if a plaintiff can never allege concrete harm when only their non-sensitive "phonebook" information is at risk, then the 121 No-Injury Plaintiffs do not have standing to pursue their claims, and their claims must be dismissed. This would include over 78% of the bellwether Plaintiffs and certain complaints in this MDL in their entirety. "Therefore, this action would be materially affected by the Ninth Circuit's resolution of the standing issue[s]" raised by PowerSchool's motion. *Mehedi v. View, Inc.*, 2024 WL 3748012, at *1 (N.D. Cal. Aug. 8, 2024).

### B. The Court's Order Conflicts with Other Decisions, Demonstrating Substantial Ground for Difference of Opinion

"Courts traditionally will find that a substantial ground for difference of opinion exists where novel and difficult questions of first impression are presented" or "where reasonable jurists might disagree on an issue's resolution." *Reese*, 643 F.3d at 688 (citation modified). "One of the best indications that there are substantial grounds for disagreement on a question of law," however, "is that other courts have, in fact, disagreed." *Rollins v. Dignity Health*, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014). That is the case here. With respect to each of PowerSchool's proposed certified questions, the Court's holdings conflict with earlier decisions from the Ninth Circuit and other circuit and district courts.

First, the Court interpreted *Zappos* and *Healy* to require it to avoid analyzing whether each individual named Plaintiff adequately alleged concrete harm. *See* Order 8-9. As described above, however, *see supra* pp 9-11, neither *Zappos* nor *Healy* addressed the question that PowerSchool raised in its Motion: whether every named Plaintiff must independently plead an Article III injury. And a Ninth Circuit case that *has* addressed that question reached exactly the opposite answer as the Court did here. *See Sanford*, 625 F.3d at 556 n.3.

That is entirely consistent with the "named-plaintiff-by-named-plaintiff" approach that other courts have taken to addressing motions to dismiss in data breach cases. In *Holmes v. Elephant Insurance Co.*, the Fourth Circuit emphasized that, because Article III's "standing requirements apply equally to class actions," even at the pleading stage, the named plaintiffs "can *each* only proceed if they show an injury-in-fact caused by [the defendant] and redressable by the court for each form of relief sought." 156 F.4th 413, 420 (4th Cir. 2025) (emphasis added). After "address[ing] each alleged injury for each of the four [named] plaintiffs," the Fourth Circuit held that only the 2 named plaintiffs who specifically alleged that their

driver's license numbers were posted on the Dark Web had standing, and it affirmed the dismissal of the other named plaintiffs' claims. *Id.* at 421, 435. Likewise, in *In re Samsung Data Security Breach Litigation*, the court made clear that, even "in the class action context, each named plaintiff must personally demonstrate standing independently of any claims brought on behalf of a putative class." 761 F. Supp. 3d 781, 790 (D.N.J. 2025) (citation modified). Although 4 of the 41 named plaintiffs adequately pleaded imminent misuse because they alleged that compromised personal information was on the Dark Web, the court separately concluded that the other 37 plaintiffs had not alleged that anyone had "actually misused the specific PII obtained in the data breach or published their information." *Id.* at 794-95. And in *Bass v. Facebook, Inc.*, the court (addressing a factual challenge to standing) carefully parsed the 2 named plaintiffs' allegations and evidence and concluded that only one had adequately pleaded an Article III injury. 394 F. Supp. 3d 1024, 1033-36 (N.D. Cal. 2019). Although the court noted that "[r]eal victims from this data breach exist," it concluded that the other named plaintiff "was not one of them," and it dismissed his claims. *Id.* at 1036. That the Court here believed that it was required to postpone separating the wheat from the chaff creates exactly the type of substantial ground for difference of opinion that 28 U.S.C. § 1292(b) allows the Ninth Circuit to address. *See, e.g.*, *Rollins*, 2014 WL 6693891, at *3.

Second, the Court's conclusion that even the 121 named Plaintiffs who failed specifically to allege the breach of any sensitive personal information pleaded a concrete injury also conflicts with persuasive decisions from other courts. As described above, *Illuminate* noted that data like that No-Injury Plaintiffs' data at issue here is not "normally . . . sufficient to find a credible threat of identity theft." 2025 WL 2589000, at *1-2. *Illuminate*'s understanding that, based on the overwhelming prevalence of data breaches, concrete harm depends on the compromise of only certain particularly sensitive information is consistent with

decisions from other courts within the Ninth Circuit and from across the country. *See, e.g.*, *I.C. v. Zynga, Inc.*, 600 F. Supp. 1034, 1049-50 (N.D. Cal. 2022) (no standing based on alleged breach of email addresses, phone numbers, and social media usernames and passwords); *Abellard v. Stretto, Inc.*, 2025 WL 1674265, at *5-6 (C.D. Cal. Apr. 25, 2025) (same for "names, mailing addresses, emails, phone numbers" and other data); *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1227-28 (N.D. Cal. 2022) (same for "names, addresses, and driver's license numbers"); *Harvey v. Nat'l Amusements, Inc.*, 2025 WL 928776, at *3 (D. Mass. Mar. 27, 2025) (same where breach did not involve credit card numbers); *Samsung*, 761 F. Supp. 3d at 796 ("[N]ames, addresses, other contact and demographic information" are "not the type of PII that subjects an individual to a heightened risk of identity theft or fraud in any way.").

In short, precisely because "[p]rivacy is an endangered species in the digital age," *Holmes*, 156 F.4th at 418, courts have recognized that they "must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all," *Zynga*, 600 F. Supp. 3d at 1050. "Otherwise, every data breach . . . would confer standing, regardless of whether private information is exposed." *Id.* Here, the Order took a different approach. It concluded that because the breach "exposed at least one Plaintiff's sensitive data," the other named Plaintiffs had standing, even though 121 of them failed to allege that any of their sensitive information was at risk. Order 10. That again justifies certification.

### C. <u>An Immediate Appeal Would Advance the Termination of the Litigation by Promoting Resolution and Simplifying Discovery</u>

The Court recognized that a named-plaintiff-by-named-plaintiff analysis "may be appropriate *later*," but it believed that *Healy* and *Zappos* constrained it from narrowing the case on Article III grounds now. Order 8-9 (emphasis added). Deferring that individualized analysis until summary judgment or certification,

however, leaves the 121 No-Injury Plaintiffs "in a state of legal limbo." *We Are Am./Somos Am., Coalition of Ariz. v. Maricopa Cnty. Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1092 (D. Ariz. 2011). That uncertainty is already imposing significant costs on the parties and the Court, and it threatens to continue to impede resolution and complicate discovery. Certifying the Order now could "sidestep[]" that "needless expense and delay," *Youssofi*, 2016 WL 6395086, at *5 (citation omitted), and "may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), by encouraging resolution and simplifying discovery.

Courts have recognized that certification is appropriate when interlocutory review may clarify a case's scope and encourage the "parties' efforts to reach settlement," *SEC v. Mercury Interactive, LLC*, 2011 WL 1335733, at *3 (N.D. Cal. Apr. 7, 2011); *see Rollins*, 2014 WL 6693891, at *4 (certifying for review because "certainty could . . . encourage a negotiated settlement"). That is the case here. So long as the 121 named No-Injury Plaintiffs (and the millions of *un*named plaintiffs they purport to represent) remain in legal limbo, the parties will struggle to negotiate a resolution. How the parties value this case depends dramatically on whether the class comprises 50 million individuals or only a fraction of that. And the 121 No-Injury Plaintiffs come from 35 different states and have filed 27 of the complaints in this MDL. Clarity now on whether those No-Injury Plaintiffs belong in the case will materially aid both sides in coming to the negotiating table before the parties and the Court engage in protracted and expensive discovery.

That is especially true because discovery is already now threatening to take this case down the wrong track. The Court ordered the parties to conduct bellwether discovery on the 32 named Plaintiffs in California, Massachusetts, Michigan, and New York, and it stayed discovery with respect to all other named Plaintiffs and all other states. *See* Case Management Order No. 7: Track One Bellwether Process, Dkt. No. 441. But the only named Plaintiffs in New York are No-Injury Plaintiffs

who allege no concrete injury. *See* App. A, Dkt. No. 333-1, at 1-12. When those No-Injury Plaintiffs are inevitably dismissed later in the case, the parties and the Court will be embroiled in whack-a-mole discovery, with new named plaintiffs being added to the complaint and new bellwether states appearing before the Court decides any motion to certify or holds any trials. In the meantime, the eight named Plaintiffs, from eight non-bellwether states, who have actually alleged misuse of sensitive personal information will be left on the sidelines and uncompensated for their purported injuries. The Court can and should short-circuit that inefficiency now by certifying its Order for interlocutory review.

### D. The Court Should Stay Discovery Pending Interlocutory Review

For similar reasons, if the Court certifies its Order to the Ninth Circuit, it should also stay Track One proceedings. "A stay of the action is appropriate [where] resolution of the issue [on appeal would] likely alter the direction of the current proceedings and a stay would promote efficiency and economy of time for the [c]ourt and for the parties." *Beaver*, 29 F. Supp. 3d at 1338. Because the trajectory of discovery depends fundamentally on which plaintiffs from which states have alleged plausible claims, the Court should stay further Track One proceedings so the Ninth Circuit can provide guidance.

## CONCLUSION

Standing doctrine in the Supreme Court, the Ninth Circuit, and other district courts has evolved to narrow massive data breach classes to those relatively few plaintiffs who allege concrete harm. In its Order, however, the Court erroneously believed that it was bound by older decisions, which took a far broader view of Article III. PowerSchool respectfully requests that the Court reconsider its Order with respect to the No-Injury Plaintiffs, or in the alternative certify its Order to the Ninth Circuit and stay further Track One proceedings.

Dated: April 15, 2026

*/s/ Christopher M. Young*
Christopher M. Young (SBN 163319)
Justin Van Ligten (SBN 353587)
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com
justin.vanligten@us.dlapiper.com

Douglas Hallward-Driemeier (MA BBO #627643)*
**ROPES & GRAY LLP**
2009 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 508-4600
Fax: (202) 508-4650
Douglas.hallward-driemeier@ropesgray.com

Anne Johnson Palmer (SBN 302235)
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

Monica Mleczko (MA BBO No. 696607)*
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Fax: (617) 235-0337
monica.mleczko@ropesgray.com

Laura G. Hoey (IL Bar No. 650643)*
**ROPES & GRAY LLP**
191 North Wacker Drive, 32nd Floor

Chicago, IL 60606-4302
Tel: (312) 845-1200
Fax: (312) 845-5500
laura.hoey@ropesgray.com

*Attorneys for Defendants PowerSchool Corporation and PowerSchool Group, LLC.*

* Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I certify that on April 15, 2026, I filed the foregoing Motion for Reconsideration with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ Christopher M. Young*