Douglas Hallward-Driemeier (DC Bar No. 994052)*
**ROPES & GRAY LLP**
2009 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 508-4600
Douglas.hallward-driemeier@ropesgray.com

Anne Johnson Palmer (SBN 302235)
**ROPES & GRAY LLP**
One Maritime Plaza, Suite 1800
300 Clay Street
San Francisco, CA 94111
Tel: (415) 315-6300
anne.johnsonpalmer@ropesgray.com

*Attorneys for Defendants PowerSchool Corporation and PowerSchool Group, LLC*

[*Additional Counsel in Signature Block*]

Christopher M. Young (SBN 163319)
Justin Van Ligten (SBN 353587)
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
christopher.young@us.dlapiper.com
justin.vanligten@us.dlapiper.com

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION

This Document Relates To:
*All Track One Actions*

Case No. 3:25-MD-03149-AJB-MSB

**REPLY MEMORANDUM OF LAW IN SUPPORT OF POWERSCHOOL'S MOTIONS TO RECONSIDER OR, IN THE ALTERNATIVE, TO CERTIFY FOR INTERLOCUTORY APPEAL AND STAY DISCOVERY**

**TABLE OF CONTENTS**

**Page**

ARGUMENT ...................................................................................................................2

I.     THE COURT SHOULD RECONSIDER ITS ORDER AND DISMISS THE NO-INJURY PLAINTIFFS FOR LACK OF STANDING ...........................................................................................2

     A.    The Court's "Standing for One Is Standing for All" Approach Was Clear Error that, Respectfully, Must Be Corrected ..................................................................................2

     B.    *Illuminate* Shows How Binding Precedent Applies to the No-Injury Plaintiffs, and the Order Clearly Erred in Disregarding It ...........................................................................4

II.    IF THE COURT DOES NOT RECONSIDER, IT SHOULD CERTIFY ITS ORDER AND STAY TRACK ONE DISCOVERY .....................................................................................7

     A.    The Order Raises Controlling Issues of Law ...........................7

     B.    Even by Plaintiffs' Logic, the Controlling Law Is Unclear, Warranting Certification ............................................8

     C.    Plaintiffs Misunderstand "Material Advance," a Standard the Order Easily Satisfies ............................................8

     D.    As Plaintiffs Implicitly Concede, Certification and Stay Should Rise or Fall Together ................................................10

CONCLUSION .............................................................................................................10

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbaugh v. Y & H Corp.*,
   546 U.S. 500 (2006)............................................................................................4, 10

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)...................................................................................................5

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)............................................................................................4, 10

*Department to of Toxic Substances Control v. Rossi*,
   2022 WL 19355 (N.D. Cal. Jan. 3, 2022)...............................................................10

*Dukes v. Wal-Mart Stores, Inc.*,
   2012 WL 6115536 (N.D. Cal. Dec. 10, 2012)...........................................................9

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001) ...............................................................................5, 8

*Harvey v. National Amusements, Inc.*,
   2025 WL 928776 (D. Mass. Mar. 27, 2025) .............................................................7

*Healy v. Milliman, Inc.*,
   164 F.4th 701 (9th Cir. 2026) ...............................................................................2, 3

*In re Illuminate Educ. Data Sec. Incident Litig.*,
   2023 WL 8888839 (C.D. Cal. Nov. 6, 2023) .............................................................6

*Kisil v. Illuminate Educ., Inc.*,
   2025 WL 2589000 (9th Cir. Sep. 8, 2025) ........................................................*passim*

*Krottner v. Starbucks Corp.*,
   628 F.3d 1139 (9th Cir. 2010) .......................................................................*passim*

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).....................................................................................................1

*Popa v. Microsoft Corp.*,
   153 F.4th 784 (9th Cir. 2025) .........................................................................1, 3, 5

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ...............................................................................8, 9

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) .............................................................................1, 4, 8

*Sosna v. Iowa*,
    419 U.S. 393 (1975)................................................................................................2

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)..............................................................................................2, 3

*Town of Chester. v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017)..............................................................................................1, 2

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)...........................................................................................1, 3, 5

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................................9

*In re Zappos.com, Inc.*,
    2016 WL 2637810 (D. Nev. May 6, 2016), *rev'd and remanded*,
    888 F.3d 1020 (9th Cir. 2018) .................................................................................3

*In re Zappos.com, Inc.*,
    888 F.3d 1020 (9th Cir. 2018) ...........................................................................3, 5, 8

**Statutes**

28 U.S.C. § 1292(b) .............................................................................................8, 9

**Other Authorities**

Ninth Circuit Rule 36-3(b).........................................................................................5

Fed. R. App. P. 32.1 .................................................................................................5

-iii-

POWERSCHOOL'S REPLY MEMO ISO RECONSIDERATION OR CERTIFICATION          CASE NO. 3:25-MD-03149

Plaintiffs' Opposition only confirms why, even though reconsideration and certification are extraordinary relief, this Order meets that high standard.[1] Plaintiffs effectively concede that the 121 "No-Injury" Plaintiffs who fail to allege that any of their own sensitive data was compromised do not satisfy Article III on their own but must instead borrow standing from other Plaintiffs. Indeed, Plaintiffs double down on the Order's fundamental legal error of conflating allegations into a kind of composite plaintiff, arguing that Article III does not require each named Plaintiff to plead their own individual injury. *See* Opp. 4. That is not the law. Standing is not dispensed in gross, *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), and it must be established by each plaintiff with claims before the court at every stage of the litigation, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017); *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). Because, prior to class certification, a putative class comprises only individual named plaintiffs with individual claims, each of those named plaintiffs "must satisfy the jurisdictional requirements of Article III independently." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 556 n.3 (9th Cir. 2010). The Order misapprehends that legal requirement, and that clear error underlies the Order's entire analysis. Had the Court properly considered each named Plaintiff's allegations individually, rather than in the aggregate, it would have been compelled to hold that at least the 121 No-Injury Plaintiffs lack standing under the Ninth Circuit's most recent analysis of that issue in the data breach context. PowerSchool respectfully requests that the Court reconsider the Order to correct that clear error, or, if the law is not already sufficiently clear on this point, certify the Order for interlocutory appeal.

---

[1] "Opposition" or "Opp." refers to Plaintiffs' Opposition, Dkt. No. 489. "Motion" or "Mot." refers to PowerSchool's Memorandum, Dkt. No. 465-1. Capitalized terms used but not defined in this Reply have the meanings ascribed to them in the Motion.

**ARGUMENT**

**I.   THE COURT SHOULD RECONSIDER ITS ORDER AND DISMISS THE NO-INJURY PLAINTIFFS FOR LACK OF STANDING**

**A.   The Court's "Standing for One Is Standing for All" Approach Was Clear Error that, Respectfully, Must Be Corrected**

The Order contravenes well-settled Article III principles. Because "standing is not dispensed in gross," a "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester*, 581 U.S. at 439. "The same principle applies when there are multiple plaintiffs." *Id.* Class actions are no exception to the requirement to plead standing at the outset. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 & n.6 (2016). While class certification transforms unnamed plaintiffs into parties to the litigation, *Sosna v. Iowa*, 419 U.S. 393, 399 & n.8 (1975), until a class has been certified, the named plaintiffs are merely multiple plaintiffs pursuing their individual claims. It necessarily follows, then, that before class certification, each named plaintiff in a putative damages class must independently satisfy Article III's standing requirements like any other plaintiff— by pleading injury that affects them "in a personal and individual way." *Spokeo*, 578 U.S. at 339 (citation omitted).

In the face of those Supreme Court decisions, Plaintiffs rely exclusively on unsupported negative inferences from *Healy*, *Zappos*, and *Krottner* in an attempt to justify the Order's "standing for one is standing for all" approach. *See* Opp. 3-5. But none of *Healy*, *Zappos*, or *Krottner* hold that named plaintiffs in a putative class action are excused from satisfying Article III at the pleading stage. First, *Healy* addressed only whether *unnamed* class members in a *certified* class must satisfy standing requirements at summary judgment (holding that they must). *Healy v. Milliman, Inc.*, 164 F.4th 701, 708 (9th Cir. 2026). In *dicta*, the court remarked that "Article III's requirements are satisfied before a class is certified as long as at least

-2-

one named plaintiff has standing." *Id.* at 706. *Healy* thus merely restates the uncontroversial principle that before class certification, *unnamed* plaintiffs, who are not yet parties to the litigation, need not establish their standing, and the *case* may proceed (i.e., the court has jurisdiction over the dispute) so long as at least one named plaintiff has standing. *See* Mot. 9-10. *Healy* does not hold that all named plaintiffs have standing merely because one named plaintiff does. Indeed, Plaintiffs cite *no* case that so holds, and any such holding would conflict with the Supreme Court's express instruction that standing may not be "dispensed in gross," *TransUnion LLC*, 594 U.S. at 431, and that injury must be "personal and individual," *Spokeo*, 578 U.S. at 331 (citation omitted).

*Krottner* and *Zappos* similarly provide no support for the Order. *See* Mot. 6-11. Both pre-date *TransUnion*, and the Ninth Circuit has recognized that *TransUnion* requires a more rigorous examination of standing than some of its pre-*TransUnion* decisions. *See Popa*, 153 F.4th at 794. *Krottner* does not even address the "one for all" approach, and *Zappos* concerns only whether to consider a named plaintiff's original or amended complaint for standing purposes. *See* Mot. 9-11. Indeed, *Zappos* is inconsistent with a "standing for one is standing for all" rule. In *Zappos*, the district court did exactly what PowerSchool urges here: it analyzed the named plaintiffs' standing individually, finding that some had standing while others did not. *In re Zappos.com, Inc.*, 2016 WL 2637810, at *3-4 (D. Nev. May 6, 2016), *rev'd and remanded*, 888 F.3d 1020 (9th Cir. 2018). When the dismissed plaintiffs appealed, the Ninth Circuit did not summarily rule that they could freeride on the non-dismissed plaintiffs' allegations. Instead, it carefully analyzed each of those plaintiffs' individual standing, *see id.* at 1024-30, *exactly as the Order here should have done*. The Ninth Circuit's plaintiff-by-plaintiff analysis would have been entirely unnecessary if, as the Order assumed, the Ninth Circuit condoned a "standing for one is standing for all" approach. *See* Mot. 6-11.

-3-

Plaintiffs and the Order's unsupported inferences from *Healy*, *Zappos*, and *Krottner* also run headlong into *Sanford*.  625 F.3d at 550.  In *Sanford*, the Ninth Circuit applied the basic Article III principles articulated above to require each named plaintiff in a putative class (which had not been certified) to allege their own standing.  *Id.* at 556 n.3.  Plaintiffs fail in their attempts to distinguish it.  They describe *Sanford*'s facts and procedural posture as "complicated" and "unique," Opp. 10-11, but do not explain how that "unique factual history" had any bearing on the Ninth Circuit's analysis.  While Plaintiffs assert that "no case has ever interpreted" *Sanford* to require each named plaintiff in a putative class action to plead their own injury, Opp. 12, several district courts have relied on *Sanford* for precisely that proposition, *see* Mot. 8 (collecting cases).

Nor should the Court disregard *Sanford* merely because PowerSchool did not previously cite that particular authority.  *Contra* Opp. 3, 12.  PowerSchool has argued from the outset that "a plaintiff-by-plaintiff analysis is necessary" and that the No-Injury Plaintiffs' lack individual standing.  Dkt. No. 285, at 8-10. Indeed, in the Court's "tentative [ruling]" it recognized that the case would be "pare[d] down" because "*Illuminate* is pretty clear" that those who had only "a name, address, [and] email" leaked "would be non-injury plaintiffs and would not have standing, at least as it stands right now with the Ninth Circuit law."  Dkt. No. 340, at 23.  *Sanford* merely reconfirms this essential point. More fundamentally, Article III standing is a jurisdictional requirement that courts have an independent obligation to determine. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006) ("We have 'an obligation to assure ourselves' of litigants' standing under Article III." (citation omitted)).

**B.     *Illuminate* Shows How Binding Precedent Applies to the No-Injury Plaintiffs, and the Order Clearly Erred in Disregarding It**

In *Kisil v. Illuminate Educ., Inc.*, 2025 WL 2589000, at *1-2 (9th Cir. Sep. 8, 2025) ("*Illuminate*"), the Ninth Circuit affirmed the dismissal of nearly identical

-4-

claims based on nearly identical facts brought against PowerSchool's competitor. Plaintiffs assert that the Order nonetheless properly declined to follow *Illuminate* on the grounds that it is unpublished, purportedly "appears to conflict with" *Krottner* and *Zappos*, and, according to Plaintiffs, it is a factually distinguishable EdTech data breach case. *See* Opp. 5-10. Plaintiffs are wrong on each point.

Plaintiffs' contention that, because *Illuminate* is unpublished, the Order properly treated it is as "merely [an] explanatory communication[] to the parties in [that] case," Opp. 5-6, mistakenly relies on outdated authority. Plaintiffs cite *Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001), which predated the introduction of Federal Rule of Appellate Procedure 32.1 (incorporated in Ninth Circuit Rule 36-3(b)) that allowed parties to cite unpublished opinions for their persuasive value, *see* Fed. R. App. P. 32.1, Advisory Committee Notes, Subdiv. (a). Here, the persuasive value of *Illuminate* is immense. It illustrates how the Ninth Circuit thinks lower courts should apply binding precedent, including the Supreme Court's decisions in *TransUnion* and *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), to allegations virtually identical to those pleaded by the 121 No-Injury Plaintiffs. And it is entirely consistent with the published Ninth Circuit decision in *Popa*, and the many other persuasive authorities holding that plaintiffs who fail to allege the breach of sensitive personal information lack standing because, as a matter of law, information that is routinely made public *cannot* be used to steal one's identity. *See* Mot. 17-18 (collecting cases).

Nor does *Illuminate* conflict with *Krottner* or *Zappos* as to the No-Injury Plaintiffs. Even assuming *Zappos* and *Krottner* survive *TransUnion* in full, neither addresses whether the breach of non-sensitive "phonebook" data suffices for Article III standing. *Zappos* involved the named plaintiffs' payment card information, 888 F.3d at 1020, while *Krottner* involved the named plaintiffs' Social Security numbers, *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1140 (9th Cir. 2010). Neither decision

-5-

speaks to whether plaintiffs who fail to allege the compromise of comparably sensitive information have standing. *Illuminate* itself drew precisely this distinction, contrasting the SSNs at issue in *Krottner* with the non-sensitive student demographic information at issue in *Illuminate*. 2025 WL 2589000, at *2.

Plaintiffs' half-hearted attempts to distinguish *Illuminate* on its facts are equally misguided. *See* Opp. 7-8. Plaintiffs claim that, unlike in *Illuminate*, the Cybersecurity Incident here "involves highly sensitive identifying and educational information, including Social Security numbers." Opp. 8. But this is yet another example of Plaintiffs' refusal to grapple with the named Plaintiffs' allegations individually. The 121 No-Injury Plaintiffs who are the focus of this Motion do not allege that *any* sensitive information was compromised: 40 No-Injury Plaintiffs allege the compromise of only non-sensitive "phonebook" information such as "contact information"; "home address" and "home phone number"; and "enrollment records," while 81 No-Injury Plaintiffs fail to allege the compromise of *any* specific data at all. Dkt. No. 333-1, at 1-12 (collecting citations). Plaintiffs cannot cure those pleading deficiencies by bootstrapping allegations from other named Plaintiffs or by invoking liberal pleading standards. *Contra* Opp. 8. Plaintiffs also assert that *Illuminate* is irrelevant because it involved no alleged misuse. *See id.* Plaintiffs are wrong: some plaintiffs in *Illuminate did* plead misuse. *See In re Illuminate Educ. Data Sec. Incident Litig.*, 2023 WL 8888839, at *2 (C.D. Cal. Nov. 6, 2023) (plaintiff alleged "someone charged her debit card on a fake website"). If alleged misuse by one plaintiff were sufficient to confer standing on all plaintiffs in a putative class— as Plaintiffs urge—*Illuminate* would have come out exactly the opposite from how it did. The simple truth is that, as *Illuminate* recognized, the 121 No-Injury Plaintiffs failed to allege the compromise of any sensitive information and thus fail as a matter of law to plead injury-in-fact.

Plaintiffs resort to arguing that the Court upheld standing based on theories of

-6-

injury besides actual misuse—including imminent risk, diminution of value, mitigation expenses, and benefit of the bargain—and that the Motion does not seek reconsideration of those bases. Opp. 9. To the contrary, the Motion argues that, under *Illuminate*, the named Plaintiffs who fail to allege the compromise of any sensitive data cannot establish standing under *any* theory of injury, because there is no present harm and no credible risk of future harm where only non-sensitive information is involved. *Illuminate*, 2025 WL 2589000, at *2; *see also* Dkt. No. 285 (Track One MTD), at 6–17 (analyzing lack of standing under each of Plaintiffs' theories of injury).[2]

## II. IF THE COURT DOES NOT RECONSIDER, IT SHOULD CERTIFY ITS ORDER AND STAY TRACK ONE DISCOVERY

### A. The Order Raises Controlling Issues of Law

Plaintiffs cannot dispute that, in general, Article III standing is a controlling question of law. Mot. 15. Instead, Plaintiffs assert only that certification would make no difference here because the Order "already found that all named Plaintiffs alleged concrete harm and had standing." Opp. 14-15. But that is circular reasoning. The Order's finding of injury for "all plaintiffs" stemmed directly from its failure to assess each named Plaintiff individually. Order 9-14. If the Ninth Circuit requires that every named Plaintiff must allege their own concrete harm, the Order's premise collapses, and the claims of over two-thirds of the Plaintiffs, including at least

---

[2] This is equally true of the Order's benefit-of-the-bargain theory of injury, Order 13, which Plaintiffs never argued in opposing dismissal. The provision of non-sensitive information cannot constitute some sort of value that the No-Injury Plaintiffs bestowed on PowerSchool in exchange for data security. *See Harvey v. Nat'l Amusements, Inc.*, 2025 WL 928776, at *4 (D. Mass. Mar. 27, 2025) (finding even "storing . . . PII" was no benefit). And, in any event, the No-Injury Plaintiffs never entered into a "bargain" with PowerSchool—they never had a contract with PowerSchool and never paid PowerSchool any money. Order 13.

-7-

eighteen entire complaints in the MDL, and all the New York bellwether Plaintiffs, would be dismissed.  The proposed certified issues are thus controlling.

**B.**    **Even by Plaintiffs' Logic, the Controlling Law Is Unclear, Warranting Certification**

Plaintiffs do not dispute that the Fourth Circuit and numerous district courts have addressed exactly the same issues considered by the Order and decided them in exactly the opposite way.  *Compare* Mot. 16-18 (collecting cases), *with* Opp. at 16 (disregarding them merely as "not controlling").  Because "reasonable jurists . . . have already disagreed" on these issues' resolution, there is a substantial ground for difference of opinion under 28 U.S.C. § 1292(b).  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  Plaintiffs nonetheless assert certification is appropriate only in more limited circumstances, including when "the circuits are in dispute and the Ninth Circuit has not spoken on the point."  Opp. 15.  But that is precisely the situation here, if as Plaintiffs urge, *Illuminate* is disregarded as unpublished.  Neither *Zappos* nor *Krottner* addresses whether each named plaintiff in a putative class action must plead their own concrete harm or whether the theft of only non-sensitive "phonebook" information can ever suffice.  *See supra* at 5; *see also Hart*, 266 F.3d at 1170 (describing "on point" authority).  *Sanford* and *Illuminate*, by contrast, *do* directly address these issues in a manner contrary to the Order.  Plaintiffs dismiss *Sanford* as "not a data-breach case," Opp. 10, an irrelevant distinction, and *Illuminate* as unpublished, *id.* at 16, but there is no serious question that those decisions are at least persuasive.  Even by Plaintiffs' own logic, therefore, the Ninth Circuit's existing decisions demonstrate lack of clarity about the published governing law, which is precisely the circumstance warranting certification.

**C.**    **Plaintiffs Misunderstand "Material Advance," a Standard the Order Easily Satisfies**

"[N]either § 1292(b)'s literal text nor controlling precedent requires that the

-8-

interlocutory appeal have a final, dispositive effect on the litigation." *Reese*, 643 F.3d at 688.  Nor must an interlocutory appeal be certain to resolve the litigation more quickly. *See id.*  To the contrary, certification is appropriate if an immediate appeal "*may* materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b) (emphasis added).

Plaintiffs fundamentally misconstrue that standard.  First, Plaintiffs argue that PowerSchool's concerns about whack-a-mole discovery are too speculative, but Plaintiffs conspicuously refuse to commit to foregoing repeat discovery with replacement Plaintiffs if the bellwether Plaintiffs are dismissed for lack of standing.[3] *See* Opp. 17-18.  Second, Plaintiffs suggest that the certified questions "may be mooted" by class certification. *Id.*  The authority they cite, *Dukes v. Wal-Mart Stores, Inc.,* 2012 WL 6115536 (N.D. Cal. Dec. 10, 2012), illustrates precisely why the Order should be appealed now.  In *Dukes*, the parties engaged in class certification discovery and briefing; the district court certified a class; the Ninth Circuit affirmed; and the Supreme Court reversed. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 346-48, 367 (2011).  More than a decade after the plaintiffs initially sued, they were still attempting to certify a narrower class on remand. *Dukes*, 2012 WL 6115536, at *1.  With class certification briefing imminent and the record well developed, the court in that case declined to certify an interlocutory appeal of its refusal to strike the plaintiffs' narrowed class allegations. *Id.* at *5-6. Here, by contrast, the case is still in its early stages.  If the case's scope is too broad, the Ninth Circuit should say so now, before the parties and the Court expend years of effort on claims that cannot survive Article III scrutiny. Third, Plaintiffs argue that an interlocutory appeal would not "eliminate the litigation entirely."  Opp. 18.

---

[3] At oral argument on the competing bellwether discovery proposals, Plaintiffs' counsel offered to put in writing that they would not engage in such gamesmanship, 3/20/26 Hr'g Tr. at 37:1-22, but have yet to make any enforceable offer.

-9-

This is a strawman; interlocutory appeals that substantially narrow a case by dismissing claims or parties do materially advance the litigation. *See Reese*, 643 F.3d at 688. Dismissing 121 named Plaintiffs—over two-thirds of the named Plaintiffs in this MDL—along with at least eighteen complaints in their entirety, including all named Plaintiffs in New York, would dramatically simplify the proceedings and facilitate resolution. Fourth, Plaintiffs argue that "[d]iscretionary considerations strongly counsel against certification," Opp. 18, but ignore that Article III standing is not discretionary, *see DaimlerChrysler*, 547 U.S. at 340. Allowing the Order's error to stand not only violates Article III in this case, but invites a flood of similar claims by the hundreds of millions of Americans whose non-sensitive information is compromised in data breaches each year.

### D.  As Plaintiffs Implicitly Concede, Certification and Stay Should Rise or Fall Together

Plaintiffs make no real effort to decouple a stay from certification. In a single sentence, they assert that, "[e]ven if the Court grants Defendants' motion [to certify], . . . there is no need to stay this case, particularly as to those Plaintiffs who did plead misuse." Opp. 19. But Plaintiffs cite no authority for that proposition and fail to further explain it. Because Plaintiffs have not presented any meaningful argument, if the Court certifies its Order, it should stay further Track One proceedings pending the appeal. *See Dep't of Toxic Substances Control v. Rossi*, 2022 WL 19355, at *2 (N.D. Cal. Jan. 3, 2022) ("raising an issue in a brief – but failing to develop it with supporting argument – is insufficient").

### CONCLUSION

For all of these reasons, this Court should reconsider the Order and dismiss the 121 No-Injury Plaintiffs for lack of standing or, in the alternative, certify the Order for interlocutory appeal.

-10-

Dated: May 7, 2026

/s/ Christopher M. Young

Christopher M. Young (SBN 163319)
Justin Van Ligten (SBN 353587)
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com
justin.vanligten@us.dlapiper.com

Douglas Hallward-Driemeier (DC Bar No. 994052)*
**ROPES & GRAY LLP**
2009 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 508-4600
Fax: (202) 508-4650
Douglas.hallward-driemeier@ropesgray.com

Anne Johnson Palmer (SBN 302235)
**ROPES & GRAY LLP**
One Maritime Plaza, Suite 1800
300 Clay Street
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

James Drabick (MA BBO No. 667460)*
Monica Mleczko (MA BBO No. 696607)*
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 235-4136
Fax: (617) 951-7050
james.drabick@ropesgray.com
monica.mleczko@ropesgray.com

-11-

Laura G. Hoey (IL Bar No. 650643)*
**ROPES & GRAY LLP**
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606-4302
Tel: (312) 845-1200
Fax: (312) 845-5500
laura.hoey@ropesgray.com

*Attorneys for Defendants PowerSchool
Corporation and PowerSchool Group, LLC.*

* Admitted *pro hac vice*

-12-

## **CERTIFICATE OF SERVICE**

I certify that on May 7, 2026, I filed the foregoing Reply Memorandum with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ Christopher M. Young*