John P. Carlin (NY 3031887)*
**PAUL, WEISS, RIFKIND,**
   **WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Alex Langsam (NY 5980891)*
**PAUL, WEISS, RIFKIND,**
   **WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
jschutte@paulweiss.com
alangsam@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant
Bain Capital, L.P.*

R. Rosie Vail (SBN 317977)
**PAUL, WEISS, RIFKIND,**
   **WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION | Case No. 3:25-md-03149-AJB-MSB<br><br>MDL NO. 3149<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT BAIN CAPITAL, L.P.'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR CERTIFICATION OF INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**<br><br>Date: June 25, 2026<br>Time: 10 a.m.<br>Place: Courtroom 4A<br>Judge: The Hon. Anthony J. Battaglia |

BAIN'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION & 1292(b) CERTIFICATION, 25-MD-03149-AJB-MSB

Bain's motion respectfully asks the Court to correct two discrete errors that, if left uncorrected, would unjustifiably expand agency and negligence law far beyond their settled bounds, with significant impact across the investment industry. Plaintiffs' Opposition ("Opp.") attempts to sidestep the merits of Bain's argument by accusing Bain of relitigating issues or repeating prior arguments.[1] That characterization misses the point: reconsideration is warranted because the Order reflects a clearly erroneous application of the governing legal standards—namely, a decision that is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *In re Transpacific Passenger Air Transport. Antitrust Litig.,* 2023 WL 1428564, at *2 (N.D. Cal. Jan. 25, 2023), *aff'd*, 2024 WL 810703 (9th Cir. Feb. 27, 2024); *see Relevant Grp., LLC* v. *Nourmand*, 116 F.4th 917, 927 (9th Cir. 2024) (affirming reconsideration order by a successor judge where the prior decision was clearly erroneous due to misapplication of law).

First, the Order commits clear error by treating arm's-length investment negotiations and routine pre-closing covenants as a manifestation of consent to an agency relationship and of Bain's operational control over PowerSchool. Even accepting Plaintiffs' allegations as true, no authority holds that an investor's negotiation posture, investment conditions, or ordinary deal protections constitute assent that the target will act "on the investor's behalf" or establish the pervasive day-to-day control required for agency. This is reinforced by the undisputed fact that the alleged "conditioning" preceded any agreement purporting to confer control, the Merger Agreement's express "No Control" provision, and the Court's dismissal of alter-ego claims premised on the same alleged conduct.

Second, the Order commits clear error by imposing a negligence duty on Bain based on purported "actions and failures in handling data entrusted to [it]." Order at

---

[1] Plaintiffs' suggestion that repetition forecloses reconsideration ignores that the inquiry is whether the Order correctly applied the governing legal rules and not how often the issue has been briefed. Plaintiffs also conveniently omit that these briefings were submitted at the request of the Court. *See* Dkt. 380, 414.

BAIN'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION & 1292(b) CERTIFICATION, 25-MD-03149-AJB-MSB

16. The Complaint contains no allegation that Bain collected, stored, possessed, maintained, or otherwise handled Plaintiffs' data—an essential predicate for duty in the data-breach context and the same deficiency that required dismissal of Plaintiffs' statutory claims. Contrary to what Plaintiffs assert, the Order's reliance on foreseeability is wrong as a matter of law and conflicts with the Order's own statutory analysis.

Even if the Court declines reconsideration, the Order squarely presents controlling questions of law appropriate for interlocutory review under 28 U.S.C. § 1292(b). The agency and negligence rulings were resolved as legal determinations at the pleading stage; reversal of either would eliminate legal bases for Bain's continued participation in this litigation and materially advance its termination. There also exists a substantial ground for difference of opinion on both issues.

For these reasons, the Court should grant Bain's motion for reconsideration or, in the alternative, certify the identified questions for interlocutory appeal and stay proceedings pending appellate review.

## MOTION FOR RECONSIDERATION

### A. The Order Erroneously Found a Manifestation of Consent and Control

The Order committed clear error by concluding that Plaintiffs plausibly alleged a manifestation of consent to an agency relationship based on Bain's arm's-length negotiations and alleged conditioning of a potential investment on cost-reduction measures. Even accepting these allegations as true, no other court has ever held that a potential investor's negotiation posture, investment theses, or proposed deal conditions suffice to establish that the target will act "on [the investor's] behalf." *See* Mot. at 4–5. And with good reason—such a conclusion is illogical, implausible, and unsupported by the record, and thus is clear error. *See In re Transpacific Passenger Air Transport. Antitrust Litig.*, 2023 WL 1428564, at *2.

Plaintiffs do not engage with this legal defect. Instead, they assert only that "no prior Ninth Circuit authority prohibited" the Order's approach. Opp. at 8. But

- 2 -

that is beside the point. The mere absence of a case rejecting Plaintiffs' novel theory does not mean that it is logical, plausible, or supported by Plaintiffs' allegations. *See* Mot. at 4. An investor's statement that it "will invest if certain benchmarks are met" reflects potential deal terms, not an instruction that the target act on the investor's behalf or bind it. Plaintiffs' theory would convert routine negotiations into agency, allowing a target company to become the agent of competing bidders with divergent interests merely by pursuing actions each views favorably. That untenable result underscores why agency requires a clear manifestation of consent, not inference from investment negotiations.

Even if Plaintiffs could overcome the threshold failure to allege a manifestation of consent, their agency theory independently fails because the Order erroneously applied settled principles governing control. Agency requires a clear mutual understanding that the alleged principal retained the right to control the agent's conduct. That understanding must be evident from the parties' relationship as a whole; it cannot be inferred from ambiguity, conjecture, or post hoc characterizations. *See Cal-Star Prods., Inc.* v. *Fencepost Prods., Inc.*, 2019 WL 13038581, at *3–4 (C.D. Cal. Apr. 18, 2019). Here, the Merger Agreement expressly negated any right of control, and the Plaintiffs' remaining allegations establish ordinary investment oversight, not the pervasive operational control required to find that one party is acting as the agent of another.

Critically, each of the cases Plaintiffs cite involves entities operating in the same core line of business, where the alleged principal exercised pervasive, day-to-day operational control such that the agent functioned as "nothing more than an incorporated department" of the principal. *Sonora Diamond Corp.* v. *Superior Ct.*, 83 Cal. App. 4th 523, 541 (2000); *see also Anwar* v. *Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 393 (S.D.N.Y. 2010) (entities operated as a "single financial services provider," relevant contract provided for services by principal, and entities shared marketing materials); *A.B.* v. *Hilton Worldwide Holdings Inc.*, 484 F. Supp.

- 3 -

3d 921, 940 (D. Or. 2020) (franchisor controlled franchisee hotels through "hosting online bookings, making employment decisions, advertising for employment, controlling training and policies"); *Doe A.* v. *Veer Hosp. Phoenix LLC*, 2026 WL 799282, at *7 (W.D. Wash. Mar. 23, 2026) (similar).[2]

Here, by contrast, Bain and PowerSchool operate entirely separate businesses, and the Complaint comes nowhere close to alleging the kind of granular, day-to-day operational control present in those cases. *See Gerritsen* v. *Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1147–48 & n.235 (C.D. Cal. 2015) (dismissing agency allegations that did not establish control over "daily operations" that could go "beyond a parent-subsidiary relationship to a principal-agent relationship"). Instead, the Order commits clear error by equating routine investment activity with agency, contrary to settled law. *See Sonora Diamond Corp.*, 83 Cal. App. 4th at 542.

Critically, the Merger Agreement contains an express "No Control" provision that directly addresses and negates the very conclusion Plaintiffs ask this Court to draw. That provision confirms that, notwithstanding routine interim covenants, *Bain lacked authority to control PowerSchool's business or operations prior to closing.* Courts give dispositive weight to such provisions when assessing agency because they speak directly to the parties' mutual understanding as to control, an element agency law requires to be clear, not inferred. *See Hu Honua Bioenergy, LLC* v. *Hawaiian Elec. Indus., Inc.*, 2018 WL 5891743, at *4 (D. Haw. Nov. 9, 2018) (interpreting no control provision to undermine claim of "unbridled control").

Plaintiffs attempt to avoid this contractual reality by asserting that the Agreement must be read "as a whole" to create ambiguity. Opp. at 9–11. But reading the Agreement as a whole reinforces the absence of agency. The interim operating covenants preserve the status quo pending closing; they do not transfer operational authority to the buyer in a way that would establish an agency relationship. *See Jewel*

---

[2]  *Autronic Plastics, Inc.* v. *Apogee Lighting, Inc.*, 2021 WL 5965715 (E.D.N.Y. Dec. 16, 2021), likewise rested on allegations that the parent knowingly directed the specific conduct giving rise to liability. Plaintiffs allege nothing comparable here.

BAIN'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION & 1292(b) CERTIFICATION, 25-MD-03149-AJB-MSB

*Companies, Inc.* v. *Pay Less Drug Stores Nw., Inc.*, 741 F.2d 1555, 1564 & n.12 (9th Cir. 1984); *see also Sonora Diamond Corp.*, 83 Cal. App. 4th at 541; *Paramount Farms, Inc.* v. *Ventilex B.V.*, 2010 WL 3943599, at *6 (E.D. Cal. Oct. 4, 2010).[3]

Reconsideration is also warranted because Plaintiffs do not allege control at the relevant time. The Order's agency finding was premised on an alleged manifestation when Bain supposedly "condition[ed]" its investment offer on cost reduction measures in March 2024, and PowerSchool undertook those measures. *See* Order at 12. Yet the Order premised its control finding on the Merger Agreement, which was not signed until months later. *Id.* Agency requires that its elements—manifestation, assent, and control—exist simultaneously. Later-executed agreements cannot retroactively supply control necessary to create an agency relationship. *See Connecticut Gen. Life Ins. Co.* v. *Earl Scheib, Inc.*, 2012 WL 12868358, at *4 (S.D. Cal. May 22, 2012) (Battaglia, J.) ("There is no agency relationship where the alleged principal has no right of control over the alleged agent."). Plaintiffs do not respond to this point, waiving any contrary argument.

Lastly, the Order's agency holding is irreconcilable with the Track 2 Order's holding that the "preacquisition control allegations" are implausible in view of the Merger Agreement. Dkt. 435 at 11. Plaintiffs' attempt to justify this inconsistency by invoking a supposedly "less stringent" control standard for agency finds no support in the caselaw. Courts treat the control inquiry for agency and alter ego as identical, whether the relationship is typified by control over internal affairs or daily operations. *See Apple Inc.* v. *Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 56 (N.D. Cal. 2020) ("[T]he relevant question to ask is whether the relationship between the parent and subsidiary is typified by 'parental control of the subsidiary's internal affairs or

---

[3] Importantly, agency cannot rest on contractual ambiguity in the first place. Agency requires "an understanding between the parties" that the alleged principal is to be in control, not an inference drawn from tension between provisions. *See Cal-Star Prods., Inc.*, 2019 WL 13038581, at *3. If Plaintiffs' reading were correct and the Agreement were ambiguous as to control, that ambiguity would defeat the existence of an agency relationship as a matter of law.

- 5 -

daily operations.' Hence, the agency inquiry is identical to the alter ego inquiry."). The lone case Plaintiffs cite, *Agricola Baja Best, S. De. R.L. de C.V.* v. *Harris Moran Seed Co.*, distinguishes the purpose of each test but does not describe any difference in the stringency of the control inquiry. 44 F. Supp. 3d 974, 982 (S.D. Cal. 2014).

In short, Plaintiffs' theory converts ordinary investment negotiations and standard protective covenants into manifestations of consent and day-to-day control—clear error that results in an unprecedented and unjustified expansion of settled agency law and therefore warrants reconsideration.

## B. The Order Erroneously Found a Duty of Care Based on "Affirmative Conduct"

The Order committed clear error by concluding that Bain owed Plaintiffs a duty based on its "own actions and failures in handling data entrusted to [it]." Order at 16. Plaintiffs contend the Order correctly grounded Bain's duty in its purported "affirmative conduct." Opp. at 12. However, the Order expressly stated that Bain's duty arose from "Defendants' own actions and failures *in handling data entrusted to them*." Order at 16 (emphasis added). The Order's conclusion reflects clear error: there is no allegation that *Bain* collected, stored, possessed, maintained, or otherwise handled Plaintiffs' data. *See id.* n.16.

In the data-breach context, courts consistently anchor the existence of a duty to a defendant's role in handling or controlling the compromised data. *See In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *8–9 (D.N.J. Feb. 26, 2025) (no duty where defendant did not meaningfully participate in data handling), *appeal pending*, No. 25-1626 (3d Cir. Apr. 2, 2025); *Navarro* v. *Ski Data*, 2022 WL 18280359, at *10 (C.D. Cal. Dec. 7, 2022) (no duty absent collection or control of data); *Smahaj* v. *Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 824–25 (N.Y. Sup. Ct. 2020) (duty depends on possession or maintenance of personal information). Neither Plaintiffs nor the Order cite a single data breach case imposing a duty on a defendant that did not handle, possess, or control the data at issue.

- 6 -

Plaintiffs attempt to avoid this rule by pointing to a non-data-breach case finding a duty based on a defendant's direct operational conduct. Opp. at 12. But the case Plaintiffs cite only recognizes such a duty when the defendant's *own* operations create the risk of harm itself—a situation that is inapplicable here and wholly distinct from allegations that a defendant owed a duty "arising from [its] own actions and failures in handling data entrusted to [it]." Order at 16.[4]

Plaintiffs also invoke foreseeability. Opp. at 13–14. But foreseeability cannot create a duty where none otherwise exists; it presupposes the existence of a duty in the first place. *See Tucker* v. *CBS Radio Stations, Inc.*, 194 Cal. App. 4th 1246, 1253 (2011) (foreseeability "alone does not establish the existence of a duty.").

The Order's negligence analysis is further undermined by its internal inconsistency. On the one hand, it dismissed Plaintiffs' CCPA claims because Bain did not possess or control Plaintiffs' data; on the other, it imposed a common-law duty premised on Bain's supposed "handling" of that same data. Order at 16, 23–24. Those conclusions are logically incompatible. A defendant cannot simultaneously lack the requisite possession or control of data for statutory liability yet owe a common-law duty derived from handling that data.

Plaintiffs' efforts to distinguish Bain's authorities only underscore the error. Their arguments focus on levels of control over PowerSchool or its security environment, but control played no role in the Order's duty analysis. *See* Opp. at 13;

---

[4] Plaintiffs cite *Doe* v. *Uber Technologies, Inc.*, 2025 WL 80365 (9th Cir. Jan. 13, 2025). Opp. at 12. However, *Uber* does not support the duty imposed here. The case involved allegations that Uber's own affirmative operational conduct—the design and operation of its rideshare platform—created the risk of sexual assault by third-party drivers. *Uber*, 2025 WL 80365, at *4–5. Plaintiffs do not allege that Bain caused the data breach through its own operations, designed or ran PowerSchool's systems, or collected, handled, or stored Plaintiffs' data. The Order itself recognized that Bain's alleged duty was not one "to protect Plaintiffs from harm caused by third-party actors," but was instead premised on Defendants' supposed "actions and failures in handling data entrusted to them"—conduct not specifically alleged as to Bain. Order at 16 n.16. Unlike *Uber*, where the defendant designed and operated the platform that gave rise to the risk, Plaintiffs do not allege Bain operated any system implicated in the breach.

- 7 -

Order at 16. The dispositive point in Bain's cases (and the Order) is not control over another entity, but the absence of data handling.

Nor do Plaintiffs' general negligence cases negate the clear error in the Order. *Cabral* v. *Ralphs Grocery Co.*, 51 Cal. 4th 764 (2011), confirms that duty is a question of law for the court, and the Order itself cited *Cabral* to reject the proposition that Bain owes a generalized obligation to protect Plaintiffs from third-party wrongdoers. Order at 16. *Hernandez* v. *Jensen*, 61 Cal. App. 5th 1056 (2021), likewise addresses the general negligence framework, not the threshold question presented here: whether a non-data-handler owes a duty in a data-breach case.

Plaintiffs finally conflate duty with causation by invoking the Order's discussion of a "straightforward" causal chain. Opp. at 14 (quoting Order at 18). That argument misses the point. Causation presupposes a duty; it cannot replace it. Plaintiffs' resort to causation analysis only highlights their failure to identify a legally cognizable duty in the first instance.[5]

## MOTION TO CERTIFY INTERLOCUTORY APPEAL

Even if the Court declines reconsideration, certification is independently warranted because the Order resolves threshold legal questions that control Bain's continued participation in this litigation and are subject to substantial grounds for difference of opinion. 28 U.S.C. § 1292(b). The questions Bain seeks to certify do not turn on disputed facts; they assume Plaintiffs' allegations are true and ask whether, as a matter of law, those allegations suffice to establish agency and duty.

**The certified questions are controlling**. The Order resolved, as matters of law at the pleading stage, (1) whether arm's-length negotiations and ordinary

---

[5] California law also requires consideration of the *Rowland* factors, including the consequences to the community of imposing a duty. *See Kuciemba* v. *Victory Woodworks, Inc.*, 14 Cal. 5th 993, 1027 (2023). The Order erred by effectively creating a novel duty that would extend negligence liability to investment firms based solely on allegations of influence over cost or structure—an expansion no other court has endorsed. That misapplication of governing law warrants reconsideration.

BAIN'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION & 1292(b) CERTIFICATION, 25-MD-03149-AJB-MSB

investment protections can give rise to an agency relationship absent a contractual right to control and (2) whether an entity that did not collect, possess, or handle Plaintiffs' data nevertheless owes a duty of care based on foreseeability or alleged influence over a third party. Reversal of either holding would materially narrow the scope of this litigation by clarifying the scope of Bain's potential liability. *See Reese* v. *BP Exploration (Alaska) Inc.*, 643 F.3d 681, 687–88 (9th Cir. 2011).

**The questions are purely legal and suitable for interlocutory review**. Plaintiffs argue that certification is improper because the questions require application of law to facts. Opp. at 16–17. But § 1292(b) does not require abstract legal questions divorced from context. Courts routinely certify questions that assume pleaded facts and ask whether those facts satisfy a legal standard. *See*, *e.g.*, *Steering Comm.* v. *United States*, 6 F.3d 572, 575 (9th Cir. 1993) (exercising jurisdiction under § 1292(b) even though the issue was "not purely one of law"); *Hawaii ex rel. Louie* v. *JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1065–66 (D. Haw. 2013). Bain's questions assume Plaintiffs' allegations as true and ask whether the Order correctly applied settled legal standards to those allegations.

**There is a substantial ground for difference of opinion**. The Order adopts novel and expansive applications of agency and negligence law in circumstances involving investment firms and data-breach liability—areas in which there is no controlling Ninth Circuit authority. Plaintiffs' inability to identify precedent squarely supporting the Order's conclusions, coupled with courts' repeated rejection of similar theories in similar contexts, demonstrates that reasonable jurists could disagree. *See Reese*, 643 F.3d at 688 (substantial ground exists "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions").

**Immediate appeal would materially advance the termination of the litigation**. Interlocutory review is particularly appropriate in multidistrict proceedings such as this when early resolution of threshold legal issues can reshape

- 9 -

the litigation and avoid unnecessary discovery. *See Steering Comm.*, 6 F.3d at 575. Resolution of either certified question in Bain's favor would eliminate or substantially narrow sponsor-level discovery into pre-closing negotiations, investment oversight, and internal deliberations—discovery that would otherwise proceed even though it rests on contested and potentially erroneous legal premises.

**A stay is warranted to preserve the benefits of interlocutory review.** Plaintiffs' assertions of "delay" miss the point. The relevant inquiry is not whether the litigation as a whole will proceed against other defendants, but whether Bain should be required to engage in burdensome and intrusive discovery on claims that rest on threshold legal rulings now subject to appellate review. Absent a stay, Bain would be forced to litigate—and produce extensive discovery—even though resolution of the certified questions could eliminate or substantially narrow Bain's exposure altogether. Proceeding in parallel with an interlocutory appeal would undermine the very efficiencies § 1292(b) is designed to promote, risking wasted effort, duplicative discovery, and motion practice that appellate guidance could render unnecessary. A stay, by contrast, will promote judicial economy and conserve party resources by ensuring that any discovery proceeds, if at all, under the correct governing legal standards.

## CONCLUSION

For the foregoing reasons, the Court should grant Bain's motion for reconsideration or, in the alternative, for certification of interlocutory appeal and a stay of proceedings pending appellate review.

BAIN'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION & 1292(b) CERTIFICATION, 25-MD-03149-AJB-MSB

Dated: May 7, 2026

/s/ John P. Carlin
John P. Carlin (NY 3031887)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Alex Langsam (NY 5980891)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
jschutte@paulweiss.com
alangsam@paulweiss.com

R. Rosie Vail (SBN 317977)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant Bain Capital, L.P.*

- 11 -
BAIN'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION & 1292(b) CERTIFICATION, 25-MD-03149-AJB-MSB

## CERTIFICATE OF SERVICE

I certify that on the 7th day of May, 2026, I caused the filing of the foregoing Reply Memorandum with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:      */s/ John P. Carlin*
John P. Carlin
Email: jcarlin@paulweiss.com
*Attorney for Bain Capital, L.P.*

- 12 -