BROWN RUDNICK LLP
SAMANTHA J. FLATTERY, No. 342420
sflattery@brownrudnick.com
RENEE M. MOULTON, No. 353065
rmoulton@brownrudnick.com
2121 Avenue of the Stars, Suite 720
Los Angeles, CA 90067
T: 1.424.525.0200
F: 1.424.525.0201

BROWN RUDNICK LLP
DYLAN P. KLETTER, NY Bar No. 5924659 (admitted *pro hac vice*)
dkletter@brownrudnick.com
JONATHAN D. WHITE, NY Bar No. 5393780 (admitted *pro hac vice*)
jwhite@brownrudnick.com
7 Times Square
New York, NY 10036
T: 1.212.209.4800
F: 1.212.209.4801

Attorneys for Defendant,
MOVATE, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br>Track Two Class Action | CASE NO. 3:25-md-3149-AJB-MSB<br><br>MDL No. 3149<br><br>Hon. Anthony J. Battaglia<br><br>**DEFENDANT MOVATE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE SCHOOL DISTRICT SECOND AMENDED CLASS ACTION COMPLAINT (TRACK 2)**<br><br>Courtroom: 4A<br>Date: August 13, 2026<br>Time: 10:00 a.m.<br><br>**ORAL ARGUMENT REQUESTED** |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 13, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard in Department 4A of the above-entitled Court located at 221 West Broadway, San Diego, California, 92101, Defendant Movate, Inc. ("Movate") will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), for an order dismissing Movate as a defendant in the School District Second Amended Class Action Complaint (Dkt. 483) (the "Complaint") in the above-captioned matter, with prejudice. First, the Complaint should be dismissed for lack of either general or specific personal jurisdiction over Movate. Second, the Complaint should be dismissed because Plaintiffs fail to state a claim in Count 9 (Negligence) and Count 10 (Negligent Hiring, Training, Supervision, and Retention), the only claims Plaintiffs alleged against Movate, for the reasons described in the Memorandum of Points and Authorities.

This Motion is based on this Notice, the accompanying Memorandum, all pleadings and papers already on file with the Court in this matter, and upon any other matter which may be brought to the attention of the Court at or before the hearing.

This Motion is made following the conference of counsel that took place on May 11, 2026.

DATED: May 18, 2026

BROWN RUDNICK LLP

By: */s/ Dylan P. Kletter*

DYLAN P. KLETTER
JONATHAN D. WHITE
SAMANTHA J. FLATTERY
RENEE M. MOULTON
Attorneys for Defendant,
MOVATE, INC.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1
I. INTRODUCTION ........ 1
II. FACTUAL AND PROCEDURAL BACKGROUND ........ 2
III. LEGAL STANDARD ........ 4
A. Choice of Law ........ 4
IV. ARGUMENT ........ 5
A. The Complaint Fails to Allege Negligence Against Movate [Count 9] ........ 5
(1) Movate Owed No Duty as a Matter of Law ........ 6
(2) Plaintiffs Cannot Establish Breach as a Matter of Law ........ 12
B. Plaintiffs Fail to State a Claim for Negligent Hiring, Training, Supervision, and Retention Against Movate [Count 10] ........ 14
C. The Court Lacks Personal Jurisdiction Over Movate ........ 16
V. CONCLUSION ........ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Everest Glob. Servs., Inc.* (D.N.J. Aug. 21, 2024)
2024 WL 3887127 .......... 10

*In re Air Crash Disaster Near Chi., Ill.* (7th Cir. 1981)
644 F.2d 594 .......... 4

*Ashcroft v. Iqbal* (2009)
556 U.S. 662 .......... 4, 16

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.* (9th Cir. 2017)
874 F.3d 1064 .......... 18

*Bell Atlantic Corp. v. Twombly* (2007)
550 U.S. 544 .......... 4

*Boria v. Heritage at Alexander Hamilton* (D.N.J. July 30, 2024)
2024 WL 3585579 .......... 11

*Brown v. USA Taekwondo* (2021)
11 Cal. 5th 204 .......... 9, 12

*Chaney v. Superior Court* (1995)
39 Cal. App. 4th 152 .......... 16

*Core-Vent Corp. v. Nobel Indus. AB* (9th Cir. 1993)
11 F.3d 1482 .......... 18

*Daimler AG v. Bauman* (2014)
571 U.S. 117 .......... 17

*Davis v. Brickman Landscaping, Ltd.* (2014)
219 N.J. 395 .......... 11

*Di Cosala v. Kay* (1982)
91 N.J. 159 .......... 14

*Fero v. Excellus Health Plan, Inc.* (W.D.N.Y. 2017)
236 F. Supp. 3d 735 .......... 10

*Fischl v. Pac. Life Ins. Co.* (2023)
94 Cal.App.5th 108 .......... 11

*Fuller v. Fam. Servs. of Westchester, Inc.* (N.Y. App. Div. 2022)
209 A.D. 3d 983 .......... 14, 15

*In re Gilead Scis. Sec. Litig.* (9th Cir. 2008)
536 F.3d 1049 .......... 4

*Gonzaga Univ. v. Doe* (2002)
536 U.S. 273 .......... 11

*Jackson v. Paterson Police Dep't* (D.N.J. 2025)
804 F. Supp. 3d 469 .......... 15

*Jasper v. Bank Am. Corp.* (D.N.J. Oct. 2, 2020)
2020 WL 5868849 .......... 11

*Jerkins ex rel. Jerkins v. Anderson* (2007)
191 N.J. 285 .......... 6

*Kingsley v. Price* (N.Y. App. Div. 2019)
163 A.D.3d 157 .......... 10

*Kuzmicz v. Ivy Hill Park Apartments Inc.* (1997)
147 N.J. 510 .......... 11

*Lee v. Netgain Tech., LLC* (S.D. Cal. Apr. 1, 2022)
2022 WL 993552 .......... 18

*Malone v. County of Suffolk* (N.Y. App. Div. 2015)
8 N.Y.S.3d 408 .......... 12

*Mann v. City of Chula Vista* (S.D. Cal. Sept. 28, 2020)
2020 WL 5759749 .......... 6

*Moore v. First Fed. Sav. & Loan Ass'n Rochester* (1997)
654 N.Y.S.2d 900 .......... 1, 14, 16, 17

*Moss v. N.Y. Tel. Co.* (N.Y. App. Div. 1993)
196 A.D.2d 492 .......... 6

*Navarro v. SkiData* (C.D. Cal. Dec. 7, 2022)
2022 WL 18280359 .......... 6, 7, 10

*Palomar Health v. Am. Guarantee & Liab. Ins. Co.*, (S.D. Cal. Sept. 3, 2021), *aff'd*, 2022 WL 3006356 (9th Cir. July 28, 2022)
2021 WL 4035005 .......... 4, 17

*Picot v. Weston* (9th Cir. 2015)
780 F.3d 1206 .......... 18

*Pulka v. Edelman* (1976)
40 N.Y.2d 781 .......... 9

*Regents of Univ. of Cal. v. Superior Court* (2018)
4 Cal. 5th 607 .......... 9

*Rowland v. Christian* (1968)
69 Cal. 2d 108 .......... 6

*Schwarzenegger v. Fred Martin Motor Co.* (9th Cir. 2004)
374 F.3d 797 .......... 17

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.* (N.Y. Sup. Ct. 2020)
131 N.Y.S.3d 817 .......... *passim*

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.* (S.D. Cal. 2014)
996 F. Supp. 2d 942 .......... 10

*Southern Cal. Gas Leak Cases* (2019)
7 Cal. 5th 391 .......... 11

*Swartz v. KPMG LLP* (9th Cir. 2007)
476 F.3d 756 .......... 4, 17

*In re U.S. Vision Data Breach Litig.* (D.N.J. Feb. 26, 2025)
2025 WL 615366 .......... 6, 7, 10

*Walden v. Fiore* (2014)
571 U.S. 277 .......... 17

*Walsh v. AMD Sacramento* (E.D. Cal. Sept. 11, 2014)
2014 WL 4472752 .......... 8, 9

*Wuxi Multimedia, Ltd. v. Koninklijke Philips Elecs., N.V.* (S.D. Cal. Jan. 5, 2006)
2006 WL 6667002 .......... 9

**Statutes**

Federal Trade Commission Act
15 U.S.C. §§ 41–58 .......... 11

**Other Authorities**

Federal Rules of Civil Procedure
Rule 12(b)(1) .......... 4
Rule 12(b)(2) .......... 18
Rule 12(b)(6) .......... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs—various public school districts across the country—seek to impose liability on Movate, Inc. ("Movate"), a remote subcontractor with whom they have no contractual or legal relationship. Plaintiffs hired PowerSchool to provide student-information software and related services for their schools. PowerSchool, in turn, retained Movate to provide technical customer-support services to school districts on PowerSchool's behalf. For the reasons set forth below, Movate respectfully requests that Plaintiffs' two claims against Movate should be dismissed with prejudice.

*First*, Plaintiffs' negligence claim (Count 9) should be dismissed because the Complaint fails to plausibly allege duty. Allegations that a third-party vendor had mere access to a system without ownership, custody, or control over the systems and security measures are insufficient to establish duty. In performing its customer support role, Movate employees logged into PowerSchool's Student Information System ("SIS") using PowerSchool-issued usernames and passwords. The Complaint alleges that PowerSchool—not Movate—owned, operated, and controlled the SIS, including its authentication mechanisms and security configuration. Movate did not design, operate, or control the SIS; did not determine or implement its security architecture; and is not alleged to have controlled whether or how PowerSchool implemented multi-factor authentication ("MFA") or other security controls. Plaintiffs' claim against Movate hinges on a single premise: that cybercriminals obtained PowerSchool issued credentials associated with a Movate employee. Even if accepted as true, that allegation does not give rise to liability because, as a matter of law, access alone does not create a duty to safeguard data owned, controlled, and secured by another entity. For the same reason, Plaintiffs do not plausibly allege that Movate breached any duty: the alleged failures—such as the absence of MFA and the scope of system access—are attributed to PowerSchool's configuration of its own systems, not to any conduct by Movate. Because responsibility for the SIS and its security rested with

PowerSchool, Plaintiffs have failed to allege that Movate owed a duty—or that it breached one—and Count 9 should be dismissed.

*Second*, Plaintiffs' negligent hiring, training, supervision, and retention claim (Count 10) should be dismissed because it does not allege a required element, namely, any facts showing that Movate had notice of a specific risk posed by the employee at issue. Instead, Plaintiffs rely on generalized and conclusory assertions about supposed deficiencies in Movate's hiring, training, supervision, and retention practices. That is insufficient. These generalized and conclusory allegations are particularly deficient given that Plaintiffs' claims rest entirely on the allegation that *one* Movate employee's PowerSchool-issued credentials were stolen by a criminal. Absent pleading allegations to support the required element of prior misconduct or a known propensity for the misconduct by that employee, the claim fails as a matter of law.

Finally, the Complaint fails to establish personal jurisdiction. Movate is not "at home" in California, and Plaintiffs identify no suit-related conduct purposefully directed at this forum. The Complaint relies on generalized allegations that Movate provided support services to PowerSchool customers nationwide, which are insufficient to satisfy due process. Exercising jurisdiction over Movate—a nonresident entity with no relevant California-directed conduct—would be improper.

For these reasons, Movate respectfully requests that the Court dismiss all claims asserted against it in the Complaint with prejudice.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendants PowerSchool Holdings, Inc. and PowerSchool Group, LLC ("PowerSchool") are leading educational software providers in the United States. (2d Am. Compl. ¶¶ 18–19.) PowerSchool retained Movate, a Delaware corporation headquartered in Texas, as a subcontractor to provide limited, remote technical support and network operations services. (2d Am. Compl. ¶ 22.)

On or about December 28, 2024, PowerSchool became aware of a data breach of PowerSchool's SIS, which contains the personal identifiable information ("PII") of

over 60 million students, parents, and school employees. (2d Am. Compl. ¶¶ 1, 40, 47.) The Complaint alleges cybercriminals stole names, addresses, social security numbers, phone numbers, emails, grades, attendance, and medical information. (2d Am. Compl. ¶¶ 27, 41, 44.) Plaintiffs allege the cybercriminals were able to access the SIS through the PowerSchool-issued credentials of Rayson Cruz, a Movate employee in the Philippines working on the PowerSchool project. (2d Am. Compl. ¶ 267.)

On June 27, 2025, Plaintiffs filed the School District Class Action Complaint against PowerSchool and Bain, which did not name Movate as a defendant. (Dkt. 222.) Plaintiffs subsequently filed an Amended Class Action Complaint on August 12, 2025, which again asserted claims against PowerSchool and Bain, but not Movate. (Dkt. 263.) Following the Court's rulings on the motions to dismiss filed by Movate in the Track One and Track Two Direct Action proceedings (Dkts. 444, 445), Plaintiffs, PowerSchool, and Bain stipulated to permit a further amendment. (Dkt. 477.) The Court granted that request, and on April 27, 2026, Plaintiffs filed the Second Amended Class Action Complaint, which named Movate as a defendant for the first time. (Dkt. 483.) The Second Amended Complaint asserts two claims against Movate: Negligence (Count 9) and Negligent Hiring, Training, Supervision, and Retention (Count 10). (2d Am. Compl. ¶¶ 262–93, 294–307.)

The Second Amended Complaint alleges that PowerSchool owned, operated, and controlled the SIS and its underlying security architecture, including the manner in which data was collected, stored, and accessed through the platform. (*See, e.g.*, 2d Am. Compl. ¶¶ 27–28, 30–33, 123.) Plaintiffs further attribute the challenged security deficiencies—such as the absence of MFA, inadequate password practices, and insufficient access restrictions—to those system-level design and configuration decisions. (*See, e.g.*, 2d Am. Compl. ¶¶ 28–29, 31–33, 38, 86, 89–90, 92.) These allegations are directed at PowerSchool's control over the SIS and its security architecture, not at any independent system-level security decisions by Movate.

/ / /

By contrast, Plaintiffs' allegations concerning Movate focus on the use of PowerSchool-issued credentials to access the SIS in the course of providing customer support services. (*See* 2d Am. Compl. ¶¶ 89–92, 269–70.) To the extent Plaintiffs allege that those credentials were inadequately protected—such as by the absence of MFA—those allegations relate to how PowerSchool controlled and configured access to its SIS system. The Complaint does not allege that Movate designed, implemented, or controlled the SIS, or that it made system-wide security decisions regarding MFA protocols, password policies, or access controls.

## III. LEGAL STANDARD

Under Rule 12(b)(2), "the court may exercise personal jurisdiction over an out-of-state defendant consistent with both the forum state's long-arm statute and constitutional due process." *Palomar Health v. Am. Guar. & Liab. Ins. Co.*, 2021 WL 4035005, at *2 (S.D. Cal. Sept. 3, 2021), *aff'd*, 2022 WL 3006356 (9th Cir. July 28, 2022). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

Per Rule 12(b)(6), a claim must be dismissed unless it pleads "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### A. Choice of Law

In multidistrict litigation, the Court applies the choice-of-law rules of the transferor courts. *See In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 604 n.1, 610 (7th Cir. 1981). Plaintiffs hail from many different states nationwide. (2d Am.

/ / /

Compl. ¶ 135.) For purposes of this motion, and for efficiency's sake, the parties have agreed to focus on the laws of New York, New Jersey, and California.[1]

## IV. ARGUMENT

The Court should dismiss Plaintiffs' claims against Movate with prejudice.

First, Plaintiffs' negligence claim should be dismissed because Movate owed no duty to Plaintiffs. Plaintiffs do not allege that Movate controlled the systems, data, or security measures at issue, and access alone is insufficient to give rise to a duty of care. For the same reason, Plaintiffs fail to plausibly allege breach: the alleged deficiencies in security are attributed to PowerSchool's configuration of its own systems, not to any conduct by Movate.

Second, Plaintiffs' negligent hiring, training, supervision, and retention claim should be dismissed because the Complaint does not allege facts establishing a required element, namely, that Movate knew or should have known of any specific risk posed by its employee, Rayson Cruz. Instead, Plaintiffs rely on conclusory and generalized allegations regarding Movate's hiring, training, supervision, and retention practices, which are insufficient as a matter of law.

Finally, the Court lacks personal jurisdiction over Movate. Plaintiffs do not allege any purposeful, suit-related conduct by Movate directed at California or facts sufficient to justify haling a remote service provider into this forum.

For these reasons, and as explained in more detail below, the two claims asserted against Movate should be dismissed with prejudice.

### A. The Complaint Fails to Allege Negligence Against Movate [Count 9]

To state a negligence claim, a plaintiff must allege that the defendant owed a duty of care, breached that duty, caused the plaintiff's injuries, and that the plaintiff

---

[1] Movate reserves all rights with respect to choice-of-law, including the right to argue that the laws of jurisdictions other than New York, New Jersey, or California governs the common-law counts brought by any plaintiff.

suffered damages. *Mann v. City of Chula Vista*, 2020 WL 5759749, at *9 (S.D. Cal. Sept. 28, 2020). Each element is required. Because Plaintiffs fail to allege that Movate owed them any duty or that Movate's conduct caused their injuries, their negligence claim must be dismissed.

(1) **Movate Owed No Duty as a Matter of Law**

Whether a duty exists is a question of law. *See, e.g.*, *Rowland v. Christian*, 69 Cal. 2d 108, 112 (1968); *Moss v. N.Y. Tel. Co.*, 196 A.D.2d 492, 493 (N.Y. App. Div. 1993); *Jerkins ex rel. Jerkins v. Anderson*, 191 N.J. 285, 294 (2007).

***Movate Did Not Control the Risk-Creating Instrumentality***. The law is clear: a vendor's mere access to data, without ownership, custody, or control over the systems, security architecture, or access controls, is insufficient as a matter of law to create a duty to end users. Here, Plaintiffs' own pleading highlights the absence of any plausible allegation that Movate was responsible for the security measures at issue. Plaintiffs allege that *PowerSchool* owned and operated the SIS, issued the credentials used to access it, and determined the authentication and access controls governing those credentials. Taking those allegations as true, responsibility for implementing MFA and other system-level security controls rested with PowerSchool, not Movate. Plaintiffs' allegations concerning the absence of security controls in a system they allege was owned and controlled by PowerSchool is insufficient to establish a duty as to Movate. Courts consistently reject negligence claims under these circumstances.

The core cases relied on by both Plaintiffs and Defendants in this action—*In re U.S. Vision Data Breach Litigation*, *Navarro v. SkiData*, and *Smahaj v. Retrieval-Masters*—each hold that where a defendant lacks control over the data environment, security decisions, and credentialing architecture, no duty arises to downstream plaintiffs. *In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *8–10 (D.N.J. Feb. 26, 2025); *Navarro v. SkiData*, 2022 WL 18280359, at *10 (C.D. Cal. Dec. 7, 2022); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 825 (N.Y. Sup. Ct. 2020). Notably, other school district plaintiffs in this MDL—the Track

2 Direct Action Plaintiffs—have described these same cases as turning on the absence of such control. *See* Dkt. 490, Track 2 Direct Action Plaintiffs' Opposition to Bain's Motion for Reconsideration, at 12–13. The Direct Action Plaintiffs carefully explained that Bain's reliance on these cases was "readily distinguishable" because, as the Direct Action Plaintiffs highlighted, the defendants in those cases *lacked control* over the security decisions or data custodianship. *Id.* at 13. Plaintiffs emphasized that in *In re U.S. Vision Data Breach Litigation*, defendant's only connection to the data was "incidental storage; it exercised no control over the entity that collected the data, did not direct operational decisions affecting data-security practices, and had no preexisting relationship with the data subjects on which to ground a duty." *Id.* at 13. Likewise, the Direct Action Plaintiffs highlighted that defendants in *Navarro* were technology vendors "whose products were used by the breached entity," but who "had no role in shaping the security environment that failed." *Id.* at 13. And, the Direct Action Plaintiffs stressed that in *Smahaj*, the defendant was "not involved in the security decisions at issue and had no authority to direct the operational practices of the entity that maintained the data." *Id.* at 12. The Direct Action Plaintiffs contrasted those cases with Bain precisely because they alleged that Bain had exercised such security control. *See id.* at 12–13. The Direct Action Plaintiffs argued that Bain owes a duty because Bain allegedly obtained insight into PowerSchool's data-security practices, knew that data security was a material risk, and then "followed a well-documented, cost cutting 'playbook' of aggressively offshoring critical operations to cut costs, including by directing PowerSchool to lay off cybersecurity staff"—allegations that these same universe of school-district *Plaintiffs* have described as central to the duty analysis. *See id.* at 13.

That articulation of the governing law underscores why Plaintiffs' allegations against Movate fail. The Complaint does not allege that Movate controlled PowerSchool's security decisions, provided or directed cybersecurity practices, or exercised authority over the systems on which the data resided. Instead, Plaintiffs

allege only that Movate had access to PowerSchool's systems in the course of providing support services. That is insufficient as a matter of law to give rise to a duty.

Indeed, the Complaint's own allegations establish that ***PowerSchool***—not Movate—owned, operated, and controlled the SIS and associated support tools, as well as the credentialing, access permissions, and security controls Plaintiffs place at issue: The Complaint alleges that (i) the SIS is a PowerSchool system ("PowerSchool's Student Information System," 2d Am. Compl. ¶ 1); (ii) PowerSchool assigned the credentials at issue ("a single login credential . . . assigned to a contractor who worked for PowerSchool," *id.* ¶ 4); (iii) PowerSchool itself "committed to securing [SIS] data with . . . password rotation for its contractors" (¶ 1); (iv) PowerSchool determined what access—both for its own personnel and contractors—was granted and allegedly failed to limit that access appropriately, including by granting broad administrative privileges (*id.* ¶¶ 76, 92); and (v) PowerSchool controlled whether and how security measures such as multi-factor authentication were implemented or enforced for those accounts and allegedly failed to require or enforce MFA (*id.* ¶¶ 86, 90, 92).

Taken together, these allegations describe a single, consistent reality: PowerSchool issued the credentials, controlled the account, defined the access permissions, and determined the authentication requirements within its own system. The Complaint thus pleads, at most, that a Movate employee logged in to access a PowerSchool-controlled environment using PowerSchool-issued credentials subject to PowerSchool-defined controls—not that Movate exercised independent control over the data environment or the security measures that allegedly failed.

Plaintiffs attempt to avoid this deficiency by summarily asserting that Movate "failed" to implement security measures such as MFA and credential controls. (*See* 2d Am. Compl. ¶¶ 267, 279–81.) But those conclusory allegations do not cure the defect. Courts need not accept a "conclusory allegation [that] is inconsistent with and in no way supported by plaintiffs' factual allegations." *Walsh v. AMD Sacramento*, 2014 WL 4472752, at *10 n.7 (E.D. Cal. Sept. 11, 2014); *report and recommendation*

*adopted* (Dec. 29, 2014), *aff'd sub nom. Walsh v. Am. Med. Response*, 684 F. App'x 610 (9th Cir. 2017); *Wuxi Multimedia, Ltd. v. Koninklijke Philips Elecs., N.V.*, 2006 WL 6667002, at *9 (S.D. Cal. Jan. 5, 2006) (internally inconsistent allegations need not be accepted as true). Nor may plaintiffs rely on conclusory assertions that cannot be reconciled with the complaint's own theory.

That is precisely the case here. The Complaint alleges no facts showing that Movate—rather than PowerSchool—controlled or was responsible for implementing the security measures governing the system that was breached. To the contrary, Plaintiffs' own factual allegations consistently attribute control over the relevant systems, credentials, and security architecture to PowerSchool. And to the extent Plaintiffs' allegations could be read to suggest that Movate failed to implement MFA, password rotation, or similar controls, the only reasonable construction is that those allegations concern Movate's own, separate systems—not the PowerSchool system containing PII that Plaintiffs allege was compromised. But Plaintiffs do not allege that Movate's systems were breached. Instead, the alleged breach occurred within PowerSchool's environment, using PowerSchool-issued credentials subject to PowerSchool-defined controls. That is insufficient as a matter of law to create a duty.

***Plaintiffs Do Not—and Cannot—Allege a Special Relationship***. Plaintiffs cannot salvage their claim by invoking a "special relationship." (2d Am. Compl. ¶ 274.) That theory fails. A special relationship is characterized by dependence, control, or the plaintiff's status as an intended beneficiary. *See Regents of Univ. of Cal. v. Superior Court*, 4 Cal. 5th 607, 619 (2018); *Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021); *see also Pulka v. Edelman*, 40 N.Y.2d 781, 783–84 (1976) (no duty to control conduct of third party absent special relationship). Courts reserve special relationship duties for narrowly defined categories—such as parents and children, carriers and passengers, employers and employees, and innkeepers and guests—not for commercial service providers that are steps removed from the plaintiffs. *See Brown*, 11 Cal. 5th at 216.

This Court's decision in *In re Sony Gaming Networks & Customer Data Security Breach Litigation* underscores the point. There, plaintiffs alleged that Sony owned the network, directly collected user data, and exclusively controlled the design and implementation of security measures. 996 F. Supp. 2d 942, 966 (S.D. Cal. 2014) (Battaglia, J.). Even in that posture, the Court declined to recognize a special relationship sufficient to support recovery of economic losses. *Id.* at 969. The allegations here are materially weaker: Movate did not own the network, collect the data, or own, control, design or implement the security measures at issue.

The relationship here, between school districts and a subcontractor engaged by PowerSchool, is too attenuated to create a duty. Movate was not retained to store the Plaintiffs' data or design the security architecture of the SIS that housed the Plaintiffs' data. Instead, the Complaint alleges only that Movate provided backend customer support services to PowerSchool (2d Am. Compl. ¶¶ 92, 263–64). *See Navarro*, 2022 WL 18280359, at *10; *Smahaj*, 131 N.Y.S.3d at 825 (N.Y. Sup. Ct. 2020); *In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *8–10; *cf. Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 773–74 (W.D.N.Y. 2017) (no "special relationship of trust and confidence" where plaintiffs alleged that they "provided their personal information and received assurances about the [defendants'] data security"). Moreover, Plaintiffs have failed to plead a special relationship because they were not intended beneficiaries and cannot allege reliance or control. *See Adkins v. Everest Glob. Servs., Inc.*, 2024 WL 3887127, at *9–10 (D.N.J. Aug. 21, 2024) (dismissing negligence claim because plaintiffs failed to sufficiently plead the "foundational information" of a relationship between the parties that would give rise to a duty).

***Foreseeability Alone Cannot Create a Duty***. Plaintiffs' reliance on foreseeability likewise fails. (2d Am. Compl. ¶ 273.) Foreseeability does not, by itself, create a legal duty. *Kingsley v. Price*, 163 A.D.3d 157, 162 (N.Y. App. Div. 2018). Expanding liability on that basis would expose every subcontractor or vendor in a technology ecosystem to negligence claims by all end users of a product or service.

That would create precisely the "universe of potential claims" and "potentially overwhelming liability" that courts have cautioned against. *E.g.*, *Southern Cal. Gas Leak Cases* ("*Southern Cal. Gas*"), 7 Cal. 5th 391, 401–03 (2019); *Jasper v. Bank Am. Corp.*, 2020 WL 5868849, at *3–4 (D.N.J. Oct. 2, 2020) (dismissing negligence claim against third-party service provider where recognizing a duty would expose defendant to liability to a "boundless" and "unlimited" class of potential plaintiffs); *Kuzmicz v. Ivy Hill Park Apartments Inc.*, 147 N.J. 510, 515 (1997) ("Fairness, not foreseeability alone, is the test."). Their theory rests solely on the general proposition that data breaches are foreseeable in the modern environment. Such a theory would allow for a "universe of potential claims" that may discourage companies like Movate from engaging in "socially beneficial behavior." *See Southern Cal. Gas*, 7 Cal. 5th at 401–03. That is insufficient as a matter of law. *See Smahaj*, 131 N.Y.S.3d at 825 (holding plaintiffs failed to allege duty based on foreseeability where they "did not assert that [defendant] was aware of any specific risks to its data security system").

***Industry Standards and Regulatory Frameworks Do Not Create a Duty***. Plaintiffs rely on various external frameworks—ISO 27000, FERPA, the FTC Act, and unspecified "industry standards"—to claim that Movate owed them a duty of care. (2d Am. Compl. ¶¶ 275, 278, 282.) But none of these standards imposes any privately enforceable obligation on Movate. Industry framework and voluntary standards may inform whether conduct was reasonable once a duty exists, but they do not themselves create one. *See Fischl v. Pac. Life Ins. Co.*, 94 Cal. App. 5th 108, 129 (2023) ("[I]ndustry custom or practice cannot create a legal duty."); *accord Davis v. Brickman Landscaping, Ltd.*, 219 N.J. 395, 411 (2014). FERPA provides no private right of action. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). The FTC Act likewise creates no private right of action. *Smahaj*, 131 N.Y.S.3d at 828. Courts have declined to recognize a common law tort duty derived solely from federal statutes lacking private rights of action. *See Boria v. Heritage at Alexander Hamilton*, 2024 WL 3585579, at

/ / /

*3–5 (D.N.J. July 30, 2024). Plaintiffs identify no statute, regulation, or standard that turns compliance expectations into a private cause of action or common-law duty.

***PowerSchool's Contracts Do Not Give Rise to a Duty Owed By Movate.*** Plaintiffs also attempt to ground Movate's alleged duty in PowerSchool's contracts with school districts, claiming that those contracts required certain data-security measures and that Movate, as PowerSchool's subcontractor, "had a duty to perform its services in a manner that enabled PowerSchool to fulfill these contractual obligations." (2d Am. Compl. ¶¶ 276–77.) This theory fails as a matter of law. Plaintiffs are not parties to any contract with Movate and do not plausibly allege that they are intended third-party beneficiaries of Movate's subcontract with PowerSchool. A contract between two parties does not, without more, create tort duties to non-parties. Moreover, Movate's subcontract with PowerSchool did not make it the guarantor of PowerSchool's own contractual performance. *See Smahaj*, 131 N.Y.S.3d at 825–26 (dismissing negligence claim where defendant provided data-processing services to another company and lacked control over the compromised system). Extending liability down the contractual chain from PowerSchool to its subcontractor would expose every vendor in a multi-tiered services relationship to negligence claims by all end users. Because the Complaint alleges no contractual relationship or duty running from Movate to the Plaintiffs, Plaintiffs' negligence claim must be dismissed.

(2) **<u>Plaintiffs Cannot Establish Breach as a Matter of Law</u>**

Without a duty, there can be no breach, and thus no negligence. *Malone v. County of Suffolk*, 8 N.Y.S.3d 408, 409–10 (N.Y. App. Div. 2015); *Brown*, 11 Cal. 5th at 213. Even if the Court were to find that Plaintiffs have adequately alleged a duty, the Complaint still fails because it does not plausibly allege that Movate breached any such duty.

Plaintiffs' allegations—even if taken as true—do not establish that Movate breached any duty owed to them. The Complaint consistently attributes the alleged security failures that enabled the Data Breach—such as the lack of multi-factor

authentication, excessive system access, and inadequate system-level protections—to PowerSchool's design and configuration of its system, not to Movate. For example, Plaintiffs allege that PowerSchool failed to implement MFA and other basic safeguards for accounts with administrative access (2d Am. Compl. ¶¶ 86, 89–90), granted broad and "unfettered" access to the SIS through its own systems and tools (*id.* ¶¶ 264, 92), and maintained a "Backdoor Access Tool" that allowed support personnel to access unencrypted data (*id.* ¶ 45). These are system-level decisions concerning authentication protocols, access controls, and security architecture—matters Plaintiffs themselves allege were controlled by PowerSchool.

By contrast, the allegations concerning Movate focus on the use of PowerSchool-issued credentials to access the SIS. Plaintiffs allege that a Movate employee's credentials were compromised and used by third parties to gain access to the system (*id.* ¶¶ 267–68), and that the account "was not protected by multi-factor authentication" (*id.* ¶ 269). But Plaintiffs do not allege facts showing that Movate was responsible for configuring MFA requirements, implementing system-wide authentication controls, or determining how access to the SIS was secured. Rather, those allegations concern how PowerSchool structured and secured access to its own system.

That distinction is dispositive. Plaintiffs' theory depends on alleged failures in system configuration—such as whether MFA was required, how credentials were managed at the system level, and what access privileges were assigned—but the Complaint attributes those decisions to PowerSchool. Movate cannot be liable for PowerSchool's alleged failure to implement security controls in its own system.

A simple analogy illustrates the point. When a user logs into a bank's online platform, the bank—not the user—determines whether multi-factor authentication is required and what security measures govern access. If the bank does not implement MFA, the user cannot be deemed negligent for accessing the system as configured. The same principle applies here: PowerSchool alone determined the authentication

requirements and security architecture of its SIS. Movate—like any authorized user—could only access the system within that framework. As a result, Movate cannot be held negligent as a matter of law for complying with the access configuration PowerSchool chose.

Because Plaintiffs' allegations attribute the relevant security decisions and failures to PowerSchool—and do not plausibly allege that Movate controlled or failed to implement those measures—the Complaint does not state a claim that Movate breached any duty. Accordingly, the negligence claim must be dismissed.

### B. Plaintiffs Fail to State a Claim for Negligent Hiring, Training, Supervision, and Retention Against Movate [Count 10]

In addition to the four elements of common law negligence, to state a claim for negligent hiring, training, supervision, and retention, Plaintiffs must allege facts showing that Movate knew or should have known of the employee's propensity to engage in the specific conduct that caused Plaintiffs' alleged injuries. *See, e.g.*, *Fuller v. Fam. Servs. of Westchester, Inc.*, 209 A.D.3d 983, 984 (N.Y. App. Div. 2022) (dismissing negligent hiring and supervision claim where complaint failed to show employer should have known of employee's propensity to commit wrongful acts); *Di Cosala v. Kay*, 91 N.J. 159, 174 (1982). Plaintiffs fail to meet that standard.

*First*, Plaintiffs fail to allege facts showing that Movate had notice of any propensity by Rayson Cruz to engage in the conduct at issue. Liability for negligent hiring, training, supervision, and retention requires factual allegations that the employer "knew or had reason to know of the particular unfitness, incompetence or dangerous attribute of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons." *Di Cosala*, 92 N.J. at 173. Notably, other plaintiffs in this MDL—the Track Two Direct Action Plaintiffs—have expressly acknowledged that this element is required, stating that "a plaintiff must allege facts showing the employer knew or should have known that keeping the employee posed a risk of the specific harm that materialized." Dkt. 493, Direct Action Plaintiffs'

Response to Movate's Motion for Reconsideration, at 9. That acknowledgment reflects the governing law and underscores the deficiency here: the Complaint alleges no facts showing that Movate had notice of any such risk. The Complaint does not identify any prior misconduct, performance deficiencies, complaints, or warning signs that would have put Movate on notice that Cruz posed a risk of credential compromise. Instead, it asserts in conclusory terms that Movate "knew or should have known" Cruz "was or became unfit or incompetent." (2d Am. Compl. ¶ 306.) Courts routinely dismiss claims based on such unsupported assertions. *See, e.g. Fuller*, 209 A.D.3d at 984; *Jackson v. Paterson Police Dep't*, 804 F. Supp. 3d 469, 489 (D.N.J. 2025) (dismissing negligent hiring, training, supervision, and retention claim where plaintiff alleged only conclusory assertions that defendants "negligently hired, trained, supervised, and retained" employees without facts showing knowledge of a particular unfitness or propensity). Because Plaintiffs allege no facts demonstrating notice of any specific risk posed by Cruz, the claim fails.

*Second*, Plaintiffs' reliance on generalized cybersecurity risks does not substitute for notice of a particular employee's propensity. The negligent hiring, training, supervision, and retention hiring doctrine focuses on what the employer knew or should have known about the employee—not generalized risks faced by an industry. The Complaint alleges that Movate was "on notice" of cybersecurity risks based on "highly publicized breaches" and general awareness of data-security threats. (2d Am. Compl. ¶ 299.) But such allegations would establish, at most, that data breaches are foreseeable in the abstract. They do not plausibly allege that Movate had reason to believe that Cruz posed a risk of causing the alleged harm. Accordingly, Plaintiffs' reliance on generalized cybersecurity risks does not satisfy the required notice.

*Third*, Plaintiffs fail to plausibly allege that any deficiency in Movate's hiring, training, supervision, or retention caused the alleged breach. To state a claim, Plaintiffs must plead facts showing that the employer's negligence was a proximate cause of the injury. *Fuller*, 209 A.D.3d at 984 (dismissing negligent hiring, training, and

supervision claim where the complaint failed to allege knowledge of the employee's propensity for the conduct that caused the injury, such that the conduct could reasonably have been anticipated). Here, Plaintiffs allege in conclusory terms that Movate failed to "appropriately train" employees. (2d Am. Compl. ¶ 305.) But they do not identify any specific training deficiency. Allegations that are merely "consistent with" liability do not bring a claim "over the line between possibility and plausibility," and fail to meet the federal pleading standard. *Iqbal*, 556 U.S. at 678. "[I]t is not enough to allege that . . . misconduct was *conceivable*. . . . The plaintiff must allege facts showing that it was *foreseeable*, i.e. facts from which it can be inferred that the defendant . . . *must have known*" of misconduct or the propensity for misconduct. *Chaney v. Superior Court*, 39 Cal. App. 4th 152, 158 (1995) (emphasis in original). Without factual allegations tying any purported deficiency to the breach, Plaintiffs fail to state a plausible claim.

*Fourth*, Plaintiffs' causation allegations are entirely conclusory. The Complaint alleges only that Movate's conduct "substantially caused" the alleged breach. (2d Am. Compl. ¶ 301.) The Court should not credit "threadbare recitals of the elements of [negligent hiring and supervision], supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. Plaintiffs do not allege how Cruz's conduct was enabled by any specific training or supervision act or omission by Movate, particularly where the alleged harm depends on intervening criminal acts. This failure to plead non-conclusory causation provides an independent basis for dismissal. *See Moore v. First Fed. Sav. & Loan Ass'n Rochester*, 654 N.Y.S.2d 900, 900 (1997) ("[C]onclusory allegations fail to state a valid cause of action for negligent training and supervision.").

Accordingly, the Complaint fails to allege the essential elements of negligent hiring, training, supervision, and retention and Count 10 should be dismissed.

### C. **The Court Lacks Personal Jurisdiction Over Movate**

Finally, Plaintiffs fail to establish that this Court may exercise personal jurisdiction over Movate. The Complaint offers only conclusory assertions that

Movate has "continuous and systematic contacts" with California and "directed contacts" here "through technical support for PowerSchool" and by doing business with PowerSchool. (2d Am. Compl. ¶ 16.) But Movate is a Delaware corporation headquartered in Texas, is not "at home" in California, and Plaintiffs do not allege any suit-related conduct purposefully directed at this forum. These allegations are insufficient to establish either general or specific jurisdiction.

*First*, Plaintiffs rely on bare, conclusory allegations that cannot establish personal jurisdiction. A plaintiff "cannot simply rest on the bare allegations of the complaint," and conclusory assertions are insufficient to make a prima facie showing. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Swartz*, 476 F.3d at 766. Here, Plaintiffs allege only that Movate provided "technical support" and "conduct[ed] business" with PowerSchool, without identifying where that conduct occurred or how it was directed at California. Such allegations are insufficient as a matter of law. *See Palomar Health*, 2020 WL 1849664, at *2.

*Second*, Plaintiffs fail to establish general jurisdiction. A corporation is subject to general jurisdiction only where it is "essentially at home," typically its place of incorporation or principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014). Movate is incorporated in Delaware and headquartered in Texas. (2d Am. Compl. ¶ 22.) Plaintiffs do not allege facts suggesting this is the "exceptional" case where a defendant's "pervasive" contacts render it at home in another forum. *Daimler AG*, 571 U.S. at 138–39 n.19. General jurisdiction is therefore absent.

*Third*, Plaintiffs fail to establish specific jurisdiction. Specific jurisdiction requires that the defendant purposefully direct conduct at the forum, that the claims arise out of that conduct, and that exercising jurisdiction is reasonable. *Schwarzenegger*, 374 F.3d at 802. Plaintiffs satisfy none of these requirements.

Plaintiffs do not allege purposeful availment. The "defendant's suit-related conduct" must create a substantial connection with the forum, and "the plaintiff cannot be the only link." *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014). Allegations that

Movate provided remote technical support to a third party do not establish conduct expressly aimed at California. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069–71 (9th Cir. 2017). Nor do Plaintiffs allege that any relevant conduct occurred in California. To the contrary, the Complaint alleges that the employee whose credentials were compromised was located abroad. (2d Am. Compl. ¶ 91.)

Plaintiffs also fail to show that their claims arise out of any California-related conduct. A claim must arise from the defendant's contacts with the forum itself, not from out-of-state conduct with incidental effects. *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015). Plaintiffs do not allege that Movate's purportedly wrongful conduct occurred in California or was directed at California residents. That omission is dispositive. Courts in this Circuit have rejected personal jurisdiction where, as here, the defendant's alleged conduct consists of remote services or incidental communications with the forum. *See, e.g.*, *Lee v. Netgain Tech., LLC*, 2022 WL 993552, *3–6 (S.D. Cal. Apr. 1, 2022) (Minnesota-based IT provider not subject to jurisdiction in California where the data breach and relevant technical operations occurred outside the forum).

*Fourth*, exercising jurisdiction would be unreasonable. Courts consider factors including the extent of purposeful interjection, the burden on the defendant, and the forum's interest. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993). Here, Movate's alleged contacts are minimal, it has no operational presence in California, and the alleged conduct occurred outside the forum. Exercising jurisdiction under these circumstances would not comport with due process.

Accordingly, because Plaintiffs fail to establish either general or specific jurisdiction, the claims against Movate should be dismissed under Rule 12(b)(2).

/ / /

/ / /

/ / /

/ / /

## V. CONCLUSION

For all of the foregoing reasons, Movate respectfully requests that the Court dismiss all claims asserted against it in the Complaint with prejudice.

DATED: May 18, 2026

Respectfully submitted,

BROWN RUDNICK LLP

By: */s/ Dylan P. Kletter*
DYLAN P. KLETTER
JONATHAN D. WHITE
SAMANTHA J. FLATTERY
RENEE M. MOULTON
Attorneys for Defendant,
MOVATE, INC.