UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>Track One | Case No.: 25-md-03149-AJB-MSB<br>MDL No. 3149<br><br>**ORDER DENYING POWERSCHOOL'S MOTION FOR RECONSIDERATION AND FOR CERTIFICATION OF INTERLOCUTORY APPEAL**<br><br>**(Doc. No. 465)** |

Before the Court is a motion seeking reconsideration pursuant to Rules 54 and 59 of the Federal Rules of Civil Procedure[1] or, in the alternative, certification of an interlocutory appeal pursuant to 28 U.S.C. §1292(b) filed by Defendants PowerSchool Corporation and PowerSchool Group, LLC (collectively, "PowerSchool"). (Doc. No. 465.) For the reasons set forth below, the Court **DENIES** the motion in its entirety.

---

[1] Further reference "Rule" or "Rules" is to the Federal Rules of Civil Procedure, unless otherwise stated.

1

25-md-03149-AJB-MSB

**I.    INTRODUCTION**

On March 18, 2026, the Court issued an order granting in part and denying in part PowerSchool's motion to dismiss. (Doc. No. 436.) As relevant here, the Court determined that Track One Plaintiffs sufficiently alleged Article III standing to survive a motion to dismiss by pleading various injuries, including actual or attempted fraud, imminent risk of future harm from identity theft or fraud, diminution in value of personal information, expense of time and money on mitigation efforts, and loss of the benefit of the bargain. (*Id.* at 9–14.)

PowerSchool now moves for reconsideration for Track One, asserting that the Court's standing analysis was clear error on two grounds: (1) the Court did not assess Article III standing on a plaintiff-by-plaintiff basis and instead allowed all named Plaintiffs to proceed based on the injury of at least one Plaintiff; and (2) the Court declined to follow the Ninth Circuit's reasoning in *Kisil v. Illuminate Educ., Inc.*, No. 23-4114, 2025 WL 2589000 (9th Cir. Sept. 8, 2025), on the ground that it is unpublished. (Doc. No. 465-1 at 7–10.) PowerSchool contends that, under controlling Supreme Court and Ninth Circuit authority, the 121 Plaintiffs it labels the "No-Injury Plaintiffs"—those who have not alleged exposure of sensitive personal information such as Social Security or financial data—should be dismissed. (*Id.* at 9, 21, 23.) If unsuccessful on reconsideration, PowerSchool requests that the Court certify the two legal questions to the Ninth Circuit under 28 U.S.C. § 1292(b) and stay Track One discovery pending any Ninth Circuit review. (*Id.* at 20–26.)

Plaintiffs filed a response in opposition (Doc. No. 489), to which PowerSchool replied (Doc. No. 494). With the matter fully briefed, the Court finds the motion suitable for determination on the papers and without oral argument. *See* CivLR 7.1.d.1. This Order follows.

///

///

///

25-md-03149-AJB-MSB

## II.    MOTION FOR RECONSIDERATION

PowerSchool asserts reconsideration is proper because the Court committed clear error. (Doc. No. 465-1 at 11–20.) Plaintiffs assert PowerSchool has not satisfied the demanding standard for reconsideration because it merely repeats arguments the Court already rejected. (Doc. No. 489 at 6–8.)

### A.    Legal Standard

A district court has inherent jurisdiction to modify, alter, or revoke a prior order. *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000). "Reconsideration [of a prior order] is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see* CivLR 7.1.i.

Reconsideration should be used conservatively, because it is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) ("[A] motion for reconsideration should not be granted, absent highly unusual circumstances . . . ."). A motion for reconsideration may not be used to relitigate old matters, or to raise arguments or present evidence that reasonably could have been raised earlier in the litigation. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008); *see Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "A party seeking reconsideration must show more than a disagreement with the Court's decision." *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001); *accord Huhmann v. FedEx Corp.*, No. 13-CV-00787-BAS NLS, 2015 WL 6128494, at *2 (S.D. Cal. Oct. 16, 2015).

### B.    Clear Error

PowerSchool advances two interrelated grounds for reconsideration. First, PowerSchool argues that the Court committed clear error by declining to analyze each

named plaintiff's standing individually, as it contends Supreme Court and Ninth Circuit precedent require. (Doc. No. 465-1 at 11–13.) PowerSchool maintains that the Court may not allow all named plaintiffs to proceed based on the injury of a single individual, but must instead require each plaintiff to demonstrate his or her own concrete harm, and that more than seventy percent of the named plaintiffs—the "No-Injury Plaintiffs"—did not allege exposure of sensitive data such as Social Security numbers or financial information and therefore lack standing under current law. (*Id.* at 7–8, 12–13.)

Second, PowerSchool contends that the Court overlooked relevant authority by declining to follow *Illuminate*, which dismissed similar claims in what PowerSchool characterizes as a nearly identical data breach case. PowerSchool argues that the Court disregarded *Illuminate* solely because it is unpublished, even though *Illuminate* itself rested on binding Supreme Court authority in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). (*Id.* at 7–9, 18–19.) PowerSchool maintains that exposure of non-sensitive direct information cannot support a claim, and that the Court's reliance on three published Ninth Circuit opinions[2] is misplaced because those decisions do not relieve each named plaintiff of the obligation to demonstrate standing for that plaintiff's own claims. (*Id.* at 9, 12–20.)

Plaintiffs respond that the Court correctly applied *TransUnion* with the Ninth Circuit decisions in *Healy*, *Zappos*, and *Krottner*, which together establish that at the pleading stage—though not at summary judgment—general allegations of injury suffice in data breach cases. (Doc. No. 489 at 8–9.) Plaintiffs note the Court's recognition that allegations of sensitive data exfiltration, misuse, or dark-web exposure established standing, and that benefit-of-the-bargain and diminution-in-value theories also support standing. (*Id.* at 9, 18.) Plaintiffs further assert that each Plaintiff has alleged an imminent risk of future harm. (*Id.* at 14.) As to *Illuminate*, Plaintiffs maintain that *Healy* and *Zappos* control over the

---

[2] Namely, *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010), *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 888 F.3d 1020 (9th Cir. 2018), and *Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026).

unpublished disposition and that the Court correctly held that an unpublished decision cannot displace binding published precedent. (*Id.* at 11, 12, 24.) Plaintiffs distinguish *Illuminate* on the ground that it involved less sensitive data and no alleged misuse, whereas the PowerSchool breach involved sensitive information, including Social Security numbers, and actual misuse, which under binding precedent supports standing. (*Id.* at 12–13.) Plaintiffs further argue that *Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010), is inapposite because it is not a data breach case, does not address risk-of-future-harm injuries, and addresses mootness following settlement rather than class-action standing at the pleading stage. (*Id.* at 8, 15, 24.) The question here, Plaintiffs assert, is not mootness but whether the case may proceed with multiple plaintiffs alleging concrete harms. (*Id.* at 17.) Plaintiffs add that PowerSchool is improperly attempting to relitigate matters already decided merely because a new judge is presiding. (*Id.* at 18, 24.) Finally, Plaintiffs argue that *TransUnion*'s requirement that each class member demonstrate concrete injury attaches at class certification and summary judgment, not at the motion-to-dismiss stage. (*Id.* at 12, 17.)

When reconsideration rests on a claim of clear error or manifest injustice, "[m]ere doubts or disagreement about the wisdom of a prior decision . . . will not suffice . . . To be clearly erroneous, a decision must [be] more than just maybe or probably wrong; it must be dead wrong." *Heathman v. Portfolio Recovery Assocs., LLC*, No. 12-cv-201-IEG-RBB, 2013 WL 1284184, at *1 (S.D. Cal. Mar. 26, 2013). "[C]learly erroneous is a very exacting standard." *Id.* "[I]t is a clear error of law to not apply controlling Supreme Court precedent." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). District courts within the Ninth Circuit are bound by the Circuit's published opinions on point. *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001). Unpublished Ninth Circuit dispositions, by contrast, "are not precedent." 9th Cir. R. 36-3(a). They may be cited under limited conditions but do not displace controlling published authority. 9th Cir. R. 36-3(b).

Article III standing requires plausible allegations that (1) the plaintiff suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury is fairly

traceable to the defendant; and (3) the injury would likely be redressed by a favorable decision. *TransUnion*, 594 U.S. at 423; *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) ("[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold [sic] requirement imposed by Article III of the Constitution by alleging an actual case or controversy."). The parties agree that this standard governs; they disagree about what it demands of named plaintiffs at the motion-to-dismiss stage in a data breach action.

The standing inquiry calibrates to the procedural posture. At the pleading stage, "[g]eneral allegations" of injury may suffice. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992). At summary judgment, plaintiffs must come forward with evidence that produces a genuine issue of material fact, and at trial, a plaintiff must affirmatively prove the injury supporting standing. *Healy*, 164 F.4th at 708–09. Two published Ninth Circuit decisions address Article III standing at the pleading stage in data breach cases: *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010), and *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 888 F.3d 1020 (9th Cir. 2018). Under *Krottner*, "the possibility of future injury may be sufficient to confer standing on plaintiffs; threatened injury constitutes 'injury in fact.'" 628 F.3d at 1142 (citation omitted). A plaintiff who has not yet suffered misuse of personal information can still claim injury in fact by showing "a credible threat of real and immediate harm" arising from the theft of a laptop holding the plaintiff's unencrypted personal information. *Zappos*, 888 F.3d at 1027 (citing *Krottner*, 628 F.3d at 1143). Imminent-risk harms "qualify as concrete injuries in fact when they are based on a risk of harm that is either 'certainly impending' or 'substantial.'" *Id.* at 1024 (citation omitted). The risk of future harm must be "'fairly traceable' to the conduct being challenged." *Id.* at 1029 (citation omitted).

Before class certification, Article III is satisfied so long as at least one named plaintiff has standing; unnamed class members need not demonstrate standing at that stage. *Healy*, 164 F.4th at 706. After certification of a class seeking money damages, both named and unnamed class members must produce evidence of Article III standing at summary

25-md-03149-AJB-MSB

judgment under the usual summary-judgment standard, and standing must be supported by the evidence adduced at trial. *Id.* at 707. *TransUnion* abrogated *Zappos* in part, holding that "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm." *TransUnion*, 594 U.S. at 436. *Healy* recognized that *Zappos* was abrogated by *TransUnion* only to the extent *Zappos* would have permitted unnamed class members to go to trial without proving standing. *Healy*, 164 F.4th at 708. After *TransUnion*, all class members must demonstrate standing at summary judgment or trial. *Id.* at 705. At the pleading stage, however, *Zappos* remains controlling. *Healy* cites *Zappos* with approval for the proposition that Article III is satisfied earlier in a case so long as one named plaintiff has standing and a putative plaintiff class has not yet been certified. *Id.* at 706.

Measured against this framework, neither of PowerSchool's grounds establishes clear error. On the first, the Court has considered PowerSchool's arguments distinguishing between named plaintiffs alleging exfiltration or misuse and those PowerSchool labels "No-Injury Plaintiffs," but those arguments misapprehend what *TransUnion*, *Healy*, and *Zappos* together require at the motion-to-dismiss stage. *Healy* expressly preserves *Zappos*'s pleading-stage rule that Article III is satisfied where at least one named plaintiff alleges injury and the class has not been certified. *Id.* at 706. The prior order applied that rule. PowerSchool's preferred individualized inquiry attaches at summary judgment and trial, not on a Rule 12 motion. *Id.* at 705, 707. Plaintiffs' allegations that their sensitive information was exfiltrated in the PowerSchool breach and, in some instances, has surfaced online suffice to plead injury in fact under *Krottner* and *Zappos* at this stage; the more granular sorting PowerSchool seeks is properly conducted through discovery and on a developed record.

On the second ground, PowerSchool's reliance on *Illuminate* fares no better. Whatever weight *Illuminate* may carry as persuasive authority, its status as an unpublished disposition forecloses its use to override the published Ninth Circuit decisions that govern this Court's analysis. *Hart*, 266 F.3d at 1170; 9th Cir. R. 36-3(a). The prior order's reliance

25-md-03149-AJB-MSB

on *TransUnion*, *Healy*, and *Zappos*—each binding—reflects application of, not departure from, controlling precedent. *Smith*, 727 F.3d at 955. *Sanford* does not change the result; it neither arises in the data breach context nor addresses risk-of-future-harm standing at the pleading stage, and it cannot displace the framework *Healy* and *Zappos* supply. The factual distinctions Plaintiffs draw between *Illuminate* and this case—including allegations of Social Security number exposure and actual misuse—reinforce that *Illuminate*, even if instructive in another setting, does not undermine the conclusion reached in the prior order. PowerSchool has not shown that the prior ruling was "dead wrong" on either ground. *Heathman*, 2013 WL 1284184, at *1.

For the foregoing reasons, PowerSchool has not carried its burden under the exacting clear-error standard. The prior order applied the controlling published authorities—*TransUnion*, *Healy*, *Krottner*, and *Zappos*—to the allegations before the Court at the motion-to-dismiss stage and correctly declined to substitute the unpublished disposition in *Illuminate* for binding Ninth Circuit precedent. PowerSchool's disagreement with that analysis, and its preference for individualized standing scrutiny better suited to summary judgment or trial, does not render the prior ruling "dead wrong." *Id.*

### C.    Conclusion

PowerSchool's motion rests on arguments the Court already considered and rejected. The prior order denied dismissal because, under the *Twombly*/*Iqbal* pleading standard, Plaintiffs are entitled at this stage to develop their allegations through discovery. PowerSchool identifies no newly discovered evidence, no intervening change in controlling law, and no clear error in the Court's application of *Healy*, *Zappos*, *Krottner*, and *TransUnion* at the pleading stage. The unpublished disposition in *Illuminate* does not displace the published authority on which the Court relied. This case is complex, involving numerous similar and distinct legal theories applied to the same facts against various defendants, with variations among Plaintiffs, as supported by cases from different jurisdictions. Therefore, challenging inconsistencies in prior Orders now—unless they clearly contain errors—only impedes judicial efficiency in resolving all disputes fairly and

promptly. These issues will likely be addressed soon, but not right now. Because PowerSchool has not satisfied the threshold for reconsideration, the Court **DENIES** its motion.

## III.   MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

PowerSchool requests, in the alternative, that the Court certify two questions for interlocutory appeal and stay this action pending the Ninth Circuit's resolution: (1) whether each named plaintiff in a proposed class action must individually demonstrate concrete harm to survive a motion to dismiss; and (2) whether a plaintiff can claim concrete harm where only non-sensitive information was exposed in a data breach. (Doc. No. 465-1 at 10, 20–26.) PowerSchool also seeks a stay of discovery, contending that continued discovery as to plaintiffs who may later be dismissed would be inefficient and wasteful. (*Id*. at 26.) Plaintiffs oppose certification, arguing that PowerSchool fails to satisfy the statutory criteria of 28 U.S.C. § 1292(b) and that certification is reserved for exceptional circumstances. (Doc. No. 489 at 7, 19, 21–22.)

Under 28 U.S.C. § 1292(b), a district court may certify an interlocutory order for appeal where (1) the order involves a controlling question of law, (2) there is substantial ground for difference of opinion as to that question, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. Certification under § 1292(b) is reserved for "exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig*., 673 F.2d 1020, 1026 (9th Cir. 1981). The substantial-ground-for-difference-of-opinion prong concerns the clarity of the controlling law; to determine whether it is satisfied, courts must "examine to what extent the controlling law is unclear." *Couch v. Telescope Inc*., 611 F.3d 629, 633 (9th Cir. 2010). The party seeking certification bears the burden of demonstrating that each requirement is met, and the conjunctive nature of the statute means that the failure of any one element defeats certification.

PowerSchool first contends that a substantial ground for difference of opinion exists because the Court's denial of its motion to dismiss conflicts with decisions in other districts

9

25-md-03149-AJB-MSB

and appellate courts dismissing claims where plaintiffs did not allege exposure of sensitive data or concrete harm. (Doc. No. 465-1 at 22–24.) Plaintiffs respond that Ninth Circuit law on standing in data breach cases is settled and that PowerSchool's disagreement with the Court's ruling does not generate a substantial ground for a difference of opinion. (Doc. No. 489 at 20–22.) Plaintiffs further note that the Court has already determined that all Plaintiffs have standing, rendering the individualized standing question immaterial at this stage. (*Id.* at 19.)

The Court agrees with Plaintiffs. Under *Couch*, the controlling inquiry is "to what extent the controlling law is unclear," not whether reasonable jurists could disagree about how settled law applies to particular facts. 611 F.3d at 633. PowerSchool's showing rests on out-of-circuit and out-of-district authorities reaching different outcomes on different factual records. That a court applying a different evidentiary record reached a different result does not establish that the governing legal standard is unsettled within this Circuit. Were it otherwise, the substantial-ground prong would collapse into a generalized invitation to relitigate any motion-to-dismiss ruling that found contrary support in another jurisdiction—a result inconsistent with the "exceptional" character of § 1292(b) review described in *In re Cement Antitrust Litigation*, 673 F.2d at 1026. Because PowerSchool has not identified ambiguity in the controlling Ninth Circuit law governing standing in data breach cases, the second § 1292(b) requirement is not satisfied. The third requirement, that an immediate appeal materially advance the ultimate termination of the litigation, is independently dispositive. PowerSchool argues that resolving the certified questions now would promote judicial economy by streamlining the case, avoiding unnecessary discovery, and facilitating settlement. (Doc. No. 465-1 at 24–26.) Plaintiffs respond that appellate review would delay rather than advance resolution and that, in any event, a successful appeal would not terminate the litigation because Plaintiffs have alleged misuse of their data. (Doc. No. 489 at 19, 22–24.)

Plaintiffs have the better of this argument. The "materially advance" inquiry asks whether appellate resolution would meaningfully shorten the path to final judgment,

25-md-03149-AJB-MSB

consistent with § 1292(b)'s purpose of avoiding "protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. Where, as here, Plaintiffs have pleaded misuse of their data as an independent theory of injury, even a favorable appellate ruling on the standing questions PowerSchool proposes would leave the misuse-based claims intact. The efficiency gains PowerSchool identifies, narrowed discovery and potential settlement, are speculative and must be weighed against the certain delay an interlocutory appeal would impose. On this record, the balance does not tip toward certification, and the materially-advance requirement is not met.

Because PowerSchool has not satisfied the two independent prongs of § 1292(b), the Court need not separately address whether the proposed questions present controlling issues of law, and the request for a stay of discovery falls with the underlying motion.

## IV.   CONCLUSION

For the reasons set forth above, the Court **DENIES** PowerSchool's Track One motion for reconsideration pursuant to Rules 54 and 59, **DENIES** PowerSchool's motion for certification of interlocutory appeal under 28 U.S.C.§ 1292(b), and **DENIES** the related request to stay discovery.

**IT IS SO ORDERED.**

Dated:  May 29, 2026

Hon. Anthony J. Battaglia
United States District Judge

11

25-md-03149-AJB-MSB