John P. Carlin (NY 3031887)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Alex Langsam (NY 5980891)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
jschutte@paulweiss.com
alangsam@paulweiss.com

*admitted *pro hac vice*

R. Rosie Vail (SBN 317977)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

*Attorneys for Defendant Bain Capital, L.P.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION

*This Document Relates To:*

*Track 2 School District Direct Action Plaintiffs*

Case No. 25-md-3149-AJB-MSB

MDL NO. 3149

**DEFENDANT BAIN CAPITAL, L.P.'s OPPOSITION TO SCHOOL DISTRICT DIRECT ACTION PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED MASTER COMPLAINT**

Date: TBD
Time: TBD
Courtroom: 4A
Judge: Hon. Anthony J. Battaglia

## TABLE OF CONTENTS

INTRODUCTION .......... 1
BACKGROUND .......... 3
LEGAL STANDARD .......... 5
ARGUMENT .......... 6
I. Because Plaintiffs Fail to State a Claim Against Bain, Amendment Is Futile .......... 6
II. Plaintiffs' Motion Should Be Denied Because It Imposes Undue Prejudice on Bain and Wastes Judicial Resources. .......... 14
III. Plaintiffs' Motion Should Be Denied Because of Undue Delay. .......... 17
IV. Plaintiffs' Motion Should Be Denied on the Grounds of Bad Faith and Gamesmanship. .......... 20
CONCLUSION .......... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahlmeyer* v. *Nevada System of Higher Educ.*, 555 F.3d 1051 (9th Cir. 2009) ..... 5, 6

*Allen* v. *City of Beverly Hills*, 911 F.2d 367 (9th Cir. 1990) ..... 5, 13

*Allen* v. *Hyland's Inc.*, 2013 WL 1748408 (C.D. Cal. Apr. 11, 2013) ..... 19

*Am. Airlines, Inc.* v. *Mawhinney*, 904 F.3d 1114 (9th Cir. 2018) ..... 8

*AmerisourceBergen Corp.* v. *Dialysist West, Inc.*, 465 F.3d 946 (9th Cir. 2006) ..... 5, 19

*Anderson* v. *Cnty. of Fresno*, 2023 WL 2761168 (E.D. Cal. Apr. 3, 2023), *report and recommendation adopted*, 2023 WL 4637099 (E.D. Cal. July 20, 2023) ..... 9

*Apple Inc.* v. *Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42 (N.D. Cal. 2020) ..... 2, 7, 8, 10

*Ascon Properties, Inc.* v. *Mobil Oil Co.*, 866 F.2d 1149 (9th Cir. 1989) ..... 5

*Barrett* v. *Apple Inc.*, 523 F. Supp. 3d 1132 (N.D. Cal. 2021) ..... 14

*Bonin* v. *Calderon*, 59 F.3d 815 (9th Cir. 1995) ..... 3

*Connecticut Gen. Life Ins. Co.* v. *Earl Scheib, Inc.*, 2012 WL 12868358 (S.D. Cal. May 22, 2012) ..... 9

*Conte* v. *Jakks Pac., Inc.*, 981 F. Supp. 2d 895 (E.D. Cal. 2013) ..... 14

*Del Valle* v. *County of Sonoma*,
2019 WL 10733250 (N.D. Cal. Feb. 20, 2019) .......... 15, 16

*Dr. Erik Natkin, DO PC* v. *Am. Osteopathic Ass'n*,
2019 WL 1772389 (D. Or. Apr. 22, 2019) .......... 13

*E. & J. Gallo Winery* v. *EnCana Energy Servs., Inc.*,
2008 WL 2220396 (E.D. Cal. May 27, 2008) .......... 7

*Eisenacher* v. *BMW of N. Am., LLC*,
2018 WL 8131219 (C.D. Cal. Feb. 2, 2018) .......... 18

*Eminence Cap., LLC* v. *Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .......... 5

*Est. of Ricardez* v. *Cnty. of Ventura*,
2020 WL 3891460 (C.D. Cal. June 24, 2020) .......... 8

*Fiol v. Doellstedt*,
50 Cal. App. 4th 1318 (1996) .......... 11

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .......... 11, 12

*Foman* v. *Davis*,
371 U.S. 178 (1962) .......... 5

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......... 5, 12

*Gonzalez* v. *Google, Inc.*,
2024 WL 3331649 (N.D. Cal. July 8, 2024) .......... 11

*Hampton* v. *McDonald*,
2012 WL 6202740 (E.D. Cal. Dec. 11, 2012) .......... 20

*Hearden* v. *Windsor Redding Care Ctr., LLC*,
103 Cal. App. 5th 1010 (2024) .......... 8

*Jackson* v. *Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990) .......... 14, 15, 18, 21

*Jacobson* v. *Rose*,
592 F.2d 515 (9th Cir. 1978) .......... 5

*Kaplan* v. *Rose*,
49 F.3d 1363 (9th Cir. 1994) .......... 18

*In re Korean Air Lines Co., Antitrust Litig.*,
642 F.3d 685 (9th Cir. 2011) .......... 16

*Luce* v. *Dalton*,
166 F.R.D. 457 (S.D. Cal. 1996) .......... 6

*Millar* v. *Bay Area Rapid Transit Dist.*,
236 F. Supp. 2d 1110 (N.D. Cal. 2002) .......... 15, 17

*Miller* v. *Rykoff-Sexton*,
845 F.2d 209 (9th Cir. 1988) .......... 5, 6

*Morongo Band of Mission Indians* v. *Rose*,
893 F.2d 1074 (9th Cir. 1990) .......... 15, 18

*Ocampo v. United States*,
2023 WL 6305801 (S.D. Cal. Sept. 27, 2023) .......... 8

*Sonora Diamond Corp. v. Superior Ct.*,
83 Cal. App. 4th 523 (2000) .......... 8

*Stein* v. *United Artists Corp.*,
691 F.2d 885 (9th Cir. 1982) .......... 2, 13

*Twitter, Inc.* v. *Taamneh*,
598 U.S. 471 (2023) .......... 12

*Wave Loch, Inc.* v. *Am. Wave Machines, Inc.*,
2014 WL 7261552 (S.D. Cal. Oct. 1, 2014) .......... 20, 21

*Weeks* v. *Bayer*,
246 F.3d 1231 (9th Cir. 2001) .......... 1, 21

*Wizards of the Coast LLC* v. *Cryptozoic Entertainment LLC*,
309 F.R.D. 645 (W.D. Wash. 2015) .......... 19, 20

*Zenith Radio Corp.* v. *Hazeltine Research, Inc.*,
401 U.S. 321 (1971) .......... 5

**Statutes**

Cal. Bus. & Prof. Code § 17200
*et seq.* .......................................................... 4, 10

**Other Authorities**

Fed. R. Civ. P. 9(b) .......................................................... 14

Fed. R. Civ. P. 12(b)(6) .......................................................... 6, 7, 12, 14

Fed. R. Civ. P. 15 .......................................................... 1, 5, 13

**INTRODUCTION**

Plaintiffs' Motion for Leave to File Second Amended Consolidated Master Complaint (the "Motion") should be denied because Plaintiffs, having lost on their chosen theory of liability, now seek a "forbidden second bite at the apple." *Weeks* v. *Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001) (citation omitted). Without adding a single new factual allegation about Defendant Bain Capital, L.P. ("Bain")[1], they ask this Court to allow them to recycle the same pleading this Court already found "too conclusory," simply relabeled under new legal theories. That is not what Rule 15 is for.

Plaintiffs filed their initial complaint on August 11, 2025, alleging that Bain was the alter ego of Defendant PowerSchool Holdings, Inc. ("PowerSchool"). That same day, Track 1 Individual User Class Action Plaintiffs ("Track 1 Plaintiffs") filed their complaint alleging both an agency theory and aiding and abetting against Bain. *See* Track 1 Individual Users Consolidated Complaint (Dkt. 259) ¶¶ 40, 1031–36. Plaintiffs were thus aware, from the inception of this litigation, that those theories existed and were available. Yet when they amended their complaint on September 12, 2025, one month after Track 1 Plaintiffs' filing, they deliberately chose not to add them, standing pat on alter ego alone. The Court then rejected that theory in its March 18, 2026 order (the "Order"), finding Plaintiffs' allegations "too conclusory" and insufficient to "provide sufficient detail as to when Bain gave specific directives, what those directives required, or how Bain's conduct differed from ordinary ownership oversight." Order at 12. Now, eight weeks later and nine months after

[1] By opposing Plaintiffs' motion, Bain does not concede that it is a proper party to this action, and expressly preserves all rights, defenses, and objections. Bain does not have an ownership interest in PowerSchool. Rather, following the merger, PowerSchool became a wholly-owned subsidiary of BCPE Polymath Buyer, Inc., whose shares were transferred to BCPE Polymath Topco, LP, a Delaware limited partnership and affiliate of investment funds advised by Bain. *See https://www.sec.gov/Archives/edgar/data/1835681/000119312524157845/d846178de x21.htm.*

they first could have raised these theories, Plaintiffs seek to substitute agency for alter ego and add an entirely new aiding-and-abetting cause of action through their proposed Second Amended Complaint ("SAC"), all without a single new fact.

The problem is not merely one of timing. The proposed amendments fail on the merits. As to agency, this Court has already decided the relevant question: the "agency inquiry is identical to the alter ego inquiry." *Apple Inc.* v. *Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 56 (N.D. Cal. 2020). Factual allegations that were "too conclusory" to establish alter ego cannot, simply by being relabeled, establish agency. As to aiding and abetting (an entirely new cause of action, not merely a new theory), the SAC fares no better: it pleads no facts showing Bain had actual knowledge that PowerSchool was breaching a specific legal duty to Plaintiffs, and its vague references to offshoring directives fall far short of the substantial assistance that California law requires.

Plaintiffs' Motion should be denied for four independent reasons. First, the proposed amendments are futile: neither agency nor aiding and abetting states a claim on these facts, and no further amendment could cure deficiencies identified in the Court's own prior findings. Second, the amendments would impose undue prejudice on Bain, fundamentally transforming litigation that featured a single surviving direct-liability claim into a sprawling multi-count case anchored by a brand new cause of action and a new vehicle for vicarious liability across every count. Third, the Motion suffers from inexcusable delay; Plaintiffs have possessed the relevant facts since before this litigation began, and their decision to withhold them until after an adverse ruling is precisely the kind of strategic sandbagging courts in this Circuit have consistently rejected. Fourth, Plaintiffs' reactive, post-ruling Motion reflects bad faith and gamesmanship, transparently designed to use this Court's orders as a drafting guide and to retrofit their complaint with theories Track 1 Plaintiffs have pursued from the start. *See*, *e.g.*, *Stein* v. *United Artists Corp.*,

691 F.2d 885, 898 (9th Cir. 1982) (affirming denial of leave to amend when "the amended complaint was brought only to assert new theories … and was not premised upon new facts"); *Bonin* v. *Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("[W]e have held that a district court does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally.").

## BACKGROUND

Plaintiffs filed their initial Consolidated Master Complaint on August 11, 2025, alleging that Bain was liable for the cybersecurity incident because it was the alter ego of PowerSchool. *See* Plaintiffs' Master Consolidated Complaint (Dkt. 258) ¶¶ 54–88. That same day, Track 1 Individual User Plaintiffs filed their initial Master Consolidated Complaint, alleging both an agency theory and a claim for aiding and abetting. *See* Track 1 Individual Users Consolidated Complaint (Dkt. 259) ¶¶ 40, 1031–1036. On September 12, 2025, Plaintiffs amended their Complaint, filing their operative First Amended Consolidated Master Complaint (the "FAC") (Dkt. 288). They did not alter or supplement any of Plaintiffs' claims or allegations against Bain; instead, they added Movate, Inc. as a defendant. *See* FAC (Dkt. 288). Even at that juncture—with Track 1's agency and aiding-and-abetting theories squarely before them—Plaintiffs deliberately chose *not* to add any new claims or theories, instead standing pat on their alter ego theory. On September 25, 2025, Bain filed its motion to dismiss (Dkt. 303), to which Plaintiffs responded on October 27, 2025 (Dkt. 344).

On March 18, 2026, the Court issued its order on Bain's motion to dismiss the FAC (the "Order") (Dkt. 435). The Court rejected Plaintiffs' alter ego theory of liability, finding that Plaintiffs had offered only "conclusory" allegations and failed to "provide sufficient detail as to when Bain gave specific directives, what those directives required, or how Bain's conduct differed from ordinary ownership oversight." Order at 12. The Court also found that Bain's alleged participation in

high-level decisions at PowerSchool only constituted a "typical exercise of ownership," which fell far short of pleading "the pervasive operational domination" required for alter ego liability. *See id.* at 10–13; *see also id.* at 11 (observing that "Bain and PowerSchool appeared to have been engaged in an arm's-length transaction as independent parties" and that the "pre-acquisition control allegations" were "implausible in view of the Merger Agreement").

Now, approximately eight weeks after the Court's Order, months into the discovery process, and nearly a year since filing their first complaint, Plaintiffs seek leave to file their SAC.[2] The SAC seeks two new claims against Bain: (1) Bain is liable under an agency theory of liability and (2) aiding and abetting under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200 *et seq.*—a claim that is, as Plaintiffs concede, "supported by factual allegations consistent with allegations of the Track One Plaintiffs" but no facts otherwise newly discovered. Motion at 2–3, 5. In fact, many of the allegations Plaintiffs seek to add to their SAC copy—nearly verbatim—entire paragraphs from Track 1 Individual Users Class Action Plaintiffs' First Amended Complaint. *Compare* SAC ¶¶ 25–26 *with* Track 1 Individual Users Class Action Plaintiffs' First Amended Complaint (Dkt. 259) ¶¶ 38, 40. Track 1 Plaintiffs filed their First Amended Complaint on August 11, 2025—one month *before* Plaintiffs filed their FAC. Plaintiffs have waited until now to file the Motion, so that they can use the Court's order on Bain's motion to dismiss the Track 1 Plaintiffs' Complaint (the "Track 1 Order") (Dkt. 434) as a roadmap for their ever-evolving theory of liability.

For the reasons stated herein, Bain opposes Plaintiffs' motion to amend their

[2] On April 22, 2026, Track 2 Class Plaintiffs sought leave to amend their Complaint—but those proposed amendments did not add additional claims or legal theories against Bain, and Bain consented to that request. *See* Joint Motion Regarding Class Action Plaintiffs' Filing of Second Amended Complaint (Dkt. 477). That stipulated amendment is thus wholly distinguishable from the present Motion, which seeks to overhaul Plaintiffs' entire case against Bain.

operative complaint in this manner.

**LEGAL STANDARD**

District courts maintain broad discretion in deciding whether to grant a plaintiff's motion for leave to amend. *See Jacobson* v. *Rose*, 592 F.2d 515, 519 (9th Cir. 1978); *see also Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971) ("It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."). Courts may deny leave to amend based on: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the pleading has previously been amended." *Ascon Properties, Inc.* v. *Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (citation omitted); *see Foman* v. *Davis*, 371 U.S. 178, 182 (1962) (listing these factors); *AmerisourceBergen Corp.* v. *Dialysist West, Inc.*, 465 F.3d 946, 951–954 (9th Cir. 2006). Courts need not find every factor present before denying leave to amend. While "[i]t is the consideration of prejudice to the opposing party that carries the greatest weight," *Eminence Cap., LLC* v. *Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003), "futility of amendment alone can justify the denial of a motion" for leave to amend, *Ahlmeyer* v. *Nevada System of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009). Additionally, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Allen* v. *City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting *Ascon Properties, Inc.*, 866 F.2d at 1152).

Although the Court must take Plaintiffs' allegations as true at this stage, *see Miller* v. *Rykoff-Sexton*, 845 F.2d 209, 214 (9th Cir. 1988), it need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

## ARGUMENT

Each of the factors that the Supreme Court established in *Foman* weighs in favor of denying Plaintiffs' Motion. First, Plaintiffs' proposed new allegations against Bain are futile and fail as a matter of law; their allegations would not survive a motion to dismiss anyway. Second, the SAC would inflict substantial prejudice by expanding the scope of claims and discovery against Bain. Third, Plaintiffs' Motion suffers from undue delay; the SAC's allegations against Bain rely on facts that Plaintiffs knew or should have known for months before this Motion. Fourth, Plaintiffs' reactive, post-ruling Motion reflects bad faith and gamesmanship because the SAC's allegations are transparently designed to cure deficiencies identified by this Court and to retrofit their complaint with theories advanced by Track 1 Plaintiffs.[3]

**I. Because Plaintiffs Fail to State a Claim Against Bain, Amendment Is Futile.**

Plaintiffs' Motion should be denied because their two new theories of liability against Bain—agency and an aiding-and-abetting claim—fail to plead the elements required for either theory, and no additional factual allegations could cure these deficiencies. *See Ahlmeyer*, 555 F.3d at 1055 ("[F]utility of amendment alone can justify the denial of a motion"). Futility exists when "no set of facts may be proven under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Luce* v. *Dalton*, 166 F.R.D. 457, 459 (S.D. Cal. 1996) (Battaglia, J.). The proposed amendment is evaluated under the same standard as a motion to dismiss: if the amended complaint could not withstand a Rule 12(b)(6) challenge, the amendment is futile and should be denied. *Miller*, 845 F.2d at 214.

***Agency.*** The SAC's proposed agency amendment is futile because the allegations merely re-label as "agency" the same conduct that Plaintiffs previously

[3] Bain's opposition focuses on the SAC's amendments pertaining to Bain. Bain also joins PowerSchool's opposition to Plaintiffs' motion for leave to file a second amended complaint in its entirety.

characterized as alter ego control, which this Court rightly dismissed. *See* Order at 10–14. Those allegations were properly dismissed under Plaintiffs' alter ego theory, and given the "identical" agency inquiry, they would be similarly dismissed under Rule 12(b)(6). *See Apple Inc.*, 445 F. Supp. 3d at 56 ("[T]he agency inquiry is identical to the alter ego inquiry."); *see also E. & J. Gallo Winery* v. *EnCana Energy Servs., Inc.*, 2008 WL 2220396, at *15 n.7 (E.D. Cal. May 27, 2008) (citation omitted) ("[A] number of courts have used [alter-ego precedent] in the analysis of issues of alleged agency relationship, . . . and some district courts have suggested that the factors indicating control of one entity by another are the same whether the issue is agency or alter ego."). *Apple* is illustrative of how courts treat alter ego and agency theories based on the same allegations: There, the plaintiff alleged that a shareholder and related entity were "agent[s] and/or alter ego[s]" of the contracting defendant. 445 F. Supp. 3d at 48. After finding that plaintiff had not met its burden on alter ego—because mere control of "employee movement and the direction of both companies" did not "show that [the defendant] dictated every facet of [the subsidiary's] business"—the court turned to agency. *Id.* at 54–56. The court emphasized that the "relevant question" under both doctrines was "whether the relationship between the parent and subsidiary is typified by 'parental control of the subsidiary's internal affairs or daily operations,'" which requires a heightened showing of "pervasive control" rather than mere involvement in budgetary, human-resources, or employment decisions. *Id.* at 54, 56. Thus, having dismissed the plaintiff's alter-ego theory, the court "decline[d] to reengage in the identical agency analysis." *Id.* at 56.

The parallels between *Apple* and this case are clear, and Plaintiffs' recycled claims should likewise be dismissed. Like the *Apple* court, this Court has already determined that Plaintiffs' control allegations are insufficient to establish alter ego liability. *See* Order at 10–14. This Court's order was unambiguous in holding that

Plaintiffs' pre-closing allegations are "either conclusory or implausible in view of the Merger Agreement" and that Bain's post-closing involvement in "high-level decisions is a typical exercise of ownership, not the pervasive operational domination required for alter ego liability." Order at 11, 13. Because the control inquiry is "identical" under both doctrines, *Apple*, 445 F. Supp. 3d at 56, the Court should similarly decline to credit these same factual allegations when re-labeled as "agency." *See also Ocampo* v. *United States*, 2023 WL 6305801, at *6 (S.D. Cal. Sept. 27, 2023) (declining to consider agency after "[h]aving held that [Plaintiff] does not adequately plead alter ego"). A contrary holding would "eradicate the corporate form"—a disastrous consequence that the *Apple* court expressly sought to avoid. *Apple*, 445 F. Supp. 3d at 57.

Irrespective of this Court's earlier alter-ego dismissal, the SAC fails to adequately allege an agency relationship, specifically that Bain "manifest[ed] assent to [PowerSchool] that [PowerSchool] shall act on [Bain's] behalf and subject to [Bain's] control, and [PowerSchool] manifest[ed] assent or otherwise consents so to act." *See Am. Airlines, Inc.* v. *Mawhinney*, 904 F.3d 1114, 1124 (9th Cir. 2018) (citing Restatement (Third) of Agency § 1.01); *see also Hearden* v. *Windsor Redding Care Ctr., LLC*, 103 Cal. App. 5th 1010, 1020–21 (2024) (finding no agency relationship absent evidence that principals "consented to having the [purported agents] bind [them]"). Nor do Plaintiffs allege that Bain's influence over PowerSchool was "so pervasive and continual that [PowerSchool] may be considered nothing more than an agent or instrumentality of [Bain]." *Sonora Diamond Corp.* v. *Superior Ct.*, 83 Cal. App. 4th 523, 539 (2000). Portfolio companies like PowerSchool are not ordinarily considered agents of investment firms, and the alleged pre-closing merger negotiations do not suffice to establish an agency relationship. *See Est. of Ricardez* v. *Cnty. of Ventura*, 2020 WL 3891460, at *5 (C.D. Cal. June 24, 2020) (dismissing allegations that portfolio company was

private equity firm's agent); *Anderson* v. *Cnty. of Fresno*, 2023 WL 2761168, at *67 (E.D. Cal. Apr. 3, 2023), *report and recommendation adopted*, 2023 WL 4637099 (E.D. Cal. July 20, 2023) (same). No party has identified a single case holding that a portfolio company is the agent of its private equity investor, and for good reason: finding agency here would "upend[] fundamental, blackletter corporate law and inject uncertainty where none previously existed." *See* Exhibit 1 to Joint Submission of Track One Rebuttal Briefs Re Defendants' Motions to Dismiss (Dkt. 419) at 13.

Plaintiffs allege that Bain "manifested" an agency relationship by "conditioning the June 6, 2024 Merger Agreement on PowerSchool's implementation of cost-reduction measures, offshoring directives, and workforce changes," and that the Merger Agreement's interim operating covenants reflect "a clear understanding that Bain would be in control of the undertaking." SAC ¶¶ 165–66. But Bain had not signed the Merger Agreement or acted in any way to suggest the requisite understanding when it supposedly conditioned the merger on cost-reduction measures. Nor did Bain have a right to control PowerSchool when it negotiated the investment. *See Connecticut Gen. Life Ins. Co.* v. *Earl Scheib, Inc.*, 2012 WL 12868358, at *4 (S.D. Cal. May 22, 2012) (Battaglia, J.) ("There is no agency relationship where the alleged principal has no right of control over the alleged agent."). Moreover, the SAC itself acknowledges that the operational directives Plaintiffs attribute to Bain—including the India expansion announced in January 2024—occurred during merger negotiations and before any agreement was signed, a time when PowerSchool was indisputably a publicly traded company with its own board and management. *See, e.g.*, SAC ¶¶ 112–13, 123, 134–35. Plaintiffs' allegations also fail because, in dismissing Plaintiffs' alter ego allegations, the Court already determined, "Bain and PowerSchool appeared to have been engaged in an arm's-length transaction as independent parties," and the "pre-acquisition control allegations" are "implausible in view of the Merger Agreement." Order at 11.

The Merger Agreement's plain terms further disprove Plaintiffs' allegations of an agency relationship. Its express "No Control" provision provides that the parties did not have the right to control or direct the business or operations of the other prior to closing. *See* Bain's Motion to Dismiss Track 2 Plaintiffs' FAC (Dkt. 303) at 6–7; 29–30. Indeed, this Court's Order recognized that "[t]he Merger Agreement, incorporated by reference, states that Bain *did not* have 'the right to control or direct the business or operations of' PowerSchool prior to the closing." Order at 11. Because the Merger Agreement did not confer on Bain any right to control PowerSchool's alleged offshoring activities prior to the October 1, 2024 closing, and nothing in the agreement granted PowerSchool the power to act on Bain's behalf, Plaintiffs' SAC fails to allege that Bain is vicariously liable for PowerSchool's actions through an agency relationship.

Moreover, the SAC does not allege any post-closing conduct by Bain that would plausibly support their theory of the case. The operational decisions Plaintiffs challenge—offshoring, staffing reductions, and use of third-party vendors—are all alleged to have occurred before Bain's investment closed on October 1, 2024. *See* SAC ¶¶ 105–69. If these same allegations were insufficient to establish alter ego control—as this Court expressly held—they cannot bootstrap an agency theory that demands a similar showing of operational control. *See Apple*, 445 F. Supp. 3d at 56 ("[T]he agency inquiry is identical to the alter ego inquiry."). Amendment on this theory is futile.

***Aiding and Abetting*.** The SAC also fails to sufficiently allege that Bain aided and abetted PowerSchool's purported violations of the UCL. *See* SAC ¶¶ 408–22. To state a claim for aiding and abetting liability under California law, Plaintiffs must allege that a defendant "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's

own conduct, separately considered, constitutes a breach of duty to the third person." *Fiol* v. *Doellstedt*, 50 Cal. App. 4th 1318, 1325–26 (1996); *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006). "Knowledge is the crucial element," and a plaintiff must plead the defendant's "actual knowledge of the specific primary wrong the defendant substantially assisted"—a standard that requires "more than a vague suspicion of wrongdoing." *Id.* at 993 n.4, 995. The SAC fails to plead either prong.

First, the SAC does not allege that Bain knew PowerSchool's conduct constituted a breach of any duty owed to Plaintiffs. Although the SAC asserts that Bain "studied and became intimately involved with PowerSchool" during pre-merger due diligence and that Bain knew "data security was a material, important aspect of PowerSchool's business," SAC ¶¶ 111, 169, Bain's general recognition that data security was important to their business investment is not equivalent to knowledge that PowerSchool was breaching a specific duty to Plaintiffs. Indeed, the SAC alleges that Bain obtained representations and warranties from PowerSchool in the Merger Agreement "that it had materially complied with all applicable Data Protection Obligations during the preceding three years" and "that it had implemented and maintained a written information security program comprising commercially reasonable administrative, technical, and physical safeguards." SAC ¶ 119. These representations are precisely the kind of assurances that negate knowledge of wrongdoing—Bain obtained contractual assurances that PowerSchool was compliant, not evidence that it was breaching duties. Awareness that an industry is important is categorically different from knowledge that a specific party is violating a specific legal obligation. Aiding-and-abetting liability requires plaintiffs to plausibly allege that defendants "consciously, voluntarily, and culpably participate[d] in or support[ed] the relevant wrongdoing." *Gonzalez* v. *Google, Inc.*, 2024 WL 3331649, at *2–3 (N.D. Cal. July 8, 2024) (applying California aiding-and-abetting law and adopting the "conscious and culpable participation" standard

articulated by the Supreme Court in *Twitter, Inc*. v. *Taamneh*); *see also Twitter, Inc*. v. *Taamneh*, 598 U.S. 471, 492, 503–506 (2023) (emphasizing the "conscious and culpable participation" standard under common-law principles and rejecting the proposition that a defendant's "general awareness" of its role in a broader scheme of wrongdoing suffices to establish aiding-and-abetting liability). The SAC's conclusory leap from the former to the latter is precisely the kind of allegation that fails under Rule 12(b)(6).

Second, the SAC alleges that Bain "provided substantial assistance" by "requiring PowerSchool to cut its critical workforce and move essential operations offshore." SAC ¶¶ 413, 421. But such conclusory allegations do not suffice. *In re Gilead Scis. Sec. Litig*., 536 F.3d at 1055. The SAC "does not provide sufficient detail as to when Bain gave specific directives, what those directives required, or how Bain's conduct differed from ordinary ownership oversight." Order at 12. The SAC's own timeline undermines its theory: it alleges that the India expansion was announced in *January 2024*—five months before the Merger Agreement was even signed and nine months before Bain became an owner. *See* SAC ¶ 134. Plaintiffs cannot plausibly allege that Bain "required" decisions that occurred before Bain had any ownership interest or contractual relationship with PowerSchool. Furthermore, the Supreme Court has cautioned that "the more attenuated the nexus" between a defendant's acts and the underlying tort, "the more courts should demand that plaintiffs show culpable participation through intentional aid that substantially furthered the tort." *Twitter*, 598 U.S. at 504; *see also In re First All. Mortg. Co.*, 471 F.3d at 995 (holding that even "ordinary business transactions" can "satisfy the substantial assistance element" only "if [the defendant] actually knew those transactions were assisting the [primary wrongdoer] in committing a specific tort."). Because the SAC's vague reference to offshoring directives falls far short of this standard, allowing Plaintiffs' aiding-and-abetting claim to proceed is futile.

Plaintiffs argue that the Court "recognized" the potential for amendment "when it declined to dismiss Plaintiffs' claims with prejudice." Motion at 8–9. But Plaintiffs conflate the standard for dismissal with prejudice with the standard for futility on a motion for leave to amend. The fact that the Court dismissed without prejudice does not entitle Plaintiffs to amend as of right. *See Dr. Erik Natkin, DO PC* v. *Am. Osteopathic Ass'n*, 2019 WL 1772389, at *16 (D. Or. Apr. 22, 2019) (clarifying that a dismissal without prejudice "does not grant Plaintiffs leave to file an amended complaint" and that plaintiffs "will have to request leave and follow Rule 15 of the Federal Rules of Civil Procedure."). The Court must still evaluate whether the proposed amendments would state a valid claim. For the reasons discussed above, Plaintiffs' SAC fails to state a claim against Bain and their Motion should be denied. A dismissal without prejudice signals only that the court did not foreclose the theoretical possibility of cure—not that any particular proposed amendment will succeed. Where, as here, the proposed amendment merely repackages the same deficient factual allegations under new legal theories, the "without prejudice" label provides no safe harbor.

Regardless, the Ninth Circuit has repeatedly held that courts do not abuse their discretion in denying leave to amend "even if [they] believe [the plaintiff's] new argument might not be futile." *Allen*, 911 F.2d at 374. In *Allen*, the court explained that the Ninth Circuit repeatedly "ha[s] held that a district court does not 'abuse its discretion in denying a motion to amend a complaint . . . when the movant presented no new facts but only new theories and provided no satisfactory explanation for his failure to fully develop his contentions originally.'" *Id.* (quoting *Vincent* v. *Trend Western Technical Corp.*, 828 F.2d 563, 570–71 (9th Cir.1987)); *see also Stein* v. *United Artists Corp.*, 691 F.2d 885, 898 (9th Cir. 1982) (affirming denial of leave to amend when "the amended complaint was brought only to assert new theories … and was not premised upon new facts"). That is precisely the situation here: Plaintiffs

present no new facts, only recycled theories, and offer no satisfactory explanation for why they withheld these theories through nine months of litigation and multiple rounds of briefing.

The SAC's substantive pitfalls on both prongs are accompanied by a threshold pleading problem—namely, that its aiding-and-abetting count invokes the UCL's "fraudulent" prong. *See, e.g.*, SAC ¶ 421 ("Bain provided substantial assistance and encouragement to PowerSchool's unlawful, unfair, and fraudulent business practice . . . ."). Under Federal Rule of Civil Procedure 9(b), claims sounding in the UCL's fraudulent prong are subject to a heightened pleading standard. *See Barrett* v. *Apple Inc.*, 523 F. Supp. 3d 1132, 1144–45 (N.D. Cal. 2021) (citing *Vess* v. *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104, 1106 (9th Cir. 2003)) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud. . . . This means that '[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."). The SAC makes no attempt to identify with particularity what Bain did, when it did it, or how its conduct constituted substantial assistance in a fraudulent act. The proposed aiding-and-abetting claim therefore would fail under both the standard Rule 12(b)(6) framework and Rule 9(b)'s heightened standard, and amendment is thus futile.

**II. Plaintiffs' Motion Should Be Denied Because It Imposes Undue Prejudice on Bain and Wastes Judicial Resources.**

Plaintiffs' Motion should also be denied because the SAC would impose undue prejudice on Bain and would waste judicial resources. The prejudice a non-moving party may suffer is the "most important factor" in deciding whether to grant or deny amendment. *Jackson* v. *Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). Parties may suffer "undue prejudice" when there is "substantial prejudice or substantial negative effect." *Conte* v. *Jakks Pac., Inc.*, 981 F. Supp. 2d 895, 908 (E.D. Cal. 2013) (further citation omitted). Courts also evaluate whether the

proposed amendment would "greatly alter[] the nature of the litigation," *Morongo Band of Mission Indians* v. *Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990), including whether it would require the opposing party to "advance different legal theories and require proof of different facts," *Jackson*, 902 F.2d at 1387, or whether it would have a negative "impact on judicial economy, judicial resources and the Court's ability to manage cases and control its dockets." *Millar* v. *Bay Area Rapid Transit Dist.*, 236 F. Supp. 2d 1110, 1113 (N.D. Cal. 2002). The addition of an "independent claim" is also cognizable prejudice that warrants denial. *See Del Valle* v. *County of Sonoma*, 2019 WL 10733250, at *6 (N.D. Cal. Feb. 20, 2019). The SAC triggers each of these recognized forms of prejudice.

First, the SAC would impose undue prejudice by fundamentally transforming Plaintiffs' litigation against Bain. Under the FAC, Plaintiffs asserted only a single direct-liability claim against Bain—intentional interference with contractual relations—and purposely avoided asserting any additional claims against Bain as compared to their original complaint. *See* Order at 4 ("Direct Action Plaintiffs assert intentional interference with contractual relations as their sole direct-liability claim against Bain, with the remainder of their counts proceeding against Bain solely on an alter ego theory of vicarious liability."). The Court dismissed Plaintiffs' remaining counts against Bain, which were brought under an alter ego theory of liability. *See id.* at 25. The SAC would not only replace the dismissed alter ego theory with agency as a new vehicle for vicarious liability (potentially exposing Bain to liability on every substantive count against PowerSchool), but also would add an entirely new aiding-and-abetting cause of action. In short, Plaintiffs' Motion should be denied because the SAC would "greatly alter[] the nature of the litigation." *Morongo Band of Mission Indians*, 893 F.2d at 1079. The shift from a single surviving claim to vicarious liability on multiple counts—plus a brand-new independent cause of action—is precisely the kind of drastic expansion that warrants

denial. *See Del Valle*, 2019 WL 10733250, at *6.

Second, the SAC would impose inordinate costs on Bain and this Court, wasting judicial resources, and undermining judicial economy. Plaintiffs state that prejudice is "mitigated" because the case is still in discovery and Bain "must already defend against the same [agency] theory based on the allegations of individual class members in Track One." Motion at 5. Neither, however, diminishes the prejudice of injecting that theory into Plaintiffs' case at this stage. *Id.* The two Plaintiff tracks involve different plaintiffs with different factual circumstances, different contractual relationships, and different theories of liability. *See, e.g.*, Track 1 Plaintiffs' Complaint ¶¶ 33, 281–752; *see also* SAC ¶¶ 20, 38. The Track 1 Plaintiffs are individual users whose personal information was compromised in the breach; the Track 2 Direct Action Plaintiffs are school districts that contracted with PowerSchool for particular products. The two sets of plaintiffs allege different injuries, rely on different contractual provisions, and present fundamentally different theories of harm.

Introducing agency and aiding-and-abetting claims here would require Bain to engage in new, additional, and burdensome track-specific discovery. Regardless of the allegations in the Track 1 proceedings, it is black-letter law that "[w]ithin the context of MDL proceedings, individual cases that are consolidated or coordinated for pretrial purposes remain fundamentally separate actions, intended to resume their independent status once the pretrial stage of litigation is over." *In re Korean Air Lines Co., Antitrust Litig.*, 642 F.3d 685, 700 (9th Cir. 2011). Plaintiffs' proposed amendment ignores that fundamental principle and the resulting prejudice that would be imposed on Bain if permitted.

Furthermore, Plaintiffs have failed to acknowledge that the Court has already invested substantial resources and time in resolving Bain's motion to dismiss; it reviewed hundreds of pages of briefing and held oral argument. *See, e.g.*, Dkt. 286,

319, 361, 387, 412, 414, 417, and 419. Also pending is Bain's motion for reconsideration of the Court's agency determination in the Track 1 Order (Dkt. 466). The agency allegations Plaintiffs seek to import into the SAC are materially the same allegations now before the Court on reconsideration in Track 1. Permitting Plaintiffs to file the SAC before that motion is resolved would require the Court and the parties to brief and decide overlapping agency questions on a parallel track, multiplying the burden on Bain and the Court regardless of how the reconsideration motion is ultimately resolved. *See Millar*, 236 F. Supp. 2d at 1113. At a minimum, the more orderly and economical course is for the Court to resolve the pending reconsideration motion before entertaining a wholesale amendment that grafts the same theory onto a second case. The mere fact that there are overlapping legal theories with the Track 1 Plaintiffs does not unburden or resolve any prejudice against Bain. Plaintiffs' Motion only imposes unnecessary cost by failing to recognize the drastic changes and waste that the SAC would impose.

**III. Plaintiffs' Motion Should Be Denied Because of Undue Delay.**

Denying Plaintiffs' Motion is independently justified because of undue delay. As a consequence of Plaintiffs' failure to include new factual allegations in the SAC, it necessarily rests on facts and legal theories that they knew or should have known months before filing. Plaintiffs' decision to wait even longer—until after the Track 1 Order—constitutes undue delay. The delay is particularly egregious because Plaintiffs' SAC adds an entirely new cause of action and theories that other Tracks included *nearly a year ago*, and that Plaintiffs *intentionally chose not to add* in their FAC, which had the benefit of being filed approximately a month after the other Tracks' initial consolidated complaints. The Ninth Circuit has long instructed that, in evaluating delay, the "[r]elevant" inquiry is "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1388. "[L]ate amendments to assert new theories are

not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Kaplan* v. *Rose,* 49 F.3d 1363, 1370 (9th Cir.1994) (citation omitted). Delay carries decisive weight when, as here, it is paired with undue prejudice. *See Morongo Band of Mission Indians*, 893 F.2d at 1079 (affirming the district court's exercise of discretion in denying leave to amend where there was a delay of nearly two years and "new claims set forth in the amended complaint would have greatly altered the nature of the litigation"); *but see Eisenacher* v. *BMW of N. Am., LLC*, 2018 WL 8131219, at *3 (C.D. Cal. Feb. 2, 2018) (denying leave to amend based on undue delay where plaintiffs "d[id] not present new facts, and d[id] not explain their failure to include the proposed claims in their original complaint" while acknowledging that prejudice "may tip in favor of granting leave to amend, it is not dispositive").

Plaintiffs contend that there is no "undue delay" because no trial date has been set. Motion at 7. But the relevant inquiry is whether the moving party "knew or should have known" the facts and theories now offered. *Jackson*, 902 F.2d at 1388. Plaintiffs themselves concede that their new allegations against Bain and their aiding-and-abetting claim "coincide[] with alternative agency theories . . . consistent with allegations of the Track One Plaintiffs." Motion at 3. In other words, they imported them from Track 1 Plaintiffs' Consolidated Master Complaint *that was filed on August 11, 2025*. Plaintiffs admit what the face of their Motion already shows: they seek to salvage rejected claims with facts and theories that were known to Plaintiffs since before they filed their initial complaint on August 11, 2025, before they amended that complaint on September 12, 2025, and certainly before Bain filed its motion to dismiss (or any of the multiple rounds of supplemental briefing requested by the Court). When a party has "all the information necessary" to plead

a theory but waits to deploy it until a later litigation event, the resulting delay is unreasonable and supports denial. *AmerisourceBergen Corp.*, 465 F.3d at 953.[4]

Plaintiffs' cited authorities are of no help to them. In *Allen* v. *Hyland's Inc.*, the court granted amendment because the plaintiffs' "only truly new theory" turned on documents that defense counsel had "misplaced," requiring a FOIA request to obtain them. 2013 WL 1748408, at *3 (C.D. Cal. Apr. 11, 2013). Here, by contrast, the proposed amendment does not turn on any newly discovered facts, let alone facts that had to be discovered by alternative means due to the mistake of defense counsel. Likewise, in *Wizards of the Coast LLC* v. *Cryptozoic Entertainment LLC*, delay only "slightly" favored amendment because part of the delay was attributable to the defendants' own conduct. 309 F.R.D. 645, 652 (W.D. Wash. 2015). Plaintiffs do not identify any document or fact that was withheld, lost, or otherwise unavailable when they filed the FAC or at any point prior to the Court's motion to dismiss decisions. Nor do Plaintiffs identify any way that Bain contributed either to Plaintiffs' inability to identify their new legal theories earlier or to the delayed timing of this Motion. Moreover, unlike the early-stage posture in both *Allen* and *Wizards of the Coast*, the Court has set a case schedule, Plaintiffs have already amended their complaint once before, discovery has begun, and the parties are engaged in ongoing discovery motion practice. Plaintiffs cannot deny that they knew or should have known the facts and theories in their SAC months before filing this Motion. Their undue delay weighs decisively in favor of denial.

---

[4] Citing *AmerisourceBergen Corp.*, Plaintiffs claim that the circumstances at hand "sharply contrast with those present when courts have found the requisite degree of prejudicial undue delay." Motion at 7. They attempt to distance themselves from this case by emphasizing that "fifteen months passed between discovery of a fact and a motion to amend, and the movant asserted a 'drastically' new theory of liability." *Id.* However, just as the plaintiff in *AmerisourceBergen Corp.* could have pursued its "tainted product" theory in its original complaint or reply, Plaintiffs provide no explanation of why they have waited over eight months since filing their first amended complaint—and nine months since Track 1 Plaintiffs filed their first amended complaint alleging an agency theory of liability against Bain—to file this Motion.

## IV. Plaintiffs' Motion Should Be Denied on the Grounds of Bad Faith and Gamesmanship.

The apparent gamesmanship behind Plaintiffs' Motion reflects the sort of conduct courts in this Circuit have found to support a finding of bad faith. "In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt." *Wizards of the Coast LLC*, 309 F.R.D. at 651. Although delay alone will not establish bad faith, "[l]eave to amend may be denied where the movant appears to be raising a new claim in anticipation of an adverse ruling." *Wave Loch, Inc.* v. *Am. Wave Machines, Inc.*, 2014 WL 7261552, at *2 (S.D. Cal. Oct. 1, 2014).

Courts in this Circuit have denied leave when, as here, plaintiffs have used a court decision as a roadmap to attempt to cure their deficient allegations. In *Wave Loch, Inc.*, the court denied leave to amend after concluding that the plaintiff's attempt to assert new patent claims following an adverse USPTO ruling was an attempt "to take a second bite at the apple" and "to prolong frivolous litigation to harass" the defendant, and thus appeared "to be undertaken in bad faith." 2014 WL 7261552, at *3. Similarly, in *Hampton* v. *McDonald*, the court found that the petitioner proceeded "in bad faith in now seeking further leave to amend" because he sought to "add claims which he previously chose to abandon only after learning that the court was recommending that he be denied relief with respect to claims that he elected to pursue." 2012 WL 6202740, at *2 n. 5 (E.D. Cal. Dec. 11, 2012). The Court should not reward that type of gamesmanship here by granting Plaintiffs' Motion.

Plaintiffs submit that "bad faith does not infect their request" because they "simply ask that they may add the additional factual allegations that will allow them to proceed on claims the Court dismissed," and they "renewed the request just after the Court ruled on the motions." Motion at 10. But Plaintiffs are not merely seeking

to "add the additional factual allegations." They are wholly importing theories and allegations from Track 1 Plaintiffs that survived Bain's motion to dismiss (Dkt. 434) and bringing an alternative theory of vicarious liability. *See supra* at 1, 16–17. Moreover, reminding the Court of a prior request to amend cannot retroactively cure Plaintiffs' flawed decision to withhold viable theories until after the Court ruled. *See Jackson*, 902 F.2d at 1388 (finding delay unjustified where appellants "informed the court of their intention to file an amended complaint" on multiple occasions but "delayed offering their amended complaint" for months after possessing all relevant facts); *Wave Loch, Inc.*, 2014 WL 7261552, at *3 (denying leave to amend where plaintiffs had "repeatedly but vaguely informed the court of their intention to amend the complaint" yet failed to "diligently seek amendment."). Plaintiffs do not—and cannot—identify any newly discovered fact that prevented them from pleading these theories in the FAC or in the original consolidated master complaint filed in August 2025. Whether bad faith "infects" their request is beside the point. Plaintiffs' attempt to incorporate that analysis manifestly qualifies as the "forbidden second bite at the apple" that the Ninth Circuit has repeatedly rejected. *Weeks*, 246 F.3d at 1236. Plaintiffs' Motion should be denied.

**<u>CONCLUSION</u>**

For the foregoing reasons, Bain respectfully requests the Court deny Plaintiffs' motion for leave to file their SAC.

Dated: June 1, 2026

*/s/ John P. Carlin*
John P. Carlin (NY 3031887)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Alex Langsam (NY 5980891)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
jschutte@paulweiss.com
alangsam@paulweiss.com

R. Rosie Vail (SBN 317977)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant Bain Capital, L.P.*

## CERTIFICATE OF SERVICE

I certify that on the 1st day of June, 2026, I filed the foregoing notice with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ John P. Carlin*
John P. Carlin
Email: jcarlin@paulweiss.com
*Attorney for Bain Capital, L.P.*