James P. Frantz, Esq. (SBN 87492)
jpf@frantzlawgroup.com
William B. Shinoff, Esq. (SBN 280020)
wshinoff@frantzlawgroup.com
**FRANTZ LAW GROUP, APLC**
402 W. Broadway, Suite 860
San Diego, CA 92101
Telephone: (619) 233-5945
Fax: (619) 525-7672

*Co-Lead Counsel for the School District Direct Action Plaintiffs*

[*Additional Counsel on Signature Page*]

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>*This Document Relates to the School District Direct Action Track* | Case No. 3:25-md-3149-AJB-MSB<br><br>MDL NO. 3149<br><br>**SCHOOL DISTRICT DIRECT ACTION PLAINTIFFS' REPLY TO POWERSCHOOL'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CONSOLIDATED MASTER COMPLAINT**<br><br>Date: N/A<br>Time: N/A<br>Courtroom: 4A<br>Judge: Hon. Anthony J. Battaglia |

## PREFATORY STATEMENT

After Plaintiffs filed the instant motion to amend, the parties met and conferred regarding certain content in the moving papers that Plaintiffs redacted pursuant to the Protective Order. As PowerSchool did not have confidentiality concerns about the new allegations, Plaintiffs attach to this reply unredacted versions of the memorandum of points and authorities in support of the motion, proposed second amended complaint ("SAC"), and redlined version of the SAC as Exhibits "1", "2", and "3", respectively.

## ARGUMENT

"A proposed amendment is futile only if *no set of facts* can be proved under the amendment that would constitute a valid claim." *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1149 (N.D. Cal. 2021) (emphasis added). PowerSchool predominantly relies on futility in its opposition to Plaintiffs' motion. But nowhere in its twenty-five-page response does PowerSchool acknowledge this basic proposition of law. PowerSchool instead goes on at length about the futility of Plaintiffs' request; the propriety of the Court's order on Plaintiffs' operative complaint; that Plaintiffs' claims arise in part from conduct collateral to the Data Breach; and the merits of Plaintiffs' factual allegations.

Plaintiffs' request does not entail the parade of horribles PowerSchool describes. Plaintiffs simply ask this Court for a chance to plead facts and claims that will ensure their individual cases are decided on the merits—not on perceived technical defects in pleading.

As explained below, PowerSchool does not and cannot carry its burden to overcome the presumption in favor of granting Plaintiffs' request to amend. Plaintiffs respectfully renew their request and ask that the Court grant their motion.

### I. POWERSCHOOL HAS NOT CARRIED ITS BURDEN TO SHOW THAT PLAINTIFFS' REQUESTED AMENDMENT IS WHOLLY FUTILE

"To establish futility, the Court must be satisfied that 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Robertson v. Bruckert*, 568 F. Supp. 3d 1044, 1048 (N.D. Cal. 2021) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). "The party opposing leave

to amend 'bear[s] a particularly heavy burden' identical to the one governing 12(b)(6) motions," and even claims "with a 'tenuous basis in the record' or those 'fraught with contradictions' will survive the futility inquiry." *Id.* (citations omitted).

Plaintiffs recognize that a "motion for leave to amend should be denied if the proposed amended complaint does not remedy the deficiencies that caused the Court to dismiss the original complaint." *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d 738, 739 (S.D. Cal. 2020). But PowerSchool's opposition overlooks that the Court relied on a single, non-negotiable provision of a standardized adhesion contract—the MSA—as the apparent defect that required dismissal of Plaintiffs' claims other than breach of contract. ECF No. 440 ("Order") at 7–8. PowerSchool treats Plaintiffs' motion as one for reconsideration. And yet, Plaintiffs do not ask this Court to reconsider anything; they merely renew their request for a chance to plead the *facts* that negate the dispositive nature of this single provision. PowerSchool's specific contentions are addressed below.[1]

### A. The SAC Alleges Facts to Overcome the MSA's Liability Limitation

#### *i. The New Facts Plausibly Allege an Unenforceable Exculpatory Clause*

PowerSchool contends that Plaintiffs "do not even attempt to allege any *facts* that would" invalidate the MSA's liability limitation. ECF No. 511 ("Oppo.") at 6. A review of the new facts pled in the SAC and the applicable law on point shows otherwise.

The days of *caveat emptor* ended long ago. Courts in virtually every state will refuse to enforce a liability limitation like the one in the MSA as a matter of basic public policy under certain conditions. For example, California's Supreme Court recently commented that "[c]ourts have traditionally looked with disfavor at contractual agreements that purport to exculpate a party for future violations of the law." *Whitehead v. City of Oakland*, 17 Cal. 5th 735, 741 (2025). The court in *Whitehead* noted that such a limitation is invalid when it

---

[1] Plaintiffs reserve all rights to make additional arguments that could not be addressed in this reply given the applicable page limitation under Local Rule 7.1.h. Plaintiffs incorporate all arguments made in their reply to Bain Capital's response in opposition.

"exhibit[s] some or all of [certain] characteristics," including: that the agreement "concerns a business of a type generally thought suitable for public regulation," "[t]he party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public," "[t]he party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards," "[a]s a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services," "[i]n exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence," and "as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." *Id.* at 742 (quoting *Tunkl v. Regents of Univ. of Cal.*, 60 Cal. 2d 92, 98–101 (1963)) (internal quotation marks omitted). Further, "an invalid agreement to exculpate a party for ordinary common law negligence 'need only fulfill some of the characteristics above outlined.'" *Id.* (quoting *Tunkl*, 60 Cal. 2d at 101).[2]

The SAC alleges *facts* to show all these characteristics. E.g., Plaintiffs allege that: PowerSchool operates in a heavily regulated industry (FERPA, COPPA, HIPAA, FTC Act, and numerous state privacy statutes); its SIS platform serves over 75% of North American K–12 students across over 16,000 customers, making it a practical necessity with few alternatives; PowerSchool offers its services on standard terms to any qualifying K–12 district; its dominant position—controlling over one-third of the U.S. K–12 EdTech

[2] Many Direct Plaintiffs' contracts include choice of law provisions that require application of the law of jurisdictions that follow *Tunkl* when faced with questions of enforceability. *See, e.g.*, *Wagenblast v. Odessa Sch. Dist. No. 105-157-166J*, 110 Wash. 2d 845, 851–852 (1988); *Olson v. Molzen*, 558 S.W.2d 429, 431 (Tenn. 1977)*; Ash v. New York Univ. Dental Ctr.*, 164 A.D.2d 366, 373 (N.Y. App. Div. 1st Dep't 1990); *see also* SAC ¶225.

market—gives it decisive bargaining leverage that leaves customers unable to reject standard terms or obtain comparable services elsewhere; the MSA is a non-negotiable adhesion contract with no opt-out from the liability cap in the standard form itself; no option exists for districts to pay additional fees to obtain protection against PowerSchool's negligence; and by contracting with PowerSchool, Plaintiffs placed the highly sensitive PII of students, parents, and faculty entirely under PowerSchool's custody and control, exposing them to the risk of PowerSchool's and its agents' carelessness. SAC ¶¶98(a)–(g). PowerSchool's blanket labeling of these facts as conclusory amounts to a "fail[ure] to carry its burden to show that the granting of leave to amend would be futile." *Pizana v. SanMedica Int'l LLC*, 345 F.R.D. 469, 489 (E.D. Cal. 2022).

PowerSchool's other arguments on this issue fail as a matter of fact and law alike. Plaintiffs have consistently alleged that the DPA terms vary based on the state where a Plaintiff resides. *See* ECF No. 288, First Amended Complaint ("FAC") ¶¶4, 148, 310. PowerSchool does not even pretend that it allowed Plaintiffs to negotiate the MSA's terms. It tacitly admitted this in its motion to dismiss the FAC by attaching the various DPAs applicable to Plaintiffs based on their state of residency while including the *only* MSA that forms part of all the contracts. *See* ECF No. 302-2 at 2–3. "Leave to amend is warranted" here because these new facts constitute "additional allegations that are 'consistent with the [previously] challenged pleading'" "that do not contradict the allegations in the original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990)).

*ii. The SAC Plausibly Alleges that PowerSchool Acted with Gross Negligence*

Even if the SAC's allegations that address the liability limitation's overall enforceability were futile, PowerSchool cannot negate the propriety of new allegations related to the contractual exception. The MSA itself states that the limitation does not apply to liability arising from PowerSchool's gross negligence, willful misconduct, or fraud. SAC ¶100. The newly pled facts Plaintiffs only recently learned via discovery demonstrate that PowerSchool's gross negligence gave rise to Plaintiffs' damages.

PowerSchool fails to address that "seeking to amend a complaint based on facts uncovered during discovery provides good cause to seek leave to amend." *Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*, 2013 WL 44567, at *1 (C.D. Cal. Jan. 3, 2013) (citation omitted). It offers no reason this Court should depart from the "common and well established" practice of "[a]llowing parties to amend based on information obtained through discovery[.]" *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, 2006 WL 3733815, at *5 (E.D. Cal. Dec. 15, 2006) (collecting cases).

Here, discovery revealed that twenty months before the December 2024 Data Breach, PowerSchool's own IT Security team detected geographically impossible logins on the account of Rayson Cruz. SAC ¶255. When PowerSchool's security team confronted Cruz, he confirmed he had never left the Philippines, used only his company-issued device, and had not used a VPN. SAC ¶256. PowerSchool thus received first-hand confirmation that an unauthorized third party accessed Cruz's account. But PowerSchool took no remedial action: it did not revoke or suspend Cruz's credentials, require an immediate password reset, implement MFA, or restrict Cruz's administrative-level access to the SIS database containing the PII of tens of millions of students and teachers. SAC ¶¶256–57. Cruz's account retained administrative access for this entire twenty-month period until hackers exploited those same compromised credentials in December 2024, accomplishing precisely what the April 2023 alert had warned was possible. SAC ¶¶258–59.

At least one district court has found that factual allegations comparable to these would permit a plaintiff to show "gross negligence" such that a contractual "limitation-of-liability clause may be unenforceable . . . " *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 356 n.16 (S.D.N.Y. 2023). The *Yuille* plaintiff alleged, in relevant part, that: (1) defendant "was responsible for monitoring and maintaining the security of the accounts on its platform"; (2) defendant was aware of a "massive increase in activity by 'scammers and bad actors'"; (3) "hackers 'triggered the alarm' on [p]laintiff's account several times before successfully gaining control of his account"; (4) an email "explicitly alert[ed]" defendant "to the breach of the Account"; and (5) defendant "failed to act for approximately two-and-

one-half days" despite knowing about the breach. *Id.* at 353. Similar to PowerSchool, the defendant argued that this conduct did not meet the standard of recklessness required to show gross negligence. *Id.* at 352. The court rejected this argument; it reasoned that the allegations showed "more than a mere failure to adequately secure or monitor the platform." *Id.* at 353. With this, plaintiff "alleged sufficient facts to plead that [d]efendant's conduct was grossly negligent." *Id.* The court further noted that "to the degree that [plaintiff]" could "prove gross negligence" under these allegations, it would "not enforce" the "exculpatory or nominal damages clause[]" as to "limit liability for breaches of contract when the breach arises from grossly negligent conduct." *Id.* at 356 n.16 (citations omitted).

Especially scant on authority in this portion of its briefing, PowerSchool takes issue with Plaintiffs' "convenient use of the passive voice" and the fact that Plaintiffs argued this issue in opposition to PowerSchool's motion to dismiss. Oppo. at 13. Whether in passive or active voice, however, the factual allegations support liability arising from gross negligence. And the mere fact that these allegations may tend to strengthen arguments previously advanced does not make them any less viable or proper. *Cf. Allen v. Hyland's Inc.*, 2013 WL 1748408, at *7 (C.D. Cal. Apr. 11, 2013) ("[T]he fact that an amendment would 'moot' a motion to dismiss or a motion for judgment on the pleadings might alone constitute a good reason to *allow* the amendment, because if [p]laintiffs can plead sufficient facts that plausibly state a claim, they should be permitted to do so." (italics in original)).

**B. PowerSchool Fails to Show the Futility of Plaintiffs' Non-Contract Claims**

To find that any "proposed amended claim is futile" requires a determination that each "would be immediately 'subject to dismissal.'" *Zeng v. Calidi Biotherapeutics, Inc.*, 2026 WL 578817, at *5 (S.D. Cal. Mar. 2, 2026) (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998)). PowerSchool goes through Plaintiffs' claims one-by-one to argue each is futile but offers no valid basis to support this determination.

*i. The Unjust Enrichment Claims are Plausibly Alleged*

PowerSchool contends that the unjust enrichment claims fail because Plaintiffs allege that PowerSchool breached the contracts at issue. Oppo. at 14. It essentially recycles

the same argument it made in its motion to dismiss, ignoring that the new factual allegations rely on PowerSchool's commercialization and harvesting of students' data under Plaintiffs' ownership and control. *See* SAC ¶¶295–98. PowerSchool also leaves out the allegation that "no adequate remedy at law" exists "for the full measure of this unjust enrichment, because the precise scope of the commercial benefits PowerSchool derived from student data cannot be fully captured through contract damages alone, and equitable restitution is necessary to disgorge all profits obtained through PowerSchool's unauthorized appropriation of data that contractually belonged to the School Districts." SAC ¶302. Case law explains that at the pleadings "stage, where it is not apparent whether the remedies at law are sufficient, equitable restitution may be pled in the alternative." *Brown v. Food for Life Baking Co.*, 658 F. Supp. 3d 732, 743 (N.D. Cal. 2023). That the SAC "alleges an unjust enrichment claim and also brings alternative claims for relief that might constitute adequate remedies at law is of no consequence under the pleading constraints of the Federal Rules of Civil Procedure." *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 916 (E.D. Pa. 2012). PowerSchool's arguments therefore defy the weight of authority and do not account for the very allegations it asserts are futile.

*ii. The SAC Plausibly Alleges Fraudulent Concealment Based on Non-Contractual Legal Duties and Pre-Contractual Representations*

Similar to its unjust enrichment arguments, PowerSchool recycles the argument that the fraudulent concealment claims fail because they stem from duties defined by contract. Yet again, the SAC's allegations expressly state otherwise. Plaintiffs allege that PowerSchool "affirmatively represented to *prospective* customers that it maintained robust cybersecurity protections, including that it supported Multi-Factor Authentication through Single Sign-On ('SSO') functionality," and that Plaintiffs "relied on these representations in selecting PowerSchool." SAC ¶¶309–310 (emphasis added).

PowerSchool completely ignores that "if a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiff's

breach of contract claim." *First Bank of Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 291–92 (N.Y. App. Div. 1st Dep't 1999). Pre-contractual representations like those in the SAC allow a plaintiff to concurrently pursue breach of contract and fraud-based tort claims. *See, e.g.*, *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 690 (8th Cir. 2001) ("Fraudulent concealment is demonstrated by [defendant's] silence in the face of its duty to disclose information vital to the [] contract."); *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 333 (S.D.N.Y. 2024) (concluding that plaintiff's fraudulent concealment claim was "not futile" when defendant omitted information "to manipulate the parties' business relationship," making the omission "collateral to the contract").

Next, PowerSchool relies on its self-authored standardized integration clause in the MSA. But "an integration clause does not bar a claim of fraud based on statements not contained in the contract. Doctrine aside, all an integration clause does is limit the evidence available to the parties should a dispute arise over the meaning of the contract. It has nothing to do with whether the contract was induced, or its price jacked up, by fraud." *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002). Accordingly, the majority of jurisdictions hold that a defendant like PowerSchool may not "raise the [integration] clause as a defense to fraud" since it amounts to "an illegal contractual shield." *Bauer v. Giannis*, 834 N.E.2d 952, 958 (Ill. App. Ct. 2005); *see also Devine v. Buki*, 767 S.E.2d 459, 466 (Va. 2015) ("[T]he concealment that induces a party to perform may exist prior to the contract being performed"). These authorities demonstrate that PowerSchool fails to show the futility of the SAC's fraudulent concealment claims.

*iii. The Economic Loss Rule does not Invalidate Plaintiffs' Claims*

"The economic loss rule generally bars tort claims for contract breaches, thereby limiting contracting parties to contract damages." *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009) (citation omitted). At the same time, "an exception" to the rule "applies where commercial activities go awry as a consequence of conduct that is intentional or beyond the contract." *Herbalife Int'l of Am., Inc. v. E. Computer Exch., Inc.*, 723 F. Supp. 3d 888, 901 (C.D. Cal. 2024) (citation

omitted). Courts observe that "[a] harm goes above and beyond the contract, and thus becomes tortious, when it also violates a duty independent of the contract arising from principles of tort law." *Id.* (citations and internal quotation marks omitted). An "injured party may recover in contract and tort" when, as here, the other "party commits a fraud during the contract formation or performance." *Id.* (citation and internal quotation marks omitted). This exception exists "because '[n]o rational party would enter into a contract anticipating that they are or will be lied to.'" *Id.* (quoting *Dhital v. Nissan N. Am., Inc.*, 84 Cal. App. 5th 828, 840 (2022)). Relatedly, the SAC alleges that PowerSchool breached "legal duties that PowerSchool owed to Plaintiffs" which were "independent from the contracts between Plaintiffs and PowerSchool. These duties are recognized by, and arise from, federal and state statutory law, common law, and regulations." SAC ¶233. And, as explained *supra*, Plaintiffs detail how PowerSchool induced them to purchase PowerSchool's services while concealing material information pertaining to PowerSchool's data monetization scheme and lack of promised cybersecurity. Independent legal duties form a plausible basis for claims that arise out of tortious conduct exceeding Plaintiffs' reasonable expectations when they decided to contract with PowerSchool. The economic loss rule consequently fails to support PowerSchool's claim of futility.

## II. POWERSCHOOL FAILS TO SHOW UNDUE DELAY

Primarily focused on futility, PowerSchool's opposition also appears to invoke the undue delay factor. It frames Plaintiffs' request as a reactive maneuver rather than a good faith amendment, citing *Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1994) for the proposition that late amendments asserting theories known since the case began are disfavored. But the attempted amendment in *Kaplan* occurred when "[t]rial was only two months away, and discovery was completed." *Id.* at 1370. Conversely, Plaintiffs do not seek amendment on the eve of trial or the "addition of new issues during the pendency of a summary judgment motion . . . " *Id.* PowerSchool's reliance on *Kaplan* fails for all the reasons set forth in Plaintiffs' motion. PowerSchool does not, and plainly cannot, show "delay that prejudices the nonmoving party or imposes unwarranted burdens on the court." *Davis v. Powell*, 901

F. Supp. 2d 1196, 1212 (S.D. Cal. 2012) (citations and internal quotation marks omitted).

## III. THE COURT SHOULD REJECT POWERSCHOOL'S OPPOSITION AS PROCEDURALLY PREMATURE

Denial of leave to amend based on futility "is rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010) (citations omitted). Likewise, "[w]here a proposed amended claim involves complicated factual or legal issues, it is generally preferable for the sufficiency of that claim to be addressed on a fully briefed motion to dismiss rather than under the more circumscribed Rule 15(a) 'futility' analysis." *Zeng*, 2026 WL 578817, at *5. In these situations, "[a]rguments concerning the sufficiency of the proposed pleadings, even if meritorious, are better left for briefing on a motion to dismiss," *Id.*, and courts in this District have rightfully declined "to indulge [d]efendants' attempt to convert [p]laintiffs' motion to amend into a premature motion to dismiss." *Lillis v. Apria Healthcare*, 2012 WL 4760908, at *1 (S.D. Cal. Oct. 5, 2012).

As explained in their opposition to PowerSchool's motion to dismiss, Plaintiffs "comprise School Districts across fifteen states," all of whom "had different contracts with PowerSchool." ECF No. 434 at 14. The Direct Action Track involves certain inherent and particular complexities. PowerSchool's opposition essentially consists of a Rule 12(b)(6) motion to dismiss. Plaintiffs should have the opportunity to fully brief all of PowerSchool's arguments rather than trying to squeeze every counterargument within ten pages on a reply related to a Rule 15 motion. Indeed, PowerSchool's "opposition papers arguing the merits of [P]laintiffs' proffered amendments [are] premature in that they require the [C]ourt to assume that there are no facts that could support [P]laintiff's proposed claims." *Defazio v. Hollister, Inc.*, 2008 WL 2825045, at *3 n.5 (E.D. Cal. July 21, 2008).

## **CONCLUSION**

In light of the foregoing, Plaintiffs respectfully request that the Court grant their motion for leave to amend.

DATED: June 15, 2026

Respectfully submitted,

By: */s/ William B. Shinoff*

James P. Frantz (State Bar No. 87492)
William B. Shinoff (State Bar No. 280020)
Kristin J. Westphal (State Bar No. 202046)
Edward M. Burak (State Bar No. 361196)
**FRANTZ LAW GROUP, APLC**
402 W. Broadway, Suite 860
San Diego, CA 92101
(619) 233-5945
jpf@frantzlawgroup.com
wshinoff@frantzlawgroup.com
kwestphal@frantzlawgroup.com
eburak@frantzlawgroup.com

Daniel Shinoff (State Bar No. 99129)
Gil Abed (State Bar No. 195771)
**ARTIANO SHINOFF**
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
(619) 232-3122
dshinoff@as7law.com
gabed@as7law.com

Peter Mello (MA Bar No. 659680)
*Admitted Pro Hac Vice*
Felicia Vasudevan (MA Bar No. 687463)
*Admitted Pro Hac Vice*
**MURPHY, HESSE, TOOMEY & LEHANE LLP**
50 Braintree Hill Office Park, Suite 410
Braintree, MA 02184
(617) 479-5000
pmello@mhtl.com
fvasudevan@mhtl.com

Paul W. Evans (AL Bar No. 9270Z18F)
*Admitted Pro Hac Vice*
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS, & MILES, P.C.**
24 Commerce Street
Montgomery, AL 36103
(334) 269-2343
paul.evans@beasleyallen.com

*Attorneys for Plaintiffs, Co-Lead Counsel, and Steering Committee for the Track Two School District Direct Actions*