Anne Johnson Palmer (SBN 302235)
**ROPES & GRAY LLP**
One Maritime Plaza, Suite 1800
300 Clay Street
San Francisco, CA 94111
Tel: (415) 315-6300
anne.johnsonpalmer@ropesgray.com

Douglas Hallward-Driemeier (MA
BBO #627643)*
**ROPES & GRAY LLP**
2009 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 508-4600
douglas.hallward-driemeier@ropesgray.com

Christopher M. Young (SBN 163319)
Justin Van Ligten (SBN 353587)
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
christopher.young@us.dlapiper.com
justin.vanligten@us.dlapiper.com

*Attorneys for Defendants PowerSchool Corporation and PowerSchool Group, LLC*

[*Additional Counsel in Signature Block*]

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br>*All Track One Actions* | Case No. 3:25-MD-03149-AJB-MSB<br><br>**POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

# TABLE OF CONTENTS

**Page**

FACTUAL AND PROCEDURAL BACKGROUND ............................................1

LEGAL STANDARD...........................................................................................4

ARGUMENT .......................................................................................................5

I.      THE CALIFORNIA SUPREME COURT HAS CONFIRMED THAT CMIA EXTENDS ONLY TO BUSINESSES THAT STORE MEDICAL INFORMATION FOR STATUTORILY DEFINED PURPOSES, NOT AN EDUCATIONAL SOFTWARE PROVIDER LIKE POWERSCHOOL ..........5

    A.    PowerSchool Does Not Maintain Individuals' Medical Information for the Purpose of Allowing Those Individuals to Manage Their Information .................................................................................7

    B.    PowerSchool Does Not Maintain Individuals' Medical Information for Medical Diagnosis or Treatment ..............................................10

CONCLUSION..................................................................................................12

CERTIFICATE OF SERVICE .........................................................................15

POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS                    CASE NO. 3:25-MD-03149

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chavez v. United States*,
  683 F.3d 1102 (9th Cir. 2012) ....................................................................4, 9, 12

*J.M. v. Illuminate Educ., Inc.*,
  19 Cal. 5th 705 (2026) ...................................................................................*passim*

*J.M. v. Illuminate Educ., Inc.*,
  103 Cal. App. 5th 1125 (Cal. Ct. App. 2024)......................................................1, 3

*Manansingh v. United States*,
  752 F. Supp. 3d 1221 (D. Nev. 2024)......................................................................5

*Soro v. FCA US, LLC*,
  No. 25-cv-02200, 2026 WL 473050 (S.D. Cal. Feb. 19, 2026) .............................4

**Statutes**

Cal. Civ. Code § 56.05 ..................................................................................................6

Cal. Civ. Code § 56.06 ........................................................................................*passim*

Confidentiality of Medical Information Act .......................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12 ....................................................................................................1, 4, 5

-ii-

The California Supreme Court recently resolved the question at the heart of Plaintiffs' Confidentiality of Medical Information Act ("CMIA") claim, eliminating the basis for Plaintiffs' claim, and rendering it subject to dismissal by this Court. Specifically, the California Supreme Court has now made clear that an educational technology company providing software that stores data for schools and school districts in furtherance of their educational functions—including allegedly some medical information—does not qualify as a "provider of health care" subject to CMIA's requirements. In *J.M. v. Illuminate Education, Inc.*, the California Supreme Court held that an education software provider virtually identical to PowerSchool does not satisfy either definition of a "provider of healthcare" under Civil Code section 56.06(a) or (b), because such a company does not maintain medical information for the purpose of allowing individuals to manage their information, or for their medical diagnosis and treatment. 19 Cal. 5th 705 (2026) ("*Illuminate*"). In so concluding, the California Supreme Court reversed the Court of Appeal decision that this Court specifically relied upon as its sole basis for denying PowerSchool's motion to dismiss the CMIA claim. MTD Order 29 (relying on *J.M. v. Illuminate Education, Inc.*, 103 Cal. App. 5th 1125 (Ct. App. 2024)). This decision from California's highest court clarifying CMIA's application in the very same context as this case eliminates the basis for the Court's prior order and forecloses the CMIA claim here.

In light of the California Supreme Court's recent decision, PowerSchool respectfully moves for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and requests that this Court dismiss Plaintiffs' CMIA claim (Count XIV) with prejudice.

### FACTUAL AND PROCEDURAL BACKGROUND

PowerSchool is a leading provider of cloud-based software for K-12

-1-

education in the United States.  Consolidated Individual Users Class Action Complaint (the "Master Complaint" or "MC," Dkt. 259) ¶¶ 3, 50–51.  Its software is used by over 18,000 schools and school districts to facilitate their educational and administrative functions, including enrollment, scheduling, attendance tracking, grade reporting, and compliance.  MC ¶¶ 3–5, 52–56.  PowerSchool's Student Information System ("SIS")—the product at issue in this case—is a "secure customizable platform providing the interoperability need[ed] to power . . . school and district operations with accurate student data."  MC ¶ 4.  The SIS is designed to "save time, reduce costs, improve student outcomes, and increase security" for schools.  MC ¶ 53.  To this end, the SIS also stores certain health-related information—such as immunization records, allergy information, and information concerning learning disabilities—as one component among many categories of student data that schools and school districts collect and maintain for educational and administrative purposes.  MC ¶¶ 57, 143–44.

On December 28, 2024, PowerSchool learned that it had experienced a cyberattack involving the SIS (the "Cybersecurity Incident" or "Incident").  PowerSchool immediately engaged its incident response protocols and mobilized a cross-functional response team, including third-party cybersecurity experts, to contain the Incident and to harden system security.  Within ten days of learning of the Incident and only a few business days into the new year, PowerSchool notified its customers.  Based on the Incident, the Track One Plaintiffs—current or former students, their parents or guardians, teachers and other employees, and a teachers' union—brought a variety of tort and statutory claims through the Master Complaint.  As relevant here, Plaintiffs alleged that PowerSchool was liable under Sections 56.36 and 56.101 of CMIA as a "provider of health care, health care service plan, or contractor" that "negligently released" Plaintiffs' medical information to hackers.

-2-

*Id.* ¶¶ 980, 992.

On September 10, 2025, PowerSchool moved to dismiss Plaintiffs' claims, including their CMIA claim. On March 18, 2026, this Court issued its order on PowerSchool's motion to dismiss (the "MTD Order," Dkt. 436). Pertinent here, the Court denied the motion to dismiss the CMIA claim, relying exclusively on the California Court of Appeal's decision in *Illuminate*, 103 Cal. App. 5th at 1125. The Court held that the *Illuminate* appellate court had "addressed a similar context and found that the legislature intended the CMIA to address the type of data breach that allegedly occurred in this case." MTD Order 29. The Court concluded that "*J.M.* is persuasive and applied here leads to the conclusion that Powerschool could be liable for negligently handling medical information under the CMIA." *Id.*

At the time the Court issued the MTD Order, however, the intermediate appellate court decision in *Illuminate* was under review by the California Supreme Court. Recently, on May 14, 2026, the California Supreme Court reversed the Court of Appeal's decision. *Illuminate*, 19 Cal. 5th at 705. In particular, the Supreme Court held that the plaintiff had failed to adequately allege that Illuminate—an educational technology company that "stores medical information in order to help educators evaluate, monitor, and address students' educational needs"—was a "provider of health care" covered by CMIA. The California Supreme Court explained that CMIA defines "provider of health care" to mean "[a]ny business organized for the purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis and treatment of the individual." *Id.* at 715 (alteration in original) (quoting Cal. Civ. Code § 56.06(a)) (italics omitted). The Court highlighted the latter portions of that definition,

-3-

emphasizing that an entity that maintains medical information is only covered by CMIA if it does so "for one of two purposes: to 'allow[ ] the individual to manage the individual's information, or for the diagnosis and treatment of the individual.'" *Id.* (alteration in original).

The California Supreme Court concluded that Illuminate—an educational technology company that "stores medical information in order to help educators evaluate, monitor, and address students' educational needs,"—was not covered by CMIA because it did not maintain that medical information "for purposes of allowing . . . individual[s] to manage the[ir] information, or for the diagnosis and treatment of the individual." Cal. Civ. Code Section 56.06; s*ee also Illuminate*, 19 Cal.5th at 716. Given the near identical factual circumstances of this case, the California Supreme Court's holding in *Illuminate* forecloses Plaintiffs' CMIA claim against PowerSchool.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is warranted when "there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6)": "under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Id*. (citation omitted); *see also Soro v. FCA US, LLC*, No. 25-cv-02200, 2026 WL 473050, at *2 (S.D. Cal. Feb. 19, 2026). Under this standard, "formulaic recitation[s] of the elements of a cause of action" are not sufficient, *Chavez*, 683 F.3d at 1108 (alteration in original) (quoting *Bell Atl. Corp.*

-4-

*v. Twombly*, 550 U.S. 544, 555 (2007)), and courts must "discount[] conclusory statements, which are not entitled to the presumption of truth." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[1]

## ARGUMENT

### I. THE CALIFORNIA SUPREME COURT HAS CONFIRMED THAT CMIA EXTENDS ONLY TO BUSINESSES THAT STORE MEDICAL INFORMATION FOR STATUTORILY DEFINED PURPOSES, NOT AN EDUCATIONAL SOFTWARE PROVIDER LIKE POWERSCHOOL

CMIA was enacted to "protect the confidentiality of individually identifiable medical information obtained from a patient by a health care provider, while at the same time setting forth limited circumstances in which the release of such information to specified entities or individuals is permissible." *Illuminate*, 19 Cal. 5th at 714 (quoting *Loder v. City of Glendale*, 14 Cal. 4th 846, 859 (1997)). The statute's coverage extends "beyond traditional medical providers to certain entities organized for the primary purpose of maintaining medical information." *Id.* But, as the Supreme Court made clear, CMIA's "scope has limits. This is reflected in the Legislature's decision to include a specific definition of 'providers of health care' that does not sweep within its ambit *any* entity that stores medical information." *Id.* at 718–19 (emphasis in original).

Plaintiffs allege in conclusory fashion that PowerSchool is covered under CMIA as a "provider of healthcare, health care service plan, or contractor." MC ¶¶

---

[1] The Ninth Circuit has concluded that a motion for judgment on the pleadings is the proper way to address an intervening change in law that occurs after a defendant has filed a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Chavez v. United States*, 683 F.3d 1102, 1107–12 (9th Cir. 2012) (granting defendants' motion for judgment on the pleadings based on a United States Supreme Court decision constituting an intervening change in law); *see also Manansingh v. United States*, 752 F. Supp. 3d 1221, 1226–28 (D. Nev. 2024).

980, 986. Their Master Complaint does not even indicate which type of entity Plaintiffs claim PowerSchool to be.[2] This Court previously held, based on an application of the intermediate Court of Appeal's decision in *Illuminate*, that PowerSchool was a "provider of health care" under Section 56.06(a) and (b). MTD Order at 29 (citing *Illuminate*, 103 Cal. App. 5th at 1133). These statutory provisions within CMIA define a "provider of health care" to include: (a) "[a]ny business organized for the purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis and treatment of the individual"; and (b) "[a]ny business that offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information" for the same purposes. Cal. Civ. Code § 56.06(a)-(b). Under either subsection, the business must maintain medical information for the purpose of (1) allowing individuals to manage their information, or (2) facilitating diagnosis and treatment. Because the California Supreme Court's recent decision in *Illuminate* makes clear that PowerSchool does not meet either requirement, based on Plaintiffs'

---

[2] In their Opposition to PowerSchool's Motion to Dismiss, Plaintiffs suggested that they "never claimed that PowerSchool itself is a 'healthcare provider'; rather they allege that PowerSchool is a 'contractor' subject to the CMIA." Opp. 42. Plaintiffs then reiterated this position in a meet-and-confer held in connection with this motion. But CMIA's definition of "contractor" is facially inapplicable to PowerSchool: "'Contractor' means a person or entity that is a medical group, independent practice association, pharmaceutical benefits manager, or a medical service organization." Cal. Civ. Code § 56.05(d). Moreover, the MTD Order was not based on a finding that PowerSchool was a "contractor." MTD Order 29. For these reasons, Plaintiffs' argument that PowerSchool is a "contractor" subject to the CMIA fails, and PowerSchool focuses this motion on *Illuminate*'s clarification that educational software providers like PowerSchool are not providers of health care.

-6-

allegations, their claim under CMIA should be dismissed.

**A.**     <u>**PowerSchool Does Not Maintain Individuals' Medical Information for the Purpose of Allowing Those Individuals to Manage Their Information**</u>

In *Illuminate*, the California Supreme Court explained that the first set of businesses covered by CMIA—those that maintain individuals' medical information to "allow[ ] the individual to manage the individual's information"—is limited to those entities that enable individuals to "enter their medical information on a website and build their own electronic medical records," thereby providing a "central repository for a person's health records." 19 Cal. 5th at 715–17 (alteration in original) (citation omitted). As the Court explained in great detail, the legislative history confirms this reading of the statutory text. When the California Legislature added section 56.06 in 1993, it did so to "'authorize medical information corporations to gather and collect medical information' so that they could 'disseminate this information to patients and health care providers at their request.'" *Id.* at 717 (quoting Sen. Floor Analysis, 3d reading analysis of Assem. Bill No. 336 (1993–1994 Reg. Sess.) as amended July 2, 1993, p. 2). The Legislature passed the bill with support from the Medic Alert Corporation, which sought authorization for a service enabling patients to share medical information to "aid providers of health care in timely and accurate diagnosis." *Id.* (citation omitted). The 2007 amendments to the statute then extended coverage to "companies that maintain personal health records"—i.e., "companies that allow individuals to 'enter their medical information on a website and build their own electronic medical records.'" *Id.* (quoting Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1298 (2007–2008 Reg. Sess.) as introduced Feb. 23, 2007, pp. 1, 4.). And, finally, the 2013 amendments added subdivision (b) to section 56.06 to ensure coverage of businesses like those that

-7-

allow "[d]iabetics" to "record their glucose levels" and "[p]eople with hypertension" to "track their blood pressure readings." *Id.* at 718 (alterations in original) (quoting Office of Assemblymember Ian C. Calderon, Fact Sheet, Assem. Bill No. 658 (2013–2014 Reg. Sess.), p. 1.). In short, the California Supreme Court's decision in *Illuminate* clarified that the first portion of Section 56.06(a) is aimed at businesses that "allow individuals to build their own medical records" or "serve as a repository of . . . personal health records and allow [patients] to access and share those records as they please." *Id. Illuminate* recognized that an educational technology company does not fall within this definition, even if it collects medical information that is ancillary to its primary educational purpose.

The Master Complaint's own allegations confirm that PowerSchool does not maintain medical information for the purpose of allowing individuals to manage their health records. Like Illuminate, PowerSchool is an education company that provides software that allows schools to store student data in furtherance of their educational operations. Consistent with that reality, the Master Complaint's allegations repeatedly describe PowerSchool's purpose in exclusively educational terms: PowerSchool "provides educational software services" to schools and school districts (MC ¶ 3); PowerSchool's SIS is "one secure customizable platform providing the interoperability need[ed] to power your school and district operations with accurate student data" (MC ¶ 4); PowerSchool's services "cover a variety of administrative tasks ranging from enrollment to curriculum and teacher recruitment" (MC ¶ 3); PowerSchool's software is "made available to end users, like students, parents, and teachers, all of whom rely on the software daily to facilitate educational and administrative functions" (MC ¶ 52); the SIS is designed to "save time, reduce costs, improve student outcomes, and increase security" for schools (MC ¶ 53); and the SIS "serves as a repository for the highly sensitive data schools and school

-8-

districts must collect about students and teachers for education and employment services" (MC ¶ 56).  Nowhere do Plaintiffs include any factual allegations that PowerSchool maintains medical information to allow individuals to manage their own medical records, access their health data on demand, or build personal health repositories.  To the contrary, Plaintiffs allege that PowerSchool stores data for the benefit of schools and educators—not for individuals' personal medical information management.  *See, e.g.*, MC ¶ 6 ("PowerSchool . . . develops software programs to help schools manage students, data and educational programming."); MC ¶ 49 ("PowerSchool was designed as a record-keeping software for student attendance and educational information."); MC ¶ 50 (describing PowerSchool as "the leading provider of cloud-based software for K-12 education in the United States, supplying schools and school districts with a 'broad range of mission-critical capabilities'").

Plaintiffs' only allegations that PowerSchool maintains medical information for the purpose of allowing individuals to manage that information are mere threadbare recitations of the statutory text.  Specifically, the only two allegations asserting that PowerSchool allows individuals to manage their medical information appear in paragraphs 981 and 987 of the Master Complaint.  In paragraph 981, Plaintiffs assert that PowerSchool "maintains . . . medical information . . . to allow . . . individuals and clinicians to manage the individual's information." MC ¶ 981.  And paragraph 987 alleges that PowerSchool "is a business that offers software to consumers that is designed to maintain medical information in order to make the information available to an individual or a provider of health care . . . for purposes of allowing the individual to manage the individual's information."  MC ¶ 987. These allegations do nothing more than parrot the statute's language wholesale and are inadequate as a matter of law.  *Chavez*, 683 F.3d at 1108 (holding that "'formulaic recitation[s] of the elements of a cause of action' are not sufficient" to

-9-

survive a motion for judgment on the pleadings (quoting *Twombly*, 550 U.S. at 555)). Moreover, these threadbare assertions are contradicted by the Master Complaint's many other allegations describing PowerSchool's true purpose—"to facilitate educational and administrative functions" of its school and school district customers. MC ¶ 52. Just as the California Supreme Court found in *Illuminate*, the "bare mention of 'access provided . . . to students and parents' is insufficient to bring [PowerSchool] within the coverage of section 56.06," especially when the "entirety" of the Master Complaint's allegations highlight PowerSchool's "focus" on providing educational software products "to aid student assessment and educational planning." 19 Cal. 5th at 716–17 (citation omitted).

### B.     PowerSchool Does Not Maintain Individuals' Medical Information for Medical Diagnosis or Treatment

Plaintiffs likewise have not sufficiently alleged that PowerSchool satisfies the second criterion for coverage under CMIA, that it maintains medical information for the purposes of medical diagnosis or treatment. In *Illuminate*, the California Supreme Court held that even those specific allegations that Illuminate had maintained medical information regarding the plaintiff's dyslexia diagnosis to assess and meet his educational needs did not bring Illuminate within the coverage of CMIA, because there were no factual allegations indicating that Illuminate maintained this medical information ***for the purpose of*** "***diagnosis and treatment of an individual***." *Illuminate*, 19 Cal. 5th at 715 (emphasis added). In short, the California Supreme Court held that an entity that makes medical information available for the purpose of facilitating educational goals—rather than for medical diagnosis or treatment—is not covered by CMIA. *Id.* at 717 (emphasizing plaintiff had "not alleged that Illuminate makes medical information available to health care providers or individuals for the purpose of diagnosing a medical condition").

-10-

Here, Plaintiffs' allegations again fail for the same reason as in *Illuminate*. The Master Complaint makes clear that PowerSchool maintains information in the SIS to support schools and school districts in their educational functions, not for any diagnosis or treatment purposes. For example, Plaintiffs allege that PowerSchool was "designed as a record-keeping software for student attendance and educational information." MC ¶ 49. Plaintiffs themselves allege that PowerSchool provides "educational software services" covering "a variety of administrative tasks ranging from enrollment to curriculum and teacher recruitment." MC ¶ 3. And the Master Complaint alleges that PowerSchool's SIS product, in particular, facilitates schools' and districts' "educational and administrative functions." MC ¶ 52. Nowhere in the Master Complaint is there a single fact-based allegation that PowerSchool maintains medical information for the purpose of allowing a health care provider to diagnose or treat a patient. Rather, the Master Complaint alleges that schools and school districts store information in the SIS—including some medical information incidental to educational records—so that those schools can meet their students' educational needs. *See, e.g.*, MC ¶ 982 ("[PowerSchool's] services are provided to meet the unique needs of students who require health care ***in order to succeed***."); *see also id.* ("***To perform its functions to assist the central purpose of schools***, school districts, and individuals, PowerSchool uses student medical information and diagnosis and treatment plans of children to assist the diagnoses of students' medical and health care needs and monitor their progress ***to ensure they are healthy enough to learn and be safe at school***." (emphasis added)). That is the same purpose that the California Supreme Court held to be insufficient in *Illuminate*. *Illuminate*, 19 Cal. 5th at 718 ("J.M. has not alleged that Illuminate is a personal health records company, that its services allow individuals to build their own medical records, or that its internet platforms serve as a repository of students' personal health records

-11-

and allow them to access and share those records as they please. Rather, J.M. alleges that Illuminate stores medical information in order to help educators evaluate, monitor, and address students' educational needs."). The Master Complaint offers no basis on which this Court could deviate from that decision.

The remainder of Plaintiffs' allegations are threadbare assertions that merely parrot statutory language. Paragraphs 981 through 987 of the Master Complaint offer only conclusory assertions—again, lifted verbatim from the statutory text—that PowerSchool maintains medical information "for diagnosis and treatment," with no supporting factual allegations. MC ¶¶ 981–87. As the California Supreme Court held in *Illuminate* and as the Ninth Circuit has confirmed is the case under the federal pleading standards, such "bare" allegations are insufficient. *Illuminate*, 19 Cal. 5th at 716; *see also Chavez*, 683 F.3d at 1108. And these threadbare assertions are belied by the extensive allegations in Plaintiffs' own Master Complaint describing PowerSchool as providing software for educational purposes alone. MC ¶¶ 3, 4, 6, 49, 50, 52, 53, 56. Plaintiffs' conclusory allegations recycling statutory language confirm a truth that they cannot overcome: as an educational software company that maintains data in service of the educational functions of its school and school district customers, PowerSchool is simply not a provider of health care under CMIA.

## CONCLUSION

For the foregoing reasons, PowerSchool respectfully requests that the Court grant its Motion for Partial Judgment on the Pleadings and dismiss Plaintiffs' CMIA claim (Count XIV in the Master Complaint) with prejudice.

-12-

Dated: June 26, 2026

/s/ Anne Johnson Palmer

Anne Johnson Palmer (SBN 302235)
**ROPES & GRAY LLP**
One Maritime Plaza, Suite 1800
300 Clay Street
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

Douglas Hallward-Driemeier (MA BBO #627643)*
**ROPES & GRAY LLP**
2009 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 508-4600
Fax: (202) 508-4650
douglas.hallward-driemeier@ropesgray.com

James Drabick (MA BBO No. 667460)*
Monica Mleczko (MA BBO No. 696607)*
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 235-4136
Fax: (617) 951-7050
james.drabick@ropesgray.com
monica.mleczko@ropesgray.com

Laura G. Hoey (IL Bar No. 650643)*
**ROPES & GRAY LLP**
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606-4302
Tel: (312) 845-1200
Fax: (312) 845-5500
laura.hoey@ropesgray.com

-13-

Christopher M. Young (SBN 163319)
Justin Van Ligten (SBN 353587)
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com
justin.vanligten@us.dlapiper.com

*Attorneys for Defendants PowerSchool Corporation and PowerSchool Group, LLC.*

* Admitted *pro hac vice*

-14-

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on June 26, 2026, I filed the foregoing Motion for Judgment on the Pleadings with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ Anne Johnson Palmer*