BROWN RUDNICK LLP
SAMANTHA J. FLATTERY, No. 342420
sflattery@brownrudnick.com
RENEE M. MOULTON, No. 353065
rmoulton@brownrudnick.com
2121 Avenue of the Stars, Suite 720
Los Angeles, CA 90067
T: 1.424.525.0200
F: 1.424.525.0201

BROWN RUDNICK LLP
DYLAN P. KLETTER, NY Bar No. 5924659 (admitted *pro hac vice*)
dkletter@brownrudnick.com
JONATHAN D. WHITE, NY Bar No. 5393780 (admitted *pro hac vice*)
jwhite@brownrudnick.com
7 Times Square
New York, NY 10036
T: 1.212.209.4800
F: 1.212.209.4801

Attorneys for Defendant,
MOVATE, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION | CASE NO. 3:25-md-3149-AJB-MSB |
| | MDL No. 3149 |
| | Hon. Anthony J. Battaglia |
| This Document Relates To: Track Two Class Action | **REPLY IN SUPPORT OF DEFENDANT MOVATE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE TRACK TWO CLASS ACTION COMPLAINT (TRACK 2)** |
| | Courtroom:  4A |
| | Date:  August 13, 2026 |
| | Time:  10:00 A.M. |
| | **ORAL ARGUMENT REQUESTED** |

CASE NO. 3:25-md-3149-AJB-MSB

MOVATE'S REPLY IN SUPPORT OF TRACK 2 CLASS MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT .................................................................................................... 3

    A.    Plaintiffs Fail to State a Negligence Claim............................................. 3

        (1)    Plaintiffs Still Fail to Allege Movate Owed Them a Duty......... 3

        (2)    Plaintiffs Fail to Plausibly Allege Breach ................................. 6

    B.    Plaintiffs Allegations of "Systemic Failures" Do Not State a Claim for Negligent Hiring, Training, Supervision, and Retention ..... 7

    C.    Plaintiffs Fail to Allege Personal Jurisdiction ................................... 10

III.  CONCLUSION ............................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ambry Genetics Data Breach Litig.* (C.D. Cal. 2021)
567 F. Supp. 3d 1130 ................................................................................5

*Ashcroft v. Iqbal* (2009)
556 U.S. 662 ...................................................................................... 3, 4

*In re Bank of Am. Cal. Unemployment Benefits Litig.* (S.D. Cal. 2023)
674 F. Supp. 3d 884 ...............................................................................9

*Bell Atlantic Corp. v. Twombly* (2007)
550 U.S. 544 ...................................................................................... 3, 6

*Core-Vent Corp. v. Nobel Indus. AB* (9th Cir. 1993)
11 F.3d 1482 .......................................................................................10

*Doe v. Capital Cities* (1996)
50 Cal. App. 4th 1038..............................................................................8

*Doe v. Poly Prep Country Day Sch.* (E.D.N.Y. Sept. 29, 2022)
2022 WL 4586237 ..................................................................................8

*Doe v. Uber Techs., Inc.* (S.D.N.Y. 2021)
551 F. Supp. 3d 341................................................................................8

*Ehrens v. Lutheran Church* (2d Cir. 2004)
385 F.3d 232 .........................................................................................8

*G.A.-H. v. K.G.G.* (2019)
238 N.J. 401 ..........................................................................................8

*Home Depot USA, Inc. v. Lafarge N. Am., Inc.* (3d Cir. 2023)
59 F.4th 55 ............................................................................................1

*In re Korean Air Lines Co., Ltd.* (9th Cir. 2011)
642 F.3d 685 .........................................................................................1

*Navarro v. Ski Data, Inc.* (C.D. Cal. Dec. 7, 2022)
2022 WL 18280359 ................................................................................4

MOVATE'S REPLY IN SUPPORT OF TRACK 2 CLASS MOTION TO DISMISS

*Picot v. Weston* (9th Cir. 2015)
  780 F.3d 1206 ................................................................................................................10

*Regents of Univ. of Cal. v. Superior Court* (2018)
  4 Cal. 5th 607...................................................................................................................5

*Sanusi v. Dep't of Homeland Sec.* (E.D.N.Y. Dec. 1, 2010)
  2010 WL 10091023 ..........................................................................................................9

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.* (N.Y. Sup. Ct. 2020)
  131 N.Y.S.3d 817 .............................................................................................................4

*In re U.S. Vision Data Breach Litig.* (D.N.J. Feb. 26, 2025)
  2025 WL 615366 ...............................................................................................................4

*Walsh v. Am. Med. Response* (9th Cir. 2017)
  684 F. App'x 610 ..............................................................................................................3

*Walsh v. AMD Sacramento* (E.D. Cal. Sept. 11, 2014)
  2014 WL 4472752 .........................................................................................................3, 4

*Wuxi Multimedia, Ltd. v. Koninklijke Philips Elecs., N.V.* (S.D. Cal. Jan. 5, 2006)
  2006 WL 6667002 ............................................................................................................3

*Y.P. v. Wells Fargo Co.* (2026)
  119 Cal. App. 5th 1069 ....................................................................................................8

CASE NO. 3:25-md-3149-AJB-MSB

MOVATE'S REPLY IN SUPPORT OF TRACK 2 CLASS MOTION TO DISMISS

## I.    **INTRODUCTION**

Plaintiffs' opposition (Dkt. 525, the "Opposition") confirms that Plaintiffs' claims against Movate rest on conclusory assertions and an attempt to impose liability on a theory inconsistent with the facts they themselves plead. At bottom, Plaintiffs seek to hold Movate liable for a data breach that, by their own allegations, occurred within PowerSchool's systems—systems that PowerSchool owned, controlled, and secured—based solely on Movate's role as a subcontractor with access to those systems. That theory is not supported by the law or by Plaintiffs' own pleadings.

At the outset, Plaintiffs repeatedly invoke the Court's prior rulings on Movate's motions to dismiss the Track One and Track Two Direct Action Complaints as though those rulings control the result here. They do not. The Track Two Direct Action and Track Two Class Action proceed on different consolidated complaints, and "individual cases that are consolidated or coordinated for pretrial purposes remain fundamentally separate actions." *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 700 (9th Cir. 2011); *see also Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 61–62 (3d Cir. 2023) (holding that "the law of the case doctrine applies only to prior decisions made in the same case" and does not apply across separate actions merely because they were coordinated in an MDL). The Court therefore must independently evaluate the allegations in the Track Two Class Action Complaint. Furthermore, Movate has moved for reconsideration of those portions of the Court's Track One and Track Two Direct Action rulings (Dkt. 472), and that motion remains pending.

*First*, Plaintiffs' negligence claim fails as a matter of law because they do not—and cannot—allege that Movate owed them a duty of care. The Complaint attributes control over the relevant data, systems, and security architecture to PowerSchool, not Movate. Faced with that fatal deficiency, Plaintiffs attempt to reframe Movate's access to data that PowerSchool granted to provide customer support as "control" over that data. However, Plaintiffs' *ipse dixit* does not transform mere access into control. That distinction is dispositive. As a matter of law, mere access alone does not create a duty

CASE NO. 3:25-md-3149-AJB-MSB

MOVATE'S REPLY IN SUPPORT OF TRACK 2 CLASS MOTION TO DISMISS

to safeguard data owned, controlled, and secured by another entity.

Moreover, the Court should reject Plaintiffs' attempt to deliberately confuse the issue with bogus and conclusory arguments about Movate's own security practices, such as its own multifactor authentication ("MFA"). That issue is a red herring directed to the *wrong* system since it is undisputed that none of the allegedly breached data resided on Movate's own systems; instead, the data was on PowerSchool's SIS, and PowerSchool has acknowledged that its own MFA was not in operation.

Likewise, Plaintiffs fail to plead a plausible breach. Their conclusory allegations relate only to Movate's own systems and are untethered to the PowerSchool SIS environment where the alleged data breach occurred.

*Second*, Plaintiffs' negligent hiring, training, supervision, and retention claim fails because it lacks the required allegations of employee-specific notice. Rather than identifying any facts suggesting that Movate knew or should have known that the employee at issue posed a risk of misconduct, Plaintiffs rely on a generalized and conclusory theory of "systemic failures," without alleging any supporting facts. That is not enough. As courts consistently hold, these claims require allegations that the employer had notice of a particular employee's unfitness or propensity for the conduct that caused the alleged injury. Plaintiffs plead no such facts here. Their reliance on broad, wholly conclusory allegations of deficient training or cybersecurity practices swallows this requirement and cannot substitute for the required showing of notice.

*Finally*, Plaintiffs fail to establish personal jurisdiction over Movate in California. The Complaint alleges no facts showing that Movate purposefully directed its conduct at this forum or that Plaintiffs' claims arise from any California-directed activity, particularly where the alleged conduct occurred abroad.

Because Plaintiffs fail to plausibly state any claim for negligence or negligent hiring, training, supervision, and retention—and fail to establish personal jurisdiction—the Complaint should be dismissed in its entirety.

## II.    ARGUMENT

### A.    Plaintiffs Fail to State a Negligence Claim

#### (1)    Plaintiffs Still Fail to Allege Movate Owed Them a Duty

Plaintiffs' Opposition confirms that no duty exists as a matter of law because Plaintiffs do not—and cannot—allege that Movate controlled the system, data, or security measures at issue. Instead, Plaintiffs attempt to salvage their claim by advancing a theory that contradicts their own Complaint, relying on conclusory assertions that cannot be credited under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

At the outset, the Court must reject Plaintiffs' effort to recast their allegations in the Opposition in a manner inconsistent with their own pleadings. Courts do not accept allegations that contradict the complaint's own factual narrative. *Walsh v. AMD Sacramento*, 2014 WL 4472752, at *10 n.7 (E.D. Cal. Sept. 11, 2014), *adopted*, (E.D. Cal. Dec. 29, 2014), *aff'd*, 684 F. App'x 610 (9th Cir. 2017); *see also Wuxi Multimedia, Ltd. v. Koninklijke Philips Elecs., N.V.*, 2006 WL 6667002, at *9 (S.D. Cal. Jan. 5, 2006). That rule is dispositive here.

The Complaint's core narrative is that the alleged breach occurred within PowerSchool's SIS, a system owned, operated, and secured by PowerSchool, using credentials issued and governed by PowerSchool. (*See* Mot. at 7–8 (citing 2d Am. Compl. ¶¶ 1, 4, 76, 86, 90, 92).) Plaintiffs allege that PowerSchool controlled the relevant authentication mechanisms, access permissions, and security architecture, such as MFA, and that Movate acted only as a subcontractor providing customer support using access granted by PowerSchool. (2d Am. Compl. ¶¶ 4–6, 38, 76, 86, 89–90, 92, 263–64.) That is the only coherent factual account reflected in the Complaint.

Plaintiffs' Opposition now asserts that Movate had "control over the SIS and its data" (Opp. at 10), but the cited allegations do not support that claim. Plaintiffs rely on Complaint ¶¶ 16, 264–67. (Opp. at 2–3.) Paragraph 16 is a conclusory jurisdictional allegation asserting, without supporting facts, that "Movate exercised control over the

3    CASE NO. 3:25-md-3149-AJB-MSB

data Plaintiffs entrusted to PowerSchool." Paragraphs 264 to 277 likewise do not allege Movate's control over the SIS or its security architecture; instead, they confirm that Movate was a subcontractor given "unfettered *access* to PowerSchool's PowerSource customer support portal and SIS" in order to provide support services. (2d Am. Compl. ¶ 264) (emphasis added). Nothing in those allegations suggests that Movate owned, operated, or controlled PowerSchool's SIS or its security architecture.

Properly understood, Plaintiffs' allegations establish only that Movate personnel were permitted to access PowerSchool's systems to provide customer support—access that was necessary to perform those services. Plaintiffs attempt to recast that access as "control" over the data. However, Plaintiffs *ipse dixit* does not transform mere access into control. That distinction is dispositive. As a matter of law, access alone does not create a duty to safeguard data owned, controlled, and secured by another entity. Plaintiffs' own allegations foreclose that showing: they place control over the SIS, its authentication mechanisms, and its security architecture with PowerSchool, not Movate. Plaintiffs' assertion of "control" is therefore both conclusory and contradicted by their own factual allegations, and cannot be credited. *Walsh*, 2014 WL 4472752, at *10 n.7; *Iqbal*, 556 U.S. at 678.

As Movate explained in its opening brief (Mot. at 6–8, 10) and courts have recognized in analogous cases, mere access to a system or data does not establish control over it for purposes of imposing a duty of care. Absent allegations that a defendant owned, operated, or controlled the relevant system or the security framework governing access to it, no duty arises as a matter of law. *See, e.g.*, *Navarro v. Ski Data, Inc.*, 2022 WL 18280359, at *10 (C.D. Cal. Dec. 7, 2022); *In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *8–10 (D.N.J. Feb. 26, 2025); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 825 (N.Y. Sup. Ct. 2020). Those cases turn precisely on the absence of control over the data environment and the security decisions governing it. Indeed, the Track Two Direct Action Plaintiffs carefully explained that Bain's reliance on these cases was "readily distinguishable"

because, as the Direct Action Plaintiffs highlighted, the defendants in those cases *lacked control* over the security decisions or data custodianship. *See* Dkt. 490, Track 2 Direct Action Plaintiffs' Opposition to Bain's Motion for Reconsideration, at 13.

Plaintiffs do not meaningfully engage with that principle or the concession made by their fellow school districts in the Direct Action. Instead, they argue that Movate's control over its own "cybersecurity practices," including its own MFA, credential management, and employee training, is sufficient. (Opp. at 2–3 (citing 2d Am. Compl. ¶¶ 269–271, 279–281).) But that argument does not address (and attempts to deliberately confuse) the dispositive issue: whether Movate controlled PowerSchool's SIS and security framework in which Plaintiffs' data resided. Again, Plaintiffs identify no authority holding that mere access to that data—without control over the system or its governing security measures—gives rise to a duty of care.

Plaintiffs' remaining theories of "special relationship," foreseeability, and statutory duties do not cure that defect. (*See* Opp. at 11–16.) A duty to protect against third-party misconduct arises only where the defendant has "superior control over the means of protection," *Regents of Univ. of Cal. v. Superior Court*, 4 Cal. 5th 607, 621 (2018)—that is, where the defendant is in a position to prevent the risk. Plaintiffs' own allegations foreclose that showing, as they place control of the PowerSchool SIS and its security framework with PowerSchool, not Movate. Nor does foreseeability change the analysis: if the risk of data breach combined with data access were sufficient, every third-party vendor with system access would owe a duty regardless of its ability to control the system's security—a rule Plaintiffs cite no authority supporting.

Plaintiffs' reliance on *In re Ambry Genetics Data Breach Litigation*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021), for the proposition that statutory standards can establish a duty of care is also misplaced. (*See* Opp. at 14–16.) *Ambry* did not hold that statutory standards of care create a legal duty where none otherwise exists or relieve a plaintiff of the obligation to plead an independent duty of care. Rather, the court permitted plaintiffs to invoke negligence *per se* only in support of an otherwise viable

negligence claim against the entity that allegedly controlled and secured the compromised data environment. *Id.* at 1142–43. Here, by contrast, Plaintiffs' own allegations place ownership, operation, and security control of the compromised environment with PowerSchool, not Movate. Because Plaintiffs have failed to plausibly allege that Movate owed them an independent duty of care, their reliance on statutory standards and negligence *per se* cannot salvage their negligence claim.

In short, because Plaintiffs do not plausibly allege that Movate owned, operated, or controlled the PowerSchool SIS or its security architecture, they fail to allege that Movate owed them a duty of care as a matter of law.

**(2)      Plaintiffs Fail to Plausibly Allege Breach**

Plaintiffs' breach allegations fail because they take one of two deficient forms. They are either conclusory assertions of unspecified poor security or bogus allegations of supposed deficiencies—such as failures relating to MFA, password rotation, and credential practices—that are tied only to Movate's own systems and are entirely untethered to the PowerSchool data breach at issue. Either way, Plaintiffs do not allege facts plausibly showing that any conduct by Movate caused the data breach.

The Complaint does not allege facts showing how Movate engaged in any specific negligent act in connection with the intrusion. Instead, it alleges only that a Movate employee's *PowerSchool-issued* login credentials were compromised and then used by third-party actors to access PowerSchool's systems. (2d Am. Compl. ¶¶ 4, 88.) Plaintiffs do not even allege how those credentials were compromised or identify any act or omission by Movate that caused the alleged compromise.

That omission is dispositive. Where, as here, the pleaded facts are equally consistent with reasonable conduct and negligence, they do not support a plausible inference of negligence. *See Twombly*, 550 U.S. at 557 (allegations that are merely consistent with liability do not suffice). Plaintiffs allege only that a Movate employee's credentials that were issued and controlled by another party—*i.e.*, PowerSchool—were compromised, but such an allegation, without more, does not plausibly suggest that

6

Movate acted unreasonably. Plaintiffs plead no facts that would permit the Court to infer that the compromise resulted from any deficiency in Movate's conduct, rather than from circumstances consistent with reasonable security practices.

Plaintiffs' fabricated and conclusory allegations about Movate's own security fare no better because they target the *wrong* system. They identify supposed deficiencies in Movate's internal security practices, such as bogus claims concerning Movate's own multi-factor authentication, but the intrusion—by Plaintiffs' own allegations—occurred within PowerSchool's SIS using credentials governed by PowerSchool. (Opp. at 16–17; *see, e.g.*, 2d Am. Compl. ¶¶ 1, 4.) Plaintiffs do not allege that any Movate-controlled system was compromised or that any such internal practice provided a pathway into the SIS. Nor do they or could they allege facts showing that Movate controlled, configured, or was responsible for the security measures or architecture governing PowerSchool's environment.

That gap is fatal to breach. Even accepting Plaintiffs' allegations as true, they do not plausibly show that any act or omission by Movate caused the compromise of PowerSchool's system. Because Plaintiffs fail to plausibly allege either duty or breach, their negligence claim fails as a matter of law.

### B.    Plaintiffs Allegations of "Systemic Failures" Do Not State a Claim for Negligent Hiring, Training, Supervision, and Retention

Rather than identifying any factual allegation showing that Movate knew or should have known that Mr. Cruz posed a risk of credential compromise or other misconduct, Plaintiffs instead advance a bogus and conclusory theory of alleged "systemic failures" in Movate's training, supervision, credential-management practices, and cybersecurity procedures. (Opp. at 18–19.) But Plaintiffs identify no non-conclusory factual allegations in the Complaint supporting any such systemic failures. Plaintiffs conclusorily assert—without supporting facts—that their claim "extends beyond a propensity claim targeting a single employee" and instead concerns institution-wide deficiencies. (*Id.* at 18.) But that argument does not answer the

deficiency identified in Movate's Motion. Negligent hiring, training, supervision, and retention are not generalized negligence claims. They are employer-liability torts that require allegations that the employer knew or should have known of the particular employee's unfitness, incompetence, or propensity for the conduct that caused the alleged injury. *See G.A.-H. v. K.G.G.*, 238 N.J. 401, 415–16 (2019) (explaining that negligent hiring, supervision, and training are forms of direct employer liability requiring proof that the employer knew or had reason to know of the employee's particular unfitness); *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (plaintiff must show employer "knew or should have known of the employee's propensity for the conduct which caused the injury" (citations omitted)); *Y.P. v. Wells Fargo Co.*, 119 Cal. App. 5th 1069, 1088–89 (2026) (same).

The Complaint alleges no facts showing that Movate knew or should have known that Mr. Cruz posed any relevant risk. Instead, Plaintiffs rely on conclusory (and fabricated) allegations—unsupported by specific facts—that Movate failed to require credential rotation, implement adequate access controls, or provide sufficient cybersecurity training. (Opp. at 18–19.) Those allegations concern Movate's cybersecurity practices generally; they do not establish notice of any particular employee's unfitness or propensity. Plaintiffs thus attempt to repackage a generalized negligence theory into the employee-specific tort of negligent hiring, training, supervision, and retention. Courts routinely reject that approach. *See, e.g.*, *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 361–63 (S.D.N.Y. 2021) (company-wide knowledge of misconduct by other workers insufficient absent allegations that employer knew or should have known the particular employee posed the relevant risk); *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054–55 (1996) (generalized information about employee did not establish foreseeability of the specific misconduct that occurred); *Doe v. Poly Prep Country Day Sch.*, 2022 WL 4586237, at *8–9 (E.D.N.Y. Sept. 29, 2022) (dismissing negligent hiring, supervision, retention, and direction claim because allegations regarding an institutional culture tolerating abuse did not establish

knowledge of the particular employee's propensity for misconduct); *Sanusi v. Dep't of Homeland Sec.*, 2010 WL 10091023, at *20 (E.D.N.Y. Dec. 1, 2010) (dismissing negligent hiring, training, and supervision claims based on broad allegations of inadequate training and supervision that lacked facts concerning employees' backgrounds, deficiencies, or the employer's knowledge of any such deficiencies).

Unable to identify any authority dispensing with the employee-specific notice requirement, Plaintiffs instead rely on this Court's prior discussion of *In re Bank of America California Unemployment Benefits Litigation*, 674 F. Supp. 3d 884 (S.D. Cal. 2023). (Opp. at 19.) But that case does not eliminate the employee-specific notice requirement or hold that generalized allegations of deficient cybersecurity policies or workforce training suffice to plead negligent hiring, training, supervision, and retention. There, plaintiffs alleged a specific and concrete hiring practice: that Bank of America's subcontractor "hired hundreds of employees without conducting background checks," and that those employees were "granted access to Cardholders' account and personal information." 674 F. Supp. 3d at 902–03. Plaintiffs further alleged that this hiring practice enabled those employees to carry out the data breaches at issue. *Id.* at 926. In other words, the alleged defect was a particular hiring practice directly tied to the employees who carried out the misconduct—not a conclusory criticism of cybersecurity practices or training programs.

Here, by contrast, Plaintiffs allege no comparable hiring, training, supervision, or retention practice—let alone one tied to Mr. Cruz or any similarly situated employee. They allege only conclusory, generalized deficiencies in credential management, employee training, and cybersecurity procedures. (Opp. at 18–19.) These allegations remain a far cry from those at issue in *Bank of America*.

The Opposition therefore reinforces, rather than rebuts, Movate's Motion. Because Plaintiffs identify no facts showing that Movate knew or should have known that Mr. Cruz posed the relevant risk, and instead argue such facts are unnecessary based on conclusory allegations of "systemic failures" (Opp. at 18–19), they fail to

9

state a claim for negligent hiring, training, supervision, or retention.

## C.    Plaintiffs Fail to Allege Personal Jurisdiction

Finally, Plaintiffs fail to plead facts sufficient to establish personal jurisdiction over Movate in California. (*See* 2d Am. Compl. ¶¶ 16, 22.) The Complaint does not allege facts showing that Movate purposefully directed its conduct at California. *See Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (for tort claims, courts look to whether defendant "directed his actions at the forum state, even if those actions took place elsewhere"). Plaintiffs allege Movate "intentionally" directed contacts at California by entering a contract with PowerSchool, a California-based company, and "through technical support for PowerSchool customers." (2d Am. Compl. ¶ 16.) But a "contract alone does not automatically establish minimum contacts." *Picot*, 780 F.3d at 1212. And the alleged technical support was provided remotely to customers nationwide—not directed at California specifically. (2d Am. Compl. ¶¶ 1, 22.)

Plaintiffs also fail to allege their claims arise out of Movate's California-related activities. *See Picot*, 780 F.3d at 1211. They allege the data breach resulted from compromised credentials of a Movate employee in the Philippines and involved school districts nationwide. (2d Am. Compl. ¶¶ 1, 22, 91.) Plaintiffs identify no California-specific conduct by Movate giving rise to their negligence claims. (*See* Opp. at 21.)

Finally, exercising jurisdiction over Movate would be unreasonable. The alleged conduct occurred in the Philippines, and Movate neither is "at home" in California nor directed its activities there. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) ("[T]he smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." (citations and quotations omitted)). Accordingly, the Court lacks personal jurisdiction over Movate.

## III.    CONCLUSION

For the reasons above and those stated in the Motion, Movate respectfully requests that the Court dismiss all claims against it with prejudice.

DATED: July 8, 2026                    Respectfully submitted,

BROWN RUDNICK LLP


By:  */s/ Dylan P. Kletter*
     DYLAN P. KLETTER
     JONATHAN D. WHITE
     SAMANTHA J. FLATTERY
     RENEE M. MOULTON
     Attorneys for Defendant,
     MOVATE, INC.

11                              CASE NO. 3:25-md-3149-AJB-MSB