David S. Casey, Jr., Cal. State Bar No. 60768
dcasey@cglaw.com
**CASEY GERRY FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel.: (619) 238-1811

Carol C. Villegas, N.Y. State Bar No. 4154324*
cvillegas@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700

James J. Pizzirusso, D.C. State Bar No. 477604*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200

*Interim Co-Leads for Plaintiffs*

**Admitted Pro Hac Vice*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION, | Case No.: 25-md-3149-AJB-MSB<br><br>**PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Judge: Hon. Anthony J. Battaglia<br>Courtroom: 4A |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ................................................................................................ 1

II.   POWERSCHOOL'S MOTION IS LEGALLY AND PROCEDURALLY IMPROPER ............................................................................ 3

    A.    PowerSchool's Motion Should Be Denied as a Matter of Law ............ 3

    B.    PowerSchool's Motion Should Be Denied as Procedurally Improper ................................................................................................ 5

III.  POWERSCHOOL'S MOTION DOES NOT COMPEL JUDGMENT ON THE PLEADINGS ....................................................................................... 7

    A.    *Illuminate* Does Not Compel Judgment on the Pleadings ................... 9

    B.    Plaintiffs Adequately Allege PowerSchool is an Entity Covered by the CMIA .................................................................................... 12

        1.    Factual Background Relevant to Plaintiffs' CMIA Claim ........ 12

        2.    Plaintiffs Adequately Allege PowerSchool is a Provider of HealthCare .............................................................................. 16

IV.  CONCLUSION ................................................................................................. 21

PLAINTIFFS' OPPOSITION TO
POWERSCHOOL'S MOTION FOR
JUDGMENT ON THE PLEADINGS

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AM Gen. LLC v. Demmer Corp.*,
2013 WL 5348484 (N.D. Ind. Sep. 23, 2013)................................................6

*Blain v. Liberty Mut. Fire Ins. Co.*,
2024 WL 948020 (S.D. Cal. Feb. 12, 2024) (J. Battaglia)...............................7

*Brand Engagement Network, Inc., v. Brewer*,
2026 WL 1243448 (N.D. Tex. May 6, 2026)....................................................5

*Choi v. 8th Bridge Cap., Inc.*,
2019 WL 4956147 (C.D. Cal. Oct. 7, 2019) ...............................................5, 6

*Dunsmore v. San Diego Cnty. Sheriff's Dep't*,
2023 WL 12128518 (S.D. Cal. Apr. 27, 2023) ................................................5

*Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*,
2021 WL 4281336 (N.D. Cal. Sept. 21, 2021).............................................6-7

*Est. of Rodriguez v. City of Long Beach*,
2020 WL 292179 (C.D. Cal. Jan. 21, 2020)....................................................5

*Frasco v. Flo Health, Inc.*
2025 WL 1476905 (N.D. Cal. May 22, 2025) ...............................................18

*Ginsburg v. InBev NV/SA*,
623 F.3d 1229 (8th Cir. 2010) ........................................................................6

*Grajales v. Puerto Rico Ports Auth.*,
682 F.3d 40 (1st Cir. 2012) .........................................................................5, 6

*Howe v. City of Akron*,
801 F.3d 718 (6th Cir. 2015)...........................................................................4

*J.M. v. Illuminate Educ., Inc.*,
19 Cal. 5th 705, 588 P.3d 611 (2026) .....................................................*passim*

*McKenzie v. BellSouth Telecomm. Inc.*,
219 F.3d 508 (6th Cir. 2000)...........................................................................4

*Perez v. Oak Grove Cinemas, Inc.*,
2014 WL 1796674 (D. Or. May 5, 2014).....................................................5, 6

*Pillsbury, Madison & Sutro v. Lerner*,
31 F.3d 924 (9th Cir. 1994).............................................................................7

*Riera v. Somatics, LLC*,
800 F. App'x 537 (9th Cir. 2020).....................................................................7

PLAINTIFFS' OPPOSITION TO
POWERSCHOOL'S MOTION FOR
JUDGMENT ON THE PLEADINGS

*Rodriguez v. City of Colton*,
    631 F. App'x 474 (9th Cir. 2016)....................................................................................3

*United States v. Smith*,
    389 F.3d 944 (9th Cir. 2004)........................................................................................3

*Uzoh v. Walmart Assocs., Inc.*,
    2024 WL 4919642 (W.D. Tex. Oct. 21, 2024) ...........................................................5

*Westridge Townhomes Owners Ass'n v. Great Am. Assurance Co.*,
    2017 WL 6310494 (W.D. Wash. Dec. 11, 2017)..........................................................7

**Statutes**

Cal. Civ. Code § 56, CMIA ...........................................................................................*passim*

**Rules**

Rule 12(b)(6)..................................................................................................................7

Rule 12(c) ...................................................................................................................2, 3

**Other Authorities**

18B Wright & Miller's Federal Practice & Procedure § 4478
    (3d ed. April 2026 Update)..........................................................................................3

PLAINTIFFS' OPPOSITION TO
POWERSCHOOL'S MOTION FOR
JUDGMENT ON THE PLEADINGS

## I.   INTRODUCTION[1]

Yet again, PowerSchool asks this Court to dismiss Plaintiffs' claims arising from the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 ("CMIA").  PowerSchool raised this issue four times, but the Court declined to dismiss Plaintiffs' CMIA claim.  PowerSchool moved to dismiss Plaintiffs' CMIA claim for failure to state a claim, submitted a detailed outline summarizing its motion to dismiss arguments, presented oral argument on this issue, and submitted a rebuttal brief concerning the same.  After extensive argument and careful review of the issue, the Court denied PowerSchool's motion to dismiss as to Plaintiffs' CMIA claim holding "that Powerschool could be liable for negligently handling medical information under the CMIA."  ECF No. 436 at 29.

Since then, PowerSchool moved this Court to reconsider various aspects of its rulings denying its motion to dismiss.  ECF No. 465.  PowerSchool did not move to reconsider any aspect of the ruling upholding Plaintiffs' CMIA claims and Plaintiffs have since moved forward with discovery on those claims.

Despite its previous failures to prevail on (or raise) this issue, PowerSchool now presents the same CMIA arguments regarding the same issues in the same case to the same Court, yet seeks a different result.  Federal Rule 12(c) does not provide any basis for such seriatim re-litigation.  In situations that mirror this one, courts have resoundingly rejected Rule 12(c) motions under the law of the case doctrine because, as is the case here, the Court already ruled, based on the same legal standard applicable here, that the complaint adequately stated the sustained claims.

Nevertheless, in its Motion, PowerSchool claims that the legal standard governing CMIA claims was recently changed by *J.M. v. Illuminate Educ., Inc.*, 19

---

[1] Track 1 Plaintiffs respectfully submit this opposition to Defendants PowerSchool Corporation and PowerSchool Group, LLC's ("Defendants") Motion for Judgment on the Pleadings.  ECF No. 529 (the "Motion").  Plaintiffs' Complaint (ECF No. 259) is hereinafter referenced to as "¶_".  Internal quotations and citations are omitted and emphasis is added throughout.

Cal. 5th 705 (2026), but this contention materially overstates *Illuminate's* holding and mischaracterizes Plaintiffs' allegations. In *Illuminate*, the California Supreme Court analyzed the plain meaning of the CMIA's statutory text in connection with its legislative history and applied that meaning to the fact-specific allegations in the complaint at issue. The *Illuminate* decision does not promulgate a new legal rule relevant here nor does it present a bright-line rule exempting PowerSchool from CMIA liability. To the contrary, the court explicitly stated that the CMIA "was written broadly with the understanding that internet platforms are quickly evolving." *Illuminate*, 19 Cal. 5th at 718.

*Illuminate's* holding is of little importance here because it expressly declined to consider the section of the CMIA Plaintiffs rely on here: the definition of "contractor" under the statute.

PowerSchool presents no reason to overturn this Court's prior decision to allow Plaintiffs' CMIA claim to proceed into discovery because the actual law remains unchanged, the Illuminate court expressly declined to analyze the CMIA as applied to contractors, and the Complaint continues to adequately plead the elements of a CMIA claim that were discussed in *Illuminate*. In short, as discussed *infra*, PowerSchool's Motion attacks a strawman by treating Plaintiffs' CMIA claim as turning on whether PowerSchool qualifies as a "provider of health care." But PowerSchool's argument overlooks the broader statutory framework and the full context of Plaintiffs' allegations which confer CMIA liability on entities beyond providers of health care to contractors (as defined by the CMIA). Instead, PowerSchool disregards Plaintiffs' sufficient allegations and cherry picks aspects of *Illuminate* in an effort to create a sea change in the law that simply does not exist.

Accepting Plaintiffs' allegations as true, as Rule 12(c) requires, the Complaint plausibly alleges that PowerSchool is "a business deemed to be a provider of health

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS

care, health care service plan, or contractor" under the statute.   ¶¶ 980-81. PowerSchool's Motion should therefore be denied.

## II.   POWERSCHOOL'S MOTION IS LEGALLY AND PROCEDURALLY IMPROPER

PowerSchool's Motion is an improper attempt to file a second motion for reconsideration (mislabeled as a Rule 12(c) motion) raising arguments it failed to include in its first motion for reconsideration under the guise of a (non-existent) change in the law.  PowerSchool contends that this Court should disturb two of its prior decisions pursuant to a purported change in the law.  Rule 12(c) does not provide any legal basis for PowerSchool's belated arguments or to overturn the well-considered decisions of this Court.

### A.   PowerSchool's Motion Should Be Denied as a Matter of Law

The law of the case doctrine exists to "maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit."  18B Wright & Miller's Federal Practice & Procedure § 4478 (3d ed. April 2026 Update).  This doctrine is a discretionary principle employed by courts to "conserve judicial resources that would otherwise be consumed by relitigating issues that have already been decided." *Rodriguez v. City of Colton*, 631 F. App'x 474, 475 (9th Cir. 2016); *see also United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004) ("The doctrine is a judicial invention designed to aid in the efficient operation of court affairs and is founded upon the sound public policy that litigation must come to an end.").

PowerSchool has repeatedly raised the same rejected issues to the Court and, again rehashes the same arguments in its Motion.  PowerSchool moved to dismiss for failure to state a claim under Rule 12(b)(6) and specifically challenged the CMIA claims. ECF No. 285.  PowerSchool further submitted a detailed outline of its motion to dismiss arguments to the Court (ECF No. 360) and participated in a full day of oral

argument on the same issues. PowerSchool also had an opportunity to submit rebuttal briefing following the oral argument. ECF No. 419. PowerSchool then submitted a motion to reconsider the Court's order denying, in part, its motion to dismiss. ECF No. 465. At each stage, the Court has reached consistent decisions and rejected PowerSchool's arguments. PowerSchool answered the Complaint. ECF No. 501. The pleadings are now settled, and the parties are engaged in active discovery.

PowerSchool now seeks to present the same recycled arguments for a fourth time, but it requests a different result. This is the precise scenario that the law of the case doctrine is designed to avoid. The doctrine makes clear that "the same issue presented a second time in the same case in the same court should lead to the same result." *Howe v. City of Akron*, 801 F.3d 718, 740 (6th Cir. 2015); *see McKenzie v. BellSouth Telecomm. Inc.*, 219 F.3d 508, 512 n.3 (6th Cir. 2000) (similar). Thus, PowerSchool's request for a different result should be denied.

PowerSchool's improper request is made worse by the fact that it could have raised these arguments and this supposed "sea change" case nearly two months ago in connection with its motion for reconsideration. They did not. The present Motion is largely based on *Illuminate*, which was decided fifteen days before this Court reached a decision on reconsideration (*i.e.*, while PowerSchool's motion for reconsideration was pending). PowerSchool failed to inform the Court of this purported change in the law at that time. Instead, PowerSchool waited for over one month after the Court's decision to file the instant Motion. If *Illuminate* changed the law, as PowerSchool now incorrectly asserts (and it does not), the time to raise it was in connection with the prior motion for reconsideration. Its failure to do so has created unnecessary delay and expenditure of judicial and the parties' resources.

To be clear, *Illuminate* did not change the law, it merely applied existing law to the particular set of facts in that case. Likewise, PowerSchool does not identify any new evidence to justify overturning multiple prior decisions. This is not

PLAINTIFFS' OPPOSITION TO
POWERSCHOOL'S MOTION FOR
JUDGMENT ON THE PLEADINGS

surprising given that the facts supporting Plaintiffs' allegations have only gotten stronger in discovery.

Because PowerSchool requests that the same Court apply the same legal standard to the same arguments and reach a different conclusion, its Motion should be rejected as legally improper.

**B.     PowerSchool's Motion Should Be Denied as Procedurally Improper**

When a case is well beyond the pleading stage, as is the case here, courts routinely reject Rule 12(c) motions as untimely. *See, e.g.*, *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012) (denying Rule 12(c) motion because case had moved past the pleading stage); *Perez v. Oak Grove Cinemas, Inc.*, 2014 WL 1796674, at *3-4 (D. Or. May 5, 2014) (denying defendant's Rule 12(c) motion because there was already substantial discovery in the case); *Choi v. 8th Bridge Cap., Inc.*, 2019 WL 4956147, at *2 (C.D. Cal. Oct. 7, 2019) (same; discovery was "already well underway"); *Est. of Rodriguez v. City of Long Beach*, 2020 WL 292179, at *2-3 (C.D. Cal. Jan. 21, 2020) (denying Rule 12(c) because discovery was well underway); *cf. Uzoh v. Walmart Assocs., Inc.*, 2024 WL 4919642, at *2 (W.D. Tex. Oct. 21, 2024) ("Courts have cast doubt on the validity of Rule 12(c) motions filed after substantial or completed discovery."); *Brand Engagement Network, Inc., v. Brewer*, 2026 WL 1243448, at *2 (N.D. Tex. May 6, 2026) (commenting that "only once discovery was underway did [d]efendants elect to file their Rule 12(c) motion," and denying requested stay).

The Court may also refuse to consider improperly timed Rule 12(c) motions, as district courts have "inherent authority to manage their dockets . . . with a view toward the efficient and expedient resolution of cases." *See Dunsmore v. San Diego Cnty. Sheriff's Dep't*, 2023 WL 12128518, at *8 (S.D. Cal. Apr. 27, 2023). Courts are particularly cognizant of this practice where a case is in active discovery as a matter of jurisprudential concern, because "logic strongly suggests that it occur prior

- 5 -

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS

to discovery." *Grajales*, 682 F.3d at 46.  It "makes little sense" for the Court to rule on pleadings while "ignoring . . . facts developed during discovery." *Id.; see Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 (8th Cir. 2010) (recounting concern with deciding a Rule 12(c) motion after a record outside the pleadings developed); *Perez v. Oak Grove Cinemas, Inc.*, 2014 WL 1796674, at *3 (D. Or. May 5, 2014).

Like the cases cited here, this case is well beyond the pleading stage rendering PowerSchool's Motion untimely.  Since the Court's Order denying PowerSchool's Motion to Dismiss (ECF No. 436), the Parties have conferred numerous times to negotiate search terms, custodians, requests for production, interrogatories, deposition topics, and deposition protocols.  The Parties have already raised and resolved significant discovery disputes with Magistrate Judge Burns.  *See* ECF No. 514.  Both parties have issued and negotiated several third party subpoenas and, to date, Plaintiffs have received over 40,000 documents from PowerSchool and third parties.  Additionally, PowerSchool has already deposed multiple Plaintiffs and depositions of Plaintiffs are scheduled to continue over the next six weeks.

PowerSchool's Motion effectively seeks to retest the pleadings at a time when the evidence is developing and after the Court has repeatedly ruled on the sufficiency of the pleadings.  Federal Rule 12(d) codifies the line between testing pleadings and merits.  Any Rule 12 motion that implicates evidence must be converted into a summary judgment motion and parties must be provided an opportunity to present all pertinent evidence.  The right mechanism for PowerSchool to test the claims at this stage is a summary judgment motion after the close of discovery.  *See Choi,* 2019 WL 4956147, at *3 (the "matter is better decided on a motion for summary judgment"); *AM Gen. LLC v. Demmer Corp.*, 2013 WL 5348484, at *6 (N.D. Ind. Sep. 23, 2013) (summary judgment was more appropriate given that discovery has taken place).  PowerSchool should not be allowed to circumvent the rules against serial summary judgment motions by filing a premature dispositive motion.  *Edwards*

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, 2021 WL 4281336, at \*1 (N.D. Cal. Sep. 21, 2021) ("[S]uccessive motions for summary judgment are generally disfavored in federal court."); *Westridge Townhomes Owners Ass'n v. Great Am. Assurance Co.*, 2017 WL 6310494, at \*2 (W.D. Wash. Dec. 11, 2017) (prohibiting serial partial summary judgement motions to proceed before the close of discovery).

## III.    POWERSCHOOL'S MOTION DOES NOT COMPEL JUDGMENT ON THE PLEADINGS

Rule 12(c) motions are subject to the same standard as Rule 12(b)(6) motions. *See Riera v. Somatics, LLC*, 800 F. App'x 537, 538 (9th Cir. 2020). Thus, the Court must accept Plaintiffs' well-pled factual allegations as true, construe the Complaint in the light most favorable to Plaintiffs, and draw all reasonable inferences in their favor. *See Blain v. Liberty Mut. Fire Ins. Co.*, 2024 WL 948020, at \*1 (S.D. Cal. Feb. 12, 2024) (Battaglia, J.) (stating standard); *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994) (same).

By only posing one question, PowerSchool's Motion creates a strawman that does not exist in this case either legally or factually. PowerSchool seeks to resolve the question of whether the Complaint adequately alleged that PowerSchool is "a provider of healthcare." Motion at 8-18. Beyond the fact the Court has already answered that question here, the question is irrelevant as a matter of law because that is not what Plaintiffs have alleged. Plaintiffs allege that PowerSchool is "a business deemed to be a provider of health care, health care service plan, ***or contractor***" under the statute. Compl. ¶ 980. Plaintiffs further allege that "PowerSchool is a business that is organized ***as a support provider for educational entity clients*** and has among its primary purposes the maintenance of student medical records and protected health information on its software platforms and computer networks." *Id.* ¶ 981. Plaintiffs further allege that "***PowerSchool maintains such medical information to make it available to students, parents, guardians, teachers, educational staff, schools, and***

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS

*school district personnel, and/or providers of health care upon request*, and to allow such individuals and clinicians to manage the individual's information, ***and for diagnosis and treatment***." *Id.* Plaintiffs further allege that "PowerSchool is an education company, that is, ***a 'business' that is to provide support for schools, school districts and individuals (i.e., students, parents, guardians, and employees) by maintaining student medical records on its software platforms and computer networks***." *Id.* ¶ 982. Plaintiffs further allege that "***PowerSchool's organizational purpose was to help its educational entity clients and individuals maintain this medical information*** for the benefit of students, families, guardians, and employees, and to make the information available upon request ***for treatment or to manage health care and medical condition needs***." *Id.* ¶ 989.

In short, Plaintiffs repeatedly allege that PowerSchool functioned as a contractor in support of its school district clients for the purposes of the CMIA. As a result, PowerSchool's Motion and the question it seeks to answer are limited to "provider of health care," and fail for at least two reasons: 1) *Illuminate*, whose plaintiffs did not allege Illuminate was a contractor for the purposes of the CMIA, is distinguishable; and 2) the Complaint adequately alleged that PowerSchool falls within the CMIA's definition of a covered entity, including as a contractor.

***First***, the California Supreme Court case that PowerSchool relies on, *J.M. v. Illuminate Educ., Inc.*, is materially distinguishable from Plaintiffs' allegations in the Complaint. *Illuminate* did not resolve any relevant question in this case. As relevant to Plaintiffs' CMIA claim here, the *Illuminate* court stated, "we do not address whether Illuminate is a [c]ontractor." *J.M. v. Illuminate Educ., Inc.*, 19 Cal. 5th 705, 719 (Cal. 2026). Under the CMIA, a "contractor" "receives, maintains, or transmits medical information" (Cal. Civ. Code § 56.06(d)) on behalf of providers of health care—here, PowerSchool's school district customers. Complaint ¶¶980-81.

Plaintiffs clearly explain this in their Opposition to PowerSchool's Motion to Dismiss and the Court upheld this theory, as well.  ECF No. 320 at 42.

Further, PowerSchool overstates the holding in *Illuminate* in an attempt to convert the CMIA's fact-intensive inquiry into a bright-line rule that all educational technology companies are exempt from CMIA liability.  *Illuminate* did not establish such an exemption.  Instead, the court applied the CMIA's definition of "provider of healthcare" to the particular allegations made by those plaintiffs (which did not include allegations that Illuminate was a contractor) and concluded that those allegations failed to allege sufficient facts to hold that Illuminate was a "provider of healthcare" under the CMIA.  *Illuminate,* 19 Cal. 5th at 715; *see infra* §III(A).

***Second***, Plaintiffs' Complaint, taken as a whole (as set forth *supra*) and viewed in the light most favorable to Plaintiffs, adequately allege that PowerSchool falls within the CMIA's definition of a covered entity, including as a contractor in support of its school district clients with respect to the provision of medical services.  PowerSchool's Motion asks the Court to ignore entirely that Plaintiffs here adequately alleged PowerSchool is a "contractor" for the purposes of the CMIA, reconsider a question that has never been before the Court in light of that fact, and resolve fact-intensive questions regarding the purpose and functionality of PowerSchool's platform based on its own characterization of Plaintiffs' allegations and the narrow issue considered by the *Illuminate* court.  The Court should decline to do so.

### A.  *Illuminate* Does Not Compel Judgment on the Pleadings

PowerSchool's Motion is based entirely on constructing a legal and factual universe that does not exist in this case and was never before the Court in *Illuminate*.  In PowerSchool's invented factual and legal universe, PowerSchool's arguments are then premised on the flawed notion that *Illuminate* established a new, bright-line rule that educational technology companies cannot qualify as "providers of health care"

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS

under the CMIA.  Motion at 7-10.  *Illuminate* did not establish this rule, however, and even if *Illuminate* had established such a rule, that is not what Plaintiffs allege here. As a result, nothing about *Illuminate* warrants judgment on the pleadings here. Instead, *Illuminate* merely serves as an example of a court applying the CMIA's statutory definition limited solely to "provider of healthcare" to a given set of facts pled in that case.  And, importantly, those facts are distinguishable from the allegations and claims here, as set forth *supra*, and explicitly were not applied to the CMIA's definition of a "contractor."

*Illuminate* restated and considered the well-settled definition of provider of healthcare: "[a]ny business organized for the purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis and treatment of the individual." *Illuminate,* 19 Cal. 5th at 715; Cal. Civ. Code § 56.01(a).

The Court applied this definition to the *Illuminate* complaint, which did not contain allegations that Illuminate was a contractor for the purposes of the CMIA, and found that plaintiffs there did not allege that defendant Illuminate (i) made medical information available to health care providers or individuals for the purposes of diagnosis or treatment, or (ii) operated as a personal health records company.  This is not a new or novel application of the CMIA, nor is it what Plaintiffs alleged here, as set forth *supra*.

In contrast to Plaintiffs' allegations here, in *Illuminate*, plaintiffs failed to plausibly allege that Illuminate "serve[d] as a repository of students' personal health records . . . allow[ing] them to access and share those records as they please." *Illuminate*, 19 Cal. 5th at 718.  Instead, the *Illuminate* plaintiffs alleged solely that the platform **stored** medical information **to help educators tailor education plans**.

PLAINTIFFS' OPPOSITION TO
POWERSCHOOL'S MOTION FOR
JUDGMENT ON THE PLEADINGS

This is a far cry from what Plaintiffs allege here with respect to the use of the medical information stored in PowerSchool's SIS: (1) ***PowerSchool's organizational purpose was to help its educational entity clients and individuals maintain this medical information*** … and to make the information available upon request ***for treatment or to manage health care and medical condition needs***." *Id.* ¶ 989; and (2) "***PowerSchool maintains such medical information . . . for diagnosis and treatment***." *Id.* ¶ 981.   The *Illuminate* court found that storage for tailoring educational plans alone was not sufficient to bring Illuminate within the scope of the CMIA. *Illuminate,* 19 Cal. 5th at 717.

In its decision, the court explained that a covered entity under the CMIA did one of two things: first, a covered business is one that maintains medical information "in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care." *Illuminate*, 19 Cal. 5th at 715.   Second, a covered business is one that makes medical information available to an individual or a provider of health care upon request for one of two purposes: to "allow[] the individual to manage the individual's information, or for the diagnosis and treatment of the individual." *Id*. *Illuminate* plaintiffs' CMIA claim failed because they failed to allege any one of the following three things, each of which Plaintiffs here have sufficiently alleged: (i) PowerSchool's school district clients are providers of health care; (ii) PowerSchool makes medical information available to individuals, including its clients, students and parents, in order to allow them to manage their information; or (iii) that PowerSchool provides medical information to health care providers or individuals for diagnosis and treatment of an individual. *Id.* at 9.  Thus, the Complaint here is distinct, and for that reason alone, PowerSchool's Motion should be denied. *See infra* §III(A).

Moreover, contrary to PowerSchool's suggestion, the *Illuminate* court did not find that only the types of businesses discussed in the CMIA's legislative history may

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS

qualify as covered entities.  *See* Motion at 7.  Instead, the court explicitly held that it was "not suggest[ing] that an entity must be one described in the legislative history to be covered by the CMIA," recognizing instead that CMIA section 56.06 "was written broadly with the understanding that internet platforms are quickly evolving." *Illuminate*, 19 Cal. 5th at 718.

**B.    Plaintiffs Adequately Allege PowerSchool is an Entity Covered by the CMIA**

**1.    Factual Background Relevant to Plaintiffs' CMIA Claim**

PowerSchool designed the Student Information System ("SIS"), in part, for the purpose of maintaining medical information and making that information available to students, parents, and teachers.  ¶¶ 5 ("PowerSchool's business revolves around, and depends upon, receiving and maintaining sensitive PII from schoolchildren, their families, and schoolteachers"), 54-58, 973 ("PowerSchool software services are scalable to client preferences to cater to a multitude of school districts and school administration tasks, including . . . ***health management***."), 981 ("its primary purposes the maintenance of student medical records and protected health information on its software platforms and computer networks. . . . PowerSchool maintains such medical information to make it available to students, parents, guardians, teachers, educational staff, schools, and school district personnel, and/or providers of health care upon request, and to allow such individuals and clinicians to manage the individual's information, and for diagnosis and treatment.").  This SIS "start" or landing page demonstrates this purpose, listing "Health" as the third tab available to students, parents, and teachers. *See id.* at Fig. 1.  As part of its health management for schools, PowerSchool collects and manages medical information including allergy information, immunization records, and medical diagnoses that bear on learning disabilities or special education status. *See id.* PowerSchool's SIS collects and manages this information to "serve[] as a repository for the highly

- 12 -

sensitive data schools and school districts must collect about students and teachers . . . [including] health related information." ¶ 56.  Indeed, numerous Plaintiffs allege that they entered their or their children's medical information into the PowerSchool SIS.  For example, Plaintiff Zarate input medical and dental information, and Plaintiff Voltz input medical diagnoses. ¶¶ 390-395; 438-443.

PowerSchool has repeatedly confirmed that the SIS is designed to maintain student personal information, including medical information, both to make the information available to users or healthcare providers for medical information management or treatment.

On its website, PowerSchool defines the "Health Management" function as "a tool to assist your school district with capturing, managing, and reporting student health-related information, including immunizations, screenings, office visits, grade level entry certifications, health plans, and monitoring."[2] *See* ¶¶ 54-58. PowerSchool explains that "screenings" means "to record an unlimited number of [medical] examinations and provide access to historical screening information," and "office visits" means to "view and enter office visit information for a student" including the "provider type" or "person conducting the office visit, such as a School Nurse, Outside Doctor, or County Health Official."  *Id.*  Within the "office visit," tool provided by PowerSchool, a medical professional, such as a school nurse, can enter an "assessment" of "how the medical issue or injury is evaluated," including the "visit reason, assessment, visit outcome/action, procedure, and treatment."  *Id*. These are all quintessential diagnosis and treatment functions performed regularly by school district medical staff with the use of the medical information maintained in the SIS for this very purpose.  Similarly, PowerSchool's customer support page provides instructions for "working with student health profile information" and states: "[t]he

---

[2] *See Health Management,* PowerSchool SIS – Administrator*,* https://ps.powerschool-docs.com/pssis-admin/latest/health-management (last visited July 23, 2026).

- 13 -

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS

student's health profile is an overview of the student's health status.  The Health Profile page contains the student's health formation[sic] and enables you to add and edit information about the student's health providers, medical releases, immunization and examination status, and health insurance."

PowerSchool's own documents also confirm that PowerSchool was designed to manage medical information and facilitate treatment.  For example, a document titled "Unified Operations PowerSchool Student Information System" PowerSchool displays a column titled "Health" in the front and center of the document stating: "manage and track all your students' health requirements," followed by a list of health information including: diabetic monitoring, immunizations, medication tracking and inventory, *nurse daily logs, office visits*, physical fitness tests, physical tracking, *screenings, and student health plans*.  *See* Exhibit A to the Declaration of Carol C. Villegas ("Ex.").  Again, these are all quintessential diagnosis and treatment functions performed regularly by school district medical staff with the use of the medical information maintained in the SIS for this very purpose.  Likewise, PowerSchool's "Customer Education" document titled "PowerSchool SIS (Enhanced UI): Basics" states "[s]tudent records require tracking of immunizations, provided screenings, administration of medication, and more."  *See* Ex. B.  The document provides a list of health information that can be added to, edited, or tracked by healthcare providers (like school district nurses), parents, or students, including medications.  *See id*.

Additionally, PowerSchool confirmed that medical information was exfiltrated by cybercriminals as part of the December 2024 Data Breach in data breach notices that included "medical alert information" which the company describes as a field containing health information.[3]  Multiple affected school districts reported that the

---

[3] *Notice of Data Breach for Individuals in the United States*, PowerSchool, https://www.powerschool.com/security/sis-incident/notice-of-united-states-data-breach/ (last visited July 22, 2026).

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS

medical alert information or "other related information" involved in the breach included "medical diagnoses (including mental health information) and medical conditions," and "special education designations." For example, PowerSchool SIS customer Enterprise Elementary School instructs parents to complete a "Change of Health Form" through the PowerSchool portal "any time there is a change to the student's medical needs or insurance information."[4] District officials for the San Diego Unified School District confirmed that medical conditions were among the data stored in PowerSchool and potentially compromised in the breach, including allergy or asthma diagnoses.[5] The Menlo Park City School District stated "Health-related information was also accessed, including the name and phone number of the student's physician and medical alerts (*e.g.*, allergies, asthma, medications, or other disclosed health conditions that would help staff meet the medical needs of students)."[6] The Arlington Public Schools' PowerSchool Breach FAQ stated: "some medical alerts and physician details related to students were included [in the breach]," indicating "if the student has any medical alerts school staff should be aware of (entered by nursing team)."[7]

Other school districts have confirmed that they use the PowerSchool SIS to manage student medical information and treat and diagnose attending students. For example, the Troy School District explicitly identified "emergency/medical and

[4] *See PowerSchool Parent Portal Help*, Enterprise Elementary School District, https://www.eesd.net/resources/parent-help (last visited July 22, 2026).

[5] *See* City News Service, *SD Unified Probes PowerSchool Data Breach Involving Student Personal Information*, TIMES of San Diego (Jan. 13, 2025, 9:45 p.m.), https://timesofsandiego.com/education/2025/01/13/sd-unified-probes-powerschool-data-breach-involving-student-personal-information/.

[6] *PowerSchool Data Breach Resources*, Menlo Park City School District, https://district.mpcsd.org/departments/technology-home/powerschool-data-breach-faq (last visited July 23, 2026).

[7] *PowerSchool Breach FAQ*, Arlington Public Schools, https://www.arlington.k12.ma.us/apps/pages/index.jsp?uREC_ID=2858212&type=d&pREC_ID=2646891 (last visited July 23, 2026).

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS

health management" as a function of its PowerSchool deployment.[8]  Stoneham Public Schools explained PowerSchool's Medical Alert field directs users to the school nurse saying "see nurse" for specific medical information, such as a life-threatening food allergy.[9]

As set forth *supra*, the Complaint contains numerous, explicit allegations demonstrating that PowerSchool is a covered entity under the CMIA.  These plausible allegations are corroborated by PowerSchool's own documents and public representations.  This Court already credited the Complaint's well-pled allegations. PowerSchool does not identify any reason to abandon the Court's prior findings in favor of PowerSchool's own, self-serving characterization of the allegations.

### 2. Plaintiffs Adequately Allege PowerSchool is a Provider of HealthCare

As explained *supra*, Plaintiffs need not demonstrate that PowerSchool is a "provider of healthcare" because Plaintiffs' allegations instead demonstrate that PowerSchool is a "contractor" as defined by the CMIA.  Even if such a showing were required (and it is not), Plaintiffs' Complaint also demonstrates that PowerSchool meets the CMIA's "provider of healthcare" standard.

The CMIA defines a "provider of health care" through a series of sequential requirements. First, the entity must be "organized for the purpose of maintaining medical information."  It must then maintain that information so that it can be made available, upon request, to an individual or a provider of health care. The statute further requires that the information be made available for one of two specified

---

[8] *PowerSchool FAQ's & Resources*, Troy School District, https://www.troy.k12.mi.us/resources/powerschool-information (last visited July 23, 2026). *PowerSchool FA's & Resources*, Troy School District, https://www.troy.k12.mi.us/resources/powerschool-information (last visited July 23, 2026).

[9] *Information Technology*, Stoneham Public Schools, https://www.stonehamschools.org/info-tech/powerschool-data-breach-information (last visited July 23, 2026).

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS

purposes: enabling the individual to manage that individual's medical information or facilitating the individual's diagnosis or treatment.  *See* CMIA § 56.06(a)-(b)

As explained above, while *Illuminate* did provide guidance on how to apply these definitional requirements to a given set of facts, *Illuminate*'s application to the facts at issue here does not provide any basis for overturning this Court's prior rulings.  Plaintiffs' Complaint demonstrates each of the CMIA's requirements for showing that PowerSchool is a provider of healthcare.  The elements are as follows:

**PowerSchool is an entity "organized for the purpose of maintaining medical information."**  *Illuminate* did not directly engage with this requirement.  *See Illuminate*, 19 Cal. 5th at *715 ("setting aside whether Illuminate is a business organized for the purpose of maintaining medical information").   In any event, the Complaint's allegations demonstrate that PowerSchool's maintenance of medical information was "integral" to its central business activity. ¶ 56 ("PowerSchool's SIS product also serves as a repository for the highly sensitive data schools and school districts must collect about students and teachers . . . [including] health related information").  PowerSchool's "Health" function is prominently displayed as the third tab accessible to students, parents, and teachers on the "start" or landing page of their PowerSchool SIS profiles.  *See id*. at Fig. 1.  As explained above, PowerSchool has explained that its "Health" function is designed to "assist" its customers "with capturing, managing, and reporting student health-related information, including immunizations, screenings, office visits, grade level entry certifications, health plans, and monitoring."  The Complaint further alleges that, as part of its integrated "Health" feature, PowerSchool requires users to *enter* medical information such as allergy information, immunization records, learning disabilities or special education status, and other medical-related information.  ¶ 57.

Even if only referring to PowerSchool's SIS, PowerSchool's own documents corroborate these well-pled allegations.  In documents explaining how customers

PLAINTIFFS' OPPOSITION TO
POWERSCHOOL'S MOTION FOR
JUDGMENT ON THE PLEADINGS

may use PowerSchool's SIS, "Health" is displayed front and center. *See* Ex. A. In other documents, PowerSchool states that maintenance of "[s]tudent records *require* tracking of immunizations, provided screenings, administration of medication," *i.e.*, medical information. *See* Ex. B.

Like the majority opinion in *Illuminate*, PowerSchool does not raise—and therefore waives—arguments concerning this threshold requirement. Even if PowerSchool had raised such arguments, they would fail because, at this stage, fact disputes must be resolved in Plaintiffs' favor. *See Frasco v. Flo Health, Inc.* 2025 WL 1476905, at *2 (N.D. Cal. May 22, 2025) (finding arguments regarding whether an app provided medical services within the scope of the CMIA presented "fact disputes" that could not be resolved by the court).

**PowerSchool maintains that information so that it can be made available, upon request, to an individual or a provider of health care.** In *Illuminate*, the Court found that plaintiffs' allegations regarding the storage of medical information, alone, were insufficient and that the complaint lacked allegations that Illuminate's "services allow individuals to build their own medical records, or that its internet platforms serve as a repository of students' personal health records and allow them to access and share those records as they please." *Illuminate*, 19 Cal. 5th at 718.

Here, the Complaint contains numerous allegations that students, parents, and teachers *entered* medical information into PowerSchool's SIS to build student records that could be maintained, accessed, or managed by the students and parents. ¶¶ 390-395; 438-443. Indeed, the Complaint explicitly states that "PowerSchool's SIS product also serves as a *repository* for the highly sensitive data schools and school districts must collect about students and teachers," including "health related information, such as IEPs." ¶ 56. Additionally, the Complaint details the specific categories of medical information that PowerSchool enabled the SIS to collect as part of the student profiles or "repository"—namely, immunization records, IEPs,

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS

medical diagnoses (including mental health information) and medical conditions.  ¶¶ 57, 144.  PowerSchool itself describes its "Health" feature of the SIS as a tool to "manage and track all your students' health requirements," corroborating the allegations in Plaintiffs' Complaint.  *See* Ex. A.

PowerSchool's Motion raises two challenges concerning this element of the CMIA.  Both fail.

*First*, PowerSchool contends that *Illuminate* exempts educational technology companies from the CMIA "even if [they] collect[] medical information."  Motion at 8.  As discussed above, this argument fails because *Illuminate* does not create a rule that educational technology companies are carved out of the CMIA.  To the contrary, the Court made clear that it was ***not*** drawing lines based on business types, stating:

> We do not suggest that an entity must be one described in the legislative history to be covered by the CMIA. Section 56.06 was written broadly with the understanding that internet platforms are quickly evolving and that platforms other than the examples cited may align with the purpose requirements in the statute.

*Illuminate*, 19 Cal. 5th at 718.  Instead, the court reiterated the CMIA's baseline requirements for satisfying Section 56.06(a) (*i.e.*, "that [the provider's] services allow individuals to build their own medical records, or that its internet platforms serve as a repository of students' personal health records and allow them to access and share those records as they please.").  *Id*.  Plaintiffs' Complaint makes this showing.  *See* ¶¶ 56, 57, 144.

*Second*, PowerSchool challenges Plaintiffs' allegations based on its own interpretation of the Complaint.  Specifically, PowerSchool claims the Complaint only contains allegations regarding the storage of medical information for "exclusively educational" purposes. Motion at 8.  This is not true.  Plaintiffs allege that PowerSchool's SIS was a repository for sensitive information, including medical information, in which Plaintiffs ***entered*** medical information to build their profiles.  ¶¶ 390-395; 438-443.  Given these competing allegations, PowerSchool's argument

- 19 -

must fail because it calls for the resolution of disputed facts in ***Defendant's*** favor in contravention of the governing standard.

**PowerSchool makes medical information available to enable the individual to manage its medical information *or* to facilitate the individual's diagnosis or treatment.** *Illuminate* holds that allegations regarding the storage of medical information alone do not meet the CMIA's threshold on their own. Relying on the legislative history, the court referred to examples of "vendor[s] of personal health information" that offer services to track health records over time and found that the complaint lacked such allegations.

Here, the Complaint does not merely allege that the PowerSchool SIS stored medical information. Instead, the Complaint demonstrates that the PowerSchool SIS operated, in part, as a health tracking tool, compiling medical information about students that could be edited, tracked, and accessed by students, teachers, educators, and physicians. This is the precise function of the "Health" tab in PowerSchool's SIS which was specifically designed to track health screenings and physician visits for medical monitoring. It also allowed schools to track vaccination statuses over time. The Complaint also demonstrates that PowerSchool's SIS manages information for medical treatment. Specifically, the medical alert function enables schools, parents, and students to track life threatening conditions like seizure disorders or severe allergies with immediate instructions to be tracked and followed (*e.g.*, "see nurse").

Despite the Complaint's well-pled allegations, PowerSchool argues that Plaintiffs fail to allege that PowerSchool's SIS manages medical information for diagnosis or treatment. This argument must fail.

As a threshold matter, PowerSchool's argument is fatally flawed because it ignores the fact that Section 56.06(b) of the CMIA recognizes two purposes, making medical information available for ***(i) an individual's management of its medical***

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS

*information, or* (ii) medical diagnosis or treatment.  As explained above, the Complaint clearly alleges that PowerSchool's SIS makes medical information available to its users to manage their or their students' medical information.  *See supra* §III(B)(1).  PowerSchool does not challenge (and therefore concedes) this point.  Because this subsection of the CMIA is written in the disjunctive, and Plaintiffs make this showing, the inquiry stops here.

In any event, contrary to PowerSchool's arguments, the Complaint sufficiently demonstrates that PowerSchool's SIS manages medical information for purposes of diagnosis or treatment.  The Complaint directly cites PowerSchool's "Health" tab and lists its contents which are corroborated by PowerSchool's own documents.  As the Complaint and these documents make clear, PowerSchool enables students, parents, teachers, and health professionals to log health screenings, office visits, medication intake, accidents, and treatments.  PowerSchool even provides school nurses and health professionals with specific instructions on how to log medical treatment information.  Additionally, PowerSchool's medical alert field enables schools to input specific medical instructions including "see nurse" in connection with medical conditions like severe allergies.  Contrary to PowerSchool's assertions, these are not events logged for purposes of "facilitating educational goals."

PowerSchool's responsive characterization of the allegations in the Complaint along with its self-serving selection of complaint allegations regarding "educational functions" does not call for a different conclusion.  *See* Motion at 11-12.  At best, PowerSchool identifies fact disputes that cannot properly be resolved at this stage.

## IV.    CONCLUSION

For the reasons set forth herein, PowerSchool's Motion should be denied.

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS

Dated:    July 24, 2026

/s/ *Carol C. Villegas*
Carol C. Villegas,
N.Y. State Bar No. 4154324*
cvillegas@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700

*Co-Lead Counsel for Teachers Unions Plaintiffs (Track One)*

/s/ *James J. Pizzirusso*
James J. Pizzirusso, D.C. State Bar No. 477604*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200

*Co-Lead Counsel for Individual Action Plaintiffs (Track One)*

/s/ *David S. Casey, Jr.*
David S. Casey, Jr., Cal. State Bar No. 60768
dcasey@cglaw.com
**CASEY GERRY FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel.: (619) 238-1811

*Co-Lead Counsel for Class Action Plaintiffs (Track One)*

PLAINTIFFS' OPPOSITION TO POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS