UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br>Track One | Case No.: 25-md-03149-AJB-MSB<br>MDL No. 3149<br><br>**ORDER DENYING DEFENDANT BAIN CAPITAL, L.P.'S MOTION FOR RECONSIDERATION AND FOR CERTIFICATION OF INTERLOCUTORY APPEAL**<br><br>**(Doc. No. 466)** |

Before the Court is Defendant Bain Capital, L.P.'s ("Bain") motion for reconsideration under Rules 54 and 59 of the Federal Rules of Civil Procedure[1] or, in the alternative, for certification of an interlocutory appeal under 28 U.S.C. § 1292(b). (Doc. No. 466.) For the reasons set forth below, the Court **DENIES** the motion in its entirety.

## I.      INTRODUCTION

On March 18, 2026, the Court issued an order granting in part and denying in part Bain's motion to dismiss the claims brought against Bain by the Track 1 Consolidated

---

[1]      Unless otherwise stated, references to a "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

Individual Users Putative Class Action Plaintiffs ("Plaintiffs"). (Doc. No. 434.) Relevant here, first, the Court denied Bain's motion to dismiss the three theories of liability—agency, direct, and aiding and abetting—because Plaintiffs sufficiently alleged Bain's control and direction of PowerSchool's day-today activities, which went beyond general supervision. (*Id.* at 11–15.) Second, the Court denied Bain's motion to dismiss the negligence claims, finding that Bain owed a duty to Plaintiffs "arising from Defendants' own actions and failures in handling data entrusted to them" and such risk of harm was foreseeable. (*Id.* at 15–19.)

Bain now moves for reconsideration, arguing the Court committed clear error in concluding that Plaintiffs adequately alleged an agency relationship and that Bain owed Plaintiffs a duty of care. (Doc. No. 466-1 at 8–13.) In the alternative, Bain seeks certification of an interlocutory appeal and a stay of further Track One proceedings pending appellate review. (*Id.* at 14–17.)

Plaintiffs oppose the motion, asserting that Bain seeks to relitigate issues the Court has already decided, identifies no newly discovered evidence, intervening change in law, or clear error, and merely disagrees with the Court's application of facts to settled legal standards rather than with the standards themselves. (*See generally* Doc. No. 490.) Plaintiffs also oppose certification of an interlocutory appeal and a stay of discovery. (*Id.* at 24–25.)

## II.    MOTION FOR RECONSIDERATION

Bain asserts reconsideration is proper because the Court committed clear error. (Doc. No. 466-1 at 8–14.) Plaintiffs argue Bain has not satisfied the demanding standard for reconsideration because it rehashes arguments the Court expressly considered and correctly rejected. (Doc. No. 490 at 8–20.)

### A.    Legal Standard

A district court has inherent jurisdiction to modify, alter, or revoke a prior order. *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000). "Reconsideration [of a prior order] is appropriate if the district court (1) is presented with newly discovered evidence,

25-md-03149-AJB-MSB

(2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see* CivLR 7.1.i. A motion for reconsideration "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised" upon the initial motion. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008); *see also Williams v. Cnty. of San Diego*, 542 F. Supp. 3d 1070, 1072 (S.D. Cal. 2021) ("A motion for reconsideration is not a vehicle for taking a 'second bite at the apple.'" (quoting *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001))); *Garcia v. Biter*, 195 F. Supp. 3d 1131, 1133 (E.D. Cal. 2016) ("The purpose of Rule 59(e) is *not* to give an unhappy litigant one additional chance to sway the judge. Arguments and evidence that were previously carefully considered by the Court do not provide a basis for amending the judgment." (cleaned up)). Reconsideration "offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). "For a decision to be considered 'clearly erroneous' it must be more than just maybe or probably wrong; it must be dead wrong. A movant must demonstrate a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Garcia*, 195 F. Supp. 3d at 1133 (cleaned up).

### B.    Clear Error

Bain argues the Court committed clear error in concluding that Plaintiffs adequately alleged an agency relationship and that Bain owed Plaintiffs a duty of care. (Doc. No. 466-1 at 8–13.) Specifically, Bain contends that the Court misapplies governing law and misconstrues the complaint's allegations on three grounds: (1) the plain language of the Merger Agreement forecloses any agency relationship between Bain and PowerSchool Defendants; (2) Bain owed no duty to Plaintiffs because it neither collected nor controlled their data; and (3) foreseeability of harm alone cannot supply a duty of care. (*Id.* at 6–7.)

#### 1.    Agency Relationship

First, Bain contends that the Court committed clear error in concluding that Plaintiffs adequately alleged an agency relationship. (*Id.* at 8–10; Doc. No. 495 at 3–7.) In Bain's

25-md-03149-AJB-MSB

view, agency requires a manifestation of assent that affects legal relationships, and neither arm's-length pre-closing negotiations nor reliance on PowerSchool's projections establishes the pervasive operational control that agency law demands. (Doc. Nos. 466-1 at 9–10; 495 at 2–3.) Bain further argues that, because the agency elements must exist simultaneously, the Merger Agreement executed months after the alleged March 2024 conditioning cannot retroactively supply the control element. (Doc. Nos. 466-1 at 10 (citing *Conn. Gen. Life Ins. Co. v. Earl Scheib, Inc.*, No. 11-788-AJB-WVG, 2012 WL 12868358, at *4 (S.D. Cal. May 22, 2012)); 495 at 6 (same).) Bain maintains that Plaintiffs do not respond to this point and have waived any contrary argument. (Doc. No. 495 at 6.) Bain also contends that the Court's agency holding cannot be reconciled with the Court's order dismissing Track Two Plaintiffs' alter ego claims, which characterized the pre-acquisition control allegations as implausible in view of the Merger Agreement. (Doc. Nos. 466-1 at 10 (citing Doc. No. 435 at 11); 495 at 6 (same).)

Plaintiffs respond that the Court applied the correct legal standard and conducted the required fact-intensive inquiry, crediting allegations that Bain exercised control over key PowerSchool operations—including its board, hiring and firing, expenditures, and cybersecurity and financial decisions—that distinguish the authorities Bain cites. (Doc. No. 490 at 7–8, 13.) Plaintiffs further argue that the Court properly distinguished agency from alter ego liability by applying the correct, less stringent standard for agency. (Doc. No. 490 at 14 (relying on *Agricola Baja Best, S. de R.L. de C.V. v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 982 (S.D. Cal. 2014)).) Bain counters that the agency inquiry is identical to the alter ego inquiry and that *Agricola Baja Best* distinguishes the purpose of the two tests not the level of stringency. (Doc. No. 495 at 6–7 (relying on *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 56 (N.D. Cal. 2020)).)

The parties also dispute the import of the Merger Agreement. Bain argues that the Court erred by crediting Plaintiffs' interpretation over the plain language of the agreement's express "No Control" provision, which prohibits either party from controlling the other's business before closing. (Doc. No. 466-1 at 10–11.) Bain further argues that the

25-md-03149-AJB-MSB

Complaint alleges no post-investment conduct to support an agency finding because all challenged operational decisions occurred before closing. (*Id.* at 10 n.5.)

Plaintiffs respond that the Court properly read the agreement as a whole, declined to give dispositive weight to one provision, and credited allegations that the agreement required PowerSchool to obtain Bain's approval for material actions, including layoffs and material vendor contracts. (Doc. No. 490 at 14.) In Plaintiffs' view, Bain's interpretation disregards the principle that contracts must be construed as a whole—both boilerplate and bespoke merger provisions interpreted together—and that contractual ambiguity defeats dismissal. (Doc. No. 490 at 14–16 (relying on *Dolan v. Altice USA, Inc.*, No. 2018-0651, Mem. Op. (Del. Ch. June 27, 2019)).)

The Court finds no clear error in its determination that Plaintiffs adequately alleged an agency relationship. The Court did not treat the Merger Agreement as a retroactive source of control over the alleged March 2024 conditioning. Moreover, contrary to Bain's simultaneity argument, the Court considered the agreement as one component of a broader set of allegations describing Bain's control during the relevant period, including the alleged requirement that PowerSchool obtain Bain's approval for material actions such as layoffs and material vendor contracts. In whole, the Court applied the governing standard and conducted the fact-intensive agency inquiry, acknowledging allegations that Bain exercised control over key PowerSchool operations, including its board, hiring and firing, expenditures, and cybersecurity and financial decisions, which went beyond arm's-length pre-closing negotiations or reliance on PowerSchool's projection. (*See* Doc. No. 434 at 11–12.) Those allegations are sufficient at this stage to contemplate an agency relationship. (*See, e.g.*, Doc. No. 259, Consol. Individual Users Class Action Compl. ("MC"), ¶¶ 14–19, 37–41, 73–74, 81–86, 99–100, 103–08, 116–20.) Bain's argument that these allegations "cannot plausibly support agency or negligence as to Bain because they predate Bain's investment and any conceivable agency relationship" (*see* Doc. No. 466-1 at 10 n.5) requires the Court to credit Bain's interpretation over that of Plaintiffs, which at this stage of the proceedings is inappropriate. Essentially, Bain's disagreement with the credit the

25-md-03149-AJB-MSB

Court assigned to those allegations—which at the motion to dismiss stage must be presumed true—does not establish clear error.

Nor is the Court's agency holding irreconcilable with its dismissal of the Track Two Plaintiffs' alter ego claims. (Doc. No. 435 at 11.) The two doctrines impose different burdens, and the Court adheres to its conclusion that the showing required to plead agency is less stringent than the showing alter ego demands. *See Agricola Baja Best*, 44 F. Supp. 3d at 982. Bain's reliance on *Apple, Inc.* for the proposition that the agency and alter ego inquiries are "identical" is unavailing when considered in the proper context. In *Apple Inc.* the court was resolving a motion to dismiss pursuant to Rule 12(b)(2), *not* Rule 12(b)(6). *Apple Inc.*, 445 F. Supp. 3d at 54 ("This Court, however, is analyzing Defendants' Rule 12(b)(2) motion to dismiss. The Court is *not* analyzing a Rule 12(b)(6) motion to dismiss. Indeed, in contrast to *Monaco*, the Court is determining, pursuant to Rule 12(b)(2), whether it must dismiss Defendants A2 and Allan for lack of personal jurisdiction. Rule 12(b)(6) and Rule 12(b)(2) are different inquiries."). It was exclusively within the context of analyzing whether agency allegations as a basis of personal jurisdiction survived *Daimler AG v. Bauman*, 571 U.S. 117 (2014), that the *Apple Inc.* court was comparing agency to alter ego. *Apple Inc.*, 445 F. Supp. 3d at 56 ("One court in this District held that to the extent the agency theory remains viable in the specific personal jurisdiction context, it operates like the alter ego test.").

The Court likewise finds no clear error in its construction of the Merger Agreement. The Court read the agreement as a whole and declined to give the "No Control" provision dispositive weight at the pleading stage, where Plaintiffs allege that other provisions required PowerSchool to obtain Bain's approval for material actions. Construed together, the provisions do not unambiguously foreclose Plaintiffs' control allegations, and that ambiguity cannot be resolved against Plaintiffs on a motion to dismiss.

Finally, the Court acknowledges Bain's concern that holding an investment firm liable for investing in a company that is later sued would be "unprecedented." At this stage, however, Bain has not been found liable for anything. Plaintiffs need only meet their

25-md-03149-AJB-MSB

pleading burden by plausibly alleging that Bain exercised sufficient control over PowerSchool, and the Court concluded that they have done so. Bain's arguments may carry greater weight as this litigation progresses and Plaintiffs' burden increases, but they do not demonstrate clear error in the Court's prior order. Accordingly, Bain fails to meet its burden in demonstrating the Court clearly erred in determining that Plaintiffs has sufficiently alleged an agency relationship to survive a motion to dismiss.

### 2.     Duty of Care

Second, Bain argues that the Court erred in concluding that Bain owed Plaintiffs a duty of care. (Doc. Nos. 466-1 at 13–14; 495 at 7–9.)

"A plaintiff in any negligence suit must demonstrate a legal duty to use due care, a breach of such legal duty, and that the breach is the proximate or legal cause of the resulting injury." *Kesner v. Superior Ct.*, 1 Cal. 5th 1132, 1142 (2016) (cleaned up).[2] The existence of a duty is a question of law for the court. *See Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 770 (2011).[3] Foreseeability "alone does not establish the existence of a duty." *Tucker v. CBS Radio Stations, Inc.*, 194 Cal. App. 4th 1246, 1253 (2011).[4]

---

[2]     *See also Jupin v. Kask*, 447 Mass. 141, 146 (2006) ("To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage."); *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (2016) ("In order to prevail on a negligence claim, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom[.]"); *Schultz v. Consumers Power Co.*, 443 Mich. 445, 449 (1993) ("The requisite elements of a negligence cause of action are that the defendant owed a legal duty to the plaintiff, that the defendant breached or violated the legal duty, that the plaintiff suffered damages, and that the breach was a proximate cause of the damages suffered.").

[3]     *See also Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 138 (2002) ("[T]he existence and scope of a duty is a question of law requiring courts to balance sometimes competing public policy considerations[.]"); *Lev v. Beverly Enters.-Massachusetts, Inc.*, 457 Mass. 234, 240 (2010) ("The existence of a duty of care is a question of law[.]"); *Simko v. Blake*, 448 Mich. 648, 655 (1995) ("In negligence actions, the existence of duty is a question of law for the court.").

[4]     *See also In re New York City Asbestos Litig.*, 5 N.Y.3d 486, 493 (2005) ("[F]oreseeability, alone, does not define duty—it merely determines the scope of the duty once it is determined to exist."); *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 235, *opinion after certified question answered,* 264 F.3d 21 (2d Cir. 2001) ("[A] duty and the corresponding liability it imposes do *not* rise from mere foreseeability of the harm[.]"); *Jupin*, 447 Mass. at 150 ("That the harm in this case was reasonably foreseeable or even actually foreseen is persuasive, but not conclusive, of the existence of a duty of care."); *Schultz*, 443 Mich.

To start, Bain argues that, because it did not collect, process, control, or store Plaintiffs' data, the negligence holding cannot be reconciled with the Court's dismissal of the CCPA claim, which rested on the absence of any such role. (Doc. No. 466-1 at 13.) In response, Plaintiffs argue that there is no internal inconsistency because the CCPA's statutory definition of "business" does not control the common-law duty analysis. (Doc. No. 490 at 18 (relying on *Baton v. Ledger SAS*, 740 F. Supp. 3d 847 (N.D. Cal. 2024)).) The Court agrees with Plaintiffs that because the determinations regarding CCPA and the determinations regarding negligence resolve different questions, the Court's recognition of a common-law duty does not conflict with its dismissal of the statutory claim. Thus, there is no inconsistency to support reconsideration.

Next, Bain argues that foreseeability of harm cannot supply a duty in the absence of a relationship to, or control over, the data at issue. (Doc. Nos. 466-1 at 14 (citing *In re U.S. Vision Data Breach Litig.*, No. 22-CV-06558, 2025 WL 615366 (D.N.J. Feb. 26, 2025); *Navarro v. Ski Data*, No. 20-CV-07370-SVW-SK, 2022 WL 18280359 (C.D. Cal. Dec. 7, 2022); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020)); 495 at 6–7 (citing same).) Plaintiffs argue that the Court based Bain's duty on its affirmative conduct, not on inaction or foreseeability alone. (Doc. No. 490 at 12–13 (citing *Doe v. Uber Techs., Inc.*, No. 22-16562, 2025 WL 80365 (9th Cir. Jan. 13, 2025) for the proposition that a defendant's affirmative operational conduct can give rise to a duty without a data-handling relationship).) Specifically, Plaintiffs assert that the Court credited allegations that Bain directed mass layoffs of PowerSchool cybersecurity personnel, offshored cybersecurity functions, and otherwise increased the risk of a breach—conduct distinct from a failure to act and unrelated to any "special relationship" requirement. (*Id.* at 17–18.)

///

at 452 ("[T]he mere fact that an event may be foreseeable does not impose a duty upon the defendant to take some kind of action accordingly.").

25-md-03149-AJB-MSB

The Court finds no clear error in its conclusion that Bain owed Plaintiffs a duty of care. The Court grounded the duty in both the foreseeability of harm *and* Bain's own affirmative conduct in creating that risk, not in foreseeability alone. (*See* Doc. No. 434 at 16–17.) Specifically, with regard to Bain's conduct, the Court found a duty arose from Bain's alleged direction of mass layoffs of PowerSchool's cybersecurity personnel and the offshoring of cybersecurity functions as creating and increasing a foreseeable risk of the breach. (*See id.*) That conduct, not Bain's status as an investor or any failure to act, supplied the basis for the duty. (*See id.*) Bain's authorities do not establish otherwise. *In re U.S. Vision, Navarro*, and *Smahaj* address whether a duty attaches to a defendant by virtue of its role in collecting, possessing, or maintaining the plaintiffs' data; they do not address a duty premised on a defendant's affirmative conduct that increased the risk of a breach. Bain's effort to distinguish *Uber* on the ground that the defendant there designed and operated the platform at issue bears on the weight and factual fit of that authority, not on any misapplication or disregard of controlling law.

Finally, Bain raises a policy concern that the Court's reasoning could expose investment firms to liability whenever a portfolio company suffers a data breach and invokes the *Rowland* factors to argue that the consequences to the community weigh against recognizing a novel duty that would extend negligence liability to investment firms based on alleged influence over cost or structure. (Doc. Nos. 466-1 at 14; 495 at 9 n.5 (citing *Kuciemba v. Victory Woodworks, Inc.*, 14 Cal. 5th 993, 1027 (2023)).) Bain's invocation of the *Rowland* factors and its concern that recognizing a duty here would expose investment firms to liability for portfolio-company breaches (*see Kuciemba*, 14 Cal. 5th at 1027) raises a question about the wisdom of extending liability rather than about whether the Court disregarded or misapplied controlling precedent. Policy disagreement of that kind does not establish clear error, particularly at the pleading stage. Moreover, Bain's argument in reply that the Court "erred by effectively creating a novel duty that would extend negligence liability to investment firms based solely on allegations of influence over cost or structure" (Doc. No. 495 at 9 n.5) attempts to redefine the duty identified by the

25-md-03149-AJB-MSB

Court on too granular a level, as to reiterate the Court identified a duty arising from Bain's affirmative conduct.

Accordingly, Bain failed to meet its burden to demonstrate the Court clearly erred in determining that Plaintiffs have sufficiently alleged Bain owed a duty based on its affirmative actions such that Plaintiffs state a claim for negligence to survive a Rule 12(b)(6) motion.

### C. Conclusion

Bain has not demonstrated a clear error in either the Court's agency determination or its duty determination and it does not seek reconsideration on the basis of newly discovered evidence or an intervening change in controlling law. Accordingly, the instant motion for reconsideration is **DENIED** on both grounds.

## III. MOTION TO CERTIFY INTERLOCUTORY APPEAL

Bain requests, in the alternative, that the Court certify two questions for interlocutory appeal and stay this action pending the Ninth Circuit's resolution: (1) whether arm's-length negotiations between an investment firm and a target company can give rise to an agency relationship absent any contractual right to control the target's business; and (2) whether a defendant that did not collect, store, possess, or control Plaintiffs' data owes a duty of care based on foreseeability of harm. (Doc. No. 466-1 at 14.) Plaintiffs oppose certification, arguing that Bain fails to satisfy the statutory criteria of 28 U.S.C. § 1292(b). (Doc. No. 490 at 20–24.)

Under 28 U.S.C. § 1292(b), certification is appropriate only if the order (1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *Brecher v. Citigroup Glob. Mkts., Inc.*, No. 09-CV-1344-AJB(MDD), 2012 WL 12953433, at *2 (S.D. Cal. Mar. 6, 2012). Even when the criteria are met, certification remains discretionary and is reserved for "exceptional cases." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1981).

///

25-md-03149-AJB-MSB

### A.    Controlling Question of Law

First, Bain argues that both questions are controlling and purely legal because they were resolved at the pleading stage, assume Plaintiffs' allegations as true, and ask whether those allegations satisfy the governing legal standards. (Doc. Nos. 466-1 at 15; 495 at 8–9.) In Bain's view, reversal of either would eliminate the legal bases for its continued participation in the litigation. (Doc. No. 495 at 9–10.) Plaintiffs counter that Bain's proposed questions are factual rather than purely legal and therefore unsuitable for interlocutory review. (Doc. No. 490 at 21–22.) Specifically, Plaintiffs contend that the agency issue depends on whether Plaintiffs sufficiently alleged contractual control rights, while the duty issue hinges on whether Plaintiffs sufficiently alleged that Bain's actions increased the risk of harm, both of which are fact-based questions reframed as legal issues. (*Id.*) Bain responds that § 1292(b) does not require abstract legal questions divorced from context, and that courts routinely certify questions that assume pleaded facts and ask whether those facts satisfy a legal standard. (Doc. No. 495 at 10.)

Bain's proposed questions are not controlling questions of law within the meaning of § 1292(b). Although § 1292(b) does not demand questions wholly divorced from context, the inquiry remains whether the issue presented is one of law rather than the application of law to a particular pleading. *See Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 676–77 (7th Cir. 2000) ("[Drafters of § 1292(b)] used 'question of law' in much the same way a lay person might, as referring to a 'pure' question of law rather than merely to an issue that might be free from a factual contest. The idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case."). The Court's agency finding rested on a fact-intensive assessment of specific allegations—namely, that Bain conditioned the merger on cost-reduction measures, that PowerSchool implemented those measures, and that the Merger Agreement gave Bain strategic control over PowerSchool's key decisions. (Doc. No. 434 at 11–12.) The Court's finding of a duty likewise rested on allegations that Bain's

11

own conduct created a foreseeable risk of harm to Plaintiffs' data. (*Id*. at 16–17.) Although Bain is correct that determination of the existence of a duty is a question of law, *see supra* § II.B.2, the analysis required to make such a determination would still require a detailed inquiry into the record.

Instead of isolating a discrete legal issue whose resolution would govern the case as a whole, independent of the pleadings, Bain's questions ask whether particular allegations in the complaint suffice. Resolving these questions require applying the law to the facts— a mixed question of law and fact not appropriate for certification." *See, e.g.*, *Belin v. Starz Ent., LLC*, No. 2:21-CV-09586-FWS-PLA, 2024 WL 5185313, at *4 (C.D. Cal. Oct. 25, 2024) (collecting cases); *People of the State of California v. Kinder Morgan Energy Partners, LP*, No. 07CV1883-MMA (WVG), 2016 WL 1165828, at *2 (S.D. Cal. Mar. 24, 2016); *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 879 (C.D. Cal. 2012).

Bain asserts that "[c]ourts routinely certify questions that assume pleaded facts and ask whether those facts satisfy a legal standard." (Doc. No. 495 at 10 (citing *Steering Comm. v. United States*, 6 F.3d 572, 575 (9th Cir. 1993) and *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1065–66 (D. Haw. 2013)).) However, the cases upon which Bain relies are procedurally and substantively inapposite. The issue upon which *Hawaii ex rel. Louie* based certification was whether the court had federal subject matter jurisdiction based on preemption. 921 F. Supp. at 1063–64. The existence of subject matter jurisdiction is essential to a district court entertaining a dispute—a threshold determination to which the issues presented here are not equivalent. In *Steering Committee*, the Ninth Circuit noted that the lower court *had* identified one pure question of law, from which the Circuit derived jurisdiction to review the entire order, including the additional mixed questions of law and fact. 6 F.3d at 575–76 ("Moreover, as noted above, a pure legal question is identifiable in this case. We have held that the presence of a pure legal question permits the court to resolve all questions material to the order."). Additionally, the mixed question of fact and law was a liability determination was made at trial, where the issues of liability and damages had been bifurcated. *Id.* at 574. As such, the Ninth Circuit's

determination that "the liability phase of a multidistrict, multiparty case of the sort at hand is appealable under § 1292(b)," *id.* at 575, is of little applicability as to whether Plaintiffs' allegations have met the low threshold of stating a claim to survive a motion to dismiss.

Accordingly, the Court finds that neither question Bain seeks certification for is a controlling question of law.

## B.    Substantial Ground for Difference of Opinion

Second, Bain contends that substantial disagreement exists because "the questions of law presented by the Order are novel and difficult, and reasonable jurists could disagree with the Order's conclusions." (Doc. No. 466-1 at 16–17.) Specifically, Bain argues that (1) no case has held an agency relationship existed between two counterparties negotiating an investment at arm's length and (2) no case has held an investment firm liable for a data breach at a portfolio company where the firm did not collect, store, possess, or control the data at issue. (*Id.*) Plaintiffs respond that the Court applied settled agency and negligence law, that Bain's disagreement is factual rather than legal, and that the absence of authority Bain identifies reflects, at most, factual distinctions rather than legal uncertainty. (Doc. No. 490 at 22–23 (citing *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).)

Bain has not shown substantial ground for a difference of opinion. Bain's arguments, and the case law it thus finds relevant, are based on its interpretation and weighing of Plaintiffs' allegations. However, Bain's "strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference.'" *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). In its prior order, the Court applied the settled three-element test for an actual agency relationship. (Doc. No. 434 at 11–12.) It also concluded that Bain owed a duty to protect Plaintiffs' personal information, grounded in the foreseeability of harm and Defendants' own handling of the data entrusted to them. (*Id.* at 16–17.) Bain's showing that no prior case has held an investment firm liable for a data breach at a portfolio company describes a factual posture, not a legal disagreement among courts about the governing standard. "That settled law might be applied differently does not establish a substantial ground for difference of opinion." *Couch*, 611 F.3d at 633. To

13

25-md-03149-AJB-MSB

hold otherwise would permit every defendant on the disappointing end of a ruling on a Rule 12(b) motion to appeal in hope of a different result. Because Bain does not demonstrate that the controlling law is unclear or disputed or that the issues are novel and complex questions of first impression, Bain fails to demonstrate that there is a substantial ground for a difference of opinion as to either question.

### C.    Conclusion

Because the requirements of § 1292(b) are jurisdictional, Bain's failure to demonstrate either a controlling question of law or a substantial difference of opinion is each an independently sufficient failure, making certification improper. *See ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) ("The first jurisdictional requirement is that the district court must certify its order for appeal. To do so, it must determine that the order meets the three certification requirements outlined in § 1292(b)[.]"). Because certification is not proper, the request to stay Track One proceedings pending appellate review does not arise. The motion to certify an interlocutory appeal and the related request for a stay are **DENIED**.

## IV.    CONCLUSION

Based on the reasons set forth above, the Court **DENIES** Bain's motion for reconsideration, request for certification of an interlocutory appeal under 28 U.S.C. § 1292(b), and request to stay Track One proceedings pending appellate review. Bain retains ample opportunity to press its position as the record develops and the applicable burden rises.

**IT IS SO ORDERED.**

Dated:  July 27, 2026

Hon. Anthony J. Battaglia
United States District Judge

25-md-03149-AJB-MSB