Anne Johnson Palmer (SBN 302235)
**ROPES & GRAY LLP**
One Maritime Plaza, Suite 1800
300 Clay Street
San Francisco, CA 94111
Tel: (415) 315-6300
anne.johnsonpalmer@ropesgray.com

Douglas Hallward-Driemeier (MA BBO #627643)*
**ROPES & GRAY LLP**
2009 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 508-4600
douglas.hallward-driemeier@ropesgray.com

*Attorneys for Defendants PowerSchool Corporation and PowerSchool Group, LLC*

[*Additional Counsel in Signature Block*]

Christopher M. Young (SBN 163319)
Justin Van Ligten (SBN 353587)
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
christopher.young@us.dlapiper.com
justin.vanligten@us.dlapiper.com

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br>*All Track One Actions* | Case No. 3:25-MD-03149-AJB-MSB<br><br>**REPLY BRIEF IN SUPPORT OF POWERSCHOOL'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................2

I.    POWERSCHOOL'S MOTION IS PROCEDURALLY PROPER ...................2

      A.    The Law of the Case Doctrine Does Not Apply When There Has Been an Intervening Change in Controlling Law ...........................................2

      B.    A Rule 12(c) Motion Is the Proper Vehicle to Address an Intervening Change in Law After the Close of Pleadings ........................................3

II.   PLAINTIFFS' OPPOSITION CONFIRMS THAT THEIR CMIA CLAIM SHOULD BE DISMISSED ......................................................................5

      A.    PowerSchool Is Not a "Contractor" ......................................................5

      B.    Plaintiffs' Reliance on Materials Outside the Pleadings Is Improper and the Court Should Disregard Them......................................................6

      C.    Even the Cherry-Picked Extrinsic Documents Plaintiffs Cite Do Not Satisfy *Illuminate*'s Requirements .......................................................7

      D.    Plaintiffs Point Only to Inadequate Conclusory Allegations ................8

CONCLUSION ............................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brand Engagement Network, Inc. v. Brewer*,
2026 WL 1243448 (N.D. Tex. May 6, 2026) ......................................................5

*Carlson v. Reed*,
249 F.3d 876 (9th Cir. 2001) ............................................................................4

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012) ..........................................................................9

*Choi v. 8th Bridge Cap., Inc.*,
2019 WL 4956147 (C.D. Cal. Oct. 7, 2019)......................................................5

*Corrales v. County of San Diego*,
2025 WL 1333673 (S.D. Cal. May 7, 2025) ......................................................7

*Fortinet, Inc. v. Forescout Techs, Inc.*,
730 F. Supp. 3d 958 (N.D. Cal. 2024)...............................................................3

*Ginsburg v. InBev NV/SA*,
623 F.3d 1229 (8th Cir. 2010) ..........................................................................5

*Gonzales v. U.S. Dep't of Homeland Sec.*,
712 F.3d 1271 (9th Cir. 2013) ..........................................................................2

*Gopher Media LLC v. Melone*,
2023 WL 8790266 (S.D. Cal. Dec. 19, 2023) ...................................................4

*Grajales v. Puerto Rico Ports Auth.*,
682 F.3d 40 (1st Cir. 2012)...............................................................................4

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
896 F.2d 1542 (9th Cir. 1989) ..........................................................................7

*J.M. v. Illuminate Educ., Inc.*,
103 Cal. App. 5th 1125 (2024) .........................................................................1

*J.M. v. Illuminate Educ., Inc.*,
  19 Cal. 5th 705 (2026) ....................................................................................*passim*

*McLaughlin v. Oliver*,
  95 F.4th 1239 (9th Cir. 2024) ...............................................................................2

*People v. Garcia*,
  97 Cal. App. 4th 847 (2002) ..................................................................................1

*Perez v. Oak Grove Cinemas, Inc.*,
  2014 WL 1796674 (D. Or. May 5, 2014) ...............................................................5

*Perez v. Wells Fargo & Co.*,
  75 F. Supp. 3d 1184 (N.D. Cal. 2014) ....................................................................4

*Richardson v. United States*,
  841 F.2d 993 (9th Cir. 1988) ................................................................................2

*Estate of Rodriguez v. City of Long Beach*,
  2020 WL 292179 (C.D. Cal. Jan. 21, 2020) ...........................................................5

*Uzoh v. Walmart Assocs., Inc.*,
  2024 WL 4919642 (W.D. Tex. Oct. 21, 2024) .........................................................5

**Statutes**

Cal. Civ. Code § 56.05 ................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 12 .......................................................................................................5

Fed. R. Civ. P. 12(c) ...........................................................................................*passim*

Fed. R. Civ. P. 30(b)(6) ...........................................................................................4, 8

Plaintiffs' Opposition repeatedly downplays the significance of the California Supreme Court's decision in *J.M. v. Illuminate Education, Inc.*, 19 Cal. 5th 705 (2026) ("*Illuminate*"). In doing so, Plaintiffs ignore that *Illuminate* overturned the sole legal authority on which this Court relied in sustaining Plaintiffs' CMIA claim at the motion-to-dismiss stage by concluding that PowerSchool was a "provider of health care" subject to CMIA. *See* MTD Order at 29 (relying on *J.M. v. Illuminate Educ., Inc.*, 103 Cal. App. 5th 1125 (2024)). While Plaintiffs attempt to characterize *Illuminate*'s holding as limited "to a given set of facts pled in that case," *see* Opp. at 14, that characterization is irreconcilable with the nature of California Supreme Court review. By rule, the California Supreme Court grants review only to "secure uniformity of decision or to settle an important question of law in matters of statewide impact"—not to resolve fact-bound disputes. *People v. Garcia*, 97 Cal. App. 4th 847, 855 (2002). *Illuminate* did just that: it resolved the meaning of CMIA's "provider of health care" definition as a matter of law and clarified in the process that an educational technology software provider is not covered by the statute when it maintains medical information for educational, administrative, and recordkeeping purposes. *Illuminate* is dispositive as to that critical issue, and the instant motion for judgment on the pleadings should be granted.

Plaintiffs' attempt to distinguish the circumstances of this case from *Illuminate* also fails. This Court already recognized the close factual relationship between the two cases when it relied exclusively on the *Illuminate* Court of Appeal decision in denying PowerSchool's motion to dismiss the CMIA claim. It is therefore Plaintiffs—not PowerSchool—who effectively ask the Court to reconsider its prior recognition of the two cases' close relationship. Unlike PowerSchool, Plaintiffs can point to no intervening change that would warrant such a reversal. On a motion for judgment on the pleadings, the only relevant considerations are the pleadings, which have not changed since the Court's prior decision on this point.

Recognizing the futility of arguing that their pleadings suffice under

-1-

*Illuminate*, Plaintiffs resort to procedural objections that ignore well-established Ninth Circuit law and improperly rely on materials from outside the pleadings. But Plaintiffs' tactics cannot save a claim that is now foreclosed by controlling California Supreme Court authority. PowerSchool's motion properly raises an intervening change in controlling law, and Plaintiffs are unable to point to any factual allegations sufficient to sustain their CMIA claim under that newly declared standard.

## ARGUMENT

### I.   POWERSCHOOL'S MOTION IS PROCEDURALLY PROPER

#### A.   The Law of the Case Doctrine Does Not Apply When There Has Been an Intervening Change in Controlling Law

Plaintiffs' invocation of the law-of-the-case doctrine is unavailing. Federal courts uniformly recognize a well-established exception that courts "may depart from the law of the case" when "an intervening change in the law has occurred." *See, e.g.*, *McLaughlin v. Oliver*, 95 F.4th 1239, 1249 n.4 (9th Cir. 2024); *Gonzales v. U.S. Dep't of Homeland Sec.*, 712 F.3d 1271, 1277 (9th Cir. 2013) (same). This exception extends to intervening state court decisions construing state law. *See Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988) (mandating reconsideration in light of intervening state court appeals decision).

*Illuminate* is exactly the kind of intervening controlling authority that triggers this exception. It is a decision of the state's highest court construing the precise statutory provisions at issue in this case involving an educational technology provider just like PowerSchool, and reversing the only decision this Court relied upon in allowing Plaintiffs' CMIA claim to survive dismissal. The California Supreme Court repeatedly highlighted that the Court of Appeal's interpretation of CMIA was improperly broad and ignored various limitations about the kinds of entities that the California legislature intended to cover under the statute. *See, e.g.*, *Illuminate*, 19 Cal. 5th at 716–18.

Plaintiffs disjointedly assert both that PowerSchool has "repeatedly raised"

-2-

this argument to the Court, Opp. at 3, 7, and also that PowerSchool "failed" to raise it previously, Opp. at 3.  Neither is true.  PowerSchool raised *Illuminate* to the Court's attention via this Motion just over a month after the California Supreme Court issued its decision, promptly after identifying the proper procedural vehicle for doing so and meeting-and-conferring with Plaintiffs as required by the Court's rules.  The California Supreme Court did not even issue its decision in *Illuminate* until May 14, 2026—twenty-nine days after PowerSchool filed its Motion for Reconsideration on April 15, 2026, and *seven days after the parties had fully briefed that Motion*.  PowerSchool could not have raised *Illuminate* in its earlier motion for reconsideration because the decision did not then exist, and PowerSchool raised *Illuminate* promptly after the decision was issued.

**B.    A Rule 12(c) Motion Is the Proper Vehicle to Address an Intervening Change in Law After a Responsive Pleading Has Been Filed**

Plaintiffs next assert that PowerSchool's Motion is improper because it is effectively a motion for reconsideration and the parties have already begun discovery.  Here too, Plaintiffs ignore black-letter law instructing that a Rule 12(c) motion is the proper procedural vehicle to raise an intervening change in law after a motion to dismiss has been decided.  *See, e.g.*, *Fortinet, Inc. v. Forescout Techs, Inc.*, 730 F. Supp. 3d 958, 963 (N.D. Cal. 2024) (rejecting as "meritless" the argument that a Rule 12(c) motion filed after denial of a motion to dismiss is "a thinly-veiled (and unauthorized) motion for reconsideration").  Moreover, contrary to Plaintiffs' characterization, discovery in this case remains in its early stages.  When PowerSchool filed this Motion, no depositions had been taken.  Since then, only four bellwether plaintiff depositions have occurred, and several scheduled depositions have been pushed back (at Plaintiffs' own request).  Plaintiffs have taken no fact depositions of any defendant and have yet to notice any, nor has any Rule 30(b)(6) deposition been scheduled.  Upon the parties' joint motion, the Court

recently extended the case schedule by approximately four months, such that fact discovery will not close until May 14, 2027, with summary judgment motions not due for more than a year, on September 13, 2027.  *See* ECF No. 545.  A ruling on this Motion thus still has substantial potential to conserve the resources of the parties and the Court by obviating further proceedings on a claim that *Illuminate* makes clear is not viable as a matter of law.

Additionally, and contrary to Plaintiffs' suggestion, courts have repeatedly granted Rule 12(c) motions after the parties have commenced discovery.  *See, e.g.*, *Carlson v. Reed*, 249 F.3d 876, 878 n.1 (9th Cir. 2001) (rejecting as "frivolous" the argument that a district court prematurely granted a Rule 12(c) motion while discovery was ongoing because "a court may grant a 12(c) motion prior to close of discovery"); *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184, 1189–90 (N.D. Cal. 2014) (rejecting argument that a Rule 12(c) motion was untimely once "discovery has progressed to include depositions," and holding that "[p]laintiffs' claim that a Rule 12(c) motion is not appropriate where there has been substantial discovery does not appear to be supported by Rule 12(c)").  Indeed, courts have granted Rule 12(c) motions even on a closed discovery record.  *See Gopher Media LLC v. Melone*, 2023 WL 8790266, at *6 (S.D. Cal. Dec. 19, 2023) (holding Rule 12(c) motion timely where it was filed "on the final day for pretrial motions pursuant to the scheduling order" and "discovery ha[d] closed").[1]  Resolving this purely legal question now—

---

[1] Every case Plaintiffs cite in support of their timeliness objection, Opp. at 5–6, involved litigation far more advanced and none of them involved any intervening change in law.  *See, e.g., Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012) (refusing to decide whether district court abused discretion by deciding Rule 12(c) motion after nine months of discovery and instead deciding motion on merits); *Choi v. 8th Bridge Cap., Inc.*, 2019 WL 4956147, at *2–3 (C.D. Cal. Oct. 7, 2019) (operative complaint filed nearly two years earlier, discovery was already "well underway," and the moving defendant's deposition had been taken); *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 (8th Cir. 2010) (affirming the district court's *granting* of the motion for judgment on the pleadings despite the "unusual procedural issue" of the parties having fully litigated plaintiffs' motion for a

rather than allowing further discovery—serves the efficiency interests that Rule 12 motions are designed to promote.

## II. PLAINTIFFS' OPPOSITION CONFIRMS THAT THEIR CMIA CLAIM SHOULD BE DISMISSED

### A. PowerSchool Is Not a "Contractor"

Plaintiffs repeatedly attempt to sidestep *Illuminate*'s clear application by asserting that PowerSchool is a "contractor" for purposes of CMIA, Opp. at 2, rather than a provider of health care. In doing so, Plaintiffs ignore the basis on which this Court actually sustained their CMIA claim. Contrary to Plaintiffs' assertions that the Court "upheld" their contractor theory, Opp. at 9, the Court's MTD Order does not reference the "contractor" definition and instead allowed the CMIA claim to proceed solely on the basis that PowerSchool could be a "provider of health care" under the (now-reversed) Court of Appeal's decision. MTD Order at 29.

The Court did not find that PowerSchool was a "contractor" under CMIA for good reason. California Civil Code Section 56.05(d) defines "contractor" narrowly as "a person or entity that is a medical group, independent practice association, pharmaceutical benefits manager, or a medical service organization." Cal. Civ. Code § 56.05(d).[2] PowerSchool—an educational technology company—facially does not fall into any of these four enumerated categories. Plaintiffs cannot now

preliminary injunction); *Estate of Rodriguez v. City of Long Beach*, 2020 WL 292179, at *2 (C.D. Cal. Jan. 21, 2020) (only three weeks remained before discovery closed); *Uzoh v. Walmart Assocs., Inc.*, 2024 WL 4919642, at *2 (W.D. Tex. Oct. 21, 2024) (discovery had closed more than a month before the defendant filed its motion for judgment on the pleadings); *Perez v. Oak Grove Cinemas, Inc.*, 2014 WL 1796674, at *3 (D. Or. May 5, 2014) (parties had litigated temporary restraining order and preliminary injunction and had engaged in months of discovery); *Brand Engagement Network, Inc. v. Brewer*, 2026 WL 1243448, at *2 (N.D. Tex. May 6, 2026) (denying motion to stay all discovery pending outcome of motion).

[2] Plaintiffs cite Section 56.06(d) as defining "contractor" as one who "receives, maintains, or transmits medication information," Opp. at 8, but "contractor" does not appear in that provision, nor do any of the terms Plaintiffs quote.

manufacture a "contractor" theory—unsupported by any well-pleaded factual allegations—to salvage a claim that *Illuminate* otherwise forecloses.

### B.    Plaintiffs' Reliance on Materials Outside the Pleadings Is Improper and the Court Should Disregard Them

Recognizing that their pleadings fail to satisfy the controlling legal standard set forth in *Illuminate*, Plaintiffs otherwise rely primarily on cherry-picked materials that appear nowhere in their Master Complaint. *See* Opp. at 13–19. The Court must disregard arguments based on these extrinsic documents, including webpages,[3] third-party FAQ pages from school websites, and other public statements that are not referenced, incorporated, or quoted in the Master Complaint. It is black-letter law that a court deciding a Rule 12(c) motion may consider only the pleadings, and that if matters outside the pleadings are presented, the Court must disregard them absent converting the motion to one for summary judgment. *See, e.g.*, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (reversing district court that had improperly relied on an extrinsic materials to establish disputed successor-in-interest facts on a Rule 12(c) motion); *Corrales v. County of San Diego*, 2025 WL 1333673, at *2, n.2 (S.D. Cal. May 7, 2025) (Battaglia, J.) (similar).[4] Ninth Circuit case law requires the Court to resolve this Motion based on the pleadings alone and to disregard Plaintiffs' arguments relying

---

[3] Plaintiffs contend that the SIS is used by school district medical staff to maintain logs and to track certain medical information, including immunizations and medications. Opp. at 13–14. In reality, these assertions are not ones that appear in the Master Complaint but are based on one of the extrinsic documents Plaintiffs append to their Opposition. And beyond not being properly before the Court, these assertions find no basis in the Master Complaint, which does not identify any medical information logged or tracked for medical diagnosis or treatment.

[4] Despite relying on evidence outside the pleadings, Plaintiffs do not ask the Court to convert this Motion to one for summary judgment, instead suggesting a summary judgment motion would be appropriate "after the close of discovery." Opp. at 6. PowerSchool also opposes converting this Motion to one for summary judgment due to Plaintiffs'—not PowerSchool's—introduction of extrinsic evidence.

POWERSCHOOL'S REPLY BRIEF ISO MOTION FOR JUDGMENT ON THE PLEADINGS          CASE NO. 3:25-MD-03149

on two exhibits and various websites.

## C.    Even the Cherry-Picked Extrinsic Documents Plaintiffs Cite Do Not Satisfy *Illuminate*'s Requirements

Even if the Court were to consider the extra-pleading materials Plaintiffs offer, none of them demonstrates that PowerSchool maintains medical information for either of the two statutorily enumerated purposes that *Illuminate* requires: (1) allowing an individual to manage their own medical information or (2) facilitating the medical diagnosis or treatment of an individual.  19 Cal. 5th at 715–19.

In *Illuminate*, the plaintiff alleged that the educational technology platform stored medical information to help "educators evaluate, monitor, and address students' educational needs" and that students and parents had "access" to the platform.  *Id.* at 716–18.  The California Supreme Court held these allegations insufficient because the purpose alleged was "aid[ing] educational evaluation, monitoring of progress, and determining an educational plan"—not allowing individuals to manage their own medical information or facilitating medical diagnosis and treatment.  *Id.* at 716–17.  Under *Illuminate*, therefore, allegations that an entity merely stores medical information does not mean that the entity does so for the purpose of medical diagnosis or treatment, rather than for some other purpose, such as to allow a school to fulfill its educational or administrative functions.  *Id.* at 716, 718–19 (assessing the alleged purpose for storing dyslexia screening data and concluding it was not for "diagnosis of a disability").  Here, the very documents Plaintiffs cite confirm the same educational purpose.  The two documents that Plaintiffs attach as exhibits describe health-related information being used to support school operations—for example, for "manag[ing]" and "track[ing]" immunizations and medications.  *See* Opp. Ex. A at 1; Opp. Ex. B at 8 ("Managing Student Health" and "Managing Emergency and Medical Contacts").  These are quintessentially administrative functions.  The Master Complaint does not provide any factual allegations that would suggest that PowerSchool's SIS allows individuals to "enter

-7-

their medical information on a website and build their own electronic medical records" or that it serves as "a central repository for a person's health records" that individuals can "access and share . . . as they please." *Illuminate*, 19 Cal. 5th at 717–18. Nor do Plaintiffs' materials suggest that any health-related information in PowerSchool's SIS is maintained "for the purpose of diagnosing or treating a medical condition." *Id.* at 717. As PowerSchool addressed in its opening brief (at 10–12), Plaintiffs' allegations all point in one direction: that schools store medical information in the SIS for educational and administrative purposes. In short, the materials Plaintiffs improperly submitted actually confirm that any health-related information in the SIS is maintained for the same purposes that the Supreme Court squarely held in *Illuminate* does not subject a software provider to CMIA.

### D.  Plaintiffs Point Only to Inadequate Conclusory Allegations

Stripped of its improper reliance on materials outside the pleadings, Plaintiffs' Opposition confirms what PowerSchool argued in its opening brief: the Master Complaint is devoid of any well-pleaded factual allegations sufficient to state a claim in light of *Illuminate*.[5] Under the framework governing Rule 12(c) and Rule 12(b)(6) motions, this Court is not required to credit legal conclusions or conclusory statements masquerading as factual allegations. As the Ninth Circuit has made clear, "'formulaic recitation[s] of the elements of a cause of action' are not sufficient" to survive a motion for judgment on the pleadings, and courts must "discount[] conclusory statements, which are not entitled to the presumption of truth." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (*quoting Bell Atl. Corp. v.*

---

[5] Plaintiffs argue that PowerSchool "waive[d]" the argument that it is not "an entity 'organized for the purpose of maintaining medical information.'" Opp. at 17–18. *Illuminate* did not address this separate requirement under the CMIA, and PowerSchool rightfully has focused this Motion on *Illuminate*'s holding. To be clear, PowerSchool *did* also challenge in its Motion to Dismiss the sufficiency of Plaintiffs' allegations that PowerSchool is organized for the purpose of maintaining medical information, ECF No. 285 at 49, and does not waive that defense.

-8-

*Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiffs point almost exclusively to paragraphs of the complaint (*e.g.*, Compl. ¶¶ 5, 973, 981, 982, 989) that do nothing more than parrot the statutory text. For example, Paragraph 981 alleges that PowerSchool "maintain[s] such medical information to make it available to students, parents, guardians, teachers, educational staff, schools, and school district personnel, and/or providers of health care upon request, and to allow such individuals and clinicians to manage the individual's information, and for diagnosis and treatment." This is precisely the kind of "formulaic recitation of the elements of a cause of action" that *Chavez* rejects as insufficient. 683 F.3d at 1108. In contrast, the Master Complaint's non-conclusory allegations—those describing what PowerSchool actually does—are couched in educational and administrative terms. *See* Opening Brief at 8-11.

The Opposition also makes much of the fact that two California Plaintiffs supposedly alleged that they "entered" medical information into the SIS. Opp. at 13. Plaintiffs' argument stretches their own pleading, which noticeably alleges in the passive voice that these two Plaintiffs' "PII" and "PHI" "were input" into the SIS. Compl. ¶¶ 390, 438. Absent from the Master Complaint are any allegations indicating that these two Plaintiffs entered their "PHI" into the SIS for the purpose of facilitating medical diagnosis or treatment, or to allow them to manage their own medical information. The Master Complaint's reliance on a single screenshot of the SIS landing page showing a "Health" tab fares no better. Opp. at 12 (citing Compl. ¶ 56). A one-word reference to "Health" on a software menu does not supply the factual allegations required by *Illuminate* that, if proven, would demonstrate that PowerSchool's SIS stored medical information for a statutorily required purpose. The Master Complaint does not describe what the "Health" screen looks like, what information it contains, or how it functions. It certainly does not allege that the SIS serves as a "central repository" enabling individuals to "build their own electronic medical records" or "access and share [health records] as they please," *Illuminate*,

19 Cal. 5th at 717–18, nor that it facilitates medical diagnosis or treatment.[6]

*Illuminate* emphasized the importance of evaluating the purpose for which an entity allegedly maintains medical information and reversed the Court of Appeal for failing to appropriately evaluate this precise factor. 19 Cal. 5th at 715–16. Plaintiffs' allegations on this critical element do little more than recycle statutory language and confirm a truth they cannot overcome: as an educational software company that maintains data in service of the educational functions of its school and school district customers, PowerSchool is simply not a provider of health care under CMIA.

## CONCLUSION

For the foregoing reasons, PowerSchool respectfully requests that the Court grant its Motion and dismiss Plaintiffs' CMIA claim (Count XIV) with prejudice.

---

[6] Plaintiffs confusingly suggest that PowerSchool "concedes" that the SIS makes "medical information available ***(i) for an individual's management of its information***" under Section 56.06(b). Opp at 20–21. To the contrary, PowerSchool directly addressed this portion of statute, arguing that "[u]nder either subsection [56.06(a) and (b)], the business must maintain medical information for the purpose of (1) allowing individuals to manage their information, ***or*** (2) facilitating diagnosis and treatment," and that "*Illuminate* makes clear that PowerSchool does not meet either requirement." Opening Br. at 6 (emphasis added)).

-10-

Dated: July 31, 2026                  */s/ Anne Johnson Palmer*
                                      Anne Johnson Palmer (SBN 302235)
                                      **ROPES & GRAY LLP**
                                      One Maritime Plaza, Suite 1800
                                      300 Clay Street
                                      San Francisco, CA 94111
                                      Tel: (415) 315-6300
                                      Fax: (415) 315-6350
                                      anne.johnsonpalmer@ropesgray.com

                                      Douglas Hallward-Driemeier (MA BBO #627643)*
                                      **ROPES & GRAY LLP**
                                      2009 Pennsylvania Avenue, N.W.
                                      Washington, D.C. 20006
                                      Tel: (202) 508-4600
                                      Fax: (202) 508-4650
                                      douglas.hallward-driemeier@ropesgray.com

                                      James Drabick (MA BBO No. 667460)*
                                      Monica Mleczko (MA BBO No. 696607)*
                                      **ROPES & GRAY LLP**
                                      Prudential Tower
                                      800 Boylston Street
                                      Boston, MA 02199
                                      Tel: (617) 235-4136
                                      Fax: (617) 951-7050
                                      james.drabick@ropesgray.com
                                      monica.mleczko@ropesgray.com

                                      Laura G. Hoey (IL Bar No. 650643)*
                                      **ROPES & GRAY LLP**
                                      191 North Wacker Drive, 32nd Floor
                                      Chicago, IL 60606-4302
                                      Tel: (312) 845-1200
                                      Fax: (312) 845-5500
                                      laura.hoey@ropesgray.com

-11-

Christopher M. Young (SBN 163319)
Justin Van Ligten (SBN 353587)
**DLA PIPER LLP (US)**
4365 Executive Drive Suite 1100
San Diego, CA 92121
Tel: (619) 699-4748
Fax: (616) 764-6748
christopher.young@us.dlapiper.com
justin.vanligten@us.dlapiper.com

*Attorneys for Defendants PowerSchool Corporation and PowerSchool Group, LLC.*

\* Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I certify that on July 31, 2026, I filed the foregoing Motion for Judgment on the Pleadings with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

/s/ Anne Johnson Palmer