`

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>This Document Relates To:<br><br>Track One and Track Two | Case No.: 25-md-03149-AJB-MSB<br>MDL No. 3149<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MOVATE, INC.'S MOTION FOR RECONSIDERATION AND FOR CERTIFICATION OF INTERLOCUTORY APPEAL**<br><br>**(Doc. No. 472)** |

Before the Court is a motion seeking reconsideration pursuant to Rules 54 and 59 of the Federal Rules of Civil Procedure[1] or, in the alternative, certification of an interlocutory appeal pursuant to 28 U.S.C. §1292(b) filed by Defendant Movate, Inc. ("Movate"). (Doc. No. 472.) For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** the motion for reconsideration, **DENIES** the motion for certification of interlocutory appeal, and **DENIES** the request for a stay.

---

[1] Further reference to "Rule" or "Rules" is to the Federal Rules of Civil Procedure, unless otherwise stated.

1

## I.  INTRODUCTION

On March 24, 2026, the Court issued an order granting in part and denying in part Movate's motion to dismiss the claims brought by the Track Two School District Direct Action Plaintiffs ("Track Two Plaintiffs"). (Doc. No. 444.) The next day, the Court issued an order similarly granting in part and denying in part Movate's motion to dismiss the claims brought by the Track One Consolidated Individual Users Putative Class Action Plaintiffs ("Track One Plaintiffs"). (Doc. No. 445.) Relevant here, first, the Court denied Movate's motion to dismiss Track One Plaintiffs for lack of Article III standing. (*Id.* at 6–7.) Second, the Court denied Movate's motions to dismiss the negligence claims, finding that Movate owed a duty to Plaintiffs arising from Movate's own conduct. (Doc. Nos. 444 at 8–10; 445 at 12–16.) Third, the Court denied Movate's motion to dismiss the "negligent hiring and supervision" claims because Plaintiffs had properly alleged "systemic failures in training and supervision." (Doc. Nos. 444 at 11 – 12; 445 at 26–28.)

Movate now moves for reconsideration, arguing the Court committed clear error in concluding that even those Track One Plaintiffs who have not alleged specific misuse of their data have standing, that Movate owed Plaintiffs a duty of care as a third-party vendor with credentialed access but no security control, and that Plaintiffs sufficiently alleged negligent hiring and supervision claims absent allegations that Movate knew or should have known of the risk posed by employee Rayson Cruz, whose credentials were compromised. (Doc. No. 472 at 10–17.) In the alternative, Movate seeks certification of an interlocutory appeal and a stay of further proceedings pending appellate review. (*Id.* at 18–21.)

Track One and Track Two Plaintiffs (collectively, "Plaintiffs") oppose on every ground, asserting that Movate seeks to relitigate with arguments the Court already rejected by properly applying controlling law and that Movate fails to identify newly discovered evidence or an intervening change in law. (*See generally* Doc. Nos. 492 (Track One); 493 (Track Two).) Plaintiffs also oppose certification of an interlocutory appeal and a stay of discovery. (Doc. Nos. 492 at 18–24; 493 at 17–21.)

## II.    MOTION FOR RECONSIDERATION

Movate asserts that reconsideration is proper because the Court committed clear error in upholding Article III standing, finding a duty of care, and sustaining the negligent hiring, training, and supervision claims. (Doc. No. 472 at 10, 13, 15.) Plaintiffs assert that Movate has not satisfied the standard for reconsideration because it identifies no clear error, new law, or new evidence and merely rehashes arguments the Court already rejected. (Doc. Nos. 492 at 9–13, 17; 493 at 8, 10, 15.)

### A.    Legal Standard

A district court has inherent jurisdiction to modify, alter, or revoke a prior order. *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000). "Reconsideration [of a prior order] is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see* CivLR 7.1.i.

A motion for reconsideration "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised" upon the initial motion. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008); *see also Williams v. Cnty. of San Diego*, 542 F. Supp. 3d 1070, 1072 (S.D. Cal. 2021) ("A motion for reconsideration is not a vehicle for taking a 'second bite at the apple.'" (quoting *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001))); *Garcia v. Biter*, 195 F. Supp. 3d 1131, 1133 (E.D. Cal. 2016) ("The purpose of Rule 59(e) is *not* to 'give an unhappy litigant one additional chance to sway the judge. [A]rguments and evidence [that] were previously carefully considered by the Court,[] do not provide a basis for amending the judgment.'"). Reconsideration "offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). "For a decision to be considered 'clearly erroneous' it must be more than just maybe or probably wrong; it must be dead wrong. A movant must

25-md-03149-AJB-MSB

demonstrate a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Garcia*, 195 F. Supp. 3d at 1133 (cleaned up).

### B.      Clear Error

Movate asserts that reconsideration is proper because the Court committed clear error in upholding Article III standing, finding a duty of care, and sustaining the negligent hiring and supervision claims. (Doc. No. 472 at 10–17.) Plaintiffs assert that Movate has not satisfied the standard for reconsideration because it identifies no clear error, new law, or new evidence and merely rehashes arguments the Court already rejected. (Doc. Nos. 492 at 7–10; 493 at 8–10.)

### 1.      Article III Standing

First, Movate argues that the Court erred in concluding that Track One Plaintiffs had Article III standing. (Doc. Nos. 472 at 10; 497 at 8–9.) Movate does not develop an independent standing argument; rather, it joins PowerSchool's challenge (*see* Doc. No. 465), asserting that the Court committed clear error by ignoring *Kisil v. Illuminate Educ., Inc.*, No. 23-4114, 2025 WL 2589000 (9th Cir. Sept. 8, 2025) and allowing the claims of Track One Plaintiffs who allege no personal misuse to proceed based on injuries suffered by other Track One Plaintiffs. (Doc. No. 472 at 10.) In response, Track One Plaintiffs argue that the Court applied controlling Supreme Court and Ninth Circuit precedent in finding injury in fact at the pleading stage: the complaints allege actual misuse of exfiltrated data and dark-web exposure of Social Security numbers, payment-card information, and medical information, which suffices under the *TransUnion*, *Krottner*, *Zappos*, and *Healy* line of authority, and even plaintiffs without misuse allegations have standing based on imminent risk of identity theft, diminution in the value of their personal information, and lost benefit of the bargain. (Doc. No. 492 at 11–13.) As for *Illuminate*, Plaintiffs respond that the decision (1) is non-precedential under Ninth Circuit Rule 36-3 because it is unpublished and (2) is distinguishable because it involved less sensitive data—grades and socioeconomic status rather than Social Security or financial information—and contained no allegations of actual misuse. (*Id.* at 12.)

25-md-03149-AJB-MSB

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold [sic] requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Article III standing requires plausible allegations that (1) the plaintiff suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the defendant; and (3) the injury would likely be redressed by a favorable decision. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000). The alleged injury must be "concrete, particularized, and actual or imminent." *TransUnion*, 594 U.S. at 423. At the pleading stage, "[g]eneral allegations" of injury may suffice, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation omitted); at summary judgment, a plaintiff must come forward with evidence creating at least a genuine issue of material fact; and at trial, a plaintiff must affirmatively prove the injury for standing. *Healy v. Milliman, Inc.*, 164 F.4th 701, 709 (9th Cir. 2026).

In data-breach cases, the Ninth Circuit has issued two published decisions addressing Article III standing at the pleading stage: *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010), and *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.* ("*Zappos*"), 888 F.3d 1020 (9th Cir. 2018). Under *Krottner*, "the possibility of future injury may be sufficient to confer standing on plaintiffs; threatened injury constitutes 'injury in fact.'" *Krottner*, 628 F.3d at 1142 (citation omitted). A plaintiff who has not yet experienced misuse of personal information may sufficiently allege injury in fact by demonstrating "a credible threat of real and immediate harm stemming from the theft of a laptop containing their unencrypted personal data." *Zappos*, 888 F.3d at 1027 (citing *Krottner*, 628 F.3d at 1143). To establish standing under *Zappos*, a plaintiff must "sufficiently allege[] an injury in fact based on a substantial risk [PowerSchool hackers] will commit identity fraud or identity theft," and "only one [p]laintiff needs to have standing for the class action to proceed with the harm being "'fairly traceable' to the conduct being challenged." *Id*. at 1028, n.11, 1029 (citation omitted). Imminent-risk harms "qualify as concrete injuries in

fact when they are based on a risk of harm that is either 'certainly impending' or 'substantial.'" *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1052 (N.D. Cal. 2022).

*TransUnion* abrogated *Zappos* in part, holding that "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." 594 U.S. at 436–437. *Healy* recognized that abrogation only to the extent *Zappos* would have permitted unnamed class members to proceed to trial without proving standing; after *TransUnion*, all class members must demonstrate standing at summary judgment or trial. *Healy*, 164 F.4th at 708. At the pleading stage, however, *Zappos* remains controlling, and *Healy* cites it with approval for the proposition that Article III is satisfied earlier in a case so long as one named plaintiff has standing and a putative class has not yet been certified. *Id*. at 706.

As Movate's challenge is coterminous with PowerSchool's, the former's arguments fall with the latter. (*See* Doc. No. 506 at 7–8.) Because *Healy* expressly preserves *Zappos*'s pleading-stage rule, the Court did not err in ruling that Article III is satisfied where at least one named plaintiff alleges injury and the class has not been certified. (*Id.* at 7.) Here, the Individual Users Class Action Complaint includes allegations of both actual misuse and dark-web exposure of highly sensitive data of the kind that *Krottner*, *Zappos*, and *Healy* recognize as concrete injury. (*See, e.g.*, Doc. No. 259 ¶¶ 146–47, 162, 295–96, 357, 399, 470, 544, 562, 611, 635, 1001–02.) As an unpublished decision concerning less sensitive data and no misuse, *Illuminate* neither supersedes controlling, published authority, nor is particularly apropos to the circumstances alleged by Track One Plaintiffs. (*See* Doc. No. 506 at 7–8 ("Whatever weight *Illuminate* may carry as persuasive authority, its status as an unpublished disposition forecloses its use to override the published Ninth Circuit decisions that govern this Court's analysis.").) Movate identifies no newly discovered evidence, no intervening change in law, and no clear error with regard to Article III standing of Track One Plaintiffs.

///

///

25-md-03149-AJB-MSB

### 2.   Duty of Care[2]

Second, Movate argues that the Court erred in concluding that Movate owed Plaintiffs a duty of care. (Doc. Nos. 472 at 10–15; 497 at 3–7.)

"A plaintiff in any negligence suit must demonstrate a legal duty to use due care, a breach of such legal duty, and that the breach is the proximate or legal cause of the resulting injury." *Kesner v. Superior Ct.*, 1 Cal. 5th 1132, 1142 (2016) (cleaned up).[3] The existence of a duty is a question of law for the court. *See Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 770 (2011).[4] Foreseeability "alone does not establish the existence of a duty." *Tucker v. CBS Radio Stations, Inc.*, 194 Cal. App. 4th 1246, 1253 (2011).[5]

In the instant motion, Movate asserts that, because "[a] duty of care arises only where the defendant exercised custody or control over the instrumentality that allegedly created

---

[2]   The Court applies the state laws of California, Massachusetts, Michigan, and New York to Plaintiffs' state law claims, based on agreement of the parties. (*See* Doc. No. 314 at 3 ("Legal issues raised by Movate in its Motion to Dismiss directed at the Track One Plaintiffs' pleadings may be presented and will be resolved under the laws of four illustrative jurisdictions: California, Massachusetts, Michigan, and New York.").)

[3]   *See also Jupin v. Kask*, 447 Mass. 141, 146 (2006) ("To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage."); *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (2016) ("In order to prevail on a negligence claim, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom[.]"); *Schultz v. Consumers Power Co.*, 443 Mich. 445, 449 (1993) ("The requisite elements of a negligence cause of action are that the defendant owed a legal duty to the plaintiff, that the defendant breached or violated the legal duty, that the plaintiff suffered damages, and that the breach was a proximate cause of the damages suffered.").

[4]   *See also Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 138 (2002) ("[T]he existence and scope of a duty is a question of law requiring courts to balance sometimes competing public policy considerations[.]"); *Lev v. Beverly Enters.-Massachusetts, Inc.*, 457 Mass. 234, 240 (2010) ("The existence of a duty of care is a question of law[.]"); *Simko v. Blake*, 448 Mich. 648, 655 (1995) ("In negligence actions, the existence of duty is a question of law for the court.").

[5]   *See also In re New York City Asbestos Litig.*, 5 N.Y.3d 486, 493 (2005) ("[F]oreseeability, alone, does not define duty—it merely determines the scope of the duty once it is determined to exist."); *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 235, *opinion after certified question answered,* 264 F.3d 21 (2d Cir. 2001) ("[A] duty and the corresponding liability it imposes do *not* rise from mere foreseeability of the harm[.]"); *Jupin*, 447 Mass. at 150 ("That the harm in this case was reasonably foreseeable or even actually foreseen is persuasive, but not conclusive, of the existence of a duty of care."); *Schultz*, 443 Mich. at 452 ("[T]he mere fact that an event may be foreseeable does not impose a duty upon the defendant to take some kind of action accordingly.").

25-md-03149-AJB-MSB

the risk," the Court "erred by treating access to sensitive personal information, standing alone," and "foreseeability of harm, standing alone," "as sufficient to give rise to a duty of care." (Doc. No. 472 at 11–15 (relying on *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 400–03 (2019); *Regents of Univ. of Cal. v. Superior Court*, 4 Cal. 5th 607, 619 (2018)).) Further, Movate contends that PowerSchool owned and controlled access to Private Health Information and Personally Identifiable Information, including the ability to require multi-factor authentication, and had superior control over the means of protection, unlike Movate which was merely a third-party service provider with credentialed access, but no custody, control, or security responsibility. (*Id.* at 11, 13–14.)

Plaintiffs respond that the Court did not impose a duty based on access alone, but instead on Movate's affirmative conduct, specifically "access[ing] PowerSchool's systems in an unsecured manner (*i.e.*, without multi-factor authentication, the principle of least privileges, rotation [of] employee credentials, adequate data security training, proper detection and blocking of phishing attempts without secure open ports[,] and detecting and stopping activity from an unusual IP address . . . )," that caused the Data Breach. (Doc. No. 492 at 13–14; *see also* Doc. No. 493 at 10–11 (arguing Movate mischaracterized the Court's order as "based on 'access alone'" when the Court found instead that "affirmative operational responsibility for the specific security failures that caused the Data Breach" gave rise to a duty).) Plaintiffs distinguish Movate's contrary authorities on the grounds that those cases involved passive storage, a completed handoff with no ongoing operational role, or a downstream entity unknown to plaintiffs—none of which describes Movate's continuous privileged access. (Doc. Nos. 492 at 14–15 (distinguishing *Navarro v. Ski Data, Inc.*, No. 2:20-CV-07370-SVW-SK, 2022 WL 18280359 (C.D. Cal. Dec. 7, 2022); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 825 (N.Y. Sup. Ct. 2020); *In re U.S. Vision Data Breach Litig.*, No. 1:22-CV-06558, 2025 WL 615366, at *9–10 (D.N.J. Feb. 26, 2025)); 493 at 13–14 (distinguishing same along with *S. Cal. Gas Leak Cases,* 7 Cal. 5th 391, 401–03 (2019)).)

///

25-md-03149-AJB-MSB

The Court finds no clear error in its conclusion that Movate owed Plaintiffs a duty of care. Although more attenuated due to Movate's subcontractor status, the Court found Movate's duty arose not from access alone but from Movate's affirmative operational responsibility for the security measures and conduct that failed to meet that responsibility, applying the rule that affirmative conduct that creates a risk of harm gives rise to a duty. Specifically, the Court found that Plaintiffs sufficiently alleged Movate had broad access to and control over their private information, understood its sensitivity, and publicly touted compliance with internationally recognized data-security standards. (Doc. Nos. 444 at 9; 445 at 15; *see also* Doc. Nos. 259 ¶¶ 772–76, 780–86; 288 ¶¶ 259, 263–72.) Movate's authorities are neither binding nor sufficiently similar to require a finding of clear error. *In re U.S. Vision, Navarro*, and *Smahaj* address whether a duty attaches to a defendant by virtue of its role in collecting, possessing, or maintaining the plaintiffs' data; they do not address a duty premised on a defendant's affirmative conduct that increased the risk of a breach. Because the Court determined that Movate's affirmative conduct was the basis of a duty, case law determining whether a duty arose from a special relationship, such as *In re U.S. Vision Data Breach Litig.*, No. 1:22-CV-06558, 2025 WL 615366 (D.N.J. Feb. 26, 2025) or *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607 (2018), are inapposite to the Court's reasoning in the Track One and Track Two Orders.

Movate takes umbrage with the Court's labeling Movate as a "cybersecurity subcontractor" and the appropriateness of analogizing its role to that of a "security guard" in the Track Two Order. (Doc. No. 472 at 13 (addressing Doc. No. 444 at 2, 8).) The Court acknowledges that the Track Two Order's single reference to Movate as a cybersecurity subcontractor is imprecise. Movate, "PowerSchool's key subcontractor for technical operations" (Doc. No. 288 ¶ 271), is a "technology services company that PowerSchool engaged as a subcontractor to provide technical support and network operations services for PowerSchool's Student Information Systems." (*Id.* ¶¶ 257.) Although tasked with "backend administrative operations" (*id.* ¶ 251), Movate was "entrust[ed with] critical systems access" (*id.* ¶ 73) including "access to PowerSchool's internal PowerSource

25-md-03149-AJB-MSB

support system" (*id.* ¶ 72). (*See also id.* ¶ 268 (describing Movate as "a subcontractor with administrative access to School Districts' sensitive PII, Movate assumed a position of trust and became an integral component of the data security framework that School Districts relied upon.").) Though Movate disagrees with the Court's analogy, it is not grounds for a finding of clear error as it was an illustrative device not a finding or a holding. Attempting to heighten the one-off identifier of Movate as a "cybersecurity subcontractor" and the "security guard" analogy to the level of clear error, Movate ties this reference in the Track Two Order to the Court's analysis of *Baton v. Ledger SAS*, 740 F. Supp. 3d 847 (N.D. Cal. 2024), *motion to certify appeal granted,* No. 21-CV-02470-EMC, 2025 WL 1866348 (N.D. Cal. July 7, 2025), in the Track One Order. However, in so doing, Movate misses the fact that the Court acknowledged that "Movate's role may differ in degree" while analogizing to the subcontractor who had access and control over sensitive data and was responsible for implementing security measures. (Doc. No. 445 at 15.) The Court's analogizing to *Baton* in the Track One Order was not clear error.

Based on the foregoing, Movate has failed to demonstrate that the Court committed clear error in determining that Plaintiffs had sufficiently pled a duty arising from Movate's affirmative conduct.

### 3.  Negligent Hiring, Retention, Training, and Supervision

Third, Movate argues the Court "committed clear error by permitting negligent hiring, training, and supervision claims to proceed without allegations establishing employer notice of a particular risk." (Doc. No. 472 at 15.) Specifically, Movate asserts that the Court "improperly rel[ied] on generalized and conclusory references to 'systemic failures in training and supervision'" as an "exception to the notice requirement." (*Id.*) However, such "generalized allegations of 'systemic failures' are inadequate [because] negligent hiring, training, and supervision claims require allegations of a wrongful or dangerous employee whose known propensities the employer failed to address through adequate instruction, monitoring, or restraint." (*Id.* at 16.)

///

25-md-03149-AJB-MSB

In opposition, the Track One and Track Two Plaintiffs make differing arguments that raise the issue of which standard governs these claims. (*Compare* Doc. Nos. 492 at 17 (Track One Opposition) ("Despite this, Movate incorrectly invents a standard—*i.e.*, that Movate must have known about some particular propensity of its employee Rayson Cruz (who was the *point of entry for the entire breach*)—but that is not the law.") *with* 493 at 15 (Track Two Opposition) ("The Court correctly stated the standard (which Movate does not dispute): a plaintiff must allege facts showing the employer knew or should have known that keeping the employee posed a risk of the specific harm that materialized."); *see also* Doc. No. 497 at 7 (Reply) ("Plaintiffs cannot even agree on the critical aspect of the governing legal standard for these claims."). Thus, before diving into the substance of the parties' arguments, the Court must first lay straight the standards and issues before it.

"To assert a claim for negligent training, a plaintiff must demonstrate deficiencies in the training of employees that, if corrected, could have avoided the alleged harm." *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 225 (E.D.N.Y. 2010) (internal quotation and citation omitted).[6] However, to assert a claim for negligent hiring, a plaintiff must demonstrate the "employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Baez*, 745 F. Supp. 2d at 225.[7] Similarly, "[t]o

---

[6] *See also Garcia v. Brown*, 442 F. Supp. 2d 132, 146 (S.D.N.Y. 2006) ("To succeed on New York State law claim of negligent training or supervision, a plaintiff must present specific evidence demonstrating how the employer's practices were insufficient."); *Roe v. CoreCivic, Inc.*, 823 F. Supp. 3d 1137, 1155 (S.D. Cal. 2026) ("Under California law, a plaintiff alleging negligent training must show the employer negligently trained the employee as to the performance of the employee's job duties and as a result of such negligent instruction, the employee while carrying out his job duties caused injury or damage to the plaintiff."); *Helfman v. Ne. Univ.*, 485 Mass. 308, 326 (2020) ("Employers are responsible for exercising reasonable care to ensure that their employees do not cause foreseeable harm to a foreseeable class of plaintiffs. To establish an employer's liability for negligently training and retaining an employee, a plaintiff must show that the employer became aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment.").

[7] *See also Mueller v. Brannigan Bros. Rests. & Taverns LLC*, 323 Mich. App. 566, 575 (2018) ("[A] claim of negligent hiring or retention requires actual or constructive knowledge by the employer that would make the *specific* wrongful conduct perpetrated by an employee predictable."); *Kruitbosch v. Bakersfield Recovery Servs., Inc.*, 114 Cal. App. 5th 200, 225 (2025) ("[A]n employer can be liable to a

25-md-03149-AJB-MSB

establish negligent supervision, a plaintiff must show that a person in a supervisorial position over the actor had prior knowledge of the actor's propensity to do the bad act." *Z.V. v. Cnty. of Riverside*, 238 Cal. App. 4th 889, 902 (2015).[8]

Both on reconsideration and in its motions to dismiss, Movate improperly applies the standard for negligent hiring to all four claims of employer negligence implicated. Yet, "negligent hiring, training, supervision, and retention" are four distinct claims, for which as illustrated *supra* the required elements of a general negligence claim are slightly adapted in application and thus pleading. As an additional layer of complexity, the School District Direct Action First Amended Complaint ("FAC") asserts all four claims under the ninth cause of action (Doc. No. 288 ¶¶ 288–301) while the Individual Users Class Action Complaint asserts only negligent training and supervision (Doc. No. 259 ¶¶ 908–24.) However, the orders subject to the instant motion address negligent hiring and supervision. (*Compare* Doc. Nos. 444 at 11–12 *with* 445 at 26–28.)

### i.    Negligent Hiring

Movate's motion to dismiss the Individual Users Class Action Complaint argued that Plaintiffs "fail[ed] to allege the essential elements of negligent *hiring* and

---

third person for negligently hiring, supervising, or retaining an unfit employee where the employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." (quotation marks and citation omitted)); *Koussa v. Att'y Gen.*, 489 Mass. 823, 835 (2022) ("The doctrine of negligent hiring or retention provides that an employer whose employees are brought in contact with members of the public in the course of the employer's business has a duty to exercise reasonable care in the selection and retention of his employees." (citation and quotation marks omitted)).

[8]    *See also Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y.3d 150, 157 (2023) ("Where the negligence claim relates to an employer's retention and supervision of an employee, the complaint must include allegations that: (1) the employer had actual or constructive knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm; (2) the employer knew or should have known that it had the ability to control the employee and of the necessity and opportunity for exercising such control; and (3) the employee engaged in tortious conduct on the employer's premises or using property or resources available to the employee only through their status as an employee, including intellectual property and confidential information[.]"); *Doe v. Massachusetts Trial Ct.*, 494 Mass. 408, 416 (2024) ("In negligent supervision cases, an employer must have known, or at least should have known, that the employee might harm someone in the same general way the employee is alleged to have harmed the plaintiff.").

25-md-03149-AJB-MSB

supervision[.]"[9] (Doc. No. 317 at 32–33 (emphasis added).) Because Track One Plaintiffs do not allege a negligent hiring claim,[10] Movate's motion should have been denied as moot, rather than substantively addressed. Accordingly, to the extent the Court addressed and declined to dismiss a negligent hiring claim with regard to the Individual Users Class Action Complaint, the Court committed clear error as Individual Users Class Action Complaint raised no such claim. (*Compare* Doc. No. 445 at 26–28 ("Therefore, Movate's motion to dismiss Plaintiffs' negligent hiring and supervision claim is denied." (emphasis omitted)) *with* 259 ¶¶ 908–24 (asserting negligent training and supervision).) Accordingly, the Track One Order is vacated to the extent it substantively addresses a non-existent negligent hiring claim. Based on the same reasoning, Movate's motion to dismiss the Individual Users Class Action Complaint remains denied as to that purported claim.

Turning to the School District Direct Action FAC, Track Two Plaintiffs do assert a negligent hiring claim. (*See* Doc. No. 288 ¶¶ 288–301.) The extent of Track Two Plaintiffs' negligent hiring allegations are as follows:

296.   Movate hired Rayson Cruz, the employee who negligently allowed for the disclosure of the PII that was compromised in the Data Breach.

297.   Movate was negligent and failed to exercise the requisite standard of care in hiring, supervising, retaining, and training of its employees and agents, including, but not limited to, Rayson Cruz.

298.   Rayson Cruz was hired, trained, and retained as a Movate Team Leader who was assigned to provide technical support on behalf of PowerSchool and had access to the PowerSchool SIS and the massive trove of PII the system stored. As a result, his compromised credentials allowed the Data Breach threat actor to exfiltrate the PII that Movate possessed and purported to safeguard for Plaintiffs' benefit.

---

[9]   Movate additionally tossed in "negligent training" once in lieu of "negligent hiring" and sprinkled in reliance on negligent retention cases as well. (*Id.*) The Court will address those references in the appropriate sections *infra*.

[10]   In fact, Track One Plaintiffs attempt to call Movate's attention to its error (*see* Doc. No. 492 at 17 ("As a threshold matter, this argument is misplaced as Plaintiffs do not allege negligent hiring as part of their claim.")), which Movate glaringly ignores in reply (*see generally* Doc. No. 497).

\* \* \*

300.   Movate knew or should have known that Rayson Cruz was, or became, unfit or incompetent in his abilities to adequately and reasonably implement measures to secure the data that was compromised in the Data Breach. Rayson Cruz's unfitness and incompetence directly, proximately, and substantially caused Plaintiffs' harms.

301.   Movate's negligence in hiring, supervising, training, and retaining Rayson Cruz was a substantial factor in causing Plaintiffs' harms, and Movate is accordingly liable for the injuries Plaintiffs suffered as a result of the Data Breach.

(*Id.* ¶¶ 296–98, 300–01.) Movate moved to dismiss the negligent hiring claim on the basis that it lacked "specific facts showing Movate knew or should have known Cruz was at risk of credential compromise," had a "propensity to commit conduct that would lead to his login credentials being compromised," or was otherwise "unfit to implement security measures to secure the data that was compromised in the Data Breach." (Doc. No. 366 at 26–27 (cleaned up).) Although Track Two Plaintiffs opposed Movate's arguments regarding negligent hiring, training, retention, and supervision in a blanket conclusory fashion (*see* Doc. No. 381 at 33–34 (asserting "Plaintiffs plausibly allege" the elements by simply restating the elements of negligence)), Track Two Plaintiffs never addressed negligent hiring specifically (*see generally id.*). Instead, they argued that requiring allegations an employer had or should have had knowledge of an employee's propensity to engage in the conduct that caused the injuries "mistakes the standard at the pleadings stage" and then went on to analyze case law for negligent supervision. (*Id.* at 34.)

In resolving the Track Two motion to dismiss, the Court stated in relevant part that:

Movate next argues that Plaintiffs' negligent hiring and supervision claim fails because Plaintiffs do not allege that Movate knew or should have known of any specific risk posed by its employee, Rayson Cruz.

An employer may be liable for harm caused by negligent hiring, supervision, or retention of an incompetent employee, but the plaintiff must allege facts showing the employer knew or should have known that keeping the employee posed a risk of the specific harm that materialized.

14

Plaintiffs' theory extends beyond a propensity claim targeting a single employee. They allege systemic failures in training and supervision, including failures to require credential rotation, restrict access to sensitive information, and train employees in data security practices. At the pleading stage, those allegations are sufficient. . . . Movate remonstrates that it is plausible that Movate acted with due care in its hiring and supervision of Mr. Cruz. That may prove to be true on summary judgment or at trial. But Plaintiffs' allegations plausibly allege a claim of negligent hiring, training, or supervision, even without allegations of a prior specific tendency toward misconduct by the employee whose credentials were used.

(Doc. No. 444 at 11 (citations omitted).)

In the instant motion, Movate argues that the Court stated the correct legal standard and stated that Plaintiffs failed to meet that standard but then improperly permitted the claim to proceed on the basis of systemic failures. (Doc. No. 472 at 15–17.)

Upon reconsideration, the Court agrees with Movate. In teasing apart the negligent hiring allegations, and in applying the standard of negligent hiring to those allegations, the Court finds that the School District Direct Action FAC does not provide anything more than conclusory statements regarding the hiring of Cruz. Track Two Plaintiffs do not allege any facts about what made Cruz unfit for the position prior to his hiring, how Movate knew about those failings, or why Movate should have known about those failings.

Track Two Plaintiffs argue the Court properly relied on *In re Bank of America California Unemployment Benefits Litigation* ("*Bank of America*"), 674 F. Supp. 3d 884 (S.D. Cal. 2023), to support a negligent hiring claim based on systemic hiring practices that allegedly enabled a series of data breaches. (Doc. No. 493 at 15–16.) In *Bank of America*, the defendant's agent had "hired hundreds if not thousands of employees *en masse* to perform services for [the defendant] without ever conducting a background check on these individuals who were subsequently given access to [the p]laintiffs' personal and account information." *Bank of America*, 674 F. Supp. at 926 (internal quotation marks omitted). The court found the allegations sufficient at the pleading stage to state a claim for negligent hiring. *Id.* Far afield from alleging the hiring of thousands without proper due diligence, here Track Two Plaintiffs do not allege any facts regarding systemic hiring practices that

25-md-03149-AJB-MSB

would amount to negligence. (*See* Doc. No. 288 ¶¶ 288–301.) In fact, Track Two Plaintiffs fail to allege any facts regarding Movate's hiring practices at all. (*See id.*)

Because there are no factual allegations supporting a claim that hiring Cruz was an act of negligence, *see Baez*, 745 F. Supp. 2d at 225, the Court committed clear error in denying Movate's motion to dismiss the negligent hiring claim. Accordingly, the Track Two Order is vacated as to its analysis and conclusion regarding the negligent hiring claim. Based on the foregoing, the Court grants Movate's motion to dismiss the School District Direct Action FAC's negligent hiring claim and dismisses the negligent hiring claim raised in Count IX. Based on the record before it, the Court does not find that granting leave to amend the negligent hiring claim would be futile. Accordingly, the Court grants Track Two Plaintiffs leave to file an amended complaint, subject to the restrictions set forth *infra* § IV.

### ii.    Negligent Retention

Next, the School District Direct Action FAC asserts a negligent retention claim (*see* Doc. No. 288 ¶¶ 288–301) that was not addressed by Movate's motion to dismiss (*see generally* Doc. No. 366) and thus not addressed by the Court in its Track Two Order (*see generally* Doc. No. 444) or by Movate in its motion for reconsideration (*see generally* Doc. No. 472). Accordingly, the negligent retention claim in Count IX remains.

### iii.    Negligent Training

Both Track One and Track Two Plaintiffs allege negligent training claims. (*See* Doc. Nos. 259 ¶¶ 919–21, 923–24; 288 ¶¶ 288–301.) Movate's motions to dismiss do not clearly seek dismissal of these negligent training claims because, beyond each including only one reference to training (*see* Doc. Nos. 317 at 31 (including "training" in the topic sentence only); 366 at 26 (referencing "training" in the heading)), neither motion to dismiss substantively attacks this claim. Nevertheless, the Court determined that Plaintiffs allege "systemic failures in training and supervision," including failures to require credential rotation, implement multi-factor authentication, restrict access to sensitive data, and train employees in data security practices. (Doc. Nos. 444 at 11; 445 at 28.) The Court found those sufficient at the pleading stage to allege negligent training on a systemic level without

25-md-03149-AJB-MSB

the need for allegations of prior misconduct of a single employee. (Doc. Nos. 444 at 11; 445 at 28.)

In the instant motion for reconsideration, Movate asserts that the Court erred in permitting the negligent training claims to proceed based on "generalized allegations of training deficiencies" without allegations that Movate knew or should have known of the specific risk posed by Cruz, whose compromised credentials were used in the breach. (Doc. No. 472 at 15–17.) Movate's arguments frame this purported requirement for a specific employee's known propensity or danger as a "notice" requirement.

Contrary to Movate's assertion, systemic training policies—instead of a specific, poorly trained employee—may serve the basis of a negligent training claim so long as Plaintiffs demonstrate that the specific deficiencies in training policies, if remedied, could have avoided the alleged harm. *See Baez*, 745 F. Supp. 2d at 225. Here, Plaintiffs allege three specific training failures that, had Movate adequately addressed, would have prevented the data breach. (*See* Doc. Nos. 259 ¶¶ 916, 920; 288 ¶ 294.) Moreover, Plaintiffs allege that Movate should have known that its training policies were inadequate because of the size, scope and sensitive nature of the data Movate was handling, the prevalence of high profile data breaches, and the standards for data security. (Doc. Nos. 259 ¶¶ 915–16, 919; 288 ¶¶ 291–95.) Accordingly, the Court finds no clear error with regard to resolution of the negligent training claims in the Track One and Track Two Orders.

### iv.    Negligent Supervision

Finally, Plaintiffs' negligent supervision claims rest on the same theory of systemic failures as the negligent training claim. (*See* Doc. Nos. 259 ¶¶ 908–24; 288 ¶¶ 288–301.) The Court addressed negligent supervision in conjunction with negligent training in both the Track One and the Track Two Orders. (*See* Doc. Nos. 445 at 26–28; 444 at 11–12.) Now, Movate seeks reconsideration on the same bases as discussed above as well. (Doc. No. 472 at 15–17.) Although less clearly pled than the negligent training claim, the negligent supervision claim is plausibly premised on Movate's failure to identify and remedy its deficient training and risky employee behaviors. Because Plaintiffs allege that

25-md-03149-AJB-MSB

Movate failed to ensure its employees were taking adequate security precautions, that if Movate had adequately addressed these failures no breach would have occurred, and that Movate should have known that these deficiencies were creating the foreseeable risk of a breach, Plaintiffs adequately alleged a negligent supervision claim on the same basis as, though a slightly different flavor from, their negligent training claim. (*See* Doc. Nos. 259 ¶¶ 915–16, 920; 288 291–95.) *See also Alexander v. Cmty. Hosp. of Long Beach*, 46 Cal. App. 5th 238, 253, 259 Cal. Rptr. 3d 340, 356 (2020) ("An employer can be held liable for negligent supervision if it knows or has reason to believe the employee is unfit or fails to use reasonable care to discover the employee's unfitness."). Accordingly, Movate has not identified clear error with regard to the Court permitting Plaintiffs' negligent supervision claims to survive the motion to dismiss stage.

### C.      Conclusion

For the reasons set forth above, the Court finds that denying Movate's motions to dismiss Plaintiffs' negligent hiring claims was clear error. However, the Court finds no clear error with regard to any no other ground raised by the instant motion. As such, Movate's motion for reconsideration is **GRANTED** with regard to the negligent hiring claim alone and **DENIED** in all other respects. Movate retains ample opportunity to press its position as the record develops and the applicable burden rises. The Track One Order (Doc. No. 445) is **VACATED** to the extent it substantively addresses a non-existent negligent hiring claim; however, the result of the Track One Order—denial of Movate's motion to dismiss the Individual Users Class Action Complaint—is unaffected. The Track Two Order (Doc. No. 444) is **VACATED** as to its analysis and conclusion regarding the negligent hiring claim and **AMENDED** to be consistent with this order. As such, Movate's motion to dismiss the School District Direct Action FAC (Doc. No. 366) is **GRANTED with regard to negligent hiring claim**. The negligent hiring claim raised in Count IX (*see* Doc. No. 288) is **DISMISSED**.

///

///

25-md-03149-AJB-MSB

### III.   MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

Movate requests, in the alternative, that the Court certify two questions for interlocutory appeal and stay the action pending resolution by the Ninth Circuit: (1) whether a service provider lacking custody or control over the risk-creating system can owe a duty based on system access and the foreseeability of cybercrime; and (2) whether negligent hiring, training and supervision claims can proceed absent allegations that the employer knew or should have known of a particular employee's propensity for the specific harm that occurred. (Doc. No. 472 at 18.) Plaintiffs oppose certification, arguing the Movate fails to satisfy the statutory criteria of 28 U.S.C. § 1292(b). (Doc. Nos. 492 at 18–24; 493 at 17–21.)

Under 28 U.S.C. § 1292(b), certification is appropriate only if the order (1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *Brecher v. Citigroup Glob. Mkts., Inc.*, No. 3:09-CV-1344-AJB (MDD), 2012 WL 12953433, at *2 (S.D. Cal. Mar. 6, 2012) (Battaglia, J.). Even when the criteria are met, certification remains discretionary and is reserved for "exceptional cases." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026–27 (9th Cir. 1981).

#### A.   Controlling Questions of Law

Movate argues that the proposed questions are "purely legal and dispositive," making they "particularly well-suited for interlocutory review." (Doc. No. 472 at 18–20.) Plaintiffs respond that neither question is a pure question of law because each requires factual analysis to resolve. (Doc. Nos. 492 at 19–21; 493 at 18.)

Movate's first proposed question is not a controlling question of law within the meaning of § 1292(b) because it presumes a factual framework not consistent with either the pleadings or the Track One and Two Orders. As such, resolution of Movate's question, as framed, would not address the Court's conclusions. Moreover, although Movate is correct that determination of the existence of a duty is a question of law, the analysis required to make such a determination would still require a detailed inquiry into the record,

25-md-03149-AJB-MSB

especially considering that the Court's finding of a duty rested on allegations of Movate's conduct and access creating a foreseeable risk of harm to Plaintiffs' data. Thus, the inquiry into Movate's proposed question is one of both law and the application of law to these particular pleadings, making it inappropriate for certification. *See, e.g.*, *Belin v. Starz Ent., LLC*, No. 2:21-CV-09586-FWS-PLA, 2024 WL 5185313, at *4 (C.D. Cal. Oct. 25, 2024) (collecting cases); *People of the State of California v. Kinder Morgan Energy Partners, LP*, No. 07CV1883-MMA (WVG), 2016 WL 1165828, at *2 (S.D. Cal. Mar. 24, 2016); *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 879 (C.D. Cal. 2012).

The second question, reframed to excise negligent hiring,[11] would be a controlling question of law that the Ninth Circuit could resolve without necessarily applying the holding to the instant facts for resolution, which—as argued by Plaintiffs—would require determination of whether the allegations presented are sufficient. Accordingly, the Court finds that the second question is a controlling question of law and, thus, the first jurisdictional requirement is met.

## B.   Substantial Ground for Difference of Opinion

Movate contends that data-breach negligence cases differentiate between defendants who had the data or managed security systems and those who did not. It further states that the orders diverge from this established line of authority, leading to disagreements among reasonable jurists. (Doc. No. 472 at 20–21.) Plaintiffs respond that the court applied settled frameworks—*Brown v. USA Taekwondo* on duty and *In re Bank of Am.*, on negligent training and supervision—and that *City of Buffalo* is to the opposite effect: it concerned an unsettled, first-impression question of New York law certified to that State's high court, whereas settled California Supreme Court authority governs here, and no question requires referral.  (Doc. No. 493 at 19–20.)

///

---

[11]   Because the Court granted Movate's motion for reconsideration with regard to negligent hiring, the alternative request for certification of that issue for interlocutory appeal is moot.

25-md-03149-AJB-MSB

Movate has not shown substantial ground for a difference of opinion for either question. With regard to the first question, Movate's arguments and the case law it finds relevant are based on its stance that the Court found a duty derived from access and foreseeability. However, the Court did not rest its conclusion on those two findings alone, but on Movate's conduct as well. Movate's "strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference.'" *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

For support, Movates points to an unpublished district court case from a jurisdiction not applicable to the instant motion. *See Buttermore v. Loans*, No. CV 15-1514, 2016 WL 308875 (W.D. Pa. Jan. 25, 2016). Even considering the substance despite these failings, *Buttermore* undermines Movate's argument that there's a difference in opinion. Although Movate relies on *Buttermore* to demonstrate that knowledge of employee-specific propensity is required (Doc. No. 472 at 21), the *Buttermore* court in fact expressly addressed that the plaintiffs failed to provide specific factual allegations of system failures to supervise—acknowledging that a theory of widespread policy-based negligent training and supervision does not fail as a matter of law. *Buttermore*, 2016 WL 308875, at *5–6. Additionally, Movate relies on the legal standard set forth in a factually inapposite case, where the plaintiff asserted negligent hiring, supervision, and retention of a specific bad actor who allegedly sexually abused the minor plaintiff. *Fuller v. Fam. Servs. of Westchester, Inc.*, 209 A.D.3d 983, 983–84 (2022). Because the premise of the negligent training and supervision claims at issue here are not based on a theory of an individual bad actor with a propensity for tortious conduct, *Fuller* does not demonstrate a difference of opinion on the second question presented.

Because Movate does not demonstrate that the controlling law is unclear or disputed or that the issues are novel and complex questions of first impression for either question, Movate fails to demonstrate that there is a substantial ground for a difference of opinion as to either question.

///

25-md-03149-AJB-MSB

### C. Conclusion

Because the requirements of § 1292(b) are jurisdictional, Movate's failure to demonstrate a controlling question of law over which a substantial difference of opinion exists is an independently sufficient failure, making certification improper. *See ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) ("The first jurisdictional requirement is that the district court must certify its order for appeal. To do so, it must determine that the order meets the three certification requirements outlined in § 1292(b)[.]"). Because certification is not proper, the request to stay the proceedings pending appellate review does not arise. The motion to certify an interlocutory appeal and the related request for a stay are **DENIED**.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** Movate's motion for reconsideration and **ORDERS** as follows:

1. Movate's motion for reconsideration is **GRANTED** with regard to the negligent hiring claim alone and **DENIED** in all other respects.

2. The Track One Order (Doc. No. 445) is **VACATED** to the extent it substantively addresses a non-existent negligent hiring claim. Movate's motion to dismiss the Individual Users Class Action Complaint remains denied.

3. The Track Two Order (Doc. No. 444) is **VACATED** as to its analysis and conclusion regarding the negligent hiring claim and **AMENDED** to be consistent with this order. As such, Movate's motion to dismiss the School District Direct Action FAC (Doc. No. 366) is **GRANTED with regard to negligent hiring claim**. The negligent hiring claim raised in Count IX (*see* Doc. No. 288) is **DISMISSED**. The Court **GRANTS** Track Two Plaintiffs **leave to amend** for the limited purpose of **amending the negligent hiring claim only**. The deadline to file an amended complaint will be set upon the Court's resolution of the pending motion for leave to file an amended complaint (Doc. No. 491).

///

///

25-md-03149-AJB-MSB

4.    Movate's motion for certification of interlocutory appeal and corresponding request for a stay is **DENIED**.

**IT IS SO ORDERED.**

Dated:  August 3, 2026

Hon. Anthony J. Battaglia
United States District Judge

25-md-03149-AJB-MSB