John P. Carlin (NY 3031887)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

R. Rosie Vail (SBN 317977)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Alex Langsam (NY 5980891)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
jschutte@paulweiss.com
alangsam@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant
Bain Capital, L.P.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>*This Document Relates To:*<br><br>*Track 2 School District Class Action Plaintiffs* | Case No. 3:25-md-3149-AJB-MSB<br><br>MDL No. 3149<br><br>**DEFENDANT BAIN CAPITAL, L.P.'S NOTICE OF MOTION AND MOTION TO DISMISS THE SCHOOL DISTRICT SECOND AMENDED CLASS ACTION COMPLAINT (TRACK 2)**<br><br>Date: November 5, 2026<br>Time: 10am<br>Courtroom: 4A<br>Judge: Hon. Anthony J. Battaglia |

## <u>NOTICE OF MOTION AND MOTION</u>

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on November 5, 2026 at 10 a.m. PST, Defendant Bain Capital, L.P. ("Bain"), by and through its attorneys, respectfully moves this Court, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), for an order dismissing with prejudice claims against Bain in the Track 2 School District Plaintiffs' Second Amended Class Action Complaint.

The grounds for this motion are as follows:

*First*, the SAC should be dismissed for lack of personal jurisdiction;

*Second*, the negligence claim should be dismissed for failure to state a claim; and

*Third*, the claim for intentional interference with contract should also be dismissed for failure to state a claim.

This motion is made following the conference of counsel that took place on August 10, 2026.

This Motion to Dismiss is based on this Notice, the accompanying Memorandum of Points and Authorities, the complete files and records in these consolidated actions, and any other written or oral materials as may be presented before the Court takes this motion under submission.

- i -

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................... 1

PROCEDURAL HISTORY ........................................................................... 4

FACTUAL BACKGROUND.......................................................................... 5

LEGAL STANDARD ................................................................................... 7

ARGUMENT............................................................................................... 8

    **I.**    THE SAC IS A NEW PLEADING THAT FAILS TO INDEPENDENTLY STATE A CLAIM ............................................... 8

    **II.**    CLASS PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE THAT BAIN IS SUBJECT TO PERSONAL JURISDICTION.................................................................................. 9

    **III.**    CLASS PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE THAT BAIN WAS NEGLIGENT ..................................... 12

        A.    Class Plaintiffs Fail to Allege that Bain Owed Them a Duty ............................................................................ 12

        B.    Bain Did Not Proximately Cause Class Plaintiffs' Injuries ...................................................................... 18

        C.    Class Plaintiffs' Negligence Claim is Barred by the Economic Loss Doctrine ......................................... 19

    **IV.**    CLASS PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE BAIN TORTIOUSLY INTERFERED WITH POWERSCHOOL'S CONTRACTS ............................................. 21

CONCLUSION........................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams* v. *Johnson*,
    355 F.3d 1179 (9th Cir. 2004) ........................................................................ 8, 23

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ........................................ 15, 16

*Anderson* v. *Cnty. of Fresno*,
    2023 WL 2761168 (E.D. Cal. Apr. 3, 2023) ...................................................... 14

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 8, 16, 23

*Axiom Foods, Inc.* v. *Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) ......................................................................... 11

*Bank of N.Y.* v. *Fremont Gen. Corp.*,
    523 F.3d 902 (9th Cir. 2008) ........................................................................... 24

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007) ....................................................................................... 7, 8

*United States* v. *Bestfoods*,
    524 U.S. 51 (1998) .......................................................................................... 14

*Bily* v. *Arthur Young & Co.*,
    3 Cal. 4th 370 (1992) ...................................................................................... 18

*Brown* v. *Metro by T-Mobile*,
    768 F. Supp. 3d 1068 (C.D. Cal. 2024) ......................................................... , 17

*Brown* v. *USA Taekwondo*,
    483 P.3d 159 (2021) ........................................................................... 16, 17, 20

*Bullion Standard, Inc.* v. *Bank of Am., N.A.*,
    2026 WL 446243 (S.D. Cal. Feb. 17, 2026) .................................................... 23

*Cabral* v. *Ralphs Grocery Co.*,
    51 Cal. 4th 764 (2011) .................................................................................... 12

- iii -

BAIN'S MOTION TO DISMISS TRACK 2 SCHOOL DISTRICT
SECOND AMENDED CLASS ACTION COMPLAINT                25-md-3149-AJB-MSB

*Celebrity Chefs Tour, LLC* v. *Macy's, Inc.*,
   16 F. Supp. 3d 1141 (S.D. Cal. 2014) ...................................................................... 24

*Corcoran* v. *CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. 2016)........................................................................ 9

*Core-Vent Corp.* v. *Nobel Indus. AB*,
   11 F.3d 1482 (9th Cir. 1993) ................................................................................... 11

*Cruz* v. *Sears*,
   2012 WL 13175896 (S.D. Cal. Apr. 16, 2012) ........................................................ 16

*Daimler AG* v. *Bauman*,
   571 U.S. 117 (2014) ................................................................................................... 9

*Davis* v. *City of Nat'l City*,
   2020 WL 6799380 (S.D. Cal. Nov. 19, 2020) (Battaglia, J.) ................................... 16

*In re Delta Dental Antitrust Litig.*,
   509 F. Supp. 3d 1377 (J.P.M.L. 2020) ................................................................. 9, 12

*Dollar Tree Stores Inc.* v. *Toyama Partners, LLC*,
   2010 WL 1688583 (N.D. Cal. Apr. 26, 2010) ......................................................... 25

*Elden* v. *Sheldon*,
   46 Cal. 3d 267 (1988) ............................................................................................... 18

*Fam. Home & Fin. Ctr., Inc.* v. *Fed. Home Loan Mortg. Corp.*,
   525 F.3d 822 (9th Cir. 2008) ................................................................................... 24

*Ford Motor Co.* v. *Mont. Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021) ................................................................................................... 9

*Fresno Motors, LLC* v. *Mercedes Benz USA, LLC*,
   771 F.3d 1119 (9th Cir. 2014)................................................................................... 25

*Genesis Ins. Co.* v. *Nat'l Union Fire Ins. Co.*,
   783 F. App'x 683 (9th Cir. 2019) ............................................................................... 8

*Greystone Homes, Inc.* v. *Midtec, Inc.*,
   86 Cal. Rptr. 3d 196 (Ct. App. 4th Dist. 2008) ................................................... 19, 20

*Hamilton San Diego Apartments* v. *RBC Cap. Markets Corp.*,
   2012 WL 12863115 (S.D. Cal. 2012) ....................................................................... 21

- iv -

*Ixchel Pharma, LLC* v. *Biogen, Inc.*,
470 P.3d 571 (2020) ...................................................................................... 21

*Jimenez* v. *Hayes Apartment Homes, LLC*,
115 Cal. App. 5th 1072 (Ct. App. 4th Dist. 2025) ..................................... 13, 17

*Kuciemba* v. *Victory Woodworks, Inc.*,
531 P.3d 924 (Cal. 2023)................................................................................. 17

*Mard* v. *T-Mobile USA, Inc.*,
2022 WL 1322309 (C.D. Cal. Jan. 11, 2022)................................................... 18

*McCaughey* v. *Liberty Mut. Ins. Co.*,
2020 WL 2568303 (C.D. Cal. Jan. 30, 2020)................................................... 18

*Medimpact Healthcare Sys., Inc.* v. *IQVIA Holdings Inc.*,
2020 WL 1433327 (S.D. Cal. Mar. 24, 2020)................................................... 10

*Modisette* v. *Apple Inc.*,
241 Cal. Rptr. 3d 209 (Ct. App. 6th Dist. 2018) ........................................ 18, 19

*Moser* v. *Lifewatch Inc.*,
2020 WL 1849664 (S.D. Cal. Apr. 13, 2020) ................................................... 11

*Navarro* v. *Ski Data*,
2022 WL 18280359 (C.D. Cal. Dec. 7, 2022) .................................................. 15

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014)........................................................................... 5

*Palomar Health* v. *Am. Guarantee & Liab. Ins. Co.*,
2021 WL 4035005 (S.D. Cal. Sept. 3, 2021), *aff'd*,
2022 WL 3006356 (9th Cir. July 28, 2022). ...................................................... 7

*Payrovi* v. *LG Chem Am., Inc.*,
491 F. Supp. 3d 597 (N.D. Cal. 2020)............................................................. 10

*Picot* v. *Weston*,
780 F.3d 1206 (9th Cir. 2015).......................................................................... 11

*Quelimane Co.* v. *Stewart Title Guar. Co.*,
19 Cal. 4th 26 (1998)..........................................................................22, 23, 24

*Ramirez* v. *Cnty. of San Bernardino*,
806 F.3d 1002 (9th Cir. 2015)............................................................................ 8

- v -

*Ranza* v. *Nike, Inc.*, 792 F.3d 1059 (9th Cir. 2015) ................................................. 14

*Rosenthal & Rosenthal of California, Inc.* v. *Hilco Trading, LLC*,
    2020 WL 12948055 (C.D. Cal. Dec. 29, 2020), *aff'd,* 2022 WL
    18906 (9th Cir. Jan. 3, 2022).................................................................................23

*Rowland* v. *Christian*,
    69 Cal. 2d 108 (1968)............................................................................................17

*Royal Canin U. S. A., Inc.* v. *Wullschleger*,
    604 U.S. 22 (2025) ................................................................................................. 8

*Rutherford* v. *Owens-Illinois, Inc.*,
    16 Cal. 4th 953 (1997), *as modified on denial of reh'g*
    (Oct. 22, 1997)......................................................................................................24

*Schwarzenegger* v. *Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .......................................................................7, 9, 10

*Sheen* v. *Wells Fargo Bank, N.A.*, 505 P.3d 625 (Cal. 2022) ................................... 19

*Smahaj* v. *Retrieval-Masters Creditors Bureau, Inc.*,
    131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020) ............................................................. 15

*United States* v. *Somnia, Inc.*,
    339 F. Supp. 3d 947 (E.D. Cal. 2018), *aff'd,*
    2025 WL 1564345 (9th Cir. June 3, 2025) ........................................................... 8

*Matter of Star & Crescent Boat Co., Inc.*,
    549 F. Supp. 3d 1145 (S.D. Cal. 2021) ............................................................... 11

*Swartz* v. *KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)............................................................................7, 12

*Thomas Land & Dev., LLC* v. *Vratsinas Constr. Co*,
    2019 WL 3842995 (S.D. Cal. Aug. 4, 2019) (Battaglia, J.)................................ 12

*Tucker* v. *CBS Radio Stations, Inc.*,
    194 Cal. App. 4th 1246 (2011)........................................................................3, 17

*In re U.S. Vision Data Breach Litig.*,
    2025 WL 615366 (D.N.J. Feb. 26, 2025), *appeal pending*,
    No. 25-1626 (3d Cir. Apr. 2, 2025)..................................................................... 15

- vi -

*Walsh* v. *LG Chem Ltd.*,
    834 F. App'x 310 (9th Cir. 2020) ................................................................ 11

*Williams* v. *Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) .................................................................. 10

*X Corp.* v. *Ctr. for Countering Digital Hate, Inc.*,
    724 F. Supp. 3d 948 (N.D. Cal. 2024) ................................................. 24, 25

*Yamashita* v. *LG Chem, Ltd.*,
    62 F.4th 496 (9th Cir. 2023) ..................................................................... 11

**Statutes**

Cal. Civ. Proc. Code § 410.10 ........................................................................ 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) ............................................................................. 1, 7

Fed. R. Civ. P. 12(b)(6) ............................................................................. 1, 7

Restatement (Second) of Torts § 302B ...................................................... 12, 13

Restatement (Third) Torts, Liability for Physical and Emotional
    Harm, § 29 .......................................................................................... 18

BAIN'S MOTION TO DISMISS TRACK 2 SCHOOL DISTRICT
SECOND AMENDED CLASS ACTION COMPLAINT          25-md-3149-AJB-MSB

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Bain Capital, L.P. ("Bain") hereby moves to dismiss with prejudice the claims brought against Bain in the School District Second Amended Class Action Complaint (the "SAC" or "Complaint") because the School District Putative Class Action Plaintiffs ("Class Plaintiffs") have not adequately alleged (1) facts to support personal jurisdiction over Bain; (2) a negligence claim against Bain; and (3) that Bain intentionally interfered with contract.

## PRELIMINARY STATEMENT

Class Plaintiffs seek to hold an investment firm liable for a criminal data breach of a company whose data it never collected, possessed, controlled, or handled. The SAC does not allege that Bain configured PowerSchool's Student Information System ("SIS"), set the access controls that failed, or managed the contractor credentials the intruders used. *See* SAC ¶¶ 123, 264, 267. Despite extensive briefing, Class Plaintiffs identify no case that supports their theory that an investment firm could be held liable for a data breach at its portfolio company— especially when (1) the Court previously dismissed the negligence claim against the portfolio company, which controlled the data at all times, and (2) the data at issue belongs not to Class Plaintiffs but to their students. Crediting this novel duty at the pleading stage, based on nothing more than conclusory and vague allegations of budget and staffing oversight, would force investors everywhere to defend burdensome litigations when crimes are committed against the companies in which they invest, encourage needless litigation, and waste the Court's time and resources. The SAC also seeks purely economic damages, which cannot give rise to a negligence claim under blackletter law. Under these circumstances, the SAC simply cannot carry a negligence theory. Nor can Class Plaintiffs' tortious interference claim proceed when it (just like their negligence claim) attempts to recast Bain's run-of-the-mill investor conduct as intentional actions that procured Defendant

- 1 -

PowerSchool Holdings, Inc. ("PowerSchool") to breach its contracts with Class Plaintiffs.

Ultimately, the SAC is a new pleading. It supersedes the FAC and must stand or fall on its own allegations. Measured against Rule 12, it fails for multiple reasons.

*First*, this Court lacks personal jurisdiction over Bain, a Massachusetts-headquartered, Delaware-incorporated investment firm. The SAC alleges no suit-related conduct by Bain in California. Its central allegation is that Bain negotiated a transaction with PowerSchool, "at least some of which occurred in California." SAC ¶ 97. That is not conduct from which these claims arise, and Class Plaintiffs do not even allege that it bears a nexus to a data breach. Class Plaintiffs cannot make up the deficit with allegations about PowerSchool's contacts, because contacts cannot be imputed between parent and subsidiary absent agency, alter ego, or a similar relationship, and Class Plaintiffs plead none. Nor would jurisdiction in California be reasonable in a dispute between non-resident school districts and a Massachusetts firm, when the SAC concedes that other forums are available. SAC ¶ 13.

*Second*, Class Plaintiffs fail to state a negligence claim because Bain owed them no duty, and duty is a question of law for this Court. The SAC alleges no affirmative act by Bain that possessed the data or created the opportunity for the intrusion. An entity that neither collected nor controlled the data owes no duty to safeguard it. More fundamentally, the Court has already expressed doubt that PowerSchool owed a duty to Class Plaintiffs, which "merely collected the personal information belonging to individual students and teachers." Dkt. 437, at 11. It would be illogical that Bain, which is not alleged to have any involvement in handling the data, could owe a duty to Class Plaintiffs when PowerSchool, which collected, stored, and controlled the data at all times, did not. Moreover, Class Plaintiffs' negligence claim fails because, as the Court has observed, "foreseeability

- 2 -

alone does not establish the existence of a duty,"[1] and the *Rowland* factors foreclose the novel duty Class Plaintiffs urge.  Finally, the SAC does not plead proximate causation and Class Plaintiffs seek purely economic damages, which cannot give rise to a negligence claim under the economic loss rule.

***Third***, Class Plaintiffs fail to state a claim for intentional interference with contract as a matter of law.  The SAC identifies no communication in which Bain directed PowerSchool to do anything, and allegations that the Merger Agreement granted Bain a veto right over material business decisions by PowerSchool do not equate to Bain *directing* layoffs.  Nor does having a right to approve certain decisions equate to alleging that Bain affirmatively procured a breach of PowerSchool's contracts with its customers.  Moreover, generalized awareness that PowerSchool had customer contracts is not knowledge that a breach was "certain or substantially certain" to follow, as the law requires to plead this tort.  Further, Class Plaintiffs do not adequately allege that the breach accomplished by criminals using a contractor's compromised credentials was proximately caused by Bain.  Bain did no more than supposedly exercise rights the transaction documents conferred, and there are no allegations that Bain acted with the necessary intent to tortiously interfere.

None of this is cured by the Court's earlier rulings.  The prior Order addressed a superseded complaint and included citations to allegations in Track 2 Direct Plaintiffs' complaint, and the order denying reconsideration asked only whether the Court had committed "clear error"—not whether Class Plaintiffs have now pleaded a plausible claim under Rule 12.  Measured against the pleading standard that actually governs, the SAC fails many times over.  Bain respectfully requests that the Court dismiss every claim against it, this time with prejudice.

---

[1] Dkt. 549, at 7 (quoting *Tucker* v. *CBS Radio Stations, Inc.*, 194 Cal. App. 4th 1246, 1253 (2011)).

- 3 -

## **PROCEDURAL HISTORY**

Following the Parties' briefing on similar allegations over a year ago, as well as oral argument on the Parties' motions in January 2026, the Court granted in part and denied in part Bain's motion to dismiss Class Plaintiffs' First Amended Complaint ("FAC"). Dkt. 435 (the "Order"). The Court concluded that the FAC failed to adequately allege personal jurisdiction over Bain, and claims for negligence per se (part of Count 3), statutory violations of the Computer Fraud and Abuse Act ("CFAA") (Count 4) and California's Comprehensive Data Access and Fraud Act ("CDAFA") (Count 5), and unjust enrichment (Count 7). *See id.* at 25. Class Plaintiffs then sought to amend their complaint. Bain met and conferred with Plaintiffs, and did not oppose the filing of the SAC. Dkt. 483.

On April 15, Bain filed a Motion for Reconsideration of the Court's order denying Bain's motion to dismiss the Track 1 Individual User Plaintiffs' Complaint, and, in the alternative, for Certification of Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (the "Motion for Reconsideration"), Dkt. 466-1. Among other things, that motion addressed the Court's finding that Track 1 had adequately pleaded negligence, as is at issue here. While the Court subsequently denied the Motion for Reconsideration, it did so by applying the "clear error" standard for a motion to reconsider and did not engage with whether the allegations were sufficient to withstand a 12(b)(6) challenge. *See* Dkt. 549, at 2–3, 10.

On April 22, the Parties filed a joint stipulation stating that their SAC would "include jurisdictional allegations that the Court found were sufficient to establish personal jurisdiction over Bain with regard to the [Track 2] School District Direct Action Plaintiffs' First Amended Consolidated Master Complaint." Dkt. 477, at 2. The stipulation also stated that Class Plaintiffs "intend to reassert dismissed claims in their [SAC] solely to preserve the record for appeal," and thus are not reasserting

- 4 -

them for purposes of the MDL proceedings. *Id.* at 3.[2]  Class Plaintiffs now re-assert their claims against Bain brought on theories of direct liability, namely negligence and intentional interference with contract, with most of the Complaint's allegations as to Bain unchanged from the FAC.

## FACTUAL BACKGROUND[3]

Bain is a leading private investment firm headquartered in Massachusetts and incorporated in Delaware.  SAC ¶¶ 13, 20.  Since 1984, Bain has invested in or acquired an ownership stake in hundreds of companies across a broad range of industries. *Id*. at ¶ 21.

Relying only on the Merger Agreement's chronology of the transaction, Class Plaintiffs allege that Bain "expressed interest in discussing potential opportunities for a business combination or acquisition of PowerSchool" starting in 2022.[4]  SAC ¶ 97.  However, Class Plaintiffs conveniently omit that, "[r]epresentatives of Bain did not reach out to [PowerSchool's CEO] until December 2023."[5]  On June 6, 2024, following arms'-length negotiations, Bain and PowerSchool executed the Merger Agreement.[6]  SAC ¶ 97.  Under the Merger Agreement, Bain and PowerSchool

---

[2]  The SAC adds no new allegations that would support reviving any of these claims.  Nonetheless, to preserve the record on appeal, Bain incorporates its prior arguments that all of these claims should be dismissed. *See* Dkts. 303, 379.  Bain also preserves its argument that Class Plaintiffs lack standing, and therefore this Court lacks subject matter jurisdiction pursuant to Rule 12(b)(1). *See* Dkt. 303 (joining PowerSchool's Motion to Dismiss, Dkt. 302).

[3]  This Motion to Dismiss takes the facts alleged in the Complaints as true, as is required at this stage.  Nothing in this Motion to Dismiss should be taken as an admission of the truth of the allegations brought or a waiver of any objection to the accuracy of those allegations.

[4]  *See* PowerSchool Holdings, Inc., Schedule 14C Information Statement Relating to Merger or Acquisition, at 21 (Sept. 4, 2024), https://www.sec.gov/Archives/edgar/data/1835681/000119312524212624/d836904 ddefm14c.htm ("Schedule 14C Information Statement") (incorporated by reference in the Complaint, at SAC ¶ 107 n.41); *see In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) (holding that full documents are incorporated by reference where plaintiffs "rely[] on portions of it in their complaint").

[5]  Schedule 14C Information Statement, *supra* note 4, at 21.

[6]  *See* Agreement and Plan of Merger between BCPE Polymath Buyer, Inc., BCPE Polymath Merger Sub, Inc. and PowerSchool Holdings, Inc., at 1 (June 6, 2024),

- 5 -

BAIN'S MOTION TO DISMISS TRACK 2 SCHOOL DISTRICT
SECOND AMENDED CLASS ACTION COMPLAINT                    25-md-3149-AJB-MSB

maintained independent control over their businesses until the closing of the transaction on October 1, 2024:

> The Parties acknowledge and agree that the restrictions set forth in this Agreement are **not intended to give [the Bain entities]**, on the one hand, or [PowerSchool], on the other hand, directly or indirectly, **the right to control or direct the business or operations** of the other at any time **prior to [October 1, 2024]. Prior to [October 1, 2024],** and subject to the terms and conditions of this Agreement, each of [the Bain entities] and **[PowerSchool] shall exercise**, consistent with the terms, conditions and restrictions of this Agreement, **complete control and supervision over their own business and operations**.[7]

Nonetheless, Class Plaintiffs assert various claims against Bain related to a third-party data breach of PowerSchool's systems (the "Incident") prior to this date. According to Class Plaintiffs, Bain exercised control over PowerSchool, which was "still an independent, public entity" following the signing of the Merger Agreement, "dictat[ing] PowerSchool's strategic directives and us[ing] PowerSchool's operations to further its private investment purposes." SAC ¶¶ 20, 100. Class Plaintiffs also plead in general terms that Bain implemented "[a]ggressive cost-cutting measures," that "contributed to the" Incident, *id.*, and that the Merger Agreement "relied upon analyses contemplating the efficiencies from offshoring." SAC ¶ 107. These allegations typify the SAC's Bain-specific allegations: they lack specific facts in support of conclusory allegations, such as when Bain purportedly directed PowerSchool to take such actions and how that direction occurred. *See, e.g.*, SAC ¶¶ 46, 100, 162, 202, 203. Class Plaintiffs largely plead that Bain's investment in PowerSchool coincided with an increase in PowerSchool's non-U.S. workforce and contractors, per its own plans. *See* SAC ¶¶ 46, 100, 105, 162.

Class Plaintiffs further allege that, prior to October 1, Bain "direct[ed],

---

https://www.sec.gov/Archives/edgar/data/1835681/000119312524157845/d846178 dex21.htm (emphasis added) ("Merger Agreement").

[7] *See id.*, at 64.

BAIN'S MOTION TO DISMISS TRACK 2 SCHOOL DISTRICT
SECOND AMENDED CLASS ACTION COMPLAINT                 25-md-3149-AJB-MSB

encourage[ed], and/or pressure[ed] PowerSchool to . . . lay off employees involved in cybersecurity operations and information technology infrastructure as exemplified by the August 2024 layoffs." SAC ¶ 162. Class Plaintiffs draw this conclusion from social media postings they cite about the layoffs—yet none of those posts mention Bain or suggest that Bain had any role in the layoffs. *See* SAC ¶¶ 101–03. Class Plaintiffs suggest that, at the time, Bain was aware of the consequences of its actions because it knew of PowerSchool's cybersecurity obligations. *See* SAC ¶ 161. Additionally, Class Plaintiffs allege that in August and September 2024, there were "incident[s] of unauthorized access" to PowerSchool's systems. SAC ¶ 19. "Cybercriminals successfully breached PowerSchool's systems using compromised credentials belonging to" an employee of Movate, a technology services company that PowerSchool engaged as a subcontractor. SAC ¶¶ 263, 267.

According to the Complaint, shortly after "Bain Capital's acquisition," Bain "moved to swiftly execute on [its] offshoring plan." SAC ¶ 108. This "offshoring plan" purportedly "align[ed] with Bain Capital's ambitious expansion plans" and was part of Bain's "long and consistent history of investing in companies that offshore jobs." SAC ¶¶ 108–09. But the Complaint fails to allege how this purported "history" was related to the Incident involving PowerSchool.

## **LEGAL STANDARD**

On a Rule 12(b)(2) motion, Plaintiffs "bear[] the burden of demonstrating that jurisdiction is appropriate" and must make a "prima facie showing of jurisdictional facts." *Schwarzenegger* v. *Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "[B]are bones assertions of minimum contacts" do not suffice. *Swartz* v. *KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007); *accord Palomar Health* v. *Am. Guarantee & Liab. Ins. Co.*, 2021 WL 4035005, at *2 (S.D. Cal. Sept. 3, 2021), *aff'd*, 2022 WL 3006356 (9th Cir. July 28, 2022).

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp.* v. *Twombly*, 550

- 7 -

BAIN'S MOTION TO DISMISS TRACK 2 SCHOOL DISTRICT
SECOND AMENDED CLASS ACTION COMPLAINT                    25-md-3149-AJB-MSB

U.S. 544, 570 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams* v. *Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## **ARGUMENT**

## **I. THE SAC IS A NEW PLEADING THAT FAILS TO INDEPENDENTLY STATE A CLAIM**

The SAC is a new pleading that must stand or fall on its own allegations. The Supreme Court has stated that an amended complaint supersedes the original, which "no longer performs any function in the case." *Royal Canin U. S. A., Inc*. v. *Wullschleger*, 604 U.S. 22, 35 (2025); *Ramirez* v. *Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("[A]n amended complaint supersedes the original, the latter being treated thereafter as non-existent").

Accordingly, the Parties may bring any arguments available to them— regardless of whether they were raised in a prior motion to dismiss. *See United States* v. *Somnia, Inc.*, 339 F. Supp. 3d 947, 953 (E.D. Cal. 2018) (entertaining arguments previously made on motion to dismiss after partially dismissed complaint because "the law in this Circuit is clear that an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent'"), *aff'd*, 2025 WL 1564345 (9th Cir. June 3, 2025); *see also id*. ("Courts in this Circuit therefore have permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available."). To the extent Class Plaintiffs invoke law of the case, it does not apply: the SAC is a new pleading, and in all events the prior Order dismissed the Class Plaintiffs for lack of personal jurisdiction, so its observations on their substantive claims were not necessary to that disposition and are not holdings entitled to law-of-the-case effect. *See Genesis Ins. Co.* v. *Nat'l Union Fire Ins. Co.*, 783 F. App'x 683, 685 (9th Cir.

- 8 -

2019)

## II.   CLASS PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE THAT BAIN IS SUBJECT TO PERSONAL JURISDICTION

Plaintiffs "bear[] the burden of demonstrating that jurisdiction is appropriate." *Fred Martin Motor Co.*, 374 F.3d at 800. In an MDL such as this, personal jurisdiction over a defendant "must exist in the district where [the action] is filed" because the transferee court's jurisdiction is rooted in and equivalent to that of the transferor court. *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379–80 (J.P.M.L. 2020). Class Plaintiffs allege that California has personal jurisdiction over Bain.[8]

California's long-arm statute extends to the limits of the Due Process Clause under the U.S. Constitution. *See* Cal. Civ. Proc. Code § 410.10. To satisfy due process, Class Plaintiffs must allege that Bain has sufficient minimum contacts with California such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Ford Motor Co.* v. *Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). The SAC relies on formulaic and conclusory allegations that do not establish personal jurisdiction. *See Corcoran* v. *CVS Health Corp.*, 169 F. Supp. 3d 970, 981 (N.D. Cal. 2016) (dismissing for lack of personal jurisdiction when "plaintiffs have not met their burden to make a *prima facie* case of general or specific jurisdiction").

The SAC lacks sufficient allegations to establish specific jurisdiction,[9] which exists when (1) a defendant has purposefully availed itself of the forum or purposefully directed activities toward the forum, (2) the claim arises from that

[8]   After the FAC was dismissed for lack of personal jurisdiction over Bain in New York or New Jersey (the transferor courts), Order at 9, Class Plaintiffs filed Direct Filing Notices designating the Eastern District of California as the district "in which Plaintiffs would have filed their claims against Bain." *See* Dkt. 483, at 4 n.2.

[9]   The SAC includes no additional allegations that change the Court's prior ruling that "[g]eneral jurisdiction . . . does not exist over Bain in California" since Bain is incorporated in Delaware and has its principal place of business in Massachusetts. Order at 6; *see Daimler AG* v. *Bauman*, 571 U.S. 117, 137 (2014).

- 9 -

defendant's in-forum acts, and (3) the exercise of jurisdiction would be reasonable. *See Fred Martin Motor Co.*, 374 F.3d at 802.

***First,*** the SAC fails to plausibly allege that Bain purposefully availed itself to the benefits and protections of California. Class Plaintiffs have incorporated—almost verbatim—allegations from the Track 2 Direct Action Complaint that the Court concluded adequately alleged personal jurisdiction over Bain under an alter ego theory of liability. *See* Dkt. 477, at 2; Order at 6–7. But Class Plaintiffs cannot rely on allegations of Bain's relationship with PowerSchool because they seek to hold Bain liable only on a theory of direct liability, and the "Court cannot impute the parent company's contacts to the subsidiary, or vice versa, absent allegations of agency, alter ego, or a similar relationship," even when a complaint alleges a relationship of "full, total and explicit control." *Payrovi* v. *LG Chem Am., Inc.*, 491 F. Supp. 3d 597, 603 (N.D. Cal. 2020). *See Williams* v. *Yamaha Motor Co.*, 851 F.3d 1015, 1022–25 (9th Cir. 2017) ("investor-portfolio company relationship alone cannot serve as the basis for specific jurisdiction"). This principle applies with even greater force here because Bain does not have any ownership interest in PowerSchool; certain funds advised by an affiliate of Bain do.[10]

Class Plaintiffs must plead specific "suit-related conduct" directly by Bain that "create[s] a substantial connection with [California]." *Medimpact Healthcare Sys., Inc.* v. *IQVIA Holdings Inc.*, 2020 WL 1433327, at *5 (S.D. Cal. Mar. 24, 2020). Yet the SAC alleges only that Bain approached PowerSchool, a California company, about a potential business merger and had meetings with its shareholders and CEO, "at least some of which occurred in California." SAC ¶¶ 12, 97. These conclusory allegations that Bain conducted some business in California fail to establish specific jurisdiction. *See Moser* v. *Lifewatch Inc.*, 2020 WL 1849664, at

---

[10] "PowerSchool surviv[ed the] merger as a wholly owned subsidiary of" BCPE Polymath Buyer, Inc., whose shares were "transferred to BCPE Polymath Topco, LP, a Delaware limited partnership and affiliate of investment funds advised by Bain." Schedule 14C Information Statement, *supra* note 4, at i.

- 10 -

*8 (S.D. Cal. Apr. 13, 2020) (finding no personal jurisdiction based on conclusory allegations that defendant "conducts business in California."); *Picot* v. *Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) (finding two trips to California by defendant to be "transitory presence" insufficient for personal jurisdiction).

***Second***, Class Plaintiffs fail to allege that the "relationship between the nonresident defendant, the forum, and the litigation [arises] out of contacts that the defendant [itself] creates with the forum State." *Axiom Foods, Inc.* v. *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Class Plaintiffs do not, as they must, allege "a close connection between contacts and injury." *Yamashita* v. *LG Chem, Ltd.*, 62 F.4th 496, 506–07 (9th Cir. 2023). Because Class Plaintiffs cannot impute PowerSchool's contacts to Bain, their allegations that some meetings took place in California lack any such "direct nexus" to their alleged injuries. *See Walsh* v. *LG Chem Ltd.*, 834 F. App'x 310, 312 (9th Cir. 2020) (no personal jurisdiction where the complaint failed to allege a "direct nexus" between alleged injuries and alleged contacts). Having failed to meet their burden under the first two factors required for specific jurisdiction, the Court need not analyze the third factor. *See Matter of Star & Crescent Boat Co., Inc.*, 549 F. Supp. 3d 1145, 1170 (S.D. Cal. 2021).

***Third***, assuming *arguendo* that Class Plaintiffs adequately alleged the first two elements, each of the seven factors courts in the Ninth Circuit consider weighs against exercising personal jurisdiction over Bain here. *See Core-Vent Corp.* v. *Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993) (setting forth factors). As explained above, the Complaint's vague and conclusory assertions fail to describe any significant interjection into California by Bain. This dispute is between New York and New Jersey school districts and an investment company headquartered in Massachusetts and incorporated in Delaware—none of which is alleged to have any significant connection to California. The SAC concedes that adequate alternative forums exist. SAC ¶ 13. Bain is headquartered in Massachusetts and incorporated in Delaware, and Class Plaintiffs, who bear the burden, cannot show no alternative

- 11 -

forum is available. Nor does the consolidation of these cases in this Court create sufficient efficiencies to support jurisdiction—consolidation cannot confer jurisdiction beyond that of the transferor court. *See In re Delta Dental*, 509 F. Supp. 3d at 1379–80.

In sum, Class Plaintiffs' "bare bones assertions of minimum contacts" in California are not sufficient to satisfy their pleading burden. *See Swartz*, 476 F.3d at 766. The Court should dismiss Bain for lack of personal jurisdiction.

## III. CLASS PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE THAT BAIN WAS NEGLIGENT

The existence of a duty is a question of law for the Court. *Cabral* v. *Ralphs Grocery Co.*, 51 Cal. 4th 764, 770 (2011). To assert a claim for negligence, Class Plaintiffs must allege that (1) Bain owed them "a duty to exercise due care;" (2) Bain breached that duty; (3) Bain's breach caused them harm; and (4) they suffered damages. *See Thomas Land & Dev., LLC* v. *Vratsinas Constr. Co*, 2019 WL 3842995, at *9 (S.D. Cal. Aug. 4, 2019) (Battaglia, J.). Class Plaintiffs fail to adequately plead any of these elements in their Complaint, warranting dismissal.

### A. CLASS PLAINTIFFS FAIL TO ALLEGE THAT BAIN OWED THEM A DUTY

Class Plaintiffs fail to allege that Bain owed a duty, warranting dismissal of the negligence claim. *See Thomas Land & Dev., LLC*, 2019 WL 3842995, at *9 (dismissing negligence claim when plaintiffs failed to adequately allege a duty).

*First*, Bain's purported conduct leading up to the cyber incident—directing workforce reductions and offshoring—did not give rise to a duty. An actor owes a duty of care in certain situations when they created or controlled the opportunity or environment that allowed the alleged harm, such as "where the actor's own affirmative act has *created* or exposed the other to a recognizable high degree of risk through such misconduct," and "[w]here property of which the actor *has possession or control* affords a peculiar temptation or opportunity for intentional interference

- 12 -

likely to cause harm," (emphasis added).  Restatement (Second) of Torts § 302B; *see* SAC ¶ 182.  These are exactly the grounds for the Order's conclusion that Bain owed Class Plaintiffs a duty: "Bain, through its own decisions, *contributed to creating* the cybersecurity vulnerabilities that enabled the breach . . . the asserted duty arises from Bain's own conduct in directing or *controlling* the security-related decisions at issue."  Order at 20 (emphasis added).  Similarly, in denying Bain's Motion for Reconsideration, the Court found no clear error in the conclusion that Bain owed a duty, stating, "a duty arose from Bain's alleged direction of mass layoffs of PowerSchool's cybersecurity personnel and the offshoring of cybersecurity functions as *creating* and increasing a foreseeable risk of the breach."  Dkt. 549, at 9 (emphasis added).

These conclusions were incorrect.  None of the situations set forth in Restatement (Second) of Torts § 302B confer a duty on Bain here because the FAC and the SAC lack any allegations that Bain created or controlled the "opportunity" for the criminal third-party group to enter PowerSchool's SIS, let alone that it controlled access to SIS.  The group exfiltrated data from SIS, which allegedly "lacked multi-factor authentication and password rotation for contractors, endpoint protection for suspicious network activity, and adequate data encryption implementation" by using compromised credentials belonging to a Movate employee—none of which Class Plaintiffs allege involved, included, or was controlled by Bain.  SAC ¶¶ 123, 264, 267.  Class Plaintiffs' injuries are "too attenuated from [Bain's] alleged conduct" to "support the finding of a duty."  *Brown* v. *Metro by T-Mobile*, 768 F. Supp. 3d 1068, 1092 (C.D. Cal. 2024).  Crediting these attenuated allegations would risk extending "liability to every conceivably foreseeable accident, without regard to common sense or good policy."  *Jimenez* v. *Hayes Apartment Homes, LLC,* 115 Cal. App. 5th 1072, 1087 (Ct. App. 4th Dist. 2025).  And while the decision denying the Motion for Reconsideration stated Bain owed a duty because its actions "creat[ed] and increas[ed] a foreseeable risk of the

- 13 -

breach," it did not determine whether the FAC adequately alleged Bain owed a duty—it only determined there was "no clear error" in the Order. *See* Dkt. 549, at 9 (analyzing under the "clear error standard").

Moreover, there is a fundamental defect in Class Plaintiffs' theory that Bain's duty purportedly arose from *its direction* of PowerSchool: this is an agency or alter ego theory masquerading as negligence. Yet Class Plaintiffs have disclaimed all vicarious liability and are pursuing only direct liability theories.[11] And claims that an alleged parent[12] directed a subsidiary to act are the hallmark of corporate conduct that may only be reached through theories of vicarious liability—not through direct negligence claims. Additionally, the SAC's allegations that Bain supervised budget and staffing constitute precisely the typical business operations that cannot pierce the corporate veil. *See Ranza* v. *Nike, Inc.*, 792 F.3d 1059, 1074 (9th Cir. 2015) ("a parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is 'consistent with the parent's investor status'"); *see also* Order at 12 ("A parent's involvement in 'financing and macro-management' of its affiliates, without more, does not establish alter ego.").

There is no basis in the law that the *direction* of a subsidiary's actions within the range of typical business activity imposes a duty *in negligence* to customers of that subsidiary. "[C]ourts generally presume 'that the directors are wearing their subsidiary hats and not their parent hats when acting for the subsidiary.'" *Anderson* v. *Cnty. of Fresno*, 2023 WL 2761168, at *55 (E.D. Cal. Apr. 3, 2023) (quoting *United States* v. *Bestfoods*, 524 U.S. 51, 69–70 (1998)). Because Class Plaintiffs' theory must derive from a vicarious liability theory that acknowledges corporate separateness, not from a direct liability theory that pushes aside decades of settled caselaw, it must be rejected.

*Second*, it defies credulity that Bain, which is not alleged to have *any*

---

[11] *See* Dkt. 303, at 17 and n.16.

[12] Bain does not have an ownership interest in PowerSchool. *Supra* note 10.

- 14 -

involvement with Class Plaintiffs' data, owed a duty when PowerSchool, which collected and controlled the data at all times, did not. *Compare* Order at 22 *with* Dkt. 437, at 10–11. In dismissing Class Plaintiffs' negligence claim against PowerSchool, the Court emphasized that the data stolen from SIS did not belong to Class Plaintiffs, which are "schools and school districts that merely collected the personal information belonging to individual students and teachers." *Id.*, at 11. The Court was thus highly skeptical that a general common law duty to safeguard personal information would run to PowerSchool—*the party that held the data*. *See id.* at 10–11 ("even assuming Plaintiffs can allege a general common law duty to safeguard personal information, that duty is not one that PowerSchool would owe to the Track Two Plaintiffs which are schools and school districts that merely collected the personal information belonging to individual students and teachers."). The Court's dismissal of Class Plaintiffs' negligence claim against PowerSchool only underscores why a negligence claim against Bain should be dismissed: If the custodian of the data owed Class Plaintiffs no duty, an investor that never touched it owes none.

*Third*, courts make clear that in the data-breach context, an entity that neither collected nor controlled the data at issue owes no duty to safeguard it. *See Navarro* v. *Ski Data*, 2022 WL 18280359, at *10 (C.D. Cal. Dec. 7, 2022) (no duty where the defendant did not store or possess the PII at issue); *Smahaj* v. *Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 825 (N.Y. Sup. Ct. 2020) (no duty where a third party possessed and stored the plaintiff's data and the plaintiff did not allege the defendant controlled the network or its security); *In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *8–10 (D.N.J. Feb. 26, 2025) (no duty where a different party collected the data and there was "no relationship between the parties on which the [c]ourt [could] find" a duty), *appeal pending*, No. 25-1626 (3d Cir. Apr. 2, 2025). Even the authority Class Plaintiffs previously invoked confirms this rule: a duty to protect data arises only "[o]nce [d]efendants collected [p]laintiffs' information." *In*

- 15 -

BAIN'S MOTION TO DISMISS TRACK 2 SCHOOL DISTRICT
SECOND AMENDED CLASS ACTION COMPLAINT                    25-md-3149-AJB-MSB

*re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *14 (D.N.J. Dec. 16, 2021).

The SAC contains no allegations that Bain handled, possessed, collected, controlled, or otherwise accessed the data at issue—something the Court concluded in the Order: Class Plaintiffs have "not alleged that Bain collected or handled the PII data; PowerSchool did," Order at 22. The SAC does not contain any new facts that would change this Court's determination on that issue.

*Fourth*, the SAC improperly attempts to bootstrap Bain's purported duty to PowerSchool in violation of Rule 8. *See Davis* v. *City of Nat'l City*, 2020 WL 6799380, at *6 (S.D. Cal. Nov. 19, 2020) (Battaglia, J.) (the "[c]omplaint is replete with the improper lumping of defendants," and it was unclear who plaintiffs referred to when referencing "defendants" generally). Class Plaintiffs claim that Bain's duty "arose as a result of the special relationship that existed between PowerSchool, Plaintiffs, and Class Members." SAC ¶ 175. But there are no allegations suggesting a relationship between Bain and individual students, schools, or school districts, and there is no established special relationship here. *See Brown* v. *USA Taekwondo*, 483 P.3d 159, 166 (2021).

The Complaint also alleges that *PowerSchool* "holds itself out as a protector of consumer data" and therefore "PowerSchool, *along with Bain Capital*, thereby assumed a duty to reasonably protect the Data entrusted to them." SAC ¶ 171 (emphasis added). Without more, such "legal conclusion[s] couched as a factual allegation" should be disregarded. *Iqbal*, 556 U.S. at 678; *see Cruz* v. *Sears*, 2012 WL 13175896, at *2 (S.D. Cal. Apr. 16, 2012) (dismissing negligence claim when "the complaint consist[ed] of conclusory allegations and [was] devoid of factual enhancement").

*Fifth*, unable to ground a duty elsewhere, Class Plaintiffs rely solely (and impermissibly) on foreseeability. Class Plaintiffs allege that Bain owed a duty because they "were the foreseeable and probable victims of any inadequate security

- 16 -

BAIN'S MOTION TO DISMISS TRACK 2 SCHOOL DISTRICT
SECOND AMENDED CLASS ACTION COMPLAINT                25-md-3149-AJB-MSB

practices." SAC ¶¶ 173, 181–82. In concluding Bain owed a duty in the Order, the Court concluded that Bain "knew that student PII data is valuable and targeted by criminals, that data breaches were a common and foreseeable risk and nonetheless directed reductions in cybersecurity staffing and outsourced cybersecurity functions to unguarded contractors." Order at 20. But these conclusory allegations of foreseeability do not suffice to establish a duty: without more, foreseeability "alone does not establish the existence of a duty." *Tucker*, 194 Cal. App. 4th at 1253. In any event, such allegations are too attenuated to establish a duty: Class Plaintiffs fail to allege how it was foreseeable that *PowerSchool's* alleged cuts would lead to an illegal and criminal data breach, let alone that Bain's purported "direction" would. *See Metro by T-Mobile*, 768 F. Supp. 3d at 1092.

*Finally*, the negligence claim should be dismissed because Class Plaintiffs seek to impose a novel duty on Bain when none of the factors in *Rowland* would countenance such an approach. *See Kuciemba* v. *Victory Woodworks, Inc.*, 531 P.3d 924, 943 (Cal. 2023); *Brown*, 483 P.3d at 167–68. Courts must consider the possible implications of imposing such an unprecedented duty under the *Rowland* factors. *See Jimenez*, 115 Cal. App. 5th at 1086–87; Dkt. 549, at 9. These weigh a number of considerations, including "the foreseeability of harm to the plaintiff, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct," and the "policy of preventing future harm," among others. *Rowland* v. *Christian*, 69 Cal. 2d 108, 113 (1968). The Court did not previously engage with these factors when it first assessed the negligence claim against Bain. *See* Order, at 20–21. Nor did the Court analyze these factors when denying Bain's Motion for Reconsideration, but there, the Court was clear that it only analyzed the claim under a "clear error" standard, and it did not weigh the potential policy implications, as "[p]olicy disagreement . . . does not establish clear error, particularly at the pleading stage." Dkt. 549, at 9. Applying these factors here counsels that the imposition of a duty on Bain is inappropriate. Even if the Court

- 17 -

were to credit Class Plaintiffs' allegations of foreseeability, imposing a duty on Bain would vastly expand negligence law, given Bain's role as an investor in PowerSchool, the absence of any allegations that Bain collected or possessed Class Plaintiffs' data, and Bain's lack of alleged control over the circumstances that purportedly led to the cyber incident. Determining that Bain owed a duty would lead to "potentially infinite liability," *Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370, 397 (1992), for similarly situated investment firms, and may impose "an intolerable burden on society." *Elden* v. *Sheldon*, 46 Cal. 3d 267, 274 (1988).

## B. BAIN DID NOT PROXIMATELY CAUSE CLASS PLAINTIFFS' INJURIES

Although Class Plaintiffs' failure to sufficiently allege a duty obviates the need to consider the remaining elements of negligence,[13] Class Plaintiffs also fail to allege that Bain proximately caused their injuries. The Complaint makes only a "tenuous connection between" Bain's conduct and the Class Plaintiffs' injuries, which "bars a finding of proximate causation." *Modisette* v. *Apple Inc.*, 241 Cal. Rptr. 3d 209, 224 (Ct. App. 6th Dist. 2018). While it alleges that Bain engaged in "[a]ggressive cost-cutting" that "contributed to the Data Breach," SAC ¶ 100, such allegations fail to plead that Bain's actions were "a substantial factor in producing" any "foreseeable consequences." *McCaughey* v. *Liberty Mut. Ins. Co.*, 2020 WL 2568303, at *3 (C.D. Cal. Jan. 30, 2020); *see Modisette*, 241 Cal. Rptr. at 225 ("legal responsibility must be limited to those causes which are so close to the result, or of such significance as causes, that the law is justified in making the defendant pay"); Restatement (Third) Torts, Liability for Physical and Emotional Harm, § 29 (liability is limited to foreseeable harm "that made the actor's conduct tortious").

The Order concluded that the FAC alleged a "plausible causation chain," specifically that Bain "directed offshoring and cost-cutting affecting cybersecurity[,

---

[13] Because Bain did not owe Class Plaintiffs a duty, Bain did not breach any duty, thus the Court "need not consider the remaining elements of negligence." *See Mard* v. *T-Mobile USA, Inc.*, 2022 WL 1322309, at *4 (C.D. Cal. Jan. 11, 2022).

- 18 -

BAIN'S MOTION TO DISMISS TRACK 2 SCHOOL DISTRICT
SECOND AMENDED CLASS ACTION COMPLAINT                    25-md-3149-AJB-MSB

which] weakened PowerSchool's cybersecurity infrastructure." Order at 21. But Class Plaintiffs must plead more for proximate causation. *Modisette* makes clear that Class Plaintiffs fail to plead causation even if, as they appear to do here, Bain's alleged actions "w[ere] a necessary antecedent" of their injuries and "create[d] the condition that made [Class] Plaintiffs' injuries possible." *See Modisette*, 241 Cal. Rptr. at 225. Class Plaintiffs' injuries were the result of a criminal third-party group that used compromised credentials to obtain data from PowerSchool's systems. SAC ¶ 267. The Complaint does not allege that Bain's actions were "so close to the result, or of such significance as causes." *See Modisette*, 241 Cal. Rptr. at 225. Accordingly, the "only reasonable conclusion" here is the "absence of causation" between Bain's actions and Class Plaintiffs' injuries, making proximate causation a question of law and warranting dismissal of the negligence claim. *Id.* at 224.

## C. CLASS PLAINTIFFS' NEGLIGENCE CLAIM IS BARRED BY THE ECONOMIC LOSS DOCTRINE

Class Plaintiffs' negligence claim against Bain should separately be dismissed because their alleged damages are purely economic, and under blackletter California law, "there is no recovery in tort for negligently inflicted purely economic losses." *Sheen* v. *Wells Fargo Bank, N.A.*, 505 P.3d 625, 632 (Cal. 2022). Such economic losses arising from PowerSchool's purported failure to perform under its service contracts with Class Plaintiffs cannot be recovered through a negligence claim here.[14] And the SAC alleges no physical injury or property damage at all.

There is only one exception to the economic loss doctrine, which is that the existence of a "special relationship" can create a duty with respect to pure economic losses. *See, e.g.*, *Greystone Homes, Inc.* v. *Midtec, Inc.*, 86 Cal. Rptr. 3d 196, 211 (Ct. App. 4th Dist. 2008) ("[T]he economic loss rule provides that entities generally have no *duty* to prevent purely economic loss to a potential plaintiff [except] where

---

[14] The Court reserved ruling on the economic loss doctrine and allowed Bain to raise this argument "at the appropriate time," because Bain adopted PowerSchool's arguments "through joinder rather than independent analysis." Order at 22.

BAIN'S MOTION TO DISMISS TRACK 2 SCHOOL DISTRICT
SECOND AMENDED CLASS ACTION COMPLAINT                    25-md-3149-AJB-MSB

a 'special relationship' exists") (cleaned up). Class Plaintiffs do not allege a "special relationship" *with Bain* (nor could they)—they allege only a special relationship with PowerSchool. *See* SAC ¶ 175 ("Defendants' duty to implement and maintain reasonable security measures also arose as a result of the *special relationship* that existed between PowerSchool, Plaintiffs, and Class Members.") (emphasis added). And such special relationships have only been found in narrow circumstances—none of which exist (or are alleged) here. *Brown*, 483 P.3d at 166 (special relationships include those between a parent and child, employers and employees, and innkeepers and guests).

Class Plaintiffs claim that they "overpaid considerably for" PowerSchool's subscription and support services, that they "did not receive the benefit of [their] bargain," and that they "lost time and money responding to the Data Breach." SAC ¶¶ 23–26, 120–23. But the Court already highlighted why these allegations do not suffice when dismissing Class Plaintiffs' negligence claim against PowerSchool. *See* Dkt. 437, at 10–11. That Class Plaintiffs' allegations were insufficient to establish that even the victim of the breach owed a general duty to its customers underscores the novelty of Class Plaintiffs' negligence theory against Bain. Indeed, under the Limitation of Liability clause in the Main Services Agreement ("MSA") between PowerSchool and Class Plaintiffs, the Court determined that Class Plaintiffs were limited to a narrow group of purely economic damages for *any* claim in contract or in tort against PowerSchool or its affiliates. *See id.*, at 7 ("The Limitation of Liability provision in the MSA, however, makes clear that [Class] Plaintiffs cannot recover for 'any lost profits or funding, revenues, goodwill, or indirect, incidental, consequential, cover, business interruption, or punitive damages, whether an action is in contract or tort.'"); *see also id.* (limitation of liability clause applies to "either party or its affiliates"). In conclusion, the SAC fails to allege a negligence claim against Bain and should be dismissed.

- 20 -

## IV.  CLASS PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE BAIN TORTIOUSLY INTERFERED WITH POWERSCHOOL'S CONTRACTS

Because the SAC does not adequately allege Bain's intentional procurement of PowerSchool's alleged breach without justification, Class Plaintiffs' tortious interference claim must also be dismissed.  To state a claim for intentional interference with contractual relations, Class Plaintiffs must allege "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third party's breach without justification; (4) actual breach of the contract; and (5) damages resulting therefrom."  *See, e.g.*, *Hamilton San Diego Apartments* v. *RBC Cap. Markets Corp.*, 2012 WL 12863115, at \*2 (S.D. Cal. 2012); *Ixchel Pharma, LLC* v. *Biogen, Inc.*, 470 P.3d 571, 575 (Cal. 2020) (similar).[15]

***Intentional Procurement of a Breach***.  The Complaint contains no allegations that Bain procured a breach of PowerSchool's contracts with the school districts, let alone that it did so intentionally.

*First*, the SAC fails to adequately allege that Bain procured a breach.  It relies on general allegations that Bain directed, encouraged, or pressured PowerSchool to reduce cybersecurity spending, reduce its workforce, or move "backend administrative operations" to "subcontractors."  SAC ¶ 162.  Yet none of the SAC's allegations of workforce reductions suggest that Bain had any involvement in them.  *See* SAC ¶ 101.  The August 2024 layoffs, *see id.* ¶¶ 101, 162, for example, occurred well before Bain's investment in PowerSchool closed in October 2024, while the Merger Agreement's express "No Control" provision denied Bain any right to direct PowerSchool's operations, which presumably would include any alleged workforce reductions.  *Id.* ¶ 19.  The Merger Agreement clearly restricts Bain's involvement in PowerSchool before the close of the transaction: it expressly provided that Bain had

---

[15]  Although Bain's analysis below does not analyze each element of this claim, Bain reserves all rights to argue that Class Plaintiffs have failed to allege every element.

- 21 -

no "right to control or direct the business or operations of" PowerSchool before October 1, 2024 (the "No Control" provision).[16]  That the Merger Agreement also contained an industry-standard interim consent clause for extraordinary actions prior to closing (*when initiated by PowerSchool*)—including "implement[ing] any layoffs . . . affecting 50 or more employees"—provides no basis to suggest that Bain affirmatively procured the layoffs and cost-cutting.[17]

Moreover, the Order is not applicable to the allegations in the SAC.  The Order concluded that "Plaintiffs plausibly allege procurement of a breach" because of (1) the interim operating covenants in the Merger Agreement that gave Bain "approval rights over layoffs above a defined threshold," (2) the Court's reading of the "No Control" provision, and (3) the allegation that Bain "issued a layoff order in August 2024, eliminating approximately 175 employees."  Order at 14–15.  None of these three bases apply to the SAC.  First, the generic interim operating covenants are trumped by the express No Control provision, and even if they were not, those covenants are insufficient to establish control and affirmative direction by Bain.  Second, neither the FAC nor the SAC contains any allegations pertaining to the interim operating covenants.  Finally, there are no allegations in the SAC that Bain "approved" or permitted any workforce reductions—let alone the alleged August 2024 workforce reduction.  *See* SAC ¶¶ 101.  The Order did not cite to specific allegations of "layoffs" in the FAC because there were none; it only relied on the Track 2 Direct Action Complaint: "the Direct Action Plaintiffs further allege that Bain issued a layoff order in August 2024."  Order at 15.

*Second*, Class Plaintiffs fail to sufficiently allege that Bain either intended for PowerSchool to breach a contract or knew that breach was "certain or substantially certain," as a "necessary consequence" of its purported actions.  *Quelimane Co.* v. *Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998); *Rosenthal & Rosenthal of*

---

[16]  *See* Merger Agreement, *supra* note 6, at 64.

[17]  *See* Merger Agreement, *supra* note 6, at 58.

BAIN'S MOTION TO DISMISS TRACK 2 SCHOOL DISTRICT
SECOND AMENDED CLASS ACTION COMPLAINT          25-md-3149-AJB-MSB

*California, Inc.* v. *Hilco Trading, LLC*, 2020 WL 12948055, at *4 (C.D. Cal. Dec. 29, 2020), *aff'd,* 2022 WL 18906 (9th Cir. Jan. 3, 2022) (granting summary judgment dismissing intentional interference claims that were based on defendant investment company's approval of agreements by portfolio company).

The Complaint does not include any such allegations.  It claims that Bain "had actual knowledge of these [c]ontracts and their terms," SAC ¶ 161, and such conclusory allegations of "generalized knowledge that a party has contracts with others" do not "support a claim for intentional interference." *Bullion Standard, Inc.* v. *Bank of Am., N.A.*, 2026 WL 446243, at *10 (S.D. Cal. Feb. 17, 2026); *Rosenthal & Rosenthal of California*, 2020 WL 12948055, at *5.  Additional facts indicating that Bain "actually knew that disruption or interference would result" are required. *Rosenthal & Rosenthal of California*, 2020 WL 12948055, at *5.  The Complaint also alleges that Bain's knowledge of the contracts meant it "recogniz[ed] that the [c]ontracts impose stringent cybersecurity protocols," SAC ¶ 161, but it does not allege that PowerSchool's breach would be a "necessary consequence" or that Bain knew a breach was "certain or substantially certain." *See Quelimane Co.*, 19 Cal. 4th at 56.  Class Plaintiffs also resort to conclusory allegations that "Bain Capital intentionally and improperly interfered with PowerSchool's performance under those [c]ontracts,"—and conclusory allegations do not defeat a motion to dismiss. SAC ¶ 162; *see Iqbal*, 556 U.S. at 678; *Adams*, 355 F.3d at 1183.

As with procurement, the Court incorrectly concluded that the FAC sufficiently alleged that Bain possessed the requisite intent.  The Order only determined that "a factfinder could infer that Bain knew its directives were *likely* to materially hinder . . ."  Order at 16 (emphasis added).  This was the incorrect standard: Class Plaintiffs must allege that Bain was "certain or substantially certain" that PowerSchool's breach would be a "necessary consequence" of its actions, which they fail to do. *See Quelimane Co.*, 19 Cal. 4th at 56.  Simply put, none of the allegations that Bain was involved in cost reduction measures in the SAC

- 23 -

demonstrate that Bain took any action "designed to accomplish interference." *Fam. Home & Fin. Ctr., Inc.* v. *Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 826 (9th Cir. 2008) ("A necessary element of [plaintiff]'s claim is proof that [defendant]'s action was designed to accomplish interference.").

*Causation*. The Complaint contains insufficient allegations to plead a causal relationship between Bain's alleged actions and Class Plaintiffs' injuries. Class Plaintiffs do not allege, as they must, that the intentional interference is a "substantial factor" in causing PowerSchool's purported breach. *Bank of N.Y.* v. *Fremont Gen. Corp.*, 523 F.3d 902, 909–10 (9th Cir. 2008). *See also Rutherford* v. *Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997) (noting that "[t]he substantial factor standard generally produces the same results as does the 'but for' rule of causation"), *as modified on denial of reh'g* (Oct. 22, 1997).

Class Plaintiffs do not allege any communication by Bain directing or encouraging PowerSchool to reduce its workforce, any other "acts [Bain] purportedly undertook to induce" a breach, or "why [Bain], rather than other forces, was the cause of said breach(es)." *See Celebrity Chefs Tour, LLC* v. *Macy's, Inc.*, 16 F. Supp. 3d 1141, 1157 (S.D. Cal. 2014); SAC ¶¶ 99–109. And the Order did not cite to any such allegations in the FAC, only concluding that "Plaintiffs also plausibly allege causation and breach." *See* Order at 16–17. The causal chain Class Plaintiffs attempt to establish is far too attenuated to support proximate causation. That chain runs from Bain's purported control of PowerSchool after signing an interim Merger Agreement with a "No Control" provision; to an inference that Bain directed cybersecurity cuts specifically; to an assumption that PowerSchool took actions in this area because of "pressure" from Bain; to these actions opening the door for criminal third parties to hack into PowerSchool's system, all of which Bain was apparently "substantially certain" would occur. That cannot establish that Bain "push[ed] [PowerSchool] to act in a way that disrupts the contract." *X Corp.* v. *Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948, 986 (N.D. Cal. 2024).

- 24 -

***Justification***.    Despite the Order's statement that justification cannot be resolved on the pleadings, this element can be considered at the motion to dismiss stage when the Complaint "disclose[s] that [the defendant] was acting with a legitimate business purpose." *See* Order at 16; *Dollar Tree Stores Inc.* v. *Toyama Partners, LLC*, 2010 WL 1688583, at \*4 (N.D. Cal. Apr. 26, 2010).    Exercising one's rights under a different contract with the same counterparty constitutes one such legitimate purpose, for which there can be "no claim for intentional interference with contract."    *See Fresno Motors, LLC* v. *Mercedes Benz USA, LLC*, 771 F.3d 1119, 1130 (9th Cir. 2014) (dismissing intentional interference claim because the allegedly interfering action was the lawful exercise of a right of first refusal under a different contract).

Here, the Complaint and the Merger Agreement disclose that Bain was furthering its legitimate business purposes.    They describe arms'-length negotiations with a potential portfolio company and discussions about general business strategy—which Class Plaintiffs do not, and cannot, dispute were legitimate.    *See* SAC ¶ 97.    The Order does not state otherwise.    *See* Order at 16.

## CONCLUSION

For all the reasons discussed herein, Bain respectfully requests that the Court grant its motion to dismiss Class Plaintiffs' Complaint with prejudice.

BAIN'S MOTION TO DISMISS TRACK 2 SCHOOL DISTRICT
SECOND AMENDED CLASS ACTION COMPLAINT                25-md-3149-AJB-MSB

Dated:  August 10, 2026

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP

By:   */s/ John P. Carlin*
    John P. Carlin

John P. Carlin (NY 3031887)*
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Alex Langsam (NY 5980891)*
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
jschutte@paulweiss.com
alangsam@paulweiss.com

R. Rosie Vail (SBN 317977)
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant
Bain Capital, L.P.*

- 26 -

## CERTIFICATE OF SERVICE

I certify that on the 10th day of August, 2026, I filed the foregoing notice with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:    */s/ John P. Carlin*
John P. Carlin
Email:  jcarlin@paulweiss.com
*Counsel for Defendant Bain Capital, L.P.*

- 27 -