James E. Cecchi (NJ 030861989)
*Admitted Pro Hac Vice*
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
Email: jcecchi@carellabyrne.com

*Lead Counsel for the proposed School District Class and Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION,<br><br>*This Document Relates to the School District Class Action Track* | Case No. 25-md-3149-AJB-MSB<br><br>MDL 3149<br><br>CONSOLIDATED MDL DOCKET<br><br>**ORAL ARGUMENT REQUESTED** |

# PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT BAIN CAPITAL, L.P.'S MOTION TO DISMISS SCHOOL DISTRICT PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT (TRACK 2)

# TABLE OF CONTENTS

**Section** **Page**

INTRODUCTION ........ 1

FACTUAL AND PROCEDURAL BACKGROUND ........ 2

LEGAL STANDARD ........ 6

ARGUMENT ........ 7

I. BAIN IMPROPERLY SEEKS RECONSIDERATION ........ 7

II. THIS COURT HAS PERSONAL JURISDICTION OVER BAIN ........ 8

A. Plaintiffs Sufficiently Allege Purposeful Availment ........ 9

B. Plaintiffs' Claims Relate to Bain's California Contacts ........ 11

C. This Court's Exercise of Jurisdiction Over Bain Would Be Reasonable ........ 12

III. PLAINTIFFS' NEGLIGENCE CLAIM IS WELL PLED ........ 13

A. Plaintiffs Sufficiently Allege Bain Owed Plaintiffs a Duty ........ 14

1. Bain's Alleged Conduct Plausibly Alleges a Duty ........ 14

2. Dismissal of Negligence Claims Against PowerSchools Is Inapposite ........ 15

3. Bain Did Not Need to Control Plaintiffs' Data to Owe Plaintiffs a Duty ........ 16

4. Bain's Duty to Plaintiffs Is Separate From Powerschool's Duty ........ 16

5. Plaintiffs Plausibly Allege Foreseeability ........ 17

6. *Rowland* Does Not Limit Bain's Duty ........ 17

B. Plaintiffs Sufficiently Allege Proximate Causation ........ 18

C. The Economic Loss Doctrine Is Inapplicable to Plaintiffs' Negligence Claim ........ 19

IV. PLAINTIFFS ADEQUATELY PLEAD INTENTIONAL TORTIOUS INTERFERENCE WITH CONTRACT....................................................20

A. Bain's Intentional Procurement Arguments Lack Merit.........................20

B. Plaintiffs Adequately Allege Causation .................................................23

C. Justification Cannot Be Resolved on the Pleadings ................................25

CONCLUSION..........................................................................................25

# TABLE OF AUTHORITIES


**Case** **Page(s)**

*Angelucci v. Mayorkas*,
2021 WL 4523690 (S.D. Cal. Oct. 4, 2021) .......... 7

*ASARCO, LLC v. Union Pac. R. Co.*,
765 F.3d 999 (9th Cir. 2014) .......... 21

*Askins v. U.S. Dep't of Homeland Sec.*,
899 F.3d 1035 (9th Cir. 2018) .......... 8

*Bank of New York v. Fremont Gen. Corp.*,
523 F.3d 902 (9th Cir. 2008) .......... 21, 23, 24

*Bily v. Arthur Young & Co.*,
834 P.2d 745 (Cal. 1992) .......... 17, 18

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) .......... 7

*Branca v. Nordstrom, Inc.*,
2015 WL 10436858 (S.D. Cal. Oct. 9, 2015) .......... 7

*Brown v. Metro by T-Mobile*,
768 F. Supp. 3d 1068 (C.D. Cal. 2024) .......... 17

*Brown v. USA Taekwondo*,
483 P.3d 159 (Cal. 2021) .......... 13, 16

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 9, 12

*Butcher's Union Local No. 498, United Food & Com. Workers v. SDC Inv., Inc.*,
788 F.2d 535 (9th Cir. 1986) .......... 13

*CFA N. Cal., Inc. v. CRT Partners LLP*,
378 F. Supp. 2d 1177 (N.D. Cal. 2005) .......... 10

*Chien v. Bumble Inc.*,
641 F. Supp. 3d 913 (S.D. Cal. 2022) .......... 10

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) .......... 12

*Corcoran v. CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016)....10

*Davis v. Cranfield Aerospace Sols., Ltd.*,
71 F.4th 1154 (9th Cir. 2023)....10

*In re Delta Dental Antitrust Litig.*,
509 F. Supp. 3d 1377 (J.P.M.L. 2020)....13

*Elden v. Sheldon*,
758 P.2d 582 (Cal. 1988)....18

*In re Ethereummax Inv.*,
2023 WL 6787827 (C.D. Cal. June 6, 2023)....22

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)....11

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
771 F.3d 1119 (9th Cir. 2014)....25

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
972 F.3d 1101 (9th Cir. 2020)....12

*Greystone Homes, Inc. v. Midtec, Inc.*,
86 Cal. Rptr. 3d 196 (Ct. App. 4th Dist. 2008)....19, 20

*Hall v. LaRonde*,
66 Cal. Rptr. 2d 399 (Cal. Ct. App. Div. 6 1997)....10

*Hampton v. Pac. Inv. Mgmt. Co. LLC*,
705 F. App'x 558 (9th Cir. 2017)....22

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022)....25

*Huynh v. Quora, Inc.*,
508 F. Supp. 3d 633 (N.D. Cal. 2020)....18

*Jadwin v. Cnty. of Kern*,
610 F. Supp. 2d 1129 (E.D. Cal. 2009)....20

*Left v. Anson Funds Management LP*,
2026 WL 2367649 (C.D. Cal. July 27, 2026)....8

*LyricFind, Inc. v. Musixmatch, S.p.A.*,
798 F. Supp. 3d 1040 (N.D. Cal. 2025)....................................................9

*Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*,
2020 WL 1433327 (S.D. Cal. Mar. 24, 2020)..............................................9

*Modisette v. Apple Inc.*,
241 Cal. Rptr. 3d 209 (Cal. Ct. App. 2018)..............................................19

*Moser v. Lifewatch Inc.*,
2020 WL 1849664 (S.D. Cal. Apr. 13, 2020) ............................................10

*Palomar Health v. Am. Guar. & Liab. Ins. Co.*,
2021 WL 4035005 (S.D. Cal. Sep. 3, 2021), *aff'd*, 2022 WL 3006356
(9th Cir. July 28, 2022)............................................................................6, 7

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ....................................................................10

*Plessinger v. Castleman & Haskell*,
838 F. Supp. 448 (N.D. Cal. 1993)........................................................21, 25

*In re Powerschool Holdings, Inc.*,
2026 WL 2233874 (S.D. Cal. Aug. 3, 2026)..............................................16

*Quelimane Co. v. Stewart Title Guaranty Co.*,
19 Cal. 4th 26 (1998) ...........................................................................20, 22

*Regents of Univ, of Cal, v. Superior Court*,
413 P.3d 656 (Cal. 2018)............................................................................13

*ReOpen San Diego v. City of San Diego*,
2022 WL 3371340 (S.D. Cal. Aug. 16, 2022)..............................................7

*Robinson Helicopter Co. v. Dana Corp.*,
102 P.3d 268 (Cal. 2004)............................................................................19

*Rowland v. Christian*,
443 P.2d 561 (Cal. 1968)............................................................................17

*Rutherford v. Owens-Illinois, Inc.*,
941 P.2d 1203 (Cal. 1997)......................................................................23, 24

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ....................6, 7, 8, 9, 13

*Sheen v. Wells Fargo Bank, N.A.*,
505 P.3d 625 (Cal. 2022) ....................19

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
983 F. Supp. 1303 (N.D. Cal. 1997) ....................22

*Sivakova v. Am. Honda Motor Co.*,
2025 WL 2324632 (C.D. Cal. July 17, 2025) ....................8

*Tucker v. CBS Radio Stations, Inc.*,
124 Cal. Rptr. 3d 245 (Cal. Ct. App. 4th Dist. Div. 1 2011) ....................17

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ....................7

*Walsh v. LG Chem Ltd.*,
834 F. App'x 310 (9th Cir. 2020) ....................12

*Ward v. Jump Trading, LLC*,
2026 WL 145846 (N.D. Cal. Jan. 20, 2026) ....................13

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) ....................11

*Zarif v. Hwareh.com*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) ....................7

**Other Authorities**

Fed. R. Civ. P. 9 ....................22

Fed. R. Civ. P. 12(b)(2) ....................6, 7

Fed. R. Civ. P. 12(b)(6) ....................7

Restatement (Second) of Torts § 302B ....................14, 15

Plaintiffs, Our World Neighborhood Charter Schools and Irvington Public Schools (together with Class Members, "Plaintiffs"), by and through their undersigned counsel, submit this Memorandum of Law in Opposition to Defendant Bain Capital, L.P.'s ("Bain") Motion to Dismiss the School District Plaintiffs' Second Amended Class Action Complaint ("Motion" or "Mot.) pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth in greater detail below, Bain's Motion fails on all fronts.

## INTRODUCTION

On March 18, 2026, this Court entered an Order granting in part and denying in part Bain's Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"). ECF 435, ("Order"). The Court found that Plaintiffs sufficiently alleged claims for negligence and intentional interference with contract. *Id.* at 17, 20. And while the Court granted Bain's prior motion without prejudice as to personal jurisdiction in New Jersey or New York, it permitted Plaintiffs to undertake limited jurisdictional discovery on that issue. *Id.* at 8, 9.

In lieu of conducting jurisdictional discovery, and for purposes of judicial and party economy, on April 22, 2026, the Parties filed a joint stipulation stating that Plaintiffs' proposed Second Amended Complaint ("SAC") would "include jurisdictional allegations that the Court found were sufficient to establish personal jurisdiction over Bain[1] with regard to the [Track 2] School District Direct Action Plaintiffs' First Amended Consolidated Master Complaint." ECF 477, at 2.

Plaintiffs filed their SAC on April 26, 2026, bringing new claims against Movate, Inc. ("Movate") and repleading claims against Bain. *See* ECF 483. Bain concedes that "most of the [SAC]'s allegations as to Bain [are] unchanged from the FAC." Mot. at 5.

---

[1] Plaintiffs filed a Direct Filing Notice on April 30, 2026, designating the Eastern District of California as the federal district court in which Plaintiffs would have filed their claims against Bain and Movate in the absence of direct filing. ECF 484. Thus, Plaintiffs' new jurisdictional allegations are based on jurisdiction in California, not New York or New Jersey, like Track 2 Direct Action Plaintiffs' jurisdictional allegations.

Despite Plaintiffs repleading their jurisdictional allegations to conform to the sufficiently pled allegations asserted by the Track 2 Direct Action Plaintiffs, and despite Plaintiffs asserting the *same exact* factual allegations previously pled in the FAC in support of their negligence and intentional interference with contract claims, Bain seeks dismissal of the SAC, rehashing old arguments that have already been rejected by this Court. Bain argues: (1) this Court has no personal jurisdiction over Bain;[2] (2) Plaintiffs fail to state a negligence claim because Bain owed them no duty, Plaintiffs do not plead proximate causation, and the economic loss rule bars their claim; and (3) Plaintiffs fail to state a claim for intentional interference with contract because Plaintiffs do not sufficiently allege that Bain directed PowerSchool to do anything that procured the Data Breach, proximately caused the Data Breach, or acted with the intent to interfere with PowerSchool's contracts with Plaintiffs. Bain's Motion should be denied in full.

## FACTUAL AND PROCEDURAL BACKGROUND

Bain "is one of the world's leading private multi-asset alternative investment firms." SAC ¶ 20.[3] In 2024, Bain acquired PowerSchool, a California-headquartered company and a leading provider of software for K-12 education. ¶¶ 18-21.[4] Bain representatives had extensive meetings, videoconferences, phone calls, and other communications with PowerSchool, "at least some of which occurred in California" (¶ 97), over the course of two years of negotiations. ¶¶ 12, 13, 97.[5] Bain dictates PowerSchool's strategic directives

[2] Had Bain disclosed that it would now oppose personal jurisdiction based on facts like those alleged by the Track 2 Direct Action Plaintiffs, Plaintiffs would have engaged in jurisdictional discovery rather than entering into the joint stipulation. *See* ECF 477.

[3] Citations to "¶_" or "¶¶_" hereafter are to the SAC unless otherwise noted. Case and docket citations omit internal citations and internal quotation marks unless otherwise noted.

[4] Bain is the "ultimate controlling entity for all Bain Capital operations, exercised pervasive domination over its affiliated entities, and used them as mere instrumentalities to consummate its acquisition of PowerSchool." ¶ 21; *see also* ¶¶ 18, 201-05.

[5] *See also* PowerSchool Holdings, Inc., *Schedule 14C Information Statement Relating to Merger or Acquisition*, at 21-44 (Sept. 4, 2024), https://www.sec.gov/Archives/edgar/data/1835681/000119312524212624/d836904ddefm14c.htm ("Info. Stmt." or "Information Statement") (identifying *at least*: four in-person

and uses PowerSchool's operations to further Bain's private investment purposes. ¶ 20. In connection with the merger, Bain replaced PowerSchool's CEO and entire board of directors. *See* Declaration of James E. Cecchi ("Cecchi Decl."), Exs. A-F. Bain maintains two of its six United States offices in California. *Id.*, Ex. G.

Plaintiffs entered into certain contracts with PowerSchool, which represented that their data would be protected with industry standard protocols and safeguards, including access controls, data encryption, password rotation, multi-factor authentication ("MFA"), endpoint protection, and other administrative, technical, and physical safeguards designed to ensure the confidentiality, integrity, and availability of their data.[6] ¶¶ 1, 25-26, 56, 64-66, 69, 72. Bain knew of the Contracts and their terms, including PowerSchool's cybersecurity obligations to Plaintiffs, by virtue of its ownership interest in, board-level oversight of, and direct involvement in operational decisions at PowerSchool, including during the background of the merger. ¶¶ 5, 7, 20-21, 97, 161. The Information Statement also describes dozens of meetings and in-person diligence sessions between Bain and PowerSchool's management and executive teams over the course of six months, including that Bain had access to both public and confidential information in PowerSchool's virtual data room.[7] This information informed Bain of PowerSchool's business operations, customer relationships, contractual data rights and obligations, and the substantial risks related to technical support and maintenance services. ¶¶ 7, 68, 97, 161.

meetings; five meetings and twenty-three discussions and/or oral communications, unspecified as to whether held in-person or otherwise; and dozens of additional unspecified instances of communications, between Bain and PowerSchool's management, executive teams, attorneys, financial advisors, shareholders, and/or other representatives). As acknowledged by Bain, the SAC incorporates the Merger Agreement and Information Statement by reference. Mot. at 5, n.4 (referencing the Information Statement and citing *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) for the assertion that a document is incorporated by reference in full where plaintiffs "rely[] on portions of it in their complaint").

[6] PowerSchool made these contractual promises to Plaintiffs and Class Members in its Main Services Agreements ("MSAs"), which incorporate the Data Privacy Agreements ("DPAs" together with the MSAs, the "Contracts"). ¶ 66.

[7] *See supra* n.5 at 21-26.

Bain thus knew that PowerSchool lacked important security safeguards such as requiring MFA for personnel, limiting access to sensitive information to only essential employees, monitoring its networks for unusual activity or the transfer of large volumes of data, and ensuring that employees were adequately trained—contrary to contractual promises. *Id*. Further, Bain not only knew of the risks of failing to implement and abide by the security protections required by the Contracts, but approved the Information Statement explicitly disclosing those risks, warning of negative consequences concerning "the impact of potential information technology or data security breaches or other cyber-attacks or other disruption," "[PowerSchool's] ability to comply with legal requirements, contractual obligations and industry standards relating to security, data protection and privacy," and identifying "risks to [PowerSchool's] reputation and of liability from a failure to comply with a variety of complex procurement rules and regulation." Info. Stmt. at 96–98, A-80.

Nevertheless, Bain intentionally took action to "complete the merger as quickly as possible" (*Id.* at 16), which was necessary for Bain because PowerSchool incurred substantial debt from the transaction, leaving the company undercapitalized and underinsured. ¶¶ 97-98. Accordingly, Bain immediately pushed its post-acquisition strategy in two primary ways to: (1) cut costs at PowerSchool; and (2) aggregate and analyze student and school district data. ¶¶ 194, 200-05.

In pursuit of cost reductions, Bain directed PowerSchool to rapidly execute an offshoring plan that sacrificed data security and integrity in the pursuit of cost reductions. ¶ 108. The Merger Agreement prohibited PowerSchool from taking significant actions—such as implementing layoffs of fifty or more employees—without Bain's prior written consent. Info. Stmt. at 108, 109. And yet shortly after Bain announced its merger, PowerSchool laid off over 5% of its domestic workforce – an action that required Bain's approval under the Merger Agreement. ¶ 101. Bain also approved PowerSchool to accelerate shifting those jobs overseas; granting offshore contractors back-office administrator functionality as well as student-, parent-, and faculty-facing functionality to manage key organizational information assets, including social security numbers,

demographic data, enrollment, grades, transcripts, and governmental reporting data. ¶¶ 90-92, 107. Movate does not contest that it was contracted to provide those technical support services, nor that its employee located in the Philippines, a foreign national, had complete, unrestricted access to this information.[8] This level of access far exceeded what Plaintiffs permitted under their Contracts. ¶ 92.

Bain also knowingly authorized PowerSchool's use of an access tool that bypassed the bargained-for consent and access protocols—as was necessary to enable those efforts—allowing PowerSchool employees or contractors to access School Districts' unencrypted, identifiable data without proper authorization. ¶¶ 202-04. This tool facilitated Bain's offshoring strategy, allowing offshored contractors to provide technical support remotely without engaging directly with customers.[9] ¶ 194. And so, rather than directing PowerSchool to comply with the security and access control promises, Bain directed actions that further weakened PowerSchool's cybersecurity—leaving no guards at the gate—while ratifying access to data that far exceed that permitted under the Contracts. ¶ 202. Within only seventy-two hours of the layoffs directed by Bain, on August 16, 2024, the first indication of a data breach occurred. ¶ 46.

Bain also began implementing its plan to aggregate and analyze large-scale student and school data—enhancing PowerSchool's marketability, cost savings, and product development, particularly its initiatives focused on integrating artificial intelligence into school systems (¶ 203), which required loosening access restrictions and created a strong incentive for Bain to leverage PowerSchool's access to customer data and further develop Personalized Education AI. ¶¶ 194, 203.

Plaintiffs and Class members paid hundreds of millions of dollars annually for the use of the PowerSchool platform and for the storage and protection of their Data. ¶ 125.

---

[8] *See* ECF 317, at 4 (Movate does not deny that a "Movate employee working from the Philippines . . . had access to PowerSchool's Student Information System.").

[9] Bain has a long and consistent history of investing in companies that offshore jobs to lower-wage countries, prioritizing cost savings over domestic employment. ¶ 109.

Plaintiffs, like all Class members, have suffered damages proximately caused by Bain's unlawful conduct, including overpayments for under-delivered services, loss of contractual value, increased exposure to cybersecurity threats, and related harm (¶¶ 164-65), and allege Bain's conduct constitutes: Intentional Tortious Interference with Contract (Count 2) and Negligence (Count 3). Bain has already moved to dismiss these same, *identically pled* claims, ECF 303, ***and lost***, ECF 435. Bain likewise moved to dismiss the Track 1 Individual User Plaintiffs' ("Track 1") negligence claims, ECF 286, which this Court ***denied***, ECF 434, and for reconsideration of same, ECF 466, which was ***also denied***. ECF 466.

The Court also found Track 2 Direct's allegations for personal jurisdiction to be sufficient, which are similarly pleaded here. ECF 435, at 6-8. Indeed, Bain "stipulate[d] and agree[d]" that:

> . . . in lieu of undertaking jurisdictional discovery of Bain, Plaintiffs seek to file a Second Amended Class Action Complaint to include jurisdictional allegations that the Court found were sufficient to establish personal jurisdiction over Bain with regard to the School District Direct Action Plaintiffs' First Amended Consolidated Master Complaint. Dkt. No. 435.
>
> . . .
>
> the Parties have conferred and Defendants do not oppose Plaintiffs' filing of a Second Amended Class Action Complaint consistent with the above.

ECF 477, at 2-3 (emphasis added). Through the stipulation, any jurisdictional issues were settled. But now, after foregoing discovery that would support jurisdiction over Bain, agreeing to jurisdiction in California, incorporating allegations the Court and Bain previously agreed were sufficient, and filing Direct Filing Notices in California, Bain's challenges allegations to jurisdiction that it specifically committed to not oppose.

## LEGAL STANDARD

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[i]n general, the court may exercise personal jurisdiction over an out of state defendant consistent with both the forum state's long-arm statute and constitutional due process." *Palomar Health v. Am. Guar. & Liab. Ins. Co.*, 2021 WL 4035005, at *2 (S.D. Cal. Sep. 3, 2021), *aff'd*, 2022 WL 3006356 (9th Cir. July 28, 2022). "Where . . . the motion is based on written materials and

affidavits rather than an evidentiary hearing, a plaintiff is only required to make a 'prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Id.*; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Zarif v. Hwareh.com*, 789 F. Supp. 3d 880, 887 (S.D. Cal. 2025). "The court must take unchallenged allegations in the complaint as true, and conflicts between the parties over statements within any affidavits must be resolved in favor of the plaintiff." *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 887 (S.D. Cal. 2025); *see also Branca v. Nordstrom, Inc.*, 2015 WL 10436858, at *2 (S.D. Cal. Oct. 9, 2015) (courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party) (citation omitted). Factual disputes are inappropriate for consideration on a motion to dismiss. *See Angelucci v. Mayorkas*, 2021 WL 4523690, at *3 (S.D. Cal. Oct. 4, 2021). Complaints "should be read as a whole" and "not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "[I]t is the defendant's burden to demonstrate that plaintiff has failed to state a claim." *ReOpen San Diego v. City of San Diego*, 2022 WL 3371340, at *2 (S.D. Cal. Aug. 16, 2022) (internal quotation marks omitted) (collecting cases).

## ARGUMENT

### I. BAIN IMPROPERLY SEEKS RECONSIDERATION

Bain's renewed Motion is an improper motion for reconsideration dressed up as a motion to dismiss. Bain previously raised—and the Court rejected—the very challenges it now seeks to relitigate under Rules 12(b)(2) and 12(b)(6). *See* ECF Nos. 303, 379, 434, 435. The only material revisions in the SAC, which Bain did not oppose, were jurisdictional allegations the Court already found adequate. ECF 434, at 15-21; 435, at 20-22. Bain therefore cannot challenge claims and allegations that remain substantively unchanged from what the Court previously found proper merely by pointing to the filing of an

amended pleading. Because the Court has already considered, and rejected, Bain's initial challenges to Plaintiffs' remaining claims, and the material facts have not changed, Bain's renewed challenges should be rejected. *See, e.g.*, *Left v. Anson Funds Management LP*, 2026 WL 2367649, at *7 (C.D. Cal. July 27, 2026) (refusing to consider the merits of defendants' renewed challenges "[b]ecause the Court previously considered, and rejected" them, finding the amended complaint did not reopen the claims "to challenges that could have been raised or that were previously considered and rejected."). It is well established that

> [an] interpretation that when an amended complaint is filed, regardless of the scope of the amendment, a defendant may either assert for the first time or reassert arguments against all material in the amended complaint, not only the amended material. . . . is simply out of step with the practice in this Circuit and around the country.

*Sivakova v. Am. Honda Motor Co.*, 2025 WL 2324632, at *4 (C.D. Cal. July 17, 2025) (collecting cases); *see also Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018) (for allegations that remain unchanged, "district court is free to follow the same reasoning [from initial decision] and hold that the amended claims suffer from the same legal insufficiencies").

Bain simply seeks another bite at the apple because a different judge now presides. That maneuver is particularly difficult to square given Bain's non-compliance with reconsideration requirements and the long line of case law in this Circuit rejecting this type of gamesmanship. Reconsidering issues Bain already had a full and fair opportunity to litigate, simply because Bain hopes a second presentation, with a new audience, will produce a different result, is in stark contrast with policies favoring judicial resources and orderly procedures. While Plaintiffs must now spend time and resources addressing Bain's recycled and reframed arguments, the Court should not be required to do so. Accordingly, Bain's Motion should be denied.

## II. THIS COURT HAS PERSONAL JURISDICTION OVER BAIN

Even assuming *arguendo* that Bain's personal jurisdiction arguments are properly considered, they lack merit. Specific jurisdiction requires a showing that: (1) the defendant

purposefully availed itself of the forum or purposefully directed its activities toward the forum; (2) the claim arises out of or relates to the forum-related conduct; and (3) the exercise of jurisdiction would be reasonable. *See Schwarzenegger*, 374 F.3d at 802. Plaintiffs satisfy each of these requirements.

**A. Plaintiffs Sufficiently Allege Purposeful Availment**

Purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Bain's conduct and contacts in California were not by happenstance. And Bain is not here by way of any unilateral activity of third parties. Instead, Plaintiffs plead "suit-related conduct" directly by Bain that "create[s] a substantial connection with [California]." *Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, 2020 WL 1433327, at *5 (S.D. Cal. Mar. 24, 2020). This Court should thus find personal jurisdiction for Bain, as it already has for the two other plaintiff tracks.

Bain's contacts involve deliberate merger-related communications and negotiations for a multi-billion-dollar acquisition of a California-headquartered company over the course of two years, the receipt and exercise of contractual control rights during the interim, and control of that company's strategic directives and operations post-closing. ¶¶ 12-13, 19, 20, 27, 97, 100, 106-09, 161-63. Bain representatives had extensive meetings, videoconferences, phone calls, and other communications with PowerSchool over the course of two years. ¶¶ 12, 13, 97; *see also* Info. Stmt. at 21-44. Two of Bain's six United States offices are located in California. *See* Cecchi Decl., Ex. G; *see also LyricFind, Inc. v. Musixmatch, S.p.A.*, 798 F. Supp. 3d 1040, 1059 (N.D. Cal. 2025) (finding purposeful availment solely due to defendant's website advertising San Francisco office). Bain implemented aggressive cost-cutting measures at PowerSchool almost immediately through mass layoffs, offshoring plans, and reducing spending on cybersecurity, ¶¶ 100-02, 162, relied upon, reviewed, and approved "analyses contemplating the efficiencies from

offshoring" and "certain offshoring cost-saving estimates" in the course of the acquisition, ¶ 107, and was granted approval rights over a California company's workforce decisions, *supra* n.5, in the interim. *See Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1163 (9th Cir. 2023) ("Purposeful availment can be established by a contract's negotiations, its terms, its contemplated future consequences, and the parties' actual course of dealing."). Today, Bain still dictates PowerSchool's strategic directives and uses PowerSchool's operations to further Bain's private investment purposes. ¶ 20.

These are not "conclusory allegations that Bain conducted some business in California," and Bain's citations offer no such support for its contention. Mot. at 10.[10] Further, Plaintiffs do not rely on an investor-portfolio relationship alone, nor do they merely seek to impute PowerSchool's contacts to Bain. *See* Mot. at 10. In contrast, Plaintiffs allege Bain's deliberate actions, directives, and operational control of a California company, which is sufficient to establish purposeful availment on direct liability claims. *Chien v. Bumble Inc.,* 641 F. Supp. 3d 913, 930 (S.D. Cal. 2022) is directly on point: there (a data breach class action), after rejecting an alter ego theory, the court found personal jurisdiction against a parent company based on allegations of its role in operating, developing, marketing, and controlling subsidiary's application. *Id*.

Bain's contention that Plaintiffs incorporated allegations "that the Court concluded adequately alleged personal jurisdiction over Bain *under an alter ego theory of liability*",

[10] *See Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 981 (N.D. Cal. 2016) (plaintiffs "utterly fail[ed]" to address three-prong analysis and made one allegation about contacts); *Moser v. Lifewatch Inc.*, 2020 WL 1849664, at *8 (S.D. Cal. Apr. 13, 2020) (involved only allegations that individual knew of his company's calls made to California); *Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) (physical entry "is certainly a relevant contact" but two trips did not create "substantial connection" because they were at plaintiffs' request and expense, grew incidentally, were not envisioned by underlying agreement, and held "no special place in [defendant's] performance"); *C.f., CFA N. Cal., Inc. v. CRT Partners LLP*, 378 F. Supp. 2d 1177, 1186 (N.D. Cal. 2005) (finding purposeful availment based upon allegations of phone calls to, and one meeting in, California); *Hall v. LaRonde*, 66 Cal. Rptr. 2d 399, 400 (Cal. Ct. App. Div. 6 1997) (holding "the use of electronic mail and the telephone by a party in another state may establish sufficient minimum contacts with California").

Mot. at 10 (emphasis added), is without merit. The Court simply concluded the Track 2 Direct's personal jurisdiction allegations were sufficient *in general*, not under an alter ego theory. *See* ECF 435, at 6-7. In direct contrast, the Court squarely refuted Track 2 Direct's contention "that Bain may be held liable under an alter ego theory by attributing PowerSchool's conduct and forum contacts to Bain," *id*. at 10, dismissing "*only* the alter ego theories." *Id*. at 14 (emphasis added). The Court thus held precisely the opposite of Bain's assertion—the allegations were adequate for *all but the alter ego theories*. Accordingly, this Court, as it did previously with respect to materially identical allegations from Track 2 Direct, should find "that Bain 'deliberately reached out beyond [its] home' to direct conduct in California and created 'continuing relationships and obligations' in the forum." ECF 435, at 7 (quoting *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023); *Silk v. Bond*, 65 F.4th 445, 457 (9th Cir. 2023)).

**B. Plaintiffs' Claims Relate to Bain's California Contacts**

A plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum state. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). The latter half of the standard "contemplates that some relationships will support jurisdiction without a causal showing." *Id*. at 362 "[A] plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts." *Yamashita,* 62 F.4th at 505 (9th Cir. 2023).

Here, Bain's aggressive cost-cutting measure directed at PowerSchool in California "not only contributed to the Data Breach, but also expressly breached PowerSchool's contractual and other obligations." ¶ 100. Bain knew of the stringent cybersecurity obligation within Plaintiffs' contracts, ¶ 161, and its "actions to extract value fostered a process where costs were cut and liberties were taken with contractual obligations, with schools, schoolchildren, and teachers ultimately paying the price." ¶ 100. Bain "moved to swiftly execute on this offshoring plan while sacrificing data security and integrity in an effort to rapidly cut costs," ¶ 108, and the first incident of unauthorized access occurred

just three days after the mass layoffs. ¶ 104. Judge Benitez found nearly identical allegations sufficient:

> They allege that Bain's layoff orders targeting California-based staff and its directive to offshore operations 'directly undermined cybersecurity' and caused the data breach. Those allegations support a reasonable inference that the alleged injury is the type of harm that would 'tend to be caused' by dismantling a company's in-forum security infrastructure.

ECF 435, at 7. Moreover, Bain's reliance on *Walsh v. LG Chem Ltd.*, 834 F. App'x 310, 312 (9th Cir. 2020), Mot. at 11, was already rebuffed by the Court and found to be misplaced. ECF 435, at 7. The Court should find the same here.

### C. This Court's Exercise of Jurisdiction Over Bain Would Be Reasonable

Bain bears the burden of presenting a compelling case that jurisdiction would be unreasonable. *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). Here, none of the seven factors articulated by the Ninth Circuit[11] demonstrate that it would be unfair for Bain to defend itself in this forum. This Court previously rejected Bain's reasonableness arguments, finding them "undeveloped and unsupported by evidence." ECF 435, at 7. Bain largely abandons these arguments. *See* Mot. at 11-12. The Court should reject Bain's arguments again.

The extent of Bain's interjection into California is high. And Bain once again identifies no burden in defending the litigation here. California's interest in adjudicating this litigation is substantial, as PowerSchool is headquartered here, Bain's conduct was directed at PowerSchool's cybersecurity infrastructure, compliance, operations, and

[11] The seven factors are: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011); *see also Burger King*, 471 U.S. at 476-77.

workforce, California residents' data was compromised, California school districts' contracts were breached and interfered with, and many relevant witnesses and evidence are located here. ¶¶ 13-14, 162; *see also* ECF 435, at 8 ("California has a substantial interest in resolving disputes arising from conduct allegedly directed at a California-based company's workforce and operations."). Bain's framing of this dispute being about the contacts of New York and New Jersey school districts and an investment company headquartered in Massachusetts and incorporated in Delaware is considerably narrow and beside the point. Mot. at 11. The focus is on whether Bain purposefully directed its activities at the forum, not the contacts of the Plaintiffs or place of Bain's headquarters or place of incorporation. *See Schwarzenegger*, 374 F.3d at 802; *Ward v. Jump Trading, LLC*, 2026 WL 145846, at *9 (N.D. Cal. Jan. 20, 2026) ("'[t]his analysis is driven by the defendant's contacts with the forum state—not the plaintiff's or other parties' forum connections.'") (citation omitted). Also, the existence of an alternative forum does not make jurisdiction unreasonable when all the remaining factors weigh in Plaintiffs' favor. In this litigation, there are three tracks of plaintiffs, each having claims against three sets of defendants—it is illogical for this Court to have jurisdiction over Bain in just two of the three tracks.[12] Accordingly, Bain's Motion to Dismiss for lack of personal jurisdiction should be denied.[13]

## III. PLAINTIFFS' NEGLIGENCE CLAIM IS WELL PLED

To state a claim for negligence, Plaintiffs must allege a duty, breach, causation, and damages. *Brown v. USA Taekwondo*, 483 P.3d 159, 163-64 (Cal. 2021); *Regents of Univ, of Cal, v. Superior Court*, 413 P.3d 656, 663-64 (Cal. 2018). Judge Benitez previously

---

[12] Bain's reliance on *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379-80 (J.P.M.L. 2020) is misplaced, as Plaintiffs have filed Direct Filing Notices in California.

[13] In the event the Court declines to find personal jurisdiction over Bain, Plaintiffs request leave to conduct targeted jurisdictional discovery or, alternatively, leave to refile in District Court and transfer back to this Court through the JPML. *See Butcher's Union Local No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (trial court has "broad discretion to permit or deny discovery" to aid in determining whether it has personal jurisdiction).

found that Plaintiffs' allegations in support of their negligence claim in the FAC—which are *identical* to Plaintiffs' allegations in support of their negligence claim in the SAC—plausibly state a negligence claim against Bain. *See* ECF 435, at 20 ("Plaintiffs plausibly state a negligence claim against Bain."). This Court should find the same.

## A. Plaintiffs Sufficiently Allege Bain Owed Plaintiffs a Duty

### 1. Bain's Alleged Conduct Plausibly Alleges a Duty

Judge Benitez previously found Plaintiffs plausibly alleged that Bain had a duty to Plaintiffs where they alleged that "Bain, through its own decisions, contributed to creating the cybersecurity vulnerabilities that enabled the breach," and, "[o]n that theory, *the asserted duty arises from Bain's own conduct in directing or controlling the security related decisions at issue*." ECF 435, at 20 (emphasis added). Plaintiffs assert the same allegations here. *See, e.g.*, ¶ 7. The Court should apply its previous ruling.

Bain argues the Court's previous conclusions were incorrect because "[n]one of the situations set forth in Restatement (Second) of Torts § 302B confer a duty on Bain here because the FAC and the SAC lack any allegations that Bain created or controlled the 'opportunity' for the criminal third-party group to enter PowerSchool's SIS, let alone that it controlled access to SIS." Mot. at 13. But, assuming Bain satisfies the procedural requirements for reconsideration, this is not what Restatement (Second) of Torts § 302B ("Section 302B") requires. Section 302B states:

> An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

Restatement (Second) of Torts § 302B (Am. L. Inst. 1965). Comment e of Section 302B notes:

> There are, however, situations in which the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal, misconduct of others. In general, these situations arise where the actor is under a special responsibility toward the one who suffers the harm, which includes the duty to protect him against such intentional misconduct; or where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man

> would take into account. *The following are examples of such situations. The list is not an exclusive one, and there may be other situations in which the actor is required to take precautions.*

*Id.* cmt. e. One such example is "[w]here property of which the actor has possession or control affords a peculiar temptation or opportunity for intentional interference likely to cause harm," *see id.* cmt. e(G). However, contrary to Bain's suggestion that this is the *only* situation that would confer a duty on Bain, *see* Mot. at 12-13, there are numerous other situations that would confer a duty on Bain,[14] including Bain's affirmative acts, which Plaintiffs allege created or exposed them to a recognizable high degree of risk of harm through such misconduct. *See* ¶¶ 1, 31, 46, 86, 88, 91, 162.

Further, Bain's argument that Plaintiffs' theory that Bain owed Plaintiffs a duty "is an agency or alter ego theory masquerading as negligence" should be rejected. *See* Mot. at 14. First, Bain acknowledges that "Plaintiffs have disclaimed all vicarious liability and are pursuing only direct liability theories." *Id.* Second, Bain contends that claims that a parent directed a subsidiary to act "are the hallmark of corporate conduct that may only be reached through theories of vicarious liability," yet concedes it does *not* have an ownership interest in PowerSchool, thus rendering its argument entirely irrelevant. *Id.*; *id.* n.12.

### 2. Dismissal of Negligence Claims Against PowerSchool's Is Inapposite

Bain also argues it could not owe a duty to Plaintiffs where the Court dismissed Plaintiffs' negligence claim against PowerSchool, the entity that collected and controlled the data. Mot. at 14-15. Bain misconstrues the Court's ruling. The Court did not find that PowerSchool owed no duty to Plaintiffs; rather, it stated: "Although *it may be the case that* there is no particular duty owed by PowerSchool to its school district entity customers, *the Court need not reach a decision on this question* because the negligence tort claims are foreclosed by the contractual limitation of liability and the economic loss doctrine." ECF 437, at 10 (emphasis added). Neither the contractual limitation of liability nor the economic

[14] Indeed, "[i]t is not possible to state definite rules as to when the actor is required to take precautions against intentional or criminal misconduct." Restatement (Second) of Torts § 302B cmt. f.

loss doctrine applies to Plaintiffs' negligence claim against Bain.[15] Thus, the Court's dismissal of Plaintiffs' negligence claim against PowerSchool is irrelevant here.

### 3. Bain Did Not Need to Control Plaintiffs' Data to Owe Plaintiffs a Duty

The fact that Bain itself did not hold any of Plaintiffs' data has no impact on whether Bain owed Plaintiffs a duty. Plaintiffs "allege that Bain, through its own decisions, contributed to creating the cybersecurity vulnerabilities that enabled the breach. On that theory, the asserted duty arises from Bain's own conduct in directing or controlling the security related decisions at issue." ECF 435 at 20 (citing *Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 768 (2011)).[16]

Bain's citation to a number of inapposite cases[17] does not change this conclusion. Those decisions "address whether a duty attaches to a defendant by virtue of its role in collecting, possessing, or maintaining the plaintiffs' data; they do not address a duty premised on a defendant's affirmative conduct that increased the risk of a breach." *In re Powerschool Holdings, Inc.*, 2026 WL 2233874, at *5 (S.D. Cal. Aug. 3, 2026).

### 4. Bain's Duty to Plaintiffs Is Separate From PowerSchool's Duty

Bain argues "the SAC improperly attempts to bootstrap Bain's purported duty to PowerSchool in violation of Rule 8." Mot. at 16. Not so. Although Plaintiffs' negligence claim sometimes refers to "Defendants" collectively, the SAC elsewhere attributes specific

[15] *See* Section III(C), *infra*.

[16] *See also Brown*, 483 P.3d at 164 ("We have explained that the law imposes a general duty of care on a defendant only when it is the defendant who has 'created a risk' of harm to the plaintiff, including when 'the defendant is responsible for making the plaintiff's position worse.' . . . 'Under general negligence principles, ... a person ordinarily is obligated to exercise due care in his or her own actions so as not to create an unreasonable risk of injury to others . . . .'").

[17] *See* Mot. at 15-16 (citing *In re U.S. Vision Data Breach Litig.*, 2025 WL 615366, at *8-10 (D.N.J. Feb. 26, 2025); *Navarro v. Ski Data*, 2022 WL 18280359, at *10 (C.D. Cal. Dec. 7, 2022); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *14 (D.N.J. Dec. 16, 2021); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 823 (N.Y. Sup. Ct. 2020)).

conduct to Bain—namely, reducing cybersecurity spending and staffing, outsourcing cybersecurity functions to contractors including Movate, and implementing cost-cutting measures that allegedly benefited Bain financially. *See* ¶¶ 7, 46, 86, 88, 91, 97-100, 102, 106-109, 125, 167-182. These allegations adequately support Plaintiffs' claim that Bain owed them a duty of care independent from PowerSchool. *See* ECF 435, at 19 (finding identical allegations "sufficient to provide Bain notice of the conduct at issue").

**5. Plaintiffs Plausibly Allege Foreseeability**

Judge Benitez previously found Plaintiffs' allegations in the FAC regarding their status as reasonably foreseeable victims of any inadequate security practices plausibly alleged that Bain owed a duty of reasonable care in directing the security measures and contractor access it allegedly put into place. *See* ECF 435 at 20-21. Plaintiffs allege the same facts in the SAC: they allege that Bain understood the importance of data security, knew that student PII data is valuable and targeted by criminals, that data breaches were a common and foreseeable risk, and nonetheless directed reductions in cybersecurity staffing and outsourced cybersecurity functions to unguarded contractors whose credentials were later used to access the system. *Compare* ¶¶ 1, 31, 46, 86, 88, 91, 162 *with Brown v. Metro by T-Mobile*, 768 F. Supp. 3d 1068, 1092 (C.D. Cal. 2024) (no duty of care where plaintiffs' injuries were not reasonably foreseeable), and *Tucker v. CBS Radio Stations, Inc.*, 124 Cal. Rptr. 3d 245, 251-52 (Cal. Ct. App. 4th Dist. Div. 1 2011) (same).

**6. *Rowland* Does Not Limit Bain's Duty**

Contrary to Bain's argument, Plaintiffs do not seek to impose a "novel" duty on Bain, and none of the considerations set forth in *Rowland*[18] justify limiting Bain's duties

[18] Those considerations are: the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. *See Rowland v. Christian*, 443 P.2d 561, 564 (Cal. 1968).

to Plaintiffs. Bain's cited cases are entirely distinguishable. For example, in *Bily v. Arthur Young & Co.*, 834 P.2d 745 (Cal. 1992), the court considered "whether and to what extent an accountant's duty of care in the preparation of an independent audit of a client's financial statements extends to persons other than the client." *Id.* at 746.

> At the center of the controversy [were] difficult questions concerning the role of the accounting profession in performing audits, the conceivably limitless scope of an accountant's liability to nonclients who may come to read and rely on audit reports, and the effect of tort liability rules on the availability, cost, and reliability of those reports.

*Id.* at 376. Ultimately, the court concluded that "an auditor owes no general duty of care regarding the conduct of an audit to persons other than the client." *Id.* at 747.

*Elden v. Sheldon*, 758 P.2d 582 (Cal. 1988), is likewise distinguishable. In that case, the court considered "whether plaintiff, who witnessed the tortious injury and death of the person with whom he shared a cohabitant relationship allegedly akin to a marital relationship, may recover damages for loss of consortium and negligent infliction of emotional distress." *Id.* at 582. The court concluded he could not, finding "the 'problems of multiplication of actions and damages' that would result from such an extension of liability [to nonmarried couples] would place an intolerable burden on society." *Id.* at 588 (citation omitted).

**B. Plaintiffs Sufficiently Allege Proximate Causation**

Causation ordinarily presents a factual question not suitable for resolution on a motion to dismiss. *See Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 650–51 (N.D. Cal. 2020) (quoting *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981)). Nevertheless, Plaintiffs allege a plausible causal chain that supports proximate causation: Bain directed offshoring and cost cutting affecting cybersecurity; those decisions weakened PowerSchool's cybersecurity infrastructure; and the breach was later carried out using stolen Movate credentials after cybersecurity functions had been outsourced to that contractor. *See* ¶¶ 46, 86, 88, 91, 162. Judge Benitez previously found that "[a]t the pleading stage, that is enough." ECF 435, at 21 (finding same allegations sufficient to plead

proximate causation). Judge Benitez also found that "[t]he involvement of Movate or third-party threat actors does not break the chain of causation because, on Plaintiffs' theory, those were foreseeable consequences of weakened cybersecurity controls over valuable and sensitive data." *Id.* (citing *Lugtu v. Cal. Highway Patrol*, 26 Cal. 4th 703, 725 (2001)). Bain now asks this Court to disregard Judge Bentinez's previous rulings, arguing (without any basis) that "Plaintiffs must plead more for proximate causation." Mot at 19.

Bain seemingly argues that Plaintiffs fail to satisfy the second aspect of proximate causation set forth in *Modisette v. Apple Inc.*, 241 Cal. Rptr. 3d 209, 224 (Cal. Ct. App. 2018). *See* Mot. at 27.[19] Here, Plaintiffs sufficiently allege Bain's cost-cutting was not only a cause in fact of the data breach, but also "so close to the result" because Bain profited from its acquisition of PowerSchool's data-dependent business and directed the subsequent cost-cutting measures, allowing the breach to occur. *Id.* at 18.

### C. The Economic Loss Doctrine Is Inapplicable to Plaintiffs' Negligence Claim

The economic loss doctrine does not apply under California law where a defendant has a legal duty that is independent of any contract. *See, e.g.*, *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 273-74 (Cal. 2004) (holding economic loss rule did not bar plaintiff's tort claims because they were independent of defendant's breach of contract).

Unlike PowerSchool's tort duties to Plaintiffs—which the Court found arose from the contracts between Plaintiffs and PowerSchool and were, thus, barred by the economic loss doctrine—Bain's tort duties to Plaintiffs arose from common law, statute, as well as social duties based on sound public policies. Accordingly, Plaintiffs sufficiently state a claim for negligence independent from any contract, and the economic loss doctrine does not apply. *Compare* ECF 483, at ¶¶ 171-78 *with Sheen v. Wells Fargo Bank, N.A.*, 505 P.3d 625, 925 (Cal. 2022) (finding economic loss doctrine barred plaintiff's claim because it

[19] *See also Modisette*, 241 Cap. Rptr. 3d at 225 ("[T]he second aspect of proximate cause focuses on public policy considerations . . . legal responsibility must be limited to those causes which are so close to the result, or of such significance as causes, that the law is justified in making the defendant pay.").

was not independent of contract between the parties); *Greystone Homes, Inc. v. Midtec, Inc.*, 86 Cal. Rptr. 3d 196, 211 (Ct. App. 4th Dist. 2008) (applying economic loss rule in homebuilder's construction defect case against manufacturer). Plaintiffs thus sufficiently state a claim for negligence independent from any contract, and the economic loss doctrine does not apply.

* * *

Bain should not be allowed a third "bite at the apple." Plaintiffs have clearly alleged sufficient facts in support of their negligence claim against Bain, and this Court should not deviate from Judge Benitez's prior ruling, which was based on identical factual allegations.

## IV. PLAINTIFFS ADEQUATELY PLEAD INTENTIONAL TORTIOUS INTERFERENCE WITH CONTRACT

Plaintiffs must allege "(1) a valid contract between Plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998).[20] They do. Bain's recycled arguments are marked with defects—cherry-picking portions of the SAC and Order, pushing for inferences to be drawn in its favor, and invoking double standards. None of Bain's arguments pass muster.

### A. Bain's Intentional Procurement Arguments Lack Merit

Bain's reliance on the "No Control" provision of the Merger Agreement fares no better. Bain again argues the provision "*presumably* would include any alleged workforce reductions," Mot. at 21, and trumps the generic interim operating covenants, *id*. at 22. Now is not the time to make presumptions in Bain's favor, and as this Court already found, the No Control provision is a "general disclaimer," whereas the interim operating covenants

[20] Bain does not refute elements 1, 2, and 5. Accordingly, the Court's prior ruling finding these satisfied should not be disturbed. *See* ECF No. 435, at 14-17.

are "specific contractual provisions." ECF 435 at 15.[21] As this Court has already agreed, the interim operating covenants, "combined with the alleged August 2024 layoffs, support a plausible inference that Bain directed or approved the conduct which resulted in PowerSchool's breach of its contracts with Plaintiffs. *Id.* While Plaintiffs—and Judge Benitez—do not find ambiguity between the clauses, to the extent Bain presents one, it is well-settled that such an issue cannot be resolved at this stage.[22]

Even if PowerSchool implemented the layoffs on its own volition, Bain's approval of and failure to stop them confers the requisite intent in pleading contractual interference. *See, e.g.*, *Bank of New York v. Fremont Gen. Corp.*, 523 F.3d 902, 911 (9th Cir. 2008) (a reasonable jury could find defendant who didn't personally commit acts "knew about them and effectively sanctioned them by failing to stop them . . . a reasonable finder of fact could conclude that [defendant] caused [acts] with the intention of disrupting the contract at issue").[23] Bain's argument—that the FAC and SAC do not include allegations of the interim operating covenants—is meritless given its incessant reliance upon the No Control provision and express acknowledgements that the SAC incorporates the Merger Agreement by reference.[24] This "rule for thee but not for me" argument underscores the lack of credibility throughout Bain's Motion.

This lack of credibility is further exemplified in Bain's argument—citing *one* paragraph—that there are no allegations that Bain approved, permitted, or was otherwise involved in any workforce reductions. Mot. at 21, 22 (citing ¶ 101). Bain seemingly hangs

---

[21] *See also Jadwin v. Cnty. of Kern*, 610 F. Supp. 2d 1129, 1190 (E.D. Cal. 2009) ("when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision").

[22] *See, e.g.*, *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1009 (9th Cir. 2014) (contractual ambiguities present "a fact issue that cannot be resolved on a motion to dismiss").

[23] *See also Plessinger v. Castleman & Haskell*, 838 F. Supp. 448, 453 (N.D. Cal. 1993) (finding allegations of client telling law firm to remove attorney from its cases, despite client's absolute right to counsel of choice, to be intentional conduct certain to interfere with or disrupt attorney's business relations).

[24] *See supra* n.5.

its hat on that one paragraph because it does not explicitly include the word Bain. ¶ 101. However, if Bain were to look just *one* paragraph above, it could connect the dots: "[a]ggressive cost-cutting measures were implemented by Bain Capital almost instantly." ¶ 100. Plaintiffs also specifically allege Bain directed, encouraged, and/or pressured PowerSchool to "lay off employees involved in cybersecurity operations and information technology infrastructure *as exemplified by the August 2024 layoffs*." ¶ 162 (emphasis added). In that same vein, Bain argues the Court's prior Order did not cite any allegations of layoffs in the FAC and instead "only relied on the Track 2 Direct Action Complaint." Mot. at 22. In contrast, the Court found "[b]oth complaints allege that Bain interfered . . . [by] pressuring PowerSchool to . . . reduce cybersecurity staff" and made three citations to the FAC, each of which remain in the SAC. ECF 435 at 14-15 (citing the equivalents of ¶¶ 7, 162-63). Plaintiffs thus sufficiently allege that Bain knew "the interference is certain or substantially certain to occur as a result of [its] action." *Quelimane*, 960 P.2d at Cal. 4th at 56.

Bain's arguments to the contrary do not warrant dismissal, as courts "look to the substance of the allegations" rather than the presence or absence of "magic words." *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 705 F. App'x 558, 559-60 (9th Cir. 2017).[25] [26] Moreover, intent may be pleaded generally under Fed. R. Civ. P. 9, and thus "general allegations of [the defendant's] knowledge of the underlying contracts, and its wrongful intent of interfering with the [third party's] contractual relationship with [the plaintiff] is not fatal to the complaint." *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1310 (N.D. Cal. 1997).

---

[25] *See also In re Ethereummax Inv.*, 2023 WL 6787827, at *23 (C.D. Cal. June 6, 2023) ("the Court does not typically require parties to plead magic words to survive dismissal").

[26] Bain's argument that the Court employed the wrong standard is another exercise of semantics and is misplaced. *See* Mot. at 23. The Court concluded: "Plaintiffs also adequately plead intent. The required mental state is satisfied if the defendant desired the breach or knew that interference was certain or substantially certain to occur as a result of its conduct." ECF 435, at 15 (citing *Quelimane*, 19 Cal. 4th at 56). Thus, the correct standard was applied.

Nonetheless, Plaintiffs allege considerably more than Bain's generalized knowledge of the Contracts. Instead, Plaintiffs allege Bain had actual knowledge of not only the Contracts, but also the critical cybersecurity terms therein, and recognized the "stringent cybersecurity protocols." ¶ 161; *see also* Mot. at 23 (citing same). Bain also had knowledge of PowerSchool's level of adherence to those cybersecurity obligations and acknowledged the risks associated with PowerSchool's "ability to comply with legal requirements, contractual obligations and industry standards relating to security, data protection and privacy" and "the impact of potential information technology or data security breaches or other cyber-attacks or other disruptions." *Supra* n.5. Despite this knowledge, Bain hastily directed severe cost-cutting measures, including reductions to PowerSchool's internal cybersecurity team and the outsourcing of backend personnel involved in cybersecurity, without adequate oversight or enforcement of the contractually- required security for Plaintiffs' highly sensitive PHI/PII. ¶¶ 7, 100, 162. Bain was responsible for these workforce cuts—including the August 2024 layoffs—which further undermined PowerSchool's provision of the contractually promised data security, enabling hackers to gain unauthorized access to PowerSchool's systems. ¶¶ 101-03, 105-06, 108. These cost-cutting measures were done to maximize its own financial returns and take liberties with contractual obligations at the expense of PowerSchool's contractual obligations to Plaintiffs and Class Members." ¶¶ 100, 163. Given these allegations, along with Bain's acknowledgments of PowerSchool's cybersecurity obligations, compliance, and the future risks associated thereto, a reasonable inference is that Bain knew it would be "substantially certain" or a "necessary consequence" that its drastic workforce reductions would prevent PowerSchool from complying with its contractual data security obligations. Plaintiffs thus plausibly allege intentional procurement.

**B. Plaintiffs Adequately Allege Causation**

Bain's causation arguments are much of the same: relying on the absence of 'magic words,' selectively quoting the Court's Order, and overextending its framing of the causal chain. "California law defines 'substantial' expansively," and "has cautioned against

placing 'undue emphasis' on the ordinary meaning of that word." *Bank of New York*, 523 F.3d at 909 (citing *Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203, 1212-13 (Cal. 1997)). The substantial factor standard was "formulated to aid plaintiffs as a broader rule of causality than the 'but for' test." *Rutherford*, 941 P.2d at 1214.

Here, PowerSchool contracted to provide cybersecurity for the sensitive PHI and PII it collected from Plaintiffs. ¶ 1. Bain approved reduction and international outsourcing of, *inter alia*, PowerSchool's workforce such as those responsible for reviewing access controls and network monitoring, ¶ 7. The first instance of unauthorized access occurred just three days after Bain approved the mass layoffs. ¶¶ 100-01, 104. The subcontractor whose credentials were compromised in the Data Breach was affiliated with an outsourcing company in the Philippines. ¶ 91. Thus, Bain's cost-cutting and offshoring directives "expressly breached PowerSchool's contractual and other obligations," ¶ 100, because it prevented PowerSchool from providing the promised level of cybersecurity protections, exposing Plaintiffs to the Data Breach and consequent harms, ¶ 164.

This Court has already agreed. ECF 435, at 16-17. Its prior Order not *only* concluded that "Plaintiffs also plausibly allege causation and breach" as Bain suggests, Mot. at 24 (citing *id*.), but also found:

> They allege that Bain ordered layoffs of cybersecurity staff and outsourced cybersecurity functions to offshore contractors, including Defendant Movate, leaving PowerSchool's security teams understaffed. They further allege that the December 2024 breach was carried out using stolen Movate credentials. That causal chain is sufficient at the pleading stage.

ECF 435, at 16. Bain's attempt to reframe the causal chain is equally unavailing. It argues the chain runs to "an inference that Bain directed cybersecurity cuts," to "an assumption" that PowerSchool made the cuts due to pressure from Bain. Mot. at 24. These steps say the same thing as each other in different words, and an inference or assumption does not render the chain attenuated, as they are to be drawn in Plaintiffs' favor. To the extent Bain seeks to argue the criminals' conduct is not attributable to Bain, "that [Bain's] conduct becomes effective in harm only through the intervention of new and independent forces for which

[Bain] is not responsible is of no importance." *Bank of New York*, 523 F.3d at 910. Accordingly, as Judge Benitez held, the causal chain is sufficiently alleged at the pleading stage. *See* ECF 435, at 15.

**C. Justification Cannot Be Resolved on the Pleadings**

Bain's justification arguments are admittedly confusing but nonetheless unavailing. Bain argues that legitimate business purposes can be considered at the pleading stage, and exercising one's rights under a different contract is a legitimate business purpose. Mot. at 25. But the only fact Bain applies to this recitation of the law is that it had arm's length negotiations and general business discussions with PowerSchool during the negotiation period. *Id*. (citing ¶ 97). This does not capture the scope of Bain's conduct after culminating the acquisition—gutting a company's cybersecurity infrastructure to maximize short-term profits is not a recognized justification. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1192 (9th Cir. 2022) ("seek[ing] to further his own economic advantage at the expense of another" does not justify interference). To the extent Bain argues that it had the right to approve the layoffs, *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1127 (9th Cir. 2014) is inapposite. *See* Mot. at 25. There, the court's analysis depended on undisputed facts about the time, manner, and propriety of the exercise of its right of first refusal. *Id*. Here, Plaintiffs do not simply allege Bain *approved* layoffs, but that it *directed and pressured* PowerSchool to reduce spending on cybersecurity compliance, lay off cybersecurity employees, and offshore administrative operations in furtherance of its own financial motives, each of which Bain refutes. Bain's purported justification is both incomplete and not apparent within the SAC. *See Plessinger v. Castleman & Haskell*, 838 F. Supp. 448, 452 (N.D. Cal. 1993) (affirmative defense must clearly appear on face of pleading and be complete). Thus, Bain's motion to dismiss Plaintiffs' intentional tortious interference with contract claim should be denied.

**CONCLUSION**

For the reasons set forth above, the Court should deny Bain's motion to dismiss in its entirety.

Dated: August 25, 2026

Respectfully submitted,

*<u>/s/ James E. Cecchi</u>*
James E. Cecchi (NJ 030861989)
*Admitted Pro Hac Vice*
Jason H. Alperstein (FL 64205)
*Admitted Pro Hac Vice*
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
Email: jcecchi@carellabyrne.com
Email: jalperstein@carellabyrne.com

*Lead Counsel for the proposed School District Class and Counsel for Plaintiffs*

John Nelson (SBN 317598)
**MILBERG PLLC**
402 W Broadway, Suite 1760
San Diego, California 92101
Tel.: (858) 209-6941
Email: jnelson@milberg.com

M. Anderson Berry (SBN 262879)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Tel.: (916) 823-6955
Email: anderson@emeryreddy.com

Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel.: (954) 525-4100
Email: cardoso@kolawyers.com

Tyler S. Graden (NJ 028462007)
*Admitted Pro Hac Vice*
**KESSLER TOPAZ MELTZER CHECK LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087
Tel.: (610) 667-7706

Email: tgraden@ktmc.com

*Steering Committee for the proposed School District Class*

Michael Critchley, Sr. (NJ 251821972)
*Pro Hac Vice Forthcoming*
**CRITCHLEY & LURIA, LLC**
75 Livingston Avenue
Roseland, New Jersey 07068
Tel.: (973) 422-9200
Email: mcritchley@critchleylaw.com

*Additional Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on the 25th day of August, 2026, I filed the foregoing Plaintiffs' Brief in Opposition to Defendant Bain Capital, L.P.'s Motion to Dismiss the School Districts' Second Amended Class Action Complaint with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ Patrick J. Doherty*
Patrick J. Doherty