# EXHIBIT E

PREM14C 1 d836904dprem14c.htm PREM14C

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

## SCHEDULE 14C INFORMATION

**Information Statement Pursuant to Section 14(c) of the Securities Exchange Act of 1934**

Check the appropriate box:

☒ Preliminary Information Statement

☐ **Confidential, for Use of the Commission Only (as permitted by Rule 14c-5(d)(2))**

☐ Definitive Information Statement

## PowerSchool Holdings, Inc.
**(Name of Registrant As Specified In Its Charter)**

Payment of Filing Fee (Check all boxes that apply):

☐ No fee required

☐ Fee paid previously with preliminary materials

☒ Fee computed on table in exhibit required by Item 25(b) of Schedule 14A (17 CFR 240.14a-101) per Item 1 of this Schedule and Exchange Act Rules 14c-5(g) and 0-11

Table of Contents

PRELIMINARY INFORMATION STATEMENT — SUBJECT TO COMPLETION

PowerSchool

# PowerSchool Holdings, Inc.

**150 Parkshore Drive**
**Folsom, CA 95630**

**NOTICE OF WRITTEN CONSENT AND APPRAISAL RIGHTS**
**AND INFORMATION STATEMENT**
**WE ARE NOT ASKING YOU FOR A PROXY AND**
**YOU ARE REQUESTED NOT TO SEND US A PROXY.**

To our Stockholders:

This notice of written consent and appraisal rights and information statement is being furnished to the holders of Class A common stock, par value $0.0001 per share (the "Class A Common Stock"), of PowerSchool Holdings, Inc., a Delaware corporation ("PowerSchool"), in connection with the Agreement and Plan of Merger (the "Merger Agreement"), dated as of June 6, 2024, by and among PowerSchool, BCPE Polymath Buyer, Inc., a Delaware corporation ("Parent"), and BCPE Polymath Merger Sub, Inc., a Delaware corporation and a wholly owned subsidiary of Parent ("Merger Sub"). A summary of the Merger Agreement is provided in the accompanying information statement and a copy of the Merger Agreement is attached as Annex A to the accompanying information statement, and each are incorporated by reference into this notice. Parent and Merger Sub are affiliates of investment funds advised by Bain Capital Private Equity, LP ("Bain"). Pursuant to the Merger Agreement, Merger Sub will merge with and into PowerSchool (the "Merger"), with PowerSchool surviving such merger as a wholly owned subsidiary of Parent. Upon consummation of the Merger, on the terms and subject to the conditions set forth in the Merger Agreement, each share of Class A Common Stock issued and outstanding immediately prior to the effective time of the Merger (the "Effective Time") (including each share of Class A Common Stock resulting from the exchange of limited liability company units of PowerSchool Holdings LLC ("LLC Units")) will be cancelled, extinguished and converted into the right to receive an amount in cash equal to $22.80, without interest and less any applicable withholding taxes. However, the Merger consideration will not be paid in respect of (i) shares of Class B common stock, par value $0.0001 per share (the "Class B Common Stock" and, together with the Class A Common Stock, the "Company Common Stock"), of PowerSchool issued and outstanding immediately prior to the Effective Time, which will be cancelled and extinguished without conversion thereof or consideration paid in exchange; (ii) any shares of Company Common Stock held by PowerSchool as treasury stock or owned by Parent or any of its affiliates or subsidiaries (including Merger Sub), in each case as of immediately prior to the Effective Time, which will automatically be cancelled and extinguished without conversion thereof or consideration paid in exchange; (iii) certain shares of Class A Common Stock and LLC Units held by the Principal Stockholders (as defined below), which will be transferred to BCPE Polymath Topco, LP, a Delaware limited partnership and affiliate of investment funds advised by Bain, immediately prior to the Effective Time, pursuant to support and rollover agreements entered into in connection with the Merger Agreement; and (iv) those shares of Class A Common Stock held by any person who is entitled to demand and who has properly demanded appraisal of such shares of Class A Common Stock under Delaware law and not withdrawn his, her or its demand for appraisal or has not lost or waived such rights.

The board of directors of PowerSchool (the "Board"), formed a Special Committee of the Board (the "Special Committee"), comprised solely of independent and disinterested members of the Board, to review,

Table of Contents

evaluate and provide input on a potential sale of PowerSchool and certain alternatives thereto (including remaining an independent company), to determine whether such a potential sale is advisable and fair to and in the best interest of PowerSchool and its stockholders and to recommend to the Board what action, if any, should be taken with respect to the potential sale of PowerSchool. In connection with the formation of the Special Committee, the Board resolved that it would not approve any potential sale of PowerSchool that would involve the Principal Stockholders participating in an equity rollover or receiving payments under the Tax Receivable Agreement without a prior favorable recommendation from the Special Committee. The Special Committee, as more fully described in the accompanying information statement, unanimously (i) determined that it is fair to, and in the best interests of, PowerSchool and its stockholders, and declared it advisable, to enter into the Merger Agreement providing for the Merger, with PowerSchool being the surviving corporation in the Merger in accordance with the General Corporation Law of the State of Delaware (the "DGCL") upon the terms and subject to the conditions set forth therein; (ii) resolved to recommend that the Board approve and adopt the Merger Agreement; and (iii) resolved to recommend that the Board submit the Merger Agreement to PowerSchool's stockholders for their adoption and recommend that PowerSchool's stockholders vote in favor of the Merger Agreement.

The Board, acting on the unanimous recommendation of the Special Committee, has (i) determined that it is fair to, and in the best interests of, PowerSchool and its stockholders, and declared it advisable, to enter into the Merger Agreement providing for the Merger in accordance with the DGCL upon the terms and subject to the conditions set forth therein; (ii) approved the execution and delivery of the Merger Agreement by PowerSchool, the performance by PowerSchool of its covenants and other obligations thereunder, and the consummation of the Merger and the other transactions contemplated by the Merger Agreement upon the terms and subject to the conditions set forth therein; (iii) directed that the adoption of the Merger Agreement be submitted for consideration by PowerSchool's stockholders in accordance with the Merger Agreement; and (iv) resolved to recommend that PowerSchool's stockholders approve and adopt the Merger Agreement in accordance with the DGCL.

The adoption of the Merger Agreement by PowerSchool's stockholders required the affirmative vote or written consent by holders of a majority of the outstanding shares of Company Common Stock entitled to vote thereon. On June 7, 2024, Severin Topco, LLC, Vista Equity Partners Fund VI, L.P., Vista Equity Partners Fund VI-A, L.P., VEPF VI FAF, L.P., Onex Partners IV Select LP, Onex US Principals LP, Onex Partners IV LP, Onex Partners IV GP LP, Onex Partners IV PV LP, Onex Powerschool LP and Pinnacle Holdings I L.P. (collectively, the "Principal Stockholders"), which together on June 6, 2024 beneficially owned 105,321,745 shares of Class A Common Stock and 36,914,501 shares of Class B Common Stock, representing approximately 69.8% of the aggregate voting power of the issued and outstanding shares of Company Common Stock, delivered a written consent approving and adopting in all respects the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger (the "Stockholder Consent"). As a result, no further action by any stockholder of PowerSchool is required under applicable law or the Merger Agreement (or otherwise) to adopt the Merger Agreement, and PowerSchool will not be soliciting your vote for or consent to the adoption of the Merger Agreement and the approval of the transactions contemplated by the Merger Agreement and will not call a stockholders' meeting for purposes of voting on the adoption of the Merger Agreement and the approval of the transactions contemplated by the Merger Agreement. **This notice and the accompanying information statement shall constitute notice to you from PowerSchool of the Stockholder Consent contemplated by Section 228(e) of the DGCL.**

Under Section 262 of the DGCL, if the Merger is completed, subject to compliance with the requirements of Section 262 of the DGCL, holders of shares of Class A Common Stock, other than the Principal Stockholders, will have the right to seek an appraisal for, and be paid the "fair value" in cash of, their shares of Class A Common Stock (as determined by the Delaware Court of Chancery), together with interest, if any, on the amount determined to be fair value, instead of receiving the Merger consideration. To exercise your appraisal rights, you must submit a written demand for an appraisal to PowerSchool no later than twenty (20) days after the mailing of this information statement, which mailing date is , and comply precisely with other procedures set forth

Table of Contents

in Section 262 of the DGCL, which are summarized in the accompanying information statement. A copy of Section 262 of the DGCL is attached to the accompanying information statement as Annex G. **This notice and the accompanying information statement shall constitute notice to you from PowerSchool of the availability of appraisal rights under Section 262 of the DGCL in connection with the Merger.**

We urge you to read the entire information statement carefully. If the Merger is completed, you will receive instructions regarding payment for your shares of Class A Common Stock.

BY ORDER OF THE BOARD OF DIRECTORS,

| | |
|---|---|
| Hardeep Gulati<br>Chief Executive Officer | Michael C. Bisignano<br>Chief Legal Officer |

**Neither the U.S. Securities and Exchange Commission nor any state securities regulatory agency has approved or disapproved the Merger, passed upon the merits or fairness of the Merger or passed upon the adequacy or accuracy of the disclosures in this notice or the accompanying information statement. Any representation to the contrary is a criminal offense.**

This information statement is dated and is first being mailed to stockholders on or before .

Table of Contents

## TABLE OF CONTENTS


| | Page |
|---|---|
| **SUMMARY** | **1** |
| The Parties to the Merger Agreement | 1 |
| The Merger | 2 |
| The Merger Consideration | 2 |
| Treatment of PowerSchool Equity Awards in the Merger | 2 |
| Treatment of LLC Units of PowerSchool Holdings LLC | 4 |
| Recommendation of the Special Committee and the Board; Reasons for the Merger | 4 |
| Required Stockholder Approval for the Merger | 5 |
| Opinion of Goldman Sachs & Co. LLC | 6 |
| Opinion of Centerview Partners LLC | 6 |
| Position of Vista and Onex as to the Fairness of the Merger | 7 |
| Certain Effects of the Merger | 7 |
| Financing | 7 |
| Interests of Our Directors and Executive Officers in the Merger | 7 |
| The Merger Agreement | 7 |
| Support and Rollover Agreements | 12 |
| TRA Amendment | 12 |
| Material United States Federal Income Tax Consequences of the Merger | 13 |
| Regulatory Approvals | 13 |
| Sole Remedy; Jurisdiction | 13 |
| Appraisal Rights | 14 |
| Transaction Litigation | 14 |
| Market Information and Dividends | 14 |
| **QUESTIONS AND ANSWERS ABOUT THE MERGER** | **15** |
| **SPECIAL FACTORS** | **21** |
| Background of the Merger | 21 |
| Recommendation of the Special Committee and the Board; Reasons for the Merger | 45 |
| Required Stockholder Approval for the Merger | 55 |
| Opinion of Goldman Sachs & Co. LLC | 56 |
| Opinion of Centerview Partners LLC | 64 |
| Reasons of Vista and Onex for the Merger | 74 |
| Position of Vista and Onex as to the Fairness of the Merger | 74 |
| Plans for PowerSchool After the Merger | 76 |
| Certain Effects of the Merger | 76 |
| Certain Effects on the Company if the Merger is Not Completed | 79 |
| Certain Company Financial Forecasts | 79 |
| Accounting Treatment | 81 |
| Financing | 81 |
| Interests of Our Directors and Executive Officers in the Merger | 82 |
| Fees and Expenses | 87 |
| Delisting and Deregistration of Class A Common Stock | 87 |
| Transaction Litigation | 88 |
| Material United States Federal Income Tax Consequences of the Merger | 88 |
| Regulatory Approvals | 90 |
| **CAUTIONARY STATEMENT REGARDING FORWARD-LOOKINGSTATEMENTS** | **92** |
| **THE PARTIES TO THE MERGER AGREEMENT** | **95** |
| **THE MERGER AGREEMENT** | **96** |
| Explanatory Note Regarding the Merger Agreement | 96 |
| Form of Merger | 96 |
| Consummation and Effectiveness of the Merger | 96 |
| Consideration to be Received in the Merger | 97 |

Table of Contents


| | |
|---|---|
| Change of Control Exchange | 98 |
| Appraisal Shares | 98 |
| Procedures for Receiving Merger Consideration | 99 |
| Certificate of Incorporation; Bylaws | 100 |
| Representations and Warranties | 100 |
| Conduct of Business by PowerSchool Prior to Consummation of the Merger | 103 |
| Support and Rollover Agreements | 106 |
| TRA Amendment | 106 |
| Regulatory Filings; Efforts | 107 |
| Company Stockholder Approval | 108 |
| No Solicitation or Negotiation | 108 |
| Continuing Employee Matters | 109 |
| Indemnification and Insurance | 110 |
| Financing Covenant; PowerSchool Cooperation | 111 |
| Other Covenants and Agreements | 112 |
| Conditions to Consummation of the Merger | 113 |
| Termination of the Merger Agreement | 115 |
| Termination Fees and Expenses | 116 |
| Superior Proposal and Change of Recommendation | 117 |
| Amendment and Waiver | 119 |
| Sole Remedy | 119 |
| Jurisdiction | 119 |
| Governing Law | 119 |
| **PROVISIONS FOR UNAFFILIATED STOCKHOLDERS** | **120** |
| **IMPORTANT INFORMATION REGARDING POWERSCHOOL** | **121** |
| Company Background | 121 |
| Directors and Executive Officers | 121 |
| Security Ownership of Certain Beneficial Owners and Management | 124 |
| Prior Public Offerings | 126 |
| Transactions in PowerSchool Class A Common Stock | 127 |
| Past Contracts, Transactions, Negotiations and Agreements | 127 |
| Book Value Per Share | 128 |
| Market Price of PowerSchool Class A Common Stock | 128 |
| Dividends | 128 |
| **IMPORTANT INFORMATION REGARDING VISTA AND ONEX** | **129** |
| Vista Filing Persons | 129 |
| Onex Filing Persons | 129 |
| **APPRAISAL RIGHTS** | **132** |
| General | 132 |
| How to Exercise and Perfect Your Appraisal Rights | 133 |
| Who May Exercise Appraisal Rights | 134 |
| Surviving Corporation's Actions After Completion of the Merger | 134 |
| **WHERE YOU CAN FIND MORE INFORMATION** | **138** |
| Annex A—Agreement and Plan of Merger | A-1 |
| Annex B—Opinion of Goldman Sachs & Co. LLC | B-1 |
| Annex C—Opinion of Centerview Partners LLC | C-1 |
| Annex D—Vista Support and Rollover Agreement | D-1 |
| Annex E—Onex Support and Rollover Agreement | E-1 |
| Annex F—Amendment No. 1 to Tax Receivable Agreement | F-1 |
| Annex G—Section 262 of the General Corporation Law of the State of Delaware | G-1 |

Table of Contents

**SUMMARY**

This summary highlights selected information from this information statement and may not contain all of the information that is important to you. To fully understand the Merger, as defined and as described below, contemplated by the Agreement and Plan of Merger, dated as of June 6, 2024 (the "Merger Agreement"), by and among PowerSchool Holdings, Inc., a Delaware corporation ("PowerSchool"), BCPE Polymath Buyer, Inc., a Delaware corporation ("Parent"), and BCPE Polymath Merger Sub, Inc., a Delaware corporation and a wholly owned subsidiary of Parent ("Merger Sub"), and for a more complete description of the legal terms of the Merger, you should carefully read this entire information statement, the annexes attached to this information statement and the documents referred to or incorporated by reference in this information statement, as well as the related Schedule 13E-3. We have included page references in parentheses to direct you to the appropriate place in this information statement for a more complete description of the topics presented in this summary. In this information statement, the terms "PowerSchool," "Company," "we," "us" and "our" refer to PowerSchool Holdings, Inc. Throughout this information statement, we refer to Bain Capital Private Equity, LP as "Bain". All references in this information statement to terms defined in the notice to which this information statement is attached have the meanings provided in that notice. This information statement is dated and is first being mailed to our stockholders on or before .

Since the transactions contemplated by the Merger Agreement, including the Merger, constitute a "going private" transaction under the rules of the Securities and Exchange Commission (the "SEC"), PowerSchool, the Principal Stockholders (as defined below) and certain of their affiliates have filed with the SEC a Transaction Statement on Schedule 13E-3 with respect to the transactions contemplated by the Merger Agreement, including the Merger. You may obtain any additional information about the Schedule 13E-3 under the caption entitled "Where you Can Find More Information".

**The Parties to the Merger Agreement (page 95)**

***PowerSchool***. PowerSchool, based in Folsom, California, provides a comprehensive suite of solutions that includes the mission-critical system of record used by state Departments of Education, districts and schools, who leverage our solutions to deliver insights and analytics to improve education outcomes. As of March 31, 2024, PowerSchool serves more than 17,000 customers, including over 90 of the 100 largest districts by student enrollment in the United States, over 30 state-, province-, and territory-wide contracts in North America, and sells solutions in over 90 countries globally. PowerSchool's platform is embedded in school workflows and is used by educators, students, administrators, and parents on a daily basis. PowerSchool's principal executive offices are located at 150 Parkshore Drive, Folsom, California 95630 and its telephone number is (877) 873-1550. PowerSchool's website is www.powerschool.com. The information contained on, or accessible through, PowerSchool's website is not part of this information statement. Additional information about PowerSchool is included in documents incorporated by reference into this information statement and our filings with the SEC, copies of which may be obtained without charge by following the instructions in "Where You Can Find More Information" beginning on page 138.

PowerSchool's Class A common stock, par value $0.0001 per share (the "Class A Common Stock"), is listed with, and trades on, the New York Stock Exchange (the "NYSE") under the ticker symbol "PWSC".

***Parent***. Parent is a Delaware corporation that was formed solely for the purpose of entering into the Merger Agreement, consummating the Merger and engaging in the transactions contemplated by the Merger Agreement. Parent is wholly owned by BCPE Polymath Intermediate, LLC and is an affiliate of investment funds advised by Bain. After the consummation of the Merger (the "Closing"), Parent will be the parent company of PowerSchool. Parent's principal executive offices are located at c/o Bain Capital Private Equity, LP, 200 Clarendon Street, Boston, MA 02116 and its telephone number is (617) 516-2000.

Table of Contents

***Merger Sub***. Merger Sub was formed by Parent solely for the purpose of entering into the Merger Agreement, consummating the Merger and engaging in the transactions contemplated by the Merger Agreement with PowerSchool. Merger Sub is a wholly owned subsidiary of Parent and has not carried on any business, conducted any operations or incurred any liabilities or obligations, other than those incidental to its formation and pursuant to the Merger Agreement, the performance of its obligations under the Merger Agreement and matters ancillary to the Merger Agreement. Upon consummation of the Merger, Merger Sub will cease to exist. Merger Sub's principal executive offices are located at c/o Bain Capital Private Equity, LP, 200 Clarendon Street, Boston, MA 02116 and its telephone number is (617) 516-2000.

**The Merger (page 96)**

On June 6, 2024, PowerSchool entered into the Merger Agreement with Parent and Merger Sub. Upon the terms and subject to the conditions provided in the Merger Agreement, and in accordance with Delaware law, at the effective time of the Merger (the "Effective Time"), Merger Sub will merge with and into PowerSchool, with PowerSchool continuing as the surviving corporation (the "Surviving Corporation") and a wholly owned subsidiary of Parent (the "Merger"). Unless otherwise set out in the Merger Agreement, because the Merger consideration will be paid in cash, you will receive no equity interest in Parent in consideration for your shares of Class A Common Stock, and after the Effective Time you will not own any shares of Class A Common Stock.

**The Merger Consideration (page 97)**

Upon consummation of the Merger, each issued and outstanding share of Class A Common Stock (including each share of Class A Common Stock resulting from the exchange of limited liability company units of PowerSchool Holdings LLC ("LLC Units")), other than (i) any shares of Class A Common Stock held by PowerSchool as treasury stock or owned by Parent or any of its affiliates or subsidiaries (including Merger Sub), in each case as of immediately prior to the Effective Time, which will automatically be cancelled and extinguished without conversion thereof or consideration paid in exchange ("Owned Company Shares"), (ii) certain shares of Class A Common Stock (the "Rollover Shares"), which will be transferred together with certain LLC Units (the "Rollover Units") held by the Principal Stockholders to BCPE Polymath Topco, LP, a Delaware limited partnership and affiliate of investment funds advised by Bain ("BCPE Topco"), immediately prior to the Effective Time, pursuant to support and rollover agreements entered into in connection with the Merger Agreement and (iii) shares of Class A Common Stock held by holders who have not consented to the adoption of the Merger Agreement in writing and who have properly exercised appraisal rights with respect to their shares in accordance with, and who have complied with, Section 262 of the General Corporation Law of the State of Delaware (the "DGCL" and such shares, "Appraisal Shares"), will be converted into the right to receive $22.80 in cash without interest thereon (the "Per Share Price"), after giving effect to any required withholding taxes (the "Merger Consideration"). The Merger Consideration will not be paid in respect of any shares of Class B common stock, par value $0.0001 per share (the "Class B Common Stock" and, together with the Class A Common Stock, the "Company Common Stock"), of PowerSchool issued and outstanding immediately prior to the Effective Time, which will automatically be cancelled and extinguished without conversion thereof or consideration paid in exchange. Additionally, please see "—Treatment of PowerSchool Equity Awards in the Merger" below for information on the treatment of PowerSchool's equity awards in the Merger.

We encourage you to read the Merger Agreement, which is attached as Annex A to this information statement, as it is the legal document that governs the Merger and the other transactions contemplated by the Merger Agreement.

**Treatment of PowerSchool Equity Awards in the Merger (page 77)**

At the Effective Time, each award of restricted stock units with respect to shares of our Class A Common Stock (each a "Company RSU") that is outstanding and vested but not yet settled as of immediately prior to the

Table of Contents

Effective Time or that vests in accordance with its terms as a result of the consummation of the transactions contemplated by the Merger Agreement (each, a "Vested Company RSU") will automatically be cancelled and converted into the right to receive an amount in cash (without interest and subject to applicable withholding taxes) equal to the product of (i) the Per Share Price and (ii) the total number of shares of Class A Common Stock subject to such Vested Company RSU as of immediately prior to the Effective Time. As promptly as reasonably practicable, but in any event in no less than five business days after the first regularly scheduled payroll date after the Closing date, the holders of Vested Company RSUs will be paid by PowerSchool or the Surviving Corporation, through its payroll system or payroll provider, all amounts required to be paid to such holders in respect of Vested Company RSUs that are cancelled and converted into a cash payment, less any required withholding taxes.

At the Effective Time, each Company RSU award outstanding immediately prior to the Effective Time that is not a Vested Company RSU (each, an "Unvested Company RSU") will automatically be cancelled and converted into a right to receive an amount in cash (without interest and subject to applicable withholding taxes) equal to the product of (i) the Per Share Price and (ii) the total number of shares of Class A Common Stock subject to such Unvested Company RSU as of immediately prior to the Effective Time (the "Cash Replacement Company RSU Amount"), which Cash Replacement Company RSU Amount will, subject to the holder's continued service with Parent, the Surviving Corporation or a direct or indirect subsidiary or parent entity of Parent through the applicable vesting dates, vest and be payable at the same time as the Unvested Company RSU award for which the Cash Replacement Company RSU Amount was exchanged would have vested and been payable pursuant to their terms, and shall otherwise have the same terms and conditions as applied to the Unvested Company RSU award for which it was exchanged. The Surviving Corporation shall pay any portion of the Cash Replacement Company RSU Amount that vests to the applicable holder no later than 30 days following the date on which such portion vests.

At the Effective Time, each award of market share units with respect to shares of our Class A Common Stock outstanding as of immediately prior to the Effective Time (each, a "Company MSU") will automatically be cancelled and converted into a restricted stock unit award with respect to the common equity in Parent, the Surviving Corporation or one of its subsidiaries, or a direct or indirect parent entity of Parent (the "Replacement Company MSU Award"), with the number of shares or units covered by such Replacement Company MSU Award to be equal to the quotient of (i) the product of (A) the Per Share Price and (B) the total number of shares of Class A Common Stock subject to such Company MSU as of immediately prior to the Effective Time (with the performance factor based on the Per Share Price) and (ii) the fair market value of such share or unit as of the Effective Time (as determined by Parent or the applicable affiliate thereof in good faith). The Replacement Company MSU Award will, subject to the holder's continued service with Parent, the Surviving Corporation or a direct or indirect subsidiary or parent entity of Parent through the applicable vesting dates, vest and be settled at the same time as the Company MSUs for which such Replacement Company MSU Award was exchanged would have vested and been settled pursuant to their terms, and will otherwise have the same terms and conditions (including with respect to service-based vesting conditions but excluding any performance-based vesting conditions) as applied to the Company MSUs for which it was exchanged; however, upon settlement of such Replacement Company MSU Award, the holder thereof will be permitted, in lieu of paying any taxes that are required to be withheld from such holder, to require Parent, the Surviving Corporation, or its subsidiaries or a direct or indirect parent entity of Parent, as applicable, to withhold a number of shares or units otherwise issuable upon such settlement having a fair market value equal to such required applicable withholding taxes.

At the Effective Time, each award of performance share units of the Company outstanding as of immediately prior to the Effective Time (each a "Company PSU") will automatically be cancelled and converted into a performance stock unit award with respect to the common equity in Parent, the Surviving Corporation or one of its subsidiaries, or a direct or indirect parent entity of Parent (the "Replacement Company PSU Award"), with the number of shares or units covered by such Replacement Company PSU Award to be equal to the

Table of Contents

quotient of (i) the product of (A) the Per Share Price and (B) the total number of shares of Class A Common Stock subject to such Company PSU as of immediately prior to the Effective Time (assuming target level of performance) and (ii) the fair market value of such share or unit as of the Effective Time (as determined by Parent or the applicable affiliate thereof in good faith). The Replacement Company PSU Award will, subject to the holder's continued service with Parent, the Surviving Corporation or a direct or indirect subsidiary or parent entity of Parent through the applicable vesting dates and satisfaction of the applicable performance condition applicable to such Company PSUs, vest and be settled at the same time as the Company PSUs for which such Replacement Company PSU Award was exchanged would have vested and been settled pursuant to their terms, and will otherwise have the same terms and conditions (including with respect to service-based and performance-based vesting conditions) as applied to the Company PSUs for which it was exchanged; however, upon settlement of such Replacement Company PSU Award, the holder thereof will be permitted, in lieu of paying any taxes that are required to be withheld from such holder, to require Parent, the Surviving Corporation, or its subsidiaries or a direct or indirect parent entity of Parent, as applicable, to withhold a number of shares or units otherwise issuable upon such settlement having a fair market value equal to such required applicable withholding taxes.

**Treatment of LLC Units of PowerSchool Holdings LLC (page 78)**

Prior to and conditioned upon the Closing, PowerSchool shall deliver written notice (as such notice may be updated from time to time) to Severin Topco, LLC ("Severin Topco") of the expected Change of Control (as defined in the Amended and Restated Limited Liability Company of PowerSchool Holdings LLC, dated as of July 27, 2021, as amended (the "Holdings LLC Agreement") and shall thereafter take all reasonable actions to effect a Change of Control Exchange (as defined in the holdings LLC Agreement) with respect to any Exchangeable Units (as defined in the Holdings LLC Agreement) (other than Rollover Units) held by Severin Topco (or any Person who has executed a joinder to the Exchange Agreement, dated as of July 27, 2021, by and between PowerSchool, PowerSchool Holdings LLC and Severin Topco (the "Exchange Agreement") holding Exchangeable Units) as of immediately prior to the Change of Control Exchange, including each Exchangeable Unit that is a Participation Threshold Unit (as defined in the Holdings LLC Agreement) and the corresponding shares of Class B Common Stock in the manner specified in the Exchange Agreement on such Change of Control Exchange Date (as defined in the Exchange Agreement). The Change of Control Exchange shall be contingent upon, and effective as of immediately prior to, the Effective Time. Pursuant to the Holdings LLC Agreement, each share of Class B Common Stock surrendered in the Change of Control Exchange shall automatically be deemed cancelled without any action on the part of any person.

Prior to the Effective Time, PowerSchool shall take, and shall cause Severin Topco to take, such action as is necessary to provide that any outstanding Participation Threshold Unit shall be fully vested (to the extent unvested) as of immediately prior to the Change of Control Exchange and thereafter shall automatically, and without any action on the part of Parent, Merger Sub, PowerSchool or the holder thereof, be cancelled and converted into the right to receive an amount in cash, without interest thereon and subject to applicable withholding taxes, equal to the product of (i) (x) the Per Share Price less (y) the applicable participation threshold with respect to such Participation Threshold Unit and (ii) the total number of shares of Class A Common Stock subject to such Participation Threshold Unit immediately following the Change of Control Exchange and immediately prior to the Effective Time.

**Recommendation of the Special Committee and the Board; Reasons for the Merger (page 45)**

After consideration of various factors as discussed in "Special Factors—Recommendation of the Special Committee and the Board; Reasons for the Merger" beginning on page 45, (a) the Special Committee unanimously (i) determined that it is fair to, and in the best interests of, PowerSchool and its stockholders, and declared it advisable, to enter into the Merger Agreement providing for the Merger, with PowerSchool being the

Table of Contents

Surviving Corporation and a wholly owned subsidiary of Parent after the Merger in accordance with the DGCL upon the terms and subject to the conditions set forth therein; (ii) resolved to recommend that the Board approve and adopt the Merger Agreement; and (iii) resolved to recommend that the Board submit the Merger Agreement to PowerSchool's stockholders for their adoption and recommend that PowerSchool's stockholders vote in favor of the adoption of the Merger Agreement; and (b) the Board (acting on the recommendation of the Special Committee) (i) determined that it is fair to, and in the best interests of, PowerSchool and its stockholders, and declared it advisable, to enter into the Merger Agreement providing for the Merger in accordance with the DGCL upon the terms and subject to the conditions set forth therein; (ii) approved the execution and delivery of the Merger Agreement by PowerSchool, the performance by PowerSchool of its covenants and other obligations thereunder, and the consummation of the Merger and the other transactions contemplated by the Merger Agreement upon the terms and subject to the conditions set forth therein; (iii) directed that the adoption of the Merger Agreement be submitted for consideration by PowerSchool's stockholders in accordance with the Merger Agreement; and (iv) resolved to recommend that PowerSchool's stockholders approve and adopt the Merger Agreement in accordance with the DGCL.

**Required Stockholder Approval for the Merger (page 55)**

Under Delaware law and PowerSchool's certificate of incorporation, the adoption of the Merger Agreement by our stockholders required the affirmative vote or written consent of stockholders of PowerSchool holding in the aggregate at least a majority of the outstanding shares of Company Common Stock entitled to vote thereon. As of June 6, 2024, the record date for determining stockholders of PowerSchool entitled to vote on the adoption of the Merger Agreement, there were 166,088,147 shares of Class A Common Stock and 37,654,059 shares of Class B Common Stock outstanding. Holders of Class A Common Stock and Class B Common Stock are entitled to one vote for each share held of record on all matters on which stockholders are entitled to vote generally, including adoption of the Merger Agreement.

On June 7, 2024, following the execution of the Merger Agreement, Severin Topco, Vista Equity Partners Fund VI, L.P., Vista Equity Partners Fund VI-A, L.P., VEPF VI FAF, L.P., Onex Partners IV Select LP, Onex US Principals LP, Onex Partners IV LP, Onex Partners IV GP LP, Onex Partners IV PV LP, Onex Powerschool LP and Pinnacle Holdings I L.P. (collectively, the "Principal Stockholders"), which as of June 6, 2024 collectively beneficially owned and had sole power to vote 105,321,745 shares of Class A Common Stock and 36,914,501 shares of Class B Common Stock, representing approximately 69.8% of the aggregate voting power of the issued and outstanding shares of Company Common Stock, delivered a written consent approving and adopting in all respects the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger (the "Stockholder Consent"). No further action by any other PowerSchool stockholder is required under applicable law or the Merger Agreement (or otherwise) in connection with the adoption of the Merger Agreement. As a result, PowerSchool is not soliciting your vote for the adoption of the Merger Agreement and will not call a stockholders' meeting for purposes of voting on the adoption of the Merger Agreement. No action by the stockholders of Parent is required to complete the Merger and all requisite corporate action by and on behalf of Merger Sub required to complete the Merger has been taken.

When actions are taken by the written consent of less than all of the stockholders entitled to vote on a matter, Delaware law requires notice of the action be given to those stockholders who did not consent in writing to the action and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for notice of such meeting had been the date that consents signed by a sufficient number of holders to take the action were delivered to the corporation in accordance with Section 228 of the DGCL. This information statement and the notice attached hereto constitute notice to you from PowerSchool of the Stockholder Consent as required by Delaware law.

Table of Contents

**Opinion of Goldman Sachs & Co. LLC (page 56 and Annex B)**

At the meeting of the Board on June 6, 2024, Goldman Sachs & Co. LLC ("Goldman Sachs") rendered to the Board its oral opinion, subsequently confirmed in writing, that, as of June 6, 2024, and subject to the factors and assumptions set forth therein, $22.80 in cash per share of Class A Common Stock to be paid to the holders (other than Parent and its affiliates and the Principal Stockholders and their respective affiliates) of shares of Class A Common Stock pursuant to the Merger Agreement was fair from a financial point of view to such holders.

The full text of the opinion of Goldman Sachs, dated as of June 6, 2024, which sets forth assumptions made, procedures followed, matters considered and limitations on the review undertaken in connection with the opinion, is attached to this information statement as Annex B and is incorporated into this information statement by reference. The summary of Goldman Sachs' opinion contained in this information statement is qualified in its entirety by reference to the full text of Goldman Sachs' written opinion. Goldman Sachs' advisory services and its opinion were provided for the information and assistance of the Board in connection with its consideration of the Merger and such opinion does not constitute a recommendation to any holder of shares of Class A Common Stock should vote with respect to the Merger or any other matter. Pursuant to an engagement letter between PowerSchool and Goldman Sachs, PowerSchool has agreed to pay Goldman Sachs a transaction fee of $55 million, all of which is contingent upon consummation of the Merger.

For more information, see the section of this information statement entitled "Special Factors—Opinion of Goldman Sachs & Co. LLC" beginning on page 56.

**Opinion of Centerview Partners LLC (page 64 and Annex C)**

On June 6, 2024, Centerview rendered to the Special Committee its oral opinion, which was subsequently confirmed in a written opinion dated such date, that, as of such date and based upon and subject to various assumptions made, procedures followed, matters considered, and qualifications and limitations upon the review undertaken by Centerview in preparing its opinion, the Per Share Price to be paid to the holders of the outstanding shares of Class A Common Stock (other than the Dissenting Company Shares and Owned Company Shares (including the Rollover Shares)) pursuant to the Merger Agreement was fair, from a financial point of view, to such holders.

The full text of Centerview's written opinion, dated June 6, 2024, which describes the assumptions made, procedures followed, matters considered, and qualifications and limitations upon the review undertaken by Centerview in preparing its opinion, is attached as Annex C and is incorporated herein by reference. The summary of the written opinion of Centerview set forth below is qualified in its entirety to the full text of Centerview's written opinion attached as Annex C. Centerview's financial advisory services and opinion were provided for the information and assistance of the Special Committee (in their capacity as directors of the Company and not in any other capacity) in connection with and for purposes of its consideration of the transactions contemplated by the Merger Agreement and Centerview's opinion only addressed the fairness, from a financial point of view, as of the date thereof, to the holders of the outstanding shares of Class A Common Stock (other than Excluded Shares) of the Per Share Price to be paid to such holders pursuant to the Merger Agreement. Centerview's opinion did not address any other term or aspect of the Merger Agreement or the transactions contemplated by the Merger Agreement, and does not constitute a recommendation to any stockholder of the Company or any other person as to how such stockholder or other person should vote with respect to the Merger or otherwise act with respect to the transactions contemplated by the Merger Agreement or any other matter.

For more information, see the section of this information statement entitled "Special Factors—Opinion of Centerview Partners LLC" beginning on page 64.

Table of Contents

**Position of Vista and Onex as to the Fairness of the Merger (page 74)**

Under the SEC rules governing "going private" transactions, certain entities affiliated with Vista Equity Partners Management, LLC ("Vista") and certain entities affiliated with Onex Corporation ("Onex") are affiliates of PowerSchool for purposes of the Merger and, therefore, are required to express their beliefs as to the fairness of the proposed going private transaction and the Merger to PowerSchool's "unaffiliated security holders," as such term is defined in Rule 13e-3 (the "Unaffiliated Stockholders") under the Securities Exchange Act of 1934, as amended (the "Exchange Act"). The Merger is a Rule 13e-3 transaction for which a Schedule 13E-3 Transaction Statement has been filed with the SEC. Vista and Onex believe that the going private transaction and the Merger is fair to the Unaffiliated Stockholders on the basis of the factors described under "Special Factors—Background of the Merger" beginning on page 21 and "Special Factors—Position of Vista and Onex as to the Fairness of the Merger" beginning on page 74.

**Certain Effects of the Merger (page 76)**

If all conditions to the Merger are satisfied or waived (to the extent waivable), the Merger Agreement provides that at the Effective Time, Merger Sub will merge with and into PowerSchool in accordance with the Merger Agreement, and the separate existence of Merger Sub will cease and PowerSchool will continue as the Surviving Corporation in the Merger as a wholly owned subsidiary of Parent, as more fully described under "Special Factors—Certain Effects of the Merger" beginning on page 76.

**Financing (page 81)**

Parent obtained equity and debt financing commitments for the transactions contemplated by the Merger Agreement, including the Merger, the aggregate proceeds of which, subject to the consummation of the Rollover (as defined in "The Merger Agreement—Support and Rollover Agreements"), will be sufficient for Parent to pay the aggregate Merger consideration and all related fees and expenses of PowerSchool, Parent and Merger Sub. If all of the conditions to the obligations of Parent and Merger Sub to consummate the Merger are satisfied or waived (to the extent waivable), PowerSchool irrevocably confirms to Parent in writing, following the date on which Parent is required to consummate the Closing, that it is ready, willing and able to consummate the Merger, and if Parent fails to consummate the Merger by the date that is three business days after the date on which Parent received such confirmation, PowerSchool will have the right to terminate the Merger Agreement and Parent will be obligated to pay PowerSchool a fee of $269,300,000 as described under "The Merger Agreement—Termination Fees and Expenses" beginning on page 116.

**Interests of Our Directors and Executive Officers in the Merger (page 82)**

You should be aware that PowerSchool's non-employee directors and executive officers have interests in the Merger that may be different from, or in addition to, the interests of PowerSchool's stockholders generally. The Board was aware of these interests and considered them, among other matters, in approving the Merger Agreement. These interests are described below in "Special Factors—Interests of Our Directors and Executive Officers in the Merger" beginning on page 82.

**The Merger Agreement (page 96 and Annex A)**

***Conditions to Consummation of the Merger (page 113)***

The obligation of each party to consummate the Merger is subject to the satisfaction (or waiver by each of the parties) on or prior to the Effective Time of the following conditions:

- no law, injunction or order (whether temporary, preliminary or permanent) by any governmental authority of competent jurisdiction prohibiting, enjoining or otherwise making illegal the consummation of the Merger has been enacted, entered, or promulgated with continuing effect;

Table of Contents

- the expiration or termination of any applicable waiting period (including any extension thereof) under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "HSR Act") (which waiting period expired at 11:59 p.m. EST on July 22, 2024);
- the adoption of the Merger Agreement by the affirmative vote of the holders of a majority in voting power of the outstanding shares of Company Common Stock, voting together as a single class, and entitled to vote thereon (the "Company Stockholder Approval"), having been obtained;
- the Change of Control Exchange (as defined in the Holdings LLC Agreement) having occurred and become effective as of immediately prior to the Effective Time; and
- at least 20 calendar days having elapsed since PowerSchool mailed this information statement to PowerSchool's stockholders as contemplated by Regulation 14C of the Exchange Act (including Rule 14c-2 promulgated under the Exchange Act).

As of the date of this information statement, the Company Stockholder Approval has been obtained.

The obligations of Parent and Merger Sub to consummate the Merger are further subject to satisfaction (or waiver by Parent where permissible pursuant to applicable law), on or prior to the Effective Time of the following conditions:

- the representations and warranties of PowerSchool set forth in the Merger Agreement being true and correct on the Closing date in the manner described under "The Merger Agreement—Conditions to Consummation of the Merger" beginning on page 113;
- PowerSchool having complied in all material respects with all covenants and obligations required to be performed by it under the Merger Agreement at or prior to the Closing;
- no PowerSchool Material Adverse Effect (as defined on page 114) having occurred since the date of the Merger Agreement that is continuing;
- the receipt by Parent and Merger Sub of a certificate signed by a duly authorized officer of PowerSchool on behalf of PowerSchool certifying that each of the three conditions specified above has been satisfied; and
- the TRA Amendment (as defined on page 39) being in full force and effect in accordance with its terms and otherwise not amended, repudiated, revoked or withdrawn.

The obligation of PowerSchool to consummate the Merger is further subject to satisfaction (or waiver by PowerSchool where permissible by applicable law) on or prior to the Effective Time of the following conditions:

- the representations and warranties of Parent and Merger Sub set forth in the Merger Agreement being true and correct as of the Closing date in the manner described under "The Merger Agreement—Conditions to Consummation of the Merger" beginning on page 113;
- Parent and Merger Sub having performed and complied in all material respects with all covenants and obligations required to be performed and complied with by Parent and Merger Sub under the Merger Agreement at or prior to the Closing; and
- the receipt by PowerSchool of a certificate signed by a duly authorized officer of Parent and Merger Sub on behalf of Parent and Merger Sub certifying that each of the two conditions specified above has been satisfied.

Table of Contents

***No Solicitation or Negotiation (page 108)***

The Merger Agreement provides that PowerSchool and its subsidiaries will not, and will cause their respective directors and officers not to, and will instruct and use reasonable best efforts to cause each of their representatives not to, directly or indirectly, between the execution of the Merger Agreement and the Closing:

- solicit, initiate, propose or knowingly induce the making, submission or announcement of, or knowingly encourage, facilitate or assist, any proposal or offer that constitutes or could reasonably be expected to lead to an Acquisition Proposal (as defined in "The Merger Agreement—No Solicitation or Negotiation" beginning on page 108);
- furnish to any person (other than Parent or Merger Sub or their designees) any non-public information relating to PowerSchool or its subsidiaries or afford to any person access to the business, properties, assets, books, records or personnel of PowerSchool or any of its subsidiaries with the intent to reasonably be expected to induce the making, submission or announcement of, or to knowingly encourage or knowingly facilitate, an Acquisition Proposal;
- participate or engage in discussions or negotiations with any person with respect to an Acquisition Proposal, other than informing such persons of the existence of certain provisions contained in the Merger Agreement and contacting the person making the Acquisition Proposal solely in order to clarify the terms and conditions of the Acquisition Proposal in connection with determining whether the Acquisition Proposal constitutes a Superior Proposal (as defined in "The Merger Agreement—Superior Proposal and Change of Recommendation" beginning on page 117);
- approve, endorse or recommend an Acquisition Proposal; or
- enter into any letter of intent, memorandum of understanding, merger agreement, acquisition agreement, or any other agreement or arrangement relating to an Acquisition Proposal (including any "clean team" or similar arrangement, but other than certain acceptable confidentiality agreements).

***Superior Proposal and Change of Recommendation (page 117)***

Notwithstanding the restrictions set forth above, at any time prior to obtaining the Company Stockholder Approval, which was obtained on June 7, 2024, PowerSchool and the Board (acting under the direction of the Special Committee) could have, directly or indirectly, participated or engaged in discussions or negotiations, furnished non-public information relating to PowerSchool or any of its subsidiaries, or afforded access to the business, properties, assets, books, records or personnel of PowerSchool or any of its subsidiaries to any person that had made, renewed or delivered, pursuant to an acceptable confidentiality agreement, an Acquisition Proposal after the date of execution of the Merger Agreement, contacted such person to clarify the terms or conditions thereof, and otherwise facilitated such Acquisition Proposal or assisted such person (and its representatives and financing sources) if requested by such person, in each case, with respect to an Acquisition Proposal that the Board (acting under the direction of the Special Committee) had determined in good faith (after consultation with its financial advisors and outside legal counsel) either constituted a Superior Proposal (as defined in "The Merger Agreement—Superior Proposal and Change of Recommendation" beginning on page 117) or could have reasonably been expected to lead to a Superior Proposal.

At any time prior to obtaining the Company Stockholder Approval, which was obtained on June 7, 2024, the Board could have (i) made a Board Recommendation Change (as defined in "The Merger Agreement—Superior Proposal and Change of Recommendation" beginning on page 117) if the Board had determined in good faith (after consultation with its outside legal counsel and financial advisor) that, in response to an Intervening Event (as defined in "The Merger Agreement—Superior Proposal and Change of Recommendation" beginning on page 117), failure to make such Board Recommendation Change would be reasonably likely to be inconsistent with the fiduciary duties of PowerSchool's directors under applicable law or (ii) upon a Board Recommendation

Table of Contents

Change, terminated the Merger Agreement, paid the Company Termination Fee (as defined in "The Merger Agreement—Termination Fees and Expenses" beginning on page 116) to Parent and entered into a definitive written agreement with respect to an Acquisition Proposal, if PowerSchool had received an Acquisition Proposal after the date of the Merger Agreement for which the Board determined in good faith (after consultation with its financial advisors and outside legal counsel) constituted a Superior Proposal, and that the failure to take such actions would have been inconsistent with PowerSchool's directors' fiduciary duties under applicable law.

PowerSchool's rights to engage in negotiations or discussions with third parties and to terminate the Merger Agreement as described above ceased on June 7, 2024 upon delivery of the Stockholder Consent in accordance with the terms of the Merger Agreement.

A more detailed description of the foregoing circumstances is provided below in "The Merger Agreement" beginning on page 96.

***Termination of the Merger Agreement (page 115)***

The Merger Agreement may be terminated at any time prior to the Effective Time (whether prior to or after receipt of the Company Stockholder Approval) by the mutual written agreement of Parent and PowerSchool (provided that such termination has been approved by the Special Committee).

In addition, the Merger Agreement may be terminated by either Parent or PowerSchool, at any time prior to the Effective Time (whether prior to or after the receipt of the Stockholder Consent, provided that such termination has been approved by the Special Committee):

- if (i) any permanent injunction or other final and non-appealable judgment or order issued by any court or other governmental authority of competent jurisdiction preventing the consummation of the Merger is in effect that, in each case, prohibits, makes illegal or enjoins the consummation of the Merger and has become final and non-appealable or (ii) any statute, law or regulation has been enacted, entered, or enforced that prohibits or makes illegal the consummation of the Merger;
- if the Effective Time has not occurred by 11:59 p.m., New York City time, on March 6, 2025 (the "Termination Date"); provided, that the right to terminate the Merger Agreement for this reason is not available to a party if the failure of the Merger to be consummated prior to the Termination Date was primarily due to the failure of such party to perform any of its obligations under the Merger Agreement; or
- if the other party breaches or fails to perform any of its representations, warranties, covenants or other agreements contained in the Merger Agreement, which breach or failure to perform would result in a failure of a condition precedent to Closing and cannot be cured prior to the Termination Date or, if capable of being cured, has not been cured prior to the earlier of (x) 45 days after the giving of written notice to the other party of such breach and (y) the Termination Date; provided, that either party will not have the right to terminate the Merger Agreement if such party is then in breach of any representations, warranties, covenants or other agreements contained in the Merger Agreement, which would result in a failure of the conditions pertaining to the bring-down of representations and warranties or covenants.

The Merger Agreement may also be terminated by PowerSchool (provided that such termination has been approved by the Special Committee) if (i) all of the conditions to the obligations of Parent and Merger Sub are satisfied or validly waived (other than those conditions that by their terms are to be satisfied at the Closing, so long as such conditions are at the time of termination capable of being satisfied at the Closing), (ii) Parent fails to consummate the transactions contemplated by the Merger Agreement by the date on which Parent is required to

Table of Contents

consummate the Closing, (iii) PowerSchool irrevocably confirms to Parent in writing, following the date on which the Closing is required to occur, that it is ready, willing and able to consummate the Closing, and that all of the closing conditions of PowerSchool have been satisfied or validly waived, and (iv) Parent fails to consummate the Closing on or prior to the third business day following receipt of such irrevocable written confirmation of PowerSchool referred to in clause (iii).

Further, the Merger Agreement also provided that (i) Parent or PowerSchool could have terminated the Merger Agreement if PowerSchool failed to obtain the Company Stockholder Approval within 24 hours following the execution of the Merger Agreement; (ii) the Merger Agreement may be terminated by Parent if at any time prior to PowerSchool's receipt of the Company Stockholder Approval, the Board (or a committee thereof) has effected a Board Recommendation Change; and (iii) PowerSchool could have terminated the Merger Agreement at any time prior to PowerSchool's receipt of the Company Stockholder Approval, in order to substantially concurrently enter into any letter of intent, memorandum of understanding, merger agreement, acquisition agreement or other contract relating to an Acquisition Transaction (including any "clean team" or similar arrangement), other than an acceptable confidentiality agreement (an "Alternative Acquisition Agreement") providing for a Superior Proposal, provided that such termination had been approved by the Special Committee; however, these termination provisions expired following delivery of the Stockholder Consent on June 7, 2024.

***Termination Fees and Expenses (page 116)***

PowerSchool will pay Parent (or its designee) a Company Termination Fee (as defined in "The Merger Agreement—Termination Fees and Expenses" beginning on page 116) of $134,650,000 under the following circumstances:

- if the Merger Agreement had been terminated by Parent, if the Board (or a committee thereof) had effected a Board Recommendation Change;
- if the Merger Agreement had been terminated by PowerSchool (provided such termination had been approved by the Special Committee), at any time prior to PowerSchool's receipt of the Company Stockholder Approval, in order to substantially concurrently enter into an Alternative Acquisition Agreement providing for a Superior Proposal; or
- if (i) the Merger Agreement is terminated (A) because the Merger is not consummated on or before the Termination Date (provided that, at the Termination Date, (1) no law, injunction or order by any governmental authority of competent jurisdiction prohibiting, enjoining or otherwise making illegal the consummation of the transactions contemplated by the Merger Agreement has been enacted, entered or promulgated with continuing effect; (2) the applicable waiting periods pursuant to the necessary regulatory approvals to consummate such transactions have been satisfied or are capable of being satisfied; and (3) Parent has satisfied certain of Parent's conditions precedent to closing if the date of such termination was the Closing date) (B) because the Company has failed to obtain the Company Stockholder Approval within 24 hours following the execution of the Merger Agreement, or (C) pursuant to a breach or failure of PowerSchool to perform any of its representations, warranties, covenants or other agreements resulting in a failure of PowerSchool to satisfy certain of PowerSchool's conditions precedent to Closing and such breach is incapable of being cured prior to the Termination Date or, if such breach is capable of being cured prior to the Termination Date, such breach is not cured within the earlier of (a) 45 days following delivery by Parent to PowerSchool of written notice of such breach, stating Parent's intention to terminate the Merger Agreement and the basis for such termination and (b) the Termination Date; (ii) following the execution and delivery of the Merger Agreement and prior to such termination, an Acquisition Proposal for an Acquisition Transaction has been publicly announced or disclosed and not withdrawn or otherwise abandoned; and (iii) within 12 months following such termination of the Merger Agreement, either an Acquisition Transaction is

Table of Contents

consummated or PowerSchool enters into a definitive agreement providing for the consummation of an Acquisition Transaction and such Acquisition Transaction is subsequently consummated; provided that for purposes of this clause (iii), all references to "20%" in the definition of "Acquisition Transaction" (as defined in "The Merger Agreement—Superior Proposal and Change of Recommendation" beginning on page 117) will be deemed to be references to "50%".

Parent will pay PowerSchool a Parent Termination Fee (as defined in "The Merger Agreement—Termination Fees and Expenses" beginning on page 116) of $269,300,000 in the event the Merger Agreement is terminated:

- by PowerSchool (provided that such termination has been approved by the Special Committee) if Parent breaches any of its representations, warranties or fails to perform any of its covenants or obligations contained in the Merger Agreement which breach or failure to perform would result in a failure of a specified closing condition, and such breach is incapable of being cured prior to the Termination Date or, if capable of being cured, has not been cured prior to the earlier of (x) 45 days following delivery by PowerSchool to Parent of written notice of such breach stating PowerSchool's intention to terminate the Merger Agreement and the basis of such determination and (y) the Termination Date;
- by PowerSchool (provided that such termination has been approved by the Special Committee) if (i) all of the conditions to the obligations of Parent and Merger Sub are satisfied or validly waived (other than those conditions that by their terms are to be satisfied at the Closing, so long as such conditions are at the time of termination capable of being satisfied at the Closing), (ii) Parent fails to consummate the transactions contemplated by the Merger Agreement by the date on which Parent is required to consummate the Closing, (iii) PowerSchool irrevocably confirms to Parent in writing, following the date on which the Closing is required to occur, that it stands ready, willing and able to consummate the Closing, and (iv) Parent fails to consummate the Closing on or prior to the third business day following receipt of such irrevocable written confirmation of PowerSchool referenced in clause (iii); or
- by PowerSchool or Parent if the Merger is not consummated on or before the Termination Date; provided, that PowerSchool has the right to terminate the Merger Agreement pursuant to either of the two bullets described above.

A more detailed description of the termination fees is provided in "The Merger Agreement—Termination Fees and Expenses" beginning on page 116.

**Support and Rollover Agreements (page 106 and Annex D and Annex E)**

Concurrently with the execution and delivery of the Merger Agreement, Parent, certain of its affiliates and PowerSchool entered into support and rollover agreements with investment funds affiliated with Vista Equity Partners and Onex Partners Manager LP, each of which is attached to this information statement as Annex D and Annex E, respectively. Under the support and rollover agreements, the applicable stockholders have agreed to vote or execute consents with respect to all of their shares of Company Common Stock in favor of the Merger, subject to certain terms and conditions contained therein. In addition, the applicable stockholders have agreed to "rollover" a portion of their existing equity in PowerSchool and its subsidiaries into an ownership interest in BCPE Topco.

**TRA Amendment (page 106 and Annex F)**

Concurrently with the execution and delivery of the Merger Agreement, PowerSchool and the TRA Holders (as defined in the Tax Receivable Agreement (as defined in "The Merger Agreement—TRA Amendment" on page 106)) party thereto, entered into the TRA Amendment, which is attached to this information statement as

Table of Contents

Annex F, pursuant to which (i) the parties agreed, among other things, to amend PowerSchool's existing Tax Receivable Agreement, such that the Tax Receivable Agreement will automatically terminate upon the Effective Time and (ii) the TRA Holders agreed to waive all of the payments that the TRA Holders would have been entitled to pursuant to the Tax Receivable Agreement, including all amounts that would have otherwise become payable to the TRA Holders in connection with the consummation of the Merger. From and after the execution and delivery of the TRA Amendment (unless the Merger Agreement is terminated prior to the Effective Time), no further payments will be made to the TRA Holders pursuant to the Tax Receivable Agreement.

**Material United States Federal Income Tax Consequences of the Merger (page 88)**

The exchange of Class A Common Stock for cash pursuant to the Merger will be a taxable transaction for United States federal income tax purposes. Therefore, a United States Holder (as defined in "Special Factors—Material United States Federal Income Tax Consequences of the Merger" beginning on page 88) receiving cash in the Merger generally will recognize capital gain or loss for United States federal income tax purposes in an amount equal to the difference between (x) the amount of cash the United States Holder received (determined before deduction of any applicable withholding taxes) and (y) such United States Holder's adjusted tax basis of the surrendered shares of Class A Common Stock.

A Non-United States Holder (as defined in "Special Factors—Material United States Federal Income Tax Consequences of the Merger") will generally not be subject to United States federal income tax on any gain resulting from the exchange of Class A Common Stock pursuant to the Merger, unless such holder has certain connections to the United States, but the Merger could be a taxable transaction to such holder under non-United States tax laws applicable to such holder.

Holders of Class A Common Stock should read the section entitled "Special Factors—Material United States Federal Income Tax Consequences of the Merger" beginning on page 88 for a more detailed description of the United States federal income tax consequences of the Merger. Tax matters can be complicated, and the tax consequences of the Merger to you will depend on your particular situation. Holders are urged to consult their own tax advisors about the United States federal, state, local and non-United States tax consequences of the Merger.

**Regulatory Approvals (page 90)**

Under the HSR Act and related rules, certain transactions, including the Merger, may not be completed until notifications have been given and information furnished to the Antitrust Division of the United States Department of Justice ("Antitrust Division") and the Federal Trade Commission ("FTC"), and all statutory waiting period requirements have been satisfied by the applicable agencies. On June 21, 2024, both PowerSchool and Parent filed their respective notification and report forms under the HSR Act, which triggered the start of the HSR Act waiting period. The waiting period under the HSR Act expired at 11:59 p.m. EST on July 22, 2024.

**Sole Remedy; Jurisdiction (page 119)**

Subject to the conditions set forth in the Merger Agreement, the parties to the Merger Agreement are entitled to an injunction or injunctions, or any other appropriate form of equitable relief, to prevent breaches (or threatened breaches) of the Merger Agreement and to enforce specifically the performance of the terms and provisions of the Merger Agreement, without the necessity of proving actual damages or the inadequacy of monetary damages as a remedy (and each party to the Merger Agreement has waived any requirement for the securing or posting of any bond in connection with such remedy), this being in addition to any other remedy to which they are entitled at law or in equity. Each of the parties to the Merger Agreement has agreed not to assert that a remedy of specific enforcement is unenforceable, invalid or contrary to law or inequitable for any reason,

Table of Contents

nor to assert that a remedy of monetary damages would provide an adequate remedy for any such breach. Each party to the Merger Agreement has agreed to irrevocably submit to the exclusive general jurisdiction of the Court of Chancery of the State of Delaware and any state appellate court therefrom within the State of Delaware (or, if the Court of Chancery of the State of Delaware declines to accept jurisdiction over a particular matter, any other state or federal court within the State of Delaware), in the event that any dispute or controversy arises out of the Merger Agreement, the Limited Guarantee or the transactions thereby and has agreed that all claims with respect to such proceeding shall be brought, tried and determined only in such court. The parties to the Merger Agreement have agreed that a final trial court judgment in any such proceeding will be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

**Appraisal Rights (page 132 and Annex G)**

Pursuant to Section 262 of the DGCL, holders of shares of Class A Common Stock (other than the Principal Stockholders) have the right to demand an appraisal of, and be paid the "fair value" of, their shares of Class A Common Stock (as determined by the Delaware Court of Chancery), together with interest, if any, on the amount determined to be the fair value, instead of receiving the Merger Consideration if the Merger is completed, but only if they strictly comply with the procedures and requirements set forth under Section 262 of the DGCL. The judicially determined fair value under Section 262 could be greater than, equal to or less than the $22.80 per share that stockholders are entitled to receive in the Merger. In order to exercise your appraisal rights, you must submit a written demand for an appraisal of your shares no later than 20 days after the date of mailing of this notice and the accompanying information statement, which mailing date is , and precisely comply with other procedures set forth under Section 262 of the DGCL. In addition, even if you comply with such procedures in seeking to exercise your appraisal rights in connection with the Merger, the Delaware Court of Chancery will dismiss any such appraisal proceedings as to all holders of such shares who are otherwise entitled to appraisal rights unless (x) the total number of shares of Class A Common Stock entitled to appraisal exceeds 1% of the outstanding shares of Class A Common Stock, or (y) the value of the consideration provided in the Merger for such total number of shares of Class A Common Stock exceeds $1 million.

For a more complete discussion of these procedures, see the section entitled "Appraisal Rights" beginning on page 132 and the provisions of Delaware law that grant appraisal rights and govern such procedures attached as Annex G. We urge you to read these provisions carefully and in their entirety. Moreover, due to the complexity of the procedures for exercising the right to demand appraisal, stockholders who are considering exercising such rights are encouraged to seek the advice of legal counsel. Failure to comply strictly with all of the requirements of Section 262 of the DGCL may result in loss of the right of appraisal.

**Transaction Litigation (page 88)**

Lawsuits arising out of the Merger may be filed in the future. In addition, PowerSchool has received a stockholder demand letter pursuant to DGCL Section 220 relating to the events leading to the execution of the Merger Agreement and could receive other stockholder demand letters relating to books and records requests or the disclosure in this information statement. No assurances can be made as to the outcome of such lawsuits, demands or other actions.

**Market Information and Dividends (page 126)**

Shares of Class A Common Stock are listed on the NYSE under the trading symbol "PWSC". As of June 30, 2024, 166,471,395 shares of Class A Common Stock were issued and outstanding, held by approximately 15 stockholders of record. Since the date of our initial public offering, we have not paid dividends on outstanding Class A Common Stock. The terms of the Merger Agreement do not allow us to declare or pay a dividend between June 6, 2024 and the earlier of the consummation of the Merger or the termination of the Merger Agreement (in accordance with its terms).

Table of Contents

**QUESTIONS AND ANSWERS ABOUT THE MERGER**

*The following questions and answers are intended to briefly address commonly asked questions as they pertain to the Merger Agreement and the Merger. These questions and answers may not address all questions that may be important to you as a PowerSchool stockholder. Please refer to the "Summary" beginning on page 1 and the more detailed information contained elsewhere in this information statement, the annexes to this information statement and the documents referred to or incorporated by reference in this information statement, each of which you should read carefully. You may obtain additional information, which is incorporated by reference in this information statement, without charge by following the instructions in "Where You Can Find More Information" beginning on page 138.*

**Q: What is the proposed transaction and what effects will it have on PowerSchool?**

A: The proposed transaction is the acquisition of PowerSchool by Parent pursuant to the Merger Agreement. Once the closing conditions under the Merger Agreement have been satisfied or waived (where permissible under applicable law) and subject to the other terms and conditions in the Merger Agreement, Merger Sub will merge with and into PowerSchool. PowerSchool will be the surviving corporation of the Merger and become a wholly owned subsidiary of Parent, at which time PowerSchool will cease to be a standalone publicly traded company.

**Q: What will I receive in the Merger?**

A: Upon completion of the Merger and subject to the terms and conditions in the Merger Agreement, and subject to your compliance, if applicable, with the letter of transmittal delivered to you by the payment agent after the Closing as further described under "The Merger Agreement—Procedures for Receiving Merger Consideration" beginning on page 99, you will receive the Merger Consideration, which is $22.80 in cash, without interest and less any required withholding taxes, to the extent applicable, for each share of Class A Common Stock that you own, unless you properly exercise, and do not withdraw, waive or fail to perfect, appraisal rights under Section 262 of the DGCL. For example, if you own 100 shares of Class A Common Stock, you will receive $2,280.00 in cash in exchange for your shares of Class A Common Stock without interest and less any required withholding taxes, to the extent applicable. Upon completion of the Merger, you will not own any equity in the Surviving Corporation.

**Q: What happens to Company RSUs, Company MSUs and Company PSUs if the Merger is completed?**

A: At the Effective Time, each award of Vested Company RSUs will automatically be cancelled and converted into the right to receive an amount in cash (without interest and subject to applicable withholding taxes), equal to the product of (i) the Per Share Price and (ii) the total number of shares of Class A Common Stock subject to such Vested Company RSU as of immediately prior to the Effective Time. As promptly as reasonably practicable, but in any event in no less than five business days after the first regularly scheduled payroll date after the Closing date, the holders of Vested Company RSUs will be paid by PowerSchool or the Surviving Corporation, through its payroll system or payroll provider, all amounts required to be paid to such holders in respect of Vested Company RSUs that are cancelled and converted into a cash payment, less any required withholding taxes.

At the Effective Time, each award of Unvested Company RSUs will automatically be cancelled and converted into a right to receive an amount in cash (without interest and subject to applicable withholding taxes), equal to the product of (i) the Per Share Price and (ii) the total number of shares of Class A Common Stock subject to such Unvested Company RSU as of immediately prior to the Effective Time, which Cash Replacement Company RSU Amount will, subject to the holder's continued service with Parent, the Surviving Corporation or a direct or indirect subsidiary or parent entity of Parent through the applicable vesting dates, vest and be payable at the same time as the Unvested Company RSU award for which the Cash Replacement Company RSU Amount was exchanged would have vested and been payable pursuant to

Table of Contents

going private transaction and the Merger, is not intended to be exhaustive but is believed to include all material factors considered by Vista and Onex. Vista and Onex did not find it practicable to, and did not, quantify or otherwise attach relative weights to the foregoing factors in reaching its position as to the fairness of the Merger Agreement and transactions contemplated thereby, including the going private transaction and the Merger. Rather, Vista and Onex made the fairness determinations after considering all of the foregoing as a whole. Vista and Onex believe these factors provide a reasonable basis upon which to form the belief that the going private transaction and the Merger are fair to the Unaffiliated Stockholders.

**Plans for PowerSchool After the Merger**

Following completion of the Merger, Merger Sub will have been merged with and into PowerSchool, with PowerSchool surviving the Merger as a wholly owned subsidiary of Parent. The Class A Common Stock is currently listed on the NYSE and registered under the Exchange Act. Following completion of the Merger, there will be no further public market for the Class A Common Stock and, as promptly as practicable following the Effective Time and in compliance with applicable law, the Class A Common Stock will be delisted from the NYSE and deregistered under the Exchange Act.

Parent currently anticipates that following completion of the Merger, PowerSchool's operations will be conducted substantially as they are currently being conducted (except that PowerSchool will cease to be a public company and will instead be a wholly owned subsidiary of Parent). Following completion of the Merger, Parent will continue to assess PowerSchool's assets, corporate and capital structure, capitalization, operations, business, properties and personnel to determine what changes, if any, would be desirable following the Merger to enhance PowerSchool's business and operations. Parent may seek to buy or combine PowerSchool with target companies that provide earnings and growth synergies; however, no such contracts, arrangements, plans, proposals, commitments or understandings regarding any such transactions relating to PowerSchool and its subsidiaries currently exist.

Immediately following the Effective Time of the Merger, (a) the directors of the Surviving Corporation will be the directors of Merger Sub as of immediately prior to the Effective Time, each to hold office in accordance with the provisions of the DGCL and the certificate of incorporation of the Surviving Corporation until their respective successors are duly elected or appointed and qualified, and (b) the officers of the Surviving Corporation will be the officers of PowerSchool as of immediately prior to the Effective Time, each to hold office in accordance with the provisions of the DGCL and the certificate of incorporation of the Surviving Corporation until their respective successors are duly appointed.

At the Effective Time and by virtue of the Merger, (a) the certificate of incorporation of the Surviving Corporation shall be amended and restated in its entirety to read as set forth in Exhibit A to the Merger Agreement, until thereafter amended as provided by the DGCL and such certificate of incorporation, and (b) the bylaws of the Surviving Corporation will be the bylaws of Merger Sub as in effect immediately prior to the Effective Time, except that all references to Merger Sub will be automatically amended and become references to the Surviving Corporation, until thereafter amended as provided by the DGCL, the certificate of incorporation of the Surviving Corporation and such bylaws.

**Certain Effects of the Merger**

If all conditions to the Merger are satisfied or waived (to the extent waivable), the Merger Agreement provides that at the Effective Time, Merger Sub will merge with and into PowerSchool in accordance with the Merger Agreement, and the separate existence of Merger Sub will cease and PowerSchool will continue as the Surviving Corporation in the Merger as a wholly owned subsidiary of Parent.

*Treatment of Capital Stock*

Subject to the terms and conditions of the Merger Agreement, at the time of the filing acceptance for record by the Secretary of State of the State of Delaware of the certificate of merger, (i) each issued and outstanding