John P. Carlin (NY 3031887)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

R. Rosie Vail (SBN 317977)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Alex Langsam (NY 5980891)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
jschutte@paulweiss.com
alangsam@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant Bain Capital, L.P.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION<br><br>*This Document Relates To:*<br><br>*Track 2 School District Class Action Plaintiffs* | Case No. 3:25-md-3149-AJB-MSB<br><br>MDL No. 3149<br><br>**DEFENDANT BAIN CAPITAL, L.P.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE SCHOOL DISTRICT SECOND AMENDED CLASS ACTION COMPLAINT (TRACK 2)**<br><br>Date: November 5, 2026<br>Time: 10am<br>Courtroom: 4A<br>Judge: Hon. Anthony J. Battaglia |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 1

I. THE SAC IS A NEW PLEADING THAT FAILS TO STATE A CLAIM .......... 1

II. THE SAC FAILS TO PLEAD PERSONAL JURISDICTION .......... 3

III. THE SAC FAILS TO PLEAD NEGLIGENCE .......... 5

IV. THE SAC FAILS TO PLEAD TORTIOUS INTERFERENCE .......... 8

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldrich* v. *Nat'l Collegiate Athletic Ass'n*,
484 F. Supp. 3d 779 (N.D. Cal. 2020)....4

*Askins* v. *DHS*,
899 F.3d 1035 (9th Cir. 2018)....1, 2

*Bank of New York* v. *Fremont General Corporation*,
523 F.3d 902 (9th Cir. 2008)....8, 9

*Bily* v. *Arthur Young & Co.*,
3 Cal. 4th 370 (1992)....8

*Brown* v. *Metro by T-Mobile*,
768 F. Supp. 3d 1068 (C.D. Cal. 2024)....7, 8

*Bullion Standard* v. *Bank of Am., N.A.*,
2026 WL 446243 (S.D. Cal. Feb. 17, 2026)....9

*CFA N. Cal., Inc.* v. *CRT Partners LLP*,
378 F. Supp. 2d 1177 (N.D. Cal. 2005)....4, 5

*Chien* v. *Bumble Inc.*,
641 F. Supp. 3d 913 (S.D. Cal. 2022)....4

*Elden* v. *Sheldon*,
46 Cal. 3d 267 (1988)....8

*Fairbank* v. *Wunderman Cato Johnson*,
212 F.3d 528 (9th Cir. 2000)....2

*In re Finjan Holdings, Inc.*,
58 F.4th 1048 (9th Cir. 2023)....2

*Ford Motor Co.* v. *Montana Eighth Judicial District Court*,
592 U.S. 351 (2021)....4

*Greystone Homes, Inc.* v. *Midtec, Inc.*,
168 Cal. App. 4th 1194 (Cal. 2008)....7

*Hall* v. *LaRonde*,
66 Cal. Rptr. 2d 399 (Cal. Ct. App. 1997) .......... 4

*Koi Design LLC* v. *Marron Laws., APC*,
2026 WL 2263916 (9th Cir. Aug. 6, 2026) .......... 10

*LyricFind, Inc.* v. *Musixmatch, S.p.A.*,
798 F. Supp. 3d 1040 (N.D. Cal. 2025) .......... 4

*Moser* v. *Lifewatch Inc.*,
2020 WL 1849664 (S.D. Cal. Apr. 13, 2020) .......... 4

*Picot* v. *Weston*,
780 F.3d 1206 (9th Cir. 2015) .......... 3

*Plessinger* v. *Castleman & Haskell*,
838 F. Supp. 448 (N.D. Cal. 1993) .......... 9

*Robinson Helicopter Co., Inc.* v. *Dana Corp.*,
34 Cal. 4th 979 (Cal. 2004) .......... 7

*Royal Canin U. S. A., Inc.* v. *Wullschleger*,
604 U.S. 22 (2025) .......... 1, 2

*Schwarzenegger* v. *Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 3, 5

*United States* v. *Somnia, Inc.*,
339 F. Supp. 3d 947 (E.D. Cal. 2018) .......... 2

*Sprewell* v. *Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 2

*Steckman* v. *Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .......... 2

*Tucker* v. *CBS Radio Stations, Inc.*,
124 Cal. Rptr. 3d 245 (2011) .......... 8

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
131 F.4th 661 (9th Cir. 2025) .......... 5

*Walsh* v. *LG Chem Ltd.*,
834 F. App’x 310 (9th Cir. 2020) .......... 4

*Yamashita* v. *LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) .......... 4

**Other Authorities**

Restatement (Second) of Torts §302B .......... 6

Fed. R. Civ. P. 12(b)(2) .......... 2

Fed. R. Civ. P. 12(b)(6) .......... 2

## PRELIMINARY STATEMENT

An amended complaint "requires a new determination," and permits the Court "to correct any errors or misunderstandings." *Askins* v. *DHS*, 899 F.3d 1035, 1042–43 (9th Cir. 2018). The Opposition merely answers Bain's arguments with the Order, which construed a different pleading and rested on allegations in the Track 2 Direct Action Complaint. Order at 6–7, 15, 16 (citing Dkt. 288). The question is whether the SAC states a claim against Bain, and it does not. On jurisdiction, the Opposition points entirely to the Order, which relied on forum-specific allegations in the Track 2 Direct Action Complaint that are not pled in the SAC, and it never answers the rule this Court adopted that an investor-portfolio relationship cannot itself supply forum contacts. On duty, Class Plaintiffs never connect Bain to the alleged failures the Opposition describes. The intrusion allegedly succeeded because PowerSchool's system allegedly lacked certain cybersecurity system controls and because criminals obtained a contractor's credentials—yet the SAC does not allege that Bain configured that system, set those controls, or knew they existed. In ruling on PowerSchool's motion to dismiss, the Court observed that any general duty to safeguard personal information would not run to school and district plaintiffs. *See* Dkt. 437, at 11. If that duty does not run from the party that held the data, it does not run from an investor that never possessed it. Class Plaintiffs do not dispute that their damages are purely economic, and they identify no duty independent of PowerSchool's contracts—the ground this Court reserved for Bain to raise. Order at 22. As for tortious interference, the Opposition incorrectly equates Bain's rights under the Merger Agreement with the right to approve the alleged workforce reductions, and Bain's generalized knowledge of contracts with knowledge that a breach was substantially certain. The SAC should be dismissed with prejudice.

## ARGUMENT

### I. THE SAC IS A NEW PLEADING THAT FAILS TO STATE A CLAIM

The SAC is a new pleading that must stand on its own. *See Royal Canin U. S.*

*A., Inc*. v. *Wullschleger*, 604 U.S. 22, 35 (2025). Class Plaintiffs' attempt to frame the Motion as a request for reconsideration is a red herring. Courts in the Ninth Circuit regularly consider new motions to dismiss amended pleadings that raise both prior arguments and new grounds for dismissal. *See, e.g.*, *United States* v. *Somnia, Inc*., 339 F. Supp. 3d 947, 953 (E.D. Cal. 2018). The *Askins* case, which Class Plaintiffs cite, Opp. at 8, explains that the filing of the SAC "requires a new determination" that allows the Court "to correct any errors or misunderstandings" in deciding a second motion to dismiss *de novo*. *See Askins*, 899 F.3d at 1042–43.[1]

As such, Bain appropriately challenges the basis of the new pleading under Rules 12(b)(2) and 12(b)(6). While the Opposition is correct that the Court must accept the SAC's allegations as true, where general allegations contradict facts reflected in documents "incorporated by reference in the complaint," the latter "facts are controlling." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023); *see also Sprewell* v. *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Steckman* v. *Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Here, the Court need not accept Class Plaintiffs' pre-control allegations concerning Bain because those are contradicted by the Merger Agreement and Information Statement, which the parties agree are incorporated by reference. Opp. at 2–3 n.5. This Court previously found similar pre-acquisition control allegations to be conclusory and superseded by the Merger Agreement's control provisions, Order at 11, and the Information Statement details Bain's arm's-length negotiations while other entities controlled PowerSchool as principal stockholders.[2] For the reasons below, the SAC fails under the requirements of Rules 12(b)(2) and 12(b)(6).

---

[1] Allegations of purported gamesmanship (which Bain disputes) cannot overcome the Court's discretion to correct error. *Fairbank* v. *Wunderman Cato Johnson*, 212 F.3d 528, 530 (9th Cir. 2000).

[2] *See* Mot. at 5 n.4 (the Information Statement).

## II. THE SAC FAILS TO PLEAD PERSONAL JURISDICTION

Class Plaintiffs have failed to meet their burden of pleading jurisdiction and simply rest on the Court's prior findings and on the Track 2 Direct Action Complaint rather than on allegations in the SAC. *See Schwarzenegger* v. *Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

***Purposeful Availment.*** Class Plaintiffs never respond to the rule Bain invoked and this Court adopted: an investor-portfolio relationship cannot itself supply forum contacts. Mot. at 10; Order at 6. That silence is dispositive, because every act the Opposition attributes to Bain is an incident of that relationship. The "deliberate actions" it identifies reduce to four categories, none of them forum-directed: merger communications, "at least some of which occurred in California," SAC ¶ 97, which are the arm's-length negotiations any out-of-state buyer would conduct; the "receipt and exercise of contractual control rights during the interim," Opp. at 9, which are standard deal protections under an agreement that disclaimed any right to control PowerSchool before closing; replacement of the CEO and board at closing, which this Court has already held is "a typical exercise of ownership," Order at 12; and the conclusory assertion that Bain "dictates PowerSchool's strategic directives," SAC ¶ 20, which identifies no directive aimed at California as distinct from ordinary portfolio oversight. Conclusory allegations of dominance and control do not establish forum-directed conduct. Order at 11–12.

Stripped of PowerSchool's contacts, the only specific allegation connecting Bain to California is that "at least some" merger communications occurred there. SAC ¶ 97. If two concrete, dated, in-person forum trips did not suffice in *Picot* v. *Weston*, an undifferentiated allegation that "some" communications occurred somewhere in California likewise cannot. 780 F.3d 1206, 1213 (9th Cir. 2015) (no "substantial connection" where trips were incidental to an agreement centered outside the forum and held "no special place in [defendant's] performance").

Class Plaintiffs' authorities are not persuasive. In *Chien* v. *Bumble Inc.*, the court exercised jurisdiction because the parent engaged in its own operational, consumer-facing California conduct. 641 F. Supp. 3d 913, 930 (S.D. Cal. 2022). The SAC alleges no Bain-operated product, no Bain-facing customers, and no Bain conduct directed at users. In *LyricFind, Inc.* v. *Musixmatch, S.p.A.*, the private-equity sponsor was not subject to jurisdiction, and the only California nexus was a website advertising a San Francisco office. 798 F. Supp. 3d 1040, 1059 (N.D. Cal. 2025). Two Bain offices unconnected to the acquisition cannot supply the "suit-related conduct" that "create[s] a substantial connection with [California]." Opp. at 9.[3]

***Relatedness.*** The Opposition concedes that the Court's relatedness holding rested on the Track 2 Direct Action Complaint. *Id.* at 12. It offers *Ford Motor Co.* v. *Montana Eighth Judicial District Court* for the proposition that some relationships support jurisdiction "without a causal showing." 592 U.S. 351, 362 (2021). But *Ford* "did not abolish the requirement that a claim must arise out of or relate to a forum contact," and an injury relates to a contact only "if similar injuries will tend to be caused by those contacts." *Yamashita* v. *LG Chem, Ltd.*, 62 F.4th 496, 505–08 (9th Cir. 2023). Class Plaintiffs' entire asserted nexus is sequence: the first indication of unauthorized access came three days after the alleged workforce reductions. Opp. at 11–12. Temporal adjacency is not relatedness. *See Aldrich* v. *Nat'l Collegiate Athletic Ass'n*, 484 F. Supp. 3d 779, 795–96 (N.D. Cal. 2020). That Class Plaintiffs say *Walsh* v. *LG Chem Ltd.*, 834 F. App'x 310 (9th Cir. 2020) "was already rebuffed," Opp. at 12, proves Bain's point: the Court distinguished *Walsh* because

[3] Class Plaintiffs' remaining cases involved contract disputes in which the defendants' California communications were themselves the basis of suit. Opp. at 10 n.10 (citing *CFA N. Cal.* v. *CRT Partners LLP*, 378 F. Supp. 2d 1177, 1186 (N.D. Cal. 2005); *Hall* v. *LaRonde*, 66 Cal. Rptr. 2d 399, 400 (Cal. Ct. App. 1997)). And the court in *Moser* v. *Lifewatch Inc.*, 2020 WL 1849664, at *8 (S.D. Cal. Apr. 13, 2020) dismissed the complaint where, as here, the defendant's only nexus was awareness that another defendant entity operated in the forum.

"the Direct Action Complaint clearly links Bain's California-centered decisions to the breach." Order at 7. The Opposition identifies no comparable link in the SAC.

***Reasonableness.*** Bain did not abandon its reasonableness arguments. Mot. at 11–12. In any event, Bain bore no burden on reasonableness because Class Plaintiffs fail the first two prongs. *Schwarzenegger*, 374 F.3d at 802. Were the Court to reach the factors, they favor Bain. Purposeful interjection tracks the minimum-contacts inquiry, so the assertion that Bain's interjection is "high," Opp. at 12, restates a showing Class Plaintiffs have not made. California's interest is attenuated in this dispute between New York and New Jersey school districts and a Massachusetts-headquartered, Delaware-incorporated partnership. Mot. at 11. Class Plaintiffs concede that adequate alternative forums exist, SAC ¶ 13, and cite nothing suggesting that jurisdiction here would be reasonable. Nor must jurisdiction be uniform across tracks in an MDL. *See CFA N. Cal., Inc.*, 378 F. Supp. 2d at 1186.[4]

## III. THE SAC FAILS TO PLEAD NEGLIGENCE

***Duty***. Class Plaintiffs fail to meaningfully engage with Bain's arguments for dismissal of their negligence claim. The Opposition does not identify any allegations that Bain "created or controlled the opportunity or environment" that led to Class Plaintiffs' injuries. Mot. at 12; Opp. at 14. Nor could they, because Bain never collected or controlled the allegedly exfiltrated data, and it did not have any access to or control over PowerSchool's SIS. Mot. at 13. Class Plaintiffs respond that Bain's purported duty arose from "specific conduct." Opp. at 16–17. Class Plaintiffs identify two paragraphs that purport to describe conduct by Bain. Opp. at 17; SAC ¶¶ 7, 100. Taken as true, they allege that Bain approved, encouraged, or pressured staffing decisions at PowerSchool. They do not allege that Bain configured

[4] The Court should deny Class Plaintiffs' requests for jurisdictional discovery and for leave to refile. Opp. at 13 n.13. Class Plaintiffs elected to forgo the jurisdictional discovery this Court authorized. Order at 9–10. Nor does their direct-filing theory confer jurisdiction. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 131 F.4th 661, 672 n.5 (9th Cir. 2025); ECF No. 269, at 2–3.

PowerSchool's SIS or access controls, implemented multi-factor authentication or endpoint monitoring, or managed the contractor credentials through which the intrusion is alleged to have occurred. Those are the failures Class Plaintiffs say caused the breach, SAC ¶¶ 123, 264, 267, and the SAC attributes each of them to PowerSchool, *see, e.g.*, SAC ¶ 91 (PowerSchool's decision to engage subcontractors). The Restatement (Second) of Torts §302B asks whether the actor's "own affirmative act" created the risk. Approving a portfolio company's headcount decisions is not the creation of the vulnerability the intruders exploited.

These allegations also fail because an allegation that Bain approved, directed, or pressured PowerSchool to act is an allegation about *PowerSchool's* conduct attributed to Bain—the vicarious theory Class Plaintiffs have disclaimed. Mot. at 14. And ¶ 100 confirms the point: the cost-cutting allegedly "expressly breached PowerSchool's contractual . . . obligations," locating the injury in PowerSchool's contracts, where the economic loss doctrine leaves it. *See infra* pp. 6–7.

Further, the Court held the negligence claim against PowerSchool was "foreclosed by the contractual limitation of liability and the economic loss doctrine." Dkt. 437, at 10. That ruling is not "inapposite." It is dispositive, for the reasons set out below—both grounds reach Class Plaintiffs' claim against Bain, and the second reaches it with greater force. Even assuming Class Plaintiffs could allege a general common law duty to safeguard personal information, "that duty is not one that PowerSchool would owe to the [Class] Plaintiffs which are schools and school districts that merely collected the personal information belonging to individual students and teachers." *Id.* at 10–11. If the party that collected, stored, maintained, and controlled the data would not owe that duty to these plaintiffs, an investor that never possessed the data does not owe it either.

***Economic Loss Doctrine.*** The Court previously reserved ruling on whether the economic loss doctrine bars Class Plaintiffs' negligence claim and permitted Bain to raise the argument "at the appropriate time." Order at 22. Now is that time.

Class Plaintiffs argue that the doctrine is inapplicable to Bain by relying on *Robinson Helicopter Co.* v. *Dana Corp.*; Opp. at 19. But that case only underscores the difference between the allegations supporting Bain's duty and those precluding application of the economic loss doctrine. Unlike in *Robinson Helicopter Co.*, in which the defendants' purported misrepresentations were "separate from the breach [of contract] itself," 34 Cal. 4th 979, 991 (Cal. 2004), the only allegations made against Bain involve its supposed direction of cost-cutting measures, which Class Plaintiffs explicitly claim "breached PowerSchool's contractual . . . obligations with the School Districts." *See* SAC ¶¶ 7, 100. Class Plaintiffs also cite *Greystone Homes, Inc.* v. *Midtec, Inc.*, which further undercuts their position, as the court applied the economic loss doctrine against a defendant who "did not have a contractual relationship" with the plaintiff. *See* 168 Cal. App. 4th 1194, 1204 (Cal. 2008). Class Plaintiffs have also conceded that they do not have a "special relationship" with Bain, such that Bain would owe a duty for their economic losses. Mot. at 19.

***Limitation of Liability.*** Class Plaintiffs also do not dispute that their claims are further barred to the extent the SAC engages in group pleading and treats Bain and PowerSchool as a single actor. *See* Mot. at 20. As Bain argued, the Limitation of Liability clause in the MSA states that Class Plaintiffs cannot claim for economic damages—as they do here—against PowerSchool or its affiliates. *Id.*

***Foreseeability.*** Class Plaintiffs also fail to demonstrate they have sufficiently pled foreseeability. They instead cite allegations about PowerSchool's actions. Opp. at 17. The allegations that reference Bain only state that Bain knew about PowerSchool's contracts with Class Plaintiffs and allegedly directed the workforce reductions—they do not state that Bain knew breaches were common or that PII was "valuable and targeted by criminals." *Id*. No allegations suggest it was foreseeable to Bain that its actions or PowerSchool's alleged workforce reductions or offshoring would lead to the cybersecurity incident. Mot. at 17. As such, the allegations are weaker than those the court found insufficient in *Brown* v. *Metro by T-Mobile*. 768

F. Supp. 3d 1068, 1092 (C.D. Cal. 2024) (finding not "foreseeable that inadequate policies to safeguard publicly recorded footage would result in injury"); *see also Tucker* v. *CBS Radio Stations, Inc.*, 124 Cal. Rptr. 3d 245, 252 (2011).

Nor can Class Plaintiffs defeat a motion to dismiss with their conclusory assertion that the *Rowland* factors do not "justify limiting Bain's duties to [Class] Plaintiffs." Opp. at 17. They do not engage with any of those factors—and nor did the Court. *See* Order at 20–21; Mot. at 17–18. Class Plaintiffs' distinctions are also irrelevant: Bain cited *Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370 (1992) and *Elden* v. *Sheldon*, 46 Cal. 3d 267 (1988) to caution against imposing a duty on Bain here—not for the factual allegations in each case. Opp. at 17–18; Mot. at 18.

***Proximate Causation***. Bain identified caselaw explaining why the SAC has not adequately pled proximate causation. Mot. at 19. But Class Plaintiffs do not engage with this caselaw, insisting that their allegations suffice, with no explanation of why Bain's indirect involvement is "so close to the result." *See* Opp. at 18–19.

## IV. THE SAC FAILS TO PLEAD TORTIOUS INTERFERENCE

***Intentional Procurement.*** The No Control provision and the interim covenants unambiguously foreclose Class Plaintiffs' claim. *See* Opp. at 20–21. Neither allows Bain to direct the alleged workforce reductions underpinning Class Plaintiffs' argument, nor do Class Plaintiffs identify any term that would. Therefore, as a matter of law, the No Control provision dictates that Bain had no such power.[5]

Class Plaintiffs' reliance on *Bank of New York* v. *Fremont General Corporation*, 523 F.3d 902 (9th Cir. 2008) is misplaced; there, the intentional inducement turned on Fremont's "multiple requests that funds from the custodial accounts be transferred" in violation of a contract, not on inaction. Opp. at 21; *Fremont General*, 523 F.3d at 910–11. Class Plaintiffs mischaracterize *Fremont* by arguing that a "defendant who didn't personally commit acts 'knew about them and effectively sanctioned them by failing to stop them,'" Opp. at 21, but that language

[5] *See* Merger Agreement at 57–58, 64.

describes an officer of Fremont whose knowledge was imputed to the company—not a defendant. *Fremont General*, 523 F.3d at 911. No authority supports Class Plaintiffs' assertion that mere failure to prevent a breach constitutes intentional procurement.[6]

Class Plaintiffs then argue that they have alleged that Bain directed, encouraged, or approved the alleged August 2024 workforce reductions. Opp. at 21. But the SAC expressly attributes the August 2024 workforce reductions to PowerSchool—not Bain. *See* SAC ¶¶ 100–101, 162. As the Court determined in dismissing the Amended Complaint, only "the Direct Action Plaintiffs further allege that Bain issued a layoff order in August 2024." Order at 15.

Even if Class Plaintiffs had alleged that Bain directed or approved these workforce reductions (which they have not), Class Plaintiffs also fail to identify—as they must—a single allegation that Bain "actually knew that disruption or interference would result" from those reductions. *See* Mot. at 23. Allegations that Bain knew of PowerSchool's contracts with Class Plaintiffs, the contract terms, and the risks of a cybersecurity incident, Opp. at 23, are not equivalent. *See* Mot. at 23.

Class Plaintiffs' argument that alleging knowledge of the contract is sufficient to state a claim is incorrect. Opp. at 22; *see* Mot. at 23 ("[G]eneralized knowledge that a party has contracts with others do[es] not support a claim for intentional interference."). The cases Class Plaintiffs cite expressly turn on "wrongful intent"—not, as here, allegations of mere "knowledge of the underlying contracts." Opp. at 22. Both the SAC and the Opposition fail to contend with the requirement to plead intent to *cause a breach* or knowledge that *a breach would result*. *See* Mot. at 22–23; *Bullion Standard* v. *Bank of Am., N.A.*, 2026 WL 446243, at *9 (S.D. Cal. Feb. 17, 2026) (requiring knowledge that breach is "certain or substantially certain").

---

[6] *Plessinger* v. *Castleman & Haskell* is inapposite: the defendant induced the breach by "intentionally inform[ing] the [other] defendants that plaintiff could no longer perform work on any of its files." 838 F. Supp. 448, 452 (N.D. Cal. 1993).

***Causation.*** A recent Ninth Circuit decision on the issue directly contradicts Class Plaintiffs' argument that they need not allege but-for causation because the "substantial factor" formulation of the causation standard is more forgiving. Opp. at 23–24. *Koi Design LLC* v. *Marron Laws., APC* confirmed that the "substantial factor test adopts the 'but for' test of causation with an exception for concurrent independent causes." 2026 WL 2263916, at *14 (9th Cir. Aug. 6, 2026). Since Class Plaintiffs neither allege nor argue that the breach had concurrent independent causes, they must allege but-for causation. But the SAC does not include, nor does the Opposition cite, any non-conclusory allegations of causation, such as "any communication by Bain directing or encouraging PowerSchool to reduce its workforce, any other 'acts [Bain] purportedly undertook to induce' a breach, or 'why [Bain], rather than other forces, was the cause of said breach(es).'" *See* Mot. at 24.

Nor does the Opposition identify any other allegations that the workforce reductions were the but-for cause of the cybersecurity incident. Opp. at 24. The Order found that only the Direct Action Complaint "allege[d] that Bain ordered layoffs." *Id.*; *see* Order at 16 n.11 (citing Dkt. 288 ¶¶ 72–73).

***Justification.*** The Opposition rests on assertions that are not contained in the SAC concerning Bain's purported approval of PowerSchool's alleged August 2024 workforce reductions pursuant to the interim covenants.[7] But even if the SAC alleged that Bain approved those workforce reductions, which it did not, the intentional interference claim still must be dismissed. It is based on the assertion that Bain exercised approval rights granted by the Merger Agreement, yet Class Plaintiffs do not deny that exercising rights under a competing contract is justified and therefore not actionable. *See* Opp. at 25; Mot. at 25. Nor do Class Plaintiffs identify any allegations in the SAC that suggest otherwise. *See* Opp. at 25.

## CONCLUSION

For the above reasons, the Court should dismiss the SAC with prejudice.

---

[7] *See, e.g.*, Opp. at 21, 24.

Dated: September 1, 2026

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ John P. Carlin*
John P. Carlin

John P. Carlin (NY 3031887)*
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
jcarlin@paulweiss.com

Jacobus J. Schutte (NY 5023353)*
Alex Langsam (NY 5980891)*
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
jschutte@paulweiss.com
alangsam@paulweiss.com

R. Rosie Vail (SBN 317977)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rvail@paulweiss.com

*admitted *pro hac vice*

*Attorneys for Defendant Bain Capital, L.P.*

## **CERTIFICATE OF SERVICE**

I certify that on the 1st day of September, 2026, I filed the foregoing document with the Clerk of the Court for the United States, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ John P. Carlin*
John P. Carlin
Email: jcarlin@paulweiss.com
*Counsel for Defendant Bain Capital, L.P.*