James P. Frantz, Esq. (SBN 87492)
William B. Shinoff, Esq. (SBN 280020)
**FRANTZ LAW GROUP, APLC**
402 W. Broadway, Suite 860
San Diego, CA 92101
Telephone: (619) 233-5945
Fax: (619) 525-7672
jpf@frantzlawgroup.com
wshinoff@frantzlawgroup.com

James E. Cecchi (NJ 030861989)
*Admitted Pro Hac Vice*
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com

*Co-Lead and Lead Counsel for the School District Direct and Class Action Plaintiffs*

[*Additional Counsel on Signature Page*]

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION

*This Document Relates to Track Two*

Case No. 3:25-md-3149-AJB-MSB

MDL NO. 3149

**SCHOOL DISTRICT DIRECT AND CLASS ACTION PLAINTIFFS' REPLY IN FURTHER SUPPORT OF OBJECTIONS TO AND MOTION FOR CLARIFICATION AND MODIFICATION OF THE SPECIAL MASTER'S ORDER RE: DISCOVERY ISSUES**

Judge: Hon. Anthony J. Battaglia
Courtroom: 4A

Oral Argument to Be Set as Needed

## INTRODUCTION

As set forth in Plaintiffs' Objections to and Motion for Clarification and Modification of the Special Master's Order Re: Discovery Issues (ECF No. 530-1) ("Objections"), the June 5, 2026 Discovery Order (ECF No. 513) ("Order") wrongly imposed a statute of limitations found nowhere in the law or contracts at issue and misinterpreted the scope of Plaintiffs' claims. For the first time in this litigation, under the guise of a discovery order, the Special Master held that Plaintiffs: (1) cannot seek breach of contract damages for contractual breaches that occurred before 2023—one year before the Data Breach exposed PowerSchool's data security flaws; and (2) that Plaintiffs are barred from pursuing damages for payments for PowerSchool products other than the PowerSchool Student Information System ("SIS"), even though PowerSchool's contractual obligation to provide the promised data security extended across all of its products and services, not just the SIS. In doing so, the Special Master effectively dismissed the majority of Plaintiffs' breach of contract claims.

Indeed, rather than confront the core issues head-on, PowerSchool focuses its Opposition to Plaintiffs' Objections (ECF No. 561) ("Opposition" or "Opp.") on distractions—arguments ranging from complaints about the burden other discovery rulings have placed on PowerSchool and why it believes what it has *already* produced should be sufficient for Plaintiffs to pursue their claims, to arguments about the fast approaching substantial completion production deadline, and even the length of oral argument and the Order. None of these arguments address the key issue before the Court: the Special Master's legally incorrect finding that the damages cap in the limitation of liability clause bars Plaintiffs from bringing claims more than one year after the cause of action has arisen and that Plaintiffs purportedly suffered no harm by paying PowerSchool for non-SIS products that had similar security flaws.

To be clear, Plaintiffs' breach of contract claims are not strictly tethered to the date of the Data Breach—the Data Breach simply exposed the fact that PowerSchool had not implemented certain security standards that were bargained and paid for by Plaintiffs ***for***

***years***. Through this action, Plaintiffs seek, *inter alia*, a return of the amounts they overpaid to PowerSchool—on an annual basis—for data protection that they did not receive. As such, contrary to the Special Master's determination, Plaintiffs are entitled to damages for every contract that PowerSchool breached and excess payments made for products and services not provided—even if those breaches occurred more than 12 months before the Data Breach and involved products that were not hacked in December 2024—in an amount up to the damages cap to the extent that damages cap even applies.[1]

## ARGUMENT

### I. DE NOVO REVIEW IS WARRANTED FOR THE SPECIAL MASTER'S LEGAL DETERMINATIONS

Resting upon the flawed notion that *any* decision related to discovery is a procedural matter, PowerSchool argues the abuse of discretion standard of review applies. Not so. Where, as here, "[t]he Special Master's discovery rulings and recommendations are inextricably intertwined with conclusions of fact and law," they are reviewed de novo. *Hernandez v. Lynch*, 2019 WL 6998774, at *2 (C.D. Cal. June 18, 2019) (citation omitted). A ruling that pre-2023 and non-SIS contracts are irrelevant and therefore not subject to production is not a purely procedural matter. It necessarily embeds legal conclusions about the scope of Plaintiffs' claims, the meaning of the limitation of liability clause, and the proper interpretation of the term "first incident." These are legal determinations, all of which are subject to de novo review. Nonetheless, Plaintiffs' Motion should be granted under either standard, as the ruling even meets the "illogical, implausible or without support" standard PowerSchool argues the Court apply.

### II. PLAINTIFFS' BREACH OF CONTRACT CLAIMS PREDATE THE DATA BREACH AND THE ORDER IMPROPERLY LIMITS THEIR SCOPE

#### A. PowerSchool Ignores Plaintiffs' Well-Pled Allegations

---

[1] For example, the CAP ON MONETARY LIABLITY does "not apply to liability arising out of a party's gross negligence, willful misconduct, or fraud." *See e.g.* 2024 MSA at Section 11.3; 2022 MSA at Section 11.3.

PowerSchool's assertion that Plaintiffs' allegations are "squarely focused on the [Data Breach]" is belied by the allegations themselves. Opp. at 9. Plaintiffs allege that PowerSchool breached the "*Contracts*" with Plaintiffs and Class Members. *See* ECF No. 483, School District Second Amended Class Action Complaint ("SAC") ¶ 1; ECF No. 288, School District Direct Action Plaintiffs' First Amended Master Complaint ("FAC") ¶¶ 15, 52 (emphasis added).[2] As alleged, "Plaintiffs and Class Members paid hundreds of millions of dollars *annually*" for a bundle of products and services, part of which included bargained-for and promised security obligations. SAC ¶ 125 (emphasis added). Given PowerSchool's longstanding failures to meet such obligations, Plaintiffs and Class Members did not receive "all the benefits that they were promised" and suffered a loss of "the difference in value between the product as received and the product that they should have received." SAC ¶ 128. Plaintiffs suffered this loss annually, pursuant to their annually renewed and entered contracts with and payment to PowerSchool, not merely during the year that the Data Breach occurred. As plainly alleged, Plaintiffs and Class Members were misled "for years" about the protections PowerSchool had in place (FAC ¶ 27) and "have been damaged whether or not an individual Class Member's data was actually subject to the Data Breach by overpaying for features that were never implemented." SAC ¶ 130.

Accordingly, Plaintiffs seek, in no uncertain terms, "*full disgorgement* of Defendants' ill-gotten gains [in an amount] reflective of the dollar amounts that Defendants benefitted from on an *annual basis* in part due to their cost-cutting and unlawful conduct." SAC ¶ 133 (emphasis added); *see also* FAC, Prayer for Relief ¶ 3 (ECF No. 288 at 249) (seeking "disgorgement and restitution of all earnings, profits, compensation, and benefits received, retained, or misused by PowerSchool as a result of its unlawful acts, omissions, and practices"). While the exact amount of such "ill-gotten gains" will be the subject of expert reports, basic logic shows how the damages cap in the Special Master wrongly used

---

[2] The SAC defines the "Contracts" as PowerSchool's Main Services Agreements ("MSAs") together with the incorporated Data Privacy Agreements ("DPAs"). SAC ¶ 65.

impose a one-year statute of limitations on Plaintiffs' breach of contract claims would not be met ***even if the breach of contract claims stretched back for a decade***. For example, if Plaintiffs experts ultimately find that Plaintiffs and the class overpaid in an amount of 10% of the contract price, it could take 10 years to reach damages in an amount equal to a full one-year contract. The Special Master's holding thus "illogically, implausibly [and] without support" failed to recognize the plain language in Plaintiffs' contacts and pled throughout the SAC and FAC. Indeed, less than one year ago, the Special Master recognized that "Plaintiffs may seek [financial] documents for up to five years if formal discovery ensues." *See* ECF No. 377, at 2.

### B. PowerSchool Ignores That the Special Master Mistakenly Conflated a Cap on Monetary Liability With a Legal or Contractual Requirement to Bring Claims Within a Certain Time.

The cap on monetary liability found in the MSAs, and relied up on by the Special Master (without explanation or elaboration) in reaching his decision, is wholly different and separate from a contractual or legal requirement that claims can only be brought within a certain time from when the cause of action has arisen. *See* Order, at 10-11.

In fact, PowerSchool recognized the difference between a cap on monetary liability and an agreement on the time to bring an action in prior contracts. Although PowerSchool has refused to produce it in this action, PowerSchool's 2021 Main Services Agreement ("2021 MSA") is publicly available on PowerSchool's website.[3] Notably, the 2021 MSA includes a similar cap on monetary liability in Section 12 but also includes an additional, separate "Time to Bring Action" provision in Section 14.7 stating: "Customer may bring no action arising out of this Agreement, regardless of form, more than one (1) year after the cause of action has arisen." *Id*. PowerSchool removed this "Time to Bring Action" clause in 2022, but retained the cap on monetary liability provisions. These are two separate

---

[3] PowerSchool, 2021 Main Services Agreement (Jan. 1, 2021), https://www.powerschool.com/legal/agreements-archives/2021-main-services-agreement/ (last visited Sep. 19, 206).

provisions with two separate purposes, and had PowerSchool intended to impose a 1-year period to bring an action it certainly knew how to do so. However, the Special Master did not recognize this distinction and, instead, wrongly misinterpreted the contractual cap on monetary liability provision as limiting the liability period.

Like the Special Master, PowerSchool also wrongly asserts that this Court already held that the cap on monetary liability provision imposes an obligation that claims must be brought within one year. Opp. at 9. Significantly, in this Court's Motion to Dismiss Order (ECF No. 437) ("MTD Order"), the contractual cap on monetary liability provision is merely recited in a footnote and had no bearing on the Court's holding. MTD Order at 8. Rather, the Court applied a separate provision in the limitation of liability section of the MSA to dismiss consequential damages rooted in tort claims. *Id*. In upholding Plaintiffs' breach of contract claims—which, as described above, seek full disgorgement of the amounts overpaid over a period of several years—the Court in no way read the cap on ***monetary liability*** as a limitation on the damages period.

PowerSchool also illogically argues that treating PowerSchool's course of nonperformance spanning multiple contracts and years as the contractual trigger for the monetary cap would deprive the "first incident" of meaning. Opp. at 10. In fact, the opposite is true. Treating the Data Breach as the "first incident" eliminates PowerSchool's liability for its repeated failure to provide the promised cybersecurity during all contractual periods prior to December 28, 2023. As such, it is PowerSchool's reading that would deprive the "first incident" of meaning for all contracts aside from the 2024 MSA. The Special Master's adoption of PowerSchool's framing would thus wrongly define the "first incident" as meaning only the cyberattack. But Plaintiffs and Class Members who contracted with PowerSchool for multiple years have multiple claims, and necessarily multiple "first incidents" for breach of contract over a span of multiple years.

*Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922 (N.D. Cal. 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017), is informative. There, the court rejected Safeway's argument that a limitation of liability clause tied to the amount paid in the most recent online purchase

immediately prior to the claimed injury operated as a global damages cap, instead holding the clause limited liability on a per-claim basis. *Id*. at 929-30. The court reasoned:

> [C]lass members who used Safeway.com multiple times during the class period have multiple claims for breach of contract. Because the limitation of liability provision contemplates limiting Safeway's liability on a per-claim, rather than per-individual basis, those individuals can recover up to the total amount of each purchase for which Safeway breached its contract . . . Because the amount of the markup for each breach is only a fraction of the amount paid by the user during that transaction, the limitation of liability provision has no effect on the class members' recovery.

*Id*. Applied here, the limitation of liability is a per-contract cap, and Plaintiffs and Class Members who contracted with PowerSchool multiple times during the class period have multiple claims. And because the amount overpaid for each contract is less than the amount paid during that contract, the contractual cap on monetary liability has no effect on Plaintiffs' and Class Members' recovery.

## III. THE SPECIAL MASTER'S SIS ONLY LIMITATION RESTS ON A LEGAL ERROR THAT POWERSCHOOL'S OPPOSITION DOES NOT CURE

### A. PowerSchool's Own Discovery Positions Refute the SIS-Only Limitation

The Special Master's SIS-only limitation rests on the premise that non-SIS products fall outside the scope of Plaintiffs' claims. But the Special Master's ruling on RFP Nos. 38 and 81 rejects that very premise. Over PowerSchool's objection, the Special Master compelled discovery into PowerSchool's data-security practices across SIS and non-SIS products, finding that practices "anywhere in its product line" bear on whether PowerSchool knowingly took unreasonable risks with PII stored in the SIS. Order at 12-13. That ruling necessarily recognizes that non-SIS products may fall within the scope of relevant discovery even where the claims concern PII stored in the SIS.

Yet the Special Master relied on the SIS/non-SIS distinction to deny discovery into fees Plaintiffs paid for non-SIS products. *Id*. at 7-8. As explained above, those fees are independently relevant to Plaintiffs' contract claims and damages. The inconsistency

matters because, once the Special Master recognized that PowerSchool's conduct across its product suite may bear on its obligations to Plaintiffs, the fact that a product is not the SIS cannot, standing alone, justify categorically excluding otherwise relevant discovery concerning that product.

PowerSchool's asserted "principled distinction" between security-practice discovery and product-fee discovery does not resolve the problem. Opp. at 13-14. The relevant inquiry under Rule 26(b)(1) is whether the requested discovery bears on a claim or defense, not simply whether PowerSchool labels the product SIS or non-SIS. The Special Master found product boundaries insufficient to foreclose discovery into PowerSchool's performance of its security obligations. Those same boundaries therefore cannot, without more, supply the basis for excluding fee discovery that independently bears on the contractual relationship under which those obligations arose.

PowerSchool's own discovery conduct confirms the point. Before the Discovery Order, PowerSchool jointly sought and obtained approval of a PFS requiring Direct Action Plaintiffs to identify their non-SIS PowerSchool products, amounts paid, contract periods, , and any contract "for SIS or any other PowerSchool product" that "applies to [their] claims in this Action." PFS Order, ECF No. 442, Ex. 1 §§ V, VI.A, VI.C, VI.E. Having required Plaintiffs to disclose this information as part of discovery into their claims, PowerSchool cannot now maintain that reciprocal discovery concerning those same subjects is categorically irrelevant merely because the products are not the SIS.

### B. The Pleadings Do Not Confine the Contract Claims to the SIS

PowerSchool's reliance on the class definition to restrict discovery to the SIS product misses the point. A class definition identifies who belongs in the proposed class; it does not define the scope of PowerSchool's contractual duties or the claims asserted by the Direct Action Plaintiffs. PowerSchool argues that neither pleading "identifies a non-SIS product as the basis of any cause of action," citing the Class Complaint's definition of a class composed of SIS purchasers. Opp. at 3, 14. But the relevant question is not which

product qualifies a plaintiff for class membership; it is whether PowerSchool's alleged contractual duty to safeguard Customer Data is limited to the SIS. It is not.

The Direct FAC alleges that PowerSchool was obligated to safeguard "Customer Data" collected across its "full range of services" and "product suite." FAC ¶¶ 25, 316; Mot. at 3-4, 9-11. The Class invokes the same "Customer Data" covenant and defines it without regard to product. SAC ¶¶ 68, 153. The MTD Order sustained these allegations without limiting them to the SIS or the December 2024 Incident. *Id.* at 4-6, 26. PowerSchool now dismisses that same language as "stray, atmospheric references" that "never formed the basis of any theory of liability," noting that Plaintiffs did not separately brief a non-SIS theory in opposing dismissal. Opp. at 4, 14, 15 (citing ECF No. 343). But the Court required no such separate briefing before sustaining the claims as pleaded, and Plaintiffs' silence on an issue the Court did not require them to address cannot transform the MTD Order into a limitation it never imposed. PowerSchool's attempt to import a SIS limitation from the Class Complaint's membership definition, and its recasting of the Direct FAC's product-suite allegations as stray dicta, are two routes to the same erroneous destination: neither the Direct FAC's language nor the MTD Order confines Plaintiffs' contract claims to the SIS. The Special Master made the same error, and PowerSchool's Opposition repeats it rather than answering Plaintiffs' Objection. Mot. at 9-11.

### C. PowerSchool's Remaining Arguments Do Not Address the Premise Plaintiffs Challenge

PowerSchool's remaining arguments do not address the premise Plaintiffs challenge: that the surviving contract claims are confined to the SIS.

First, the Direct Action Plaintiffs' pending Motion to Amend is beside the point. PowerSchool characterizes the requested discovery as an "end run around the amendment process," Opp. at 3, 14-15, but Plaintiffs do not seek discovery concerning new incidents, products, or claims proposed by amendment. Mot. at 13. The request rests on the contract claims the MTD Order already sustained, which the Court described as arising from "contract agreements for PowerSchool software products," plural. MTD Order at 4-6, 26;

Mot. at 9-10. Whatever the outcome of the Motion to Amend, it does not narrow the claims already pending. *Nippon Steel & Sumitomo Metal Corp. v. Posco*, 2014 WL 1266219 (D.N.J. Mar. 26, 2014), does not suggest otherwise; the cited decision addresses the standard of review for a special master's discovery ruling, not whether discovery may be restricted based on an erroneous construction of the operative claims. *See id.* at *1-2.

Second, PowerSchool argues that RFP Nos. 1 and 3 are SIS-specific as written and that Plaintiffs did not move to compel non-SIS pricing under RFP No. 2. Opp. at 15-16. However, Plaintiffs do not ask the Court to rewrite those requests. They challenge the legal premise underlying the Special Master's ruling: that Plaintiffs' surviving contract claims are limited to the SIS. The scope of a particular RFP and relevant discovery under Rule 26(b)(1) are distinct inquiries. The Court can accept PowerSchool's characterization of the RFPs and still reject the premise that the contract claims and, therefore relevant discovery, are categorically confined to the SIS.

That distinction matters here. The Special Master's authority to resolve the discovery dispute did not permit him to narrow the claims the Court had already sustained. The MTD Order, not the wording of an individual RFP or the allegations proposed by amendment, defines the claims presently at issue. Because the premise that those claims are SIS-only is unfounded, neither the pending Motion to Amend nor the wording of RFP Nos. 1 through 3 supplies a basis to preserve the resulting discovery limitation.

## IV. MDL MANAGEMENT

PowerSchool devotes much of its Opposition to the scope of its prior production, the burden of producing more, and litigation efficiency. None of these arguments has merit.

Whatever the amount of documents PowerSchool has already produced is irrelevant to the issue before the Court. PowerSchool's prior productions show that producing additional pricing data is feasible, which undercuts its unsubstantiated burden arguments. That data has already been exported into spreadsheets, so responding to the current requests would not require PowerSchool to start from scratch. Additional discovery is also an

ordinary part of complex litigation.[4]

PowerSchool also mischaracterizes the scope of what Plaintiffs seek. It contends that producing documents for "every PowerSchool product" would be "exponentially more voluminous" than the SIS contract documents already produced for 2023 and 2024. Opp. at 16-17. But Plaintiffs do not seek discovery across PowerSchool's entire product portfolio or customer base, Mot. at 14, and PowerSchool's own Opposition acknowledges that it administered its security program on a "consolidated" basis without disputing the burden of producing that program's records. Opp. at 16. PowerSchool thus objects to a scope Plaintiffs have expressly disclaimed, not the narrower discovery actually before the Court. Any legitimate burden associated with that narrower request may inform the scope of production; it is not a basis to deny the discovery altogether.

Importantly, PowerSchool has not once substantiated its burden as required. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013) ("To demonstrate undue burden or cost, [defendant] must make a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"). Its present arguments of burden thus provide no support for denying the requested discovery. *See Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014) ("[T]he party resisting discovery [is required] to show how the requested discovery was overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden . . . Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate.").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court sustain Plaintiffs' Objections.

---

[4] For example, after Class Action Plaintiffs collected documents from 13 custodians for PowerSchool's First Request for Production, its Second Request required another collection from nine custodians, five of them new, at considerable time and expense.

DATED: September 18, 2026

By: *James E. Cecchi*

James E. Cecchi (NJ 030861989)
*Admitted Pro Hac Vice*
Jason H. Alperstein (FL 64205)
*Admitted Pro Hac Vice*
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
jcecchi@carellabyrne.com
jalperstein@carellabyrne.com

*Lead Counsel for the proposed School District Class and Counsel for Plaintiff*

John Nelson (SBN 317598)
**MILBERG, PLLC**
402 W Broadway, Suite 1760
San Diego, California 92101
Tel.: (858) 209-6941
jnelson@milberg.com

M. Anderson Berry (SBN 262879)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Tel.: (916) 823-6955
anderson@emeryreddy.com

Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel.: (954) 525-4100
cardoso@kolawyers.com

Tyler S. Graden (NJ 028462007)
*Admitted Pro Hac Vice*
**KESSLER TOPAZ MELTZER CHECK LLP**

280 King of Prussia Road
Radnor, Pennsylvania 19087
Tel.: (610) 667-7706
tgraden@ktmc.com

*Steering Committee for the proposed School District Class*

Michael Critchley, Sr. (NJ 251821972)
*Pro Hac Vice Forthcoming*
**CRITCHLEY & LURIA, LLC**
75 Livingston Avenue
Roseland, New Jersey 07068
Tel.: (973) 422-9200
mcritchley@critchleylaw.com

*Additional Counsel for Plaintiffs*

DATED: September 18, 2026

By: *William B. Shinoff*
James P. Frantz (State Bar No. 87492)
William B. Shinoff (State Bar No. 280020)
Kristin J. Westphal (State Bar No. 202046)
Edward M. Burak (State Bar No. 361196)
**FRANTZ LAW GROUP, APLC**
402 W. Broadway, Suite 860
San Diego, CA 92101
Tel.: (619) 233-5945
jpf@frantzlawgroup.com
wshinoff@frantzlawgroup.com
kwestphal@frantzlawgroup.com
eburak@frantzlawgroup.com

Daniel Shinoff (State Bar No. 99129)
Gil Abed (State Bar No. 195771)
**ARTIANO SHINOFF**
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
Tel.: (619) 232-3122
dshinoff@as7law.com
gabed@as7law.com

Peter Mello (MA Bar No. 659680)
*Admitted Pro Hac Vice*
Felicia Vasudevan (MA Bar No. 687463)
*Admitted Pro Hac Vice*
**MURPHY, HESSE, TOOMEY & LEHANE LLP**
50 Braintree Hill Office Park, Suite 410
Braintree, MA 02184
Tel.: (617) 479-5000
pmello@mhtl.com
fvasudevan@mhtl.com

Paul W. Evans (AL Bar No. 9270Z18F)
*Admitted Pro Hac Vice*
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS, & MILES, P.C.**
24 Commerce Street
Montgomery, AL 36103
Tel.: (334) 269-2343
paul.evans@beasleyallen.com

*Attorneys for Plaintiffs, Co-Lead Counsel, and Steering Committee for the Track Two School District Direct Actions*

**CERTIFICATE OF SERVICE**

I certify that on September 18, 2026, I filed the foregoing School District Direct and Class Action Plaintiffs' Reply in Further Support of Objections to and Motion for Clarification and Modification of the Special Master's Order re: Discovery Issues with the Clerk of the Court for the United States District Court for the Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ James E. Cecchi*
JAMES E. CECCHI