UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION

This Document Relates To:

School District Direct Action Track

Case No.: 25-md-03149-AJB-MSB
MDL No. 3149

**ORDER GRANTING IN PART SCHOOL DISTRICT DIRECT ACTION PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED CONSOLIDATED MASTER COMPLAINT**

**(Doc. No. 491)**

Before the Court is a motion for leave to file a second amended consolidated master complaint filed by the School District Direct Action Plaintiffs ("Plaintiffs"). (Doc. Nos. 491; 520-1.)[1] Defendants PowerSchool and Bain Capital, L.P. ("Bain") (collectively, "Defendants") each filed an opposition (Doc. Nos. 510 (Bain); 511 (PowerSchool)), to

[1] Initially, Plaintiffs filed a redacted version of the instant motion and proposed amended complaint. (*See* Doc. No. 491.) Defendants PowerSchool Corporation and PowerSchool Group LLC (collectively, "PowerSchool"), upon whose confidential designation Plaintiffs based the redactions, responded that they had no confidentiality concerns about the new allegations, so Plaintiffs filed an unredacted version of the motion (Doc. No. 520-1) and the proposed amended complaint (Doc. No. 520-2). All further references to the motion and proposed amended complaint will cite to the unredacted versions.

which Plaintiffs replied (Doc. Nos. 520; 521). For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' motion.

## I. PROCEDURAL BACKGROUND

Upon consolidation into this multi-district litigation ("MDL"), Plaintiffs filed their initial consolidated master complaint. (Doc. No. 258.) With leave of the Court (Doc. No. 287), Plaintiffs filed the operative First Amended Master Complaint, adding Defendant Movate, Inc. and various claims and allegations related thereto. (Doc. No. 288, ("FAMC").) Defendants filed motions to dismiss the First Amended Master Complaint (Doc. Nos. 302 (PowerSchool); 303 (Bain)), which the Court granted in part and denied in part (Doc. Nos. 435 (Bain); 440 (PowerSchool)). In resolving the motions to dismiss, the Court did not set a deadline for Plaintiffs to file an amended complaint. (*See generally* Doc. Nos. 435; 440.) Through the instant motion, Plaintiffs now seek leave to do so.

## II. LEGAL STANDARD

Pursuant to Rule 15 of the Federal Rules of Civil Procedure,[2] "a party may amend its pleading only with the opposing party's written consent or the court's leave" after the time for amendment as a matter of course has expired. Fed. R. Civ. P. 15(a)(2). "Requests for leave to amend should be granted with 'extreme liberality.'" *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

"When considering whether to grant leave to amend, a district court should consider several factors including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962), for the "*Foman* factors").

---

[2] All references to Rule or Rules are to the Federal Rules of Civil Procedure.

"These factors are evaluated as a whole, but the consideration of prejudice to the opposing party carries the greatest weight[.]" *Schwartz v. Miller*, 153 F.4th 918, 932 (9th Cir. 2025). While "delay cannot be individually decisive," *id.*, "[f]utility alone can justify the denial of a motion to amend," *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

"Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis omitted). "Because Rule 15(a) favors a liberal policy, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted." *Desert Protective Council v. U.S. Dep't of the Interior*, 927 F. Supp. 2d 949, 962 (S.D. Cal. 2013), *aff'd,* 630 F. App'x 705 (9th Cir. 2015); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) ("The party opposing amendment bears the burden of showing prejudice.").

## III. DISCUSSION

Plaintiffs' amendments generally consist of allegations concerning (1) the nature of the Master Services Agreement ("MSA") that forms part of all contracts between PowerSchool and Plaintiffs, (2) PowerSchool's Naviance platform transmitting transcripts to colleges in February and March of 2026, (3) PowerSchool's notice of previous suspicious activity on Rayson Cruz's account, and (4) two new theories of liability against Bain, one is the basis of an aiding-and-abetting claim and one is an agency theory. (Doc. No. 520-1 at 3–4; *see also* Doc. Nos. 510 at 10; 511 at 11.)

Each defendant opposes the motion in its entirety, joins in the other's motion, and attacks the proposed amendments that impact it individually. PowerSchool opposes the motion on the basis that the proposed amendments are futile and a product of undue delay, specifically focusing on the first three categories of amendments. (Doc. No. 511.) Similarly, Bain opposes the motion, asserting futility, undue delay, undue prejudice, and bad faith, focusing on the final category of amendments. (Doc. No. 10.)

///

///

### A. Undue Delay

First, the Court addresses whether Plaintiffs unduly delayed in filing their motion. "Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). However, "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981); *see also United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1167 (9th Cir. 2016) ("Undue delay by itself is insufficient to justify denying leave to amend[.]").

Bain argues that "[d]enying Plaintiffs' Motion is independently justified because of undue delay." (Doc. No. 510 at 23.) Specifically, Bain argues that the new factual allegations "necessarily rest[] on facts and legal theories that [Plaintiffs] knew or should have known months before filing" because these allegations were included by the other track nearly a year prior. (*Id.*)

Similarly, PowerSchool argues that "Plaintiffs' newly added assertions that the MSA is a contract of adhesion should be rejected because Plaintiffs unduly delayed including those allegations" but waited until "the Court ruled in PowerSchool's favor on the limitation of liability provision[.]" (Doc. No. 511 at 18.) Additionally, PowerSchool argues that the Declaratory Judgment Act claim "is improper due to Plaintiffs' undue delay in bringing it" because "[i]t relies only on the contracts to which Plaintiffs themselves are parties and of which Plaintiffs have had knowledge since this litigation began nearly a year-and-a-half ago." (*Id.* at 25.)

First, Bain's argument that undue delay can be an independently sufficient reason for denial of leave to amend is foreclosed by well settled precedent. *See Webb*, 655 F.2d at 980. Second, although the allegations subject to Defendants' undue delay arguments were known to Plaintiffs prior, the delay in filing is not so long as to be considered "undue." The litigation is in its early stages with discovery open and subject to dispute. *See DCD Programs, Ltd.,* 833 F.2d at 187 (14–month delay insufficient to warrant denial of motion

to amend where the case was "still at the discovery stage with no trial date pending" and the plaintiff offered an explanation for the delay); *cf. Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (describing 12-month delay as "inordinate" and affirming denial of leave where the amendments would "radical[ly] shift in direction" and were "tenuous" in nature).

Accordingly, the Court does not find that the delay has been undue. *See, e.g.*, *SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002) ("To show undue delay, the opposing party must at least show delay past the point of initiation of discovery; even after that time, courts will permit amendment provided the moving party has a reasonable explanation for the delay." (collecting cases)).

**B. Bad Faith**

Second, closely related to Defendants' arguments of undue delay are Bain's assertions that said delay demonstrates bad faith and gamesmanship. (Doc. No. 510 at 26–27.) Bain argues that "[c]ourts in this Circuit have denied leave when, as here, plaintiffs have used a court decision as a roadmap to attempt to cure their deficient allegations." (Doc. No. 510 at 26–27 (relying on *Weeks v. Bayer*, 246 F.3d 1231 (9th Cir. 2001); *Hampton v. McDonald*, No. 2:11-CV-0541 WBS DAD, 2012 WL 6202740 (E.D. Cal. Dec. 11, 2012); *Wave Loch, Inc. v. Am. Wave Machines, Inc.*, No. 08-CV-928 BAS NLS, 2014 WL 7261552 (S.D. Cal. Oct. 1, 2014)).)

"Courts typically reserve arguments for 'bad faith' motions to cases of obvious gamesmanship." *Ronan Tel. Co. v. Verizon Select Servs., Inc.*, 340 F.R.D. 167, 173 (D. Mont. 2021). Delay in filing or strategic decision-making without exigent circumstances do not per se constitute bad faith. *See, e.g.*, *id.* ("[N]o case supports Ronan's claim that being aware of new defenses or claims at an earlier stage amounts to bad faith."); *Velez v. Foresters Life Ins. & Annuity Co.*, No. 2:22-CV-08932-ODW(MBKX), 2025 WL 3691474, at *6 (C.D. Cal. Dec. 11, 2025) ("[The] mere possibility of a strategic move does not establish bad faith."). Rather, the type of gamesmanship courts consider bad faith is that where party seeks amendment for an improper motive, such as eliminating the court's

jurisdiction or defeating a court's final order of judgment. *See, e.g.*, *Schlacter-Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991), *abrogated on other grounds by Cramer v. Consol. Freightways Inc.,* 255 F.3d 683 (9th Cir. 2001) ("A motion for leave to amend is not a vehicle to circumvent summary judgment."); *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (finding no clear error where the district court determined that the plaintiff intended to add a defendant late in the case to destroy diversity and thus the court's jurisdiction over the action).

The cases Bain relies upon are factually inapposite to the instant action. In *Weeks*, the Ninth Circuit affirmed the district court's denial of a motion to reopen an action *post-judgment*, which was analyzed under Rule 59. *Weeks*, 246 F.3d at 1236 ("To permit Weeks to amend his complaint post-judgment-particularly in light of the fact that he did not seek to amend during the seven months that the motion for judgment on the pleadings was pending-would simply grant him the forbidden 'second bite at the apple.' This is not the purpose of Rule 59." (citation omitted)). Overlooked in Bain's reliance is that the "Rule 59(e) standard is much tougher than the Rule 15(a)(2) standard for granting leave to amend a complaint." *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014). In *Hampton*, a pro se petitioner requested the court consider his initial habeas petition when the magistrate judge issued a report and recommendation that the petitioner's amended petition for habeas relief be denied. *Hampton*, 2012 WL 6202740, at *1–2. By nature, in cases brought pursuant to 28 U.S.C. § 2254, an order on the petition occurs after full briefing on the merits, filing of all transcripts and records of state-court proceedings, any necessary discovery, any evidentiary hearings, and ends the action in a final judgment. *See generally* R. Governing § 2254 Cases. Finally, in *Wave Loch*, more than four years into litigation, the plaintiff sought to amend to add fifty-one newly asserted patent claims after the U.S. Patent and Trademark Office ("USPTO") cancelled all of the plaintiff's claims against the defendant. *Wave Loch, Inc.*, 2014 WL 7261552, at *1. The defendant then moved for judgment on the pleadings which, based on the USPTO's ruling, would have resulted in final judgment against the plaintiff. *Id.* st *2–3. In essence, Bain rests its bad

faith argument on case law where the motion for leave to amend was sought at the precipitous *end* of an action. Here, litigation is significantly less advanced with no trial dates set, discovery on-going, and no judgment on the merits looming.

Additionally, the Court disagrees with the general proposition that Plaintiffs' using the Court's order as a "roadmap to attempt to cure their deficient allegations" is somehow improper. Although in this litigation there are multiple tracks of plaintiffs, applying Bain's argument to its logical conclusion: whenever the court were to grant a Rule 12(b) motion and permit leave to amend, the plaintiff who successfully cured the identified deficiencies with amendment would be engaging in "gamesmanship." This is not so. The Court does not find Plaintiffs' addition of an agency theory or the aiding-and-abetting claim to be a product of bad faith simply because Plaintiffs imported the same allegations after they survived Bain's motion to dismiss with regard to another track of plaintiffs. *See Youngevity Int'l v. Smith*, No. 3:16-CV-704-BTM-JLB, 2020 WL 1433420, at *2 (S.D. Cal. Mar. 24, 2020) ("[W]hile the defendants argue that Youngevity engaged in tactical gamesmanship in the manner by which it sought to compel arbitration or otherwise seek adjudication of the breach of contract claims and counterclaims, the defendants nonetheless fail to demonstrate such efforts were wholly without merit, motivated by an improper motive, or otherwise made in bad faith.").

**C. Previous Amendments**

Third, the Court addresses whether Plaintiffs have "repeated[ly] fail[ed] to cure deficiencies by amendments previously allowed." *See Eminence Cap., LLC*, 316 F.3d at 1052. In considering this factor, courts make a clear distinction between amendments made to remedy defects identified by the court and other amendments, with only the former weighing against granting leave to amend. *See, e.g.*, *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016); *Eminence Cap., LLC*, 316 F.3d at 1053.

Neither Defendant expressly addresses this factor. (*See generally* Doc. Nos. 510; 511.) Bain, however, obliquely touches on Plaintiffs' prior amendment in arguing bad faith. (Doc. No. 510 at 27 ("Plaintiffs' attempt to incorporate that analysis manifestly qualifies

as the 'forbidden second bite at the apple' that the Ninth Circuit has repeatedly rejected.").

Although Plaintiffs have filed amended complaints, this is the first amendment Plaintiffs have sought after Defendants' motions to dismiss tested the sufficiency of their allegations and claims for the first time. Thus, "[t]his is not a case where plaintiffs took 'three bites at the apple' by alleging and re-alleging the same theories in an attempt to cure pre-existing deficiencies." *See Eminence Cap., LLC*, 316 F.3d at 1053; *see also United Healthcare Ins. Co.*, 848 F.3d at 1183. "Consequently, it is not accurate to imply that [P]laintiffs had filed multiple pleadings in an attempt to cure pre-existing deficiencies." *Eminence Cap., LLC*, 316 F.3d at 1053. Rather, Plaintiffs seek their first opportunity to cure deficiencies identified by Defendants and addressed by the Court.

Accordingly, the Court finds this factor does not weigh against granting leave to amend. *See, e.g.*, *Horsley v. Kaiser Found. Hosps., Inc.*, 746 F. Supp. 3d 791, 805 (N.D. Cal. 2024), *aff'd,* No. 24-5812, 2025 WL 3205857 (9th Cir. Nov. 17, 2025), *cert. denied,* 146 S. Ct. 2689 (2026) (finding no previous amendments to the complaint where parties previously stipulated to amend the complaint); *Guy v. Lorenzen*, 547 F. Supp. 3d 927, 952 (S.D. Cal. 2021) ("This is the first time Plaintiff will have the opportunity to amend his pleading following the Court's guidance.").

**D. Undue Prejudice**

Fourth, the Court considers whether granting leave to amend would unduly prejudice Defendants. "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd.*, 833 F.2d at 187. "Neither delay resulting from the proposed amendment nor the prospect of additional discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1158 (N.D. Cal. 2010). Courts have found undue prejudice where the action has progressed passed motions for summary judgment or is on the eve of trial. *See, e.g.*, *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 767 (9th Cir. 2015) (affirming the lower court's denial of leave on the basis of prejudice where "granting the motion would necessitate reopening discovery and conducting a new trial"). In contrast, amendment—

even to assert a new theory—amidst discovery is insufficient to delay proceedings or create substantial additional costs. *See, e.g.*, *DCD Programs, Ltd.*, 833 F.2d at 187–88; *Eagle Star Rock Prods. LLC v. PCC Structurals, Inc.*, 756 F. Supp. 3d 1062, 1093 (D. Or. 2024).

Bain argues that the proposed amendments "would inflict substantial prejudice by expanding the scope of claims and discovery against Bain." (Doc. No. 510 at 21–23.) Specifically, Bain asserts that added allegations would (1) "fundamentally transform[] Plaintiffs' litigation against Bain" by adding vicarious liability to the single claim of direct liability, (2) impose "inordinate costs on Bain" by requiring Bain "engage in new, additional, and burdensome track-specific discovery," and (3) unduly burden the Court, which "has already invested substantial resources and time in resolving Bain's motion to dismiss" and motion for reconsideration. (*Id.*)

The Court is not persuaded by Bain's assertions of burden. The addition of vicarious liability theories does not fundamentally transform litigation as these are theories Bain has been defending against in Track 1. Nor is it clear that the differences in the tracks would necessitate a fully separate, additional discovery burden to Bain due to these allegations. Bain merely conclusorily states that it would be burdensome to conduct such track-specific discovery, but it provides insufficient details demonstrating what that burden would actually entail, especially in light of Bain already being subject to the discovery and analysis of the same claims from another track of plaintiffs. Additionally, the prior complaint put Bain on notice of Plaintiffs' intentions to hold Bain vicariously liable because it asserted an alter-ego theory, despite that theory failing to survive Bain's motion to dismiss. Thus, this is not a situation where Bain would be forced to "consider new legal theories in a short period of time." *See Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649, 656 (N.D. Cal. 2025). Moreover, any potential prejudice to Defendants is mitigated to a degree by the early stage of the instant litigation. *See Pizana v. SanMedica Int'l LLC*, 345 F.R.D. 469, 483 (E.D. Cal. 2022) ("Prejudice is generally mitigated where the case is still in the discovery stage, no trial date is pending and no pretrial conference has occurred.").

However, the calculus of prejudice shifts with regard to Plaintiffs' amended unjust enrichment claim and the allegations concerning PowerSchool's Naviance platform. In the prior complaint, Plaintiffs brought an unjust enrichment claim on the basis that "PowerSchool was the recipient of funds from Plaintiffs that Plaintiffs continuously expended under the reasonable belief that PowerSchool was providing the data security services it promised to provide." (FAMC ¶ 197.) The proposed amendments unmoor the unjust enrichment claim from the data breach upon which the rest of the action is predicated. Instead, Plaintiffs seek to bring the claim based on allegations that "PowerSchool has been unjustly enriched by its covert scheme of monetizing the student data that School Districts contractually entrusted to PowerSchool for the sole purpose of providing educational software services" by sharing it with third-party partners, training proprietary artificial intelligence ("AI") systems on the data to improve commercial AI products, and building and selling products, profiles, and dossiers based on the data. (PSAMC ¶¶ 297–98.) To permit Plaintiffs to add a claim wholly unrelated to the data breach at issue here would expand the scope of this litigation and unduly prejudice Defendants.

Similarly, Plaintiffs seek to add allegations about a technical error with Naviance, PowerSchool's college and career readiness platform, that resulted in the transmission of student transcripts to support different students' college applications in early 2026. (PSAMC ¶¶ 65–70, 211–17.) Plaintiffs then reference this "breach" in Counts 1 (Negligence), 18 (Breach of Contract on Behalf of the South Carolina Districts), and 20 (Breach of Contract on Behalf of the New York Districts). (*Id.* ¶¶ 234(e), 236, 250, 495, 499, 501(a), 554, 557, 560(a), 581, 584, 585.) Unlike the data breach at the heart of the MDL, the Naviance allegations do not involve insufficient data security measures, the compromising of an employee's credentials, and subsequent hacking attack that monetized the exposure of Plaintiffs' PII. Rather, Plaintiffs allege a "technical error" in the software that "constitutes an unauthorized disclosure of education records in violation of the Family Education Rights and Privacy Act." To permit Plaintiffs to include a completely different

incident—different both in time and nature—would expand the scope of this litigation and unduly prejudice Defendants.

Accordingly, the Court finds that Plaintiffs' amended unjust enrichment claim and the allegations concerning PowerSchool's Naviance platform would unduly prejudice Defendants. The Court finds no undue prejudice with respect to the other proposed amendments.

### E. Futility[3]

Finally, the Court addresses whether Plaintiffs' proposed amendments are futile. "An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. Thus, "[c]ourts rarely deny a motion

---

[3] As an initial matter, Plaintiffs and Bain discuss the Court's dismissal of some claims pursuant to Defendants' Rule 12(b)(6) motions. (Doc. Nos. 520-1 at 10; 510 at 19.) Prior to transfer to the undersigned, the Court resolved Defendants' motions to dismiss Plaintiffs' First Amended Master Complaint. (Doc. Nos. 435; 440.) In dismissing Plaintiffs' alter ego theory against Bain, the Court expressly stated that "[a]ll dismissals in this Order are without prejudice," recited the liberal standard for amendment, and "conclude[d] that the deficiencies identified here are factual rather than legal defects." (Doc. No. 435 at 24–25.) Although not a model of clarity, the Court demonstrated an intent to grant Plaintiffs leave to amend.

However, in dismissing Plaintiffs' claims against PowerSchool, the Court did not address leave to amend. (*See generally* Doc. No. 440.) In opposition to both motions, Plaintiffs briefed a request for leave to amend. (Doc. Nos. 343 at 52–53; 344 at 40–41.) Thus, "[b]y not addressing plaintiffs' request for leave to amend, the district court's order necessarily entailed a denial of the request and a determination that the pleading could not possibly be cured by the allegation of other facts." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1102 (9th Cir. 2008). The Court's oversight in not addressing leave to amend was error. *See Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) ("Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."); *Vogel v. La Amapola, Inc.*, 717 F. App'x 742, 743 (9th Cir. 2018) ("Because the district court's order [which failed to address leave to amend] amounted to an outright refusal to grant leave to amend without any specific analysis, statement of reasons, or addressing of the factors that should be considered, it abused its discretion.").

for leave to amend for reason of futility." *Entangled Media, LLC*, 348 F.R.D. at 656.

To the extent Defendants seek the Court to conduct a full 12(b)(6) inquiry into the proposed allegations, the Court declines to do so as procedurally improper. Although some courts have noted that the analysis of whether granting leave to amend is proper is "much like" the analysis of a Rule 12(b)(6), the two are not the same. "Where a proposed amended claim involves complicated factual or legal issues, it is generally preferable for the sufficiency of that claim to be addressed on a fully briefed motion to dismiss rather than under the more circumscribed Rule 15(a) 'futility' analysis." *Entangled Media, LLC*, 348 F.R.D. at 656.

**1. New Allegations as to Bain**

Bain asserts that the "two new theories of liability"—agency and aiding-and-abetting—are futile. With regard to the agency theory, Bain asserts that amendment is futile because Plaintiffs are "merely re-label[ing]" conduct "previously characterized as alter ego control" and dismissed as insufficient. (Doc. No. 510 at 12–13.) The rest of Bain's futility arguments are based on a deep-dive factual analysis asserting that the proposed amendments are not sufficient to state a claim and, thus, the amendment is futile. (*Id.* at 14–16.) However, when arguing undue delay, Bain asserts that Plaintiffs "imported" the "new allegations against Bain and their aiding-and-abetting claim" from Track 1 Plaintiffs' Consolidated Master Complaint. (*Id.* at 24.) Additionally, in arguing bad faith, Bain asserts that Plaintiffs "are wholly importing theories and allegations from Track 1 Plaintiffs that survived Bain's motion to dismiss." (*Id.* at 27.)

As addressed by Plaintiffs, "Bain cannot have it both ways." (Doc. No. 521 at 4.) The similarity of the agency allegations and aiding-and-abetting claim to those that withstood Bain's motion to dismiss Track 1 Plaintiffs' Consolidated Master Complaint undermine the assertion that "no set of facts" could be alleged to constitute a valid claim against Bain. *See Koster*, 847 F.3d at 656. Because the proposed allegations concerning agency and aiding-and-abetting may be a proper subject of relief, Plaintiffs ought to be afforded an opportunity to test them on the merits. *See Foman*, 371 U.S. at 182. The Court

finds Bain fails to demonstrate futility.

**2. State Consumer Protection Statute Claims**

PowerSchool argues that Plaintiffs' proposed amendments do not rescue their claims under the state consumer protection statutes, "which the Court dismissed on legal grounds." (Doc. No. 511 at 23–24.) As an initial matter, PowerSchool's assertion that dismissal was on legal grounds finds no basis in the Court's order. Because dismissal was based on the specific allegations of the complaint being tested, the Court turns to whether the proposed amendments may salvage the previously dismissed claims.

First, the Court dismissed Counts 12 (Utah Consumer Sales Practice Act), Count 25 (Vermont Consumer Protection Act), and Count 43 (Oklahoma Consumer Protection Act) due to a "personal use" requirement that Plaintiffs as "corporate intermediaries" do not fulfill. (Doc. No. 440 at 18.)[4] PowerSchool asserts that because "Plaintiffs are school districts that licensed educational software—not individual consumers[, t]here is nothing in Plaintiffs' proposed amendments (nor could there be) that would change this reality." (Doc. No. 511 at 24.) Plaintiffs do not address these arguments in their reply. Based on the Court's independent review, the proposed amended complaint neither removes these three previously dismissed counts nor provides additional factual allegations to address the personal use requirement. (*See* PSAMC ¶¶ 467–88, 660–86, 1090–1109.) Essentially, Plaintiffs' failure to remove those counts or amend them in any regard implies a request for leave to reassert them. However, without any relevant amendments or arguments to the contrary, these three counts, as pled, are futile.

Second, the Court provided two additional reasons for dismissal of myriad state consumer protection claims, both of which were similarly factually rooted. The Court dismissed Count 14 (Wisconsin's Deceptive Trade Practices Act), Count 22 (New York

[4] The Court also dismissed Counts 34 (Rhode Island's Unfair Trade Practices and Consumer Protection Act) and 38 (Virginia Consumer Protection Act) for the same reason; however, Plaintiffs removed these two counts from the proposed amended complaint. (*See generally* PSAMC.)

Deceptive Sales Practices Act), Count 27 (Idaho Consumer Protection Act), Count 29 (Tennessee Consumer Protection Act of 1977), Count 31 (New Hampshire Consumer Protection Act), Count 36 (Pennsylvania's Unfair Trade Practices and Consumer Protection Law), Count 41 (Arizona Consumer Fraud Act), and Count 45 (Washington Consumer Protection Act) "because the claims . . . lack[ed] plausible allegations of reliance or causation in view of the written MSAs." (Doc. No. 440 at 21, 22.)[5] PowerSchool points to the non-reliance clause of the MSA the Court cited in its dismissal, asserting that "nothing in the [proposed amended complaint] alters the fact that Section 14.9 of the MSA precludes reliance on non-contractual promises or representations." (Doc. No. 511 at 24.) Although Plaintiffs did not directly amend these causes of action (*see* PSAMC ¶¶ 507–23, 607–29, 726–37, 762–82, 826–38, 928–38, 1027–46, 1153–75), the amendments concerning the nature of the MSA and its enforceability call into question whether the facts and circumstances now relied upon by Plaintiff may be a proper subject of relief. Accordingly, the Court finds the PowerSchool has not met the high bar required to demonstrate futility of these eight counts.

### 3. Data Breach Notification Claims

PowerSchool argues that Plaintiffs do not allege delay sufficient to remedy dismissal of their claims brought pursuant to the New Hampshire, Virginia, and Washington data breach notification laws. (Doc. No. 511 at 24–25.) Specifically, PowerSchool states that Plaintiffs do not add factual allegations "suggesting that PowerSchool's 'delay' in notifying Plaintiffs was greater than ten days." (Doc. No. 511 at 25.) However, in a footnote, PowerSchool argues that the added allegation that "[s]ome School Districts did not receive any notification until as late as August 2025" is "conclusory" and lacks "any

[5] The Court also dismissed Counts 19 (South Carolina's Unfair Trade Practices Act) and 38 (Virginia Consumer Protection Act) for the same reason; however, Plaintiffs removed these two counts from the proposed amended complaint. (*See generally* PSAMC.) Additionally, this was second basis for dismissal of Counts 12 and 25. (*See* Doc. No. 440 at 21.) Due to Plaintiffs' failure to amend regarding the personal use requirement, the Court omits these counts from discussion here.

indication of which 'School Districts' the allegation refers to, and when they were notified." (Doc. No. 511 at 25 n.9 (quoting PSAMC ¶ 250).)

The Court dismissed Counts 32 (New Hampshire Right to Privacy Act), 39 (Virginia Data Breach Notification Law), and 46 (Washington Data Breach Notification Statute) because Plaintiffs alleged PowerSchool's breach announcement was initiated only ten days after discovery, which the Court found to be a "reasonable" delay that "would likely satisfy the notice obligations imposed by any of these three state statutes." (Doc. No. 440 at 24.)

Much like the operative complaint, the proposed amended complaint includes that "[a]lthough hackers notified PowerSchool of the Data Breach on December 28, 2024, PowerSchool did not begin notifying customers until at least January 7, 2025." (PSAMC ¶ 11.) Plaintiffs now also allege that, "[e]ven then, PowerSchool's notification was inconsistent, lacked detail, inaccurate and in some cases non-existant causing Plaintiff School Districts to determine on their own if they had been affected." (*Id.* ¶ 40.) Additionally, Plaintiffs allege that "[s]ome School Districts did not receive any notification until as late as August 2025." (*Id.* ¶ 252.) As noted by PowerSchool, this allegation is found within Count 1 (Negligence). (*See* Doc. No. 511 at 25 n.9.) However, each of these three data breach notification claims specifically incorporates the allegations found in the negligence claim. (*See* PSAMC ¶¶ 839 ("The New Hampshire Districts reallege and incorporate paragraphs 1 through 309 above as if fully set forth herein."), 986 (same for applicable Plaintiffs), 1176 (same for applicable Plaintiffs).) Accordingly, the Court finds the PowerSchool has not met the high bar required to demonstrate futility of the data breach notification claims.

**4. Fraud Claims**

PowerSchool argues that the proposed amendments to Plaintiffs' fraudulent concealment claim are futile because (1) "Plaintiffs do not identify any non-contractual duty that PowerSchool owed to them" and (2) Plaintiffs "suppl[y] no new facts regarding specific omissions or misrepresentations that each Plaintiff allegedly relied upon in entering into their respective contracts with PowerSchool" as would be necessary to meet

the heightened Rule 9(b) pleading standard. (Doc. No. 511 at 21–23.)

The Court previously dismissed this claim because (1) it did not satisfy the heightened pleading standard of Rule 9(b) and (2) "Direct Action Plaintiffs would be unable to plausibly allege that PowerSchool had a duty to disclose concealed information that is separate and apart from its contractual duty to perform under their contracts." (Doc. No. 440 at 12.)

Plaintiffs' proposed amendments include allegations addressing PowerSchool's affirmative representations to prospective customers regarding cybersecurity protections such as Multi-Factor Authentication ("MFA") through Single Sign-On functionality, PowerSchool's failure to disclose it did not maintain a uniform MFA policy with respect to its subprocessors and offshore contractors, and Plaintiffs' internal machinations when evaluating PowerSchool as a vendor. (PSAMC ¶¶ 311–15.) By labeling these allegations "conclusory," PowerSchool dismisses Plaintiffs' new allegations without meeting its burden to demonstrate futility of the amendment. Moreover, because Plaintiffs allege that "PowerSchool made [these] specific fraudulent misrepresentations during the procurement process by which School Districts selected PowerSchool as their student information system and educational technology provider," (PSAMC ¶ 308), PowerSchool's arguments about a non-contractual duty and application of the MSA are involved factual-sufficiency arguments more appropriately addressed on a fully briefed Rule 12(b)(6) motion rather than a motion for leave to amend. Accordingly, the Court finds the PowerSchool has not met its burden to demonstrate futility with regard to this claim.

**5. Negligence-Based Claims**

PowerSchool argues that (1) a "single additional data security-related allegation does not suffice to establish gross negligence" to avoid application of the limitation of liability provision, (2) the "new allegations do not establish any tort duty owed to Plaintiffs," and (3) the negligence claims arise are barred by the economic loss doctrine. (Doc. No. 511 at 13–20.)

///

The Court dismissed the negligence-based claims because (1) the limitation of liability provision in the MSA "expressly extends to tort claims under any theory[,] cut[ting] off any additional damages," and (2) the "additional economic losses claimed by the School District Plaintiffs would be barred by the economic loss doctrine." (Doc. No. 440 at 8, 10.)

First, PowerSchool's assertions that "Plaintiffs' convenient use of the passive voice cannot conceal the fact that the PAC itself makes clear that PowerSchool did investigate the April 2023 'security alert'" does not aid in demonstrating futility of Plaintiffs' gross negligence theory. Plaintiffs' extensive allegations that PowerSchool was aware of Cruz's compromised credentials in 2023, investigated, and did not take any remedial actions far outweigh PowerSchool's myopic futility argument on this basis. Because Plaintiffs allege facts that may make the limitation of liability provision inapplicable, the negligence claims are not futile in this regard.

Second, although PowerSchool challenges whether Plaintiffs sufficiently plead PowerSchool owed them a duty, this issue was not addressed by the prior order. (*See* Doc. No. 440 at 10 ("Although it may be the case that there is no particular duty owed by PowerSchool to its school district entity customers, the Court need not reach a decision on this question because the negligence tort claims are foreclosed by the contractual limitation of liability and the economic loss doctrine.").) Additionally, the proposed amended complaint includes allegations of duty, including allegations that said duty arose independent of the contract (*id.* ¶¶ 235, 238, 273–74). Coupled with Plaintiffs' allegations of fraud infecting the contract formation, Plaintiffs' negligence claims warrant testing on the merits to determine whether, as now pled, they avoid the economic loss doctrine. Accordingly, the Court finds PowerSchool fails to demonstrate futility of the negligence claims.

### 6. Declaratory Judgment Claim

Finally, PowerSchool argues that the new claim brought pursuant to the Declaratory Judgment Act is futile because Plaintiffs do not allege facts supporting the proposition that

the MSA is a contract of adhesion. (Doc. No. 511 at 25–26.) Specifically, PowerSchool asserts that Plaintiffs could and did negotiate their contracts with PowerSchool and Plaintiffs do not allege they could not have chosen another Student Information System vendor. (*Id.*)

In the newly asserted claim, Plaintiffs "seek a declaration that: (a) Sections 11.1 and 11.2 of the MSA damages limitation clause are unenforceable as a matter of law; and (b) in the alternative, the MSA's limitation of liability expressly does not apply to PowerSchool's liability arising out of its gross negligence, willful misconduct, and fraud as alleged herein, pursuant to the express terms of MSA § 11.3." (PSAMC ¶¶ 287–95.) Plaintiffs' proposed amendments also include detailed factual allegations that address the heavy public regulation in PowerSchool's field, the size of PowerSchool's market share, and the limited resources and bargaining power of some states and school districts to negotiate with PowerSchool. (PSAMC ¶¶ 76, 100.)

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Considering the new factual allegations regarding the MSA and the allegations of the newly added claim, the Court finds the PowerSchool has not met the high bar required to demonstrate futility of Plaintiffs' declaratory judgment claim.

**F. Balancing of Factors**

Based on the foregoing, the Court finds:

1. Plaintiffs delayed somewhat, but not unduly, with regard to seeking to allege the aiding-and-abetting claim, agency theory, MSA allegations, and declaratory judgment claim. However, there was no delay with regard to the Naviance platform and PowerSchool's notice of suspicious activity on Cruz's account.

2. Plaintiffs' proposed amendments are not a product of bad faith.

3. Plaintiffs have not repeatedly failed to cure deficiencies by prior amendment.

4. Permitting amendment to the unjust enrichment claim and the allegations concerning PowerSchool's Naviance platform would unduly prejudice Defendants. There is no undue prejudice with respect to the other proposed amendments.

5. Counts 12 (Utah Consumer Sales Practice Act), Count 25 (Vermont Consumer Protection Act), and Count 43 (Oklahoma Consumer Protection Act) are futile as pled. However, Defendants do not meet their burden to demonstrate futility of the other proposed amendments.

Considering that futility is an independently sufficient reason to deny leave to amend, the Court **DENIES** Plaintiffs' motion as to Counts 12, 25, and 43. Because "the crucial factor is the resulting prejudice to the opposing party," *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973), and having determined that expanding the scope of this litigation beyond the 2024 data breach would unduly prejudice Defendants and strain judicial resources, the Court **DENIES** Plaintiffs' motion to add allegations regarding the early-2026 technical error in PowerSchool's Naviance platform. Because the remaining proposed amendments only demonstrate some delay but no other *Foman* factor, the Court **GRANTS** Plaintiffs' motion for leave to amend in all other respects.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' motion for leave to amend. **IT IS HEREBY ORDERED**:

1. The Court **DENIES** Plaintiffs' motion as to:

   i. Counts 12 (Utah Consumer Sales Practice Act), Count 25 (Vermont Consumer Protection Act), and Count 43 (Oklahoma Consumer Protection Act) on the basis of futility as pled; and

   ii. Count 4 (Unjust Enrichment) and factual allegations concerning the Naviance platform on the basis of undue prejudice.

2. The Court **GRANTS** Plaintiffs' motion as to all other proposed amendments.

3. Plaintiffs' Proposed Second Amended Master Complaint must be altered to comply with the leave granted herein, including:

i. Counts 4 (Unjust Enrichment), 12 (Utah Consumer Sales Practice Act), Count 25 (Vermont Consumer Protection Act), and Count 43 (Oklahoma Consumer Protection Act) must be removed; and

ii. New allegations concerning the early-2026 technical error in PowerSchool's Naviance platform must be removed, including references added to Counts 1 (Negligence), 18 (Breach of Contract on Behalf of the South Carolina Districts), and 20 (Breach of Contract on Behalf of the New York Districts).

4. The compliant Second Amended Master Complaint must be filed, with a redlined version attached **no later than <u>November 6, 2026</u>**.

**IT IS SO ORDERED.**

Dated: October 23, 2026

Hon. Anthony J. Battaglia
United States District Judge