UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION

This Document Relates To:

All Track One Actions

Case No.: 25-md-03149-AJB-MSB
MDL No. 3149

**ORDER DENYING POWERSCHOOL'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

**(Doc. No. 529)**

Before the Court is a motion for partial judgment on the pleadings filed by Defendant PowerSchool regarding the fourteenth claim asserted in Track One Plaintiffs' ("Plaintiffs") Consolidated Individual Users Class Action Complaint (*see* Doc. No. 259, "Compl.")). (Doc. No. 529.) Plaintiffs filed an opposition (Doc. No. 548), to which PowerSchool replied (Doc. No. 550). Based on the reasons set forth herein, the Court **DENIES** PowerSchool's motion for partial judgment on the pleadings.

## I. BACKGROUND

Upon consolidation into this multi-district litigation, Plaintiffs filed the Complaint, which asserts *inter alia* a violation of the California Confidentiality of Medical Information Act ("CMIA"). (Compl. ¶¶ 987–1007.) PowerSchool moved to dismiss the CMIA claim

(Doc. No. 285 at 64–67), which the Court denied (Doc. No. 436). In so doing, the Court exclusively relied on *J.M. v. Illuminate Educ., Inc.*, 103 Cal. App. 5th 1125 (2024), *rev'd,* 19 Cal. 5th 705 (2026), as "persuasive" and "lead[ing] to the conclusion that PowerSchool could be liable for negligently handling medical information under the CMIA" to deny PowerSchool's motion. (Doc. No. 436 at 29.) Two months later, on May 14, 2026, the California Supreme Court reversed the appellate court's decision. *J.M. v. Illuminate Educ., Inc.*, 19 Cal. 5th 705 (2026). PowerSchool now moves for partial judgment on the pleadings, asserting the California Supreme Court's *Illuminate* decision forecloses Plaintiffs' CMIA claim.

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (internal punctuation and citation omitted). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108–09 (9th Cir. 2012) (internal punctuation and citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

## III. DISCUSSION

PowerSchool seeks judgment on the pleadings for Plaintiffs' CMIA claim, asserting generally that *Illuminate* forecloses a CMIA claim against an educational software provided like PowerSchool. (Doc. No. 529.) Plaintiffs oppose on both procedural and substantive grounds. The Court resolves the procedural issues first before turning to the substance of the instant motion.

### A. Procedural Issues

Both parties raise procedural objections with respect to the opposing party's filings. Plaintiffs assert that the instant motion is procedurally improper, while PowerSchool asserts that Plaintiffs' reliance on materials outside the pleadings is improper. The Court addresses each threshold issue in turn.

#### 1. Propriety of PowerSchool's 12(c) Motion

Plaintiffs argue that the instant motion is improper based on the law of the case doctrine and because the motion is untimely. (Doc. No. 548 at 7–11.) First, Plaintiffs argue that the Court must deny the motion because PowerSchool is raising the same arguments the Court has previously decided twice. (*Id.* at 7–9.)

"The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Zeyen v. Bonneville Joint Dist., # 93*, 114 F.4th 1129, 1136–37 (9th Cir. 2024) (quoting *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016)). "There are exceptions to the law of the case doctrine: when 'the first decision was clearly erroneous,' 'an intervening change in the law has occurred,' the evidence at the later stage of the case 'is substantially different,' 'other changed circumstances exist,' or 'a manifest injustice would otherwise result.'" *Fikre v. Fed. Bureau of Investigation*, 35 F.4th 762, 770 n.6 (9th Cir. 2022), *aff'd,* 601 U.S. 234 (2024) (quoting *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018)).

Here, PowerSchool asserts a change of law because the sole case the Court cited in denying its motion to dismiss the CMIA claim was reversed by the California Supreme Court. (Doc. Nos. 529; 550.) In large part, Plaintiffs' argument relies on the Court agreeing with its interpretation of *Illuminate*'s impact; however, the motion is not procedurally improper merely because Plaintiffs disagree with it on the merits.

Second, Plaintiffs assert that, because "this case is well beyond the pleading stage," the 12(c) motion is untimely and "[t]he right mechanism for PowerSchool to test the claims at this stage is a summary judgment motion after the close of discovery." (Doc. No. 548 at

10.) Plaintiffs' assertions are inaccurate. A 12(c) motion is only untimely if it is filed such that it delays trial. Fed. R. Civ. P. 12(c). Here, the motion was filed well before any trial—including any bellwether trials—while discovery is ongoing. (*See* Doc. Nos. 545 (scheduling order); 550 ("[F]act discovery will not close until May 14, 2027, with summary judgment motions not due for more than a year, on September 13, 2027."). Moreover, it is well settled in this circuit that the standard applied to a 12(c) motion is that which is applied to a 12(b)(6) motion. *See Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog."). That the parties are conducting discovery is of no import on the standard for a 12(c) motion.[1]

---

[1] The Court is not persuaded by the farrago unpublished out-of-district cases Plaintiffs cite. Some the Court finds to be factually inapposite. *See AM Gen. LLC v. Demmer Corp.*, No. 3:12CV333, 2013 WL 5348484, at *6 (N.D. Ind. Sept. 23, 2013) (finding that, "by wading into disputed waters," the defendant took "its motion beyond the proper parameters of a motion for judgment on the pleadings," raising issues "more appropriate for a summary judgment motion"'); *Dunsmore v. San Diego Cnty. Sheriff's Dep't*, No. 20-CV-00406-AJB-DDL, 2023 WL 12128518, at *8 (S.D. Cal. Apr. 27, 2023) (denying the request for a "narrowing order" after granting in part the defendants' motion to dismiss); *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40 (1st Cir. 2012) (raising questions in dicta regarding the 12(c) standard when the motion was filed after the district court's deadline to file 12(c) motion had passed). The rest reach conclusions regarding timing of 12(c) motions unmoored from the Rules or binding precedent. *See Choi v. 8th Bridge Cap., Inc.*, No. 217CV8958CASAFMX, 2019 WL 4956147, at *3 (C.D. Cal. Oct. 7, 2019) (denied a motion for judgment on the pleadings because "if the Court were inclined to grant [the] motion for judgment on the pleadings based on pleading deficiencies in the FAC, at this juncture, the Court would allow plaintiffs the opportunity to amend") (Snyder, J.) (relying only on unpublished district court cases); *Est. of Rodriguez v. City of Long Beach*, No. 218CV07522CASFFMX, 2020 WL 292179, at *2 (C.D. Cal. Jan. 21, 2020) (Snyder, J.) (same); *Perez v. Oak Grove Cinemas, Inc.*, No. 3:13-CV-00728-HZ, 2014 WL 1796674, at *4 (D. Or. May 5, 2014) ("Had Defendants brought this motion at an earlier stage in litigation, I may have granted the motion on the basis of the plausibility standard. However, because there has been substantial discovery, the underlying rationale, or 'core purpose' of the plausibility standard has already been satisfied. In cases where an answer has been filed, there has been preliminary injunction motion practice, and discovery has progressed to include depositions, the application of the *Iqbal/Twombly* plausibility standard is inappropriate on a Rule 12(c) motion."). The Court finds more persuasive the textually rooted interpretations from district courts who decline to follow Plaintiffs' precedent. *See, e.g.*, *Paradise Ent. Ltd. v. Empire Tech. Grp. Ltd.*, No. 2:24-CV-428 JCM (BNW), 2026 WL 776741, at *2–3 (D. Nev. Mar. 19, 2026) ("Plaintiffs point to other courts that have denied motions for judgment on the pleadings where discovery is substantially closed. There appears to be no textual support for following these courts."); *Anderson v. SeaWorld Parks & Ent., Inc.*, No. 15-CV-02172-JSW, 2019 WL 13166750, at *3 (N.D. Cal. Aug. 30, 2019) ("However, courts within this district have declined to follow *Oak Grove*

The Court finds Plaintiffs' assertions that the instant motion is "legally and procedurally improper" to be unfounded and instead finds the motion to be timely. *See, e.g.*, *Gomez v. Winslow*, 177 F. Supp. 2d 977, 981 (N.D. Cal. 2001); *Sec. & Exch. Comm'n v. Payward, Inc.*, 763 F. Supp. 3d 901, 907 (N.D. Cal. 2025).

**2. Propriety of Plaintiffs' Exhibits**

In support of their opposition, Plaintiffs proffer two exhibits. (*See* Doc. Nos. 548-2; 548-3.) PowerSchool argues that the Court should disregard the exhibits and any arguments based thereon. (Doc. No. 550 at 10–11.)

"Judgment on the pleadings is limited to material included in the pleadings." *Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health*, 654 F.3d 919, 925 n.6 (9th Cir. 2011). Otherwise, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "The district court ha[s] discretion not to convert the motion for judgment on the pleadings into a summary judgment motion[.]" *Yakima Valley Mem'l Hosp.*, 654 F.3d at 925 n.6.

PowerSchool filed a motion for judgment on the pleadings without providing or relying on extrinsic evidence. The Court sees no reason to convert the motion to one on summary judgment based on Plaintiffs' two exhibits, while Plaintiffs simultaneously argue that that a motion for summary judgment would be "premature" unless filed "after the close of discovery." (Doc. No. 548 at 10.) Accordingly, the Court disregards Plaintiffs' exhibits.

With propriety of the papers addressed, the Court turns next to the parties' substantive arguments.

**B. Sufficiency of the CMIA Claim**

Pursuant to the CMIA, "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of

---

*Cinemas* on the basis that its view that "a Rule 12(c) motion is not appropriate where there has been substantial discovery does not appear to be supported by Rule 12(c)," which requires that the motion not delay trial.") (collecting cases).

health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization," with limited exception. Cal. Civ. Code § 56.10(a). Plaintiffs allege that PowerSchool is "a business deemed to be a provider of health care, health care service plan, or contractor as defined in Civil Code § 56.10(a), *supra*, and as further defined in Civil Code § 56.06(a)." (Compl. ¶ 980; *see also id.* ¶ 986 ("PowerSchool is also a business deemed to be a provider of health care, health care service plan, or contractor as further defined in Civil Code § 56.06(b).").) In the instant motion, PowerSchool asserts that it is neither a provider of health care nor a contractor.

**1. PowerSchool as a "Provider of Health Care"**

A "provider of health care" is statutorily defined as:

> [a]ny business organized for the purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis and treatment of the individual[.]

Cal. Civ. Code § 56.06(a).[2]

Here, PowerSchool asserts that (1) the factual allegations of the Complaint support that PowerSchool's purpose is educational rather than medical, (2) there are no factual allegations supporting that PowerSchool maintains medical information for the purpose of either allowing individuals to manage their information or for the diagnosis and treatment of the individual, and (3) the remaining allegations in support of such conclusions are "mere threadbare recitations of the statutory text." (Doc. No. 529 at 11–15.) Interpreting *Illuminate*, PowerSchool asserts that "the California Supreme Court held that an entity that makes medical information available for the purpose of facilitating educational goals—

---

[2] Similarly, "[a]ny business that offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual, shall be deemed to be a provider of health care subject to the requirements of this part." Cal. Civ. Code § 56.06(b).

rather than for medical diagnosis or treatment—is not covered by CMIA." (*Id.* at 13; *see also id.* at 11 ("*Illuminate* recognized that an educational technology company does not fall within this definition, even if it collects medical information that is ancillary to its primary educational purpose.").)

As noted by Plaintiffs (*see* Doc. No. 548 at 13–14), *Illuminate* does not establish a bright-line rule that educational technology companies like Illuminate and PowerSchool cannot qualify as providers of health care under the CMIA. "Setting aside whether Illuminate is a 'business organized for the purpose of maintaining medical information,'" the California Supreme Court considered whether J.M. sufficiently alleged that Illuminate "maintains medical information in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care" for the purpose of (1) "allow[ing] the individual to manage the individual's information" or (2) "diagnos[ing] and treat[ing] of the individual." *Illuminate Educ., Inc.*, 19 Cal. 5th at 715. In analyzing the specific factual allegations presented, the court noted that "J.M.'s complaint alleges that Illuminate makes its tools and data available to 'educators,' in addition to 'parents' and 'students,' in order to help them assess students' educational needs, monitor students' progress, and provide appropriate educational services." *Id.* at 716. Specifically, "J.M. highlights the allegation that Illuminate provides educators with the right dyslexia screening data because educators need the right data about students early reading skills to identify if they are exhibiting deficits associated with dyslexia. With its 'dyslexia screening, progress monitoring, and aligned interventions, students can make significant reading improvements." *Id.* The court found these allegations did "not bring Illuminate within the ambit of section 56.06, subdivision (a)." *Id.* Key to the court's determination were the facts *not pled* by J.M.:

- J.M. does not allege that the Ventura County Office of Education or any of its teachers or officials is a provider of health care. Nor does he allege that Illuminate makes medical information available to individuals in order to allow them to manage their information or that Illuminate provides medical information to health care providers or individuals for diagnosis and treatment

of an individual. *Id.* at 715 (citation omitted).

- While J.M. alleges that Illuminate uses students' medical information, including diagnosis and treatment plans, to help educators assess and meet students' educational needs, he does not allege that Illuminate makes such information available to any health care provider or individual for the diagnosis of an individual. Nor does he allege that Illuminate makes dyslexia screening data or any other medical information available to an individual so that the individual can manage the information. *Id.* at 716.

- But this allegation—which is the only reference in the second amended complaint to students and parents, as opposed to educators, having access to data stored by Illuminate—does not clearly indicate that Illuminate maintains medical information in order to make it available to an individual at the individual's request for a statutorily specified purpose. The alleged "access provided" is qualified by the purpose of "aid[ing] . . . educational evaluation, monitoring of progress, and determining an educational plan." That purpose does not necessarily align with a purpose of allowing medical information management by an individual or enabling diagnosis of an individual. The complaint does not indicate, for example, whether students and parents have access to students' medical information for noneducational purposes, or whether the internet platforms enable students and parents to download the information for their own use or to access the information whenever they wish. The complaint's bare mention of access provided to students and parents is insufficient to bring Illuminate within the coverage of section 56.06, subdivision (a). *Id.*

As noted by Plaintiffs, the court's inquiry was intensely fact specific.

Here, Plaintiffs assert a different kaleidoscope of allegations against PowerSchool that were not at issue in *Illuminate*. Plaintiffs allege PowerSchool "has among its primary purposes the maintenance of student medical records and protected health information on its software platforms and computer networks" in order "to meet the unique needs of students who require health care in order to succeed." (Compl. ¶¶ 981–82.) PowerSchool receives "health care provider names and contact information; health records; visits to health staff; medical history, mental, and physical conditions; vaccination and immunization records; dietary restrictions; special medical considerations and treatments (*i.e.* asthma, diabetes, seizures, etc.); medication schedules; allergies; and other protected health information, directly from schools, school districts, and individuals in order to alert

teachers and staff to any urgent or important medical considerations." (*Id.* ¶ 983.)

Plaintiffs further allege that "PowerSchool maintains such medical information to make it available to students, parents, guardians, teachers, educational staff, schools, and school district personnel, and/or providers of health care upon request, and to allow such individuals and clinicians to manage the individual's information, and for diagnosis and treatment." (*Id.* ¶ 981; *see also id.* ¶¶ 982 ("PowerSchool uses student medical information and diagnosis and treatment plans of children to assist the diagnoses of students' medical and health care needs and monitor their progress to ensure they are healthy enough to learn and be safe at school."), 988 ("PowerSchool's organizational purpose was to help its educational entity clients and individuals maintain this medical information for the benefit of students, families, guardians, and employees, and to make the information available upon request for treatment or to manage health care and medical condition needs.").) "At all times relevant herein, PowerSchool purposefully facilitated and executed the transmission between PowerSchool, school entity and education organization, individual students, their families and guardians, and employees, of such medical information contained in medical records, as well as its receipt and maintenance by PowerSchool." (*Id.* ¶ 988.) Plaintiffs also allege that "[t]his is a central facet of regular operations in schools and school districts nationwide, ranging from garden-variety basic medical care and vaccination histories to more serious health encounters, which must be documented." (*Id.*) Finally, Plaintiffs allege that "Defendants' educational entity clients and individual users provide healthcare to students and employees such that their purpose of maintaining medical information is thus consistent with their role as a provider of health care" because schools and school districts are *inter alia* "authorized to hire physicians as full-time supervisors of health," "to provide ambulance care," "to provide medical care at sports events," and "to cooperate with local health officials in preventing communicable diseases." (*Id.* ¶ 984.)

Unlike J.M., Plaintiffs sufficiently allege for this stage of proceedings that PowerSchool maintains the students' medical records to make the information available to

a provider of health care at the request of the provider for the purpose of treating students. To the extent PowerSchool disagrees with these allegations, such a challenge is not properly resolved on a 12(c) motion. Accordingly, because PowerSchool has not demonstrated that there is no material issue of fact and it is not clear that it is entitled to judgment as a matter of law, the Court denies PowerSchool's motion with respect to the "provider of health care" theory.

### 2. PowerSchool as a "Contractor"

Pursuant to CMIA, "'[c]ontractor' means a person or entity that is a medical group, independent practice association, pharmaceutical benefits manager, or a medical service organization and is not a health care service plan or provider of health care." Cal. Civ. Code § 56.05(d).[3]

PowerSchool expressly "focuses this motion on *Illuminate*'s clarification that educational software providers like PowerSchool are not providers of health care" because (1) "the MTD Order was not based on a finding that PowerSchool was a 'contractor'" and (2) "CMIA's definition of 'contractor' is facially inapplicable to PowerSchool." (Doc. No. 529 at 9 n.2.) According to PowerSchool, for those two reasons "Plaintiffs' argument that PowerSchool is a 'contractor' subject to the CMIA fails[.]" (*Id.*)

Plaintiffs counter that PowerSchool's basis for bringing the instant motion—the California Supreme Court's *Illuminate* ruling—is "materially distinguishable from Plaintiffs' allegations" because (1) the plaintiffs in *Illuminate* "did not allege Illuminate was a contractor for the purposes of the CMIA" and (2) Plaintiffs' allegations, when "taken

[3] Plaintiffs incorrectly state that "[u]nder the CMIA, a 'contractor' 'receives, maintains, or transmits medical information; (Cal. Civ. Code § 56.06(d)) on behalf of providers of health care[.]" (Doc. No. 548 at 12.) As noted by PowerSchool, this definition does not appear in the CMIA provision cited by Plaintiffs. (Doc. No. 550 at 9 n.2.) As far as the Court can tell, Plaintiffs are quoting a portion of the Cal. Code Regs. Tit. § 79901(c), which "applies to the assessment of administrative penalties for a violation of Health and Safety Code section 1280.15 by a clinic, health facility, home health agency, or hospice licensed pursuant to Health and Safety Code section 1204, 1250, 1725 or 1745," Cal. Code Regs. Tit. 22 § 79900(a).

as a whole . . . and viewed in the light most favorable to Plaintiffs," as required by Rule 12(c), "adequately allege that PowerSchool falls within the CMIA's definition of a covered entity, including as a contractor in support of its school district clients with respect to the provision of medical services." (Doc. No. 548 at 12–13.)

First, the Court's previous order in addition to resting entirely on the now reversed appellate *Illuminate* decision only addressed whether Plaintiffs had sufficiently stated a claim on the theory that PowerSchool was a provider of health care. The Court did not address the sufficiency of the allegations as to Plaintiffs' theory that PowerSchool constitutes a contractor. PowerSchool conflates the Court declining to address the contractor theory with dismissing that theory. (*See, e.g.*, Doc. No. 550 at 9.)

Second, PowerSchool's blanket conclusion that the contractor definition is "facially inapplicable" is insufficient to defeat Plaintiffs' allegations. PowerSchool does not define the terms found within the definition, cite to applicable case law, provide any substantive analysis, or otherwise engage with Plaintiffs' allegations that PowerSchool is a contractor. PowerSchool bears the burden of demonstrating that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). It has not met its burden here and the Court declines to shoulder PowerSchool's burden for it. Accordingly, the Court denies PowerSchool's motion with respect to the "contractor" theory.

**3. PowerSchool as a "Health Care Services Plan"**

Finally, although PowerSchool moves for judgment on the pleadings as to Plaintiffs' CMIA claim, it makes no mention of Plaintiffs' allegations as to PowerSchool being a "health care services plan." (*See* Doc. No. 529.) As such, even if the Court had found in favor of PowerSchool as both a provider of health care and a contractor, Plaintiffs' CMIA claim would still remain.[4]

---

[4] To be completely clear, the Court is not making a determination on the merits of whether Plaintiffs' allegations that PowerSchool is a "health care services plan" are sufficient to state a claim. Rather, the

## IV. CONCLUSION

Based on the foregoing reasons, the Court **DENIES** PowerSchool's motion for partial judgment on the pleadings (Doc. No. 529). Plaintiffs' Count XIV as pled in the Consolidated Individual Users Class Action Complaint proceeds.

**IT IS SO ORDERED.**

Dated: October 26, 2026

Hon. Anthony J. Battaglia
United States District Judge

Court is merely identifying that PowerSchool did not move for judgment on the pleadings of this final CMIA theory that the Complaint makes reference to.