UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE: POWERSCHOOL HOLDINGS, INC. AND POWERSCHOOL GROUP, LLC CUSTOMER SECURITY BREACH LITIGATION

This Document Relates To:

Track Two Class Action

Case No.: 25-md-03149-AJB-DDL
MDL No. 3149

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MOVATE INC.'S MOTION TO DISMISS**

**(Doc. No. 500)**

Before the Court is a motion to dismiss the Track Two School District Class Action Second Amended Complaint filed by Defendant Movate, Inc. ("Movate") brought pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] (Doc. No. 500.) Track Two School District Class Action Plaintiffs ("Plaintiffs") filed an opposition (Doc. No. 525), to which Movate replied (Doc. No. 540). For the reasons set forth herein, the Court **DENIES** Movates's Rule 12(b)(2) motion and **GRANTS in part** and **DENIES in part** Movate's Rule 12(b)(6) motion.

///

[1] All further references to Rules are to the Federal Rules of Civil Procedure unless otherwise stated.

## I. BACKGROUND[2]

Movate, a Delaware corporation headquartered in Texas, is a technology services company that PowerSchool engaged as a subcontractor to provide technical support and network operations services for PowerSchool's Student Information System ("SIS"). (SAC ¶¶ 22, 263.) PowerSchool provided Movate employees, including Rayson Cruz and others, with unfettered "back-office administrator functionality, as well as student-, parent- and faculty-facing functionality" to PowerSchool's PowerSource customer support portal and SIS containing highly sensitive Protected Data of School District students, parents, and faculty. (*Id.* ¶¶ 92, 264.) On December 28, 2024, PowerSchool became aware of a cybersecurity incident involving the unauthorized exfiltration of detailed records of tens of millions of schoolchildren, teachers, and administrators from the SIS ("Data Breach"). (*Id.* ¶¶ 39–40, 91.) Plaintiffs, who are schools and school districts, allege *inter alia* two putative class claims against Movate: negligence (Count IX) and negligent hiring, training, supervision, and retention (Count X). (*Id.* ¶¶ 262–307.) Movate now seeks dismissal of both counts. (Doc. No. 500.)

## II. MOTION TO DISMISS PURSUANT TO RULE 12(B)(2)

First, Movate seeks to dismiss Plaintiffs' SAC pursuant to Rule 12(b)(2) asserting the Court lacks personal jurisdiction over Movate. (Doc. No. 500 at 23–25.)

### A. Legal Standard

Pursuant to Rule 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "To avoid dismissal, the plaintiff bears the burden of demonstrating that its allegations establish a prima facie showing of personal jurisdiction." *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 602 (9th

---

[2] The following are allegations pled in the School District Second Amended Class Action Complaint, (Doc. No. 483, "SAC"), which are generally accepted as true for the purposes of resolving Movate's Rule 12(b) challenges. *See In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.* ("*In re Kia*"), 190 F.4th 879, 885 (9th Cir. 2026) (Rule 12(b)(2)); *Liu v. Kaiser Permanente Emps. Pension Plan for Permanente Med. Grp., Inc.*, 190 F.4th 675, 679 (9th Cir. 2026) (Rule 12(b)(6)).

Cir. 2018). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "Because California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution, our inquiry centers on whether exercising jurisdiction comports with due process." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (cleaned up). "Constitutional due process requires that a defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Freestream Aircraft (Bermuda) Ltd.*, 905 F.3d at 602 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Depending on the strength of those contacts, there are two forms that personal jurisdiction may take: general and specific." *Picot*, 780 F.3d at 1211. "Uncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor." *Freestream Aircraft (Bermuda) Ltd.*, 905 F.3d at 602.

**B. General Personal Jurisdiction**

First, Movate argues and Plaintiffs essentially concede that the Court lacks general jurisdiction over Movate. (*Compare* Doc. Nos. 500 at 24 *with* 525 at 25.)

"With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG*, 571 U.S. at 137 (cleaned up). "For general jurisdiction to exist over a nonresident defendant[,] . . . the defendant must engage in continuous and systematic general business contacts, that approximate physical presence in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

Based on the operative complaint and the instant motion, Movate is incorporated in Delaware and headquartered in Texas. (SAC ¶ 22; Doc. No. 500 at 24.) Plaintiffs do not allege in the SAC, or assert in opposition, that Movate has sufficiently continuous and systematic contacts to otherwise render it at home in California. *See Daimler AG*, 571 U.S. at 138. Accordingly, the Court does not have general jurisdiction over Movate.

///

### C. Specific Personal Jurisdiction

Next, Movate argues Plaintiffs fail to establish that the Court has specific jurisdiction over Movate because Plaintiffs do not allege that Movate purposefully availed itself of California or that any relevant conduct occurred in California and because exercising jurisdiction would be unreasonable under the circumstances. (Doc. No. 500 at 24–25.)

"There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (cleaned up).

#### 1. Purposeful Availment

"To satisfy purposeful availment, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *In re Kia*, 190 F.4th at 886 (quoting *SuperTECH, Inc. v. My Choice Software, LLC*, 158 F.4th 1005, 1011 (9th Cir. 2025)). "In cases where [the Ninth Circuit] ha[s] held that a contract between a forum resident and a non-resident did not give rise to specific jurisdiction in the forum, [it] ha[s] done so because the business relationship between the parties was fleeting or its center of gravity lay elsewhere." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1108 (9th Cir. 2020).

Movate asserts that allegations it "provided remote technical support to a third party do not establish conduct expressly aimed at California." (Doc. No. 500 at 24–25.) Plaintiffs counter that they allege "Movate entered into a contract with PowerSchool, a California-based company, to provide technical support, customer service, network operations, and configuration services for PowerSchool's SIS" and that, "under that contract, Movate intentionally accessed California computer systems, including PowerSchool's SIS, and provided services to PowerSchool's California school-district customers." (Doc. No. 525

at 25 (citing SAC ¶¶ 16, 22, 263).)

As noted by Plaintiffs, such allegations were previously found sufficient by the Court with regard to the other tracks. (*See* Doc. Nos. 444 at 6; 445 at 9–10.) Considering that Plaintiffs here allege the same facts implicating specific personal jurisdiction that the Court previously found sufficient, that Movate only offers the same arguments that the Court previously found unpersuasive, and that the Court must take all uncontroverted allegations in the SAC as true, the Court finds Plaintiffs have alleged that Movate purposefully availed itself of the privileges of conducting activities in California when it entered into a contract with PowerSchool and exercised control over data entrusted to PowerSchool by school districts, including those in California.

### 2. Relatedness

"The second prong of the personal-jurisdiction analysis mandates that the plaintiff's claims 'arise out of or relate to the defendant's contacts with the forum.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 861 (9th Cir. 2022)

Movate asserts that Plaintiffs "fail to show that their claims arise out of any California-related conduct" because they "do not allege that Movate's purportedly wrongful conduct occurred in California or was directed at California residents." (Doc. No. 500 at 25; *see also* Doc. No. 540 at 14 ("Plaintiffs identify no California-specific conduct by Movate giving rise to their negligence claims.").) In opposition, Plaintiffs assert that they have fulfilled this prong by alleging that "the Data Breach occurred through the misuse of credentials belonging to a Movate employee who had access to PowerSchool's SIS and that Movate's failures to implement multi-factor authentication, credential rotation, least-privilege access, and adequate training enabled the Data Breach." (Doc. No. 525 at 26.)

Considering the same allegations and same arguments by Movate with respect to the other tracks, the Court found that Plaintiffs had sufficiently alleged that their "claims stem directly from Movate's forum-related conduct." (Doc. Nos. 444 at 6; 445 at 10.) Plaiuntiffs allege their injuries resulted from Movate's performance under its contract with a California-based company—PowerSchool—pursuant to which Movate provided services

to California-based customers and accessed systems containing the sensitive information of California residents. (*See* SAC ¶¶ 16, 22, 92, 262–307.) Accordingly, the Court finds Plaintiffs have alleged that their claims relate to Movate's contacts with the forum.

**3. Reasonableness**

"If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Glob. Commodities Trading Grp., Inc.*, 972 F.3d at 1107. "To evaluate reasonableness, we use a seven-factor balancing test that weighs: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Freestream Aircraft (Bermuda) Ltd.*, 905 F.3d at 607.

Finally, Movate asserts that, because its "alleged contacts are minimal, it has no operational presence in California[] and the alleged conduct occurred outside the forum," the exercise of jurisdiction "would not comport with due process." (Doc. No. 500 at 25.) Essentially, Movate's reasonableness argument stands on finding Plaintiffs have not satisfied the first two prongs. Moreover, Movate does not substantively engage with the seven-factor balancing test or proffer case law to support its position. Without more, Movate falls far below presenting a compelling case that jurisdiction would be unreasonable.

**D. Conclusion**

Plaintiffs have pled allegations sufficient to demonstrate that the Court has specific jurisdiction over Movate for the claims of this action. Movate's motion to dismiss for lack of personal jurisdiction is **DENIED**.

///

///

## III. MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

Second, Movate seeks to dismiss Plaintiffs' SAC pursuant to Rule 12(b)(6) asserting Plaintiffs fail to state a claim for negligence (Doc. No. 500 at 12–21) or negligent hiring, training, supervision, and retention against Movate (*id.* at 21–23).

### A. Legal Standard

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "The court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). To defeat a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Navarro*, 250 F.3d at 732; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

### B. Negligence[3]

Movate asserts that Plaintiffs fail to state a claim because Movate owed no duty to Plaintiffs as a matter of law and, thus, could not breach its duty to Plaintiffs. (Doc. No. 500

---

[3] For purposes of the instant motion, and for efficiency's sake, the parties agreed to focus on the laws of New York, New Jersey, and California. (Doc. No. 500 at 12.)

at 13–21.) First, Movate argues that it owes Plaintiffs no duty because (1) it did not control the risk-creating instrumentality, (2) there is no special relationship between Plaintiffs and Movate, (3) foreseeability alone cannot create a duty, (4) industry standards and regulatory frameworks do not create any privately enforceable obligation, and (5) PowerSchool's contracts do not give rise a duty to Plaintiffs. (*Id.* at 13–19.) Second, Movate argues that Plaintiffs fail to allege breach because (1) it could not breach a duty that does not exist and (2) Plaintiffs' allegations attribute the relevant security decisions and failures to PowerSchool, not Movate. (Doc. No. 500 at 19–21.)

"A plaintiff in any negligence suit must demonstrate a legal duty to use due care, a breach of such legal duty, and that the breach is the proximate or legal cause of the resulting injury." *Kesner v. Superior Ct.*, 1 Cal. 5th 1132, 1142 (2016) (cleaned up).[4] The existence of a duty is a question of law for the court. *See Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 770 (2011).[5] Foreseeability "alone does not establish the existence of a duty." *Tucker v. CBS Radio Stations, Inc.*, 194 Cal. App. 4th 1246, 1253 (2011).[6]

As noted by Plaintiffs, "[t]his Court has already concluded that nearly identical allegations, concerning the same underlying conduct, adequately plead Movate's control and affirmative conduct." (Doc. No. 525 at 14.) As recounted in its Order addressing Movate's motion to reconsider, the Court has found Track One Consolidated Individual

---

[4] *See also Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (2016) ("In order to prevail on a negligence claim, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom[.]"); *Coleman v. Martinez*, 247 N.J. 319, 337 (2021) ("The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages.").

[5] *See also Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 138 (2002) ("[T]he existence and scope of a duty is a question of law requiring courts to balance sometimes competing public policy considerations[.]"); *Jerkins ex rel. Jerkins v. Anderson*, 191 N.J. 285, 294 (2007) ("Whether a duty of care exists is a question of law that must be decided by the court.").

[6] *See also In re New York City Asbestos Litig.*, 5 N.Y.3d 486, 493 (2005) ("[F]oreseeability, alone, does not define duty—it merely determines the scope of the duty once it is determined to exist."); *Jerkins*, 191 N.J. at 295 ("The ability to foresee harm does not in itself establish the existence of a duty, but it is a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate.").

Users Putative Class Action Plaintiffs and Track Two School District Direct Action Plaintiffs sufficiently alleged a duty to survive Movate's motion to dismiss raising the same arguments:

> Although more attenuated due to Movate's subcontractor status, the Court found Movate's duty arose not from access alone but from Movate's affirmative operational responsibility for the security measures and conduct that failed to meet that responsibility, applying the rule that affirmative conduct that creates a risk of harm gives rise to a duty. Specifically, the Court found that Plaintiffs sufficiently alleged Movate had broad access to and control over their private information, understood its sensitivity, and publicly touted compliance with internationally recognized data-security standards.

(Doc. No. 551 at 9 (citing Doc. Nos. 444 at 9 and 445 at 15).) Movate rightfully notes that the Court "must independently evaluate the allegations" in the instant SAC (Doc. No. 540 at 5). However, the allegations the Court previously found sufficient to withstand Movate's motion to dismiss in other tracks are present in the complaint at issue here as well. (*See, e.g.*, SAC ¶¶ 92, 267 ("Cybercriminals successfully breached PowerSchool's systems using compromised credentials belonging to Rayson Cruz, a Movate employee assigned to provide PowerSchool technical support to School District Clients. Cruz's Movate employee account, **which Movate failed to adequately secure**, provided the entry point for hackers to access PowerSchool's PowerSource customer support portal.") (emphasis added), 269 ("Movate could also have prevented the Data Breach by, among other things, requiring regular rotation of access credentials, implementing just-in-time access to Protected Data rather than persistent credentials, and requiring second level authorization to access or download sensitive information."), 274 ("Second, by accepting PowerSchool's engagement as a subcontractor with administrative access to School Districts' sensitive Protected Data, Movate assumed a position of trust and became an integral component of the data security framework that School Districts relied upon.").) With the same case law and allegations presented, the Court finds no reason for deviation. Thus, at the pleading stage, these allegations sufficiently establish a duty and breach of duty based on access and affirmative conduct.

Much of Movate's reply focuses on an interpretation of Plaintiffs' allegations that it asserts is "the only coherent factual account reflected in the Complaint." (Doc. No. 540 at 7.) However, Movate's argument relies both on its own supply of "facts" not alleged by Plaintiffs that shape its inferences.[7] (*See, e.g.*, Doc. No. 540 at 7 ("Plaintiffs allege that PowerSchool controlled the relevant authentication mechanisms, access permissions, and security architecture, such as MFA, and that Movate acted only as a subcontractor providing customer support using access granted by PowerSchool.").) Essentially, Movate supplies its own details that allegations of PowerSchool failing to implement multi-factor authentication (SAC ¶¶ 38, 76, 86, 90, 92) necessarily mean that Movate was structurally barred from doing so itself because PowerSchool "controlled" the "security architecture" (Doc. No. 540 at 7). Although Movate's interpretation may prove true upon the proffering of evidence, at this stage and without those facts actually pled by Plaintiffs, the inferences Movate relies upon are only that—inferences—and they are not the only rational ones to be made. In viewing well-pled allegations of the SAC in the light most favorable to the non-moving party, Plaintiffs have alleged that Movate owed them a duty and breached that duty sufficient to withstand a motion to dismiss.[8] The Court denies Movate's motion with respect to the negligence claim (Count IX).

**C. Negligent Hiring, Training, Supervision, and Retention**

Movate asserts that Plaintiffs fail to state a claim for negligent hiring, training, supervision, and retention. (Doc. No. 500 at 21–23.)

**1. Legal Standard**

"To assert a claim for negligent training, a plaintiff must demonstrate deficiencies in the training of employees that, if corrected, could have avoided the alleged harm." *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 225 (E.D.N.Y. 2010) (internal quotation and

---

[7] Counsel is reminded that zealous advocacy does not require abandoning civility. In the future, counsel should choose its adjectives more thoughtfully. (*See* Doc. No. 540 at 6.)

[8] Having found a duty pled based on access and affirmative conduct, the Court need not address Movate's other arguments.

citation omitted).[9] However, to assert a claim for negligent hiring or negligent retention, a plaintiff must demonstrate the "employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Baez*, 745 F. Supp. 2d at 225.[10] Similarly, "[t]o establish negligent supervision, a plaintiff must show that a person in a supervisorial position over the actor had prior knowledge of the actor's propensity to do the bad act." *Z.V. v. Cnty. of Riverside*, 238 Cal. App. 4th 889, 902 (2015).[11]

### 2. Negligent Hiring and Retention

Movate moves to dismiss the negligent hiring claim on the basis that "Plaintiffs fail to allege facts showing that Movate had notice of any propensity by Rayson Cruz to engage

---

[9] *See also Garcia v. Brown*, 442 F. Supp. 2d 132, 146 (S.D.N.Y. 2006) ("To succeed on New York State law claim of negligent training or supervision, a plaintiff must present specific evidence demonstrating how the employer's practices were insufficient."); *Roe v. CoreCivic, Inc.*, 823 F. Supp. 3d 1137, 1155 (S.D. Cal. 2026) ("Under California law, a plaintiff alleging negligent training must show the employer negligently trained the employee as to the performance of the employee's job duties and as a result of such negligent instruction, the employee while carrying out his job duties caused injury or damage to the plaintiff."); *G.A.-H. v. K.G.G.*, 238 N.J. 401, 416 (2019) ("To be found liable for negligent supervision or training, the plaintiff must satisfy what is essentially the same standard [as for negligent hiring], but framed in terms of supervision or training. That is to say, the plaintiff must prove that (1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and (2) that risk of harm materializes and causes the plaintiff's damages.").

[10] *See also Kruitbosch v. Bakersfield Recovery Servs., Inc.*, 114 Cal. App. 5th 200, 225 (2025) ("[A]n employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee where the employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." (quotation marks and citation omitted)); *G.A.-H.*, 238 N.J. at 416 ("To be found liable for negligent hiring, the plaintiff must show: (1) that the employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons and (2) that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury."). The difference, though slight, between negligent hiring and negligent retention lies in *when* the employer knew or should have known of the employee's unfitness.

[11] *See also Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y.3d 150, 157 (2023) ("Where the negligence claim relates to an employer's retention and supervision of an employee, the complaint must include allegations that: (1) the employer had actual or constructive knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm; (2) the employer knew or should have known that it had the ability to control the employee and of the necessity and opportunity for exercising such control; and (3) the employee engaged in tortious conduct on the employer's premises or using property or resources available to the employee only through their status as an employee, including intellectual property and confidential information[.]"); *G.A.-H.*, 238 N.J. at 416.

in the conduct at issue." (Doc. No. 500 at 21; *see also id.* at 22 ("The Complaint does not identify any prior misconduct, performance deficiencies, complaints, or warning signs that would have put Movate on notice that Cruz posed a risk of credential compromise."); Doc. No. 540 at 11–14.) Movate further asserts that general cybersecurity risks to data cannot be a "substitute for notice of a particular employee's propensity." (Doc. No. 500 at 22.) In opposition, Plaintiffs argue that their theory "extends beyond a propensity claim targeting a single employee" to instead allege "systemic failures in training and supervision[.]" (Doc. No. 525 at 23–24.) As both parties treat all four claims as requiring the same elements, Movate moves to dismiss the negligent retention claim on the same grounds as the negligent hiring claim and Plaintiffs similarly oppose dismissal on the same basis.

The extent of Plaintiffs' negligent hiring and retention allegations included in the School District Class Action SAC are as follows:

> 302. Movate hired Rayson Cruz, the employee who negligently allowed for the disclosure of the PII that was compromised in the Data Breach.
>
> 303. Movate was negligent and failed to exercise the requisite standard of care in hiring, supervising, retaining, and training of its employees and agents, including, but not limited to, Rayson Cruz.
>
> 304. Rayson Cruz was hired, trained, and retained as a Movate Team Leader who was assigned to provide technical support on behalf of PowerSchool and had access to the PowerSchool SIS and the massive trove of PII the system stored. As a result, his compromised credentials allowed the Data Breach threat actor to exfiltrate the Data that Movate possessed and purported to safeguard for Plaintiffs' benefit[.]
>
> * * *
>
> 306. Movate knew or should have known that Rayson Cruz was, or became, unfit or incompetent in his abilities to adequately and reasonably implement measures to secure the data that was compromised in the Data Breach. Rayson Cruz's unfitness and incompetence directly, proximately, and substantially caused Plaintiffs' harms.
>
> 307. Movate's negligence in hiring, supervising, training, and retaining Rayson Cruz was a substantial factor in causing Plaintiffs' harms, and Movate

> is accordingly liable for the injuries Plaintiffs suffered as a result of the Data Breach.

(SAC ¶¶ 302–04, 306–07.)

The Court finds that the School District Class Action SAC does not provide anything more than conclusory statements regarding the hiring and retention of Cruz. Plaintiffs do not allege any facts about what made Cruz unfit for the position either prior to or after his hiring, how Movate knew about those failings, or why Movate should have known about those failings. Moreover, although Plaintiffs rely on a theory of institution-wide failures, Plaintiffs do not allege any facts regarding systemic hiring or retention practices that would amount to negligence. *Cf. In re Bank of Am Cal. Unemployment Benefits Litig.*, 74 F. Supp. 3d 884, 926 (S.D. Cal. 2023) (finding the plaintiffs stated a claim for negligent hiring where they alleged the employer "hired hundreds if not thousands of employees *en masse* to perform services for [the defendant] without ever conducting a background check[s]").

In large part, Plaintiffs rely on the Court's prior determination that similar allegations were sufficient for Track Two Direct Action Plaintiffs (Doc. No. 444); however, upon reconsideration, the Court granted Movate's motion to dismiss the negligent hiring claim (Doc. No. 551 at 12–16). As such, Plaintiffs' reliance is unavailing for the reasons addressed in the reconsideration order. (*See id.*)

Because there are no factual allegations supporting a claim that either hiring Cruz in the first instance or retaining Cruz for the duration of his employment was an act of negligence, *see Baez*, 745 F. Supp. 2d at 225, the Court grants Movate's motion to dismiss the negligent hiring and retention claims.

**3. Negligent Training & Supervision**

Movate also seeks to dismiss Plaintiffs' negligent training and negligent supervision claims, arguing that Plaintiffs' "conclusory" allegations "do not identify any specific training deficiency" and "do not allege how Cruz's conduct was enabled by any specific training or supervision act or omission by Movate, particularly where the alleged harm depends on intervening criminal acts." (Doc. No. 500 at 23.) Plaintiffs argue in opposition

that the SAC alleges "Movate's own institutional failures—which applied to *all* employees, not just Mr. Cruz—created the conditions that made the Data Breach possible." (Doc. No. 525 at 24 (emphasis in origin).)

In the SAC, Plaintiffs allege three specific training failures that, had Movate adequately addressed, would have prevented the data breach. (*See* SAC ¶¶ 300, 305.) Moreover, Plaintiffs allege that Movate should have known that its training policies were inadequate because of the size, scope and sensitive nature of the data Movate was handling, the prevalence of high profile data breaches, and the standards for data security. (*Id.* ¶¶ 299–300, 305.) These allegations are sufficient for this stage to state a claim for negligent training. *See Baez*, 745 F. Supp. 2d at 225.

Although less clearly pled than the negligent training claim, the negligent supervision claim is plausibly premised on Movate's failure to identify and remedy its deficient training and risky employee behaviors. Because Plaintiffs allege that Movate failed to ensure its employees were taking adequate security precautions, that if Movate had adequately addressed these failures no breach would have occurred, and that Movate should have known that these deficiencies were creating the foreseeable risk of a breach, Plaintiffs adequately alleged a negligent supervision claim on the same basis as, though a slightly different flavor from, their negligent training claim. (*See* SAC ¶¶ 295, 297–305, 307.) Accordingly, the Court denies the motion to dismiss negligent training and supervision claims.

**D. Conclusion**

Plaintiffs have pled allegations sufficient to state a claim for negligence, negligent training, and negligent supervision. To that extent, the Court **DENIES** Movate's motion to dismiss. However, Plaintiffs' allegations regarding negligent hiring and negligent retention are insufficient. Thus, the Court **GRANTS** the instant motion with regard to those claims.

///

///

///

## IV. CONCLUSION

Based on the foregoing reasons, the Court **DENIES** Movate's 12(b)(2) motion and **GRANTS in part** and **DENIES in part** its 12(b)(6) motion. (Doc. No. 500.) Movate is directed to file an answer to the operative complaint **no later than December 14, 2026**.

**IT IS SO ORDERED.**

Dated: November 23, 2026

Hon. Anthony J. Battaglia
United States District Judge